**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| **JOHN DOE,** | &#124; |
| | &#124;    CIVIL ACTION |
| Plaintiff, | &#124; |
| | &#124; |
| v. | &#124; |
| | &#124; |
| **PURDUE UNIVERSITY**, **PURDUE** | &#124; |
| **UNIVERSITY BOARD OF TRUSTEES**, | &#124; |
| **MITCHELL ELIAS DANIELS, JR.**, | &#124; |
| Individually and as agent for Purdue | &#124;   No.  2:17-cv-00033-PRC |
| University, **ALYSA CHRISTMAS** | &#124; |
| **ROLLOCK**, individually and as agent for | &#124; |
| Purdue University, **KATHERINE** | &#124; |
| **SERMERSHEIM**, individually and as | &#124; |
| agent for Purdue University, **ERIN** | &#124; |
| **OLIVER**, individually and as agent | &#124; |
| for Purdue University, **JACOB** | &#124; |
| **AMBERGER**, individually and as agent | &#124;    JURY TRIAL |
| for Purdue University, | &#124;    DEMANDED |
| | &#124; |
| Defendants. | &#124; |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

ALEX MENDOZA LAW, LLC
Roberto Alejandro Mendoza 30766-49
Paul Luka
6950 Indianapolis Blvd.,
Hammond, Indiana 46324
(219) 200-2000
alex@alexmendozalaw.com
paul@alexmendozalaw.com
(LOCAL COUNSEL)
**Attorneys for Plaintiff John Doe**

NESENOFF & MILTENBERG, LLP
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
Diana Warshow, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
pbyler@nmllplaw.com
**Attorneys for Plaintiff John Doe**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ………………………………….……………..………..….iii

PRELIMINARY STATEMENT …………………………………….……………….……….1

STATEMENT OF ISSUES ………………………………………………………….…………2

THE FACTS ALLEGED IN THE COMPLAINT …………………………......…………...…..3

THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS…………………….…..8

    A.    Federal Rule of Civil Procedure 12(b)(6) ……………………………………8

    B.    Federal Rule of Civil Procedure 12(b)(1) …………………………..…………9

ARGUMENT………………………………………………………………..………......9

I.    JOHN DOE HAS STANDING TO SEEK INJUNCTIVE RELIEF
    AGAINST DEFENDANT PURDUE'S TITLE IX PROCEDURES
    THAT DENY CONSTITUTIONAL DUE PROCESS AND ENABLES
    ERRONEOUS
    OUTCOMES………………………………………………….……………..………. 9

II.    THE COMPLAINT ALLEGES SUFFICIENT FACTS TO HOLD DEFENDANT
    DANIELS LIABLE FOR SUPERVISORY LIABILITY UNDER 42 U.S.C. §1983……...11

III.    THE COMPLAINT ALLEGES SUFFICIENT FACTS TO HOLD
    DEFENDANT OLIVER AND DEFENDANT AMBERGER LIABLE
    AS INVESTIGATORS UNDER 42 U.S.C. §1983 …………………………..………….13

IV.    THE COMPLAINT STATES A CLAIM UPON WHICH
    RELIEF MAY BE GRANTED UNDER 42 U.S.C. §1983…………………….....…..….13

    A.    The Individual Defendants Are Persons Under 42 U.S.C. § 1983…………………13

    B.    The Eleventh Amendment Does Not Bar Injunctive Relief In A § 1983 Case……..14

    C.    The Complaint Alleges Violations Of The Fourteenth Amendment………….…15

        1.    The Complaint Alleges Protected Liberty and Property Interests………..…15

        2.    The Complaint Alleges That Due Process Was Not Afforded……………. 17

    D.    The Qualified Immunity Defense Is Not Available
        To Individual Defendants On This Motion To Dismiss…………………..……. 19

i

V.    THE COMPLAINT STATES A CLAIM UPON WHICH
      RELIEF MAY BE GRANTED UNDER TITLE IX …………………………………….....20

VI.   IF DEFENDANTS DO NOT WAIVE ELEVENTH AMENDMENT IMMUNITY
      TO PERMIT EFFICENT LITIGATION OF ALL CLAIMS, THEN THE STATE
      LAW CLAIMS FOR BREACH OF CONTRACT AND ESTOPPEL SHOULD
      BE DISMISSED WITHOUT PREJUDICE…………………………………….………..24

CONCLUSION ……………………………………………………………………………….25

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct. App. 2013) …………………………..……………24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………...…...…..…1, 8-9

*Baskin v. City of Des Plaines*, 138 F.3d 701 (7th Cir. 1998)…………………………...…………12

*Behrens v. Pelletier,* 516 U.S. 299 (1996)…………………………………………...…………….19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2008) …………………………………………....1, 8-9

*Bissessur v. Ind. Bd. of Trustees*, 581 F.3d 599 (7th Cir. 2009) ……………………………….17

*Board Of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978) …………………….…16

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ………………………………..16

*Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585 (8th Cir. 2009) …………………………….…..9

*Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003)………………....…14

*Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016) …………………………………………….20

*B.S. ex rel Schneider v. Bd. Of School Trustees*, 255 F.Supp.2d 891 (N.D. Ind. 2003) …….....… 18

*Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013) ……………………………….……24

*Charleston v. Bd. Of Trustees of Ill. at Chicago*, 741 F.3d 769 (7th Cir. 2013) …………………17

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) …………………….……………………….…..10

*Cleavinger v. Saxner*, 474 U.S. 193 (1985) ………………………………………………...…..20

*Colburn v. Trustees of Indiana Univ.*, 739 F.Supp. 1268 (S.D. Ind. 1990),
    *aff'd*, 973 F.2d 581 (7th Cir. 1992) ……………………………………………………….14

*Cyngar v. City of Chicago*, 865 F.2d 827 (7th Cir. 1989) ………………………………….…..12

*Davis v. Regis Coll., Inc.*, 830 P.2d 1098 (Colo. App. 1991) ………………………….……15-16

*Derfus v. City of Chicago*, 42 F.Supp.3d 888 (N.D. Ill. 2014)……………………..…………10

*Despard v. Bd. Of Trustees of Indiana Univ.*, 2015 WL 4946112 (S.D. Ind. Aug. 18, 2015) ……..16

*Doe v. Columbia*, 831 F.3d 46 (2016) ……………………………………..……8,9,20, 21, 23, 24

*Doe v. Crown Point School Corp.*, 2015 WL 5038093 (N.D. Ind. Aug. 26, 2015) …………….…12

*Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) …………………………………………..15

*Doe v. Univ. of Cincinnati*, 173 F.Supp.3d 586 (S.D. Ohio 2016) …………………….…..15, 22-23

*Doe v. Washington and Lee University*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ……………21

*Donohue v. Baker*, 976 F.Supp. 136 (N.D.N.Y. 1997)………………………………………..18

*Ellis v. Bennett*, 2013 WL 5278419 (N.D. Ind. Sept. 18, 2013) ……………………………………12

*Ex Parte Young*, 209 U.S. 123 (1908) ……………………………………………….….………14-15

*First Nat'l Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949 (Ind. 1991) …………………24

*Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) …………………………………………....15

*Frew v. Hawkins*, 540 U.S. 431 (2004) ……………………………………………………………14

*Friends of the Earth, Inc. v. Laidlaw Environmental* Services, 528 U.S. 167 (2000) …..…………10

*Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6 (D. Me. 2005) …………………………………..15

*Gorman v. Univ. of Rhode Island*, 837 F.2d 7 (1st Cir. 1988) …………………………..………15

*Goss v. Lopez*, 419 U.S. 565 (1975) ………………………………………………..….…15, 18

*Hartman v. Keri*, 883 N.E.2d 774 (2008) ………………………………………………………… 17

*Johnson v. Western State Colorado University*, 71 F. Supp.3d 1217 (D. Colo. 2014)…………….15

