IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

**JOHN DOE**,

           Plaintiff,

v.

**PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR.**, individually and as agent for Purdue University, **ALYSA CHRISTMAS ROLLOCK**, individually and as agent for Purdue University, **KATHERINE SERMERSHEIM**, individually and as agent for Purdue University, **ERIN OLIVER**, individually and as agent for Purdue University, **JACOB AMBERGER**, individually and as agent for Purdue University,

           Defendants.

CIVIL ACTION

No. 2:17-cv-00033-PRC

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff JOHN DOE, by and through his attorneys Nesenoff & Miltenberg LLP state as follows:

1. On June 23, 2017, Defendants' motion to dismiss was fully briefed and is still currently pending.

[1]

2. On September 7, 2017, the Secretary of the U.S. Department of Education, Betsy DeVos, gave a speech announcing that there will be a revamping of Title IX guidance. The speech may be found at: https://www.ed.gov/news/speeches/secretary-devos-prepared-remarks-title-ix-enforcement. Attached as **Exhibit A** to this Notice is a copy. Among the statements made by Secretary DeVos were the following:

> One person denied due process is one too many.
> . . . .
>
> [N]o student should be forced to sue their way to due process.
>
> A system is not fair when the only students who can navigate it are those whose families can afford to buy good lawyers — or any lawyer at all.
>
> No school or university should deprive any student of his or her ability to pursue their education because the school fears shaming by — or loss of funding from — Washington.
> . . . .
>
> It's no wonder so many call these proceedings "kangaroo courts."
>
> Washington's push to require schools to establish these quasi-legal structures to address sexual misconduct comes up short for far too many students.
> . . . .
>
> The era of "rule by letter" is over.
>
> Through intimidation and coercion, the failed system has clearly pushed schools to overreach. With the heavy hand of Washington

tipping the balance of her scale, the sad reality is that Lady Justice is not blind on campuses today.

This unraveling of justice is shameful, it is wholly un-American, and it is anathema to the system of self-governance to which our Founders pledged their lives over 240 years ago.

There must be a better way forward.

Every survivor of sexual misconduct must be taken seriously. Every student accused of sexual misconduct must know that guilt is not predetermined.
. . . .

[A]ny school that uses a system biased toward finding a student responsible for sexual misconduct also commits discrimination.

A better way begins with a re-framing.
. . . .

[T]he rights of one person can never be paramount to the rights of another.

A better way means that due process is not an abstract legal principle only discussed in lecture halls.

Due process is the foundation of any system of justice that seeks a fair outcome. Due process either protects everyone, or it protects no one.

The notion that a school must diminish due process rights to better serve the "victim" only creates more victims.
. . . .

Schools tend to do a good job, as they should, of making appropriate accommodations that don't infringe on the rights of others.

While a Title IX complaint is pending, schools usually make academic accommodations such as adjusting schedules, changing dorm assignments, and postponing papers or exams.

But there is a fundamental difference between making these sorts of accommodations for accusers -- and schools which seek to punish the accused before a fair decision has been rendered.

**Respectfully submitted,**

ALEX MENDOZA LAW, LLC
By: /s/Roberto Alejandro Mendoza
Roberto Alejandro Mendoza 30766-49
Paul Luka
6950 Indianapolis Blvd.,
Hammond, Indiana 46324
(219) 200-2000
alex@alexmendozalaw.com
(LOCAL COUNSEL)
**Attorneys for Plaintiff John Doe**

NESENOFF & MILTENBERG, LLP
By: /s/Philip A. Byler
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
pbyler@nmllplaw.com
**Attorneys for Plaintiff John Doe**

## **CERTIFICATE OF SERVICE**

    The undersigned attorney certifies that, on the date listed above in the electronic file stamp, he served the attached document/s on all parties of record via the Court's CM/ECF system.

                                                /s/Roberto Alejandro Mendoza
                                                   Attorney for Plaintiff

# EXHIBIT A

Search...

