| | | |
|---|---|---|
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-33-PRC |
| | ) | |
| PURDUE UNIVERSITY, PURDUE | ) | |
| UNIVERSITY BOARD OF TRUSTEES, | ) | |
| MITCHELL ELIAS DANIELS, JR., ALYSA | ) | |
| CHRISTMAS ROLLOCK, KATHERINE | ) | |
| SERMERSHEIM, ERIN OLIVER, and | ) | |
| JACOB AMBERGER, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint [DE 18], filed by Defendants Purdue University, Purdue University Board of Trustees, Mitchell Elias Daniels, Jr., Alysa Christmas Rollock, Katherine Sermersheim, Erin Oliver, and Jacob Amberger on March 31, 2017. Plaintiff John Doe filed a Memorandum of Law in Opposition on June 9, 2017, and Defendants filed a Reply on June 23, 2017. On September 15, 2017, Plaintiff filed a Notice of Supplemental Authority.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

On January 24, 2017, Plaintiff John Doe filed his Complaint against Purdue University; Purdue University Board of Trustees; Mitchell Elias Daniels, Jr., individually and as agent for Purdue University; Alysa Christmas Rollock, individually and as agent for Purdue University; Katherine Sermersheim, individually and as agent for Purdue University; Erin Oliver, individually

and as agent for Purdue University; and Jacob Amberger, individually and as agent for Purdue University. Plaintiff alleges the following facts in his Complaint.

During the 2015 Fall semester and into January 2016, Plaintiff and Jane Doe, both undergraduate students at Defendant Purdue University, had a dating relationship that included having consensual sexual intercourse from October to December 2015. On December 13, 2015, Jane Doe attempted suicide in front of Plaintiff, after which all sexual activity ended. In January 2016, Plaintiff reported Jane Doe's suicide attempt to Purdue. In mid-to late January 2016, Jane Doe began to distance herself from Plaintiff, and their dating relationship ended. From November 2015 to March 2016, Jane Doe made no reports to the university or to the police of any alleged sexual assault by Plaintiff. (Cmplt. ¶ 19).

In early April 2016, when Purdue was hosting more than a dozen events to advocate the reporting of sexual assaults, Jane Doe brought a complaint at Purdue against Plaintiff for sexual misconduct. On April 11, 2016, Plaintiff received a letter dated that same date from Defendant Katherine L. Sermersheim, Purdue's Dean of Students, notifying Plaintiff that Purdue had been made aware of sexual allegations regarding Plaintiff's conduct toward another student (Jane Doe) that, if substantiated, might constitute a violation of Purdue's anti-harassment policy; that Purdue had elected to investigate the allegations; and that Defendant Erin Oliver and Defendant Jacob Amberger were appointed as investigators. Consequently, Plaintiff was not allowed to participate in Navy ROTC. *Id.* at ¶¶ 20-24, 28, 34.

Accompanying Dean Sermersheim's April 11, 2016 letter was a half-page "Notice of Allegations," which included the allegations: (i) Jane Doe and Plaintiff were in a dating relationship during the 2015 Fall semester; (ii) in November 2015, when Jane Doe stayed the night in Plaintiff's

room, Plaintiff groped her and she said to him it was not OK; and (iii) Plaintiff told Jane Doe that during another night in November 2015, while they were staying the night in Jane Doe's room, Plaintiff had penetrated her digitally while she was sleeping. Plaintiff promptly submitted a written response to the allegations, stating, in part, that: (i) Jane Doe's accusations were false; (ii) in November 2015 when Jane Doe had stayed in Plaintiff's room, she did not wake up to find Plaintiff groping her; and (iii) in November 2015 Plaintiff had not digitally penetrated her while she was sleeping. Plaintiff also provided details of Jane Doe's suicide attempt. *Id*. at ¶¶ 25-27, 29-31.

On April 28, 2016, Plaintiff met with Investigators Oliver and Amberger. Plaintiff denied sexually assaulting Jane Doe and provided texts of his communications with Jane Doe that showed nothing to indicate that a sexual assault had taken place. Plaintiff provided the Investigators with a list of over thirty names to substantiate the credibility of his character and integrity, which had been attacked by Jane Doe. Thereafter, Plaintiff had no further communication with the Investigators. *Id*. at ¶ 32.

In the month following the April 28, 2016 meeting with Plaintiff, the Investigators prepared a Report and sent it to Dean Sermersheim. Without giving Plaintiff an opportunity to review it, Dean Sermersheim sent, on May 26, 2016, the Investigator's Report to the panel members of the three-person panel of the Advisory Committee on Equity; and on May 31, 2016, Dean Sermersheim sent a letter to Plaintiff advising him that he was to attend a meeting with the three-person panel on Monday, June 6, 2016, from 2:00 p.m. to 2:30 p.m. Dean Sermersheim's May 31, 2016 letter further advised that the panel members had reviewed the complaint, the written responses, and the Investigator's Report and that the purpose of the meeting was to listen to the parties who could provide clarification. *Id*. at ¶¶ 35-36.

On June 6, 2016, Jane Doe did not appear in person before the three-person panel and Dean Sermersheim. Instead, a statement dated June 5, 2016, written for Jane Doe by Monica Soto Bloom, a Title IX Coordinator and Director of the Center for Advocacy, Response, and Education ("CARE"), was submitted to the Advisory Committee. Jane Doe did not appear in person on any other date before the Advisory Committee and/or Dean Sermersheim. *Id*. at ¶ 37.

On June 6, 2016, before the meeting with the three-person panel, Plaintiff met with a representative of Navy ROTC, who briefly allowed Plaintiff to see a redacted version of the Investigator's Report. Plaintiff saw that it falsely stated Plaintiff had confessed to the allegations in Jane Doe's complaint. Plaintiff then met with the three-person panel and Dean Sermersheim. The unrecorded meeting lasted for no more than half an hour and did not involve any sworn testimony, did not provide for cross-examination questions, and did not allow for the presentation of documents. The one panel member who had read the Investigator's Report before the meeting asked accusatory questions assuming Plaintiff's guilt, and all the panel members acted with hostility toward Plaintiff. Plaintiff reiterated that the accusations made by Jane Doe against him were false and not substantiated by documentation and that the texts Plaintiff had provided were inconsistent with a sexual assault having taken place. *Id*. at ¶¶ 38-41.

On June 14, 2016, Dean Sermersheim sent a letter to Plaintiff advising him that, after considering the information provided by Plaintiff, Jane Doe, and the Investigators and after consulting with the three-member panel of the Advisory Committee on June 6, 2016, "I [Dean Sermersheim] have made the determination that a preponderance of the evidence does support a finding that your [Plaintiff's] conduct violated the Anti-Harassment Policy." (Cmplt. ¶ 42). Dean Sermersheim's June 14, 2016 letter ordered Plaintiff: (1) to be suspended from Purdue commencing

June 13, 2016, for one full academic year; (2) to continue to have no contact with Jane Doe until she completes her academic program; (3) as a condition of re-entry, to complete a 90-minute intervention training or equivalent program offered by the Vice President for Ethics and Compliance or by CARE; and (4) as a condition of re-entry, to meet the Assistant Director of CARE. The letter advised Plaintiff that he could appeal the determination to the Purdue Vice President for Ethics and Compliance, Defendant Alysa Christmas Rollock. *Id*. at ¶¶ 42-44.

On June 22, 2016, Plaintiff timely appealed to Vice President Rollock, stating that Jane Doe's allegations of sexual assault were false, that he never digitally or otherwise penetrated Jane Doe while she was sleeping, that the determination he had done so was incorrect, and that his "rights to due process of law have been violated." *Id*. at ¶¶ 45-47.

On or about June 28, 2016, Vice President Rollock sent a letter of that date to Plaintiff stating that she had reviewed Plaintiff's appeal, Dean Sermersheim's letters to Plaintiff, and Jane Doe's letter dated June 14, 2016, and that, because Dean Sermersheim had not included her reasoning in reaching her determination, Dean Sermersheim was being directed to revise her June 14, 2016 letter by June 30, 2016, to include the factual basis for her determination and for the sanctions imposed. *Id*. at ¶¶ 48-49. The next day, on June 29, 2016, Dean Sermersheim sent a letter to Plaintiff repeating her June 14, 2016 letter, adding only that a preponderance of the evidence supported finding that (1) Jane Doe had fallen asleep on a futon with Plaintiff on the floor beside her and that she woke up to find Plaintiff inappropriately touching her over her clothing and without her consent by placing his hand between her legs and moving it up to her "crotch" area; and (2) on another occasion, while Jane Doe was sleeping, Plaintiff inappropriately touched Jane Doe by digitally penetrating her vagina

without her consent. Dean Sermersheim also added that Plaintiff was not a credible witness and that Jane Doe was a credible witness. *Id.* at ¶ 50.

Plaintiff alleges that there there was a failure to apply a burden of proof because Jane Doe had no supporting documentation for her allegations, which were made five months after the alleged incidents took place with no contemporaneous reports to the university or the police and which were made after Plaintiff's suicide attempt. In contrast, Plaintiff's statements to the "Notice of Allegations," to the Investigators, and to the panel of the Advisory Committee on Equity and Dean Sermersheim consistently denied Jane Doe's allegations, and Plaintiff submitted texts exchanged between Plaintiff and Jane Doe that indicated no sexual assault occurred. Plaintiff alleges that there was no explanation and no evidence supporting Dean Sermersheim's statements about credibility and that, without a hearing that included sworn testimony and cross-examination, there was no basis for making credibility judgments. Plaintiff alleges that only an anti-male bias to find for the female complainant and against the male respondent can explain Dean Sermersheim's purported findings; Plaintiff alleges that he was presumed to be guilty. *Id.* at ¶¶ 51-54.

