IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | **CIVIL ACTION** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** ) | |
| **DANIELS, JR.,** individually and as agent for Purdue ) | |
| University, **ALYSA CHRISTMAS ROLLOCK**, ) | No. 2:17-cv-00033-JPK |
| individually and as agent for Purdue University, ) | |
| **KATHERINE SERMERSHEIM**, individually and as ) | |
| agent for Purdue University, **ERIN OLIVER**, individually ) | |
| and as agent for Purdue University, **JACOB** ) | |
| **AMBERGER**, individually and as agent for Purdue ) | |
| University, ) | |
| ) | |
| Defendants. ) | |

## VERIFIED MOTION FOR ISSUANCE OF A SUBPOENA

Defendants, by counsel, respectfully request that this Court issue a subpoena, directing nonparties United States Navy ("Navy"), Naval Reserve Officer Training Corps ("NROTC"), and Purdue Naval Reserve Officer Training Corps ("Purdue NROTC") to produce certain documents known or believed to be in their possession.

**Background**

Plaintiff alleges that he is a former Purdue University student and Purdue NROTC Midshipman, and that in June 2016, he was suspended from Purdue University for one academic year on account of Purdue's investigation and determination of a sexual misconduct and harassment allegation by a fellow Midshipman and Purdue Student ("Jane Doe"). On July 29, 2016, named-Defendant Vice President Alysa C. Rollock received an email from Purdue NROTC Commander Craig Remaly. (Ex. A). In this communication, Commander Remaly

1

informed Vice President Rollock that Purdue NROTC had "started our process to review [Plaintiff's] actions, but he is not responding to any of our attempts to contact him." (*Id.*) Commander Remaly also requested that Vice President Rollock provide "a copy of [Purdue's] decision regarding his appeal [of Purdue's decision to suspend him] [.]" (*Id.*) He attached the Plaintiff's signed release of "all information pertaining to the investigation and corresponding case concerning [Jane Doe] and [Plaintiff] . . . ." (*Id.*)

Plaintiff repeatedly alleges in his Complaint — and in his appeal to Vice President Rollock — that Purdue's disciplinary findings caused him to lose his Purdue NROTC scholarship and his position in Purdue NROTC. (Compl. at 29, ¶ 46; Ex. B). Plaintiff alleges in his Complaint that he "involuntarily resigned," (Compl. at 42, ¶ 72) and also describes himself as a "now dismissed member of Navy ROTC." (*Id.* at 1-2, ¶ 1). Additionally, Plaintiff alleges that Purdue's handling of this matter "jeopardize[d] John Doe's . . . career serving his country," (*id.* at 60, ¶ 128), and cost him "military career opportunities." (*Id.* at 52, ¶ 105; *see also id.* at 62, ¶ 134).

On March 31, 2017, the Parties filed their 26(f) Report of Parties' Planning (Ex. D), and the Defendants filed their Motion to Dismiss for Failure to State a Claim. On November 15, 2017, this Court granted the Defendants' Motion and dismissed the Complaint in its entirety. Plaintiff appealed.

On appeal, the Seventh Circuit agreed with this Court that, for the purposes of a Due Process claim, Plaintiff could not rely on a continuing interest in a post-secondary education, and that Plaintiff failed to sufficiently plead facts to support a property interest on the basis of a contract with the University. *Doe v. Purdue University.*, 928 F.3d 652, 659-60 (7th Cir. 2019). However, because Plaintiff had alleged that Purdue's investigation changed his legal status and

2

prevented him from pursuing his naval career, the Court held that Plaintiff could proceed under a due process theory that his liberty interest in that career choice had been deprived. *Id.* at 661-63.

After the Seventh Circuit remanded this matter for further proceedings, Defendants' undersigned Attorney Jones contacted the Navy General Counsel's office to determine: (1) whether it, the NROTC, or the Purdue NROTC was the custodian of any records pertaining to the Plaintiff, and (2) whether it would comply with a request for production and subpoena *duces tecum* issued by Defendants' counsel.  Attorney Jones was informed that the Purdue NROTC had responsive documents but, pursuant 32 C.F.R. Part 725, because relevant documents in the possession of the Navy, NROTC, or Purdue NROTC might implicate the Privacy Act of 1974, the Family Educational Rights and Privacy Act, and/or the Health Insurance Portability and Accountability Act, the Navy General Counsel's office would require a release from the Plaintiff, or a judge-executed subpoena, before it would comply with any request for documents.

On July 19, 2019, Defense Attorneys Kealey and Jones and Plaintiff's Attorney Byler spoke about case management, including whether Plaintiff would be willing to execute a release to obtain the Purdue NROTC's records. Attorney Byler informed Attorneys Kealey and Jones that he would consider it. One week later, on July 26, 2019, after not receiving a response from Attorney Byler, Attorney Jones forwarded a Navy-approved form of Authorization and Release, (Ex. C), to Attorney Byler, along with proposed non-party requests for production and subpoenas *duces tecum*, to be served on the Navy with Plaintiff's Authorization and Release.  In response, Attorney Byler did not agree to secure the requested release from his client, John Doe.  Finally, on August 14, 2019, Attorney Jones sent Attorney Byler a final request that he execute the proposed release.  (Ex. F).  Attorney Jones advised Attorney Byler that he would file this motion with the Court, if Attorney Byler would not obtain the release.  (*Id.*).  On August 15, 2019,

3

Attorney Byler responded, and made it clear he would not do so.

## I. Standard of Law

A party may obtain discovery pertaining to

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). What is "relevant" has historically been construed broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), and district courts have broad discretion in supervising discovery, *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012).

## II. Argument

### A. The Documents at Issue are Relevant

Through preliminary discussions with the Navy General Counsel's Office, Defendants believe that the Navy, NROTC, or Purdue NROTC have the following relevant documents: (1) an investigation of the Plaintiff, concerning his alleged sexual assault of Jane Doe; (2) his service record with the Purdue NROTC; (3) his student file, (4) a "disenrollment package," and (5) emails and statements from Plaintiff and Jane Doe. Those documents are key evidence.

The Seventh Circuit found that Plaintiff could support his Due Process Claim by alleging the deprivation of the liberty to pursue the career of his choice—service in the Navy:

> John's failure to establish a property interest does not doom his claim, however, because he also maintains that Purdue deprived him of a protected liberty interest: his freedom to pursue naval service, his occupation of choice. To succeed on this theory, John must satisfy the "stigma plus" test, which requires him to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held. John argues that he has satisfied this test because he alleges that Purdue inflicted reputational harm by wrongfully branding him as a sex offender; that Purdue changed his legal status by suspending him, subjecting him to readmission requirements, and causing the

loss of his Navy ROTC scholarship; and that these actions impaired his right to occupational liberty by making it virtually impossible for him to seek employment in his field of choice, the Navy.

\*\*\*

. . . [Plaintiff] does not claim simply that he might someday have to self-publish the guilty finding to future employers. Instead, John says that he had an obligation to authorize Purdue to disclose the proceedings to the Navy. . . . In *Dupuy*, we held that the publication requirement of the stigma-plus test was satisfied when the plaintiffs were obligated to authorize a state agency to disclose its finding that they were child abusers to the plaintiffs' current and prospective employers. In contrast to *Olivieri*, where disclosure was voluntary and speculative, it was compelled and certain in *Dupuy*. And in *Dupuy*, unlike in *Olivieri*, the disclosure was not self-published—it came from the defendant, even if the plaintiff had been obligated to authorize it. So too here: Purdue, not John, revealed to the Navy that it had found him guilty of sexual violence, and John had a legal obligation to authorize the disclosure.

Thus, if what John says is true, the university has stigmatized him by telling the Navy about the guilty finding. But the loss of reputation is not itself a loss of liberty, "even when it causes 'serious impairment of one's future employment.'" John must also show that the stigma was accompanied by a change in legal status.

\*\*\*

John's situation is unlike that of the plaintiffs in *Paul v. Davis* and *Hinkle v. White* because it is not a matter of state-spread rumors or an investigation that was ultimately dropped. After conducting an adjudicatory proceeding, Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a full-time student in good standing to one suspended for an academic year. And it was this official determination of guilt, not the preceding charges or any accompanying rumors, that allegedly deprived John of occupational liberty. It caused his expulsion from the Navy ROTC program (with the accompanying loss of scholarship) and foreclosed the possibility of his re-enrollment in it. John has satisfied the "stigma plus" test.

*Purdue*, 928 F.3d at 661-63 (citations omitted).Thus, Plaintiff's due process claim expressly centers on deprivation of his liberty interest to pursue a career as member of the Navy.

Plaintiff also alleges in his Complaint that he had a scholarship from the Purdue NROTC, and future career opportunities, and that he lost these because of Purdue's investigation. Documentation memorializing the exact value and terms of his scholarship—such as documents

5

likely in his "disenrollment package" and related emails—and the extent and nature of any career opportunities with the Navy is vital to proving or defending against these damages.

The Purdue NROTC's student file and service record also likely contain information on the specific dates John Doe entered into the program and his official status when he left. These documents would be evidence of Plaintiff's official status with the Purdue NROTC and whether he in fact involuntarily or voluntarily resigned from the program, or whether he was dismissed. Considering Plaintiff's own variable account of his status with Purdue NROTC, (*compare* Compl. at 42, ¶ 72 *with Id.* at 1-2, ¶ 1), there is good reason to seek the official account from the Purdue NROTC itself.

Finally, these documents will also confirm whether Purdue NROTC or the Navy had any additional facts regarding John Doe's interactions with Jane Doe.

John Doe has opened the door to all of this evidence. Surely he has nothing to hide.

### B. The Circumstances Justify a Subpoena

Plaintiff has positioned his status with the Purdue NROTC at the forefront of this case. As **early as March 31, 2017**, Defendants notified the Plaintiff that they would need to conduct discovery pertaining to this topic, specifically his "ROTC and military records," as reflected in the Rule 26(f) Report of Parties' Planning Meeting. (*See* Ex. D).

The pertinent Rule 26 factors justify the Court's execution of this subpoena. *See* FED. R. CIV. P. 26(b)(1). The Navy is the primary (and possibly only) entity with access to a complete set of these particular documents, and without them the Defendants will have only Plaintiff's characterizations of his relationship and past dealings with the Navy and Purdue NROTC. These documents are necessary to ensure that all parties may present and defend claims on an equal footing. *See, e.g.*, *Does 1-5 v. City of Chicago*, Case No. 18-cv-03054, 2019 WL 2173784 at *3

(N.D. Ill. May 20, 2019) (finding that a discovery request was not overly burdensome, and noting that Defendant was the only party with access to the requested information and that Plaintiffs would not be able to seek the information from another source). Further, under hearsay and best-evidence rules, testimony regarding the existence and contents of those documents may be inadmissible.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court execute the proposed subpoena (Ex. E), or otherwise issue its own subpoena incorporating the substance of Defendants' proposed subpoena.

## VERIFICATION

I, Tyler L. Jones, attorney of record for Defendants in this cause, verify under oath that the foregoing statements regarding my interactions with naval personnel and Plaintiff's counsel are true and correct.

Respectfully submitted,

/s/ Tyler L. Jones
William P. Kealey (No. 18973-79)
Tyler L. Jones (No. 34656-29)
James F. Olds (No. 27989-53)
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
       tlj@stuartlaw.com
       jfo@stuartlaw.com
Telephone: 765.423.1561
***Attorneys for Defendants***

1235308v1