**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
----------------------------------------------------------x

| | |
|---|---|
| **JOHN DOE,** | **CIVIL ACTION** |
| | **No. 2:17-cv-33-JPK** |
| **Plaintiff,** | |
| | |
| **-against-** | |
| | |
| **PURDUE UNIVERSITY, PURDUE** | |
| **UNIVERSITY BOARD OF TRUSTEES,** | |
| **MITCHELL ELIAS DANIELS, JR., in** | |
| **his official capacity as President of Purdue** | |
| **University, ALYSA CHRISTMAS** | |
| **ROLLOCK, in her official capacity at** | |
| **Purdue University, and KATHERINE** | |
| **SERMERSHEIM, in her official** | |
| **capacity at Purdue University,** | |
| | |
| **Defendants.** | |

----------------------------------------------------------x

## PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## <u>FOR ISSUANCE OF A SUBPOENA TO THE U.S. NAVY</u>

NESENOFF & MILTENBERG, LLP
Philip A. Byler (pro hac vice admission)
Andrew T. Miltenberg (pro hac vice admission)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
Attorneys for Plaintiff John Doe

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION …………………………………………………………...…1

"BACKGROUND" ……………………………………………….…………..3

     A.    Plaintiff John Doe's Case……………………….……………………3

     B.    The Facts Related To Plaintiff John Doe's Separation
             From Navy ROTC……………………………………..….………..3

     C.    Defendants' Motion To Dismiss The Complaint;
             District Court Dismissal……………………………...…………..9

     D.    The Seventh Circuit's Decision Reinstating
             Claims For Due Process and Title IX ………………………….11

     E.    Pre-Current Motion Communications By Plaintiff
             John Doe's Counsel To Defendants' Counsel …………….............12

     F.    The Amended Complaint………………………………….....…14

ARGUMENT ……………………………………………………..………15

  I.    DEFENDANTS INVOKE THE GENERAL RULE ON THE
        SCOPE OF DISCOVERY WITHOUT REGARD TO THE
        FACT DEFENDANTS SEEK DISCOVERY FROM A
        NON-PARTY IN ADVANCE OF ALL OTHER DISCOVERY………15

  II.    EXAMINATION OF DEFENDANTS' ARGUMENT FOR
        RELEVANCE SHOWS DEFENDANTS DO NOT HAVE
        AN ARGUMENT FOR RELEVANCE, BUT RATHER ARE
        SEEKING TO ENGAGE IN A FISHING EXPEDITION …………..17

  III.    THE SEVENTH CIRCUIT DECISION DOES NOT PROVIDE
        THE BASIS FOR DEFENDANTS' SPECULATIONS ABOUT
        RELEVANCE …………………………………………….………19

i

IV.   DEFENDANTS' ARGUMENT THAT THE SUBPOENA
       TO THE U.S. NAVY IS JUSTIFIED DOES NOT
       PROVIDE JUSTIFICATION FOR THE SUBPOENA…………...…….23

CONCLUSION …………………………………………………………...…25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Doe v. Columbia*, 101 F.Supp.2d 376 (S.D.N.Y. 2015), *reversed*,
831 F.3d 46 (2d Cir. 2016)……………………………………………10-11

*Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019).. ……………..… 1, 9-10, 11-12, 19-22

*Doe v. Purdue*, 281 F.Supp.3d 754, 767 (N. D. Ind. 2017), *reversed*,
928 F.3d 652 (7th Cir. 2019)………………………………………..…9, 10, 11

*Does 1-5 v. City of Chicago*, 2019 WL 2173784 (N.D. Ill. May 20, 2019) ………24

*Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005)…………………..……..……..21

*Ex Parte Young*, 209 U.S. 123 (1908) ………………………..……..9, 10, 11, 13, 15

*Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012)..………………..………….16

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978)…………………..……24

*Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997)………………..……..…20-21

## Constitutional Provisions, Statutes and Rules

Eleventh Amendment, U.S. Constitution …………………………………………10

Fourteenth Amendment, U.S. Constitution …………….……….…..…………12, 15

42 U.S.C. § 1983 …………………………………………..…….3, 9, 10, 11, 15, 24

Rule 15(a)(1)(B), Federal Rules of Civil Procedure…………………..……………..14

Rule 26(b)(1), Federal Rules of Civil Procedure…………………..……………..15-16

Rule 26(f), Federal Rules of Civil Procedure……………….…………... 9, 14, 23

Rule 54(b), Federal Rules of Civil Procedure ……………….………………12

Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq*…..3, 10, 11, 14, 15

## **Other Authorities**

Notes of the Advisory Committee on Rules – 1970 Amendments to
Rule 26(b)(1), Federal Rules of Civil Procedure………………………….16

**<u>INTRODUCTION</u>**

Plaintiff John Doe submits this Memorandum of Law in opposition to Defendants' motion for issuance of a subpoena to the U.S. Navy. The motion should be denied. In advance of any and all other discovery, Defendants are seeking to engage in a fishing expedition in an effort to come up with something to avoid the U.S. Court of Appeals for the Seventh Circuit ruled in this case recognizing Plaintiff John Doe's constitutionally protected "stigma-plus" liberty interest and rejecting Defendants' attack upon that interest. *Doe v. Purdue*, 928 F.3d 652, 661-663 (7th Cir. 2019) (Ex. A hereto). To justify the fishing expedition, Defendants' motion provides a materially incomplete and at times inaccurate statement of "Background" and the Seventh Circuit's rulings in this case and a legally and factually untenable assertion of relevance and justification.

Defendants had argued that Plaintiff John Doe was responsible for the damage of losing his Navy ROTC scholarship due to his authorization of disclosure of the Defendant Purdue disciplinary proceeding to the Navy ROTC, but the Seventh Circuit rejected that argument, ruling that Plaintiff John Doe was legally obligated to authorize disclosure of information about and documents from the Defendant Purdue disciplinary proceeding to the Navy ROTC. 928 F.3d at 661-663.

Defendants' notion the Navy ROTC should still be blamed for Plaintiff John Doe's loss of Navy ROTC position and scholarship is contrived, an effort to ignore

1

the 800-pound gorilla in the room of the university sexual misconduct decision and sanction. Yet, Defendants persist so as to find a way somehow of not being compelled to abide by constitutional due process in a disciplinary process that in Plaintiff John Doe's case has (thus far) deprived him of his dream and hope to serve his country as a Naval officer.

Defendants insist that they seek "key evidence" and recite five categories of documents. (Dfs. Motion p. 5.) When examined, however, none of these supposed categories justify the requested authorization for the proposed broad subpoena to the U.S. Navy. The only investigation of Plaintiff John Doe's alleged sexual misconduct with Jane Doe was done by Defendant Purdue investigators; there was no separate U.S. Navy investigation; the Navy ROTC was a recipient of information from Defendant Purdue. Defendants do not identify any document in Plaintiff John Doe's service record with the Navy ROTC that is material to this case, and there is nothing other than what Defendant Purdue sent to Navy ROTC. Plaintiff John Doe's student file is with Defendant Purdue, not the Navy ROTC. There was no "disenrollment package"; a student no longer with the Navy ROTC does not qualify for a Navy ROTC scholarship. E-mails and statements to and from Jane Doe and John Doe were collected by Defendant Purdue investigators, not anyone from the Navy ROTC. Simply put, Defendants are throwing around words to have a fishing expedition authorized as a first order of business when it is not justified at all.

**"BACKGROUND"**

**A.    Plaintiff John Doe's Case.**

Defendants begin its "Background" by incorrectly describing Plaintiff John Doe as a "former" student.  (Dfs. Motion p. 1.)  This action was commenced on January 24, 2017, by Plaintiff John Doe, who was identified in the original Complaint and again in the Amended Complaint (Ex. B hereto) not as a "former" student at Defendant Purdue, but as "a now suspended student at Defendant Purdue University despite a previously unblemished disciplinary record and a now dismissed member of Navy ROTC."  (ECF No. 1: Complaint ¶ 1, pp. 1-2; ECF No. 51: Amended Complaint ¶ 1, pp. 1-2, Ex. B hereto ¶ 1, pp. 1-2.)

Defendants, despite asserting relevance of the subpoenaed information, do not identify the claims brought by Plaintiff John Doe, which after the Seventh Circuit decision are for (i) constitutional due process violations through 42 U.S.C. § 1983 and (ii) Title IX discrimination.  (ECF No. 51: Amended Complaint ¶ 1, pp. 1-2, Ex. B hereto ¶ 1, pp. 1-2, 43-66.)

**B.    The Facts Related To Plaintiff John Doe's Separation From Navy ROTC.**

Without any reference to the pleaded facts related to Plaintiff John Doe's involuntary resignation from the Navy ROTC at Defendant Purdue University ("Defendant Purdue") and without providing any other factual context, Defendants cite an e-mail dated July 29, 2016, received by Defendant Purdue Vice President

Rollock from the Purdue Navy ROTC Commander.  (Dfs. Motion Ex. A.)  The e-mail stated that Plaintiff John Doe was not responding to the Navy ROTC's efforts to contact Plaintiff John Doe, requesting that Defendant Purdue provide a copy of Defendant Purdue Vice President Rollock's appeal decision and enclosing Plaintiff John Doe's signed authorization for release of information in the disciplinary case to the Navy ROTC.  (Dfs. Motion pp. 1-2 & Dfs. Motion Ex. A.)   Defendants then refer to the allegations of the Complaint concerning Defendant Purdue's disciplinary findings causing Plaintiff John Doe to lose his scholarship and position in the Navy ROTC, to resign involuntarily from the Navy ROTC and to lose military career opportunities.  (Dfs. Motion pp. 1-2.)

Defendants appear to be trying to spin Plaintiff John Doe's separation from the Navy ROTC without regard to the chronology of facts in order to justify an inquiry without real focus.  Submitted herewith is Plaintiff John Doe's Declaration on this motion (Ex. C hereto) along with his two university appeal documents (Ex. D hereto is his June 23, 2016 appeal and Ex. E hereto is his July 10, 2016 appeal) and his August 16, 2016 resignation letter (Ex. F hereto).  According to Plaintiff John Doe's Declaration and according to the original Complaint and the Amended Complaint (Ex. B hereto, supported by Plaintiff John Doe's Declaration of merit on Defendants' motion to dismiss the individual Defendants), the chronology is as follows:

4

1.      By letter dated April 11, 2016, from Dean Sermersheim advised Plaintiff John Doe that sexual allegations had been made by Jane Doe (who was a former girlfriend) that may violate Defendant Purdue's Anti-Harassment Policy, that Defendant Purdue had elected to investigate the allegations in absence of a formal complaint by Jane Doe and that supplied a half-page long notice of allegations (non-consensual digital penetration) and no contact directive.  Plaintiff John Doe first learned of Dean Sermershem's April 11, 2016 letter from the Navy ROTC.

2.      On April 28, 2016, John Doe met with the Defendant Purdue Investigators Erin Oliver and Jacob Amberger.

3.      In the month following the April 28, 2016 meeting with John Doe, the Defendant Purdue Investigators prepared a Report and sent it to Defendant Dean Sermersheim.   In accordance with Defendant Purdue's Disciplinary Process Procedures in effect at the time, Plaintiff John Doe was not given an opportunity by the Defendant Investigators or Dean Sermersheim and the three-person panel of the Advisory Committee on Equity to review the Investigator's Report at any time during the process.

4.      On May 20, 2016, Plaintiff John Doe signed a formal acknowledgment of being placed on interim leave of absence from Navy ROTC; and on May 24, 2016, Plaintiff John Doe signed an authorization to release of information pertaining to the case to the Department of Naval Sciences at Defendant Purdue.

5.     On June 6, 2016, before a scheduled meeting with Dean Sermersheim and a three-person panel of the Advisory Committee on Equity, Plaintiff John Doe met with a representative of Navy ROTC, who briefly allowed Plaintiff John Doe to see a redacted version of the Investigator's Report that the Purdue Navy ROTC had received, enabling Plaintiff John Doe to see that the Investigator's Report falsely stated he had confessed to what were said to be Jane Doe's allegations.

6.     On June 6, 2016, Plaintiff John Doe had a half-hour unrecorded meeting with Dean Sermersheim and three members of the Defendant Purdue Advisory Committee on Equity.  Jane Doe never appeared before and never submitted her own drafted statement to Dean Sermersheim and members of the Defendant Purdue Advisory Committee on Equity.

7.     On June 14, 2016, Defendant Dean of Students Sermersheim sent a letter of that date to John Doe advising him that she had determined Plaintiff John Doe was responsible for conduct violating the *Anti-Harassment Policy* and sanctioned him with a suspension, a continued no contact directive and re-admission requirements.

8.     On June 23, 2016, John Doe timely submitted an appeal to Defendant Vice President Rollock.  John Doe stated that Jane Doe's allegations of sexual assault were false, that he never penetrated Jane Doe while she was sleeping without her consent, digitally or otherwise, that the determination that he had done so was

6

incorrect and contrary to the facts, that he was being suspended for something that he did not do and that did not occur, that a suspension would cause significant harm, including the loss of his scholarship and participation in Navy ROTC, that the sexual misconduct proceeding had caused him to suffer emotionally with depression and anxiety and that his "rights to due process of law have been violated."

9.      On or about June 28, 2016, Defendant Vice President Rollock sent a letter of that date to Plaintiff John Doe stating that because Defendant Dean Sermersheim had not included her reasoning in reaching her determination, Defendant Vice President Rollock was not able to issue a decision on Plaintiff John Doe's appeal and that Defendant Dean Sermersheim was directed to revise her June 14, 2016 letter to include the factual basis for her determination and the sanctions imposed.

10.     On June 29, 2016, Defendant Dean Sermersheim sent a letter decision re-issuing her decision finding Plaintiff John Doe responsible and sanctioning him. Dean Sermersheim stated she found Jane Doe more credible, even though Jane Doe never had appeared before Dean Sermersheim and the Purdue Advisory Committee on Equity and never even had submitted her own statement.

11.     On July 10, 2016, Plaintiff John Doe submitted a timely appeal pointing out that at the beginning of his Fall 2015 semester, he had started the year in Navy ROTC, and one of the issues discussed was the "zero tolerance" policy toward sexual

harassment, that Jane Doe's accusations of sexual assault were false, that behavior on the part of Jane Doe was inconsistent with the accusations of sexual assault, that Dean Sermersheim and the Advisory Committee members had pre-judged him guilty and that Dean Sermersheim still had not stated the evidence supposedly supporting her determination. Plaintiff John Doe asked: "Why would I not only admit to something that didn't happen, but also knowingly admit to something that would jeopardize my ROTC scholarship and future serving my country?"

12.    On July 21, 2016, Defendant Vice President Rollock sent a letter to Plaintiff John Doe issuing what was her second appeal decision, this time upholding perfunctorily Defendant Dean Sermersheim's June 29, 2016 re-issued determination and order of sanctions.

13.    On August 16, 2016, Plaintiff John Doe involuntarily resigned from Navy ROTC because of the university sexual misconduct decision and so stated in his resignation letter. He did not want to resign, but he could not maintain the requirements for Navy ROTC as a student suspended for sexual misconduct; such a sexual misconduct disciplinary decision is unacceptable in terms of continued participation in Navy ROTC given, among other things, its "zero tolerance" policy toward sexual harassment.

Plaintiff John Doe's Declaration in opposition to this motion, at paragraphs 19-22, explains that the July 29, 2016 e-mail cited by Defendants is eight days after

the date of Defendant Purdue Vice President Rollock's July 21, 2016 letter, denying

what was his second appeal from Dean Sermersheim's decision and that throughout

his dealings with the Navy ROTC concerning the university sexual misconduct

proceeding against him, the Navy ROTC knew the general status of the university

sexual misconduct proceeding without information from him.  Plaintiff John Doe's

Declaration further explains that in late July and early August 2016, he was slow to

check his e-mail because of the bad news he had been receiving concerning the

university sexual misconduct proceeding and that the sexual misconduct disciplinary

proceeding had made him depressed, anxious and sick at heart, especially because

his intended career was at stake, the accusations were false and he did not believe

the process was fair.  But, John Doe testifies, because of the final university decision

of responsibility and sanction as to the alleged sexual misconduct, he submitted on

August 16, 2016, his involuntary resignation from the Navy ROTC, as he was not in

compliance with Navy ROTC requirements that included a "zero tolerance" policy.

## C.    Defendants' Motion To Dismiss The Complaint; District Court Dismissal.

On the same day that the parties filed a Rule 26(f) report (ECF No. 20),

Defendants moved to dismiss the original Complaint for lack of jurisdiction and

failure to state a claim, a motion opposed by Plaintiff John Doe (ECF Nos. 18-19,

28.)  On November 15, 2017, the Magistrate Judge (having consent of the parties to

rule as the District Court) formally terminated the deadlines of the Rule 26(f) report

(ECF No. 30) and granted Defendants' motion to dismiss, *Doe v. Purdue*, 281 F.Supp.3d 754, 767 (N. D. Ind. 2017) (ECF No. 31), *reversed*, 928 F.3d 652 (7th Cir. 2019) (Ex. A hereto).

The claimed 42 U.S.C. § 1983 violations of constitutional due process were dismissed by the Magistrate Judge on the grounds that prospective injunctive relief was not available, that Plaintiff John Doe did not have a protected property or liberty interest and that University President Defendant Daniels could not be sued under 42 U.S.C. § 1983 on the basis of a supervisory role.  The Magistrate Judge recognized that Plaintiff John Doe was "correct" that *Ex Parte Young*, 209 U.S. 123 (1908), provided for an exception from Eleventh Amendment immunity with respect to individual Defendants in their official capacities, but rejected the application of the *Ex Parte Young* exception to this case on the ground that Plaintiff John Doe did not have standing, as he (supposedly) did not allege ongoing violations of federal law. 281 F.Supp.2d at 767.

With respect to the Title IX claim, the Magistrate Judge accepted that the pleaded facts cast doubt on the accuracy of the outcome of the disciplinary proceeding, but dismissed the Title IX claim on the ground that the pleaded facts did not plausibly allege gender bias as a reason for the erroneous outcome (relying upon, among other things, the district court opinion in *Doe v. Columbia*, 101 F.Supp.2d 376 (S.D.N.Y. 2015), that had been reversed by the U.S. Court of Appeals for the

Second Circuit, 831 F.3d 46 (2d Cir. 2016)).  The Magistrate Judge also dismissed the state law breach of contract and promissory estoppel claims based on the Eleventh Amendment immunity.   281 F.Supp.2d at 774-784.

**D.    The Seventh Circuit Decision Reinstating
        Claims For Due Process and Title IX.____**

On appeal, Plaintiff John Doe argued that the Complaint did sufficiently allege ongoing violations of federal law and Plaintiff John Doe had standing for prospective injunctive relief, that the Complaint did sufficiently allege property and liberty interests for the claim for 42 U.S.C. § 1983 violations of constitutional due process and that the Complaint did sufficiently allege gender bias as a reason for the Title IX erroneous outcome.

On June 28, 2019, the Seventh Circuit reversed in significant part the Magistrate Judge's decision, reinstating Plaintiff John Doe's claims for 42 U.S.C. § 1983 violations of constitutional due process and Title IX discrimination. and recognizing Plaintiff John Doe's standing for prospective injunctive relief. *Doe v. Purdue*, 928 F.3d at 661-667 (Ex. A hereto).

Among other things, the Seventh Circuit ruled that because Plaintiff John Doe had not (yet) pleaded an intention to re-enroll, he did not have standing for lifting the conditions placed by Defendants on re-entry; the Seventh Circuit also ruled that because Plaintiff John Doe had pleaded ongoing harm of a marred record, he has standing "to expunge the finding of guilt from his disciplinary record"; the Seventh

Circuit further ruled that because Plaintiff John Doe does have a liberty interest (stigma-plus), "we instruct the court to address the issue of expungement on remand." *Doe v. Purdue*, 928 F.3d at 666-667 (Ex. A hereto). The Seventh Circuit, while recognizing that Plaintiff John Doe had alleged facts constituting constitutional violations, did deny Plaintiff John Doe's standing to enjoin ongoing sexual misconduct investigations and adjudications as to other students and did dismiss the individual Defendants in their individual capacities -- Defendant Daniels because a supervisory role did not support individual capacity liability on his part and the other individual Defendants based on qualified immunity. *Doe v. Purdue*, 928 F.3d at 664-666 (Ex. A hereto).

The Seventh Circuit's discussion of "stigma-plus" in this case, *Doe v. Purdue*, 928 F.3d at 661-663, will be addressed further below in the Argument concerning relevance.

**E.    Pre-Current Motion Communications By Plaintiff
        John Doe's Counsel To Defendants' Counsel._____**

Defendants purport to describe certain pre-current motion communications between counsel for the parties, but skip over the fact that on July 15, 2019, counsel for Plaintiff John Doe sent a letter to Defendants' counsel responding to questions posed by Defendants' counsel earlier in the month.   In the July 15, 2016 letter, counsel for Plaintiff John Doe stated, among other things, that Plaintiff John Doe wanted to return to Defendant Purdue after the Fall 2019 semester and wanted his

ROTC scholarship back, that counsel for Plaintiff John Doe would amend the Complaint, that Plaintiff John Doe was not willing to stipulate to a Rule 54(b) entry of judgment as to the individual Defendants, noting there needed to be "a Purdue officer responsible for implementing *Ex Parte Young* relief," and that Plaintiff John Doe would not be bringing a state court case to assert the state law claims. (Ex. G hereto.)

Instead, Defendants first recite their communications with the U.S. Navy (Dfs. Motion p. 3) as to which Plaintiff John Doe's counsel was not contemporaneously advised and only learned about them from Defendants' motion. What Defendants' counsel represents as to the U.S. Navy's possession of relevant documents (Dfs. Motion p. 3) is not supported by any document from the U.S. Navy attached to the motion; Defendants' provision with of an August 26, 2019 Notice with a Navy ROTC e-mail saying no objection (ECF Nos, 50, 50-1) does not establish relevance.

Defendants' counsel then turns to communications between counsel for the parties, starting with a July 19, 2016 conversation about case management in which Defendants' counsel pressed for Plaintiff John Doe's counsel to obtain a release from Plaintiff John Doe to consent to the U.S. Navy responding to Defendants' subpoena. Further communications included that Plaintiff John Doe's counsel, after due consideration, refused to obtain the requested release and that Defendants' counsel

13

threatened this motion if Plaintiff John Doe's counsel did not obtain the requested release.  (Dfs. Motion pp. 3-4.)

Defendants do not fairly state the position of Plaintiff John Doe's counsel. That position was stated in an e-mail that on August 15, 2019, counsel for Plaintiff John Doe sent to Defendants' counsel as follows:

> I will be opposing your motion, which is misconceived, based upon a misstatement of the "background" facts and a misstatement of the Seventh Circuit decision in this case.  I also note that I had suggested that we wait until we have the conference with the Court on September 5 before we launch out on to discovery given that the Seventh Circuit decision in this case controls us and not a three year old pre-motion to dismiss Rule 26(f) report, and I further note that I had advised you I will be seeking leave to amend the Complaint per the Seventh Circuit's decision in this case.   But it is clear to me that you just can't wait because Purdue's Title IX office does not want to live under the U.S. Constitution and abide by due process of law and a proper interpretation of Title IX.  So Purdue disparages due process of law as Plaintiff John Doe's "preferred procedures," and Purdue moves again to dismiss the relief that the Seventh Circuit identified as open to Plaintiff John Doe and seeks to engage in a fishing expedition regardless of the Seventh Circuit's rationale for flatly rejecting Purdue's argument against recognition of a 14th Amendment liberty stigma-plus interest.

(Ex. H hereto.)

## F.    <u>The Amended Complaint.</u>

Exhibit B hereto is the Amended Complaint filed pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.   Among other things, the Amended Complaint: (i) updates information as to Plaintiff John Doe with respect to his living

with his parents and his intention to-re-enroll at Defendant Purdue (but facing readmission requirements as part of the disciplinary case sanction); (ii) joins three of the originally named individual Defendants in their official capacities only -- President Daniels, Vice President Rollock and Dean Sermersheim -- which is necessary for the effectuation of the prospective injunctive relief under *Ex Parte Young*; (iii) asserts the two causes of action upheld by the Seventh Circuit -- constitutional due process violations through 42 U.S.C. § 1983 and Title IX discrimination; (iv) provides additional allegations as to Plaintiff John Doe's obligation to authorize Defendant Purdue to disclose information about and documents from the university sexual misconduct proceeding to the Navy ROTC and the Navy ROTC's knowledge of the university disciplinary proceeding; and (v) spells out the prospective injunctive relief for the due process and Title IX violations.

## ARGUMENT

Before the Court is Defendants' motion to authorize issuance of a subpoena to the U.S. Navy.  Defendants' motion should be denied for the reasons that follow.

### I.

### DEFENDANTS INVOKE THE GENERAL RULE ON THE SCOPE OF DISCOVERY WITHOUT REGARD TO THE FACT DEFENDANTS SEEK DISCOVERY FROM A NON-PARTY IN ADVANCE OF ALL OTHER DISCOVERY

Defendants begin their argument by quoting Rule 26(b)(1) of the Federal Rules of Civil Procedure providing the general rule for the scope of discovery, but

do so without regard to the fact that Defendants seek discovery now from a non-party in advance of all other discovery, including basic party discovery.

Defendants thus jump to the issue of relevance in seeking that non-party discovery right away.  Consideration of Defendants' motion, however, calls for recognition of the district court's discretion in supervising discovery, as reflected by the language of and multiple factors stated in Rule 26(b)(1), the Advisory Committee history and case law.  Rule 26(b)(1), Federal Rules of Civil Procedure ("Unless otherwise limited by court order, the scope of discovery is as follows. . . ."); Notes of the Advisory Committee on Rules – 1970 Amendments ("All provisions as to scope of discovery are subject to the initial qualification that the court may limit discovery in accordance with these rules."); *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012).

Here, the Court should exercise that discretion by denying Defendants' motion to authorize the proposed subpoena to the U.S. Navy because, as will be discussed next, Defendants fail to show the relevance and justification for the proposed broad subpoena to the U.S. Navy and fails to show why the proposed subpoena is the first order of business.

**II.**

**EXAMINATION OF DEFENDANTS' ARGUMENT FOR
RELEVANCE SHOWS DEFENDANTS DO NOT HAVE
AN ARGUMENT FOR RELEVANCE, BUT RATHER ARE
SEEKING TO ENGAGE IN A FISHING EXPEDITION**

Defendants state that they seek documents from the Navy ROTC concerning:
(1) an investigation of Plaintiff John Doe with respect to the alleged sexual
misconduct with Jane Doe; (2) Plaintiff John Doe's service record with Navy ROTC;
(3) Plaintiff John Doe's student file; (4) Plaintiff John Doe's so-called
"disenrollment package"; and (5) e-mails and statements to and from Jane Doe and
Plaintiff John Doe.  (Dfs. Motion p. 4.)  But none of these supposed categories, when
examined, can be called "key evidence," as Defendants erroneously do; and in fact,
none of these supposed categories justify the proposed broad subpoena to the U.S.
Navy (Dfs. Motion Ex. E).

1.     As to documents concerning an investigation of Plaintiff John Doe with
respect to the alleged sexual misconduct with Jane Doe, the only investigation of
Plaintiff John Doe with respect to the alleged sexual misconduct with Jane Doe was
done by the Defendant Purdue investigators.  There was no separate U.S. Navy
investigation and no separate U.S. Navy proceeding concerning what was a
university-generated university sexual misconduct proceeding, as there had been no
formal complaint by Jane Doe to the university and no appearance and no writing
by Jane Doe to Dean Sermersheim and the Advisory Committee on Equity.  The

17

Navy ROTC was a recipient of information and documents from Defendant Purdue. (Ex. C hereto: John Doe Declaration ¶ 24.)

2.      As to Plaintiff John Doe's service record with Navy ROTC, Defendants do not identify any document that is material to this case, and there is nothing in Plaintiff John Doe's service record with the Navy ROTC other than what Defendant Purdue sent concerning the university sexual misconduct proceeding. (Ex. C hereto: John Doe Declaration ¶ 25.)

3.      As to Plaintiff John Doe's student file, his student file is with Defendant Purdue, not the Navy ROTC. (Ex. C hereto: John Doe Declaration ¶ 26.)

4.      As to Plaintiff John Doe's so-called "disenrollment package," there was no "disenrollment package." That appears to be a figment of the Defendants' imagination. If a student is no longer with the Navy ROTC, that student does not qualify for a Navy ROTC scholarship. (Ex. C hereto: John Doe Declaration ¶ 27.)

5.      As to e-mails and statements to and from Jane Doe and Plaintiff John Doe, e-mails and statements to and from Jane Doe and Plaintiff John Doe were collected by Defendant Purdue's investigators, not anyone from the Navy ROTC. (Ex. C hereto: John Doe Declaration ¶ 28.)

The statement of these categories make it seem that Defendants wish to pretend that it was the Navy ROTC that conducted the sexual misconduct disciplinary proceeding and not the Purdue Defendants. Such pretense certainly

18

does not establish relevance and justification for the proposed subpoena to the U.S. Navy. Defendants are throwing around words that are divorced from reality in order to appear to justify having a fishing expedition authorized as a first order of business when the broad subpoena is not justified at all.

### III.

### THE SEVENTH CIRCUIT DECISION DOES NOT PROVIDE THE BASIS FOR DEFENDANTS' SPECULATIONS ABOUT RELEVANCE

To support Defendants' speculations about relevant evidence, Defendants quote portions of the Seventh Circuit's opinion in this case concerning Plaintiff John Doe's constitutionally protected "stigma-plus" liberty interest, but omit the portions of the Seventh Circuit's opinion discussing rejection of Defendant Purdue's argument against Plaintiff John Doe's constitutionally protected "stigma-plus" liberty interest. Accordingly, the Court may wish to read the Seventh Circuit's opinion for himself on "stigma-plus" without the omissions. *Doe v. Purdue*, 928 F.3d at 661-663 (Ex. A hereto).

What Defendants omit from the quotation of the Seventh Circuit's opinion on "stigma-plus" makes clear that Defendants' argument against recognition of "stigma-plus" in Plaintiff John Doe's case -- that Plaintiff John Doe had self-inflicted the loss of the Navy ROTC position and scholarship by authorizing disclosure of information about and documents from the university sexual misconduct proceeding

19

to the Navy ROTC -- is without case law support and is legally untenable.  The

Seventh Circuit stated:

> Purdue insists that John has not adequately alleged "stigma," much less the necessary "plus." The university maintains that it has not and will not divulge John's disciplinary record without his permission. The Navy knows about it only because John signed a form authorizing the disclosure after the investigation began. Because John permitted the disclosure, Purdue says, he cannot complain that Purdue stigmatized him.
>
> Purdue cites no cases in support of its position, but it is presumably trying to draw an analogy between John and a plaintiff who publishes damaging information about himself —because it is true that a plaintiff can't himself spill the beans and then blame the defendant for ruining his reputation. *Olivieri v. Rodriguez* illustrates the point. 122 F.3d 406 (7th Cir. 1997). There, a probationary police officer asserted a procedural due process claim against his superintendent after he was fired for sexually harassing other probationers. Id. at 407. We observed that "the defendant [had not] disclosed to anyone the grounds of the plaintiff's discharge." Id. at 408. The plaintiff, however, insisted that the defendant's silence didn't matter because the plaintiff would have to tell potential employers why he was fired—and "[i]f he answers truthfully, he will reveal the ground of the termination as effectively as (actually more effectively than) if the Department had taken out a full-page ad in every newspaper in the nation announcing the termination of Felix A. Olivieri for sexually harassing female probationary officers at the Chicago police training academy." Id.
>
> We rejected Olivieri's claim, holding that a plaintiff who publicizes negative information about himself cannot establish that the defendant deprived him of a liberty interest. Id. As an initial matter, we noted that it was uncertain whether Olivieri's prospective employers would ever find out why he was discharged. Id. at 408–09 ("A prospective employer might not ask him—might ask only the Chicago Police Department, which for all we know might refuse to disclose the grounds of Olivieri's discharge; many former employers refuse to answer such

inquiries, because of fear of being sued for defamation."). In addition, we explained that "[t]he principle of self-defamation, applied in a case such as this, would encourage [the plaintiff] to apply for a job to every police force in the nation, in order to magnify his damages; and to blurt out to each of the them the ground of his discharge in the most lurid terms, to the same end." Id. at 409.

John's case is different. . . .

928 F.3d at 661-662 (Ex. A hereto).  The Seventh Circuit opinion continues with

what Defendants do quote:

He [Plaintiff John Doe] does not claim simply that he might someday have to self-publish the guilty finding to future employers. Instead, John says that he had an obligation to authorize Purdue to disclose the proceedings to the Navy.

That makes John's case more like *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), than *Olivieri*. In *Dupuy*, we held that the publication requirement of the stigma-plus test was satisfied when the plaintiffs were obligated to authorize a state agency to disclose its finding that they were child abusers to the plaintiffs' current and prospective employers. 397 F.3d at 510. In contrast to *Olivieri*, where disclosure was voluntary and speculative, it was compelled and certain in Dupuy. And in *Dupuy*, unlike in *Olivieri*, the disclosure was not self-published—it came from the defendant, even if the plaintiff had been obligated to authorize it. So too here: Purdue, not John, revealed to the Navy that it had found him guilty of sexual violence, and John had a legal obligation to authorize the disclosure.

928 F.3d at 662 (Ex. A hereto).

Defendants omit what they do because recognition of the Seventh Circuit's

specific ground of rejection of Defendants' argument calls into immediate question

of what is the point in seeking now a broad subpoena to the U.S. Navy.  Nothing will

change what Plaintiff John Doe states in his Declaration:

21

> I was legally obligated to disclose, to the Navy ROTC, information about and documents from the university sexual misconduct proceeding concerning me; and once found responsible and sanctioned for sexual misconduct by the university and the university appeal was denied, I was no longer eligible for Navy ROTC that had an announced "Zero Tolerance" policy toward sexual misconduct.

(Ex. C hereto: Plaintiff John Doe Decl. ¶ 2.)  Defendants may want to ignore the 800-pound gorilla in the room of the university sexual misconduct decision and sanction and re-litigate the Seventh Circuit opinion, but that is not the basis for a broad subpoena to the U.S. Navy as the first order of business in discovery.

Defendants nevertheless say that they wish to discover Plaintiff John Doe's "disenrollment package" and emails for damages (Dfs. Motion p. 6), but as noted above (p. 18), that notion has no basis in reality (Ex. C hereto: John Doe Declaration ¶ 27-28).  Defendants also say that they wish to establish the specific dates of Plaintiff John Doe's service in Navy ROTC (Dfs. Motion p. 6), but that is something that Plaintiff John Doe can provide and is not something that warrants Defendants' proposed broad subpoena to the Navy (Dfs. Motion Ex. E).  Defendants raise the possibility that maybe Plaintiff John Doe did not involuntarily resign from the Navy ROTC (Dfs. Motion p. 6), but an involuntary resignation due to the Defendant Purdue sexual misconduct decision is what the resignation letter reflects (Ex. F hereto).  Defendants' desire to (i) ignore Plaintiff John Doe's appeal documents (Exs. D-E hereto), (ii) ignore the 800-pound gorilla in the room of the Defendant Purdue sexual misconduct decision and sanction and (iii) speculate contrary to the

fact of the involuntary resignation (Ex. F hereto) do not provide a basis for the broad proposed subpoena to the U.S. Navy. Defendants' slick suggestion, without any good faith basis, that Plaintiff John Doe may have something to hide by opposing the proposed subpoena (Dfs. Motion p. 6) disregards Defendants' obligation to identify relevant documents that justify the proposed subpoena -- an obligation not met here by Defendants.

**IV.**

**DEFENDANTS' ARGUMENT THAT THE SUBPOENA
TO THE U.S. NAVY IS JUSTIFIED DOES NOT
PROVIDE JUSTIFICATION FOR THE SUBPOENA**

Defendants argue that the circumstances justify a subpoena to the U.S. Navy, but Defendants' three stated reasons do not provide justification for that subpoena.

*First*, Defendants cite the 2½ year old Rule 26(f) Report of the parties. That Report, however, effectively went by the wayside due to the litigation over Defendants' motion to dismiss the original Complaint, the prior Magistrate Judge vacated the Report's deadlines when granting Defendants' motion (ECF No. 30), and, as Plaintiff John Doe's counsel informed Defendants' counsel, the case is now controlled by the Seventh Circuit opinion and not a years old pre-motion Rule 26(f) Report (Ex. H hereto). That Defendants may have stated their desire in the old Rule 26(f) Report for discovery of U.S. Navy files, but that statement of desire does not provide a current justification for the proposed broad subpoena.

23

*Second*, Defendants falsely assert and nonsensically that the U.S. Navy is primary and possibly the only entity with a complete set of the documents. (Dfs. Motion p. 6.) If anyone has a complete set of documents, it is Defendant Purdue. Again, Defendants seem to wish to pretend that it was the Navy ROTC that conducted the sexual misconduct disciplinary proceeding and not the Purdue Defendants. As discussed above (pp. 17-18), Defendants refer to documents that are clearly not with the Navy ROTC.

*Third*, Defendants cite *Does 1-5 v. City of Chicago*, 2019 WL 2173784 (N.D. Ill. May 20, 2019), but that case is entirely inapposite. The motion to compel the production of documents in that case was addressed to the Defendant City of Chicago and was not a case in which a subpoena of non-party records was involved, much less at the outset of discovery. Also, the plaintiff female paramedics in that case sought records of a complaint that was filed with the Defendant City of Chicago, and the plaintiff female paramedics articulated specific reasons why the documents sought were relevant to proving a pattern or practice by the Defendant City of Chicago under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), for the liability of the Defendant City of Chicago under 42 U.S.C. § 1983. The Defendant City of Chicago had the documents, just as Defendant Purdue has the sexual misconduct proceeding documents in this case.

## CONCLUSION

For the reasons stated above, Defendants' motion for issuance of a subpoena to the U.S. Navy should be denied, and the Court should grant such other and further relief as deemed just and proper.

Dated:  September 3, 2019             NESENOFF & MILTENBERG, LLP

                                     By: */s/ Philip A. Byler*
                                     Philip A. Byler (pro hac vice admission)
                                     Andrew T. Miltenberg (pro hac vice admission)
                                     363 Seventh Avenue, Fifth Floor
                                     New York, New York 10001
                                     (212) 736-4500
                                     pbyler@nmllplaw.com

                                     ***Attorneys for Plaintiff John Doe***