IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.,** in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) | |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) | |
| at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S "NOTICE OF MOTION TO COMPEL AND ASSOCIATED RELIEF"

Come now Defendants, the Trustees of Purdue University, Mitchell Elias Daniels, Jr.,

Alysa Christmas Rollock, and Katherine Sermersheim, by counsel, in opposition to Plaintiff's

Notice of Motion of Compel and Associated Relief (ECF No.72).

## I.    Introduction

All claims in this case have been dismissed, save only two: (i) Plaintiff John Doe's Title

IX gender-bias claim against Purdue University and (ii) his "stigma-plus" Due Process claim for

injunctive relief in the form of expungement of his one-year suspension for sexual misconduct.

The individual defendants are named only in their official capacity for injunctive relief.

John Doe's discovery requests are nominally directed to all "Defendants." However, John

Doe's Motion to Compel does not specify discovery sought from any individual defendant. In

substance, John is seeking discovery from Purdue University.

1

The defense has provided responsive answers and hundreds of pages of documents, emails, and internal records from the investigation of Jane Doe's allegations and the discipline of John.

The disputed discovery is at the margin of this case. The disputed discovery must be relevant and proportional. Most of the disputed discovery does not refer to Jane's allegations or John's disciplinary experience. Many of those requests are directed to years before and after he was enrolled at Purdue. His motion is silent on the issue of proportionality.

John Doe has failed to comply with this Court's meet-and-confer requirement for his motion to compel. Compromise proposals from the defense have been ignored, as have requests for a discovery conference.

## II.    Status of Discovery

Defendants timely responded to John Doe's interrogatory requests on December 27, 2019. (ECF No. 72-4).

Defendants timely responded to Plaintiff's requests for production on December 27, 2019 by producing over 700 pages, including the investigation file of the allegations against John Doe, the notices and documents sent to John Doe and Jane Doe, emails dealing from the investigation and decision process, and the investigators' hand-written notes..  (ECF No. 72-6). Defendants supplemented the document production on April 20, 2020.

John Doe's motion does not allege failure to produce any requested, nonprivileged document concerning John and Jane Doe or the investigation and hearing of Jane's allegations.

## III.    Meet-and-Confer History

The parties initially documented discovery concerns by letter. (*See* ECF Nos. 72-8 – 72-12).  Defense counsel tried, without success, to confer directly with John Doe's counsel. For

example, defense counsel's March 13, 2020 letter states: "[Defendants' counsel is] available for a call next week, after you have reviewed Purdue's document production and interrogatory responses." (ECF No. 72-9 at 1).

That March 13 letter also proposed compromises.  For example:

- ECF No. 72-9 at 4 ("Requests 7 and 8 seek 'documents constituting, concerning or referring' to CARE events at Purdue in the 2015-16 school year. These requests are not limited to a calendar of events, but rather apparently seek operational communications 'concerning or referring' to those events. This is the equivalent of asking for all Purdue records 'concerning or referring' to a theater production or athletic event. The operations involved in putting on an event have no conceivable relevance to any allegation in your client's complaint. I am open to discussing whether there is some more narrowly described document or set of documents that map up to the Amended Complaint's specific allegations about CARE.");

- ECF No. 72-9 at 5 ("Request 51 seeks OCR investigations for the period January 2014 to December 2017. However, as noted in *Doe v. Purdue*, your client's allegation is only that OCR 'had opened two investigations into Purdue during 2016.' 928 F.3d at 668. Please advise whether you are willing to limit the scope of Request 51 to those two investigations.").

Nearly a month passed. On April 8, John's counsel issued an ultimatum to comply with his initial demands or he would seek judicial intervention.  (ECF No. 72-10 at 15-16). The April 8 letter did not respond to the defense request for a conference. Defense counsel responded on April 23, 2020 by keeping open the offer of a conference. (ECF No. 72-11 at 3 ("If you change your mind and decide to talk with me, I will ask that we do so by recorded Zoom videoconference, because your April 8 letter once again reverts to intemperate rhetoric.")).

The defense persisted in requests for dialog to narrow John's discovery demands to align with Rule 26(b)(1). (ECF No. 72-11 at 3) ("I note your April 8 letter's statement, 'The events of this case relate to the 2015-2016 school year, and thus what is most relevant are the 2015-2016 statistics.'  Please advise whether you are willing to narrow your request for outcome data to similarly situated female respondents in the 2015-16 school year.").

More weeks passed, and on April 29 John's counsel made clear that there would be no dialog. (ECF No. 72-12 at 5).

Northern District of Indiana Local Rule 37-1(a) provides in full:

A party filing any discovery motion must **file a separate certification that the party has** conferred in good faith or **attempted to confer with other affected parties** in an effort to resolve the matter raised in the motion without court action. The certification must include:

> (1) the date, time, and place of any conference **or attempted conference**; and
>
> (2) the names of the parties participating in the conference.

(emphasis added).

The expectation in the Northern District of Indiana is that the parties "engage in two-way dialogue and discuss meaningfully the discovery dispute in a genuine effort to avoid judicial intervention." *Sims v. New Penn Fin. LLC*, No. 3:15-CV-263-MGG; 2017 WL 3297779, 2017 U.S. Dist. LEXIS 121392, at *8 (N.D. Ind. Aug. 2, 2017). Communications must "specifically address the conflict and appear to involve meaningful negotiations." *Marshall v. GE Marshall, Inc.,* No. 2:09 CV 198, 2012 WL 5831195, 2012 U.S. Dist. LEXIS 163803, at *12-13 (N.D. Ind. Nov. 15, 2012). In other words, "Rule 37 demands a meaningful negotiation with an eye on resolving the issues." *Id.* at *15. A failure to attempt to compromise or negotiate—mere posturing—is insufficient to fulfill the Northern District's meet-and-confer requirements. *See*

*Forest River Housing, Inc. v. Patriot Homes, Inc.*, No. 3:06-CV-841 AS, 2007 WL 1376289, 2007 U.S. Dist. LEXIS 33665, at \*5 (N.D. Ind. May 7, 2007) ("These communications do not look like bartering or negotiations as envisioned by [Rule] 37(a).").

By ignoring the defense's invitations to dialog and compromise, John Doe failed to satisfy a prerequisite to judicial intervention.  *See Sims*, 2017 WL 3297779, 2017 U.S. Dist. LEXIS 121392, at \*8; *Marshall*, 2012 WL 5831195, 2012 U.S. Dist. LEXIS 163803, at \*12-13; *Forest River Housing, Inc.*, 2007 WL 1376289, 2007 U.S. Dist. LEXIS 33665, at \*5.

John Doe's counsel's declaration—apparently filed in lieu of the required separate certification—does not list the date, time, and place of any attempted conference, or attempts to conduct one.  John Doe's motion should therefore be denied.  N.D. Ind. L.R. 37-1(b) ("The court may deny any motion [described above] . . . if the required certification is not filed.").

## IV.    Discussion of Discovery Requests

### a.  The Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The first requirement of Rule 26(b)(1) is that the discovery must be relevant to a party's claim or defense. The second requirement is that the discovery must be "proportional to the needs of the case."

Under Rule 26(b)(1), "relevance alone does not translate into automatic discoverability . . . . [a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns*

*Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). The moving party bears the burden of proving

that the discovery it is seeking is relevant to the case and proportional to the needs of the party.

*See id.* at 924 n.6. When applying Rule 26(b)(1):

> [D]istrict courts, which have extensive discretion in granting and denying
> discovery, have long held that it is permissible to refuse to grant discovery of
> matters of 'marginal relevance.' . . . The discovery rules are not a ticket to an
> unlimited, never-ending exploration of every conceivable matter that captures an
> attorney's interest. Parties are entitled to a reasonable opportunity to investigate the
> facts - and no more.

*Id.* at 924-25 (internal citations omitted); *see also United States ex rel. Conroy v. Select Med.*

*Corp.*, 307 F. Supp. 3d 896, 903 (S.D. Ind. 2018) ("'[D]iscovery must hew closely to matters

specifically described in the complaint lest discovery, because of its burden and expense, become

the centerpiece of litigation strategy.'" (quoting *United States ex rel. McCartor v. Rolls-Royce*

*Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 U.S. Dist. LEXIS 136387, at *7 (S.D. Ind. Sep. 24,

2013))).

### b.  Plaintiff's "Claim"

Purdue suspended John for the 2016-2017 school year for sexual misconduct toward

Jane. John asserts that his liberty interest in his "good name" was deprived when Purdue

"branded him as a sex offender" without Due Process and suspended him, allegedly causing the

loss of a Naval Reserve Officers Training Corps ("NROTC") scholarship when John told

NROTC of his suspension (ECF No. 51, at 45).  John alleges that Purdue's hearing procedures

were inadequate and that decisionmakers were not gender-neutral because Purdue was

"attempting to demonstrate [its] compliance" with the 2011 Dear Colleague Letter. (ECF No. 51,

at 53). He claims that he is "innocent". (ECF No. 51, at 59).  He alleges that Defendants

Sermersheim and Rollock resorted to anti-male bias when weighing the evidence in favor of Jane

Doe. (ECF No. 51, at 63-64). He alleges that Purdue employed a "victim-centered process"

because of pressure from the Obama administration, where men are "invariably found guilty, regardless of the evidence, or lack thereof." (ECF No. 51, at 60, 65).

John's motion never uses the words "proportional" or "proportionate".

Where, as here, the moving party seeks evidence that is no more than remotely relevant, with no showing of proportionality, the motion fails to meet the requirements of Rule 26(b)(1).

### c. John Doe's demands for disciplinary data are unduly burdensome and not directed to facts in his particular case.

John's theory of gender-bias relief is the so-called "erroneous outcome" theory. "A plaintiff alleging an erroneous outcome claim under Title IX must first allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the proceedings and then also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Ayala v. Butler Univ.*, No. 1:16-cv-01266-TWP-DLP, 2018 U.S. Dist. LEXIS 179806, at *20 (S.D. Ind. Oct. 19, 2018) (internal citations and quotation marks omitted). For John's Title IX claim, relevance is defined as "facts raising the inference that Purdue acted at least partly on the basis of sex in his particular case." *Doe v. Purdue*, 928 F.3d 652, 669 (7th Cir. 2019). This is the law of the case.

Sexual-assault and sexual-harassment allegations are inherently *sui generis*, and this is conspicuously true for the allegations against John Doe. The most serious allegation against John Doe was "John Doe's digital penetration of Jane Doe while she was sleeping without her consent." (ECF No. 51 at ¶ 25). John Doe's defense hinged entirely on circumstantial evidence and his own effort to impeach Jane Doe's credibility. (ECF No. 51 at ¶¶ 34-35). Every sexual assault investigation has its own circumstantial evidence. The investigation and decision of other sexual encounters are not facts that would support inferences in John Doe's own case.

Ignoring the Seventh Circuit's instruction to focus on "his particular case", John's interrogatories 1-18 call on Purdue to tote up year-by-year combinations of disciplinary variables. Those interrogatories consist of three subsets of six interrogatories for the 2015-16 school year (when John Doe was enrolled) and the prior and subsequent school years (when he was not enrolled). Interrogatories 1-18 seek various combinations of the following information:

- Total number of "disciplinary cases for sexual misconduct" for the school year.

- "how many of the complainants were female and how many were male"

- "how many of the respondents were female and how many were male"

- "how many of the respondents were found responsible for sexual misconduct" and gender totals for the responsible respondents.

- "how many of those cases were resolved informally"

- "how many of those cases were dismissed"

Those interrogatories apparently relate to Paragraphs 151 and 152 of John Doe's Amended Complaint, which allege:

> 151. Upon information and belief, all students that have been suspended or expelled from Defendant Purdue for sexual misconduct have been male.

> 152. Male respondents, and particularly male athletes and male ROTC members, in sexual misconduct cases at Defendant Purdue are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof.

John's Interrogatories 1-18 are irrelevant and cumulative. His theory of relevancy in Paragraphs 151 and 152 is simple: He has set himself the task of proving that every accused male loses, and no female is ever suspended or expelled. Under John's theory, any exception defeats the allegation. There is no point to a multi-variable audit of outcomes.

Where, as here, the data has little or no relevance, Rule 26(b)(1) spotlights the question whether the burden of gathering data "outweighs [the] likely benefit" of the data. Purdue has

dozens of disciplinary cases each year. Interrogatories that demand data mining for those disciplinary cases are inherently burdensome.

The burden is underscored by the futility of the proposed audit. The public dockets of this Court show suits by four female plaintiffs who fault Purdue for deciding against them on their sexual-assault allegations against male students.[1] Two of those female plaintiffs further fault Purdue for expelling them after Purdue determined that they had made knowingly false allegations about their sexual encounters with the accused males.[2] The defense has provided those docket citations to John's counsel.

There is no point in discovery premised on Paragraphs 151 and 152, given the squarely contrary, publicly available evidence. Under Rule 26(b)(1), John Doe's data requests have no "importance of the discovery in resolving the issues" alleged in Paragraphs 151 and 152. Interrogatories seeking to establish whether male students at Purdue "are invariably found guilty" would be cumulative and therefore unduly burdensome. The same conclusion applies to John Doe's allegation that "all students that have been suspended or expelled from Defendant Purdue for sexual misconduct have been male."

Moreover, courts have been increasingly dismissive of plaintiffs who cite such data to prove a gender-biased erroneous-outcome. *See Univ. of Denver*, 952 F.3d at 1194 (summarizing authority). Such evidence often merits no judicial mention at all. *See, e.g., Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854-56 (7th Cir. 2019); *Columbia College*, 299 F. Supp. 3d at 952-57; *Ayala*, 2018 U.S. Dist. LEXIS 179806, at \*20-\*23; *Pena v. Indianapolis Pub. Sch. Corp.*, 402 F. Supp. 3d 485, 496-97 (S.D. Ind. 2019). For an erroneous-outcome allegation, data is, at most, weak

---

[1] 4:17-cv-94-JVB-JEM; 4:18-cv-89-JEM; 4:19-cv-84-JVB-JEM.

[2] 4:18-cv-89-JEM.

circumstantial evidence. For weak circumstantial evidence, a discovery request needs to be narrowly drawn to the case at hand. *See Doe v. Ind. Univ. - Bloomington*, No. 1:18-cv-03713-TWP-MJD, 2019 U.S. Dist. LEXIS 12966, at *30-31 (S.D. Ind. Jan. 28, 2019) (considering limited data from other cases from the same academic year at issue as the discipline).

For example, the supposition that Purdue is answerable for the ratio of female accusers to accused males has no legal support. *See King v. Depauw Univ.*, No. 2:14-cv-70-WTL-DKL, 2014 U.S. Dist. LEXIS 117075, at *28 (S.D. Ind. Aug. 22, 2014) ("DePauw is not responsible for the gender makeup of those who are accused *by other students* of sexual misconduct") (emphasis in original)).

### d. John Doe's demands for third-party disciplinary files are unduly burdensome and not directed to facts in his particular case.

John Doe also served document requests 1-3 which seek "All documents constituting, concerning or referring to the Purdue University disciplinary sexual misconduct cases in the [2014-2017] school year."

John Doe is seeking relief for Purdue's investigation and discipline of him in the summer of 2016, when he was finishing his freshman year. Jane Doe provided her allegation to Purdue in April 2016. This is the scope of his claim. There is no relevance to prior or subsequent school years.

Further, John's motion fails to explain how third-party disciplinary files would yield either (i) "particular facts sufficient to cast some articulable doubt on the accuracy" of Purdue's determination that Jane Doe's allegations were true, or (ii) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding" in favor of Jane. A stack of third-party files contains no facts about John's own case.

Further, John Doe cannot litigate the question of whether other cases were wrongly decided because he has no standing to champion the rights of others. *Purdue Univ.*, 928 F.3d at 666. Where there is no standing to make a claim, there is also no standing to conduct discovery in support of that claim. This conclusion is also buttressed by the rule against discovery into collateral matters. *Mid-American Salt v. Bob & Dave's Lawn & Landscape Maint.*, 2020 U.S. Dist. LEXIS 42981, *10 (N.D. Ind. March 12, 2020) (granting protective order based on "determination that Seller's third-party dealings are irrelevant").

Whether Purdue's third-party files show solicitude toward victims of sexual misconduct is immaterial. Courts have consistently rejected Title IX allegations based on alleged victim-centric bias.[3] An allegation of victim-centric bias is the opposite of a gender-bias allegation. A victim-centric bias would favor the victim regardless of gender. Indeed, John Doe's Amended Complaint adopts this gender-less description: "The DOE and OCR have created a significant amount of pressure on colleges and universities to treat *all those accused* of sexual misconduct with a presumption of guilt." (ECF No. 51 at 12) (emphasis added). There is no reference to "accused males" in that allegation.

Purdue's document production for John Doe's own sexual-misconduct file exceeds 700 pages. Purdue has dozens of such files each year. John Doe's unbounded document requests for multiple years would total many tens of thousands of pages. Such discovery is obviously

---

[3] *See, e.g.*, *Doe v. Univ. of Denver*, 952 F.3d 1182, 1197 (10th Cir. 2020) ("However, this evidence of anti-respondent bias does not raise an inference of discrimination based on gender."); *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 953 (N.D. Ill. 2017) ("These general allegations about public pressure to resolve sexual assault complaints are insufficient to show that gender bias was the motivating factor in the erroneous result."); *see also Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017); *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 928 (S.D. Iowa 2018); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 887 (N.D. Ohio 2017); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017); *Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 607-08; (S.D. Ohio 2016).

burdensome. The burden would include both the sheer quantity of documents and the task of

redacting names of third-party students who have a federal statutory entitlement under the

FERPA statute to be de-identified, as well as paying counsel to review these files for privileged

information. No current Title IX discovery authority endorses such discovery.

> **e.   John Doe's Interrogatory No. 19 is mis-drafted. Pursuant to Rule 33(d), John is properly directed to the Navy's subpoena response.**

Interrogatory No. 19 requests that Defendants "Identify the person or persons [at Purdue]

that had the responsibility of communications with the Navy ROTC . . . with respect to

University sexual misconduct disciplinary cases involving a Navy ROTC. [*sic*]" Defendants

objected. First, because the request has no time frame, it covers far more than the single year of

John's ROTC enrollment. Defendants also objected that the request is ambiguous as to

"responsibility" and "communications". John Doe has never alleged that Purdue had any

disclosure "responsibility" to Navy ROTC. John has alleged that the Navy made *him* responsible

for that disclosure. (ECF No. 51 at ¶ 38). ("John Doe was legally obligated to authorize

disclosure of information about and documents from the university sexual misconduct

proceeding by Purdue to the Navy ROTC.")

John Doe's Interrogatory No. 19 is either poorly drafted or deceptive word play, or both.

First, an interrogatory that imposes its conclusion is not an interrogatory at all. John cannot

compel Purdue to have a "responsible" person.

Second, the Oxford dictionary states the primary definition of "responsible" as: "Having

an obligation to do something, or having control over or care for someone, as part of one's job or

role." https://www.lexico.com/en/definition/responsible That same dictionary shows five sub-

definitions.[4]  Which definition of "responsible" does Interrogatory No. 19 intend?

Defendants had no obligation to communicate with Navy ROTC.  Paragraph 38 of John's Amended Complaint squarely supports this conclusion, because John alleges that he – not Defendants -- was the one with the disclosure obligation.

The Navy has produced communications made and received regarding John. Pursuant to Rule 33(d), those communications provide John Doe with the information from which he can ascertain the answer to whatever Interrogatory No. 19 is attempting to find.

>    **f.   Purdue has correctly responded to John Doe's Interrogatory No. 25 by citing to publicly available information.**

John Doe's motion falsely contends that Purdue is withholding the amount of its federal funding in specific years.

The Amended Complaint states that Purdue's federal funding is publicly available: "According to published audited financial statements, at fiscal year-end 2016, Defendant Purdue: received $14,796,000 in federal grants; had accrued long-term liability of $19,891,000 in advances from the federal government; and was the recipient of $356,066,000 in grants and contracts provided by both government and other sources." (ECF No. 51, at 57). Discovery seeking publicly available information is burdensome and serves no purpose. *Berning v. UAW Local 2209*, 242 F.R.D. 510, 514 (N.D. Ind. 2007) (granting protective order against a deposition where the issuer failed to utilize other, less burdensome means of acquiring the information).

The current URL for Purdue's annual funding reports is

https://www.purdue.edu/research/publications-data/annual-report.php. The 2015-16 report shows

---

[4]"Being the primary cause of something and so able to be blamed or credited for it."; "attributive (of a job or position) involving important duties, independent decision-making, or control over others."; "Having to report to (a superior or someone in authority) and be answerable to them for one's actions."; "Capable of being trusted."; "Morally accountable for one's behavior.".

Purdue's funding tabulation at page 46.

Purdue stipulates that it receives hundreds of millions of dollars of federal funding each year. For purposes of Rule 26(b)(1), there is no "importance" to tabulating the amount of that support by year or sub-category. Surely Plaintiff is not alleging that the likelihood of gender-bias fluctuated in proportion to year-by-year fluctuations in Purdue's receipt of federal funding.

### g. CARE-sponsored events

John Doe's Requests 7 and 8 sought "All documents constituting, concerning or referring to events were sponsored by the Center for Advocacy, Response and Education ('CARE') at Defendant Purdue University in the 2015-2016 [and 2016-2017] school year." Purdue objected, noting that the request was: overbroad; sought documents that were irrelevant to Plaintiff's claims; failed to identify the documents sought with reasonable particularity; ambiguous as to any communications sought; and potentially seeking documents protected by attorney-client privilege or attorney work product protection.

John alleges that CARE was a but-for cause of Jane's allegation.[5] That is an allegation about CARE's communications with Jane, nothing more. Purdue has produced its non-privileged CARE's records relating to Jane.

John's complaint alleges that Jane made her allegation against John in "the first ten days of April 2016 [when] there were five reports of sexual assault at Purdue" and "Purdue hosted

---

[5] CARE is a division of the Office of the Dean of Students. The opening page of its website states: "CARE provides confidential support and advocacy for survivors of sexual violence, dating violence, and stalking. . . . In addition to direct survivor services, CARE offers campus-wide programming on sexual violence, consent, and bystander intervention, among other topics." https://www.purdue.edu/odos/care/ Whether the students served by CARE are primarily female has no relevance. *See Doe v. Marian Univ.*, No. 19-CV-388-JPS, 2019 U.S. Dist. LEXIS 222842, at *34-35 (E.D. Wis. Dec. 31, 2019) (holding "Evidence of a feminist zeitgeist at Marian University" is insufficient to support a claimed violation of Title IX) (citing *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 855 (7th Cir. 2019))); *Univ. of Denver*, 952 F.3d at 1197 ("However, this evidence of anti-respondent bias does not raise an inference of discrimination based on gender.").

more than a dozen events to advocate the reporting of sexual assaults" including events

"sponsored by the Center for Advcoacy, Response and Education ('CARE') at Purdue." (ECF

No. 51, at ¶ 24).

Those are the only "events" that are material to John's theory of relief.  If John seeks

discovery about a specific CARE event that relates to Jane's interaction with CARE, his

discovery request should be focused on that event. Yet, his discovery request covers two years,

including the 2016-17 year when John was serving his suspension from Purdue. Further, John's

requests seek all operational details. For what purpose? John's request does not "hew closely to

matters specifically described in the [amended] complaint." *Conroy*, 307 F. Supp. at 903

(quotation marks and citation omitted).

Defense counsel offered to discuss a more focused production as a compromise,

including producing a calendar of CARE events. That offer was ignored. John Doe has never

addressed Purdue's objections to the CARE discovery request and therefore has no grounds to

complain to this Court.  *See, e.g.*, *Leeper v. A.J. Lines, Inc.*, No. 2:15-CV-414-WCL-PRC, 2016

U.S. Dist. LEXIS 155411, at *12-15 (N.D. Ind. Nov. 9, 2016) (denying a motion to compel when

the movant failed to offer argument why the objections were improper).

   h. **Report "sent to the Navy ROTC" and documents "concerning or referring to the sending"**

Request No. 21 seeks "The Investigation Report concerning the allegations against

Plaintiff John Doe sent to the Navy ROTC at Defendant Purdue University." In turn, Request

No. 22 seeks "All documents constituting, concerning or referring to the sending of the

Investigation Report concerning the allegations against Plaintiff John Doe to the Navy ROTC at

Defendant Purdue University."

Purdue objected to those requests as ambiguous and unintelligible. The passive-voice

"sent"/"the sending" is deliberately ambiguous: sent by whom? John Doe? Jane Doe? John's

Amended Complaint alleges, "John Doe would have been obligated to inform the Navy ROTC."

(ECF No. 51 at 22). Further, Request Nos. 21 and 22 are apparently seeking something different

than Request No. 19, to which Purdue responded by producing its investigation report.

John Doe has the Navy's file of communications about Jane and John. John Doe's motion

does not identify any unproduced communication sent to or from the Navy.

### i.    Non-party Bloom's job descriptions for the past 15 years (Request No. 30)

Request No. 30 seeks "All documents constituting, concerning or referring to the job

responsibilities of Monica Soto Bloom at Defendant Purdue University, including at CARE."

Ms. Bloom has worked at Purdue for approximately fifteen years. The Amended Complaint

refers only to Ms. Bloom's position when she interacted with Jane Doe. (ECF No. 51 at 24).

Accordingly, Defendants produced the job description for Ms. Bloom's position at that time, as

Director of CARE (see Ex. A to ECF No. 72-8 and Ex. A to ECF No. 72-4). Defendants objected

to the relevance of job descriptions from periods before and after John Doe's enrollment at

Purdue.

John Doe offers no explanation why the other Purdue positions held by Ms. Bloom are

relevant. Defendants cannot respond to a phantom discovery rationale. *E.g.*, *Leeper*, 2016 U.S.

Dist. LEXIS 155411, at *12-15 (denying a motion to compel when the movant failed to offer

argument why the objections were improper). This request should be denied.

### j.    Events occurring while John Doe was suspended (Request Nos. 55 and 56).

Request No. 55 seeks "All documents constituting, concerning or referring to the changes

implemented in August 2016 in Defendant Purdue University's disciplinary procedures for

sexual misconduct, including not limited to permitting respondents and complainants to have

access to the investigative report and the submission of comments and additional information in writing to Defendant Purdue's Investigators."

Request No. 56 seeks "All documents constituting, concerning or referring to the opening of a 'sexual assault center' at Defendant Purdue University in or around August 2016."

Both requests seek unspecified information regarding changes at Purdue while John Doe was suspended for the 2016-17 school year. Developments during that school year post-dated John's relationship with Jane, Jane's allegations against John, and Purdue's decision on Jane's allegations. They are irrelevant.

### k.   Federal investigations of third-party complaints (Request No. 51).

Request No. 51 seeks "All documents constituting, concerning or referring to investigations conducted by the Department of Education's Office for Civil Rights at Defendant Purdue University in the period January 2014 to December 2017." Defendants objected for several reasons. Defendants noted that the request is overbroad and fails to identify with reasonable particularity the documents to be produced.

Defense counsel asked John's counsel to limit Request No. 51 to the period when Jane's allegation against John was pending. John's counsel refused, contending that (i) earlier 2014-2015 investigations "could well have impacted" Plaintiff's case and (ii) later 2016-2017 investigations "may have affected" how Purdue operated in the 2016-2017 school year. (ECF No. 72-10 at 13).

That position is incoherent. John does not allege any connection between his "particular case" and a third-party investigation in 2014-15, when John was still in high school. In turn, an investigation occurring after John was already serving his suspension cannot possibly be relevant to alleged regulatory pressure on Purdue's investigation and discipline of John.

l.    **Electronically Stored Information**

Defendants have produced hard copies of responsive electronically stored information over the course of discovery.  John Doe's motion demands to see the ESI for those documents. John provides no rationale for his demand.

Such redundant discovery creates risks and problems that John makes no effort to address:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

*Hespe v. City of Chi.*, No. 13 C 7998, 2016 U.S. Dist. LEXIS 173357, at *10-11 (N.D. Ill. Dec. 15, 2016) (quoting Fed. R. Civ. P. 34, Advisory Committee Notes—2006 Amendment (emphasis added)). *See id.* at *12 ("In particular, a court must be cautious 'where the request is overly broad in nature and where the connection between the party's claims and the [electronic device] is unproven.'" (quoting *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 900-01 (S.D. Tex. 2015) (alteration in original))).

## V. Conclusion

For these reasons, Defendants respectfully request that the Court deny Plaintiff's motion.

Dated: May 18, 2020

Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (No. 18973-79)
Tyler L. Jones (No. 34656-29)
James F. Olds (No. 27989-53)
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
        tlj@stuartlaw.com
        jfo@stuartlaw.com
Telephone: 765.423.1561
***Attorneys for Defendants***

1299484