IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.,** in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) | |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) | |
| at Purdue University, | ) | |
| | ) | |
| Defendants. | | |

### Brief in Support of Motion to Compel

Come now Defendants, the Trustees of Purdue University, Mitchell Elias Daniels, Jr., Alysa Christmas Rollock, and Katherine Sermersheim, by counsel, and submit this brief in support of their Motion to Compel.

**I.   Introduction**

Even though John Doe's Rule 26(a) disclosure lists his text messages with Jane Doe as supporting documents, he now refuses to produce them. John has put himself in a box. By listing the text messages, he has conceded their relevance and discoverability. If he does not come forth with them now, there will be an adverse inference based on spoliation. If he produced texts now that he never provided to Purdue investigators, he cannot cite those text messages as evidence of an "erroneous outcome" in the Purdue investigation. Apparently, it has dawned on John that the text messages have only downside for him. Unfortunately for John, Rule 26(b)(1) does not exempt downside evidence from discovery.

1

Even though John's Rule 26(a) disclosure asserts several million dollars of damages for emotion harm, psychological harm, and career impairment, he categorically objects to all discovery of his social media activity. John claims that he has "sustained tremendous damages, including . . . emotional distress, loss of educational, athletic and career opportunities, economic injuries and other direct and consequential damages." (ECF No. 51, at 56). His Rule 26(a) disclosure asserts $35,000 in lost income, $100,000 in lost scholarships, $3,000,000 in lost future income, $200,000 in legal fees, $250,000 in damages to his reputation, and $100,000 in emotional and psychological damages.

John does not base his objections on any assertion of burden or privilege. He does not cite any authority that would permit a plaintiff to open the door to such text and social media evidence and then block access to that evidence.

If John has failed to preserve the texts and social media evidence, he needs to acknowledge that now and submit to discovery on spoliation. But to date, he has not argued that the evidence is lost.

John's discovery recalcitrance is not new. Even though his centerpiece "stigma-plus" claim squarely spotlights his one year in Navy ROTC, He tried unsuccessfully to obstruct discovery of his Navy ROTC records. Presently he is trying to obstruct depositions of Navy ROTC witnesses.

This case is nearly 40 months old. Fact discovery closes in late June. John has yet to depose a single witness. Prior to April 2020, John failed to produce a single document. If he is unwilling to comply with discovery of the evidence bearing on his allegations, he should quit the case.

## II. Status of Discovery

Defendants served their first document requests and interrogatories on September 25, 2019. Plaintiff responded to these requests on November 8, 2019. *See* **Exhibit A**.

Defendants served their second document requests and interrogatories on March 11, 2020. Plaintiff provided his responses on April 10, 2020. *See* **Exhibit B**.

## III. Status of Meet-and-Confer

On March 13, 2020, defense counsel submitted a letter to John Doe's counsel outlining several discovery deficiencies, including John's wholesale failure or refusal to produce any documents or records. *See* **Exhibit C**. As one especially troubling example, John provided nothing in response to request for production No. 2, which sought "[a]ll correspondence, including but not limited to, emails, text messages, instant messages, letter, social media posts, between Jane Doe and you." Defense counsel requested a meet-and-confer teleconference that week and asked for John Doe's counsel to provide his availability.

John Doe's counsel did not respond until April 9, 2020. *See* **Exhibit D**. The April 9 letter did not respond to Defendants' counsel's request for a conference on the unproduced text messages. Instead, John's counsel falsely suggested that Purdue University already had the requested text messages, and then stated that he would forward them. But he never did.

Defense counsel again emailed John's counsel on April 23, 2020 about John's refusal to produce text or social media records. *See* **Exhibit E.** That email again invited a discovery conference. **Ex. E at 2**.

John's counsel's final response was in an April 29, 2020 letter. *See* **Exhibit F**. In that letter, John's counsel declared the texts and social media to be outside of the scope of discovery.

He once again ignored the request for a conference and stated that he believed the parties were at an impasse.

### IV.  Scope of Discovery and Motion to Compel

Defendants incorporate by reference the discussion of Federal Rule of Civil Procedure 26(b)(1) and the summary of pending claims in Defendants' response to Plaintiff's Motion to Compel (ECF No. 77). If a motion to compel discovery is granted, "the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless one of a number of circumstances justify the non-disclosure. *See* Fed. R. Civ. P. 37(a)(5)(A).

### V.  All of Plaintiff's Text Messages with Jane Doe are Discoverable.

Plaintiff's Amended Complaint alleges that he and Jane Doe began a dating relationship in *August 2015*. During Purdue's investigation of Jane's allegation against John, Purdue obtained 130 pages of text messages beginning in *December 23, 2015*. Given the prolific texting between the two of them, Purdue has logically requested that John produce the rest of his text messages with Jane Doe, in particularly those *preceding December 23, 2015*.

John has opened this door by listing those text messages in his Rule 26 disclosures. **Exhibit G.**  Of the texts that Plaintiff produced to the Investigators, several supported Jane Doe's allegations and were presented in the Investigation Report at John Doe's hearing, including:

> [From Jane Doe to Plaintiff on December 28, 2015]:
>  "Or when *I wake up to you touching me* or I'm trying to do something and you just touch me I literally can't trust you if you don't respect my boundaries"
>  [Reply from Plaintiff]:
> "We already went over this several times. I cant [sic] even apologize any more because you get angry at me for it"
> [Response from Jane Doe]:
> "No I get angry because you continue to do it and just say sorry you don't actually change anything"
> [Reply from Plaintiff]:

> "Im [sic] not going in circles any more [Jane Doe]. What more do you want me to say? Do you want this to be over? We have literally talked about this for a week and I already told you I cant [sic] change what I [sic] did, only what i [sic] will do from here on out. Do you want me to feel shitty for the rest of my life because of what I did? Im [sic] feeling like i [sic] will. Im [sic] sorry. I cant [sic] change what I [sic] did, as much as i [sic] want to. *I violated you and never should have*. What do you want me to do?"

**Exhibit H, at 2** (emphasis added).

Undoubtedly there are more texts between John and Jane Doe that were not produced. Their text on December 23, 2015—more than four months after John says they began dating— begins mid-conversation (during an apparent argument). It is inconceivable that a young couple did not text at all for four months and then began texting prolifically over the next two or three months, producing at least 130 pages of texts. John's counsel has not disputed that additional text messages exist and have not been produced.

Text messages and phone records are discoverable when relevant to a party's claim or defense and proportional to its needs. *See, e.g., Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 U.S. Dist. LEXIS 216011, at *2-4 (N.D. Ill. Mar. 23, 2018); *EEOC v. SVT, LLC*, No. 2:13-CV-245-RLM-PRC, 2014 U.S. Dist. LEXIS 172560, at *23-24 (N.D. Ind. Dec. 15, 2014). This is no different for text records in Title IX claims. *See, e.g., Lipian v. Univ. of Mich.*, No. 18-13321, 2019 U.S. Dist. LEXIS 184020, at *3-4 (E.D. Mich. Oct. 24, 2019) (upholding, in part, the University's motion to compel a forensic examination of text records of the victim's and assailant's phones due to "gaps" in the text message records); *Ludwig v. Elk-Point Jefferson Sch. Dist. 61-7*, No. 4:18-CV-04091-LLP, 2019 U.S. Dist. LEXIS 128630, at *18-21, 25-26 (D.S.D. Aug. 1, 2019); *see also Garrett v. Univ. of S. Fla. Bd. of Trs.*, No. 8:17-cv-2874-T-23AAS, 2018 U.S. Dist. LEXIS 156996, at *17-18 (M.D. Fla. Sep. 14, 2018) (granting the

University's motion to compel text messages between victim and the alleged sexual assailant, but denying a request to forensically examine Plaintiff's phone).

For these reasons, John should be ordered to produce every text message that he exchanged with Jane Doe.

**VI.    John Doe's Social Media Activity is Discoverable.**

John's initial disclosure puts in issue everything relating to his "physical," "emotional," and "psychological" health and education since mid-2016. **Exhibit G.** The disclosure also puts his career prospects as a naval officer and qualifications for scholarships at issue. *Id.* Defendants' first set of interrogatories requested that John identify the social media platforms he used from August 2015 to the present. He identified that he had an active Instagram account and a Facebook account that had since been deactivated.

Due to the Stored Communications Act, 18 U.S.C. §§ 2701-12, Facebook, Instagram, and Snapchat do not consider data stored on their sites (e.g., posts, photos, statuses) to be their property.  Instead, they consider this data to be a user's property and make all this data quickly and readily available for download for a user.  *See, e.g.*, [Instagram] https://help.instagram.com/181231772500920, [snapchat] https://support.snapchat.com/en-US/a/download-my-data.

Defendants' second document requests call for all data from John's Instagram and Snapchat[1] accounts from August 2015 to the present using the links provided above. In their April 23, 2020 email to John's counsel, defense counsel explained that given John's broad claims about how the alleged conduct affected and damaged him, Defendants are entitled to discover

---

[1] Plaintiff did not disclose that he had a Snapchat account.  This was only discovered through the due diligence of Defendants' counsel.

records and evidence bearing on his claims. Yet John and his counsel have completely stonewalled that request.

John is seeking millions of dollars. His primary damage claims rest on his alleged suitability for a Navy career and his claim of emotional and psychological harm. Having opened the damage door very wide, the burden is on John to explain how any of his social media activity since 2016 is not fair game for scrutiny of his damage claim.

Social media is undoubtedly the primary documentary record of John Doe's conduct and welfare relating to his damage claim. The Supreme Court has observed that:

> While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the vast democratic forums of the Internet in general, and social media in particular. Seven in ten American adults use at least one Internet social networking service. One of the most popular of these sites is Facebook, the site used by petitioner leading to his conviction in this case. According to sources cited to the Court in this case, Facebook has 1.79 billion active users. This is about three times the population of North America.
>
> Social media offers relatively unlimited, low-cost capacity for communication of all kinds. On Facebook, for example, users can debate religion and politics with their friends and neighbors or share vacation photos. On LinkedIn, users can look for work, advertise for employees, or review tips on entrepreneurship. And on Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner.

*Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) (internal quotations marks and citations omitted). Social media "permeate[s]" most aspects of everyone's lives. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019). Indeed, social media usage is widespread in society, but nearly ubiquitous among those under the age of thirty, like the Plaintiff. *See Social Media Fact Sheet*, PEW RESEARCH CENTER, https://www.pewresearch.org/internet/fact-sheet/social-media/ (June 12, 2019) (social media

usage among those between the ages of 25-29 has remained around 85%-90%, as compared to 35%-40% for those over the age of 65).

John's hide-the-ball logic forces Purdue to guess what impeachment evidence resides in John's social media activity. At a minimum, John's social media activity will yield witnesses who can testify to John's emotional status (including his own self-characterizations), college progress (including his motivation and commitment), career interests (including his supposed interest in a Navy career), personal habits (including his drug use, which would preclude a Navy career) and his statements about Jane Doe and his claims in this case. John Doe has effectively conceded this broad discoverability by consenting to Purdue's discovery of his Taylor University records.[2]

As numerous courts in this jurisdiction have recognized, social media records are relevant and discoverable when they bear upon issues or claims in a party's claim or defense. *E.g.*, *Jones v. M*, No. 3:17-CV-210-RLM-MGG, 2018 U.S. Dist. LEXIS 235455, at *1-5 (N.D. Ind. Mar. 20, 2018); *D.O.H. v. Lake Cent. Sch. Corp.*, No. 2:11-CV-430, 2014 U.S. Dist. LEXIS 5585, at *7-8 (N.D. Ind. Jan. 15, 2014); *Alderson v. Ferrellgas, Inc.*, No. 3:12-cv-305-TLS-CAN, 2013 U.S. Dist. LEXIS 190674, at *8-9 (N.D. Ind. Aug. 22, 2013); *see also Higgins v. Koch Dev. Corp.*, No. 3:11-cv-81, 2013 U.S. Dist. LEXIS 94139, 2013 WL 3366278 (S.D. Ind. July 5, 2013) (holding a plaintiff's social media posts were discoverable upon demonstration of relevance); *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010) (holding a

---

[2] Records from Taylor University—where he attended following his suspension from Purdue—have already demonstrated that Plaintiff was struggling to stay in college due to his own poor decision-making, including not going to class and "micro-dosing" on LSD, to list a few examples. **Exhibit I**.

plaintiffs' social media posts discoverable to extent they were reasonably calculated to lead to admissible evidence).

John's social media records are easily downloaded (typically in a zip file) within minutes and are readily able to be emailed and saved electronically.

For these reasons, Plaintiff's social media data, from August 2015 to the present, should be produced.

## VII. Conclusion

For the reasons stated above, Defendants respectfully request:

1. That this Court compel Plaintiff to fully answer Defendants' second set of interrogatory requests; specifically No. 12, and that the Plaintiff fully cooperate with the Defendants' efforts to subpoena his text messages records with Jane Doe;

2. That this Court compel Plaintiff to produce all Instagram and Snapchat data (as may be downloaded from the platforms) from August 2015 to the present;

3. That this Court award Defendants' their reasonable costs in filing this motion, including their reasonable attorney's fees; and,

4. For all other relief that is just and proper.

Dated: May 19, 2020

Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (No. 18973-79)
Tyler L. Jones (No. 34656-29)
James F. Olds (No. 27989-53)
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
          tlj@stuartlaw.com
          jfo@stuartlaw.com
Telephone: 765.423.1561

1296279