

Ira S. Nesenoff
Andrew T. Miltenberg

Barbara H. Trapasso
Ariya M. Waxman
Tara J. Davis
Diana R. Warshow
Gabrielle M. Vinci
Robert D. Werth
Jeffrey S. Berkowitz
Kara L. Gorycki

Philip A. Byler
*Senior Litigation Counsel*
Megan S. Goddard
*Counsel*
Rebecca C. Nunberg
*Counsel*
Marybeth Sydor
*Title IX Consultant*

April 9, 2020

**By E-Mail**
William P. Kealey, Esq.
Tyler L. Jones, Esq.
Stuart & Branigin LLP
300 Main Street – Suite 900
Lafayette, Indiana 47902-1010
wpk@stuartlaw.com
TLJ@stuartlaw.com

Re:    *John Doe v. Purdue University, et al.*

Dear Messrs. Kealey & Jones:

As I stated in my letter dated April 8, 2020, concerning Defendants' discovery deficiencies, I stated my hope that you are safe and well, that I work in Manhattan and my house is in Huntington, Long Island, that Manhattan and Long Island have been epicenters of the coronavirus pandemic in New York and this country, that my law firm's law offices have been closed for the past month, and that we in New York are subject to a stay-at-home order of the Governor.

As I stated in my letter dated April 8, 2020, concerning Defendants' discovery deficiencies, I have now been able to review Mr. Kealey's two letters dated March 13, 2020, concerning discovery. In my letter dated April 8, 2020, concerning Defendants' discovery deficiencies, I have replied to the first March 13 letter addressing what are Defendants' deficient responses with respect to Plaintiff's interrogatories and requests for document production. In this letter, dated April 9, 2020, I will reply to the second March 13 letter addressing your issues concerning Plaintiff's discovery responses as to damages discovery, three interrogatory answers, the requirement of a Protective Order for document production and the texts between Plaintiff and complainant. Given



what you raise, you really don't have much to complain about at this pre-deposition stage of discovery.

I.   **DAMAGES DISCOVERY.**

Plaintiff's Amended Rule 26 Disclosure stated in pertinent part:

**Rule 26(a)(1)(A)(iii): A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered:**
Plaintiff John Doe claims the following damages in an amount to be determined at trial, which includes, without limitation: (1) Non-economic damages (physical well-being, emotional and psychological damages, damages to reputation) not subject to calculation, to be determined at trial; (2) Past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements. To date, these damages include but are not limited to, the following: (i) Loss of future income - $3,000,000; (ii) Loss of Scholarships -$100,000; (iii) Legal Fees -$200,00 and counting. Plaintiff reserves the right to retain the services of experts who will calculate the damages to Plaintiff's education and future earning capacity as a result of the disciplinary decision and sanction. Thus, Plaintiff reserves the right to modify this calculation of damages accordingly.

Your second March 13 letter complains that the disclosure lacks a computation for non-economic damages, lacks a computation of economic damages and lacks production of documents. Plaintiff can and will provide a further amendment to provide a computation of damages, but it will be subject to revision based on what Plaintiff's damages expert does. The Rule 26 Disclosure



is intended to identify for Defendants the categories of damages so that Defendants can examine Plaintiff at a deposition on damages. As for document production, the Rule requires production of the documents supporting the damages, which Plaintiff will be doing.

Your second March 13 letter, on the subject of damages, throws in the assertion that the case is three years old. False posturing does not help move a case forward. I should not have to remind you that much of those three years were involved in litigating Defendants' motion to dismiss and that we had to start over in discovery after the Seventh Circuit opinion.

II.     **PLAINTIFF'S ANSWERS TO THREE INTERROGATORIES.**

Your second March 13 letter complains, without merit, about three of Plaintiff's answers to Defendants' interrogatories: Nos. 4, 5 and 7.

  A.    **Interrogatory Answer No. 4.**

Defendants' Interrogatory No. 4 and Plaintiff's Answer were as follows:

State the names and addresses of all of your employers since 2016, including self-employment, and, as to each such employment, state:

a.   The date you commenced such employment and, if applicable, the date and reason you left such employment;

b.   The nature of the employment and your job title;

c.   Whether you were paid by the year, month, week, day, hour, or otherwise and what rate; and,

d.   Your reason for leaving the employment.

**Response: Steiner Homes, Crown Point, Indiana, June-August 2017, summer employee (miscellaneous jobs laborer), term of summer employment ended; Taylor University, Valparaiso, Indiana, school year 2017-2018, salad bar attendant, school year ended; Indiana Beverage, 2850 Barley Road, Valparaiso, Indiana, June-August 2018, pallet wrapper, term of summer employment ended. Plaintiff has not had employment since September 2018.**

Your second March 13 letter complains that Plaintiff's answer did not include the rates of pay. Plaintiff can and will provide a further amendment to this Interrogatory Answer to provide the applicable rates of pay for the three jobs.

B.  **Interrogatory Answer No. 5.**

Defendants' Interrogatory No. 5 and Plaintiff's Answer were as follows:

Identify every person known to or believed by you to have firsthand knowledge of the matters describe in the "Notice of Allegations" provided to you on April 11, 2016 via letter by Dean Katherine Sermersheim, or in your "Response" to the same, submitted via email attached to Dean Sermersheim on April 22, 2016. For each person identified, please provide a statement summarizing what facts that person is believed to have firsthand knowledge of, and your most recent contact information (phone number, email, address, etc.) for that person.

**Response: No one has first-hand knowledge of the matters described in the "Notice of Allegations" because the matters described in that document are fiction. Plaintiff and Plaintiff's roommate, Elvin Uthuppan, were and are witnesses with first-hand knowledge that what was alleged in the "Notice of Allegations" was false.**

Your second March 13 letter complains about this answer, accuses -- insanely -- Plaintiff of hiding the substance of Plaintiff's chief witnesses and threatens -- ludicrously -- to seek immediate exclusion without a fuller answer as if Plaintiff had not filed a 67-page Amended Complaint giving almost a blow by blow factual account of the facts relating to the Notice of Allegations and as if Plaintiff was refusing to do depositions of Plaintiff and Mr. Uthppan. If you



look at the wording of Defendants' Interrogatory No. 5, you will see that Plaintiff directly and fully answered it. What is alleged in the Notice of Allegations is false; it is fiction; no one has first-hand knowledge of the supposed facts in the Notice of Allegations because what is alleged did not happen. What Plaintiff and Mr. Uthppan can truthfully testify to is a very different set of facts than those alleged in the Notice of Allegations, and really the Amended Complaint really tells you what those facts are. At his point, the proper discovery tool is the deposition. What you say in the second March 13 letter concerning interrogatory answers is why the Local Rules of the U.S. District Court for the Southern District of New York limits severely the kind of interrogatories that can be posed to identification of witnesses and location of documents.

    C.    **<u>Interrogatory Answer No. 7.</u>**

Defendants' Interrogatory No. 7 and Plaintiff's Answer were as follows:

    List each type and amount of damages that you allege against Defendants, including any harm to your physical well-being, emotional and psychological state, reputation, past and future economic earnings, educational and athletic opportunities, and future career prospects. For each listed type and amount of damages:

a.    State the date(s) of each alleged harm referred to in the answer to this interrogatory;

b.    Identify all supporting documents;

c.    For each alleged harm, identify (by name, address, phone number and email address) each individual who has witnessed the harm.

    **Response: The July 2016 Defendants' disciplinary decision resulted in the loss of Plaintiff's full ride NROTC scholarship as well as a Presidential scholarship and the loss of Plaintiff's ability to pursue a career as a U.S. Navy officer. See Plaintiff's August 2016 involuntary resignation letter already on file in this case. The July 2016 Defendants' disciplinary decision resulted in the**



> infliction of emotional and psychological damages, reputational damages and associated physical well-being damages, for which Plaintiff has been receiving treatment as stated in the Response to Interrogatory No. 8. Because of facts stated in Responses to Interrogatories Nos. 8 and 11 below, any career prospects for Plaintiff, other than what had been his chosen path, are delayed. Plaintiff's parents have witnessed the foregoing.

Plaintiff's Answer to Interrogatory No. 8 was as follows:

> **Response:** Starting in early 2018 and continuing periodically to date, Plaintiff has received counselling for his psychological and social well-being with Noel Perry of Family Concern Counselling. Starting late 2018, Plaintiff has received acupuncture treatments for reducing chronically high stress levels. Specific dates of the appointments will be contained in a document file of Plaintiff's costs that will be produced.

Plaintiff's Answer to Interrogatory No.11 was as follows:

> **Response:** Taylor University (Fall 2016, Spring 2017, Fall 2017). No sexual or other behavioral misconduct was ever alleged, and thus there was no discipline and no potential discipline from any sexual or other behavioral misconduct. Poor academic performance, which resulted from chronic high stress and other psychological issues for which Plaintiff has been receiving treatment as stated in the Response to Interrogatory No. 8 and which was contrary to Plaintiff's academic history before Defendants' disciplinary case, led to Plaintiff not being eligible for one academic semester.

Your second March 13 letter complains that this answer is incomplete, but what you cite for incompleteness will be corrected by the amendment referenced in Part I above in this letter.

### III.   TWO ISSUES AS TO DOCUMENT PRODUCTION.

Your second March 13 letter raises two issues concerning document production. Both are subject to reasonable resolution.



A.   **<u>Protective Order for Document Production.</u>**

Your second March 13 letter complains that Plaintiff did not produce documents as to Defendants' Document Requests Nos. 1, 4, 6, 8 and 12, which include Plaintiff's health records and tax records, even though Plaintiff has made clear a Protective Order is needed before such production.  Your second March 13 letter notes that there is a burden on a party asserting a need for confidentiality.  But a Protective Order is routinely given for the kind of records involved here.  I thought we were going to be negotiating a proposed Protective Order, and I will send you my proposal.

B.   **<u>Texts Between Plaintiff and Complainant.</u>**

Your second March 13 letter complains about being referred to the texts between Plaintiff and complainant that Plaintiff produced to the university during the disciplinary proceeding, and your second March 13 letter describes what texts you have in a way that is not accurate at all.  If your description is what you have been provide by the university, you have been given an incomplete file.  I can speculate that the university investigation file was, so to speak, edited, but I have a binder of the texts. So why don't I have a copy made and Bates stamped for production to you as soon as I am no longer subject to a New York stay-at-home order?

                                         **Very truly yours,**
                                         **NESENOFF & MILTENBERG LLP**
                                         **By:** _____*Philip A Byler, Esq.*_____
                                                 **Philip A. Byler, Esq.**