

ATTORNEYS AT LAW

Ira S. Nesenoff
Andrew T. Miltenberg

Barbara H. Trapasso
Ariya M. Waxman
Tara J. Davis
Diana R. Warshow
Gabrielle M. Vinci
Robert D. Werth
Jeffrey S. Berkowitz
Kara L. Gorycki

Philip A. Byler
*Senior Litigation Counsel*
Megan S. Goddard
*Counsel*
Rebecca C. Nunberg
*Counsel*
Marybeth Sydor
*Title IX Consultant*

**April 29, 2020**

**By E-Mail**
William P. Kealey, Esq.
Tyler L. Jones, Esq.
Stuart & Branigin LLP
300 Main Street – Suite 900
Lafayette, Indiana 47902-1010
**wpk@stuartlaw.com**
**TJL@stuartlaw.com**

**Re: *John Doe v. Purdue University, et al.***

Dear Messrs. Kealey & Jones:

I have Bill Kealey's e-mail from April 23, 2020, and I decided to consider it carefully, not because of the concluding false accusation, but because out of respect for the Court, I wish to remove from disagreement what we can.

What your April 23 e-mail reflects is that the core problem afflicting discovery is that Defendants view the Seventh Circuit opinion as not upholding much of anything. The Seventh Circuit in this case upheld causes of action for violations of due process and Title IX discrimination stated in the original Complaint and outlined proper injunctive relief, and the Seventh Circuit ruled that because John does have a "stigma-plus" liberty interest, John was stigmatized by the disciplinary adjudication finding him guilty of a sexual offense and there were constitutional due process violations, "we instruct the court to address the issue of expungement on remand." 928 F.3d 652, 661-664, 666-667. Consistent with Defendants' incorrect view of the Seventh Circuit opinion in this case, your April 23 e-mail refers to my 16-page April 8, 2020 letter, but does not deal with what was contained in my April 8, 2020 letter, which was a clinical presentation of Defendants' discovery deficiencies -- specifically, that Defendants are refusing to answer 20 of 25



EXHIBIT F




interrogatories, are refusing to produce documents as to 11 document requests (with the exception of the investigation report that I will address below), and making broad objections that may obscure the non-production of documents that should be produced -- depositions may reveal that Defendants may have failed to produce other important documents. Contrary to your April 23 e-mail, Plaintiff's problem is not with having proof. Plaintiff's problem is that Defendants view the Seventh Circuit opinion as not upholding much of anything and accordingly, Defendants are not providing the interrogatory answers and documents that they are obliged to provide under the Federal Rules.

Nevertheless, I will address *seriatim* what is raised in your April 23 e-mail.

**1.** **Verifications**. Attached are the requested Verifications for Plaintiff's Responses to Defendants' First Set of Interrogatories and Plaintiff's Responses to Defendants' Second Set of Interrogatories.

**2.** **Damage Computation.** You re-raise your demand for damages computation as if Plaintiff had not represented that Defendants would be provided a fuller damages breakdown. To the contrary, when you raised this issue before in a prior letter of yours, I responded in my April 9, 2020 letter to you showing that specific amounts were stated in Plaintiff's Amended Rule 26 Disclosure for loss of future income ($3 million), loss of scholarships ($100,000) and legal fees ($200,000 and counting). I further responded in my April 9, 2020 letter to you:

> Your second March 13 letter complains that the disclosure lacks a computation for non-economic damages, lacks a computation of economic damages and lacks production of documents. Plaintiff can and will provide a further amendment to provide a computation of damages, but it will be subject to revision based on what Plaintiff's damages expert does. The Rule 26 Disclosure is intended to identify for Defendants the categories of damages so that Defendants can examine Plaintiff at a deposition on damages. As for document production, the Rule requires production of the documents supporting the damages, which Plaintiff will be doing.



ATTORNEYS AT LAW

> Your second March 13 letter, on the subject of damages, throws in the assertion that the case is three years old. False posturing does not help move a case forward. I should not have to remind you that much of those three years were involved in litigating Defendants' motion to dismiss and that we had to start over in discovery after the Seventh Circuit opinion.

There is no basis for an exclusion motion, as you threaten. You can try to make a motion to compel, but Plaintiff is not refusing discovery. To the contrary, we need to schedule depositions, and it is fully expected that before the deposition, Plaintiff will be doing a supplemental document production and that as part of the deposition, Defendants will be examining Plaintiff concerning the subject of damages. In any event, attached is a Second Amended Rule 26 Disclosure providing more detail.

**3. <u>Phone Records, Text Records and Social Media Activity.</u>** Your April 23 e-mail asserts that you are entitled to a broad inquiry into every aspect of Plaintiff's physical, emotional and psychological status and education, and therefore, you say you are entitled to phone records, text records and social media activity. The short answer is that while Defendants are entitled to supporting proof of damages, Defendants are not entitled to a broad fishing expedition that ignores the scope of discovery stated in Rule 26(b)(1) the Federal Rules of Civil Procedure:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

What was stated in response to Defendants' Second Set of Interrogatories seeking phone records was as follows:




ATTORNEYS AT LAW

> . . . Plaintiff specifically objects that the Second Set Interrogatories seeking cell phone information is seeking information that is not relevant to the issues in this case and even if arguably somehow relevant, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.
>
> Plaintiff's cell phone information does not contain any information that is relevant to and/or non-privileged in this case. Defendants are engaged in an intrusive fishing expedition without any idea what relevant information may thereby be obtained; the only persons connected to this case with whom Plaintiff ever talked on his cell phone were his parents and his counsel. At the same time, Defendants are refusing to answer Plaintiff's interrogatories relating to gender bias for Plaintiff's Title IX claim, the person at Purdue responsible for communications with the Navy ROTC at Purdue and the amount of federal funding that Purdue received in 2016 -- all highly relevant matters in this case.

What was stated in response to Defendants' Second Set of Document Requests seeking Instagram and Snapchat records was as follows in pertinent part:

> . . . Plaintiff specifically objects that this Second Set Document Request seeking Plaintiff's [Instagram] [Snapchat] documents is seeking documents that are not relevant to the issues in this case and even if arguably somehow relevant, are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.
>
> Plaintiff's [Instagram] [Snapchat] documents do not contain any information that is relevant to this case. Plaintiff, who uses a Court authorized pseudonym in the case, did not use [Instagram] [Snapchat] to discuss anything connected to this case. Defendants are engaged in an intrusive fishing expedition without any idea what relevant information may thereby be obtained. At the same



Attorneys at Law

> time, Defendants are refusing to produce documents in response to Plaintiff's Document Requests . . . .

These Responses were stated in light of: first, the limitation on the scope of discovery stated in Rule 26(b)(1) of the Federal Rules of Civil Procedure; second, the absence of any apparent justifying rationale for seeking such discovery; and third, Defendants' conducting scorched earth discovery as to Plaintiff (perhaps with a mind to put Plaintiff on trial for daring to challenge Defendants) while not providing answers to Plaintiff's interrogatories and not producing relevant documents to Plaintiff's Document Requests. This is not at all like the Navy production -- as to which Plaintiff's view is that it has helped Plaintiff's case. Your April 23 e-mail does not provide a justifying rationale for what you now seek. Rule 26(b)(1) of the Federal Rules of Civil Procedure forecloses your reliance upon the notion of a broad inquiry encompassing phone, Instagram and Snapchat records that do not contain directly relevant information for a Plaintiff having a Court authorized pseudonym, and the case you cited, *D.O.H. v. Lake Central School Corp.*, 2014 U.S. Dist. LEXIS 5585, 2014 WL 174675 (N.D. Ind. Jan. 15, 2014), does not provide a justifying rationale. There, the Complaint alleged bullying and harassment by fellow students at the school, and the requested social media had an obvious connection to the claim of harassment and bullying. If you had articulated a justifying rationale here, I would not hold to my position. But you haven't.

**4.** **Investigation Report and Related Documents.** You should not be puzzled by my assertion that Purdue has refused to produce the requested investigation report and documents related to the investigation report. Defendants' Responses to Requests Nos. 21 and 22 in Plaintiff's First Set of Document Requests stated only objections to production and did not state that Defendants were producing documents subject to the objections. I had to assume what appeared in Defendants' production was not the investigation report that was issued. But I take it from your comment that the 10-page, wide-margined investigation report that appears four times in Defendants' production is the investigation report. Just so you understand: the investigation reports that I have seen from other universities are usually much, much longer and far more detailed. I have dealt with investigation reports from one East Coast school that are 100 pages long single spaced and with narrow page margins. No wonder why the error-ridden, poorly done investigation report in this case was not shown Plaintiff by the university during the disciplinary case. In any event, my concern at this point is that given your broad objections to Requests Nos. 21 and 22 in Plaintiff's First Set of Document Requests is whether there are documents related to the investigation report that Defendants did not produce. Of the about 730 pages of production you have referenced, about 3/8 of the pages are duplicate reproductions of the texts between Plaintiff and complainant that Plaintiff produced to the Purdue investigators.



ATTORNEYS AT LAW

**5.** **Pro-Victim Bias.** You say you are puzzled by my reference to pro-victim bias. You shouldn't be given my explanation in my April 8, 2020 letter. While you cite *Doe v. Columbia College Chicago*, 299 F.Supp.3d 939 (N.D. Ill. 2017), where a Title IX claim was dismissed for lack of specific facts showing gender bias, you misread that case and overlook the fact that in this case already, the Seventh Circuit has upheld the pleading of a Title IX discrimination case. Even *Doe v. Columbia College Chicago* recognized that a Title IX case could be validly pleaded given the kind of facts as are pleaded here, which is why the District Judge in *Doe v. Columbia College Chicago* was part of a unanimous panel in this case that was well aware of *Doe v. Columbia College Chicago*, 299 F.Supp.3d 939. General pro-victim bias alone may not be sufficient to make a case of gender bias, but such pro-victim bias and other specific facts showing anti-male bias are sufficient.

**6.** **Statistics.** You say that you are puzzled by the allegation (which is patterned from *Yusuf v. Vassar*, 35 F.3d 709 (2d Cir. 1994)) that males are invariably found guilty, which you deny based on what was a situation in 2017. I am very well aware of what you are referring to. But of more immediate concern is that you are refusing to answer Interrogatories Nos. 1-18 that would provide the statistics upon which to consider the allegation you say you are puzzled by. I appreciate that you are now willing to provide the 2015-2016 statistics and you need to do so, but I asked for the statistics for the 2014-2015, 2015-2016 and 2016-2017 school years in order to account for the very kind of situation to which you refer.

**7.** ***Yusuf v. Vassar* Patterns of Decision-Making.** As I explained in my April 8, 2020 letter to you, *Yusuf v. Vassar* is very much good law about patterns of decision-making and proof of gender bias. According to *Yusuf*, for an "erroneous outcome" case, the plaintiff must establish: (i) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (ii) *"particular circumstances suggesting gender bias was a motivating factor behind the erroneous findings*." *Yusuf*, 35 F.3d at 715 (emphasis added). The "circumstances suggesting gender bias was a motivating factor behind the erroneous findings . . . might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715. Yet, you assert, incorrectly, that evidence of gender bias must relate to similarly situated females. The Seventh Circuit in this case upheld the Title IX claim and did not recognize a requirement of what you call comparator evidence. The two cases that you cite, which are not Title IX cases, do not remotely stand for your proposition, which in any event makes no sense in erroneous outcome Title IX cases because there are very few and often no female respondents with which to do a comparison. The first case you cite, *Nagle v. Village of*



Attorneys at Law

*Calumet Park*, 554 F.3d 1106 (7th Cir. 2009), was a Title VII employment discrimination case based on race and age; *Nagle* does not talk about a comparator requirement even in that context. The second case you cite, *Martin v. Southern Illinois University School of Medicine*, 2017 U.S. Dist. 174828, 2017 WL 4780613 (C.D. Ill. Oct. 23, 2017), was a Title VII and Americans with Disabilities Act case based on race and handicap. The reference in the *Martin* case to *McDonnell-Douglas* was for stating whether the Martin plaintiff met the burden of an employment discrimination case. Notably, Title VII has been used to incorporate in Title IX the evidentiary burden shifting of *McDonnell-Douglas*, but not a comparator requirement. *See Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016) (referencing the evidentiary burden shifting of *McDonnell-Douglas* and upholding a Title IX erroneous outcome Complaint without any comparator requirement). The only kind of Title IX cases in which a comparator requirement has been discussed is in what are called selective enforcement cases, but there the typical scenario is where a male and a female have cross-filed against each other and the female's case is pursued by the university but the male's case is not.

**8.** **Impasse?** My 16-page April 8, 2020 letter was mostly almost judicial in discussing Defendants' discovery deficiencies and cannot be rationally be treated as containing "intemperate rhetoric" calling for you to refer to Standards for Professional Conduct Within the Seventh Federal Judicial Circuit. That you do so while also not dealing with Defendants' discovery deficiencies only establishes that we seem to be at an impasse as to addressing Defendants' discovery deficiencies.

**Very truly yours,**
**NESENOFF & MILTENBERG LLP**

**By:** ___Philip A Byler, Esq.___
**Philip A. Byler, Esq.**