UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
-----------------------------------------------------------------x
| | |
|---|---|
| **JOHN DOE,** | **CIVIL ACTION** |
|  | No. 2:17-cv-33-JPK |
| Plaintiff, |  |
| v. |  |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR.,** in his official capacity as President of Purdue University, **ALYSA CHRISTMAS ROLLOCK,** in her official capacity at Purdue University**, and KATHERINE SERMERSHEIM,** in her official capacity at Purdue University, |  |
| Defendants. |  |

-----------------------------------------------------------------x

**PLAINTIFF JOHN DOE'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL AND ASSOCIATED RELIEF**

NESENOFF & MILTENBERG, LLP
Philip A. Byler (pro hac vice admission)
Andrew T. Miltenberg (pro hac vice admission)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
Attorneys for Plaintiff John Doe

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ……………………………………………..………...…ii

INTRODUCTION ……………………………………………………...........................1

THE DISCOVERY AT ISSUE; MEET AND CONFER……………...……………….….2

ARGUMENT IN REPLY…………………………………………………...……….5

I.  DEFENDANTS' OPPOSITION TO THE MOTION TO
    COMPEL INTERROGATORY ANSWERS DO NOT
    JUSTIFY NOT ANSWERING……………………………………………..5

    A.  Interrogatory No. 25……………………………………...…………………5

    B.  Interrogatory No. 19 ……………………………………..………………6

    C.  Interrogatories 1-18 ……………………………...…………………………7

II. DEFENDANTS' OPPOSITION TO THE MOTION TO
    COMPEL DOCUMENT PRODUCTION DO NOT JUSTIFY
    NOT PRODUCING …………………………………………………………10

    A.  Specific Objections To Document Requests …………………..………....10

        1.  Document Request Nos. 7 and 8………………………………………....10

        2.  Document Request Nos. 21 and 22 ……………………………………...12

        3.  Document Request No. 30 …………………………………………………12

        4.  Request No. 51 …………………………………………………………..12

        5.  Request No. 55 …………………………………………………………..13

        6.  Request No. 56 ………………………………………..…………………14

    B.  General Objection As To Electronically Stored Information………..………14

CONCLUSION ……………………………………………………..…….…………………15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Doe v. Columbia College Chicago*, 299 F.Supp.3d 939 (N.D. Ill. 2017)……………..……….9

*Doe v. Columbia*, 831 F.3d 46, 57-58 (2d Cir. 2016)……………………………….....… 8, 10

*Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018)……………………………………………………10

*Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019) ………………………………….…1, 6, 13

*Doe v. University of Colorado-Boulder*, 255 F.Supp.3d 1064 (D. Colo. 2017)…………………10

*Doe v. University of St. Thomas*, 240 F.Supp.3d 984, 991 (D. Minn. 2017)…………..……….9-10

*King v. DePauw*, 2014 U.S. LEXIS 117075 (S.D. Ind. Aug. 22, 2014)…………….…………..8

*Menaker v. Hofstra*, 935 F.3d 20 (2d Cir. 2019)………………………………………………10

*Sahm v. Miami University*, 110 F.Supp.3d 774, 778 (S.D. Ohio 2015)…………..……………10

*Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ………………………....………...4-5, 9

**Constitutional Provisions, Statutes and Rules**

Rule 26, Federal Rules of Civil Procedure……………………………………………………..5

**INTRODUCTION**

Plaintiff John Doe ("Plaintiff") respectfully submits this Reply Memorandum of Law in further support of Plaintiff's motion to compel discovery.

Defendants begin their opposition to the motion by making three assertions.

*First*, Defendants, viewing the Seventh Circuit opinion as not upholding much of anything, assert that all claims have been dismissed but for two claims. (Dfs. Mem 1.) Defendants thus do not acknowledge that the Seventh Circuit, while dismissing the two originally pleaded pendent state law claims on 11th Amendment grounds, upheld the two originally pleaded federal law causes of action, one for violations of due process and one for Title IX discrimination, and outlined proper injunctive relief. *Doe v. Purdue*, 928 F.3d 652, 661-664, 666-667 (7th Cir. 2019).

*Second*, Defendants assert that they have produced hundreds of pages of documents. (Dfs. Mem. 2.) Plaintiff anticipated that assertion and has already pointed out that the production "contains four copies of what must be assumed to be the investigation report, and about 3/8 of the 730 pages are duplicate reproductions of the 136 pages of texts between Plaintiff and complainant that Plaintiff produced to the Purdue investigators" and that "Defendants have asserted broad objections that may obscure the non-production of documents that should be produced." (ECF 72: Plaintiff's 5/04/2020 Memorandum of Law, p. 5). Defendants' assertion does not answer the specific points as to what they have not disclosed and not produced.

*Third*, Defendants assert that what Plaintiff is seeking is marginal. (Dfs. Mem. 2.) Not so. Far to the contrary, the motion to compel seeks highly relevant evidence for the Title IX claim.

Counsel for the parties have mooted the motion for associated relief by reaching agreement on and submitting to the Court a stipulation for so ordering of a revised litigation schedule. Perhaps counsel for the parties will be submitting additional stipulations concerning the discovery.

## THE DISCOVERY AT ISSUE; MEET AND CONFER

Accompanying this Reply Memorandum of Law is a Reply Declaration that explains that while the Reply Declaration is submitted in further support of Plaintiff's motion to compel, the intention really is to facilitate a dialogue with Defendants' counsel that enables the litigation to proceed by counsel cooperating and not by requisite intervention of the Court in compliance with the Court's directive of May 18, 2020. (Byler Reply Decl. ¶ 1; ECF 83.)

Mr. Byler provided his credentials in his original Declaration in support of the motion so that the Court and Defendants' counsel would know that he is a serious lawyer and so that it would be understood why he believed the parties had seemingly hit an impasse from Defendants' seemingly standing on their objections to responding to most interrogatories and certain document requests. (ECF 72: Byler Decl.)

Defendants did not respond to Plaintiff interrogatories until January 27, 2020 and even then, refused to answer 20 of 25 interrogatories (ECF 72: Byler Decl. Exs. B, F); and while Defendants produced documents, Defendants' responses to Plaintiff's document were broad and encompassing and Defendants' actual production was less than what it seemed (ECF 72: Byler Decl. ¶¶ 3-11 & Ex. D). (Byler Reply Decl. ¶ 3.)

The exchange of counsel correspondence began with Mr. Byler's letter dated February 28, 2020 to Mr. Kealey (ECF 72: Byler Decl. Ex. F) that detailed that Defendants' responses did not answer 20 of 25 interrogatories, interposed a general objection to producing any electronically stored information and made specific objections to 14 document requests. (Byler Reply Decl. ¶ 4.)

Defendants portray Mr. Kealey's reply letter dated March 13, 2020, to Mr. Byler (ECF 72: Byler Decl. Ex. G) as making some compromise proposals (Dfs. Mem. 3), but compromise did not

seem to be the main thrust of Mr. Kealey's response, but rather a continuation of standing on objections. Mr. Byler decided, rightly or wrongly, that he needed to reply in an April 8, 2020 letter that was an attempt to address the objections with legal analysis in an attempt to move Defendants off the objections and to address what did not seem to me to be real compromises; indeed, most of my letter consisted of what may be called legal analysis aimed at addressing Defendants' objections (ECF 72: Byler Decl. Ex. H). (Byler Reply Decl. ¶ 5.)

While Mr. Byler is Ohio born and raised, he has lived in New York for 42 years and does so now at a time that we have a U.S. President from New York, and Mr. Byler is accustomed to a robust expression, more so than what is typical in the Northern District of Indiana; here, a more Pence-like discourse is in order. As to the compromises, Mr. Byler asks that the Court and Defendants' counsel look past the tone to the serious substantive position Mr. Byler was stating about CARE documents sought for proof of gender bias consistent with the Seventh Circuit opinion, 928 F.3d at 669, and OCR documents reflecting federal pressures, *Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018) ("pressure" one factor in establishing gender bias):

> Document Request Nos. 7 and 8 are for "[a]ll documents constituting, concerning or referring to events were sponsored by the Center for Advocacy, Response and Education ('CARE') at Defendant Purdue University in the 2015-2016 school year" and "[a]ll documents constituting, concerning or referring to promotions by CARE on their Facebook page of events sponsored by CARE at Defendant Purdue University in the 2015-2016 school year." As I stated in my February 28 letter, "one CARE event in the 2015-2016 school year was noted in the Complaint and Amended Complaint and in the Seventh Circuit opinion." (02 28 2020 Byler Letter, p. 7.) Yet, your March 13 letter bizarrely claims that CARE events and CARE promotions are not relevant. (03 13 20 Kealey Letter, p. 4.) That is a totally untenable position to take. You need to produce responsive documents for Document Requests Nos. 7 and 8.
>
> . . . .
>
> Document Request No. 51 seeks documents concerning investigations conducted by the U.S. Department of Education's Office for Civil Rights at Purdue in the time period January 2014 to December 2017. As I noted in my February 28 letter, "there

3

> is a whole section of the Complaint and Amended Complaint concerning the actions of the Department of Education and its influence on university sexual misconduct disciplinary proceedings relating to the element of gender bias in a Title IX suit." (02 28 20 Byler Letter, p. 8.) Your March 13 letter notes that the Seventh Circuit opinion recognized an OCR investigation was opened in 2016, 928 F.3d at 668, and thus argues that only the OCR investigation in 2016 is relevant and requests that Document Request No. 51 be limited to 2016. (03 13 20 Kealey Letter, p. 5.) You have not produced the 2016 OCR investigation file, and you need to do so. I included 2014 and 2015 because the university complaint in this case occurred during the 2015-2016 school year, and an OCR investigation in 2014 or 2015 could well have impacted the procedures followed in Plaintiff's case. I included 2017 because that was during the Trump Administration, and policies in this subject have changed – at least at the top, and that may have affected how Purdue operated during the 2016-2017 school year.

(Byler Reply Decl. ¶ 6.)

Defendants note the gap in time between March 13, 2020 when M. Kealey sent his letter and April 8, 2020 when I sent my letter (Dfs. Mem. 3); however, that was the period when the country was shut ordered down, which included the firm New York offices of Mr. Byler, and the New York City metropolitan area became the epicenter of the Covid-19 pandemic in the United States. (Byler Reply Decl. ¶ 7.)

Unfortunately, contrary to Mr. Byler's hope, Mr. Kealey's e-mail dated April 23, 2020 appears to have responded to the robust expression and not to my legal analysis, continued to stand on all of Defendants' objections and did not address the discovery issues reviewed in my April 8, 2020 letter (ECF 72: Byler Decl. Ex. I). (Byler Reply Decl. ¶ 8.)

Six days later (not weeks), Mr. Byler's letter dated April 29, 2020 to Mr. Kealey (ECF 72: Byler Decl. Ex. J) responded that "the core problem afflicting discovery is that Defendants view the Seventh Circuit opinion as not upholding much of anything," but nevertheless replied substantively to Mr. Kealey's comments about the investigation report, pro-victim bias, the relevance of statistics and the "patterns of decision-making" cited in *Yusuf v. Vassar,* 35 F.3d 709,

4

716 (2d Cir. 1994) and then indicated the parties seemed to be at an impasse. Plaintiff's motion made May 4, 2020 followed. (Byler Reply Decl. ¶ 9.)

Plaintiff did not believe he was ignoring the invitation of Defendants' counsel to dialog and compromise. Defendants were apparently standing on most of their objections, and the parties seemed to Plaintiff's counsel to have hit an impasse. Counsel for the parties will now negotiate to try to resolve discovery differences. (Byler Reply Decl. ¶ 10.)

## ARGUMENT IN REPLY

Defendants begin their legal discussion by quoting Federal Rule of Civil Procedure 26 (Dfs. Mem. 5-6), just as Plaintiff's counsel had in his letter dated February 28, 2020 (Byler Decl. Ex. F). Defendants' point about the need for proportionality is well taken theoretically given Rule 26 and one that Plaintiff's counsel has made to Defendants' counsel; however, what Plaintiff seeks in the motion is not marginal at all but to the contrary, directly relevant and proportional. The following discussion proceeds in the order in Plaintiff's motion.

### I.

### DEFENDANTS' OPPOSITION TO THE MOTION TO COMPEL INTERROGATORY ANSWERS DO NOT JUSTIFY NOT ANSWERING

Plaintiff's motion to compel interrogatory answers concerned Nos. 25, 19 and 1-18.

**A.**   **Interrogatory No. 25.**

Interrogatory No. 25 requests Defendants to "State the amount of grant money from the U.S. Government that Defendant Purdue University received in 2016." (Byler Declaration Ex. A.) Defendants' receipt of federal funding is a requirement of Title IX, 20 U.S.C. § 1681; there can be no dispute about its relevance; providing the amount of federal funding in 2016 is not burdensome.

Defendants do not confess to avoiding answering Interrogatory No. 25 by mis-numbering it and refusing to answer. (*See* Pl. Mem. 8-10.) Instead, Defendants now claim that in the Amended

5

Complaint, Plaintiff cited to publicly available information for the 2016 federal funding amount and that Defendants is willing to stipulate that Purdue University receives every year tens of millions of dollars from the Federal Government (Dfs. Mem. 13-14); however, that was not what Defendants did in the interrogatory response – Defendants mis-numbered Interrogatory No. 25 as No. 26 and refused to answer (Byler Decl. Ex. B, pp. 3-4). Without Defendants confirming that the federal funding number stated in the Amended Complaint is correct, what appears in the Amended Complaint is only an allegation; Interrogatory No. 25 is to establish as fact the federal funding amount.

### B.  Interrogatory No. 19.

Interrogatory No. 19 requests Defendants to "Identify the person or persons in the Defendant Purdue University Administration that had the responsibility of communications with the Navy ROTC at Defendant Purdue University with respect to University sexual misconduct disciplinary cases involving a Navy ROTC" cadet. (Byler Declaration Ex. A.) As explained in Plaintiff's motion (Pl. Mem. 10-12), the requested information is clearly relevant, and identifying a person or person is not burdensome.

Defendants have refused to answer, claiming that the interrogatory is mis-drafted, that an interrogatory cannot impose a conclusion and that Defendants did not have an obligation to communicate with the Navy. (Dfs. Mem. 12-13.) Defendants protest too much. The Navy production and the deposition of the Navy personnel showed that the Navy had the university disciplinary investigation file including the university investigation report, reviewed it, and during the disenrollment proceeding, presented to Plaintiff the university investigation report, the university suspension letter, Plaintiff's appeal to the university, and the university's final decision. As noted by the Seventh Circuit, Plaintiff was required to authorize Purdue to disclose to the Navy

6

ROTC the sexual misconduct proceeding, *Doe v. Purdue*, 928 F.3d at 661-663, which the Navy production shows Plaintiff did (NTSC 0042), and the disenrollment of Plaintiff is stated in the Navy documents and established in the depositions of Navy personnel due to Purdue's suspension -- nothing else and without second guessing Purdue's decision. (Byler Declaration Ex. H, pp. 3-4; Byler Declaration ¶ 8 & Byler Ex. K.)

The Navy document production and paragraphs 38 and 86 of the Amended Complaint reflect that a person or person at Purdue had the responsibility to communicate with the Navy ROTC at Purdue with respect to sexual misconduct disciplinary cases involving students in Navy ROTC. Who was it? That information is what is called for in answering Interrogatory No. 19.

**C.**     **Proof of Gender Bias and Interrogatories Nos. 1-18.**

Interrogatories Nos. 1 through 18 seeks for the school years 2014-2015, 2015-2016 and 2016-2017, (i) the total number of Purdue University disciplinary cases for sexual misconduct as defined in Purdue University's Purdue University's *Anti-Harassment Policy*, (ii) how many of the complainants were female and how many were male, (iii) how many of the respondents were female and how many were male, (d) how many of the respondents were found responsible for sexual misconduct and of those respondents, how many of the female and how many were male, (v) how many of those cases were resolved informally and (vi) how many of these cases were dismissed. (Byler Declaration Ex. A.)  As Plaintiff counsel explained in his February 28, 2020 letter, "the objected to discovery is aimed at proving the liability part of a Title IX discrimination case and specifically that Purdue acted at least in part on the basis of sex with respect to John Doe." (Byler Decl. Ex. F, p. 2.) Gathering this information has been done in other Title IX cases and is not burdensome -- between Clery Act information on file and the disciplinary case files, the requested information can easily be tabulated. The Seventh Circuit has upheld Plaintiff's Title IX

claim (as well as Plaintiff's constitutional due process claim), and Plaintiff needs to be allowed discovery to prove the gender bias that is an element of Plaintiff's Title IX case. Notably, Defendants have offered to provide the 2015-2016 statistics (Byler Decl. Ex. I).

Defendants' recitation of the most serious accusation against Plaintiff is beside the point on this motion (Dfs. Mem. 7); Plaintiff has already denied under oath in this case the accusation that he digitally penetrated Jane Doe. The issue is whether one reason that Defendants erroneously disciplined Plaintiff was sex discrimination. Defendants do misstate and misconceive Plaintiff's theory (Dfs. Mem. 8); what the Amended Complaint alleges is that Purdue, knowing the gender make up of almost all female complainants and almost all male respondents, established a "victim-centered" process and did not attend to what is required for fairness to male respondents. University administrators' employment of processes that unfairly favor a female complainant over a male respondent provides the basis for an inference that the administrators were motivated by gender bias. *Doe v. Columbia*, 831 F.3d 46, 57-58 (2d Cir. 2016). If the system is victim-centered, it is not neutral and impartial but rather favors complainants and disfavors respondents; and the norm at universities is that females are the "victim" complainants and males are the "accused" respondents. Universities cannot rest on the notion they don't determine who are complainants, *King v. DePauw*, 2014 U.S. LEXIS 117075 (S.D. Ind. Aug. 22, 2014), because universities are responsible for the fairness and non-discriminatory operation of their procedures. The reality of female complainants/male respondents is something to have been expected from implementing the April 2011 Dear Colleague Letter and for which universities must take account in administering and complying with Title IX. Universities have acted aggressively in implementing measures to protect "survivors" and "victims" who almost always are female.

Defendants nevertheless assert irrelevance and burden of the requested statistics (Dfs. Mem. 9), but that objection is not well considered. The allegations of the Amended Complaint cited by Defendants are patterned from *Yusuf v. Vassar*, 35 F.3d 709, 715 (2d Cir. 1994). According to *Yusuf*, the plaintiff must establish (i) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (ii) *"particular circumstances suggesting gender bias was a motivating factor behind the erroneous findings"* (emphasis suppled); and *Yusuf* stated that one way to prove gender bias was to show that males are invariably found guilty. Defendants deny a problem based on what was a situation in 2017, but then claim irrelevance of the statistics upon which to consider this subject. Plaintiff asked for the statistics for the 2014-2015, 2015-2016 and 2016-2017 school years in order to account for the very kind of situation to which Defendants refer.

Defendants also cite cases that were cited and relied upon by Magistrate Cherry in this case and were cited to the Seventh Circuit; but the Seventh Circuit reversed and did not adopt them.

While *Doe v. Columbia College Chicago*, 299 F.Supp.3d 939 (N.D. Ill. 2017), dismissed a Title IX claim for lack of specific facts showing gender bias, that court recognized that a Title IX case could be validly pleaded given the kind of facts as are pleaded here, which is why the District Judge in *Doe v. Columbia College Chicago* was part of a unanimous panel in this case that was well aware of *Doe v. Columbia College Chicago*, 299 F.Supp.3d 939, and that upheld the pleading of a Title IX discrimination case here. General pro-victim bias alone may not be sufficient to make a case of gender bias, but such pro-victim bias and other specific facts showing anti-male bias are sufficient.

In *Doe v. University of St. Thomas*, 240 F.Supp.3d 984, 991 (D. Minn. 2017), the district court ruled (unexceptionally) that a member of a sexual assault task force who was additionally a

9

part time police officer was not a showing of bias, and the district court also commented that many of the allegations had nothing to do with gender. As for bias favoring complainants and against respondents not establishing gender bias, *St. Thomas* did not provide any reasoning, but rather just quoted *Sahm v. Miami University*, 110 F.Supp.3d 774, 778 (S.D. Ohio 2015), and *Sahm* likewise did not provide any reasoning either in a similar fact pattern.

In *Doe v. University of Colorado-Boulder*, 255 F.Supp.3d 1064, 1074-1075 (D. Colo. 2017), stated that pro-victim bias does not by itself equate to anti-male bias, but noted that in *Doe v. Columbia*, 831 F.3d 46, 57 (2d Cir. 2016), the point was ruled insufficient for granting a motion to dismiss because of the need to draw inferences in favor of the Complaint.

What that means is that the even under the cases Defendants cite, discovery is proper, particularly since the Second Circuit ruled in *Menaker v. Hofstra*, 935 F.3d 20 (2d Cir. 2019), that gender bias may be inferred from procedural deficiencies and pressure to react more aggressively to complaints against males.

**II.**

**DEFENDANTS' OPPOSITION TO THE MOTION TO COMPEL
DOCUMENT PRODUCTION DO NOT JUSTIFY NOT PRODUCING**

What Plaintiff's counsel has focused on have been: (A) the blanket specific objection to eleven Documents Requests; and (B) Defendants' general objection to producing electronically stored documents. The motion to compel did not include third party disciplinary files (Dfs. Mem. 10-12), which files were requested in the event discovery showed that they needed to be reviewed.

**A.**     **Specific Objections To Document Requests.**

Plaintiff counsel's February 28, 2020 letter identified eleven Document Requests to which Defendants objected, did not represent that production would be forthcoming notwithstanding the objections and did not provide a link in response.

1. **Document Request Nos. 7 and 8** are for "[a]ll documents constituting, concerning or referring to events were sponsored by the Center for Advocacy, Response and Education ('CARE') at Defendant Purdue University in the 2015-2016 school year" and "[a]ll documents constituting, concerning or referring to promotions by CARE on their Facebook page of events sponsored by CARE at Defendant Purdue University in the 2015-2016 school year." As stated in Plaintiff counsel's February 28, 2020 letter, "one CARE event in the 2015-2016 school year was noted in the Complaint and Amended Complaint and in the Seventh Circuit opinion." (Byler Decl. Ex. F, p. 7.)   Given the Seventh Circuit recognition that a CARE Facebook posting was evidence of gender bias and that CARE sponsored the April 2016 Sexual Assault Awareness Month when Jane Doe (after five months had passed) brought her complaint, 928 F.3d at 656, 669, the direct relevance of these CARE document requests cannot sensibly be denied, and it is not burdensome to produce university documents with respect to CARE events and promotions.

Yet, Defendants interposed broad objections to Document Requests Nos. 7 and 8 and refused to produce any responsive documents (Byler Decl. Ex. D); and Defendants' counsel's March 13, 2002 letter claimed that CARE events and CARE promotions are not relevant (Byler Decl. Ex. G, p. 4) and thereafter ignored the subject, notwithstanding Plaintiff counsel's letter pressing it (Byler Decl. Ex. H, pp. 11-12).  Defendants now mistakenly claim that only the CARE events in early April 2016 are relevant, ignoring the Seventh Circuit ruling that a CARE Facebook posting was evidence of gender bias, and also assert that Defendants did offer to produce a CARE calendar of events. (Dfs. Mem. 15.)   If Defendants made such an offer, Plaintiff's counsel missed it, but in any event, the offer was insufficient; given the direct relevance of the CARE documents requested, Defendants should produce the requested categories of CARE documents at least for the 2015-2016 school year.

11

2.    **Document Request Nos. 21 and 22** were for '[t]he Investigation Report concerning the allegations against Plaintiff John Doe sent to the Navy ROTC at Defendant Purdue University" and "[a]ll documents constituting, concerning or referring to the sending of the Investigation Report concerning the allegations against Plaintiff John Doe to the Navy ROTC at Defendant Purdue University." (Byler Decl. Ex. F, pp. 7-8.)  Defendants, notwithstanding their objections, produced the university investigation report, and the Navy production includes the university investigation report.  The issue now is whether Defendants failed to produce relevant university documents related to the investigation report. (Byler Decl. Ex. J, p. 5.)  Defendants basically say production of the university investigation report satisfied their obligation (Dfs. Mem. 15-16), but if there are other documents concerning or referring to the sending of the university investigation report to the Navy ROTC, they should be produced.

3.    **Document Request No. 30** seeks documents concerning Monica Soto Bloom's job responsibilities at Purdue, including at CARE.  As stated in Plaintiff counsel's February 28, 2020 letter, "Ms. Bloom is identified in the Complaint and Amended Complaint as the person who apparently wrote up the complaint and later the statement of Jane Doe; thus, the requested documents are clearly relevant." (Byler Decl. Ex. F, p. 8.)

Defendants asserted in correspondence and now in response to the motion that the job description of the CARE Director was produced and that any other job held by Ms. Bloom was not relevant. (Byler Decl. Ex. G, pp. 4-5; Dfs. Mem. 16.)  Documents concerning Ms. Bloom's jobs at Purdue, however, are relevant given what she did in this case (Byler Decl. Ex. H, p. 13). Plaintiff should be provided documents showing the base of experience Ms. Bloom has at Purdue.

4.    **Document Request No. 51** seeks documents concerning investigations conducted by the U.S. Department of Education's Office for Civil Rights at Purdue in the time period January

12

2014 to December 2017.  As noted in Plaintiff counsel's February 28, 2020 letter, "there is a whole section of the Complaint and Amended Complaint concerning the actions of the Department of Education and its influence on university sexual misconduct disciplinary proceedings relating to the element of gender bias in a Title IX suit."  (Byler Decl. Ex. F, p. 8.)  *see Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018) ("pressure" one factor in establishing gender bias).  Defendants' counsel's March 13, 2020 letter notes that the Seventh Circuit opinion recognized an OCR investigation was opened in 2016, 928 F.3d at 668, and thus argues that only the OCR investigation in 2016 is relevant and requests that Document Request No. 51 be limited to 2016 (Byler Decl. Ex. G, p. 5).  Defendant should produce the documents relating to the 2016 OCR investigation.

Defendants call incoherent Plaintiff's explanation that (i) Plaintiff's counsel included 2014 and 2015 because the university complaint in this case occurred during the 2015-2016 school year, and an OCR investigation in 2014 or 2015 could well have impacted the procedures followed in Plaintiff's case and (ii) Plaintiff's counsel included 2017 because that was during the Trump Administration, and policies in this subject have changed -- at least at the top, and that may have affected how Purdue operated during the 2016-2017 school year.  (Byler Decl. Ex. H, pp. 11-12.)  But this explanation is not incoherent, and the fact Defendants refer to an event in 2017 to deal with the issue in gender bias in this case does make any 2017 OCR investigation very relevant.

    **5.**    **Document Request No. 55** seeks documents concerning the changes in 2016 in Purdue's disciplinary procedures for sexual misconduct, including but not limited to allowing access of respondents to the Investigation Report.  As noted in Plaintiff counsel's February 28, 2020 letter, "[t]his subject is discussed in the Complaint and Amended Complaint, which was particularly pertinent because during the disciplinary case, John Doe was denied all access to the Investigation Report."  (Byler Decl. Ex. F, p. 8.)

13

Defendants' counsel's March 13, 2020 letter stated that Defendants gave a URL for the public disclosure as to the 2016 changes in Purdue's disciplinary procedures (Byler Decl. Ex. G, p. 5); however, Defendants' Response to Plaintiff's Document Request No. 55 just stated objections, no document production was indicated and no URL was provided. If there was an intended production, it should be done. Defendants' argument on this motion that the university's change of procedures in the year following Plaintiff's suspension does not negate its relevance. Rather, the change in university procedures underscores the unfairness of denying Plaintiff access to the investigation report during the disciplinary case.

6.      **Document Request No. 56** seeks documents concerning the opening of sexual assault center at Purdue in or around August 2016. As noted in Plaintiff counsel's February 28, 2020 letter, "[s]uch documents undoubtedly show Purdue maintaining a 'victim centric' disciplinary process, and with the statistics sought in Plaintiff's First Set of Interrogatories, provide an insight into Purdue's perceptions of treatment by gender." (Byler Decl. Ex. F, 02 28 20 Byler Letter, p. 8.) In the correspondence of counsel, Defendants ignored Document Request No. 56, and on this motion simply say that the sexual assault center was opened in August 2016 (Dfs. Mem. 17) – the same time as Plaintiff was being disenrolled from Navy ROTC based on the university suspension. Defendants should produce the requested documents about the opening of a sexual assault center at Purdue in August 2016.

B.      **General Objection As To Electronically Stored Information.**

Plaintiff included in the motion to compel Defendants' general objection in Defendants' Responses to Plaintiff's Document Requests to producing electronically stored information because in Defendants' Responses to Plaintiff's First Set of Document Requests and in the

14

correspondence of counsel, Defendants put up a fight about an obligation to producing electronically stored information, notwithstanding having produced e-mails.

Defendants note that they produced e-mails and allude to privacy concerns. (Dfs. Mem. 18.) The problem was and is, however, that Defendants' objection to producing electronically stored information was made as a general objection and not as a specific objection to specific Document Requests. Plaintiff was not in a position to identify how the response to specific requests may be affected. Consequently, Defendants' general objection to producing electronically stored information can be a way of not producing highly relevant documents even as to categories of documents as to which Defendants did some production. The kind of undue burden, undue cost and/or cumulativeness that Rule 26(b)(2) addresses is not presented -- far from it -- with respect to such electronically stored information as its internal email correspondence regarding Plaintiff's case. (Byler Decl. Ex. H, pp. 10-11.)

Defendants should produce responsive documents in the form of electronically stored information. A general objection is insufficient to justify not producing responsive documents.

## CONCLUSION

For the reasons stated above and in the moving Memorandum of Law, Plaintiff's motion to compel should be granted, and the Court should order such other relief as deemed just and proper.

May 26, 2020

Respectfully submitted,
NESENOFF & MILTENBERG LLP
/s/Philip A. Byler_____
Philip A. Byler (pro hac vice admission)
Andrew T. Miltenberg (pro hac vice admission)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
pbyler@nmllplaw.com
**Attorneys for Plaintiff John Doe**

15

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served upon the attorneys of record for each party to the above-entitled cause at the address shown below on May 26, 2020.

William P. Kealey
Tyler L. Jones
James F. Olds
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
　　　　tlj@stuartlaw.com
　　　　jfo@stuartlaw.com
*Attorneys for Defendants*

　　　　BY:　☐ U.S. Mail　　☐ Federal Express

　　　　　　　☐ Hand-Delivery　x　Other: Email


　　　　　　　　　　　　_____**Philip A. Byler, Esq.**_____
　　　　　　　　　　　　　　Philip A. Byler, Esq.