IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
|       Plaintiff, | )    **CIVIL ACTION** |
| v. | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR.**, in his official capacity as President of Purdue University, **ALYSA CHRISTMAS ROLLOCK**, in her official capacity at Purdue University, **KATHERINE SERMERSHEIM**, in her official capacity at Purdue University, | )    No. 2:17-cv-33-JPK |
|       Defendants. | ) |

**PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiff John Doe respectfully submits this Memorandum of Law in opposition to Defendants' motion for sanctions for a (non-existent) failure to comply with a discovery Order. Defendants' motion should be denied.

Defendants do not make a motion to compel because such a motion would reveal there is nothing to compel. Rather, without holding a conference with Plaintiff's counsel as expected by the Court, Defendants have moved for a sanctions Order striking Plaintiff's damages claims or prohibiting Plaintiff from proving damages. Defendants' sanctions motion is, sad to say, based on false accusations by Defendants and lacks supporting legal authority.

Plaintiff has in fact produced from his own files documents and answered interrogatories that support his economic losses and that support his non-economic losses, including numerous medical records and other documents. Plaintiff has in fact provided eight signed medical authorizations that were **not** a part of the discovery stipulation so ordered by the Court (ECF Doc.

[1]

Nos. 89-90). Plaintiff has in fact complied with the discovery Stipulation of the Parties as to which the Court granted the implied relief in the Stipulation of the Parties and did so by providing cell phone information, social media information in downloaded Instagram files and social media information in Plaintiff's Snapchat username. Defendants fault Plaintiff as to Snapchat, but Snapchat does not archive content files that can be downloaded at Plaintiff's end -- a problem that Plaintiff's counsel has attempted to explain to Defendants. Also, Plaintiff has in fact answered interrogatories about employment after the suspension and the loss of ROTC and Presidential scholarships, which pertains to damages, and Plaintiff and his parents can provide further information about damages at their depositions scheduled for August 18 and August 19.

Defendants' assertion that Plaintiff has failed to produce documents in support of his economic losses is not true. Defendants' assertion that Plaintiff has failed to produce supporting medical records for his non-economic damage claim is not true. Defendants' assertion that Plaintiff has reneged on his agreement is not true. Defendants' assertion that they have not received key documents is not true. Defendants' assertion that they have been facing a willful refusal to produce is not true.

What is true is that Defendants have been engaging in scorched earth discovery that seems really aimed at character assassination of Plaintiff, but Plaintiff has nevertheless been cooperating in discovery to move the case forward and has been avoiding getting into arguments over what has appeared to Plaintiff to be overly disputatious assertions by Defendants. Defendants' real problem is that they are facing not only Plaintiff's serious requests for injunctive relief but also Plaintiff's serious damage claims and wish to avoid those damage claims.

Accompanying this Memorandum of Law are Declarations by Plaintiff and Plaintiff's counsel. This Memorandum of Law will first correct the misimpressions, omissions and

inaccuracies as to the Defendants' account of discovery since May 2020 into damages. Among many things, Defendants wrongly confuse, on the one hand, the provision of signed medical authorizations which were **not** a subject of the Stipulation of the Parties so ordered by the Court (while eight such signed authorizations have in fact been provided) with, on the other hand, the provision of social media data per the stipulation of counsel so ordered by the Court (the Instagram files have been produced, the Snapchat username has been provided but there are not Snapchat content files that can be produced by Plaintiff). This Memorandum of Law will also explain why Defendants' legal argument is without merit and Defendants' motion should be denied. Among many things, the cases cited by Defendants are totally inapposite, like day and night.

## I.

### DEFENDANTS HAVE HAD AMPLE "DAMAGES DISCOVERY"; DEFENDANTS HAVE NOT BEEN DENIED DISCOVERY PER THE SO ORDERED STIPULATION OF THE PARTIES

**A.     Plaintiff's Damage Claims.**

Plaintiff's Second Amended Rule 26 Disclosure Statement provides an itemization and a computation of damages for each category of damages. (Dfs. Br. Ex. A.) As a review of Plaintiff's Second Amended Rule 26 Disclosure Statement reveals, the categories of economic losses are (i) loss of income, (ii) loss of ROTC and Presidential scholarships, (iii) loss of future income and (iv) attorney fees supported by the attorney fee shifting provisions applicable to Title IX and section 1983 actions, and the categories of non-economic losses are (i) reputational damages and (ii) emotional/psychological damages. (Dfs. Br. Ex. A.) Each category of economic losses and each category of non-economic losses has an explanation of how the category is calculated. (Dfs. Br. Ex. A.)

B.  **Plaintiff Produced Documents and Answered Interrogatories Supporting Economic Losses.**

As noted at the outset, Plaintiff answered interrogatories and produced from his own files documents that supported his economic losses. The loss of income category was calculated by subtracting the employment income of Plaintiff from first year income of a commissioned officer shown on the publicly available DOD military pay chart referred to Plaintiff's counsel,[1] and the category of income was supported by Plaintiff's interrogatory answers as to his employment after he was suspended from Purdue (Plaintiff's Motion Exhibit 1 is the interrogatory answers, see Answer 4) and produced documents with respect to that employment. The loss of ROTC and Presidential scholarships was supported by the Plaintiff's document production, the Navy document production and Plaintiff's answers to Defendants' First Set of Interrogatories (see Answer No. 6), and that loss cannot reasonably be disputed. The precise calculation of the loss of future income will be provided by an expert who will rely upon the produced documents. (Plaintiff Decl. ¶ 4; Byler Decl. ¶ 5 & Pl. Mot. Ex. 1.)

C.  **Plaintiff Produced Medical Records and Provided Eight Signed Medical Authorizations For His Non-Economic Losses.**

As also noted at the outset, Plaintiff produced documents in support of his non-economic losses that included medical records, has provided eight signed medical authorizations that were not required by the discovery stipulation so ordered by the Court (ECF Doc. Nos. 89-90) and has provided social media information in Instagram files and Snapchat username (Snapchat does not archive content files). Plaintiff's Motion Exhibit 2 is the signed eight authorizations. (Plaintiff

---

[1] The reference was made by U.S. Army Major John Byler (Purdue '05) and verified by Wounded Warrior U.S. Marine Captain James Byler (Purdue '08).

Decl. ¶ 5; Byler Decl. ¶ & Pl.5 Mot. Ex. 2.)  Plaintiff also answered an interrogatory relevant to non-economic losses.  (Pl. Mot. Ex. 1, Answer 8.)

Defendants nevertheless assert: "Plaintiff has failed to disclose his supporting medical records for his damage claim." (Ds. Br. 2.)  That is false, and Defendants' counsel must know it is false.  Attached as Plaintiff Motion Exhibits 3 and 4 are the e-mails of Plaintiff's counsel with Defendants' counsel, producing the medical records that were in Plaintiff's possession; the initial effort to transmit a pdf to Defendants' counsel failed because the medical records were so voluminous that the pdf was too large to be transmitted by e-mail (Pl. Mot. Exs. 3-4); and so Plaintiff's counsel arranged for a link that was sent to Defendants' counsel, who acknowledged receipt (Pl. Mot. Ex. 4).  Byler Decl. ¶ 6 & Pl.5 Mot. Exs. 3-4.)

As Plaintiff testifies, he produced from his own files documents relating to his damage claims, including medical records.  (Plaintiff Decl. ¶ 6.)  Indeed, as Plaintiff notes, counsel for Defendants could only draft the medical authorizations and send them to Plaintiff's counsel because Defendants' counsel was able to get the names of the medical providers from the documents produced by Plaintiff.  (Plaintiff Decl. ¶ 6.)  When Plaintiff's counsel asked Defendants' counsel why the medical authorizations given the volume of medical records produced by Plaintiff, the response was that there may be additional records that were not in Plaintiff's possession. (Byler Decl. ¶ 7.)   Further, as stated at the outset, Plaintiff has provided eight signed medical authorizations as requested by Defendants by e-mail.  (Plaintiff Decl. ¶ 6; Byler Decl. ¶ 7 & Ex. 2.)

D.   **Defendants Are Not Missing Key Documents.**

Defendants nevertheless assert: "despite initially agreeing to produce social media data and his medical records, Plaintiff has inexplicably reneged and left Defendants without key

documents." (Dfs. Br. 2.) Again, that is false. In addition to the above identified produced medical records and signed medical authorizations, Plaintiff has produced cell phone information, Instagram files and Plaintiff's Snapchat username (Snapchat does not archive content files) that was done pursuant to the discovery stipulation so ordered by the Court. (Plaintiff Decl. ¶ 7; Byler Decl. ¶ 9.) Also, Plaintiff already verified interrogatory responses and has testified here that he has not used social media to discuss *Doe v. Purdue*. (Plaintiff Decl. ¶ 8; Byler Decl. ¶ 9.)

**E.      Plaintiff Provided Signed Medical Authorizations.**

Defendants note that they sent to Plaintiff's counsel the medical authorizations by e-mail; the e-mails of Plaintiff's indicate he said he would send them on to Plaintiff (Dfs. Br. 3), which Plaintiff's counsel obviously did in an effort to cooperate in discovery, and Plaintiff's counsel worked with Plaintiff to provide signed authorizations. (Byler  Decl. ¶ 8.) On June 15, 2020, Plaintiff produced six signed medical authorizations notwithstanding the lack of formal request or demand and did so with the expectation of producing more. (Dfs. Br. 3-4; Plaintiff Decl. ¶ 8; Byler Decl. ¶ 8; Dfs. Br. Ex. E.) In fact, two more signed authorizations would be produced. (Byler Decl. ¶ 8 & Pl. Mot. Ex. 2.)

**F.      Signed Medical Authorizations Not Part Of Stipulation of the Parties.**

What Defendants do not make clear is that the signed medical authorizations were not part of the compromises resulting in the Stipulation of the Parties so ordered by the Court resolving the parties' respective motions to compel. (ECF Nos. 89-90.) While Defendants refer to its brief in support of its motion to compel (ECF No. 81) and that the statement of the case in that brief was off base, all that is presently important in that motion to compel brief is that the medical authorizations were not at issue. The Court can review for himself the Stipulation of the Parties (ECF No. 89) and see that the medical authorizations were not part of that Stipulation of the Parties

and thus not part of the Court so ordering it (ECF No. 90). The Court can also see that the Stipulation of the Parties covered a wide number of issues, as to which only one subparagraph concerning production of social media is now being raised (ECF No. 89, p. 3). Also, it should be noted that the Court Order (ECF No. 90) did not itself set any deadlines, only granted the relief implied in the Stipulation of the Parties. (Byler Decl. ¶ 10.)

G.  **Defendants Mistreat Medical Authorizations As Part of the So Ordered Stipulation of the Parties.**

Defendants nevertheless shift back to discussing the medical authorizations as if they were covered by the so ordered Stipulation of the Parties (Dfs. Br. 3-4), when those medical authorizations were not so covered. Defendants' Certification for the motion for sanctions (ECF No. 94) is misleading and insufficient for a number of reasons; one reason is that Defendants mix together Defendants' litigious correspondence about the authorizations and the social media and does not in the Certification discuss the content of the correspondence. To proceed in that manner results in mistreating the production of medical authorizations as part of the so ordered Stipulation of the Parties when those medical authorizations were not part of the so ordered Stipulation of the Parties. Most of all, Defendants' Certification misses the forest of Plaintiff's ample document production and discovery cooperation for the trees of Defendants' overly contentious e-mails. (Byler Decl. ¶ 11.)

H.  **Delay of Certain Depositions.**

Defendants fail to note that the parties had discussed doing certain depositions in person in late June, but because of what has appeared to be a resurgence of Covid-19 in the country, those depositions were delayed and have now been rescheduled for August 17-19 (Uthuppan, Plaintiff and Plaintiff's parents) and August 24-25 (Amberger, Rollock, Bloom and Sermerschein). (Byler Decl. ¶ 12.)

**I.      Plaintiff Produced Downloaded Instagram Files, Plaintiff's Cell
         Number and Provider, Snapchat Username and Medical Authorization.**

Defendants say that on July 3, 2020, Plaintiff did produce "a portion of the stipulated materials." (Dfs. Br. 5.) In fact, despite a computer crash afflicting Plaintiff's counsel, Plaintiff produced downloaded Instagram files, Plaintiff's cell number and cell provider, Plaintiff's Snapchat username and, separate from the Stipulation of the Parties, a seventh medical authorization. (Byler Decl. ¶ 13; Dfs. Br. Ex. K.)

**J.      Defendants' False Accusations and Threat of
         Seeking Sanctions; Plaintiff's Response.**

Defendants do not accurately state the communications leading up to the Defendants making their motion for sanctions. On July 7 and 8, 2020, Mr. Bill Kealey for Defendants threatened to bring a motion for sanctions if Plaintiff did not comply with the so ordered Stipulation of the Parties, but Defendants do not convey the response of Plaintiff's counsel. (Dfs. Br. 6 & Ex. L.) Plaintiff's counsel, assuming that Defendants believed there was a deficit as to Snapchat, responded:

> Bill:
>
> Do you know what Snapchat is? I didn't; now I have a better idea. It is not really a form of social media. It is more accurately described a private messaging system. Once a message is opened, Snapchat does not preserve it. All you could learn is the name or screen name of some of Plaintiff John Doe's current friends, and that is years removed from the events of this case. As Plaintiff John Doe has already verified under oath, he has never used Snapchat with respect to *Doe v. Purdue*. In my view, your scorched earth discovery efforts as to Plaintiff John Doe is misconceived.
>
> *Phil*

(Dfs. Br. Ex. L; Byler Decl. ¶ 14.)

**K.      Defendants' Continued Threat of Seeking Sanctions; Plaintiff's Response.**

Defendants' counsel then accused Plaintiff of not producing Instagram data (Dfs. Br. Ex. L), prompting Plaintiff's counsel to respond:

> Bill:
>
> I have reviewed your accusations in your July 10 e-mail, as I said I would, and those accusations are baseless. We are not ignoring the stipulation; that is false for you to say. If you move for sanctions, I will cross-move for sanctions. You are being unnecessarily litigious, and your constant threats to moving for sanctions is totally inconsistent with what the Court expects of counsel. Also, it may be a good time to discuss with the Court the overall gross over-reach of your scorched earth discovery and your slowness to agree to deposition dates.
>
> What in the world are you talking about as to an Instagram password? We produced to your firm Plaintiff's Instagram files. Plaintiff directly e-mailed to your colleague Pamela approving access and requesting that if she had any problems, to let us know. Neither Plaintiff nor I have heard from anyone at your firm that there were any difficulties in downloading the produced Instagram information. Accordingly, I suggest you re-check your information.
>
> I have explained to you before that I did not understand Snapchat. All that has happened is that I agreed that we would provide Snapchat information. In the process of providing that disclosure, I learned that Snapchat does not archive messages and that it is not really social media but a private messenger medium. Plaintiff can and, if need be, state under oath that there are no archived Snapchat messages.
>
> For all your huffing and puffing about social media, which here are Instagram and Snapchat, Plaintiff's social media does not, in Plaintiff's view, yield any relevant information to this case. But we have been cooperating in discovery so that we can move the case forward.
>
> As for your assertion that there are no witnesses supporting reputational and emotional damages, that is simply not true. Your notion that social media accounts is a primary place to look for witnesses supporting reputational and emotional damages is, in my view, totally misconceived and is not true in Plaintiff's case. In any event, what social media that my client Alex has, has been produced to you.
>
> Plaintiff has provided [seven] authorizations. You complain about two authorizations, and I am working with plaintiff to resolve privilege and relevance issues that are connected to them.

> You do not have a basis whatsoever for seeking a preclusion order. Plaintiff has been cooperating in discovery and has not refused to produce anything, even as to what Plaintiff considers to be excessive and irrelevant. I think you need to take Plaintiff's deposition before even thinking about what would be a meritless motion.
>
> *Phil*

(Dfs. Br. Ex. L; Byler Decl. ¶ 15.)

### L.   Defendants' Motion; Plaintiff Produces 11th Medical Authorization.

According to Defendants, Mr. Tyler Jones for Defendants sent a "final reminder e-mail" about Snapchat files, insisting that Snapchat data can be downloaded, and two medical authorizations, and Plaintiff's counsel replied he would get back to Defendants' counsel. (Dfs. Br. 6.) Plaintiff's counsel was in fact discussing with Plaintiff and checking whether contrary to Plaintiff counsel's understanding, content files could be downloaded from Snapchat using a link provided by Defendants' counsel; the understanding that Plaintiff's counsel continued to have is that message content is in fact not available at Plaintiff. However, Defendants three days after sending a "final reminder e-mail" and without seeking a meet and confer, Defendants moved for sanctions. Meanwhile, Plaintiff produced an eighth medical authorization. (Byler Decl. ¶ 16.)

### M.   Nothing To Compel; Snapchat.

As discussed above, with respect to Plaintiff's production per the so ordered Stipulation of the Parties, Plaintiff has produced cell phone information, downloaded Instagram files and the Snapchat username; all that Defendants try to complain about is Snapchat, which does not preserve user content and does not retain user identity past 30 days. As for the medical authorizations outside the so ordered Stipulation of the Parties, Plaintiff has produced eight of them; the only one informally requested not provided has privilege issues. (Byler Decl. ¶ 17.)

Plaintiff's Declaration discusses his efforts to obtain Snapchat files, and it is a discussion worth quoting here:

10. In the course of dealing with Defendants' request for Snapchat content, I explained to my counsel what was and wasn't available from Snapchat. When Defendants made their sanctions motion, I was in fact discussing further with my counsel and checking whether contrary to my understanding, using a link provided by Defendants' counsel and doing my own internet research, content files could be downloaded from Snapchat. The link provided by Defendants' counsel makes clear the kind of information that is obtained, which means Defendants know that content is not what is available at my end.

11. Snapchat tends to be grouped with Instagram and Facebook when labeled as a social media platform, but its features favor direct messaging over general sharing. Snapchat's two primary features are general sharing (putting a video or picture on one's "story"), and direct sharing (sending a video or picture to someone directly). You can also directly message friends. Unless you are a celebrity or a highly influential entity, you can only share content between people with whom you have manually chosen to be friends. Content shared to your story disappears after 24 hours, and content sent to friends directly disappears after they have seen it.

12. The data I downloaded from Snapchat's servers regarding my profile contains no images, no videos and no chats contained within it. Hence, that fact confirmed my view that I did not have content files to download per the Stipulation of the Parties.

13. The files with any kind of information are labeled "account," "chat_history," "snap_history," "story_history," "friends," and "user_profile." All other files in the folder are blank.

14. The "account" file contains my account creation date, username, real name, and device information regarding devices I have accessed my Snapchat account, but no content.

15. "Chat_history" contains metadata (not content) regarding all chats sent and received between me and friends dating back 30 days from the time data download request was issued to Snapchat's servers. An example of what this looks like is "{"Received Chat History": [{"From": "USER", "Media Type": "TEXT", "Created": "2020-06-14 01:19:30 UTC"}. The entire metadata file consists of these entries stacked on one another. None of these July 2020 entries have any relation much less information relevant to *Doe v. Purdue*.

16. "Snap_history" is very similar to "chat_history", it is entirely comprised of metadata (not content) that only spans back 30 days from time of account data request. An example of a piece of metadata in this file is as follows: {"From": "USER", "Media Type": "VIDEO", "Created": "2020-07-12 20:04:52 UTC"}. Again, none of these July 2020 entries have any relation much less information relevant to *Doe v. Purdue*.

[11]

    17. "Story_history" is another metadata file spanning back 30 days from time of account data request that shows the following: Stories of other people, both friends and public accounts, that I have viewed, and stories of my own that others have viewed. An example of a piece of metadata from the file is as follows: {"View": "USER", "Media Type": "STORY", "View Date": "2020-07-22 12:39:55 UTC"}. Information regarding Snapchat stories that I have viewed in July 2020 are completely unrelated and irrelevant to this court case.

    18. "Friends" file contains users I have been friends, users I am currently friends with, users I have blocked, and incoming and outgoing friend requests. An example of how this is formatted is as follows: {"Username": "_____", "Display Name": "____"}. Nothing further is contained within the file. What is to stop Defendants from present and past friends?  I find it disconcerting that Defendants care so much in getting their hands on this sort of information that is irrelevant to this court case.

    19. "User_profile" is a file that summarizes my activity for the last 30 day period -- snaps sent and received in July 2020, chats sent and received in July 2020, public accounts I have viewed in July 2020, ads I have seen in July 2020, and applications I have installed on my phone in July 2020.  None of these entries for July 2020 provide content and none have any relation much less information relevant to *Doe v. Purdue*.

    20. I must ask: why are Defendants so keen on possessing what seems to be irrelevant information and what would they plan on doing with it?

(Plaintiff Decl. ¶¶ 10-20.)

## II.

### DEFENDANTS' MOTION FOR SANCTIONS TO STRIKE PLAINTIFF'S DAMAGES CLAIM OR PRECLUDE PLAINTIFF FROM PROVING DAMAGES IS WITHOUT MERIT AND SHOULD BE DENIED

Defendants' legal argument is without merit, being based on three false premises.

**A.** **<u>No Failure To Disclose.</u>**

The first false premise for Defendants' legal argument is the false statement that "Plaintiff has failed to disclose the 'documents or other evidentiary material . . . on which each computation [of each category of damages] is based." (Dfs. Br. 6.)  As noted above and as a review of Plaintiff's Rule 26 Disclosure Statement shows (Dfs. Br. Ex. A), a computation of damages for each category

of damages is provided. The two cases cited by Defendants in this connection are thus inapposite. In *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006), the plaintiff in that case did not list lost profits in its Rule 26 Disclosure Statement at all and therefore could not seek lost profits as an item of damages at trial. In *Gumwood HP Shopping Partners LP v. Simon Prop. Group*, 2017 WL 3016385 (N.D. Ind July 17, 2017), the plaintiff in that case sought leave on the eve of trial to add a new damages theory, which was not allowed on the authority of *Design Strategy, Inc. v. Davis*.

Further, as discussed above, there has been no failure to produce documents supporting Plaintiff's damages. Defendants assert but do not substantiate any failure of production as to the economic losses and, as discussed above, Plaintiff has produced documents as to economic losses. Defendants focus on supposed non-production as to non-economic damages, but the requested discovery has been provided.

To reiterate once more, Plaintiff has in fact produced from his own files many documents that support his economic losses and that support his non-economic losses including numerous medical records, has provided eight medical authorizations that were **not** a part of the discovery stipulation so ordered by the Court (ECF Doc. Nos. 89-90) and has provided cell phone information and social media information in downloaded Instagram files as well as Plaintiff's Snapchat username that were part of the discovery stipulation of the parties so ordered by the Court; Snapchat does not archive content files that can be downloaded. Also, Plaintiff has provided interrogatory answers that relate to damages, and Plaintiff and his parents can provide further information about damages at their depositions scheduled for August 18 and August 19.

**B.     No Entitlement To Compel Order.**

The second false premise for Defendants' legal argument is the pretense that Defendants would be entitled to an order to compel against Plaintiff for all the documentation for his damages

calculation. (Dfs. Br. 7.) As discussed above, there is no basis for an order to compel as there is nothing to be compelled. With respect to Plaintiff's production per the so ordered Stipulation of the Parties, Plaintiff has produced cell phone information, downloaded Instagram files and the Snapchat username; all that Defendants try to complain about is Snapchat, which does not preserve user content and does not retain user identity past 30 days. Plaintiff has provided an explanation of what non-content metadata and other information is available and that non-content metadata and other information are not content files called for by the Stipulation of the Parties and seems not to be relevant. (Plaintiff Decl. ¶¶ 10-20.) As for the medical authorizations outside the so ordered Stipulation of the Parties, Plaintiff has produced eight of them; the only one informally requested not provided has privilege issues. Plaintiff can offer to provide a deposition of the treating physician.

As will be discussed below, the two cases cited by Defendants for skipping a motion to compel, *Mojapelo v. National R.R. Passenger Co.*, 748 Fed. 68 (7th Cir. 2019), and *Tamari v. Bache & Co, (Lebanon) S.A.L.*, 729 F.2d 469 (7th Cir. 1984), are totally inapposite, involving a long period of time with a series of basic failures of discovery that are certainly not present here.

C. **No Willful Failure To Comply With Discovery.**

The third false premise for Defendants' legal argument is Defendants' accusation that Plaintiff has willfully failed to comply with discovery. As discussed above, there was no such willfulness not to do discovery. Far to the contrary, Plaintiff has complied with his discovery obligations and then some. The cases cited by Defendants (Dfs. Br. 7-8) are totally inapposite to this case, like day and night. Defendants quote language in cases without regard to the concrete facts before the courts that were far, far different and nothing remotely like this case.

1.	*Mojapelo v. National R.R. Passenger Co.*, 748 Fed. 68 (7th Cir. 2019), involved a plaintiff who did not provide mandatory disclosures, did not answer interrogatories, did not produce documents, did not appear at four status conferences before the district court or Magistrate Judge, and did not appear for his noticed deposition.  The Seventh Circuit affirmed the district court's Federal Rule of Civil Procedure 41 order of dismissal, noting:

> Rule 37 allows a court to sanction a party for discovery noncompliance caused by "willfulness, bad faith or fault," while Rule 41(b) authorizes sanctions, upon a party's motion, based on a "clear record of delay or contumacious conduct*."* *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 190 (7th Cir. 2011) (internal quotations omitted). Pointing to Mojapelo's history of missing court dates, discovery deadlines, and his failure to attend his deposition, the [district] court concluded that Mojapelo was at "fault" for his missteps and that there was a "clear record of delay or contumacious conduct."

748 Fed. App'x at 70.  It was in this context that the Seventh Circuit referred to willful discovery non-compliance.  Nothing of the sort occurred in this case.

2.	*Tamari v. Bache & Co, (Lebanon) S.A.L.*, 729 F.2d 469 (7th Cir. 1984), was another inapposite case.  There, an action was commenced in 1975, and after numerous delays, in September 16, 1982, the Court personally ordered a date of October 27, 1982, six week in advance and the date of the next status conference, for completion of plaintiff's depositions and the Court personally set that date on pain of dismissal if it was not met; however, the date was not met and the case was then dismissed by the Court, no depositions of plaintiffs having been done.  It was in this context that the Seventh Circuit stated that "[a]lthough a motion to compel usually precedes the imposition of Rule 37(b) sanctions, a formal motion is not always necessary."  729 F.2d at 472.  The Seventh Circuit emphasized in that case, however, that the district court himself had given the advance notice of the completion date numerous times, and the point remains that "a motion to compel usually precedes the imposition of Rule 37(b) sanctions."

3.  *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 190 (7th Cir. 2011), involved a plaintiff by the name of Brown who failed five times to meet discovery deadlines for document production, interrogatories and requests for admission over a period of eight months, and during that time period, the defendant moved to compel, the district court granted in large part that motion to compel and the Magistrate Judge issued a report identifying sanctions in the event of continued default by plaintiffs, which in fact then occurred a fifth time. It was in that context that the Seventh Circuit wrote of plaintiff's "willful delay and avoidance" and of "unreasonable behavior." Nothing of the sort happened in this case.

4.  In *Ladien v. Astrachen*, 128 F.3d 1051 (7th Cir. 1997), the plaintiff, a Dr. Ladien, was guilty of various acts of misconduct and discovery failures for over a year, eventually causing his attorney to seek to be relieved as counsel, and the district court, fed up with Dr. Ladien's conduct, dismissed the case. The Seventh Circuit in affirming observed:

> Dr. Ladien has urged this Court to reverse the dismissal of his lawsuit, arguing that the sanction was out of proportion. We might have agreed with Dr. Ladien if this were a situation where the district court had dismissed his case for a single act of violative conduct. However, as the record reveals, Dr. Ladien, on many occasions, abused the discovery process and violated the court's clearly articulated orders. Dr. Ladien's misconduct includes, but is not limited to, the following: communicating directly with the court on two separate occasions—the second in direct violation of the court's order that he should not do so; failing to timely produce discoverable documents (*i.e.*, the grievance hearing tapes); inaccurately verifying that his document production was complete and thereafter using undisclosed documents as exhibits in a deposition; improperly threatening to bring criminal charges against defendants if his settlement demands were not met; and attempting to directly contact individual defendants in violation of the court's order. Cumulatively these acts of misconduct warranted the dismissal of his case.

128 F.3d at 1057. Again, nothing of the sort happened in this case.

5.  In *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000), the Seventh Circuit *reversed*, as an abuse of discretion, a district court sanctions order based on a failure to file timely evidence

[16]

lists for trial, which the Seventh Circuit ruled was not "willfulness, bad faith or fault" and was "not the kind of 'damning dilatory conduct normally associated with the sanction of dismissal.'"

## CONCLUSION

For the reasons stated above, Defendants' motion for sanction should be denied, and the Court should order such further and other relief as the Court deems just and proper.  Plaintiff has considered a cross-motion due to an unwarranted resort by Defendants to a sanctions motion, but what it best for the forward progress of the litigation is that Defendants' motion be denied and counsel be admonished to work out discovery issues without unnecessary resort to motion practice.

**Dated:  July 31, 2020**

**Respectfully submitted,**
**NESENOFF & MILTENBERG, LLP**
**By: /s/** *Philip A. Byler*
**Philip A. Byler, Esq.**
**Andrew T. Miltenberg, Esq.**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com
*Attorneys for Plaintiff John Doe*