```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF INDIANA
 2                      HAMMOND DIVISION

 3                 CASE NO. 2:17-cv-33-JPK

 4    JOHN DOE,                            )
                                           )
 5          Plaintiff,                     )
                                           )
 6          -vs-                           )
                                           )
 7    PURDUE UNIVERSITY, PURDUE            )
      UNIVERSITY BOARD OF TRUSTEES,        )
 8    MITCHELL ELIAS DANIELS, JR.,         )
      in his official capacity as          )
 9    President of Purdue                  )
      University, ALYSA CHRISTMAS          )
10    ROLLOCK, in her official             )
      capacity at Purdue University,       )
11    KATHERINE SERMERSHEIM, in her        )
      official capacity at Purdue          )
12    University,                          )
                                           )
13          Defendants.

14

15                  DEPOSITION OF ███████ ████
                           EXCERPT
16

17

18       The video deposition upon oral examination of
      ███████ ████, a witness produced and sworn before me,
19    Clarice H. Howard, CCR-Ky, Notary Public in and for the
      County of Boone, State of Indiana, taken on behalf of
20    the Defendants, at the offices of Stuart & Branigin,
      LLP, 300 Main Street, Suite 900, Lafayette, Indiana, on
21    Thursday, August 20, 2020, scheduled to commence at
      9:00 a.m., pursuant to the Federal Rules of Civil
22    Procedure with written notice as to time and place
      thereof.
23

24

25
```

EXHIBIT A

```
 1                        A P P E A R A N C E S
 2
 3           FOR THE PLAINTIFF:
 4                Philip A. Byler
                  NESENOFF & MILTENBERG LLP
 5                363 Seventh Avenue
                  Fifth Floor
 6                New York, New York 10001
                  1.212.736.4500
 7                pbyler@nmllplaw.com
 8
             FOR THE DEFENDANTS:
 9
                  William P. Kealey
10                Tyler L. Jones
                  STUART & BRANIGIN, LLP
11                300 Main Street
                  Suite 900.
12                Lafayette, Indiana 47902-1010
                  1.765.423.1561
13                wpk@stuartlaw.com
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                            ███████ ████,
 2   having been duly sworn to tell the truth, the whole
 3   truth, and nothing but the truth relating to said
 4   matter, was examined and testified as follows:
 5
 6   DIRECT EXAMINATION
 7        QUESTIONS BY MR. KEALEY:
 8   Q    ███ ████, Deposition Exhibit 17 is a set of
 9        interrogatories served by defense and responded to
10        by you in this case.  I'd ask you to turn to
11        Interrogatory No. 8 and your response to
12        Interrogatory No. 8?
13   A    Page 2?
14   Q    Interrogatory No. 8 and your response to
15        Interrogatory No. 8.
16   A    Page 7?
17   Q    Yes.  Please read the question that was posed
18        beginning with state whether since you reached age
19        16, and confirm for the record that the bold text
20        labeled response is your response to that question.
21   A    That is my response.
22   Q    Why did you start in early 2018 receiving
23        counseling for your psychological and social
24        wellbeing with Noel Perry of Family Concern
25        Counseling?
```

| | | |
|---|---|---|
| 1 | A | My parents heavily encouraged me to do so because I |
| 2 | | was suffering from severe anxiety and depression, |
| 3 | | and I wasn't doing much with my life at the time. |
| 4 | | And I was struggling to bring myself to do much |
| 5 | | with my life at the time. |
| 6 | | And they pushed me to at least give it a try, |
| 7 | | and it seemed to helped, so I continued going. |
| 8 | Q | And when was the last time you saw Mr. Perry at |
| 9 | | Family Concern Counseling? |
| 10 | A | I think several months ago.  I don't have a date on |
| 11 | | the month. |
| 12 | Q | Sometime earlier in 2020? |
| 13 | A | Yes.  We stopped -- we stopped meeting regularly |
| 14 | | at the end of last year. |
| 15 | Q | So you went to Mr. Perry for sometime close to two |
| 16 | | years? |
| 17 | A | Yes. |
| 18 | Q | How often would you meet? |
| 19 | A | It varied between once every week to once every |
| 20 | | several weeks.  It became more infrequent as time |
| 21 | | went on, if I recall correctly. |
| 22 | Q | Have you signed a medical authorization for the |
| 23 | | defense to access your records from Mr. Perry and |
| 24 | | Family Concern Counseling? |
| 25 | A | I have not. |

```
 1  Q    Why not?
 2  A    Because I don't believe that it's something that I
 3       should produce.
 4  Q    How did you reach that conclusion?
 5  A    Because I went through each of the authorizations
 6       and wanted to know which, if any, of the medical
 7       providers that you asked for authorizations from
 8       had any material that I'd consider very private,
 9       confidential or something that I wanted to keep to
10       myself.  And the only one that met that condition
11       was the Family Concern Counseling.
12            And I discussed it with my family and I
13       discussed it with my lawyers, and we decided that
14       we would prefer to keep that sealed.
15  Q    You're alleging in this case that the anxiety and
16       depression for which you have been seeing Mr. Perry
17       is Purdue's fault, right?
18  A    Yes.
19  Q    And you're asking the court to award you money for
20       that anxiety and depression?
21  A    Yes, which is why I provided all the other
22       authorizations and all the medical documents that
23       lead to you asking for authorizations.
24  Q    And so part of the records that would show No. 1,
25       whether you had anxiety and depression, and No. 2,
```

```
 1         the circumstances of it would be these counseling
 2         records, right?
 3    A    I believe the other records are more than adequate.
 4    Q    That wasn't my question.  These records talk about
 5         the same things for which you're asking the court
 6         to award you money in this case, don't they?
 7              MR. BYLER:  Objection to form.
 8    A    They cover a lot of things.
 9    Q    Including things that you don't want the court and
10         defendants to know about?
11    A    Things that I want to keep to myself because if
12         you're in a counseling setting, the whole idea
13         behind counseling is that you have confidentiality
14         between you and your counselor.  And in that
15         setting, you're allowed to be more vulnerable with
16         things you say and the feelings that you express.
17            And that is how I was able to improve my
18         mental wellbeing.  And to crack it open, to me
19         would be a large violation of that confidentiality
20         and it would, I think, reverse some of the progress
21         that I made through the counseling for treating my
22         anxiety and depression.
23    Q    What are you hiding?
24    A    In regards to the case, nothing.  But I have plenty
25         of things in my personal life that I'd like to keep
```

```
 1         between me and my counselor.
 2   Q    Are you alleging that you are withholding your
 3         medical authorization for Family Concern Counseling
 4         on the advice of your lawyer?
 5              MR. BYLER:  Objection, form.
 6   A    I'm withholding that on the advice of my family and
 7         my counselor.
 8   Q    What about your lawyer?
 9   A    My lawyer and I went around with it for a little
10         while.
11   Q    You're not asserting that advice of counsel
12         justifies you in withholding your medical
13         authorization?
14              MR. BYLER:  Excuse me, objection, instruct not
15         to answer any privileged discussion between the
16         witness and his lawyer.
17   Q    You may answer?
18              MR. BYLER:  Not any privileged information in
19         terms of communications between attorney and
20         client.
21              MR. KEALEY:  All I asked him, Counselor, is to
22         confirm that he's not asserting advice of counsel
23         as the basis for withholding his medical
24         authorization.
25              MR. BYLER:  He produced eight --
```

```
 1          MR. KEALEY:  You may let him answer the
 2      question.
 3          MR. BYLER:  Yes, he has been very responsive,
 4      I'm sorry.
 5          MR. KEALEY:  We will stay with this until we
 6      get the answer.
 7          MR. BYLER:  I would instruct him not to
 8      provide any privileged communications between the
 9      attorney and client.  And your question, as I heard
10      it, fairly does invade that attorney/client
11      privilege.
12          MR. KEALEY:  Asking this witness whether he's
13      asserting advice of counsel is not an invasion of
14      the attorney/client privilege.  He can tell me no
15      or yes, and that's all I'm asking for.
16          If you do not permit your client to answer
17      this question, I will call the magistrate.  Are you
18      instructing your client not to answer the question?
19          MR. BYLER:  State the question specifically or
20      have the record read, please.
21                  (The last question was read.)
22          MR. BYLER:  I think you are invading the
23      attorney/client privilege with that question
24      because an answer will presumably disclose what the
25      communication was.  But I will allow the witness to
```

```
 1          answer in terms of what -- I'm trying to balance
 2          here.  Go ahead and answer the question.
 3     A    Would you repeat it one more time, please?
 4     Q    Are you asserting that advice of your lawyer
 5          entitles you to refuse to execute a medical
 6          authorization for Family Concern Counseling?
 7               MR. BYLER:  That's a different question and
 8          that is invading attorney/client privilege.  Why
 9          don't you the read record in terms of the question
10          I heard and decided to let him to answer that
11          question?
12               MR. KEALEY:  I'm going to voir dire you.
13               MR. BYLER:  What?
14               MR. KEALEY:  I'm going to voir dire you.  Are
15          you asserting in this case --
16               MR. BYLER:  No, I'm not going to do a voir
17          dire here, sir.  You are asking questions --
18               MR. BYLER:  You need to let me finish.  Are
19          you asserting in this case that your client is
20          refusing --
21               MR. BYLER:  You are directing your answers --
22          or your questions to the witness.  And what I have
23          objected to are questions that sound like they're
24          invading the attorney/client privilege.
25               MR. KEALEY:  And I'm entitled to voir dire
```

```
 1      that.  If you assert --
 2          MR. BYLER:  No, no, you're not entitled to
 3      voir dire that.
 4          MR. KEALEY:  Yes.  If you tell a witness not
 5      to answer a question, I'm entitled to voir dire you
 6      on that instruction.  You know that and I know
 7      that.
 8          MR. BYLER:  Excuse me, I allowed him to go
 9      ahead and answer a question which was reread.  You
10      then reformulated it.
11          MR. KEALEY:  He asked me to repeat it.
12          MR. BYLER:  Well, no, but you didn't repeat
13      it.
14          MR. KEALEY:  That's your view.
15          THE WITNESS:  You did not repeat the question?
16          MR. KEALEY:  Tell me what question you'd like
17      to answer, sir.
18          THE WITNESS:  I'd like to hear the first
19      question repeated exactly as it was said the first
20      time.
21          MR. KEALEY:  Please go back ten minutes and
22      read the last ten minutes of dialogue.
23                  (The testimony was read.)
24          MR. BYLER:  That's the question I said you
25      could answer.
```

| | | |
|---|---|---|
| 1 | A | For an authorization request, yes. |
| 2 | Q | You are asserting that advice of counsel justifies |
| 3 | | your refusal to execute the authorization? |
| 4 | A | As I understood, there is no court order for the |
| 5 | | authorization. |
| 6 | Q | I'm not asking about a court order.  I'm asking |
| 7 | | about advice of your lawyer. |
| 8 | | MR. BYLER:  Well, that's the problem, you're |
| 9 | | asking for my advice and that's attorney/client |
| 10 | | privilege and that's why I interceded.  Now, I've |
| 11 | | allowed him to ask -- answer the question you |
| 12 | | posed, and you're trying to twist into getting |
| 13 | | attorney/client privileged information, which quite |
| 14 | | frankly is beyond the pale.  Why don't you ask more |
| 15 | | questions of this witness? |
| 16 | BY MR. KEALEY: | |
| 17 | Q | Are you asserting in this case that any legal rule |
| 18 | | entitles you to refuse to execute a medical |
| 19 | | authorization for Family Concern Counseling? |
| 20 | | MR. BYLER:  Objection to form. |
| 21 | A | Yes. |
| 22 | Q | What is the legal rule? |
| 23 | A | The legal rule, I don't know. |
| 24 | Q | Then why did you answer yes? |
| 25 | A | Because I trust my lawyer's judgment. |

```
 1  Q    So your refusal to execute a medical authorization
 2       for Family Concern Counseling is based on advice of
 3       counsel?
 4            MR. BYLER:  Objection, misstates the
 5       testimony.  He gave full testimony about this
 6       before, asked and answered.
 7  A    Could you rephrase the question, please?
 8  Q    No, I cannot.  That's the question.
 9  A    Can you repeat the question?
10  Q    I'll have it read back.
11              (The last question was read.)
12  A    Counsel referring to him?
13  Q    Mr. Byler, yes.
14  A    It's not based solely on his counsel.
15  Q    On whose counsel is the advice of counsel?
16            MR. BYLER:  Is there a question pending?
17       Objection to form, then.
18  A    I spoke with Phil.  I spoke with my parents.  They
19       don't have legal experience.  And then I spoke with
20       my aunt as well.
21  Q    Any other advice of counsel besides Mr. Byler
22       and --
23  A    Cunningham.
24  Q    -- Ms. Cunningham?
25  A    Not to my recollection.
```

1  Q   Have you discussed your pornography addiction with
2      Counselor Perry?
3  A   It's not something I'm going to answer.
4  Q   On what basis are you refusing to answer?
5  A   Confidentiality between my counselor and I.
6  Q   You have discussed your pornography addiction with
7      counselors at Taylor University, correct?
8          MR. BYLER:  Objection to the form.
9  A   I don't recall discussing with counselors there.
10 Q   Have you looked at the Taylor University production
11     in this case?
12 A   I have.
13 Q   So you've seen in those records that you did
14     discuss that topic with your counselors there?
15 A   What were their names?
16 Q   I can't quote you names.  I asked you whether you
17     saw in the records that you discussed with your
18     counselor at Taylor University --
19 A   Pornography was mentioned in several documents.  I
20     don't recall those documents being specifically
21     related to counseling.
22 Q   Pornography addiction was mentioned, correct?
23         MR. BYLER:  Objection, form.
24 A   It was.
25 Q   Referring to your pornography addiction.

```
 1  A   Referring to what they called pornography
 2      addiction.  I never referred it to that -- I never
 3      referred to it as that when I discussed with them.
 4  Q   Have you called it something else when you
 5      discussed with Mr. Perry?
 6  A   I won't answer questions about me and Mr. Perry.
 7  Q   Have you discussed with Mr. Perry your LSD use?
 8  A   I won't answer questions regarding me and
 9      Mr. Perry.
10  Q   Who have you discussed your LSD use with?
11  A   I discussed it with my hall director at school,
12      several friends.  It was not LSD; it was an analog
13      to LSD.  I discussed it with only a few people.
14          And I discussed it openly with the people at
15      Purdue because I had mentioned it to a friend and
16      then he reported it -- or at Taylor, sorry.  I had
17      mentioned it to a friend and then he reported it,
18      and then I talked to them about it.
19  Q   That's a hallucinogenic you've been taking?
20  A   Not currently.  It's an analog of a hallucinogenic,
21      and I took it in very small amounts because I had
22      read that it could help with focus and it was very
23      safe to use.  So I used it as directed and it did
24      not help with focus, as I had hoped, but it did
25      help with me lifting out of a severe depression I
```

```
 1       had while I was at Taylor University.  And it
 2       helped with breaking of bad habits, one of which I
 3       said was porn.
 4   Q   Used as directed by whom?
 5   A   The internet.
 6   Q   Not any doctor?
 7   A   No.
 8   Q   Why do you laugh?
 9   A   Because it's not something that a doctor is going
10       to prescribe.
11   Q   It's not something that you can get from a doctor?
12   A   Not to my knowledge.
13   Q   It's not something that's legal to acquire by a
14       prescription?
15   A   No, no.  The answer is no.
16   Q   When I asked you at the beginning of the deposition
17       about drugs that you have taken, you mentioned
18       Adderall.  You did not mention an LSD analog.  What
19       other drugs have you taken?
20   A   I've taken caffeine.  I've taken Adderall and LSD.
21       And then I've taken supplements, but no other
22       drugs.
23   Q   What supplements?
24   A   Currently I take ALCAR ALA which helps with
25       mitochondrial support.  And I've taken CBD oil to
```

```
 1    help with my anxiety and inflammation.  And I've
 2    taken some herbal supplements like Ashwagandha,
 3    which is an adaptogen that helps with regulating
 4    stress levels, helps with improving testosterone,
 5    and then I've tried preformulated supplements on
 6    market.
 7        MR. KEALEY:  Before I move on from Family
 8    Concern Counseling and Dr. Perry, I'm noting for
 9    the record that we will be holding this deposition
10    open pending the court's decision on a motion for
11    discovery sanction on that topic and holding it
12    open for possible motion to compel based on refusal
13    to answer as to that topic.
14
15
16
17
18
19
20
21
22
23
24
25
```