IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.**, in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, **KATHERINE** | ) | |
| **SERMERSHEIM**, in her official capacity at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JOHN DOE'S OPPOSITION TO DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER AGAINST THE NOTICED
DEPOSITION OF DEFENDANT MITCHELL ELIAS DANIELS, JR.**

Plaintiff John Doe respectfully submits this opposition to Defendants' "Motion For Protective Order Regarding Daniels Deposition" (ECF No. 110). Defendants' motion to obtain a protective order should be denied.

Defendants do not cite a single case in which a protective order was issued against a deposition of a named party, and there appears to be no such case. What case law Defendants rely upon is inapposite, as those cases do not involve named parties who have a key responsibility in the case.

Defendants do not have good cause to protect Defendant Daniels from deposition; reference to other means of discovery and the busy schedule of Defendant President Daniels do not constitute good cause, and good cause is precluded by Plaintiff John Doe's proper interest in a deposition of Defendant President Daniels.

[1]

Defendants assert that the deposition notice is motivated by nothing more than the status of the executive sought to be deposed, but that is simply not true. As discussed herein, Plaintiff John Doe has a legitimate interest in having the deposition of Defendant President Daniels.

## I.     Defendant Daniels In His Official Capacity Is A Named Defendant In The Case Who Has A Key Responsibility In The Case.

In the Amended Complaint in this case, Defendant Mitchell Elias Daniels, Jr. ("Defendant President Daniels"), the President of Defendant Purdue University, is a named defendant in his official capacity; and Defendant President Daniels is so named in the Amended Complaint for the enforcement of injunctive relief under clams for denial of constitutional due process per *Ex Parte Young*, 209 U.S. 123 (1908). Defendants seem to recognize this point (Dfs. Mot. 2), but the Amended Complaint says it better. Paragraph 7 of the Amended Complaint (ECF Doc. No. 51) states in pertinent part:

> Defendant Mitchell Elias Daniels, Jr. ("Defendant President Daniels"), joined herein in his official capacity at Defendant Purdue, is the President of Defendant Purdue who says "The Buck Stops Here" with him, and he may be contacted at a Defendant Purdue e-mail listed on Defendant Purdue's web site. . . .

Paragraph 8 of the Amended Complaint (ECF Doc. No. 51) states:

> Defendant President Daniels as Defendant Purdue's President is ultimately responsible for the university's compliance with a federal injunction; Defendant Daniels is not in an individual capacity liable under 42 U.S.C. § 1983 for saying "The Buck Stops Here," but his saying "The Buck Stops Here" is a recognition of his official capacity responsibility for Defendant Purdue's performance and operations as an educational institution of higher learning, which includes compliance with federal and state laws and court decrees specific to Defendant Purdue, including any expungement of a disciplinary record.

## II.    The Cases Cited By Defendants Are Very Inapposite, As Those Cases Do Not Involve Named Parties Who Have A Recognized Key Responsibility In The Case.

Defendants cite three district court cases and a Seventh Circuit opinion for the proposition that Plaintiff John Doe should use alternative discovery means in lieu of deposing Defendant

[2]

President Daniels. (Dfs. Mot. 3-4.) All these cases, however, involve a high-level executive who is not a named party to the case and who does not have an involvement or responsibility in the case. None of these cases involve a named party who had a recognized key responsibility in the case.

    1. In *Berning v. UAW Local 2209*, 242 F.R.D. 510 (N.D. Ill. 2017), the plaintiff Berning sued General Motors, the United Auto Workers Local 2209 and the United Auto Workers for breach of the collective bargaining agreement for failure to provide fair representation, and the plaintiff Berning sought to depose the United Auto Workers President Ron Gettelfinger, who was not a named defendant in the case, after the plaintiff Berning had deposed the United Auto Workers Local 2209 President James Zent, the United Auto Workers Servicing Representative for GM's Fort Wayne facility Rich LeTourneau, Administrative Assistant to the United Auto Workers President David Curson, Recording Secretary of United Auto Workers Local 2209 Carol Schultz and Office Secretary for United Auto Workers Local 2209 Darlene Walker. The District Court, citing Rules 26(c) and 26(b)(2)(C) of the Federal Rules of Civil Procedure, granted the requested protective order, relying upon the facts that United Auto Workers President Gettelfinger had no personal or unique knowledge as to any matter involving the plaintiff Berning and that a deposition would be unduly burdensome and oppressive as to United Auto Workers President Gettelfinger because he was not involved in the details of 1.3 million members of the United Auto Workers but was involved in larger issues affecting the auto industry.

    2. In *Nucap Indus. v. Robert Bosch LLC*, 2017 U.S. Dist. LEXIS 201458, 2017 WL 6059770 (N.D. Ill. Dec. 7, 2017), the plaintiff Nucap Industries sued Robert Bosch LLC and Bosch GmbH over a termination of dealership and sought the deposition of Volkmar Denner, Chairman of the Board of Management of Bosch GmbH who was not a named defendant. The District Court

granted the requested protective order without prejudice to the plaintiff Nucap Industries seeking leave to re-notice Denner's deposition if and when they could demonstrate a need for it. The District Court read the Seventh Circuit's decision in *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002), as confirming "the idea that a court should be sensitive to the risk of abuse where an executive has no real information" but still requiring the moving party for a protective order to show good cause. The District Court found that good cause in Denner's complete lack of involvement and responsibility in the case.

    3.   In *Todd v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 229505, 2019 WL 8272621 (S.D. Ind. Dec. 13, 2019), the Plaintiff Todd sued the Defendant mortgage loan holder, Deutsche Bank, and the Defendant loan servicer, Ocwen Loan Servicing, over what was described as unexplained and errant loan servicing conduct with respect to Plaintiff Todd's mortgage loan, invoking five statutes -- *e.g.*, the Fair Debt Collection Act; and the Plaintiff Todd sought to depose the former Chief Executive Officer of the parent company of Defendant Ocwen Loan Servicing, one Ronald Faris.  Former CEO Faris was not a named defendant in the case, and in fact, he had no connection to and responsibility in the case; the requested deposition seemed to be a fishing expedition.   In those circumstances, the *Todd* District Court considered the totality of the circumstances and concluded that a deposition was of Mr. Faris was not warranted in the case -- at least not yet.

    4.   In *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, the Seventh Circuit recognized the strong public policy in favor of disclosure but after recognizing Rule 26(b)(2) of the Federal Rules of Civil Procedure and the need to consider the totality of the circumstances,, upheld the District Court's refusal to allow a plaintiff in a Title VII employment discrimination case to take the deposition of the defendant's corporate vice president who was not a named party.  The Seventh

Circuit noted that the noticed deponent was a high ranking officer in a multinational corporation and it had not been determined he had any relevant knowledge, that the deposition would have been costly and burdensome as the deponent worked more than 1,000 miles away from where the plaintiff was employed, that the plaintiff had taken depositions from two supervisors and the human resources director of the company; and that the plaintiff had failed to submit interrogatories. The Seventh Circuit concluded that the plaintiff's failure to take advantage of that less expensive, convenient method of discovery cast serious doubt over her claim that the noticed deponent possessed information that was more than marginally relevant to the plaintiff's civil action.

### III. Defendants Do Not Have Good Cause To Obtain a Protective Order Against The Noticed Deposition Of Defendant President Daniels.

Defendants seem to recognize that they have the burden of establishing good cause for a protective order against Defendant President Daniels (Dfs. Mot. 1), and Defendants do have that burden. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007) ("[Rule 26] puts the burden on the party seeking the protective order to show some plainly adequate reason for its issuance."). Consequently, the Seventh Circuit has instructed that before restricting discovery, a court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking into account society's interest in furthering "the truth-seeking function" in the particular case before the court. *Patterson v. Avery Dennison Corp.*, 281 F.3d at 681.

Defendants' burden to show good cause is not carried by saying that Plaintiff has not used other means to find out what Defendant President Daniels knows about the facts of this case -- as if, like the *Todd* case and former CEO Faris, Defendant President Daniels is not a named party to this action and the Amended Complaint has not identified the reason Defendant President Daniels is joined as a party in the case. In fact, as noted above, the Amended Complaint does join

[5]

Defendant President Daniels as a named party to the action, and the Amended Complaint has identified the reasons Defendant President Daniels is joined in his official capacity.

Nor is Defendants' burden to show good cause carried by the busy schedule of Defendant President Daniels.  *CBS, Inc. v. Ahern,* 102 F.R.D. 820, 822 (S.D.N.Y.1984) ("[T]he fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery.")

Defendants are effectively precluded from establishing good cause because, as discussed next, Plaintiff John Doe has a proper interest in a deposition of Defendant President Daniels.

**IV.     Plaintiff John Doe's Proper Interest In A Deposition Of Defendant President Daniels.**

Defendants argue that Defendants Rollock and Sermersheim can be and have been deposed and thus, in an application of the "apex doctrine" not accepted by the Seventh Circuit but noted in *Todd v. Ocwen Loan Servicing*, Defendant President Daniels need not be deposed.  (Dfs. Mot. 3.) Putting to the side the already made point that *Todd v. Ocwen Loan Servicing* is inapposite -- that we are dealing here in this case with a named defendant with a recognized key responsibility, the depositions of Defendants Rollock and Sermersheim are not the answer for the reason that Defendant President Daniels was joined in his official capacity.  Defendants Sermersheim and Rollock are invested in defending what already the Seventh Circuit has found lacking in due process, and Defendants have engaged in aggressive litigation to the taste of Defendants Sermersheim and Rollock that has included Defendants moving to dismiss after the Seventh Circuit had reversed the grant of a motion to dismiss, Defendants moving for sanctions when there was no discovery even to compel, Defendants obtaining medical records from eight medical providers, Defendants moving obtaining social media and cell phone information from Plaintiff John Doe and that much of this appears to be aimed at besmirching Plaintiff John Doe as a way -- albeit, an ill-considered way -- of justifying what was done in the disciplinary case

[6]

It is thus worth remembering that in *Doe v. Purdue University*, 928 F.3d 652, 663- (7th Cir. 2019), Judge Amy Coney Barrett on the opinion, wrote in pertinent part:

> Having determined that John has adequately alleged that Purdue deprived him of a liberty interest, we turn to whether he has adequately claimed that Purdue used fundamentally unfair procedures in determining his guilt. . . .
>
> John's circumstances entitled him to relatively formal procedures: he was suspended by a university rather than a high school, for sexual violence rather than academic failure, and for an academic year rather than a few days. Yet Purdue's process fell short of what even a high school must provide to a student facing a days-long suspension. "[D]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581, 95 S.Ct. 729. John received notice of Jane's allegations and denied them, but Purdue did not disclose its evidence to John. And withholding the evidence on which it relied in adjudicating his guilt was itself sufficient to render the process fundamentally unfair. *See id.* at 580, 95 S.Ct. 729 ("[F]airness can rarely be obtained by secret, one sided determination of facts decisive of rights' (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring))).
>
> John has adequately alleged that the process was deficient in other respects as well. To satisfy the Due Process Clause, "a hearing must be a real one, not a sham or pretense." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016) (citation omitted). At John's meeting with the Advisory Committee, two of the three panel members candidly admitted that they had not read the investigative report, which suggests that they decided that John was guilty based on the accusation rather than the evidence. *See id.* at 630 (stating that a hearing would be a sham if "members of the school board came to the hearing having predetermined [the plaintiff's] guilt"). And in a case that boiled down to a "he said/she said," it is particularly concerning that Sermersheim and the committee concluded that Jane was the more credible witness—in fact, that she was credible at all—without ever speaking to her in person. Indeed, they did not even receive a statement written by Jane herself, much less a sworn statement. It is unclear, to say the least, how Sermersheim and the committee could have evaluated Jane's credibility.
>
> Sermersheim and the Advisory Committee's failure to make any attempt to examine Jane's credibility is all the more troubling because John identified specific impeachment evidence. . . .

928 F.3d at 663-664.

In Plaintiff John Doe's view, discovery has strengthened Plaintiff John Doe's case. Plaintiff John Doe has already presented a review of the Navy discovery (ECF No. 106), and the depositions of Purdue people with the documents that formed the basis of the allegations of the Complaint have shown a process more flawed than what was alleged in the Amended Complaint, among other things: Plaintiff John Doe was never provided the investigation report throughout the disciplinary case; there was no hearing, just an untranscribed half-hour meeting; Jane Doe never appeared in person before Defendant Dean Sermersheim and the Equity Committee; there was involvement throughout the process of the sexual assault center known by the acronym "CARE"; the investigators never met with Plaintiff John Doe concerning what Plaintiff John Doe says is a highly selective, misinterpretation of the texts between him and Jane Doe.  Defendants seem not to understand that the practical reason why due process matters is so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

It was in the context of having found a process lacking in due process that the Seventh Circuit stated in its opinion: "having determined that John has pleaded a liberty interest, we instruct the court to address the issue of expungement on remand." *Doe v. Purdue University*, 928 F.3d 652, 667 (7th Cir. 2019).  Plaintiff John Doe has a vital interest in discovery of how a federal court injunction involving expungement would be enforced at Purdue University.  Defendants' three arguments in response (Dfs. Mot. 4) only reinforce the concern about enforcement of a Federal Court Order at Purdue, warranting the deposition of Defendant President Daniels.

*First*, Defendants argue that the Amended Complaint does not specify what record is to be expunged.  (Dfs. Mot. 4.)  What Judge Barrett clearly understood and what Plaintiff John Doe

[8]

made clear in his deposition is that there is a Purdue disciplinary record that would be subject to expungement.

*Second*, Defendants argue that the transcript of grades does not contain reference to the disciplinary case. (Dfss. Mot. 4.) The absence of notation in the transcript of grades, however, does not alter the fact, noted by Plaintiff John Doe in his deposition, that (like many universities) there is a separate university disciplinary case record at Purdue.

*Third*, Defendants argue that Plaintiff John Doe has never asked to have expunged the Purdue disciplinary record in the possession of the Navy. (Dfs. Mot. 4.) Putting to the side that the Navy is not a party, once an expungement of Purdue records is ordered, the Navy will not have an interest in retaining what are no longer official University files. As for Defendants' reference to academic leave, which was issued during the pendency of a depressing and distracting university disciplinary case, the purpose of the leave is to allow the cadet to get his or her grades up.

Given that the buck stops with Defendant President Daniels, it makes no sense to be asking what other people say; it is Defendant Daniels who needs to say how the buck stops with him -- he needs to account for what has been going on in this case and he needs to say how he would make sure a Federal Court Order is complied with. There is already public comment how Defendant President Daniels is risking his legacy at Purdue by what has been happening in this case and others like it: G. Piper, "Judges Keep Ripping Purdue Title IX Kangaroo Courts, Mitch Daniels' Legacy Is At Risk," *College Fix* (June 2, 2020): https://www.thecollegefix.com/judges-keep-ripping-purdue-for-title-ix-kangaroo-courts-mitch-daniels-legacy-is-at-risk/.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' motion for a protective order against the noticed deposition of Defendant Mitchell Elias Daniels, Jr. and direct counsel for

the parties to arrange for the deposition of Defendant Mitchell Elias Daniels, Jr., and the Court should order such further and other relief as the Court deems just and proper.

**Dated:  September 24, 2020**

        **Respectfully submitted,**
        **NESENOFF & MILTENBERG, LLP**
        **By: /s/ *Philip A. Byler***
        **Philip A. Byler, Esq.**
        **Andrew T. Miltenberg, Esq.**
        **363 Seventh Avenue, Fifth Floor**
        **New York, New York 10001**
        **(212) 736-4500**
        pbyler@nmllplaw.com
        amiltenberg@nmllplaw.com
        *Attorneys for Plaintiff John Doe*