**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| **JOHN DOE,**               ) | |
|             ) | **CIVIL ACTION** |
|        Plaintiff,       ) | |
| v.                 ) | |
|               ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** ) | |
| **DANIELS, JR.,** in his official capacity as President of ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK,** ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University,      ) | |
| **KATHERINE SERMERSHEIM**, in her official capacity ) | |
| at Purdue University,            ) | |
|               ) | |
|        Defendants.      ) | |
|               ) | |

## DEFENDANTS' RESPONSE TO NON-PARTIES' MOTION TO QUASH

Come now Defendants, by counsel, and submit their Response to the Motion to Quash by Non-Parties "Family Concern Counseling" and Noel Perry ("Movants") [ECF No. 115]. The Motion should be denied.

**I.    Posture of John Doe, the Motion, and Movants.**

Plaintiff John Doe has not filed any statement of support for the Motion to Quash, nor has John objected to the underlying Subpoena. Thus, Movants are objecting to a deposition to which their client, John Doe, has made no record objection.

Family Concern Counseling, Incorporated (listed by the Indiana Secretary of State as an Indiana corporation) is identified in the Motion to Quash as a Movant. However, the moving papers make clear that the motion seeks relief only for Mr. Perry personally: "Mr. Perry files this Motion . . . to quash the command to testify at a deposition." ECF No. 115 at 1 "Mr. Perry moves that the Court quash the subpoena for him to testify . . . ." ECF No. 115 at 9. The narrow question presented

1

by the Motion to Quash is whether Mr. Perry has shown cause to refuse to appear for deposition. Thus, there is no apparent reason why Family Concern Counseling, Incorporated has appeared and joined in the Motion.

Further, the Motion to Quash is expressly limited only to subpoenaed testimony, not production of documents. Its title is: "Motion to Quash Subpoena to Testify at a Deposition to Mr. Noel Perry."

Although Mr. Perry asserts ethical motivations for his objection to testifying, the question before the Court in the Motion to Quash is purely legal: whether Mr. Perry has an immunity from appearing in response to a subpoena for his testimony and, in turn, whether any recognized legal privilege protects him from answering particular questions at the deposition.

And while Mr. Perry objects to the "relevance" of his testimony, he does not cite any evidence or authority for that assertion. Further, not even John Doe himself challenges the relevance of Mr. Perry's testimony. ECF No. 115-3 (September 22, 2020 letter from Attorney Byler to Attorney Taylor).

## II.    Discovery history relating to Mr. Perry.

John filed his Complaint [ECF No. 1] on January 24, 2017, and his Amended Complaint [ECF No. 51] on September 3, 2019. In both pleadings, John Doe asserts that he has "sustained tremendous damages including, without limitation, emotional distress . . . ." ECF No. 1, ¶150; ECF No. 57, ¶154. John has served three disclosures (an initial disclosure on October 18, 2019, and two amended disclosures thereafter), each claiming that he has sustained "Non-economic damages (physical well-being, emotional and psychological damages, damages to reputation) . . . ." **Exhibits A-B**; *see also* **Exhibit C** (asserting that John has incurred at least $100,000 in "[e]motional and [p]sychological damages"). Further, he asserts lost earnings that are entangled with his emotional and reputational damage claims. *Id*.

In 2018, John began seeing Noel Perry at Family Concern Counseling in Valparaiso, Indiana. Mr. Perry is not a licensed therapist or counselor and was not during the time he saw John. *See* ECF No. 115, at 2.

Defendants tried to obtain John's medical records as early as their first written discovery requests in September 2019 and requests for signed medical authorizations in May 2020. Not including their written requests, Defendants' counsel (and their staff) submitted no less than *eleven* requests for the authorizations. *See* ECF No. 93, Exs. B-D, F-L. John's counsel did not state that John was asserting a counselor privilege or that he would refuse to execute the authorizations, including for Mr. Perry, in response to those requests. *Id.*

In his deposition on June 18, 2020, John Doe affirmed that he was seeing Mr. Perry for anxiety and depression that he attributed to his suspension from Purdue:

> Q You're alleging in this case that the anxiety and depression for which you have been seeing Mr. Perry is Purdue's fault, right?
> A Yes.
> Q And you're asking the court to award you money for that anxiety and depression?
> A Yes . . . .

**Exhibit D**, at 148. Without any assertion of a counselor privilege, John then refused to answer questions about his treatment with Mr. Perry. *Id.* at 148-155.

As early as August 21, 2020, in anticipation of the September 30, 2020 cut-off of fact discovery and a likely deposition of Mr. Perry, Defendants asked John's counsel whether he would be representing Mr. Perry. John's counsel did not respond. On August 31, 2020, John's counsel provided his personal calendar availability for the Perry deposition. A true and accurate copy of these emails are attached as **Exhibit E**. On September 1-3, a Stuart & Branigin paralegal contacted Mr. Perry to obtain his availability for a deposition, however she only got his voice mail, so she left messages requesting dates, with her phone number and email, and requesting that Mr. Perry

contact her.  **Exhibit F**. Sometime thereafter, Mr. Perry called and left a message, but did not provide available dates.  *Id.* On September 11, 2020, the Stuart & Branigin paralegal again called Mr. Perry and again left a voice message, to which he did not respond.  *Id.*

In Defendants' Subpoena to Testify at a Deposition in a Civil Action dated September 11, 2020, Defendants subpoenaed Mr. Perry to appear and testify on September 24 and to produce "Any and all medical records pertaining to your care and treatment of [Plaintiff] . . . ." ECF No. 115-1.

Defendants hired a process server to serve their subpoena *duces tecum*[1] on Mr. Perry. On September 15 or 16, 2020, the process server called Mr. Perry's offices and asked when he would be available to receive service.  **Exhibit G**.  Mr. Perry's office refused to answer the question and then represented that Mr. Perry no longer worked there.  *Id.*  On September 17, 2020, Defendants' process server arrived at Mr. Perry's offices.  *Id.* He went into the main building, identified himself, and asked if the staff member could accept service on behalf of Mr. Perry. *Id.* The staff member said that she could not and that she did not know if Mr. Perry was available.  *Id.*

The process server went outside and observed Mr. Perry's name on the side of an adjacent building.  *Id.* The outside door was open, and upon entering he saw a room with a cracked door in which a man resembling Mr. Perry was sitting.  *Id.* After confirming his identity via Family Concern Counseling's website, the process server knocked on the door and announced that he was there to serve Mr. Perry, but Mr. Perry shut the door.  *Id.* After knocking again, Mr. Perry locked the door and called the police. ***Id.*** The process server went outside and waited for police. *Id.* Upon arrival, the process server explained why he was there to the officer and the two went back to Mr. Perry's door.  **Exs. G, I**. Mr. Perry opened the door for the police officer, who explained to him

---

[1] Though referred to singularly as the subpoena *duces tecum* or the subpoena in this Response, Mr. Perry was also served with a check for Mr. Perry's fees and mileage.  *See* Fed. R. Civ. P. 45(b)(1).

again why the process server was there. *Id.* The process server attempted to give Mr. Perry the subpoena but Mr. Perry refused and attempted to push it away and shut the door. *Id.* Before he could shut the door, the police officer then took the subpoena and placed it in Mr. Perry's presence, inside his office. *Id.* The process server prepared and issued a proof of service and the police officer created a brief police log, both of which explain what had happened. **Exhibit H-I**.

On September 21, 2020, Mr. Perry's counsel emailed Defendants' counsel a statement of objections to the subpoena and moved to quash two days later.

On September 24, 2020 this Court queried John's counsel as to whether or when John has asserted a privilege for Mr. Perry's records. When John's counsel did not point to any prior assertion of such a privilege, this Court set a deadline for John to do so. ECF No. 117.

On October 5, 2020—13 months after their original document requests, 5 months after Defendants forwarded medical authorizations to John, and 109 days after the deposition of John—John's counsel filed his privilege assertion [ECF No. 124]. However, John has not sought a protective order to block Mr. Perry from compliance with the subpoena for Mr. Perry's counseling records. No one has asked this Court to block Defendants' subpoena for Mr. Perry's records.

### III.    Movants' failure to meet and confer.

Movants failed to comply with the meet-and-confer requirement and Local Rule 37-1, which requires the party filing "any discovery motion" to "file a separate certification that the party has conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." Failing to comply with this rule is grounds for this Court to deny the Motion to Quash. N.D. Ind. L.R. 37-1(b). Certainly, the September 21, 2020 letter from Mr. Perry's counsel does not convey any effort to work through the present issues without involving the Court, nor did Mr. Perry respond in any constructive way to Defendants' efforts earlier in September to address these matters with him.

## IV.     No authority excuses Mr. Perry from the obligation to appear for deposition.

The counselor privilege is a privilege for specific communications, not an immunity from deposition. The Motion to Quash does not cite any authority that immunizes Mr. Perry from deposition. Just as a privilege objection under Rule 34 is analyzed on a document by document basis, so also is a privilege objection to a deposition question analyzed on a question by question basis. For example, Mr. Perry is refusing even to appear and testify to the information that his Motion presents (without any supporting declaration or other admissible evidence) about him and his relationship to John. On this basis, the Court could choose to deny Mr. Perry's Motion without prejudice, ordering him to appear for deposition and to establish under oath the factual circumstances and questions for which he asserts a privilege against responding.

## V.     The counselor privilege is not applicable to Mr. Perry's communications with John.

Mr. Perry has the burden of establishing the existence of a privilege and its applicability to the present situation. *Scott v. City of Peoria*, 280 F.R.D. 419, 422 (C.D. Ill. 2011) (citing multiple cases). As recognized by the Supreme Court and the Seventh Circuit:

> Privileges are construed narrowly and the requirements for establishing privilege are strictly enforced, because privileges are viewed as being in derogation of the search for truth. A privilege is therefore applied only where necessary to achieve its purpose, and only where it has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.

*Id.* (citing multiple cases) (internal citations and quotation marks omitted); *see also Trammel v. United States*, 445 U.S. 40, 50-51, 100 S. Ct. 906, 912 (1980).

### a.     John's damage claim waives the counselor privilege.

By putting his mental health at issue and seeking damages related to alleged conditions for which he sought treatment from Mr. Perry, John has waived any privileged statement to Mr. Perry. The Seventh Circuit has long recognized that a party may not put their mental health at issue and then bar access to discovery of the same topic by citing privilege. *Doe v. Oberweis Dairy*, 456

6

F.3d 704, 718 (7th Cir. 2006) ("Although there is a psychotherapist-patient privilege in federal cases, . . . the privilege is not absolute. If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state."); *see also Matz v. Fifth Third Sec., Inc.*, No. 2:07-CV-278-PPS-PRC, 2009 U.S. Dist. LEXIS 50562, *6 (N.D. Ind. Jun. 15, 2009) ("'One way a privilege holder can waive the privilege is by affirmatively putting the privileged communications directly at issue in the lawsuit.' . . . As the court observed in *Santelli*, '[a] party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues.'" (citing *Santelli v. Electro-Motive*, 188 F.R.D. 306, 308 (N.D. Ill. 1999)) (alteration in original) (internal citation omitted)).

This principle is universal in the federal courts. *E.g.*, *Oliphant v. Dep't of Transp.*, 171 F. App'x 885, 888 (2d Cir. 2006); *Schindewolf v. City of Brighton*, No. 14-12161, 2014 U.S. Dist. LEXIS 175301, at *2 (E.D. Mich. Dec. 19, 2014); *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000); *Fisher v. Sw. Bell Tel. Co.*, 361 F. App'x 974, 977-78 (10th Cir. 2010). As noted by one district court:

> While this Court recognizes the fundamental principle that effective psychotherapy is largely dependent on confidentiality between therapist and patient, it is similarly cognizant that a defendant against whom a claim of emotional distress has been asserted is helpless in mounting an adequate defense without all the relevant evidentiary materials. The plaintiff's mental health records are certainly an integral and indispensable component of any such defense. Depriving a defendant of that crucial evidence, while allowing a plaintiff to seek damages for emotional distress and simultaneously seek cover under a claim of privilege would simply be contrary to the most basic sense of fairness and justice[] and would essentially amount to a windfall for the plaintiff.

*Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 (D.N.J. 2000) (internal quotation marks and citation omitted) (alteration in original).

John is seeking hundreds of thousands of dollars in damages for purported emotional and psychological injuries,[2] allegedly sustained from the Defendants. ECF No. 1, ¶150; ECF No. 57 ¶154; **Exs. A, B, C, D**, at 148.  John has been seeing Mr. Perry since 2018 for the treatment of these alleged injuries.  ECF No. 115, at 2; **Ex. D**, at 148.  Accordingly, John has put his mental health at issue—and, by extension, his ability to work, go to school, or otherwise mitigate his alleged damages—and he cannot block Defendants' access to discoverable materials—his treatment records and Mr. Perry's personal knowledge—bearing on that claim or Defendants' possible defenses of the same. *Oberweis Dairy*, 456 F.3d at 718.

> **b.**    **Assertion of the counselor privilege assertion is untimely.**

Mr. Perry is late to the game. John long ago waived the counselor privilege by failing to timely assert it. No authority equips Mr. Perry to revive a privilege that was not timely asserted by John.

Failing to promptly raise a privilege or to object based on the same will result in that privilege being forfeited.  *E.g.*, *Young v. City of Chi.*, No. 13 C 5651, 2017 U.S. Dist. LEXIS 394, at *16-18 (N.D. Ill. Jan. 3, 2017) (holding city had waived right to withhold documents sought via a request for production because the city had waited more than two-and-a-half months to expressly assert the privilege or prepare and produce a privilege log); *see also EEOC v. Office Concepts*, No. 1:14-cv-00290-RL-SLC, 2015 U.S. Dist. LEXIS 170587, at *16-17 (N.D. Ind. Dec. 22, 2015) (summarizing authority on failing to promptly assert attorney-client privilege); *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 996 (N.D. Ill. 2010) ("[Plaintiff's] failure to object to the subpoena initially or to object to the production thereafter on some privilege ground precludes him from raising a claim of privilege to the document that was produced . . . ." (internal

---

[2] Likewise, John claims that these psychological injuries have prevented him from going to school or maintaining a job, entangling these damages with the many of the other damages he has asserted. *E.g.*, **Ex. D**, at 191

citations omitted)); *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (affirming district court's holding that the failure to expressly and timely assert a privilege objection to a subpoena waived the privilege); *Maness v. Meyers*, 419 U.S. 449, 466 (1975) (even privilege against self-incrimination can be waived if not timely asserted).

Defendants will not repeat the long history of their repeated attempts to obtain John's medical records and authorizations. Instead, Defendants incorporate by reference the facts, certification, and exhibits submitted in support of their Motion for Sanctions. ECF Nos. 92-94. Defendants originally sought John's medical records and information via requests for production and interrogatories served on *September 25, 2019*. John initially responded to these requests on November 8, 2019. John's responses and answers *did not* assert any psychotherapist-privilege over any records or information. **Ex. J**. Noting that the medical records produced by John appeared incomplete and that John had not made any objections based on privilege, Defendants requested that John sign medical authorizations for all nine of his treatment providers on May 12, 2020. While John returned eight of the nine authorizations—including one only after Defendants filed their Motion for Sanctions—in a piecemeal fashion over the next few months, he did not execute the authorization for Family Concern Counseling.

John's counsel provided various reasons for not executing the authorization for Family Concern Counseling, but he never expressly refused to execute it or cited counselor-patient privilege as a ground for doing so. *See* ECF 93, Exs. B-D, F-L. John's counsel responded to requests for the Family Concern Counseling authorization, *inter alia*, by email on May 12, June 5, June 10, June 12, June 17, June 18, June 19, June 23, June 25, July 3, July 7, July 12, and July 15, 2020. In none of these numerous responses did John's counsel claim that the Family Concern Counseling records were privileged under counselor-patient privilege; instead, he gave the impression that he was working on executing the authorizations. *See id.*

More than *a year* has passed from the Defendants' original written discovery requests to the present motion to quash. Likewise, nearly 5 *months* have passed from Defendants' request for an authorization for Family Concern Counseling records to the present motion to quash. Until prodded by this Court on September 24, 2020, John did not assert the counselor privilege.

Such a delay exceeds the timeframe set out for written discovery responses in Rule 34 (30 days) and runs afoul of the requirement that an objection be stated with specificity. *See Young*, 2017 U.S. Dist. LEXIS 394, at *16 (citing multiple sources). It exceeds mere laxity, *see Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) (finding delay of two weeks was "lax at best"), and is clearly unreasonable, *Adams v. Cavanagh Communities Corp.*, No. 81 C 7332, 1988 U.S. Dist. LEXIS 5531, at *3 (N.D. Ill. June 10, 1998) (failure to assert privilege within the timeframe provided for a response to written discovery or for more than five months constituted waiver of that privilege); *compare Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 389 (7th Cir. 2008) (delay of three days was reasonable) *with Office Concepts*, 2015 U.S. Dist. LEXIS, at *17-*18 (delay of seven weeks to preserve a privilege was an unreasonable delay). By failing to specifically and timely assert the privilege—also evinced by the failure to create a privilege log for any allegedly privileged documents—John Doe is not entitled to assert privilege over Mr. Perry's records or testimony.

### c.    Indiana's statutory counselor privilege does not apply to Mr. Perry.

There is no applicable counselor privilege under Indiana. Mr. Perry is not a "counselor" under Indiana law. Though he cites Indiana Code section 25-23.6-6-1 for the proposition that his clients expect privilege, the statute provides in relevant part that "[m]atters communicated to a *counselor* in the *counselor's* official capacity by a client are privileged information and may not be disclosed by the *counselor* to any person, except under the following circumstances . . . ." (emphasis added). Notably, as defined in an earlier chapter, "'counselor' refers to a social worker,

10

a clinical social worker, a marriage and family therapist, a mental health counselor, an addiction

counselor, or a clinical addiction counselor *who is licensed under this article*." Ind. Code § 25-

23.6-1-3.8 (emphasis added); *see also* I.C. § 25-23.6-1-1 ("The definitions in this chapter apply

throughout the article [(23.6)]."); *State v. Pelley*, 828 N.E.2d 915, 918 (Ind. 2005) (Indiana

"generally recognizes that privileges are statutory in nature and that it is within the power of the

legislature to create them. Most privileges were unknown at common law and, as a result, are to

be strictly construed to limit their application." (internal citations omitted)).

It is undisputed that Mr. Perry is not licensed as a "counselor." *See* ECF No. 115, at 2.

The definitions of the statute require licensure in order to be entitled to the expectation and the

assertion of privilege. *See* I.C. § 25-23.6-6-1. Neither Mr. Perry nor John is entitled to assert an

Indiana statutory privilege for their communications.

### d.    Mr. Perry is not a "psychotherapist" for the purpose of *Jaffee*.

Movants next turn to *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), and assert that they are

entitled to the application of the federal common law psychotherapist privilege. ECF 115, at 2-4.

While observing that *Jaffee* recognized a psychotherapist privilege, Movants notably omit the fact

that *Jaffee* involved records between a non-party and a *licensed* clinical social worker. *Jaffee*, 518

at 5. Of critical significance here, *Jaffee*'s holding is limited to communications between patients

and *licensed* professionals:

> All agree that a psychotherapist privilege covers confidential communications
> *made to licensed psychiatrists and psychologists*. We have no hesitation in
> concluding in this case that the federal privilege should also extend to confidential
> communications *made to licensed social workers* in the course of psychotherapy.
> The reasons for recognizing a privilege for treatment by psychiatrists and
> psychologists apply with equal force to treatment by a clinical social worker such
> as Karen Beyer. . . . Perhaps in recognition of these circumstances, the vast majority
> of States explicitly extend a testimonial privilege *to licensed social workers*. We
> therefore agree with the Court of Appeals that drawing a distinction between the
> counseling provided by costly psychotherapists and the counseling provided by
> more readily accessible social workers serves no discernible public purpose.

11

*Id.* at 15-17 (emphasis added) (internal citations and quotation marks omitted).

Movants do not cite any in-circuit authority for their proposition that *Jaffee* should be extended to unlicensed therapists. To Defendants' knowledge, only one in-circuit decision has considered the question: *United States v. Schwensow*, 942 F. Supp. 402 (E.D. Wis. 1996), *aff'd*, 151 F.3d 650 (7th Cir. 1998).

In *Schwensow*, the federal government charged the defendant, Ronald E. Schwensow, with being a felon in possession of a firearm. *Id.* at 404. Evidence supporting Schwensow's subsequent indictment included the statements of two volunteers at a local Alcoholics Anonymous office. The volunteers were not counselors and did not hold themselves out as counselors to the defendant or others, though defendant believed that they were counselors of some nature. *Id.* at 405. The defendant's subsequent indictment rested largely on the defendant's statements to them and their discovery of a firearm in a bag he was carrying.

The defendant moved to suppress all statements he made to the volunteers, arguing that they were entitled to the privilege outlined in *Jaffee*. *Id.* at 405-06. The government argued that the privilege did not apply because, *inter alia*, the volunteers were not licensed. *Id.* at 406. Determining that the scope of the federal psychotherapist privilege was unsettled, the district court turned to the applicable state's (Wisconsin's, in this case) law for guidance. *Id.* (citing multiple cases). Examining Wisconsin's applicable statutory privilege at the time, the court observed that the privilege defined "confidential" communications as those to further the interest of the patient in the consultation and that the privileges scope was limited to "licensed" professionals or those believed by patient to be one of several enumerated professionals. *Id.* at 406-07 (citing numerous statutory provisions).

Turning to the question at bar, and shaping its analysis of the scope of the privilege to the contours of the state statute, the district court observed that neither volunteer was licensed, meaning that the defendant would bear the burden of demonstrating that he believed that they were psychotherapists under Wisconsin law. *Id.* at 407. Applying the facts, the district court found that the defendant could not have reasonably believed that the volunteers were psychotherapists, highlighting the facts that they had not held themselves out as such, the defendant's history with licensed counselors, and that the defendant had not gone to the AA office for counseling services. *Id.* The district court also determined that the statements to the volunteers could not be "confidential," as understood by the statutory privilege, because they were not directed for the treatment of defendant. *Id.* at 407-408. Accordingly, the district court denied the defendant's motion to suppress.

On appeal, the Seventh Circuit affirmed the district court on all issues—including this one—holding that the district court "did not commit error." *Schwensow*, 151 F.3d at 657. In *dicta*, the Seventh Circuit noted that it was not taking an "express" opinion "on the extent to which state law should guide our analysis," although it observed that the defendant would not be entitled to the privilege under the state statute either. *Id.* at 657 n.4.

Following *Schwensow*, which properly turned to state law to define the unsettled scope of a privilege, this Court should look to the Indiana statutory provision for counselors. *Schwensow*, 942 F. Supp. at 405-07; *see also Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.*, 455 F. Supp. 1197, 1200 (N.D. Ill. 1978) (where the scope of the federal common law is uncertain, district courts should "seek guidance" and "consider existing state law concerning the privilege." (citing *Baker v. F & F Investment*, 470 F.2d 778, 781-82 (2d Cir. 1972))). As already demonstrated above, Indiana does not provide any protection for statements to unlicensed counselors, therapists, etc. This is, perhaps, for good reason lest anyone make any statement made in confidence to another—

13

whether a sibling, a cousin, a friend—and try to argue that these statements are privileged, as cautioned by Justice Scalia:

> When is it, one must wonder, that the psychotherapist came to play such an indispensable role in the maintenance of the citizenry's mental health? For most of history, men and women have worked out their difficulties by talking to, inter alios, parents, siblings, best friends and bartenders--none of whom was awarded a privilege against testifying in court. Ask the average citizen: Would your mental health be more significantly impaired by preventing you from seeing a psychotherapist, or by preventing you from getting advice from your mom? I have little doubt what the answer would be. Yet there is no mother-child privilege.

*Jaffee*, 518 U.S. at 22 (Scalia, J., dissenting).

No counselor privilege applies here, so the Motion to Quash must be denied.

## VI.    The Subpoena was Timely Issued and Properly Served.

If Mr. Perry's true objective were to stand on his ethics and his view of privilege, the professional and responsible approach would have been to acknowledge Defendants' request for his deposition, state his availability, and state his views. Instead he dodged scheduling efforts, dodged service, and filed a motion to quash the day before his deposition.

Mr. Perry asserts that the subpoena was untimely and not properly served. Both contentions fail. Timeliness is not at issue with this subpoena. Had Mr. Perry or his counsel made a reasonable attempt to meet-and-confer with Defendants' counsel (*see supra*) and if the timeframe to comply with the subpoena had been truly at issue, Defendants would have worked with him to provide him additional time to comply. Defendants' counsel had flexibility during the weeks of September 21 or 28 to schedule Mr. Perry's deposition (and production of documents) for a date and time that would have worked for him. However, Mr. Perry refused to cooperate with scheduling efforts, thus showing his position has nothing to do with timing.

Mr. Perry's true intentions are on vivid display in his remarkable effort to dodge personal service even in the presence of a police officer. On September 17, 2020, a process server—a non-

party, over the age of eighteen—attempted to hand Mr. Perry the subpoena but he refused to open his door or accept the subpoena, despite the process server identifying himself and the reason for his presence. When the police arrived, the process server again tried to hand the document to Mr. Perry but he refused to take it. The police officer—also a non-party, over the age of eighteen— then took the subpoena and left it in Mr. Perry's presence inside of his office.

This is effective personal service. *E.g. Abbott v. Kidder, Peabody & Co.*, No. 97 C 3251, 1997 U.S. Dist. LEXIS 8500, at *8 (N.D. Ill. June 12, 1997) (holding that a subpoena had been properly served where, after the subpoenaed individual refused to accept in-hand service, process servers placed the subpoena in her windshield wiper); *Barclay v. Crown Bldg. & Dev., Inc.*, 617 N.W.2d 373, 375 (Mich. Ct. App. 2000) (holding that a defendant had been personally served with a summons and complaint where, after the defendant had been informed of the paper's contents and locked himself in his office, the server affixed the summons and complaint to the door handle); *see also Hanna v. Plumer*, 380 U.S. 460 (1965) (personal service does not require "in-hand delivery"); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) (holding that Rule 45's language does not require "in-hand service", but only service in a manner that "reasonably insures actual receipt of the subpoena by the witness"); *Doe v. Hersemann*, 155 F.R.D. 630, 631 (N.D. Ind. 1994).

The Motion's remaining contentions about service are moot because Mr. Perry was personally served, thus, an alternative form of service was unnecessary. *See generally Achors v. FCA US, LLC*, No. 1:15-cv-2052-SEB-MPB, 2017 U.S. Dist. LEXIS 199560, at *6 (S.D. Ind. Dec. 4, 2017) ("[W]hen a method *other than personal service* or certified mail are used, courts must determine whether such method is a 'sensible option' . . . ." (internal citation omitted)).

Mr. Perry cannot actively seek to evade personal service, whether by having his staff mislead process servers or locking his doors, and then claim insufficient service.   In this case, he was personally served twice over by the process server and the police officer.

## Conclusion

For the above-stated reasons, the Motion should be denied, and Mr. Perry should be ordered to appear for deposition. Further, Mr. Perry should be ordered to comply with Defendants' document subpoena, to which there is no objection of record. Further, Defendants respectfully request an award of their attorney fees and costs incurred in response to the Motion to Quash, which lacks substantial justification for the reasons stated above.

Dated: October 7, 2020                              Respectfully submitted,

/s/ William P. Kealey
William P. Kealey, Attorney No. 18973-79
Tyler L. Jones, Attorney No. 34656-29
James F. Olds, Attorney No. 27989-53
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
           tlj@stuartlaw.com
           jfo@stuartlaw.com
Telephone: 765.423.1561
***Attorneys for Defendants***

1328863