IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) CIVIL ACTION |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| PURDUE UNIVERSITY, PURDUE | ) |
| UNIVERSITY BOARD OF TRUSTEES, | ) |
| MITCHELL ELIAS DANIELS, JR., in | ) |
| his official capacity as President of Purdue | ) No. 2:17-cv-33-JPK |
| University, ALYSA CHRISTMAS | ) |
| ROLLOCK, in her official capacity at | ) |
| Purdue University, KATHERINE | ) |
| SERMERSHEIM, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |

**FAMILY CONCERN COUNSELING AND MR. NOEL PERRY'S
REPLY BRIEF IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENA
TO TESTIFY AT A DEPOSITION
<u>TO MR. NOEL PERRY</u>**

Family Concern Counseling ("FCC") and Mr. Noel Perry ("Movants"), by and through their attorneys, Wagenmaker & Oberly, LLC, hereby submit their Reply Brief in support of their Motion to Quash a Subpoena to Testify at a Deposition in a Civil Trial. (ECF No.115). Seventh Circuit precedent, Mr. Perry's ethical responsibilities, and the facts surrounding Defendants' attempts to schedule a deposition and serve a subpoena on Mr. Perry all support this court's granting of FCC and Mr. Perry's Motion to Quash.

**I.  Posture and Background.**

1. *John Doe's Assertion of Privilege.*

Movants filed their Motion to Quash on September 23, 2020 (Docket No. 115). Plaintiff

1

John Doe filed his assertion of privilege with respect to confidential counseling communications between himself and Mr. Perry on October 5, 2020 (ECF No. 124). Plaintiff John Doe subsequently filed his Reply in Support of Movant's Motion to Quash on October 13, 2020 (ECF No. 127). John Doe's filings independently assert the psychologist-patient privilege with respect to his communications with Mr. Perry and Mr. Perry's records thereof, and also assert John Doe's lack of waiver of privilege. John Doe's assertion of privilege specifically objects to Mr. Perry testifying at a deposition and disclosing his confidential records (ECF No.124, p. 2).

2. *Movants.*

Family Concern Counseling ("FCC") is an Indiana domestic nonprofit corporation with its principal office located in Valparaiso, IN. Mr. Noel Perry is an employee of FCC. Any testimony Mr. Perry may provide pursuant to a subpoena would be provided in his capacity as an employee of FCC, and all records of Mr. Perry's confidential counseling communications with John Doe are the property of FCC. Therefore, both FCC and Mr. Perry are proper movants for this Motion.

3. *Document Subpoena.*

The Federal Rules of Civil Procedure provide separate and distinct procedures for objecting to subpoenas for documents (Fed. R. Civ. P. 45(c)(2)(B)) and for objecting to subpoenas for testimony (Fed. R. Civ. P. 45(c)(3)(A)). Fed. R. Civ. P. 45(c)(2)(B) provides:

> *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection . . .

Objections pursuant to Rule 45(c)(2)(B) are made by letter outlining the objections. *Romano v. City of Hammond Police Dep't*, LEXIS 79166, *18 (N.D. Ind. 2010); *Peerless Indus. v. Crimson AV, LLC*, LEXIS 65413, *2 (N.D. Ill. 2013). Movants served a letter on Defendants on September 21, 2020, outlining their objections to the subpoena for documents, in compliance

with Rule 45(c)(2)(B). Defendants acknowledged receiving Movants' letter (Defendants' Response Brief, ECF No. 125, p. 5), and Movants enclosed their letter as an exhibit to their Motion to Quash, filed with this Court on September 23, 2020 (Movant's Motion to Quash, ECF No. 115, Ex. B).

> Rule 45(c)(2)(B) further provides:
>
> If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

To date, Defendants have not filed a Motion with this court in accordance with Fed. R. Civ. P. 45(C)(2)(B)(i) to compel production of documents requested in Defendants' subpoena. Movants therefore respectively request that this court not issue a ruling with respect to Movants' production of any documents in response to Defendants' subpoena until such time as Defendants' have properly filed a Motion to Compel such production, Movants have had the opportunity to file a Response Brief in response to such Motion, and this court has conducted a hearing on Defendants' Motion to Compel production of documents.

　　4.　*Requirement to Meet and Confer.*

As stated in Movants' Rule 37-1 Certification (ECF No.126), filed with this court on October 7, 2020, counsel for Movants called Defendants' counsel on September 21, 2020, to discuss the subpoena for documents and testimony. Counsel for Movants explained Movants' objection to Defendants' subpoena for documents and for testimony and provided rationale for their objections. After a brief conversation between counsel for Movants and Defendants, it was clear to Movants' counsel that the respective parties' counsel would not be able to resolve their disagreement regarding Movants' objections to the subpoena without involvement of this court. The requirement for a good faith attempt to confer with other affected parties to resolve

3

discovery disputes having been met, Movants' counsel then informed Defendants' counsel that Movants would provide a written objection to the subpoena for documents via letter, pursuant to Fed. R. Civ. P. 45(c)(2)(B)), and would file a Motion with this court, pursuant to Fed. R. Civ. P. 45(c)(3)(A), objecting to the subpoena commanding Mr. Perry to appear for a deposition. Movants served the written objection to the subpoena for documents on Defendants' counsel on September 21, 2020, filed a Motion to Quash the subpoena to appear for a deposition on September 23, 2020, and filed the required L.R. 37-1 Certification with this court on October 7, 2020.

For the foregoing reasons, Movants therefore dispute Defendants' Counsel's assertion that Movants failed to meet and confer with respect to the subpoena.

## II. The psychotherapist-counselor privilege is applicable to Mr. Perry's communications with John Doe.

*1. John Doe's damages claims.*

With respect to his claims for damages, John Doe has made the following representations:

As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational, military career opportunities, economic injuries and other direct and consequential damages. (Plaintiff's Amended Complaint, ECF No. 51, at ¶124).

As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational, athletic and career opportunities, economic injuries and other direct and consequential damages. (Plaintiff's Amended Complaint, ECF No. 51, at ¶154).

Plaintiff John Doe claims the following damages: in an amount to be determined at trial, which includes, without limitation: (1) Non-economic damages (physical well-being, emotional and psychological damages, damages to reputation) not subject to calculation, to be determined at trial. (Plaintiff's Initial Disclosures, ECF No. 125-2, p. 3).

Plaintiff John Doe claims the following damages: in an amount to be determined at trial, which includes, without limitation: (1) Non-economic damages (physical well-being, emotional and psychological damages, damages to reputation) not subject to calculation, to be determined at trial. (Plaintiff's Amended Initial Disclosures, ECF No. 125-3, p. 4).

(b) Emotional and Psychological Damages - $100,000. This amount is based upon a computation derived from considering jury instructions for awarding infliction of emotional distress damages. (Plaintiff's Second Amended Initial Disclosures, ECF No. 125-4, p. 5).

In all cases as set forth above, Plaintiff's emotional distress damages are "garden variety" emotional damages, "which is to say, damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct." *Awalt v. Marketti*, 287 F.R.D. 409, 418, (N.D. Ill. 2012). Such "garden variety" emotional distress damages are distinguishable from cases where a Plaintiff claims unusually severe distress, where the Plaintiff relies on confidential communications as part of their case, or where Plaintiff intends to offer expert testimony on emotional damages. *Id.* at 417.

John Doe has not made a claim for damages for unusually severe emotional distress. He has merely made a claim for emotional distress damages resulting from the logical consequences of Defendants' actions which are the underlying subject of this litigation. Neither does Plaintiff plan to introduce expert testimony with respect to the issue of Mr. Perry's emotional damages. Therefore, Plaintiff's emotional distress claims should be characterized as "garden variety" emotional distress damages claims.

2. *Applicable Law with Respect to Waiver of Privilege.*

Since the Supreme Court's ruling in *Jaffe v. Redmond*, 518 U.S. 1 (1996), "most courts have held that claims of garden variety emotional damage do not result in a waiver of the psychotherapist/ patient privilege." *Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011) (internal quotations omitted). Courts in the Seventh Circuit have preserved the privilege with respect to garden variety emotional damages, while precluding litigant's attempts to introduce evidence beyond simple emotional distress such as distress necessitating medical treatment. *See Awalt*, 287 F.R.D. at 419 (denying motion to compel production of mental health records based

on Plaintiff's allegation of mere garden variety emotional damages); *see also Hucko v. City of Oak Forest*, 185 F.R.D. 526, 531, (N.D. Ill. 1999) ("plaintiff who alleges emotional pain and suffering damages . . . does not *ipso facto* give up the privilege in confidential communications with psychotherapists concerning his mental state"); *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309, (N.D. Ill. 1999).

While the Seventh Circuit has not been entirely consistent on this issue, *see Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006) and *Taylor v. City of Chicago*, LEXIS 62620 (N.D. Ill. 2016), subsequent cases have declined to follow these precedents precisely. *See Johnson v. Rogers*, 2018 U.S. LEXIS 233173 *10 (S.D. Ind.) (stating "The Seventh Circuit has not explicitly stated its position on when the privilege is waived", and the Seventh Circuit views the privilege waived either when emotional distress damages are sought or when more than "garden variety" claims are sought); *see also Awalt v. Marketti*, 287 F.R.D. 409 (N.D. Ill. 2012).

3. *Assertion of Privilege is Timely.*

Plaintiff John Doe asserts his privilege and lack of waiver in his Reply Brief in Support of Movants' Motion to Quash (ECF No. 127, p. 2). Regardless of whether Plaintiff explicitly asserted his privilege or at what time Plaintiff made his assertion of privilege, Movants are nevertheless required to assert the privilege on behalf of their client in absence of evidence that John Doe has waived the privilege. (*See* Movants' Motion to Quash, ECF No. 115, p. 4). Movants' assertion of the privilege is independent of Plaintiff's assertion and does not require Plaintiff's express consent nor is it dependent on the time Plaintiff expressly asserts the privilege. Movants' are required to assert the privilege on Plaintiff's behalf unless and until Plaintiff has communicated his waiver of the privilege to them. *See Sowell v. Dominquez*, 2013 WL 5913806 *19 (N.D. Ind.) (authority to assert privilege is presumed in absence of evidence to the contrary);

*see also* Perry Declaration, Exhibit A, at ¶9. Since John Doe has not communicated waiver of the privilege to Movants and has instead explicitly asserted his privilege (*see* Plaintiff's Assertion of Privilege, ECF No.124), Movants' have properly asserted the privilege on Plaintiff's behalf.

4. *Mr. Perry is Psychotherapist Under Jaffe.*

While the Seventh Circuit has not ruled explicitly on the status of non-licensed counselors with respect to *Jaffe*, the basis for the privilege as set forth in *Jaffe*, the facts of this case, and in-circuit decisions combine to support extension of the privilege to Mr. Perry.

*Jaffe* noted that a counselor's ability to help patients "is completely dependent upon [the patients'] willingness and ability to talk freely" . . . making it impossible "to function without being able to assure . . . patients of confidentiality." *Jaffe* at 16. As set forth in his declaration, Mr. Perry served as John Doe's counselor without oversight or involvement from any other FCC employee and was John Doe's counselor in the fullest sense of the word. (Perry Declaration, Exhibit A, at ¶¶ 10-12.) Extension of the privilege to Mr. Perry meets the public and private interests set forth in *Jaffe* of "facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Jaffe* at 17. In this instance, Mr. Perry's status as a non-licensed counselor in no way weighs against those interests since he served as John Doe's counselor to the same extent that a licensed counselor would have and both John Doe and Mr. Perry expected that their confidential communications would be protected. (*See* Perry Declaration, Exhibit A, at ¶¶ 6-8).

*United States v. Schwensow*, 942 F. Supp. 402 (E.D. Wis. 1996), cited by Defendants in support of their position that the privilege should not extend to Mr. Perry, would likely have been decided differently based on the facts in the instant case. *Schwensow* involved a Plaintiff who walked into an Alcoholics Anonymous ("AA") office and asked to use a telephone to call the

health department. *Id.* at 405. Schwensow spoke with two telephone hotline volunteers in the AA office who directed Schwensow to the telephone to place the phone call. *Id.* The AA office in question did not provide counseling sessions and the two volunteers were not counselors of any kind, nor were there any indications that licensed counselors were present in the office. *Id.* Schwensow had incidental discussions with the volunteers, one of whom drove him to a public detox facility. *Id.* Schwensow later sought to have his conversations with the volunteers suppressed based on the psychotherapist-patient privilege. The court denied Schwensow's motion to suppress because: 1) the volunteers did not possess the credentials of counselors and did not hold themselves out as such, 2) Schwensow did not approach the AA office for counseling services but to use the telephone, and 3) Schwensow's communications with the volunteers were not of a confidential nature that would be protected under the privilege. *Id.* at 406-08.

The court in *Schwensow* also looked to state law for guidance. Wisconsin's privilege did not explicitly apply to non-licensed counselors but included within the scope of the privilege, "persons reasonably believed by the patient to be physicians, professional counselors, psychologists, registered nurses and social workers." *Id.* at 407. The opinion further cited the relevant statute which stated, "The patient's objectively reasonable perceptions and expectations of the medical provider are the proper gauge of the scope" of the privilege. *Id.* (internal citations omitted). Based on Mr. Perry's interactions with John Doe, the *Schwensow* court would likely have ruled differently since it is undisputed that Mr. Perry was John Doe's counselor, reasonable to conclude that John Doe viewed Mr. Perry as such, and because Mr. Perry and John Doe's communications were confidential and for the purpose of John Doe receiving counseling.

The Seventh Circuit affirmed *Schwensow* on appeal, 151 F.3d 650 (7th Cir. 1998), but declined to take a position on the lower court's adoption of state law, indicating "We are not convinced that the district court's reliance on state law was correct." *Id.* at 657 n.4. Furthermore, the Seventh Circuit upheld the lower court decision on a broad number of factual grounds without indicating which were decisive or most important. Other than not being a licensed counselor, Mr. Perry bears no similarities to the volunteers in *Schwensow*. Nor do the other facts in *Schwensow* support a similar holding in the present case. John Doe engaged Mr. Perry for the purpose of counseling services. Mr. Perry provided such services with the expectation of confidentiality by John Doe, serving as John Doe's sole counselor. And the nature of their communications were confidential. All these factors weigh against extending *Schwensow* to the present case.

Similarly, based on the Seventh Circuit declining to affirm the lower court's application of state law, Indiana state law should not apply or be considered here since a federal privilege is at issue. While Mr. Perry rightfully relies on state law with respect to the statutory exceptions to confidentiality (Movant's Motion to Quash, ECF No. 115, p. 2), as well as on his ethical obligations with respect to confidentiality (Perry Declaration, Exhibit A, ¶9), Indiana privilege law is not applicable in federal court pursuant to Fed. R. Civ. P. 501.

Because extension of the privilege to Mr. Perry is supported by the rationale for creation of the privilege and the public and private policy interests as set forth in *Jaffe*, and is also supported by the nature and substance of the communications at issue in this Motion, classification of Mr. Perry as a psychotherapist and application of the psychotherapist-therapist privilege to his confidential communications with John Doe is warranted.

**III. Service of the Subpoena.**

Mr. Perry and other FCC employees dispute the factual allegations with respect to the service of the subpoena on Mr. Perry and Defendants' attempts to schedule Mr. Perry's deposition, as set forth in Defendants' Response Brief and the supporting exhibits. Movants' disputations are set forth in the attached Exhibits A, B, and C, and summarized below as follows:

- FCC received no phone calls from the process server attempting to schedule a time to serve a subpoena on Mr. Perry. (Juhl Declaration at Ex. B, ¶7).
- When the process server arrived at FCC on September 17, 2020, the process server did not ask if the receptionist would accept service of a subpoena on behalf of Mr. Perry. (Morris Declaration at Ex. C, ¶10).
- The FCC receptionist did not state that Mr. Perry was or was not available. (Morris Declaration at Ex. C, ¶11).
- Mr. Perry received only two phone calls from a Stuart & Branigin employee, both of which he returned. (Perry Declaration at Ex. A, ¶¶17, 21).
- The process server banged loudly on Mr. Perry's office door twice, interrupting a sensitive and confidential counseling session and causing Mr. Perry to call the police. (Perry Declaration at Ex. A, ¶¶31-32, 37).
- Mr. Perry neither refused to accept a subpoena nor yelled at the process server or the police officer, but indicated he was in a confidential counseling session and could not speak with them until his session was completed. (Perry Declaration at Ex. A, ¶¶39, 45-46).

Mr. Perry continues to assert that service was improper for the reasons set forth on pages

7-8 of Movants' Motion to Quash (ECF No. 115). Specifically, Movants assert that, based on the facts of this case, sensible, alternative options were available for service that would have been effective and that would not have involved Mr. Perry calling the police to prevent unlawful trespass or the interruption of Mr. Perry's private and confidential counseling session with his client.

**IV.  The Subpoena was Untimely.**

Defendants Response brief does not contest Movants' claim that the subpoena was served on September 17, 2020, with a command for Mr. Perry to appear for a deposition seven days later on September 24, 2020. As set forth in Section III *supra*, Movants dispute Defendants' assertions that Mr. Perry "dodged scheduling efforts", "dodged service", "refused to cooperate with scheduling efforts", and sought to "evade personal service." (Defendants' Reply Brief, ECF No. 125, p. 14, 15). Movants complete response to Defendants' assertions with respect to attempted service of the subpoena and timeliness are set forth in the Declarations of FCC employees (Exhibits A, B, and C attached hereto). Movants' hereby restate their claim that the subpoena was untimely and request this court enforce the requirements of N.D. Ind. L.R. 30-1, Scheduling Depositions, with respect to the subpoena attempted to be served by Defendants' on September 17, 2020, as well as with respect to any future subpoena.

**V.  Motion for Sanctions.**

In their Response Brief, Defendants' request an award for attorneys fees and costs in response to the Motion to Quash which Defendants' argue lacks substantial justification. (Defendants' Response Brief, ECF No. 125, p. 16). Movants respectfully request the court deny Defendants' request in this regard. Movants have set forth legal and ethical rationales for not complying with Defendants' subpoena in Movants' Motion to Quash, including the privileged

nature of Mr. Perry's communications, his status as a psychotherapist under *Jaffe*, improper service, and the ethical requirements of Mr. Perry's profession. (*See* Perry Declaration, Exhibit A, ¶9). Furthermore, Movants have complied with the requirements of Fed. R. Civ. P. 45 with respect to both their objections to the subpoena for documents and the subpoena for deposition testimony.

## CONCLUSION

For the above stated reasons, Mr. Perry and FCC move that the Court quash the subpoena for Mr. Perry to testify, served on him on September 17, 2020.

Respectfully submitted,

By: _____

Sally Wagenmaker
Attorney at Law
Wagenmaker & Oberly
53 W. Jackson Blvd., Suite 1734
Chicago, IL 60604
312-626-1600 (phone)
312-626-1610 (fax)
sally@wagenmakerlaw.com