IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) CIVIL ACTION |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| PURDUE UNIVERSITY, PURDUE | ) |
| UNIVERSITY BOARD OF TRUSTEES, | ) |
| MITCHELL ELIAS DANIELS, JR., in | ) |
| his official capacity as President of Purdue | ) No. 2:17-cv-33-JPK |
| University, ALYSA CHRISTMAS | ) |
| ROLLOCK, in her official capacity at | ) |
| Purdue University, KATHERINE | ) |
| SERMERSHEIM, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF NOEL PERRY

I, Noel Perry, being duly sworn on my oath declare as follows.

1. I am an adult residing in the state of Indiana and under no legal disability.

2. I have personal knowledge of the facts stated in this declaration.

3. I am employed as a counselor with Family Concern Counseling ("FCC").

4. I am pursuing state licensure in Indiana and have completed 2500 of the required 3000 hours for state licensure.

5. During my counseling career, I have counseled 140 clients.

6. I invest significant personal time and energy into my clients, and my patients have full confidence that their communications with me are privileged unless specifically excepted by statute.

1

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A: Declaration of Noel Perry

7. I rely on the confidential nature of my communications with my clients in order to protect and enhance my professional relationships with my clients and my ability to best serve them.

8. I believe that disclosure of my confidential communications with any single client would impede my ability to effectively serve all my clients, who could not be assured their communications with me are protected from disclosure, thus undermining the confidential relationship necessary for successful treatment.

9. As a professional mental health counselor, I am bound by the ethics of my profession, including the American Counseling Association Code of Ethics which requires counselors to take steps to prohibit disclosure of confidential or privileged information when ordered by a court to release such information, and to seek clients informed consent and take steps to prohibit or limit disclosure as narrowly as possible because of potential harm to the client relationship. (ACA Code of Ethics 2014, Section B.2.d.)

10. I counseled Plaintiff John Doe from 2018 through 2020.

11. I served as John Doe's sole counselor at FCC and conducted all sessions with him privately.

12. At no time during my counseling sessions with John Doe was another FCC counselor present, nor to the best of my knowledge was John Doe a client of any other counselor at FCC.

13. I have reviewed the Declarations of Pam Gellenbeck (ECF No. 125-7) and Jay Saine (ECF No. 125-8) and dispute assertions therein.

14. I received voice messages from Pam Gellenbeck with the Stuart & Branigin law

2

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A: Declaration of Noel Perry

firm on September 2, 2020, and on September 8, 2020. Both messages are reflected in my call log, attached hereto as Attachment 1 (see calls from phone number 765-423-1561).

15. The phone number 765-423-1561 is one of the phone numbers for Stuart & Branigin's Lafayette, IN office.

16. In her September 2, 2020, message, Ms. Gellenbeck stated that she would like to talk with me to schedule a meeting regarding my client John Doe. Ms. Gellenbeck did not state that the meeting she was requesting would involve a deposition.

17. I returned Ms. Gellenbeck's call the next day (September 3, 2020), left a message indicating that I was returning her call, and stated that I was sorry I missed her call.

18. Ms. Gellenbeck called again on September 8, 2020, and left a message stating that she would like to schedule a deposition at which I would provide testimony in relation to my client John Doe.

19. Ms. Gellenbeck provided a range of dates during which her firm was hoping to schedule the deposition. She did not request dates on which I would be available.

20. In this message Ms. Gellenbeck also provided her email address as another form of communication.

21. I returned Ms. Gellenbeck's call and advised her that I sit with clients back to back from 9 am until 5 pm, and that the best time to call me would be before 9 am or after 5 pm.

22. I did not receive any further communications of any sort from Ms. Gellenbeck or any other employee of Stuart & Branigan.

3

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A: Declaration of Noel Perry

23. On September 17, 2020, between the hours of 9 am and 5 pm, I was counseling clients in my office, located in Building B, adjacent to FCC's main building (Building A), located at 2004 Valparaiso Street in Valparaiso.

24. I had clients scheduled at the beginning of every hour on September 17th, with the exception of 12 pm - 1 pm when I take lunch.

25. I have approximately a five-minute break between counseling sessions.

26. My name is not posted anywhere on the outside of FCC's buildings or in FCC's lobby areas.

27. There is no place in either of FCC's buildings or on FCC's web page indicating the location of my office within the FCC buildings in Valparaiso.

28. On September 17, 2020, the process server entered the outer office door of Building B.

29. The outer office door of Building B has a sign posted stating that masks are required for entry and that visitors must contact a counselor and wait for them to let them in the building, in compliance with FCC's COVID-19 policy. A picture of the sign is attached hereto as Attachment 2.

30. Rather than abide by these instructions, the process server walked through the lobby and waiting area of Building B and proceeded through the building until he found a door with my name on it.

31. Upon reaching my door, the process server banged loudly on my door which was fully closed.

32. At this time, I was in a private session with a client who was struggling with suicidal ideation.

4

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A: Declaration of Noel Perry

33. My door was not cracked, ajar, or open in any way.

34. FCC's policy is to never leave our doors open during sessions, in order to protect our clients' privacy and confidentiality.

35. FCC also has sound machines in the hallway to cover any conversations with clients, in further attempts to protect our clients' privacy and confidentiality.

36. After hearing the banging at my door, I looked through the window of my door and saw an unfamiliar man dressed in a blue baseball cap, mirrored sunglasses, a bandana over his mouth and nose, and an Army camouflage shirt.

37. After he banged loudly on the door a second time, I locked my door and called the police.

38. I continued my session with my client, and the police arrived several minutes later and knocked on my still closed door.

39. I opened the door approximately 2 or 3 inches to protect the privacy of my client and stated," I am in a private emergency session and this will have to wait until after the session is done".

40. I then closed my door.

41. I then returned to my client and had to calm them down as a result of this rude interruption in the middle of his crisis.

42. I did not see the subpoena until I opened my door at the end of my counseling session, at which point I saw the subpoena wedged between the door and frame.

43. The process server never spoke a word to me to announce himself or why he was there.

44. At no time did the process server or police officer state that they were there to

5

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A: Declaration of Noel Perry

serve a subpoena.

45. At no point did I push the subpoena away with my arm or hand.

46. At no time did I yell or raise my voice in response to the process server or police officer's actions.

I declare under the penalties of perjury that the foregoing facts are true.

Date: 10/14/20

6

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A: Declaration of Noel Perry

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A, Attachment 1: Perry Call Log

| | | |
|---|---|---|
| 📞✕ ▬▬▬ Mobile (1:52) | 9/14/20 | ⓘ |
| 📞✕ ▬▬▬ Mobile (0:05) | 9/10/20 | ⓘ |
| 📞✕ ▬▬▬ Mobile (0:41) | 9/9/20 | ⓘ |
| 📞✕ **(765) 423-1561** Lafayette, IN (1:58) | 9/8/20 | ⓘ |
| 📞✕ ▬▬▬ Mobile (0:36) | 9/3/20 | ⓘ |
| 📞✕ **(765) 423-1561** Lafayette, IN (1:31) | 9/2/20 | ⓘ |
| 📞✕ ▬▬▬ Direct Number (0:23) | 9/2/20 | ⓘ |
| 📞✕ ▬▬▬ Direct Number (0:25) | 9/2/20 | ⓘ |
| 📞✕ ▬▬▬ Extension (2:20) | 9/1/20 | ⓘ |
| 📞✕ ▬▬▬ Extension (0:22) | 8/31/20 | ⓘ |
| 📞✕ ▬▬▬ Charlottesville, IN (1:50) | 8/27/20 | ⓘ |

Doe v. Purdue University et al. (2:17-cv-33-JPK)
Reply in Support of Motion to Quash Subpoena
Exhibit A, Attachment 2: COVID Entry Sign

