IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) |
| **DANIELS, JR.,** in his official capacity as President of | ) |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### REQUEST FOR ISSUANCE OF ORDER TO SHOW CAUSE REGARDING PLAINTIFF'S NON-COMPLIANCE WITH ORDER AND SPOLIATION OF EVIDENCE

Defendants, by counsel, file this Request regarding Plaintiff John Doe's spoliation of Snapchat data covered by the Court's recent Order and John's previous stipulation to produce. On September 24, 2020, after a hearing on Defendants' Motion for Sanctions, this Court ordered John "to provide Snapchat data to Defendants consistent with the [DE 89] Joint Stipulation of Pending Motions to Compel." ECF No. 117. In response, John produced only a subset of his Snapchat data. He now admits that between July and September he intentionally destroyed a subset of photos and videos in that data.

Defendants respectfully submit that John should be ordered, pursuant to Rules of Civil Procedure 37(b)(2)(A) and 37(b)(2)(C), to show cause why his claim for relief based on an alleged liberty interest in his name and reputation should not be stricken due to his spoliation of evidence.

1

This Court has noted: "Count I of the Amended Complaint alleges a claim under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 for a denial of Plaintiff's protected liberty interest in 'his good name, reputation, honor, and integrity' without due process. *Id.* at ¶ 86. *Id.* at ¶ 86." ECF No. 84 at 4. It has become apparent that John Doe is obstructing scrutiny of his name, reputation, honor and integrity. It is reasonable to believe that the destroyed photos and videos would, if discovered, have impeached John's reputational assertions.

A.   **History of Snapchat Discovery.**

John has long attempted to hide his Snapchat records from the defense. In response to Defendants' first request for interrogatories (September 2019), which asked him to identify the social media applications he had used from August 2015 to the present, John identified only his Instagram account and a deleted Facebook account. ECF No. 81-2, at 4. John's answer was never supplemented. It was only through Defendants' counsels' diligence and investigation that they discovered that Plaintiff had a Snapchat account. After John refused to produce his Snapchat records pursuant to Defendants' second request for production, ECF No. 81-3, at 5-6. Defendants filed their Motion to Compel [ECF No. 80], seeking an order compelling John to produce his Snapchat records. *See* ECF Nos. 80-81; *see also* ECF No. 81, at 6 n.1.

On June 2, 2020, the parties filed a "Joint Stipulation on Pending Motions to Compel" [ECF No. 89]. In the stipulation, the parties agreed that John would produce a "complete data download of all . . . Snapchat data from his accounts, from August 2015 to the present," not later than June 15, 2020. ECF No. 89. This Court entered an order on June 3, 2020, granting "the relief implied in the parties' [89] Joint Stipulation . . . ." ECF No. 90.

As detailed in Defendants' earlier brief in support of their motion for discovery sanctions, ECF No. 93, at 1-6, John's first response to Defendants' discovery of his Snapchat account was that it only contains "metadata", not any photos or videos. John and his counsel emphasized this

2

point repeatedly, while under oath or in submissions to the Court or Defendants' counsel. *E.g.*, [Plaintiff's representations] ECF 98-2, at 2 ("Snapchat does not archive content files"), 3 ("Snapchat does not archive content files and does not retain user information past 30 days"), 4 ("Content shared to your story disappears after 24 hours"), 4 ("*The data I downloaded from Snapchat's servers regarding my profile contains no images, no videos and no chats contained within it.*") (emphasis added), 4 ("The files with any kind information [*sic*] are labeled 'account,' 'chat_history,' 'snap_history,' 'story_history,' 'friends,' and 'user_profile.' *All other files in the folder are blank.*") (emphasis added); [Plaintiff's counsel's representations] *e.g.*, ECF 98, at 2 ("Snap does not archive content files that can be downloaded at Plaintiff's end . . . ."), 3 ("there are not Snapchat content files that can be produced by Plaintiff"), 4 and 6 ("Snapchat does not archive content files"), 10 ("Snapchat . . . does not preserve user content").

On August 18, 2020, John testified under oath at his deposition that his Snapchat data did not contain any photos or videos or other information older than 30 days:

Q: And what [social media did you review]?

A: There was an Instagram download . . . and I looked over that. And there was a Snapchat file[] that I was also directed to download and send, and that I did not send, but I did look at it as I reviewed with my lawyer whether or not we should send that, whether it was relevant to the case or not.

    I did not review it specifically for this deposition, but it was fairly recently that I did look at it.

Q When you looked at the Snapchat file, what did you [see]?

A Metadata.

Q Can you be more specific?

A There is a list of very small files that contains no content, there are no messages, *no pictures, no videos* on that Snapchat file that they allow you to download. *It only contains time stamped metadata for the past 30 days from the time that the file was downloaded.* And I assume that's from the servers.

\*\*\*

> So there were more files that were empty from my download. So I don't recall what placeholders were because they weren't relevant to my file. But the entire file was less than several megabytes. *It didn't contain any content of any sort*.

**Ex. A** (emphasis added).

On September 30, 2020, John produced a Snapchat download which contained broken links and downloads to over 86 photos and videos, ranging from 2016-2020. This visual media is contained in a subfile marked "memories_history." A warning printed at the top of this download states: "Download links below will expire 7 days from when your data file was made available to you." The September 30 production was downloaded on July 16, 2020. As a result, defense counsel could not access any media because the links had since expired. A true and accurate copy of a printout summarizing these photos and videos from the September 30 production is attached as **Exhibit B**.

When defense counsel notified John's counsel on October 1, 2020 about the broken links, John's counsel promised to investigate.

On October 7, 2020, John produced a new Snapchat data download with working links. However, that new download is missing 11 videos and photos that were listed in the September 30 production. Rather than the links being non-functioning like the first time, the second download entirely omits these videos and photos. A true and accurate copy of the printout summarizing the photos and videos for the October 7, 2020 download is attached as **Exhibit C**.

When notified of the missing items, on October 8, 2020 John's counsel again promised to investigate. On October 14, 2020, John's counsel produced a PDF entitled "Plaintiff John Doe on Snapchat Production," a one page, self-styled "explanation" from John concerning the missing media. In his "explanation," John admitted to recently deleting the 11 missing photos and videos,

citing a desire to "clear space and memory on his phone." He also told Defendants for the first time that "When I first received the initial zip file . . . the html links in the file did not work for me. I tried accessing them on four different internet browsers . . . with no success. I characterized as metadata the Snapchat zip file from the data I could access and read . . . ." A true and accurate copy of this 'explanation' is attached as **Exhibit D**.

Subsequent efforts to meet-and-confer were fruitless. *See* **Ex. E**.[1]

**B.** **John's destruction of Snapchat photos and videos is spoliation.**

A court may impose spoliation sanction under Federal Rule of Civil Procedure 37 or under its own inherent powers. *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 U.S. Dist. LEXIS 64281, at *28 (S.D. Ind. May 18, 2015). Rule 37 applies when a party violates a court order. *Id.* Rule 37(b)(2)(A) provides:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or

---

[1] A list of the missing photos and videos was provided to Plaintiff's counsel on October 8, 2020, via email. A copy of this email is included in **Exhibit E**. The missing media include photos and videos from 2020, 2019, and 2016.

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Subpart (b)(2)(C) provides for the disobedient party and/or their attorney to pay the reasonable expenses, including attorney's fees, caused by the failure. Because John's claims are federal questions. Federal common law on spoliation applies. *E.g.*, *Coates v. Johnson & Johnson*, 756 F.2d 524, 550-51 (7th Cir. 1985) (applying federal law of spoliation in a federal question matter); *see also Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 807 (7th Cir. 1995) (diversity action is governed by state law); *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (holding that spoliation sanctions in federal question cases are governed by federal law and summarizing out-of-circuit authority for the same proposition).

A Rule 37 sanction for disobeying a court order (on the basis of spoliation) is proper when two elements are met: (1) the spoliating-party had a duty to preserve the evidence and (2) the spoliated evidence was destroyed by the spoliating-party's willfulness, bad faith, or fault. *Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, 2018 U.S. Dist. LEXIS 172436, *20 (N.D. Ind. Oct. 5, 2018); *see also Trask-Morton v. Motel 6 Operating Ltd. P'ship*, 534 F.3d 672, 681 (7th Cir. 2008). When considering the appropriateness of sanctions, the court issues a sanction that is proportionate to the party's misconduct, taking into account whether a less severe sanction will remedy the damage. *Apex Colors, Inc*, 2018 U.S. Dist. LEXIS 172436, at *20; *see also Banks v. Enova Fin.*, No. 10 C 4060, 2012 U.S. Dist. LEXIS 173649, *17 (N. D. Ill. July 10, 2012) (prejudice is not a requisite element to imposing sanctions, but may be considered in fashioning an appropriate remedy). However, "[t]he prevailing rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." *Coates*, 756 F.2d at 551 (citing

multiple cases). This Court has latitude to fashion a sanction, and the examples in Rule 37(b)(2)(A) provide what the sanction(s) "*may* include." (emphasis added).

The duty to preserve evidence begins when the party "knew, or should have known, that litigation was imminent." *Trask-Morton*, 534 F.3d at 681.

In this context, "'bad faith' means destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). What constitutes "bad faith" is a question of fact and the trier of fact "is entitled to draw any reasonable inference." *Id.*

As discussed by this Court in *Apex Colors*:

> Bad faith "is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." *Marrocco v. Gen. Motors*, 966 F.2d 220, 224 (7th Cir.1992); *see also Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) (recognizing that willfulness and bad faith are associated with conduct that is intentional or reckless). In contrast, fault does not go to the party's intent but "presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Ramirez*, 845 F.3d at 776 (quoting *Marrocco*, 966 F.2d at 224; *Long*, 213 F.3d at 987 ("Fault in this context suggests objectively unreasonable behavior[.]"); *e360 Insight, Inc.*, 658 F.3d at 642-43 (distinguishing the degree of fault necessary to support default from that necessary to support lesser sanctions)); *see also Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (noting that fault is "unconcerned with the non-complying party's subjective motivation").

2018 U.S. Dist. LEXIS 172436, at *19-20.

John's destruction of Court-ordered Snapchat files supports a finding that the Snapchat files were destroyed due to John's willfulness, bad faith, *and* fault. *E.g.*, *id.*, at *21.

John had a duty to preserve his Snapchat records. John filed this case in January 2017, and he deleted the Snapchat records in or after July 2020. On February 15, 2017, this Court issued an Order [ECF No. 10] commanding each party and attorney to "take reasonable steps to preserve electronically stored information (ESI) that is relevant to any claim or defense in this case, whether

or not the information is admissible at trial." The Order also related back to "the point in time when the party or attorney reasonably anticipated litigation about these matters."

John and his counsel knew as recently as Defendants' first and second requests for production, served on September 25, 2019, and March 11, 2020, respectively, that Defendants were seeking John's social media and Snapchat records. Regardless of John or his counsel's opinion on the relevance or admissibility of these electronic records, he had a duty to this Court and the Defendants to preserve them. As explained by one court:

> Surely, if a discovery request gives rise to a duty to preserve evidence, such a motion [seeking the turnover of the materials] does as well. And all of the claimed discarding occurred after that petition was filed. Moreover, all but one of the claimed acts of discarding happened after my report and recommendation recommending the turnover of the computers for forensic examination. In short, if the [spoliating parties] were not on notice from the moment the case was filed that they needed to preserve their computers, it is beyond rational debate that they were on notice from the time of the preliminary injunction hearing and if not then, then by the time of the filing of the first contempt petition. The evidence is clear and convincing that the [spoliating parties] cynically and intentionally destroyed evidence they had a duty to retain.

*Am. Family Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2009 U.S. Dist. LEXIS 32519, at *37-38 (N.D. Ill. Feb. 20, 2009). John had the unequivocal duty to preserve his Snapchat records.

John has admitted that his destruction of evidence was willful. Consider the history of discovery up to this Court's September 24th Order. John did not willingly disclose his Snapchat account. He omitted it from his interrogatory answers. Defendants only discovered its existence through their own efforts. After John stipulated to produce his Snapchat data, John resorted to delay. After the deadline for the stipulated production passed (June 15, 2020), ECF Nos. 89-90, Defendants repeatedly contacted John's counsel for several weeks to obtain the Snapchat data, to no avail. *See* ECF No. 93, at 2-6.

John then expressly reneged on the stipulation and resorted to the false argument that his Snapchat account only contained "metadata." John made unequivocal, sworn representations that there was nothing to be produced, including photos and videos. *See id.*; *e.g.*, ECF 98-2, at 3 ("Snapchat does not archive content files and does not retain user information past 30 days"), 4 ("*The data I downloaded from Snapchat's servers regarding my profile contains no images, no videos and no chats contained within it.*") (emphasis added); *see also* **Ex. A**. John's sworn declaration was executed on July 31, 2020, and his deposition was taken on August 18, 2020. The portion of Plaintiff's Snapchat data received on September 30, 2020 indicates that John downloaded his Snapchat data *at least* as early as June 16, 2020, at 10:11 p.m. **Ex. B**.

As of June 16, 2020, John had links to over 78 photos and videos from 2016-2020. This Court ordered John to produce his Snapchat on September 24, 2020. Six days later, John produced what he falsely represented was a complete copy of his Snapchat download. When he produced a set of working links on October 7, 2020, Defendants discovered that 11 photos and videos had been deleted. Defendants challenged John to account for this deletion, and he admitted to deleting the photos and videos.

John's willful destruction has a bad-faith motivation. John lied about whether he had Snapchat photos and videos, then—aware that Defendants were seeking them as evidence—John deleted some of them. The deletion must have occurred sometime between the original download date (June 16, 2020), when the media was memorialized, and October 7, 2020. There is no credible alternate explanation for John's conduct. He destroyed evidence that he does not want the Defendants and the Court to see.

John knew what he was deleting. He first viewed the photos and videos and then deleted them. John claims that he decided to delete "some images and videos off my phone that I did not

care for anymore." **Ex. D**. Thus, John admits that the photos and videos were deleted because of their content. Based on John's obstructive behavior and the circumstances and timing of his deletion of the Snapchat photos and videos, there can be no doubt that John's intent was to prevent the Defendants and the Court from seeing that content. The inescapable conclusion is that John acted willfully and in bad faith when he deleted his Snapchat media. *See, e.g.*, *Apex Colors*, 2018 U.S. Dist. LEXIS 172436, at *20-*21; *Roth*, 2009 U.S. Dist. LEXIS 32519, at *38-*40.

As a lesser included *mens rea*, there can be no question that John's fault, *i.e.*, his objectively unreasonable judgment, also factored in the destruction of these files. Prior to June 16th, John received multiple discovery requests for his Snapchat records and entered a stipulation to provide his entire Snapchat download. Then, sometime between June and September, he deleted content that he no longer "cared for" in order to purportedly improve his phone's performance. John knew through his counsel that federal law required him to take reasonable steps to protect these files, *see Roth*, 2009 U.S. Dist. LEXIS 32519, at *39, and protecting and preserving those photos and videos would not have required any significant effort or cost for him if he truly wanted to delete content from his personal devices. *See id* at *39-*40 (noting it would not have required extraordinary effort or undue burden for spoliating party to preserve computer equipment and hard drive). John's actions are not just a simple mistake or carelessness, they are objectively unreasonable.

John has repeatedly alleged that the Defendants destroyed his honor, causing him to sustain tremendous damages to his reputation. *E.g.*, ECF No. 51, at ¶1 ("John Doe, a now suspended student . . . despite a previously unblemished disciplinary record"), at ¶86 ("A person has a protected liberty interest in his good name, reputation, honor, and integrity . . . . Defendants inflicted reputational harm . . . ."), at ¶118 ("John Doe continues to suffer ongoing harm, including damages to his reputation . . . ."); at 66 (prayer for relief for damages to reputation); ECF No. 125-

2, at 3 (asserting non-economic damages including damages to reputation); ECF No. 125-3, at 4 (same); ECF No. 125-4, at 5 (asserting $250,000 in reputational damage claims). Defendants dispute that assertion and are entitled to discovery on facts which would bear on John's claim, including how he conducts himself in the public sphere, including through social media.[2] If John conducts himself inappropriately in social media, then there is strong reason to question how the university's discovery and punishment of that conduct harmed him or derailed his career.

In a recent meet-and-confer exchange regarding a draft version of this motion, Plaintiff's counsel has contended that the destroyed videos and photos were irrelevant. Relevance arguments cannot excuse spoliation. First, "[w]hen evidence is destroyed [or rendered unavailable] in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance." *Provience v. City of Detroit*, No. 10-11719, 2011 U.S. Dist. LEXIS 153788, at *33 (E.D. Mich. Nov. 28, 2011) (quoting *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.*, No. 06-CV-13143, 2009 U.S. Dist. LEXIS 31555, at *19 (E.D. Mich. Apr. 14, 2009)) (internal quotation marks omitted) (alteration in original); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (inference that destroyed material contained adverse information may be drawn if documents were destroyed intentionally or in bad faith). Second, John's self-serving characterizations of the videos and photos are inadmissible to prove their contents. Fed. R. Evid. 1002. Finally, this Court recognized the untimeliness of relevance arguments during the September 24, 2020 telephonic hearing on John's then-pending refusal to produce his Snapchat files. *See* ECF No. 117. As observed by this Court, John waived his relevance objection when he stipulated to production. *See id.*; *see also* Fed. R. Evid. 26(b)(1) (relevance is a discovery-stage objection); *Spinnenweber v. Laducer*, No.

---

[2] The population—especially young adults like John—spend increasing amounts of time on social media platforms. *See* Social Media Fact Sheet, Pew Research Center (June 12 2019), https://www.pewresearch.org/internet/fact-sheet/social-media/ (last visited October 20, 2020).

2:14-CV-101-JEM, 2020 U.S. Dist. LEXIS 14577, *3-*5 (N.D. Ind. Jan. 29, 2020) (stipulations are binding, absent manifest injustice or mistake of law or fact); ECF No. 89-90.

John has put his allegedly damaged reputation at issue in this case. By opening the door to character evidence, he has also opened the door to a sanction for spoliation of evidence probative of the truth of his self-portrait. Consequently, by destroying photo and video evidence that could have impeached his assertion of his reputation and good name, John has chosen to undercut the judicial process of assessing his reputational claim.

**C.     Conclusion**

For these reasons, Defendants respectfully submit that John Doe should be ordered to show cause why his claim for relief based on his alleged liberty interest in his name and reputation should not be stricken and why he should not be held in contempt of this Court's most recent Order regarding the production of his Snapchat data.

Dated: October 26, 2020                              Respectfully submitted,

*/s/ Tyler L. Jones*
William P. Kealey, Attorney No. 18973-79
Tyler L. Jones, Attorney No. 34656-29
James F. Olds, Attorney No. 27989-53
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
            tlj@stuartlaw.com
            jfo@stuartlaw.com
Telephone: 765.423.1561
***Attorneys for Defendants***