**From:** Byler <philb@optonline.net>
**Sent:** Wednesday, September 30, 2020 9:13 PM
**To:** Kealey, William P. <WPK@stuartlaw.com>; Jones, Tyler L. <TLJ@stuartlaw.com>
**Subject:** Snapchat Metadata File

Dear Bill & Tyler:

Per the Court's Order of September 24, 2020, attached is the Snapchat metadata.

Phil Byler

EXHIBIT E

**From:** Byler <philb@optonline.net>
**Sent:** Monday, October 5, 2020 12:51 PM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>; Kealey, William P. <WPK@stuartlaw.com>
**Cc:** Gellenbeck, Pamela S. <PSG@stuartlaw.com>
**Subject:** RE: Snapchat Metadata File

Tyler:

To your item No. 2, I have already answered, but I want it to be clear that we produced what Snapchat "data" that existed as of the day of production to you.

To your item No. 1, I will have an answer and maybe a production in the next day.

- Phil Byler

> On October 1, 2020 at 9:00 AM "Jones, Tyler L." <TLJ@stuartlaw.com> wrote:
>
> Phil,
>
> I have briefly reviewed what you have sent.  Two things:
>
> 1. Some of the data download was not preserved in this zip file.  Specifically, if you go to "memories_history.html," this section will bring up 50+ videos and photos that normally is readily available to download.  These videos/photos range from dates as early as September 9, 2016 – June 2, 2020.  A warning at the top of the download warns that "Download links below will expire 7 days from when your data file was made available to you," which, according to the data text I read here, was July 16, 2020.  Thus, this link no longer makes these photos and videos available.  Please produce these missing photos and videos, which would normally be readily available to download from Snapchat zip files like this.

1

2. Though you and your client have characterized these materials as "metadata," the stipulation provides for a complete data download, and (as observed by Judge Kolar) does not differentiate between types of electronic data.  Please confirm that this is all of Plaintiff's Snapchat data, as provided for in the stipulation.

I look forward to your response.

Sincerely,

Tyler

**From:** Byler <philb@optonline.net>
**Sent:** Wednesday, September 30, 2020 9:13 PM
**To:** Kealey, William P. <WPK@stuartlaw.com>; Jones, Tyler L. <TLJ@stuartlaw.com>
**Subject:** Snapchat Metadata File

Dear Bill & Tyler:

Per the Court's Order of September 24, 2020, attached is the Snapchat metadata.

Phil Byler

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**From:** Byler <philb@optonline.net>
**Sent:** Friday, October 9, 2020 2:50 PM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>
**Subject:** RE: RE: Snapchat zip file

Tyler:

*It works fine.*

Phil

Philip A. Byler, Esq.

On October 9, 2020 at 2:37 PM "Jones, Tyler L." <TLJ@stuartlaw.com> wrote:

Phil,

I'll keep my phone open from 9-10 or 11-noon.  How does that work?

Tyler

**From:** Byler <philb@optonline.net>
**Sent:** Friday, October 9, 2020 2:20 PM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>
**Cc:** Kealey, William P. <WPK@stuartlaw.com>; Gellenbeck, Pamela S. <PSG@stuartlaw.com>
**Subject:** RE: RE: Snapchat zip file

Tyler:

1

I have a 10 am Court conference in another case.  That is the one time on Wednesday I have a conflict. So, is there another time on Wednesday available for you?

Phil

Philip A. Byer, Esq.

> On October 9, 2020 at 2:01 PM "Jones, Tyler L." <TLJ@stuartlaw.com> wrote:
>
> Phil,
>
> I will set aside time from 10 – 11 a.m. for a call.
>
> Enjoy your weekend.
>
> Tyler

---

**From:** Byler <philb@optonline.net>
**Sent:** Friday, October 9, 2020 10:08 AM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>
**Subject:** RE: RE: Snapchat zip file

Tyler:

Reserve time for us to talk on Wednesday.  Before then, I plan on providing to you an explanation of why there are apparently 11 of 86 videos and pictures not in the zip file.  Plaintiff did not go into the Snapchat server to delete anything.

Let me know about the deposition date.  I do have some other commitments, so you may want to get a couple of possibilities.

*Phil*

Philip A Byler, Esq.

On October 9, 2020 at 9:33 AM "Jones, Tyler L." <TLJ@stuartlaw.com>
wrote:

Phil,

I have availability for a phone call Wednesday afternoon
to discuss the RFA and—if necessary—the
missing/deleted/omitted Snapchat photos and videos.

We are working with our client on the deposition
notice.  We will get back with you on that person's
availability for a remote deposition.

Tyler

**From:** Byler <philb@optonline.net>
**Sent:** Thursday, October 8, 2020 1:39 PM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>; Kealey, William P.
<WPK@stuartlaw.com>; Gellenbeck, Pamela S. <PSG@stuartlaw.com>
**Subject:** Fwd: RE: Snapchat zip file

---------- Original Message ----------
From: Byler <philb@optonline.net>
To: "Jones, Tyler L." <TLJ@stuartlaw.com>
Date: October 8, 2020 at 1:37 PM
Subject: RE: Snapchat zip file

Tyler:

First of all, your charge that Plaintiff
intentionally deleted 11 out of 86 videos
and photos is false.  There has been no
spoliation.  You say "it appears" that
Plaintiff has intentionally deleted or
purposefully withheld the videos and
photos.  No, it does not, and Plaintiff has

3

not intentionally deleted or purposefully withheld 11 out of 86 videos and photos.  You are jumping to conclusions that will not bear closer scrutiny.  I have won a case defending against what were wrongly made charges of spoliation; you are missing a number of requirements for a spoliation case.  We should discuss, and this time, since you have raised the issue of spoliation, relevance is required and nothing in the social media production is relevant. But that is on top of the point that Plaintiff did not intentionally delete the referenced 11 videos and photographs.  I will, of course, discuss with Plaintiff in order to try to make sense of your unfounded assertions given how Snapchat works.

What do you mean you will respond to my Notice of Deposition for a custodian of records per the June 2, 2020 Joint Stipulation?  You agreed to it. You want to adjust the date, fine.

As for the RFAs, where did you get the idea you can just say "Denied"?  Rule 36(a)(4) states: "*If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter;* and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily

obtain is insufficient to enable it to admit or deny."  (Emphasis supplied.)

*Phil*

Philip A. Byler, Esq.

> On October 8, 2020 at 12:20 PM "Jones, Tyler L." <TLJ@stuartlaw.com> wrote:
>
> Phil,
>
> *First*, let's address Snapchat.  Your client's original preserved Snapchat download had a total of 86 photos and videos.  As we discussed previously, the link to those photos and videos was non-functioning so you produced what you represented was Plaintiff's complete Snapchat data file.  Defendants are able to access the newly produced data's videos and photos because the links are now working.
>
> Unfortunately, **videos and photos have been deleted or omitted from your October 7, 2020 production, that were in the September 30, 2020 production**.  Specifically, by comparing the listed photos and videos on the first production (9-30-20) versus the second production (10-7-20), at least eleven photos and videos are gone.  These include videos and photos from 2016, 2019, and

2020.  If you need a complete list of the deleted/omitted data, I will provide it at the end of this email.

It appears that Plaintiff has intentionally deleted or purposefully withheld this media, for reasons that we can only presume would be detrimental to his case.  We are inclined to bring these facts to the Judge's attention and discuss spoliation and potential sanctions, unless there is a compelling reason for these missing videos and photos.  Bill and I will be available at varying times next week to speak, if needed. If we have not received a satisfying explanation on these missing photos and videos (ordered by the Court to be produced) by **Thursday, October 15, 2020**, we will proceed with notifying the Court and seeking appropriate relief under the law.

*Second*, we are reviewing your deposition notice and will respond to that separately.

*Third*, we are happy to discuss Defendants' RFA responses with you, but before we can schedule a successful meet-and-confer, we need you to identify

6

why you believe the Responses
you cite do not satisfy the
federal rules and require
supplementation.  It makes it
impossible for meet-and-confer
to succeed if the parties do not
understand what the other
believes the issue is.  Please
advise, and then we can set up a
time to talk and settle the
Parties' differences—if any—
on this issue.

Thank you,

Tyler

*Deleted or Omitted*
*Snapchat Photos and Videos*
(reverse chronological order)

- April 5, 2020
- March 16, 2020
- February 20, 2020
- February 8, 2020
- January 21, 2020
- January 9, 2020
- September 28, 2019,
  00:30:34 UTC
- September 28, 2019,
  00:30:20 UTC
- May 11, 2019
- April 9, 2019
- September 9, 2016

**From:** Byler <philb@optonline.net>
**Sent:** Wednesday, October 7, 2020 7:26 AM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>; Kealey, William P. <WPK@stuartlaw.com>; Gellenbeck, Pamela S. <PSG@stuartlaw.com>
**Subject:** Snapchat zip file


Dear Tyler:

Attached in a zip file is the Snapchat file you requested in your prior e-mail.  You need to download this in the next three or four days or the link will expire.  The Snapchat "data" that Plaintiff produced to you last week did not have an active link as to what you requested in your prior e-mail or when John Doe did his Declaration on July 31, 2020.  We had to get an active link again, and the attached is what exists; nothing was deleted from this file.  Of course, by this production, John Doe does not concede relevance of this or of any other "social media."

Also attached in a pdf is a Notice of deposition of the person identified on page 2 of our Joint Stipulation.  I am flexible as to adjusting the date.

Finally, this portion of this e-mail is part of a "meet and confer" as Defendants'

8

Responses as to Plaintiff's Requests for Admission.  Defendants' Responses to Nos. 1-5 do not begin to satisfy Rule 36(a)(4) of the Federal Rules of Civil Procedure and require supplementation.  Also, Defendants' Response to No. 7 needs to admit that the link does take you to a page where a pdf of the April 4, 2011 Dear Colleague Letter is provided.

Very truly yours,

*Phil*

Philip A. Byler, Esq.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**From:** Byler <philb@optonline.net>
**Sent:** Wednesday, October 14, 2020 2:39 AM
**To:** Jones, Tyler L.; Kealey, William P.
**Subject:** Items
**Attachments:** Doe v Purdue Plaintiff Snapchat Explanation.pdf

Good Morning Tyler:

The time and my responsibilities for the Court teleconference in the other case I mentioned got moved around such that I will call you at 10:30 am.

We will do the custodian deposition on October 21, 2020. I will no later than noon, Monday, October 19, 2020, inform you what documents are to be available for the deposition.

In reviewing the record while working on contention interrogatories, I could not find what you agreed to provide in the June 2, 2020 Stipulation (p.2): "· Request for relief on Plaintiff's Document Requests 7-8 is resolved. Not later than June 15, 2020, Defendant Purdue University will produce a record of CARE's posts to its Facebook page for the 2015-2016 academic year and a calendar listing of CARE events for the 2015-2016 school year as well as materials, if any, distributed at those events." Defendants' June 15, 2020 Second Supplemental Response to Plaintiff's First Set of Document Production refers to "Supp. RFP-7." But I do not have a record of "Supp. RFP-7" and I do not have "a record of CARE's posts to its Facebook page for the 2015-2016 academic year and a calendar listing of CARE events for the 2015-2016 school year as well as materials, if any, distributed at those events." As you know, I had a computer crash last summer, so could you please produce or reproduce the promised materials. Also, I am missing "Supp. RFP-50" also referenced in Defendants' June 15, 2020 Second Supplemental Response to Plaintiff's First Set of Document Production. Same request: could you please produce or reproduce the promised materials.

In the August 5, 2020 Supplemental Disclosure, Defendants summarily listed ROD regulations as additional documents. I don't believe that I received a copy of such regulations, and so I request that you send me a copy. I assume that the Taylor and medical records summarily referenced were the ones as to which I already received a copy, correct?

Attached is Plaintiff John Doe's explanation as to the Snapchat production.

Sincerely,

Phil Byler

**From:**          Jones, Tyler L. <TLJ@stuartlaw.com>
**Sent:**          Wednesday, October 14, 2020 11:59 AM
**To:**            Phil Byler
**Subject:**       RE: Our Call Today

Phil:

For the reasons stated earlier, I do not believe a phone call will be productive.  Defendants will set forth what is at issue in writing.

To your other point, if we have already produced something, we will oblige your request and forward the previous productions.  Please monitor your emails for messages from Pam.

Tyler

**From:** Phil Byler <pbyler@nmllplaw.com>
**Sent:** Wednesday, October 14, 2020 11:47 AM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>
**Subject:** Re: Our Call Today

Tyler:

We should continue the conversation.  We reached agreements on certain issues.  When we spoke about my client's explanation,  I was frank with you that your seeming obsession with social media has produced nothing of relevance to the case (*e.g.*, no Instagram posts were marked at Plaintiff John Doe's deposition), that it reflected a loss of perspective as to what are real issues of the case and that my client's written explanation as to the Snapchat production makes perfect sense and establishes that there was nothing of relevance to the 11 of 86 videos and pictures just as there was nothing of relevance in the 75 videos and pictures that were produced to you.  I did intend to let you speak, but I did interrupt you when you misstated what my client's explanation said.  In any event, there has been no spoliation.  My guess is that the Judge will allow you some more deposition time with Plaintiff John Doe, and that's OK to put to rest this dwelling on irrelevancies.

Also, in the meantime, Defendants will produce what is in the third and fourth paragraphs of my 2:39 AM e-mail of today, won't you?

*Phil*

Philip A. Byler, Esq.
Nesenoff & Miltenberg LLP
363 Seventh Avenue - 5th Floor

New York, New York 10001
pbyler@nmllplaw.com
Telephone: 212.736.4500
Telecopier: 212.736.2260



**Phil Byler, Esq.**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500     •     212.736.2260 fax

Vcard     •     nmllplaw.com

This electronic message, including any and all attachments hereto, is intended solely to be used by the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to its intended recipient, you are herewith notified that any dissemination, distribution, copying or retention of this communication or the information contained herein is strictly prohibited. If you have received this message communication in error, please notify us by telephone immediately and permanently delete the original and any copy or printout thereof. Statements made in, or attachments to, this email are not intended to be contractual in nature, and are therefore not binding on this firm or our clients unless and until mutually satisfactory agreements memorializing the subject matter of this transmission are executed by hand, in ink, (or by facsimile if authorized by the parties) and hard copies are mutually delivered by the parties thereto. Thank you.

The sender believes that this E-mail and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent. This message and its attachments could have been infected during transmission. By reading the message and opening any attachments, the recipient accepts full responsibility for taking protective and remedial action about viruses and other defects. The sender and the sender's employer is/are not liable for any loss or damage arising in any way from this message or its attachments.

SPECIAL NOTICE TO CLIENT(S): If you are a client of this firm and this e-mail is directed to you, DO NOT FORWARD to any other party, or you could be waiving the attorney-client privilege.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This firm does not accept and is not authorized to accept service of process on behalf of any of our clients, including, but not limited to, service of process via email or fax.

---

**From:** Jones, Tyler L. <TLJ@stuartlaw.com>
**Sent:** Wednesday, October 14, 2020 11:29 AM
**To:** Byler <philb@optonline.net>; Phil Byler <pbyler@nmllplaw.com>
**Subject:** Our Call Today

Phil:

I just received your voice message.

While we were on our call, I attempted to address the subject of the deleted Snapchat records.  After you initially interrupted my explanation of why we believe that your client has spoliated evidence, I suggested that you say your peace and that I would then do the same—no interruptions.  I did not agree with your position or your client's representations, but I did not interrupt you.  When it was my turn, I got about two sentences in and then you began to talk over me and yell.   When it became clear to me that I was not going to be afforded the opportunity to speak in a respectable manner, *i.e.*, without having to raise my voice to be given a chance to speak, I told you that I was hanging up.

Based on this and our past interactions, including Plaintiff's father's deposition, I do not think that I will be given a chance to speak, were we to talk again, let alone given the respect due to any other attorney, regardless of age or experience.  I do not know why you choose to act this way when more experienced lawyers or the judge are not present; certainly you do not act this poorly.  I would hope that an attorney as experienced as you could serve as a role model for younger lawyers like myself, but I have not found that to be the case, thus far.  However, Judge Kolar made me (and you and Bill) promise to conduct myself with a level of respect expected of all attorneys—not that I would have done otherwise—and I am striving to honor that oath.

Defendants will send you a written explanation why we believe that the Plaintiff has spoliated his records, among other things.

Tyler

**Tyler L. Jones**
ASSOCIATE



300 Main Street, Suite 900 | P.O. Box 1010 | Lafayette, IN 47902-1010
P: 765.428.7085 | F: 765.742.8175 | tlj@stuartlaw.com

This message is a confidential legal communication to named recipients. If you receive this message in error or are not a named recipient, please notify the sender and delete this email.
Stuart & Branigin LLP

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email

security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**From:** Byler <philb@optonline.net>
**Sent:** Thursday, October 22, 2020 5:25 PM
**To:** Jones, Tyler L. <TLJ@stuartlaw.com>
**Subject:** Re: Meet & Confer on Plaintiff's destruction of Snapchat Records

Tyler:

The draft 12-page "Request" brief that you sent last night with a demand for a response within 24 hours constitutes a breach of the Court's admonition that counsel cooperate and ends with a bizarre request for an Order To Show Cause proceeding attacking Plaintiff John Doe's stigma plus liberty interest and effectively reversing Judge Amy Coney Barrett's opinion in this case. You really are not continuing a conversation in a meet and confer session. Rather, you are setting up to run to the Court with a "Request" for an Order to Show Cause proceeding that is based on: (i) repeated false statements about Plaintiff John Doe willfully destroying evidence (which did not happen); (ii) a distorted misrepresentation of spoliation law -- the Seventh Circuit opinions you cite rejected spoliation and call for the same result here; and (iii) a sickness on Defendants' part toward Plaintiff John Doe.

Let me begin by reminding you of what I last wrote you when you terminated our meet and confer session:

We should continue the conversation. We reached agreements on certain issues. When we spoke about my client's explanation [about Snapchat], I was frank with you that your seeming obsession with social media has produced nothing of relevance to the case (*e.g.*, no Instagram posts were marked at Plaintiff John Doe's deposition), that it reflected a loss of perspective as to what are real issues of the case and that my client's written explanation as to the Snapchat production makes perfect sense and establishes that there was nothing of relevance to the 11 of 86 videos and pictures just as there was nothing of relevance in the 75 videos and pictures that were produced to you. I did intend to let you speak, but I did interrupt you when you misstated what my client's explanation said. In any event, there has been no spoliation. My guess is that the Judge will allow you some more deposition time with Plaintiff John Doe, and that's OK to put to rest this dwelling on irrelevancies.

To that communication, you sent me a 12-page "Request" brief ready to be sent to the Court.

## Request Preliminary Statement.

The "Request" begins with the false assertions:

[Plaintiff] John [Doe] produced only a subset of his Snapchat data. He now admits that between July and September he intentionally destroyed a subset of photos and videos in that data.

It has become apparent that John Doe is obstructing scrutiny of his name, reputation, honor and integrity. It is reasonable to believe that the destroyed photos and videos would, if discovered, have impeached John's reputational assertions.

No, it is inaccurate on your part to call what Plaintiff John Doe did produce a "subset" when he produced 75 of 86 videos and pictures and provided a recollection of what the 11 videos and pictures were.

No, Plaintiff John Doe did not admit intentionally destroying anything -- quite the opposite.  His statement of explanation took pains to explain how there was no intentional destruction; Plaintiff John Doe deleted from his cell phone some data without believing it would affect what Snapchat had on its server from which a "data download" would be made.  Plaintiff did not go to the server and delete anything.

No, Plaintiff John Doe has not been obstructing anything.  He has produced everything he can in response to scorched earth discovery by Defendants; and as for Snapchat, Plaintiff John Doe went to Snapchat twice for downloads in an effort to satisfy your requests.

No, nothing on Snapchat would impeach Plaintiff John Doe's reputational assertions one iota.  Really, that is a desperate assertion on your part, and it is false.  You seem to have gone into this litigation with a warped view of Plaintiff John Doe; Defendants' requests for admission reflect such a warped view; and perhaps you thought that you would find something in social media.  But you haven't.  Plaintiff John Doe produced to you his Instagram posts and 75 videos and pictures from Snapchat, and you have found nothing.  As Plaintiff John Doe explained, the 11 you complain about are more of the same as to the 75 produced, and Plaintiff John Doe described what the 11 were.

## Snapchat Discovery.

Your 12-page "Request" brief then turns to giving what you call a history of Snapchat discovery.  It is a false history. No, Plaintiff John Doe has not been trying to hide his Snapchat records.  No, Plaintiff John Doe did not simply refuse to produce Snapchat records.  Quite differently, Plaintiff John Doe interposed an objection on relevancy

grounds under the Federal Rules of Civil Procedure in Plaintiff's Responses and
Objections To Defendants' Second Set of Document Requests, as follows:

In addition to the General Objections stated above and incorporated herein as if fully
stated, Plaintiff specifically objects that this Second Set Document Request seeking
Plaintiff's Snapchat documents is seeking documents that are not relevant to the
issues in this case and even if arguably somehow relevant, are not proportional to the
needs of the case, considering the importance of the issues at stake in the action, the
amount in controversy, the parties' relative access to relevant information, the parties'
resources, the importance of the discovery in resolving the issues, and whether the
burden or expense of the proposed discovery outweighs its likely benefit.

Plaintiff's Snapshot documents do not contain any information that is relevant to this
case.  Plaintiff, who uses a Court authorized pseudonym in the case, did not use
Snapshot to discuss anything connected to this case.  Defendants are engaged in an
intrusive fishing expedition without any idea what relevant information may thereby be
obtained.  At the same time, Defendants are refusing to produce documents in
response Plaintiff's Document Requests that include the university investigation report
in this Plaintiff's case that was hidden from Plaintiff during the investigation and that is
believed to contain false information, electronically stored information (including e-
mails), documents concerning events were sponsored by the Center for Advocacy,
Response and Education ('CARE') at Purdue in the 2015-2016 school year and
concerning promotions at Purdue sponsored by CARE on their Facebook page of
events in the 2015-2016 school year even though one CARE event in the 2015-2016
school year was noted in the Complaint and Amended Complaint and in the Seventh
Circuit opinion, documents concerning the investigations conducted by the U.S.
Department of Education's Office for Civil Rights at Purdue in the time period January
2014 to December 2017, and documents concerning the opening of sexual assault
center at Purdue in or around August 2016 even though such documents show Purdue
maintaining a 'victim centric' disciplinary process.

The parties did enter into a June 2, 2020 stipulation to resolve discovery disputes that
both sides were raising.  The "Request," however, wrongly and without real basis spins
Plaintiff John Doe's subsequent statements with respect to the Snapchat data as
dishonest; the "Request" simply does not squarely deal with Plaintiff John Doe's
explanation that was provided you; Plaintiff John Doe has been entirely truthful; the
*first* Snapchat data download only had metadata and no working links.

As a corrective, I will quote that explanation in full here in order that we can better
assess your mischaracterizations:

When I [Plaintiff John Doe] first received the initial zip file of metadata from Snapchat
as per Purdue's request in July 2020, the html links in the file did not work for me. I
tried accessing them on four different internet browsers (Google Chrome, Mozilla

Firefox, Opera, and Microsoft Edge) with no success. I characterized as metadata the Snapchat zip file from the data I could access and read, and was not aware of the 7-day time limit for downloading and viewing memory files, as the html link for viewing them was not working in the first place.

"Memories_history" is the only link from the entire zip file with content for download. I was unaware of the 7-day time limit and content inclusion, as the html links were not working for me at the time that I received the file from Snapchat. So, my initial assessment that the July 2020 zip file was entirely comprised of metadata was technically right; however, the "memories_history" file gave the option to download files, though only for a 7-day span from the time a data request was fulfilled; I only learned of this 7 day time limit later after the time limit had already expired, which is why I re-produced a zip file to Defendants.

To produce, to Defendants, the 75 Snapchat pictures and videos that I have recently produced required getting another Snapchat data download, which I did.

The 75 pictures and videos from my memories on the Snapchat servers that have been produced to Defendants are random, irrelevant pieces of content that I saved over the past few years on my account. They are comprised of: my filming myself, friends, or family; clips of video games; and clips of movies/TV shows. There is nothing within these files remotely relevant to my court case.

Also, as for the 11 files no longer present in my memories and about which Defendants have complained: I did delete some files off of the Snapchat application on my phone at some point between zip file productions, with no idea that they would also be deleted from my Snapchat account and Snapchat servers entirely. As my cell phone slows down and fills up over time, I try to find ways to clear space and memory to keep its performance as optimized as possible. I deleted some images and videos off my phone that I did not care for anymore, without the realization that they held any relevance to the zip file productions, or that would be permanently deleted from the Snapchat account. Apparently, however, that was the effect of deleting files off my cell phone.

It was my understanding that the zip files Snapchat produces in response to data download requests were exclusively composed of metadata. As the html links were not working when I examined the zip file initially, and the file sizes were all mere kilobytes in size, I was under the impression that the zip file held no account content. Still, because I have never posted anything relevant to my court case on my social media, I can say that the 11 files were not material to this case. From what I remember, they were comprised of more pictures and video clips from video games and TV shows, a picture of my friend in a car as we drove to a creek, and a picture of a Walt Disney statue at Disney World.

- "Plaintiff John Doe"

You complain about Plaintiff John Doe's deposition testimony that he only saw metadata in what was the first Snapchat download and the September 30, 2020 production of a Snapchat download that had broken links. But Plaintiff John Doe explained that is how he received what was the *first* Snapchat download, which is what was produced to you on September 30, 2020.

It was in response to your complaint about the links in what was the *first* Snapchat download that Plaintiff John Doe went to Snapchat for a *second* download, which contained the 75 videos and pictures that were produced to you. It should cause you pause when you realize that Plaintiff John Doe went to Snapchat twice to get data downloads in order to satisfy the June 2, 2020 Stipulation of the Parties; the Stipulation of the Parties called for "data downloads" and that was what was done.

## Mistreatment and Misapplication of Spoliation Law.

You trot out the law under Rule 37 of the Federal Rules of Civil Procedure to argue that Plaintiff John Doe has failed to obey a court order. Wrong, Plaintiff John Doe has produced what he could: cell phone information, Instagram posts and two data downloads from Snapchat.

So you cry spoliation, but the case law you cite in the Seventh Circuit does not support you. In *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985), the Seventh Circuit applied federal law and ruled that the company defendant's destruction of certain department files did not require an evidentiary presumption that the destroyed documents would have been favorable to plaintiff. There, the Seventh Circuit stated:

The prevailing rule is that *bad faith destruction* of a document *relevant to proof of an issue at trial* gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction. *S.C. Johnson & Son, Inc. v. Louisville & Nashville Railroad,* 695 F.2d 253, 258–59 (7th Cir.1982); *Vick v. Texas Employment Commission,* 514 F.2d 734, 737 (5th Cir.1975). However, considering the circumstances surrounding the destruction of the documents in this case, nothing gives rise to an inference of bad faith by defendants.

(Emphasis supplied.) In *Trask-Morton v. Motel 6 Operating Ltd. P'ship*, 534 F.3d 672, 681 (7th Cir. 2008), the Seventh Circuit rejected a spoliation complaint because there was no showing of bad faith. *Apex Colors, Inc. v. Chenworld Int'l Ltd., Inc.*, 2018 U.S. Dist. LEXIS 172436 (N.D. Ind. Oct. 5, 2018), involved a defendant company that had "knowingly" adopted a "scorched earth" policy of resisting discovery and as a result had been repeatedly sanctioned for frustrating discovery: among other things, there were "serial" refusals by the defendant company to produce documents that were indisputably relevant to the claims brought in the *Apex Colors* Complaint.

The point that relevance is required in proper spoliation analysis is not only stated in *Coates v. Johnson & Johnson*, 756 F.2d at 551, but also is stated in the case law widely recognized in the federal courts as providing the relevant federal law spoliation analysis: *Pension Committee of the Univ. Of Montreal Pension Plan v. Banc of America Securities LLC*, 685 F.Supp.2d 456 (S.D.N.Y. 2010) ("*Pension Committee*") and *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)("*Zubulake*"). *Pension Committee* and *Zubulake* held that a party seeking sanctions based on the spoliation of evidence must demonstrate: (1) that the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" (bad faith); and finally, (3) that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense.

Your reliance on *Apex Colors* to argue bad faith does not work. You are trying to fit this case into an *Apex Colors* mold, but that takes (i) ignoring Plaintiff's fulsome production of documents and cooperation in discovery, (ii) ignoring the lack of relevance to proof of an issue at trial of the 11 Snapchat videos and pictures and (iii) ignoring or twisting Plaintiff John Doe's explanation for the 11 Snapchat videos and pictures into an assertion of bad faith that is simply not justifiable.

You say that Plaintiff John Doe admitted his destruction of evidence was willful. No, he did not. His explanation, quoted above, is flatly to the contrary.

You say that Plaintiff John Doe reneged on the stipulation and said that the Snapchat download only contained metadata. No, Plaintiff John Doe did not renege on the stipulation; both Snapchat downloads had only metadata; the *first* Snapchat download only had metadata and no working links; the *second* Snapchat download had metadata and properly working links to external downloads of Snapchat memory files. Plaintiff John Doe's statements based on the *first* Snapchat download were accurate that the only available data for the download he had at the time were metadata. Plaintiff John Doe never saw the 75 videos and pictures until he did the *second* data download. If we can get back the 11 videos and pictures from Snapchat, we will do so.

You say that as of June 16, 2020, or even earlier, Plaintiff John Doe had 86 downloaded Snapchat videos and pictures in his possession. No, he did not. That is incorrect speculation on your part. As noted above and as Plaintiff John Doe explained, the *first* Snapchat download only had metadata and no working links to videos and pictures.

You assert, without evidentiary basis, what Plaintiff John Doe "knew" and purport to describe his actions based upon your own imagination. Yet, you shy away from taking up my suggestion of taking more deposition testimony from Plaintiff John Doe on this subject. Perhaps you want to see how far you get with only accusation.

You assert that the social media postings are relevant to back up what the Defendants did years earlier in a disciplinary case alleging sexual misconduct that Plaintiff John Doe has always denied, as if the rules of evidence do not exist and a harmed reputation from a false disciplinary finding can be justified by after the fact character assassination.  Your proposition that Plaintiff John Doe's character is at issue and therefore that opens up the issue of spoliation is not well thought out.  The ample number of social media postings that Plaintiff John Doe has produced from Instagram and Snapchat provide no support whatsoever for an attack on Plaintiff John Doe's character.

## Request for Relief.

Finally, you seek an Order To Show Cause proceeding to strike Plaintiff John Doe's stigma plus liberty interest.  That is totally absurd; and you know why you are straining to make such a request: the evidence in this case shows that Plaintiff John Doe has a stigma plus liberty interest that entitled him to due process.  You go way, way too far with this request.  You are asking in effect for the Court to spit on Judge Amy Coney Barrett's opinion in this case.

Would you like to have a real "meet and confer"?  Or are you really going to put me in the position of having to make a cross-motion for sanctions and for costs pursuant to 28 U.S.C. § 1927?  What you are asking for by way of relief requires public attention and scrutiny and sanctions against you.

- Phil

On October 21, 2020 at 5:21 PM "Jones, Tyler L." <TLJ@stuartlaw.com> wrote:

Phil,

This email is a continuation of my previous attempt to hold a meet and confer via a telephone call several days ago.

I told you that I would submit Defendants' position in writing.

Attached is a draft petition (you should have all of the exhibits already) to the Court, requesting that the Court issue an order to show cause to Plaintiff John Doe.  This petition lays out, in detail, why Defendants believe that John has not

complied with the Court's recent Order to produce his Snapchat records by deleting (or otherwise spoliating) photographs and videos.

Please write Bill or me back by the close of business tomorrow, if you object to the remedy sought and summarized above.

Sincerely,

Tyler

**Tyler L. Jones**

ASSOCIATE



300 Main Street, Suite 900 | P.O. Box 1010 | Lafayette, IN 47902-1010

P: 765.428.7085 | F: 765.742.8175 | tlj@stuartlaw.com

This message is a confidential legal communication to named recipients. If you receive this message in error or are not a named recipient, please notify the sender and delete this email.

Stuart & Branigin LLP

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a

leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure: and to lead the movement toward building a more resilient world. To find out more, visit our website.