USDC IN/ND case 2:17-cv-00033-GSL     document 135-1     filed 10/26/20     page 1 of 10

**Byler <philb@optonline.net>**                                              10/22/20 5:25 pm

## Re: Meet & Confer on Plaintiff's destruction of Snapchat Records

To Jones, Tyler L. <tlj@stuartlaw.com>

Tyler:

The draft 12-page "Request" brief that you sent last night with a demand for a response within 24 hours constitutes a breach of the Court's admonition that counsel cooperate and ends with a bizarre request for an Order To Show Cause proceeding attacking Plaintiff John Doe's stigma plus liberty interest and effectively reversing Judge Amy Coney Barrett's opinion in this case. You really are not continuing a conversation in a meet and confer session. Rather, you are setting up to run to the Court with a "Request" for an Order to Show Cause proceeding that is based on: (i) repeated false statements about Plaintiff John Doe willfully destroying evidence (which did not happen); (ii) a distorted misrepresentation of spoliation law -- the Seventh Circuit opinions you cite rejected spoliation and call for the same result here; and (iii) a sickness on Defendants' part toward Plaintiff John Doe.

Let me begin by reminding you of what I last wrote you when you terminated our meet and confer session:

We should continue the conversation. We reached agreements on certain issues. When we spoke about my client's explanation [about Snapchat], I was frank with you that your seeming obsession with social media has produced nothing of relevance to the case (*e.g.*, no Instagram posts were marked at Plaintiff John Doe's deposition), that it reflected a loss of perspective as to what are real issues of the case and that my client's written explanation as to the Snapchat production makes perfect sense and establishes that there was nothing of relevance to the 11 of 86 videos and pictures just as there was nothing of relevance in the 75 videos and pictures that were produced to you. I did intend to let you speak, but I did interrupt you when you misstated what my client's explanation said. In any event, there has been no spoliation. My guess is that the Judge will allow you some more deposition time with Plaintiff John Doe, and that's OK to put to rest this dwelling on irrelevancies.

To that communication, you sent me a 12-page "Request" brief ready to be sent to the Court.

**Request Preliminary Statement.**

The "Request" begins with the false assertions:

USDC IN/ND case 2:17-cv-00033-GSL     document 135-1     filed 10/26/20     page 2 of 10

[Plaintiff] John [Doe] produced only a subset of his Snapchat data. He now admits that between July and September he intentionally destroyed a subset of photos and videos in that data.

It has become apparent that John Doe is obstructing scrutiny of his name, reputation, honor and integrity. It is reasonable to believe that the destroyed photos and videos would, if discovered, have impeached John's reputational assertions.

No, it is inaccurate on your part to call what Plaintiff John Doe did produce a "subset" when he produced 75 of 86 videos and pictures and provided a recollection of what the 11 videos and pictures were.

No, Plaintiff John Doe did not admit intentionally destroying anything -- quite the opposite. His statement of explanation took pains to explain how there was no intentional destruction; Plaintiff John Doe deleted from his cell phone some data without believing it would affect what Snapchat had on its server from which a "data download" would be made. Plaintiff did not go to the server and delete anything.

No, Plaintiff John Doe has not been obstructing anything. He has produced everything he can in response to scorched earth discovery by Defendants; and as for Snapchat, Plaintiff John Doe went to Snapchat twice for downloads in an effort to satisfy your requests.

No, nothing on Snapchat would impeach Plaintiff John Doe's reputational assertions one iota. Really, that is a desperate assertion on your part, and it is false. You seem to have gone into this litigation with a warped view of Plaintiff John Doe; Defendants' requests for admission reflect such a warped view; and perhaps you thought that you would find something in social media. But you haven't. Plaintiff John Doe produced to you his Instagram posts and 75 videos and pictures from Snapchat, and you have found nothing. As Plaintiff John Doe explained, the 11 you complain about are more of the same as to the 75 produced, and Plaintiff John Doe described what the 11 were.

## Snapchat Discovery.

Your 12-page "Request" brief then turns to giving what you call a history of Snapchat discovery. It is a false history. No, Plaintiff John Doe has not been trying to hide his Snapchat records. No, Plaintiff John Doe did not simply refuse to produce Snapchat records. Quite differently, Plaintiff John Doe interposed an objection on relevancy grounds under the Federal Rules of Civil Procedure in Plaintiff's Responses and Objections To Defendants' Second Set of Document Requests, as follows:

In addition to the General Objections stated above and incorporated herein as if fully stated, Plaintiff specifically objects that this Second Set Document Request seeking Plaintiff's Snapchat documents is seeking documents that are not relevant to the issues in this case and even if arguably somehow relevant, are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Plaintiff's Snapshot documents do not contain any information that is relevant to this case.  Plaintiff, who uses a Court authorized pseudonym in the case, did not use Snapshot to discuss anything connected to this case.  Defendants are engaged in an intrusive fishing expedition without any idea what relevant information may thereby be obtained.  At the same time, Defendants are refusing to produce documents in response Plaintiff's Document Requests that include the university investigation report in this Plaintiff's case that was hidden from Plaintiff during the investigation and that is believed to contain false information, electronically stored information (including e-mails), documents concerning events were sponsored by the Center for Advocacy, Response and Education ('CARE') at Purdue in the 2015-2016 school year and concerning promotions at Purdue sponsored by CARE on their Facebook page of events in the 2015-2016 school year even though one CARE event in the 2015-2016 school year was noted in the Complaint and Amended Complaint and in the Seventh Circuit opinion, documents concerning the investigations conducted by the U.S. Department of Education's Office for Civil Rights at Purdue in the time period January 2014 to December 2017, and documents concerning the opening of sexual assault center at Purdue in or around August 2016 even though such documents show Purdue maintaining a 'victim centric' disciplinary process.

The parties did enter into a June 2, 2020 stipulation to resolve discovery disputes that both sides were raising.  The "Request," however, wrongly and without real basis spins Plaintiff John Doe's subsequent statements with respect to the Snapchat data as dishonest; the "Request" simply does not squarely deal with Plaintiff John Doe's explanation that was provided you; Plaintiff John Doe has been entirely truthful; the *first* Snapchat data download only had metadata and no working links.

As a corrective, I will quote that explanation in full here in order that we can better assess your mischaracterizations:

When I [Plaintiff John Doe] first received the initial zip file of metadata from Snapchat as per Purdue's request in July 2020, the html links in the file did not

work for me. I tried accessing them on four different internet browsers (Google Chrome, Mozilla Firefox, Opera, and Microsoft Edge) with no success. I characterized as metadata the Snapchat zip file from the data I could access and read, and was not aware of the 7-day time limit for downloading and viewing memory files, as the html link for viewing them was not working in the first place.

"Memories_history" is the only link from the entire zip file with content for download. I was unaware of the 7-day time limit and content inclusion, as the html links were not working for me at the time that I received the file from Snapchat. So, my initial assessment that the July 2020 zip file was entirely comprised of metadata was technically right; however, the "memories_history" file gave the option to download files, though only for a 7-day span from the time a data request was fulfilled; I only learned of this 7 day time limit later after the time limit had already expired, which is why I re-produced a zip file to Defendants.

To produce, to Defendants, the 75 Snapchat pictures and videos that I have recently produced required getting another Snapchat data download, which I did.

The 75 pictures and videos from my memories on the Snapchat servers that have been produced to Defendants are random, irrelevant pieces of content that I saved over the past few years on my account. They are comprised of: my filming myself, friends, or family; clips of video games; and clips of movies/TV shows. There is nothing within these files remotely relevant to my court case.

Also, as for the 11 files no longer present in my memories and about which Defendants have complained: I did delete some files off of the Snapchat application on my phone at some point between zip file productions, with no idea that they would also be deleted from my Snapchat account and Snapchat servers entirely. As my cell phone slows down and fills up over time, I try to find ways to clear space and memory to keep its performance as optimized as possible. I deleted some images and videos off my phone that I did not care for anymore, without the realization that they held any relevance to the zip file productions, or that would be permanently deleted from the Snapchat account. Apparently, however, that was the effect of deleting files off my cell phone.

It was my understanding that the zip files Snapchat produces in response to data download requests were exclusively composed of metadata. As the html links were not working when I examined the zip file initially, and the file sizes were all mere kilobytes in size, I was under the impression that the zip file held no account content. Still, because I have never posted anything relevant to my court case on my social media, I can say that the 11 files were not material to this case. From what I remember, they were comprised of more pictures and

video clips from video games and TV shows, a picture of my friend in a car as we drove to a creek, and a picture of a Walt Disney statue at Disney World.

- "Plaintiff John Doe"

You complain about Plaintiff John Doe's deposition testimony that he only saw metadata in what was the first Snapchat download and the September 30, 2020 production of a Snapchat download that had broken links. But Plaintiff John Doe explained that is how he received what was the *first* Snapchat download, which is what was produced to you on September 30, 2020.

It was in response to your complaint about the links in what was the *first* Snapchat download that Plaintiff John Doe went to Snapchat for a *second* download, which contained the 75 videos and pictures that were produced to you. It should cause you pause when you realize that Plaintiff John Doe went to Snapchat twice to get data downloads in order to satisfy the June 2, 2020 Stipulation of the Parties; the Stipulation of the Parties called for "data downloads" and that was what was done.

## Mistreatment and Misapplication of Spoliation Law.

You trot out the law under Rule 37 of the Federal Rules of Civil Procedure to argue that Plaintiff John Doe has failed to obey a court order. Wrong, Plaintiff John Doe has produced what he could: cell phone information, Instagram posts and two data downloads from Snapchat.

So you cry spoliation, but the case law you cite in the Seventh Circuit does not support you. In *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985), the Seventh Circuit applied federal law and ruled that the company defendant's destruction of certain department files did not require an evidentiary presumption that the destroyed documents would have been favorable to plaintiff. There, the Seventh Circuit stated:

The prevailing rule is that *bad faith destruction* of a document *relevant to proof of an issue at trial* gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction. *S.C. Johnson & Son, Inc. v. Louisville & Nashville Railroad,* 695 F.2d 253, 258–59 (7th Cir.1982); *Vick v. Texas Employment Commission,* 514 F.2d 734, 737 (5th Cir.1975). However, considering the circumstances surrounding the destruction of the documents in this case, nothing gives rise to an inference of bad faith by defendants.

(Emphasis supplied.) In *Trask-Morton v. Motel 6 Operating Ltd. P'ship*, 534 F.3d 672, 681 (7th Cir. 2008), the Seventh Circuit rejected a spoliation complaint because there was no showing of bad faith. *Apex Colors, Inc. v. Chenworld Int'l Ltd., Inc.*, 2018 U.S. Dist. LEXIS 172436 (N.D. Ind. Oct. 5, 2018), involved a

defendant company that had "knowingly" adopted a "scorched earth" policy of resisting discovery and as a result had been repeatedly sanctioned for frustrating discovery: among other things, there were "serial" refusals by the defendant company to produce documents that were indisputably relevant to the claims brought in the *Apex Colors* Complaint.

The point that relevance is required in proper spoliation analysis is not only stated in *Coates v. Johnson & Johnson*, 756 F.2d at 551, but also is stated in the case law widely recognized in the federal courts as providing the relevant federal law spoliation analysis: *Pension Committee of the Univ. Of Montreal Pension Plan v. Banc of America Securities LLC*, 685 F.Supp.2d 456 (S.D.N.Y. 2010) ("*Pension Committee*") and *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)("*Zubulake*"). *Pension Committee* and *Zubulake* held that a party seeking sanctions based on the spoliation of evidence must demonstrate: (1) that the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" (bad faith); and finally, (3) that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense.

Your reliance on *Apex Colors* to argue bad faith does not work. You are trying to fit this case into an *Apex Colors* mold, but that takes (i) ignoring Plaintiff's fulsome production of documents and cooperation in discovery, (ii) ignoring the lack of relevance to proof of an issue at trial of the 11 Snapchat videos and pictures and (iii) ignoring or twisting Plaintiff John Doe's explanation for the 11 Snapchat videos and pictures into an assertion of bad faith that is simply not justifiable.

You say that Plaintiff John Doe admitted his destruction of evidence was willful. No, he did not. His explanation, quoted above, is flatly to the contrary.

You say that Plaintiff John Doe reneged on the stipulation and said that the Snapchat download only contained metadata. No, Plaintiff John Doe did not renege on the stipulation; both Snapchat downloads had only metadata; the *first* Snapchat download only had metadata and no working links; the *second* Snapchat download had metadata and properly working links to external downloads of Snapchat memory files. Plaintiff John Doe's statements based on the *first* Snapchat download were accurate that the only available data for the download he had at the time were metadata. Plaintiff John Doe never saw the 75 videos and pictures until he did the *second* data download. If we can get back the 11 videos and pictures from Snapchat, we will do so.

You say that as of June 16, 2020, or even earlier, Plaintiff John Doe had 86 downloaded Snapchat videos and pictures in his possession. No, he did not.

That is incorrect speculation on your part. As noted above and as Plaintiff John Doe explained, the *first* Snapchat download only had metadata and no working links to videos and pictures.

You assert, without evidentiary basis, what Plaintiff John Doe "knew" and purport to describe his actions based upon your own imagination. Yet, you shy away from taking up my suggestion of taking more deposition testimony from Plaintiff John Doe on this subject. Perhaps you want to see how far you get with only accusation.

You assert that the social media postings are relevant to back up what the Defendants did years earlier in a disciplinary case alleging sexual misconduct that Plaintiff John Doe has always denied, as if the rules of evidence do not exist and a harmed reputation from a false disciplinary finding can be justified by after the fact character assassination. Your proposition that Plaintiff John Doe's character is at issue and therefore that opens up the issue of spoliation is not well thought out. The ample number of social media postings that Plaintiff John Doe has produced from Instagram and Snapchat provide no support whatsoever for an attack on Plaintiff John Doe's character.

## Request for Relief.

Finally, you seek an Order To Show Cause proceeding to strike Plaintiff John Doe's stigma plus liberty interest. That is totally absurd; and you know why you are straining to make such a request: the evidence in this case shows that Plaintiff John Doe has a stigma plus liberty interest that entitled him to due process. You go way, way too far with this request. You are asking in effect for the Court to spit on Judge Amy Coney Barrett's opinion in this case.

Would you like to have a real "meet and confer"? Or are you really going to put me in the position of having to make a cross-motion for sanctions and for costs pursuant to 28 U.S.C. § 1927? What you are asking for by way of relief requires public attention and scrutiny and sanctions against you.

- Phil

> On October 21, 2020 at 5:21 PM Jones, Tyler L. wrote:
>
> Phil,
>
> This email is a continuation of my previous attempt to hold a meet and confer via a telephone call several days ago.
>
> I told you that I would submit Defendants' position in writing.

Attached is a draft petition (you should have all of the exhibits already) to the Court, requesting that the Court issue an order to show cause to Plaintiff John Doe. This petition lays out, in detail, why Defendants believe that John has not complied with the Court's recent Order to produce his Snapchat records by deleting (or otherwise spoliating) photographs and videos.

Please write Bill or me back by the close of business tomorrow, if you object to the remedy sought and summarized above.

Sincerely,

Tyler

**Tyler L. Jones**
ASSOCIATE



300 Main Street, Suite 900 | P.O. Box 1010 | Lafayette, IN 47902-1010

P: 765.428.7085 | F: 765.742.8175 | tlj@stuartlaw.com

This message is a confidential legal communication to named recipients. If you receive this message in error or are not a named recipient, please notify the sender and delete this email.

Stuart & Branigin LLP

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

- image001.png (9 KB)