UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE, <br>     Plaintiff, <br> <br> v. <br> <br> PURDUE UNIVERSITY, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> )   CAUSE NO.: 2:17-CV-33-JPK <br> ) <br> ) <br> ) |

## ORDER

This matter is before the Court on a Motion for Protective Order Regarding Daniels Deposition [DE 110], filed by Defendants The Trustees of Purdue University and Mitchell Elias Daniels on September 11, 2020. Plaintiff John Doe filed a response, and Defendants filed a reply. Defendants' motion sought an order barring the deposition of Defendant Mitchell Elias Daniels, President of Purdue University.

The Court held a hearing on October 29, 2020, during which the Court granted the instant motion. In its overview of the relevant law and analysis below, the Court assumes familiarity with the underlying facts of this matter and arguments outlined in the parties' briefs on the instant motion. For the reasons set forth on the record at the hearing, and as discussed in this order, the Court finds that Defendants have the better of the argument and that the relevant rules and case law do not support allowing a deposition of President Daniels at this time.

In reaching its determination, the Court looked to Federal Rule of Civil Procedure 26 and reviewed case law and the parties' briefing on the so-called apex doctrine. Pursuant to Federal Rule of Civil Procedure 26, protective orders may address "matters relating to a deposition" and a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). And, under

Rule 26(b)(2), courts "must limit the frequency or extent of discovery otherwise allowed" when a party seeks discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Defendants bear the burden of showing that they are entitled to a protective order prohibiting otherwise legitimate discovery.[1] *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020) ("The party seeking a protective order bears the burden of demonstrating why the order should be entered."). And, "[a] strong showing is required before a party will be denied entirely the right to take a deposition." *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020).

When a party seeks to depose an "apex" witness—a senior executive or other high-level individual—some courts consider additional factors. *See Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 6090862, at *1-2 (E.D. Wis. Oct. 18, 2016). These factors themselves "[f]low[] from the discovery rules," and courts applying the apex doctrine often protect high-level executives from the burdens of a deposition in certain circumstances. *Id.* at *2. Indeed, "the logical underpinnings of the apex doctrine seek[] to prevent a high-ranking corporate executive from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts; in other words, to protect apex employees 'from annoyance, embarrassment, oppression, or undue burden or expense . . . .'" *Dyson, Inc. v. Sharkninja Operating LLC*, No.

---

[1] As explained during the hearing, Defendants' assertion that it was Plaintiff's burden to show why he could not obtain the sought discovery from a witness other than President Daniels represents what the Court views as an inversion of this burden. *See City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020) ("The party seeking protection from discovery bears the burden of presenting a particular and specific demonstration of fact as to the need for that protection . . . This burden does not shift simply because a party seeks to prevent the deposition of an apex witness (i.e., a high-ranking executive)." (quotation marks and citations omitted)).

2

1:14-CV-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (quoting Fed. R. Civ. P. 26(c)(1)).

> As explained by one court,
>
> [c]ourts may protect high-level executives from being deposed when any of four circumstances exist: (1) the official has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's duties.

*City of Rockford*, 2020 WL 1675593, at *2 (quotation marks and citation omitted). The apex doctrine "'is not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information.'" *Dyson, Inc.*, 2016 WL 1613489, at *1 (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure*, § 2036 n.7 (3d ed. 2010)). "Instead, '[a]s with any other protective order, the court should look for guidance to a balance of the likelihood of oppression or harassment compared to the value of the inquiry in generating important information.'" *Id.* (quoting 8A Wright, Miller, &. Marcus, *Federal Practice and Procedure*, § 2036 n.7). As other courts have noted, the burden a deposition imposes on the deponent's schedule is not limited to those occupying a high executive office. *See Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 6059770, at *4 (N.D. Ill. Dec. 7, 2017) ("As hectic as an executive's schedule might be, 'the hypothetical single parent could make a compelling argument that he is busier than the hypothetical chief executive officer[.]'" (quoting Iain D. Johnston, *Apex Witnesses Claim They Are Too Big to Depose*, Litigation, American Bar Association, Vol. 41, No. 1, at 5 (Fall 2014), *available at* https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/johnston/apexwitnessdepose.pdf)).

3

While the Seventh Circuit Court of Appeals has not formally adopted the apex doctrine, it has touched upon the underlying principles. In *Patterson v. Avery Dennison Corp.*, the Court of Appeals noted that the deposition of "a high-ranking executive in a multinational corporation . . . would have been a quite costly and burdensome means for determining whether he had information bearing on" the plaintiff's claims. 281 F.3d 676, 681 (7th Cir. 2002). The Court of Appeals further noted that the plaintiff failed to submit any interrogatories to the executive, and that her "failure to take advantage of this inexpensive, convenient method of discovery, *i.e.*, interrogatories, cast[] serious doubt over her claim that [the executive] possessed information that was more than marginally relevant to [the plaintiff's] civil action." *Id.* at 681-82.

As noted by the Court during the hearing, Plaintiff argued that President Daniels has a key responsibility in this matter. However, the only such "key responsibility" identified by Plaintiff concerned ensuring that Purdue University would comply with any court order for injunctive relief. Further, Defendants asserted that President Daniels has no personal knowledge of the events underlying this matter, and that Plaintiff has not sought discovery on this topic, either through a Rule 30(b)(6) deposition or even interrogatories. As explained by the Court, both discovery options noted by Defendants would be more convenient and less burdensome and, for that matter, perhaps even more likely to provide accurate information on the procedures necessary to ensure expungement of a record.

While the Court does not believe that the Federal Rules or any relevant case law place a high-ranking executive such as President Daniels beyond the reach of a federal subpoena, the Court nonetheless follows the reasoning of the cases noted above and finds that Defendants provided good cause for the protective order sought in their motion. Indeed, it appears there is good cause to believe that the information sought by Plaintiff is available from less burdensome sources and,

further, that the noticed deposition would cause an undue burden outweighing the seemingly minimal—if any—benefit to Plaintiff in President Daniels personally providing the information in a deposition. For these reasons, the Court granted the Motion for Protective Order at the October 29, 2020 hearing and indicated that an order would follow, which the Court now provides via the instant order.

The Court **AFFIRMS** that, at this time, Plaintiff is barred from taking the deposition of Defendant Mitchell Elias Daniels. The Court further **AFFIRMS** that the parties are to meet and confer regarding alternative means of discovery for the information sought by Plaintiff. The Court notes that the requirement to meet and confer is not merely pro forma and, further, the Court cautions that a renewed motion seeking to revisit this issue must show changed circumstances not present prior to the Court's October 29, 2020 hearing on this matter.[2] Finally, the Court notes that it will look favorably upon any motion to extend discovery deadlines for the limited purpose of allowing Plaintiff to seek the information outlined in his response to the Motion for Protective Order.

So ORDERED this 5th day of November, 2020.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT

---

[2] Plaintiff inquired at the hearing about future motions on this topic. The Court's order for a meet and confer is not meant to simply provide the parties with an opportunity to come to a negotiated agreement on the issues discussed above. The Court has ruled that Defendants are entitled to a protective order barring the deposition of President Daniels at the present time. Should subsequent discovery fail to provide the information outlined in Plaintiff's response to the Motion for Protective Order, Plaintiff is, of course, free to make any motion he deems necessary. However, Plaintiff should do so understanding that the Court intends to employ the same analysis contained herein and explained at the hearing.