UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:17-CV-33-JPK |
| | ) |
| PURDUE UNIVERSITY, *et al.*, | ) |
|     Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on a Motion to Quash Subpoena to Testify at a Deposition to Mr. Noel Perry [DE 115], filed by non-parties Family Concern Counseling and Noel Perry. Defendants Purdue University, Purdue University Board of Trustees, Mitchell Elias Daniels, Jr., Alysa Christmas Rollock, and Katherine Sermersheim filed a response, and Plaintiff John Doe and the non-parties filed separate replies. For the following reasons, the motion is denied.

## BACKGROUND

Family Concern Counseling and Noel Perry ("the non-parties") explain that Mr. Perry is a mental health counselor employed by Family Concern Counseling. (Mot. 2, ECF No. 115). Mr. Perry is pursuing his state licensure in Indiana and has completed 2,500 of the requisite 3,000 hours. *Id.* Mr. Perry counseled Plaintiff John Doe from 2018 through 2020. *Id.*

On September 17, 2020, Mr. Perry was served with a subpoena seeking the production of documents and a deposition. *Id.* at 1, 6. Mr. Perry served defense counsel with a written objection to the command to produce documents and subsequently filed the instant motion to quash the command to testify at a deposition. *Id.* at 1.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a non-party to testify at a deposition and produce designated documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 requires a court to quash or modify a subpoena based on timely motion if the subpoena requires disclosure of privileged or other protected matter, if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii).

The non-parties assert that Mr. Perry's communications with Plaintiff and any accompanying records are not relevant to this matter and, therefore, they are not discoverable under Federal Rule of Evidence 401. (Mot. 7, ECF No. 115). But Rule 401 applies to the admission of evidence, not discovery disputes. The broad scope of discovery, which applies to discovery requests sent to non-parties as well as parties, permits a party to seek information that is not privileged, relevant to the party's claim or defense, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016).

## ANALYSIS

The arguments advanced by the non-parties, Defendants, and Plaintiff span numerous issues: 1) timeliness of service of the subpoena; 2) compliance with Northern District of Indiana Local Rule 37-1; 3) proper service of the subpoena; 4) application of the psychotherapist-patient privilege to Mr. Perry's communications with Plaintiff; 5) waiver of the psychotherapist-patient

2

privilege; 6) timeliness of the assertion of the psychotherapist-patient privilege; and 7) Defendants' request for attorneys' fees and costs. The Court addresses each argument in turn.[1]

Before doing so, however, it bears stressing that the proper application of any relevant privilege, and the related question of whether Plaintiff has waived such a privilege, are the type of issues that routinely and appropriately require a judicial determination. The remaining chaff the Court must cut through is perhaps more suitably relegated to a meeting and conference between the parties. And, though the Court will decide these issues so that the litigation can proceed, the parties should remain cognizant of their obligation "to secure the just, speedy and inexpensive determination" of this action. Fed. R. Civ. P. 1.

*1. Service of Subpoena: Timeliness*

The non-parties contend that the Court could grant the instant motion on the ground that the subpoena at issue was untimely. (Mot. 6-7, ECF No. 115). Pursuant to Northern District of Indiana Local Rule 30-1, "[a]ttorneys must schedule depositions with at least 14-days' notice, unless opposing counsel agrees to shorter notice or the court orders otherwise." N.D. Ind. L.R. 30-1(b). The non-parties state—and it appears uncontested—that Mr. Perry was served with the subpoena on September 17, 2020, and that the subpoena demanded Mr. Perry's appearance for a deposition on September 24, 2020. (Mot. 1, 6, ECF No. 115). As such, if the Court were to consider only the dates of service of the subpoena and the noticed deposition, it could find a violation of Local Rule 30-1.

However, the course of the parties' dealings suggest that this was not an instance of Defendants waiting until the last minute to schedule a deposition and then unilaterally imposing a

---

[1] The non-parties state that the motion to quash pertains solely to the sought deposition of Mr. Perry and not to the additionally sought documents. (Non-parties' Reply 2-3, ECF No. 130). Therefore, the Court rules only on the portion of the subpoena noticing Mr. Perry's deposition.

3

deposition date that was without fourteen days' notice. Though the parties dispute certain factual allegations concerning when and how many times Mr. Perry was contacted regarding the deposition, they agree that, at a minimum, he was contacted in early September 2020. (Resp. Ex. F ¶ 3, ECF No. 125-7; Non-parties' Reply Ex. A ¶ 14, ECF No. 130-2). This did not result in either the scheduling of a deposition or service of a subpoena. When a process server employed by Defendants attempted to serve the subpoena, police were called to the scene. The police log of the event supports Defendants' contention that Mr. Perry refused to accept the subpoena from either the process server or the responding officer. (Resp. Ex. G, ECF No. 125-8; Resp. Ex. I, ECF No. 125-10).

The Court rejects the non-parties' request that their motion be granted based on Defendants' failure to strictly comply with Local Rule 30-1. Affidavits from Mr. Perry, the process server, and Defendants' paralegal together make clear that Defendants attempted to contact Mr. Perry at an earlier date and that Mr. Perry ultimately refused service of the subpoena.

As explained by one court:

> Failure to comply with the local rules is not merely a "harmless technicality," but can be a "fatal" mistake. However, "[w]here a previous error is the result of negligence or other nonculpable conduct, and when a motion involves important issues which may affect the outcome of [a] case, like [a] motion to compel, the dispute is better decided on the merits than on procedural grounds."

*Long v. Anderson Univ.*, 204 F.R.D. 129, 133-34 (S.D. Ind. 2001) (quoting *Servin v. GATX Logistics, Inc.*, 187 F.R.D. 561, 562 (N.D. Ill. 1999); *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993)). Perhaps Defendants indeed failed to comport with the technical requirements of Local Rule 30-1(b). Even so, and though some of the underlying factual allegations are in dispute, Defendants strove to contact Mr. Perry at an earlier date and any failure to strictly comply with Local Rule 30-1(b) was not the result of culpable conduct. And, there is

4

evidence in the record to suggest that Mr. Perry intentionally complicated Defendants' efforts in serving the subpoena. As such, the Court finds that Defendants' failure to comply with Local Rule 30-1(b) does not warrant granting the motion to quash, as the dispute is better decided on the merits.

*2. Local Rule 37-1*

Defendants assert that the non-parties failed to comply with the meet and confer requirement of Northern District of Indiana Local Rule 37-1, and argue that the instant motion may be denied on that ground alone. (Resp. 5, ECF No. 125).

Local Rule 37-1 states that "[a] party filing any discovery motion must file a separate certification that the party has conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." N.D. Ind. L.R. 37-1(a). Further, "[t]he court may deny any motion described in subdivision (a)—except those motions brought by or against a person appearing pro se—if the required certification is not filed." N.D. Ind. L.R. 37-1(b).

The non-parties assert that they called Defendants on September 21, 2020 to discuss the subpoena. (Non-parties' Reply 3, ECF No. 130). The non-parties represent that, after a brief conversation between counsel, it was clear that no agreement could be reached without involvement of the Court. *Id.* The non-parties further note that they filed a Local Rule 37-1 certification on October 7, 2020. *Id.* The certification discusses the September 21, 2020 conversation and explains that the non-parties advised that they objected to the subpoena on numerous grounds. (Local Rule 37-1 Certification ¶¶ 1-2, ECF No. 126). The certification further states that defense counsel indicated that he would not withdraw the subpoena, and the non-parties thus advised that they would file a motion to quash. *Id.* at ¶¶ 3-4. Accordingly, the non-parties

5

assert that the requirement for a good faith attempt to confer to resolve discovery disputes has been met. (Non-parties' Reply 3-4, ECF No. 130).

Defendants are correct that the non-parties failed to file the requisite certification with their motion to quash in compliance with Local Rule 37-1(a). Nonetheless, as explained in the preceding section, the Court finds that the non-parties' failure to strictly comply with Local Rule 37-1(a) at the time of filing the motion to quash was the result of negligence or nonculpable conduct and, as such, does not warrant granting the instant motion, as the dispute is better decided on the merits. *See Long*, 204 F.R.D. at 133-34.

*3. Service of Subpoena: Properness*

The non-parties assert that the subpoena may be quashed because it was not properly served. (Mot. 7-8, ECF No. 115). For the reasons explained below, based in part on the allegations contained in an affidavit provided by the process server and a police log recorded by an officer present at the scene—both of which state that Mr. Perry attempted to refuse service—the Court finds that the subpoena was properly served.

Pursuant to Rule 45, "[a]ny person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."[2] Fed. R. Civ. P. 45(b)(1). "When delivery options other than USPS certified mail or personal service are used, however, courts within the Seventh Circuit must themselves determine if the method was a 'sensible option' that satisfies the requirement of 'delivering a copy to the named person.'" *Stepp v. Rexnord Indus., Inc.*, No. 1:13-CV-00683-TWP, 2014 WL 3866135, at *2 (S.D. Ind. Aug. 5, 2014) (quoting Fed. R. Civ. P. 45(b)(1)).

---

[2] Defendants state that Mr. Perry was served with a check for his fees and mileage at the time of service of the subpoena, which the non-parties do not dispute. (Resp. 4 n. 1, ECF No. 125).

The non-parties argue that the method of service used in this matter does not comply with the requirement that methods other than personal service of a subpoena must be a "sensible option." (Mot. 7-8, ECF No. 115). As noted above, Defendants hired a process server, Jay Saine, to complete service of the subpoena on Mr. Perry. (Resp. 4, ECF No. 125). Mr. Saine represents that he is an adult resident of Indiana employed as a process server. (Resp. Ex. G ¶¶ 1-2, ECF No. 125-8).

The record before the Court reveals conflicting accounts of the events that transpired when Mr. Saine attempted to serve Mr. Perry. In his affidavit, Mr. Saine states that he arrived at the offices of Family Concern Counseling on September 17, 2020. *Id.* at ¶ 5. After being rebuffed by a staff member, Mr. Saine located Mr. Perry's office on his own. *Id.* at ¶¶ 6-11. When Mr. Saine announced himself to Mr. Perry through the open door of Mr. Perry's office, Mr. Perry closed the door, locked it, and called the police. *Id.* at ¶¶ 12-15. When the responding police officer arrived, Mr. Saine explained who he was and what he was attempting to accomplish. *Id.* at ¶ 17. The officer knocked on Mr. Perry's door and stated that Mr. Saine was there to serve Mr. Perry with a subpoena. *Id.* at ¶¶ 18-19. Mr. Saine attempted to hand Mr. Perry the subpoena and, when Mr. Perry refused to take the papers, the officer took the subpoena from Mr. Saine and placed it inside Mr. Perry's office as Mr. Perry was attempting to close the door. *Id.* at ¶¶ 20-22. This description of the events is supported by the police officer's recording of the incident, with the exception that the officer notes that the subpoena was "placed in the door" of Mr. Perry's office. (Resp. Ex. I 2, ECF No. 125-10).

The non-parties dispute several of these allegations. First, they deny that Mr. Saine was rebuffed by a staff member when he arrived at Family Concern Counseling. (Non-parties' Reply 10, ECF No. 130; Non-parties' Reply Ex. C ¶¶ 3-11, ECF No. 130-4). Second, Mr. Perry

7

denies that his office door was ajar, represents that he did not see the subpoena until he opened the door at the end of a counseling session with a client—whose appointment Mr. Perry states was interrupted by Mr. Saine—and alleges that at no time did Mr. Saine or the police officer state that Mr. Saine was there to serve a subpoena. (Non-parties' Reply Ex. A ¶¶ 31-34, 42, 44, ECF No. 130-2).

"Nothing in [the] language [of Rule 45(b)(1)] suggests that in-hand, personal service is required to effectuate 'delivery,' or that service by certified mail is verboten. The plain language of the rule requires only that the subpoena be delivered to the person served by a qualified person."[3] *Doe v. Hersemann*, 155 F.R.D. 630, 630 (N.D. Ind. 1994); *see also Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *5 (N.D. Ill. Apr. 22, 2020) ("[T]he fundamental purpose of properly serving a subpoena is to make certain that the recipient receives it."); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) ("[T]he court sees no reason for requiring in hand delivery for subpoenas served under Rule 45, so long as service is made in a manner that reasonably [ensures] actual receipt of the subpoena by the witness.").

"Courts often look to the service provisions of Rule 5(b) when [a] subpoena is served on a non-party." *Little*, 2020 WL 1939358, at *3. "Rule 5(b) provides six options for serving documents other than by service to an attorney representing a party," including "leaving it . . . at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office." Fed. R. Civ. P. 5(b)(2)(B)(i); *Little*, 2020 WL 1939358, at *3. Further, "an alternative means of serving a subpoena can be appropriate once the party seeking evidence demonstrates an inability to effectuate service after a diligent effort." *Little*, 2020 WL 1939358, at *4 (internal

---

[3] Although the language of Rule 45(b)(1) was later modified, this change was "not material to the *Hersemann* analysis." *Ott v. City of Milwaukee*, 274 F.R.D. 238, 241 (E.D. Wis. 2011).

8

quotation marks and citation omitted). Predictably, this "includes situations in which the person on whom service is sought attempts to evade a process server." *Id.*

The Court is not wholly unsympathetic to the non-parties' argument. If Mr. Perry was in a private counseling session with a client, it is understandable that he would endeavor to avoid interruption. Nonetheless, Mr. Saine states that he identified himself to Mr. Perry, and both Mr. Saine and the police officer—who, the Court notes, is seemingly unrelated to and has no apparent bias in this matter—state that the officer attempted to explain the situation to Mr. Perry and that the officer placed the subpoena either in Mr. Perry's office or wedged in the office door, either of which would place it within his view, after Mr. Perry refused to take possession of it. And, though Mr. Perry disputes these facts, "the Seventh Circuit has held that affidavits of process servers are prima facie evidence of service that can be overcome only by strong and convincing evidence, not by a self-serving affidavit by [an individual] who claims that [he] has not been properly served with a summons." *Abbott v. Kidder, Peabody & Co.*, No. 97 C 3251, 1997 WL 337228, at *3 n. 2 (N.D. Ill. June 16, 1997) (citing *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)). In the face of the affidavit from Mr. Saine and the accompanying police log, Mr. Perry's own affidavit does not rise to the level of such strong and convincing evidence.

Regardless, leaving the subpoena in Mr. Perry's office or in a crack in his office door comports with Rule 5(b)'s allowance that a document may be left "in a conspicuous place" in the office of the individual upon whom service is being attempted. *See* Fed. R. Civ. P. 5(b)(2)(B)(i); *Little*, 2020 WL 1939358, at *3. And, further, both Mr. Saine's and the police officer's description of the events are analogous to the circumstances described in *Abbott*, in which the court found that a subpoena was properly served, pursuant to Rule 45(b), where a process server placed the

9

subpoena under the windshield wiper arm of a car after the car's occupant refused to accept the papers in hand. 1997 WL 337228, at *3. Accordingly, the Court finds that Mr. Perry was properly served with the subpoena per Rule 45.[4]

*4. Application of the Psychotherapist-Patient Privilege*

"Federal common law determines the scope of privileges available in cases involving a question of federal law." *Zukley v. Town of Shererville*, No. 2:14-CV-347-JVB-JEM, 2016 WL 6994158, at *3 (N.D. Ind. Nov. 30, 2016) (citing Fed. R. Evid. 501). As held by the Supreme Court of the United States, "confidential communications between a *licensed* psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (emphasis added) (agreeing that "a psychotherapist-patient privilege will serve a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth'" (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)). The Seventh Circuit Court of Appeals has not issued a definitive ruling on the question of whether the psychotherapist-patient privilege extends to *unlicensed* counselors. Moreover, the Court of Appeals has specifically declined to rule on whether courts should look to the relevant state law in determining this issue. *See United States v. Schwensow*, 151 F.3d 650, 657 n. 4 (7th Cir. 1998). Nonetheless, the Court need not determine whether the psychotherapist-patient privilege applies to communications between Plaintiff and Mr. Perry as, even if the privilege applies, it has been waived.

---

[4] The absence of such a finding would have no effect on the ultimate outcome of the instant dispute. At a telephonic status conference held on October 29, 2020, counsel for the non-parties represented that they would accept service on behalf of Mr. Perry for any future subpoena noticing a deposition. Should the Court have declined to make a finding on the propriety of service of the subpoena at issue here, therefore, Defendants would be entitled to simply serve a second subpoena on Mr. Perry via this manner.

10

In *Schwensow*, the Court of Appeals noted that its task was to determine whether the district court erred in concluding that the relevant individuals "failed to qualify as psychotherapists, social workers, *or another kind of counselor entitled to receive privileged communications*." *Id.* at 657 (emphasis added). In describing why the individuals at issue were not counselors entitled to receive privileged communications, the Court of Appeals explained that they did not: 1) "possess[] credentials that might qualify them as licensed to receive privileged communications"; 2) "act or hold themselves out to be acting in the capacity of counselors, much less licensed counselors"; 3) "identify themselves as therapists or counselors"; or 4) "confer with Schwensow in a fashion that resembled a psychotherapy session." *Id.* Further, the office in which the individuals worked "did not contain any indicia of being an office that provided counseling services." *Id.* And, one of the relevant individuals testified that he had never received any training in psychotherapy, social work, or any other kind of counseling, while the other individual testified that she had never had any kind of mental health training. *Id.* Finally, Schwensow's interactions with the two individuals "did not relate to diagnosis, treatment, or counseling of Schwensow for purposes of attempting to treat [him] . . . ." *Id.* at 658. The Court of Appeals concluded that, "[u]nder no circumstances can these communications be interpreted as 'confidential communications' entitled to protection from disclosure under Rule 501." *Id.*

In the instant case, Mr. Perry is a mental health counselor employed by Family Concern Counseling. (Mot. 2, ECF No. 115). Mr. Perry represents that his patients "have full confidence that their communications with [him] are privileged unless specifically excepted by statute." (Non-parties' Reply Ex. A ¶ 6, ECF No. 130-2). Further, during his deposition, Plaintiff testified that he sees Mr. Perry for treatment of Plaintiff's anxiety and depression and noted his view that

11

his communications with Mr. Perry were confidential. (Resp. Ex. D 148:11-14, 149:7-18, ECF No. 125-5).

On the record before the Court, it appears that Mr. Perry holds himself out, identifies himself, and acts as a mental health counselor, is actively working toward his licensure in Indiana, conferred with Plaintiff in a fashion resembling a counseling session, and works in an office that specifically provides counseling services. If the Court looks solely to these facts and the reasoning in *Schwensow*, Plaintiff's communications with Mr. Perry conceivably fall under the psychotherapist-patient privilege. *See* 151 F.3d at 656-58.

Defendants, however, urge the Court to look to Indiana law in determining the issue of whether there is an applicable psychotherapist-patient privilege in this instance. (Resp. 13-14, ECF No. 125). Defendants are correct that, should the Court look only to Indiana law, the psychotherapist-patient privilege may not apply to Plaintiff's communications with Mr. Perry. Indiana law provides that "[m]atters communicated to a counselor in the counselor's official capacity by a client are privileged information and may not be disclosed by the counselor to any person" except under certain circumstances. Ind. Code § 25-23.6-6-1. "Counselor" is defined as "a social worker, a clinical social worker, a marriage and family therapist, a mental health counselor, an addiction counselor, or a clinical addiction counselor who is licensed" under the relevant Indiana statute. Ind. Code § 25-23.6-1-3.8. As explained by the Indiana Court of Appeals, an individual "must be licensed in order to fall within the scope of the counselor/client privilege found in Indiana Code section 25-23.6-6-1." *Rogers v. State*, 60 N.E.3d 256, 266 (Ind. Ct. App. 2016). Addressing the question of "whether patient communications to a counselor who is supervised by a psychiatrist fall within the doctor-patient privilege," the Supreme Court of Indiana has clarified that "a counselor who is in fact the caregiver and acts largely independently is not an

adjunct to the psychiatrist and thus is not covered by the privilege." *Matter of C.P.*, 563 N.E.2d 1275, 1276, 1277 (Ind. 1990) (explaining that "courts do not extend the scope of the privilege by implication").

Mr. Perry states that he is not—or was not, during the time he counseled Plaintiff—a licensed counselor. (Non-parties' Reply Ex. A ¶ 4, ECF No. 130-2). Mr. Perry represents that he counseled Plaintiff from 2018 through 2020, during which time Mr. Perry served as Plaintiff's sole counselor at Family Concern Counseling and conducted all sessions with Plaintiff privately. *Id.* at ¶¶ 10-11. Further, Mr. Perry notes that at no time was another counselor present, nor was Plaintiff a client of any other counselor at Family Concern Counseling. *Id.* at ¶ 12. Given these representations, it appears that the counselor/client privilege provided by Indiana Code § 25-23.6-6-1 does not apply to the communications between Plaintiff and Mr. Perry.

Defendants correctly note that, in *Schwensow*, the Court of Appeals stated that it "express[ed] no opinion on the extent to which state law should guide [the] analysis . . . ." 151 F.3d at 657 n. 4. Yet, the Court of Appeals further stated that it was "not convinced that the district court's reliance on state law [in determining whether the psychotherapist-patient privilege applied] was correct." *Id.* (noting that, in that instance, the outcome under both federal and state law was the same). And, the Court of Appeals relegated any discussion of the potentially applicable state law to a footnote, whereas the relevant portion of the body of the decision refers only to federal law and an evaluation of whether the communications with the counselors at issue could be interpreted as "confidential communications" entitled to protection from compelled disclosure under Federal Rule of Evidence 501. *Id.* at 656-58.

Nonetheless, as stated above, the Court need not decide whether Indiana law and the provision of the counselor/client privilege therein is applicable to the instant case. Even if the

psychotherapist-patient privilege applies to the communications between Plaintiff and Mr. Perry, it has been waived.

*5. Waiver of Privilege: Psychological State in Issue*

Defendants assert that Plaintiff has waived the psychotherapist-patient privilege by placing his mental health at issue in this matter. (Resp. 6-8, ECF No. 125).

As noted above, the Supreme Court of the United States has held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee*, 518 U.S. at 15. This privilege can serve vital interests. Nevertheless, like other privileges, it is subject to waiver. *Id.* at 15 n. 14. As explained by one court, "[a]fter *Jaffee*, the courts have been unanimous in holding that a party may surrender the psychotherapist-patient privilege by affirmatively placing his or her psychological state at issue in the suit." *Flowers v. Owens*, 274 F.R.D. 218, 223 (N.D. Ill. 2011).

There is disagreement among the courts regarding when such a waiver has occurred and, further, disagreement in this jurisdiction regarding whether the Seventh Circuit Court of Appeals has issued a definitive ruling on this question. One district court noted that three approaches have emerged regarding whether a waiver has occurred, explaining:

> Under the broad application, the plaintiffs waive the privilege by merely seeking damages for emotional distress. Under the narrow application, the plaintiffs must place an affirmative reliance on the psychotherapist-patient communication to waive the privilege. The middle ground finds that no waiver occurs if the plaintiffs are only seeking garden variety damages.

*Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 513 (N.D. Ill. 2018) (internal quotation marks and citations omitted).

In *Doe v. Oberweis Dairy*, the Court of Appeals held that, "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." 456 F.3d 704, 718 (7th Cir. 2006). Some district courts have interpreted this holding to mean that the Court of Appeals endorsed the "broad" application, as described above, while others believe the Court of Appeals instead endorsed the "middle ground" application. *Compare Flowers*, 274 F.R.D. at 223-24 (finding that it is unclear from *Oberweis* that the Court of Appeals' position is that the psychotherapist-patient privilege is waived when any emotional distress damages are sought) *with Laudicina*, 328 F.R.D. at 514 ("This Court believes that the Seventh Circuit in [*Oberweis*] applied waiver of the psychotherapist-patient privilege broadly.").

The court in *Laudicina* determined that the Court of Appeals intended to embrace the "broad" approach in *Oberweis*. 328 F.R.D. at 512-18. The court opined that "[a]llowing for 'garden variety' damages without finding a waiver of the psychotherapist-patient privilege is a half measure." *Id.* at 511. Further, the court noted that the language in *Oberweis* is broad and sweeping, and that "the judges on the Seventh Circuit are careful writers: They say what they mean and mean what they say. The broad language hedges no bets. In *Oberweis*, the Seventh Circuit is all in. The use of this type of language must have been employed for a reason." *Id.* at 514. Additionally, the court observed that cases "recognize that the Seventh Circuit applies waiver broadly." *Id.* (collecting cases). Finally, the court explained that "commentators agree that the Seventh Circuit falls within the broad waiver camp." *Id.*

The court in *Laudicina* further offered several well-reasoned arguments as to why the "middle ground" approach, under which the privilege is waived only if the plaintiff is seeking "garden variety" emotional distress damages, is problematic. *Id.* at 515-18. While the Court finds

15

these arguments compelling, it need not delve into them here because Plaintiff has waived the psychotherapist-patient privilege under both the "broad" and "middle ground" approaches, and the "narrow" approach finds no support in the case law of this jurisdiction.[5]

In his Amended Complaint, Plaintiff asserts that he has "sustained tremendous damages, including, without limitation, emotional distress, loss of educational, military career opportunities, economic injuries and other direct and consequential damages." (Am. Compl. ¶ 124 ECF No. 51). In the prayer for relief, Plaintiff seeks damages for injury to his "physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects . . . ." *Id.* at ¶ (ii)(a), p. 66-67. Using the "broad" approach, under which a plaintiff waives the psychotherapist-patient privilege by seeking any damages for emotional distress, Plaintiff has clearly waived the privilege in the instant matter.

In reviewing this issue under the "middle ground" approach, the Court must determine whether Plaintiff has alleged only "garden variety" damages. The term "garden variety" damages has been defined in various ways. *See Laudicina*, 328 F.R.D. 513-14 (explaining that the term "garden variety" in this context has no set definition). One source noted that English dictionaries define "garden variety" as "[o]rdinary, common, or unexceptional." Michael D'Ambrosio, *The Psychotherapist-Patient Privilege in Prison Litigation: How Can You Claim "Garden Variety" Emotional Distress When the Flowers are Made Out of Steel*, 43 Fordham Urb. L.J. 915, 946 (2016) (internal quotation marks and citation omitted). Another defined such damages as "the negative emotions that [the plaintiff] experienced essentially as the intrinsic result of the

---

[5] And, the non-parties do not advance any argument regarding the "narrow" approach but, rather, focus on the contention that Plaintiff seeks mere garden variety damages for his emotional distress claims. (Non-parties' Reply 5-6, ECF No. 130). Plaintiff, in turn, offers no argument on any of the three approaches.

defendant's alleged conduct," such as "humiliation, embarrassment, and other similar emotions," but not the "resulting symptoms or conditions that [the plaintiff] might have suffered." *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999). And, yet a third explained that they were "damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct . . . ." *Awalt v. Marketti*, 287 F.R.D. 409, 418 (N.D. Ill. 2012). In addition to these definitions, the court in *Flowers* collected still more from numerous cases:

> Garden variety emotional damages are: "the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized," *Kunstler v. City of New York*, 2006 WL 2516625, [at *]9 (S.D.N.Y. 2006); "the generalized insult, hurt feelings and lingering resentment which anyone could be expected to feel" given the defendant's conduct, *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 657, 660 (D. Kan. 2004); the "normal distress experienced as a result of the [claimed injury]," *Carr v. Double T Diner*, 2010 WL 3522428, [at *]3 (D. Md. 2010); . . . the "'generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the plaintiff's work life and rarely involves more than a temporary disruption of the claimant's personal life,'" *Ortiz* [*v. Potter*], 2010 WL 796960, [at *]3 [(E.D. Cal. Mar. 5, 2010)]; the "ordinary or commonplace," "simple or usual," *Rhodes v. County of Placer*, 2011 WL 130160, [at *]5 (E.D. Cal. 2011); *Valentine v. First Advantage Saferent Inc.*, 2009 WL 3841967, [at *]1 (C.D. Cal. 2009); those that do not involve psychological treatment or adversely affect any "'particular life activities,'" *Press v. Concord Mortgage Corp.*, 2009 WL 6758998, [at *]7 (S.D.N.Y. 2009); those where the plaintiff describes his or her distress "in vague or conclusory terms," but does not describe "the[ir] severity or consequences," *Wallace v. Suffolk County Police Dept.*, 2010 WL 3835882, [at *]9 (E.D.N.Y. 2010); or those that involve the general pain and suffering and emotional distress one feels at the time of the complained-of conduct, but not any ongoing emotional distress. *Kim v. Interdent Inc.*, 2010 WL 1996607, [at *]1 (N.D. Cal. 2010).

274 F.R.D. at 225-26.

Under these definitions, particularly when they are considered in combination, Plaintiff's allegations in the instant matter extend well beyond "garden variety" emotional distress damages. Plaintiff seeks $100,000.00 in damages for emotional and psychological injuries (Resp. Ex. C 5, ECF No. 125-4). While the Court agrees that "'garden variety' damages are difficult to define," there is no support for the argument that damages for severe anxiety that prevented a plaintiff from

17

working, or even at times performing menial tasks, are mere "garden variety." *Laudicina*, 328 F.R.D. at 517. Yet, those are precisely the type of damages that Plaintiff seeks. During his June 2020 deposition, Plaintiff testified that he has not worked since 2018 due to severe anxiety and, further, that this anxiety made it difficult for him to perform menial tasks. (Resp. Ex. D 191:10-17, ECF No. 125-5).[6] Plaintiff further testified that he sees Mr. Perry for counseling specifically to treat this anxiety, as well as depression. *Id.* at 148:11-14. And, perhaps most importantly, Plaintiff lays the blame for his difficulties in this area squarely at Defendants' feet. *Id.* at 148:11-19. With this testimony, Plaintiff connects his emotional distress claims to his claim regarding the loss of future career prospects.

Additionally, Plaintiff has refined his request for damages for emotional and psychological injuries throughout the course of this litigation and his treatment with Mr. Perry. Plaintiff's initial disclosures from October 18, 2019 and December 2, 2019 note that he seeks "[n]on-economic damages (physical well-being, emotional and psychological damages, damages to reputation) not subject to calculation, to be determined at trial." (Resp. Ex. A 3, ECF No. 125-2; Resp. Ex. B 4, ECF No. 125-3). It is not until April 29, 2020, that Plaintiff discloses that he is seeking $100,000 in emotional and psychological damages, noting that "[t]his amount is based upon a computation derived from considering jury instructions for awarding infliction of emotional distress damages." (Resp. Ex. C 5, ECF No. 125-4). On these facts, Plaintiff's claims for emotional distress damages rise above any definition of "garden variety" damages. Accordingly, Plaintiff has waived the

---

[6] The Court notes that, while Plaintiff testified that he has not worked since 2018, he further stated that he was able to begin doing "tasks" in 2019. (Resp. Ex. D 191:17-23, ECF No. 125-5).

psychotherapist-patient privilege by placing his psychological state in issue via his claim for damages for emotional distress.

*6. Waiver of Privilege: Timeliness*

Defendants argue that both Plaintiff's and the non-parties' assertions of the psychotherapist-patient privilege are untimely. (Resp. 8-10, ECF No. 125). The non-parties contend that Mr. Perry may assert the privilege on Plaintiff's behalf and has timely done so by filing the instant motion to quash pursuant to Rule 45. (Non-parties' Reply 6-7, ECF No. 130). Defendants, in turn, counter that the privilege has already been waived by Plaintiff's failure to timely assert it in response to Defendants' discovery requests. (Resp. 8-10, ECF No. 125). Once again, the Court need not reach a determination on this issue. Regardless of whether it was timely raised, Plaintiff has waived the psychotherapist-patient privilege—if it indeed applies at all—by placing his psychological state in issue and seeking damages for the injuries discussed above. Nonetheless, the Court notes that this case is a perfect example of unnecessary complications that may arise when a party fails to clearly and unequivocally assert a privilege early in the course of litigation.

*7. Defendants' Request for Attorneys' Fees and Costs*

Defendants request an award of attorneys' fees and costs incurred in response to the motion to quash. (Resp. 16, ECF No. 125). As explained above, the law regarding the psychotherapist-patient privilege is unsettled in this jurisdiction and, while the non-parties raised at least one unmeritorious argument—namely, whether the subpoena was properly served—the Court cannot find that it was improper for them to seek a determination from the Court on the issue of whether Plaintiff's communications with Mr. Perry are privileged and, further, whether Plaintiff

19

waived the privilege. Accordingly, the Court denies Defendants' request for attorneys' fees and costs.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Quash Subpoena to Testify at a Deposition to Mr. Noel Perry [DE 115]. The Court **ORDERS** Noel Perry to appear for a deposition at a time and date agreed upon by Mr. Perry, Plaintiff, and Defendants. Finally, the Court **DENIES** Defendants' request for attorneys' fees and costs incurred in response to the motion to quash.

So ORDERED this 11th day of January, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT