IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | **CIVIL ACTION** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** ) | |
| **DANIELS, JR.**, in his official capacity as President of ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, **KATHERINE** ) | |
| **SERMERSHEIM**, in her official capacity at Purdue University, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DECLARATION OF PLAINTIFF'S COUNSEL PHILIP A. BYLER

PHILIP A. BYLER, hereby declares subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1.  I am Senior Litigation Counsel at Nesenoff & Miltenberg LLP, the attorneys for Plaintiff John Doe in his case. I am admitted pro hac vice to this Court and have been handling the case since its original filing, including successfully arguing the Seventh Circuit appeal, *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019).

2.  I submit this Declaration in opposition to Defendants' motion for sanctions because so much of what is asserted in Defendants' motion is incorrect that I put myself under oath in setting the record straight.

**A.  Plaintiff's Damage Claims and Plaintiff's Supporting Production.**

3.  Plaintiff's Second Amended Rule 26 Disclosure Statement provides an itemization and a computation of damages for each category of damages. (Dfs. Br. Ex. A.) As a review of

[1]

Plaintiff's Second Amended Rule 26 Disclosure Statement reveals, the categories of economic losses are (i) loss of income, (ii) loss of scholarships, (iii) loss of future income and (iv) attorney fees supported by the attorney fee shifting provisions applicable to Title IX and section 1983 actions, and the categories of non-economic losses are (i) reputational damages and (ii) emotional/psychological damages. (Dfs. Br. Ex. A.) Each category of economic losses and each category of non-economic losses has an explanation of how the category is calculated. (Dfs. Br. Ex. A.)

4.    Plaintiff answered interrogatories and produced from his own files documents that supported his economic losses. The loss of income category was calculated by subtracting the employment income of Plaintiff from first year income of a commissioned officer shown on the publicly available DOD military pay chart referred to Plaintiff's counsel,[1] and the category of income was supported by Plaintiff's interrogatory answers as to his employment after he was suspended from Purdue (Plaintiff's Motion Exhibit 1 is the interrogatory answers, see Answer 4) and produced documents with respect to that employment. The loss of scholarship was supported by the Plaintiff's document production, the Navy document production and Plaintiff's answers to Defendants' First Set of Interrogatories (Plaintiff's Motion Exhibit 1 is the interrogatory answers, see Answer No. 6), and that loss cannot reasonably disputed. The loss of future income will be provided by an expert who will rely upon the produced documents.

5.    Plaintiff produced documents in support of his non-economic losses that included medical records, has provided eight medical authorizations that were not required by the discovery stipulation so ordered by the Court (ECF Doc. Nos. 89-90, Plaintiff's Motion Exhibit 2 is a

---

[1] The reference was made by U.S. Army Major John Byler (Purdue '05) and verified by Wounded Warrior U.S. Marine Captain James Byler (Purdue '08)

[2]

collective exhibit of the eight authorizations) and has provided social media information in Instagram files and Snapchat username (Snapchat does not archive content files). Plaintiff also answered an interrogatory relevant to non-economic losses. (Pl. Mot. Ex. 1, Answer 8.)

6.  Defendants' assertion that Plaintiff has failed to disclose his supporting medical records for his damage claim (Ds. Br. 2) is false, and Defendants' counsel must know it is false. Attached as Plaintiff Motion Exhibits 3 and 4 are the e-mails of Plaintiff's counsel with Defendants' counsel, producing the medical records that were in Plaintiff's possession; the initial effort to transmit a pdf to Defendants' counsel failed because the medical records were so voluminous that the pdf was too large to be transmitted by e-mail (Pl. Mot. Exs. 3-4); and so Plaintiff's counsel arranged for a link that was sent to Defendants' counsel, who acknowledged receipt (Mot. Ex. 4).

7.  As Plaintiff testifies, he produced from his own files documents relating to his damage claims, including medical records; and indeed, as Plaintiff notes, counsel for Defendants could only draft the medical authorizations and send them to Plaintiff's counsel because Defendants' counsel was able to get the names of the medical providers from the documents produced by Plaintiff. (Plaintiff Decl. ¶ 6.) When I asked Defendants' counsel why the medical authorizations given the volume of medical records produced by Plaintiff, the response was that there may be additional records that were not in Plaintiff's possession.

8.  Plaintiff has provided eight signed medical authorizations as requested by Defendants by e-mail. (Pl. Mot. Ex. 2.) When Defendants originally sent to me the medical authorizations by e-mail, I said I would send them on to Plaintiff, which I obviously did in an effort to cooperate in discovery, and I worked with Plaintiff to provide signed authorizations. (Dfs. Br. 3 & Dfs. Exs. B-D.) On June 15, 2020, I for Plaintiff produced six signed authorizations

notwithstanding the lack of formal request or demand and did so with the expectation of producing more. Two more signed authorizations were in fact produced.

**B.    Defendants Are Not Missing Key Documents.**

9.    Defendants complain: "despite initially agreeing to produce social media data and his medical records, Plaintiff has inexplicably reneged and left Defendants without key documents." (Dfs. Br. 2.) That is false. In addition to the above identified produced medical records and medical authorizations, Plaintiff has produced cell phone information, Instagram files and Plaintiff's Snapchat username (Snapchat does not archive content files) that was done pursuant to the discovery stipulation so ordered by the Court. Also, Plaintiff already verified interrogatory responses and has testified here that he has not used social media to discuss *Doe v. Purdue*. (Plaintiff Decl. ¶ 7.)

**C.    Medical Authorizations Not Part Of Stipulation of the Parties.**

10.    Defendants do not make clear is that the medical authorizations were not part of the compromises resulting in the Stipulation of the Parties so ordered by the Court resolving the parties' respective motions to compel. (ECF Nos. 89-90.) While Defendants refer to its brief in support of its motion to compel (ECF No. 81) and that the statement of the case in that brief was as off base as Defendants' brief is in support of the motion for sanctions, all that is important in that motion to compel brief is that the medical authorizations were not at issue. The Court can review for himself the Stipulation of the Parties (ECF No. 89) and see that the medical authorizations were not part of that Stipulation of the Parties and thus not part of the Court so ordering it (ECF No. 90). The Court can also see that the Stipulation of the Parties covered a wide number of issues, as to which only one subparagraph concerning production of social media is now being raised (ECF No. 89, p. 3).

11.     Defendants discuss the medical authorizations as if they were covered by the so ordered Stipulation of the Parties (Dfs. Br. 3-4), when those medical authorizations were not so covered. Defendants' Certification for the motion for sanctions (ECF No. 94) is misleading and insufficient for a number of reasons; one reason is that Defendants mix together Defendants' litigious correspondence about the authorizations and the social media and does not in the Certification discuss the content of the correspondence; to proceed in that manner results in mistreating the production of medical authorizations as part of the so ordered Stipulation of the Parties when those medical authorizations were not part of the so ordered Stipulation of the Parties. Defendants' Certification misses the forest of Plaintiff's amply document production and discovery cooperation for the trees of Defendants' overly contentious e-mails.

**D.     Delay of Certain Depositions.**

12.     Defendants fail to note that the parties had discussed doing certain depositions in person in late June, but because of what has appeared to be a resurgence of Covid-19 in the country, those depositions were delayed and have now been rescheduled for August 17-19 (Uthuppan, Plaintiff and Plaintiff's parents) and August 24-25 (Amberger, Rollock, Bloom and Sermerschein).

**E.     Plaintiff Produced Downloaded Instagram Files, Plaintiff's Cell Number and Provider, Snapchat Username and Medical Authorization.**

13.     Defendants say that on July 3, 2020, Plaintiff did produce "a portion of the stipulated materials." (Dfs. Br. 5.) In fact, despite a computer crash afflicting me, Plaintiff produced downloaded Instagram files, Plaintiff's cell number and cell provider, Plaintiff's Snapchat username and, separate from the Stipulation of the Parties, a seventh medical authorization. (Dfs. Br. Ex. K.)

F. **Defendants' Accusations and Threat of Seeking Sanctions; Plaintiff's Response.**

14. Defendants do not accurately state the communications leading up to the Defendants making their motion for sanctions. On July 7 and 8, 2020, Mr. Bill Kealey for Defendants did threaten to bring a motion for sanctions if Plaintiff did not comply with the so ordered Stipulation of the Parties, but Defendants do not convey my response. (Dfs. Br. 6 & Ex. L.) I assumed that Defendants believed there was a deficit as to Snapchat, and so I responded:

> Bill:
>
> Do you know what Snapchat is? I didn't; now I have a better idea. It is not really a form of social media. It is more accurately described a private messaging system. Once a message is opened, Snapchat does not preserve it. All you could learn is the name or screen name of some of Plaintiff John Doe's current friends, and that is years removed from the events of this case. As Plaintiff John Doe has already verified under oath, he has never used Snapchat with respect to *Doe v. Purdue*. In my view, your scorched earth discovery efforts as to Plaintiff John Doe is misconceived.
>
> *Phil*

(Dfs. Br. Ex. L.)

G. **Defendants' Continued Threat of Seeking Sanctions; Plaintiff's Response.**

15. Defendants' counsel then accused Plaintiff of not producing Instagram data (Dfs. Br. Ex. L), prompting me to respond in a way that I wish the Court to understand:

> Bill:
>
> I have reviewed your accusations in your July 10 e-mail, as I said I would, and those accusations are baseless. We are not ignoring the stipulation; that is false for you to say. If you move for sanctions, I will cross-move for sanctions. You are being unnecessarily litigious, and your constant threats to moving for sanctions is totally inconsistent with what the Court expects of counsel. Also, it may be a good time to discuss with the Court the overall gross over-reach of your scorched earth discovery and your slowness to agree to deposition dates.
>
> What in the world are you talking about as to an Instagram password? We produced to your firm Plaintiff's Instagram files. Plaintiff directly e-mailed to your colleague

>Pamela approving access and requesting that if she had any problems, to let us know. Neither Plaintiff nor I have heard from anyone at your firm that there were any difficulties in downloading the produced Instagram information. Accordingly, I suggest you re-check your information.
>
>I have explained to you before that I did not understand Snapchat. All that has happened is that I agreed that we would provide Snapchat information. In the process of providing that disclosure, I learned that Snapchat does not archive messages and that it is not really social media but a private messenger medium. Plaintiff can and, if need be, state under oath that there are no archived Snapchat messages.
>
>For all your huffing and puffing about social media, which here are Instagram and Snapchat, Plaintiff's social media does not, in Plaintiff's view, yield any relevant information to this case. But we have been cooperating in discovery so that we can move the case forward.
>
>As for your assertion that there are no witnesses supporting reputational and emotional damages, that is simply not true. Your notion that social media accounts is a primary place to look for witnesses supporting reputational and emotional damages is, in my view, totally misconceived and is not true in Plaintiff's case. In any event, what social media that my client ▬ has, has been produced to you.
>
>Plaintiff has provided [seven] authorizations. You complain about two authorizations, and I am working with plaintiff to resolve privilege and relevance issues that are connected to them.
>
>You do not have a basis whatsoever for seeking a preclusion order. Plaintiff has been cooperating in discovery and has not refused to produce anything, even as to what Plaintiff considers to be excessive and irrelevant. I think you need to take Plaintiff's deposition before even thinking about what would be a meritless motion.
>
>*Phil*

(Dfs. Br. Ex. L.)

### H. Defendants' Motion; Plaintiff Produces Eighth Medical Authorization; Snapchat.

16. According to Defendants, Mr. Tyler Jones for Defendants sent a "final reminder e-mail" about Snapchat files, insisting that Snapchat data can be downloaded, and two medical authorizations, and Plaintiff's counsel replied he would get back to Defendants' counsel. (Dfs. Br. 6.) I was in fact discussing with Plaintiff and checking whether contrary to the understanding I

[7]

had, content files could be downloaded from Snapchat using a link provided by Defendants' counsel. What I was learning was that content was in fact not available at Plaintiff's end, and thus what was available was subject to tht so ordered Stipulation of the Partis. However, Defendants three days after sending a "final reminder e-mail" and without seeking a meet and confer, Defendants moved for sanctions; meanwhile, Plaintiff produced an eighth medical authorization.

17. Plaintiff's Declaration contains a discussion of Snapchat and Plaintiff's efforts to download files from Snapchat based on a link provided by Defendants' counsel and Plaintiff's own internet research. (Plaintiff Decl. ¶¶ 10-20.) That discussion is quoted in Plaintiff's Memorandum of Law. (Plaintiff Mem. 11-12.)

**I.** **Nothing To Compel.**

17. As discussed above, with respect to Plaintiff's production per the so ordered Stipulation of the Parties, Plaintiff has produced cell phone information, downloaded Instagram files and the Snapchat username; all that Defendants try to complain about is Snapchat, which does not preserve user content and does not retain user identity past 30 days. See Plaintiff's discussion in his declaration. (Plaintiff Decl. ¶¶ 10-20.0 As for the medical authorizations outside the so ordered Stipulation of the Parties, Plaintiff has produced eight of them; the only one informally requested not provided has privilege issues.

17. I declare under penalty of perjury that the foregoing is true and correct. Executed on July 31, 2020.

                                                                                         _____/s/ *Philip A. Byler*_____
                                                                                             Philip A. Byler