IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> v. <br><br> PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR., in his official capacity as President of Purdue University, **ALYSA CHRISTMAS ROLLOCK**, in her official capacity at Purdue University, **KATHERINE SERMERSHEIM**, in her official capacity at Purdue University, <br><br> Defendants. | CIVIL ACTION <br><br> No. 2:17-cv-33-JPK |

### DECLARATION OF PLAINTIFF JOHN DOE

PLAINTIFF JOHN DOE, hereby declares subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am the plaintiff in this case, using a Court authorized pseudonym.

2. I submit this Declaration in opposition to Defendants' motion for sanctions because Defendants wrongly accuse me of not producing documents and not abiding by a Court Order. I put myself under oath in setting the record straight. I also discuss Snapchat so the Court can understand the limitations of what can be done as to Snapchat discovery.

3. As explained by my counsel and in the Memorandum of Law opposing Defendants' motion, Plaintiff's Second Amended Rule 26 Disclosure Statement provides an itemization and a computation of damages for each category of economic and non-economic damages. (Dfs. Br. Ex. A.)

[1]

4. With respect to economic losses, I answered interrogatories and produced documents from my own files. Plaintiff's Motion Exhibit 1 is the interrogatory answers that included information about my employment after I was suspended from Purdue, and I produced documents with respect to that employment. The loss of ROTC and Presidential scholarships was supported by my document production, the Navy document production and an interrogatory answer.

5. With respect to non-economic losses, I answered an interrogatory and produced documents that included many medical records, and I have provided eight signed medical authorizations. Plaintiff's Motion Exhibit 2 is a collective exhibit of the eight authorizations. I have also provided social media information in Instagram files. I supplied my Snapchat username, but Snapchat does not archive content files.

6. Defendants' assertion that I failed to disclose my supporting medical records for my damage claim is not true:

(a) First of all, I produced a large volume of medical records from my own files, and I know my counsel sent them on to Defendants' counsel (Plaintiff's Motion Exhibits 3-4). Counsel for Defendants could only draft the medical authorizations and send them to my counsel because Defendants' counsel was able to get the names of the medical providers from the documents I produced.

(b) Secondly, I have provided eight signed medical authorizations (Pl. Mot. Ex. 2) as requested by Defendants by an e-mail to my counsel. Plaintiff's counsel worked with me to provide those signed authorizations. Before providing a signed authorization, I felt I should consider relevance and privilege issues. In other words, as for the medical authorizations

[2]

that were not covered by the Stipulation of the Parties, I have produced eight of them; the only one informally requested not provided has privilege issues.

7. Defendants wrongly complain that Defendants have been left without key documents. In addition to the above identified produced medical records and medical authorizations, I have produced cell phone information, Instagram files and my Snapchat username that was done pursuant to the discovery stipulation so ordered by the Court. As I will discuss further below, Snapchat does not archive content files and does not retain user information past 30 days

8. I wish to point out that I already have verified interrogatory responses and I testified here that I have not used social media to discuss *Doe v. Purdue*. Defendants nevertheless seem to be obsessed with current social media use as if it is a vital source of information. I have cooperated in discovery, even though I have questioned what Defendants think they can possibly use that is of any relevance to the case which occurred in the 2015-2016 school year at Purdue.

9. In mid-June of this year, I expressed concern to my counsel about holding depositions in late June because of the persistence of Covid-19. I know the parties were discussing doing certain depositions in person in late June. Sensibly in my view, those depositions were delayed and have now been rescheduled for August 17-19 (Uthuppan, Plaintiff and Plaintiff's parents) and August 24-25 (Amberger, Rollock, Bloom and Sermerschein).

10. In the course of dealing with Defendants' request for Snapchat content, I explained to my counsel what was and wasn't available from Snapchat. When Defendants made their sanctions motion, I was in fact discussing further with my counsel and checking whether contrary to my understanding, using a link provided by Defendants' counsel and doing my own

internet research, content files could be downloaded from Snapchat. The link provided by Defendants' counsel makes clear the kind of information that is obtained, which means Defendants know that content is not what is available at my end.

11. Snapchat tends to be grouped with Instagram and Facebook when labeled as a social media platform, but its features favor direct messaging over general sharing. Snapchat's two primary features are general sharing (putting a video or picture on one's "story"), and direct sharing (sending a video or picture to someone directly). You can also directly message friends. Unless you are a celebrity or a highly influential entity, you can only share content between people with whom you have manually chosen to be friends. Content shared to your story disappears after 24 hours, and content sent to friends directly disappears after they have seen it.

12. The data I downloaded from Snapchat's servers regarding my profile contains no images, no videos and no chats contained within it. Hence, that fact confirmed my view that I did not have content files to download per the Stipulation of the Parties.

13. The files with any kind information are labeled "account," "chat_history," "snap_history," "story_history," "friends," and "user_profile." All other files in the folder are blank.

14. The "account" file contains my account creation date, username, real name, and device information regarding devices I have accessed my Snapchat account, but no content.

15. "Chat_history" contains metadata (not content) regarding all chats sent and received between me and friends dating back 30 days from the time data download request was issued to Snapchat's servers. An example of what this looks like is "{"Received Chat History": [{"From": "USER", "Media Type": "TEXT", "Created": "2020-06-14 01:19:30 UTC"}. The

[4]

entire metadata file consists of these entries stacked on one another. None of these July 2020 entries have any relation much less information relevant to *Doe v. Purdue*.

16. "Snap_history" is very similar to "chat_history", it is entirely comprised of metadata (not content) that only spans back 30 days from time of account data request. An example of a piece of metadata in this file is as follows: {"From": "USER", "Media Type": "VIDEO", "Created": "2020-07-12 20:04:52 UTC"}. Again, none of these July 2020 entries have any relation much less information relevant to *Doe v. Purdue*.

17. "Story_history" is another metadata file spanning back 30 days from time of account data request that shows the following: Stories of other people, both friends and public accounts, that I have viewed, and stories of my own that others have viewed. An example of a piece of metadata from the file is as follows: {"View": "USER", "Media Type": "STORY", "View Date": "2020-07-22 12:39:55 UTC"}. Information regarding Snapchat stories that I have viewed in July 2020 are completely unrelated and irrelevant to this court case.

18. "Friends" file contains users I have been friends with, all users I am currently friends with, users I have blocked, and incoming and outgoing friend requests. An example of how this is formatted is as follows: {"Username": "_____", "Display Name": "____"}. Nothing further is contained within the file. What is to stop Defendants from harassing present and past friends? I find it disconcerting that Defendants care so much in getting their hands on this sort of information that is irrelevant to this court case.

19. "User_profile" is a file that summarizes my activity for the last 30 day period -- snaps sent and received in July 2020, chats sent and received in July 2020, public accounts I have viewed in July 2020, ads I have seen in July 2020, and applications I have installed on my

[5]

phone in July 2020. None of these entries for July 2020 provide content and none have any relation much less information relevant to *Doe v. Purdue*.

20.  I must ask: why are Defendants so keen on possessing what seems to be irrelevant information and what would they plan on doing with it? What can be obtained from Snapchat is not any content, but metadata from 2020 when the case deals with what happened in the 2015-2016 school year at Purdue.

21.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2020.

_John Doe 31JUL2020_
John Doe, a pseudonym

[6]