IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | **CIVIL ACTION** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** ) | |
| **DANIELS, JR.**, in his official capacity as President of ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, **KATHERINE** ) | |
| **SERMERSHEIM**, in her official capacity at Purdue University, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF JOHN DOE'S "SUR-REPLY" TO ADDRESS DEFENDANTS'
MISREPRESENTATIONS CONCERNING THE TESTIMONY AND EXHIBITS OF
THE NAVY DEPOSITIONS THAT WERE NOT THE SUBJECT OF THE
MOVING PAPERS FOR OR OPPOSITION TO DEFENDANTS' SANCTIONS MOTION**

Plaintiff John Doe respectfully submits this "sur-reply" to Defendants' Reply that ostensibly was filed in further support of Defendants' motion for sanctions. Plaintiff John Doe submits "sur-reply" in order to address the portion of Defendants' Reply that made misrepresentations concerning the testimony and exhibits of the Navy depositions and that were not the subject of the Defendants' moving papers for or Plaintiff John Doe's opposition to Defendants' sanctions motion. While Defendants' Reply in further support of their motion for sanctions is ill-conceived and wrong in an unjustified personal attack, what Defendants state in their Reply about the Navy depositions, including that the Navy made its own investigation (which it did not) and concluded that Plaintiff John Doe committed sexual misconduct (which Commanding Officer Rodney Hutton did not), is false and in fairness demands correction now.

[1]

In summary, as will be explained below, the Navy relied totally upon the Purdue investigation and disciplinary decision, and Plaintiff John Doe's disenrollment was based solely upon Purdue's decision to suspend Plaintiff John Doe -- nothing else. That is what the testimony of Commanding Officer Rodney Hutton, Executive Officer Craig Remaly and Staff Lieutenant Kyle Willstatter and the Performance Review Board and disenrollment documents conclusively establish. What Defendants try to paint as investigation by the Navy was simply the collection of documents from the Purdue disciplinary process by Staff Lieutenant Megan Redlawsk Chester who volunteered her opinion, but who had no role in the Performance Review Board that was held in August 2016 (she was not even at Purdue in August 2016) and who had no role in the disenrollment decision. In retrospect, as an aside, counsel for Plaintiff John Doe should have readily agreed to the discovery and depositions of the Navy personnel because that body of evidence fully supports Plaintiff John Doe's position in this case.

The following is a review of the depositions and exhibits from the Navy depositions. A Table of Exhibits is provided at the end of this sur-reply. The redactions in the accompanying exhibits are to preserve the pseudonym status of John Doe and Jane Doe.

**I.     Commanding Officer Rodney Hutton (retired).**

Exhibit A to this application is the deposition transcript of Captain Rodney Hutton (retired in 2018), who in the 2015-2016 school year was the commanding officer of the Purdue Navy ROTC program. (Ex. A hereto: Hutton tr. 7-8.) When asked by Defendants' counsel about the "investigation" of the sexual misconduct allegations against Plaintiff John Doe, Hutton responded that "that investigation was referred to Purdue University." (Ex. A hereto: Hutton tr. 14.)

Hutton identified Hutton Deposition Exhibit A (NSTC 168-195) as the June 14, 2016 "preliminary inquiry" document by Megan Redlawsk Chester regarding the sexual misconduct

allegations against Plaintiff John Doe, recommending that a Performance Review Board be convened; the document is Exhibit B to this application. The following exchange occurred in Commanding Officer Hutton's testimony upon questioning by Defendants' counsel:

> A I would like to ask: Are you asking what actions did Lieutenant Redlawsk take to investigate?
>
> Q Sure. We can start there.
>
> A I directed her to utilize the university investigation for determinations of what occurred.
>
> Q Did you order her to make an independent determination whether or not this had occurred? And by "this" I mean, the allegations raised by [Jane Doe].
>
> A No.

(Ex. A hereto: Hutton tr. 20.)

Commanding Officer Hutton's order to "utilize the university investigation" is why the pages in Hutton Deposition Exhibit A run from 168 to 195; after a one-page cover memorandum, the rest of the pages are Purdue University disciplinary case documents, which Hutton acknowledged. (Ex. A: Hutton tr. 75-76). Exhibit B to this application is Exhibit A to the Hutton deposition. What Defendants snuck in on Reply was just the first page and did so without the context of Commanding Officer Hutton's testimony and the entire document.

Commanding Officer Hutton further explained:

> Q . . . When you say you disenrolled the student, you mean you disenrolled him because you determined that he sexually harassed and assaulted [Jane Doe]?
>
> A No.
>
> Q What do you mean then?
>
> A Because the student was suspended from the university upon completion of that process, the NROTC requirements required that I disenroll the student from the program.

(Ex. A hereto: Hutton tr. 22.)  Hutton did not make a determination that Plaintiff John Doe had committed sexual misconduct.  (Ex. A hereto: Hutton tr. 24.)

Hutton noted that Plaintiff John Doe was a recipient of a Navy ROTC National Scholarship, which not every ROTC student receives.  (Ex. A hereto: Hutton tr. 31.)  Exhibit C to this application are the National Scholarship papers for Plaintiff John Doe; Hutton identified the National Scholarship papers for Plaintiff John Doe that Hutton had signed.  (Ex. A: Hutton tr. 32-33.)

Exhibit H to the Hutton deposition was the August 2020 ROTC Appointment Termination and Disenrollment Authorization (NSTC 0001-0004); it is Exhibit D to this application. Commanding Officer Hutton identified the document (Ex. A: Hutton tr. 56) and when asked about it, testified that the only reason for the ROTC disenrollment was the university suspension:

> Q … Okay. And on the front page it states, does it not, "Reason for Disenrollment/Termination"?
>
> A Yes.
>
> Q Okay. And the signature on the bottom of the first page is your signature?
>
> A In the first endorsement.
>
> Q Yes. And is the signature on the second page your signature?
>
> A Yes.
>
> Q Okay. And is the signature on the fourth page your signature?
>
> A Yes.
>
> Q Okay. Let me go on page 3 where item 2 says, "Type of Disenrollment (Dropped by Institution)."  Is there a statement underneath that?
>
> A 2(A).
>
> Q Okay.

       A "Midshipman [Plaintiff John Doe] was" –

       Q Go ahead.

       A "2(A) Midshipman [Plaintiff John Doe] was suspended by the University for one academic year."

       Q Okay. Is there anything else under item 2?

       A No.

       Q Okay. Go to point 9 on page 4 right above your signature.

       A Yes.

       Q Is there a recommendation?

       A As I assigned "Recommend disenrollment of Midshipman [Plaintiff John Doe] due to suspension by the University for one academic year."

       Q Okay. Was it a requirement of the Naval ROTC program that a student cadet be continuously enrolled in the university?

       A Yes.

(Ex. A hereto: Hutton tr. 66-67.)   Hutton acknowledged that Plaintiff John Doe submitted a statement as part of the Navy ROTC disenrollment proceeding that he (Plaintiff John Doe) was not guilty of the sexual misconduct charges.  (Ex. A hereto: Hutton tr. 70.)  This disenrollment document showed Plaintiff John Doe having a cumulative G.P.A. of 3.30 and 3.17.  (Hutton Dep. Ex. H & Ex. D hereto, p. 4, NSTC 0004.)

      Exhibit G to the Hutton deposition was an August 10, 2020 Performance Review Board document (NSTC 00111-0012) and is Ex. E to this application.  Hutton identified the voting members of the Performance Review Board as Executive Officer Craig Remaly, Major Mike McDowell and Lieutenant Leonard Taylor.  (Ex. A hereto: Hutton tr. 49-50.)  Hutton identified the August 10, 2020 Performance Review Board document and his signature on it, and Hutton identified what was presented to the Performance Review Board, which included the delay

[5]

document so that Plaintiff John Doe could appeal the university determination and which included only one investigation report -- Purdue's:

> Q Okay. Now, is there listed the enclosures with the Performance Review Board on the first page, 12 items?
>
> A Yes.
>
> Q Okay. And in those 12 items are the University Investigator's Report, Final Determination from the Dean of Students, Midshipman [Plaintiff John Doe] 's Statement of Appeal of Final Determination, and University Response to Midshipman [Plaintiff John Doe] 's Appeal.  That was before the Performance Board?
>
> A They are enclosures to the report so they would have had to have been done.
>
> Q Now, go up to item 3 in that listing. You see "Email agreeing to a delay in Performance Review Board proceedings"?
>
> A Yes.
>
> Q Does that refresh your recollection that there was indeed a delay because of the appeal that [Plaintiff John Doe] made in the university disciplinary case?
>
> A Yes. There was a delay for the purpose of ensuring the university process was adequately completed.
>
> Q Okay. Now, listed here is the University Investigator Report; correct? As what was before the Performance Review Board?
>
> A I'm sorry. Can you restate that, sir?
>
> Q Listed here as number 9 is the University Investigator Report; correct?
>
> A That is correct.
>
> Q Okay. Is there listed here any other investigator's report?
>
> A No indication of a second investigative report.

(Ex. A hereto: Hutton tr. 71-73.)  This disenrollment document also showed Plaintiff John Doe having a cumulative G.P.A. of 3.30 and 3.17.  (Hutton Dep. Ex. G & Ex. E hereto, p. 2, NSTC 0012.)

[6]

Commanding Officer Hutton acknowledged that Plaintiff John Doe's performance reviews showed Plaintiff John Doe to be "very motivated," that for "leadership and cohesiveness," he was "very vocal during PT in encouraging other midshipmen, is a team player, and promotes unit cohesion" and that he met or exceeded program standards in "Physical fitness." (Ex. A hereto: Hutton tr. 74.) Hutton acknowledges that there are positive notes about Plaintiff John Doe in the Navy record. (Ex. A hereto: Hutton tr. 74-75.)

## II.    Executive Officer Craig Remaly.

Exhibit F to this application is the deposition transcript of Executive Officer Craig Remaly (to retire January 11, 2021), who in the 2015-2016 school year was second in command at the Purdue Navy ROTC program. (Ex. F hereto: Remaly tr. 8.)

When asked about Plaintiff John Doe's academic performance, Executive Officer Remaly testified that he has seen ROTC students with worse G.P.A.s than Plaintiff John Doe succeed and ROTC students with better G.P.A.s than Plaintiff John Doe fail. (Ex. F hereto: Remaly tr. 12.)

Executive Officer Remaly was asked about Redlawsk Chester's June 14, 2016 "preliminary inquiry" document, but Remaly could only say what her cover memo stated. (Ex. F hereto: Remaly tr. 19-21.) Executive Officer Remaly testified that when an ROTC student was placed on academic warning, it means that the student was below academic standards. (Ex. F hereto: Remaly tr. 24.) Remaly said that Redlawsk Chester was chosen for the preliminary role she played because she was a woman and that she contacted the university. (Ex. F hereto: Remaly tr. 24.) Remaly did not know if Plaintiff John Doe was ordered or strongly requested to provide information on the disciplinary case but that the Navy ROTC had a standard form for a ROTC student to sign in order to provide academic and disciplinary information. (Ex. F hereto: Remaly tr. 26-27.)

Executive Officer Remaly was asked about the August 10, 2016 Performance Review Board document. (NSTC 00111-0012, Ex. E to the Remaly deposition and Ex. E to this application.) Executive Officer Remaly identified and could competently testify about the August 10, 2016 Performance Review Board document because Remaly was on the Performance Review Board that was held on August 9, 2016 and because Remaly signed the August 10, 2020 Performance Review Board document. (Ex. F hereto: Remaly tr. 35.) Major McDowell and Lieutenant Taylor were the two other voting members of the August 2016 Performance Review Board. (Ex. F hereto: Remaly tr. 35.) Remaly identified the documents that were listed as before the Performance Review Board, which included Purdue's investigation report, the Purdue Dean's determination and Plaintiff John Doe's appeals. (Ex. F hereto: Remaly tr. 46-49.) Remaly also identified the university suspension as the only reason for the disenrollment recommendation of the Performance Review Board. (Ex. F hereto: Remaly tr. 49-50.)

Executive Officer Remaly was also shown by Defendants' counsel an e-mail by Staff Lieutenant Willstatter (NSTC 0140-0142) that was copied to Remaly and that Remaly confirmed was accurate. (Ex. F hereto: Remaly tr. 30-32.) The Willstatter e-mail was Exhibit D to the Remaly deposition and is attached to this application as Ex. G. (Ex. F hereto: Remaly tr. 30-32.) Executive Officer Remaly testified concerning it:

> Q You were asked a few questions I think about this document. I want to focus on paragraph 2 [on NSTC 141] in Mr. Willstatter's email copied to you. I'l publish it and then ask some questions. PRB means Performance Review Board; correct?
>
> A Correct.
>
> Q And paragraph 2 says, "The PRB is not about the circumstances surrounding your suspension, it is about the fact that you have been suspended. There is no reason to re-litigate the university's decision. The fact is that you are suspended, and the ROD requires disenrollment for any case where a student is suspended. The black and white nature of this PRB is why you are allowed to waive, if you so choose, any witnesses or other persons you would want to have present. Please let

me know their names and the reason. You have the right to bring any witnesses you want; however, unless they're going to state contrary to facts that you have not been suspended by the university, it will basically be a waste of time." That's what the paragraph states; correct?

A Yes.

Q Did you at any time indicate to [Plaintiff John Doe] that that was incorrect, that statement that Mr. Willstatter said to [Plaintiff John Doe]?

A No.

Q And Mr. Willstatter was a nonvoting member of the Performance Review Board?

A That's correct.

(Ex. F hereto: Remaly tr. 53-54.)

Executive Officer Remaly's testimony continued:

Q I want to pick up in the middle of the first paragraph [on NSTC 0140], and it says, "Even if the board were to decide and the CO were to agree that you are a lock to be the next CNO, they would still have to find a way to justify keeping you in the program when you can't attend the university." Did I read that correctly?

A You did.

Q CNO means Chief of Naval Operations?

A Correct.

Q I'm not asking you the person presently, but who is the CNO in terms of the Navy hierarchy?

A Chief of Naval Operations, he is in terms of our administrative chain of command, he's at the
top.

Q So you are talking about the top person in the Navy?

A Yes.

Q And CO means commanding officer.

A Correct.

> Q That would mean in this case Mr. Hutton?
>
> A Correct.

(Ex. F hereto: Remaly tr. 54-55.)

Remaly explained that disenrollment has to be through the Performance Review Board process. (Ex. F hereto: Remaly tr. 56-57.) Remaly acknowledged that what followed Redlawsk's one page "preliminary inquiry" memo were all Purdue disciplinary case documents. (Ex. F hereto: Remaly tr. 57-58; Ex. B to this application.) Remaly also identified Plaintiff John Doe's authorization to the Navy to receive the Purdue disciplinary file and identified the documents that the Navy received from Purdue that were in the Navy files (NSTC 0020-0050) and that related to Plaintiff John Doe's disciplinary case. (Ex. F hereto: Remaly tr. 59-61.)

### III. Staff Lieutenant Kyle Willstatter (retired).

Exhibit H to this application is the deposition transcript of Staff Lieutenant Kyle Willstatter (retired in 2017), who in the 2015-2016 school year was a Staff Lieutenant at the Purdue Navy ROTC program. (Ex. H hereto: Willstatter tr. 7.) Exhibit 6 to the Willstatter Deposition, which is Exhibit I to this application, is a two-page document (NSTC 0018-0019) that were appointment memos of Performance Review Boards.

Willstetter was shown his e-mail exchange with Plaintiff John Doe in early August 2016, and Willstatter identified the e-mail exchange. (Ex. H hereto: Willstetter tr. 26-27, Ex. D to Willstetter Deposition & Ex. G to this application, NSTC 0140-0142.) Willstetter confirmed that the Performance Review Board did not care why Plaintiff John Doe was suspended by Purdue. (Ex. H hereto: Willstetter tr. 28.) Willstetter described Redlawsk Chester's role as collecting the disciplinary documents from Purdue. (Ex. H hereto: Willstetter tr. 29.) Willstetter testified that what he did in fact write in paragraph 2 (on NSTC 0141, quoted above, p. 8) was correct. (Ex. H

[10]

hereto: Willstetter tr. 42-43.) Willstetter also testified that as to whom was the "CNO," Chief of Naval Operations, is and whom was the "CO," Commanding Officer Hutton, was and what he did in fact write in his August 5, 2016 e-mail (on NSTC 0140, quoted above, p. 9) was correct. (Ex. H hereto: Willstetter tr. 43-44.)

Willstatter was shown the second page of the appointment memos of Performance Review Boards; that document was dated July 25, 2016 (Ex. I to this application, NSTC 0019). The July 25, 2016 appointment memo reported, which Willstatter confirmed, that the Performance Review Board concerning Plaintiff John Doe had been rescheduled to accommodate Plaintiff John Doe's appeal of the university suspension, that identified the voting members of the Performance Review Board as Major McDowell, Lieutenant Taylor and Executive Officer Remaly and that identified the non-voting member to be Staff Lieutenant Willstatter. (Ex. H hereto: Willstatter tr. 44-45; Ex. I to this application, p. 2.) The document also showed that the only reason stated and considered for deficient performance of Plaintiff John Doe by the Performance Review Board on August 9, 2016 was the Purdue suspension. (Ex. H: Willstatter tr. 45; Ex. I hereto, p. 2.)

Willstatter was also presented with August 10, 2020 Performance Review Board document (NSTC 00111-0012, Ex. E to this application), which he said was written by him. (Ex. H hereto: Willstatter tr. 46.) Willstatter reviewed the list of documents on the document that were reviewed by the Performance Review Board, which were the Purdue disciplinary case documents. (Ex. H hereto: Willstatter tr. 47; Ex. E hereto.) Willstatter testified that the delay from June 2016 to August 2016 of the Performance Review Board was Plaintiff John Doe's appeal of the university suspension and that Plaintiff John Doe did attend the disenrollment proceeding held on August 9, 2016. (Ex. H hereto: Willstatter tr. 47-48.) According to Willstatter, there was no other Performance Review Board ever held as to Plaintiff John Doe. (Ex. H hereto: Willstatter tr. 49.)

[11]

**IV.     Staff Lieutenant Megan Redlawsk Chester (retired in 2018).**

Exhibit J to this application is the deposition transcript of Staff Lieutenant Megan Redlawsk Chester (retired in 2018), who in the 2015-2016 school year was a Staff Lieutenant at the Purdue Navy ROTC program. (Ex. J hereto: Redlawsk Chester tr.7.) In July 2016, Redlawsk Chester transferred to Newport, Rhode Island and then retired form the Navy in August 2016. (Ex. J hefreto: Redlawsk Chester tr.9.)

Redlawsk Chester admitted her June 14, 2016 memo and collection of documents (NSTC 168-195, Ex. B to her Deposition and Ex. B to this application) was a "preliminary inquiry." (Ex. J hereto: Redlawsk Chester tr. 9.) When asked to examine the document, Redlawsk Chester acknowledged that after her one-page cover memorandum, the rest of the pages were Purdue University disciplinary case documents in Plaintiff John Doe's case – the university investigation report, the Purdue Dean's determination, a statement by Plaintiff John Doe. (Ex. J hereto: Redlawsk Chester tr. 31-32.) Redlawsk Chester admitted that the file did not include any memorandum to the file recording an interview of Plaintiff Jon Doe or an interview of Jane Doe. (Ex. J hereto: Redlawsk Chester tr. 32.) When Redlawsk Chester referred to investigation in terms of what she did, it was what was reflected in her June 14, 2016 memo and collection of documents (NSTC 168-195, Ex. B to her Deposition and Ex. B to this application). (Ex. J hereto: Redlawsk Chester tr. 37.)

Redlawsk Chester acknowledged that purpose of the "preliminary inquiry" document was to recommend the convening of a Performance Review Board and that the only reason given for the convening of the Performance Review Board by Commanding Officer Hutton was the university suspension. (Ex. J hereto: Redlawsk Chester tr. 33-34; Ex. I to this application, p. 1.) Redlawsk Chester testified that the reason for the delay in the Performance Review Board was

Plaintiff John Doe's appeal of the university suspension and that as a result of the change in schedule, Redlawsk Chester was not at Purdue and no longer affiliated with Purdue's Navy ROTC program in August 2016 when the Performance Review Board was held and disenrollment occurred. (Ex. J hereto: Redlawsk Chester tr. 34-35.) Consequently, Redlawsk Chester does not have personal knowledge of what the members of the Performance Review Board reviewed. (Ex. J hereto: Redlawsk Chester tr. 35.)

While Commanding Officer Hutton did appoint Ms. Redlawsk Chester to be the investigation officer (Dfs, Resp. 1), he further directed her, as noted, to "utilize the university investigation" (Ex. A hereto: Hutton tr. 20), Redlawsk Chester's role was collecting the disciplinary documents from Purdue (Ex. H hereto: Willstetter tr. 29), there was no separate Navy investigation report (Mot. Ex. A: Hutton tr. 71-73 & Mot. Ex. D) and Redlawsk Chester was not part of the Navy Performance Review Board that was based solely upon the university suspension (Ex. A hereto: Hutton tr. 49-50 & Mot. Ex. D, Ex. F hereto: Remaly tr. 35, 53-55 & Mot. Exs. E & G, Ex. H hereto: Willstatter tr. 44-45, Mot. Ex. G & Mot. Ex. I, p. 2).

V.     **Staff Lieutenant Adam Sheppard (retired).**

Exhibit K is the deposition transcript of Staff Lieutenant Adam Sheppard (retired in August 2016), who in the 2015-2016 school year was a Staff Lieutenant at the Purdue Navy ROTC program. (Ex. K hereto: Sheppard tr. 8.) Plaintiff John Doe fell under Sheppard's supervision as a company commander, and Sheppard described Plaintiff John Doe as a "typical, you know, freshman midshipman." (Ex. K hereto: Sheppard tr. 17.)

Sheppard testified that when Jane Doe talked to him about the alleged sexual misconduct by Plaintiff John Doe and Sheppard reported it to Purdue, he (Sheppard) was not aware of when the alleged incident of sexual misconduct occurred. (Ex. K hereto: Sheppard tr. 43.) Sheppard

[13]

said that it did not come up with Jane Doe that the alleged sexual misconduct had occurred six months earlier. (Ex. K hereto: Sheppard tr. 43.) Sheppard said it was possible that Jane Doe had made a report to Purdue when she talked to Sheppard. (Ex. K hereto: Sheppard tr. 44.) Sheppard was not aware of what the disenrollment documents showed. (Ex. K hereto: Sheppard tr. 45.)

Sheppard, a Naval Academy graduate, was asked John McCain's rank at the Naval Academy, and Sheppard said John McCain was "the anchor so the very bottom." (Ex. K hereto: Sheppard tr. 47.)

While Lieutenant Sheppard did talk to Jane Doe about the sexual misconduct allegations, Commanding Officer Hutton did not conclude there was sexual misconduct (Ex. A hereto: Hutton tr. 24) and Lieutenant Sheppard was also not part of the Navy Performance Review Board (Ex. A hereto: Hutton tr. 49-50, Ex. F hereto: Remaly tr. 35 & Mot. Ex. E, Ex. H hereto: Willstatter tr. 44-45, Mot. Ex. I).

## CONCLUSION

The Navy evidence places squarely upon Purdue's suspension of Plaintiff John Doe the loss of Plaintiff John Doe's ROTC scholarship. Defendants may try to argue about Plaintiff John Doe's present reliance upon what the Navy evidence shows, but as was reviewed in Plaintiff John Doe's recent deposition, the September 3, 2019 Amended Complaint was drafted before receipt in early 2020 of the Navy evidence and what the Navy evidence shows makes Plaintiff John Doe's case even stronger.

For the reasons stated above and in fairness, the Court should grant leave that the Court accept this "sur-reply" to Defendants' Reply in order to address the portion of Defendants' Reply that made misrepresentations concerning the testimony and exhibits of the Navy depositions and that were not the subject of Defendants' moving papers for or Plaintiff John Doe's opposition to

Defendants' sanctions motion, and the Court should order such further and other relief as the Court deems just and proper.

**Dated: August 20, 2020**

                                            **Respectfully submitted,**
                                            **NESENOFF & MILTENBERG, LLP**
                                            **By: /s/ *Philip A. Byler***
                                            **Philip A. Byler, Esq.**
                                            **Andrew T. Miltenberg, Esq.**
                                            **363 Seventh Avenue, Fifth Floor**
                                            **New York, New York 10001**
                                            **(212) 736-4500**
                                            **pbyler@nmllplaw.com**
                                            **amiltenberg@nmllplaw.com**
                                            *Attorneys for Plaintiff John Doe*

## TABLE OF EXHIBITS

Exhibit A:    Deposition Transcript of Commanding Officer Rodney Hutton

Exhibit B:    Ex. A to Hutton Deposition (NSTC 168-195) June 14, 2016 "Preliminary Inquiry"

Exhibit C:    Ex. D to Hutton Deposition (NSTC 0055-0060) Scholarship Papers for Plaintiff John Doe

Exhibit D:    Ex. H to Hutton Deposition (NSTC 0001-004) August 2020 ROTC Appointment Termination and Disenrollment Authorization

Exhibit E:    Ex. G to the Hutton deposition (NSTC 00111-0012) August 10, 2020 Performance Review Board document

Exhibit F:    Deposition Transcript of Executive Officer Craig Remaly

Exhibit G:    Ex. D to the Remaly deposition (NSTC 0140-0142) E-mail by Staff Lieutenant Willstatter

Exhibit H:    Deposition Transcript of Staff Lieutenant Kyle Willstatter

Exhibit I:    Ex. 6 to Willstatter Deposition (NSTC 0018-0019) Appointment of Performance Review Boards

Exhibit J:    Deposition Transcript of Staff Lieutenant Megan Redlawsk Chester

Exhibit K:    Deposition Transcript of Staff Lieutenant Adam Sheppard