# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

JOHN DOE,                              )
            Plaintiff,                )
                               )
           v.                              )    CAUSE NO.: 2:17-CV-33-JPK
                               )
PURDUE UNIVERSITY, *et al.*,           )
            Defendants.               )

### OPINION AND ORDER

This matter is before the Court on a Request for Issuance of Order to Show Cause Regarding Plaintiff's Non-Compliance with Order and Spoliation of Evidence [DE 133], filed by Defendants Purdue University, Purdue University Board of Trustees, Michell Elias Daniels, Jr., Alysa Christmas Rollock, and Katherine Sermersheim. The Court held an evidentiary hearing on this issue on February 22, 2021, and the parties filed supplemental briefing on April 27, 2021. For the following reasons, the motion is granted with relief different than requested.

Before turning to the relatively detailed set of facts that led to the filing of the instant motion for sanctions, it is necessary to stress a few key facts, none of which are subject to any reasonable dispute. These facts must not get lost in the sea of other details. First, Plaintiff was under a duty to preserve certain items, including data in his Snapchat account. That duty arose in multiple ways throughout this litigation and is discussed in greater detail below. After such a duty arises, those who bring claims (or defend against them) should remain keenly aware of the importance of preserving data to allow for later production in response to a proper discovery request, agreement of the parties, or court order. Second, after his duty to preserve data arose, through among other things an agreement of the parties, Plaintiff took an affirmative step that led to the deletion of data from his Snapchat account. Third, based upon this destruction of data,

Defendants moved for sanctions in the form of a request to issue an order to show cause. Plaintiff argued that Defendants' motion was motivated by "a sickness toward Plaintiff." (Resp. p. 1, ECF No. 135). But destroying data that one is under a duty to preserve is an extremely serious matter, and those who do should not be surprised to find themselves on the receiving end of a motion for sanctions.

Sanctions are warranted for the reasons discussed in greater detail below. The following detailed recitation of the facts and legal analysis are hardly necessary to reach the conclusion that sanctions are appropriate. The more difficult questions this matter poses are precisely what sanctions to impose, and whether to impose any sanctions on counsel.[1]

### Procedural Background

On September 25, 2019, Defendants served their first interrogatories and requests for production of documents on Plaintiff. (Br. Supp. Mot. Compel 3, ECF No. 81). Interrogatory 3 stated: "Identify all social media websites or applications that you used, participated on, posted photos, opinions, or statuses, or otherwise had an account with/on at any point during or after August 2015 and for each state your username, account name, or any other identifier for your account." (Br. Supp. Mot. Compel Ex. A ¶ 3, p. 4,[2] ECF No. 81-2). Request for Production 7 sought: "All of [Plaintiff's] social media postings from August 1, 2015 – present." (Br. Supp. Mot. Compel Ex. A ¶ 7, p. 15, ECF No. 81-2).

---

[1] At the very least, counsel appears to have delegated the inquiry regarding how to retrieve Snapchat data to Plaintiff, who has no legal training or relevant experience, other than as a Snapchat user, and did so despite the fact Defendants were contesting his explanations. While the Court ultimately declines to sanction counsel individually, this is certainly not meant to condone the investigation—or lack thereof—that went into responding to Defendants' discovery request, the parties' agreement, or the Court's orders.

[2] Because Defendants' first interrogatories and requests for production are contained in the same exhibit, the page numbers cited by the Court refer to the page numbers assigned by the Court's CM/ECF system.

On November 8, 2019, Plaintiff's counsel served Plaintiff's responses to these discovery requests.[3] (Br. Supp. Mot. Compel Ex. A p. 9, 17, ECF No. 81-2). In response to Interrogatory 3, Plaintiff identified only his Instagram and Facebook accounts.[4] *Id.* at ¶ 3, p. 4. Plaintiff objected to Request for Production 7. *Id.* at ¶ 7, p. 15.

On March 11, 2020, Defendants served their second interrogatories and requests for production of documents on Plaintiff. (Br. Supp. Mot. Compel 3, ECF No. 81). Request for Production 2 sought: "All data from any Snapchat account owned or operated, wholly or in part, by Plaintiff, including the account with the username '[username],' from August 2015 to the present." (Br. Supp. Mot. Compel Ex. B ¶ 2, p. 10, ECF No. 81-3). Request for Production 2 included the following explanation: "This data is the property of the Plaintiff, and may be obtained and downloaded in its entirety as set forth in the following link: https://support.snapchat.com/en-US/a/download-my-data." *Id.* The link provided by Defendants leads to a page describing the information available for download from Snapchat, including: "Login History and Account information," "User & Public Profiles," "Snap & Chat History," "Memories," "Purchase & Shop History," "Snapchat Support History," "Friends," "Location," "Search History," and "Bitmoji." *Id*; SNAPCHAT SUPPORT, *Download My Data*, https://support.snapchat.com/en-US/a/download-my-data (last visited July 1, 2021). Plaintiff's counsel objected to the request, asserting that Plaintiff's Snapchat documents did not contain any information that was relevant to this case. (Br. Supp. Mot. Compel Ex. B p. 10-11, ECF No. 81-3).

---

[3] During the February 22, 2021 hearing, Plaintiff testified that he, not his attorney, drafted the answers to Defendants' discovery requests. Additionally, Defendants offered into evidence a document signed by Plaintiff, verifying that the representations contained in his answers to Defendants' first set of interrogatories were "true and correct." (Feb. 22, 2021 Hr'g, Defs.' Ex. H).

[4] Plaintiff did not identify his Snapchat account anywhere in his earlier responses, and Defendants have explained that they discovered the account "through the due diligence of Defendants' counsel." (Br. Supp. Mot. Compel p. 6 n.1, ECF No. 81; Br. Supp. Mot. Compel Ex. A, ECF No. 81-2).

On May 19, 2020, Defendants filed a motion to compel that sought, *inter alia*, an order compelling Plaintiff to produce his Snapchat data "as may be downloaded from the platform[]" from August 2015 to the present. (Mot. Compel p. 1, ECF No. 80). On June 2, 2020, Defendants filed a Joint Stipulation that resolved both Defendants' motion to compel and a motion to compel filed by Plaintiff. Per the Joint Stipulation, Plaintiff agreed to provide "a complete data download of all Instagram and Snapchat data from his accounts, from August 2015 to the present." (Joint Stipulation ¶ 6, ECF No. 89). On June 3, 2020, noting the agreement of the parties, the Court granted the relief implied in the Joint Stipulation and further noted both motions to compel as withdrawn. (June 3, 2020 Order, ECF No. 90).

On July 17, 2020, Defendants filed a motion for sanctions, alleging, *inter alia*, that Plaintiff failed to provide the Snapchat data as agreed per the Joint Stipulation and required by the Court's June 3, 2020 order. (Mot. Sanctions, ECF No. 92). On July 31, 2020, Plaintiff filed a response to the motion, which included declarations from both Plaintiff and his counsel. In his declaration, Plaintiff explicitly stated that he "put [himself] under oath in setting the record straight. I also discuss Snapchat so the Court can understand the limitations of what can be done as to Snapchat discovery." (Decl. Pl. ¶ 1, ECF No. 98-2, *refiled at* ECF No. 152-2). Through their declarations, Plaintiff and his counsel asserted that Plaintiff provided his Snapchat username, but represented that "Snapchat does not archive content files." (Decl. Pl.'s Att'y ¶ 9, ECF No. 98-1, *refiled at* ECF No. 152-1; Decl. Pl. ¶¶ 5, 7, ECF No. 98-2, *refiled at* ECF No. 152-2). Plaintiff stated that Snapchat "does not retain user information past 30 days." (Decl. Pl. ¶ 7, ECF No. 98-2, *refiled at* ECF No. 152-2). Plaintiff's counsel similarly stated that Snapchat "does not retain user identity past 30 days," and additionally represented that Snapchat "does not preserve user content." (Decl. Pl.'s

Att'y ¶ 17,[5] ECF No. 98-1, *refiled at* ECF No. 152-1). Plaintiff's counsel explained that he previously informed defense counsel that all Defendants could learn from Snapchat was "the name or screenname" of Plaintiff's current friends. *Id.* at ¶ 14. Plaintiff's counsel further noted that he had "discuss[ed] with Plaintiff and check[ed] whether[,] contrary to the understanding [that counsel] had, content files could be downloaded from Snapchat using a link provided by Defendants' counsel. What [Plaintiff's counsel learned] was that content was in fact not available at Plaintiff's end . . . ." *Id.* at ¶ 16. In his own declaration, Plaintiff represented:

> In the course of dealing with Defendants' request for Snapchat content, I explained to my counsel what was and wasn't available from Snapchat. When Defendants made their sanctions motion, I was in fact discussing further with my counsel and checking whether contrary to my understanding, using a link provided by Defendants' counsel and doing my own internet research, content files could be downloaded from Snapchat. The link provided by Defendants' counsel makes clear the kind of information that is obtained, which means Defendants know that content is not what is available at my end.

(Decl. Pl. ¶ 10, ECF No. 98-2, *refiled at* ECF No. 152-2). Plaintiff further represented that "[t]he data I downloaded from Snapchat's servers regarding my profile contains no images, no videos and no chats contained within it. Hence, that fact confirmed my view that I did not have content files to download per the Stipulation of the Parties." *Id.* at ¶ 12. Finally, Plaintiff provided an overview of what he represented was the only data included in his download from Snapchat's servers, which he explained was mostly non-content metadata he felt was irrelevant to this matter. *Id.* at ¶¶ 13-20.[6] As discussed in more detail below, many of Plaintiff's representations on this topic were inaccurate.

---

[5] Plaintiff's counsel's declaration contains two Paragraph 17s; the Court cites to the second. (*See* Decl. Pl.'s Att'y p. 8, ECF No. 98-1, *refiled at* ECF No. 152-1).

[6] It bears noting that Plaintiff's declaration inquires: "What is to stop Defendants from harassing present and past friends? I find it disconcerting that Defendants care so much in getting their hands on this sort of information that is irrelevant to this court case." (Decl. Pl. ¶ 19, ECF No. 98-2, *refiled at* ECF No. 152-2). Plaintiff's declaration additionally states, "I must ask: why are Defendants so keen on possessing what seems to be irrelevant information

In reply, Defendants argued that Plaintiff had an obligation to produce the Snapchat data pursuant to the Joint Stipulation and the Court's June 3, 2020 order. (Reply p. 1, ECF No. 99). Defendants noted that, by stipulating to produce a complete data download of all Snapchat data from his account from August 2015 to the present, Plaintiff waived any relevancy objections. *Id.* at 2. Defendants further explained that Snapchat collects information such as Snap history, chat history, user profile, friends, account history, location history, and search history. *Id.* at 3.

On September 24, 2020, the Court denied without prejudice Defendants' motion for sanctions, but ordered Plaintiff to provide the Snapchat data consistent with the agreement noted in the Joint Stipulation. (Sept. 24, 2020 Telephonic Status Conference Entry, ECF No. 117). On October 26, 2020, Defendants filed the instant motion for an order to show cause regarding Plaintiff's non-compliance with a court order and for spoliation of evidence. Defendants assert that although Plaintiff produced some of the Snapchat data, he deleted certain files that were subject to the Joint Stipulation and Court's September 24, 2020 order.

On February 22, 2021, the Court held an evidentiary hearing regarding Defendants' motion. Following that hearing, the Court issued an order on April 13, 2021, for supplemental briefing regarding what data the Snapchat mobile application and Snapchat website reflected was available for users to download when the downloads at issue here occurred. (Apr. 13, 2021 Order, ECF No. 163). This order required the parties to file a report—jointly or separately, if they could not come to an agreement—with exhibits either showing, via screenshots, or describing in full the screen displays that existed as Plaintiff would have seen them when he completed a download of his Snapchat data. On April 27, 2021, the parties filed separate reports with the screenshots.

---

and what would they plan on doing with it?" *Id.* at ¶ 20. It is unclear to whom Plaintiff's questions are aimed. Regardless, Defendants sought Plaintiff's social media data via appropriate discovery requests, and Plaintiff's apparent attempt to cast aspersions on them for doing so is inappropriate, especially given the clear agreement of the parties.

**Standard of Review**

In addition to Defendants' request for an order to show cause, the Court also considers whether Plaintiff should be found to have spoliated evidence, and whether Plaintiff or his counsel should be sanctioned for their conduct.[7] "Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). "Sanctions [for spoliation of evidence] include awarding reasonable expenses, attorney fees, barring evidence or arguments, permitting adverse inferences, and dismissing claims or entering default judgment." *Bryant v. Gardner*, 587 F. Supp. 2d 951, 968 (N.D. Ill. 2008) (citing Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii)).

Determining whether sanctions for spoliation of evidence are appropriate requires a multi-part inquiry. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *10 (S.D. Ind. May 18, 2015). First, the Court must determine whether there was a duty to preserve the destroyed evidence. *Malibu Media, LLC*, 2015 WL 2371597, at *11. Second, the Court must determine that this duty was breached. *Id.* Third, the Court must determine that the destruction of evidence was done in bad faith.[8] *Id.*

---

[7] Federal Rule of Civil Procedure 37(e), as amended on December 1, 2015, permits a court to impose sanctions for electronically stored information ("ESI") that is "lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). Some courts have suggested that this amendment makes Rule 37 sanctions the exclusive remedy for "lost" ESI. *See, e.g., DR Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2021 WL 185082, at *69 (N.D. Ill. Jan. 19, 2021) (listing cases and authority supporting both sides of this "thorny issue"). The Court does not attempt to resolve this issue, because the sanctions ultimately imposed in this case are authorized by Rule 37 and would be proper regardless of the effect of the 2015 amendment. However, in the interest of completeness, the Court analyzes potential sanctions that could have been imposed beyond those supported by Rule 37.

[8] Some courts have found that the court must also determine that the breach harmed the opposing party. *See Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010); *Porche v. Oden*, No. 02 C 7707, 2009 WL 500622, at *5 (N.D. Ill. Feb. 27, 2009). However, these courts rely on language in Rule 37 pertaining to the failure to provide information or identify a witness as required by Rule 26(a) or (e). *See id.*; Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (2), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.").

In the context of spoliation, bad faith means that the evidence was destroyed "for the purpose of hiding adverse information." *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (internal quotation marks and citation omitted) ("When considering the propriety of . . . an adverse inference instruction, '[t]he crucial element is not that the evidence was destroyed but rather the reason for the destruction.'" (quoting *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002))); *see also Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information."); *Malibu Media, LLC*, 2015 WL 2371597, at *11 (sanctions for spoliation are "appropriate only if the evidence was destroyed for the purpose of hiding adverse information").

## Analysis

The Court begins its analysis with an overview of the Snapchat application, followed by a discussion of the parties' arguments. The Court then turns to whether Plaintiff was under a duty to preserve the deleted files. Finally, the Court analyzes the potential bases for sanctions and determines what sanctions are appropriate to impose in this matter.

*1. The Snapchat Application*

Initially, the Court will provide a brief explanation of Snapchat and its Memories function, as that portion of the application underlies the issue currently before the Court. The Snapchat mobile application, owned by Snap, Inc., "allows users to record photographs and videos (called 'Snaps') with their smart phones and send them to other Snapchat users." *Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965, 971 (D. Minn. 2017). "A Snap appears on the receiver's screen for only a few moments before disappearing. Snapchat users can also send chat messages, create visual 'Stories' that remain on the user's account for one day, and store Snaps indefinitely as

'Memories.'"   *Id.*;   *see   also*   SNAPCHAT   SUPPORT,   *How   to   use   Memories*, https://support.snapchat.com/en-GB/a/about-memories (last visited July 1, 2021) ("You can save Snaps and Stories to Memories, send your Memories to friends, access your Camera Roll and more!"). To save a Snap as a Memory, users must take an affirmative step and click an icon located at the bottom of the application window on their screen. *Id.* ("To save a Snap to Memories, create a Snap and tap [image of icon] at the bottom."). To delete a Snap from the Memories folder, users must also take multiple affirmative steps from within the application. *Id.* ("You can send saved Snaps to your friends, add them to My Story, delete them from Memories, or export them to your Camera Roll . . . Swipe up from the Camera screen to go to Memories, press and hold on a Snap, and tap the option you want."). Per Snapchat's website: "Memories keeps the Snaps and Stories you save, so you can look back on them at any time! Memories are backed up by Snapchat. If you delete a Snap from your Memories, Snapchat servers are designed to erase that Snap as soon as possible." SNAPCHAT   SUPPORT,   *When   does   Snapchat   delete   Snaps   and   Chats?*, https://support.snapchat.com/en-GB/a/when-are-snaps-chats-deleted (last visited July 1, 2021).

*2. The Parties' Arguments and Characterization of the Facts*

Defendants represent that Plaintiff deleted Snapchat data, and despite much protestation that is a fact that Plaintiff cannot credibly deny. More precisely, Defendants show that on September 30, 2020, Plaintiff produced a Snapchat download which contained broken html links and downloads to 86 images and videos, ranging from 2016 to 2020. (Request Show Cause p. 4, ECF No. 133; Request Show Cause Ex. B, ECF No. 133-2). This production was in response to an agreement of the parties, which was later adopted in an order.  (ECF Nos. 89, 90). These files were contained in a subfile marked "memories_history." (Request Show Cause p. 4, ECF No. 133). A warning printed across the top of this download notes that "[d]ownload links below will expire

7 days from when your data file was made available to you." (Request Show Cause p. 4, ECF No. 133; Request Show Cause Ex. B, ECF No. 133-2; Defs.' Report p. 3, ECF No. 165-1). Because the September 30, 2020 production was downloaded on July 16, 2020, the links sent to Defendants had expired by the time they were produced. (Request Show Cause p. 4, ECF No. 133). On October 7, 2020, Plaintiff produced a new Snapchat data download with working links. (Request Show Cause p. 4, ECF No. 133; Request Show Cause Ex. C, ECF No. 133-3). However, the new download omitted 11 links to videos and images that were listed in the September 30, 2020 production. *Id.* Defendants state that, after being notified of the missing items, Plaintiff admitted he had deleted certain files from the Memories folder within the Snapchat application on his phone.

For this deletion, Defendants argue that Plaintiff has spoliated evidence and that sanctions should be imposed. Defendants assert that Plaintiff had a duty to preserve the destroyed data, that he willfully deleted the files in bad faith, and that the only credible explanation for this conduct is that Plaintiff did not want Defendants and the Court to see the 11 images and videos. (Request Show Cause p. 8-9, ECF No. 133). Defendants recount that Plaintiff has repeatedly alleged that Defendants' actions caused harm to Plaintiff's honor and damage to his reputation, and note that any inappropriate conduct preserved on social media would undermine such a claim. *Id.* at 10-11.

On October 14, 2020, Plaintiff sent Defendants a document entitled "Plaintiff John Doe on Snapchat Production," which appears to be a self-styled explanation from Plaintiff concerning the missing media. (Request Show Cause p. 4, ECF No. 133; Request Show Cause Ex. D, ECF No. 133-4). The explanation from Plaintiff, which Defendants attach to their motion, states as follows. When Plaintiff received the initial zip file of data from Snapchat in July 2020, the links did not work. (Request Show Cause Ex. D, ECF No. 133-4). Plaintiff "characterized as metadata the Snapchat zip file from the data that [he] could access and read," and he was unaware of the

10

7-day time limit for downloading and viewing files saved in the Memories folder. *Id.* After discovering the issue with the expired links, Plaintiff reproduced 75 images and videos to Defendants. *Id.* As for the missing 11 images and videos, Plaintiff states:

> I did delete some files off of the Snapchat application on my phone at some point between zip file productions, with no idea that they would also be deleted from my Snapchat account and Snapchat servers entirely. As my cell phone slows down and fills up over time, I try to find ways to clear space and memory to keep its performance as optimized as possible. I deleted some images and videos off my phone that I did not care for anymore, without the realization that they held any relevance to the zip file productions, or that would be permanently deleted from the Snapchat account. Apparently, however, that was the effect of deleting files off my cell phone.
>
> It was my understanding that the zip files Snapchat produces in response to data download requests were exclusively composed of metadata. As the html links were not working when I examined the zip file initially, and the file sizes were all mere kilobytes in size, I was under the impression that the zip file held no account content. Still, because I have never posted anything relevant to my court case on my social media, I can say that the 11 files were not material to this case. From what I remember, they were comprised of more pictures and video clips from video games and TV shows, a picture of my friend in a car as we drove to a creek, and a picture of a Walt Disney statue at Disney World.

*Id.*

In response to Defendants' request for a show cause order, Plaintiff's counsel acknowledges the deletion of the files but nonetheless refutes any accusation of wrongdoing. Plaintiff's counsel states that Plaintiff "did not admit intentionally destroying anything," but rather "deleted from his cell phone some data without believing it would affect what Snapchat had on its server from which a 'data download' would be made. Plaintiff did not go to the server and delete anything." (Resp. p. 3, ECF No. 135). Plaintiff's counsel further states:

> [B]oth Snapchat downloads had only metadata; the *first* Snapchat download only had metadata and no working links; the *second* Snapchat download had metadata and properly working links to external downloads of Snapchat memory files. Plaintiff John Doe's statements based on the *first* Snapchat download were accurate that the only available data for the download he had at the time were metadata. Plaintiff John Doe never saw the 75 videos and pictures until he did the *second* data

download. If we can get back the 11 videos and pictures from Snapchat, we will do
so.

*Id.* at 7. Finally, Plaintiff's counsel disputes the claim that Plaintiff "had 86 downloaded Snapchat

videos and photos in his possession," arguing that this "is incorrect speculation on [Defendants']

part. As noted above and as Plaintiff John Doe explained, the *first* Snapchat download only had

metadata and no working links to videos and pictures." *Id.* at 7-8.

Upon review of the parties' filings and the record in this matter, the facts of critical

importance are as follows. From 2016 to 2020, Plaintiff intentionally saved at least 86 images and

videos to the Memories folder within the Snapchat application on his phone. (Request Show Cause

Ex. B, ECF No. 133-2; Feb. 22, 2021 Hr'g Pl.'s Ex. 3). On June 2, 2020, Plaintiff agreed to provide

"a complete data download of all Instagram and Snapchat data from his accounts, from August

2015 to the present." (Joint Stipulation ¶ 6, ECF No. 89). On July 16, 2020, Plaintiff downloaded

and received a zip file of his Snapchat data, which included links to downloadable videos and

images that had been saved in the Memories folder within the Snapchat application on his phone.

On July 31, 2020, Plaintiff represented to the Court that "Snapchat does not archive content files"

or "retain user information past 30 days," that "content is not what is available at [his] end," and

that he had conducted research to determine what content could be downloaded from Snapchat

prior to making these representations. (Decl. Pl. ¶¶ 5, 7, 10, ECF No. 98-2, *refiled at* ECF No. 152-

2). On September 30, 2020, Plaintiff produced the Snapchat data download from July 16, 2020,

but Defendants were unable to use the provided links to access the relevant media. (Request Show

Cause p. 4, ECF No. 133). On October 7, 2020, Plaintiff provided a second Snapchat data

download. *Id.* This download was missing links to 11 videos and images that were listed in the

September 30, 2020 production. *Id.*; Request Show Cause Ex. C, ECF No. 133-3. Given the dates

of the two separate Snapchat data downloads, coupled with the 11 files missing from the second

download, it is clear that sometime between July 16, 2020 and October 7, 2020, Plaintiff deleted

11 files from the Memories folder contained in the Snapchat application on his phone.[9] (*See*

Request Show Cause Ex. D, ECF No. 133-4).

*3. Spoliation Claim*

The Court now turns to Defendants' spoliation claim. As noted above, in evaluating a

spoliation claim, the Court must determine: (1) whether there was a duty to preserve the destroyed

evidence; (2) whether this duty was breached; and (3) whether the destruction of evidence was

done in bad faith. *Malibu Media, LLC*, 2015 WL 2371597, at *11. Importantly, in the context of

spoliation, bad faith means that the evidence was destroyed "for the purpose of hiding adverse

information." *Bracey*, 712 F.3d at 1019.

*A. Duty to Preserve*

Plaintiff's duty to preserve the relevant Snapchat data arose, at the latest, when Defendants

sought this data during discovery. *See Malibu Media, LLC*, 2015 WL 2371597, at *12 ("[C]ourts

have noted that the duty to preserve evidence 'certainly arises upon a formal discovery request.'"

(quoting *Am. Family Mut. Ins., Co. v. Roth*, No. 05 C 3839, 2009 WL 982788, at *11 (N.D. Ill.

Feb. 20, 2009))). Defendants' first requests for production, served on September 25, 2019, sought

"[a]ll of [Plaintiff's] social media postings from August 1, 2015 – present." (Br. Supp. Mot.

Compel 3, ECF No. 81; Br. Supp. Mot. Compel Ex. A ¶ 7, p. 15, ECF No. 81-2). Defendants'

second requests for production, served on March 11, 2020, sought "[a]ll data from any Snapchat

account owned or operated, wholly or in part, by Plaintiff, including the account with the username

[username] from August 2015 to the present." (Br. Supp. Mot. Compel 3, ECF No. 81; Br. Supp.

Mot. Compel Ex. B ¶ 2, p. 10, ECF No. 81-3). Both requests placed an affirmative duty on Plaintiff

---

[9] Plaintiff clarified at the February 22, 2021 hearing that he deleted the files from within the Snapchat application, rather than from the camera roll on his phone.

to preserve his Snapchat data from August 2015 to the present. Even if the Court were to accept Plaintiff's counsel's assertion that Snapchat is not social media[10], Plaintiff's duty to preserve the Snapchat data arose no later than March 11, 2020, when it was explicitly requested in the second request for production.

Beyond the duty created by Defendants' requests, Plaintiff was separately obligated to preserve the Snapchat data pursuant to at least one court order. On February 15, 2017, Magistrate Judge Paul R. Cherry issued an order stating:

> Each party and each attorney in this case shall take reasonable steps to preserve electronically stored information (ESI) that is relevant to any claim or defense in this case, whether or not the information is admissible at trial. This requirement relates back to the point in time when the party or attorney reasonably anticipated litigation about these matters.

(Feb. 15, 2017 Order, ECF No. 10). Though Plaintiff claims he has never posted anything relevant to this litigation on his social media, he is not the one who decides what is relevant. *See Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *8 (N.D. Ill. May 25, 2010) ("As a non-lawyer and as an interested party, Jurgens is not qualified to judge whether documents are relevant to the suit."). Plaintiff has previously asserted that he "[has] not used social media to discuss" this case and "[w]hat can be obtained from Snapchat is not any content, but metadata from 2020 when the case deals with what happened in the 2015-2016 school year at Purdue." (Decl. Pl. ¶¶ 8, 20, ECF No. 98-2, *refiled at* ECF No. 152-2). Plaintiff has further "questioned what Defendants think they can possibly use that is of any relevance to the case which occurred in the 2015-2016 school year at Purdue." *Id.* at ¶ 8. The fact that the content was created after the events

---

[10] Courts have generally described Snapchat to be a form of social media. *See, e.g., Lemmon v. Snap, Inc.*, No. 20-55295, 2021 WL 1743576, at *2 (9th Cir. May 4, 2021) ("Snapchat is a social media platform that allows its users to take photos or videos (colloquially known as 'snaps') and share them with other Snapchat users."); *B.L. by & through Levy v. Mahanoy Area Sch. Dist.*, 964 F.3d 170, 175 n.1 (3d Cir. 2020), *cert. granted*, 141 S. Ct. 976 (2021) ("Snapchat is a social media application for smartphones that allows users to send private text, photo, and video messages to other users.").

leading to this lawsuit does not make it irrelevant. *See Charvat v. Valente*, 82 F. Supp. 3d 713, 717 (N.D. Ill. 2015), objections overruled, No. 12-CV-05746, 2016 WL 98570 (N.D. Ill. Jan. 8, 2016) ("It is common sense that information and documents created after filing the Complaint can be relevant and must be produced.") (listing cases). And, further, a social media post need not directly reference or discuss a lawsuit for it to be relevant to the claims at issue.

> The broad scope of discovery permits a party to seek information
>
> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand . . . ." *Yessenow v. Hudson*, 270 F.R.D. 422, 426 (N.D. Ind. 2010). And, critically, social media content that may reveal information relevant to damages is discoverable under Rule 26. *Higgins v. Koch Dev. Corp.*, No. 3:11-CV-81-RLY-WGH, 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) (accepting argument that "Facebook content may reveal relevant information as to the extent [the plaintiffs'] injuries have impacted their 'enjoyment of life, ability to engage in outdoor activities, and employment,' along with their 'claims regarding permanent injuries, lack of pre-existing symptoms, and impairment of future earnings capacity'" and holding "[s]ince the extent of [Plaintiffs'] losses in these areas directly impacts the appropriate damages award, the court finds this information relevant").

Plaintiff's Second Amended Complaint alleges that Plaintiff's "dream and hope . . . to serve his country as a Naval officer has been destroyed" due to Defendants' actions. (Am. Compl. ¶¶ 1,

107, ECF No. 160). Among other things, the Second Amended Complaint seeks damages for "loss of future career prospects" caused by Defendants' conduct. *Id.* at ¶ (ii)(a), p. 64. While the Court will certainly not speculate as to the possible content of the deleted Snapchat files, it is entirely conceivable that they could be relevant to these claims. Unfortunately, the Court has no means to evaluate Plaintiff's assessment as to the relevancy of the 11 files—indeed, because it appears that Plaintiff has permanently deleted the sought files and they are not otherwise recoverable, the Court is left with only Plaintiff's word.

However, even if Plaintiff's deletion of the files did not violate Judge Cherry's February 15, 2017 command to preserve ESI, Plaintiff's duty to preserve these files was explicitly laid out in at least one other order of this Court. On June 3, 2020, the Court granted the relief implied in the Joint Stipulation. (June 3, 2020 Order, ECF No. 90). And, if that were not enough, on September 24, 2020[11], the Court explicitly ordered Plaintiff to provide the Snapchat data consistent with the agreement noted in the Joint Stipulation. (Sept. 24, 2020 Telephonic Status Conference Entry, ECF No. 117). As noted above, the Joint Stipulation stated that Plaintiff agreed to provide "a complete data download of all Instagram and Snapchat data from his accounts, from August 2015 to the present." (Joint Stipulation ¶ 6, ECF No. 89). This language is unequivocal. There is no interpretation of this provision that would allow Plaintiff to send merely what he chose from his Snapchat account while deleting other files off the Snapchat application on his phone. Plaintiff was under an unambiguous duty to preserve the deleted images and videos.

*B. Breach of Duty*

Having determined that Plaintiff was under a duty to preserve the destroyed data, the Court turns to the second inquiry: whether this duty was breached. The Court's determination on this

---

[11] Since all that the record makes clear is that the files were deleted between sometime between July 16, 2020 and October 7, 2020, it is possible the deletion occurred before September 24, 2020.

point is simple. Plaintiff himself concedes that he deleted the files from the Snapchat application on his phone. (*See* Request Show Cause Ex. D, ECF No. 133-4 ("I did delete some files off of the Snapchat application on my phone at some point between zip file productions . . . .")). The argument advanced by Plaintiff's counsel—that Plaintiff "did not admit intentionally destroying anything"—is meaningless in this context. (*See* Resp. 3, ECF No. 135). At the February 22, 2021 hearing, Plaintiff testified that he was aware that he had images and videos saved to the Memories folder within the Snapchat application on his phone. And, as explained in more detail below, Plaintiff offered into evidence an exhibit that showed he saved numerous videos and images to the Memories folder in the Snapchat application on his phone from at least September 2016 through June 2020. (Feb. 22, 2021 Hr'g, Pl.'s Ex. 3). He was further provided with a link from Defendants that explicitly stated that content from his Memories folder could be downloaded from Snapchat's servers. It is hard to see how Plaintiff would think he only had metadata available via Snapchat.

Moreover, the most superficial internet search reveals that Snapchat, by its very design, will erase files from its servers "as soon as possible" if a user deletes content from the Memories folder in the application on their phone.[12] *See* SNAPCHAT SUPPORT, *When does Snapchat delete Snaps and Chats*, https://support.snapchat.com/en-GB/a/when-are-snaps-chats-deleted (last visited July 1, 2021) ("If you delete a Snap from your Memories, Snapchat servers are designed to erase that Snap as soon as possible."). Plaintiff himself has represented that he conducted research on what kind of information could be obtained from Snapchat. (Decl. Pl. ¶ 10, ECF No. 98-2, *refiled at* ECF No. 152-2) (explaining that Plaintiff "check[ed] whether contrary to [his] understanding, using a link provided by Defendants' counsel and doing [his] own internet research, content files could be downloaded from Snapchat"). Even if Plaintiff can truthfully claim that he

---

[12] The Court is loath to conduct independent research on this topic. The parties were given an opportunity to present evidence on this topic at a hearing and in post-hearing submissions.

had no knowledge that a deletion of the files from his phone would potentially impact what might be available from Snapchat's servers—an assertion of which the Court remains skeptical—it would have no effect on the Court's inquiry here. The simple fact is that, at best, Plaintiff undertook no effort to ensure that the files would be preserved elsewhere before he deleted them from his Memories folder. Plaintiff plainly breached his duty to preserve the 11 images and videos.

### C. Bad Faith

Finally, the Court must determine whether this breach was done in bad faith. As noted above, to establish bad faith in the context of spoliation, the movant must show that the evidence was destroyed "for the purpose of hiding adverse information." *Bracey*, 712 F.3d at 1019. To determine whether evidence was destroyed for the purpose of hiding adverse information, the Court must "(a) assess the actual evidence, which one typically cannot do because the evidence no longer exists, or (b) infer bad intent based upon when the destruction occurred in relation to the destroyer's knowledge that the evidence was relevant to potential litigation." *Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8*, No. 10-CV-1122, 2014 WL 201534, at *7 (C.D. Ill. Jan. 17, 2014). Even if the destroyer knew the evidence was needed for the litigation, the court must examine the "totality of the circumstances" of the destruction, and a party can resist a finding of bad faith by providing a credible explanation for the destruction. *Malibu Media*, 2015 WL 2371597, at *17-18.

The first option is a nonstarter here, since Plaintiff has deleted the sought images and videos and neither the Court nor Defendants have seen what they depicted; no reliable assessment can be made as to their content. The second option is not easily evaluated. Plaintiff claims that the deleted photos and videos are irrelevant to this matter, though, as noted above, he is not qualified to make this determination. *See Jones*, No. 08 C 3548, 2010 WL 2106640, at *8. Defendants, because they have not seen the files, can offer nothing to refute this assertion. Nonetheless, Defendants argue

18

that there is no credible alternate explanation for Plaintiff's conduct other than bad faith: "Based on [Plaintiff]'s obstructive behavior and the circumstances and timing of his deletion of the Snapchat photos and videos, there can be no doubt that [Plaintiff]'s intent was to prevent the Defendants and the Court from seeing that content." (Request Show Cause p. 9-10, ECF No. 133).

The Court recognizes that Defendants' argument is impeded by Plaintiff's destruction of the files. Without having viewed them, Defendants are hard pressed to present the Court with a compelling argument that Plaintiff deleted the files to hide adverse evidence. Further, the Court finds believable Plaintiff's assertion that he deleted the files to free up space and memory on his phone, rather than out of an attempt to hide their content from Defendants. (*See* Request Show Cause Ex. D, ECF No. 133-4). With nothing but Defendants' speculative assertions to the contrary, the Court cannot find that Plaintiff deleted the files for the purpose of hiding adverse information. *See Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) ("But Rummery has offered no evidence, other than his own speculation, that [the documents] were destroyed to hide discriminatory information."). As such, Defendants' spoliation claim fails.

*4. Other Bases for Sanctions*

While the Court will not impose sanctions based on a spoliation claim, Plaintiff is not off the hook for his actions—and, separately, neither is his counsel. In general, federal courts have inherent power to impose sanctions for misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) ("Beyond any rule-based justification, the court's inherent authority to rectify abuses to the judicial process also authorizes sanctions for certain violations."). Federal Rule of Civil Procedure 37 provides that a court can impose sanctions for a party's failure to obey a discovery order:

(A) For Not Obeying a Discovery Order. If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

. . .

(C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A), (C). Rule 37 also prescribes rules for imposing sanctions specifically for the failure to preserve ESI:

(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice[.]

Fed. R. Civ. P. 37(e)(1). Rule 37(e) "leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e), advisory committee's note to the 2015 amendment.

One court has explained that "'[p]rejudice' under Rule 37(e) means that a party's ability to obtain the evidence necessary for its case has been thwarted. Prejudice also occurs when parties are forced to unnecessarily litigate e-discovery issues when ESI is spoliated." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2021 WL 185082, at *96 (N.D. Ill. Jan. 19, 2021) (citations omitted); *see also BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 6694904, at *8 (N.D. Ill. Nov. 8, 2018) (explaining, on a motion for sanctions due to spoliation, that "[p]rejudice . . . [was] clear" because "[e]very hour consumed administering needless or unnecessary discovery disputes is an hour taken from other litigants, who must wait in a longer queue for judicial attention. Unnecessary complaints sap the time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard."); *Cf. Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 677-78 (7th Cir. 2006) (noting that the Court of Appeals has "been plagued by the carelessness of a number of the lawyers practicing before the courts of this circuit with regard to the required contents of jurisdictional statements in diversity cases," that "the lawyers have wasted our time as well as their own and (depending on the fee arrangements) their clients' money," and ordering the parties to show cause why counsel should not be sanctioned for mistaking the requirements of diversity jurisdiction, with special consideration given to "the appropriateness, as a sanction, of [counsel] being compelled to attend a continuing legal education class in federal jurisdiction"); *Kasper v. Bd. of Election Comm'rs of the City of Chicago*, 814 F.2d 332, 341 (7th Cir. 1987) ("Every hour [of judicial attention] consumed . . . is an hour taken from other litigants, who must wait in a longer queue.").

Beyond financial prejudice—i.e., prejudice that results from costs incurred due to unnecessary litigation—Rule 37(e)(1) also encompasses substantive or merits-based prejudice.

This latter type of prejudice "results from harm to the merits of the moving party's case. To determine the extent of substantive prejudice defendants suffered, [the court] look[s] to whether the content of the missing emails was produced in other documents or whether defendants have obtained similarly relevant or probative information from other sources." *Tomasian v. C.D. Peacock, Inc.*, No. 09 C 5665, 2012 WL 13208522, at *9 (N.D. Ill. Nov. 8, 2012). Put simply, the Court "ask[s] if, at the end of the day, plaintiff's failure to preserve evidence deprived defendants of the opportunity to defend against plaintiff's claims at trial." *Id.*

District courts have "wide latitude in fashioning appropriate sanctions" for violations of discovery orders. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) (quotation marks and citation omitted). "[A]n imposition of sanctions 'must be proportionate to the circumstances surrounding the failure to comply with discovery.'" *Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2016 WL 11269313, at *4 (S.D. Ill. Dec. 13, 2016) (quoting *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997)). "A court must look at the procedural history as a whole and 'weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit.'" *Id.* (quoting *e360 Insight, Inc.*, 658 F.3d at 643).

The Court need not find that a party's failure to comply with a discovery order was due to willfulness, bad faith, or fault to impose sanctions; "a showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed." *e360 Insight, Inc.*, 658 F.3d at 642. A party's "culpability for that failure 'determines only which sanctions the court should impose and not whether any sanctions are appropriate at all.'" *Id.* (quoting *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 473 (7th Cir. 1984)). Here, and as explained below, the Court finds that Plaintiff's deletion of the Snapchat data is sanctionable under Rule 37.

22

1.  *Plaintiff's Conduct*

As noted above, Plaintiff had a duty to preserve the deleted files because they were sought via formal discovery requests. He was under a separate duty to preserve the deleted files pursuant to at least one, if not multiple, Court orders. Plaintiff unequivocally agreed to provide Defendants with the Snapchat data via the Joint Stipulation, after which Defendants withdrew their motion to compel. Then, despite this agreement and Defendants' withdrawal of their motion, Plaintiff refused to provide the data because *he* deemed it to be irrelevant. Defendants were forced to seek recourse via their motion for sanctions. Though the Court found, at that time, that sanctions were not yet warranted, the Court nonetheless issued an order on September 24, 2020 requiring Plaintiff to comply with his previous agreement to provide the Snapchat data. And, now, it is clear Plaintiff has deleted some of the very files he was ordered to produce. Although it is not entirely clear exactly when that deletion occurred, it was certainly after Judge Cherry's 2017 order requiring the preservation of ESI. It was also after discovery requests specifically requested Snapchat data. Perhaps most importantly, it was also clearly after the June 2020 agreement of the parties to produce the Snapchat data, and this Court's order endorsing that agreement. As such, Plaintiff's actions are sanctionable under Rule 37 for his inarguable failure to comply with the Court's June 3, 2020 order, and was further a violation of the Court's February 15, 2017 order requiring the preservation of electronically stored information.

Plaintiff's failure to comply with the Court's orders was, at a minimum, the result of negligence, "which is a degree of fault sufficient for imposing sanctions" under Rule 37(b)(2)(A). *e360 Insight, Inc.*, 658 F.3d at 643. In fact, Plaintiff's conduct may rise above mere negligence and suggest bad faith. In the context of a party's failure to obey a court's discovery order—rather than in the specific context of spoliation—"bad faith" takes on a different meaning: here, "[b]ad

faith 'is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order.'" *Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, No. 2:14-CV-273-PRC, 2018 WL 4853500, at *6 (N.D. Ind. Oct. 5, 2018) (quoting *Marrocco v. Gen. Motors*, 966 F.2d 220, 224 (7th Cir. 1992)).

Here, Plaintiff certainly did not appear to consider the impact of deleting data from his Snapchat application and instead relied on a number of self-serving assumptions about Snapchat's ability to preserve data, many of which turned out to be wholly inaccurate. On July 31, 2020, Plaintiff represented to the Court that the only material he could produce from Snapchat was non-content metadata and other information, which he deemed irrelevant to this matter. (*See* Decl. Pl. ¶¶ 5, 7, 10-20 ECF No. 98-2, *refiled at* ECF No. 152-2). Indeed, Plaintiff explicitly stated that "Snapchat does not archive content files." *Id.* at ¶¶ 5, 7. Plaintiff further stated:

> In the course of dealing with Defendants' request for Snapchat content, I explained to my counsel what was and wasn't available from Snapchat. When Defendants made their sanctions motion, I was in fact discussing further with my counsel and checking whether contrary to my understanding, using a link provided by Defendants' counsel and doing my own internet research, content files could be downloaded from Snapchat. The link provided by Defendants' counsel makes clear the kind of information that is obtained, which means Defendants know that content is not what is available at my end.

*Id.* at ¶ 10.

Not only was Plaintiff wrong about what data is available from Snapchat, but it is also clear that he affirmatively knew that he had access to other files, including images and videos, which were saved to the Memories folder within the Snapchat application on his phone. In Plaintiff's explanation provided to Defendants regarding the missing files, he described the 75 produced videos and images as "pieces of content that [he] saved over the past few years on [his] account." (Request Show Cause Ex. D, ECF No. 133-4). Furthermore, and as noted above, Plaintiff testified at the February 22, 2021 hearing that he was aware that he had images and videos saved to the

Memories folder. Indeed, Plaintiff offered into evidence an exhibit listing the dates of the files saved to his Memories folder, which revealed that one video was saved less than *two months* prior to Plaintiff's declaration that "Snapchat does not archive content files and does not retain user information past 30 days." (*See* Decl. Pl. ¶¶ 5, 7, ECF No. 98-2, *refiled at* ECF No. 152-2; Feb. 22, 2021 Hr'g, Pl.'s Ex. 3). This exhibit further revealed that Plaintiff saved over 80 images and videos to the Memories folder from September 2016 through June 2020.[13] (Feb. 22, 2021 Hr'g, Pl.'s Ex. 3). Critically, as the Court explained above, users must take an affirmative step from within the Snapchat application to save an image or video to their Memories folder. *See* SNAPCHAT SUPPORT, *How to use Memories*, https://support.snapchat.com/en-GB/a/about-memories (last visited July 1, 2021) ("To save a Snap to Memories, create a Snap and tap [image of icon] at the bottom."). Barring user or technological error—which Plaintiff does not allege here—Plaintiff took knowing, purposeful action to save these files to his Memories folder.

Additionally, the link provided by Defendants in their second requests for production made explicitly clear that the data contained in a user's Memories folder was available for download. (Br. Supp. Mot. Compel Ex. B ¶ 2, p. 10, ECF No. 81-3 (noting that Plaintiff's Snapchat data could be downloaded via the following link: https://support.snapchat.com/en-US/a/download-my-data); SNAPCHAT SUPPORT, *Download My Data*, https://support.snapchat.com/en-US/a/download-my-data (last visited July 1, 2021) (stating that users can download the files in their Memories folder)).

---

[13] As previously noted, Plaintiff disputes the claim that he "had 86 downloaded Snapchat videos and photos in his possession," because "the *first* Snapchat download only had metadata and no working links to videos and pictures." (Resp. 7-8, ECF No. 135). Plaintiff's counsel may be correct that the first Snapchat download contained only metadata and broken links through which the images and videos saved to Plaintiff's Memories folder could not be accessed. However, it appears that the links did not work because they were expired, not because the 86 images and videos were not saved to Plaintiff's Memories folder at the time. As Defendants demonstrate and Plaintiff himself concedes, the 86 videos and images were unquestionably in Plaintiff's possession at the time the download was made, because they were saved to his Memories folder in the Snapchat application on his phone. (*See* Request Show Cause Ex. B, ECF No. 133-2; Feb. 22, 2021 Hr'g Pl.'s Ex. 3). Whether Plaintiff also "possessed" the videos and images in a *secondary* location—i.e., via a download of his Snapchat data—is meaningless.

Indeed, the screenshots provided by Plaintiff on April 27, 2021—which depict what was displayed on Plaintiff's screen as he navigated the Snapchat application to complete a download of his data to provide to Defendants—clearly show that the "Data Available for Download" includes "Memories." (Pl.'s Submission, Mobile Screenshot 5 via provided link, ECF No. 164). A cursory review of Snapchat's website reveals that Snapchat allows users to save content to their Memories folder in the application, and that these files are saved in both the Memories folder and on Snapchat's servers indefinitely—unless, of course, they are otherwise deleted by the user. *See* SNAPCHAT SUPPORT, *When does Snapchat delete Snaps and Chats*, https://support.snapchat.com/en-GB/a/when-are-snaps-chats-deleted (last visited July 1, 2021) ("Memories are backed up by Snapchat. If you delete a Snap from your Memories, Snapchat servers are designed to erase that Snap as soon as possible.").

From the very moment Defendants served their second requests for production in March 2020, Plaintiff—and, to be clear, his counsel—had the information necessary to understand that content beyond mere metadata could be downloaded from the Snapchat servers. And, from the first moment that Plaintiff claimed that Snapchat archives no content files, he knew (or should have known) this statement was false—Plaintiff himself had been saving content to the Memories folder contained within the application for years by that time.

Moreover, Plaintiff has provided no innocent explanation to the Court as to why he made affirmative misrepresentations regarding what data was available from Snapchat. The only explanation offered was Plaintiff's testimony at the February 22, 2021 hearing that he did not "think that in depth" regarding whether a data download from Snapchat's servers would include the files saved to the Memories folder within the application on his phone. This is a curious statement given the Plaintiff's obligation to preserve ESI in this case. It is all the more curious

since Plaintiff previously represented that he conducted research to determine what content could be downloaded from Snapchat, and the issue of his Snapchat data has been the subject of ongoing motions practice for over a year now. (*See* Mot. Compel, ECF No. 80; Decl. Pl. ¶ 10, ECF No. 98-2, *refiled at* ECF No. 152-2). The idea that Plaintiff failed to more than minimally consider the issue of what data might be available to download is both completely illogical and contradicted by his own previous representations to the Court. Indeed, it now appears certain Plaintiff misrepresented either (1) his knowledge of what data Snapchat retained; (2) that he conducted research on this same topic; or (3) the results of such research.

Most importantly, however, Plaintiff knew that he was under a Court order to produce his Snapchat data no later than the Court's unambiguous command to do so on September 24, 2020. And, to be clear, Plaintiff was under a Court order to produce the Snapchat data as of June 3, 2020, when the Court granted the relief implied in the Joint Stipulation. (*See* June 3, 2020 Order, ECF No. 90). While Plaintiff testified at the February 22, 2021 hearing that the 11 files at issue were deleted at some point between July 16, 2020 and the second download in early October 2020, but that he could not say exactly when the deletion occurred, the Court is not inclined to accept Plaintiff at his word. Indeed, as described throughout this order, Plaintiff's representations to this Court regarding his Snapchat data have been opaque and misleading at best, intentionally false at worst. Plaintiff's conduct was, in no uncertain terms, an intentional or reckless disregard of his obligations to comply with both his obligations as a litigant and this Court's orders. As such, it was done in bad faith for purposes of Rule 37. *Apex Colors, Inc.*, 2018 WL 4853500, at *6.

Even if the deletion of the 11 files occurred prior to the Court's September 24, 2020 order, or for that matter the Court's June 3, 2020 order, an imposition of sanctions would still be appropriate for Plaintiff's conduct under Rule 37(e). As noted above, Rule 37(e) provides that the

Court can impose measures "no greater than necessary to cure the prejudice" to a party when ESI that should have been preserved has been irretrievably lost due to the failure to take reasonable steps to preserve it. Fed. R. Civ. P. 37(e)(1). Plaintiff was under a duty to preserve the data from his Snapchat account "from August 2015 to the present" no later than March 11, 2020, when this data was explicitly requested in Defendants' second requests for production. (*See* Br. Supp. Mot. Compel 3, ECF No. 81; Br. Supp. Mot. Compel Ex. B ¶ 2, p. 10, ECF No. 81-3). The latest date by which this duty could have arisen was June 2, 2020, when Plaintiff explicitly agreed to provide the Snapchat data per the Joint Stipulation. (*See* Joint Stipulation ¶ 6, ECF No. 89). Regardless, Plaintiff's deletion of the 11 files from the Memories folder within the Snapchat application on his phone occurred *after* these dates. Plaintiff's intentional deletion of the 11 files after these dates was, in no uncertain terms, the failure to take reasonable steps to preserve ESI that should have been preserved, which "cannot be restored or replaced through additional discovery." *See* Fed. R. Civ. P. 37(e). And Plaintiff's deletion of the 11 files undoubtedly prejudiced Defendants, as it caused wholly unnecessary litigation to resolve this dispute. *See DR Distributors, LLC*, 2021 WL 185082, at *96. Moreover, and as noted above, the 11 deleted files may have contained evidence relevant to Plaintiff's claim for damages based on loss of career opportunities. *See Higgins*, 2013 WL 3366278, at *2. Even if Plaintiff's actions were considered in the best possible light, an imposition of sanctions would still be eminently appropriate.

*6. Sanctions Imposed*

The sole remaining question before the Court is the appropriate sanction to impose. Any sanction levied by the Court must be proportionate to the circumstance leading to its imposition. *See Queen*, 2016 WL 11269313, at *4. Defendants urge the Court to order Plaintiff to show cause why Count I of the Amended Complaint—alleging a claim under the Fourteenth Amendment to

the United States Constitution and 42 U.S.C. § 1983 for a denial of Plaintiff's protected liberty interest in "his good name, reputation, honor, and integrity" without due process—should not be stricken and, further, why Plaintiff should not be held in contempt of the Court's September 24, 2020 order. The Court will not grant this relief for two reasons. First, the Court finds that striking Count I of the Amended Complaint is a disproportionate punishment for Plaintiff's deletion of the files, especially considering that there is nothing in the record to indicate whether the files were in fact adverse to Plaintiff's case. *Cf. Plunk v. Vill. of Elwood, Ill.*, No. 07 C 88, 2009 WL 1444436, at *11 (N.D. Ill. May 20, 2009) ("As the Seventh Circuit has emphasized, the interests of justice are best served by resolving cases on their merits.") (citing *Long v. Steepro*, 213 F.3d 983, 985 (7th Cir. 2000). Second, the Court need not receive further explanation from Plaintiff to determine whether he failed to abide by Court orders given the subsequent hearing on this matter.

The Court has discretion to enter any "just orders" to ameliorate the harm created by violation of discovery orders. *See* Fed. R. Civ. P. 37(b)(2)(A). And, further, the Court has the authority to order a measure "no greater than necessary to cure the prejudice" to a party when ESI that should have been preserved has been irretrievably lost due to the failure to take reasonable steps to preserve it. *See* Fed. R. Civ. P. 37(e)(1). Pursuant to this authority, the Court imposes monetary sanctions, will allow for the introduction of evidence related to this issue at trial, and will also allow for a jury instruction related to the deletion of Snapchat data. First, the Court will order Plaintiff to pay Defendants' attorneys' fees and costs associated with litigating the motion for sanctions at Docket Entry 92, the instant motion at Docket Entry 133, the hearing on February 22, 2021, and any other work related to review of Snapchat data or litigation concerning the deleted files. The Court finds that such a sanction is necessary to cure the prejudice incurred by Defendants

in litigating an issue that never should have arisen. *See* Fed. R. Civ. P. 37(b)(2)(A),(C) (permitting courts to order the payment of "reasonable expenses" created by the failure to comply).

Next, the Court will allow for the introduction of limited evidence and the submission of a jury instruction related to Plaintiff's destruction of this data. While it is true that the current record does not support striking a claim, or even an explicit adverse inference instruction, the egregiousness of Plaintiff's conduct in deleting the files calls for more than simply requiring that he pay a portion of Defendants' attorneys' fees and costs. Accordingly, the parties will be permitted to present evidence to the jury concerning the loss of the Snapchat data, and argument as to the relevance of that data, and the jury will be instructed that it may consider that evidence and argument in making its decision. *See* Fed. R. Civ. P. 37(e), advisory committee's note to the 2015 amendment (explaining that such a measure, "which would not involve instructing a jury it may draw an adverse inference from loss of information, would be available under subdivision (e)(1) if no greater than necessary to cure prejudice"). Plaintiff's failure to comply with his discovery obligations and/or orders of this Court may also pertain to his claim that, were it not for Defendants' actions, a career in the Navy—a profession that requires strict adherence to rules and procedures—would be open to him. Such further sanctions are additionally appropriate and necessary to address Plaintiff's misconduct in intentionally deleting files that he had a duty to preserve and produce and to deter such conduct in the future.

The Court will invite the parties to propose further jury instructions at the appropriate time, and will not rule on any particular jury instruction until the close of evidence. Of course, the parties may also still seek summary judgment.

In considering any appropriate jury instructions, the Court notes that the following appears consistent with the record:

1. Plaintiff had a duty to preserve and provide to Defendants data from his Snapchat account from August 2015 to the present;

2. Plaintiff intentionally deleted 11 videos and images from within the Snapchat application on his phone after this duty arose;

3. These files cannot be recovered; and

4. The jury "may consider that evidence, along with all the other evidence in the case, in making its decision." Fed. R. Civ. P. 37(e), advisory committee's note to the 2015 amendment.

Either party may submit a proposed jury instruction to accurately capture these facts, and the parties are encouraged to meet and confer concerning any possible joint stipulation that may appropriately narrow issues presented to the jury.

Going forward, the Court urges all parties and all counsel involved in this matter to take care regarding their obligations under the Federal Rules of Civil Procedure, orders of this Court, and to one another. The Court appreciates that litigation is, by its very nature, a contentious and all too often antagonistic venture. Yet, there is little excuse for the rhetoric and animosity evidenced in the filings detailed above.

**Conclusion**

Accordingly, the Court hereby **GRANTS with relief different than requested** the Request for Issuance of Order to Show Cause Regarding Plaintiff's Non-Compliance with Order and Spoliation of Evidence [DE 133].

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), the Court **AWARDS** Defendants their reasonable expenses incurred in making their previous motion for sanctions and the instant request for an order to show cause, litigating the hearing held on February 22, 2021, and any other

work related to review of Snapchat data or litigation concerning the deleted files. The Court **ORDERS** Defendants to **FILE**, on or before **July 30, 2021**, an affidavit detailing these expenses. Alternatively, the parties may reach an agreement concerning the fees owed to Defendants.

Finally, the Court will allow the parties to present evidence to the jury concerning the loss of the Snapchat data, and argument as to the relevance of that data, and the jury will be instructed that it may consider that evidence and argument in making its decision. The parties may also propose other jury instructions, or a joint stipulation, consistent with this Opinion and Order.

So ORDERED this 2nd day of July, 2021.

<u>s/ Joshua P. Kolar</u>
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT