# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | **CIVIL ACTION** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** ) | |
| **DANIELS, JR.**, in his official capacity as President of ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, **KATHERINE** ) | |
| **SERMERSHEIM**, in her official capacity at Purdue University, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF PLAINTIFF'S ATTORNEY
## PHILIP A. BYLER, ESQ. RE KEALEY FEE AFFIDAVIT

**PHILIP A. BYLER**, hereby declares subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

### Introduction

1. I am the Senior Litigation Counsel at Nesenoff & Miltenberg LLP, attorneys for Plaintiff John Doe, and I am admitted *pro hac vice* to this Court for this case. I have appeared in this action from its start, and I am the signatory on Plaintiff's Second Amended Complaint.

2. I make this Declaration in response to the Fee Affidavit of William P. Kealey that seeks $24,088.00 for the "reasonable expenses" incurred as a result of the Order To Show Cause proceeding that Defendants' counsel initiated and that this Court resolved in the Court's July 2, 2021 Opinion and Order. Per that July 2, 2021 Opinion and Order, I as Plaintiff's counsel did attempt to negotiate a settlement of the "reasonable expenses"; however, as will be demonstrated below, Mr. Kealey rejected my too generous settlement offer. What Mr. Kealey

now seeks are not "reasonable expenses" per the Court's July 2, 2021 Opinion and Order and is very disproportionate to what is involved here.

## Professional Credentials

3.    Because we have an issue of what are "reasonable expenses" and Mr. Kealey has given his background, I state here my professional credentials.

4.    I am a member of the Bars of, among others, the States of New York and Ohio, the U.S. District Courts for the Southern and Eastern Districts of New York, the Southern District of Ohio, and the District of Columbia, the U.S. Courts of Appeals for the First, Second, Sixth, Seventh, Eighth, Ninth and Tenth Circuits and the U.S. Supreme Court.

5.    I received my J.D. degree in 1976 from the Harvard Law School. From 1976 to 1978, I was law clerk to the Honorable Judge John W. Peck of the U.S. Court of Appeals for the Sixth Circuit. In 1978, I began the private practice of law as an associate in the Litigation Department of Cravath, Swaine & Moore in New York City working on antitrust, securities, First Amendment and civil rights litigations. In 1984, I moved to Weil Gotshal & Manges in New York City, where I worked on international trade, accounting fraud, First Amendment, RICO, ERISA, breach of contract and commercial litigations. In 1990, I established my own practice. I currently and have since 2002 been Senior Litigation Counsel at Nesenoff & Miltenberg LLP where I have been engaged in federal court and complex state court practice, specializing in appeals and trials.

6.    I have tried cases in New York state court and in federal court to decision. I have briefed and orally argued cases in the U.S. Courts of Appeals for the First, Second, Seventh, Eighth, Ninth and Tenth Circuits, the New York Court of Appeals, the New York Appellate Divisions for the First and Second Departments, and the Arizona Supreme Court. I am and have been for 12 years a Delegate to the Republican Judicial Nominating Conventions for New York's

10th Judicial District. I am active in Bar Associations, including the New York State Bar Association and the New York City Bar Association. I am and have been since 2007 a member of the Professional Discipline Committee of the New York State Bar Association, its current Secretary and its Chair of its Subcommittee on Fitness To Practice; and I am and have been since 2009 a member of the Professional Discipline Committee of the New York City Bar Association. For the last consecutive ten years, I have been listed on the Thomson Reuters Super Lawyers list for the New York Metro region. I was given the Community Service Award by DePauw University in 2008. And I have been dealing with the billing of clients for over 40 years, and in that time, I have also litigated the issue of the amount of attorneys' fees owed.

## Respect for the Court

7.     I do not wish to have any statement contained herein to reflect any disagreement with the Court's July 2, 2021 Opinion and Order. Plaintiff and his counsel intend to follow the Court's Orders, and it distresses both Plaintiff and me that the Court has viewed us as being derelict about compliance with a Court So Ordered Discovery Stipulation that included Plaintiff agreeing to produce Snapchat videos and pictures, contrary to Plaintiff's Response to Defendant's Second Production of Documents that the post-case Snapchat videos were irrelevant and the request was not proportional to the needs of the case. But Mr. Kealey's rejection of settlement and his fees application require some discussion to bring some perspective and proportionality to the present matter.

## My Failed Effort To Settle The Matter

8.     Mr. Kealey states at paragraph 6 of his Fees Affidavit that he "conferred with [me] in an effort to reach an agreement concerning the fees owed to Defendants, but it was apparent that Plaintiff was unwilling to make an unconditional payment to Defendants." That is not fully

accurate as to what happened. Attached as Exhibit A to this Declaration is the e-mail chain of communications exchange between us.

9. One can read the exchanges, but basically what happened is as follows: Mr. Kealey e-mailed me saying that the fees were over $20,000 but that he would settle for $15,000; I asked about supporting billings; Mr. Kealey said he was offering what he was so that he did not have to do the billings; I said it was way too high for what was involved, but that I would not debate the point that the Snapchat and Instagram discovery was irrelevant in the case and that given the fact the Court had asked counsel to cooperate, I would agree to $15,000 if the amount was held in abeyance for inclusion in the Final Judgment; Mr. Kealey refused, insisting that immediate payment be made.

10. I then responded as follows:

Dear Bill:

The offer that Plaintiff made and that you rejected was fully compliant with the Court's July 2 decision. Yes, the Court's July 2 decision says "award," but that means and must mean that it will be included in the final "award" in the case. The Court's July 2 decision does not say "pay now" and cannot reasonably be so read because that would be saddling an individual plaintiff of modest means with a financial burden in a litigation against a well-financed institution during the litigation. The Court's July 2 decision was not about undermining an adjudication on the merits. To be sure, the final "award" may include damages and attorneys' fees payable to Plaintiff that more than offset the Court's July 2 decision "award" and I believe it will, but you have chosen to litigate the case in a manner that Congress arguably did not want when including the attorneys' fees provisions in the law.

I think it would help if you more sensibly reconsidered your unsupportable assertion that this discovery issue involved a lack of cooperation that does not compare favorably with other cases in your 30+ years of legal practice. Plaintiff has produced all the documents, medical records and post-case Instagram messages that Defendants demanded. Plaintiff produced 75 of 86 post-case Snapchat videos that Defendants demanded. Plaintiff had originally objected to producing any Instagram messages and Snapchat videos, as post-case Instagram messages and Snapchat videos were and are irrelevant to this specific due process/Title IX case concerning a 2016 disciplinary case. But Defendants insisted, and so we entered

into a discovery stipulation in which Plaintiff agreed to produce Instagram messages and Snapchat videos. Quite frankly, Plaintiff did so in order that you could see that there was nothing of relevance in the Instagram messages and Snapchat videos to this specific due process/Title IX case concerning a 2016 disciplinary case. And that remains Plaintiff's position: all the Instagram messages and Snapchat videos post-date the events at Purdue in this case, most by many years; the Instagram messages and Snapchat videos do not refer to those events at Purdue; the Instagram messages and Snapchat videos are totally irrelevant to this specific due process/Title IX case. In my 40+ years of experience in the practice of law, I have never seen such dwelling on what is irrelevant.

Consequently, I re-offer that Plaintiff agrees to the $15,000 to be held in abeyance to be part of the final "award."

11.    I did not hear further from Mr. Kealey on this subject. Instead, Mr. Kealey filed his fees affidavit with the Court.

## **Perspective, Proportionality and Relevance**

12.    Proportionality in discovery is recognized in Rule 26(b)(1) of the Federal Rules of Civil Procedure as a constraint on the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

13.    The point here is that Defendants have submitted a $24,088 bill for Plaintiff to pay now for non-compliance with a Court So Ordered Discovery Stipulation in not producing 11 of 86 Snapchat videos and pictures -- never mind that Plaintiff produced all of the documents he had about the events of the case (including 134 pages of text message between Jane Doe and him), produced ten medical authorizations, produced all of his Instagram messages (which Defendants had at the time of taking Plaintiff's deposition but never marked as deposition exhibits and never asked Plaintiff any question about any of them) and produced 75 Snapchat videos and pictures. Nevertheless, and to be sure, Plaintiff agreed to what he did in the Court So Ordered Stipulation.

Thus, Plaintiff put to the side Plaintiff's extensive compliance with everything else demanded in discovery and Plaintiff's position about the irrelevance of the Snapchat videos and pictures and Instagram messages, and Plaintiff offered a generous settlement of the attorneys' fees represented (but not documented) by Mr. Kealey, thereby showing a willingness to accept a penalty for non-compliance with a Court Order. But what Mr. Kealey is seeking is not "reasonable expenses," but rather the unjust infliction of a vindictive strike against Plaintiff so as to impose a heavy cost on Plaintiff for seeking to vindicate Plaintiff's due process and Title IX rights.

### Analysis of Billing

14.     There is a preliminary point to consider with respect to Mr. Kealey's fees application, and that is what is meant by the Court's term "reasonable expenses." The Court did not say "reasonable attorneys' fees." Quite often in my 40+ years of experience, in the discovery context, "reasonable expenses" mean out-of-pocket disbursements; if attorneys fees are intended to be paid in an attorney fee shifting award, that is expressly stated. It was not here. The Kealey Fee Affidavit only requests fees, not reimbursements for out-of-pocket disbursements.

15.     The bottom line of reviewing the fee billing presented by Mr. Kealey represents that 86.7 hours were spent on the discovery as to the Snapchat videos and pictures. This is the kind of large bill that can get submitted to a large institutional client where there is a relationship of the law firm and the institutional client but that is not what a Court should blindly accept as a basis for a determination of "reasonable expenses." Attached as Exhibit B are Defendant President Daniels' answers to interrogatories; No. 7 answer states that Purdue's Office of General Counsel has been delegated responsibility of the legal obligations of this case. Attached as Exhibit C are the opening pages of the deposition of Trent Klingerman, who is Deputy General Counsel for Purdue, who was Purdue's Rule 30(b)(6) witness, and who began his legal career as an associate

and then partner at Stuart & Branigan, Mr. Kealey's law firm.

16. Given that amount of time (86.7 hours), it can be fairly asked: for what real purpose was that amount of time supposedly spent? I meant and do mean what I wrote to Mr. Kealey: "all the Instagram messages and Snapchat videos and pictures post-date the events at Purdue in this case, most by many years; the Instagram messages and Snapchat videos and pictures do not refer to those events at Purdue; the Instagram messages and Snapchat videos and pictures are totally irrelevant to this specific due process/Title IX case."

17. The 75 Snapchat videos and pictures produced by Plaintiff were included in the Order To Show Cause proceeding record and can fairly be called mundane (e.g., a video showing Plaintiff's sister playing the piano); Plaintiff testified that the 11 not produced were similarly mundane. Attached as Exhibit D is Plaintiff's listing of the Snapchat videos submitted at the February 22, 2021 hearing. That the manner of Plaintiff's production and the deletion of the 11 snapchat videos were unacceptable does not change the irrelevant substance of those Snapchat videos. This is not to rationalize non-compliance with the Court So Ordered Stipulation; this is to challenge Mr. Kealey's justification for seeking payment of 86.7 hours of attorney fees as "reasonable expenses" with respect to the Snapchat production. That Defendants spent the time they did focused on Plaintiff's post-case social media that does not refer to the events at Purdue in 2016 does not justify spending 86.7 hours for the purposes of determining "reasonable expenses."

18. Reviewing the specifics of the billing, the first time period is July 1, 2020 - August 7, 2020, which is for 24.1 hours and $5,418.50. (Kealey Fee Aff. paragraph 16.) That period saw Defendants making a motion for sanctions on July 17, 2020 (ECF 91-92), to which Plaintiff opposed on July 31, 2020 (ECF 98) and Defendants replied on August 7, 2020 (ECF 99).

Defendants' motion, however, was wide-ranging, making broad attacks on Plaintiff's discovery efforts, including complaining about not getting documents about the case events (which was not true) and medical authorizations that were not part of the Court So Ordered Stipulation (and which they got anyway).  This cannot properly be included in an assessment of "reasonable expenses" related to the Snapchat production.

19.     The second time period is October 8, 2020 – October 26, 2020, which is for 25.3 hours and $4,849.50.  (Kealey Fees Aff. paragraph 17.)  That period saw Defendants starting an Order To Show Cause proceeding on October 26, 2020 (ECF 133), to which Plaintiff opposed on the very same day of October 26, 2020 (ECF 98).  The Order To Show proceeding did relate to the Snapchat production, but the Order To Show Cause petition was but 12 pages long and included the Plaintiff's explanation document as to which Defendants did not prepare but only reviewed; and I responded to the Order To Show Cause the very same day with a Response.  My work in this time period was about a third of the time that the Kealey Fees Affidavit purports to give for that work.

20.     The third time period is January 26, 2021 – February 22, 2021, which is for 20.5 hours and $4,941.50. (Kealey Fees Aff. paragraph 18.)  That period saw Defendants preparing for and conducting the evidentiary hearing held on February 22, 2021.  Unlike the other periods, my time is approximately the same. My more general objections to the Kealey Fee Affidavit still apply.

21.     The fourth time period is April 14, 2021 – April 27, 2021, which is for 9.4 hours and $1,993.00.  (Kealey Fees Aff. paragraph 19.)  That period saw Defendants (and Plaintiff) concerned with complying with the Court's April 27, 2021 submission date for additional information.  My time in that period was roughly half that reported for Defendants in the Kealey Fees Affidavit.

22.     The Kealey Fees Affidavit then adds in paralegal time during the first through fourth periods, which are said to total $3,073.00. (Kealey Fees Aff. paragraph 20.) While I have been aware of the paralegal's work on the case (e.g., preparing deposition exhibits, compiling the Instagram messages), I am unaware of the paralegal doing anything as to the Snapchat production issue. The work on the Snapchat production was being done, and I believed exclusively, by attorney Tyler Jones. Paralegal time cannot properly be included in an assessment of "reasonable expenses" related to the Snapchat production, as the paralegal's time has been spent on other tasks and would have been spent on other tasks even if, unbeknownst to me, some time was spent on the Snapchat production issue.

23.     The fifth time period is July 2021, which is said to be for 15 hours and $3,812.50. (Kealey Fees Aff. paragraph 21.) That period concerns defense counsel's review of this Court's July 2, 2021 Memorandum Opinion and Order. My time for this period related to reviewing the Court's July 2, 2021 Memorandum Opinion and Order is about a third of that amount, but more importantly, such time should not be included in "reasonable expenses" for the Snapchat production issue.

24.     The foregoing review of the specifics of the Kealey Fees Affidavit billing results in the conclusion that what Mr. Kealey is seeking is about three times what would be justified for the Snapchat production issue (assuming "reasonable expenses" means an attorney fee award and not just disbursements). This is consistent with the general objections raised above (paragraphs 12-17 herein) supporting a figure that is lower by about two-thirds than that sought in the Kealey Fees Affidavit.

## Conclusion

25. For the reasons discussed above, the Court should deny Mr. Kealey's request for $24,088 and, in the exercise of the Court's sound discretion, determine the amount of "reasonable expenses" and whether those "reasonable expenses" will be included in a Final Judgment in this case.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of August, 2021.

_____*Philip A. Byler*_____
**Philip A. Byler**