Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF INDIANA
 3                     HAMMOND DIVISION
 4            CIVIL ACTION NO. 2:17-cv-33-JPK
 5
 6   JOHN DOE,                            )
                                          )
 7            Plaintiff,                  )
                                          )
 8                                        )
         -vs-                             )
 9                                        )
     PURDUE UNIVERSITY, PURDUE             )
10   UNIVERSITY BOARD OF TRUSTEES,        )
     MITCHELL ELIAS DANIELS, JR., in      )
11   his official capacity as             )
     President of Purdue University,      )
12   ALYSA CHRISTMAS ROLLOCK, in her      )
     official capacity at Purdue          )
13   University, KATHERINE                )
     SERMERSHEIM, in her official         )
14   capacity at Purdue University,       )
                                          )
15            Defendants.                 )
16
17                          ZOOM
18              DEPOSITION OF MONICA BLOOM
19        The deposition upon oral examination of MONICA
     BLOOM, a witness produced and sworn before me, Tracy
20   Larimore, RPR, Notary Public in and for the County
     of Allen, State of Indiana, taken on behalf of the
21   Plaintiff, c/o the offices of Stuart & Branigin,
     LLP, 300 Main Street, Suite 900, Lafayette,,
22   Indiana, on the 24th day of August, 2020, scheduled
     to commence at 1:30 p.m. pursuant to the Indiana
23   Rules of Trial Procedure with written notice as to
     time and place thereof.
24
25
```

EXHIBIT P

Page 6

1        months after law school, after which I worked
2        for the -- at that time, it was called the
3        Affirmative Action Office at Purdue.  Initially,
4        I served as an investigator, and then I served
5        as the interim director of the office, which I
6        believe at that time had been renamed the Office
7        of Institutional Equity, and I started as the
8        director of that office.
9            And after that -- and I don't recall the
10       years.  But after that, I served as the
11       inaugural director of CARE at Purdue.  And
12       following that -- I was there for about 18
13       months as well.  I believe I moved into the
14       office of legal counsel first as a staff
15       attorney, and then in a full-time role as
16       assistant or associate legal counsel.
17   Q   In the school year 2015/2016, was that a time
18       that you were the director of what is called
19       CARE?
20   A   Beginning in, I believe the end of February,
21       2016 is when I assumed that position.
22   Q   What were you immediately before you assumed
23       that position?
24   A   I was the executive director of the Office of
25       Institutional Equity.

| | | |
|---|---|---|
| 1 | | decide whether and how to participate. |
| 2 | Q | Does the R in the acronym CARE stand for |
| 3 | | response? |
| 4 | A | Yes. |
| 5 | Q | What in this context does response refer to? |
| 6 | A | My recollection is that we understood that to |
| 7 | | mean responding, especially after hours, to |
| 8 | | students who were seeking medical examinations |
| 9 | | or who had been reporting to the police, the |
| 10 | | incidents of sexual violence. |
| 11 | Q | Okay.  Does the E in the acronym CARE stand for |
| 12 | | education? |
| 13 | A | Yes. |
| 14 | Q | What does, in this context, education refer to? |
| 15 | A | Generally -- again, my understanding is it |
| 16 | | generally referred to prevention and awareness |
| 17 | | education targeted for the university students. |
| 18 | Q | Is there -- well, in the school year 2015/2016, |
| 19 | | was there a center at Purdue that analogously |
| 20 | | provided support service to respondents in |
| 21 | | sexual misconduct disciplinary proceedings? |
| 22 | A | I can't recall the timing, but I know that staff |
| 23 | | with the office of dean of students does provide |
| 24 | | those services to respondents and did, but I |
| 25 | | can't recall when that started. |

Page 28

1   Q   Now, let's turn to 653 to 54, which we'll mark
2       as Bloom Exhibit 23.
3           (WHEREUPON, Exhibit Number 23, PU 0653 -
4       0654, was marked for identification.)
5           MR. KEALEY:  Can we go off the record for
6       just a moment?
7           MR. BYLER:  Yeah.  Sure.
8           (A short recess was had.)
9           THE WITNESS:  Okay.  I have it.
10  BY MR. BYLER:
11  Q   Okay.  Looking at the top, is the very top an
12      email -- does it show an email from you to
13      Joanna Sharp?
14  A   Yes.
15  Q   And it's dated June 5, 2016?
16  A   Yes.
17  Q   Who is Joanna Sharp?
18  A   She is the dean's -- Dean Sermersheim's
19      assistant.
20  Q   Is that Dean Sermersheim's office?
21  A   It's her assistant.
22  Q   Oh, assistant?
23  A   It's Dean Sermersheim's assistant.
24  Q   I gotcha.  I'm sorry.  I misunderstood.
25          Now, let me look at your first statement

Page 29

1    there, "Hey Joanna, below is," redacted,
2    "statement."  Is that Jane Doe's statement?
3  A  I believe so, yes.
4  Q  And then you say, "She doesn't have access to a
5    computer so the font may be a little weird in
6    points.  Please let us know if this works.  I
7    can put it in a Word document for Dr. Katie."
8    Okay.  That's what you write?
9  A  Correct.
10 Q  Okay.  Dr. Katie is, again, Dean Sermersheim?
11 A  Correct.
12 Q  Okay.  And what's below is a forwarded message
13    from "Redacted" to you; correct?
14 A  Correct.
15 Q  Okay.  And it seems to indicate this is from,
16    whom?
17 A  I believe it's from ▇▇▇▇▇▇▇▇.
18 Q  Well, the question I have is if ▇▇▇▇▇▇▇▇
19    didn't have access to a computer, how could she
20    send this email?
21 A  So I cannot recall specifically.  She may have
22    had access to a phone or some other device where
23    it's a little harder to type out a statement,
24    but I can't recall specifically.
25 Q  Now, was this done for the reason that

Page 30

1        ▮▮▮▮▮ was not going to attend a panel
2        meeting and was providing a statement instead?
3    A   I believe so, yes.
4    Q   In terms of the mission of CARE, why were you
5        doing this in terms of providing -- you know,
6        facilitating, providing a written statement from
7        the complainant in lieu of a personal appearance
8        in front of the panel and Dean Sermersheim?
9    A   My recollection is that ▮▮▮▮▮ was -- and I
10       don't know the exact time frame, but I recall
11       there was an issue where she was going to be in
12       training with the Navy and so would be
13       physically unable to be present.
14           At the time, the procedures provided for --
15       they did not require parties to be present, but
16       allowed them to participate in other ways,
17       including providing a written statement.
18   Q   Okay. And that's what ▮▮▮▮▮ did in this
19       situation, provided a written statement?
20   A   Appears to be, yes.
21   Q   How would you have converted what's here into a
22       Word document?
23   A   I would have copied and pasted it.
24   Q   Now, I want you to look at what is written here.
25       Do you know if John Doe was ever given an