**EXHIBIT SJM 4**

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | |
| Plaintiff, | |
| v. | **CIVIL ACTION** |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR.**, in his official capacity as President of Purdue University, **ALYSA CHRISTMAS ROLLOCK**, in her official capacity at Purdue University, **KATHERINE SERMERSHEIM**, in her official capacity at Purdue University, | No. 2:17-cv-33-JPK |
| Defendants. | |

## PLAINTIFF JOHN DOE'S ANSWER TO AMENDED COUNTERCLAIM

PLAINTIFF JOHN DOE ("John Doe"), through counsel, in Answer to Defendants' Amended Counterclaim (ECF 161), respectfully responds as follows:

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Title IX of the Education Amendments of 1972 for the purpose of determining the rights and legal relations between Defendant/Counterclaimant The Trustees of Purdue University ("Purdue") and Plaintiff/Counterclaim-defendant John Doe.

**REPLY: Denied.**

2. The present action involves an actual controversy between Purdue University and John Doe regarding John Doe's misconduct in violation of Purdue University conduct regulations and the danger that he presented to the Purdue University community.

**REPLY: Denied and further aver that John Doe did not engage in misconduct in violation off Purdue University conduct regulations and was never a danger to the Purdue University**

[1]

community.

3. Purdue University's Policy on Anti-Harassment (III.C.1) defines Harassment and Sexual Violence as offenses against the Anti-Harassment Policy.

**REPLY: Admit that Purdue University's Policy on Anti-Harassment speaks for itself and does include definitions of harassment and sexual violence, but except as admitted, denied.**

4. In August 2015, when John Doe and Jane Doe arrived at Purdue University as freshmen who were each participating in Navy ROTC, they commenced a personal relationship.

**REPLY: Admit and further aver that as testified to by John Doe, the personal relationship included having consensual sexual intercourse starting in October 2015 and continuing until early December 2015 and that it was Plaintiff's first time to have sexual intercourse but not Jane Doe's first time.**

5. On one occasion in 2015, while Jane Doe was sleeping, John Doe digitally penetrated her vagina.

**REPLY: Denied and further aver that not only has John Doe denied under oath that such event occurred, but also Jane Doe told Purdue investigators that she herself did not remember such an alleged event (which in fact did not occur).**

6. On another occasion in 2015, John Doe again attempted sexual contact with the groin area of Jane Doe while she was sleeping. When she awoke, she expressed alarm.

**REPLY: Denied.**

7. In text messages and in person, John Doe attempted to apologize to Jane Doe for both incidents. In one text exchange, Jane Doe talked about "when I wake up to you touching me . . . and you just touch me I literally can't trust you if you don't respect my boundaries". To which John Doe replied: "We already went over this several times. I cant [*sic*] even apologize any more [*sic*] because you get angry at me for it" and "What more do you want me to say? Do you want

this to be over? We have literally talked about this for a week and I already told you I cant [*sic*] change what I did, only what i will do from here on out. Do you want me to feel shitty for the rest of my life because of what I did? Im [*sic*] feeling like i will. Im [*sic*] sorry. I cant [*sic*] change what I did, as much as i want to. I violated you and never should have."

**REPLY:** **Denied and aver: (i) that as testified to under oath by John Doe and shown by the texts, after Jane Doe had attempted to commit suicide on or about December 13, 2015, John Doe and Jane Doe exchanged texts that printed out ran 134 pages in the period December 23, 2015 to March 15, 2016, with the majority of the texts dated from December 23, 2015 to January 28, 2016; (ii) that as testified to under oath by John Doe, this stream of text communication between Jane Doe and John Doe showed an ongoing intense personal relationship between them from mid-December 2015 well into January 2016, with amicable communications well into February; (iii) that as testified to under oath by John Doe and shown by the texts, the texts included some of the quoted language but included other language as well (including texts reflecting Jane Doe sending John Doe cookies during the Christmas break); (iv) that as testified to under oath by John Doe, the quoted texts did not refer to what five month later was alleged against John Doe, the context of the quoted language completely changes the understanding of the quoted language, and John Doe did not use the quoted language to indicate he had violated her sexually, (v) that as testified to under oath by John Doe and shown by the texts, Jane Doe's immediate response was that John Doe needed to change and John Doe was still doing what John Doe was when Jane Doe and John Doe first started going out (which was not a response that indicated John Doe was talking about violating her in a sexual assault – because John Doe wasn't); and (vi) that as testified to under oath by John Doe, John Doe was at times apologetic in the texts to try and keep Jane Doe stable and because at that time John Doe still had loving feelings for the first girlfriend in his life and the first girl with whom John Doe had sexual relations and because John Doe was concerned about Jane Doe's mental well-being given her suicide attempt.**

8.    John Doe submitted to the Navy's rules and processes for intake, investigation, and determination of Jane Doe's allegation to the Navy about sexual misconduct by John Doe.

**REPLY: Denied as stated.**

9.    On April 4, 2016, a Navy officer holding the rank of Commander for the Navy ROTC unit on the Purdue campus notified the Purdue Office of Dean of Students, "I have an issue that involved two NROTC students that I expect is coming your way. I can provide more details

over phone if you have not received the report from Title IX coordinator I would like to speak with you about process your office would take as I have parallel actions I need to take with the alleged offender that would require your actions to have officially have commenced."

**REPLY: Admit that a Navy officer made a report to Purdue of alleged sexual misconduct based on an oral unsworn statement by Jane Doe against John Doe, but except as admitted, denied and refers the Court to the entire testimony of the Navy officer in question.**

10. Later that day, another Navy ROTC officer submitted a "Sexual Violence, Relationship Violence and Stalking Report" to Purdue. The officer reported that a female friend of Jane Doe approached him and mentioned that Jane Doe wanted to speak to him. Jane Doe then reported to the Navy ROTC officer that John Doe had made unwanted sexual contact at least twice. The Navy ROTC officer indicated that Jane Doe and John Doe would no longer have contact at Navy ROTC.

**REPLY: Admit that a Navy officer made a report to Purdue of alleged sexual misconduct based on an oral unsworn statement by Jane Doe against John Doe, but except as admitted, denied and refers the Court to the entire sworn testimony of the Navy officer in question.**

11. On April 5, 2016, Navy ROTC placed John Doe under restrictions in its program.

**REPLY: Admit that on or about April 5, 2016, John Doe was placed under interim restrictions in the Navy ROTC program, but except as admitted, denied.**

12. Navy ROTC assigned a lieutenant to investigate the allegation that Jane Doe submitted to Navy ROTC. The Navy ROTC investigator reviewed the evidence and recommended that Navy ROTC find John Doe in violation of the Navy's zero-tolerance policy on sexual harassment, citing *Regulations for Officer Development*, Section 3-19 "Conduct/Aptitude Standards of Midshipman Performance", subsection 2.a "'Major Offenses", item (11) "Sexual harassment/assault".

[4]

**REPLY:** Denied and avers that the testimony of the Navy witnesses and the Navy documents show that the Navy did not do an independent investigation, but rather as testified to under oath by Navy Commanding Officer Rodney Hutton, by the direction of Navy Commanding Officer Rodney Hutton, the Navy relied exclusively upon the Purdue investigation and suspension for the actions the Navy took and that the Navy disenrollment documents showed that the only reason stated for disenrollment was the Purdue suspension.

13. John Doe was disenrolled from the Navy ROTC program on the Purdue campus in August 2016 solely for the stated reason that John Doe was ineligible to enroll at Purdue for the 2016-17 academic year. John Doe was not disenrolled from the Navy ROTC program at Purdue as Navy discipline for misconduct. The disenrollment did not state a limitation on John Doe from enrollment in a different Navy ROTC program on a different campus where John Doe was eligible to enroll in the college or university. Because John Doe was not disenrolled from Navy ROTC as Navy discipline for violation of Purdue's conduct rules, there is no Purdue-imposed stigma attached to John Doe's occupational liberty for a career in the United States Navy.

**REPLY:** Admit that John Doe was disenrolled from the Navy ROTC program on the Purdue campus in August 2016 solely for the stated reason that John Doe was ineligible to enroll at Purdue for the 2016-17 academic year due to Purdue's suspension and that John Doe was not disenrolled from the Navy ROTC program at Purdue as Navy discipline for misconduct, but except as admitted, denied and refers the Court to the disenrollment document.

14. Prior to Navy ROTC disenrollment, Navy ROTC leadership also determined that John Doe was ineligible for a Navy ROTC scholarship for the 2016-17 school year due to his poor academic performance during both semesters of the 2015-16 school year.

**REPLY:** Denied as stated.

15. John Doe has not alleged any impropriety in Navy ROTC's intake and investigation of Jane Doe's allegation, nor has John Doe sought expungement of the Navy ROTC investigation

[5]

file showing Jane Doe's allegation and the Navy lieutenant-investigator's evaluation and recommendation on that allegation.

**REPLY: Denied as stated, and avers that, as testified to under oath by Navy Commanding Officer Rodney Hutton, the Navy did not do its own investigation but relied upon the Purdue investigation.**

16. John Doe has never sought to re-enroll in Navy ROTC, whether on the Purdue campus or anywhere else, and therefore has not established whether he is eligible for Navy ROTC participation or a career in the United States Navy.

**REPLY: Denied as stated.**

17. John Doe's actions toward Jane Doe constitute Sexual Harassment and meet the definition of Sexual Violence under Purdue's Anti-Harassment policy, as follows: (1) Non-Consensual sexual contact: touching, with any body part or object, another person's intimate parts (e.g., genitalia, groin, breast, buttocks), whether clothed or unclothed, and (2) Non-Consensual sexual intercourse: oral, anal, and/or vaginal penetration, to any degree and with any body part or object.

**REPLY: Denied.**

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

Defendants fail to state in the Amended Counterclaim any cause of action upon which relief may be granted against Plaintiff.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Defendants are barred by the illegality of the denial of due process from asserting the claims in the Counterclaim.

[6]

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

Defendants are barred by the illegality of the Title IX discrimination from asserting the claims in the Counterclaim.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

Defendants are barred by unclean hands from asserting the claims in the Counterclaim.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Defendants are estopped from asserting the claims in the Counterclaim.

**WHEREFORE**, Counterclaimant Purdue University respectfully requests that this Court:

A. Declare that John Doe's above-alleged misconduct violated Purdue University's conduct regulations.

**REPLY:** Denied.

B. Declare that Purdue University, in the exercise of its discretionary authority as an instrumentality of the State of Indiana to police the safety of its campus, has at all relevant times possessed good and adequate cause to suspend John Doe from enrollment at Purdue University.

**REPLY:** Denied.

C. Declare that Purdue University, in the exercise of its discretionary authority to protect its educational environment from interference with its educational mission, has at all relevant times possessed good and adequate cause to exclude John Doe from Purdue University's educational environment.

**REPLY:** Denied.

D. Declare that there is no Purdue-imposed stigma on John Doe's occupational liberty

for Navy ROTC enrollment or a career in the United States Navy.

**REPLY:** Denied.

| | |
|---|---|
| **Dated: March 29, 2021** | **Respectfully submitted,**<br>**NESENOFF & MILTENBERG, LLP**<br>**By:** /s/ *Philip A. Byler*<br>**Philip A. Byler, Esq.**<br>**Andrew T. Miltenberg, Esq.**<br>**363 Seventh Avenue, Fifth Floor**<br>**New York, New York 10001**<br>**(212) 736-4500**<br>**pbyler@nmllplaw.com**<br>**amiltenberg@nmllplaw.com**<br>*Attorneys for Plaintiff John Doe* |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served upon the attorneys of record for each party to the above-entitled cause at the address shown below on March 29, 2021:

William P. Kealey, Esq.
Tyler L. Jones, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: **wpk@stuartlaw.com**
      **tlj@stuartlaw.com**

*Attorneys for Defendants*

      **BY:** ☐ **U.S. Mail**     ☐ **Federal Express**

            ☐ **Hand-Delivery**     **x**    **Other: Email**

**Dated: March 29, 2021**        Respectfully submitted,
                                       **NESENOFF & MILTENBERG, LLP**
                                       **By: /s/ *Philip A. Byler***
                                       **Philip A. Byler, Esq.**
                                       **Andrew T. Miltenberg, Esq.**
                                       **363 Seventh Avenue, Fifth Floor**
                                       **New York, New York 10001**
                                       **(212) 736-4500**
                                       **pbyler@nmllplaw.com**
                                       **amiltenberg@nmllplaw.com**
                                       *Attorneys for Plaintiff John Doe*