**EXHIBIT SJM 35**

# Exhibit A

Page 1

```
 1                 UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF INDIANA
 2                      HAMMOND DIVISION
 3
 4     JOHN DOE,                    )
                                    )
 5          Plaintiff,              ) CIVIL ACTION NUMBER
                                    ) 2:17-cv-33-JPK
 6          vs.                     )
                                    )
 7     PURDUE UNIVERSITY, PURDUE    )
       UNIVERSITY BOARD OF          )
 8     TRUSTEES, MITCHELL ELIAS     )
       DANIELS, JR., in his         )
 9     official capacity as         )
       President of Purdue          )
10     University, ALYSA            )
       CHRISTMAS ROLLOCK, in her    )
11     official capacity at         )
       Purdue University,           )
12     KATHERINE SERMERSHEIM, in    )
       her official capacity at     )
13     Purdue University,           )
                                    )
14          Defendants.             )
15
16
17       VIDEOCONFERENCE DEPOSITION OF RODNEY HUTTON
18
19      The deposition upon oral examination of
       RODNEY HUTTON, a witness produced and sworn before me,
20     Megan M. Bowman, Notary Public in and for the County of
       Marion, State of Indiana, taken on behalf of the
21     Defendants, at the offices of Stuart & Branigin LLP,
       300 Main Street, Lafayette, Tippecanoe County, Indiana,
22     on Wednesday, May 20, 2020, scheduled to commence at
       8:30 a.m., pursuant to the Federal Rules of Civil
23     Procedure with written notice as to time and place
       thereof.
24
25
```

| | Page 2 | | Page 4 |
|---|---|---|---|
| 1 | A P P E A R A N C E S | 1 | (Time noted: 8:36 a.m.) |
| 2 | FOR THE PLAINTIFF: | 2 | RODNEY HUTTON, |
| 3 | Philip A. Byler<br>NESENOFF & MILTENBERG LLP | 3 | having been duly sworn to tell the truth, the whole |
| 4 | 363 Seventh Avenue<br>Fifth Floor | 4 | truth, and nothing but the truth relating to said |
| 5 | New York, NY 10001<br>212 736 4500 | 5 | matter, was examined and testified as follows: |
| 6 | pbyler@nmllplaw.com | 6 | |
| 7 | | 7 | DIRECT EXAMINATION |
| 8 | FOR THE DEFENDANT(S): | 8 | QUESTIONS BY TYLER L. JONES: |
| 9 | Tyler L. Jones<br>William P. Kealey<br>STUART & BRANIGIN LLP | 9 Q | Good morning, sir. |
| 10 | 300 Main Street<br>Suite 900 | 10 A | Good morning. |
| 11 | P O Box 1010<br>Lafayette, IN 47902-1010 | 11 Q | My name's Tyler Jones. I work for Stuart & |
| 12 | 765 423 1561<br>tlj@stuartlaw.com | 12 | Branigin. My partner Bill Kealey is also here. We |
| 13 | wpk@stuartlaw.com | 13 | represent the defendants Purdue University and |
| 14 | | 14 | several other individually named parties. |
| 15 | FOR THE U S NAVY: | 15 | For the record, could you please state your |
| 16 | John Matuszak<br>U S NAVY - NAVAL SERVICE TRAINING COMMAND | 16 | full name? |
| 17 | 2601 A Paul Jones Street<br>Building 1 | 17 A | My name is Rodney Earl Hutton. |
| 18 | Great Lakes, IL 60088-2845<br>847 707 5057 | 18 Q | Thank you. And how would you like me to address |
| 19 | john.matuszak@navy.mil | 19 | you? |
| 20 | | 20 A | Rod is fine. |
| 21 | | 21 Q | Okay. Thank you. Have you ever given a deposition |
| 22 | | 22 | before? |
| 23 | | 23 A | No. |
| 24 | | 24 Q | Rod, I'm just going to go over some basic ground |
| 25 | | 25 | rules so that this goes as easily as possible. A |

| | Page 3 | | Page 5 |
|---|---|---|---|
| 1 | INDEX OF EXAMINATION | 1 | deposition is basically -- I'm sure you've talked |
| 2 | | 2 | to your attorney about it. It's just the chance |
| 3 | Direct Examination 4<br>Questions By Tyler L. Jones<br>Cross-Examination 66 | 3 | for parties to ask you questions. |
| 4 | Questions by Philip A. Byler | 4 | I'd ask that you give me "yeses" or "noes" as |
| 5 | | 5 | opposed to head shakes or head nods so that when |
| 6 | INDEX OF EXHIBITS | 6 | the court reporter, who's making a record of |
| 7 | Deposition Exhibit No.: | 7 | everything, is typing it down as clear what you're |
| 8 | Exhibit 1 - Fact witness approval 7 | 8 | saying. |
| 9 | Defendant's Exhibit No.: | 9 A | I understand. |
| 10 | | 10 Q | Thank you. I'd ask especially because we're doing |
| 11 | Exhibit A - Letter from Redlawsk to CO, 18<br>6/14/16 | 11 | this remotely that we not interrupt each other. |
| 12 | Exhibit B - Placement of Academic Warning 25<br>letter from Rodney Hutton to | 12 | I'm going to try my darndest to let you say your |
| 13 | , 1/15/16<br>Exhibit C - Notification of Interim Leave of 29 | 13 | answer even though I may know what you're going to |
| 14 | Absence letter from Rodney<br>Hutton to , | 14 | say. I'd ask similarly that you let me finish my |
| 15 | 5/20/16<br>Exhibit D - Scholarship contract 32 | 15 | question even if you know where -- what I'm going |
| 16 | Exhibit E - Fitness Report & Counseling 36<br>Record | 16 | with it. |
| 17 | Exhibit F - Notification of Performance 46<br>Review Board 6/16/16 | 17 | Is that fair? |
| 18 | Exhibit G - PRB Summary & Recommendation, 49<br>8/10/16 | 18 A | I understand. |
| 19 | Exhibit H - Appointment Termination 56<br>Disenrollment Authorization | 19 Q | Thank you. I'm going to assume that you understood |
| 20 | Exhibit I - NROTC Student Disenrollment 52<br>Recommendation | 20 | a question if you answer, but if you don't |
| 21 | Exhibit L - NROTC Concept of Honor 61<br>Exhibit M - Subject: Thoughts on MIDN 4/C 63 | 21 | understand a question, I ask you let me know so I |
| 22 | , NSTC-0184 | 22 | can rephrase it or make it more clear. |
| 23 | Previously marked Exhibit No.: | 23 | Is that fair? |
| 24 | Exhibit I - Letter discharging r 64<br>, 8/20/16 | 24 A | I understand. |
| 25 | | 25 Q | Thank you. Similarly, this is not a prison. If |

Connor Reporting
A Veritext Company          800-554-3376

### Page 6

1  you need a bathroom break, please let me know, and
2  we'll open it up so you can relieve yourself.
3  A  Thank you.
4  Q  And then, again, this case is proceeding under
5      pseudonym, so I ask that you not reveal the
6      identities of the individuals we talk about today.
7          Nevertheless, we are here for a matter called
8      John Doe v. Purdue, et al. We're going to be
9      discussing two individuals in particular. One,
10     ▮▮▮▮▮▮▮ and one, ▮▮▮▮▮▮▮.
11         I'd ask that you just confirm that you won't
12     disclose their identity absent a court order.
13 A  Are you saying outside of this or during --
14     recognizing that you just used their names?
15 Q  Correct, yes. Everything that is said in here is
16     confidential.
17 A  I understand.
18 Q  Thank you, sir. Just some background, if I
19     reference the time in question to this lawsuit, I'm
20     referring to August 2015 to August 2016.
21         Is that fair?
22 A  Yes.
23 Q  Okay. Thank you. For the record, can you please
24     state your position and title at the time in
25     question?

### Page 7

1       MR. MATUSZAK: Mr. Jones, before you begin, can
2   we also admit the letter approving -- a Navy letter
3   approving this deposition?
4       MR. JONES: Yes. And I apologize, John. Go
5   ahead.
6       MR. MATUSZAK: I'd like to admit as Exhibit 1
7   the letter approving this Navy's -- that this --
8   I'm sorry. I admit as Exhibit 1 the letter from
9   the Navy approving this deposition.
10      (Deposition Exhibit 1 was marked for
11  identification.)
12      MR. JONES: Anything else you need to put into
13  the record, John?
14      MR. MATUSZAK: I'm sorry?
15      MR. JONES: Is there anything else you need to
16  put into the record?
17      MR. MATUSZAK: No, that's all right now.
18      MR. JONES: Thank you.
19 BY MR. JONES:
20 Q  Rod, for the record, during the time in question
21     with the Purdue NROTC, can you please state your
22     position and title?
23 A  Commanding Officer Purdue Navy ROTC.
24 Q  Thank you. What's a good mailing address for you,
25     sir?

### Page 8

1  A  2129 Sunrise Avenue, Lafayette, Indiana, 47904.
2  Q  Thank you, sir. Is there a good contact email for
3     you?
4  A  H-U-T-T-O-N-R-E- @yahoo.com
5  Q  Thank you, sir. Very briefly, can you give me your
6     educational background?
7  A  I have a bachelor's degree from the University of
8     Minnesota. Master's degrees from the Naval
9     Postgraduate School and Faith Bible Seminary.
10 Q  Thank you, sir. And what is the year of your
11     graduating with a bachelor's degree?
12 A  1988.
13 Q  Thank you, sir. Can you tell me -- you said you
14     were the commanding officer during the time in
15     question?
16 A  Yes.
17 Q  What were your responsibilities as the commanding
18     officer?
19 A  I held overall responsibility for oversight and
20     training of staff and midshipmen.
21 Q  For the Purdue NROTC?
22 A  For Purdue NROTC.
23 Q  Okay. Did that responsibility branch out over any
24     other universities or NROTC units?
25 A  No.

### Page 9

1  Q  Okay. Thank you. How long have you served with
2     the military in some capacity?
3  A  I served 30 years.
4  Q  Thank you, sir. And is it correct to say that
5     you've retired?
6  A  Yes.
7  Q  And what are you currently doing?
8  A  I am the pastor of Northend Community Ministries
9     with Faith Church in Lafayette, Indiana.
10 Q  Thank you, sir. Can you, for the record, explain
11     to folks like me who haven't been in the military
12     what the command structure is like at the Purdue
13     NROTC starting with yourself?
14 A  Purdue NROTC is set up with a single commanding
15     officer. He -- I had one executive officer and
16     several staff members representing -- providing the
17     training of the students.
18 Q  Understood, sir. And at the time in question, who
19     was immediately beneath you or subordinate to you?
20 A  My executive officer was Craig Remaly.
21 Q  Thank you, sir. During the time in question, what
22     rules of conduct were midshipmen required to adhere
23     to in the NROTC?
24 A  Can you be more specific? As that is a very broad
25     question.

| | |
|---|---|
| Page 22 | Page 24 |

**Page 22**

1  A   Are you speaking specifically of the report Exhibit
2      A in front of me?
3  Q   Yes, sir.
4  A   Based on this, I reviewed all elements of the
5      report, reviewed Naval requirements, and carried
6      out the Naval requirements.
7  Q   What Naval requirements did you carry out?
8  A   The disenrollment of the student.
9  Q   And I don't want to mischaracterize your testimony.
10     I just want clarification.
11         When you say you disenrolled the student, you
12     mean you disenrolled him because you determined
13     that he sexually harassed and assaulted ▮▮▮▮
14     ▮▮▮▮?
15 A   No.
16 Q   What do you mean then?
17 A   Because the student was suspended from the
18     university upon completion of that process, the
19     NROTC requirements required that I disenroll the
20     student from the program.
21 Q   Okay. My question, Mr. Hutton, if you were going
22     to disenroll Mr. ▮▮▮ for being less than a
23     full-time student at Purdue, why did you have
24     Lieutenant Redlawsk look into the allegations of
25     ▮▮▮▮?

**Page 23**

1      MR. BYLER: Objection to form.
2  Q   You can answer.
3  A   The initial inquiry and investigation was based on
4      the reports made to me. The actions taken as a
5      result were based on the student's status.
6  Q   At Purdue -- well, let me come back to that in a
7      little bit.
8          Under NROTC rules at the time, including the
9      rule I identified to you here in paragraph 2, is it
10     correct that Midshipman ▮▮▮ could be disenrolled
11     from Purdue if these charges were substantiated by
12     the NROTC?
13         MR. BYLER: Objection to form.
14         MR. MATUSZAK: Objection. It's -- object to
15     the question. You asked whether he could be
16     disenrolled from it too. He's here to speak about
17     the Navy's involvement -- I'm sorry -- about
18     Mr. ▮▮▮'s participation in the program, not
19     whether he can be disenrolled from Purdue.
20         MR. JONES: And that was a misspoke -- misspeak
21     on my part. I meant, disenrolled from the NROTC.
22         MR. MATUSZAK: Can you please repeat the
23     question?
24 BY MR. JONES:
25 Q   Is it correct that under rule Section 3-19:

**Page 24**

1      Conduct/Aptitude Standards of Midshipman
2      Performance, subsection 2.a Major Offenses, Item
3      (11) Sexual harassment/assault, during the time in
4      question, that a midshipman could be removed from
5      the NROTC for sexually assaulting or harassing
6      another midshipman?
7  A   Are you asking me --
8          MR. BYLER: Object -- what's the question?
9  A   -- if the Navy found the allegation?
10 Q   Let's not talk over each other. Can you please
11     repeat your question, Mr. Hutton?
12 A   I'm asking: Are you asking me specific to
13     Mr. ▮▮▮, or are you asking me a hypothetical
14     question about guilt -- a guilty party -- or a
15     party found guilty?
16 Q   I'm asking you as to Mr. ▮▮▮.
17 A   I cannot speculate because I did not make a
18     determination in that specific case.
19 Q   Okay. Are you familiar with the concept called
20     "academic warning" during the time in question?
21 A   In regards to the Naval ROTC program?
22 Q   Correct.
23 A   Yes.
24 Q   What does that mean, "academic warning"?
25 A   Based on a student's academics and their status in

**Page 25**

1      regards to academic standards, the unit had a
2      process of providing students additional assistance
3      and a warning in order -- when they were below the
4      standard in order to assist with regaining that
5      standard.
6  Q   When you say "the standard," do you mean NROTC
7      standard?
8  A   Yes.
9  Q   You said "additional assistance." What additional
10     assistance would be provided?
11 A   Assistance would include formal study requirements,
12     meeting with staff personnel or others as deemed
13     appropriate and necessary.
14 Q   Thank you. I would ask everyone to look at Exhibit
15     B.
16         (Defendant's Exhibit B was marked for
17     identification.)
18 Q   For identification purposes, the subject line is
19     "Placement on Academic Warning." It is Bates
20     number NSTC-0156 through -0157. I'll give everyone
21     a moment to open to that and turn to it. And,
22     Mr. Hutton, please take a moment to review it if
23     you haven't already.
24         Have you had a moment to review it?
25 A   Yes.

Connor Reporting
A Veritext Company                              800-554-3376

| | |
|---|---|
| **Page 46**<br>1  everyone. I'm going to ask that everyone look at<br>2  Exhibit -- what is labeled as Exhibit G, but what I<br>3  will put into the record as Exhibit F.<br>4      (Defendant's Exhibit F was marked for<br>5  identification.)<br>6 Q  For identification purposes, this should state<br>7  "Subject line: Notification of Performance Review<br>8  Board," NSTC-0015 through NSTC-0016.<br>9      Mr. Hutton, would you take a moment to review<br>10  this while everyone's getting to it?<br>11      MR. BYLER: I'm sorry, Tyler. Could you give<br>12  me those numbers again?<br>13      MR. JONES: Absolutely, Phil. It's NSTC-0015<br>14  through NSTC-0016.<br>15 Q  Have you had a moment to review it, sir?<br>16 A  Yes.<br>17 Q  Thank you. Are you familiar with this document?<br>18 A  I am.<br>19 Q  Have you seen it before?<br>20 A  I have.<br>21 Q  Would you please identify it for the record?<br>22 A  It is the letter from myself, Commanding Officer,<br>23  NROTC Unit Purdue University to Midshipman<br>24  ▮▮▮▮▮▮ notifying of a performance review<br>25  board. | **Page 48**<br>1 A  Yes.<br>2 Q  Understood. Thank you. And just so I understand<br>3  the process, the PRB makes a recommendation to you<br>4  as to what action to take?<br>5 A  That is correct.<br>6 Q  For the record, can you explain what a PRB consists<br>7  of?<br>8 A  The Performance Review Board consists of a senior<br>9  member with two additional members who are assigned<br>10  to independently review and -- the facts of what<br>11  have occurred, to review the requirements and then<br>12  make a recommendation to me as the commanding<br>13  officer.<br>14 Q  Is it ultimately your decision what to do with the<br>15  midshipman?<br>16 A  Yes.<br>17 Q  Thank you, sir. Do you recall what conclusion the<br>18  PRB in this case came to?<br>19      MR. BYLER: Objection. Assumes a conclusion.<br>20 Q  You can answer.<br>21 A  The Performance Review Board found that the student<br>22  had been suspended from the university and made a<br>23  recommendation of disenrollment.<br>24 Q  Understood, sir. And for the record, I would ask<br>25  everyone go to what's marked as Exhibit H, but what |
| **Page 47**<br>1 Q  Thank you, sir. Sir, I just want to confirm on<br>2  that second page, is that your signature?<br>3 A  It is.<br>4 Q  Thank you. Sir, I'll note that it says in<br>5  paragraph 1 that it's being instituted because of<br>6  Mr. ▮▮▮'s suspension from the university.<br>7      Is that your understanding of why this<br>8  Performance Review Board was being instituted?<br>9 A  Yes.<br>10 Q  Okay. And I also noted in paragraph 3 it says,<br>11  "The PRB may recommend that any of the following<br>12  actions be taken. Ramifications of these actions<br>13  are described in reference to" -- and it says in<br>14  paren -- parenthesis (A) "No action, warning,<br>15  probation, leave of absence." And then<br>16  "disenrollment" with some other language.<br>17      Do you see that?<br>18 A  I do.<br>19 Q  Is it accurate the PRB could have recommended that<br>20  Mr. ▮▮▮ be given a warning?<br>21 A  These are the standard options.<br>22 Q  Understood. And just so I understand what you just<br>23  said, when you say they're the standard options,<br>24  these are what could have resulted to Mr. ▮▮▮ at<br>25  his PRB? | **Page 49**<br>1  I will introduce into the record as Exhibit -- I<br>2  believe we're on G.<br>3      (Defendant's Exhibit G was marked for<br>4  identification.)<br>5 Q  This should, for identification purposes, be Bates<br>6  number S -- NSTC-0011 through NSTC-0012. I'll give<br>7  everyone a moment to get to that. And, Mr. Hutton,<br>8  if you please review it.<br>9 A  I have.<br>10 Q  Thank you, sir. Sir, are you familiar with this<br>11  document?<br>12 A  I am.<br>13 Q  Have you seen it before?<br>14 A  I have.<br>15 Q  Would you please identify it for the record?<br>16 A  This is the record from the senior member of the<br>17  Performance Review Board to me as the commanding<br>18  officer reporting on the execution of the<br>19  Performance Review Board and the information found.<br>20 Q  Understood. And for the record, was the senior<br>21  member Commander Craig Remaly?<br>22 A  Yes.<br>23 Q  Thank you. For identification purposes, can you<br>24  please identify the two other members of the PRB?<br>25 A  Major Mike McDowell was my marine option instructor |

Connor Reporting
A Veritext Company                          800-554-3376

| Page 50 | Page 52 |
|---|---|
| 1  and Lieutenant Leonard Taylor was a staff<br>2  instructor company officer.<br>3 Q  Thank you. Were these all members of the Purdue<br>4  NROTC?<br>5 A  Yes.<br>6 Q  Typically, sir, what do you do after you receive<br>7  one of these reports in your office?<br>8 A  I review the findings, I review the facts, I review<br>9  the requirements. I would typically review them<br>10  and depending on the case, may discuss them with<br>11  Naval Service Training Command. And then I would<br>12  make a decision.<br>13 Q  Do you recall if that's what you did in this case?<br>14 A  Yes.<br>15 Q  Did you talk to Naval Service Training Command<br>16  about this case?<br>17 A  Yes.<br>18 Q  When did you talk to them, if you know?<br>19 A  I would have spoken to them on multiple occasions<br>20  to include the initial reports through the<br>21  determination of the -- the determination of my<br>22  decision, then forwarding it to Naval Service<br>23  Training Command for their approval and action.<br>24 Q  Thank you, sir. Sir, I note that on the second<br>25  page it has some information about Mr. ▮'s | 1 Q  Okay. And are these the same professional<br>2  standards that they're -- that midshipmen are<br>3  evaluated under that we had talked about earlier?<br>4 A  Yes.<br>5 Q  Thank you. Sir, I'd ask that you look at the next<br>6  document in the folder there. For -- this is<br>7  what's marked as Exhibit J, but what I'll put into<br>8  the record as Exhibit I, I believe we're on now.<br>9  This should be NSTC-0005 through NSTC-0006.<br>10  (Defendant's Exhibit I was marked for<br>11  identification.)<br>12 Q  I'll give everyone a moment to pull that out while<br>13  you review, Mr. Hutton.<br>14 A  Ready.<br>15 Q  Thank you. Are you familiar with this document?<br>16 A  I am.<br>17 Q  Have you seen it before?<br>18 A  Yes.<br>19 Q  Can you please identify it for the record?<br>20 A  It is the disenrollment recommendation based on my<br>21  decision.<br>22 Q  Understood, sir. For layfolks like myself, would<br>23  you please explain why you would fill this out?<br>24 A  This would be the formal process from the NROTC<br>25  unit to Naval Service Training Command to process |

| Page 51 | Page 53 |
|---|---|
| 1  academic history.<br>2  Why is that noted on here?<br>3 A  That is a standard format for Performance Review<br>4  Boards.<br>5 Q  Is that a relevant consideration how they perform<br>6  -- how a midshipman was academically performing?<br>7 A  Not in this case.<br>8 Q  Not in this case. Okay. I note here, sir, it has<br>9  -- it notes some of the academic warnings that were<br>10  issued.<br>11  Do you see that?<br>12 A  Yes.<br>13 Q  And then it also notes "Professional performance<br>14  history."<br>15  Do you see that?<br>16 A  Yes.<br>17 Q  Okay. As I'm reading this, is it fair to say that<br>18  Mr. ▮ ranked in the bottom half of his class for<br>19  professionalism?<br>20 A  Under "Professional Performance," he ranked number<br>21  22 of 28.<br>22 Q  Thank you. And what does Professional Performance<br>23  History refer to?<br>24 A  That refers back to his ranking compared to his<br>25  classmates. | 1  for disenrollment from the National Scholarship<br>2  program.<br>3 Q  Understood, sir. And for confirmation purposes, is<br>4  that your signature -- is that one of -- there are<br>5  two signatures on the second page. The bottom one,<br>6  is that your signature?<br>7 A  Yes, it is.<br>8 Q  And what's the date of your signature?<br>9 A  29 August 2016.<br>10 Q  Understood, sir. And, sir, was it your<br>11  recommendation that Mr. ▮ be disenrolled?<br>12 A  Yes.<br>13 Q  And who did you submit this to?<br>14 A  Naval Service Training Command.<br>15 Q  Understood. Is it Naval Service Training Command's<br>16  decision whether or not to disenroll Mr. ▮?<br>17 A  They would review my decision.<br>18 Q  Understood.<br>19  MR. MATUSZAK: I'm going to object to that<br>20  question for the record. It does call --<br>21  MR. JONES: Can you --<br>22  MR. MATUSZAK: -- for a legal --<br>23  MR. JONES: -- a little bit, John.<br>24  MR. MATUSZAK: Sure.<br>25  MR. JONES: I'm having a hard time hearing you. |

Connor Reporting
A Veritext Company                                    800-554-3376

Page 54

1  MR. MATUSZAK: It does call for a legal
2  conclusion, the last question. I couldn't get my
3  mute button off. But so I'm objecting to the
4  question as it calls for a legal conclusion as to
5  who the final disenrollment party is. But for the
6  record, it's the secondary enrollment.
7  MR. JONES: Understood. Thank you.
8  BY MR. JONES:
9  Q Sir, I want you to turn to the second page if you
10  could?
11  A Yes.
12  Q You'll see it says at the very top a box that says,
13  "Evaluate Future Acceptability for Officer
14  Programs."
15  Do you see that?
16  A Yes.
17  Q And you'll see there are five boxes there and they
18  range from "highly recommend" to "definitely NOT"
19  -- "not" in all capital letters -- "recommend."
20  And then in parentheticals, "Must provide
21  justification."
22  Do you see that?
23  A Yes.
24  Q What does this box refer to?
25  A That is my assessment of whether he should be later

Page 55

1  brought into an officer program.
2  Q Understood. If you know, why do you fill this out?
3  A I do not recall specifically.
4  Q Okay. Do you know why you checked the box
5  "definitely NOT recommended"?
6  A That is my assessment of the student.
7  Q How did you come to that assessment?
8  A Based on my observation of the student.
9  Q What observations led you to check that box?
10 A Discussions and reviews of events and his
11  performance.
12 Q Does that include a determination that he sexually
13  assaulted ▇▇▇▇▇?
14  MR. BYLER: Objection.
15 Q You can answer.
16 A I do not recall.
17 Q Thank you. Do you know if you would have written
18  notes or had any paper notes about how you came to
19  that decision?
20 A I do not recall.
21 Q Thank you. And just so I understand this record
22  better, when it says, "Must provide justification,"
23  what does it mean by that, if you know?
24 A That I have to justify that recommendation.
25 Q Okay. Sir, if you could pull out what's marked as

Page 56

1  Exhibit K out of your binder there. I'll introduce
2  it into the record as I believe we're on Exhibit H
3  now. I may not do my -- be doing my alphabet
4  correctly. But for identification purposes it's
5  NSTC-0001 through NSTC-0004.
6  (Defendant's Exhibit H was marked for
7  identification.)
8  Q Mr. Hutton, would you please review this and
9  indicate when you've had a chance.
10 A Ready.
11 Q Thank you. Have you seen this before?
12 A I have.
13 Q Are you familiar with it?
14 A I am.
15 Q Can you please identify it for the record?
16 A It is the Appointment Termination Disenrollment
17  Authorization.
18 Q Thank you. For Mr. ▇▇▇ you mean?
19 A For Mr. ▇▇▇.
20 Q Thank you. I'm unfamiliar with R.K. Wood, Director
21  of Officer Development.
22  Who is he?
23 A R.K. Wood, Director of Officer Development was at
24  Naval Service Training Command.
25 Q Understood. And at the bottom of the first page is

Page 57

1  that your signature?
2  A It is.
3  Q What's the date of that signature?
4  A November 4th, 2016.
5  Q Would you also please look at the signatures on
6  page 2 and page 4 for this document and indicate if
7  those are your signatures?
8  A They are.
9  Q Understood. Am I understanding correctly that this
10  is the form that formally disenrolled Mr. ▇▇▇ from
11  NROTC?
12 A This is the letter from Naval Service Training
13  Command to the individual in this case, Midshipman
14  Fourth Class ▇▇▇, that they are to be disenrolled,
15  yes.
16 Q Understood. And, sir, I just want to note page 3
17  and 4 appears to be a letter signed by you. Is
18  this a -- well, let me rephrase.
19  Is it true -- please turn to the last page,
20  page 4. You'll see number 7 -- paragraph number 7
21  says, "Mitigating factors?"
22  Is it true that you found no mitigating factors
23  for Mr. ▇▇▇?
24 A Regarding disenrollment?
25 Q Correct.

15 (Pages 54 - 57)

Connor Reporting
A Veritext Company                    800-554-3376

| Page 66 | Page 68 |
|---|---|
| 1  in one of two cases, but this is the same. Okay.<br>2  CROSS-EXAMINATION<br>3       QUESTIONS BY PHILIP A. BYLER:<br>4  Q  You have them out in front of you?<br>5  A  Yes, sir.<br>6  Q  Okay. And on the front page it states, does it<br>7     not, "Reason for Disenrollment/Termination"?<br>8  A  Yes.<br>9  Q  Okay. And the signature on the bottom of the first<br>10    page is your signature?<br>11 A  In the first endorsement.<br>12 Q  Yes. And is the signature on the second page your<br>13    signature?<br>14 A  Yes.<br>15 Q  Okay. And is the signature on the fourth page your<br>16    signature?<br>17 A  Yes.<br>18 Q  Okay. Let me go on page 3 where item 2 says, "Type<br>19    of Disenrollment (Dropped by Institution)."<br>20     Is there a statement underneath that?<br>21 A  2(A).<br>22 Q  Okay.<br>23 A  "Midshipman ▇ was" --<br>24 Q  Go ahead.<br>25 A  "2(A) Midshipman ▇ was suspended by the | 1  Q  Okay. And what's the date of this document?<br>2  A  16 June 2016.<br>3  Q  Okay. And paragraph 1 refers to a Performance<br>4     Review Board being convened on June 23, 2016;<br>5     correct?<br>6  A  Yes.<br>7  Q  Okay. And it further states "Per reference, you<br>8     are deficient in the following areas. Suspension<br>9     from the University."<br>10     Correct?<br>11 A  Yes.<br>12 Q  Is there any other reason listed?<br>13 A  No.<br>14 Q  Okay. Was it the case that the Performance Review<br>15    Board was postponed?<br>16 A  I do not believe so.<br>17 Q  Well, do you recall that an appeal was made and<br>18    that it was postponed to August?<br>19     MR. JONES: Object to form. Do you mean an<br>20    appeal to produce proceedings with Doe?<br>21     MR. BYLER: Okay.<br>22 Q  I'm sorry did I --<br>23 A  I do not recall a delay to the Navy's -- Navy RTOC<br>24    Performance Review Board.<br>25 Q  Okay. Let me go then to a document that's |
| Page 67 | Page 69 |
| 1     University for one academic year."<br>2  Q  Okay. Is there anything else under item 2?<br>3  A  No.<br>4  Q  Okay. Go to point 9 on page 4 right above your<br>5     signature.<br>6  A  Yes.<br>7  Q  Is there a recommendation?<br>8  A  As I assigned "Recommend disenrollment of<br>9     Midshipman ▇ due to suspension by the University<br>10    for one academic year."<br>11 Q  Okay. Was it a requirement of the Naval ROTC<br>12    program that a student cadet be continuously<br>13    enrolled in the university?<br>14 A  Yes.<br>15 Q  Okay. Now, let me go to -- by the way, one last<br>16    thing. On -1 through -4, the effective date of the<br>17    disenrollment was August 29th, 2016; correct?<br>18 A  The signature for disenrollment effective 29 August<br>19    2016.<br>20 Q  On the first page, yeah.<br>21 A  Yeah, page 1.<br>22 Q  Now, let me go to -- I think it's Exhibit F, which<br>23    is pages 15 and 16, NSTC-15 and -16. I have it<br>24    noted as Exhibit F.<br>25 A  Yes, sir. | 1     NSTC-0008 to -0010. I know I sent that document to<br>2     be presented.<br>3     MR. JONES: Phil, could you repeat that Bates<br>4     number again?<br>5     MR. BYLER: NSTC-008 (sic) through -0010.<br>6     MR. JONES: Found it.<br>7  A  Sir, I have that in front of me.<br>8  Q  Okay. And what's the date of the document?<br>9  A  20 August 2016.<br>10 Q  Okay. Does this document refer to the Performance<br>11    Review Board that was held?<br>12 A  It does refer -- it does refer to the Performance<br>13    Review Board.<br>14 Q  Okay. And does it state that Mr. ▇ can submit a<br>15    statement?<br>16 A  Paragraph 2, "You are allowed five business days to<br>17    provide a statement."<br>18 Q  Okay. Can we go to page -0010 of this document?<br>19 A  Yes, sir.<br>20 Q  Okay. Do you recognize this as ▇▇▇▇▇▇▇'s<br>21    statement as referenced in the memo that you sent<br>22    August 20?<br>23 A  I have a memorandum dated 16 August 2016 from<br>24    Midshipman ▇.<br>25 Q  Okay. Do you recall seeing this statement by him? |

18 (Pages 66 - 69)

| | Page 70 | | Page 72 |
|---|---|---|---|
| 1 A | I do recall it. | 1 A | Yes. |
| 2 Q | Okay. And in this statement, he informed you that | 2 Q | Okay. And in those 12 items are the University |
| 3 | due to the unfortunate circumstances surrounding | 3 | Investigator's Report, Final Determination from the |
| 4 | his disenrollment, he was thanking you; correct? | 4 | Dean of Students, Midshipman ▓'s Statement of |
| 5 A | Yes. | 5 | Appeal of Final Determination, and University |
| 6 Q | Okay. And he said further he understood the reason | 6 | Response to Midshipman ▓'s Appeal. |
| 7 | for being disenrolled, "and as there is nothing | 7 | That was before the Performance Board? |
| 8 | further I can do about it to prevent it (sic), I | 8 A | They are enclosures to the report so they would |
| 9 | have accepted this"; correct? | 9 | have had to have been done. |
| 10 A | Yes. | 10 Q | Now, go up to item 3 in that listing. You see |
| 11 Q | Okay. And so he didn't appeal the disenrollment? | 11 | "Email agreeing to a delay in Performance Review |
| 12 A | That is my understanding of this letter. | 12 | Board proceedings"? |
| 13 Q | Okay. And does it not say then by Mr. ▓, "I | 13 A | Yes. |
| 14 | will continue to refute the University's decision | 14 Q | Does that refresh your recollection that there was |
| 15 | in my case as I'm not guilty of the charges that | 15 | indeed a delay because of the appeal that ▓ |
| 16 | have leveled against me." | 16 | ▓ made in the university disciplinary case? |
| 17 | MR. JONES: Objection. | 17 A | Yes. There was a delay for the purpose of ensuring |
| 18 Q | "I am satisfied in the sense that I know my | 18 | the university process was adequately completed. |
| 19 | conscience in the matter is clear." | 19 Q | Okay. Now, listed here is the University |
| 20 | MR. JONES: Objection. | 20 | Investigator Report; correct? As what was before |
| 21 A | That is what he's written. | 21 | the Performance Review Board? |
| 22 Q | That's what he's written. Okay. And he again | 22 A | I'm sorry. Can you restate that, sir? |
| 23 | concludes by thanking the NROTC; correct? | 23 Q | Listed here as number 9 is the University |
| 24 A | Correct. | 24 | Investigator Report; correct? |
| 25 Q | Now, let me go to what I think is -- I'm not sure | 25 A | That is correct. |
| | Page 71 | | Page 73 |
| 1 | what number -- that letter you gave it, but it was | 1 Q | Okay. Is there listed here any other |
| 2 | NSTC-0011 through -0014. | 2 | investigator's report? |
| 3 | MR. JONES: Phil, is this one of your exhibits? | 3 A | No indication of a second investigative report. |
| 4 | MR. BYLER: It was one of your exhibits. | 4 Q | Okay. Let's go then to a document which was marked |
| 5 | MR. JONES: Okay. | 5 | to be shown to you, but I don't know if it was, the |
| 6 | MR. BYLER: I don't know whether it was H or I, | 6 | Bates stamp is NSTC-0042. |
| 7 | but the first page is -11. | 7 A | I have that, sir. |
| 8 | MR. JONES: -11. Okay. | 8 Q | Do you have that page now? |
| 9 | THE WITNESS: I got it. | 9 A | I do. |
| 10 | MR. JONES: Got it. | 10 Q | Okay. And this document is an authorization of |
| 11 BY MR. BYLER: | | 11 | release of information; correct? |
| 12 Q | Okay. What's the date of this document? | 12 A | Yes. It states, "I, ▓, hereby |
| 13 A | It's dated 10 August. | 13 | authorize the release of all information pertaining |
| 14 Q | Okay. And is this the memo that records the | 14 | to investigation and corresponding case concerning" |
| 15 | Performance Review Board's decision? | 15 | -- blank -- "and ▓ to the Department |
| 16 A | Yes. | 16 | of Naval Sciences, Purdue University." |
| 17 Q | Okay. And on the second page, do you recognize -- | 17 Q | Okay. And this is dated May 24th, 2016? |
| 18 | what is it -- Commander Remaly's signature? | 18 A | Correct. |
| 19 A | I do. | 19 Q | Okay. And the second paragraph can you read? |
| 20 Q | Okay. And do you recognize Major McDowell and | 20 A | Second paragraph, "This release serves to allow the |
| 21 | Lieutenant Taylor's signatures? | 21 | Department of Naval Sciences, Purdue University, to |
| 22 A | I do. | 22 | remain fully informed about my academic career at |
| 23 Q | Okay. Now, is there listed the enclosures with the | 23 | Purdue University, including, but not limited to |
| 24 | Performance Review Board on the first page, 12 | 24 | any disciplinary, scheduling, and housing matter." |
| 25 | items? | 25 Q | Okay. And there's a signature there for ▓ |

Connor Reporting
A Veritext Company                    800-554-3376

|  | Page 74 |  | Page 76 |
|---|---|---|---|
| 1 | ▓▓▓; correct? | 1 A | Yes. |
| 2 A | I believe so. | 2 Q | Okay. And at -188 are character references that |
| 3 Q | Okay. Now, let's go to -- well, I'll give the | 3 | ▓▓▓▓▓ submitted to the Purdue |
| 4 | Bates stamp, which was NSTC-0166, and I'm not sure | 4 | investigators? |
| 5 | of the letter that you were given. But this was | 5 A | That is my understanding. |
| 6 | that Fitness and Counseling record. | 6 Q | Okay. And then -189 to -191 is ▓▓▓▓'s |
| 7 A | I have that, sir. | 7 | May 3rd, 2016, statement to the investigators at |
| 8 Q | Okay. I just, you know, for the sake of being fair | 8 | Purdue? |
| 9 | here, I thought I'd asked you whether there were | 9 A | Yes. |
| 10 | some other items in this record. | 10 Q | Okay. Give me a moment, please. I told you I'd be |
| 11 | For "motivation and initiative," it does say, | 11 | brief. I just want to make sure I ask the |
| 12 | "very motivated"; correct? | 12 | questions I intended to about the documents. |
| 13 A | It does. | 13 | MR. BYLER: Okay. I am done. |
| 14 Q | And for "leadership and cohesiveness," it says, | 14 | MR. JONES: One final question. This is |
| 15 | "very vocal during PT in encouraging other | 15 | actually for you, Phil. |
| 16 | midshipmen, is a team player, and promotes unit | 16 | MR. BYLER: Yeah. |
| 17 | cohesion"; correct? | 17 | MR. JONES: Can we agree on the admissibility |
| 18 A | Correct. | 18 | and the authenticity of all these documents we've |
| 19 Q | Okay. And it also shows that "Midshipman ▓▓ | 19 | introduced in today? |
| 20 | meets or exceeds program standards in the following | 20 | MR. BYLER: Well, I think of the most useful |
| 21 | areas: Physical fitness." | 21 | things we could do is to agree to the authenticity, |
| 22 A | Correct. | 22 | so we don't have to bother the Navy in the future. |
| 23 Q | Okay. So there were some positive notes about | 23 | We should between us, you know, confirm, you know, |
| 24 | ▓▓▓▓▓ in this record? | 24 | what those pages are, but that's what we would do |
| 25 | MR. JONES: Object to form. You can answer. | 25 | in the normal course anyway. |

|  | Page 75 |  | Page 77 |
|---|---|---|---|
| 1 A | Yes, there are. | 1 | MR. JONES: Okay. I just wanted to confirm |
| 2 Q | Okay. And that's your signature on this record? | 2 | that we could at least agree that all these |
| 3 A | That is my signature. | 3 | documents are what they -- what the Navy has |
| 4 Q | Okay. Can we go to Exhibit A, which was -- okay. | 4 | represented they are to be, so -- |
| 5 | You have that in front of you? | 5 | MR. BYLER: Yeah, I mean, I -- I pointed to |
| 6 A | I do. | 6 | certain things in the documents that I felt put |
| 7 Q | Okay. Have you had a chance to look at the entire | 7 | things in proper context obviously. |
| 8 | document, at least briefly, to see what's in there? | 8 | MR. JONES: Okay. |
| 9 A | Briefly. | 9 | MR. BYLER: Okay. |
| 10 Q | Okay. What I want to ascertain is the first page | 10 | MR. JONES: Off the record, please. |
| 11 | from Megan Redlawsk -- I guess that was her maiden | 11 | (Time noted: 10:50 a m.) |
| 12 | name at the time? | 12 | AND FURTHER THE DEPONENT SAITH NOT. |
| 13 A | Yes. | 13 | |
| 14 Q | Are the remaining pages that go from -169 to -195 | 14 | |
| 15 | primarily, or if not all, Purdue investigation file | 15 | |
| 16 | documents? | 16 | |
| 17 A | That is my understanding. | 17 | |
| 18 Q | Okay. And at -169 is the dean's June 20 -- 14, | 18 | |
| 19 | 2016 determination letter; correct? | 19 | |
| 20 A | Yes. | 20 | |
| 21 Q | And at -170 through -180 is the Purdue | 21 | |
| 22 | Investigation Report; correct? | 22 | |
| 23 A | Yes. | 23 | |
| 24 Q | Okay. And from pages -181 to -187, texts that are | 24 | |
| 25 | appended to the investigative report? | 25 | |

Connor Reporting
A Veritext Company    800-554-3376