**EXHIBIT SJM 39**

# Exhibit H

```
                                                    Page 1

  1              UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF INDIANA
  2                  INDIANAPOLIS DIVISION
  3              Case No. 2L17-cv-33-JPK
  4
     JOHN DOE,                            )
  5                                       )
             Plaintiff,                   )
  6                                       )
                 -vs-                     )
  7                                       )
     PURDUE UNIVERSITY, PURDUE             )
  8  UNIVERSITY BOARD OF TRUSTEES,        )
     MITCHELL ELIA DANIELS, JR., in       )
  9  his official capacity as             )
     President of Purdue University,      )
 10  ALYSA CHRISTMAS ROLLOCK, in her      )
     official capacity at Purdue          )
 11  University, KATHERINE                )
     SERMERSHEIM, in her official         )
 12  capacity at Purdue University,       )
                                          )
 13          Defendants.                  )
 14
 15    VIDEOCONFERENCE DEPOSITION OF KYLE WILLSTATTER
 16
            The videoconference deposition upon oral
 17    examination of KYLE WILLSTATTER, a witness produced
       and sworn before me, Craig Williams, RPR, CMRS, a
 18    Notary Public in and for the County of Marion,
       State of Indiana, taken on behalf of the
 19    Defendants, at the offices of Stuart & Branigin,
       LLP, 300 Main Street, Suite 900, Lafayette,
 20    Tippecanoe County, Indiana, on the 21st day of
       May, 2020, at 1:00 p.m., pursuant to the Federal
 21    Rules of Civil Procedure with written notice as to
       time and place thereof.
 22
 23
 24
 25
```

### Page 2

```
 1            APPEARANCES
 2
 3  FOR THE PLAINTIFF:
 4       Philip A. Byler
         NESENOFF & MILTENBERG
 5       363 Seventh Avenue, Fifth Floor
         New York, NY 10001
 6       212 736 4500
         pbyler@nmllplaw.com
 7
    FOR THE DEFENDANTS:
 8
         William P. Kealey
 9       Tyler L. Jones
         STUART & BRANIGIN LLP
10       300 Main Street, Suite 900
         P O Box 1010
11       Lafayette, IN 47902-1010
         765 423 1561
12       wpk@stuartlaw.com
         tlj@stuartlaw.com
13
    FOR THE DEPONENT:
14
         John Matuszak
15       Counsel at U S Navy -
         Naval Service Training Command
16       2601 A Paul Jones Street
         Building 1
17       Great Lakes, IL 60088-2845
         847 707 5057
18       john.matuszak@navy.mil
19
20
21
22
23
24
25
```

### Page 3

```
 1            INDEX OF EXAMINATION
 2  DIRECT EXAMINATION . . . . . . . . . . . . . . . . . 4
        Questions by Tyler L. Jones
 3  CROSS-EXAMINATION . . . . . . . . . . . . . . . . . 41
        Questions by Philip A. Byler
 4
 5
 6
 7
 8
 9           INDEX OF EXHIBITS
10  Navy Exhibit:
11  Exhibit 1 - Fact Witness Approval Letter . . . . . . 4
12  Defendants' Deposition Exhibit:
13  Exhibit A - NSTC-0165 and NSTC-O152 . . . . . . . . 18
        Exhibit B - NSTC-0015-16 NSTC-0150-0160 . . . . . 20
14  Exhibit C - NSTC-0140-1042 . . . . . . . . . . . . 26
        Exhibit D - NSTC-0011-0012 . . . . . . . . . . . 34
15
        Previously Marked Exhibits:
16
        Exhibit 6 - NSTC-0018-0019 . . . . . . . . . . . 44
17  Exhibit 10- NSTC-0127-0153 . . . . . . . . . . . . 47
18
19
20
21
22
23
24
25
```

### Page 4

```
 1            KYLE WILLSTATTER,
 2  having been duly sworn to tell the truth, the whole
 3  truth, and nothing but the truth relating to said
 4  matter was examined and testified as follows:
 5  DIRECT EXAMINATION,
 6     QUESTIONS BY TYLER L. JONES:
 7  Q  Good morning, sir.
 8  A  Good morning.
 9  Q  Or I guess this afternoon now.
10  A  Whatever time it happens to be.
11  Q  My name is Kyle Jones.  I'm an associate at
12     Stuart Branigin.  The man to my left is Bill
13     Kealey.  He's the partner here at Stuart
14     Branigin.  We represent Purdue University in a
15     federal lawsuit filed by John Doe.
16        Before we get started, Mr. Matuszak is
17     going to want to put the letter into the record,
18     so I'll let him do that.
19        MR. MATUSZAK:  This deposition is being
20     conducted pursuant to the two regulations, and
21     the Navy has approved this deposition.  There's
22     an approval letter that indicates that the
23     deposition can go forward, and that the letter
24     should be part of the record.
25        (Deposition Exhibit 1 was marked for
```

### Page 5

```
 1     identification.)
 2  Q  Thank you.
 3        Sir, could you, please, state your full
 4     name.
 5  A  Kyle Willstatter.
 6  Q  Thank you.  Have you ever given a deposition
 7     before?
 8  A  I have not.
 9  Q  So I'm just going to give a couple brief ground
10     rules.  I'm sure you talked a little bit with
11     Mr. Matuszak about it, but a deposition is just
12     a chance for both the parties in a lawsuit to
13     ask you questions about what you may or may not
14     know about pertinent facts.
15        Everything that we say, myself and you, is
16     being recorded and will be typed up into a
17     transcript.  I ask because of that if I ask you
18     a question or someone else asks you a question,
19     you give me yeses, noes, yeas, nays, instead of
20     head shakes or head bobs.  Otherwise, it won't
21     show up in the record exactly what you meant.
22     Does that make sense?
23  A  Yes, it does.
24  Q  I'd ask because we're recording this that we try
25     not to interrupt each other.  I promise that if
```

Connor Reporting
A Veritext Company          800-554-3376

|  | Page 6 |
|---|---|
| 1 | I know what you're trying to answer, I'm not |
| 2 | going to jump the gun, even though I may know |
| 3 | what you're going to say. Similarly, please let |
| 4 | me finish my question, even if you have a good |
| 5 | idea what I'm trying to ask. |
| 6 | If you answer a question, I'm going to |
| 7 | assume you understood. But if you don't |
| 8 | understand, please ask me to rephrase or ask me |
| 9 | to repeat the question. |
| 10 | If you need a restroom break, just ask me. |
| 11 | Another housekeeping matter, I'd ask that |
| 12 | you keep the names that we use in this |
| 13 | deposition confidential. The plaintiff in this |
| 14 | case is proceeding under a pseudonym, as is a |
| 15 | nonparty victim. The plaintiff's name is |
| 16 | ▉▉▉▉▉ or ▉▉▉▉▉, and the victim's |
| 17 | name is ▉▉▉▉▉. While we're in the |
| 18 | deposition, we'll use those names, but I'd ask |
| 19 | that outside of this deposition you don't use |
| 20 | either of those names in connection with this |
| 21 | lawsuit. Okay? |
| 22 | A Yes, sir. |
| 23 | Q Can you, please, provide your date of birth? |
| 24 | A 15 July 1987. |
| 25 | Q Excellent. During the time in question, August |

|  | Page 7 |
|---|---|
| 1 | 2015 to August 2016, what was your position with |
| 2 | the Purdue Navy ROTC? |
| 3 | A I was active duty staff as the Alpha Company |
| 4 | Officer. |
| 5 | Q Were you a lieutenant? |
| 6 | A Yes. |
| 7 | Q What is a good mailing address for you? |
| 8 | A 412 Main Street, Apartment 1, Lafayette, |
| 9 | Indiana. |
| 10 | Q Thank you, sir. And what is a good email |
| 11 | address for you? |
| 12 | A Kwillstatter@purdue.edu. |
| 13 | Q Can you please give us a brief educational |
| 14 | background for yourself? |
| 15 | A Graduated in 2009 from the University of |
| 16 | Virginia. Commissioned into the Navy through |
| 17 | the ROTC program. Conducted eight years active |
| 18 | duty in the Navy, during which time I also while |
| 19 | I was at Purdue completed a Master's degree in |
| 20 | electrical engineering. |
| 21 | Q Excellent. Is that what you do now? |
| 22 | A I am currently a Ph.D. student and electrical |
| 23 | engineer. |
| 24 | Q Even better. Congratulations. |
| 25 | MR. BYLER: Excuse me, I couldn't hear that |

|  | Page 8 |
|---|---|
| 1 | answer. |
| 2 | THE WITNESS: I am a Ph.D. student and |
| 3 | electrical engineer. |
| 4 | MR. BYLER: At Purdue? |
| 5 | THE WITNESS: Yes, sir. |
| 6 | Q Very good. Congratulations again. |
| 7 | How long were you with the Purdue NROTC? |
| 8 | A I was part of the unit from possibly August 2015 |
| 9 | to September of 2017. |
| 10 | Q Excellent. And you may want to speak up just a |
| 11 | little bit, because this is the mic. |
| 12 | As a lieutenant and a commanding officer |
| 13 | for Alpha Company, can you, please, describe |
| 14 | what your responsibilities and duties were at |
| 15 | that time? |
| 16 | A So my responsibilities were, or my primary |
| 17 | responsibilities were to advise and train a |
| 18 | group of approximately 40 midshipmen in the |
| 19 | RTC program. That's an adequate summary. |
| 20 | Q Understood. |
| 21 | May I ask, what was your reason for leaving |
| 22 | the Purdue NROTC? |
| 23 | A I resigned my commission at the end of my tour |
| 24 | with the unit. |
| 25 | Q Understood, sir. Thank you. |

|  | Page 9 |
|---|---|
| 1 | Sir, if you wouldn't mind just giving me |
| 2 | very briefly a summary of the command structure |
| 3 | at Purdue NROTC at that time. |
| 4 | A So there were seven active duty staff members, |
| 5 | an enlisted Marine, a train drill instructor, |
| 6 | four company officers, a Marine major. There |
| 7 | was the XO, Commander Remaly; and the CO, |
| 8 | Captain Hutton. |
| 9 | Q And Commander Hutton was at the very top of the |
| 10 | food chain, so to speak? |
| 11 | A Yes, he was. |
| 12 | Q Was there anyone immediately under you or |
| 13 | subordinate to you as far as a staff member |
| 14 | goes? |
| 15 | A No. |
| 16 | Q Were the midshipmen considered to be directly |
| 17 | underneath you? |
| 18 | A Within the confines of the ROTC program, yes. |
| 19 | Q Understood. |
| 20 | Sir, I'm going to give you a few names and |
| 21 | I'd just like to know if you're familiar with |
| 22 | them and if you can identify their rank at the |
| 23 | time in question, that being August 2015 to |
| 24 | August 2016. |
| 25 | A Okay. |

3 (Pages 6 - 9)

|  |  |
|---|---|
| Page 26 | Page 28 |

Page 26:
1  Q  It also had the discretion to recommend a
2     warning for Midshipman ▆; correct?
3  A  Yes.
4        MR. BYLER: Objection to form.
5  Q  Similarly, it had the discretion to recommend no
6     action or a leave of absence or probation;
7     correct?
8        MR. BYLER: Objection to form.
9  Q  You can answer.
10 A  Correct.
11       (Deposition Exhibit C was marked for
12    identification.)
13 Q  Sir, if you could put that aside and move to the
14    next exhibit, Exhibit C. For the record, this
15    is NSTC-0140 through 0142. I'll represent that
16    the emails are in reverse chronological order,
17    so it may make sense to start at the back.
18    Would you take a minute or two to review this
19    and make yourself familiar with it, please.
20 A  Okay.
21 Q  Have you had a moment to review these, sir?
22 A  Yes.
23 Q  Do you recognize these documents?
24 A  Yes.
25 Q  You've seen them before?

Page 27:
1  A  Yes.
2  Q  For the record, can you identify what they are?
3  A  They are an email chain between myself and
4     Mr. ▆ regarding some questions he had about
5     his PRB.
6  Q  As you understand his first email, what was he
7     asking?
8  A  As I understood, he had four questions. First
9     was regarding the counseling directed in the
10    notification of the PRB as to what it was and
11    when it should be done.
12       He asked if he was permitted to bring
13    witnesses and any limitations on that.
14       He asked what record was referenced in the
15    notification of the PRB and how he could access
16    it. And whether or not he should bring anything
17    that he was issued by the unit to return if he
18    were disenrolled.
19 Q  Sir, that second question you mentioned just
20    now, how did you respond to that second
21    question?
22 A  So my answer to his second question regarding
23    witnesses, it's listed in the next consecutive
24    email following chronologically. And in summary
25    I said that the PRB was about the fact of his

Page 28:
1     suspension and not the circumstances around it.
2     He was allowed to bring witnesses, but unless
3     they were going to argue about the fact of his
4     suspension, they were not particularly relevant
5     to the PRB.
6  Q  Understood.
7        It's your understanding that the PRB didn't
8     care why Purdue had suspended him?
9  A  Correct.
10 Q  Did you inform Mr. ▆ that you would be at the
11    PRB, whether in this email or elsewhere?
12 A  Yes.
13 Q  Is that normal for a company officer to be at
14    one of their midshipmen's PRB?
15 A  Yes, it is.
16 Q  One last question about these emails. You'll
17    see in the very last page, the third page, first
18    chronologically, Mr. ▆ types this, the second
19    sentence, "I have no more documents to add to my
20    case as I have already sent everything I have on
21    my case to you/Lieutenant Redlawsk."
22       Do you recall receiving documents from him?
23 A  Not specifically.
24 Q  Do you know why he would have included
25    Lieutenant Redlawsk in that?

Page 29:
1  A  Lieutenant Redlawsk was assigned as the
2     investigating officer.
3  Q  What investigation are you talking about?
4  A  In this particular case, to collect the
5     documents from Purdue after the completion of
6     their investigation.
7  Q  Did you ever talk to Lieutenant Redlawsk about
8     her investigation?
9  A  Only to ask for the timeline.
10 Q  Did you ever talk to her about the substance of
11    it?
12 A  No, I didn't.
13 Q  Were you ever made privy to the specifics of
14    ▆'s allegations against Mr. ▆?
15 A  No, I was not.
16 Q  I'm sorry?
17 A  No, I was not.
18 Q  Understood, sir.
19       Sir, you said that you served in a
20    counseling role earlier for all of your
21    midshipman at least twice a semester, or the
22    ultimate midshipmen in your unit, the Alpha
23    Company; is that right?
24 A  Yes.
25 Q  What would normally happen during these

```
                                                    Page 42
 1    don't mind.  Do you have that in front of you?
 2  A  Yes.
 3  Q  For the sake of the record's clarity, I want to
 4    publish paragraph 2 and then ask you some
 5    questions about it.  Paragraph 2 states, "The
 6    PRB" -- that's the Performance Review Board;
 7    correct?
 8  A  Yes, sir.
 9  Q  "The PRB is not about the circumstances
10    surrounding your suspension, it is about the
11    fact that you have been suspended.  There's no
12    reason to re-litigate the university's decision.
13    The fact is that you're suspended and the ROD
14    requires disenrollment for any case where a
15    student is suspended.  A black and white nature
16    of this PRB is why you are allowed to waive if
17    you so choose.  Any witnesses or other persons
18    you want to have present, please let me know
19    their names and the reason.  You have the right
20    to bring any witnesses you want; however, unless
21    they're going to state contrary to the facts
22    that you have not been suspended by the
23    university will basically be a waste of time."
24      I have read that accurately; correct?
25  A  Yes, sir.
```

```
                                                    Page 43
 1  Q  And that's what you wrote at the time to
 2    Mr. ▓▓▓▓?
 3  A  Yes, sir.
 4  Q  And that was, to your knowledge, a correct
 5    statement?
 6  A  Yes, sir.
 7  Q  Turn the first page, I want to direct your
 8    attention to the middle of the page and you see
 9    your email to ▓▓▓▓▓▓▓▓, copied to Craig
10    Remaly, Friday, August 5, 2016.  I want to
11    direct your attention to the second sentence of
12    the first paragraph.  First, before I publish
13    it, CO means commanding officer?
14  A  Yes, sir.
15  Q  CNO means Chief of Naval Operations?
16  A  Yes, sir.
17  Q  And who is the Chief of Naval Operations in the
18    hierarchy of the Navy?
19  A  That is the senior military member of the Navy.
20  Q  I'm going to publish it and then ask you similar
21    questions.  "Even if the board were to decide
22    and the CO were to agree that you are a lock to
23    be the next CNO, they would still have to find a
24    way to justify keeping you in the program when
25    you can't attend the university."
```

```
                                                    Page 44
 1  Q  Is that your statement in this email?
 2  A  Yes.
 3  Q  To your knowledge, at the time was that true?
 4  A  Yes.
 5      (Deposition Exhibit 6 previously marked for
 6    identification.)
 7  Q  I'm going to ask that you be provided a document
 8    which I ask you to have.  The first page, which
 9    I'm not going to ask you about, is NSTC-0018,
10    and it goes to NSTC-0019.  My interest in this
11    document is because of the second page.  Do you
12    have the document in front of you?
13  A  Yes, sir.
14  Q  Can you go to the second page, 0019.
15  A  Yes, sir.
16  Q  0019 is dated July 25, 2016.
17  A  Yes.
18  Q  Does this document identify who the members of
19    the Performance Review Board for ▓▓▓▓▓▓
20    will be?
21  A  Yes.
22  Q  And who are they?
23  A  They are Commander Remaly, Major McDowell, and
24    Lieutenant Taylor.
25  Q  Does paragraph 1 state that, "To accommodate
```

```
                                                    Page 45
 1    time for the appeal of his suspension, the
 2    Performance Review Board that will consider the
 3    performance of Midshipman ▓▓▓▓▓▓
 4    originally scheduled for June 23, 2016, has been
 5    rescheduled"?
 6  A  Yes.
 7  Q  So there was a rescheduling of the Performance
 8    Review Board.
 9  A  Yes, sir.
10  Q  That first paragraph says, "Midshipman ▓▓ is
11    deficient in the following areas outlined in
12    reference A:  A.  Suspension from the
13    university."
14      Is that what it states?
15  A  Yes.
16  Q  Is there any other reason stated for any
17    deficiency in performance?
18  A  No.
19  Q  Paragraph 3, if you look at that, says,
20    "Performance Review Board will begin at
21    10:00, August 9, 2016."
22      Correct?
23  A  Yes.
24  Q  Is that when it met?
25  A  Yes.
```