**EXHIBIT SJM 41**

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF INDIANA
 2                     HAMMOND DIVISION
 3                  CIVIL ACTION NUMBER
                       2:17-cv-33-JPK
 4
    JOHN DOE,                            )
 5                                       )
              Plaintiff,                 )
 6                                       )
                 -vs-                    )
 7                                       )
    PURDUE UNIVERSITY, PURDUE             )
 8  UNIVERSITY BOARD OF TRUSTEES,        )
    MITCHELL ELIAS DANIELS, JR.,         )
 9  in his official capacity as          )
    President of Purdue University,      )
10  ALYSA CHRISTMAS ROLLOCK, in          )
    her official capacity at             )
11  Purdue University,                   )
    KATHERINE SERMERSHEIM, in her        )
12  official capacity at                 )
    Purdue University,                   )
13                                       )
              Defendants.                )
14
15               CUSTODIAN OF RECORDS
           PURDUE'S OFFICE OF INSTITUTIONAL EQUITY
16        REMOTE DEPOSITION OF TRENT KLINGERMAN
17
18      The remote deposition upon oral examination of
    TRENT KLINGERMAN, a witness produced and sworn
19  before me, Diane Zeyen, RPR, a Notary Public in and
    for the County of Hamilton, State of Indiana, taken
20  on behalf of the Plaintiff, at the offices of the
    deponent, 610 Purdue Mall, West Lafayette,
21  Tippecanoe County, Indiana, on the 21st day of
    October, 2020, at 10:00 a.m., pursuant to the
22  Federal Rules of Civil Procedure with written
    notice as to time and place thereof.
23
24
25
```

Page 6

1  (Time Noted: 10:00 a.m.)
2       (Due to the need for this deposition
3  to take place remotely because of the
4  Government's order for social distancing,
5  the parties will stipulate that the court
6  reporter may swear in the witness over the
7  phone/virtual videoconference and
8  that the witness has verified that he
9  is in fact Trent Klingerman.)
10                - - -
11           TRENT KLINGERMAN,
12  having been duly sworn to tell the truth, the whole
13  truth, and nothing but the truth relating to said
14  matter was examined and testified as follows:
15
16  DIRECT EXAMINATION,
17    QUESTIONS BY PHILIP BYLER:
18  Q  Okay. Good morning. My name is Phil Byler. I
19     represent the plaintiff, John Doe, in this case,
20     called John Doe versus Purdue University and
21     others. I will be asking you questions.
22        I am going to start out by asking you first
23     to identify who you are.
24  A  My name is Trent Klingerman.
25  Q  And what is your position at Purdue?

Page 7

1  A  I am the deputy general counsel.
2  Q  And could you give your business address?
3  A  610 Purdue Mall, West Lafayette, Indiana, 47907.
4  Q  Okay. Let me ask you, if you would, to
5     summarize your educational background.
6  A  Bachelor's degree, Purdue University, 1994. Law
7     degree, Indiana University, Maurer School of
8     Law, 2001.
9  Q  Okay. And would you summarize your educational
10    background? Excuse me, not educational,
11    employment background, yeah.
12  A  Deputy general counsel, Purdue University, 2016
13    to the present.
14       Prior to that, vice president of human
15    resources, Purdue University, 2014 to 2016.
16       Prior to that, director of employee
17    relations, Purdue University, 2012 to 2014.
18       Prior to that, a partner at Stuart &
19    Branigin.
20       Prior to that, associate with Stuart &
21    Branigin.
22       Prior to that, law school.
23  Q  Have you been deposed before?
24  A  Yes.
25  Q  And I will ask you to state for the record, you

Page 8

1     do understand the procedures of a deposition?
2  A  I do.
3  Q  Is there any reason why you can't give full and
4     complete testimony today to the questions I will
5     be posing to you?
6  A  No reason.
7  Q  I am going to, first of all, ask the court
8     reporter to mark as Custodian Exhibit 1, well,
9     why don't we mark it as Klingerman's Exhibit 1,
10    the Notice of Deposition or Amended Notice, I
11    should say.
12       (Klingerman's Deposition Exhibit 1 was
13    marked for identification.)
14       THE REPORTER: Okay.
15       MR. BYLER: Was the witness, Tyler,
16    provided a copy of the exhibits?
17       MR. JONES: I believe you were, Trent.
18       MR. BYLER: Okay.
19       MR. JONES: See, see, he is on top of it.
20  He is the man with the plan.
21       MR. BYLER: Okay. Well, he wasn't smiling,
22    and I had expected him to smile if he had
23    exhibits in front of him.
24       MR. JONES: I guess we all have our own
25    sense of fun.

Page 9

1       MR. BYLER: Well, if you aren't a working
2  lawyer, you have to develop these senses of
3  humor.
4       MR. JONES: I suppose so.
5  BY MR. BYLER:
6  Q  Can you pull out the Notice of Deposition, that
7     should be Amended Notice of Deposition in front
8     of you?
9  A  I do have it right in front of me.
10 Q  Have you seen it before?
11 A  I have, indeed.
12 Q  Can you turn to the third page that is entitled
13    "CUSTODIAN DEPOSITION LIST OF SUBJECTS AND
14    DOCUMENTS"?
15 A  Yes, I am there.
16 Q  Are you the witness that is being put forth by
17    the defendants to testify as to these subjects
18    and documents?
19 A  I am.
20 Q  Let me ask you a general question. In the
21    school year 2015 to 2016, what were you
22    personally doing at Purdue?
23 A  The academic year 2015 to 2016 I was the vice
24    president for human resources. I became deputy
25    general counsel October of 2016.

Page 10

1  Q  And in your position as vice president of human
2     resources what, generally speaking, were your
3     responsibilities?
4  A  Employee relations, benefits, compensation,
5     recruitment, retention, employee engagement of
6     our faculty and staff.
7  Q  Did you have any responsibilities with respect
8     to disciplinary cases at the University?
9  A  As it would relate to faculty or staff
10    discipline, I would be fairly involved, yes.
11 Q  What about student cases?
12 A  Only to the extent that it would impact their
13    employment with the University.
14       Undergraduate students are also employed at
15    the University.  Some undergraduate students
16    have jobs at the University.
17 Q  One of the subjects that I listed there, 3, were
18    "Procedures applicable to the release of
19    documents respecting Plaintiff."
20       Do you see that?
21 A  I do see it, number 3.
22 Q  Can you describe what procedures, if any,
23    existed as to the release of documents
24    concerning the plaintiff?
25 A  Yes.  In the summer of 2016 and the fall of

Page 11

1     2016?
2  Q  Well, no.  I want to go back.  Well, strike
3     that.  As of about June 2016.
4  A  Yeah.  So the procedures would have been the
5     same as they are today.  There are several ways
6     that one can get records from the University.
7        The two that, based on my review, were
8     implicated with the plaintiff.  In this case,
9     the two internal processes, setting aside all of
10    the litigation, disclosure of documents, but the
11    two that occurred in the summer and fall of 2016
12    were the request for records by authorization
13    from the Navy ROTC and, again, a request to
14    access student educational records that came
15    directly from John Doe himself.
16 Q  Let me just quickly ask, how was it handled in
17    terms of John Doe's request for review of
18    records?
19       MR. JONES:  Object to the form.  Vague.
20    But you can answer, Trent.
21 Q  Do you understand the question?
22 A  I do.
23 Q  Please answer it.
24 A  John Doe requested access to certain educational
25    records on or around September 20th, 2016.  And

Page 12

1     he was given the opportunity to inspect those
2     records about a month later, I think October of
3     2016, you know, I want to say October 19th, but
4     I don't have the document right at my
5     fingertips.
6  Q  Was there a particular office at Purdue that was
7     responsible for retaining the review of
8     documents by John Doe?
9  A  Yes; our Records Office.
10 Q  What is your Records Office?
11 A  So our Records Office reports to me in my
12    capacity as deputy general counsel.
13       In 2016, before I was here, it was
14    comprised of a woman named Abby Daniels, who no
15    longer works here, was an attorney but not also
16    to the University.
17       A woman named Tandra Foster, who was
18    counsel to the University, was the attorney who
19    supervised the group.  And a woman named
20    Kaity Heide, who is a professional staff, who
21    reviews the requests, assembles the records,
22    produces them for all intents and purposes.
23       There is some legal review usually in there
24    somewhere, particularly if there are questions.
25    But at the time it would have been Abby Daniels,

Page 13

1     today it would be Kaity Heide, who would be the
2     professional staff member who does the intake
3     and does the production of the records or the
4     inspection of the records as it relates to
5     student education records.
6  Q  Okay.  Let's go to the first category,
7     authorization.
8  A  Yes.
9  Q  Let me ask this question.  Are you familiar with
10    a word called "Filelocker"?
11 A  I know what Filelocker is.  I know what the
12    system is, yes.
13 Q  What is Filelocker?
14 A  Filelocker is an encrypted file transfer
15    mechanism that Purdue uses to send what we
16    define as restricted records.
17       And so restricted records would be anything
18    that has particular privacy protection, like
19    student education records, healthcare records,
20    financial records, Social Security number.  We
21    use the Filelocker system to transmit those
22    records.
23       We certainly used it in 2016.  We still use
24    it today, but we have other tools that are a
25    little bit more functional that we use.

4 (Pages 10 - 13)

Page 14

1  Q   Now did I understand you to say that the Records
2      Office is part of the General Counsel's Office
3      or did I mishear that?
4  A   No, that's absolutely right.  Our Records Office
5      reports to me.
6  Q   Now Filelocker, is that something that is
7      generally available in Purdue?  Who can access
8      Filelocker?
9  A   Any, any Purdue faculty or staff member can
10     access Filelocker to transmit records.  You can
11     transmit records.  I can transmit records from
12     Filelocker to you, for instance.
13        I would just need to send you separately a
14     password that would permit you to access those
15     records.
16        I can use a one-time transmit to somebody
17     who is not at the University, as long as they
18     know how to access and download those records.
19        When I talk about functionality, that's
20     what I mean.  We have a Box account now that is
21     also encrypted.
22        More people are familiar with it.  It is
23     just a little easier for people outside the
24     University to use than Filelocker, which is a
25     unique Purdue system.

Page 15

1  Q   I would ask you to take a look, I am going to
2      mark this as Custodian 2, Navy documents that
3      were Bates stamped NSTC-0021 through NSTC-0050.
4  A   Yes.
5        (Custodian Deposition Exhibit 2 was marked
6      for identification.)
7  Q   Okay.
8  A   I have those in front of me.
9  Q   Now the Bates stamp would indicate the Navy got
10     these documents.
11        Do you see that?
12 A   I don't recognize the Bates stamp, but that's a
13     Navy Bates number.  It is not a Purdue Bates
14     stamp.
15 Q   And a Purdue Bates stamp would be something like
16     PU?
17 A   That's what I would expect.
18 Q   Okay.  That's what the record here in this case
19     shows.
20 A   Okay.
21 Q   Can you identify what's attached here in
22     NSTC-0021 to 0050 as Purdue records?
23 A   My shorthand, 21 to -- just use the number?
24 Q   Yes.
25 A   We have NSTC-21 and NSTC-22 are academic

Page 16

1      progress records that are University records.
2        You can see in the bottom left-hand corner
3      that they came from the Office of the Registrar
4      for the University.
5        NSTC-23, I don't recognize.  I have read it
6      in preparation for this deposition.  I don't
7      recognize it, and I don't think it is a Purdue
8      record.
9  Q   Okay.
10 A   NSTC-24 through NSTC-41 is a redacted copy of
11     the University's investigator, the University
12     investigator's report dated May 20th, 2016.
13        NSTC-42 is not a University record, but it
14     is a record that we have in the Office of Legal
15     Counsel that is the authorization from John Doe
16     to Purdue University to disclose records to the
17     Navy, the Department of Naval Sciences, Purdue
18     University.
19        NSTC-43 and 44 are redacted copies of
20     Dr. Sermersheim's, University Dean of Students,
21     determination letter in the investigation.
22     That's dated June 14, 2016.
23        I'm sorry, I said 43 and 44.  I think 43 to
24     45 are the letter, that letter, the
25     determination letter.

Page 17

1        NSTC-46 and NSTC-47 is a document, again,
2      not a Purdue document, but a document that
3      Purdue received from John Doe appealing
4      Dr. Sermersheim's determination.  Wait.  Yes.
5        NSTC-48 through 50 is, again, an appeal
6      that the University received from John Doe on
7      July 10th, 2016.
8  Q   Let me ask you, do you have personal knowledge
9      of how and when documents were transferred from
10     Purdue records to the Navy ROTC?
11 A   I have gained knowledge of how that happened.
12 Q   How did it happen?
13 A   Navy ROTC requested the records of our
14     Records Office.
15        I believe that occurred sometime in June
16     of -- I am sorry, it was May of 2016, presented
17     the University with John Doe's authorization.
18     Yes, so it would have been on or around May
19     24th, 2016.  Presented to the University with
20     the John Doe authorization that is NSTC-42.
21        The Records Office gathered those materials
22     from the Office of Institutional Equity.
23     Because they were records that had more than one
24     student, we call those dual education records.
25     And because the Department of Naval Sciences

Page 18

1 only presented one authorization, the record was
2 redacted, it removed identifiers from the other
3 student and transmitted it to the Navy, the
4 Department of Naval Sciences.
5 Q  And that's what the Navy ROTC is more properly
6 referred to, the Department of Naval Sciences?
7 A  Yeah.  So I think the person who requested it
8 was a lieutenant in the Department of Naval
9 Sciences at Purdue.
10 Q  Is there a place at Purdue where a disciplinary
11 case file is kept?
12 A  I wish there was only one place.  So it depends
13 on the type of conduct and who investigates it.
14    So in this case, this was a case that was
15 investigated by the Office of Institutional
16 Equity, because it contained allegations of
17 sexual harassment or misconduct.  And so the
18 record custodian for those files is the Office
19 of Institutional Equity.
20    If it was misconduct related to, for
21 example, drinking in a University residence,
22 University residences would maintain that file.
23 If it was misconduct --
24    MR. JONES:  My apologies.  Let me mute
25 that.  I thought that was muted.  Go ahead.

Page 19

1 Sorry.
2 A  The Dean of Students would possess the majority
3 of the misconduct record.  And so he would be
4 the custodian of most student conduct records.
5 Q  Let me ask the court reporter to mark as
6 Custodian 3 a document that's Bates stamped
7 NSTC-0020.  It is a one-page document.
8    (Custodian Deposition Exhibit 3 was marked
9 for identification.)
10 Q  This was also marked at the Remaly Deposition as
11 PM 5.
12 A  I have it in front of me.
13 Q  Can you identify that as a University document?
14 A  It is a University document authored by the
15 Vice President for Ethics and Compliance on
16 July 21st, 2016.
17 Q  And it was copied to Dr. Katherine Sermersheim?
18 A  That's right.
19 Q  And who was she at the time?
20 A  She was our Dean of Students.
21 Q  Now, who at Purdue would hold on to this record?
22 A  The custodian of this record is the vice
23 president, the Office of the Vice President for
24 Ethics and Compliance.
25 Q  And who is that?

Page 20

1 A  Her name is Alysa Christmas Rollock.  And she
2 was in the position in 2016.  She is still in
3 the position today.
4 Q  Let me ask the court reporter to mark as an
5 exhibit what is marked as Rollock Exhibit 4,
6 which is PU 597 to 599.
7    (Rollock Deposition Exhibit 4 was marked
8 for identification.)
9 A  I have it in front of me.
10 Q  Can you identify this as a University document?
11 A  It is a redacted version of a University
12 document authored by Dean Sermersheim on or
13 around June 14, 2016.
14 Q  And could you identify where the record of what
15 was marked as Rollock 4, PU 597 to 599, was
16 kept?
17 A  This record would have two custodians.  So it
18 would have, the Dean of Students Office would be
19 the custodian of this record, but also the
20 Office of Institutional Equity, which holds the
21 investigation file that underlies this document,
22 would have a custodial record of that document.
23    The redactions, though, so the true and
24 accurate and unredacted version of that document
25 would be in the two places I just mentioned.

Page 21

1    The redactions of the document would exist
2 only in my office, only the Records Office.
3 Those redactions were applied here and that
4 redacted version is in custody.
5 Q  I'm going to ask you a series of questions about
6 what were Rollock deposition exhibits.
7 A  Okay.  I got them right here and I hope I have
8 them in order.
9 Q  I have mine in order.  I will give you mine if
10 you don't.
11    (Rollock Exhibit 5 was marked for
12 identification.)
13 Q  Rollock Exhibit 5 --
14 A  Yes.
15 Q  -- PU 717 to 718, can you identify what that
16 document is?
17 A  Yes.  That appears to be a redacted version of
18 the appeal that John Doe submitted to the
19 Vice President for Ethics and Compliance on
20 June 22nd, 2016.
21 Q  And where would this record be maintained at the
22 University?
23 A  The true and accurate, the true and complete
24 version -- the unredacted version would be held
25 by the Office of the Vice President for Ethics

6 (Pages 18 - 21)

Page 22

1 and Compliance who is the custodian of the
2 appeals record.
3     The redacted version would be in custody of
4 the Records Office and the Office of Legal
5 Counsel.
6     (Rollock Deposition Exhibit 6 was marked
7 for identification.)
8 Q  The next one is Rollock 6, PU 600 to 601.  And
9 same question, I mean, can you identify this as
10 a University document?
11 A  This is a University document.  Give me one
12 second to read this one.
13 Q  No, go ahead, please.
14     And with each of these exhibits, feel free
15 to take your time to read it and verify in your
16 mind what it is.
17 A  Yeah.  Okay.  I see what it is now.  Thank you.
18     This is a letter authored by Vice President
19 Rollock or Vice President for Ethics and
20 Compliance on June 28th, 2016.
21     It is not a determination letter.  I almost
22 spoke too quickly on that.
23     It is a letter thing that she needs more
24 information before she can make a determination.
25     The unredacted version of this letter would

Page 23

1 be held by the Office of Vice President for
2 Ethics and Compliance.
3     The redactions were applied by our
4 Records Office and the redacted version is in
5 the custody of the Purdue Office of Legal
6 Counsel.
7     (Rollock Deposition Exhibit 7 was marked
8 for identification.)
9 Q  Okay.  Rollock Exhibit 7, which is PU 603 to
10 606, can you identify that as a University
11 document.
12     And of course my question will then be, you
13 know, where is it kept in the University files.
14 A  So just to make sure that my record is the same
15 as yours, mine goes from 603 to 607, PU 603 to
16 607.
17 Q  Rollock Exhibit 7, in the bottom right-hand
18 corner, and the Bates stamp is PU 603, and I
19 assume this is just the way it was copied, to
20 PU 606 -- no, 607, I'm sorry.
21 A  Yeah, so we got the same record.
22     It is a determination letter that has been
23 revised so that I recognize it as the final
24 determination letter dated June 29, 2016,
25 authored by Dean of Students, Dr. Katherine

Page 24

1 Sermersheim.
2     The custodian for this crew and complete
3 record would be the Office of Dean of Students,
4 redactions were applied at the Records Office,
5 and the redacted version is in custody here, in
6 the Records Office.
7     (Rollock Deposition Exhibit 8 was marked
8 for identification.)
9 Q  Rollock Exhibit 8 is the next one, PU 695 to
10 PU 698.
11 A  This is a record received from John Doe, along
12 with a transmittal email, sending the record to
13 our Office of Vice President for Ethics and
14 Compliance.
15     It is a record that would be, a true and
16 accurate version would be, the custodian would
17 be the Office of Vice President for Ethics and
18 Compliance, which has the appellate record,
19 custody redactions were applied by the
20 Records Office and are in custody here.
21 Q  Just go real quickly to the first page of
22 Rollock 8, which is Bates stamped 695.
23     And the email is from Alysa Rollock to
24 Barbara Devine.  Who was/is Barbara Devine?
25 A  Barbara Devine was and is Vice President

Page 25

1 Rollock's administrative assistant.
2 Q  And the email says "For file."  Can you tell
3 what file?
4 A  I can't tell what file.  But I presume it to
5 mean the appeals file that would be the
6 Vice President for Ethics and Compliance.
7     (Rollock Deposition Exhibit 9 was marked
8 for identification.)
9 Q  Let us move to Rollock Exhibit 9, which is
10 PU 608 to PU 610.
11     And my question is, can you identify this
12 as a University document?
13 A  Yes.  It is a redacted version of a
14 determination letter authored by Vice President
15 Rollock on July 21, 2015.
16     The unredacted version would be held in the
17 Office of the Vice President for Ethics and
18 Compliance.
19     The redactions were applied in the Records
20 Office, the redacted version in custody here in
21 the Records Office.
22     (Rollock Deposition Exhibit 10 was marked
23 for identification.)
24 Q  Let's look at Rollock Exhibit 10, which is
25 PU 568 to 572.  It came identified to us as a

7 (Pages 22 - 25)

Page 26
1  University record.
2  A  It is a University record. It is a notice of
3     investigation authored by Dean of Students,
4     Dr. Sermersheim, on April 11th, 2016.
5  Q  Who would maintain a record of the --
6  A  The unredacted versions of these records would
7     be maintained in two places, the Office of Dean
8     of Students and the Office of Institutional
9     Equity, which was responsible for gathering the
10    investigation record.
11       This would be a part of the investigation
12    record. Same response with respect to the
13    redacted version.
14       (Rollock Deposition Exhibit 11 was marked
15    for identification.)
16 Q  Let's move to Rollock Exhibit 11, which is
17    PU 573 through PU 576. I want to ask you to
18    take a look at it.
19       And my question will be the same, can you
20    identify it as either a University document or a
21    document that the University maintained.
22 A  I believe this record, the response to the
23    allegations admitted by John Doe to the
24    investigators in the Office of Institutional
25    Equity, that is what it is, and I believe that's

Page 27
1  what it is.
2     The custodian of this record would be the
3     Office of Institutional Equity at Purdue.
4     Redactions were applied here.
5        (Rollock Deposition Exhibit 14 was marked
6     for identification.)
7  Q  I am going to ask you to look at Rollock Exhibit
8     14, PU 373. It is just a cover transmittal,
9     email transmittal, and I am going to ask you to
10    identify what's on it.
11 A  Yes. So 373 is exactly what you said it is.
12    This is the transmittal coming from the
13    Office of Institutional Equity to the
14    Office of the Dean of Students on May 20, 2016.
15       The transmittal email is sending the
16    investigator's report dated May 20, 2016.
17 Q  Now when it says "Attachments" and it says
18    "Report" there --
19 A  Yes.
20 Q  -- that indicates that a report was attached and
21    this was a letter of transmittal?
22 A  Correct. That's what I believe this was.
23 Q  Who is Joanna Sharp?
24 A  Joanna Sharp is and was the Dean of Students'
25    administrative assistant, the person who would

Page 28
1  keep her records.
2     MR. BYLER: All right. Hold it. I have
3     some corrections in here.
4        Okay. I'm sorry, when I asked that the
5     witness be presented -- have you been numbering
6     them as we go along, Court Reporter?
7        (A discussion was held off the record.)
8        (Exhibit 12/Rollock Deposition Exhibit 14
9     were marked for identification.)
10 Q  It is my error. Rollock Exhibit 14, 373, was
11    the transmittal.
12 A  Yes.
13 Q  And then accompanying it, to 391, is a document
14    that was part of Rollock 14. So I am going to
15    ask you to go back and take a look and identify
16    what is PU 374 through PU 391.
17 A  Yeah. That is the -- it is a redacted version
18    of the investigation report. And I believe that
19    that redacted version probably what is listed as
20    ▆▆▆ Report .pdf on the transmittal.
21       When I reviewed this document, that's what
22    I believed it to be.
23 Q  Now, where at Purdue or what are the places or
24    place that this record would be kept?
25 A  The unredacted versions would be both in the

Page 29
1  Dean of Students Office and the Office of
2  Institution of Equity.
3     (Deposition Exhibit 13/Rollock Exhibit 16
4     were marked for identification.)
5  Q  I am going to go to what is Rollock Exhibit 16,
6     which is PU 701 to 702.
7  A  Yes, I recognize it.
8  Q  Is it a University email chain?
9  A  It appears to be an email chain, yes, from
10    Vice President Rollock to John Doe, copying
11    Tandra Foster, who was in 2016 an attorney in
12    the Office of Legal Counsel.
13       And it appears to respond to a request, but
14    I don't see the request. Respond to a request
15    of documents and instructs him to --
16       THE REPORTER: I am sorry, you are trailing
17    off at the end.
18       THE WITNESS: Sorry. I was reading and
19    trying to answer at the same time. That's my
20    fault.
21 A  It is a transmit that is an email message from
22    Vice President Rollock to John Doe, copying
23    Tandra Foster, directing John Doe to contact
24    Tandra Foster to make his request of her.
25 Q  If you see at the top of the first page, PU 701,

Page 30

1 the email info says "File."  What file is that?
2 A  I presume it is immediate appeal file, because
3    this was during the time that Vice President
4    Rollock would have been reviewing the FPO.  So I
5    presume that that would be in the Office of Vice
6    President for Ethics and Compliances appeal
7    file.
8         MR. BYLER:  By the way, Court Reporter, at
9    the end of the depositon, I will walk through
10   the numbering I have had, which I have said it
11   to each one, but the numbering will correspond
12   to the exhibits, because I have been identifying
13   them as Deposition Exhibit and Bates stamp.
14   Okay?
15        THE REPORTER:  Okay.
16        (Hutton Deposition Exhibit G was marked for
17   identification.)
18 Q  The next document I want you to look at is
19   marked as Hutton Exhibit G.  It is NSTC-0011 to
20   0012.
21 A  I have it in front of me.
22 Q  Okay.
23        MR. JONES:  Phil, could you repeat that
24   Bates number again?
25        MR. BYLER:  Yeah.  0011 to -- that's NSTC,

Page 31

1    excuse me.
2         MR. JONES:  Right.
3         MR. BYLER:  NSTC-0011 to NSTC-0012.
4         MR. JONES:  Okay.  The confusion was, I had
5    it as Hutton Exhibit H.  It has an H written at
6    the bottom, and you had said G.
7         MR. BYLER:  Exhibit G is the bottom
8    right-hand corner.
9         MR. JONES:  Sure.
10        MR. BYLER:  It was marked I think H at the
11   Remaly deposition.
12        MR. JONES:  Yeah.
13        MR. BYLER:  But don't hold me on that.
14        MR. JONES:  It's not a big deal.  Go ahead,
15   Phil.
16        MR. BYLER:  Okay.
17        MR. JONES:  I just wanted to make sure we
18   are looking at the same thing.
19        MR. BYLER:  Well, that's why I have always
20   wanted to identify the documents by the Bates
21   stamp, because there is also marked in a set of
22   papers, and that may be -- it doesn't matter.
23 Q  Okay.  I am going to ask the witness to look at
24   what is a Navy document and look at what is
25   enclosed there as 1 through 12, and in

Page 32

1    particular 8 through 12.
2         Do you see the list in the middle of the
3    page?
4  A  I do.
5  Q  And let me walk through, 8 is a University
6    academic report; correct?
7  A  That's what it says.
8  Q  Okay.  Nine is the University investigator's
9    report?
10 A  I read that with you, yes.
11 Q  Just for the clarity of the record, identify
12   what we are looking at.  Okay?
13        Ten is the final determination from the
14   Dean of Students.
15        Do you see that?
16 A  I do.
17 Q  You have to say yes probably for the court
18   reporter.
19 A  Yes.
20 Q  Eleven is John Doe's Statement of Appeal of
21   Final Determination?
22 A  I see that.
23 Q  And 12 is the University response to John Doe's
24   appeal?
25 A  I see, I see that as well.

Page 33

1  Q  So 8 through 12 are University documents,
2    correct, that are listed?
3  A  Yes.
4  Q  Okay.
5  A  Eight through 12 are all documents that the
6    University looked at.
7  Q  Okay.
8         (Exhibit 15/Remaly Deposition Exhibit B was
9    marked for identification.)
10 Q  Let me ask you to be given what was Remaly
11   Deposition Exhibit B, or which was NSTC-0042.
12 A  I have it.
13 Q  And can you identify this document?
14 A  It appears to be John Doe's authorization for
15   these records through the Department of Naval
16   Sciences at Purdue University.
17 Q  And would that authorization enable or would
18   authorize the University to transmit to the
19   Department of Naval Sciences University
20   documents, such as the investigative report, the
21   final determination of the dean, the appeal of
22   John Doe, and the University response to
23   John Doe's appeal?
24 A  Yes.
25        (Exhibit 16/NSTC-0119 were marked for

Page 34

1    identification.)
2 Q  Well, I am going to ask that you be presented
3    with a document that is NSTC-0119.
4 A  Yes, I have it.
5 Q  At the top of this document, again, can you
6    identify who Barbara Devine is?
7 A  She is the administrative assistant for the
8    Vice President for Ethics and Compliance.
9 Q  Otherwise President Dean Rollock?
10 A  Correct.
11 Q  And this email was addressed to a Commander
12    Remaly, and it states, "I have shared a document
13    with you in regard to the above subject
14    Filelocker.  Barbara."  And it refers to
15    John Doe; correct?
16 A  Yes.  I don't know that it specifically does.
17    But in context, yes, I agree with everything
18    that you said.
19 Q  Now Filelocker you had earlier in your testimony
20    identified?
21 A  Yeah.  Filelocker is the encrypted system that's
22    then a restricted record.
23 Q  Okay.  So this document appears to be an email
24    from the assistant to Purdue's vice president to
25    a Naval ROTC commander of documents through that

Page 35

1    Filelocker?
2 A  Correct.
3 Q  Now this email is dated August 2, 2016.  When
4    did you take your position in General Counsel's
5    Office?
6 A  October of 2016.
7 Q  October.  So it would be a couple months later.
8       I am going to mark a series of emails,
9    PU 0896 through PU 902.
10      (Custodian Deposition Exhibit 17 was marked
11    for identification.)
12 A  Can you say those numbers again, Mr. Byler.
13 Q  Sure.  PU 896 to PU 902.
14      MR. JONES:  Phil, can we go off the record
15    briefly?
16      MR. BYLER:  Sure.
17      (A recess was taken between 10:45 a m. to
18    10:50 a.m.)
19    BY MR. BYLER:
20 Q  You can see what we marked, if my numbering was
21    correct, this is Custodian 17.  And it is a
22    series of emails; correct?
23 A  I do see that.
24 Q  And I am going to go through each one just to
25    ask you to identify.

Page 36

1    On the first page, 896, who is Joanna Sharp
2    at the time?
3 A  Administrative assistant, Office of the Dean of
4    Students.
5 Q  And this email was June 13, 2016?
6 A  Right.
7 Q  Do you recall at all the name Megan May?
8 A  I don't know that name at all except for my
9    preparation for this custodian deposition.
10 Q  Let's go to 897.  Can you identify again, for
11    the record, Abby Daniels?
12 A  Abby Daniels is the former public records
13    administrator.  So in May of 2016 she would have
14    been there.
15 Q  May 24, who was Joanna Sharp?
16 A  The administrative assistant for the Dean of
17    Students.
18 Q  Let's go to 899 dated May 31.  Again, on that
19    date, who was Joanna Sharp?
20 A  The administrative assistant, Office of Dean of
21    Students.
22 Q  Given where records are held, is there a
23    particular reason that there would be contact
24    with either the administrative assistant through
25    the Dean of Students?

Page 37

1 A  Yeah.  I don't know why -- it looks like
2    Lieutenant May started with Abby Daniels and
3    Joanna Sharp.  I am not sure why she did that.
4 Q  Let me go to PU 902, which is May 31.  On that
5    date, Abby Daniels is what position?
6 A  Public records administrator at the University.
7 Q  In which office?
8 A  In the Office of Legal Counsel.
9 Q  And Joanna Sharp on that date was what position?
10 A  Administrative assistant, Office of Dean of
11    Students.
12 Q  Okay.  Finally, they are marked as Custodian 18.
13      (Custodian Deposition Exhibit 18 was marked
14    for identification.)
15 Q  And it is not Bates stamped, but it was produced
16    recently.
17      The cover letter is June 14 from Foster to
18    May and then there is a -- well, you can see for
19    yourself.  Do you have that in front of you?
20 A  Yeah.  And just -- mine are Bates stamped PU 903
21    through PU 923.
22 Q  Can you give me those numbers again?  I'm sorry.
23 A  Sure.  It is PU 0903 through PU 0923.
24      It begins with an email transmittal from
25    Kaity Heide to Megan May, time stamped June 14,

10 (Pages 34 - 37)