**PL Opp DSJ 2**

# Exhibit A

Page 1

```
 1            UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
 2                   HAMMOND DIVISION
 3
 4   JOHN DOE,                        )
                                      )
 5        Plaintiff,                  ) CIVIL ACTION NUMBER
                                      ) 2:17-cv-33-JPK
 6        vs.                         )
                                      )
 7   PURDUE UNIVERSITY, PURDUE        )
     UNIVERSITY BOARD OF              )
 8   TRUSTEES, MITCHELL ELIAS         )
     DANIELS, JR., in his             )
 9   official capacity as             )
     President of Purdue              )
10   University, ALYSA                )
     CHRISTMAS ROLLOCK, in her        )
11   official capacity at             )
     Purdue University,               )
12   KATHERINE SERMERSHEIM, in        )
     her official capacity at         )
13   Purdue University,               )
                                      )
14        Defendants.                 )
15
16
17       VIDEOCONFERENCE DEPOSITION OF RODNEY HUTTON
18
19       The deposition upon oral examination of
     RODNEY HUTTON, a witness produced and sworn before me,
20   Megan M. Bowman, Notary Public in and for the County of
     Marion, State of Indiana, taken on behalf of the
21   Defendants, at the offices of Stuart & Branigin LLP,
     300 Main Street, Lafayette, Tippecanoe County, Indiana,
22   on Wednesday, May 20, 2020, scheduled to commence at
     8:30 a.m., pursuant to the Federal Rules of Civil
23   Procedure with written notice as to time and place
     thereof.
24
25
```

Page 2

```
     APPEARANCES
 1
 2  FOR THE PLAINTIFF:
 3     Philip A. Byler
        NESENOFF & MILTENBERG LLP
 4      363 Seventh Avenue
        Fifth Floor
 5      New York, NY 10001
        212 736 4500
 6      pbyler@nmllplaw.com
 7
    FOR THE DEFENDANT(S):
 8
        Tyler L. Jones
 9      William P. Kealey
        STUART & BRANIGIN LLP
10      300 Main Street
        Suite 900
11      P O Box 1010
        Lafayette, IN 47902-1010
12      765 423 1561
        tlj@stuartlaw.com
13      wpk@stuartlaw.com
14
    FOR THE U.S. NAVY:
15
        John Matuszak
16      U.S. NAVY - NAVAL SERVICE TRAINING COMMAND
        2601 A Paul Jones Street
17      Building 1
        Great Lakes, IL 60088-2845
18      847 707 5057
        john.matuszak@navy.mil
19
20
21
22
23
24
25
```

Page 3

```
 1      INDEX OF EXAMINATION
 2
    Direct Examination              4
 3  Questions By Tyler L. Jones
    Cross-Examination              66
 4  Questions by Philip A. Byler
 5
        INDEX OF EXHIBITS
 6
 7  Deposition Exhibit No.:
 8  Exhibit 1 - Fact witness approval   7
 9
    Defendant's Exhibit No.:
10
    Exhibit A - Letter from Redlawsk to CO,  18
11      6/14/16
    Exhibit B - Placement of Academic Warning  25
12      letter from Rodney Hutton to
        ▆▆▆▆▆, 1/15/16
13  Exhibit C - Notification of Interim Leave of  29
        Absence letter from Rodney
14      Hutton to ▆▆▆▆▆,
        5/20/16
15  Exhibit D - Scholarship contract  32
    Exhibit E - Fitness Report & Counseling  36
16      Record
    Exhibit F - Notification of Performance  46
17      Review Board 6/16/16
    Exhibit G - PRB Summary & Recommendation,  49
18      8/10/16
    Exhibit H - Appointment Termination  56
19      Disenrollment Authorization
    Exhibit I - NROTC Student Disenrollment  52
20      Recommendation
    Exhibit L - NROTC Concept of Honor  61
21  Exhibit M - Subject: Thoughts on MIDN 4/C  63
        ▆▆▆▆▆, NSTC-0184
22
23  Previously marked Exhibit No.:
24  Exhibit 1 - Letter discharging ▆▆▆▆▆  64
        ▆▆▆▆▆, 8/20/16
25
```

Page 4

1 (Time noted: 8:36 a.m.)
2          RODNEY HUTTON,
3 having been duly sworn to tell the truth, the whole
4 truth, and nothing but the truth relating to said
5 matter, was examined and testified as follows:
6
7 DIRECT EXAMINATION
8  QUESTIONS BY TYLER L. JONES:
9 Q  Good morning, sir.
10 A  Good morning.
11 Q  My name's Tyler Jones. I work for Stuart &
12    Branigin. My partner Bill Kealey is also here. We
13    represent the defendants Purdue University and
14    several other individually named parties.
15       For the record, could you please state your
16    full name?
17 A  My name is Rodney Earl Hutton.
18 Q  Thank you. And how would you like me to address
19    you?
20 A  Rod is fine.
21 Q  Okay. Thank you. Have you ever given a deposition
22    before?
23 A  No.
24 Q  Rod, I'm just going to go over some basic ground
25    rules so that this goes as easily as possible. A

Page 5

1    deposition is basically -- I'm sure you've talked
2    to your attorney about it. It's just the chance
3    for parties to ask you questions.
4       I'd ask that you give me "yeses" or "noes" as
5    opposed to head shakes or head nods so that when
6    the court reporter, who's making a record of
7    everything, is typing it down as clear what you're
8    saying.
9 A  I understand.
10 Q  Thank you. I'd ask especially because we're doing
11    this remotely that we not interrupt each other.
12    I'm going to try my darndest to let you say your
13    answer even though I may know what you're going to
14    say. I'd ask similarly that you let me finish my
15    question even if you know where -- what I'm going
16    with it.
17       Is that fair?
18 A  I understand.
19 Q  Thank you. I'm going to assume that you understood
20    a question if you answer, but if you don't
21    understand a question, I ask you let me know so I
22    can rephrase it or make it more clear.
23       Is that fair?
24 A  I understand.
25 Q  Thank you. Similarly, this is not a prison. If

Page 6

1  you need a bathroom break, please let me know, and
2  we'll open it up so you can relieve yourself.
3 A  Thank you.
4 Q  And then, again, this case is proceeding under
5  pseudonym, so I ask that you not reveal the
6  identities of the individuals we talk about today.
7    Nevertheless, we are here for a matter called
8  John Doe v. Purdue, et al. We're going to be
9  discussing two individuals in particular. One,
10  ▮▮▮▮▮▮▮ and one, ▮▮▮▮▮▮▮.
11   I'd ask that you just confirm that you won't
12  disclose their identity absent a court order.
13 A  Are you saying outside of this or during --
14  recognizing that you just used their names?
15 Q  Correct, yes. Everything that is said in here is
16  confidential.
17 A  I understand.
18 Q  Thank you, sir. Just some background, if I
19  reference the time in question to this lawsuit, I'm
20  referring to August 2015 to August 2016.
21    Is that fair?
22 A  Yes.
23 Q  Okay. Thank you. For the record, can you please
24  state your position and title at the time in
25  question?

Page 7

1    MR. MATUSZAK: Mr. Jones, before you begin, can
2  we also admit the letter approving -- a Navy letter
3  approving this deposition?
4    MR. JONES: Yes. And I apologize, John. Go
5  ahead.
6    MR. MATUSZAK: I'd like to admit as Exhibit 1
7  the letter approving this Navy's -- that this --
8  I'm sorry. I admit as Exhibit 1 the letter from
9  the Navy approving this deposition.
10   (Deposition Exhibit 1 was marked for
11  identification.)
12   MR. JONES: Anything else you need to put into
13  the record, John?
14   MR. MATUSZAK: I'm sorry?
15   MR. JONES: Is there anything else you need to
16  put into the record?
17   MR. MATUSZAK: No, that's all right now.
18   MR. JONES: Thank you.
19 BY MR. JONES:
20 Q  Rod, for the record, during the time in question
21  with the Purdue NROTC, can you please state your
22  position and title?
23 A  Commanding Officer Purdue Navy ROTC.
24 Q  Thank you. What's a good mailing address for you,
25  sir?

Page 8

1 A  2129 Sunrise Avenue, Lafayette, Indiana, 47904.
2 Q  Thank you, sir. Is there a good contact email for
3  you?
4 A  H-U-T-T-O-N-R-E- @yahoo.com
5 Q  Thank you, sir. Very briefly, can you give me your
6  educational background?
7 A  I have a bachelor's degree from the University of
8  Minnesota. Master's degrees from the Naval
9  Postgraduate School and Faith Bible Seminary.
10 Q  Thank you, sir. And what is the year of your
11  graduating with a bachelor's degree?
12 A  1988.
13 Q  Thank you, sir. Can you tell me -- you said you
14  were the commanding officer during the time in
15  question?
16 A  Yes.
17 Q  What were your responsibilities as the commanding
18  officer?
19 A  I held overall responsibility for oversight and
20  training of staff and midshipmen.
21 Q  For the Purdue NROTC?
22 A  For Purdue NROTC.
23 Q  Okay. Did that responsibility branch out over any
24  other universities or NROTC units?
25 A  No.

Page 9

1 Q  Okay. Thank you. How long have you served with
2  the military in some capacity?
3 A  I served 30 years.
4 Q  Thank you, sir. And is it correct to say that
5  you've retired?
6 A  Yes.
7 Q  And what are you currently doing?
8 A  I am the pastor of Northend Community Ministries
9  with Faith Church in Lafayette, Indiana.
10 Q  Thank you, sir. Can you, for the record, explain
11  to folks like me who haven't been in the military
12  what the command structure is like at the Purdue
13  NROTC starting with yourself?
14 A  Purdue NROTC is set up with a single commanding
15  officer. He -- I had one executive officer and
16  several staff members representing -- providing the
17  training of the students.
18 Q  Understood, sir. And at the time in question, who
19  was immediately beneath you or subordinate to you?
20 A  My executive officer was Craig Remaly.
21 Q  Thank you, sir. During the time in question, what
22  rules of conduct were midshipmen required to adhere
23  to in the NROTC?
24 A  Can you be more specific? As that is a very broad
25  question.

Page 14

1 A In this case -- or in the described scenario that
2     you mentioned, based on my dual requirements as a
3     -- as under Purdue University Title IX
4     requirements, that investigation was referred to
5     Purdue University.
6 Q Okay. Thank you. Are you familiar with someone by
7     the name of Craig Remaly -- or Remaly?
8 A Yes.
9 Q Who was he -- or who is he?
10 A He was my executive officer.
11 Q Thank you. As executive officer, what were his
12    responsibilities during the time in question?
13 A As executive officer, he was responsible to me for
14    oversight and training of staff and midshipmen.
15 Q Are you familiar with someone by the name of Megan
16    Redlawsk or perhaps Megan Chester?
17 A Yes.
18 Q Who is she?
19 A She was in a staff lieutenant position.
20 Q With the Purdue NROTC?
21 A Yes.
22 Q Do you know what her responsibilities would have
23    been during the time in question?
24 A During the time in question, she was a company
25    officer responsible to me for a training of a

Page 15

1     portion of the midshipmen and as an instructor.
2 Q Thank you. Are you familiar with someone by the
3     name of Adam Sheppard?
4 A Yes.
5 Q Who is he?
6 A Adam was also a staff lieutenant.
7 Q Would he have had the same responsibilities as
8     Megan?
9 A At this time, Adam was assigned as the battalion
10    officer.
11       Do you want to know those responsibilities as
12    well?
13 Q Yes, sir.
14 A His responsibilities were for the training of the
15    midshipmen battalion leadership.
16 Q Are midshipmen divided into battalions?
17 A Purdue University, all midshipmen are in one
18    battalion, separated into four companies.
19 Q Understood. So there's a single battalion at
20    Purdue University and then that battalion has four
21    subsets? Is that --
22 A Yes.
23 Q Thank you. Are those four companies further
24    divided into anything else?
25 A Yes. They -- within, they would be divided into

Page 16

1     platoons and squads.
2 Q Understood. To your best of your recollection, how
3     many midshipmen would be in a platoon or a squad at
4     the time?
5 A I do not recall.
6 Q Thank you. Are you familiar with someone by the
7     name of Kyle Willstatter?
8 A Yes.
9 Q Who is he?
10 A Kyle was a staff lieutenant in the role of company
11    officer.
12 Q Thank you. Would he have had the same
13    responsibilities as Megan?
14 A Yes.
15 Q Thank you. During the time in question, did the
16    NROTC at Purdue have rules against midshipmen
17    sexually harassing or sexually assaulting another
18    midshipman?
19 A Yes.
20 Q Do you know the name of those rules?
21 A I don't recall specifically.
22 Q If the NROTC received, during the time in question,
23    an allegation that one midshipman had sexually
24    assaulted another, are they obligated to forward
25    that to the university?

Page 17

1 A Yes.
2 Q If the allegations as described, one midshipman
3     sexually assaulting or harassing another are
4     substantiated whether by the NROTC or Purdue, what
5     are potential consequences that they might face
6     from the NROTC?
7       MR. BYLER: Objection to the form. You're
8     including some possibilities that I don't think
9     conform thus far to the witness's testimony.
10      MR. MATUSZAK: I'm going to object too. It
11    calls for a legal conclusion. The witness is not
12    here to provide legal testimony or a legal opinion.
13      MR. JONES: Well, my question was merely asking
14    if that midshipman would ultimately face
15    consequences from the NROT (sic) such as
16    disenrollment or other such things. I can clarify
17    it out though a little bit later on. That's fine.
18      MR. MATUSZAK: That's a hypothetical question.
19    You really can't address hypothetical questions
20    here.
21      MR. JONES: Well, I'll rephrase it here in a
22    little bit.
23 BY MR. JONES:
24 Q I direct everyone to what's marked as Exhibit A.
25    It's -- the Bates number for everyone's reference

|  | Page 18 |  | Page 20 |
|---|---|---|---|
| 1 | in the first page should be NSTC-0168. I'll give | 1 | sexually assaulted her among other things? |
| 2 | everyone a chance to get that open if they don't | 2 A | Yes. |
| 3 | have it already. | 3 Q | To the best of your knowledge, did Megan Redlawsk |
| 4 | (Defendant's Exhibit A was marked | 4 | investigate whether or not ▓▓▓▓ sexually |
| 5 | for identification.) | 5 | assaulted, among other things, ▓▓▓▓? |
| 6 | MR. BYLER: Tyler, is this NSTC-168 through | 6 | MR. BYLER: Objection to form. Striking |
| 7 | NSTC-184? Because that's what I have at my end. | 7 | ambiguous. The word "investigate" can mean very |
| 8 | MR. JONES: Phil, this should be NSTC-0168 | 8 | different things and the witness has already |
| 9 | through NSTC-195. | 9 | testified that the -- this case was referred to -- |
| 10 | MR. BYLER: Okay, -195. Thank you. | 10 | MR. JONES: All you need to say is object to |
| 11 | MR. JONES: I'm assuming that everyone has this | 11 | form, Phil. That's all you need to say. Your |
| 12 | document or has the ability to open it. | 12 | objection's been preserved. |
| 13 BY MR. JONES: | | 13 A | I would like to ask: Are you asking what actions |
| 14 Q | Rod, have you had an chance to inspect this | 14 | did Lieutenant Redlawsk take to investigate? |
| 15 | document? | 15 Q | Sure. We can start there. |
| 16 A | Briefly. | 16 A | I directed her to utilize the university |
| 17 Q | Okay. Are you familiar with this document? | 17 | investigation for determinations of what occurred. |
| 18 A | I am. | 18 Q | Did you order her to make an independent |
| 19 Q | Can you please identify the document for the | 19 | determination whether or not this had occurred? |
| 20 | record? | 20 | And by "this" I mean, the allegations raised by |
| 21 A | The subject line is "Preliminary Inquiry | 21 | ▓▓▓▓. |
| 22 | Recommendations Surrounding Allegation of Sexual | 22 A | No. |
| 23 | Assault Made Against Midshipman Fourth Class | 23 Q | What did you -- I'll rephrase. |
| 24 | ▓▓▓▓." | 24 | Do you see in paragraph 2 in front of you, sir, |
| 25 Q | And this is addressed to Commanding Officer of | 25 | at the very end, it says, "Conduct -- Section 3-19: |

|  | Page 19 |  | Page 21 |
|---|---|---|---|
| 1 | Naval Reserve Officers Training Corps Unit, Purdue | 1 | Conduct/Aptitude Standards of Midshipman |
| 2 | University. | 2 | Performance, subsection 2.a Major Offenses, item |
| 3 | At that time, would that have been you or | 3 | (11) Sexual harassment/assault"? |
| 4 | Commander Remaly? | 4 A | I see that. |
| 5 A | That was me. | 5 Q | Earlier you had said you could not remember the |
| 6 Q | Okay. So you have seen this document prior to | 6 | names of some of the particular rules. Would this |
| 7 | today? | 7 | have been one of the rules that would've applied to |
| 8 A | I have. | 8 | ▓▓▓▓ during the time in question? |
| 9 Q | Okay. Sir, can you explain to me, if you know, why | 9 A | Yes. |
| 10 | this document was created? | 10 Q | Why did you direct Lieutenant Redlawsk to use the |
| 11 A | Lieutenant Redlawsk was assigned as a preliminary | 11 | university investigation? |
| 12 | inquiry officer. And this is her report back to me | 12 A | Based on our dual reporting requirements with the |
| 13 | on her actions. | 13 | university and the Navy. |
| 14 Q | Thank you. What is a "preliminary inquiry | 14 Q | When you say "dual reporting requirements," for the |
| 15 | officer"? | 15 | record, can you explain what you mean? |
| 16 A | The preliminary inquiry officer is the individual | 16 A | As an -- I believe the correct terminology is |
| 17 | assigned by the commanding officer to look into the | 17 | "associate professor." I had Title IX reporting |
| 18 | facts associated with an allegation. | 18 | responsibilities in addition to my Naval reporting |
| 19 Q | Okay. Would this be an allegation that's raised to | 19 | responsibilities. |
| 20 | the NROTC or an allegation that's raised to the | 20 Q | So if I understand you right, you are stating that |
| 21 | university? | 21 | you had an obligation to notify both Purdue and the |
| 22 A | Specifically to the NROTC. | 22 | Navy of the allegations; is that correct? |
| 23 Q | Thank you. To the best of your knowledge, was this | 23 A | Yes. |
| 24 | document, Exhibit A in front of you, drafted | 24 Q | Okay. What did you do when you got this report? |
| 25 | because ▓▓▓▓ alleged that ▓▓▓▓ | 25 | Did you take any action? |

Page 22

1 A Are you speaking specifically of the report Exhibit
2 A in front of me?
3 Q Yes, sir.
4 A Based on this, I reviewed all elements of the
5 report, reviewed Naval requirements, and carried
6 out the Naval requirements.
7 Q What Naval requirements did you carry out?
8 A The disenrollment of the student.
9 Q And I don't want to mischaracterize your testimony.
10 I just want clarification.
11 When you say you disenrolled the student, you
12 mean you disenrolled him because you determined
13 that he sexually harassed and assaulted ▓▓▓
14 ▓▓▓?
15 A No.
16 Q What do you mean then?
17 A Because the student was suspended from the
18 university upon completion of that process, the
19 NROTC requirements required that I disenroll the
20 student from the program.
21 Q Okay. My question, Mr. Hutton, if you were going
22 to disenroll Mr. ▓▓▓ for being less than a
23 full-time student at Purdue, why did you have
24 Lieutenant Redlawsk look into the allegations of
25 ▓▓▓?

Page 23

1 MR. BYLER: Objection to form.
2 Q You can answer.
3 A The initial inquiry and investigation was based on
4 the reports made to me. The actions taken as a
5 result were based on the student's status.
6 Q At Purdue -- well, let me come back to that in a
7 little bit.
8 Under NROTC rules at the time, including the
9 rule I identified to you here in paragraph 2, is it
10 correct that Midshipman ▓▓▓ could be disenrolled
11 from Purdue if these charges were substantiated by
12 the NROTC?
13 MR. BYLER: Objection to form.
14 MR. MATUSZAK: Objection. It's -- object to
15 the question. You asked whether he could be
16 disenrolled from it too. He's here to speak about
17 the Navy's involvement -- I'm sorry -- about
18 Mr. ▓▓▓'s participation in the program, not
19 whether he can be disenrolled from Purdue.
20 MR. JONES: And that was a misspoke -- misspeak
21 on my part. I meant, disenrolled from the NROTC.
22 MR. MATUSZAK: Can you please repeat the
23 question?
24 BY MR. JONES:
25 Q Is it correct that under rule Section 3-19:

Page 24

1 Conduct/Aptitude Standards of Midshipman
2 Performance, subsection 2.a Major Offenses, Item
3 (11) Sexual harassment/assault, during the time in
4 question, that a midshipman could be removed from
5 the NROTC for sexually assaulting or harassing
6 another midshipman?
7 A Are you asking me --
8 MR. BYLER: Object -- what's the question?
9 A -- if the Navy found the allegation?
10 Q Let's not talk over each other. Can you please
11 repeat your question, Mr. Hutton?
12 A I'm asking: Are you asking me specific to
13 Mr. ▓▓▓, or are you asking me a hypothetical
14 question about guilt -- a guilty party -- or a
15 party found guilty?
16 Q I'm asking you as to Mr. ▓▓▓.
17 A I cannot speculate because I did not make a
18 determination in that specific case.
19 Q Okay. Are you familiar with the concept called
20 "academic warning" during the time in question?
21 A In regards to the Naval ROTC program?
22 Q Correct.
23 A Yes.
24 Q What does that mean, "academic warning"?
25 A Based on a student's academics and their status in

Page 25

1 regards to academic standards, the unit had a
2 process of providing students additional assistance
3 and a warning in order -- when they were below the
4 standard in order to assist with regaining that
5 standard.
6 Q When you say "the standard," do you mean NROTC
7 standard?
8 A Yes.
9 Q You said "additional assistance." What additional
10 assistance would be provided?
11 A Assistance would include formal study requirements,
12 meeting with staff personnel or others as deemed
13 appropriate and necessary.
14 Q Thank you. I would ask everyone to look at Exhibit
15 B.
16 (Defendant's Exhibit B was marked for
17 identification.)
18 Q For identification purposes, the subject line is
19 "Placement on Academic Warning." It is Bates
20 number NSTC-0156 through -0157. I'll give everyone
21 a moment to open to that and turn to it. And,
22 Mr. Hutton, please take a moment to review it if
23 you haven't already.
24 Have you had a moment to review it?
25 A Yes.

Page 30

1 placed on interim leave of absence.
2 Q So basically just saying he got your letter?
3 A Yes.
4 Q Was Midshipman ▊, in fact, placed on interim
5    leave of absence on May 20, 2016?
6 A Yes.
7 Q At that time, were his tuitions and -- let me
8    rephrase the question.
9      At that time pending the result of the
10    Performance Review Board for his academic benefits,
11    including tuition payment and fees by the NROTC
12    suspended?
13 A Yes.
14 Q And, sir, when the letter says, "You should plan to
15    pay tuition fees for the fall of 2016 semester," is
16    this because if the PRB determines that the GPA
17    requirements here were met that the student would
18    be responsibile for those academic benefits?
19 A Yes.
20 Q Thank, you. Sir, I'll note that in line 3 -- and,
21    of course, that's redacted. I'm not asking about
22    that redacted information. What I do want to know,
23    why did you refer ▊ to A.P. Sheppard?
24 A I do not recall specifically the connection between
25    the two.

Page 31

1 Q And for the record, is A.P. Sheppard also Adam
2    Sheppard?
3 A Yes.
4 Q The Adam Sheppard you earlier identified in the
5    deposition?
6 A Yes.
7 Q Thank you. Sir, are you aware of something called
8    "National Scholarship" for the NROTC?
9 A Yes.
10 Q What is the National Scholarship?
11 A The National Scholarship is the program under which
12    a student applies for entry into the NROTC program,
13    which also pays for tuition fees and other
14    benefits.
15 Q Understood. Thank you. Is that a scholarship that
16    goes to any NROTC midshipmen?
17 A No.
18 Q Does an applicant have to specifically apply and
19    qualify for that scholarship?
20 A Yes.
21 Q Do you know if ▊ had the National
22    Scholarship?
23 A I believe so.
24 Q Are the terms of that scholarship sent out by the
25    NROTC?

Page 32

1 A The terms of the scholarship are sent out by the
2    Navy ROTC program above Purdue.
3 Q Understood. The national program you mean?
4 A Yes.
5 Q Referring to that then, I would direct everyone's
6    attention to Exhibit D.
7      (Defendant's Exhibit D was marked for
8    identification.)
9 Q Of course, Rod, please take a moment to review this
10    while everyone's getting this open.
11      For the record, this is Bates number NSTC-0055
12    through NSTC-0060.
13 A Ready.
14 Q Have you had a moment to review this, sir?
15 A Yes.
16 Q Are you familiar with this document?
17 A I am.
18 Q Can you please identify this document for the
19    record?
20 A This is form NSTC, Naval Service Training Command
21    1533/135. It is the contract between the
22    Department of the Navy and the student receiving
23    this scholarship.
24 Q And by the "scholarship," do you mean the National
25    Scholarship?

Page 33

1 A Yes.
2 Q Before we get into this, I would turn to the very
3    last page, sir. Will you confirm if that is your
4    signature on the last page?
5 A It is.
6 Q And what's the date of that signature?
7 A September 8, 2015.
8 Q Thank you, sir. Sir, I would have you briefly turn
9    to the second page. This will be specifically
10    paragraph 3, subparagraph B. It should say
11    "Continuing Eligibility for Scholarship Benefits."
12      Let me know when you've gotten there.
13 A I'm there.
14 Q Okay. Sir, is it correct that to continue
15    receiving scholarship benefits in NROTC, for
16    specifically ▊ to continue receiving
17    scholarship benefits, had to be enrolled as a
18    full-time student at Purdue University?
19 A Yes.
20 Q Is it correct that he had to be in good standing
21    with Purdue University?
22 A Yes.
23 Q Is it correct that in order to maintain his
24    scholarship with NROTC, ▊ had to
25    remain qualified for military service as an officer

Connor Reporting
A Veritext Company
800-554-3376

Page 34

1  in meeting all applicable requirements?
2  A  Yes.
3  Q  Is it also true that in order to be qualified for
4     the scholarship with the NROTC, ▮▮▮▮▮ had
5     to not be on a leave of absence from the NROTC and
6     remain in good standing with the unit and fulfill
7     all NROTC program requirements including those set
8     forth in the regulation?
9  A  Yes.
10 Q  Is it also correct that in order to maintain the
11    NROTC scholarship, a midshipman -- or specifically
12    ▮▮▮▮▮, had to be -- not be on a leave of
13    absence for the first 45 days of each academic
14    term?
15 A  Yes.
16 Q  Was that a "yes"?
17 A  Yes.
18 Q  I'm sorry. Sir, if we go back to paragraph B,
19    subparagraph 4 -- this is on page 2 of this
20    document -- when it says, "Remain qualified for
21    military service as an officer," what does that
22    mean, if you know?
23 A  Can you be more specific? That's a very broad
24    question.
25 Q  My question is merely, if you know, what does it

Page 35

1  mean to be qualified as a military service -- or a
2  military service as an officer?
3  A  To meet the requirements of the NROTC program as
4     set forth by Naval Service Training Command.
5  Q  Understood. And what you just said there, "Meet
6     the requirements of Naval Service Training
7     Command," to your knowledge is that what it means
8     when it says, "Meeting all applicable
9     requirements"?
10 A  Yes.
11 Q  Okay. What does it mean, if you know, to be in
12    good standing with the unit?
13 A  To meet all requirements.
14 Q  The same requirements you had just mentioned a
15    second ago?
16 A  Yes.
17 Q  Thank you. So we're done with that. Sir, do you
18    have any recollections of ▮▮▮▮▮?
19 A  Not detailed.
20 Q  Did you ever meet him?
21 A  Yes.
22 Q  Do you recall when you met him?
23 A  I would have met him as part of student orientation
24    when he entered the program.
25 Q  Would you have met with him -- or did you meet with

Page 36

1  him as a process of his disenrollment from the
2  NROTC?
3  A  Yes.
4  Q  Can you tell me why you would have met with him
5     prior to disenrolling him?
6  A  I would have met with him to inform him that we
7     were looking into the allegations in question.
8  Q  Do you recall if he said anything when you informed
9     him of that?
10 A  He did, but I cannot recall specifically what.
11 Q  Fair enough. Do you have any general recollection
12    of what he said?
13 A  No.
14 Q  Fair enough. Do you have any recollections of how
15    ▮▮▮▮▮ performed in the NROTC? And by
16    "performed," I'm referring to program requirements
17    in the NROTC.
18 A  Specifically based on the documents that we have
19    reviewed, he did not meet all requirements.
20 Q  Understood. I'd ask if you pull out Exhibit E
21    there.
22    (Defendant's Exhibit E was marked for
23    identification.)
24 Q  And for Counsel's record, this should be -- it's a
25    little -- it's a little cut at the Bates number,

Page 37

1  but it should be NSTC-0166 for everyone's
2  identification.
3     Rod, if you'd take a moment to review this at
4     your leisure.
5  A  Okay.
6  Q  Sir, are you familiar with this document?
7  A  I am.
8  Q  Have you ever seen this document before?
9  A  Yes.
10 Q  Can you please identify it for the record?
11 A  This is the second page of a fitness report and
12    counseling record.
13 Q  Can you explain to laypersons like me what a
14    fitness report and counseling record is?
15 A  This is the formal -- this is the formal counseling
16    record to indicate the performance of an
17    individual.
18 Q  You mean an individual in the NROTC?
19 A  Yes.
20 Q  And what do you mean by "performance"?
21 A  His status in meeting program requirements.
22 Q  Understood. Sir, is that your signature at the
23    very bottom of this?
24 A  It is.
25 Q  What's the date of your signature?

Page 54

```
1    MR. MATUSZAK: It does call for a legal
2    conclusion, the last question. I couldn't get my
3    mute button off. But so I'm objecting to the
4    question as it calls for a legal conclusion as to
5    who the final disenrollment party is. But for the
6    record, it's the secondary enrollment.
7       MR. JONES: Understood. Thank you.
8  BY MR. JONES:
9  Q  Sir, I want you to turn to the second page if you
10    could?
11 A  Yes.
12 Q  You'll see it says at the very top a box that says,
13    "Evaluate Future Acceptability for Officer
14    Programs."
15    Do you see that?
16 A  Yes.
17 Q  And you'll see there are five boxes there and they
18    range from "highly recommend" to "definitely NOT"
19    -- "not" in all capital letters -- "recommend."
20    And then in parentheticals, "Must provide
21    justification."
22    Do you see that?
23 A  Yes.
24 Q  What does this box refer to?
25 A  That is my assessment of whether he should be later
```

Page 55

```
1     brought into an officer program.
2  Q  Understood. If you know, why do you fill this out?
3  A  I do not recall specifically.
4  Q  Okay. Do you know why you checked the box
5     "definitely NOT recommended"?
6  A  That is my assessment of the student.
7  Q  How did you come to that assessment?
8  A  Based on my observation of the student.
9  Q  What observations led you to check that box?
10 A  Discussions and reviews of events and his
11    performance.
12 Q  Does that include a determination that he sexually
13    assaulted         ?
14    MR. BYLER: Objection.
15 Q  You can answer.
16 A  I do not recall.
17 Q  Thank you. Do you know if you would have written
18    notes or had any paper notes about how you came to
19    that decision?
20 A  I do not recall.
21 Q  Thank you. And just so I understand this record
22    better, when it says, "Must provide justification,"
23    what does it mean by that, if you know?
24 A  That I have to justify that recommendation.
25 Q  Okay. Sir, if you could pull out what's marked as
```

Page 56

```
1     Exhibit K out of your binder there. I'll introduce
2     it into the record as I believe we're on Exhibit H
3     now. I may not do my -- be doing my alphabet
4     correctly. But for identification purposes it's
5     NSTC-0001 through NSTC-0004.
6        (Defendant's Exhibit H was marked for
7     identification.)
8  Q  Mr. Hutton, would you please review this and
9     indicate when you've had a chance.
10 A  Ready.
11 Q  Thank you. Have you seen this before?
12 A  I have.
13 Q  Are you familiar with it?
14 A  I am.
15 Q  Can you please identify it for the record?
16 A  It is the Appointment Termination Disenrollment
17    Authorization.
18 Q  Thank you. For Mr.      you mean?
19 A  For Mr.     .
20 Q  Thank you. I'm unfamiliar with R.K. Wood, Director
21    of Officer Development.
22    Who is he?
23 A  R.K. Wood, Director of Officer Development was at
24    Naval Service Training Command.
25 Q  Understood. And at the bottom of the first page is
```

Page 57

```
1     that your signature?
2  A  It is.
3  Q  What's the date of that signature?
4  A  November 4th, 2016.
5  Q  Would you also please look at the signatures on
6     page 2 and page 4 for this document and indicate if
7     those are your signatures?
8  A  They are.
9  Q  Understood. Am I understanding correctly that this
10    is the form that formally disenrolled Mr.      from
11    NROTC?
12 A  This is the letter from Naval Service Training
13    Command to the individual in this case, Midshipman
14    Fourth Class     , that they are to be disenrolled,
15    yes.
16 Q  Understood. And, sir, I just want to note page 3
17    and 4 appears to be a letter signed by you. Is
18    this a -- well, let me rephrase.
19    Is it true -- please turn to the last page,
20    page 4. You'll see number 7 -- paragraph number 7
21    says, "Mitigating factors?"
22    Is it true that you found no mitigating factors
23    for Mr.     ?
24 A  Regarding disenrollment?
25 Q  Correct.
```

15 (Pages 54 - 57)

Connor Reporting
A Veritext Company
800-554-3376