**PL Opp DSJ 12**

# Exhibit F

Page 1

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF INDIANA
 2                 INDIANAPOLIS DIVISION
 3                Case No. 2L17-cv-33-JPK
 4
     JOHN DOE,                                )
 5                                            )
              Plaintiff,                      )
 6                                            )
                -vs-                          )
 7                                            )
     PURDUE UNIVERSITY, PURDUE                )
 8   UNIVERSITY BOARD OF TRUSTEES,            )
     MITCHELL ELIA DANIELS, JR., in           )
 9   his official capacity as                 )
     President of Purdue University,          )
10   ALYSA CHRISTMAS ROLLOCK, in her          )
     official capacity at Purdue              )
11   University, KATHERINE                    )
     SERMERSHEIM, in her official             )
12   capacity at Purdue University,           )
                                              )
13            Defendants.                     )
14
15        VIDEOCONFERENCE DEPOSITION OF CRAIG REMALY
16
           The videoconference deposition upon oral
17   examination of CRAIG REMALY, a witness produced
     and sworn before me, Craig Williams, RPR, CMRS, a
18   Notary Public in and for the County of Marion,
     State of Indiana, taken on behalf of the
19   Defendants, at the offices of Stuart & Branigin,
     LLP, 300 Main Street, Suite 900, Lafayette,
20   Tippecanoe County, Indiana, on the 21st day of May,
     2020, at 9:00 a.m., pursuant to the Federal Rules
21   of Civil Procedure with written notice as to time
     and place thereof.
22
23
24
25
```

Page 2

```
 1              APPEARANCES
 2
 3   FOR THE PLAINTIFF:
 4     Philip A. Byler
       NESENOFF & MILTENBERG
 5     363 Seventh Avenue, Fifth Floor
       New York, NY 10001
 6     212 736 4500
       pbyler@nmllplaw.com
 7
     FOR THE DEFENDANTS:
 8
       William P. Kealey
 9     Tyler L. Jones
       STUART & BRANIGIN LLP
10     300 Main Street, Suite 900
       P O Box 1010
11     Lafayette, IN 47902-1010
       765 423 1561
12     wpk@stuartlaw.com
       tlj@stuartlaw.com
13
     FOR THE DEPONENT:
14
       John Matuszak
15     Counsel at U S Navy -
       Naval Service Training Command
16     2601 A Paul Jones Street
       Building 1
17     Great Lakes, IL 60088-2845
       847 707 5057
18     john.matuszak@navy.mil
19
20
21
22
23
24
25
```

Page 3

```
 1          INDEX OF EXAMINATION
 2   DIRECT EXAMINATION ............... 4
       Questions by Tyler L. Jones
 3   CROSS-EXAMINATION ................ 46
       Questions by Philip A. Byler
 4   REDIRECT EXAMINATION ............. 62
       Questions by Tyler L. Jones
 5
 6          INDEX OF EXHIBITS
 7   Navy Exhibit:
 8   Exhibit 1 - Fact Witness Approval Letter ....... 5
 9   Defendants' Deposition Exhibits:
10   Exhibit A - NSTC-0168-0195 ............ 19
     Exhibit B - NSTC-0042 ................. 26
11   Exhibit C - NSTC-0015-0016, NSTC-0159-0160 .....27
     Exhibit D - NSTC-0140-0142 ............ 30
12   Exhibit E - NSTC-0011-0012 ............ 35
13   Previously Marked Exhibits:
14   Exhibit 1 - NSTC-0001-0004 ............ 50
     Exhibit 5 - NTSC-0020-0050 ............ 59
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1              CRAIG REMALY,
 2   having been duly sworn to tell the truth, the whole
 3   truth, and nothing but the truth relating to said
 4   matter was examined and testified as follows:
 5   DIRECT EXAMINATION,
 6     QUESTIONS BY TYLER L. JONES:
 7 Q  Good, morning, sir. For the record, my name is
 8   Tyler Jones, I'm an attorney at Stuart &
 9   Branigin. My partner Bill Kealey is also here.
10   We represent Purdue University and a couple
11   other named defendants.
12      For the record, I would note we provided
13   you with a check under the Federal Rules
14   pursuant to your mileage and some other
15   incidentals. You have given that check back to
16   me.
17 A  That's correct.
18 Q  And so you do not have that check.
19      Mr. Matuszak, would you like to put in the
20   Navy's letter?
21      MR. MATUSZAK: Right. This deposition is
22   being conducted pursuant to the Touhy
23   Regulations. The Navy has approved this
24   deposition and that approval letter is part of
25   the record.
```

Page 5

```
 1      (Deposition Exhibit 1 was marked for
 2   identification.)
 3 Q  Sir, could you, please, state your full name for
 4   the record.
 5 A  It's Craig Michael Remaly.
 6 Q  Thank you. Have you ever given a deposition
 7   before?
 8 A  I have not.
 9 Q  I'm just going to go over a brief summary. I'm
10   sure you've already spoken a little bit with
11   Mr. Matuszak about it. A deposition is just a
12   chance for both parties to ask you questions
13   about what you may or may not know about the
14   case. I'd ask, because we're making a record
15   here, that you give affirmatives or negatives,
16   yeses and noes as opposed to head shakes or head
17   nods.
18 A  Okay. Yes.
19 Q  Very good.
20      Because we are trying to do this over
21   technology, I'd ask that even if you know the
22   question I'm asking you, you let me finish the
23   question for the record. And even if I know the
24   answer you're trying to give, I'm going to be
25   quiet and let you finish your answer.
```

Page 26

1 the course of her -- as the PIO, or Lieutenant
2 Willstatter as his company officer. And whether
3 they asked for it or ordered it, I don't know.
4     (Deposition Exhibit B was marked for
5 identification.)
6 Q Understood. Thank you, sir.
7     If you could briefly, sir, the next
8 exhibit, Exhibit B in your folder there. For
9 the record, this is NSTC-0042. Please take a
10 moment to review that, sir, and let me know when
11 you're ready.
12 A I'm familiar with it.
13 Q Have you seen this document before, sir?
14 A Probably. I don't have any direct knowledge of
15 it, seeing it, but I'm sure I did.
16 Q Is this a standard release provided by the NROTC
17 to a midshipman?
18     MR. MATUSZAK: I'm going to object to the
19 question as to form. Can you clarify the
20 question?
21     MR. JONES: Sure.
22 Q This is a form document the NROTC uses at Purdue
23 for the release of information?
24 A Are you asking if every student signs this
25 particular form?

Page 27

1 Q Yes, sir.
2 A No, every student does not sign it. We do have
3 a standard release that the students sign,
4 mainly so we can get their grades, but also any
5 disciplinary.
6     Purdue at the time requested we provide
7 them with that standard form, and they requested
8 one that said specifically in this corresponding
9 case.
10 Q Understood, sir.
11     Just to confirm I heard you right earlier,
12 you said you don't have a recollection whether
13 someone gave Midshipman ▮ an order to fill
14 this out or whether or not he chose to?
15 A That's correct.
16     (Deposition Exhibit C was marked for
17 identification.)
18 Q Thank you.
19     Sir, I would have you turn to the next
20 document it looks like you already have. This
21 is Exhibit C. It is Bates No. NSTC-0015 through
22 0016, and then also at the back are two emails
23 that are NSTC-0159 through 0160. I'd ask you to
24 take a moment to review these, sir, and let me
25 know whether you're ready to proceed.

Page 28

1 A Okay, I'm ready to proceed.
2 Q Thank you. Sir, starting with the first two
3 pages there, it looks like a document from the
4 Navy. Have you seen this document before?
5 A Again, I have no specific recollection, but I'm
6 sure I have.
7 Q Can you identify for the record if you know what
8 it is?
9 A This is the notification of the Performance
10 Review Board to Midshipman ▮.
11 Q Understood.
12     Then if we turn to the back two pages, have
13 you seen any of these emails before?
14 A Yes, I have. My name is on it, so yes.
15 Q Just confirming that's you, sir.
16     In fact, you're cc'd on the first email and
17 it looks like to one of the emails on the second
18 page. I want to ask you some follow-up here.
19 Is it your understanding that Midshipman ▮'s
20 PRB was initially scheduled for June 23rd, 2016?
21 A Yes. Again, that's from paragraph 1 in the
22 PRB notification.
23 Q Is it your understanding that Midshipman ▮
24 initially requested that this be stayed pending
25 his appeal to Purdue's Dean's Office?

Page 29

1 A Yes.
2 Q Is there a reason that Kyle Willstatter was
3 giving this information to Midshipman ▮, or
4 is this something that lieutenants normally do?
5 A Yes.
6 Q Is it because he was the company officer?
7 A Yes.
8 Q Understood.
9     Is it a standard operating procedure at
10 that time for the NROTC or the midshipman's
11 company officer to get notification of the PRB?
12 A Yes.
13 Q Sir, if we turn to that first page again of the
14 document, NSTC-0015, I want to direct your
15 attention to paragraph 3. For the record, could
16 you read paragraph 3.
17 A "PRP may recommend the following actions be
18 taken. Ramifications of these actions are
19 described in reference (a). No action.
20 Warning. Probation. Leave of absence.
21 Disenrollment with Interim Leave of Absence
22 pending final disenrollment from the NROTC
23 program."
24 Q Thank you, sir.
25     Is it your understanding that at that time

Connor Reporting
A Veritext Company
800-554-3376

Page 34

1 a PRB. And he's also saying "while I can't
2 categorically state that disenrollment will be
3 the outcome," meaning that we go to the PRB
4 without having made up our minds what the
5 outcome of the PRB will be.
6     And then he says "that any decision
7 otherwise is a near impossibility," and that's
8 because there's a section in the ROD that states
9 that if any midshipman is suspended, expelled,
10 prevented from registering from classes, or any
11 other such words, or something along those
12 lines, the PNS will disenroll them from the
13 program.
14 Q Okay.
15 A So in one section of the ROD, again, concerning
16 PRBs, it says that all five options are on the
17 table. And in another section of the ROD it
18 says that if you are suspended, you will be
19 disenrolled.
20 Q Understood, sir.
21     Do you know if the ROD has changed between
22 2015 and 2016 and the present day?
23 A Several times.
24 Q Do you know if a past version of the 2015-2016
25 ROD is available to the public?

Page 35

1 A That I do not know.
2     (Deposition Exhibit E was marked for
3 identification.)
4 Q Sir, I'd like to move next to Exhibit E. This
5 is NSTC-0011 through 0012. Please take a moment
6 to review this, sir.
7 A I'm familiar.
8 Q Sir, you've seen this document before?
9 A Yes. It's from me.
10 Q Can you identify it for the record?
11 A It's my report of the PRB from Mr. ▮ to
12 the CO.
13 Q On the second page there's a signature there
14 that purports to be yours. Can you confirm that
15 that's your signature?
16 A That is my signature.
17 Q Do you know if those are the signatures of Major
18 McDowell and Lieutenant Taylor?
19 A They are.
20     In answer to the previous question,
21 Lieutenant Etter is not there, it's Lieutenant
22 Taylor who was his replacement.
23 Q Understood.
24     Sir, do you recall the day of the PRB in
25 question here?

Page 36

1 A Not specifically, no.
2 Q Do you know where it was held?
3 A Sorry, what?
4 Q Do you know where the PRB was held?
5 A At the Armory in the NROTC conference room.
6 Q At West Lafayette?
7 A Yes.
8 Q How big is the conference room?
9 A About the size of this room.
10 Q For the record, is it fair to say maybe 30 feet
11 by 20 feet?
12 A Sure. We could seat 12 around the table.
13 Q Understood.
14     So it was a table setup?
15 A Yes.
16 Q Besides Midshipman ▮ and the three
17 signatories here, was there anyone else at the
18 PRB?
19 A Lieutenant Willstatter.
20 Q Was he the recorder?
21 A He was the recorder.
22 Q Besides Lieutenant Willstatter, was anyone else
23 there?
24 A No.
25 Q At the PRB, was it set up so that you and the

Page 37

1 two other members of the PRB sat across from
2 Midshipman ▮ ?
3 A Yes. So the board sits at the table with the
4 recorder at the end, and the midshipman is on
5 the other side of the table.
6 Q I noted in earlier documents it said that the
7 dress is Midshipman blue or formal blue maybe.
8 A Service dress blue.
9 Q That's it.
10     Are all members or attendees in service
11 dress?
12 A No.
13 Q Do you recall Midshipman ▮ 's demeanor that
14 day?
15 A No.
16 Q Specifically I direct you to the second page,
17 paragraph 9. Can you take a second to review
18 this?
19 A Okay, I'm ready.
20 Q Is there anything that occurred at the PRB that
21 isn't reflected in this paragraph?
22 A To my recollection, no.
23 Q Understood, sir.
24     Is there any difference between a senior
25 member and member of the PRB?

10 (Pages 34 - 37)

Connor Reporting
A Veritext Company
800-554-3376

Page 50

1 in this paragraph.
2 A That is correct.
3 Q I want to go to the second page of the document.
4 A Okay.
5 Q And to paragraph 10 where it says, "Board
6 Recommendation." I'm going to publish it again
7 and then I'll have some questions. "By a vote
8 of three to nothing, the Performance Review
9 Board found that Midshipman Fourth Class
10 was suspended by Purdue University by vote of
11 three to nothing. The Board recommends that
12 Midshipman be disenrolled from the ROTC
13 program."
14   Did I read that correctly?
15 A That is correct.
16 Q And that was the board's recommendation?
17 A Yes.
18 Q Is there anything else stated here in this
19 document which you signed with respect to the
20 board recommendation?
21 A No.
22   (Deposition Exhibit 1 previously marked for
23 identification.)
24 Q Could the witness be provided the document which
25 was previously marked and shown to witnesses

Page 51

1 yesterday, starting with NSTC-0001 through
2 NSTC-0004.
3 A Okay, I have it.
4 Q My first general question, do you recall
5 reviewing this document in the time period that
6 the document is dated?
7 A Not specifically, no, but I would have.
8 Q Go to page 3.
9 A Okay.
10 Q Paragraph 2 at the bottom of the page.
11 A Yes.
12 Q Do you see -- and I'll publish it -- "Type of
13 disenrollment brought by institution.
14 Midshipman was suspended by the university
15 for one academic year."
16 A That's correct. That's what it says.
17 Q Is there anything else in paragraph 2?
18 A No, there's not.
19 Q Paragraph 9 on the next page. Paragraph 9, I'll
20 publish it. "PNS Recommendation. Recommend
21 disenrollment of Midshipman due to
22 suspension by the university for one academic
23 year."
24   Is that what it says?
25 A Yes.

Page 52

1 Q What does PNS refer to?
2 A Professor of Naval Science.
3 Q That in this instance is referring to
4 Mr. Hutton?
5 A It is.
6 Q Another document you were presented, it might
7 have been Exhibit C, I'm not sure, but it's
8 Bates stamped NSTC-140 to NSTC-142. It's a
9 series of emails.
10 A NSTC-0042?
11 Q 0140 to 0142. I apologize.
12 A The emails.
13 Q Yes.
14 A Okay, I have it.
15 Q Looking at the document, do you see that this
16 goes in reverse chronological order?
17 A I know that.
18 Q So on 142 are some questions that Mr.
19 raises with Kyle Willstatter.
20 A Yes.
21 Q And NSTC-141, do we see Mr. Willstatter's
22 response that copied to you?
23 A Yes.
24 Q That would indicate that Mr. Willstatter decided
25 to copy you on his responses; correct?

Page 53

1 A Yes.
2 Q You were asked a few questions I think about
3 this document. I want to focus on paragraph 2
4 in Mr. Willstatter's email copied to you. I'll
5 publish it and then ask some questions. PRB
6 means Performance Review Board; correct?
7 A Correct.
8 Q And paragraph 2 says, "The PRB is not about the
9 circumstances surrounding your suspension, it is
10 about the fact that you have been suspended.
11 There is no reason to re-litigate the
12 university's decision. The fact is that you are
13 suspended, and the ROD requires disenrollment
14 for any case where a student is suspended. The
15 black and white nature of this PRB is why you
16 are allowed to waive, if you so choose, any
17 witnesses or other persons you would want to
18 have present. Please let me know their names
19 and the reason. You have the right to bring any
20 witnesses you want; however, unless they're
21 going to state contrary to facts that you have
22 not been suspended by the university, it will
23 basically be a waste of time."
24   That's what the paragraph states; correct?
25 A Yes.

Connor Reporting
A Veritext Company                          800-554-3376

Page 54

1 Q Did you at any time indicate to Mr. ▮ that
2 that was incorrect, that statement that
3 Mr. Willstatter said to Mr. ▮?
4 A No.
5 Q And Mr. Willstatter was a nonvoting member of
6 the Performance Review Board?
7 A That's correct.
8 Q Go to page NSTC-0140.
9 A Okay.
10 Q I want to go to the first paragraph, because I'm
11 not sure the attention was on it. This was the
12 August 5 email that Mr. Willstatter sent to
13 Mr. ▮, copy to you. Do you see it? It's the
14 12:18 p.m. email in the middle of the page.
15 A Yes.
16 Q I want to pick up in the middle of the first
17 paragraph, and it says, "Even if the board were
18 to decide and the CO were to agree that you are
19 a lock to be the next CNO, they would still have
20 to find a way to justify keeping you in the
21 program when you can't attend the university."
22 Did I read that correctly?
23 A You did.
24 Q CNO means Chief of Naval Operations?
25 A Correct.

Page 55

1 Q I'm not asking you the person presently, but who
2 is the CNO in terms of the Navy hierarchy?
3 A Chief of Naval Operations, he is in terms of our
4 administrative chain of command, he's at the
5 top.
6 Q So you are talking about the top person in the
7 Navy?
8 A Yes.
9 Q And CO means commanding officer.
10 A Correct.
11 Q That would mean in this case Mr. Hutton?
12 A Correct.
13 Q Let me now go to my -- let's see, my notes
14 indicate it was marked as Exhibit A, which
15 starts on page 168 and goes to 195.
16 A Okay, I have it.
17 Q This is Ms. Redlawsk's document. The first page
18 is a one-page memo by Ms. Redlawsk; correct?
19 A Correct.
20 Q The next page starts, what follows are all or
21 substantially all university documents for the
22 rest of the document to page 195; correct?
23 MR. JONES: Object to form. You can
24 answer, sir.
25 A I believe so, yes. Without examining each

Page 56

1 individual page, that's what it looks like.
2 Q So in terms of this document, only the first
3 page is Ms. Redlawsk's own memo; correct?
4 A Correct.
5 Q She wrote this, did she not, as a preliminary
6 inquiry recommendation surrounding the
7 allegations of sexual assault made against
8 Midshipman Fourth Class ▮; correct?
9 A That is correct.
10 Q Ms. Redlawsk had no authority herself to do a
11 disenrollment.
12 MR. JONES: Object to form. You can
13 answer.
14 Q Let me ask. Who had the responsibility to
15 determine whether there should be disenrollment?
16 A Are you asking me the final determination of
17 anybody that is going to be disenrolled, who
18 that is?
19 Q Yes.
20 A That's the Assistant Secretary of the Navy.
21 Q Okay. In terms of the Navy ROTC, who has the
22 authority to recommend the disenrollment?
23 MR. JONES: Object to form. Go ahead.
24 A In order to disenroll someone, it has to be
25 through the PRB process. It starts with the

Page 57

1 PRB, goes through the board to the CO, and then
2 up the chain of command to the Assistant
3 Secretary of the Navy.
4 Q Thank you. That's what I thought was the case,
5 but you're the one who can speak to that.
6 My question is, is Ms. Redlawsk's one-page
7 memo a recommendation that a Performance Review
8 Board be convened?
9 A I'm sorry, yes, she did recommend that.
10 Q Now, looking at the document in front of you,
11 Exhibit A, what follows -- first of all,
12 starting at page 169, Bates stamp 169 is the
13 Dean's June 14th, 2016, determination letter?
14 A Yes, the Dean's final determination letter, yes.
15 Q Yes. And at 170 to 180 is the Purdue
16 investigation report.
17 MR. JONES: Is that a question, Phil?
18 MR. BYLER: I'm sorry, did Tyler say
19 something?
20 MR. JONES: Is that a question, Phil, or
21 are you stating?
22 Q Oh, yeah, the question. Is the Purdue
23 investigation report at 170 to 180 in this
24 document?
25 A It starts on 170, yes. Actually I don't know if