**PL Opp DSJ 21**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) |
| **DANIELS, JR.,** in his official capacity as President of | ) |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF JOHN DOE'S RESPONSES TO DEFENDANTS'
\_\_THIRD SET OF INTERROGATORIES TO PLAINTIFF\_\_**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff John Doe (the "Plaintiff"), by and through his attorneys Nesenoff & Miltenberg, LLP, hereby responds and objects to Defendants' Third Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

The following General Objections apply to the Interrogatories as a whole, and each of the Responses herein is made subject to them:

1. Plaintiff objects to the Interrogatories to the extent they seek information protected by the attorney-client, attorney work product or any other applicable privilege. Plaintiff further objects to the Interrogatories insofar as they seek to elicit the disclosure of material prepared in anticipation of litigation as proscribed by the Federal Rules of Civil Procedure.

1

2. Plaintiff objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad, oppressive, harassing, will require an undue burden or expense to respond to, and/or seek information that is not relevant to the issues in this case and even if arguably somehow relevant, are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

3. Plaintiff objects to the Interrogatories to the extent they seek opinions or contentions relating to facts, or the application of law to fact, as premature before completion of all fact and expert discovery and reserves his right to supplement at any time his responses to these Interrogatories.

4. Plaintiff objects to the Interrogatories to the extent they purport to seek "every statement and fact" singly because the proof of gender bias involves, in part, a collection of actions, statements and facts.

5. Plaintiff objects to these Interrogatories to the extent they seek information ascertainable from Plaintiff's document production, copies of which have been or are being made available to Defendant's counsel in this action.

6. Plaintiff objects to the Interrogatories to the extent that they are cumulative or duplicative of discovery provided by Plaintiff.

7. Plaintiff's responses to the Interrogatories are based upon diligent investigations by Plaintiff and his counsel and reflect the present state of their investigation and research into the factual and legal issues relating to this action. Plaintiff reserves the right to amend or supplement

these responses at any time in light of further investigations, research or analysis, to the extent permitted or required by law.

8. All specific responses to the Interrogatories are provided without waiver, and with express reservation of all objections as to competency, relevancy, materiality and admissibility of the responses and the subject matter thereof as evidence in any further proceedings in this action, including trial, or in any other action.

9. These General Objections are deemed to be incorporated by reference into each Response regardless of whether they are specifically re-stated and/or referenced therein. The assertion of same, similar or additional objections on Plaintiff's responses to the Interrogatories or the failure to assert any additional objections is not intended as a waiver to any of Plaintiff's General Objections as set forth herein.

## **RESPONSES**

13. List each type and amount of damages that you allege against Defendant, including any harm to your physical well-being, emotional and psychological state, reputation, past and future economic earnings, educational and athletic opportunities, and future career prospects. For each listed type and amount of damages:

    a. State the date(s) of each alleged harm referred to in the answer to this interrogatory;

    b. Identify all supporting documents;

    c. For each alleged harm, identify (by name, address, phone number, and email address) each individual who has witnessed the harm.

**ANSWER:** Plaintiff objects to this interrogatory because Plaintiff answered this inquiry in his Second and Third Amended Rule 26 Disclosure Statements. Subject to objection and to the need for supplementation as a result expert discovery not yet done, Plaintiff claims the following damages:

    (1) <u>Damages from past and future economic losses:</u>

3

   (a) <u>Loss of Income To Date - $35,000</u>

This amount is based upon a computation of loss of the income in the difference between a commissioned officer's salary ($45,450 based on Monthly Basic Pay Table) and the wages earned in the period June 2019 to April 2020 (with two more months added based on the 10-month average).

   (b) <u>Loss of Scholarships - $100,000</u>

This amount is based upon a computation adding the loss of four years of a Navy scholarship to Purdue and of a Presidential Scholarship.

   (c) <u>Loss of Future Income - $3,000,000</u>

This amount is based upon a computation of the present value of the difference between a projected income and economic benefits of a career Navy officer minus a projected income and economic benefits of a career white collar employee.

   (d) <u>Legal Fees - $200,000 and counting</u>

This amount is based upon Nesenoff & Miltenberg LLP invoices and the attorney fee shifting provisions of Title IX and 42 U.S.C. § 1983.

(2) <u>Damages from non-economic injuries:</u>

   (a) <u>Damages to Reputation - $250,000</u>

This amount is based upon a computation derived from considering jury instructions for awarding defamation damages.

   (b) <u>Emotional and Psychological Damages - $100,000</u>

This amount is based upon a computation derived from considering jury instructions for awarding infliction of emotional distress damages.

Plaintiff reserves the right to retain the services of an expert who will calculate Plaintiff's damages as a result of the disciplinary decision and sanction. Thus, Plaintiff reserves the right to modify this calculation and formulation of damages accordingly.

14. State whether, since you reached age 16, you have consulted with or otherwise utilized services related to marital, family, social, psychological, or psychiatric counseling or treatment; and if so, state (i) the identity of all persons providing such counseling or treatment and (ii) the date(s) on which you utilized or received a counseling or treatment.

**ANSWER:** Subject to supplementation, starting in early 2018 and continuing periodically to date, Plaintiff has received counselling for his psychological and social well-being with Noel Perry of Family Concern Counselling. Starting late 2018, Plaintiff received acupuncture treatments for

4

reducing high stress levels. Specific dates of the appointments are contained in a document file of Plaintiff's costs that has been produced. See Rule 33(d) of the Federal Rules of Civil Procedure. Also, while at Taylor University, Plaintiff had discussions with Tyler Witzig and Rachel MacGregor on dates reflected in the Taylor University document production subpoenaed by Defendants. With respect to Rachel McGregor, the entries for October 13, 2016 (page 7), October 28, 2016 (page 19), November 14, 2016 (page 21) and November 16, 2016 (page 23) reflect depression on the part of Plaintiff as to which Plaintiff was in denial and that, among other things, Plaintiff did not want to take depression medication because he says it will jeopardize the chances of joining the military in the future. With respect to Tyler Witzig, the entries for October 15, 2016 (pages 9, 11), October 27, 2016 (page 17), February 14, 2017 (page 29), August 26, 2017 (pages 33, 35), and September 1, 2017 (page 37) reflect depression on the part of Plaintiff and expression of frustration on the part of Plaintiff about how he was treated at Purdue. It was recorded by the Winfield Family Medicine that Plaintiff suffered from generalized anxiety disorder on January 17, 2019, March 14, 2019, April 5, 2019, April 10 2019, April 22, 2019, April 29, 2019, May 14, 2019, June 14, 2019, July 23, 2019, August 13, 2019, August 21, 2019, October 1, 2019, November 5, 2019, February 28, 2020, March 17, 2020, April 6, 2020 and July 14, 2020.

15. For each clinical diagnosis of harm that you attribute to the events alleged in your Amended Complaint, state the name and date of the diagnosis; the name and address of the persons making each diagnosis, and the date(s) of diagnosis.

**ANSWER:** Plaintiff objects to this interrogatory because Plaintiff answered this inquiry in his Response No. 9 to Defendants' First Set of Interrogatories and because of the interrogatory's ambiguity -- Plaintiff must presume that Defendants' use of the word "diagnosis" indicates the interrogatory is directed to Plaintiff's emotional and psychological damages. Subject to objection, Plaintiff has only discussed periodically with his treating professional possible clinical diagnoses.

16. If you, your attorneys, or anyone acting on your behalf knows of the existence of any statement, whether recorded, written, reported by a stenographer or otherwise, given by a person having or claiming to have knowledge regarding any of the facts, conditions, events, or happenings referred to in your Amended Complaint or concerning how the incidents alleged in your Amended Complaint occurred, or concerning the injuries or damages you alleged, state:

    a. whether or not the statement was taken by you or by anyone acting on your behalf;

    b. the name, title, employer, residence address, employment address, telephone number, and present whereabouts of each person giving the

     statement;

  c. the date each such statement was taken;

  d. the name, title, employer, residence address, employment address, telephone number, and present whereabouts of the person taking the statement;

  e. the means by which the statement is preserved;

  f. the name, title, employer, residence address, employment address, telephone number, and present whereabouts of each person who has a copy of the original and/or a copy or transcript of any such statement; and

  g. the substance of the statement.

**ANSWER**: Plaintiff objects to the interrogatory because of its ambiguity due to, among other things, use of the words "statement" and "otherwise." Subject to the objection and to need for supplementation, Plaintiff knows of the depositions taken in this case, including Plaintiff's deposition taken on August 18, 2020, statements marked as deposition exhibits, and the documents and Facebook postings discussed in Plaintiff's Response Nos. 14 and 23 to Defendants' Third Set of Interrogatories -- as to which depositions, deposition exhibits and postings Defendants are also fully aware -- but does not know of any other written statements by anyone claiming knowledge in the case.

  17. List each institution of higher education in which you have enrolled in or after 2016; the semesters in which you were enrolled; whether you faced any potential discipline by the institution while enrolled, and if so, the allegation and outcome of the discipline you faced.

**ANSWER:** Plaintiff objects to this interrogatory because Plaintiff answered this inquiry in his Response No. 11 to Defendants' First Set of Interrogatories. Subject to objection, Taylor University (Fall 2016, Spring 2017, Fall 2017). No sexual or other behavioral misconduct was ever alleged, and thus there was no discipline and no potential discipline from any alleged sexual or other behavioral misconduct. Poor academic performance, which resulted from high stress and other psychological issues for which Plaintiff has been receiving treatment as stated in the Response to Interrogatory No. 8 to Defendants' First Set of Interrogatories and which was contrary to Plaintiff's academic history before Defendants' disciplinary case, led to Plaintiff not being eligible for one academic semester.

  18. With respect to Paragraph 92 of your Amended Complaint asserting "the right to present witnesses and evidence, confront one's accuser and cross-examine and challenge any

6

witnesses against him" list each witness you were not afforded the opportunity to present, state your offer of proof for each such witness, and state which witnesses you were not afforded the opportunity to cross-examine and, for each such witness, what cross-examination questions you were not afforded the opportunity to ask.

**ANSWER:** Plaintiff objects to this interrogatory because the interrogatory impermissibly ignores that there was not a "real hearing" (as required by the U.S. Court of Appeals for the Seventh Circuit, 928 F.3d 652), only an unrecorded "meeting," described as a scheduled half-hour "meeting" in Purdue's documents, of Plaintiff with the Dean of Students and three members of the Advisory Committee on Equity, at which time questions were asked of Plaintiff by members of the Advisory Committee based on an investigation report that Plaintiff had not been shown nor would be shown at the "meeting" or afterward through the remainder of the disciplinary proceeding. At the half-hour "meeting" that was held, there was no opportunity for the presentation of evidence, no opportunity for the calling of witnesses, no opportunity for the offering of documents, no opportunity for the cross-examination of adverse witnesses, no taking of testimony of witnesses under oath and no transcript of proceedings. At the time of that "meeting" and indeed throughout the disciplinary proceeding, Plaintiff had not been shown and would not be shown the investigation report, and thus did not have a fair opportunity to defend himself and be in a position to formulate questions and otherwise defend himself. Subject to the objection, Plaintiff was denied the opportunity to cross-examine Jane Doe under oath, who did not even meet with the Dean of Students and the Advisory Committee; Plaintiff was denied the opportunity to call Elvin Uthuppan as a witness under oath; and Plaintiff was denied the opportunity to call himself as a witness under oath. Had there been a real hearing (which there was not), Jane Doe would have been cross-examined about: her past relationship with Plaintiff in the Fall of 2015; her suicide attempt; the 133 pages of texts between Plaintiff and Jane Doe in the period December 23, 2015 to March 15, 2016; the gap in time between when Jane Doe said there the incidents of sexual misconduct by Plaintiff and the reporting of the incidents to Purdue; the contacts Jane Doe had with Monica Bloom and CARE, including the writing of documents; Jane Doe's communications and interviews with the Purdue investigators; the non-appearance for a meeting with the Dean of Students Defendant Katherine Sermersheim and members of the Advisory Committee.

19. Identify every statement or fact that you contend shows that Erin Oliver acted in your particular case at least partly on the basis of your gender; and, for any statement identified, provide the content of the statement, the person(s) who heard or otherwise received the statement, and the time and place at which the statement was made.

**ANSWER:** Subject to General Objection No. 4 and supplementation from the taking of the deposition of Erin Oliver, Erin Oliver as an investigator for the Office of Institutional Equity was

7

one of the two investigators assigned to the disciplinary case instituted against Plaintiff in April 2016; she and fellow investigator Jacob Amberger were notified of the disciplinary case against Plaintiff by being copied on the April 14, 2016 letter of Defendant Katherine Sermersheim to Plaintiff notifying him of the disciplinary proceeding against him and issuing a no contact directive to Plaintiff. Jacob Amberger and Erin Oliver interviewed Jane Doe and Plaintiff once each and then re-interviewed Jane Doe a second time about what was a misinterpretation and misreading of some texts exchanged between Plaintiff and Jane Doe in the period of December 23, 2015 to March 15, 2016. The selected texts from three days (December 23, December 28, January 14) did not expressly refer to what Jane Doe alleged as the sexual misconduct by Plaintiff, but were misused to support Jane Doe's allegations; when considered as a whole, the texts did not support Jane Doe's allegations, but rather supported Plaintiff's denials of Jane Doe's allegations of sexual misconduct. The investigators Jacob Amberger and Erin Oliver did not re-interview Plaintiff in order to elicit his understanding of the texts because the investigators Jacob Amberger and Erin Oliver had in their view what they needed to find Plaintiff responsible in the investigation report. The investigators Jacob Amberger and Erin Oliver did not attach to the investigation report all 133 pages of the texts, but only seven pages of selected texts from the three days without context and omitting such tests as showing that Jane Doe sent cookies to Plaintiff's home for him and his family during the Christmas season 2015 and Jane Doe at one point called Plaintiff "awesome." The texts also reflected an ongoing relationship between Jane Doe and Plaintiff through January 2016 into February 2016, which was inconsistent with Jane Doe's statements that the relationship and its communications had ended by early December 2015.

The investigation report prepared by the investigators Jacob Amberger and Erin Oliver reflected numerous points of gender bias. First, Plaintiff voluntarily provided to the investigators the 133 pages of texts and said they supported his denials; Jane Doe did not provide any texts; yet, the investigators Jacob Amberger and Erin Oliver accepted what was a misinterpretation and misreading of a small portion of texts exchanged between Plaintiff and Jane Doe without even asking Plaintiff about that misinterpretation and misreading. Second, the investigation report does not give credence to the report of Plaintiff's roommate Elvin Uthuppan that Plaintiff was shocked by Jane Doe's allegations and that he (the roommate) was present when allegedly one of the two incidents of sexual misconduct occurred and he did not see anything that supported Jane Doe. Third, the investigation report relies upon the misinterpretation and misreading of some texts exchanged between Plaintiff and Jane Doe in the period of December 23, 2015 to March 15, 2016 discussed above. Fourth, Jacob Amberger had e-mail exchanges with CARE's Monica Bloom about re-interviewing Jane Doe about the texts, which second interview was arranged and held, but as discussed above, the investigators Jacob Amberger and Erin Oliver did not re-interview Plaintiff in order to elicit his understanding of the texts because the investigators Jacob Amberger and Erin Oliver had in their view what they needed to find Plaintiff responsible in the investigation report. Fifth, the investigators Jacob Amberger and Erin Oliver did not ask Jane Doe about the five-month gap between the time Jane Doe placed the sexual misconduct as occurring and the time Jane Doe reported it to the university. Sixth, the investigation report downplays the suicide attempt by Jane Doe and that Plaintiff reported to the university before Jane Doe made her complaint of sexual misconduct by Plaintiff. Seventh, Plaintiff maintained to the investigators Jacob Amberger and Erin Oliver that as to one alleged incident, he only touched Jane Doe's leg just above the knee; Jane Doe's allegation of Plaintiff touching her crotch area outside her clothing makes no sense when it is considered that Plaintiff's roommate was in the room and there was a no tolerance policy

8

in Navy ROTC; the investigation report assertion's that Jane Doe was more credible is not supportable given that the investigation report credited Plaintiff's placement of the event in December 2015, not Jane Doe's, and given that the only basis for asserting Plaintiff was dishonest was saying the R.A. contradicted Plaintiff about providing a key to Jane Doe's room – which fails to address how Plaintiff got into the room without a key and with Jane Doe being away for the weekend, left her room locked.  A gender biased commitment to finding the male Plaintiff responsible is required to credit the allegation.  Eighth, Plaintiff maintained to the investigators Jacob Amberger and Erin Oliver that as to one alleged incident, he did not digitally penetrate Jane Doe in her sleep; Jane doe did not have an independent recollection of the allegation but said Plaintiff told her, which Plaintiff adamantly denied; the preponderance of the evidence is not weighed in favor of crediting Jane doe's allegation when he says he didn't and she says she does not independently recall but he said it to her. A gender biased commitment to finding the male Plaintiff responsible is required to credit the allegation. Ninth, the investigation report did not consider the family background of Plaintiff who comes from a large intact family that included Plaintiff having sisters whom he was taught to respect.  Tenth, the investigation report notes but does not critically evaluate Jane Doe's objection to Plaintiff being in places such as the Armory where Plaintiff had a right to be; Jane Doe was showing an ulterior motive for making false accusations. to which the investigators Jacob Amberger and Erin Oliver were oblivious because of the politically correct attitude of "believe the woman."

The deposition testimony of Jacob Amberger, Plaintiff and Elvin Uthuppan and the deposition exhibits of those deponents supports the foregoing.

20.     Identify every statement or fact that you contend shows that Jacob Amberger acted in your particular case at least partly on the basis of your gender; and, for any statement identified, provide the content of the statement, the person(s) who heard or otherwise received the statement, and the time and place at which the statement was made.

**ANSWER:** Subject to General Objection No. 4, Jacob Amberger as an investigator for the Office of Institutional Equity was one of the two investigators assigned to the disciplinary case instituted against Plaintiff in April 2016; he and fellow investigator Erin Oliver were notified of the disciplinary case against Plaintiff by being copied on the April 14, 2016 letter of Defendant Katherine Sermersheim to Plaintiff notifying him of the disciplinary proceeding against him and issuing a no contact directive to Plaintiff.  Jacob Amberger and Erin Oliver interviewed Jane Doe and Plaintiff once each and then re-interviewed Jane Doe a second time about what was a misinterpretation and misreading of some texts exchanged between Plaintiff and Jane Doe in the period of December 23, 2015 to March 15, 2016. The selected texts from three days (December 23, December 28, January 14) did not expressly refer to what Jane Doe alleged as the sexual misconduct by Plaintiff, but were misused to support Jane Doe's allegations; when considered as a whole the texts did not support Jane Doe's allegations, but rather supported Plaintiff's denials of Jane Doe's allegations of sexual misconduct.  The investigators Jacob Amberger and Erin Oliver did not re-interview Plaintiff in order to elicit his understanding of the texts because the

9

investigators Jacob Amberger and Erin Oliver had in their view what they needed to find Plaintiff responsible in the investigation report. The investigators Jacob Amberger and Erin Oliver did not attach to the investigation report all 133 pages of the texts, but only seven pages of selected texts without context and omitting such tests as showing that Jane Doe sent cookies to Plaintiff's home for him and his family during the Christmas season 2015 and Jane Doe at one point called Plaintiff "awesome." The texts also reflected an ongoing relationship between Jane Doe and Plaintiff through January 2016 into February 2016, which was inconsistent with Jane Doe's statements that the relationship and its communications had ended by early December 2015.

The investigation report prepared by the investigators Jacob Amberger and Erin Oliver reflected numerous points of gender bias. First, Plaintiff voluntarily provided to the investigators the 133 pages of texts and said they supported his denials; Jane Doe did not provide any texts; yet, the investigators Jacob Amberger and Erin Oliver accepted what was a misinterpretation and misreading of a small portion of texts exchanged between Plaintiff and Jane Doe without even asking Plaintiff about that misinterpretation and misreading. Second, the investigation report does not give credence to the report of Plaintiff's roommate Elvin Uthuppan that Plaintiff was shocked by Jane Doe's allegations and that he (the roommate) was present when allegedly one of the two incidents of sexual misconduct occurred and he did not see anything that supported Jane Doe. Third, the investigation report relies upon the misinterpretation and misreading of some texts exchanged between Plaintiff and Jane Doe in the period of December 23, 2015 to March 15, 2016 discussed above. Fourth, Jacob Amberger had e-mail exchanges with CARE's Monica Bloom about re-interviewing Jane Doe about the texts, which second interview was arranged and held, but as discussed above, the investigators Jacob Amberger and Erin Oliver did not re-interview Plaintiff in order to elicit his understanding of the texts because the investigators Jacob Amberger and Erin Oliver had in their view what they needed to find Plaintiff responsible in the investigation report. Fifth, the investigators Jacob Amberger and Erin Oliver did not ask Jane Doe about the five-month gap between the time Jane Doe placed the sexual misconduct as occurring and the time Jane Doe reported it to the university. Sixth, the investigation report downplays the suicide attempt by Jane Doe and that Plaintiff reported to the university before Jane Doe made her complaint of sexual misconduct by Plaintiff. Seventh, Plaintiff maintained to the investigators Jacob Amberger and Erin Oliver that as to one alleged incident, he only touched Jane Doe's leg just above the knee; Jane Doe's allegation of Plaintiff touching her crotch area outside her clothing makes no sense when it is considered that Plaintiff's roommate was in the room and there was a no tolerance policy in Navy ROTC; the investigation report assertion's that Jane Doe was more credible is not supportable given that the investigation report credited Plaintiff's placement of the event in December 2015, not Jane Doe's, and given that the only basis for asserting Plaintiff was dishonest was saying the R.A. contradicted Plaintiff about providing a key to Jane Doe's room – which fails to address how Plaintiff got into the room without a key and with Jane Doe being away for the weekend, leaving her room locked. A gender biased commitment to finding the male Plaintiff responsible is required to credit the allegation. Eighth, Plaintiff maintained to the investigators Jacob Amberger and Erin Oliver that as to one alleged incident, he did not digitally penetrate Jane Doe in her sleep; Jane doe did not have an independent recollection of the allegation but said Plaintiff told her, which Plaintiff adamantly denied; the preponderance of the evidence is not weighed in favor of crediting Jane Doe's allegation when he says he didn't and she says she does not independently recall but he said it to her. A gender biased commitment to finding the male Plaintiff responsible is required to credit the allegation. Ninth, the investigation report did not

10

consider the family background of Plaintiff who comes from a large intact family that included Plaintiff having sisters whom he was taught to respect. Tenth, the investigation report notes but does not critically evaluate Jane Doe's objection to Plaintiff being in places such as the Armory where Plaintiff had a right to be; Jane Doe was showing an ulterior motive for making false accusations. to which the investigators Jacob Amberger and Erin Oliver were oblivious because of the politically correct attitude of "believe the woman."

The deposition testimony of Jacob Amberger, Plaintiff and Elvin Uthuppan and the deposition exhibits of those deponents supports the foregoing.

21. Identify every statement or fact that you contend shows that Defendant Katherine Sermersheim acted in your particular case at least partly on the basis of your gender; and, for any statement identified, provide the content of the statement, the person(s) who heard or otherwise received the statement, and the time and place at which the statement was made.

**ANSWER:** Subject to General Objection No. 4, on or about April 5, 2016, CARE Director Defendant Monica Bloom wrote up the complaint for Jane Doe that was sent by e-mail to Defendant Alysa Rollock and Defendant Katherine Sermersheim along with a description of the meeting that Bloom had with Jane Doe and a list of restrictions that Jane Doe wanted placed on John Doe.(Semersheim Ex. 2.) Defendant Alysa Rollock replied by e-mail that she would discuss the case with Defendant Katherine Sermersheim. (Sermersheim Ex.3.) Defendant Katherine Sermersheim used CARE Director Defendant Monica Bloom drafted complaint for Jane Doe and CARE Director Defendant Monica Bloom's e-mail with its list of restrictions desired by Jane Doe to send Defendant Katherine Sermersheim's April 14, 2016 letter to Plaintiff notifying him of the disciplinary proceeding against him and issuing a no contact directive to Plaintiff that required only Plaintiff to take affirmative steps to have no contact with Jane Doe. (Sermersheim Ex. 10.) There was no concern about the five-month gap in time between when Jane Doe placed the alleged sexual misconduct and Jane Doe's report to the university of the alleged sexual misconduct. Plaintiff did submit a four-page response to the notice of allegations specifically denying the allegations. (Sermersheim Ex. 11.)

On May 31, 2016, Plaintiff was invited to and did attend a half hour "meeting" that was scheduled for and that took place on June 6, 2016, before Defendant Katherine Sermersheim and three members of the Advisory Committee on Equity. The investigators Jacob Amberger and Erin Oliver were also on May 31, 2016, invited to and did attend a separate half hour "meeting" that was scheduled for and that took place on June 6, 2016 before Defendant Katherine Sermersheim and three members of the Advisory Committee on Equity. On May 31, 2016, two members of CARE were notified of the "meeting" that was scheduled for and that took place on June 6, 2016 before Defendant Katherine Sermersheim and three members of the Advisory Committee on Equity. Plainitff's roommate Elvin Uthuppan was not invited and did not attend the June 6, 2016 "meeting." (Sermersheim Exs. 29, 34-35.) The June 6, 2016 "meeting" was unrecorded; Plaintiff appeared in person; the investigators Jacob Amberger and Erin Oliver appeared in person; Jane Doe did not appear in person.

11

On June 14, 2016, Defendant Katherine Sermersheim issued her initial decision finding Plaintiff responsible for sexual assault and suspending him for one year and imposing other sanctions involving re-admission. (Sermersheim Ex. 4.) In Plaintiff's June 22, 2016 appeal of Defendant Katherine Sermersheim's June 14, 2016 disciplinary decision suspending Plaintiff for sexual assault, Plaintiff complained that the charges of sexual assault were false, that he would be harmed by among other things the loss of his Navy ROTC scholarship and that he was denied due process and denied access to the investigation report. (Sermersheim Ex. 5.) On June 28, 2016, Defendant Alysa Rollock did remand the case back to Defendant Katherine Sermersheim to provide facts to support the determination. (Sermersheim Ex. 6.) The next day, on June 29, 2016, Defendant Katherine Sermersheim re-issued her decision adding a short conclusory statement of "finding" Plaintiff to have engaged in the two alleged acts of sexual assault and Jane Doe to be more credible. (Sermersheim Ex. 7.)

Defendant Katherine Sermersheim was not aware of the 133 pages of texts that Plaintiff had supplied to the investigators. Defendant Katherine Sermersheim's credibility determination was based on the notion that Jane Doe was consistent in her statements and Plaintiff was not; however, Jane Doe never appeared before the Dean and the Advisory Committee and certainly not for the June 6, 2016 meeting; all that Defendant Katherine Sermersheim had from Jane Doe were CARE provided documents for Jane Doe; Plaintiff who did appear in person before Defendant Katherine Sermersheim and the Advisory Committee member was consistent in denying the sexual misconduct took place; the interpretation of the texts said to support the finding of sexual misconduct did not expressly say that Plaintiff did the alleged sexual misconduct and did not contain an accusation by Jane Doe that Plaintiff committed the alleged sexual misconduct (to see inconsistency between Plaintiff's denials and the texts requires bootstrapping); Defendant Katherine Sermersheim could not recall what Plaintiff supposedly said that was inconsistent; and Defendant Katherine Sermersheim did not have the roommate Elvin Uthuppan appear before her and the members of the Advisory Committee on Equity.

On July 10, 2016, Plaintiff submitted a three-page single spaced appeal that complained: that Defendant Katherine Sermersheim had not provided facts in her re-issued decision, but merely restated her conclusions at greater length; that Plaintiff had not been provided access to the investigation report, which disabled him from defending himself and from responding to Defendant Katherine Sermersheim's attack on his credibility; that at the "Meeting" with the Dean and members of the Equity Committee, members of the Equity Committee were not prepared for the meeting; that Plaintiff denied the charges of sexual assault and cited that committing sexual misconduct would mean the loss of his Navy ROTC scholarship; and that Jane Doe had an ulterior motive in making the false accusations -- she had attempted to commit suicide and Plaintiff had reported it to the university. (Rollock Ex. 8.)

Throughout the process involving Defendant Katherine Sermersheim, Plaintiff denied the allegations of sexual assault and was denied access to the investigation report; the denial of access to the investigation report protected from critical scrutiny a report supposedly supporting finding a male respondent responsible for sexual misconduct; Defendant Katherine Sermersheim's June 14, 2016 and June 29, 2016 decisions, with their supposed credibility determination in favor of a female complainant who never appeared before the Dean and members of the Advisory Committee on Equity against a male respondent who did appear the Dean and members of the Advisory

Committee on Equity before required a gender biased commitment to finding the male Plaintiff responsible.

The deposition testimony of Defendant Katherine Sermersheim, Plaintiff and Elvin Uthuppan and the deposition exhibits of these deponents supports the foregoing.

22.    Identify every statement or fact that you contend shows that Defendant Alysa Christmas Rollock acted in your particular case at least partly on the basis of your gender; and, for any statement identified, provide the content of the statement, the person(s) who heard or otherwise received the statement, and the time and place at which the statement was made.

**ANSWER:** Subject to General Objection No. 4, on or about April 5, 2016, CARE Director Defendant Monica Bloom wrote up the complaint for Jane Doe that was sent by e-mail to Defendant Alyssa Rollock and Defendant Katherine Sermersheim along with a description of the meeting that Bloom had with Jane Doe and a list of restrictions that Jane Doe wanted placed on John Doe.(Rollock Ex. 2.)  Defendant Alyssa Rollock replied by e-mail that she would discuss the case with Defendant Katherine Sermersheim. (Rollock Ex.3.)  Defendant Katherine Sermersheim used CARE Director Defendant Monica Bloom drafted complaint for Jane Doe and CARE Director Defendant Monica Bloom's e-mail with its list of restrictions desired by Jane Doe to send Defendant Katherine Sermersheim's April 14, 2016 letter to Plaintiff notifying him of the disciplinary proceeding against him and issuing a no contact directive to Plaintiff that required only Plaintiff to take affirmative steps to have no contact with Jane Doe. (Rollock Ex. 10.)  There was no concern about the five-month gap in time between when Jane Doe placed the alleged sexual misconduct and Jane Doe's report to the university of the alleged sexual misconduct. Plaintiff did submit a thee page response to the notice of allegations specifically denying the allegations. (Rollock Ex. 11.)

In Plaintiff's June 22, 2016 appeal of Defendant Katherine Sermersheim's June 14, 2016 disciplinary decision suspending Plaintiff for sexual assault, Plaintiff complained that the charges of sexual assault were false, that he would be harmed by among other things the loss of his Navy ROTC scholarship and that he was denied due process and denied access to the investigation report; and on June 28, 2016,  Defendant Alysa Rollock did remand the case back to Defendant Katherine Sermersheim to provide facts to support the determination. (Rollock Exs. 4-6.)  The next day, on June 29, 2016, Defendant Katherine Sermersheim re-issued her decision adding a short conclusory statement of "finding" Plaintiff to have engaged in the two alleged acts of sexual assault and Jane Doe to be more credible. (Rollock Ex. 7.) On July 10, 2016, Plaintiff submitted a three-page single spaced appeal that complained: that Defendant Katherine Sermersheim had not provided facts in her re-issued decision, but merely restated her conclusions at greater length; that Plaintiff had not been provided access to the investigation report, which disabled him from defending himself and from responding to Defendant Katherine Sermersheim's attack on his credibility; that at the "Meeting" with the Dean and members of the Equity Committee, members of the Equity Committee were not prepared for the meeting; that Plaintiff denied the charges of

13

sexual assault and cited that committing sexual misconduct would mean the loss of his Navy ROTC scholarship; and that Jane Doe had an ulterior motive in making the false accusations -- she had attempted to commit suicide and Plaintiff had reported it to the university. (Rollock Ex. 8.) Defendant Alysa Rollock, however, affirmed Defendant Katherine Sermersheim's June 29, 2016 decision listing the review of documents in doing so, which included the investigation report that Plaintiff was not allowed to see and that Purdue Policies did not allow Plaintiff to see, the statement submitted by CARE Director Monica Bloom on Jane Doe's behalf to the Dean and members of the Equity Committee. (Rollock Ex. 9, Rollock Exs. 4-8, 10-11, 14-15.) Throughout the process, Plaintiff denied the allegations of sexual assault and was denied access to the investigation report and thus could not defend himself adequately; the denial of access to the investigation report protected from critical scrutiny a report supposedly supporting finding a male respondent responsible for sexual misconduct; to proceed to affirm Defendant Katherine Sermersheim's June 29, 2016 decision, a gender biased commitment to finding the male Plaintiff responsible is required.

The deposition testimony of Defendant Alysa Rollock and Plaintiff and the deposition exhibits of these deponents supports the foregoing.

23.  Identify every statement or fact that you contend shows that any agent or employee of Purdue other than those identified in the above Interrogatories numbers 19-22 acted in your particular case at least partly on the basis of your gender; identify the person who made each such statement or to whom each such fact is attributable; and, for any statement identified, provide the content of the statement, the person(s) who heard or otherwise received the statement, and the time and place at which the statement was made.

**ANSWER:** Subject to General Objection No. 4, Monica Bloom as Care Director of the Center for Advocacy, Response and Education ("CARE") starting in February 2016, Monica Bloom reported to Defendant Katherine Sermersheim; and CARE provided, among other things, what Monica Boom called in her deposition "advocacy services" to female complainants in the university disciplinary process, and specifically to Jane Doe in the university disciplinary proceedings against Plaintiff, while no services, much less comparable services, were provided to male respondent Plaintiff as there was no center for respondents in university disciplinary proceedings.

On on or about April 5, 2016, CARE Director Defendant Monica Bloom wrote up the complaint for Jane Doe that was sent by e-mail to Defendant Alyssa Rollock and Defendant Katherine Sermersheim along with a description of the meeting that Bloom had with Jane Doe and a list of restrictions that Jane Doe wanted placed on John Doe. (Bloom Ex. 2.) Defendant Alysa Rollock replied by e-mail that she would discuss the case with Defendant Katherine Sermersheim. (Bloom Ex.3.) Defendant Katherine Sermersheim used CARE Director Defendant Monica Bloom drafted complaint for Jane Doe and CARE Director Defendant Monica Bloom's e-mail with its list of

14

restrictions desired by Jane Doe to send Defendant Katherine Sermersheim's April 14, 2016 letter to Plaintiff notifying him of the disciplinary proceeding against him and issuing a no contact directive to Plaintiff that required only Plaintiff to take affirmative steps to have no contact with Jane Doe. (Bloom Ex. 10.) There was no concern about the five-month gap in time between when Jane Doe placed the alleged sexual misconduct and Jane Doe's report to the university of the alleged sexual misconduct. Plaintiff did submit a response to the notice of allegations. (Rollock Ex. 11.)

Monica Bloom contacted the investigators Jacob Amberger and Erin Oliver in early May 2016 about re-interviewing Jane Doe, a second interview of Jane Doe that took place and concerned what was a misinterpretation and misreading of selected texts exchanged between Plaintiff and Jane Doe in the period of December 23, 2015 to March 15, 2016 and about which the investigators did not re-interview Plaintiff. (Bloom Ex. 19-22.) The texts did not expressly refer to what Jane Doe alleged as the sexual misconduct by Plaintiff, but were misused to support Jane Doe's allegations when considered as a whole the texts supported Plaintiff's denials of Jane Doe's allegations of sexual misconduct. (Amberger Ex. 27.)

On or about June 5, 2016, Monica Bloom formatted in Word and then in an e-mail what was said to be a statement of Jane Doe (when Jane Doe did not have access to a computer) and sent it to Defendant Katherine Sermersheim in lieu of Jane Doe appearing for a meeting with Defendant Katherine Sermersheim and three members of the Equity Committee. CARE was copied on to an e-mail informing investigators Jacob Amberger and Erin Oliver of the time of the half-hour meeting with Defendant Katherine Sermersheim and three members of the Equity Committee. John Doe was not sent a copy of the statement submitted for Jane Doe. (Rollock Ex. 15.)

CARE Facebook postings – for the 2015-2016 school year, Defendants produced CARE Facebook postings PU 0756-0884, reflecting a gender biased culture. Notably:

- PU 0760: "Want to know how to support a survivor? Commit to #StartByBelieving" promoting the idea that testimony should simply be believed without evidence.

- PU 0764: "Violence against women - it's a men's issue. This great @jacksonkatz Ted Talk is a must watch for everyone." The video is anti-male, talking about traditional masculinity (which was called "honorable manhood" at the time of the Civil War and helped us win two World Wars in the 20th century) as evil and responsible for violence and abusive conduct.

- PU 0765, 0770: #StartByBelieving hashtag promoting the idea that testimony should simply be believed without evidence.

- PU 0793: CARE post thanking men for an event called "Walk a mile in her shoes", advocating as "A Men's March to End Domestic Violence Against Women", according to a sign in one of the shared photos. The men in the photos all wore high heels for their walking event. No comparable event for woman wearing men's shoes

15

- PU 0796: "Did you know that nearly half (43%) of dating college women report experiencing violent and abusive dating behaviors?"

- PU 0814: #StartByBelieving hashtag with three women pictured hugging; promoting the idea that testimony should simply be believed without evidence.

- PU 0839: Quote from CARE:  "Try this: Google 'track girlfriend' and see how many sites teach someone how to stalk."   (Because there is no such thing as a crazy ex-girlfriend that stalks her former boyfriend. It is only ever the men that do all these bad and evil things.)

- PU 0840: Gender-biased graphic that indicates rape is solely caused by "rapists", with the other options being "short skirts, alcohol, flirty behavior, walking alone, television", all choices that indicate women are the sole victims. The Facebook post also quotes right below from an account called "Keep Her Safe."

- PU 0789, 0795, 0853: Advertisements for a movie screening on campus for a movie called *Escalation*. It was screened on October 7, 2015, and March 8, 2016, and was about an abusive controlling boyfriend ruining his girlfriend's life.

- PU 0859, 0862, 0863, 0864 Sexual Assault Awareness Month – April 2016 recognizing "survivors" and #StartByBelieving; promoting the idea that testimony should simply be believed without evidence.

- PU 0866-0867: The linked website called "startbybelieving.org" is entirely targeting women and promotes simply believing women complaining about sexual assault regardless of circumstance, citing research that was entirely woman-centric. Two quotations from the Facebook post: (i) "Because rapists attack an average of six times, one failed response can equal five more victims."  (ii) "Start by Believing is a public awareness campaign designed by End Violence Against Women International (EVAWI) to change the way we respond to rape and sexual assault in our communities."

- PU 0868: Link to article titled "Was I 'Raped Enough' To Call Myself a Survivor? - The Establishment" by a woman who claims she was raped by multiple men and in four out of six years in a relationship. The article is anti-male denouncing "mansplaining' and asserting men believe they are owed sex.

- PU 0870: "#WeBelieveYou  #StartByBelieving" promoting the idea that testimony should simply be believed without evidence.

- PU 0871, 0875: Advertising an event in which the speaker will "tackle rape culture." (See Law Professor Aya Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev 1027 (2016): the notion that university procedures are to counteract the rape culture of young men being encouraged to score through intimidation, pressuring and taking advantage of girls and the campus serial rapist.)

16

- PU 0885: "It's important for men, especially in a hyper-masculine culture that breeds so many assholes, to stand up and challenge the values that have been passed down to us. This is not just a woman's problem."

- PU 0891: quotes part of a June 21, 2016 Washington Post article about ending campus rape, commenting that the only thing necessary for a rape to occur is the presence of a rapist.

In addition, on June 21, 2016, the original CARE posting on Facebook about the article from *The Washington Post* shows the title "Alcohol isn't the cause of campus sexual assault. Men are." ([Screenshot of original posting.](#))  The Washington Post article can be seen at https://www.washingtonpost.com/posteverything/wp/2016/06/10/alcohol-isnt-what-causes-campus-sexual-assault-men-are/. The statement in the title of the article, which CARE advertised to the campus community, could be understood to blame men as a class for the problem of campus sexual assault rather than the individuals who commit sexual assault.

Gender Biased Procedural Irregularities - As described by Defendant Alyssa Rollock, in response to the April 4, 2011 Dear Colleague Letter, Purdue changed its disciplinary procedures that eliminated a hearing and instituted procedures that had "trained" investigators do an investigation and submit their report to the Dean of Students and an advisory panel of Equity Committee members. Purdue's post-April 4, 2011 Dear Colleague Letter procedures in the 2015-2016 school year had the involvement of CARE in providing advocacy services for female complainants throughout the process (here, drafting the initial complaint, working with investigators and submitting a statement of the female complainant to the Dean of Students and members of the Equity Committee) while no comparable services were given to the male respondent. Purdue's post-April 4, 2011 Dear Colleague Letter procedures in the 2015-2016 school year allowed for the investigators to do a second interview of the female complainant Purdue's post-April 4, 2011 Dear Colleague Letter procedures in the 2015-2016 school year denied access to the male respondent of the investigation report and thus handicapping the male respondent from defending himself from the allegations of sexual misconduct, as Plaintiff stated in his appeal documents (Rollock Exs. 5, 8). Purdue's post-April 4, 2011 Dear Colleague Letter procedures in the 2015-2016 school year had no hearing, only an unrecorded "meeting" with the Dean and members of the Advisory Committee of Equity at which meeting there was no opportunity for the presentation of evidence, no opportunity for the calling of witnesses, no opportunity for the offering of documents, no opportunity for the cross-examination of adverse witnesses, no taking of testimony of witnesses under oath and no transcript of proceedings and at which time the male respondent had not have and did not have access to the investigation report so as to defend himself and Jane Doe did not appear to be subject to questioning Purdue's post-April 4, 2011 Dear Colleague Letter procedures in the 2015-2016 school year involved an appeal process that allowed the disciplinary decision against the male respondent to be based on an investigation report and a statement for female complainant to which the male respondent was denied access and could not respond.

The deposition testimony of Monica Bloom, Jacob Amberger, Katherine Sermersheim, Defendant Alysa Rollock and Plaintiff and the deposition exhibits of those deponents supports the foregoing.

24. Do you contend that Purdue employs different procedures for investigating female students accused of sexual misconduct than those employed for investigating male students accused of sexual misconduct? If so, identify all facts or evidence supporting this contention.

**ANSWER:** Plaintiff's Complaint has alleged that most all complaints of sexual misconduct are made by females against males; and discovery from Defendants in the form of a chart showed that in the 2015-2016 school year, there were no female respondents accused of sexual misconduct. In any event, different formal procedures for males and females are not necessary for differential treatment of males and females.

## RESERVATION OF RIGHTS

Plaintiff John Doe reserves the right to supplement, amend or modify these disclosures to what are contention interrogatories before the close of exert discovery.

I HEREBY AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT.

Dated: 30OCT2020    John Doe (a pseudonym)

Date: October 30, 2020

Respectfully submitted,
NESENOFF & MILTENBERG, LLP
By: /s/ *Philip A. Byler*
Philip A. Byler (pro hac vice admission)
Andrew T. Miltenberg
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
pbyler@nmllplaw.com
**Attorneys for Plaintiff John Doe**

18

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served upon the attorneys of record for each party to the above-entitled cause at the address shown below on September 10, 2020:

William P. Kealey, Esq.
Tyler L. Jones, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: **wpk@stuartlaw.com**
　　　　**tlj@stuartlaw.com**

*Attorneys for Defendants*

**BY:**    ☐ **U.S. Mail**        ☐    **Federal Express**

　　　　☐ **Hand-Delivery**    x    **Other: Email**