**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.,** in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) | |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) | |
| at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants, by counsel, respond in opposition to Plaintiff John Doe's Motion for Partial

Summary Judgment (DE 181).

**Introduction**

John's Motion concedes that he cannot meet the summary judgment standard for his

claim of gender bias. His Motion seeks relief only on his stigma-plus theory of relief.

John seeks injunctive relief "vacating John Doe's disciplinary findings and decision,

granting expungement of John Doe's transcript of the disciplinary record, ordering the ending of

the suspension subject to any readmission requirements." (DE 160 at ¶ 112; DE 181 at p. 2). In

this formulation, the stigma-plus claim only concerns the "disciplinary findings and decision."

The stigma-plus claim is not about John's Purdue suspension (which is no longer ripe) or

readmission (which is not a protected interest).

1

As a plaintiff-movant under Rule 56, John must establish that the evidence is dispositive in his favor on each element of his stigma-plus claim. Yet, on multiple elements of that claim, John does not even purport to show dispositive evidence.

- John's Motion does not designate evidence to show standing for an occupational liberty claim. When John filed this case and pursued it to the Seventh Circuit, he repeatedly promised to show that his occupational liberty for naval service has been permanently and terminally stigmatized. He no longer makes that claim. He designates no evidence for that proposition. John does not allege or show that he was ever ineligible to enroll in Navy ROTC at an institution other than Purdue. He does not allege that he was or is ineligible to enlist in the Navy. John's Motion concedes that the sole reason he was disenrolled from the NROTC unit at Purdue in August 2016 was his lack of Purdue enrollment for the upcoming 2015-16 academic year. His Motion admits that he was not disenrolled from that NROTC unit for misconduct.

- John's Motion does not even try to demonstrate the false-statement element of a stigma-plus claim. John has never mounted a legal challenge to the truth of Purdue's finding of sexual misconduct. He has never sought a rehearing at Purdue, nor any other mechanism of exoneration. He has not haled the Navy into this Court and sued for expungement of the Navy's records relating to Jane's allegation (which she submitted to the Navy, which then referred it to Purdue). His injunctive relief claim is directed at Purdue's records and would do nothing to redress the Navy's own disciplinary file on John, including the NROTC investigator's conclusion that the evidence supported Jane's allegation. Now, by attacking Purdue's Amended Counterclaim, John is even campaigning against inquiry into Purdue's cause for revoking John's permission to live and study at Purdue.

2

- John supplies no evidence to establish that he had a legal obligation to authorize Purdue to disclose its investigation and discipline file to the Navy. Although John promised to prove that he did so under legal compulsion, he has not followed through with any such legal authority or supporting evidence.

-  Purdue's conclusion on Jane's allegation begs the question whether the Navy would reach the same conclusion under the Navy's jurisdiction to regulate the same conduct under a Navy regulation. Even if the Navy were to consider the Purdue determination, no one contends that the Navy can apply a disciplinary determination to John without exhausting the Navy's own disciplinary process. John does not contend or try to show that he has exhausted the Navy's own process for deciding Jane Doe's allegation.

Instead of trying to prove a false statement, John has chosen only to complain about process. He argues that he never had the opportunity to address the evidence against him. In his appeals to Defendant Rollock, in his complaints in this Court, and in his appellate representations to the Seventh Circuit, John has insisted that Purdue hid the evidence of his culpability. In the words of his appeal to Defendant Rollock (quoted at page 22 of his summary judgment brief, DE 183) he "was never provided with the evidence that was supposed to support this allegation which prevented [him] from adequately preparing a defense to the false accusation."

John's statement is false. John was *the source* of the primary evidence against him. John's brief in support of his Motion for Partial Summary Judgment admits that John himself "provided" the text message evidence to the investigators. (DE 183 at p. 9). In his deposition, John admitted that the investigators focused directly on the text message evidence that he provided, and he was given an opportunity to respond to that evidence. Regarding his text message apology that he "violated" Jane Doe, John testified:

3

Q What did they discuss with you?
A They pushed me, saying that this was evidence of a sexual allegation.
Q What exactly did they say?
A They asked me about the texts and they wanted to know what my explanations for them were.
. . .
Q So it was a reasonable nonbiased step for the investigators to read those texts and have questions about them?
A Yes.
Q And the reason was a reasonable nonbiased reaction for the investigators to read these texts and have questions about them is that the texts refer at one point to you touching [Jane Doe]?
A Yes.

(DE 178-27, Ex. Z at pp. 118-19).

### Statement of Genuine Disputes

Pursuant to Local Rule 56-1(b)(2), Defendants provide this Statement of Genuine Disputes to show why John Doe's Fourteenth Amendment Due Process claim and Defendants' Amended Counterclaim cannot be summarily decided in favor of John.

#### A.    Fourteenth Amendment Stigma-Plus Due Process Claim.

On the basis of the evidence set forth in Defendants' Motion for Summary Judgment, Defendants genuinely dispute whether John possesses evidence sufficient to prove any element of his stigma-plus theory of relief.

First, Purdue did not deprive John of occupational liberty.

1)  John lost his NROTC scholarship because of his academic performance, not because of Purdue's suspension.

2)  Jane first reported her allegation to NROTC. The NROTC and Navy placed John on an involuntary interim leave of absence according to their own rules and prior to any investigation or determination by Purdue.

3) John was disenrolled from the NROTC unit at Purdue solely because he could not enroll in the NROTC program at Purdue while he was not enrolled at Purdue during the 2015-16 academic year.

4) There is no evidence that Purdue's evaluation of the evidence on Jane's allegation has foreclosed John from a career in the Navy. There is no evidence that John is barred from participating in NROTC, whether at Purdue or at any other school that offers NROTC.

5) There is no evidence that John was under a legal compulsion to execute the authorization giving NROTC access to Purdue's investigation file and disciplinary decision(s).

6) Expungement of Purdue's records will not expunge materials in NROTC's file, including Jane's report to NROTC, John's disqualifying grades, and LT Redlawsk's conclusion that John sexually assaulted Jane.

7) There is no evidence from NROTC or the Navy explaining how either would handle Jane's report and John's grades if John sought re-enrollment or enlistment, respectively.

Second, the Fourteenth Amendment Due Process to which John was entitled was notice and an opportunity to be heard. John admits that he received notice and an opportunity to be heard. (DE 183 at p. 4 ("John Notified of Jane Doe's Allegations"), p. 8 ("John Doe's Written Response"), p. 13 (John's meeting with the Dean and the Advisory Committee members), p. 14 ("John Doe's First Appeal"), p. 18 ("John Doe's Appeal of Re-Issued Determination and Sanctions")). As a result, there is a genuine dispute on John's contention that he was denied Due Process. Further,

1) John and Jane were each questioned by Purdue investigators. John had his attorney/support person present with him during the interview.

2) John does not identify any witness with personal knowledge of his sexual assault of Jane whom the investigators failed to interview; instead, he confirmed that the only witnesses would have been Jane and him.

3) There is no evidence that John requested the opportunity to question Jane or to have specific questions asked to her by another.

4) The Fourteenth Amendment does not afford John any right of witness confrontation in the context of a school disciplinary proceeding.

5) There is no evidence showing the materiality of any hypothetical cross-examination of Jane. Even during the pendency of this case, the record does not show any examination of Jane by John's counsel, and John's motion does not proffer any evidence showing the materiality of such cross-examination.

6) John does not identify any documents or evidence that investigators were not given or otherwise refused that supported his case. Purdue did not refuse to consider any documents or other tangible evidence that John wished to be considered.

**B.      Purdue's Counterclaim.**

John's Motion for Partial Summary Judgment does not contend that the material facts on Purdue's Amended Counterclaim are dispositive in his favor. John's Second Amended Complaint does not ask this Court to determine his innocence. Further, John admits that the Title IX decision on Jane's allegation cannot be summarily adjudicated in his favor. (DE 181 at p. 2.) As set forth in Defendants' Motion for Summary Judgment, there was a preponderance of evidence that John was in violation of Purdue's regulation of sexual misconduct, and that the violation merited a suspension pursuant to Purdue's police power.

**C.      Unsupported Assertions in "Statement of Material Undisputed Facts".**

The following assertions in John's Statement of Material Undisputed Facts are not supported by their accompanying evidentiary designations.

Paragraph 5: John cites his complaint's allegations, which are inadmissible hearsay. John alleges that he "reported Jane Doe's suicide attempt to a Purdue Resident Assistant". The cited evidence refers only to a report by John Doe that someone (the name is redacted) had indicated that they had "thoughts" of suicide.

Paragraph 19: The text messages provided to Purdue investigators refer to John's non-consensual touching of Jane Doe. (DE 178-7, Ex. F at p. PU 0127; DE 178-27, Ex. Z at pp. 118-19, 124, 128; DE 178-55, Ex. AAA at p. PU 067). John acknowledged that these texts at least partially referred to his touching of Jane Doe while she slept. *Id.* John concedes that it was reasonable for the investigators to ask about those texts because they referred to him touching Jane in her sleep. (DE 178-27, Ex. Z at pp. 118-19).

Paragraph 20: John was aware of how the investigators were interpreting his text messages. John conceded at his deposition that the investigators asked him about the critical text messages; specifically, he stated "They pushed me, saying that this was evidence of a sexual allegation. . . . They asked me about the texts and they wanted to know what my explanations for them were." (DE 178-27, Ex. Z at pp. 118-19).

Paragraph 25: John opines "Monica Bloom . . . submitted a written statement *said* to come from Jane Doe." (DE 183 at p. 19) (emph. added). Plaintiff designates no evidence that anyone other than Jane Doe authored the statement. None of Plaintiff's cited materials dispute or pertain to the authenticity of Jane Doe's written statement or whether it was authored by Jane Doe.

Paragraph 27: John's allegation that "Advisory Committee members acted with hostility in the way questions were asked" is not supported by the materials cited. As the cited deposition transcript shows, John testified that he could not remember what questions he was asked that he allegedly took offense with.

Paragraphs 54 and 57 are misleading when they imply that John Doe satisfied NROTC's academic requirements, by referencing John Doe's "cumulative" GPA—which includes grades for classes he took for college credit in high school—and not his semester GPAs, which were below NROTC academic requirements each semester at Purdue and caused, first, his receipt of an Academic Warning and, subsequently, an ILOA.  (*See* DE 178 at pp. 27-28).

Paragraph 56: This allegation contains an incomplete quote.  The entire sentence from the "Fitness Report & Counseling Record" dated February 22, 2016, reads: "very motivated, but has had multiple problems with responding to commands and showing up to PT and drill on time." There were also numerous references on this review about John Doe's substandard academic performance.

Paragraph 60: John was slated to have another PRB scheduled for his grades and "further administrative action, potentially to include [a PRB]" on Jane Doe's allegations to LT Sheppard. (*See* DE 178-15 and 178-50, Ex. N and WW)  To the extent that John contends that the NROTC did not plan on proceeding with a PRB on either of these rule violations, his evidence does not support the proposition.

Paragraph 65: Plaintiff's cited material is incorrect to the extent that he claims that Purdue is the only location of files on Jane's allegation against John where references to Jane's allegations, his misconduct, and discipline are located. John's own Motion cites documents produced by the Navy pursuant to subpoena in this case regarding Jane's allegation against John.

Paragraph 66: The cited materials do not show that Plaintiff would today be denied reenrollment at Purdue if he maintained his innocence. For that proposition, John cites portions of questions to Oliver, who is not a Purdue employee. John's counsel had not laid any foundation for Oliver's bases to answer these questions and Defendants' counsel objected to both questions. Moreover, Oliver did not know the answer to the questions and answered that she would not speculate. This testimony cannot be cited for the proposition that John would be denied reenrollment at Purdue under the circumstances suggested in Paragraph 66.

**Argument**

      **A.**     **Fourteenth Amendment Stigma-Plus Due Process Claim.**

Count I of John's Second Amended Complaint, captioned "42 U.S.C. § 1983: Denial of Fourteenth Amendment Due Process", pends solely against Defendants Rollock and Sermersheim in their official capacities for "an injunction vacating John Doe's disciplinary findings and decision, granting expungement of John Doe's transcript of the disciplinary record, ordering the ending of the suspension subject to any readmission requirements." (DE 160 at ¶ 112). John seeks a judgment granting this "requested injunctive relief." (DE 181 at p. 2).

      **1.**     **The suspension is a moot issue for prospective injunctive relief.**

John's Second Amended Complaint fails to allege any actionable controversy on "ordering the ending of the suspension subject to any readmission requirements". The Court cannot enjoin a one-year suspension that ended four years ago. Termination of the suspension is a moot issue. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (summary of authorities).

      **2.**     **The Motion does not establish the defamation element of a stigma-plus claim.**

John's stigma-plus theory of relief melds elements of a defamation claim and a

Fourteenth Amendment Due Process claim, as follows:

> The stigma-plus test was first articulated in *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). The Supreme Court in *Paul* clarified that the "mere defamation of an individual" without a showing of a change in legal status was insufficient to invoke the guarantees of procedural due process." 424 U.S. at 706. Breaking down the term "stigma-plus," then, "stigma" refers to the government's act of defamation, and "plus" refers to a change in legal status. Notably, the "stigma" part of the stigma-plus test has always been grounded in common-law conceptions of defamation, ever since the test's origin in *Paul*.

*Doe v. Trs. of Ind. Univ.*, No. 1:20-cv-00123-JRS-DML, 2021 U.S. Dist. LEXIS 105760, *5

(S.D. Ind. May 4, 2021).

The elements of defamation include publication of a false statement. In the context of a

stigma-plus claim involving a university's discipline of student sexual misconduct, the claimant

must show that the university "disclosed to a third party that it had found John guilty of sexual

misconduct". *Doe v. Trs. of Ind. Univ.*, 2021 U.S. Dist. LEXIS 105760, *15. Because "a true

statement cannot create liability for defamation" a stigma-plus claim by such a student cannot

succeed without proof of a false statement. *Id.* at *14.

Here, John does not even try to establish the falsity of Purdue's finding in favor of Jane

on her allegation against John. Even if John had tried to do so, he could not succeed under Rule

56 because the Court "construes all facts and draws all reasonable inferences in favor of the party

against whom the motion was filed." *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co.

of Am.*, 849 F.3d 355, 361 (7th Cir. 2017) (quoted and applied in *Pryor v. Corrigan*, No. 17-cv-

1968, 2021 U.S. Dist. LEXIS 60852, *22 (N.D. Ill. Mar. 30, 2021)). Drawing all reasonable

inferences in favor of the Defendants with respect to John's text message confession and the

investigation that Purdue performed, there is a material issue of fact on whether Purdue falsely

stated that the preponderance of evidence showed sexual misconduct by John toward Jane.

Therefore, John's Motion fails to establish the falsity element of defamation and, in turn, fails to establish the defamation element of his stigma-plus claim. This makes it impossible for him to establish a right to relief under Rule 56 on his Fourteenth Amendment Due Process claim.

Further, consent to publication defeats a defamation claim and therefore also defeats a stigma-plus claim. *Doe v. Trs. of Ind. Univ.*, 2021 U.S. Dist. LEXIS 105760 at *10-13. There is no evidence that John's decisions to enroll in the Navy ROTC curriculum, and to consent to disclosure to Purdue Navy ROTC regarding Purdue's finding on Jane's allegation, were anything other than "voluntary consent". *Id*. at *12 (compliance with disclosure in a university transfer application or employment application is an act of "consent" not an "extant legal obligation – like a statute or regulation").

As the Seventh Circuit noted at the pleading stage in this case, "John *says* that he had an obligation to authorize Purdue to disclose the proceedings to the Navy." *Doe v. Purdue*, 928 F.3d 652, 662 (7th Cir. 2019) (emph. added). That decision added: "if what John says is true, the university has stigmatized him by telling the Navy about the guilty finding." John has failed to follow through and show those claim elements. In his Motion for Partial Summary Judgment John has not even tried to prove a legal obligation to disclose, nor that the "guilty finding" was a defamatory false statement.

### 3. The Motion does not establish deprivation of John's occupational liberty for naval service.

For a Fourteenth Amendment Due Process injunctive relief claim, John must first prove deprivation of a protected interest and then prove that the deprivation occurred without the minimum due process guaranteed by the Fourteenth Amendment. *Doe v. Purdue*, 928 F.3d at 659 ("The threshold question, then, is whether John lost a liberty or property interest when he

was found guilty of sexual violence and punished. We address whether the procedures satisfied minimum constitutional requirements of fairness only if the answer to that question is yes.").

The only Fourteenth Amendment Due Process claim that the Seventh Circuit permitted to go forward in this case is his allegation "that Purdue deprived him of a protected liberty interest: his freedom to pursue naval service." *Id.* at 661. In turn, his stigma-plus claim is limited to injunctive relief to remedy a current or imminent deprivation of occupational liberty "to pursue naval service". For standing to petition for injunctive relief, John must allege an imminent injury-in-fact (the deprivation) and how the injunctive relief would remedy that injury-in-fact. It does not matter that John was disenrolled from Purdue NROTC five years ago. What matters is whether John has the occupational liberty to pursue naval service today.

### a.      John does not allege or show deprivation facts.

John does not allege or show imminent injury-in-fact to his occupational liberty for naval service. On August 16, 2016 – one week after he was disenrolled from Purdue NROTC – John affirmed to Navy ROTC that he understood that he retained the occupational liberty for naval service. In a letter to the Purdue NROTC Performance Review Board, John wrote, "I still wish to serve my country in whatever means possible once I have completed my education, whether that means *enlisting* or something else entirely, only God knows for sure." (DE 53-6 at p. 2) (emph. added). That same letter confirmed John's understanding that his status was "disenrollment from Purdue NROTC". *Id*. Nothing in the letter refers to any Navy discipline. Nothing in the letter refers to ineligibility to re-enroll in any NROTC unit, whether at Purdue or elsewhere.

There is no allegation or evidence that John has pursued naval service since August 2016, nor any allegation or evidence of any response from the Navy. With no existing or imminent occupational liberty at stake, John cannot meet the injury-in-fact requirement for standing. "The

injury-in-fact requirement . . . [is] the '[f]irst and foremost' element of standing." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." (DE 84 at p. 22) (quoting *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (internal quotation marks omitted)).

John cannot cure this standing defect by hypothesizing what might happen if he were to seek to enlist in the Navy or re-enroll in NROTC. Any such hypothetical obstacle is an unripe basis for subject-matter jurisdiction. "Ripeness is predicated on the 'central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute,' and '[c]ases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.'" *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (alterations in original) (internal citations omitted).

### b. John's 2016 NROTC disenrollment did not deprive his occupational liberty for naval service.

The Seventh Circuit construed John's complaint as an allegation that Purdue's verdict was conclusive for the Navy's purposes: "[I]t was this official determination of guilt, not the preceding charges or any accompanying rumors that allegedly deprived John of occupational liberty. It caused his expulsion from the Navy ROTC program (with the accompanying loss of scholarship) and foreclosed the possibility of his re-enrollment in it." *Doe v. Purdue*, 928 F.3d at 662-63. Today, not even John contends that the Navy adopted Purdue's findings as a Navy disciplinary determination.

John has always known that the truth is far different. John now admits that he was not expelled from NROTC and did not undergo any Navy discipline for misconduct. In John's words:

- "John Doe was disenrolled from the Navy ROTC program on the Purdue campus in August 2016 solely for the stated reason that John Doe was ineligible to enroll at Purdue for the 2016-17 academic year due to Purdue's suspension and [] John Doe was not disenrolled from the Navy ROTC program at Purdue as Navy discipline for misconduct." (DE 162 at p. 5).

- The Purdue Navy ROTC Unit "did not make a determination that Plaintiff John Doe had committed sexual misconduct". (DE 183 at p. 31).

- "[T]he Performance Review Board did not care why John Doe was suspended from Purdue". (DE 183 at p. 42).

These admissions establish that John's occupational liberty for naval service was not foreclosed when he left the NROTC unit at Purdue NROTC program in 2016. His disenrollment related solely to the fact that he was leaving Purdue altogether for the coming year. There is no evidence or reason to expect a different result for *any* student who would not be returning to Purdue University for the 2016-17 academic year, regardless of the reason.

This is not news to John. As quoted above in John's August 16, 2016 letter, John knew that he was disenrolled, not expelled. Why then did John strenuously try to block a subpoena for the Navy file that showed the truth about his disenrollment? (DE 53). When he fought that subpoena in June 2019, John declared under oath that the Navy's "announced 'Zero Tolerance' policy toward sexual misconduct" was the reason why he could not continue in the Purdue

NROTC unit. (DE 53-3 at p. 3). When he made this statement under oath, John knew that the Navy's sexual misconduct policy played no role in his disenrollment.

In that same declaration, John stated that the Navy forced him to resign from the Purdue NROTC unit: "I submitted on August 16, 2016, my involuntary resignation from the Navy ROTC." *Id*. at p. 10. This is a fabrication. John's Motion admits that John had been disenrolled on August 10, 2016, six days before the supposed involuntary resignation letter. (DE 183 at p. 30). John's August 16, 2016 letter to Purdue NROTC does not use the term resignation or any synonym for it. According to the opening line of the August 16 letter, John did not resign, he was disenrolled: "Despite the unfortunate circumstances surrounding my disenrollment from Purdue NROTC . . ." (DE 53-6 at 2).

John's fabricated "involuntary resignation" played a central role in the Seventh Circuit's ruling. According to the appellate summary of John's allegation, "A few weeks after his second appeal was denied, John involuntarily resigned from the Navy ROTC, which has a 'zero tolerance' policy for sexual harassment." 928 F.3d at 658.

> **c.**  **Purdue's disciplinary file and the alleged re-enrollment conditions are immaterial to John's current occupational liberty.**

Because the Navy did not disenroll John for sexual misconduct, John cannot link Purdue's disciplinary file to his occupational liberty. The Court of Appeals allowed John to try to prove "that if the guilty finding is expunged, a career in the Navy may once again be open to him." *Doe v. Purdue*, 928 F.3d at 666. As it turns out, a career in the Navy was never closed to him. The only thing closed to him was enrollment in the Purdue NROTC unit while he was not enrolled at Purdue University.

Purdue's unexpunged records of a one-year suspension that ended more than four years ago are immaterial to John's occupational liberty today. John did not lose his occupational liberty for naval service in 2016, so those records were not material then. Nothing has changed to make those records material to John's occupational liberty today. Further, the Navy has its own file on Jane Doe's allegation to the Navy. Expungement of Purdue's disciplinary file would not affect the Navy's file.

John has elected not to re-enroll at Purdue after his one-year suspension ended in mid-2017. That decision is John's choice. John's refusal to re-enroll at Purdue since 2017 is immaterial to the elements of his stigma-plus claim. His stigma-plus claim concerns his occupational liberty, not the conditions of enrollment at Purdue University. For John as a stigma-plus claimant, there is no redress available to John for Purdue's "readmission requirements". *Doe v. Purdue*, 928 F.3d at 660 ("John has not adequately alleged that Purdue deprived him of property because his complaint does not point to any specific contractual promise that Purdue allegedly broke."). Injunctive relief regarding admission to Purdue does not implicate occupational liberty for naval service. Admission to Purdue is not a prerequisite to a career in naval service. Therefore, Purdue's "readmission requirements" and "transcript of the disciplinary record" are not material to John's stigma-plus claim.

Whether John perceives reputational stain in complying with re-enrollment requirements is immaterial. A Fourteenth Amendment Due Process occupational liberty claim is concerned with liberty, not reputation. The Court of Appeals rejected the proposition that "loss of reputation" is a "loss of liberty". *Doe v. Purdue*, 928 F.3d at 662 (citing *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)). In any event, John Doe is anonymous in this case and there is no evidence to show that he in fact has any reputational stain. Further, a re-enrollment

requirement that confirms John's readiness to comply with Purdue conduct regulations is no burden on John. Surely he does not contend that Purdue is not entitled to require such an assurance from an enrolling student.

By electing not to re-enroll at Purdue, John has made himself ineligible to enroll in the NROTC unit at Purdue. That choice is a self-imposed exclusion, not a loss of occupational liberty. Further, many colleges offer Navy ROTC, and the Navy itself offers many paths to enlistment. Here, the Navy, a non-party, controls John's hypothetical future in the Navy. There is no evidence that, upon John's re-enrollment at Purdue, the NROTC unit at Purdue would refuse to re-enroll John. John's August 2016 NROTC disenrollment does not impose any conditions on John's re-enrollment in NROTC (whether at Purdue or another school) or enlistment in the Navy. No Navy document determines that he is ineligible to serve in the Navy today. No Navy witness has testified that he is ineligible to serve in the Navy today. On the available evidence, John—like any other student applying to colleges—is free to apply to enroll at any school that has an NROTC program.

### 4.     No lack of Fourteenth Amendment Due Process.

In his Motion, John also loses sight of the fact that his Due Process claim pends under Section 1983 and the Fourteenth Amendment, not any statutory due process under Title IX regulations. Title IX and its implementing regulations do not modify Fourteenth Amendment Due Process. Therefore, John is limited to the skeletal Fourteenth Amendment Due Process that the United States Supreme Court has declared in long-standing precedents. On the evidence set forth in Defendants' own Motion for Summary Judgment, Purdue adhered to constitutional Due Process for Purdue's regulation of misconduct implicating campus safety.

John does not dispute the sufficiency of notice of Jane's allegations.[1] There is no dispute that Purdue provided John ample opportunity to present his side of the story. He was interviewed by two investigators, three panelists, and Defendant Sermersheim.

John contends: "[W]ithout a hearing that included sworn testimony and the cross-examination of witnesses, there was no proper basis for making such credibility judgments." (DE 160 at 33, ¶ 57). However, for a disciplinary determination in the school environment, the Fourteenth Amendment does not afford John a procedure with sworn testimony and cross-examination of witnesses. "Due process does not . . . require a judicial or quasi-judicial trial . . . before a school may punish misconduct." *Coronado v. Valleyview Pub. Sch. Dist. 365–U*, 537 F.3d 791, 795 (7th Cir. 2008) (citations and internal quotation marks omitted). In a school setting, the fundamental requirements of due process are notice and the opportunity to be heard in a meaningful time and a meaningful manner. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Buttitta v. City of Chi.*, 9 F.3d 1198, 1206 (7th Cir. 1993). "A school is an academic institution, not a courtroom or administrative hearing room." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978). The Court of Appeals did not hold that the Fourteenth Amendment guarantees John a right of confrontation and cross-examination in a school disciplinary setting. *Doe v. Purdue,* 928 F.3d at 664 n.4 ("we need not address this issue."). "The Court is bound by what the law is and not by what [Plaintiff] believes the law ought to be. . .. As the law stands in Indiana and in the

---

[1] In John's words, the sexual-contact allegations against him were that: "Jane Doe woke up to John Doe's [*sic*] groping her while she was fully clothed and said to John Doe that this was not OK"; "John Doe then told Jane Doe that during another night in November 2015, while they were staying the night in Jane Doe's room, John Doe had penetrated her digitally while she was sleeping"; "Jane Doe was not aware of the incident in November 2015 while she was sleeping in her room, had not and did not consent to such sexual contact, and was upset when she was told about it". (DE 160 at pp. 16-17, ¶ 30).

Seventh Circuit, the Defendants were not required to give [Plaintiff] any more process than he received; and, therefore, dismissal of [Plaintiff's] due process claims is warranted." *Marshall v. Ind. Univ.*, 170 F. Supp. 3d 1201, 1208 (S.D. Ind. 2016).

John's Motion does not even try to show prejudice from alleged lack of witness confrontation. John does not tender any deposition testimony of Jane to show impeachability. John does not tender testimony of any roommate or other third-party to rebut Jane's account or overcome John's self-incriminating text message statement. John does not tender any deposition testimony from any panel member who met with him and heard his response to Jane's allegation. John's complaint promised to prove that he was denied a real hearing and subjected to a sham hearing, but he has come forward with no evidence to show any such thing.

John's two appeals to Defendant Rollock illustrate the sufficiency of the due process that Purdue afforded him. In those appeals, John complained of pro-victim bias and sought to reargue the weight of the evidence, including his argument that Jane's personal mental-health history was a retaliatory motive for her allegation. However, John did not contend that he had any further evidence to offer. (*See* DE 178-34 and 178-38, Ex. GG; Ex. KK). Those appeals establish that John had a complete opportunity to be heard before Purdue determined to discipline him.

John was represented by counsel during the Purdue disciplinary process, but he did not seek an evidentiary hearing and did not request an opportunity to cross-examine Jane or have any questions presented to Jane. He did not provide Purdue with any offer of proof as to what he would show if he were to cross-examine Jane. *See, e.g.*, *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 465 (S.D.N.Y. 2015) ("Notwithstanding his conclusory statement that Inoa 'refused to ask many of my cross-examination questions,' Yu presents no evidence specifying which questions Inoa

19

did not ask, their relevance to the proceedings, whether they were redundant, or whether not asking them may have prejudiced Yu in some way.").

When asked in deposition what he would have asked Jane in cross-examination, John said, "I would've asked her why she is lying." (DE 178-27, Ex. Z at pp. 84-85). That singular "question" is not in fact a cross-examination question; it is an accusation. In deposition, John also testified that he would also have challenged Jane on the lack of witnesses to the alleged sexual contact. *Id.* However, the lack of third-party witnesses to the alleged digital penetration was a limitation on both John's and Jane's contentions.[2]

## B.    The Counterclaim

Purdue's Counterclaim prays for declaratory judgment "that John Doe's above-alleged misconduct violated Purdue University's conduct regulations . . . that Purdue University, in the exercise of its discretionary authority as an instrumentality of the State of Indiana to police the safety of its campus, has at all relevant times possessed good and adequate cause to suspend John Doe from enrollment at Purdue University. . . . [and] that Purdue University, in the exercise of its discretionary authority to protect its educational environment from interference with its

---

[2] Because John has not pursued his available state-court remedies, he retains a meaningful post-deprivation remedy and has not established deprivation without due process of law.  *See Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013); *see, e.g., King v. Depauw Univ.*, No. 2:14-cv-70-WTL-DKL, 2014 U.S. Dist. LEXIS 117075, *29-30 (S.D. Ind. Aug. 22, 2014) (application of *Chang* regarding student sexual misconduct discipline). He has simply chosen not to pursue it. An allegation that a state actor has not met the procedural requirements of the Due Process Clause is not an actionable deprivation if a "meaningful post-deprivation remedy" is available in state court. *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984). Where there is a state-law cause of action available to remedy the alleged deprivation, the deprivation is "not 'without due process of law". *Altman v. Hurst*, 734 F.2d 1240, 1242-43 (7th Cir. 1984); *see also Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (citing *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 805 (7th Cir. 2010)). "In this instance, the plaintiff must 'avail [himself] of state post-deprivation remedies or demonstrate that the available remedies are inadequate.'" *Cannici*, 885 F.3d at 479 (quoting *Leavell*, 600 F.3d at 805). A deprivation of an allegedly protected interest "is not complete until and unless [the state] provides or refuses to provide a suitable post[-] deprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

educational mission, has at all relevant times possessed good and adequate cause to exclude John Doe from Purdue University's educational environment." (DE 161 at 67-68).

John is before this Court as an invitee who was told to leave Purdue for a year. As a student on the Purdue campus, he contracted for permission to live and study on Purdue property and interact with other students, in accordance with Purdue's conduct rules. There is no dispute that John's relationship with Purdue is permissive and that the permission can be revoked.

Neither the Fourteenth Amendment nor Title IX afford John an unconditional permission to live and study on Purdue property and interact with other students. Therefore, John's Fourteenth Amendment and Title IX grievances beg the question whether John's conduct amounted to cause to revoke his permission to be at Purdue.

John has chosen not to ask this Court to address that question. John chose to serve his suspension. He did not move for a preliminary injunction to stay his suspension. He did not ask this Court to order a do-over of Purdue's evidentiary process for Jane's allegation of sexual misconduct. He has not deposed Jane Doe. He has not summoned the Navy into this case and does not seek any expungement of the Navy's still-open investigation file on the allegation that Jane submitted to the Navy. John has not pursued a breach of contract claim in state court. John protests his innocence but shies away from asking the factfinder to agree with him. *See, e.g.*, DE 160 at ¶ 124 ("John was innocent . . .").

For these reasons, John's entire case is missing its punchline. John's Motion for Partial Summary Judgment does not seek to establish that the weight of the evidence is against Jane's allegation. As discussed above, John does not try to prove the defamation elements of a stigma-plus claim. Consistent with this history of avoidance, John now also tries to block Purdue's Amended Counterclaim.

John's tactical decision not to seek exoneration on the merits is in striking contrast to his pre-suit stance. In his words, his appeal to Purdue asserted "that he never penetrated Jane Doe while she was sleeping without her consent" and that "the determination he did so was incorrect and contrary to the facts and that he was being suspended for something John Doe did not do and did not occur." (DE 183 at pp. 21-22). He asserted the same position to the Navy. *Id*. at p. 31. (Tellingly, his phrasing "never penetrated Jane Doe while she was sleeping without her consent" implies a defense of consent to penetration "while she was sleeping".)

If this case is not summarily dismissed, Purdue is prepared to prove that it exercised its campus police power for cause. Purdue will show that it had evidence from which it could reasonably be concluded that John harmed Jane by sexual misconduct, and therefore Purdue had reasonable cause to revoke John's permission to be at Purdue. The Amended Counterclaim presents issues that are adjacent to the Title IX issues that John has excluded from his Motion for Partial Summary Judgment.

John has opened the door to the Amended Counterclaim by (i) seeking expungement of the record of Purdue's exercise of police power over his sexual misconduct, (ii) asserting but-for causation of harm from the interruption of his Purdue enrollment, and (iii) contending that Purdue lacks cause to subject him to "readmission requirements." (DE 160 at ¶ 153). Thus, there is a properly joined dispute in this case under the Declaratory Judgment Act. John cannot open the door with these contentions and then insist on closing the door to a police power determination regarding his sexual misconduct.

John's arguments for dismissal of Purdue's Counterclaim are purely legal: (i) lack of federal subject matter jurisdiction to declare issues of state law; (ii) the law of the case is that John Doe has a protected liberty interest; (iii) Fourteenth Amendment Due Process applies to

Purdue University's exercise of its police power for campus safety; and (iv) the Federal Declaratory Judgment Act cannot be employed to "mirror[] John Doe's claims except that Defendants seek the opposite effect". (DE 183 at pp. 50-54).

John's fourth contention defeats his first. If there is federal jurisdiction over John's declaratory judgment claims, there is federal jurisdiction over the "mirror" of John's claims.

John's second contention—that he has an occupational liberty interest in naval service—is immaterial to the Amended Counterclaim. John's occupational liberty interest in naval service does not exempt him from Purdue's conduct regulations and does not bar Purdue from revoking John's permission to live and study at Purdue and interact with Purdue students. As discussed above and in Purdue's own Motion for Summary Judgment, John has no protected interest in his permission to be on the Purdue campus. John never lost his occupational liberty for naval service, even though he lost his invitee status at Purdue. Since he never lost that occupational liberty, Fourteenth Amendment Due Process protection for that occupational liberty is immaterial to the invitee-permission that Purdue's Amended Counterclaim addresses.

**Conclusion**

For the above-stated reasons, Defendants respectfully request that the Court deny

Plaintiff John Doe's Motion for Summary Judgment.

Date: October 15, 2021                          Respectfully submitted,

                                                /s/ William P. Kealey
                                                William P. Kealey (18973-79)
                                                Tyler L. Jones (34656-29)
                                                James F. Olds (27989-53)
                                                Stuart & Branigin, LLP
                                                300 Main St., Ste. 900
                                                P.O. Box 1010
                                                Lafayette, IN 47902-1010
                                                Email: wpk@stuartlaw.com
                                                      tlj@stuartlaw.com
                                                      jfo@stuartlaw.com
                                                Telephone: 765-423-1561
                                                *Attorneys for Defendants*

1414025v1