IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) |
| **DANIELS, JR.,** in his official capacity as President of | ) |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |

### REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, by counsel, submit this reply to Plaintiff John Doe's brief in opposition (DE 187) to Defendants' motion for summary judgment (DE 177) filed on August 31, 2021.

**A.    There is no appellate determination that the evidence is sufficient for John to go to trial on his two pending claims.**

John repeatedly contends that the Court of Appeals ruling entitles him to a trial on the two claims that survived pleading practice in this case. He is mistaken. What John calls the "law of the case" rule is in fact two doctrines, as follows:

> The issue involves two related doctrines: the mandate rule and the law-of-the-case doctrine. "The mandate rule requires a lower court to adhere to the commands of a higher court on remand." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995), citing *In re Continental Illinois Securities Litigation*, 985 F.2d 867, 869 (7th Cir. 1993). "The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014), quoting *Polland*, 56 F.3d at 779.

*Carmody v. Bd. of Trs. of the Univ. of Ill.*, 893 F.3d 397, 407 (7th Cir. 2018).

The two claims reinstated by the Court of Appeals are:

1. "John has adequately alleged that Purdue deprived him of a liberty interest." *Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019).

2. "Taken together, John's allegations raise a plausible inference that he was denied an educational benefit on the basis of his sex. To be sure, John may face problems of proof, and the factfinder might not buy the inferences that he's selling. But his claim should have made it past the pleading stage, so we reverse the magistrate judge's premature dismissal of it." *Id*. at 671.

Applying the mandate rule, this Court's May 19, 2020 Order (DE 84) confirmed which allegations of John's complaint remain viable. There is no law of the case as to material issues of fact for trial. As described by the Court of Appeals, "John's allegations may face problems of proof". Allegations without proof do not satisfy the "Supporting Factual Positions" requirement in Federal Rule of Civil Procedure 56(c)(1).[1]

**B.    Stigma Plus: John fails to meet his continuing burden to show a ripe allegation of deprivation of occupational liberty.**

The Court of Appeals and this Court have framed John's due process allegation as a deprivation of occupational liberty in two steps: ineligibility to enroll in NROTC and ineligibility to "pursue a career in the Navy". (DE 84 at 19). For these allegations to remain ripe for injunctive relief, John must allege that he is *currently* barred from enrolling in a NROTC unit and *currently* barred from a career in the Navy.

Standing, as a jurisdictional prerequisite for a claim is a *continuous* requirement and must be maintained from the beginning of the suit to the end, *United States Parole Comm'n v.*

---

[1] *See Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (quoting *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999))).

*Geraghty*, 445 U.S. 388, 397 (1980); *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). If any element of standing is lost, then a claim becomes unripe and jurisdiction is lost, even if a party had standing at the initiation of the suit. *See id.*

John does not allege any current effort to enroll in college anywhere, or in turn, to enroll in Navy ROTC or otherwise enlist in the Navy, or any Navy refusal. For these reasons, John does not meet the standing requirement for alleging actionable deprivation of occupational liberty.

C.     **Stigma Plus: There is no triable issue on loss of occupational liberty.**

The Court of Appeals construed John's occupational liberty allegation as cause-and-effect: "Purdue changed his legal status by suspending him, subjecting him to readmission requirements, and causing the loss of his NROTC scholarship; and that these actions impaired his right to occupational liberty by making it virtually impossible for him to seek employment in his field of choice, the Navy." *Doe v. Purdue*, 928 F.3d at 660. John fails to designate evidence for any part of this contention. There is no evidence that John has sought to return to college or, in turn, to obtain a NROTC scholarship. Where there is no NROTC scholarship application, obviously there is no rejection. Because there is no material issue on barring John from NROTC, John cannot show any nexus between Navy ROTC and employment in the Navy. There also is no evidence that a NROTC scholarship is a mandatory precondition for John "to seek employment in his field of choice, the Navy." It is well-known that there are many paths to employment in the Navy. https://www.navy.com/joining-the-navy (accessed November 4, 2021).

D.     **Stigma Plus: Because John has not exhausted the process available to him under state law, he cannot show denial of constitutional due process.**

Purdue has the statutory authority under Indiana law to regulate John's conduct as a Purdue student. *See* Ind. Code § 21-39-2-3. Purdue's authority to regulate sexual harassment

3

derives from this statutory authority. *Hartman v. Keri*, 883 N.E. 2d 772, 778 (Ind. 2008). This statutory authority authorizes Purdue "to construct [its] own disciplinary procedures." *Id*.

In turn, as the Court of Appeals noted, John's relationship to Purdue is "contractual in nature". *Doe v. Purdue*, 928 F.3d at 660 (quoting *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009)). John was Purdue's invitee under a license pursuant to the implied contract of enrollment between Purdue and John.[2]

The Court of Appeals summarized John's due process allegations as: "Purdue did not disclose its evidence to John"; and the "hearing must be a real one, not a sham or pretense" with respect to determination of credibility. *Doe v. Purdue*, 928 F.3d at 663-664. John does not dispute that he has recourse to Indiana state courts for review of these allegations.[3]

An alleged deprivation without due process is not complete until all state post-deprivation remedies are exhausted or until the injured party demonstrates that those avenues would be inadequate. *See Altman v. Hurst*, 734 F.2d 1240, 1242-43 (7th Cir. 1984); *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984). Defendants first pointedly briefed this issue in its May 7, 2018 brief on appeal (Case No. 17-3565, DE 20, pp. 24-25).

At the outset of this case, John himself alleged this contractual remedy. John's original Complaint in this case alleged that Purdue breached its contract with John, as follows:

> Defendant Purdue Policies provides that students are to have a fair and impartial disciplinary process in which it is the responsibility of the University to show that a

---

[2] The Indiana Court of Appeals has "characterized the legal relationship between a student and a university as one of implied contract." *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013) (discussing *Neel v. Indiana University Board of Trustees*, 435 N.E.2d 607, 610 (Ind. Ct. App. 1982)). *See also Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) (invoking analysis in *Neel*). In *Chang v. Purdue University*, 985 N.E.2d 35 (Ind. Ct. App. 2013), the court described *Neel*, *Gordon*, and *Amaya* as "foundational" to claims relating to "the nature of the contractual relationship between a university and its students." *Id.* at 46.

[3] *Chang*, 985 N.E.2d at 47.

4

> violation has occurred before any sanctions are imposed. Defendant Purdue breached its contract with John Doe when it failed to conduct a fair and impartial process, including not holding a hearing. At no time was John Doe afforded the procedural guarantees that generally accompany a hearing, such as the right to present witnesses and evidence, confront one's accuser and cross-examine and challenge any witnesses against him, all before an impartial and objective factfinder. Thus, Defendants violated the contract with John Doe when they failed to afford him a proper hearing on Jane Doe's accusations against him.

(DE 1, ¶ 139). This allegation was dismissed without prejudice. (DE 32). Because John has not pursued this allegation in state court under the judicial review afforded by *Chang v. Purdue University*, *supra*, there is no material issue for trial on deprivation without due process.

**E.     Stigma Plus: Disclosure of the Purdue investigation report is not a material fact.**

Disclosure to NROTC of the Purdue investigation report is not a material fact, for two reasons. First, under the Court of Appeals ruling, the stigmatizing event is the "determination of guilt", not anything that preceded it. *Doe v. Purdue*, 928 F.3d at 662.

Second, there is no evidence that anyone at NROTC other than LT Redlawsk reviewed the Purdue investigation report, and John insists that LR Redlawsk's evaluation is immaterial. (DE 187, pp. 30-32).

**F.     Stigma Plus: Disclosure of Purdue's decision is not a material fact.**

Disclosure to NROTC of Dean Sermersheim's finding of sexual misconduct and Dean Rollock's affirmance of that finding is not material, for two reasons.

First, there is no evidence that the Navy compelled John to disclose the Sermersheim/Rollock finding. The Court of Appeals tasked John to show that the disclosure "was compelled" not "self-published", and John promised to prove that he "had a legal obligation to authorize the disclosure." *Doe v. Purdue*, 928 F.3d at 662. John has failed to deliver on that promise. A "legal obligation" means John must show what law applied to him and compelled the disclosure. Today John asserts only that he believes the Navy wanted to "be in the

loop" on his case.[4] (DE 187 at 25, 35). This weak assertion is a far cry from a statute, regulation, or rule compelling John to execute the authorization, and is therefore fatal to John's Stigma Plus claim.[5] Like a police officer asking for information in the hope that it will be volunteered, a NROTC request for information is merely a request, if not framed as a compulsory obligation.

Second, John has also failed to deliver on his promise to prove that Purdue's "official determination of guilt . . . allegedly deprived John of occupational liberty". *Doe v. Purdue*, 928 F.3d at 662. The Court of Appeals tasked John to prove that Purdue's change of "John's status" from "a full-time student in good standing to one suspended for an academic year" "caused his expulsion from the Navy ROTC program (with the accompanying loss of scholarship) and foreclosed the possibility of his re-enrollment in it." *Id*. at 663. The evidence is that John was disenrolled not expelled. John does not even try to show that he is currently barred from "the Navy ROTC program", whether at Purdue or at any other institution that hosts the Navy ROTC program.

**G.    Stigma Plus: John has not shown a material issue of harm from the alleged lack of due process.**

In the Court of Appeals, John admitted that the first element of his stigma plus claim requires him to show that Purdue "wrongfully brand[ed] him as a sex offender." *Doe v. Purdue*,

---

[4] John's support for this claim is his own deposition testimony (apparently glossing over the part where he explains that the circumstances of why he executed the authorization were "lost on [his] memory") and portions of XO Remaly's deposition stating that Purdue provided the authorization. He provides no explanation why, even if true, these facts amounted to a legal compulsion to self-stigmatize akin to *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005). It remains undisputed that no one with the NROTC ordered John to execute the authorization. (DE 178, Ex. E at p. 29; Ex. A at p. 45; Ex. C at p. 23).

[5] *See Doe v. Trs. of Ind. Univ.*, No. 1:20-cv-00123-JRS-DML, 2021 U.S. Dist. LEXIS 105760, at *12 (S.D. Ind. May 4, 2021) (plaintiff failed to demonstrate a "legal obligation to consent to disclosure of defamatory information" where he showed that he would have to disclose his suspension to transfer to a different university but failed to direct the court to a statute or regulation requiring the disclosure); *Purdue*, 928 F.3d at 662 ("[I] is true that a plaintiff can't himself spill the beans and then blame the defendant for ruining his reputation (citing *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997)).

928 F.3d at 661. In other words, John must show that the alleged lack of due process affected the outcome. A procedural grievance does not render a finding "wrongful" if the decision is grounded in sufficient evidence. Further, a stigma is not wrongful if it is true, as discussed in Defendants' October 15, 2022 brief in opposition to John's motion for summary judgment. (*See* DE 188, pp. 9-11).

    **1.**    **John's own words were sufficient to meet the preponderance standard.**

John's text message confession shows that Purdue possessed evidence of Jane's truthfulness. The key evidence was John's apology to Jane for violating her. The Investigators met with John and Jane, and heard their accounts, including John's backtracking explanation:

> [John] also apologized to [Jane] profusely in text messages. He explained the apologies were because he had lied to her about his own school work to help her with her own. However, when message[s] around those apologies were reviewed, statements made by [Jane] brought that explanation into question. When [John] was asked to clarify his apologies with [Jane]'s statements of inappropriate touching, he reluctantly confirmed that he was apologizing for that touching as well.

(DE 178, Ex. F at p. 10). As a result, there is no material issue of wrongful decision-making.

    **2.**    **John fails to designate any evidence to show Jane's absence from the Advisory Panel meeting is a material fact.**

The Court of Appeals gave John a proof roadmap regarding Dean Sermersheim and Jane, stating: "And in a case that boiled down to a 'he said/she said,' it is particularly concerning that Sermersheim and the committee concluded that Jane was the more credible witness—in fact, that she was credible at all—without ever speaking to her in person. Indeed, they did not even receive a statement written by Jane herself, much less a sworn statement. It is unclear, to say the least, how Sermersheim and the committee could have evaluated Jane's credibility." *Doe v. Purdue*, 928 F.3d at 664.

But John's summary judgment opposition does nothing to follow up on this spotlight and establish a material issue regarding the evidence available to Sermersheim for Jane's credibility. John could have asked Dean Sermersheim how she "evaluated Jane's credibility", and then supplied this Court with the answer, and then attempted to map Sermersheim's evaluation to a triable issue of fact under either the Stigma Plus allegation or the Title IX allegation. But he does not. Instead, he cites Sermersheim's testimony that "she could not recall the specific panel meeting and did not recall what the panel members and John said at the meeting." (DE 187, p. 17). For summary judgment purposes, this establishes nothing.

Without more, Jane's absence from the Advisory Committee meeting is not a material fact for any element of John's claims. As the Court of Appeals noted, the most that can be said of Jane's absence is that it is a "perplexing" aspect of Dean Sermersheim's decision.[6] *Doe v. Purdue*, 928 F.3d at 652. It is John's burden as plaintiff to show more than just a "perplexing" fact. A "perplexing" fact does not establish any claim element.[7]

John designates no evidence to contradict Jane's authorship of the statement that she submitted to Dean Sermersheim for the panel meeting. Jane's statement speaks for itself:

> One night, I went over to [John]'s room, someone I trusted, to watch a movie with one rule: to go back to my room alone that night. I wasn't comfortable sleeping in the same room with his roommate, and I wanted to get some space. Instead, I wasn't woken up to be walked back to [my dorm]. I was woken up, still in his room, to him moving up my leg and going over my crotch. I immediately got up, put my shoes on and left. I had left believing I got away before things escalated. .

---

[6] Although John has implied in his complaints and to the Court of Appeals that Advisory Committee members were deciders along with Dean Sermersheim, John designates no evidence to show that those members were anything other than advisors to Dean Sermersheim. It is plain on the face of Dean Sermersheim's ruling that she is the decider, as she speaks in the first person singular ("I find").

[7] The Department of Education's "Grievance process" regulation, which took effect in 2020 and therefore was not in effect when Jane's allegation against John was decided in 2016, would specifically bar a negative inference from Jane's absence: "the decision-maker(s) cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the live hearing." 34 CFR § 106.45(b)(6)(i).

> .. Only later to be told it happened another time. However, he had actually invaded me. I wasn't even able to get up and leave or fight back. How many other times could this have happened? What else could he have done to me?
>
> \*\*\*
>
> I stopped going to class, I stopped sleeping, I stopped eating, anything to keep from running into him. I didn't have any motivation, I'm still struggling to get out of bed every morning. . . . My nightmares are still getting worse. I wake up screaming convinced [John] is in the room. Even here in San Diego [(for summer Naval programing)] I've had to be pulled from various aspects of my training for my future career, because I couldn't handle it without a panic attack.
>
> \*\*\*

(DE 178, Ex. DD).[8] John fails to explain what he contests in this statement, or his basis for contesting it. There is no deposition testimony showing any impeachment of this statement. Crediting this statement is not inherently unreasonable or indicative of anti-male bias. Indeed, John himself has corroborated this statement by insisting that Jane exhibited traumatized behavior. A reasonable factfinder could credit Jane's statement--"Only later to be told it happened another time"--as also consistent with John's text message apology.

Further, no authority establishes that the statement of an unavailable witness must be excluded or discounted. The Court of Appeals did not declare that only statements of live witnesses could be considered. The investigators compiled information from many witnesses who never met with Sermersheim. The Court of Appeals did not declare that only sworn statements could be considered. There is no evidence that any witness was sworn by the investigators or Sermersehim; not even John himself. The Court of Appeals specifically declined

---

[8] John promised to prove that this statement was ghostwritten by Monica Bloom, a counselor at Purdue's sexual assault counseling unit. But John designates no evidence. The statement itself, which is in the summary judgment record, shows that it was emailed by Jane to Bloom for presentation to Sermersheim.

to declare that only statements subject to cross-examination could be considered. *Doe v. Purdue*, 928 F.3d at 664 n.4.

**H.    John has not designated evidence to show a triable issue of pretext, to overcome the Defendants' reasonable and nondiscriminatory grounds for decision.**

   **1.    No direct evidence of an anti-male intent.**

John does not contend or show that any Purdue personnel expressed anti-male bias to him. Whether any Purdue decision-maker expressed skepticism of John's credibility begs the question whether that skepticism is attributable to the evidence impeaching John, or to his gender. Expressions of care and support to sexual assault victims are also not expressions of anti-male bias because victims can be male or female.

John apparently reasons that Jane is a woman, John is a man, the credibility determination favored Jane, therefore John was disbelieved because he is a man. No authority finds such reasoning to be sufficient to show intentional anti-male bias. Gender bias cannot be inferred from the fact that the accuser is one gender and the accused is another. Nor can gender bias be inferred from the fact that the evidence is mixed, and that some of the evidence favored the student on the losing end of the decision. By definition, a preponderance standard recognizes that there is some evidence on both sides.

John offers no account of how Dean Sermersheim weighed the evidence. This is the hole at the center of John's Title IX argument. His entire account of Dean Sermersheim's decision is one sentence: "Defendants omit that Dean Sermersheim's June 14, 2016 letter did not state any explanations or reasons for her finding and that it was made without Jane Doe personally appearing before the Dean and the Advisory Committee and thus without examination or cross-examination of Jane Doe." Brief, p. 18. Describing things that did not happen provides no insight

into what Dean Sermersheim thought and did. At this "put up or shut up" juncture, John has not event tried to establish a material issue of fact as to what Dean Sermersheim thought and did.

John designates no testimony or other evidence connecting Dean Sermersheim or Vice-President Rollock to supposedly anti-male Facebook posts, or the supposed influence of the 2011 Dear Colleague letter. On its face, such third-party speech is probative of nothing more than the viewpoint of the third-party author. Encountering such third-party speech has no more probative value than hearing a fellow attendee's comments at a city council meeting. John cannot prove the state of mind of Sermersheim or Rollock by trying to show the state of mind of third parties.

John also cites to his "expert" for support that Purdue acted according to an anti-male bias. That evidence is inadmissible, as detailed in Purdue's motion to exclude it.

### 2. No indirect evidence of an anti-male intent.

John is attempting to prove anti-male bias through supposition and indirect evidence. John deploys the label "bias" as a catch-all for every fault he imputes to Purdue's investigators and their methods; to Purdue's advisory panel members and their preparation; to the format of Purdue's meeting with John; to Jane's submission of a written statement due to her unavailability while on Navy deployment on the day of the panel meeting with John; and, to seemingly everything that Dean Sermersheim and Vice-President Rollock did and did not do.

This is not a negligence case, nor a case about supposed best practices. Alleging a failure of best practices is, at most, an imputation of negligence. Alleging negligence contradicts an imputation of intentional bias.

Further, John's quarrels with Purdue's disciplinary process in 2016 fail to show that the process was different for male respondents than female respondents, or specifically different for John than for Jane. For example, John does not allege or show that meeting with Sermersheim

was compulsory for him or Jane. If it was optional for both of them, and if John took advantage of the option to press his defense and Jane did not or could not do so to press her grievance, that procedure is a dead end for purposes of inferring anti-male bias. Absent a showing that a procedure is different on its face for one gender than for the other, or different in application for one gender than the other, procedural grievances are not indicative of gender bias. *Rossley*, 979 F.3d at 1193.

### 3. The documented grounds of the decisions of Dean Sermersheim and Vice-President Rollock are reasonable and non-discriminatory.

The decision statements of Dean Sermersheim and Vice-President Rollock are grounded in the collected evidence (including the investigation report) as weighed pursuant to Purdue's established procedures. Therefore, those decisions are reasonable and non-discriminatory.

There was evidence impeaching the credibility of John's denial of Jane's allegation. That evidence included (1) Jane's interviews with the investigators and her statement to the panel, (2) John's inculpatory texts, (3) Jane's RA's contradiction of John's account that she unlocked Jane's dorm room, and (4) the Investigator's findings (*i.e.*, the Investigation Report), including John's inconsistent explanations for the texts. (DE 178, Ex. F at p. PU 0127). A factfinder who focuses on John's own written text message of apology is not displaying anti-male bias. A factfinder who reasons that John's lack of a credible alternative explanation for that apology impeaches his denial of responsibility is not displaying anti-male bias. [9]

---

[9] *See Rossley v. Drake Univ.*, 979 F.3d 1184, 1193 (8th Cir. 2020) (pointing out pieces of evidence that supported the school's decision); *Doe v. Univ. of Denver*, 952 F.3d 1182, 1198 (10th Cir. 2020). ("Simply put, DU's investigators were not faced with a situation in which the evidence substantially favored Plaintiff. . . . [T]here was evidence presented in favor of Jane's claim that the sexual encounter was not consensual, and it cannot be said that the investigators lacked an evidence-based reason for reaching their decision. Thus, it would not be plausible or reasonable to infer merely from the investigators' weighing of the evidence that they were biased.").

Even if the investigation report were the only evidence, it would be a sufficient, non-biased ground for Sermersheim to support her decision.[10] John has not objected to the evidence designated by Purdue. Therefore, the Purdue investigation report is in evidence for all purposes. One of those purposes is to show that Dean Sermersheim had evidence of Jane's credibility, in the form of the investigation report's summary of the investigators' interviews of Jane and their evaluation of her credibility. The investigation report also documents the investigators' analysis of their interview with John. Those evidence-based determinations regarding John and Jane are the very tasks assigned by Title IX under the *Davis v. Monroe County* requirement to respond to Jane's allegation.

John does not dispute that a reasonable, non-discriminatory factfinder would focus on his inculpatory text messages, as Purdue did. About Purdue's investigators, John testified:

> Q What did they discuss with you?
> A They pushed me, saying that this was evidence of a sexual allegation.
> Q What exactly did they say?
> A They asked me about the texts and they wanted to know what my explanations for them were.
> . . .
> Q So it was a reasonable nonbiased step for the investigators to read those texts and have questions about them?
> A Yes.

---

[10] **Received from [Jane Doe] on Mon Dec 28, 2015 10:22 PM:** "Or when I wake up to you touching me or I'm trying to do something and you just touch me I literally can't trust you if you don't respect my boundaries"

**Sent to [Jane Doe] on Mon Dec 28, 2015 10:37 PM:** "We already went over this several times. I cant even apologize anymore because you get angry at me for it."

**Received from [Jane Doe] on Mon Dec 28, 2015 10:38 PM:** "No I get angry because you continue to do it and just say sorry you don't actually change Anything"

**Sent to [Jane Doe] on Mon Dec 28, 2015 10:56 PM:** "Im not going in circles any more [Jane]. What more do you want me to say? Do you want this to be over? We have literally talked about this for a week and **I already told you I cant change what i did, only what i will do from here on out. Do you want me to feel shitty for the rest of my life because of what I did? Im feeling like i will. Im sorry. I cant change what i did, as much as i want to. I violated you and never should have.** What do you want me to do?

>Q And the reason was a reasonable nonbiased reaction for the investigators to read these texts and have questions about them is that the texts refer at one point to you touching [Jane Doe]?
>A Yes.

(DE 178, Ex. Z at pp. 118-19).

### 4. No evidence of pretext.

The ball is in John's court to show a material issue as to pretext. John must come forward with evidence to show that Purdue's efforts to investigate and decide the weight of the evidence were a charade for a pre-judged outcome. To show a material issue of anti-male bias, John must show that the reasonable, nondiscriminatory grounds for deciding credibility were <u>not</u> the deciding factor for Purdue's decision-makers. John must show that the deciding factor was anti-male bias. John designates no evidence for such a conclusion. Remarkably, John refuses even to discuss pretext and so forfeits any material issue of pretext. (DE 187, pp. 54-57).

In a discrimination case, the plaintiff is vulnerable to summary judgment if the plaintiff fails to produce evidence from which the factfinder could conclude that the decision-maker's stated nondiscriminatory rationale is a pretext for a discriminatory intent. The plaintiff must show that the decisionmaker "did not honestly believe the reasons given for their actions." *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478-79 (7th Cir. 2010). One path to this proof is to show that the stated reasons given by Sermersheim and Rollock for their decisions are "patently inconsistent with the evidence before the court". *Niles v. MCCI of Ind., LLC*, No. 1:20-CV-38, 2021 U.S. Dist. LEXIS 128721, *46-47 (N.D. Ind. July 12, 2021) (internal citation omitted). "A plaintiff must present evidence that the defendant's explanation is unworthy of credence and that her race or sex was a determinative factor behind the defendant's adverse action." *Id*. (internal citation omitted). In the words of this Court in *Niles*, John must come forward with more than "scant evidence and unsupported conclusory arguments" to show gender

bias, and "'[i]nferences supported only by speculation or conjecture'" are insufficient to overcome a motion for summary judgment. *Id*. at *46 (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018)). However, John fails to do so.

John tenders no evidence that the stated decisions of Sermersheim and Rollock were not honestly believed, or are "unworthy of credence" or "patently inconsistent with the evidence before the court". John presents nothing more than his circular reasoning that only bias can explain why anyone would find that his text message confession corroborates Jane and implicates him in sexual misconduct. John cites no authority that finds his stance sufficient to show a material issue of fact on pretext.

## **Conclusion**

For the above-stated reasons, Defendants respectfully request that the Court grant summary judgment in their favor and against Plaintiff John Doe.

Date: November 5, 2021.                                Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (18973-79)
Tyler L. Jones (34656-29)
James F. Olds (27989-53)
Stuart & Branigin, LLP
300 Main St., Ste. 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
         tlj@stuartlaw.com
         jfo@stuartlaw.com
Telephone: 765-423-1561
*Attorneys for Defendants*

1421093v2