IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| Plaintiff, | ) **CIVIL ACTION** |
| v. | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR.,** in his official capacity as President of Purdue University, **ALYSA CHRISTMAS ROLLOCK**, in her official capacity at Purdue University, **KATHERINE SERMERSHEIM**, in her official capacity at Purdue University, | ) No. 2:17-cv-33-JPK |
| Defendants. | ) |

## DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY

Pursuant to Federal Rule of Evidence 702, Defendants, by counsel, move this Court to exclude the opinion of R. Christopher Barden disclosed by Plaintiff John Doe and designated in Plaintiff John Doe's Response Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (DE 187) ("John's Opposition"). *See* DE 187-23 (copy of Barden opinion). Because the Barden opinion does not meet the threshold requirements for admissibility of an expert opinion under the Federal Rules of Evidence and the *Daubert* requirements, the Barden opinion should be excluded from the summary judgment record and from any trial in this case.

### A. Legal Standard

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006). Pursuant to Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

1

opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. The proponent of expert testimony bears the burden of establishing the admissibility of his opinions by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n. 10; FED. R. EVID. 702 Advisory Comm. Notes (2000 Amendments).

Pursuant to the *Daubert* framework, the Court must evaluate whether the testimony is reliable and relevant. 509 U.S. at 589. The Court's obligation "to determine the relevance and reliability of an expert's testimony, is vital to ensure accurate and unbiased decision-making by the trier of fact." *Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1019, 1029 (N.D. Ill. 2014) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). In addition, Rule 702 "requires a valid connection to the pertinent inquiry as a precondition to admissibility." *Goswami*, 8 F. Supp. 3d at 1030 (citing *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 805-06 (7th Cir. 2013)); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("[W]e must ensure that the proposed expert testimony… logically advances a material aspect of the proposing party's case.").

Pursuant to Evidence Rule 702, an expert's testimony must be the result of "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." In discussing the application of the "assist" requirement, the Seventh Circuit has explained that expert testimony that does not assist the trier of fact is properly excludable because "[s]uch expert testimony . . . addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute."

*United States v. Hall*, 165 F.3d 1095, 1104 (7th Cir. 1999) (quoting *United States v. Hudson*, 884 F.2d 1016, 1023 (7th Cir.1989)); *see also Gregory-Bey v. Hanks*, No. IP 94-903-C H/G, 2000 WL 1909642, at *21 (S.D. Ind. Nov. 29, 2000). "Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person." *Sommerfield v. City of Chi.*, 254 F.R.D. 317, 329 (N.D. Ill. 2008)) (citations omitted); *see Malone v. Potter*, No. 07-05530 MMM (FFMx), 2009 WL 10672523, at *5 (C.D. Cal. Feb. 25, 2009) (excluding expert's testimony regarding whether defendant followed its own policies where the "the jury [could] read the policies and determine whether defendant followed them without expert testimony"). *Daubert* listed the following factors to guide district courts in assessing an expert's methodology: "(1) Whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has been met with general acceptance." 509 U.S. at 593–94. These factors apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Peoples State Bank v. Stifel, Nicolaus & Co., Inc.*, 2013 WL 1024917, at *5 (S.D. Ind. 2013) (quoting *Kumho Tire Co.*, 526 U.S. at 141).

To be admissible, an expert's opinion must explain how his knowledge or experience, when applied to the facts at hand, compels his conclusions. *See McQuiston v. Helms*, No. 1:06-cv-1668-LJM-DML, 2009 WL 554101, at *8 (S.D. Ind. Mar. 4, 2009) (excluding expert's report where it provided no connection between his knowledge and the underlying facts that would enable him to draw the conclusion). "[A]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998) (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir.

3

1989)); *see Haynes v. Ind. Univ.*, 902 F.3d 724, 733 (7th Cir. 2018) (excluding expert's testimony where it "merely flag[ged]certain evidence for the fact-finder's consideration" but offered no specialized knowledge); *see also Hall*,93 F.3d at 1343 (noting that "[u]nless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting influence on the jury that would be subject to control under Rule 403"). Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir.2000) (citations omitted); *see also Petrogradsky Mejdunarodny Kommerchesky Bank v. National City Bank*, 253 N.Y. 23, 34, 170 N.E. 479, 483 (1930) (Cardozo, J.) ("An opinion has a significance proportioned to the sources that sustain it.").

### B. Analysis

Although the Barden report is over 100 pages long and addresses everything from Satanic cabals to secret "agendas" from an amorphous feminist, Communist ("Marxist") zeitgeist, aiming to attack "Christian, white males," John's Opposition cited Barden's report for only six propositions:

1. "Dr. Barden is a licensed psychologist who has testified concerning, inter alia, investigative methodologies, and science of memory and science of interviewing, and his expert report attributes the 'believe the woman' approach at Purdue to feminist junk science 'taught' in Title IX training." DE 187, p. 40.

2. The April 2011 Dear Colleague Letter relies upon a statistic that "is false and has been debunked, leading to Harvard Law professors headed by Harvard Law Royall Professor Janet Halley signing a letter condemning 'victim-centered' sexual harassment policies." DE 187, p. 50.

3. "The investigation suffered from 'confirmation bias'." DE 187, p. 51.

4. Texts showed "Jane Doe and John having a close almost married-like relationship engaging in friendly banter and showing Jane Doe to be emotionally unstable and manipulative." DE 187, p. 52.

5. "There was no justification for Dean Sermersheim making a decision adverse to John without seeing and hearing from Jane Doe in person and instead relying upon a written

4

    statement sent by CARE Director Bloom having no documented chain of custody for Jane Doe's statement and no supporting sworn statement by Jane Doe." DE 187, p. 55.

6. "Investigators essentially ignored" a report by John "about Jane Doe's suicide attempt". DE 187, p. 56.

The central question for this Court to bear in mind while evaluating this list[1] is whether these opinions will assist the factfinder in resolving a material dispute of fact, outside the Court's competency, bearing on the question of whether "sex was a motivating factor in a university's decision to discipline a student." *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019).

    1.    <u>Opinion No. 1</u>

John cites Barden for the proposition that Purdue applied a "junk science" ("believe the woman") approach and that Purdue trained its officials to use this approach.

John cites Barden's report at pages 1-3, 33-36 for this proposition. None of these pages support (or even address) the claim that Purdue applied or trained its employees or investigators to "believe the woman." Instead, these portions of the report address Barden's experience and his critiques of another psychologist's claims about "the fragmentary nature of trauma memory." On this basis alone, the opinion is unrelated to the proposition it is cited for, making it irrelevant and inadmissible. FED. R. EVID. 401-402, 702(a).

That point aside, Barden's excerpt does not cite to any facts supporting that Purdue or its investigators applied any such approach. His report cites generally to Jacob Amberger's deposition, but does not provide any pinpoint citation. As such, his opinion fails to identify the

---

[1] As Plaintiff's counsel well-knows, this Court is not required to ferret through the hundreds of pages of his "expert's" report to discern other potential opinions or bases. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1190-91 (10th Cir. 2020) (holding that district court properly refused to consider an expert's report beyond propositions it was cited for); *see also In re Sheehan*, 625 B.R. 72, 77 (Bankr. N.D. Ill. 2021) ("the court should not have to search the record to discern what a brief means"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, Defendants focus their argument on these six assertions.

facts and principles it relies upon, FED. R. EVID. 702(b), preventing this Court from evaluating reliability of his opinion, FED. R. EVID. 702(d).

Barden's biggest problem, however, is that this testimony will not assist the fact finder in determining a fact at issue. Assuming, solely for the sake of argument, that Plaintiff submitted evidence that Purdue applied an approach (which John characterizes as) where one class of student respondents were taken at their word solely because of their gender, a reasonable factfinder would have little difficulty concluding that a student's sex played a role in the school's discipline. A jury does not need an "expert" to understand that weighing veracity, solely based on someone's gender, would be evidence of gender bias. *See, e.g.*, *Palmer v. Ind. Univ.*, No. 1:19-cv-04610-JMS-MJD, 2021 U.S. Dist. LEXIS 44863, at *60-61 (S.D. Ind. Mar. 10, 2021) (holding that the expert's testimony was unhelpful because the jury was capable of determining if a university treated one person more favorably than another); *Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) (affirming district court's exclusion of police expert testimony that an officer used excessive force where it was undisputed that the police officer shot and killed a victim in the course of arrest—behavior that was unambiguously dangerous and which was within a lay factfinder's competence to evaluate); *Malone*, No. 07-05530 MMM (FFMx), 2009 WL 10672523, at *5 (excluding expert's testimony regarding whether defendant followed its own policies where the "the jury [could] read the policies and determine whether defendant followed them without expert testimony"); *Hall*, 165 F.3d at 1103 (expert's testimony was properly excluded where trial court determined that the testimony would not assist the jury in evaluating the reliability of witness identifications); *see also Sommerfield*, 254 F.R.D. at 329 ("Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person."). This opinion is inadmissible.

2.  Opinion No. 2

This claim relates to the factual basis behind the "Dear Colleague Letter". This opinion is inadmissible and properly excludable because it would not assist a factfinder in the determination of a material fact at issue. *Palmer*, 2021 U.S. Dist. LEXIS 44863, at *60-61. Whether the "Dear Colleague Letter" was based on reliable information, data, or statistics is not relevant to whether Purdue was motivated to discipline John on account of his sex. Despite John's insistence, there is no evidence that any Purdue official took any action on account of this third-party document and, even if that were the case, the pertinent fact would be that the University relied on the document—not whether the document was prudent or correct. This opinion is inadmissible.

3.  Opinion No. 3

John's Opposition cites pages 40-46 of Barden's report for the proposition that Purdue officials suffered from "confirmation bias." In this section, Barden parrots claims that John has already asserted and adds conclusions that the "deficiencies" were evidence of anti-male bias.[2] The cited excerpt of Barden's report is scant on analysis—including which specific facts he analyzed, what methodologies and standards he applied, and how those methodologies lead to a specific conclusion—and is comprised almost entirely of rhetorical questions. Besides a specific cite to a text from Jane Doe, John's declaration, and a Francis Bacon quote, Barden's report generally refers the reader to entire depositions or the entire text record, and generally refers to unspecified "evidence" or "witnesses." His report takes his characterizations of the "facts" and then jumps to the conclusion that it was, *inter alia*, "egregious," "biased," "reckless" without

---

[2] *E.g.*, (1) Jane Doe's other texts purportedly demonstrate that she was on good terms with John; (2) Jane's texts demonstrate that she was "manipulative" and "cruel"; (3) investigators did not include every text with their report—meaning that they must have "buried" them or "ignored" them; (4) investigators ignored witnesses who disagreed that John threatened Jane with a stun baton or had a temper problem; (5) investigators ignored evidence that Jane was "disturbed" or mentally ill; and (6) investigators ignored John's claim that he had previously had consensual sex with Jane; etc.

giving the Court the benefit of any explanation or citation to the methodology, principle, theory, or technique he used to arrive at his conclusion. *See* FED. R. EVID. 702 (b)-(d). Indeed, without any specific reference to the method or principle he is utilizing, this Court cannot even employ the *Daubert* factors to evaluate the specific methodology and whether it is being applied correctly and consistently. *Daubert*, 509 U.S. at 593–94.

Barden's unsubstantiated characterizations of fact are not admissible in the guise of an "expert" opinion. *E.g.*, *McMahon*, 150 F.3d at 657-58 (affirming exclusion of expert's opinion where, despite an impressive resume, he failed to articulate any empirical basis for his opinion or how he arrived at his opinion, noting "If there is an explanation behind, or empirical support for, the statement we have quoted, Diller is in a good position to furnish it. But it is not there; he offers only a bare conclusion."); *Huey v. UPS*, 165 F.3d 1084, 1086-87 (7th Cir. 1999) (holding that human resources expert's testimony was properly excluded because "[h]e did not explain…how [his] knowledge was employed to analyze [the plaintiff's] situation" and "gave a conclusion, but no more"); *Haynes*, 902 F.3d at 733 (7th Cir. 2018) (affirming exclusion of expert's testimony where it "merely flag[ged]certain evidence for the fact-finder's consideration" but offered no specialized knowledge); *see also Lang*, 217 F.3d at 924 ("Many times we have emphasized that experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff--deploying neither data nor analysis--is not an acceptable methodology.") (citations omitted).

4. <u>Opinion No. 4</u>

John cites Barden for the proposition that text messages show Jane and John were close and that Jane was unstable and manipulative. This opinion should be excluded for several reasons.

First, there is no material issue of fact whether Jane and John were close at some point or whether Jane was "manipulative." Neither assertion has any relevance to the central question—whether John's sex motivated Purdue to discipline him—or any pertinent issue. FED. R. EVID. 702. These tangent opinions will not assist the jury with resolving any issue, nor would either of these facts, even if they were at issue, be outside the jury's competence to evaluate. Fed. R. Evid. 702(a); *see, e.g.*, *Palmer*, 2021 U.S. Dist. LEXIS 44863, at *60-61; *Pena*, 200 F.3d at 1034; *Malone*, 2009 WL 10672523, at *5; *Hall*, 165 F.3d at 1103; *see also Sommerfield*, 254 F.R.D. at 329.

Second, Barden is not qualified to offer opinions about Jane and John's relationship or Jane's alleged psychological state. Barden claims expertise as a psychologist and a lawyer. Even if true, neither of those professions/disciplines nor his experience gives him the expertise to opine how "close" Jane and John were. *Palmer*, 2021 U.S. Dist. LEXIS 44863, at *60-61. Barden also noted at the beginning of his report (and at the end) that "I have not psychologically investigated, nor assessed, nor interviewed, nor evaluated, nor tested, nor diagnosed, . . . nor spoken to, any witness in this case. I will not offer diagnoses with regard to anyone in this matter. . . . I offer no legal opinions nor any opinions as to [the] veracity of witnesses . . ." DE 187-23, at 3. Barden has not evaluated Jane or John. He is not qualified (and does not have the requisite basis) to offer an opinion on either of their mental states, including whether Jane was "manipulative," or suffering with a mental condition. FED. R. EVID. 702(b).

Third, by labeling Jane as "manipulative," Barden and John are attempting to make an improper character inference, *e.g.*, Jane was "manipulative" previously, so she must have "manipulated" investigators on the date in question. Such evidence is improper. *See* FED. R. EVID. 404(a)(1).

Finally, there is no material issue of fact regarding John's claim that Jane was suicidal or mentally troubled. Even if true, a contention that a witness has these tendencies is not probative of the truthfulness of a witness. Accordingly, that testimony is irrelevant and unhelpful to the jury. FED. R. EVID. 702.

5. <u>Opinion No. 5</u>

John cites Barden for the proposition that there was no basis for Dean Sermersheim to rule against him without hearing directly from Jane.[3]

This opinion is improper because it would not assist the jury in determining a material fact at issue. There is no material issue of fact regarding whether Dean Sermersheim received a "sworn statement" from either Jane or John, nor any chain of custody for any written statement. There is no contention that Purdue's investigation and decision process imposed an oath requirement or chain of custody on one gender and not the other, or that Purdue imposed an oath requirement or chain of custody requirement on any witness. Likewise, there is no material issue of fact regarding Dean Sermersheim's reliance upon the available evidence from Jane, consisting of reports of Jane's interviews with investigators and Jane's written statement to Dean Sermersheim. John has never identified any contested assertion in Jane's written statement, nor any information that the investigators or Dean Sermerhseim failed to elicit from Jane. Therefore, these opinions are immaterial to the question of anti-male bias. FED. R. EVID. 702(a); *see, e.g.*, *Palmer*, 2021 U.S. Dist. LEXIS 44863, at *60-61; *Pena*, 200 F.3d at 1034; *Malone*, 2009 WL 10672523, at *5; *Hall*, 165 F.3d at 1103; *see also Sommerfield*, 254 F.R.D. at 329.

---

[3] Barden's report and John continue to repeat the suggestion that Jane's statement is not her own, and argue that Jane's statement is not her own because it was not made under oath, among other things. As outlined in detail in Defendants' summary judgment briefing, there is no evidence contradicting Monica Bloom's sworn testimony that Jane's statement was her own. John cannot defeat evidence with speculation and rhetorical questions. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018) ("Speculation does not defeat summary judgment.").

The opinion is problematic for other reasons. John cites pages 45-46 of Barden's report. This portion of Barden's report does not contain a single citation to any fact, methodology, or principle that Barden is relying on, except it cites to "basic memory research summary infra." This testimony fails to satisfy the requirement that it demonstrate that it is based on facts and reliable principles and methods. FED. R. EVID. 702 (b)-(c). Likewise, it makes it impossible to determine if Barden applied those principles reliably to the facts of the case. FED. R. EVID. 702 (d). This testimony is properly excluded. *McMahon*, 150 F.3d at 657-58; *Huey*, 165 F.3d at 1086-87; *Haynes*, 902 F.3d at 733; *see also Lang*, 217 F.3d at 924.

6. Opinion No. 6

John cites Barden for the proposition that Purdue ignored Jane's "emotional issues." Specifically, he cites page 41 which baldly asserts, without citation to any facts, methodology or principle, that Purdue's investigators "ignored" evidence that Jane was "emotionally disturbed" and failed to investigate the same. Besides the fact that these statements fail to demonstrate Barden's basis for making them, *see* FED. R. EVID. 702 (b), they are not even opinions or conclusions—Barden has merely flagged assertions of fact, proffering no analysis of any kind. This testimony is improper and does not meet the requirements for a testifying expert. *McMahon*, 150 F.3d at 657-58; *Huey*, 165 F.3d at 1086-87; *Haynes*, 902 F.3d at 733; *Palmer*, 2021 U.S. Dist. LEXIS 44863, at *60-61; *Pena*, 200 F.3d at 1034; *Malone*, 2009 WL 10672523, at *5; *see also Lang*, 217 F.3d at 924. It must be excluded.

7. General Objection to Barden's Competency

Barden is not competent to speak about Purdue's policies, investigation, training, or decisions. While his report asserts that he is a licensed psychologist and attorney, these are of little import here. He has no experience working for universities or in a university administrator's

setting. There is no indication that he has ever conducted a university Title IX Investigation, that he understands a university's Title IX obligations, or that he has any familiarity with relevant considerations that university officials must weigh in adopting specific policies or training to satisfy those obligations. Simply put, Barden's testimony is not reliable because there is no evidence that Barden possesses the requisite "knowledge, skill, experience, training, or education" concerning university-specific standards for meeting their Title IX obligations. *See, e.g.*, *Palmer*, 2021 U.S. Dist. LEXIS 44863, at *59-60 (excluding expert opinion where expert only demonstrated that he had worked at a different university but not that he was broadly qualified to offer opinions on what standards universities should follow or that he was qualified to speak about a different university's policies).

   8. General Objection to Barden's Testimony's Helpfulness

Barden's testimony is unnecessary in a Title IX case such as this. Juries regularly decide whether a plaintiff's protected status (sex, race, religion, etc.) motivated adverse action at issue. Barden's opinion does not address a nuanced fact in dispute, e.g., whether a witness who had consumed five shots of Tequila could form the requisite memories to testify about what they saw. Instead, his testimony boils down to the assertion that investigators were not thorough and that university administrators improperly weighed evidence in making their decisions. To the extent those specific questions are pertinent, a jury is more than capable of answering them—these are not topics or questions beyond the scope of a jury's experience or abilities. *Id.* at *61 ("Indeed, [the expert's] opinion is even simpler in this case. He does not opine regarding whether IU violated some industry standard per se, but focuses instead on whether IU treated Professor Gildea more favorably than Professor Palmer. This is an issue of fact, which the jury must analyze and upon which the jury must reach a conclusion. Expert testimony is simply not necessary or appropriate."

(citing *Sullivan v. Alcatel-Lucent USA Inc.*, 2014 U.S. Dist. LEXIS 97011, 2014 WL 3558690, at *6 (N.D. Ill. 2014))); *see also Hall*, 93 F.3d at 1343 (noting that "[u]nless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting influence on the jury that would be subject to control under Rule 403"). Barden and his feminist, "Marxist" agenda conspiracies are simply not appropriate for this matter.

### C. Conclusion

Wherefore, for the reasons stated herein, Defendants respectfully request that Barden's opinion be excluded from the summary judgment record and from any trial in this case

Respectfully submitted,

/s/ Tyler L. Jones
Tyler L. Jones (34656-29)
William P. Kealey (18973-79)
James F. Olds (27989-53)
Stuart & Branigin, LLP
300 Main St., Ste. 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
tlj@stuartlaw.com
jfo@stuartlaw.com
Telephone: 765-423-1561
*Attorneys for Defendants*