IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) |
| **DANIELS, JR.,** in his official capacity as President of | ) |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO EXCLUDE EXPERT TESTIMONY**

Defendants, by counsel, reply to Plaintiff John Doe's Memorandum of Law in Opposition [DE 198] to Defendants' Motion to Exclude Expert Testimony (DE 193):

**A.   John does not carry his burden to show that any of the Barden opinions is the product of reliable application of reliable principles and methods.**

The parties agree that Barden offers six opinions, and that the admissibility should be decided opinion-by-opinion. For each opinion, this Court must determine under Federal Rule of Evidence 702(c) and (d) whether the opinion "is the product of reliable principles and methods" and whether "the expert has reliably applied the principles and methods to the facts of this case". Applying these prongs of Rule 702, the *Daubert* criteria are: "(1) Whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of

1

standards controlling the technique's operation; and (5) whether the technique or method has been met with general acceptance." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

For each of Barden's six opinions, the burden of proving admissibility under Rule 702 is on Plaintiff. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (proponent bears the burden of demonstrating that the expert's testimony would satisfy *Daubert* by a preponderance of the evidence). Further, the expert has the burden to show what makes his principles and methods reliable and how the expert has reliably applied those principles and methods. *See Haynes v. Ind. Univ.*, 902 F.3d 724, 733 (7th Cir. 2018) (affirming exclusion of expert's testimony that "merely flag[ged] certain evidence for the fact-finder's consideration" but offered no specialized knowledge); *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) ("Many times we have emphasized that experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff--deploying neither data nor analysis--is not an acceptable methodology.") (citations omitted); *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 657-58 (7th Cir. 1998) (where an expert "offers only a bare conclusion . . . We have said before, and reiterate, that 'an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'") (internal citations omitted).[1]

---

[1] *See, e.g., Huey v. UPS*, 165 F.3d 1084, 1086-87 (7th Cir. 1999) (holding that human resources expert's testimony was properly excluded because "[h]e did not explain…how [his] knowledge was employed to analyze [the plaintiff's] situation" and "gave a conclusion, but no more"); *Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1019, 1029 (N.D. Ill. 2014) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). An expert's opinion must explain how his knowledge or experience, when applied to the facts at hand, compels his conclusions. *See McQuiston v. Helms*, No. 1:06-cv-1668- LJM-DML, 2009 WL 554101, at *8 (S.D. Ind. Mar. 4, 2009) (excluding expert's report where it provided no connection between his knowledge and the underlying facts that would enable him to draw the conclusion).

John argues that Barden has been invited to speak widely, but popularity on the speaking circuit proves nothing more than salesmanship. Barden's background in child psychology misses the mark because this case is not about the conduct of children.

Barden admits gaps in his experience. DE 198, p. 9. Barden does not claim to have ever performed a forensic sexual assault investigation. Barden does not claim to have ever weighed the evidence to determine culpability for sexual assault. Nor does Barden claim to have performed any field research on these topics, or to have published any scholarship on such field work.

John contends that, notwithstanding his lack of relevant experience, Barden has "qualifications in psychology, investigations and law" which equip him with "the most reliable methodology." DE 198, p. 9. He promises to show "how [Barden's] testimony is based on sound methodology." *Id*. But John does not deliver on his promise. John does not identify a recognized expert methodology for any of the six opinions, nor does he show that the methodology can reliably draw expert distinctions.

### 1. Opinion 1 (concerning non-party R. Campbell).

John contends that Barden has "'expertise in the reliability of various scientific methodologies.'" DE 198, p. 12. Opinion 1 concerns Rebecca Campbell, Ph.D., whose work Barden characterizes as "radical feminist-politicized, unreliable pseudoscience" that mandates belief in a female accuser's claim of sexual assault. *E.g.*, DE 199-2, p. 34-35.[2]

Campbell is a straw-man target. John contends that Barden rebuts non-party Campbell's views on "'neurobiology of sexual assault' and 'neurobiology of trauma'". However, Campbell is not a witness in this case. John and Barden reason that one of the Purdue investigators once

---

[2] Purdue's motion, DE 193 at p. 5, showed that John's supposed citations to the Barden report for his opinions on Campbell were dead ends. In his response, John now cites the Report at pages 1-7, and 30-36, but nothing in the cited portions of Barden's report address Purdue or any aspect of its investigation or discipline.

3

attended a training session at which Campbell spoke. Therefore—according to John and Barden—the Purdue investigators are surrogates of Campbell.

On this logic, John and Barden impute gender bias to Campbell and to the investigators. This is merely legal advocacy, not grounded in any expert principles or methods. It is the shallowest of impeachments, equivalent to faulting the neutrality of a judge whose criminal procedure professor was a prosecutor or criminal defense lawyer. There is no principle or method that establishes such a supposition as an admissible form of expertise.

Barden's attempt to impeach Campbell's views is merely a *Daubert* argument about *Campbell's* expertise. Such an argument is neither evidence nor material. Therefore, Opinion 1 fails the Rule 702(c) and (d) criteria for admissibility.

### 2.    Opinion 2 (concerning government citation to statistic on campus sexual assault frequency).

Opinion 2 employs two-steps: (i) Barden's attack on a statistic published by the Department of Education in 2011 on the frequency of sexual assault on college campuses and (ii) Barden's supposition that the statistic influenced Purdue's approach to campus sexual misconduct. In John's words, the statistic misrepresents the "incidence of sexual assault on university campuses" and therefore "victim-centered, trauma informed policies and procedures adopted . . . as a result of the 2011 Dear Colleague Letter are not justified but are gender biased." DE 198, p. 15.

This too is a straw man. There is no material issue of fact in this case on the frequency of campus sexual assault. There is no contention that, but for the 2011 Dear Colleague letter, Purdue would not have had a policy on sexual misconduct. There is no contention that, but for the Dear Colleague letter's statistical contention, Purdue would not have investigated the allegation that Jane submitted to the NROTC which referred it to Purdue.

As to the first step (establishing the frequency of campus sexual assault), John refers to Barden's "qualifications" DE 198, p. 15 but does not articulate them. John does not contend that Barden has any expertise in quantifying sexual assault. John does not contend that Barden has collected any data or applied any statistical analysis of any dataset. According to John, Barden relies on secondary legal literature, such as publications from the Department of Justice and various law professors. *Id*. Citing the secondary legal literature is legal advocacy, nothing more.

As to the second step (imputing gender bias to Purdue's policies and procedures), there is no contention that Barden applied any principles or methods. There is no discussion of who initiated or modified what Purdue policies and procedures, or when they did so. There is no discussion about that provisions of what policies and procedures are allegedly gender-biased on their face, or as applied to John.

Purdue challenged John to point to evidence that Purdue decisionmakers took a specific action because of the Dear Colleague Letter. DE 193, p. 7 ("Despite John's insistence, there is no evidence that any Purdue official took any action on account of this third-party document . . ."). John responded by citing to the Seventh Circuit's opinion, which merely construed John's allegations. This is obvious circular reasoning. A complaint is not admissible evidence of the defendant's conduct, nor does judicial review of the sufficiency of the complaint serve as evidence.

The absence of any principle or method is easily seen by taking Barden's opinion to its logical conclusion. The Dear Colleague Letter in 2011 preceded Jane's allegation against John in 2016, so—according to Barden—*that chronological sequence* establishes that John was disciplined under "victim-centered, trauma informed policies and procedures adopted . . . as a result of the 2011 Dear Colleague Letter." By this ninth-grade logic, it does not matter what Purdue's policies and procedures say, or why, or who drafted them when. By this logic, it does not

matter that the United States Supreme Court, in *Davis v. Monroe County*, effectively compelled the adoption of such policies and procedures. Barden's reasoning proves far too much and does not distinguish between policies and procedures that are Title IX-compliant and those that are not.

Even if Barden had performed legislative history on Purdue's policies and procedures, he would be acting as a lawyer, not an expert witness. Opinion 2 is merely legal advocacy which is inadmissible as evidence in the guise of a Rule 702 expert.

### 3.     Opinion 3 (concerning confirmation bias).

For Opinion 3, John contends that Barden is a standard of care expert who applied "history-methodology standards of care in criminal and related investigations" and "investigative methods and procedures." DE 198, p. 16. However, there is no duty-of-care claim element in this case, so it is immaterial whether Barden possesses expertise on that topic or has formed a standard-of-care opinion. Further, John admits that Barden is *not* offering a standard of care opinion, but rather an opinion on "confirmation bias." *Id*.

John has the burden of showing that Barden's opinion on "believe the woman" confirmation bias is the product of reliable principles and methods. John does not cite any judicial opinion that endorses expert principles and methods for identification of gender bias in a sexual assault investigation. John does not contend that Barden possesses or has applied any expert principles and methods for identification of gender bias, or that Barden is a credentialed practitioner of any such method.

If there were such principles and methods, surely John would have supplied Barden with the Purdue statistics that squarely contradict Barden's "believe the woman" supposition. *See* DE 187-12 (Purdue's 2015-2016 sexual assault investigation statistics). A principle or method that

does not account for outcomes in which the preponderance of evidence was against the female and in favor of the male does not satisfy Rule 702(c) and (d).

John cites *United States v. Wells*, No. 3:13-cr-00008-SLG, 2019 U.S. Dist. LEXIS 118915 (D. Alaska July 17, 2019) for the proposition that "confirmation bias is a proper subject for expert testimony." DE 198, p. 19. In that case (which involved a disputed identification of a vehicle) the court excluded testimony "as to whether the investigative techniques used by other witnesses were tainted by confirmation bias" because the purported expert's "curriculum vitae shows no formal education or experience in assessing confirmation bias, no detailing of relevant knowledge or skills related to assessing confirmation bias." *Wells,* at *14. The outcome should be the same here. John does not contend that Barden possesses formal education or experience in assessing confirmation bias; that Barden has any experience conducting forensic investigations, or that Barden applied any recognized method for identifying confirmation bias in a forensic investigator's work-product.

### 4.    Opinion 4 (concerning interpretation of John-Jane text messages).

For Opinion 4, John contends that Barden offers a "reasoned critique of the John-Jane Doe texts, explaining what they show with respect to the relationship of John and Jane Doe and Jane Doe's conduct." DE 198, p. 24. However, John does not contend that Barden is applying any clinical method or principle for his "reasoned critique". Just the opposite, Barden rejects such methods. Barden claims that his expertise is in showing "the well-documented limitations of 'professional expertise' in the psychotherapy and investigative professions" and "the well-documented *inability* of psychotherapists and investigators to reliably distinguish true from false witness (or patient) statements in the absence of corroborating statements." *Id*. at 22 (emphasis added). Thus, Barden defeats his own competency as an expert. He has opined on what he, as a psychotherapist, is *unable* to do. Therefore, his opinion on the text messages is inadmissible.

5.     **Opinion 5 (concerning evaluation of Jane's written statement).**

For Opinion 5, John portrays Barden as a standard of care witness on "the failing of Dean Sermersheim as decision-maker in not personally hearing from Jane and relying stead upon an unsworn statement lacking a chain of custody from CARE." DE 198, p. 27.

There is no standard-of-care claim element in this case. Neither John nor Jane was required to submit sworn statements or appear live before Sermersheim. DE 193, p. 10-11.

Further, John does not contend that Barden has any training or experience in weighing evidence in a quasi-adjudicatory context, or that such training and experience would constitute a recognized form of expertise under Rule 702(c).[3]

Barden opines that Dean Sermersheim had no basis to evaluate John's credibility. John's credibility hinged on what he said for himself, and Barden cites no contrary expert principle.

Barden opines that Dean Sermersheim had no basis to evaluate Jane's credibility, DE 198, p. 25, but this too is merely argument about the weight of the investigators' report of their interviews of Jane; to John's text-message confession; and to Jane's written statement to Sermersheim. To the extent that Barden is trying to impeach those methods of evaluating Jane's credibility, Barden is merely making a legal argument.

6.     **Opinion 6 (concerning Jane's emotions).**

Barden's sixth opinion is his armchair diagnosis that Jane had "emotional issues" that should have weighed against an assault finding. DE 198, pp. 27-28. This opinion is not "the product of reliable principles and methods" as required by Rule 702(c).

Barden calls himself a child psychologist; in 2016, Jane was an adult, not a child.

---

[3] As explained (three times) previously, DE 188 p. 7; DE 192, p. 8-9 and n.8; DE 193, p. 10 n.3, there is no evidence rebutting Monica Bloom's sworn testimony that Jane authored her statements.

8

Barden does not claim to have conducted an examination of Jane, as provided for in Federal Rule of Civil Procedure 35. Rule 35(b)(2) requires that "the examiner's report must be in writing and must set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests" and, Rule 35(b)(5) provides that the absence of such a report is cause to "exclude the examiner's testimony at trial." Barden does not disclose any examination or results of any tests. Barden does not claim to have applied any principle or method to determine whether there was a suicide attempt by Jane. There is no citation to any diagnostic criteria or any diagnosis. Barden does not opine that there is a clinical diagnosis known as "emotional problems". Barden's final cited opinion consists of a single paragraph posing only questions. John insists that Barden has cited to the evidence, though no citation appears in the paragraph cited by John.

Even assuming John had made a suicide report weeks after he sexually assaulted Jane Doe, such a report would not be material to the question whether gender bias affected the weighing of the evidence. For obvious reasons, mental distress can *corroborate* an event of assault. Barden does not articulate any method for distinguishing whether Jane's supposed mental distress corroborated the report of assault or impeached it. John and Barden tender no evidence to show whether and when the presence or absence of mental distress is a reliable clinical marker for truth-telling by an assault-reporter. Therefore, the requirements of Rule 702(c) and (d) are not met.

**B.    None of the six opinions addresses a factual determination that is beyond a jury's understanding.**

For a Barden opinion to be admissible, it must help the jury to "to understand the evidence or to determine a fact in issue". Fed. R. Evid. 702(a). Expert testimony that does not assist the trier of fact is properly excludable because "[s]uch expert testimony . . . addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." *United States v. Hall*, 165 F.3d 1095, 1104 (7th Cir. 1999) (quoting *United States v.*

*Hudson*, 884 F.2d 1016, 1023 (7th Cir.1989); *see, e.g.*, *Palmer v. Ind. Univ.*, No. 1:19-cv-04610-JMS-MJD, 2021 U.S. Dist. LEXIS 44863, at *60-61 (S.D. Ind. Mar. 10, 2021) (holding that the expert's testimony was unhelpful because the jury was capable of determining if a university treated one person more favorably than another); *Sommerfield v. City of Chi.*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) ("Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person.") (citations omitted).

Thus, for each of Barden's opinions, John has the burden of showing that the opinion equips the jury to understand a matter that is outside their lay capabilities.

In this Title IX case, the law assigns the factfinder the task of deciding whether sex was a motivating factor in the disciplinary decision. *See Doe v. Purdue Univ.*, 928 F.3d 652, 667-68 (7th Cir. 2019). Accordingly, that task is not outside the jury's lay capability. John cannot ask a jury to substitute Barden's judgment for their own.

The jury's lay capability includes evaluation of the credibility of witnesses. John admits that he is offering Barden to impeach Purdue witnesses who testify to their state of mind. In John's words, the jury would be assisted by Barden's testimony because his "testimony will be helpful to assist the jury so that the jury does not hear just Purdue administrators and investigate [*sic*] rationalize their actions and decisions." DE 198, p. 30. Hearing and weighing testimony from Purdue personnel about how they did their jobs is reserved to the jury and is within their understanding. Regarding those witness accounts, Barden has no more information than the jury would and no more expertise than the jury would.

This same observation holds for Barden's speculation that Jane did not author her witness statement. Barden has no expertise bearing on that point. Barden is in no better position than the factfinder to decide the authorship of Jane's witness statement.

## C. Barden opines on immaterial topics.

To meet the requirement of Rule 702(a), an expert's opinion must "help the trier of fact to understand the evidence or to determine a fact in issue". Barden's opinions do not.

<u>Confirmation bias is an immaterial theory</u>. By imputing confirmation bias to Purdue, John would be alleging that the gender of the accuser and the accused do not matter; the accuser is always right. But John's complaint alleges that the gender of the accuser and the accused *do* matter. Does confirmation bias apply when the accuser is male? If so, then confirmation bias defeats an allegation of anti-male bias. If not, then an imputation of confirmation bias is immaterial to John's theory of relief. *See, e.g.*, *Doe v. Univ.-Chicago*, No. 20 CV 7293, 2021 U.S. Dist. LEXIS 116182, at *21 (N.D. Ill. June 22, 2021) ("a pro-victim bias is not sex bias—both women and men can commit or be victims of sexual assault." (citing *Johnson v. Marian Univ.*, 829 Fed. App'x 731, 733 (7th Cir. 2020))).

<u>Barden's opinions of Jane's character are also immaterial.</u> Jane's character is not a fact in issue. Jane is not a party and John has not alleged any claim that tasks this Court to evaluate Jane's character. Even if Barden's opinion of Jane's character were somehow material, Barden's opinion would be inadmissible to prove that she made a false allegation. Rule of Evidence 404(a)(1) states, "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Yet this is exactly what Barden purports to do. John perfectly admits Defendants' point:

> Defendants' third argument is to assert that Dr. Barden's opinion that the texts reflect Jane being manipulative is making an improper character reference. That is not what Dr. Barden is doing. As noted above, however, the texts were in the summary judgment record and were reviewed by Dr. Barden <u>who characterized the conduct of Jane Doe</u> from what was in the texts . . .

DE 198, pp. 23-24.

Selecting probative text messages is not an act of bias. Barden opines that some text messages were not attached to the Investigation Report because John was a man, and (in Barden's words) to further a "feminist", "Marxist" conspiracy. DE 198, p. 21. By this reasoning, John's summary judgment briefing should tender, cite, and parse every single one of the hundreds of text messages exchanges between Jane and John. But John does no such thing, presumably because most of those text messages are not probative. John's selective briefing of the text messages proves that Barden's opinion on the that point is immaterial.

**C.    Conclusion**

For these reasons, Defendants respectfully request that Barden's opinions be excluded from the summary judgment record and from any trial in this case

Respectfully submitted,

/s/ *Tyler L. Jones*
Tyler L. Jones (34656-29)
William P. Kealey (18973-79)
James F. Olds (27989-53)
Stuart & Branigin, LLP
300 Main St., Ste. 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
    tlj@stuartlaw.com
    jfo@stuartlaw.com
Telephone: 765-423-1561
*Attorneys for Defendants*

1445635v1