```
                                                       Page 1

 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF INDIANA
 2                     HAMMOND DIVISION
 3                CASE NO. 2:17-cv-33-JPK
 4   JOHN DOE,                        )
                                      )
 5        Plaintiff,                  )
                                      )
 6        -vs-                        )
                                      )
 7   PURDUE UNIVERSITY, PURDUE        )
     UNIVERSITY BOARD OF TRUSTEES,    )
 8   MITCHELL ELIAS DANIELS, JR.,     )
     in his official capacity as      )
 9   President of Purdue              )
     University, ALYSA CHRISTMAS      )
10   ROLLOCK, in her official         )
     capacity at Purdue University,   )
11   KATHERINE SERMERSHEIM, in her    )
     official capacity at Purdue      )
12   University,                      )
                                      )
13        Defendants.
14
15            DEPOSITION OF JACOB AMBERGER
16
17      The ZOOM deposition upon oral examination of JACOB
     AMBERGER, a witness produced and sworn before me,
18   Clarice H. Howard, CCR-Ky, Notary Public in and for the
     County of Boone, State of Indiana, taken on behalf of
19   the Plaintiff, on Tuesday, August 25, 2020, scheduled
     to commence at 8:00 a.m., pursuant to the Federal Rules
20   of Civil Procedure with written notice as to time and
     place thereof.
21
22
23
24
25
```

Page 78

1  refers, does it not, to alleged instances of
2  stalking, and you discuss what [JANE DOE] says in that
3  first paragraph, do you not?
4  A  Yes.
5  Q  And you conclude in that first paragraph on the top
6  of 382, "the RA reported that [JOHN DOE] was always
7  polite when she spoke to him and she also had a
8  good impression of him."
9  A  Yes.
10 Q  That's what's written there?
11 A  Yes.
12 Q  That's the RA that you interviewed. What's her
13 name; [REDACTED]?
14 A  Yes.
15 Q  And you recall her saying that about [JOHN DOE]?
16
17 A  Yes.
18 Q  Okay. You didn't record anything here about
19 [JOHN DOE] told you about supposedly showing up
20 on her floor uninvited and unescorted.
21 A  We talk -- the next paragraph, again, is a
22 paragraph about what Ms. [JANE DOE] shared and then
23 the second full paragraph on that page is where we
24 summarized Mr. [JOHN DOE] being on her floor.
25 Q  And what Mr. [JOHN DOE] told you is that he moved her

Page 79

1  furniture to surprise her while she was out of town
2  for a weekend, correct?
3  A  Yes.
4  Q  How would Mr. [JOHN DOE] get into Ms. [JANE DOE]
5  room without the RA opening it for him?
6  A  The only way he would have been able to do that is
7  if he had a key or if the door was unlocked.
8  Q  The third paragraph on that page starts with
9  [JANE] also reported that during early spring 2016
10 semester [JOHN DOE] seemed always to be in places she was
11 going to such as the lounge area in the armory
12 utilized by ROTC members or dining courts she
13 frequented.
14    Stop there. There is a lounge area in the
15 armory, isn't there, that the ROTC students
16 fraternize?
17 A  Yes, I believe so. I've not been there, but that
18 was reported to us that that does exist.
19 Q  And the armory is both for Army and Navy ROTC,
20 correct?
21 A  Yes, it's for all members of the ROTC.
22 Q  And the lounge was an area where ROTC students
23 would talk with each other and be with each other,
24 correct?
25 A  Yeah, that's how it was described to us.

Page 80

1  Q  Purdue has fraternities, do they not?
2  A  Yes.
3  Q  But the ROTC students, in a sense they're a
4  fraternity, the ROTC program, is it not?
5  A  That program is what they have in common, yes.
6  Q  And so they socialize by being in the lounge and
7  talking with each other?
8     MR. JONES: Object to the form. You can
9  answer, if you know, Jake.
10 BY MR. BYLER:
11 Q  Well, it is true, is it not, that ROTC students are
12 in the lounge in order to talk with each other and
13 socialize?
14    MR. JONES: Same objection. You can answer,
15 if you like, Jake.
16 A  I believe so, yes. It's a common area where they
17 can all be and study and whatever they want to do.
18 Q  Well, what would be so unusual about [JOHN DOE]
19 being in the lounge area of the ROTC armory and
20 being in the lounge and talking with other ROTC
21 program students?
22    MR. JONES: Object to the form. You can
23 answer, if you know, Jake.
24 A  It's a common area that was accessible to him, so
25 it's a place he could be.

Page 81

1  Q  Well, isn't it a place you would expect him to be?
2  A  It's an area he can use. I don't know if all ROTC
3  members use it.
4  Q  Do you know how many dining courts there are at
5  Purdue that are open to undergraduate students?
6  A  Six or more, I believe, quite a few.
7  Q  Was Wiley Dining Hall one of them?
8  A  Yes.
9  Q  At the time using a dining hall was something that
10 [JOHN DOE] was permitted to do until he
11 received a no contact order in 2016, early 2016?
12 A  Yes.
13 Q  Now, let me go to the third paragraph of
14 conclusions on 383. [JOHN DOE] uncomfortable, awkward,
15 and unconfident clarification of the text message
16 admission to violating [JANE DOE], and combined with
17 the apparent dishonesty regarding his entrance into
18 her dorm room have lead us to determine that he is
19 not a credible witness. Do you see that?
20 A  Yes, I do.
21 Q  Where in your notes is there any indication that
22 [JOHN DOE] was uncomfortable, awkward, and
23 unconfident regarding the text messages?
24 A  I'm not sure it is in my notes specifically or more
25 of how he answered the question when we were in the

21 (Pages 78 - 81)