```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF INDIANA
 2                        HAMMOND DIVISION

 3   JOHN DOE,                     )
                                   )
 4        Plaintiff,               )
                                   )
 5   vs.                           )  2:17-CV-33
                                   )
 6   PURDUE UNIVERSITY, et al.,    )
                                   )
 7        Defendants.              )

 8           TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
                         September 1, 2022
 9          BEFORE THE HONORABLE JOSHUA P. KOLAR
               UNITED STATES DISTRICT MAGISTRATE

10

11   A P P E A R A N C E S:

12   FOR THE PLAINTIFF:

13                      PHILIP A. BYLER
                        Nesenoff & Miltenberg LLP
14                      363 Seventh Avenue, 5th Floor
                        New York, New York  10001
15                      (212) 736-4500

16   FOR THE DEFENDANT:

17                      WILLIAM P. KEALEY
                        TYLER L. JONES
18                      Stuart & Branigin LLP
                        300 Main Street, Suite 900
19                      P.O. Box 1010
                        Lafayette, Indiana  47902-1010
20                      (765) 423-1561

21

22

23

24

25
```

1          (AT&T recording started as follows:)

2            **THE COURT:**  Good morning, everyone.

3        We're on the record now.  This is Cause 2:17-CV-33.  This

4    is John Doe versus Purdue University.

5        For plaintiff, we have Philip Byler.

6        Am I pronouncing it correctly and can you hear me clearly?

7            **MR. BYLER:**  Yes, I'm on.

8            **THE COURT:**  Okay.

9        And for defense, we have Tyler Jones.

10           **MR. JONES:**  Yes, Your Honor.

11           **THE COURT:**  And William Kealey.

12           **MR. KEALEY:**  Yes, Your Honor.

13           **THE COURT:**  Okay.  So here is what I plan to do

14    today.  We only have until 10:00.  There's one issue that may

15    wait, and we might set a hearing later today, if everyone is

16    free, or in the very near future.

17        The very first thing I want to do is talk about a

18    settlement conference here.  I will be very clear.  I think

19    this case should be set for a mandatory settlement conference.

20    I do not routinely mandate settlement conferences, but I do

21    feel that it's appropriate at this point.

22        I'm going to hear from both sides on that issue before

23    making any referral for a judicial settlement conference.  I

24    just kind of wanted everyone to know where I stand.  Because

25    even if both sides are saying that they don't want to do a

1    settlement conference, I very well may order one.

2         If it does go for a judicial settlement conference, my

3    default is that it will be before another judicial officer

4    unless I receive a joint filing in the next week indicating

5    that both sides would like me to conduct the judicial

6    settlement conference.

7         I believe a lot of judges do this, maybe not all, but do

8    keep in mind that if you want me for a judicial settlement

9    conference, we certainly will not do a bench trial.  I'm not

10   sure it's going in that direction anyway, but just keep that in

11   mind.

12        So I don't want anyone -- no one has to tell me.  I'm not

13   offended one way or the other.  Frankly, when I was practicing,

14   I did very much enjoy having settlement conferences in front of

15   people that we weren't going to appear before later, but that's

16   up to the parties.

17        After hearing from the parties regarding a judicial

18   settlement conference, the second thing I want to do today is

19   get defendant's position on counterclaims now that the case is

20   postured to move forward on the, solely, Title IX claim.

21        Frankly, I don't see what the counterclaims add with the

22   current posture of the case.  But I'll hear defendants out on

23   that because, obviously, this -- after my ruling, the case is

24   proceeding but a little bit differently than the pleadings.

25        So after that, I am going to turn to the motion for

 1    reconsideration.  I'll be clear at this point that I'm not

 2    asking for a response from the defense.  I may order one in the

 3    future, and I'll just let defense know that I'll certainly

 4    order a response prior to any ruling that would grant the

 5    motion in part or in whole.  But I do want to keep this case

 6    moving, so I don't want a response at this point.

 7         A couple questions for Mr. Byler.  I want to make sure

 8    that I'm understanding and addressing his arguments and giving

 9    him a chance to explain a couple things to me before I decide

10    whether to order a response.

11         So that might take a little bit longer.  Obviously, the

12    motion for reconsideration came in relatively recently after we

13    set this hearing, and I just -- we have other hearings set, so

14    I don't know if we'll get to that before 10:00 because I do

15    have a number of questions.

16         With that, the first issue, judicial settlement

17    conference.  Any issues with that from the plaintiff?

18            **MR. BYLER:**  I had indicated in the last court

19    conference that we had that plaintiff would be willing to do a

20    settlement conference without, you know, necessarily thinking

21    that it would work but that -- you know, in my view, I always

22    do settlement conferences even though they're unlikely to work.

23    That may be the case here, but I'm going to continue to hold to

24    the position that probably it would be appropriate for us to

25    have a settlement conference.  That's without prejudice to

1    positions I make take within that conference, but --

2              **THE COURT:**  Of course.

3              **MR. BYLER:**  -- you know, I hear the Court in terms of

4    where you're coming from.  I'm not surprised.  But I certainly

5    am not, on behalf of plaintiff, going to stand in the way of a

6    settlement conference.  I think we should have one even though

7    it may not work.

8              **THE COURT:**  Understood.  Okay.

9         Defense.

10             **MR. KEALEY:**  Although I have not discussed this topic

11   with my client and should confirm with the client before

12   binding them, I believe that they would likely consent to

13   judicial settlement conference with you.  Because this is a

14   jury trial, I think that a settlement conference before you as

15   the judge that's had the case would work in terms of not

16   affecting the jury.

17        The reason I suggest a settlement conference without

18   involving another judicial officer is that the amount of

19   information that somebody would need to get command of in order

20   to have a conference on this case is steep, and I'm not sure

21   that there's a reason to go to all that trouble of educating

22   somebody else given how long you have had the case.

23             **THE COURT:**  Yeah.  I appreciate that.  And I

24   certainly have spent a significant amount of time on the case.

25   You still need to speak with your client, and you're not taking

1  a position.  And just to be clear, I don't necessarily care who

2  has -- if both -- if one side wants me and one side doesn't

3  want me for the judicial settlement conference, I don't

4  necessarily need to know who.

5       I will give everyone a week.  If there's a joint request

6  that I do it, I'll do it.  If not, I have already talked to

7  other judicial officers who will make the time.  It is a

8  complex case.  But there are multiple options, and we'll go

9  from there.

10          **MR. BYLER:**  Mr. Byler again.  I'm sorry.

11       I didn't address who should do it.  I would appreciate

12  being able to consult with my client --

13          **THE COURT:**  Yeah, absolutely.

14          **MR. BYLER:**  -- who should do it.  If we're going to

15  have a week to get back to you, I would like to have that

16  week --

17          **THE COURT:**  Yeah, absolutely.

18          **MR. BYLER:**  -- to speak with my client.  I mean, I

19  have the go-ahead in terms of okay -- because I anticipated you

20  would do that, I have the okay as to the settlement, but I

21  didn't get down to the question of who does it.

22          **THE COURT:**  Right.  Right.  And I don't want to put

23  anyone in a position of thinking -- and, frankly, it doesn't

24  impact me one way or the other, but I could understand -- I

25  don't want to pressure in a consent case people, basically,

1    agreeing to me for the judicial settlement conference.

2        So my default is I'm going to set it in front of someone

3    else.  If I get a filing in the next week saying, hey, we've

4    talked and both sides agree to proceed to the judicial

5    settlement conference in front of me, then we'll set it.

6        You know, obviously, the bench trial is one issue, speed

7    is another.  I, frankly, will give another judicial officer as

8    much time as they want.  I'm not going to tell them, hey, they

9    get (indiscernible) within reason.  But if I do it, I'm going

10   to try to get it done relatively quickly because I want to set

11   a trial date and may even set a trial date with the judicial

12   settlement conference, kind of, hanging over us.

13       I'll also just note -- both sides may have guessed this --

14   but I am not addressing the affidavit concerning attorneys'

15   fees until after a settlement conference because I feel that is

16   something that could be addressed in there.

17       Okay.  So with that, before I move on, does anyone think

18   you need more than a week just to file that notice one way or

19   the other, or, frankly, just to file a notice if you want to

20   proceed in front of me?  Otherwise, I'll refer it out.  Anyone

21   need more than a week?

22       Plaintiff?

23           **MR. BYLER:**  That's fine with plaintiff.

24           **THE COURT:**  Okay.

25       Defense?

```
 1              MR. KEALEY:  One week is sufficient.

 2              THE COURT:  Okay.

 3         All right.  Moving on to the counterclaims.  Mr. Kealey or

 4    Mr. Jones, either one.

 5         I understand we are at a bit of a different position now

 6    with the case, you know, proceeding on with just the Title IX

 7    claim.  It changes whether it's duplicative; it changes whether

 8    it's needed.

 9         Is the defense position still that you are going to be

10    pursuing all of the counterclaims at this time?

11              MR. KEALEY:  So it's a single counterclaim.  If I

12    take the Court's question, as whether the Navy part of the

13    counterclaim is necessary to go to trial, the answer is that

14    that may now not be part of a trial.

15         There is, though, part of the counterclaim that is

16    squarely mapped up to the Title IX claim.

17              THE COURT:  So I'm looking at A, B, C, and D,

18    correct?  Your point is it's one counterclaim because it's a

19    declaratory, but I'm looking at the four.

20         So you're referring to D, regarding declaring there's no

21    Purdue-imposed stigma in John's occupational liberty interest?

22              MR. KEALEY:  Right.

23              THE COURT:  Okay.  So that's in one bucket.  And I'm

24    not putting anyone on the spot here -- you have some time if

25    you want to speak with your client -- but you may be
```

1  withdrawing that; is that what I'm hearing?

2      **MR. KEALEY:**  Well, I think -- more specifically, I

3  think the Court's ruling has decided that, so it's not so much

4  that it would be withdrawn.  It's that assuming that there's no

5  reconsideration and that the law of this case is that there is

6  no material issue of fact out of Purdue-imposed stigma, then

7  there's no -- there's no declaratory relief issue that is still

8  in dispute.  For purposes of this case, it would not be a

9  decided issue.

10     **THE COURT:**  Understood.

11     **MR. KEALEY:**  You know --

12     **THE COURT:**  Are you asking for anything further from

13  the Court other than my decision on the summary judgment

14  motion?

15     **MR. KEALEY:**  As to D, no.

16     **THE COURT:**  Okay.

17     **MR. KEALEY:**  As to A, B, and C, we see those as

18  mapped up to the Title IX claim that the Court has not

19  summarily decided and that the jury would decide.

20     **THE COURT:**  Okay.

21     I will take a look at those.  I may require some

22  additional argument.  But with that addressed, at this point,

23  let me move on to the motion for reconsideration.

24     A couple questions for Mr. Byler.  This motion came in --

25  I'm trying to keep this case moving along, so I have some

 1  questions for you.

 2      I think I have stated to everyone, certainly before, that

 3  I don't want to put anyone on the spot and, kind of, throw

 4  things at them without providing ample opportunity to consider

 5  things and prepare for arguments.  So if any of this is of the

 6  nature where you want to think about it and have another

 7  hearing or file something supplemental, that's perfectly fine.

 8  I'm not trying to just throw something at a hearing here.  Just

 9  like with Mr. Kealey, I indicated if he wanted to talk to his

10  client about certain things on the counterclaim, that's fine.

11      But let me start with -- and the issue's concerning

12  publication, right, and, more precisely, whether or not

13  John Doe was under an obligation to authorize disclosure to the

14  Navy.  If John Doe was under no obligation -- I understand the

15  arguments, and I'll get to that in a second -- that decides the

16  issue for the due process claim.  You don't go on and address

17  the arguments you're making regarding falsity, et cetera,

18  because you don't get to that stage of the analysis.

19      Is that accurate, Mr. Byler?

20          **MR. BYLER:**  No.  No.  I -- and I find the question at

21  odds with how one functions in an ROTC program.  The notion

22  that you're not under an obligation is just nonexistent.

23          **THE COURT:**  Okay.  I'll get to that in a second.

24      So just looking at the Seventh Circuit case, right, in

25  this matter, right, the first thing the Seventh Circuit did is

 1    talk about the fact that this case is distinguishable from

 2    cases where there was a lack of compelled disclosure.  Seventh

 3    Circuit said instead, "John says that he had an obligation to

 4    authorize Purdue to disclose the proceedings to the Navy.  That

 5    then made John's case more like" -- you know, and then went on

 6    to discuss *Dupuy*, *Olivieri*, et cetera.

 7        If there's no obligation, then the Court -- that's the end

 8    of the due process analysis.  Because if there's an

 9    authorization to share and no obligation to make that

10    authorization, you don't go on to the rest of the due process

11    analysis.  That's my question.  I just --

12            **MR. BYLER:**  No, I don't accept that approach at all.

13    I think the Seventh Circuit did distinguish other cases on the

14    ground that there was a compulsion here to authorize.  And, as

15    a practical matter, the notion that there wasn't any

16    obligation, any compulsion, is just nonexistent.

17        So I don't, I guess, understand why the Court is going

18    down the road about, "Well, if there's no obligation" -- that

19    just doesn't exist here.  And it's not realistic given how an

20    ROTC cadet is, you know, relating to his superiors within the

21    ROTC program.

22        You know, I think if you were to present this situation to

23    the Seventh Circuit, they still would have ruled that we were a

24    different case than what Purdue was trying to argue because,

25    remember, that argument before the Seventh Circuit was, "Well,

1    gee, the Navy wouldn't have known but for the authorization."

2    That's not true.  The Navy knew before Purdue did.  And the

3    Navy knew that there was an investigation.

4        So the whole premise of the argument in front of the

5    Seventh Circuit that Purdue posited and the Seventh Circuit

6    distinguished was erroneous, according to the record in this

7    case, because Jane Doe went first to the Navy, and the

8    Commander of the NROTC program, you know, advised Purdue.

9        There was a connection between the Navy and the ROTC, in

10   short, which you can't say, you know, what was said to the

11   Seventh Circuit.  I argued the case and I heard what was and

12   read what was the Purdue argument.  Well, was she in the Navy?

13   No.  And the Navy did know from the start.

14       And so you're dealing with a total different set of

15   circumstances than what the Seventh Circuit was dealing with

16   and what they were distinguishing.

17       And so what I'm saying is you're going down a road, I

18   hear, that I don't think is at all one that you can go down

19   given the realities of the --

20           **THE COURT:**  I'm going to get to that in a second, and

21   I have some questions for you regarding your argument on why

22   John Doe was under an obligation here.

23       But let's just say -- maybe take ROTC out of it.  Say

24   there's another situation, where the stigma-plus test is going

25   to be satisfied in every other realm but there's no obligation

1    to disclose; the plaintiff authorizes a disclosure.  Can they

2    still go forward with a due process claim?

3             **MR. BYLER:**  That's an if that doesn't exist here.

4             **THE COURT:**  Okay.  Well, it's a question I have so I

5    can make sure I am doing the analysis appropriately.

6             **MR. BYLER:**  No, I'm saying you're going at it wrong.

7    I guess I'm repeating myself, but I think you're going at it

8    wrong by positing that possibility.

9        I don't think the Seventh Circuit would have handled it

10   the same way if Purdue had argued according to what the record

11   is in this case.  I still think that -- because it was very

12   clear from the way that the Seventh Circuit dealt with this

13   that they believe there was a terrible denial of due process.

14            **MR. KEALEY:**  Your Honor, may I be heard?  Mr. Byler

15   never told the Seventh Circuit that the Navy knew about this

16   first.

17            **THE COURT:**  And this is --

18            **MR. BYLER:**  I (indiscernible) the record, Mr. Kealey,

19   (indiscernible) the motion for reconsideration.

20            **THE COURT:**  Gentlemen, gentlemen, I'm controlling

21   this argument.  I've said that I don't need to hear from

22   defense at this point.

23       Mr. Byler, we are going to move on and talk about some of

24   what you have put before me concerning whether or not there's

25   an obligation.  I understand you might not agree with my

1    analysis as we move on to talk about the record in this case.

2        What I am trying to determine is do you agree with the

3    legal proposition that if the stigma-plus -- if everything is

4    present to satisfy the stigma-plus test but a plaintiff who is

5    not under an obligation makes an authorization for disclosure,

6    their due process claim doesn't go forward?  Do you agree with

7    that or not, or do you want more time to consider it?

8            MR. BYLER:  No, I don't agree as a general

9    proposition.  It may be true in certain cases but not as a

10    general proposition.  I guess what I keep saying is that

11    hypothetical does not apply here remotely.

12            THE COURT:  Okay.  Moving on --

13            MR. BYLER:  I don't mean to be difficult and

14    disputatious, Your Honor.  It's just that you're posing

15    something which I don't think is a road that you can go down in

16    this case and in other cases, but we just have this case --

17            THE COURT:  Okay.  So I'll go on and get a little bit

18    more specific on why I'm going down that road.

19        You provided me with a detailed summary now of why you

20    think John Doe is under an obligation.  First, I don't see that

21    in the original briefing or in the original statement of

22    material facts.  So I'll give you a chance, but it seems to me

23    that this is just, well, okay, if that's where the Court is

24    going, here is an argument that wasn't presented originally.

25        And I have discretion to consider that, but I have to, you

```
 1   know -- first, I'll give you a chance to say, was any of this
 2   before me on the original summary judgment motion?  I looked at
 3   it, and I don't think the ROD and all of that was argued.  And
 4   precisely why I'm concerned about this is I'm going to -- I'm
 5   taking your motion very seriously.  I want to look at it.
 6        First, I need to determine whether this is, essentially,
 7   just something that's new -- and we're running a little short
 8   on time.  I may give you some -- we may set an additional
 9   hearing on this so that you can, kind of, respond to both of my
10   concerns here.
11        The way I'm looking at it is, first, is this issue of
12   authorization dispositive?  I've attempted to ask that.  I
13   think you're, essentially, telling me that you don't think I
14   should go down that road in this case because authorization was
15   compelled.  That's fine.  I'm not really getting the answer to
16   that.
17        When I move on and I say, okay, if this is dispositive,
18   the first thing I need to say is, "Is this something where I
19   have discretion to even consider it because it wasn't really
20   argued the first time?"  If I'm considering it, I also -- and
21   I'll give you a chance, but I don't see how any of what you
22   cite would have prevented John Doe from simply stating to his
23   ROTC leadership that he didn't trust the Purdue investigation
24   and, therefore, he respectfully declined to provide any
25   authorization because he wanted a Navy board to address the
```

1    underlying facts.

2        At the very least, if you're arguing he was under an

3    obligation, shouldn't there have been some discussion how such

4    a request would have been treated when you were deposing the

5    Navy officials?  I don't see anything in front of me.

6        I understand your argument about this ROD and how lack of

7    respect could have led to a separate disciplinary proceeding,

8    but I'm not reading that to say that a simple, respectful, sir,

9    if you want to give me an order, fine; but absent an order, I

10   don't trust what I'm seeing over at the Purdue process and I

11   want a Navy board to decide the underlying facts here.

12       You know, we have a little bit of time here.  I can set

13   this for some additional argument, but those are my two

14   questions.  One, was this before me on the original summary

15   judgment paperwork, and, two, why does even what's before me

16   now really show an obligation?

17           **MR. BYLER:**  Okay.  I'll try to deal with this with

18   what little time you have left.

19       First of all, I must say that at the time he gave the

20   authorization he was not expecting to happen what did happen;

21   so, you know, the notion that, "Well, gee, I'm not trusting

22   what's over at Purdue, I want a Navy board," that wasn't part

23   of his mentality.  He put in the declaration to indicate what

24   he was thinking -- to the extent he can remember it -- at the

25   time and it was not that the Purdue process was going to go

1    astray like it did.

2         In terms of whether this was before you, when we did the

3    original briefing, I guess we thought it was enough to say that

4    he had no choice because that was, basically, the position that

5    he had.

6         Your opinion talks about, well, if he had failed to

7    provide, would it have resulted in a sanction or lawful order?

8    The answer is, "Yes."  Would -- you know, in ROTC regulations,

9    if you look at them, yes, they do compel his cooperation.  And

10   your opinion refers to having to make a disclosure to reapply.

11   The answer is clearly yes.  There's a permanent federal record.

12        So I present what I do, really, with a mind that this is

13   an elaboration of what it meant, to say he had no real choice

14   in the matter but to do the authorization.

15        Now, having said that, you know, this is an important --

16   what part of the motion for reconsideration does is it points

17   out the public importance of the due process rulings of Judge,

18   now Justice Barrett in *Doe v. Purdue*.  And because they are

19   important, I don't think they should be undercut by what you

20   can say is a lack of elaboration of what it meant in terms of

21   what was presented and, that is, he had no real choice in the

22   matter.

23        The elaboration is presented in the motion to dismiss

24   and -- I mean, the motion for reconsideration, and, yes,

25   Your Honor, you do have the discretion.  And I'm saying it is

 1  important that you exercise that discretion based on what is

 2  presented in the motion for reconsideration.  Because, really,

 3  I guess, with a lot of the attention on other issues in the

 4  case, you're focusing in on one particular issue.

 5      And I don't want it to seem like I'm not giving you an

 6  answer, but the answer, I think, having argued the case in

 7  front of the Seventh Circuit, is they were bound and determined

 8  to find that there was denial of due process in this case.  And

 9  what Judge Barrett wrote was one of the main inspirations for

10  the then-Secretary of Education to set up the due process

11  regulations that are now in effect under Title IX.

12      You know, *Doe v. Purdue* is a much cited opinion on so many

13  different issues; and so as far as discretion goes, I think it

14  would be -- let me put it -- wisely exercised to entertain what

15  is presented here because it is in the context of the Navy --

16  unlike what was argued by Purdue to the Seventh Circuit, the

17  Navy knew it wasn't a matter that they -- "Gee, what's this we

18  see here?"  It was a matter that they knew very well that there

19  was a complaint and a disciplinary investigation going on at

20  Purdue.  And that's the context, not that, "Gee, they suddenly

21  found out."

22      So it's a totally different setting than what the Seventh

23  Circuit was dealing with.  And, clearly, as John Doe testified

24  in his deposition, the Navy wanted "in the loop."

25           **THE COURT:**  I mean, you just said it's different.  To

 1  me, it's very different from the Seventh Circuit.  What I'm

 2  doing now is, is there a genuine issue of material fact that

 3  John Doe was under an obligation?  And I don't see anything --

 4  I don't see any deposition transcripts.  I don't see anything

 5  where it's, okay, what was -- I see one deposition transcript

 6  where they say it wasn't ordered, okay.

 7      And I would even -- as I said in my opinion, and I'm

 8  considering still, I'm not sure it needs to be a formal order.

 9  I think a formal order would clearly be an obligation, but the

10  way --

11          **MR. BYLER:**  Well --

12          **THE COURT:**  I hear nothing -- I see nothing in the

13  record where, frankly, that obligation was even explored.

14          **MR. BYLER:**  Well --

15          **THE COURT:**  And I don't know that we can go forward

16  if there was no obligation.

17          **MR. BYLER:**  Well, wait a minute.  First of all, when

18  Remaly says there wasn't a formal order, no, there wasn't a

19  formal order because they didn't have to get to that.

20      John Doe knew very well that the Navy wanted access to a

21  disciplinary finding because that's what they wanted to rely on

22  as opposed to a separate board.  And it was at a time John Doe

23  was thinking, well, Purdue will do an okay job.  Well, they

24  didn't.

25      What's more is -- you know, what I think is a good thing

```
 1    that's in the motion for reconsideration is a realistic
 2    assessment of -- even in the specific circumstances of this
 3    case, whether the Navy knows -- you know, John Doe has to be
 4    honest, and so that's the context of him providing
 5    authorization.  And it is one thing to say there's a material
 6    issue of fact; it's another thing just to bounce the due
 7    process claim whatsoever.
 8         You know, it's one thing to say this material issue of
 9    fact -- was this something that required John Doe to respond
10    to; it's another to say, nope, no claim at all.  Those are
11    vastly different.
12         And the problem is, you bounce the due process claim --
13    and I'm going to tell you right now, Seventh Circuit clearly
14    intended -- because, look, their opinion said, "I direct the
15    district court to consider expungement," and that was based on
16    the due process issue that was before the Court.  The notion
17    that you can just distinguish away in a way that you have, I'm
18    sorry, that's not going to work for the Seventh Circuit.
19         And that's why I thought, in terms of moving the case
20    along, it made best sense to get the due process claim
21    reinstated because I think anybody -- and I've asked a number
22    of people to read what's in the motion for reconsideration --
23    and that includes some Title IX commentators -- and the
24    reaction is, good grief, what else could John Doe do but to
25    give the authorization.
```

```
 1        And, you know, remember, he wants to make it as a Naval

 2   career officer, and that means abiding by what he can see is a

 3   desire so it doesn't go to an order.  I mean, look, you're not

 4   going to look good if you're saying, "Well, I'm just not going

 5   to give that authorization and you do what you want."  I mean,

 6   he's subject then to a sanction, which you referred to in

 7   your --

 8            MR. KEALEY:  Your Honor, will I get any opportunity

 9   to speak?

10            THE COURT:  We don't have the other -- our 10:00

11   dialed in at this point, I don't think.

12        Is that correct, Ms. Castillo?

13            DEPUTY CLERK:  They are actually in the waiting room.

14            THE COURT:  Okay.

15            MR. KEALEY:  I would request, respectfully, if we are

16   going to have oral argument on the motion for reconsideration,

17   that it be briefed and it be scheduled for a live oral argument

18   in your courtroom.

19            THE COURT:  I, frankly, am going in that direction

20   because I'm not hearing what I'm hoping to get.  I want to

21   consider very strongly Mr. Byler's argument.  I will review a

22   transcript.

23        Mr. Kealey, I'm not trying to cut the defense off here,

24   but, frankly, I'm trying to streamline this; and if I am not

25   going to grant the motion for reconsideration, I want to get
```

```
 1   that done without an extended briefing period.

 2        But what I will do is review today's hearing after my

 3   morning -- my other morning hearings.  We will set a TSC or

 4   just simply a minute order indicating whether we will have an

 5   additional hearing and/or briefing.  If we are going to have

 6   oral argument in full, it will be before me in court.

 7        But at this time, I just wanted to, frankly, give

 8   Mr. Byler a bit of a chance to expound on some things that I

 9   think are lacking.  He's answered my questions as he deems fit,

10   and we will go from there.  I thought we could fit this in so

11   we could move along.

12             MR. JONES:  Your Honor, this is Tyler Jones.  Nothing

13   substantive, Your Honor.  Just a procedural question.

14        Under the Northern District 7-1 motion practice, we have a

15   14-day response deadline.  It is my understanding that you're

16   waiving that deadline for us and you'll instruct defense when

17   and if we need to submit a response brief?

18             THE COURT:  Yes.  Right now --

19             MR. JONES:  Okay.

20             THE COURT:  -- I'm saying there is no response brief.

21        Mr. Kealey, I'm not trying to cut you off.  If I'm going

22   anywhere with this motion, I will ask for a response and I will

23   have full oral argument.  But I am trying to also move this

24   case along.

25             I also --
```

 1              **MR. BYLER:**  This is Mr. Byler.

 2              **MR. KEALEY:**  May I, please?  May I, please?  May I

 3   please, Your Honor?  May I speak?

 4              **MR. BYLER:**  Wait a minute.  I was just telling the

 5   Court I was willing to come out --

 6              **MR. KEALEY:**  May I speak?

 7              **MR. BYLER:**  -- for a special oral argument because I

 8   consider this important.  And, quite frankly, if the motion is

 9   not granted, my motion also says certify to the Seventh

10   Circuit.  We need --

11              **THE COURT:**  And I'll -- I'll get to that.  I have

12   questions about that.

13       Mr. Kealey can have the last word.  It is after 10:00.  I

14   have some parties waiting.

15              **MR. KEALEY:**  I would request a transcript of this

16   status conference be prepared.  We'll fund it.  I'd ask that it

17   be prepared on an expedited basis.  If there is going to be any

18   briefing, we will be citing a number of statements made by

19   Mr. Byler in this colloquy today.

20              **THE COURT:**  Very well.  Frankly, I was probably going

21   to ask for a rough just for my own review, and I will be, as I

22   said, reviewing the audio this afternoon.  We will be in touch.

23       Ms. Castillo, I do think there's a procedure for the

24   ordering of the transcript; and if the parties want to order it

25   expedited, that's fine.  I will not require that and I will not

```
 1   impose deadlines for the response that would require the

 2   expedited, but that will certainly move it along if that's what

 3   the parties want.  And Ms. Castillo will be in touch with all

 4   parties with the procedures for ordering a transcript.

 5           MR. KEALEY:  How do I get an order for the

 6   transcript?

 7           THE COURT:  Ms. Castillo will provide you, Mr. Kealey

 8   and Mr. Jones, with the procedures for ordering a transcript.

 9   You do that through the court reporter.  I don't issue an

10   order.

11           MR. KEALEY:  Okay.  That's fine.  I just want to make

12   sure I get the transcript.

13           THE COURT:  Everyone will get the transcript.

14       Frankly, I will thank both sides.  I usually just require

15   a rough so I don't put more effort on the court reporters, and

16   then I have to go back and spend more time listening to the

17   audio.  I'm glad there will be a transcript.  That will make my

18   life a little easier.  We can all agree on that.

19       It is almost 10:10.  I hate running late.  I'm not cutting

20   anyone off.  I am not making any decisions on this.  I will

21   listen to it.  We will be in touch later today.

22           MR. KEALEY:  Thank you, Your Honor.

23           MR. BYLER:  Thank you, Your Honor.

24           THE COURT:  Thank you.

25       (AT&T recording ended.)
```

```
 1                        CERTIFICATE

 2   I, Stacy L. Drohosky, certify that the foregoing transcript is

 3   a true and correct record of the proceedings digitally

 4   recorded, as taken down by me stenographically from the AT&T

 5   electronic record, to the best of my ability.

 6

 7   Date:  September 6, 2022

 8                                   S/Stacy L. Drohosky
 9                                   S/STACY L. DROHOSKY
                                     Court Reporter
10                                   U.S. District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```