**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.,** in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) | |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) | |
| at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION FOR
RECONSIDERATION AND/OR CERTIFICATION**

Defendants, by counsel, respond in opposition to Plaintiff John Doe's Motion for Reconsideration and/or Certification (DE 208). The Motion should be denied.

John finally admits that "the Navy ROTC knew about the disciplinary proceeding . . . because on April 4, 2016, Jane Doe first went to the Navy ROTC to make her accusations [and] Purdue first learned of Jane Doe's accusations from the Navy ROTC." (DE 209 at 4-5). John's counsel recently spotlighted this admission: "The Navy knew before Purdue did. And the Navy knew that there was an investigation. . . . [T]he Navy did know from the start." (DE 212 at 12:2-3, 13).

John insists that, if Purdue refused to disclose its disciplinary decision to the Navy, the Navy would have disenrolled him. John contends that "the interim leave of absence would have been made an indefinite leave of absence unless I came forward with an exoneration by the university of the allegations of sexual misconduct and absent that exoneration by the university,

1

at some point I would have been disenrolled." (DE 208-1 at 2). This statement flips the script that John has previously peddled at every turn in this case. Now, John admits, he *wanted* to provide Purdue's decision to the Navy because he saw Purdue's internal decision as the key that would unlock the limbo that the Navy had imposed on him. The "stigma" that was derailing his Navy ROTC career was Jane's allegation to the Navy. John hoped that Purdue would erase that stigma by providing him "an exoneration."

With these contentions, John admits that he misled the Seventh Circuit. All along, John wanted Purdue to "divulge his disciplinary record" to the Navy. *Doe v. Purdue*, 928 F.3d 652, 661 (7th Cir. 2019). The Navy's initial discipline of John (the interim leave of absence) *preceded* Purdue's disciplinary process and would (John feared) never end unless he made the calculated choice to "divulge his disciplinary record."

Here is the allegation that John impressed upon the Seventh Circuit:

> Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a full-time student in good standing to one suspended for an academic year. And it was this official determination of guilt, **not the preceding charges** or any accompanying rumors, that allegedly deprived John of occupational liberty.

*Id.* at 662-63 (emphasis added) (citations omitted). John now admits that the truth was squarely opposite: It was Jane's "preceding charges" *to the Navy* that threatened his occupational liberty because only "an exoneration" from Purdue would remove the cloud of those "preceding charges". As stated by Purdue counsel at the Court's telephonic conference on September 1, 2022, "Mr. Byler never told he Seventh Circuit that the Navy knew about this first." (DE 212 at 13:14-16).

At that conference, Attorney Byler admitted as much: "So it's a totally different setting than what the Seventh Circuit was dealing with." (*Id.* at 18). He added that the Navy "wanted to

rely on [the Purdue disciplinary finding] as opposed to a separate board." (*Id.* at 19). Obviously a "separate board" means a Navy Performance Review Board that would evaluate the merits of the "preceding charges" submitted by Jane to the Navy.

The Court spotlighted that admission: "I mean, you just said it's different. To me, it's very different from the Seventh Circuit." (*Id*. at 18:25-19:1).

John's admission that he wanted the Navy to receive Purdue's disciplinary record provides an additional dispositive factual basis for the Court's dismissal of John's stigma-plus due process claim. That admission also renders immaterial the Motion for Reconsideration's discussion of the Navy's Regulations for Officer Development 2015-2016 ("ROD"). John admits that he made the tactical decision to authorize Purdue's disclosure because he hoped for "an exoneration" not because the ROD required him to do so.

It is now indisputable that John's real stigma-plus grievance is merely that the disciplinary record was not an exoneration. In his counsel's words, "at the time he gave the authorization he was not expecting to happen what did happen." (*Id.* at 16:19-21). The fact that the authorized disclosure was different than the "exoneration" that John was "expecting" is no help to John.

The Motion for Reconsideration also fails to meet controlling caselaw for relief under Rule 54(b), is non-compliant with Local Rule 56-1, and fails to meet the criteria for certification of an interlocutory appeal.

### I.    JOHN'S "MOTION FOR RECONSIDERATION" IS IMPROPER; THIS COURT CANNOT HEAR REPACKAGED ARGUMENTS OR EVIDENCE THAT JOHN FAILED TO PRESENT BY THE COURT-ORDERED BRIEFING DEADLINE.

The Motion for Reconsideration invokes "Rules 54(b) and 60" of the Federal Rules of Civil Procedure. (DE 208 at 1). Rule 60 is inapplicable because there has been no entry of a

"final" judgment or order. *Certain Underwriters at Lloyds v. CSX Transp., Inc.*, No. 20-cv-0795-SPM, 2022 U.S. Dist. LEXIS 71001, * 4-5 (S.D. Ill. Apr. 18, 2022). Plaintiff admits as much, by asking in the alternative for certification of an interlocutory appeal.

The authorities governing the Motion are assembled and discussed in *Certain Underwriters at Lloyds v. CSX Transp., Inc.* as follows:

> In addressing a motion to reconsider an interlocutory order, courts in this District have applied the standard established in *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). A motion for reconsideration brought pursuant to Rule 54(b) may be granted where the Court has obviously misunderstood a party, where the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties, where the Court has made an error, not of reasoning but of apprehension, where there has been a controlling or significant change in the law since the submission of the issue to the Court, or where there has been a controlling or significant change in the facts of the case. To the contrary, a motion for reconsideration is not an appropriate vehicle for relitigating arguments that the Court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration. Indeed, it is well-settled that a motion to reconsider is not a proper vehicle to advance arguments or legal theories that could and should have been made before the Court entered its order or to present evidence that was available earlier.

*Certain Underwriters*, at *6-7 (internal citations omitted); *see also Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001) ("Technically, a 'Motion for Reconsideration' does not exist under the Federal Rules of Civil Procedure."); *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985); *Anton Realty v. Guardian Brokers Ltd.*, No. 1:13-cv-01915-JMS-TAB, 2015 U.S. Dist. LEXIS 107115, at *2 (S.D. Ind. Aug. 14, 2015) (citing multiple decisions).

Not even Plaintiff John Doe here contends that this Court has "obviously misunderstood" anything. Nor does John contend that the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties. Nor does John contend that the Court has made an error, not of apprehension of a controlling or significant change in the law since the

submission of the issue to the Court, or where there has been a controlling or significant change in the facts of the case. Instead, John is advancing arguments or legal theories that could and should have been presented during the pendency of the summary judgment briefing, but which were not. He is also rehashing previously rejected arguments and characterizations.

This case has been pending for more than 67 months. Fact discovery closed on December 21, 2020[1] and the briefing on the parties' competing summary judgment motions was completed on November 8, 2021.[2]   At no point has John submitted a Rule 56(d) request or otherwise indicated that he did not have the factual record to present his case and his opposition to the Defendants' motion for summary judgment.

In all that time, John failed to tender evidence to this Court that he had a "legal obligation" to authorize the disclosure at issue during the briefing period. John's newest declaration does not discuss anything that occurred after the summary judgment briefing. John has submitted multiple declarations in this case, so whatever he is saying now could have been said in his tender of summary judgment evidence. (*See*, *e.g.*, DE 53-3). John tenders the ROD. On its face, that document is seven years old, yet John did not designate it in his earlier briefing, let alone cite to or designate it as evidence in his summary judgment briefing.

As this Court correctly summarized, John's briefing generally failed to point to any statute or regulation compelling him to sign the authorization and it was not the Court's job to

---

[1] It was originally set to expire on June 26, 2020, but subsequently extended three times. (DE 57, 88, 121, 140)

[2] Defendants filed a Notice of Additional Authority (DE 201) on April 4, 2022, and a Motion for Judgment on the Pleadings as to Title IX Claim for Damages for Emotional Harm (DE 203) on May 25, 2022, in the immediate wake of the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022). No factual assertions or new evidence were added to the record in that motion. The briefing on the Motion to Strike Plaintiff's proffered expert's testimony was completed on January 20, 2022.

scour the record or undesignated evidence to build John's case for him. (DE 206 at 16-17). This Court accurately noted that John's testimony did not evince anything more than a desire to keep the NROTC "in the loop" and that while John did not feel that he was in a position to refuse the authorization, this feeling was "not the same as an *obligation* for John to release the records." (*Id.* at 16 (emphasis in original)). These facts also corresponded with undisputed testimony from the NROTC that John was not ordered or commanded to sign the authorization. (*Id.* at 17).

The Motion for Reconsideration is also non-compliant with N.D. Ind. L.R. 56-1. The Motion for Reconsideration is, in substance, an incomplete motion for summary judgment on Purdue's Counterclaim and an attempted second opposition to Defendants' already-decided summary judgment motion. Local Rule 56-1 spells out the requirements for party's seeking a motion for summary judgment and opposing it, including the requirement for statements of material facts and genuine issues and specified citations. N.D. Ind. L.R. 56-1(a)(3)(B); (b)(2)(C), (c)(2)(C), and (e). The Motion for Reconsideration should be rejected for the additional reason that it is non-compliant with these requirements because John has not presented "a Statement of Material Facts with numbered paragraphs for each material fact the moving party contends is undisputed." As a result, there is no obligation for Defendants to submit a "Response to Statement of Material Facts" or "Reply to Statement of Additional Material Facts" pursuant to L.R. 56-1. Under the Motion there is no qualifying factual record from which the Court could make any new determinations of undisputed material facts.[3]

---

[3] The Motion does not refer to Federal Rule of Civil Procedure 12(b)(1) but calls for dismissal of Defendants' Amended Counterclaim on the ground that "there is not a federal court jurisdiction for the requested declarations" (DE 209 at 2), and the accompanying Brief asserts that the Amended Counterclaim "contains no allegations supporting federal court subject matter jurisdiction." (*Id.* at 9-10). Counterclaimant Purdue incorporates by reference its points and authorities in response to John's previous subject matter jurisdiction challenge to the Amended Counterclaim. (*See* DE 188 at 20-23).

**A.  Any argument or evidence that could have been—but was not—presented during the pendency of the briefing period for summary judgment is not properly before the Court and may not be considered.**

It is well established that motions for reconsideration of a summary judgment motion "cannot in any case be employed as a vehicle to introduce evidence that could have been adduced during the pendency of the summary judgment motion." *Green v. Whiteco Indus.*, 17 F.3d 199, 202 n.5 (7th Cir. 1994) (quoting *Publishers Resource Inc.*, 762 F.2d at 561 (internal quotation marks omitted)). "Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time[,]" *Publishers Resource Inc.*, 762 F.2d at 561, nor for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion[,]" *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

For instance, in *Green*, a professional drummer contended that the defendants negligently caused a sound blast that injured his ear. *Id.* at 200. One of the defendants filed a motion for summary judgment arguing that there was no evidence that it was negligent or that the blast occurred. The trial court granted the motion and agreed that there was no evidence of a sound blast in the designated evidence. *Id.* at 201.  Plaintiff later moved the court to reconsider the motion and submitted affidavits of band members testifying that the blast had occurred. The trial court denied the motion, holding that Plaintiff "should have produced these affidavits during the pendency of the summary judgment motion." *Id.* The Seventh Circuit affirmed the trial court's decision, noting that there was no excuse for Plaintiff's failure to produce evidence for an essential element of his claim:

> Plaintiff argued that he could not have known that the malfunctioning of the sound system was in issue in the motion for summary judgment and therefore did

not know that he should have brought forth any evidence on this point. We find this argument to be wholly implausible. Not only did Whiteco explicitly argue that it was not liable for negligence because the sound system operated without flaw, but the proper or improper functioning of the sound system was the central issue in the case. **Plaintiff's failure to produce affidavits on this issue, after two years of litigation, cannot be excused**.

*Id.* at 202 n.5 (emphasis added).

In *Marion v. City v. City of Corydon*, 559 F.3d 700 (7th Cir. 2009), Plaintiff brought a section 1983 excessive force suit against several municipalities and police officers stemming from a dramatic police pursuit and arrest. The defendants moved for summary judgment, arguing that the record evidence indisputably demonstrated that they had used reasonable force to subdue the plaintiff. *Id.* at 703-04. While the plaintiff opposed each of the motions, he did not rely on his own sworn testimony to oppose the motion. *Id.* at 704. The trial court issued an order to show cause why it should not grant the defendants' motions and noted that argument and representations by counsel could not be substituted for facts at the summary judgment stage. *Id.* Realizing his error, plaintiff filed a motion to reconsider summary judgment, including his "belated affidavit;" however, the Court denied the plaintiff's motion and granted the defendants' motions, concluding that the affidavit was not properly before the court and could not be considered. *Id*. The Seventh Circuit agreed with the trial court, noting:

It is well-established that we can only consider such an affidavit if it consists of newly discovered evidence that the party could not have introduced during the pendency of the summary judgment motion. The evidence that [plaintiff] submitted cannot be construed as newly discovered evidence; the affidavit simply consists of his version of the events at issue.

*Id.* (citing multiple decisions).

Finally, in *Anton Realty v. Guardian Brokers Ltd.*, 2015 U.S. Dist. LEXIS 107115, 2015 WL 4878249 (S.D. Ind. Aug. 14, 2015), the plaintiff moved the court to reconsider its grant of summary judgment in favor of the defendants, arguing that the court misapprehended the record

8

and the plaintiff's arguments. The judge rejected the improper attempts to put these points and issues before the court:

> [Plaintiff's] new argument that was not raised in [its] summary judgment briefing and thus is not proper to raise in a motion for reconsideration. . . . because this argument was not adequately raised in its summary judgment briefing, the Court will consider it waived and not reconsider its Order on this ground. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1270[4]; *see also Sturgis v. Author Solutions, Inc.*, 317 Fed. Appx. 553, 556 (7th Cir. 2009) ("[A]n argument raised for the first time in a motion to reconsider comes much too late.").

*Anton Realty*, at *4-6.

The same rule applies here and must result in the same outcome. John's new arguments are waived, and the Motion for Reconsideration must therefore be denied.

### B. The evidence tendered with John's Motion could have been presented to the Court during the briefing period.

John tendered four exhibits in support of his Motion, though the thrust of his argument relies only on the first three: 1) His newest declaration, dated August 30, 2022; 2) excerpts from his August 18, 2020, deposition; 3) a copy of the Navy Regulations for Officer Development 2015-2016, which his counsel received a copy of on October 15, 2020; and, 4) excerpts of the August 25, 2020 deposition of Investigator Jacob Amberger (pages 78-79). John's motion does not and cannot claim that any of this evidence is newly discovered, nor can his newest declaration, again re-summarizing and reframing his version of events, constitute newly discovered evidence. *E.g.*, *Marion*, 559 F.3d at 704. All this evidence was previously available to John during the briefing stage, but he chose not to rely on it or present it to the Court.

### C. John's previous arguments regarding a legal obligation to self-disclose did not advance the evidence and arguments offered in the present motion.

Defendants' Motion for Summary Judgment did not mince words. In Defendants' statement of undisputed facts, Defendants stated: "On May 24, 2016, John Doe voluntarily

---

[4] *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

9

executed an authorization for the release of his Purdue information to the NROTC. No one with the NROTC ordered John to execute the authorization." (DE 178 at 25) (internal citations to record omitted). Thus, the issue of the voluntary execution of the authorization was squarely at issue.

Nevertheless, in his response brief to Defendants' Motion, John made this lone argument (and accompanying two cites to the record) regarding that crucial element of his claim: "Defendants describe John's authorization . . . as 'voluntary' . . . ; however, John did not so testify, but rather that the Navy wanted to be 'in the loop' (SJM 5: John Doe Dep tr 21-22), and Purdue NROTC Executive Officer Craig Remaly testified the authorization form was one that Purdue requested in John's case (Pl Opp DSJ 12: Remaly Dep tr 26-27)." (DE 187 at 31). Likewise, in John's response to Defendants' Motion for Summary Judgment, John again disputed that he was not under a "legal compulsion" to authorize the disclosure but did not cite to any designated evidence, though he directed the reader to what was cited above, from his other brief.[5] (DE 191 at 8, 14-15). John also averred that "he was in no position to refuse the authorization," but provided no citation for this ambiguous assertion. (*Id.* at 8).

Absent from John's briefing is any discussion—including necessary citation to designated exhibits—of the chief arguments John now advances, including his theory that the ROD created the legal obligation for him to execute the authorization. (*See* DE 209 at 6-9). Indeed, the portions of the ROD now relied on by the Plaintiff were not designated or relied on at any point by Plaintiff in his briefing.[6] Plaintiff provides no explanation why he did not make

---

[5] Plaintiff's cite here directs the reader to page 25 of DE 187, which appears to be a conflation of the electronic stamped number by the E-file system and the document's page number at the bottom. Plaintiff is citing to page 31 of DE 187.

[6] A small portion of the ROD was designated by the Defendants, but it was never cited nor addressed by Plaintiff. It does not support Plaintiff's contentions and, more importantly, he did not rely on it in briefing

these arguments or citations previously, nor why he could not have done so. In any event, there can be no excuse for failing to fully brief an issue that was central to the Seventh Circuit decision, that was briefed and argued in 2018 and issued in 2019, and thereafter subject to years of discovery (including 5 depositions with Navy personnel) and teed up squarely by the Defendants' briefing. *See Green*, 17 F.3d at 202 n.5 (denying motion to reconsider that submitted additional affidavits/evidence while noting: "Not only did [defendant] explicitly argue that it was not liable for negligence because the sound system operated without flaw, but the proper or improper functioning of the sound system was the central issue in the case. Plaintiff's failure to produce [evidence] on this issue, after two years of litigation, cannot be excused.").

### D. These new arguments and evidence are not properly before this Court.

The arguments and evidence that Plaintiff now presents amount to (1) an improper vehicle to "introduce evidence that could have been adduced during the pendency of the summary judgment motion", (2) new arguments or "new legal theories" that Plaintiff could have made previously, or a (3) "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Green*, 17 F.3d at 202 n.5; *Publishers Resource Inc.*, 762 F.2d at 561; *Caisse Nationale*, 90 F.3d at 1270. For these reasons, none of John's evidence and arguments are properly before this court and his Motion must be denied. *E.g.*, *Holland v. City of Gary*, No. 2:10-CV-454-JD-PRC, 2013 U.S. Dist. LEXIS 29421, at *8-9 (N.D. Ind. Mar. 5, 2013) (denying a motion to correct error, observing "The instant Motions to Reconsider merely rehash legal theories and arguments already addressed by the

---

his previous points. As this Court correctly observed "It is not for the Court to construct an argument for the litigants and scour the record – or outside the record – for support. *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.")." (DE 206, at 17).

Court or add new theories and arguments that should have been advanced in his original Motions for Summary Judgment  or responses to Defendants' Motions.").

## II.    THE SUBSTANCE OF JOHN'S MOTION IS MERITLESS.

Notwithstanding if John's arguments and evidence are properly before this Court, there is no merit to their substance.

John confuses the analysis of Title IX process with the analysis of whether he was deprived of occupational liberty without Fourteenth Amendment Due Process. The *Doe v. Purdue* decision only allowed John to proceed on a single constitutionally protected interest (his occupational liberty for a career in the Navy) and a single allegation of deprivation (stigma-plus publication of his Purdue disciplinary record). As further discussed below, there is no material issue of fact on the allegation of deprivation. Therefore, John's contentions about whether Purdue's internal process satisfied the Fourteenth Amendment are immaterial. As this Court recently stated, "If there's no obligation . . . that's the end of the due process analysis." (DE 212 at 11:7-8).

### A.  John has still failed to demonstrate evidence of a legal obligation.

As discussed above, John's authorization of disclosure of Purdue's disciplinary record was a calculation on his part in the hope of "an exoneration" to bring an end to his "interim leave of absence" while Jane's allegation to the Navy remained pending with the Navy. Such a calculated decision is not an obligation at all, let alone a legal obligation.

The ROD is set of internal Navy rules, not law. John does not cite any rule that obligated him to obtain Purdue's disciplinary decision and supply it to the Navy. Nor does John contend that the ROD functions as a statutory obligation or has the force of law to compel release of Purdue records.

In *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997), Judge Posner rejected the appellant's argument that he had satisfied the stigma-plus test by alleging that he would be pressured by future employers to disclose the defamatory reasons he was fired from his police department. Judge Posner reasoned:

> [Olivieri's] position resembles the largely discredited doctrine of "compelled republication" or (more vividly) "self-defamation," which allows the victim of a defamation to satisfy the requirement of publication by publishing it himself, for example to prospective employers as in the present case. . . . The doctrine is inconsistent with the fundamental principle of mitigation of damages. It is no doubt highly likely that the ground of Olivieri's discharge would become known to prospective employers, but it is not certain. A prospective employer might not ask him—might ask only the Chicago Police Department, which for all we know might refuse to disclose the grounds of Olivieri's discharge; . . . .

*Id.* at 408-09.

Conversely, in *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), a statute required anyone, found by a state agency to have engaged in child abuse, to authorize disclosure of that finding to prospective employers. The Seventh Circuit found that there was no defense of "consent" for the agency because the authorization was compelled by statute. *Id.* at 509-10.

The Seventh Circuit distinguished *Olivieri* and *Dupuy* by noting that the disclosures in the cases were "voluntary" and "compelled," respectively. *Purdue Univ.*, 928 F.3d at 662. While there is no doubt that Olivieri felt obligated or pressured to disclose his termination to prospective employers—*e.g.*, wanting to appear candid and trustworthy during job interviews— that pressure was not the same as a legal obligation compelling disclosure.

The distinction between pressure to disclose and the legal obligation to disclose is discussed at length in *Doe v. Trustees of Indiana University*, No. 1:20-cv-00123, 2021 U.S. Dist. LEXIS 105760, 2021 WL 2213257 (S.D. Ind. May 4, 2021). In that decision, John (a freshman) was suspended by Indiana University ("IU") for sexual misconduct. John sued IU, alleging that

his due process rights had been violated, and applied for enrollment at Purdue, though he stated an intent to return to IU. In order to apply for admission to Purdue, he had to authorize the release of his IU records to Purdue. Judge Sweeney rejected the argument that this constituted a "legal obligation" to authorize the release of IU records to Purdue:

> [H]ere, there is simply no indication that John's consent to publication was involuntary or otherwise illusory. John cites no law requiring him to consent to IU's publication. True, as part of his transfer application, John agreed to "authorize secondary and post-secondary schools [he has] attended to release information needed by Purdue to process and verify [his] application." He also "affirm[ed], under the penalties for perjury, that the provided representations [in his transfer application], including information related to my citizenship status and/or presence in the United States[,] are true." But neither of these pre-conditions to submitting a transfer application to Purdue amounts to a legal obligation to consent to disclosure of defamatory information. **To truly parallel *Dupuy*, John would have needed to show that some extant legal obligation— like a statute or regulation—required him to consent to IU's disclosure** of his sexual misconduct finding whenever he applied to any university that could support his prospective career as a businessman. Instead, John has merely shown that one transfer application to one such university required consent to disclosure as a pre-condition to applying. That pre-condition simply does not look much like the blanket state law that vitiated the plaintiffs' consent in Dupuy. It looks more like voluntary consent.

*Id.* at *10-13 (emphasis added, internal citations omitted).

John does not point to any federal or state law or regulation that required him to consent to his execution of the authorization. John's enrollment in the Navy's ROTC program at Purdue University was an elective educational step, comparable to the election discussed in Judge Sweeney's above-quoted analysis. The participation steps for such an elective educational step are not a mandate imposed by law.

John cites no authority demonstrating that the ROD has the force of law or that he faced any civil or criminal penalty for not complying with the same, unlike in *Dupuy*.

Nonetheless, assuming for the sake of debate that the ROD carried the same force as state law, John's argument stalls because John does not cite any language in the ROD that specifies

14

disclosure. Indeed, while John relies on statements of principles and values in the NROTC (building trust, being honest) and examples of types of offenses mentioning a "disregard or contempt for authority" and a "lack of a sense of responsibility," (DE 209, at 7), those normative standards are not disclosure mandates, as this Court recognized at the status conference, (DE 212, at 16:6-11). John does not point to the testimony of any Navy officials stating that any of these specific rules, statement of principals and values, or summaries obligated him to sign the authorization; conversely, as this Court correctly noted, the only testimony from the Navy was that it asked—**but did not order**—John to sign the authorization. (DE 206, at 17). John's new affidavit and his counsel even concedes this point. (DE 208-1, at ¶7) ("Though this request [for my authorization] may not technically have been an order . . .."); (DE 212 at 19:17-18) ("[W]hen [the NROTC officer] says there wasn't a formal order, no, there wasn't . . . .")

John argues in his newest affidavit and his brief about his own interpretation of what the ROD meant and mandated and that had he refused the authorization he "would have looked bad" and he "would have been sanctioned in some way." (DE at 208-1). Those speculative, conclusory statements are inadmissible to establish a material issue of fact. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *First Commodity Traders, Inc. v. Heinold  Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact."); *see also Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1057 (7th Cir. 1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment."). John

does not point to the testimony of any of the five Navy personnel deposed to support his conclusions.

Finally, John asserts that he would eventually need to disclose Purdue's decision if he were to apply to any branch of the armed forces or an ROTC unit because it is part of his "permanent federal record"[7] and it would look bad if they later discovered the decision and he did not disclose it. This argument is identical to the one advanced in *Indiana University*, and should be rejected for the exact same reasons. *Indiana University* at *10-13 (rejecting the argument that a requirement on a college application to consent to disclosure of prior records and to tell the truth amounted to a "legal obligation" for the purposes of stigma-plus.

In sum, John made a calculated decision to cooperate with the NROTC in the hopes that it would reflect well on him. (*See* DE 208-1 at ¶¶5, 8) (John explaining that he believed it would look "bad" if he refused to cooperate with the NROTC and that he believed it might "cause me trouble").

But, like the litigants in *Olivieri* and *Indiana University*, choosing an option because of the potential adverse consequences of not doing so is not the same as a federal or state statute or regulation compelling compliance, as in *Depuy*. None of the excerpts cited by the ROD required John to execute the authorization, nor can John point to any evidence from the Navy that he was ordered to execute the authorization or that he would be disciplined under the color of state or

---

[7] Defendants have contended for several years that Plaintiff's expungement and injunctive relief claims fail as a matter of law because the Navy, which maintains its own file, is not a party to this suit and a non-party cannot be compelled to expunge its own records, rendering John's pursuit of expungement incomplete and insufficient to meet the redressability element of standing and depriving him of the same. John now confirms Defendants' position after denying the existence of such a file for several years. (*E.g.*, DE 53, at 23 (citing John Doe's declaration and arguing "As to Plaintiff John Doe's service record with Navy ROTC . . . there is nothing in Plaintiff John Doe's service record with the Navy ROTC other than what Defendant Purdue sent concerning the university sexual misconduct proceeding.")).

federal law for not electing to do so. John waived these arguments by not delving into them during the briefing period, but they are, nonetheless, of no avail.

### B. This Court already considered whether the evidence created a genuine dispute of material fact on the defamatory nature of the statements

John argues that summary judgment should have been granted in his favor because it does not matter whether any disclosure was actually defamatory: "[A] stigma-plus liberty interest is not contingent on the due process plaintiff proving that the accusations were false." (DE 209, at 11). Put differently, John posits that if in fact he assaulted Jane Doe, Purdue should be liable for disclosing the rape to the Navy. This argument is absurd.

First, if John in fact assaulted Jane, as Jane alleged to the Navy, then the assault would violate Navy regulations, regardless of Purdue's suspension of John.

Second, as John acknowledges, stigma-plus is grounded in concepts of common law defamation principles. *See Olivieri, supra* (analyzing the concept of self-defamation); *Trs. of Ind. Univ.*, at *5-6. Truth is a total defense to alleged defamation. *See Trs. of Ind. Univ.* at *14-15 (citing *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354 (7th Cir. 2019)). For instance, in *Indiana University*, the student alleged that his stigma-plus claim could continue when the university put a notation on his transcript indicating that he was suspended (though not stating that he suspended for sexually assaulting another student). The Court disagreed and held that the statement was "true, so it is 'not actionable defamation,' no matter the implication." *Id.* at *15. There is no actionable stigma-plus liberty interest deprivation claim without defamation. *See, e.g., id.*; *Sutton v. Schacht*, No. 95 C 4440, 1997 U.S. Dist. LEXIS 2564, at *7-9 (N.D. Ill. Mar. 5, 1997) (holding that plaintiffs, who alleged that their liberty interest was deprived following a press release from the Illinois Department of Insurance, had failed to plead a claim where they were not defamed or where they failed to deny the truth of the statement at issue). In other

17

words, falsity is an essential element of a defamation and a stigma-plus claim. *Wright v. Glover*, 778 F. Supp. 418, 423 (N.D. Ill. 1991) ("Without allegations of falsity there can be no defamation, and thus there can be no liberty deprivation."); *see also Mills v. City of Phenix City*, No. 3:11cv529-MHT (WO), 2012 U.S. Dist. LEXIS 97796, at *14-15 (M.D. Ala. July 16, 2012) (explaining that stigma-plus claims require a false statement and holding that "Because the city did not state a falsehood, Mills's stigma-plus claim must fail."); *Milo v. Univ. of Vt.*, No. 2:12-cv-124, 2013 U.S. Dist. LEXIS 123682, at *28-31 (D. Vt. Aug. 29, 2013) (holding that the school was entitled to summary judgment on a hockey player's stigma-plus claims because the player failed to demonstrate that the school's statements were false).

The remaining half of John's brief regurgitates earlier characterizations of Defendants' evidence or repackages his earlier arguments to contend that no one could reasonably conclude as Purdue did. (DE 209, at 14-22). This Court already thoroughly reviewed the evidence designated by the parties and explained how a reasonable factfinder could conclude that John violated Purdue rules; the Court does not need to reexplain its holding, nor does it need the parties to restate the same positions and arguments that were already briefed *ad nauseum*. A motion to reconsider is not a proper vehicle to rehash arguments that were already presented or to present new arguments that could have been made. *See Caisse Nationale*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments.").

### C. Defendants' remaining arguments would need to be addressed were this Court to entertain any of John's Motion.

This Court concluded that it need not address Defendants' other arguments in support of their motion for summary judgment because it found for them on the issue of the legal obligation. (DE 206, at 17, n.12). If this Court were to amend its holding in any material respect on John Doe's due process claim, it would need to address the other fatal defects in that claim, as

briefed previously. Those defects include John's lack of standing due to the undisputed fact that John's suspension from Purdue ended many years ago and he has never sought to re-enroll at Purdue or in Purdue NROTC; the lack of any effort by him to pursue a Navy career in any form; the lack of any evidence that the Navy views John as presently ineligible for a Navy career; and the undisputed fact that John's disenrollment from the Navy was solely due to his non-enrollment at Purdue for the pending 2015-16 academic year; and the undisputed fact that the Navy conducted its own investigation of Jane's sexual assault allegation against John, as an alleged violation of the Navy's own rules, and the Navy's own determination of that allegation would determine John's discipline status and eligibility to serve in the Navy.

### III.  CERTIFICATION IS INAPPROPRIATE: JOHN HAS FAILED TO ARTICULATE THE STANDARD OR ATTEMPT TO MEET HIS BURDEN FOR THIS "EXCEPTIONAL" REQUEST.

Interlocutory appeals are governed by 28 U.S.C. § 1292(b). *Pugh v. NCAA*, No. 1:15-cv-01747-TWP-DKL, 2016 U.S. Dist. LEXIS 168174, at *12 (S.D. Ind. Dec. 6, 2016). The controlling statute provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . .

28 USC § 1292(b). There are four requirements for these appeals: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). Unless all these criteria are satisfied, the district court may not certify its order for an immediate appeal under § 1292(b). *See id.* (noting the criteria "are conjunctive, not disjunctive"). The decision of whether to allow an immediate interlocutory appeal of a non-final

order pursuant to § 1292(b) is within the discretion of the district court. *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995). Certification is rarely appropriate:

> The party moving for interlocutory appeal bears the **heavy burden** of persuading the court "that **exceptional circumstances** justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Bridgestone/ Firestone, Inc. Tires Prod. Liab. Litig.*, 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002) (emphasis in original). Interlocutory certification is the exception, not the rule, and thus should only be granted "sparingly, and with discrimination," *Whitmore v. Symons Int'l Group, Inc.*, No. 1:09-CV-391-RLY-TAB, 2012 U.S. Dist. LEXIS 113566, 2012 WL 3308990, at *1 (S.D. Ind. Aug. 13, 2012), and should not be invoked "merely to provide a review of difficult rulings in hard cases." Bridgestone/Firestone, Inc. 212 F. Supp. 2d at 909.

*Emley v. Wal-Mart Stores, Inc.*, No. 1:17-cv-02350-SEB-TAB, 2020 U.S. Dist. LEXIS 3723, at *5 (S.D. Ind. Jan. 8, 2020) (emphasis added).

Despite this abundance of guidance, John has declined to cite the relevant statute, or any authority in support of his demand, and has offered only a sentence or two of conclusory statements.  (*See* DE 209, at 23). He has waived his argument. *E.g.*, *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 741-42 (N.D. Ill. 2014); *Schmelzer v. Animal Wellness Ctr. of Monee*, LLC, No. 18-cv-01253, 2021 U.S. Dist. LEXIS 148711, at *11 (N.D. Ill. Aug. 9, 2021); *see also United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." (parentheses in original)).

Even assuming, solely for argument's sake, that John has not waived this argument, his certification demand merely states that "meritorious parts" of his case "should not be broken off." (DE 209, at 23). He has not addressed his burden nor has he attempted to demonstrate that any of the mandatory elements for certification have been met. For instance, the element of contestability requires there to be a "substantial ground for difference of opinion as to the correct outcome," meaning to demonstrate not just that you have a meritorious argument but also

whether other courts have adopted conflicting positions from the one sought to be certified. *See Emley*, at \*12-14. John's arguments on the substance fail for all the reasons that the Defendants and the Court previously noted, and he has presented no authority of cases with substantially comparable factual records coming to different conclusions from this Court. Thus, there is no basis to conclude that there "is a substantial ground for difference of opinion." 28 USC § 1292(b).

John has also not offered any explanation how a detour to the Seventh Circuit— considering the extensive briefing, record, exhibits, and argument that a panel would need to consider— would speed up litigation.  To the contrary, the Title IX claim would still need to go to trial and shifting between courts only promises to add further delay. *See generally Ahrenholz*, 219 F.3d at 676 (counseling district courts to only certify questions when necessary and that certification is inappropriate when that issue cannot be "decide[d] quickly and cleanly without having to study the record.").

John has not met his "heavy burden" to entitle him to the "exceptional" relief of certification. *Emley*, at \*5. His request must be denied.

## IV.  CONCLUSION

Wherefore, Defendants respectfully request that Plaintiff's Motion be denied.

Dated:  September 20, 2022

Respectfully submitted,

*/s/ Tyler L. Jones*
Tyler L. Jones (34656-29)
William P. Kealey (18973-79)
James F. Olds (27989-53)
Stuart & Branigin, LLP
300 Main St., Ste. 900
P.O. Box 1010
Lafayette, IN 47902-1010
Telephone: 765-423-1561
Email: wpk@stuartlaw.com
          tlj@stuartlaw.com
          jfo@stuartlaw.com
**Attorneys for Defendants**

1501319v1