*Katz-Crank v, Haskett*, 843 F.3d 641 (7th Cir. 2016)…………………………………………16

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014)…………………………………...……12

*Knox v. McGinnis*, 998 F.2d 1405 (7th Cir. 1993) …………………………………………11

*Lee TT v. Dowling and Joel P. Bane*, 87 N.Y.2d 699, 664 N.E.2d 1243,
         642 N.Y.S.2d 1243 (1996) ………………………………………………………….........16

*Lilly v. Virginia*, 527 U.S. 116 (1999) …………………………………………….…...……18

*Linwood v. Bd. of Educ. of the City of Peoria*, 463 F.2d 763 (7th Cir. 1972)………………………19

*Ludlow v Northwestern Univ.*, 79 F. Supp.3d 824 (N.D. Ill. 2015) ………………………….....20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)…………………………………………….9

*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) …………………………………………22

*MCI Telecommunications Corp. v. Illinois Commerce Comm'n*, 183 F.3d 558 (7th Cir. 1999) …..14

*Neal v. Colorado State Univ.-Pueblo*, 2017 WL 633045 (D. Colo. Feb 16, 2017) ………………21

*Parsons v. Bourff,* 739 F.Supp. 1266 (S.D. Ind.1989) …………………………………….……14

*Paul v. Davis*, 424 U.S. 693 (1976) ………………………………………………………… 16

*Peterson v. Jensen*, 371 F.3d 1199 (10th Cir. 2004)…………………………………………..19

*Prasad v. Cornell Univ.*, 2016 WL 3212079 (N.D.N.Y. Feb, 24, 2016) …………………………..21

*Raygor v. Regents of Univ. Of* Minnesota, 534 U.S. 533 (2002) …………………………………..25

*Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003) …………………………………………..12

*Rochin v. California*, 342 U.S. 165 (1952) ……………………………………………….…..19

*Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004) ………………………………………….16

*Schirmer v. Nagodle*, 621 F.3d 581 (7th Cir. 2010) …………………………………………..10

*Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996) ……………………………………..……………19

*Shepard v. Irving*, 77 F. App'x 615 (4th Cir. 2003) …………………………………….…..…15

*Sierakowski v. Ryan*, 223 F.3d 440 (7th Cir. 2000) ……………………………..………………..11

*Sigma Chi Fraternity v. Regents of Univ. of Colo.,* 258 F. Supp. 515 (D.Colo. 1966) ……………19

*Thomson v. Harmony*, 65 F.3d 1314 (6th Cir. 1995) ……………………………………..…….15

*Tobin for Governor v. Illinois State Bd. of Ed.*, 268 F.3d 517 (7th Cir. 2001) ………………...…20

*Trentadue v. Redmon*, 619 F.3d 648 (7th Cir. 2010) …………………………………….…… 12

*Tumey v. Ohio*, 273 U.S. 510 (1927) …………………………………………..………..18

*Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) ………………………….……………19

*Wasserman v. Purdue Univ.*, 431 F.Supp.2d 911 (N.D. Ind. 2006) ………………………..….9

*William v. Wendler*, 530 F.3d 584 (7th Cir. 2008) ………………………………………...…17

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) …………………………………..…14

*W. v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358 (10th Cir. 2000) ……………………..……15

*Yu v. Vassar College*, 97 F.Supp.3d 448 (S.D.N.Y. 2015) ……………………………..……….23

*Yusuf v. Vassar Corp.*, 35 F.3d 709 (2d Cir. 1994) ………………………..…………………...…21, 24

## Constitutional Provisions, Statues and Rules

42 U.S.C. § 1983…………………………………………………………………...…1, 2, 11-20

Rule 12(b)(1), Federal Rules of Civil Procedure ……………………………………...………9-11

Rule 12(b)(6), Federal Rules of Civil Procedure ………………………….…….……….8-9, 14

Sherman Act § 1, 15 U.S.C. § 1 ……………………………………………………………..8

Title IX, 20 U.S.C. § 1681(a)……………………………………………………1, 9, 20-24

U.S. Constitution, Eleventh Amendment ………………………….……………………14-15

U.S. Constitution, Fourteenth Amendment …………………………….…………………1, 15-19

## Other Authorities

K. C. Johnson, "The Railroading Of Peter Yu," *Minding The Campus*,
      http://mindingthecampus.org/2015/04/the-railroading-of-peter-yu/......................................23

S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 6.20 (2d ed. Supp.1989) …………..……14

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff John Doe ("John Doe") respectfully submits this Memorandum of Law in opposition to Defendants' motion to dismiss.  The motion to dismiss should be denied.  John Doe, in his 68-page Complaint, states claims for which John Doe has standing and upon which relief may be granted against the Individual Defendants under 42 U.S.C. § 1983 for denial of due process and against Defendant Purdue University ("Purdue") for Title IX sex discrimination.

The Complaint complies with the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2008), in detailing sex discrimination against and the denial of fundamental due process rights to John Doe accounting for what was an erroneous outcome that ended in an unduly severe penalty imposed on John Doe because of his sex.  John Doe was wrongly sanctioned by Purdue for non-consensual sexual touching that the pleaded facts show did not happen; John Doe is now a suspended student at Purdue despite a previously unblemished disciplinary record and now a dismissed member of Navy ROTC.   His dream of serving his country as a Naval officer has been destroyed as the result of false accusations of non-consensual sexual touching made five months after the supposed occurrences with no contemporaneous documentation supporting them and contrary to the text messages shared by John Doe and the complainant Jane Doe.

As stated in the Complaint, the false accusations of sexual assault were upheld by Purdue using a Kafkaesque process that denied due process of law in violation of constitutional due process and 42 U.S.C. § 1983: there was no hearing of any kind; there was no sworn testimony; there was no cross-examination; there was no access given for the disciplinary respondent (John Doe) even to see the investigator's report, much less comment on it; there was no providing, to disciplinary respondent (John Doe), the evidence that supposedly supported the false allegations of the disciplinary complainant (Jane Doe) and thus no adequate ability to prepare a defense to those allegations; there was no presumption of innocence but rather a presumption that the accusing female's story was true; there was no reasoned consideration of evidence as required by a burden of proof; there was a conflict

1

of interest in decision-making on violation and sanction by one person who is both Dean of Students and Title IX Coordinator and who could and did tailor decision-making in specific cases to give the appearance of vigorous Title IX enforcement and meet perceived reporting needs to the U.S. Department of Education's Office of Civil Rights ("OCR"); and there was no requirement for evidence to be stated in support of conclusions and thus there was an effective discretion to engage in discriminatory decision-making and a prejudiced ability for the disciplinary respondent (John Doe) to prepare and submit an appeal.

Defendants, in arguing for dismissal, ignore much of the 68-page Complaint, particularly its factual allegations, and instead make legal arguments that misapply legal doctrine and case law. Defendants depict John Doe as faulting Defendants for not conducting a quasi-criminal, courthouse-style trial. That depiction, however, does not accurately state the problem: Defendants have a woefully deficient Title IX disciplinary process that does not afford due process (no meaningful notice and opportunity to be heard was given) and that enables erroneous outcomes and unduly severe penalties because of sex. Defendants' argument that due process was given is just wrong. This Court should read the Complaint for himself to see how John Doe has stated compelling constitutional due process and Title IX discrimination claims and how Defendants' arguments are ill-considered.

## STATEMENT OF ISSUES

1.      Does John Doe have standing for prospective injunctive relief?  Yes.

2.      Does the Complaint allege sufficient facts to hold Defendant Daniels liable for supervisory liability under 42 U.S.C. § 1983?  Yes.

3.      Does the Complaint allege sufficient facts to hold Defendant Oliver and Defendant Amberger liable for their actions as investigators under 42 U.S.C. § 1983?  Yes.

4.      Does the Complaint state a claim for relief under 42 U.S.C. § 1983?  Yes.

5.      Does the Complaint state a claim for relief under Title IX?  Yes.

### THE FACTS ALLEGED IN THE COMPLAINT

For the facts of this case, the Court is referred to the Complaint.  The following is a summary.

During the 2015 Fall semester and into January 2016, John Doe and Jane Doe had a dating relationship that included their having consensual sexual intercourse from October to December 2015. On December 13, 2015, Jane Doe attempted suicide in front of John Doe, after which all sexual activity ended.  In January 2016, John Doe reported Jane Doe's suicide attempt to Defendant Purdue. In mid-to late January 2016, Jane Doe began to distance herself from John Doe and their dating relationship ended.  From November 2015 to March 2016, Jane Doe made no reports to the university or to the police about any alleged sexual assault by John Doe.  *Cmplt.* ¶ 19.

In early April 2016, when Defendant Purdue was hosting more than a dozen events to advocate the reporting of sexual assaults, Jane Doe brought a complaint against John Doe for sexual misconduct. On April 11, 2016, John Doe received a letter dated from Defendant Katherine L. Sermersheim, Purdue's Dean of Students, notifying John Doe that Purdue has been made aware of sexual allegations regarding John Doe's conduct toward another student (Jane Doe) that if substantiated, might constitute a violation of Defendant Purdue's anti-harassment policy and that Purdue had elected to investigate the allegations, with Defendant Erin Oliver and Defendant Jacob Amberger appointed as investigators. From that point on, John Doe was not allowed to participate in Navy ROTC.  *Cmplt.* ¶¶ 20-24, 28, 34.

Accompanying Defendant Dean Semersheim's April 11, 2016 letter was a one half-page "Notice of Allegations," which included the allegations: (i) Jane Doe and John Doe were in a dating relationship during the Fall 2015 semester; (ii) in November 2015, when Jane Doe stayed the night in John Doe's room, John Doe groped her and she said to him it was not OK; and (iii) John Doe told Jane Doe that during another night in November 2015, while they were staying the night in Jane Doe's room, John Doe had penetrated her digitally while she was sleeping. John Doe promptly submitted a written response to the allegations, stating, *inter alia*, that: (i) Jane Doe's accusations were false; (ii) in November 2015 when Jane Doe had stayed in John Doe's room, she did not wake up to find John Doe

3

groping her; and (iii) in November 2015 John Doe had not digitally penetrated her while she was sleeping.  John Doe also provided details of Jane Doe's suicide attempt.  *Cmplt.* ¶¶ 25-27, 29-31.

On April 28, 2016, John Doe met with the Defendant Investigators Oliver and Amberger.  John Doe denied sexually assaulting Jane Doe and provided texts of his communications with Jane Doe that showed nothing to indicate that a sexual assault had taken place.  John Doe also provided the Investigators with a list of over 30 names to substantiate the credibility of his character and integrity because Jane Doe attacked John Doe's character and integrity in her statements to Purdue.  Thereafter, John Doe had no further communications with the Investigators.  *Cmplt.* ¶ 32.

In the month following the April 28, 2016 meeting with John Doe, the Defendant Investigators prepared a Report and sent it to Defendant Dean of Students Sermersheim. Without an opportunity given to John Doe to review it, Defendant Dean of Students Sermersheim sent, on May 26, 2016, the Investigator's Report to the panel members of the three-person panel of the Advisory Committee on Equity; and on May 31, 2016, Defendant Dean Sermersheim sent a letter to John Doe advising him that he was to attend a meeting with the three-person panel of the Advisory Committee on Equity on Monday, June 6, 2016, from 2:00 PM to 2:30 PM.  Defendant Dean Sermersheim's May 31, 2016 letter further advised that the panel members had reviewed the complaint, the written responses and the Investigator's Report and that the purpose of the meeting was to listen to the parties who could provide clarification.  *Cmplt.* ¶¶ 35-36.

On June 6, 2016, Jane Doe did not appear in person before the Advisory Committee on Equity and Defendant Dean Sermersheim.  Instead, a statement dated June 5, 2016 was written for Jane Doe by Monica Soto Bloom, a Title IX Coordinator and Director of the Center for Advocacy, Response, and Education ("CARE"), and that letter was submitted to the Advisory Committee.  Jane Doe did not appear in person on any other date before the Advisory Committee on Equity and Defendant Dean Sermersheim, who thus never met or heard any direct testimony from Jane Doe and thus never had the opportunity to ask any questions of Jane Doe.  *Cmplt.* ¶ 37.

4

On June 6, 2016, before the meeting with the three-person panel of the Advisory Committee on Equity, John Doe met with a representative of Navy ROTC, who briefly allowed John Doe to see a redacted version of the Investigator's Report that the Purdue Navy ROTC had received.  John Doe saw that it falsely stated John Doe had confessed to the allegations in Jane Doe's complaint.  John Doe then met with the three-person panel of the Advisory Committee on Equity and Defendant Dean Sermersheim.  The meeting did not involve any sworn testimony, was not a hearing and was not recorded.  There never would be a hearing in the case of any kind, much less a hearing when, *inter alia*, sworn testimony would be given, cross-examination questions posed and documentation presented.  The June 6, 2016 meeting involved only unrecorded discussion about the written materials and lasted for no more than a half-hour.  The one panel member who read the Investigator's Report before the meeting asked accusatory questions assuming John Doe's guilt, and all the panel members acted with hostility toward John Doe.  John Doe reiterated that the accusations made by Jane Doe against him were false and not substantiated by documentation and that the texts John Doe had provided were inconsistent with sexual assault having taken place.  *Cmplt.* ¶¶ 38-41.

On June 14, 2016, Defendant Dean of Students Sermersheim sent a letter to John Doe advising him that, after considering the information provided by John Doe, Jane Doe, the University Investigators and consulting with the three-member panel from the Advisory Committee on June 6, 2016, "**I [Dean Sermersheim] have made the determination that a preponderance of the evidence does support a finding that your [John Doe's] conduct violated the *Anti-Harassment Policy*.**" (Bold in the original.)   Dean Sermersheim's June 14, 2016 letter ordered John Doe: (1) to be suspended from Purdue commencing June 13, 2016 for one full academic year; (2) to continue to have no contact with Jane Doe until she completes her academic program; (3) as a condition of re-entry, to complete a 90-minute intervention training or equivalent program offered by the Vice President for Ethics and Compliance or CARE; and (4) as a condition of re-entry, to meet with Chris Greggila, Assistant Director of CARE.  Dean Sermersheim's June 14, 2016 letter advised John Doe that he could

appeal her determination to the Purdue Vice President for Ethics and Compliance, Defendant Alysa Christmas Rollock.  *Cmplt.* ¶¶ 42-44.

On June 22, 2016, John Doe timely appealed to Defendant Vice President Rollock, stating  that Jane Doe's allegations of sexual assault were false, that he never digitally or otherwise penetrated Jane Doe while she was sleeping, that the determination he had done so was incorrect; and that his "rights to due process of law have been violated." *Cmplt.* ¶¶ 45-47.

On or about June 28, 2016, Defendant Vice President Rollock sent a letter of that date to John Doe stating that she had reviewed John Doe's appeal, Defendant Dean Sermersheim's letters to John Doe and Jane Doe's letter dated June 14, 2016 and that because Defendant Dean Sermersheim had not included her reasoning in reaching her determination, Defendant Dean Sermersheim, was directed by June 30, 2016, to revise her June 14, 2016 letters to include the factual basis for her determination and the sanctions imposed.  *Cmplt.* ¶¶ 48-49.  The very next day, on June 29, 2016, Defendant Dean Sermersheim sent a letter to John Doe basically repeating her June 14, 2016 letter, only adding that a preponderance of the evidence supported finding that (1) Jane Doe had fallen asleep on a futon with John Doe on the floor beside her and that she woke up to find that John Doe inappropriately touching her over her clothing and without her consent by placing his hand between her legs and moved it up to her "crotch" areas; and (2) on another occasion, while Jane Doe was sleeping and, John Doe inappropriately touched Jane Doe by digitally penetrating her vagina without her consent.  Defendant Dean Sermersheim also added that John Doe was not a credible witness and Jane Doe was.

There was a failure to apply a burden of proof.   Jane Doe had no supporting documentation for her allegations, which were made five months after the alleged incidents took place with no contemporaneous reports to the university or the police and which were made after a suicide attempt. In contrast, John Doe's statements to the "Notice of Allegations," the Investigators and to the panel of the Advisory Committee on Equity and Defendant Dean Sermersheim consistently denied Jane Doe's allegations, and John Doe had also submitted texts between John Doe and Jane Doe that indicated no

sexual assault occurred.   There was no explanation and no evidence supporting Defendant Dean

Sermersheim's statements about credibility; without a hearing that included sworn testimony and

cross-examination, there was no basis for making credibility judgments.   Only an anti-male bias to find

for the female complainant and against the male respondent can explain Defendant Dean

Sermersheim's purported findings; John Doe was presumed to be guilty.   *Cmplt.* ¶¶ 50-54.   The

sanctions ordered by Defendant Dean Sermersheim did not take into account that John Doe had a

previously unblemished disciplinary record and that he had presented a list of names that would

support his character.   Also, by putting decision-making as to violation and sanction in one person

who is both Dean of Students and Title IX Coordinator, it permitted decision-making to be tailored to

give the appearance of vigorous Title IX enforcement to satisfy the OCR.   *Cmplt.* ¶¶ 55-57.

On July 10, 2016, John Doe timely submitted an appeal to Defendant Vice President Rollock

from Defendant Dean Sermersheim's re-issued determination and sanctions, citing inter alia; (i)

Defendant Dean Sermersheim had failed to provide that factual basis, that she merely restated her

conclusions at greater length; (ii) John Doe never was provided by Purdue an opportunity to review the

Investigator's Report; (iii) "[Defendant] Dean Sermersheim's unsubstantiated conclusion that I am not

a credible witness still has not been corroborated with any facts"; (iv) at the June 6, 2016 meeting, two

of the three panel members had not read the report and all three were hostile; (v) the accusations of

sexual assault were false; (vi) John Doe would not act to jeopardize his Navy ROTC scholarship; and

(viii) John Doe demanded to know the particular evidence used to support Defendant Dean

Sermersheim's determination and to see the Investigator Report.   *Cmplt.* ¶¶ 58-65.

On July 21, 2016, Defendant Vice President Rollock sent a letter to John Doe upholding

Defendant Dean Sermersheim's determination and sanctions without addressing the substantive issues

raised by John Doe's appeal. On August 16, 2016, John Doe involuntarily resigned from Navy ROTC,

his dream of serving his country as a Naval officer destroyed.   *Cmplt.* ¶¶ 66-69, 72.

On October 11, 2016, three months after John Doe's first request for production of records, Purdue Associate Legal Counsel Tandra Foster advised John Doe and his parents could go to Purdue to review the documents.   On October 20, 2016, John Doe and his mother reviewed documents that were made available, but were not permitted to make copies.   *Cmplt.* ¶¶ 70-71, 73-75.

## THE LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS

### A.   Federal Rule of Civil Procedure 12(b)(6).

The current legal standard for dismissal motions brought under Rule 12(b)(6) is generally regarded as established by the U.S. Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544, 564-570 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) ("*Iqbal*").   In *Twombly*, the Supreme Court ruled that allegations of parallel business conduct were consistent with independent conduct responding to market conditions and thus conclusory allegations of conspiracy in the Complaint were insufficient; a Sherman Act § 1 complaint had to allege facts showing "plausible grounds" (not probable grounds) for inferring that an agreement in restraint of trade was made.   In *Iqbal*, the Supreme Court explained that when considering a motion to dismiss, a Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in the plaintiff's favor and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   556 U.S. at 678-679.   The *Iqbal* Complaint did not state a *Bivens* claim for intentional discrimination because facts were not pleaded showing unlawful discrimination.

*Iqbal* and *Twombly* are not invitations to ignore pleaded facts supportive of the asserted claim, but rather they call upon the Courts to review the factual basis of that claim in light of the its legal requirements.   In this manner, the Second Circuit in *Doe v. Columbia*, 831 F.3d 46, 48, 54 (2016), stated that "[o]n a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, to deciding whether the complaint alleges sufficient

facts to survive" and then discussed Title IX law to point out how, applying the motion to dismiss rules, the facts alleged in the *Doe v. Columbia* Complaint plausibly pleaded intentional sex discrimination in accordance with the *Iqbal-Twombly* standards.

A district court, in assessing plausibility, determines whether "the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Twombly,* 550 U.S. at 569 n. 14. *See Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) ("the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible").

**B.      Federal Rule of Civil Procedure 12(b)(1).**

Subject matter jurisdiction is put in issue when the Eleventh Amendment immunity is invoked, *see Wasserman v. Purdue Univ.*, 431 F.Supp.2d 911, 917 (N.D. Ind. 2006), or standing of the plaintiff is challenged, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The legal standards for the Eleventh Amendment and standing are discussed below in the Argument.

**ARGUMENT**

Applying the applicable rules governing dismissal motions, John Doe has pleaded facts sufficient to establish his standing and to state claims for relief under federal and state law.

**I.      JOHN DOE HAS STANDING TO SEEK INJUNCTIVE RELIEF AGAINST DEFENDANT PURDUE'S TITLE IX PROCEDURES THAT DENY <u>CONSTITUTIONAL DUE PROCESS AND ENABLES ERRONEOUS OUTCOMES.</u>**

Defendants' first argument in support of its motion to dismiss, which is an effort to insulate Purdue's unconstitutional system from effective relief, is that the Complaint fails to allege standing for John Doe to sue for an injunction against investigation and adjudication of sexual misconduct cases in the future because, it is stated (incorrectly), John Doe is not or will not be a student at Purdue and does not allege a prospective effect.  (Dfs. Mem. 4-5.)

Here, Defendants misstate the facts and misapply the law.  John Doe is not a former student who says nothing about prospective effect. Quite differently, John Doe, as a result of the

9

constitutionally challenged disciplinary procedures for Title IX complaints, has had his academic record marred by being suspended from Purdue with a loss of his Naval ROTC scholarship and with conditions placed on re-instatement as a student; and as the Complaint alleges, John Doe has sustained tremendous damages including the ongoing loss of career opportunities.  *Cmplt.* ¶¶ 105, 134.  While a plaintiff must demonstrate standing for each form of relief sought, *Friends of the Earth, Inc. v. Laidlaw Environmental* Services, 528 U.S. 167 (2000), John Doe's Complaint easily satisfies the test for standing for injunctive relief stated in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  In *City of Los Angeles*, the U.S. Supreme Court ruled that "[a]bstract injury is not enough" for standing for injunctive relief and that '[t]he plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  461 U.S. at 101-102. Defendants erroneously deny standing because they misread *City of Los Angeles* and its progeny by not paying attention to their factual context and by misapplying language in those cases.

The case chiefly relied upon by Defendants, *Derfus v. City of Chicago*, 42 F.Supp.3d 888 (N.D. Ill. 2014), was a § 1983 action brought by two convicted sex offenders who complained that the City of Chicago prohibited homeless people from registering as homeless pursuant to the Illinois Sexual Offender Registration Act ("SORA"); the two were homeless but were in fact registered under SORA. The District Court held that because the *Derfus* plaintiffs were registered, "their request for prospective relief lacks the real and immediate threat necessary to demonstrate standing."  42 F.Supp.3d at 896. *Derfus* thus does not support the proposition that John Doe lacks standing for injunctive relief: he is a suspended male student who has sustained direct injury and is threatened by injury that is real and immediate from an anti-male discriminatory Title IX process that has denied fundamental due process, imposed an erroneous sanction and inflicted lifetime damages.

Support for Defendants' proposition is not found either in the other cases cited in a footnote. (Ds. Mem. 5 n.2.)  In *Schirmer v. Nagodle*, 621 F.3d 581 (7th Cir. 2010), anti-military protesters

brought a § 1983 action making a facial challenge to the failure to disperse provision in the City of Chicago's disorderly conduct ordinance, but a past arrest alone was ruled insufficient for standing for permanent injunctive relief against the failure to disperse provision on its face.  In *Sierakowski v. Ryan*, 223 F.3d 440 (7th Cir. 2000), a patient who was tested for HIV without his knowledge and consent brought a § 1983 action making a facial challenge to a provision in the Illinois AIDS Confidentiality Act allowing for such testing if in the judgment of the physician such testing is medically indicated to give appropriate diagnosis; standing for a future injunctive bar against the testing provision was denied because it was not reasonably likely that the patient would be subjected to the complained of testing again.  In *Knox v. McGinnis*, 998 F.2d 1405 (7th Cir. 1993), a prisoner who was restrained by a "black box" when he was transported outside the segregation unit brought a § 1983 action making a facial challenge to use of the "black box"; standing for a future injunctive bar of using the "black box" was denied because the prisoner had been released from segregation and would not be subject to the "black box" in the future.  In these three cases, the facially challenged provisions were likely not to be applied again to the plaintiffs and might be applied in the future in a legally acceptable way against other people -- unlike Purdue's woefully deficient Title IX process.

## II.    THE COMPLAINT ALLEGES SUFFICIENT FACTS TO HOLD DEFENDANT DANIELS LIABLE FOR SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983.

Defendants' second argument in support of its motion to dismiss is that the Complaint fails to allege personal participation by Defendant Daniels, Purdue's President, so as to support a claim against him.  (Dfs. Mem. 5-6.)

Again, here, Defendants misstate the facts and misapply the law.  The Complaint, fairly read, alleges that Defendant Daniels was the responsible "The Buck Stops Here" official at Purdue, *Cmplt.* ¶ 7, and at the very least turned a blind eye to an inexcusably egregious deprivation of fundamental due process rights, *Cmplt.* ¶¶ 78-106, 108-135.  While the supervisory liability constituting the requisite personal participation under § 1983 does require that a supervisor "facilitated, approved, conducted, or

11

turned a blind eye to" the alleged wrongdoing, *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010), John Doe's Complaint satisfies this test for supervisory liability under § 1983.   No self-respecting university president can justify what has happened in this case. A pre-discovery motion to dismiss is an inappropriate vehicle with which to deal with the responsibility of Defendant Daniels.   To quote *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003):

> Supervisor liability under Section 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

Further, Defendant Daniels is likely the appropriate official to be charged with implementing prospective relief.  *See Kitchen v. Herbert*, 755 F.3d 1193, 1201-1202 (10th Cir. 2014).

Defendants' argument to the contrary cites to inapposite case law.  *Doe v. Crown Point School Corp.*, 2015 WL 5038093 (N.D. Ind. Aug. 26, 2015), was a case of teacher-student improprieties involving private teacher-student e-mails and texts; all there was in that case was a supervisory relationship of the School administrators to the teacher -- no knowledge and nothing in the ordinary course of administration alerting the administrators to the improprieties.  In *Ellis v. Bennett*, 2013 WL 5278419 (N.D. Ind. Sept. 18, 2013), the defendant police chief was not liable because he did not know about, much less facilitate, approve, conduct, or turn a blind eye to the complained of conduct of an arresting police officer.  In *Baskin v. City of Des Plaines*, 138 F.3d 701 (7th Cir. 1998), the defendant City was dismissed because the plaintiff motorist complaining about what was alleged to be an abusive traffic stop by a traffic cop did not allege any policy on the part of the defendant City.  In *Trentadue v. Redmon*, 619 F.3d 648, an instructor in the Junior ROTC was guilty of sexual abuse of a student, but the supervisor was not liable because he did not know about, much less facilitate, approve, conduct, or turn a blind eye to the complained of conduct of the instructor.  In *Cyngar v. City of Chicago*, 865 F.2d 827 (7th Cir. 1989), a directed verdict at trial was granted as to the Mayor because there was no

evidence of the Mayor's participation in the racially discriminatory actions complained of by the white male police officer plaintiffs.

### III.   THE COMPLAINT ALLEGES SUFFICIENT FACTS TO HOLD DEFENDANT OLIVER AND DEFENDANT AMBERGER LIABLE AS INVESTIGATORS UNDER 42 U.S.C. § 1983.

Defendants' third argument in support of its motion to dismiss is that the Complaint fails to state a claim against the investigators Defendant Oliver and Defendant Amberger, summarizing allegations in Complaint paragraphs 7, 22, 32 and 33. (Dfs. Mem. 6-7.)  This argument cites no supporting case law whatsoever and is premised on a mischaracterization of the Complaint that downplays the investigators' involvement and culpability. Defendants disregard the fact that when John Doe on June 6, 2016 met with a representative of Navy ROTC, who briefly allowed John Doe to see a redacted version of the Investigator's Report that the Purdue Navy ROTC had received, John Doe saw that it falsely stated he had confessed to the allegations in Jane Doe's complaint, which he had not done.  *Cmplt.* ¶¶ 32, 38, 119.  Also ignored by Defendants is that John Doe then met on June 6, 2016 with the hostile three-person panel of the Advisory Committee on Equity and Defendant Dean Sermersheim, and they had the false investigators' report in hand and were only seeking clarification, not the conduct of further investigation.  *Cmplt.* ¶¶ 36, 38-41.  Further ignored by the Defendants are the facts related to the non-disclosure of the report to John Doe and the role that the false investigators' report had in producing an erroneous outcome.  *Cmplt.* ¶¶ 35, 68, 73-76, 92-95, 117-128.

### IV.   THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER 42 U.S.C. § 1983.

Defendants' fourth argument in support of its motion to dismiss is that the Complaint fails to state a claim under 42 U.S.C. § 1983.  (Dfs. Mem. 7-19.)  For this argument, Defendants offer four contentions; the first two limit a bit the § 1983 action but the last two are very wrong.

#### A.   The Individual Defendants Are Persons Under 42 U.S.C. § 1983.

Defendants first assert that the Complaint fails to state a claim against Purdue and its officials in their official capacity because they are not "persons" within the meaning of § 1983, relying upon

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) and *Colburn v. Trustees of Indiana Univ.*, 739 F.Supp. 1268 (S.D. Ind. 1990), *aff'd*, 973 F.2d 581 (7th Cir. 1992).  (Dfs. Mem. 7-8.)  But that assertion does not end this § 1983 action.  Much to the contrary, as was expressly recognized in *Colburn v. Trustees of Indiana Univ.*, 739 F.Supp. at 1280:

> The *Will* decision does not, however, prevent state officials from being sued under § 1983 for "damages [and injunctive relief] in their individual capacities...." S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 6.20 (2d ed. Supp.1989); *Parsons v. Bourff*, 739 F.Supp. 1266, 1267 (S.D.Ind.1989) (individual capacity claims remain after *Will*). Nor does *Will* prevent injunctive relief claims against official capacity actors. *Will,* 109 S.Ct. at 2311 n. 10.

Defendants thus go way too far: the Individual Defendants may be sued in their official capacities for injunctive relief and may be sued as individuals for money damages and injunctive relief.

**B.**  **The Eleventh Amendment Does Not Bar Injunctive Relief In A § 1983 Case.**

Defendants next assert that the Complaint fails to state a claim against Purdue and its officials in their official capacity because the Eleventh Amendment bars suits against Purdue for damages and injunctive relief and against the Individual Defendants in their official capacities for damages under § 1983.  (Dfs. Mem. 8-9.)  But that assertion also does not end this § 1983 action -- to the contrary. Under the longstanding precedent of *Ex Parte Young*, 209 U.S. 123, 159-160 (1908), "suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment under the *Ex parte Young* doctrine."  *MCI Telecommunications Corp. v. Illinois Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999).  "*Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), authorizes, notwithstanding the Eleventh Amendment, suits for prospective injunctive relief against state officials who as in this case are sued in their official capacity."  *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).  *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("To ensure the enforcement of federal law, . . . the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. . . . This standard allows courts to order prospective relief . . . as well as measures ancillary to appropriate prospective relief.")

14

Indeed, in the school disciplinary context, application of *Ex Parte Young* has been widely recognized to authorize injunctive relief to clear a student's academic record: *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995); *Johnson v. Western State Colorado University*, 71 F. Supp.3d 1217, 1230 (D. Colo. 2014).

**C.**     **The Complaint Alleges Violations Of The Fourteenth Amendment.**

Defendants assert that the Complaint fails to allege a violation of the Fourteenth Amendment, contending that no protected liberty and property interests are involved and that due process was afforded.  (Dfs. Mem. 9-17.)  Defendants are wrong.

**1.**     **The Complaint Alleges Protected Liberty and Property Interests.**

Defendants' denial that protected liberty and property interests are involved (Dfs. Mem. 10-13) is contrary to established precedent.  The Fourteenth Amendment's Due Process Clause states that "No state shall . . .  deprive any person of life, liberty, or property without due process of law."  In *Goss v. Lopez*, 419 U.S. 565, 572-576 (1975), the U.S Supreme Court held that public school students have a "property" interest in their education, that any deprivation that is "not *de minimis*" requires some form of due process and that a ten-day suspension is not *de minimis*.  Accordingly, it is generally accepted that a student's interest in pursuing a public education falls within the liberty and property protections of the Fourteenth Amendment.  *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988); *Doe v. Cummins*, 662 F. App'x at 445; *W. v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1364 (10th Cir. 2000) ("No one disputes that a student faced with the possibility of suspension from public school is entitled to due process."); *Davis v. Regis Coll., Inc.*, 830 P.2d 1098, 1100 (Colo. App. 1991) ("a student's interest in attending a public university is a constitutionally protected property right").  There have been a number of courts have specifically recognized that a public university may not suspend or expel a student for alleged sexual misconduct without due process.  *Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6, 15 (D. Me. 2005); *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d 586, 600 (S.D. Ohio 2016)

("A student faced with expulsion or other discipline for violating school rules is entitled to due process before he can be deprived of his interest in continuing his education.")  It follows that John Doe's allegations in the Complaint amply satisfy established law.  *Cmplt.* ¶¶ 80-85, 89.

Defendants argue to the contrary based on inapposite cases and misstating the Complaint.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), involved a non-tenured assistant professor at a public university who was not re-hired and who was found not to have a legitimate claim of entitlement to his non-tenured position.  That ruling has no application here. *Despard v. Bd. Of Trustees of Indiana Univ.*, 2015 WL 4946112 (S.D. Ind. Aug. 18, 2015), does not stand for the proposition that a student does not have a constitutionally protected interest in higher education at a public university.  Quite the opposite, the *Despard* court stated at *3:

> The Supreme Court has assumed, arguendo, the existence of a liberty interest in higher education at a public university, and this Court will do so as well. *See Bd. Of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82-85 (1978) (assuming the existence of a liberty or property interest for the purpose of analyzing petitioner's due process claims).

*Paul v. Davis*, 424 U.S. 693, 700-703, 712 (1976), held that a state tort claim is not by itself a basis for a § 1983 case and that, in order to constitute a harm of constitutional proportion, government conduct which has the effect of stigmatizing an individual must be coupled with additional governmental action which affects or alters an individual's *legal status* also known as "stigma plus." *See Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004) (required for a stigma plus case is a state imposed alteration of the plaintiff's status or rights such as deprivation of property or termination of employment); *Lee TT v. Dowling and Joel P. Bane*, 87 N.Y.2d 699, 664 N.E.2d 1243, 642 N.Y.S.2d 1243 (1996) (protected interest found using stigma plus analysis).  *Katz-Crank v, Haskett*, 843 F.3d 641, 652 (7th Cir. 2016), while applying *Paul v. Davis*, recognizes the stigma plus category, in which the facts of that case did not fit – a self-employed lawyer suing because she had been charged with aiding and abetting a client in embezzlement.  In contrast, a student who has been expelled or suspended for sexual misconduct has certainly suffered stigma plus.

16

*Charleston v. Bd. Of Trustees of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013), does

initially appear to reject the property interest theory, but the Seventh Circuit then goes on to state:

> Instead of accepting a stand-alone interest, we ask whether the student has shown that he has a *legally protected entitlement* to his continued education at the university. *Bissessur [v. Ind. Bd. of Trustees]*, 581 F.3d [599,] at 601–02 [(7th Cir. 2009)]; *William[ v. Wendler]*, 530 F.3d [584,] at 589–90 [(7th Cir. 2008)]. Charleston could establish that he has this legitimate entitlement by pleading the existence of an express or implied contract with the medical school. *See Bissessur,* 581 F.3d at 601.

The focus of the *Charleston* Court was not on sexual misconduct cases, but on not giving a right to a

student who flunked out to claim a constitutional deprivation.  John Doe in his Complaint does in fact

claim a contract and implied contract that Purdue breached.   *Cmplt.*  ¶¶  137-44.   Defendants

characterize John Doe's claim as merely adhering to Purdue's procedures, but that is incorrect,

obviously at odds with the broader rights that are pled in the Complaint. *Cmplt.* ¶¶ 139-142.

### 2.    The Complaint Alleges That Due Process Was Not Afforded.

Defendants' denial that due process was denied is based on the assertion that Purdue has the

statutory right to set its procedures and that those procedures were orderly and fair and were followed

(Dfs. Mem. 13-17) -- which fails to address the constitutional adequacy of the procedures.

For the defense of Purdue's procedures, Defendants rely on a state court decision, *Hartman v.

Keri*, 883 N.E.2d 774 (2008), a case involving a professor's school complaint against two students for

libel and slander.   Whatever sense informal procedures may have for the more typical kind of

university complaint involving faculty-student relations, this case casts light on the clear inadequacy of

such procedures for cases in which a student is accused of sexual assault (a crime in civil society), the

facts are very much in dispute and there are lifetime consequences from a finding of sexual

misconduct.  This case was a "she said/he said" with he having texts to back up his story and she

didn't; this was a case in which the decision-maker made credibility assessments without seeing Jane

Doe and without even a hearing being held; this is a case in which the respondent never was allowed to

see the investigative report in order to prepare a defense; this is a case in which a preponderance of the

evidence burden of proof was supposed to be applied, but the decision rendered reflected the absence

17

of an application of a burden of proof; this is a case in which a hostile 30-minute meeting in which questions are posed based on an investigator report that the respondent has not seen was not an opportunity to be heard. *Cmplt.* ¶¶ 32-72, 90-103. This was Kafkaesque.

While the process that is due varies in the school disciplinary context, *Goss v. Lopez*, 419 U.S. 565, some due process truths need stating. Having a burden of proof is a well-established basic constitutional requirement, *Tumey v. Ohio*, 273 U.S. 510 (1927); but here, there was no hearing, no statements taken in investigation were sworn, and Defendants effectively used a presumption of male guilt that negated having a preponderance of the evidence burden of proof. The roles of prosecutor, witness and judge need to be kept separate, *Tumey v. State of Ohio*, 273 U.S. at 534; but here, there was no hearing and what was a prosecutorial investigators' report was treated as dispositive of the facts. Cross-examination, missing here, has been recognized by courts as the greatest legal engine invented for discovery of the truth, *Lilly v. Virginia*, 527 U.S. 116, 124 (1999), and required for basic due process in campus disciplinary cases, *Donohue v. Baker*, 976 F.Supp. 136 (N.D.N.Y. 1997).

Defendants' attack on John Doe's procedural due process claim is based on misapplication of *B.S. ex rel Schneider v. Bd. Of School Trustees*, 255 F.Supp.2d 891, 898 (N.D. Ind. 2003), and a mischaracterization of John Doe's procedural due process claim as "narrow." (Dfs. Mem. 16.) There are two large dispositive differences between *B.S. ex rel Schneider* and this case: (1) the plaintiff in *B.S. ex rel Schneider* had a hearing, whereas John Doe did not; and (2) corroborating evidence of the complainant's story in *B.S. ex rel Schneider* diminished the need for cross-examination, whereas in this case, the corroborating evidence was on John Doe's side and there was a heightened need for cross-examination to have a reliable basis for credibility assessments. Concomitantly, the snippets of problems listed by Defendants citing to paragraphs 59-64 of the Complaint (Dfs. Mem. 16-17) do not accurately state John Doe's procedural due process case. Given what happened in the case, *Cmplt.* ¶¶ 32-72, 90-103, John Doe was not given meaningful notice of the case against him, and John Doe was

not given a meaningful opportunity to be heard.  That's about as basic as it gets.  *Sigma Chi Fraternity v. Regents of Univ. of Colo.,* 258 F. Supp. 515, 528 (D.Colo. 1966).

No doubt because John Doe has characterized the Purdue process as Kafkaesque, Defendants deny that there was a denial of substantive due process, which is "most often described as an abuse of government power which 'shocks the conscience.'" *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005), *citing Rochin v. California*, 342 U.S. 165 (1952).  But what happened in this case is arguably more disturbing than the involuntary pumping of a suspect's stomach to find drugs in *Rochin*.

### D.    The Qualified Immunity Defense Is Not Available To Individual Defendants On This Motion To Dismiss.

Defendants finally assert as to the § 1983 action that the Individual Defendants have qualified immunity against John Doe's allegations that he is entitled to more due process than notice and an opportunity to be heard.  (Dfs. Mem. 17-19.)  That contention is flawed because, as discussed above, (i) the way that Purdue's procedures worked here is that John Doe was denied notice and opportunity to be heard; and (ii) the due process rights sought by John Doe are basic and well established.  The case cited by Defendants, *Linwood v. Bd. of Educ. of the City of Peoria*, 463 F.2d 763, 770 (7th Cir. 1972), did say expulsion did not necessarily require an adjudicatory hearing, but that was stated in the context of student disobedience being the issue, not sexual misconduct and lifetime consequences.

In any event, the qualified immunity defense should be seen as premature because a qualified immunity claim is generally addressed by way of summary judgment. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("summary judgment provides the typical vehicle for asserting a qualified immunity defense").  Raising a qualified immunity defense via motion to dismiss, "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen,* 371 F.3d at 1201.  "[I]t is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'"  *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996) (emphasis in original)."  *Seamons v. Snow,* 84 F.3d 1226, 1238 (10th Cir.1996) (reversal of Rule

12(b)(6) motion to dismiss on qualified immunity because the complaint, and all inferences in favor of plaintiff, established a claim that defendants violated clearly established law).

Defendants, who did not give meaningful notice and opportunity to be heard, cannot turn around to invoke the absolute privilege for a quasi-judicial process on the ground that John Doe is seeking to have due process observed.  The cases cited by Defendants do not support application of an absolute privilege in this case.  *Tobin for Governor v. Illinois State Bd. of Ed.*, 268 F.3d 517 (7th Cir. 2001), involved a quasi-judicial election function performed by the State Board of Elections.  In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the U.S. Supreme Court rejected an absolute privilege, granting only a qualified privilege, to a prison discipline committee.  *Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016), involved a quasi-judicial licensing function performed by the liquor commission.

## V.    THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER TITLE IX.

Defendants' fifth argument in support of its motion to dismiss is that the Complaint fails to state an actionable claim under Title IX.  (Dfs. Mem. 19-21.)  Defendants first assert that the Complaint does not state a claim against the Individual Defendants under Title IX (Dfs. Mem. 19-20); it was a strawman contention because the Complaint did not sue the Individual Defendants under Title IX, only Purdue, *see Cmplt.* ¶¶ 108-133, Prayer for Relief (ii).  Defendants' main contention is that the Complaint's (supposedly) conclusory allegations of gender bias fail to plead plausible facts showing John Doe was disciplined because he is male (Dfs. Mem. 20-21); the 68-page Complaint, however, is anything but conclusory, including as to gender bias.

While the Title IX plaintiff "must plead specific facts sufficient to support a plausible inference that the defendant is liable for" intentional sex discrimination, *Doe v. Columbia*, 831 F.3d at 48, and the failure to do so is insufficient to state a Title IX claim, *Ludlow v Northwestern Univ.*, 79 F. Supp.3d 824, 835-836 (N.D. Ill. 2015), the Complaint here does plead "specific facts sufficient to support a plausible inference that the defendant is liable for" intentional sex discrimination.  The Complaint details the specifics of the sexual misconduct case against John Doe, pointing to how only anti-male

bias could explain the misconduct decision, the findings, the sanction and the allowance of a conflict of interest, *Cmplt.* ¶¶ 42, 43, 54, 57, 72; and the Complaint then, in stating the Title IX claim, reviews the misconduct determination, the "findings," the sanction, the treatment of the "proof," the victim centered process in the context of males being the respondents, the presumption of male guilt, the conflict of interest of Dean Sermersheim, the deficient procedures used to prosecute males and the sacrifice of John Doe as a male such that the "totality of the circumstances" supports finding gender bias the motivating factor in an erroneous discipline, *Cmplt.* ¶¶ 115-133.

That the Complaint here more than sufficiently pleads Title IX intentional discrimination is consistent with: *Doe v. Columbia*, 831 F.3d 46 (allegations of disregard of facts of consensual sex, investigator bias, campus political pressures to find males guilty and deficient procedures supported "erroneous outcome" case), *Yusuf v. Vassar Corp.*, 35 F.3d 709 (2d Cir. 1994) (allegations of "evidentiary weaknesses behind the finding of an offense," "particularized strengths of the defense" and "procedural flaws affecting the proof" support "an "erroneous outcome" claim); *Doe v. Washington and Lee University*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ("totality of circumstances," including procedural flaws reflecting a practice of railroading males, supportive of Title IX "erroneous outcome" case); *Prasad v. Cornell Univ.*, 2016 WL 3212079 (N.D.N.Y. Feb, 24, 2016) ("totality of circumstances," including procedural deficiencies from an investigator model of Title IX enforcement, supportive of Title IX "erroneous outcome" case); *Neal v. Colorado State Univ.-Pueblo*, 2017 WL 633045 (D. Colo. Feb 16, 2017) (follows *Doe v. Columbia* in finding gender bias "erroneous outcome" based on circumstances of sexual misconduct case).

Defendants nevertheless make a series of ill-conceived statements to support their attack on the Title IX claim.   (Dfs. Mem. 20-21.) Defendants' statements are just false or can only be viewed deliberately misleading given, as discussed above, what is alleged in the Complaint.

Defendants' statement "Plaintiff does not allege any conduct by any defendant expressing or implying that the investigation, determination, and sanction in Plaintiff's case was attributable to his

21

gender" (Dfs. Mem. 20) is at best misdirection.  The Complaint is replete with allegations the conduct of the case and its outcome were due to John Doe's gender.  *Cmplt.* ¶¶ 42-43, 51-57, 72, 115-133.

Defendants' statement "Plaintiff has not alleged any facts to show that Purdue University would have investigated or decided the case differently or sanctioned Plaintiff differently if Plaintiff were a different gender" (Dfs. Mem. 20) is false.  The Complaint is replete with such allegations.  *Cmplt.* ¶¶ 42, 43, 51-57, 72, 115-133.

Defendants' statement "[t]he Complaint's allegation that there are 'limited procedural protections afforded to male students, like John Doe, in sexual misconduct cases' (ECF No. 1 at ¶ 18) stops short of alleging different procedural protections afforded to similarly situated female students in sexual misconduct cases" (Dfs. Mem. 20-21) assumes, contrary to the Complaint, there are similarly situated female students in sexual misconduct cases and misses the point of the problem of limited procedures.  The practical reason why due process matters is so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts."  *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).   Purdue's reliance on an investigator report not shown to the respondent, lack of any hearing, lack of sworn testimony and cross-examination, failure to apply a burden of proof, the allowance of a conflict of interest, victim centered process and presumption of male guilt, among other things, resulted in an "erroneous outcome" based on erroneous and distorted conception of the facts. *Cmplt.* ¶¶ 42, 43, 51-57, 72, 115-133.

Defendants' statement that "[a]n allegation of bias in favor of alleged victims of sexual assault and against students accused of sexual assault is not an allegation of gender bias" (Dfs. Mem. 21) is, in the view of John Doe's counsel, incorrect.  While the District Court in *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d at 607, is support for Defendants' statement, the court in *Univ. of Cincinnati* did so based expressly on the theory that females could be disciplinary respondents too. But the reality is that almost all sexual misconduct cases are brought by females against males.  Here, the Complaint alleges that all students who have expelled or suspended from Purdue as a result of sexual misconduct

22

complaints are male and male respondents in such cases are almost invariably found guilty. *Cmplt.* ¶¶

132-133.  Dealing with reality, the Second Circuit in *Doe v. Columbia*, 831 F.3d at 58 n. 11, reflected

the superior wisdom when stating:

> A defendant is not excused from liability for discrimination because the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action.  A covered university that adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex.

Notably, *Doe v. Univ. of Cincinnati* relied upon *Yu v. Vassar College*, 97 F.Supp.3d 448

(S.D.N.Y. 2015), which was effectively overruled *sub silentio* in *Doe v. Columbia*.  Columbia in *Doe*

*v. Columbia* had relied upon the *Yu* case, to which Doe's Reply Brief stated (pp. 25-26):

> *Yu v. Vassar*, No. 13-cv-4373, 2015 WL 1499408 (S.D.N.Y. Mar. 31, 2015), is wrongly decided and should not be considered support for Columbia on this point.  In the *Yu* case: the male freshman, a Chinese national, engaged in sex for the first time with a sexually experienced female sophomore after both had been voluntarily drinking; the female afterward engaged in social media texting with Mr. Yu saying what a good time she had; the female never filed a complaint with the police and waited for a year before bringing a complaint with the university; the female's father was a professor at Vassar and the hearing panel consisted of fellow professors; there were but three weeks between the charge of sexual misconduct and the expulsion order; the *Yu* district court decision upholding the Star Chamber proceedings resulting in the expulsion of Mr. Yu against all claims was rightly condemned by K. C. Johnson, "The Railroading Of Peter Yu," *Minding The Campus*, http://mindingthecampus.org/2015/04/the-railroading-of-peter-yu/.  To Mr. Yu, what we like to think of as the American commitment to law, the fair administration of justice and due process of law is fraudulent.

Defendants' statement that the Complaint does not allege any Purdue procedure has a facial

gender bias and that John Doe cannot state a claim by alleging that disciplinary procedures that are

gender-neutral on their face disproportionately affect men, citing *Doe v. Univ. of Cincinnati* (Dfs.

Mem. 21), is wrong.  The Complaint alleges at length that the Purdue procedures have operated *de*

*facto* in a gender biased way and has produced a gender biased erroneous outcome and a gender biased

sanction.  *Cmplt.* ¶¶ 42, 43, 51-57, 72, 115-133.  For reasons discussed above, Defendants' reliance

upon *Doe v. Univ. of Cincinnati* as to Title IX issues is mistaken.

Defendants' statement that "Plaintiff specifically disclaims any allegation that Purdue engaged in selective enforcement against him," citing paragraph 55 of the Complaint (Dfs. Mem. 21), is false. The Complaint's paragraph 55 does not disclaim selective enforcement, but rather alleges that Dean Sermersheim, in sanctioning John Doe did not take into account his previously unblemished disciplinary record and his long list of character references. *Cmplt.* ¶ 55. Quite differently, the Complaint's paragraph 115 identifies the two generally accepted categories of challenges to university disciplinary proceedings for sex discrimination: (i) "erroneous outcome" and (ii) "severity of punishment/selective initiation." *Cmplt.* ¶ 115; *see Yusuf v. Vassar Corp.*, 35 F.3d at 714-715. John Doe expressly relies upon both categories. *Cmplt.* ¶¶ 115-133, particularly ¶¶ 116 and 129.

Defendants' statement that the Obama Administration's "enforcement priorities" are not the basis of a Title IX claim (Dfs. Mem. 21) is not supported by any case law and wrongly ignores *Doe v. Columbia*. The Complaint establishes for this motion: that the Obama Administration, through the OCR, has pressured colleges and universities to aggressively pursue investigations of sexual assaults on campuses; that colleges and universities, including Purdue, are fearful of being investigated by the OCR and losing federal funding; that the OCR has created a significant amount of pressure to treat all those accused of sexual misconduct with a presumption of guilt; and that Purdue's mishandling of John Doe's case was wrongfully affected by federal pressure. *Cmplt.* ¶¶ 13, 15-17, 130.

## VI.   IF DEFENDANTS DO NOT WAIVE ELEVENTH AMENDMENT IMMUNITY TO PERMIT EFFICENT LITIGATION OF ALL CLAIMS, THEN THE STATE LAW CLAIMS FOR BREACH OF CONTRACT AND ESTOPPEL SHOULD BE DISMISSED WITHOUT PREJUDICE.

Defendants' sixth argument in support of its motion to dismiss is the Eleventh Amendment bars the state law claims for breach of contract and estoppel.  (Dfs. Mem. 22.)  The pleading of breach of contract and estoppel is sound in terms of state law theories. *Chang v. Purdue Univ.*, 985 N.E.2d 35, 46 (Ind. Ct. App. 2013); *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013); *First Nat'l Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949 (Ind. 1991) (recognition of estoppel and

promissory estoppel when no contract was effective).  But because supplemental jurisdiction does not extend to a claim barred by the Eleventh Amendment, *Raygor v. Regents of Univ. Of* Minnesota, 534 U.S. 533, 542 (2002), if Defendants do not waive Eleventh Amendment immunity to permit efficient litigation of all claims, then the Court should dismiss the state law claims without prejudice.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff John Doe requests that the Court enter an Order denying Defendants' Motion to Dismiss and granting such other and further relief as deemed just and proper, including granting leave to amend to cure any deficiency in the Complaint.

**Dated:   New York, New York**
       **June 9, 2017**                                          Respectfully submitted,

ALEX MENDOZA LAW, LLC                    NESENOFF & MILTENBERG, LLP
By: /s/Roberto Alejandro Mendoza         By: /s/Philip A. Byler
Roberto Alejandro Mendoza, Esq. 30766-49   Philip A. Byler, Esq.
Paul Luka. Esq.                              Andrew T. Miltenberg, Esq.
6950 Indianapolis Blvd.,                  Diana Warshow, Esq.
Hammond, Indiana 46324                 363 Seventh Avenue, Fifth Floor
 (219) 200-2000                          New York, New York 10001
alex@alexmendozalaw.com               (212) 736-4500
paul@alexmendozalaw.com               pbyler@nmllplaw.com
(LOCAL COUNSEL)                     **Attorneys for Plaintiff John Doe**
**Attorneys for Plaintiff John Doe**

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned attorney certifies that he served the attached document/s on all parties of record via the Court's CM/ECF system.

<u>/s/ Roberto Alejandro Mendoza</u>
Roberto Alejandro Mendoza 30766-49
ALEX MENDOZA LAW, LLC
6950 S. Indianapolis Blvd.
Hammond, IN 46324
(219) 200-2000