# Secretary DeVos Prepared Remarks on Title IX Enforcement

SEPTEMBER 7, 2017

Contact:   Press Office, (202) 401-1576, press@ed.gov (mailto: press@ed.gov)

Thank you Dean Henry Butler for the kind introduction and for the opportunity to be here. Thank you President Angel Cabrera for your leadership of George Mason University.

And to the students and faculty with us today, thank you for making time to be here during this busy day of classes.

It is a great honor for me to be here today to address a very important topic.

Earlier this year marked the 45th anniversary of Title IX, the landmark legislation passed by Congress that seeks to ensure: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

The amendment to the Higher Education Act was initially proposed by Democrat Senator Birch Bayh, signed into law by Republican President Richard Nixon, and was later renamed for Congresswoman Patsy Mink, herself a victim of both sex-based and race-based discrimination as a third-generation Japanese-American.

Mink's law has served an important role in shaping our Nation's educational environment.

Title IX has helped to make clear that educational institutions have a responsibility to protect every student's right to learn in a safe environment and to prevent unjust deprivations of that right.

It is a responsibility I take seriously, and it is a responsibility that the Department of Education's Office for Civil Rights takes seriously.

We will continue to enforce it and vigorously address all instances where people fall short.

Sadly, too many fall short when it comes to their responsibility under Title IX to protect students from sexual misconduct, acts of which are perpetrated on campuses across our nation.

The individual impacts of sexual misconduct are lasting, profound, and lamentable. And the emotions around this topic run high for good reason.

We need look no further than just outside these walls to see evidence of this. Yet I hope every person—even those who feel they disagree—will lend an ear to what I outline today.

I'm glad we live in a country where an open debate of ideas is welcomed and encouraged. Debate, of course, comes with responsibilities. Violence is never the answer when viewpoints diverge.

I appreciate that you have the opportunity to attend a university that promotes a higher level of discourse.

So let me be clear at the outset: acts of sexual misconduct are reprehensible, disgusting, and unacceptable. They are acts of cowardice and personal weakness, often thinly disguised as strength and power.

Such acts are atrocious, and I wish this subject didn't need to be discussed at all.

Every person on every campus across our nation should conduct themselves with self-respect and respect for others.

But the current reality is a different story.

Since becoming Secretary, I've heard from many students whose lives were impacted by sexual misconduct: students who came to campus to gain knowledge, and who instead lost something sacred.

We know this much to be true: one rape is one too many.

One assault is one too many.

One aggressive act of harassment is one too many.

One person denied due process is one too many.

This conversation may be uncomfortable, but we must have it. It is our moral obligation to get this right.

Campus sexual misconduct must continue to be confronted head-on. Never again will these acts only be whispered about in closed-off counseling rooms or swept under the rug.

Not one more survivor will be silenced.

We will not abandon anyone. We will amplify the voices of survivors who too often feel voiceless.

While I listened to the stories of many survivors and their families over these past several months, I couldn't help but think of my own family.

I thought about my two daughters.

And I thought about my two sons.

Every mother dreads getting that phone call: a despondent child calling with unthinkable news.

I cannot imagine receiving that call.

Too many mothers and fathers have lost their children. I pleaded with parents in the audience to share their stories, and each time their pain was palpable.

I'm haunted by the story one brave young woman told me. She was targeted and victimized by her college boyfriend—someone she thought cared about her.

He looked on as his roommate attempted to rape her. She escaped her harrowing encounter, but too many do not.

For too many, an incident like this means something even worse.

There is no way to avoid the devastating reality of campus sexual misconduct: lives have been lost. Lives of victims. And lives of the accused.

Some of you hearing my voice know someone who took his or her own life because they thought their future was lost; because they saw no way out; because they lost hope.

One mother told me her son has attempted to take his life multiple times. Each time she opens the door to his bedroom, she doesn't know whether she will find him alive or dead.

No mother, no parent, no student should be living that reality.

We are here today for those families. We need to remember that we're not just talking about faceless "cases."

We are talking about people's lives. Everything we do must recognize this before anything else.

And we're here today because the previous administration helped elevate this issue in American public life. They listened to survivors, who have brought this issue out from the backrooms of student life offices and into the light of day.

I am grateful to those who endeavored to end sexual misconduct on campuses.

But good intentions alone are not enough. Justice demands humility, wisdom and prudence.

It requires a serious pursuit of truth. And so, this is why I recently hosted a summit to better understand all perspectives: survivors, falsely accused students and educational institutions, both K-12 and higher ed. I wanted to learn from as many as I could because a conversation that excludes some becomes a conversation for none. We are having this conversation with and for all students.

Here is what I've learned: the truth is that the system established by the prior administration has failed too many students.

Survivors, victims of a lack of due process, and campus administrators have all told me that the current approach does a disservice to everyone involved.

That's why we must do better, because the current approach isn't working.

Washington has burdened schools with increasingly elaborate and confusing guidelines that even lawyers find difficult to understand and navigate.

Where does that leave institutions, which are forced to be judge and jury?

Where does that leave parents?

Where does that leave students?

This failed system has generated hundreds upon hundreds of cases in the Department's Office for Civil Rights, mostly filed by students who reported sexual misconduct and believe their schools let them down.

It has also generated dozens upon dozens of lawsuits filed in courts across the land by students punished for sexual misconduct who also believe their schools let them down.

The current failed system left one student to fend for herself at a university disciplinary hearing.

She told her university that another student sexually assaulted her in her dorm room. In turn, her university told her she would have to prosecute the case herself.

Without any legal training whatsoever, she had to prepare an opening statement, fix exhibits and find witnesses.

"I don't think it's the rape that makes the person a victim," the student told a reporter. She said it is the failure of the system that turns a survivor into a victim.

This is the current reality.

You may have recently read about a disturbing case in California. It's the story of an athlete, his girlfriend and the failed system.

The couple was described as "playfully roughhousing," but a witness thought otherwise and the incident was reported to the university's Title IX coordinator.

The young woman repeatedly assured campus officials she had not been abused nor had any misconduct occurred. But because of the failed system, university administrators told her they knew better.

They dismissed the young man, her boyfriend, from the football team and expelled him from school.

"When I told the truth," the young woman said, "I was stereotyped and was told I must be a 'battered' woman, and that made me feel demeaned and absurdly profiled."

This is the current reality.

Another student at a different school saw her rapist go free. He was found responsible by the school, but in doing so, the failed system denied him due process. He sued the school, and after several appeals in civil court, he walked free.

This is the current reality.

A student on another campus is under a Title IX investigation for a wrong answer on a quiz.

The question asked the name of the class Lab instructor. The student didn't know the instructor's name, so he made one up—Sarah Jackson—which unbeknownst to him turned out to be the name of a model.

He was given a zero and told that his answer was "inappropriate" because it allegedly objectified the female instructor.

He was informed that his answer "meets the Title IX definition of sexual harassment." His university opened an investigation without any complainants.

This is the current reality.

I also think of a student I met who suffered abuse and was in and out of rehab and recovery. But he didn't know a thing about higher education.

He Googled "how to apply to college" and applied to one nearby, an HBCU. He was accepted and became the first in his family to attend college.

The student told me that as graduation approached, his grandmother beamed with pride. She had already purchased a flight and picked out her Sunday best for the occasion.

But three weeks before graduation, he saw his future dashed.

This young man was suspended via a campus-wide email which declared him a "threat to the campus community." When he tried to learn the reason for his suspension, he was barred from campus.

He was not afforded counsel by the college and couldn't afford counsel himself. Eventually, he found a lawyer who submitted a Freedom of Information Act request pro bono—but would do no more.

Only through the FOIA was he able to discover he had been accused of sexual harassment, but he was still denied notice of the specific allegations, and he remained suspended.

This young man was denied due process. Despondent and without options or hope, after five years of sobriety, he relapsed and attempted to take his own life.

He felt he had let down everyone who mattered to him—including, most of all, his grandmother who was so much looking forward to seeing the first member of her family don a cap and gown.

"Whatever your accusers say you are," he told me, "is what people believe you are."

That is the current reality.

Here is what it looks like: a student says he or she was sexually assaulted by another student on campus. If he or she isn't urged to keep quiet or discouraged from reporting it to local law enforcement, the case goes to a school administrator who will act as the judge and jury.

The accused may or may not be told of the allegations before a decision is rendered. If there is a hearing, both the survivor and the accused may or may not be allowed legal representation.

Whatever evidence is presented may or may not be shown to all parties. Whatever witnesses—if allowed to be called—may or may not be cross-examined. And Washington dictated that schools must use the lowest standard of proof.

And now this campus official—who may or may not have any legal training in adjudicating sexual misconduct—is expected to render a judgement. A judgement that changes the direction of both students' lives.

The right to appeal may or may not be available to either party. And no one is permitted to talk about what went on behind closed doors.

It's no wonder so many call these proceedings "kangaroo courts."

Washington's push to require schools to establish these quasi-legal structures to address sexual misconduct comes up short for far too many students.

The current system hasn't won widespread support, nor has it inspired confidence in its so-called judgments.

The results of the current approach? Everyone loses.

Some suggest that this current system, while imperfect, at least protects survivors and thus must remain untouched. But the reality is it doesn't even do that.

Survivors aren't well-served when they are re-traumatized with appeal after appeal because the failed system failed the accused. And no student should be forced to sue their way to due process.

A system is not fair when the only students who can navigate it are those whose families can afford to buy good lawyers—or any lawyer at all.

No school or university should deprive any student of his or her ability to pursue their education because the school fears shaming by—or loss of funding from—Washington.

For too long, rather than engage the public on controversial issues, the Department's Office for Civil Rights has issued letters from the desks of un-elected and un-accountable political appointees.

In doing so, these appointees failed to comply with basic legal requirements that ensure our so-called "fourth branch of government" does not run amok.

Unfortunately, school administrators tell me it has run amok. The Office for Civil Rights has "terrified" schools, one said.

Another said that no school feels comfortable calling the Department for simple advice, for fear of putting themselves on the radar and inviting an investigation.

One university leader was rightly appalled when he was asked by an Office for Civil Rights official: "Why do you care about the rights of the accused?"

Instead of working with schools on behalf of students, the prior administration weaponized the Office for Civil Rights to work against schools and against students.

One administrator summed this up clearly when he told me his staff should be "forward looking advocates for how to stop sexual misconduct."

Instead, he said, "they've been forced to be backward looking data collectors" to meet the Department's demands.

Faculty from the University of Pennsylvania's law school also voiced grave concerns about the current approach. They wrote, and I quote, "it exerts improper pressure upon universities to adopt procedures that do not afford fundamental fairness."

Too often, they wrote, "outrage at heinous crimes becomes a justification for shortcuts" in processes.

Ultimately, they concluded, "there is nothing inconsistent with a policy that both strongly condemns and punishes sexual misconduct and ensures a fair adjudicatory process."

These professors are right. The failed system imposed policy by political letter, without even the most basic safeguards to test new ideas with those who know this issue all too well.

Rather than inviting everyone to the table, the Department insisted it knew better than those who walk side-by-side with students every day. That will no longer be the case.

The era of "rule by letter" is over.

Through intimidation and through a broken system, our schools have failed. With the heavy hand of Washington tipping the scales of justice, the sad reality is that Lady Justice is not blind on campuses today.

This unraveling of justice is shameful, it is wholly un-American, and it is anathema to the system of self-governance to which our Founders pledged their lives over 240 years ago.

There must be a better way forward.

Every survivor of sexual misconduct must be taken seriously. Every student accused of sexual misconduct must know that guilt is not predetermined.

These are non-negotiable principles.

Any failure to address sexual misconduct on campus fails all students.

Any school that refuses to take seriously a student who reports sexual misconduct is one that discriminates.

And any school that uses a system biased toward finding a student responsible for sexual misconduct also commits discrimination.

A better way begins with a re-framing.

This conversation has too often been framed as a contest between men and women or the rights of sexual misconduct survivors and the due process rights of accused students.

The reality is, however, a different picture.

There are men and women, boys and girls, who are survivors, and there are men and women, boys and girls who are wrongfully accused.

I've met them personally. I've heard their stories. And the rights of one person can never be paramount to the rights of another.

A better way means that due process is not an abstract legal principle only discussed in lecture halls.

Due process is the foundation of any system of justice that seeks a fair outcome. Due process either protects everyone, or it protects no one.

The notion that a school must diminish due process rights to better serve the "victim" only creates more victims.

A better way also means we shouldn't demand anyone become something they are not.

Students, families, and school administrators are generally not lawyers and they're not judges. We shouldn't force them to be so for justice to be served.

A better way is also being more precise in the definition of sexual misconduct.

Schools have been compelled by Washington to enforce ambiguous and incredibly broad definitions of assault and harassment.

Too many cases involve students and faculty who have faced investigation and punishment simply for speaking their minds or teaching their classes.

Any perceived offense can become a full-blown Title IX investigation.

But if everything is harassment, then nothing is.

Punishing speech protected by the First Amendment trivializes actual harassment. It teaches students the wrong lesson about the importance of free speech in our democracy.

Harassment codes which trample speech rights derail the primary mission of a school to pursue truth.

A better way is ultimately about recognizing that schools exist—first and foremost—to educate. Their core obligation under Title IX is to ensure all students can pursue their education free of discrimination.

Schools tend to do a good job, as they should, of making appropriate accommodations that don't infringe on the rights of others.

While a Title IX complaint is pending, schools usually make academic accommodations such as adjusting schedules, changing dorm assignments, and postponing papers or exams.

But there is a fundamental difference between making these sorts of accommodations for accusers—and schools which seek to punish the accused before a fair decision has been rendered.

There is a competency gap here.

Washington has insisted that schools step into roles that go beyond the mission of these institutions.

This doesn't mean schools don't have a role. They do. But we should also draw on medical professionals, counselors, clergy, and law enforcement for their expertise.

And so, a better way includes pursuing alternatives that assist schools in achieving justice for all students.

In order to ensure that America's schools employ clear, equitable, just, and fair procedures that inspire trust and confidence, we will launch a transparent notice-and-comment process to incorporate the insights of all parties in developing a better way.

We will seek public feedback and combine institutional knowledge, professional expertise, and the experiences of students to replace the current approach with a workable, effective, and fair system.

To implement sustainable solutions, institutions must be mindful of the rights of every student. No one benefits from a system that does not have the public's trust—not survivors, not accused students, not institutions and not the public.

Other groups have already made progress on these difficult issues.

The American Bar Association established a task force comprised of lawyers and advocates from diverse backgrounds and varying perspectives.

They found consensus and offered substantive ideas on how we can do better. Schools should find their recommendations useful.

The American College of Trial Lawyers also gathered experts from across the country to produce reasonable responses to the current failed system.

An open letter from Harvard's law school faculty provides important perspectives and insights that will be helpful as we pursue a better way.

Another promising idea comes from two former prosecutors, Gina Smith and Leslie Gomez.

Both of them are Special Agents, specializing in sex-based cases. They comprise the Center, along with an expanding number of states today.

The model sets up a voluntary, opt-in Center where professionally-trained experts handle Title IX investigations and adjudications.

It looks something like this: in partnership among states and their Attorneys General, participating schools refer to the Center any Title IX incident which rises to a criminal level.

The Center cooperates with local law enforcement and has access to resources to collect and preserve forensic evidence, facilitate—but never require—criminal prosecutions, and apply fair investigative techniques to gather and evaluate all relevant evidence to determine whether sexual misconduct occurred.

This insures that students are not charged by school-based tribunals on the basis of hearsay or incomplete evidence.

This model allows educators to focus on what they do best: educate.

These are only a few examples that allow for a more effective and equitable enforcement of Title IX.

Our interest is in exploring all alternatives that would help schools meet their Title IX obligations and protect all students. We welcome input and look forward to hearing more ideas.

Schools have an opportunity to help shape and improve the system for all their students. But they also have a responsibility to do better by their students.

This is not about letting institutions off the hook. They still have important work to do.

A survivor told me that she is tired of feeling like the burden of ensuring her school addresses Title IX falls on her shoulders.

She is right. The burden is not hers, nor is it any student's burden.

We need to act as if any of these students were one of our own loved ones.

One young woman made this clear to me when she told me her story of the failed system. Both as a falsely accused student, and as a survivor.

She had recently gone through a bad break-up with her boyfriend.

Another female student, one of her close friends, sought to console her—except in all the wrong ways. The friend showed up and made an unwanted sexual advance. Upset about being rejected by the heartbroken student, the young woman who was supposed to be there as a friend, instead turned a lighthearted gesture into a full-scale Title IX incident.

Shockingly, the school punished the student who only needed a friend after a break-up. This student then revealed to me that she had been sexually assaulted earlier in life.

"I've been on both sides of this issue," she told me, "and on neither side did they get it right."

We can and must get it right for her, and for all students.

We must continue to condemn the scourge of sexual misconduct on our campuses.

We can do a better job of making sure the handling of complaints is fair and accurate.

We can do a better job of preventing misconduct through education rather than reacting after lives have already been ruined.

We can do a better job of helping institutions get it right.

And we can do a better job for each other.

The truth is: we must do better for each other and with each other.

May God bless all of you, and may He continue to bless our great Nation.

Tags:  Title IX (/category/keyword/title-ix)   Speeches (/news/speeches)

## How Do I Find...?

- Student loans, forgiveness (http://www2.ed.gov/fund/grants-college.html?src=rn)
- College accreditation (http://www.ed.gov/accreditation?src=rn)
- Every Student Succeeds Act (ESSA) (http://www.ed.gov/essa?src=rn)
- FERPA (http://www2.ed.gov/policy/gen/guid/fpco/ferpa/index.html?src=rn)
- FAFSA (http://fafsa.ed.gov/?src=edgov-rn)
- More... (http://www2.ed.gov/about/top-tasks.html?src=rn)

## Information About...

- Transforming Teaching (http://www.ed.gov/teaching?src=rn)
- Family and Community Engagement (http://www.ed.gov/family-and-community-engagement?src=rn)
- Early Learning (https://www2.ed.gov/about/inits/ed/earlylearning/index.html?src=rn)

## Search speeches

Search...

## Find By Month

- September 2017 (/news/speeches/monthly/201709)
- July 2017 (/news/speeches/monthly/201707)
- June 2017 (/news/speeches/monthly/201706)

- May 2017 (/news/speeches/monthly/201705)
- April 2017 (/news/speeches/monthly/201704)
- March 2017 (/news/speeches/monthly/201703)
- February 2017 (/news/speeches/monthly/201702)
- January 2017 (/news/speeches/monthly/201701)
- December 2016 (/news/speeches/monthly/201612)
- November 2016 (/news/speeches/monthly/201611)
- October 2016 (/news/speeches/monthly/201610)
- September 2016 (/news/speeches/monthly/201609)
- All Speeches (/news/speeches)

*Our mission* is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

**Student Loans** (http://www2.ed.gov/fund/grants-college.html?src=ft)
Repaying Loans (http://studentaid.ed.gov/repay-loans?src=ft)
Defaulted Loans (http://studentaid.ed.gov/repay-loans/default?src=ft)
Loan Forgiveness (http://studentaid.ed.gov/repay-loans/forgiveness-cancellation?src=ft)
Loan Servicers (http://studentaid.ed.gov/repay-loans/understand/servicers?src=ft#who-is-my-loan-servicer)

**Grants & Programs** (http://www2.ed.gov/fund/grants-apply.html?src=ft)
Apply for Pell Grants (http://www.fafsa.ed.gov/?src=ft)
Grants Forecast (http://www2.ed.gov/fund/grant/find/edlite-forecast.html?src=ft)
Apply for a Grant (http://www2.ed.gov/fund/grant/apply/grantapps/index.html?src=ft)
Eligibility for Grants (http://www2.ed.gov/programs/find/elig/index.html?src=ft)

**Laws & Guidance** (http://www2.ed.gov/policy/landing.jhtml?src=ft)
Every Student Succeeds Act (ESSA) (http://www.ed.gov/essa?src=ft)
FERPA (http://www2.ed.gov/policy/gen/guid/fpco/ferpa/index.html?src=ft)
Civil Rights (http://www2.ed.gov/about/offices/list/ocr/know.html?src=ft)
New IDEA Website (https://sites.ed.gov/idea/?src=ft)

**Data & Research** (http://www2.ed.gov/rschstat/landing.jhtml?src=ft)
Education Statistics (http://nces.ed.gov/?src=ft)
Postsecondary Education Data (http://nces.ed.gov/ipeds/?src=ft)
ED Data Express (http://eddataexpress.ed.gov/?src=ft)
Nation's Report Card (http://nces.ed.gov/nationsreportcard/?src=ft)
What Works Clearinghouse (http://ies.ed.gov/ncee/wwc/?src=ft)

**About Us** (http://www2.ed.gov/about/landing.jhtml?src=ft)
Contact Us (http://www2.ed.gov/about/contacts/gen/index.html?src=ft)
ED Offices (http://www2.ed.gov/about/offices/list/index.html?src=ft)
Jobs (http://www.ed.gov/jobs?src=ft)
Press Releases (http://www.ed.gov/news/?src=ft)
FAQs (http://answers.ed.gov/?src=ft)
Recursos en español (http://www2.ed.gov/espanol/bienvenidos/es/index.html?src=ft)
Budget, Performance (http://www2.ed.gov/about/overview/focus/performance.html?src=ft)
Privacy Program (https://www2.ed.gov/privacy?src=ft)
Subscribe to E-Mail Updates (https://public.govdelivery.com/accounts/USED/subscriber/new?topic_id=USED_5)

 (http://www.facebook.com/ed.gov)  (http://www.twitter.com/usedgov)  (https://public.govdelivery.com/accounts/USED/subscriber/new?topic_id=USED_5)  (https://www.ed.gov/feed)

Notices (http://www2.ed.gov/notices/index.html?src=ft)   FOIA (http://www2.ed.gov/policy/gen/leg/foia/foiatoc.html?src=ft)   Privacy Policy (https://www2.ed.gov/notices/privacy/index.html?src=ft)
Accessibility (http://www2.ed.gov/notices/accessibility/index.html?src=ft)   Security (http://www2.ed.gov/notices/security/index.html?src=ft)
Information Quality (http://www2.ed.gov/policy/gen/guid/infoqualguide.html?src=ft)   Inspector General (http://www2.ed.gov/about/offices/list/oig/index.html?src=ft)
Whitehouse.gov (http://www.whitehouse.gov/)   USA.gov (http://www.usa.gov/)   Benefits.gov (https://www.benefits.gov/)   Regulations.gov (http://www.regulations.gov/)

https://www.ed.gov/news/speeches/secretary-devos-prepared-remarks-title-ix-enforcement   6/6