Plaintiff further alleges that the sanctions ordered by Dean Sermersheim did not take into account that Plaintiff had a previously unblemished disciplinary record and that he had presented a list of names that would support his character. Also, by placing decision making as to both the violation and the sanction in one person who is both Dean of Students and Title IX Coordinator, the decision making was allowed to be tailored to give the appearance of vigorous Title IX enforcement to satisfy the United States Department of Education Office of Civil Rights ("OCR"). *Id.* at ¶¶ 55-57.

On July 10, 2016, Plaintiff timely submitted an appeal of Dean Sermersheim's re-issued determination and sanctions to Vice President Rollock, asserting: (i) Dean Sermersheim failed to

provide the factual basis for her determination as directed and that she merely restated her conclusions at greater length; (ii) Purdue never provided Plaintiff an opportunity to review the Investigator's Report; (iii) "Dean Sermersheim's unsubstantiated conclusion that I am not a credible witness still has not been corroborated with any facts"; (iv) at the June 6, 2016 meeting, two of the three panel members had not read the report and all three were hostile; (v) the accusations of sexual assault were false; (vi) Plaintiff would not act to jeopardize his Navy ROTC scholarship; and (vii) Plaintiff demanded to know the particular evidence used to support Dean Sermersheim's determination and to see the Investigator's Report. *Id*. at ¶¶ 58-65.

On July 21, 2016, Vice President Rollock sent a letter to Plaintiff upholding Dean Sermersheim's determination and sanctions without addressing the substantive issues raised by Plaintiff's appeal. On August 16, 2016, Plaintiff involuntarily resigned from Navy ROTC, his dream of serving his country as a Naval officer destroyed. *Id*. at ¶¶ 66-69, 72.

On October 11, 2016, three months after Plaintiff's first request for production of records, Purdue Associate Legal Counsel Tandra Foster advised that Plaintiff and his parents could go to Purdue to review the documents. On October 20, 2016, Plaintiff and his mother did so, but they were not permitted to make copies. *Id*. at ¶¶ 70-71, 73-75.

Count I of Plaintiff's Complaint in this litigation alleges a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution for a denial of Plaintiff's protected liberty interest in "his good name, reputation, honor, and integrity" without due process, *id*. at ¶ 80, and in his protected property interest in pursuing his education as well as in "future educational and employment opportunities and occupational liberty" without due process, *id*. at ¶ 81. Plaintiff alleges a constitutionally protected property interest in his continued enrollment at Purdue University and

to be free from arbitrary suspension and dismissal arising from the policies, courses of conduct, practices, and understandings established by Purdue. Plaintiff alleges that this constitutionally protected property interest arises from the express and implied contractual relationship between Plaintiff and Purdue. This claim is brought against all Defendants. In the Prayer for Relief, Plaintiff asks for a judgment on Count I against Defendant Purdue and seeks an award of damages for damage to his physical well being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects. Plaintiff also seeks an injunction enjoining violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints.

Count II alleges a violation of Title IX of the Education Amendments of 1972 on the basis that an "erroneous outcome" occurred in this case because Plaintiff was innocent and wrongly found to have committed sexual assault and because gender bias was a motivating factor in those findings. Plaintiff alleges that "Defendant Purdue failed to conduct an adequate, reliable, and impartial investigation when it investigated Jane Doe's allegations and subsequent adjudication in a manner that was biased against [Plaintiff]." *Id*. at ¶ 118. Plaintiff alleges that Purdue has created a victim-centered process that prosecutes an accused male student under a presumption of guilt and improperly places the burden of proof on the male student, which Plaintiff experienced. *Id*. at ¶ 121. Plaintiff alleges that Defendant Sermersheim's responsibilities as both Dean of Students and Title IX Coordinator created a conflict of interest and allowed decision making in particular cases to be tailored to give the appearance of vigorous Title IX enforcement and meet perceived reporting needs to the U.S. Department of Education Office of Civil Rights. *Id*. at ¶ 125.

Based upon information and belief, Plaintiff alleges that Defendants were pressured by the Obama Administration's Department of Education into following the Title IX investigative and adjudicatory process mandated by the 2011 Dear Colleague Letter regardless of due process considerations and that Purdue's mishandling of Plaintiff's case was wrongfully affected by federal pressure. *Id.* at ¶ 129. Plaintiff further alleges that the totality of circumstances establishes that Defendant Purdue has demonstrated a pattern of inherent and systematic gender bias and discrimination against male students accused of misconduct. *Id.* at ¶ 131. Upon information and belief, Plaintiff alleges that all students who have been suspended or expelled from Defendant Purdue for sexual misconduct have been male, *id.* at ¶132, and that male respondents, and particularly male athletes and male ROTC members, in sexual misconduct cases at Purdue are discriminated against solely on the basis of sex, *id.* at ¶ 133. In the Prayer for Relief, Plaintiff asks for a judgment against Defendant Purdue for money damages for damage to his physical well being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects. Plaintiff also seeks an injunction enjoining violations of Title IX in the process of investigating and adjudicating sexual misconduct complaints.

Counts III and IV allege Indiana state law claims of breach of contract and of estoppel and reliance, respectively, against Defendant Purdue.

**STANDARDS OF REVIEW**

A challenge to standing is properly brought under Rule 12(b)(1) for a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). The party invoking federal jurisdiction bears the burden of establishing that

jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the motion to dismiss stage, unless standing is challenged as a factual matter, the court "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082.

## ANALYSIS

Defendants seek dismissal of all of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In response, Plaintiff pursues only his claims for injunctive relief, his § 1983

claims against the individual defendants, and his Title IX claim against Defendant Purdue University. The Court considers each claim in the Complaint in turn.

## A. Prospective Injunctive Relief–Counts I and II

Defendants seek dismissal of Plaintiff's claims for prospective injunctive relief in Counts I and II against all Defendants on the basis that Plaintiff lacks standing. To "invoke the jurisdiction of the federal courts," a plaintiff "must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). A plaintiff "must demonstrate a 'personal stake in the outcome'" and an "[a]bstract injury is not enough." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 101-02 (citing cases). "[A] plaintiff must demonstrate standing for each form of relief sought. A plaintiff may have standing to pursue damages but not injunctive relief, for example, depending on the circumstances." *Kenseth v. Dean Health Plan*, 722 F.3d 869, 890 (7th Cir. 2013). Thus, "[t]o have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (internal quotation marks omitted).

Plaintiff's Complaint asks for injunctive relief related to the claims brought under § 1983 in Count I and under Title IX in Count II:

> - against Defendant Purdue "an injunction enjoining violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints," (Cmplt., Prayer for Relief, ¶ (i), p. 66);

- against Defendant Purdue "an injunction enjoining violations of . . . Title IX in the process of investigating and adjudicating sexual misconduct complaints," (Cmplt., Prayer for Relief, ¶ (ii), p. 66).

Although Plaintiff alleges damages as a result of the *past* enforcement of Purdue's anti-harassment policy against him, neither the prayers for relief nor the remainder of the Complaint seek injunctive relief with respect to any *prospective* interaction between Plaintiff himself and any Defendant, and Plaintiff does not argue so in his response brief. This is fatal to Plaintiff's claims for injunctive relief under both § 1983 and Title IX because he has not alleged that he is currently subject to the policy or that the policy will be applied to him in the future. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *Lyons*, 461 U.S. at 102); *see also Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (finding that the *Ex Parte Young* exception to Eleventh Amendment immunity did not apply to the § 1983 claims because, although the plaintiff alleged a past violation of federal law, he did show an "ongoing" violation of the federal law as to himself); *Ceria M. Travis Acad., Inc. v. Evers*, No. 16-CV-593, 2016 WL 4098587, at *5 (E.D. Wis. July 28, 2016) (citing *Sonnleitner*, 304 F.3d at 718).

In their motion, Defendants argue that Plaintiff does not allege that he is or will be a student at Purdue University. (ECF 19, p. 4). In Paragraph 1 of the Complaint, Plaintiff alleges that he is "a now suspended student at Defendant Purdue University." (Cmplt. ¶ 1). However, Plaintiff alleges in Paragraph 4 that he "*was* a student at Purdue University" and that he "presently lives in Upland, Indiana, to attend Taylor University." (ECF 1, ¶ 4). Thus, Defendant is correct that Plaintiff does not allege that he is currently attending Purdue University or that he intends to do so in the future. Although Plaintiff alleges that he has been given conditions for reinstatement, he does not allege or argue that he intends to seek reinstatement. Standing based on Plaintiff's damages claim stemming

from the alleged past constitutional violation of the policy is insufficient to confer standing for prospective injunctive relief related to that policy. Plaintiff cites no case in support of his position that he has standing to bring a claim of injunctive relief under these circumstances.

The Court grants the Motion to Dismiss Plaintiff's claims for injunctive relief in Counts I and II and dismisses the claims for injunctive relief without prejudice. *See Ramsay v. Mayer*, 420 F. App'x 586, 588 (7th Cir. 2011) (recognizing that dismissal is without prejudice when based on lack of standing (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998))).

**B. Claims Against Defendant Daniels in His Individual Capacity**

Defendants seek dismissal of all claims against Defendant Mitchell Elias Daniels, Jr. in his individual capacity on the basis that Plaintiff does not allege any individual or personal participation by Daniels. Plaintiff responds that he has alleged sufficient facts to state a claim of supervisory liability against Daniels.

Only one paragraph of the 68-page Complaint names Daniels: "Defendant Mitchell Elias Daniels, Jr. ("Defendant Daniels") is the President of Defendant Purdue ('The Buck Stops Here' with him), and he may be contacted at a Defendant Purdue e-mail listed on Defendant Purdue's web site." (ECF 1, ¶ 7). Section 1983 "does not allow actions against individuals merely for their supervisory role of others." *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). "For liability, a supervisor 'must know about the conduct *and* facilitate it, approve it, condone it, or turn a blind eye.'" *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000) (emphasis added) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)); *see also Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) (citing *Gentry*, 65 F.3d at 561). Plaintiff's sole allegation that Daniels is the university president is insufficient to state a claim against Daniels in his individual capacity

under § 1983. As acknowledged by Plaintiff, there is no individual liability under Title IX. And, Plaintiff has not alleged any contract liability against Daniels in his individual capacity. Therefore, the Court grants the Motion to Dismiss as to Daniels in his individual capacity and dismisses the claims against Daniels in his individual capacity with prejudice.

### C. Count I–42 U.S.C. § 1983 Claims

In Count I, Plaintiff alleges that Defendants denied him his procedural due process rights under the Fourteenth Amendment to the United States Constitution in the course of the investigation and adjudication of Jane Doe's complaint. (Cmplt. ¶¶ 78,92). More specifically, Plaintiff alleges that he was deprived of the minimal requirements of procedural fairness because the investigation and adjudication did not include cross-examination, sworn testimony, a hearing, access for Plaintiff to see the investigator's report, production to Plaintiff of the evidence that supported Jane Doe's allegations, a presumption of innocence, reasoned consideration of evidence as required by a burden of proof, or a requirement that evidence be stated in support of conclusions. *Id*. at ¶ 92.

The Fourteenth Amendment Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Under 42 U.S.C. § 1983, an individual may bring a claim against a person acting under the color of state law for a violation of this constitutional right. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017). Defendants seek dismissal of the § 1983 claims against the Purdue Defendants and the individual defendants in their official capacities based on Eleventh Amendment immunity and against the individual Defendants Oliver, Amberger, Rollock, and Sermersheim for failure to state a claim. The Court considers each argument in turn.

1. *Purdue Defendants and Official Capacity Claims*

Defendants move to dismiss the § 1983 claims against Purdue University, Purdue University Board of Trustees, and its officials in their official capacities because they are not "persons" within the meaning of the statute. The United States Supreme Court has held that neither a State nor its officials acting in their official capacities are a "person" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Defendant Purdue University is a state university. *See* Ind. Code § 21-23-2, et seq. Defendant Purdue University Board of Trustees is a body corporate created by the Indiana legislature to operate Purdue University, and the individual trustees are considered to be acting in their official capacities as members of the board. *See* Ind. Code §§ 21-23-2-2, 21-27-7-4, 21-27-7-5; *Wasserman v. Purdue Univ.*, 431 F. Supp. 2d 911, 915-16 (N.D. Ind. 2006). The Eleventh Amendment bars § 1983 claims for money damages and injunctive relief against Purdue University and § 1983 claims for money damages against state officials in their official capacities because the State is the real party in interest. *See Will*, 491 U.S. at 71; *Council 31 of the Am. Fed'n of State, Cty. and Mun. Emps., AFL-CIO v. Quinn,* 680 F.3d 875, 881-82 (7th Cir. 2012); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695-96 (7th Cir. 2007) (finding the Board of Trustees of Indiana University shielded by the Eleventh Amendment); *Kashani v. Purdue Univ.*, 813 F.2d 843, 846-47 (7th Cir. 1987) (finding Purdue University shielded by the Eleventh Amendment); *Wasserman*, 431 F. Supp. 2d at 916 (finding the Purdue University Board of Trustees shielded by the Eleventh Amendment).

Plaintiff does not disagree in his response brief and, thus, abandons these claims. Accordingly, the Court grants the Motion to Dismiss the § 1983 claims for both money damages and

injuctive relief against Purdue University and the Purdue University Board of Trustees and the §1983 claims for money damages against the individual defendants in their official capacities.

Plaintiff is correct that an exception to Eleventh Amendment immunity allows for prospective injunctive relief claims against individual officials in their official capacities for ongoing constitutional violations under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). *See Council 31 of the Am. Fed. of State, Cnty. and Mun. Emps, AFL-CIO*, 680 F.3d at 882; *see also Sonnleitner*, 304 F.3d at 717 (quoting *Marie O. v. Edgar*, 131 F.3d 610, 614-15 (7th Cir. 1997)). However, as set forth in Part A above, Plaintiff cannot satisfy the *Ex Parte Young* exception in this case because, although he alleges a past violation of federal law, he has not alleged an "ongoing" violation of federal law against him.

2.      *Defendants Amberger, Oliver, Rollock, and Sermersheim in Their Individual Capacities*

The unavailability of a cause of action against Purdue University, the Purdue University Board of Trustees, and the individual defendants in their official capacities does not by itself preclude a claim under § 1983 against the individual defendants in their individual capacities for money damages. *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012).[1] A claim for a violation of procedural due process under the Fourteenth Amendment requires a two-step analysis: "First, the court must identify the protected property or liberty interest at stake. Second, it must determine what process is due under the circumstances." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013) (citing *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)). In other words, Plaintiff "must establish that there is (1) a cognizable property [or liberty] interest; (2) a

---

[1] Defendants note that the prayer for relief in Plaintiff's Complaint does not seek money damages against the individual defendants in their individual capacities, as it asks only for "a judgment against Defendant Purdue awarding John Doe damages." *See* (Cmplt., Prayer for Relief, ¶ (i), p. 66). However, throughout the Complaint, Plaintiff alleges that certain conduct of the individual defendants violates his due process rights; therefore, the Court considers the claims.

deprivation of that interest; and (3) a denial of due process." *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)).

Property rights are not created by the Fourteenth Amendment but "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Price*, 755 F.3d at 607 (internal quotation marks omitted) (quoting *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972))). In the Motion to Dismiss, Defendants argue for dismissal of Plaintiff's due process claims on the basis that Plaintiff has not alleged an actionable liberty or property interest. The Court agrees. Plaintiff makes the following allegations regarding his protected liberty and property interests in Count I:

> 80.    A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process.

> 81.    A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

> 82.    John Doe's constitutionally protected property interest in his continued enrollment at Defendant Purdue and to be free from arbitrary suspension and dismissal arises from the policies, courses of conduct, practices and understandings established by Defendant Purdue.

> 83.    John Doe's constitutionally protected property interest further arises from the express and implied contractual relationship between Defendant Purdue and John Doe.

> 84.    It is well established that Fourteenth Amendment due process protections are required in the higher education disciplinary proceedings.

> 85.    A person who has been admitted to a university, and who has paid tuition to that university, has a protected property interest in continuing his education at that university until he has completed his course of study. The state cannot deprive a person of this interest without due process.

(Cmplt. ¶¶ 80-85).

Unlike several other courts cited by Plaintiff in his response brief and alluded to in Paragraph 84 of the Complaint, the Seventh Circuit Court of Appeals has held that an individual does not have a stand-alone property interest in an education at a state university. *Charleston*, 741 F.3d at 772 (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009); *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008)); *see also Preston v. Bd. of Trs. of Chi. State Univ.*, No. 14 C 3423, 2015 WL 327369, at *7 (N.D. Ill. Jan. 26, 2015) (citing *Charleston*, 741 F.3d at 772-73). The Seventh Circuit Court of Appeals reasoned that it cannot be the case "'that any student who is suspended from college has suffered a deprivation of constitutional property.'" *Charleston*, 741 F.3d at 772 (quoting *Williams*, 530 F.3d at 589). This is, in part, because to find otherwise "'would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted.'" *Id.* (same). Notably, the court in *Charleston* acknowledged that the First Circuit Court of Appeals has recognized a "general 'interest in pursuing an education,' including a university education," 741 F.3d at 773 (quoting *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988)), and that the Sixth Circuit Court of Appeals has held that "the Due Process Clause is 'implicated' by university disciplinary decisions," *id.* (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005)).

The Seventh Circuit Court of Appeals requires that the court "ask whether the student has shown that he has a *legally protected entitlement* to his continued education at the university." *Id.* (emphasis in original) (citing *Bissessur*, 581 F.3d at 601-02). To survive a motion to dismiss, a plaintiff must specifically allege the existence of an express or implied contract with the university

by being "specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id*. (citing *Bissessur*, 581 F.3d at 601, 603-04); *see also Marmarchi v. Bd. of Trs. of the Univ. of Ill.*, No. 17-1939, 2017 WL 5152156, at *3 (7th Cir. Nov. 7, 2017) (finding that the due process claim could not go forward because the plaintiff had not alleged any contract terms that the university had violated (citing *Charleston*, 741 F.3d at 773; *Bissessur*, 581 F.3d at 603)); *Preston*, 2015 WL 327369, at *7 ("General references to a college's policies are insufficient to identify a property interest." (citing *DiPerna v. The Chi. Sch. of Prof. Psychology*, No. 14-CV-57, 2014 WL 4167491, at *3 (N.D. Ill. Aug. 21, 2014))).

In *Charleston*, the plaintiff alleged a protected property interest based on the university's polices as set out in the Student Disciplinary Policy and the University Statutes, such as "'Defendant failed to comply with its own policies and due process protections set forth in its Student Disciplinary Policy'" "'by forwarding a complaint of academic dishonesty, i.e., plagiarism to the [Student Progress Committee] without intermediate review of a Student Discipline Subcommittee'" and "'by failing to allow Plaintiff a hearing, to be present and defend himself from the allegations against him, to confront the witnesses against him or to address any of the evidence presented against him.'" *Charleston*, 741 F.3d at 773 (quoting (Cmplt. ¶¶ 33, 34)). The Seventh Circuit Court of Appeals held that these allegations were insufficient to state a claim for a violation of the plaintiff's federally protected due process rights: "We have rejected similar claims of an 'interest in contractually-guaranteed university process' many times." *Id*. (citing *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012)).[2] In *Charleston*, the court held: "[W]e will be clear

---

[2] In *Park v. Indiana University School of Dentistry*, the court noted that the plaintiff did not allege a property interest in continuing his graduate education, citing *Hlavacek v. Boyle*, 665 F.3d 823 (7th Cir. 2011). *See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). However, the court in *Hlavacek* assumed, without deciding, that the plaintiff had a protectable interest in continuing his graduate education in order to consider the separate issue

once more: a plaintiff does not have a federal constitutional right to state-mandated process." *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) ("Process is not an end in itself . . . . The State may choose to require procedures . . . but in making that choice the State does not create an independent substantive right."); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law (for purposes of this case the student judicial code may be treated as a state law) is not a denial of due process, even if the state law confers a procedural right.")); *see also Miller v. Cooper*, 116 F. Supp. 3d 919, 928 (W.D. Wis. 2015) ("Stripped to its essence, Miller's challenge in this case is that he did not receive the process afforded to UWP's students before he was dismissed from the orchestra. This is exactly the type of due process claim that the Seventh Circuit has precluded." (citing *Charleston*, 741 F.3d at 769; *Park*, 692 F.3d at 832)).

In *Williams*, which concerned college undergraduate students, the court recognized the United States Supreme Court holding that a public high school education is a protected property interest under the due process clause of the Fourteenth Amendment, 530 F.3d at 589 (citing *Goss v. Lopez*, 419 U.S. 565 (1975)), but rejected the plaintiff's claim that any student suspended from college suffers a deprivation of constitutional property, *id*. The court explained that to be an actionable deprivation, there must be proof of an entitlement and that the alleged entitlement in *Williams* was the "entitlement not to be suspended without good cause," which the court held was a matter of contract, either express or implied. *Id*. The court noted that the difference between a high school student and a college student is that the "high school student's rights will usually be defined by statute." *Id*. The court held that the plaintiff did not allege a contract establishing an entitlement.

---

of whether the plaintiff had been afforded sufficient process in connection with his dismissal from the dental program, which the court found he had. *Hlavacek*, 665 F.3d at 825-26.

*Id*. at 589-90. Thus, the due process "claim fail[ed] regardless of the adequacy of the procedures." *Id*. at 589. Similarly, in *Bissessur*, which concerned a college graduate student, the Seventh Circuit Court of Appeals found that the plaintiff "failed to point to any specific promise that the University made which established that [the plaintiff] might have had an entitlement to a continuing education, or any other such entitlement." 581 F.3d at 602.

In *Hess v. Board of Trustees of Southern Illinois University*, the plaintiff alleged that he had a protected property interest in continuing his education created under Illinois common law and by a contract between himself and the university. 149 F. Supp. 3d 1027, 1031 (S.D. Ill. 2015). The court concluded, based on *Charleston*, that the plaintiff had not demonstrated a "legally protected entitlement to his continued education" at the university. *Hess*, 149 F. Supp. 3d at 1039. The court rejected the plaintiff's reliance on an implied contract and "vague references" to the Code of Conduct, requiring instead that the student specifically identify the source of the implied contract, the exact promises made by the university, and the promises he made in return. *Id*. (quoting *Charleston*, 741 F.3d at 773).[3]

In this case, the allegations within Count I itself are insufficient as Paragraphs 81-83 and 85, quoted above, contain only general allegations about promises made by Purdue University. Defendants note that in other places in the Complaint Plaintiff alludes to "various policies" that

---

[3] The court in *Hess v. Board of Trustees of Southern Illinois University* then held that, even if the plaintiff had demonstrated either a property interest through an implied contract or a protectable liberty interest, the university had provided him with all the process he was due. 149 F. Supp. 3d 1027, 1040 (S.D. Ill. 2015). On appeal, the Seventh Circuit Court of Appeals did not address whether the plaintiff had a protected property or liberty interest but rather assumed so in order to consider whether the university's procedures deprived him of the assumed rights, finding that they did not. *See Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016). Similarly, in *Medlock v. Trustees of Indiana University*, in which the student was seeking only expungement of his record and not damages, the Seventh Circuit Court of Appeals did not address the question of whether the student had a protected property interest but rather directly addressed the question of whether the student was denied due process, answering the question emphatically in the negative. 738 F.3d 867, 871 (7th Cir. 2013).

"constitute representations and promises," *see* (Cmplt. ¶ 146), specifically Paragraphs 147 and 82. However, neither paragraph alleges a contractual promise with the requisite specificity. Paragraph 147, contained with the state law claim for estoppel and reliance in Count IV, alleges that Plaintiff relied on "express and implied promises that Purdue would not tolerate, and John Doe would not suffer, harassment by fellow students and would not deny John Doe his procedural rights should he be accused of a violation of Purdue Policies." *Id.* at ¶ 147. In Paragraph 82, Plaintiff alleges generally that his "constitutionally protected property interest in his continued enrollment at Defendant Purdue and to be free from arbitrary suspension and dismissal arises from the policies, courses of conduct, practices and understandings established by Defendant Purdue." *Id.* at ¶ 82. Neither paragraph identifies a specific contractual promise other than those relating to Purdue's internal procedures, which cannot form the basis of a protected property interest. *See Charleston*, 741 F.3d at 773. Likewise, Paragraph 85 alleges an interest in completing Plaintiff's course of study, but this is nothing more than a state-law breach of contract claim, which cannot form the basis of his constitutional claim.

In his response brief, Plaintiff does not cite any controlling case law establishing a protected property or liberty interest in this case. Rather, Plaintiff cites *Goss v. Lopez*, 419 U.S. 565, 572-76 (1975), which establishes the property interest that secondary public school students have in their education. *See Williams*, 530 F.3d at 589 (distinguishing *Goss* on the basis that it addressed "public high school education"). Plaintiff then cites cases from outside the Seventh Circuit Court of Appeals that find that a student's interest in pursuing a public education falls within the liberty and property protections of the Fourteenth Amendment. (ECF 28, p. 15 (citing *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988); *Doe v. Cummins*, 662 F. App'x 437, 445 (6th Cir. 2016); *W. v. Derby Unified*

*Sch. Dist. No. 260*, 206 F.3d 1358, 1364 (10th Cir. 2000); *Davis v. Regis Coll., Inc.*, 830 P.2d 1098,

1100 (Colo. App. 1991))). Similarly, Plaintiff cites cases from other circuits in which the court finds

that a public university may not suspend or expel a student for alleged sexual misconduct without

due process. (ECF 28, p. 15 (citing *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 15 (D. Me.

2005; *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 600 (S.D. Ohio 2016))).

In attempting to distinguish *Charleston*, Plaintiff correctly notes that alleged sexual

misconduct was not at issue in that case; however, Plaintiff incorrectly describes *Charleston* as

involving a "student who flunked out." (ECF 28, p. 17). Both *Charleston* and *Williams* addressed

student disciplinary actions. In *Charleston*, the plaintiff was a medical student who was dismissed

from the medical school for unprofessional conduct, specifically based on an allegation that he "had

acted 'unprofessionally' while serving as a teaching assistant." 741 F.3d at 770-71, 771. And, in

*Williams*, cited by *Charleston*, the plaintiffs were suspended for hazing another student pledging the

plaintiffs' sorority. 530 F.3d at 585-86.

In his response brief, Plaintiff acknowledges the holding in *Charleston* that a plaintiff can

plead a legally protected entitlement by pleading the existence of an express or implied contract,

(ECF 28, p. 17), yet, Plaintiff fails to acknowledge the further requirement that the entitlement be

specifically pled. *Id*. And, Plaintiff does not identify any specific contract provision creating such

rights; instead, Plaintiff generally references his breach of contract claim in Count III. *Id*. A careful

reading of Count III demonstrates that it alleges only that Purdue did not follow its own procedures:

> 139. Defendant Purdue['s] Policies provide[] that students are to have a
> fair and impartial disciplinary process in which it is the responsibility of the
> University to show that a violation has occurred before any sanctions are imposed.
> Defendant Purdue breached its contract with John Doe when it failed to conduct a
> fair and impartial process, including not holding a hearing. At no time was John Doe
> afforded the procedural guarantees that generally accompany a hearing, such as the

23

right to present witnesses and evidence, confront one's accuser and cross-examine and challenge any witnesses against him, all before an impartial and objective factfinder. Thus, Defendants violated the contract with John Doe when they failed to afford him a proper hearing on Jane Doe's accusations against him.

140.     Defendant Purdue['s] Policies provide[] that the investigation will be neutral. In this case, however, the investigation was not neutral. Defendant Purdue failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of Jane Doe's allegations and subsequent adjudication in a manner that was biased against John Doe. Further, John Doe was severely prejudiced in being able to defend himself because he was denied access to the Investigator's Report. The quick review of the Investigator's Report that a Navy ROTC officer allowed John Doe indicated that it misrepresented John Doe of confessing guilt.

141.     The U.S. Department of Education Office for Civil Rights requires that the excessively low preponderance of the evidence burden of proof be used to evaluate allegations of sexual misconduct. Though an inadequate standard to protect the procedural rights of accused students, Defendant Purdue utilizes this standard of review, as recognized in its Policies. Defendant Purdue violated this provision when they improperly placed the burden of proof on John Doe to prove that Jane Doe's accusations were not true and when it failed to utilize the preponderance of the evidence standard in fact in reaching its Determination. Defendant Purdue therefore breached its contract with John Doe when it failed to utilize the requisite preponderance of the evidence standard.

142.     Based on the aforementioned facts and circumstances, Defendant Purdue breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with John Doe. Defendant Purdue failed its duty of good faith and fair dealing when it meted out a disproportionate sanction notwithstanding the flawed process and lack of evidence in support of Jane Doe's allegations of sexual misconduct.

143.     John Doe is entitled to recover damages for Defendant CSUP's[sic] breach of the express and/or implied contractual obligations described above. As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational, athletic[4] and career opportunities, economic injuries and other direct and consequential damages.

(Cmplt. ¶¶ 139-144).

-----

[4] Other than an almost identical allegation of causation in Paragraph 150 in Count IV, there are no other references in the Complaint to athletic opportunities.

In Paragraph 80 of the Complaint, Plaintiff alleges: "A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process." (Cmplt. ¶ 80). In *Paul v. Davis*, the United States Supreme Court recognized that an "interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." 424 U.S. 693, 712 (1976). And, the Court found in that case that, "any harm or injury to that interest, even where . . . inflicted by an officer of the States, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." *Id.* Now, "[i]t is well-established that an individual does not have any cognizable liberty interest in his reputation, and therefore mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *O'Gorman v. City of Chicago*, 777 F.3d 885, 891 (7th Cir. 2015) (internal quotation marks omitted) (quoting *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005)); citing *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002); *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991)).

"Rather, it is only the alteration of legal status, such as governmental deprivation of a right previously held, which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards." *Mann*, 707 F.3d at 878 (internal quotation marks omitted) (quoting *Paul*, 424 U.S. at 708-09); *see also Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015). Thus, the relevant inquiry is whether there is "an injury to reputation *along* with a change in legal status." *Hinkle*, 793 F.3d at 768 (emphasis in original) (quoting *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1015 (7th Cir. 1990)). This is known as the "stigma-plus" test. *Mann*, 707 F.3d at 878 (citing *Schepers v. Comm'r, Ind. Dep't of Corr.*, 691 F.3d 909, 914 (7th Cir. 2012)). Here,

without citation to any supporting case law, Plaintiff asserts that a student who has been expelled or suspended for sexual misconduct has suffered stigma plus. (ECF 28, p. 16). But, he fails to allege that his suspension altered a previously recognized legal status or right, which is fatal to this claim.

Finally, in Paragraph 81, Plaintiff alleges a property interest in "employment opportunities and occupational liberty." Indeed, "[w]hen a state actor casts doubt on an individual's good name, reputation, honor or integrity in such a manner that it becomes virtually impossible for the [individual] to find new employment in his chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of his choice." *Hinkle*, 793 F.3d at 768 (internal quotation marks omitted) (quoting *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (quoting *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001))).[5] However, as argued by Defendants in the Motion to Dismiss, Plaintiff has not alleged any effort by Purdue to publicize the disciplinary determination and one-year suspension, to limit Plaintiff from application for re-admission to Purdue or any other university, or to limit him from any employment or occupation. Plaintiff does not pursue this claim in his response brief. Plaintiff has not stated a claim for a protected interest in his occupational liberty. *See Hess*, 149 F. Supp. 3d at 1040 (finding, on summary judgment, that the plaintiff could not pursue his claim for an alleged liberty interest when he was expelled from the university for disciplinary reasons with a notation on his transcript because he did not present evidence that he was denied an employment opportunity because of any statement made in public by the university); *see also Despard v. Bd. of Trs. of Ind. Univ.*, 1:14-CV-1987, 2015

---

[5] "We have explained that, when an employee claims that a government employer has infringed his liberty to pursue the occupation of his choice, the employee must show that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001) (citing *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801 (7th Cir. 2000); *Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998); *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991)).

WL 4946112, at *3 (S.D. Ind. Aug. 18, 2015) (finding that the plaintiff failed to allege a liberty interest with respect to her good name, reputation, honor, or integrity because the plaintiff did not allege that her ability to secure employment had been impaired nor had she alleged any change in legal status).

Based on the foregoing, Plaintiff has failed to plead a claim based on the denial of due process based on an actionable property or liberty interest. As a result, the Court need not address whether the process given was sufficient or whether the individual defendants were entitled to qualified immunity. The Court grants the Motion to Dismiss the § 1983 claims against the individual defendants in their individual capacity and dismisses those claims with prejudice.

### D. Count II–Title IX

The parties agree that a Title IX claim can only be brought against Defendant Purdue University and not the individual defendants. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998) (recognizing that Congress abrogated the "States' Eleventh Amendment immunity under Title IX" as to entities receiving federal funds (citing 42 U.S.C. § 2000d-7)). Defendants seek dismissal of the Title IX claim against Purdue University, arguing that Plaintiff has failed to plead plausible facts showing that Plaintiff was erroneously disciplined because he is male.

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a)(1). In this case, Plaintiff alleges a violation of Title IX on the theory of erroneous outcome, which asserts that "the plaintiff was innocent and wrongly found to have committed an offense." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *see also Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016); *Doe v. Columbia*

*Coll. Chi.*, No. 17-CV-748, 2017 WL 4804982, at *8 (N.D. Ill. Oct. 25, 2017); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 990 n.1 (D. Minn. 2017).

A plaintiff alleging an "erroneous outcome" claim under Title IX must first "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the proceedings" and then also "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715; *see also Doe v. Cummins*, 662 F. App'x at 452 (citing *Yusuf*, 35 F.3d at 715); *Doe v. Columbia Coll. Chi.*, 2017 WL 4804982, at *8 (same); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 606 (S.D. Ohio 2016) (citing *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638-39 (6th Cir. 2003) (citing *Yusuf*, 35 F.3d 709)). As for the particular circumstances suggesting gender bias,

> [s]uch allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender. Of course, some allegations, such as statements reflecting bias by members of the tribunal, may suffice both to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias.

*Yusuf*, 35 F.3d at 715; *see also Doe v. Cummins*, 662 F. App'x at 452 (citing *Yusuf*, 35 F.3d at 715); *Doe v. Columbia Coll. Chi.*, 2017 WL 4804982, at *8 (same); *Blank v. Knox Coll.*, No. 14-CV-1386, 2015 WL 328602, at *4 (C.D. Ill. Jan. 26, 2015) (same).

In this case, even though Plaintiff has alleged facts, taken as true, to cast doubt on the accuracy of the outcome of his disciplinary proceeding, he has failed to allege facts to create a plausible inference that gender bias caused the alleged erroneous outcome. *See, e.g.*, *Doe v. Univ. of Mass.-Amherst*, No. 14-30143, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015) (finding that the plaintiff had alleged facts sufficient to raise at least some questions about the outcome of his

disciplinary proceeding but that the facts were "insufficient to suggest 'that the disparate treatment was because of Plaintiff's sex'").

Although Plaintiff attacks the procedural protections afforded him during the disciplinary process and generally alleges that those procedures demonstrate bias, Plaintiff has not alleged any specific statements, conduct, or a pattern of decision making suggestive of gender bias at Purdue as opposed to bias in favor of the victim of sexual assault. *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 991 (finding that, as to the alleged unbalanced questioning of the complainant-victim and of the plaintiff respondent-perpetrator, "'the mere fact that [p]laintiff is male and [the alleged victim] is female does not suggest that the disparate treatment was because of [p]laintiff's sex'" (quoting *Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. Mo. 2015)));[6] *see also Cummins*, 662 F. App'x at 453 (finding that the plaintiff failed to show how the alleged deficiencies in the disciplinary process are connected to gender bias rather than bias in favor of alleged victims, who can be both male and female (citing *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015)); *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1075 (D. Colo. May 26, 2017) (cautioning reliance on the "pro-victim not anti-male" justification but nevertheless finding at the pleading stage that

---

[6] The court in *Salau v. Denton*, 139 F. Supp. 3d 989 (W.D. Mo. 2015), quotes *Doe v. Columbia University*, 101 F. Supp. 371, 371 (S.D.N.Y. Apr. 21, 2015), which was reversed on appeal by the Second Circuit Court of Appeals in *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), after the opinion in *Salau v. Denton* was issued.

Nevertheless, the court in *Doe v. University of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017), relied on the decision in *Salau v. Denton*, including its reliance on the district court decision in *Doe v. Columbia University*, even though the appellate decision in *Doe v. Columbia University* reversing the district court decision had been issued prior to the decision in *Doe v. University of St. Thomas*. The court in *Doe v. University of St. Thomas* then distinguished its case on the facts from the Second Circuit Court of Appeal's decision on appeal in *Doe v. Columbia University*.

Likewise, for the reasons set forth in more detail below in this Opinion, this Court finds more persuasive the district court's analysis in *Doe v. Columbia University* as well as the analyses of the cases relying on the district court decision in *Doe v. Columbia University* and finds the instant facts distinguishable from those of *Doe v. Columbia University* as analyzed on appeal in that case. For the same reason, *Doe v. University of Cincinnati*, 173 F. Supp. 3d 586 (S.D. Ohio 2016), remains persuasive authority, even though it relies on *Yu v. Vassar College*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015), which was issued by a district court within the Second Circuit Court of Appeals prior to the appellate decision in *Doe v. Columbia University*.

"one inference necessarily overwhelms another" and that conclusory allegations and allegations based on "information and belief" were insufficient under *Iqbal*); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 885 (N.D. Ohio 2017) (finding the allegations insufficient to support an inference of gender bias); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 187 (D. Mass. 2017) (finding that, although the plaintiff alleged that the principal Title IX officer and an investigator were biased against males, the plaintiff had failed to allege particularized facts that would permit a fact finder to draw a reasonable inference of gender discrimination as a motivating factor behind the disciplinary decision); *Doe v. Baum*, 227 F. Supp. 3d 784, 817 (E.D. Mich. 2017) (finding that the "plaintiff has offered nothing more than an administrative decision by school officials with which he disagreed, and unelaborated allegations that the decision must have been due to 'gender bias,' essentially because he is male, the complainant is female, and the decision was adverse to him" (quoting *Cummins*, 662 F. App'x at 452-53)); *Doe v. Regents of the Univ. of Cal.*, No. 2:15-CV-2478, 2016 WL 5515711, \*5 (C.D. Cal. July 25, 2016) (finding that a court "cannot plausibly infer . . . that a higher rate of sexual assaults committed by men against women, or filed by women against men, indicates discriminatory treatment of males accused of sexual assault in the consequent proceedings"); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 606-07 (reasoning that "at worst, UC's actions were biased in favor of alleged victims of sexual assault and against students accused of sexual assault"); *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at \*8.

In his response brief, Plaintiff asserts that his Complaint pleads "'specific facts sufficient to support a plausible inference that the defendant is liable for intentional sex discrimination,'" citing Paragraphs 42, 43, 51-57, 72, and 115-133 of his Complaint in support. (ECF 28, p. 20) (quoting

*Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 835-36 (N.D. Ill. 2015)).[7] Plaintiff alleges that these paragraphs of the Complaint contain allegations that "the conduct of the case and its outcome were due to John Doe's gender" as well as "facts to show that Purdue University would have investigated or decided the case differently or sanctioned Plaintiff differently if Plaintiff were a different gender." (ECF 28, p. 22). The Court considers each of the identified allegations in turn.

First, Plaintiff argues that procedural deficiencies in the disciplinary process demonstrate bias, referencing Paragraph 42, which alleges:

> 42. On June 14, 2016, Defendant Dean of Students Sermersheim sent a letter of that date to John Doe advising him that, after considering the information provided by John Doe, Jane Doe, the University Investigators and consulting with the three-member panel from the Advisory Committee on June 6, 2016, **"I [Dean Sermersheim] have made the determination that a preponderance of the evidence does support a finding that your [John Doe's] conduct violated the Anti-Harassment Policy."** (Bold in the original.) This determination was made without a hearing on the accusations, much less a hearing where sworn testimony was taken, cross-examination afforded and documentation considered chronologically. Only an anti-male discriminatory bias presuming the female's story to be true can explain Dean Sermersheim's June 14, 2016 letter.

(Cmplt. ¶ 42). Paragraphs 115-122 within Count II similarly allege procedural deficiencies: failure to conduct an adequate, reliable, and impartial investigation; denying Plaintiff access to the Investigator's Report and the case file as a whole; misrepresentations by the investigators in their Report that Plaintiff confessed his guilt; the redaction of all names in the case file, which prevented Plaintiff from knowing who said what; and the failure to provide Plaintiff with the evidence

---

[7] Notably, the district court in *Ludlow* twice found that the plaintiff had failed to allege facts sufficient to state a claim of gender bias. *See Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 835-36 (N.D. Ill. 2015) (Feb. 5, 2015) (interpreting the allegations of the complaint as a Title IX claim, although not specifically pleaded as such, finding the plaintiff had not "alleged anything approaching 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding,'" and giving the plaintiff an opportunity to file an amended complaint to make the necessary allegations (quoting *Yusuf*, 35 F.3d at 715)); *see also Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 791-93 (N.D. Ill. 2015) (Aug. 28, 2015) (holding that the plaintiff failed to state a claim of sex discrimination based on a Title IX erroneous outcome theory).

supporting Jane Doe's allegations, which affected his ability to prepare his defense. Plaintiff alleges that this is a victim-centered process in which the male student is presumed guilty and the burden of proof is placed on the male respondent. Plaintiff questions how the determination could have been based on a credibility assessment without an adversarial hearing with cross-examination. *Id*. at ¶¶ 115-122. In Paragraph 128, Plaintiff alleges failures with the July 21, 2016 appeal decision when Rollock did not address the substantive issues raised by Plaintiff in his appeal. *Id*. at ¶ 128.

Although these facts raise some question about the outcome of the disciplinary proceeding and a certain informality in the information-gathering process, these facts do not suggest that Plaintiff was treated differently because of his gender. In fact, in Paragraph 121, Plaintiff alleges that Purdue has a victim-centered process. *Id*. at ¶ 121. And, the quotation in Paragraph 42 from Dean Sermersheim's letter is simply a statement of her credibility finding. Without more, the alleged procedural deficiencies and Plaintiff's disagreement with the credibility determination cannot be a basis to impute gender bias. *See Doe v. Cummins*, 662 F. App'x at 452 (citing *Sahm*, 110 F. Supp. 3d at 778); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 991 ("And '[d]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.'" (quoting *Sahm*, 110 F. Supp. 3d at778)); *see also Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 607 (citing *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 460-81 (S.D.N.Y. 2015)).

Next, Paragraph 43 alleges that "Dean Sermersheim's June 14, 2016 letter went on to state that Defendant Purdue does not tolerate harassment *of any person* in the workplace or educational environment" and then lists the sanctions against Plaintiff. (Cmplt. ¶ 43) (emphasis added). The wording of this allegation is gender neutral on its face. And, nothing in the four sanctions levied

against Plaintiff mentions gender or suggests gender bias. The Court addresses below Plaintiff's allegations of "selective enforcement" related to the sanctions imposed by Dean Sermersheim.

Third, Paragraphs 51-55 allege the following deficiencies in Dean Sermersheim's numbered findings: a failure to apply a burden of proof, the absence of a preponderance of the evidence supporting the finding of a violation by Plaintiff, evidence that should have been considered, the timing of Jane Doe's allegations, the lack of documentary support for Jane Doe's allegations, Plaintiff's consistent denial of the allegations, Plaintiff's written responses and in-person statements that contradicted Dean Sermersheim's findings, the texts between Plaintiff and Jane Doe indicating that no sexual assault had occurred, Plaintiff's roommate's corroboration that he did not observe any sexual assaults, Dean Sermersheim's failure to mention Plaintiff and Jane Doe's dating relationship for three months in Fall 2015 that included consensual sexual intercourse fifteen to twenty times, the lack of explanation for Dean Sermersheim's credibility finding, the absence of objective evidence supporting the credibility finding, and the lack of a hearing with sworn testimony. Plaintiff further alleges that the sanctions did not take into account his unblemished disciplinary record at Purdue or his character witnesses. *Id.* at ¶¶ 51-55. Similarly, in Paragraph 127 within Count II, Plaintiff criticizes Purdue for allowing Dean Sermersheim to "provide no explanation supporting her stated credibility judgments for the female Jane Doe and against the male John Doe." *Id.* at ¶ 127. Plaintiff concludes that "[o]nly an anti-male bias to find for the female complainant and against the male respondent can explain Defendant Dean Sermersheim's purported findings concerning the preponderance of the evidence." *Id.* at ¶¶ 54, 127. In Paragraph 54, Plaintiff further alleges that he "was presumed guilty." *Id.* at ¶ 54.

Again, Plaintiff alleges no facts to show that Dean Sermersheim was biased when weighing Jane Doe's and Plaintiff's statements, which included Plaintiff's written statement as well as his in-person statements to the panel. *See id.* at ¶¶ 30, 31. To plead facts sufficient to show an erroneous outcome attributable to intentional sex discrimination, Plaintiff must allege more than disagreement with how accurately Dean Sermersheim weighed the evidence. Unbiased persons can weigh the same evidence differently. Plaintiff's allegation that he was presumed to be guilty is nothing more than a bare-bones allegation with no factual support. Again, these facts may be victim-biased, but there is nothing that is specifically gender-biased. Notably, Plaintiff does not specify any facts from either his own testimony, his written statements, or Jane Doe's statement to support his argument that the facts were not properly weighed or to suggest that the evidence "substantially favors" his version of the events. *See Doe v. Columbia Univ.*, 831 F.3d at 67. Nowhere does Plaintiff allege that Defendants failed to follow the established procedure or deviated from the Dear Colleague Letter or the regulations set out by the Department of Education in issuing the written decision. *See, e.g.*, *Yu*, 97 F. Supp. 3d at 471 (noting that neither the Dear Colleague Letter or the Clery Act require a detailed factual finding in the disciplinary decision and finding that, even if detailed factual findings were required, the plaintiff pointed to "no evidence suggesting that failure to present such a writing to [Plaintiff] was motivated by gender bias").

Fourth, Plaintiff alleges in Paragraph 56 that Defendant Sermersheim had a conflict of interest because she made both the finding of responsibility as the Title IX Coordinator and imposed the sanction as Dean of Students. Plaintiff alleges that these roles constitute a conflict of interest under the Title IX guidance in the Dear Colleague Letter, which provides: "Title IX coordinators should not have other responsibilities that may create a conflict of interest. For example, serving as

the Title IX coordinator and a disciplinary hearing board member or general counsel may create a conflict of interest." (Cmplt. ¶ 57); *see also* Dear Colleague Letter, Archived Information, United States Department of Education, Office of Civil Rights, at p. 7, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (last visited Nov. 15, 2017). Plaintiff makes identical allegations in Paragraphs 124 and 125 within Count II.

Again, these allegations by themselves do not demonstrate that Dean Sermersheim acted with gender bias. The Seventh Circuit Court of Appeals has recognized in the university disciplinary context that "the combination of investigative and adjudicative functions into a single administrator does not, in itself demonstrate . . . bias . . . because we presume that administrators are honest and impartial and, therefore 'capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 55 (1975)). Thus, without more, the mere fact that Dean Sermersheim played multiple roles does not demonstrate gender bias. *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 991 (citing *Sahm*, 110 F. Supp. 3d at 778 (finding that the facts that the Title IX investigator was also a part-time police officer and a member of the Task Force on the Prevention of Sexual Assault "do not suggest a gender bias against males so much as against students accused of sexual assault")). As discussed below, there are no allegations of any statements by Dean Sermersheim or other evidence that Dean Sermersheim held a gender bias against men.

Fifth, in Paragraph 72, Plaintiff alleges:

On August 16, 2016, John Doe involuntarily resigned from Navy ROTC, his dream of serving his country as a Naval officer destroyed. Meanwhile, in August 2016 at Defendant Purdue, a second OCR investigation was opened, the student newspaper reported that a new "Sexual Assault Center" was opened on campus and procedures for adjudicating sexual misconduct cases were amended to permit respondents and

complainants to have access to the investigative report and to submit comments and
additional information to Purdue's investigator in writing.

(Cmplt. ¶ 72). First, it is unclear what Plaintiff means by a "second OCR investigation" as there is no allegation of a "first OCR investigation." Throughout the Complaint, "OCR" is short for the United States Department of Education Office of Civil Rights, and Plaintiff uses the term "investigation" to refer to both the campus investigation of Jane Doe's allegations as well as in discussing the OCR's national policies. Second, and more importantly, the allegations in Paragraph 72 are gender and victim neutral. To the extent Plaintiff is attempting to reference the prior policy of not allowing him to see the investigative report in his case prior to his hearing, the allegation is no different than the other criticisms of the disciplinary procedures, which by themselves do not show gender bias.

Sixth, in Paragraph 126, Plaintiff alleges that the "totality of the circumstances" establishes that Defendants acted based on gender bias in reaching the "erroneous outcome" by crediting false accusations five months after the occurrences with no supporting documentation, by discrediting Plaintiff–a male, and by disregarding evidence tending to exculpate Plaintiff, including text messages. *Id.* at ¶126. In essence, Plaintiff alleges that Purdue considered all the evidence submitted; he is dissatisfied with the outcome. Thus, Plaintiff recognizes that the text messages he submitted, his statements, Jane Doe's statement, and the interview were all considered. Plaintiff does not allege the existence of any evidence other than the evidence that Plaintiff himself provided and Jane Doe's witness statement. The Complaint alleges that six individuals—Oliver, Amberger, Sermersheim, and three unnamed panelists—evaluated Plaintiff's personal credibility based on his own explanations of his conduct. *Id.* at ¶¶ 32-40. At a minimum, these alleged facts are consistent with a policy of

evidence-based decision making and do not, in and of themselves without more, suggest gender bias given the presumption of honesty and impartiality accorded the decision makers.

Seventh, Plaintiff alleges on information and belief that Defendants were pressured by the Obama Administration's Department of Education into following the Title IX investigative and adjudicatory process in the 2011 Dear Colleague Letter, regardless of due process considerations. (Cmplt. ¶ 130). And, Plaintiff alleges on information and belief that Purdue's "mishandling" of Plaintiff's case was "wrongfully affected by federal pressure" from the federal government. *Id*. These "general allegations about public pressure to resolve sexual assault complaints are insufficient to show that gender bias was the motivating factor in the erroneous result." *Doe v. Columbia Coll. Chi.*, 2017 WL 4804982, at *8-9 (citing *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *8; *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 606; *Doe v. Cummins*, 662 F. App'x at 452; *Yu*, 97 F. Supp. 3d at 474-75; *Doe v. Univ. of Colo.*, No. 16-CV-1789, 2017 WL 2311209, at *11); *see also Cummins*, 662 F. App'x at 453; *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1078; *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 990-91. Like in *Cummins*, Plaintiff alleges no specific facts showing that Purdue or any decision makers in his disciplinary proceedings were pressured by the federal government or faced public criticism for their handling of Title IX investigations prior to Plaintiff's proceedings. *See* 662 F. App'x at 453.

Plaintiff contends that *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), provides support for these allegations of federal pressure. But the plaintiff in *Columbia University* alleged specific facts to support his claim that federal government pressure led to gender bias in the enforcement proceedings. Specifically, in the weeks prior to the plaintiff's hearing, Columbia University had been criticized by the student body and the public media for its handling of sexual

assault investigations and for turning a "blind eye to female students' charges of sexual assaults by male students." *Id*. at 56, 57-58. As a result of the public criticism, the university president held a campus-wide town hall meeting for students to discuss the issue with the dean. *Id*. In addition, the plaintiff alleged that the Title IX investigator herself had been subject to public criticism in the weeks prior to the plaintiff's hearing. *Id.* at 58-59. Applying what appears to be a lower pleading standard, the Second Circuit Court of Appeals found these facts sufficient to infer gender bias based on pressure by the federal government to avoid Title IX liability, reversing the district court decision. *Id*. at 56, 57-59.[8] Plaintiff in this case alleges no such additional facts. *See, e.g.*, *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1226 (D. Ore. 2016) (declining "to extend the Second Circuit Court of Appeals reasoning because Plaintiffs make no similar allegations of an atmosphere of scrutiny, and even had they done so, there remains no plausible inference that a university's aggressive response to allegations of sexual misconduct is evidence of gender discrimination" (citing *Doe v. Regents of the Univ. of Cal.*, 2016 WL 5515711, at *7)).

Eighth, Plaintiff attempts to demonstrate a pattern of gender bias by alleging that the totality of the circumstances establishes that Purdue has "demonstrated a patter of inherent and systematic gender bias and discrimination against male students accused of misconduct." *Id*. at ¶ 131. Plaintiff alleges that, "on information and belief," "all students that have been suspended or expelled from Defendant Purdue for sexual misconduct have been male." *Id*. at ¶ 132. And, "[m]ale respondents, and particularly male athletes and male ROTC members, in sexual misconduct cases at Defendant

---

[8] The court in *Doe v. University of St. Thomas*, also noted that in *Doe v. Columbia University*, 831 F.3d 46 (2nd Cir. 2016), the Second Circuit Court of Appeals appeared to apply a more lenient standard of review, which the Sixth Circuit Court of Appeals declined to apply in *Doe v. Cummins*, 662 F. App'x 443, 451-54 (6th Cir. 2016). *See Doe v. Univ. of St. Thomas*, 240 F. Supp. at 992 n. 4. Likewise, the court in *Doe v. University of Colorado, Boulder*, describes the Second Circuit Court of Appeals as applying a "relatively low pleading standard" in *Doe v. Columbia University*. *See Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1075.

Purdue are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof." *Id*. at ¶ 133. None of these allegations offer statistics or facts to support a pattern of gender discrimination; again, even if all the respondents were male and all were punished, without more, this only alleges victim bias, and not gender bias.

Even taking as true Plaintiff's allegation that Purdue personnel took steps to ensure that harassment allegations were forwarded and not suppressed, that allegation only speaks to the institution's commitment to enforce its rules and does not equate to bias against male students, even if the accused students are generally male. *See Cummins*, 662 F. App'x at 453 (noting the plaintiff's failure "to eliminate the most obvious reasons for the disparity between male and female respondents in UC sexual-misconduct cases: '(1) [the university] has only received complaints of male-on-female sexual assault, and (2) males are less likely than females to report sexual assaults'" (quoting *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 607-08); *King v. DePauw Univ.*, No. 15-CV-70, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014))). There is no inference to draw in Plaintiff's favor when "'the majority of accusers of sexual assault are female and the majority of the accused are male.'" *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1075 (quoting *Austin*, 205 F. Supp. 3d at 1225). Likewise, Purdue "'is not responsible for the gender makeup of those who are accused by *other students* of sexual misconduct.'" *Id*. at 1078 (quoting *King*, 2014 WL 4197507, at *10). Plaintiff has not offered evidence of biased decision making or patterns of decision making that tend to show the influence of gender. *See Baum*, 227 F. Supp. 3d at 819-20; *see also Doe v. W. New England Univ.*, 228 F. Supp. 3d at 189. The Sixth Circuit Court of Appeals has noted that "'one case by an individual who was subjectively dissatisfied with the result [of a disciplinary proceeding] does not constitute a pattern of decisionmaking.'" *Sahm*, 110 F. Supp. 3d at 779 (quoting *Mallory*,

76 F. App'x at 640). Thus, none of the allegations in the Complaint identified by Plaintiff support his claim of gender bias.

In contrast with the instant case, cases in which the court finds that the plaintiff has stated a claim for erroneous outcome under Title IX are those in which the plaintiff identifies specific facts or comments by university officials that are indicative of gender bias. *See Doe v. Columbia Coll. Chi.*, 2017 WL 4804982, at *9 (gathering cases *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 189 (D.R.I. 2016) (finding that the plaintiff made "specific allegations related to gender bias as opposed to bias against students accused of sexual assault"); *Doe v. Washington & Lee Univ.*, No. 6:14-CV-52, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015); *Doe v. Univ. of Chi.*, No. 16 C 08298, 2017 WL 4163960, at *5 (N.D. Ill. Sept. 20, 2017); *Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 WL 3212079, at *17 (N.D.N.Y. Feb. 24, 2016)); *see also Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016); *Doe v. Lynn Univ.*, 235 F. Supp. 3d 1336, 1339 (S.D. Fla. 2017); *Doe v. The Trs. of the Univ. of Penn.*, No. 16-5088, 2017 WL 4049033, at *15-16, — F. Supp. 3d — , — (E.D. Penn. Sept. 13, 2017); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 766, 768 (D. Md. 2015); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751 (S.D. Ohio 2014).

Contrary to Plaintiff's assertion, Plaintiff does not allege any facts similar to those found sufficient in five cases that he string cites without analysis: *Doe v. Columbia University*, *Yusuf v. Vassar College*, *Doe v. Washington and Lee University*, *Prasad v. Cornell University*, and *Neal v. Colorado State University-Pueblo*. The Court considers each case in turn. First, as discussed above, in *Doe v. Columbia University*, the plaintiff made specific factual allegations showing public pressure on the decision-makers. 831 F.3d at 56. In addition, the court reasoned that, "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a

conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias." *Id*. at 57. The court found that, although the evidence of "bias" by itself did not "necessarily relate to bias with respect to sex," when those facts were combined with the public criticism of the university and the decision maker, "it is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." *Id*. Although Plaintiff alleges his version of the events, he has not identified factual evidence that "substantially favors" his version of the events. And, Plaintiff does not allege any instances of public criticism. Thus, *Columbia University* is not persuasive in this instance.

Second, in *Yusuf*, the plaintiff alleged "that males accused of sexual harassment at Vassar are 'historically and systematically' and 'invariable found guilty, regardless of the evidence, or lack thereof'" with no factual support for this assertion. 35 F.3d at 716. What were essentially conclusory allegations were sufficient in *Yusuf* because the decision was issued in 1994, long before the modern pleading standard under *Iqbal* and *Twombly*. Although the standard for an erroneous outcome claim set forth in *Yusuf* is widely cited, a "majority of cases . . . have held that *Yusuf*-like pleading of the gender bias component no longer passes muster, and that the various plaintiffs' allegations largely tend to show, if anything, pro-victim bias, which does not equate to anti-male bias." *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1074 (citing *Doe v. Baum*, 227 F. Supp. 3d at 817-20; *Austin*, 205 F. Supp. 3d at 1222-27; *Doe v. Regents of the Univ. of Cal.*, 2016 WL 5515711, at *4-6; *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 606-08; *Marshall v. Ohio Univ.*, 2:15-CV-775, 2015 WL

7254213, at *5-8 (S.D. Ohio Nov. 17, 2015); *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 791-93

(N.D. Ill. 2015); *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *6-9; *Sahm*, 110 F. Supp.

3d at 777-80; *Yu*, 97 F. Supp. 3d at 461-81.

Third, in *Doe v. Washington and Lee University*, No. 6:14-CV-52, 2015 WL 4647996, at *10

(W.D. Va. 2015), the court first found that the plaintiff pleaded sufficient facts to cast doubt on the

accuracy of the outcome reached. Recognizing that the alleged flaws in the disciplinary proceedings

in and of themselves are not evidence of gender bias, the court nevertheless found that, given the

"totality of the circumstances," the plaintiff plausibly established a causal link between his expulsion

and gender bias. *Id*. The circumstances included a presentation by an influential Title IX officer who

introduced and endorsed an article titled, "Is it Possible that There is Something in Between

Consensual Sex and Rape... and That It Happens to Almost Every Girl Out There?" *Id*. The article

proposed that "sexual assault occurs whenever a women has consensual sex with a man and regrets

it because she had internal reservations that she did not outwardly express." *Id*. The circumstances

of the article were factually similar to those of the harassment complaint in that case. In addition,

the plaintiff alleged that the university president's letter announcing the appointment of the Title IX

officer "prominently mentioned the fact that many universities were currently under investigation

for violating Title IX." *Id*. at *8. This is factually distinguishable from the instant lawsuit given that

Plaintiff offers no statements, conduct, or activity by Dean Sermersheim or anyone else involved

in the disciplinary process that suggests gender bias or any such communication or statement from

Purdue (through its president or otherwise).

Fourth, in *Prasad v. Cornell University*, 5:15-CV-322, 2016 WL 3212079, at *16-17 (N.D.N.Y. Feb. 24, 2016), the plaintiff alleged facts demonstrating compromised evidence and the complicity of the university. In contrast, in the instant case, there are no such allegations.

Fifth, in *Neal v. Colorado State University-Pueblo*, the plaintiff alleged additional facts to show that bias was because of gender. 16-CV-873, 2017 WL 633045, at *9 (D. Colo. Feb. 16, 2017). The court found that a disproportionate effect on males is not enough but declined to resolve whether general allegations that male respondents are always found guilty or that the respondent was used by his university to placate the DOE because, in *Neal*, the plaintiff had alleged "statements by the CSU-Pueblo investigator that amply support that gender bias infected the proceeding." *Id*. at *13 (listing cases finding that those general allegations were insufficient). The plaintiff alleged various statements of the investigator demonstrating prejudice against male athletes. *Id*. Plaintiff in this case makes no such allegations.

Finally, in his response brief, Plaintiff asserts that, under Title IX, he is alleging both an "erroneous outcome" claim as well as a "severity of penalty/selective initiation" claim, citing Paragraphs 115, 116, and 129 of his Complaint, and that he "expressly relies upon both categories." (ECF 28, p. 24). In Paragraph 115, Plaintiff makes the legal statement that challenges to university disciplinary proceedings for sex discrimination fall into two categories—"erroneous outcome" cases and "severity of penalty/selective initiation" cases. (Cmplt. ¶115). In the following paragraph, Plaintiff alleges that "[a]n 'erroneous outcome' occurred in this case because John Doe was innocent and wrongly found to have committed sexual assault and gender bias was a motivating factor." (Cmplt.¶ 116). There is no similar paragraph alleging that this is a "severity of penalty/selective initiation" case, which is referred to in the case law as a "selective enforcement" claim. *See Yusuf*,

35 F.3d at 715. Rather, the allegations in Paragraph 129 regarding the severity of Plaintiff's punishment appear to support the allegations of gender bias in support of the erroneous outcome claim.

Nevertheless, even if Plaintiff is alleging a "selective enforcement" claim, he has not alleged facts to support such a claim and offers no such facts in support thereof in his response brief. A "selective enforcement" claim is based on the premise that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id*.; *see also Prasad*, 2016 WL 3212079, at *18. In this case, the proceeding was initiated by Jane Doe; thus, there can be no selective enforcement based on the initiation of the proceeding. As for the severity of the penalty, "[c]ourts have interpreted that standard to require a plaintiff to 'allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency.'" *Prasad*, 2016 WL 3212079, at *18 (quoting *Doe v. Columbia*, 101 F. Supp. at 374, *rev'd on other grounds*, 831 F.3d 46 (2016)). In other words, to prevail on a "selective enforcement" claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender. *See Cummins*, 662 F. App'x 452 (citing *Mallory*, 76 F. App'x at 641; *Marshall*, 2015 WL 7254213, at *6); *Yusuf*, 35 F.3d at 715; *see also Doe v. Columbia*, 101 F. Supp. at 374 (collecting cases). Plaintiff has not alleged that a similarly-situated female was treated more favorably because of her gender.

Accordingly, because Plaintiff has failed to show any causal connection between the adverse outcome of his disciplinary proceedings and gender bias, the Court grants the Motion to Dismiss Plaintiff's Title IX claim and dismisses the claim with prejudice.

### E. State Law Claims

Defendants move to dismiss Plaintiff's state law claims against Defendant Purdue University in Counts III and IV on the basis that they are barred by the Eleventh Amendment. In his response brief, Plaintiff concedes that his state law claims are barred if the Eleventh Amendment immunity is not waived, which it is not. *See Vance v. Ball State Univ.*, 1:09-CV-1501, 2012 WL 29148, at *2 (S.D. Ind. Jan. 5, 2012) (citing *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002)). Accordingly, the Court grants the Motion to Dismiss Counts III and IV of the Complaint and dismisses these claims without prejudice for lack of subject matter jurisdiction.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint [DE 18] as to all counts. The Court (1) dismisses without prejudice the claims for injunctive relief in Counts I and II; (2) dismisses without prejudice the state law contract claims in Counts III and IV; (3) dismisses without prejudice all § 1983 claims against Defendants Purdue University, the Purdue University Board of Trustees, and the individual defendants in their *official* capacities; (4) dismisses with prejudice all claims against Defendant Daniels in his individual capacity; (5) dismisses with prejudice the § 1983 damages claims against the individual defendants in their *individual* capacities for failure to state a claim; and (6) dismisses with prejudice the Title IX claims in Count II for failure to state a claim.

SO ORDERED this 15th day of November, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT