IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) |
| **DANIELS, JR.**, in his official capacity as President of | ) |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, **KATHERINE** | ) |
| **SERMERSHEIM**, in her official capacity at Purdue University, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF JOHN DOE'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF PLAINTIFF JOHN DOE'S MOTION
 FOR RECONSIDERATION AND/OR CERTIFICATION **

Plaintiff John Doe ("John"), by counsel, respectfully submits this Reply Memorandum of Law in further support of John's motion pursuant to Rules 54(b) and 60 of the Federal Rules of Civil Procedure for re-argument, reconsideration and amendment of certain parts of the Court's non-final Opinion and Order dated August 11, 2022, dismissing the due process claim. John's motion is proper and should be granted, or else this Court's August 11 decision is in conflict with Judge Martin's decision in *Mary Doe and Nancy Roe v. Purdue*, 4:18-CV-89-JEM (N.D. Ind. Jan. 13, 2022), upholding and sending to trial those plaintiffs' due process claim. (Decision attached.)

Defendants' introductory argument begins with a false statement when asserting that John "finally admits" the Navy ROTC knew about the disciplinary proceeding because in April 2016, Jane Roe first went to the Navy ROTC. (Dfs. Opp. 1.) John's position in the summary judgment briefing, based on the discovery record, was (i) that the Navy ROTC knew about the disciplinary

[1]

proceeding because in April 2016, Jane Roe first went to the Navy ROTC, (ii) that Navy ROTC Commander Hutton referred the matter to Purdue for investigation, and (iii) that the May 20, 2016 authorization came afterward in the context of the Navy already knowing about Jane Roe's allegations and the Purdue disciplinary investigation and wanting "in the loop": (Plaintiff's SJ Mem. Law (DE 183 pp. 4, 11); Plaintiff's SJ Statement Material Undisputed Facts (DE 183-1 ¶¶ 7, 22); Plaintiff's SJ Opp Mem. Law (DE 187 pp. 4, 6-7, 25); Plaintiff's SJ Opp Statement Material Facts (DE 187-2 pp. 5, 25).

The significance was explained by John: "With Jane Roe having reported her accusation to the Navy ROTC and the Navy ROTC looking to Purdue for the investigation, I really was in no position to refuse the authorization." (DE 208-1 ¶ 7.)  According to John: "The Court correctly states at page 16 of the Opinion and Order that I did not believe I was in a position to refuse to authorize the Navy access to the documents from the university disciplinary proceedings. . . . Soon after Jane Roe complained to the Navy, I was put on interim leave of absence pending the university investigation.  If I had refused authorization, I would not only have looked bad, but I also would have been sanctioned in some way." (DE 208-1 ¶¶ 3, 5.)

In response, Defendants falsely asserts that John "flips the script" from what John had been peddling at every turn and that John misled the Seventh Circuit.  (Dfs. Opp. 2.)  If anyone misled the Seventh Circuit, it was Defendants, who argued there that John in fact might have had a colorable due process claim if only he had filed his lawsuit earlier. (Attorney Kealey, responding to a question from Judge Sykes on the Due Process Clause: "Had he timely come to the district court in June of 2016, and said, 'I am facing a suspension and want preliminary injunctive relief, because I'm facing this harm, and before this harm befalls me, there's an opportunity for a remedy.'" Oral Arg. at 46:30 to 47:04, https://www.ca7.uscourts.gov/opinions-and-oral-arguments/oral-argument-

videos/17-3565.mp4) Defendants' subsequent briefing has entirely "flipped the script" on what Defendants' counsel conceded to Judge Sykes.

By contrast, John's argument has been consistent: (1) Purdue's procedurally flawed adjudication violated the Due Process Clause; (2) despite its unfairness, he had no choice but to authorize the Navy to be "in the loop" and receive the documents in the university disciplinary proceeding; and (3) the Navy acted on the results of Purdue' procedurally flawed adjudication, terminating him from NROTC and thus satisfying the stigma-plus liberty test.

That was the context of what Attorney Byler for John argued to the Court in the September 1, 2022 Court teleconference. Attorney Byler made no "admissions" but rather argued that: the Court has the discretion to reconsider upon the motion; the Seventh Circuit was "bound and determined" to find a denial of due process here; the Navy knew about the disciplinary investigation and wanted "in the loop"; NROTC Assistant Commander Remaly did not have to give a formal order; there is a difference between ordering a claim to trial and dismissing it; the Seventh Circuit issued a directive to consider expungement on remand; the August 11 decision's rejection of a due process obligation would not fly with the Seventh Circuit; what could John do but give the authorization when he wanted to make a career as a Naval Officer. (DE 212, pp. 17- 21.)

This Court has recognized that summary judgment would not be denied if "any failure to provide authorization would have resulted in a sanction or lawful order, pointed to an NROTC regulation compelling his cooperation, or even shown that he would have had to make a disclosure of Purdue's finding to reapply to NROTC after his suspension." (DE 206, pp. 16-17.) Defendants have no real substantive answer to the analysis of the Navy Regulations for Officer Development in effect in the 2015-2016 school year ("Navy ROD 2015-2016") presented by John (DE 209, pp. 6-9) that fully satisfies what this Court held would call for the denial of summary judgment. The Navy ROD 2015-2016 compelled giving authorization, would made John subject to sanction upon

[3]

refusing authorization, and required disclosure upon re-application due to a permanent federal record. Defendants' notion that the Navy ROD 2015-2016 do not provide a legal obligation is divorced from the realities of the situation. Defendants' talk about what John supposedly wanted is beside the point; it was a matter of what John was effectively required to do.

John's situation as a Navy ROTC midshipman who was not in a position to refuse the authorization to the Navy is totally inapposite to the situation of a voluntary disclosure of a disciplinary record for a school transfer, as in *Doe v. Trustees of Indiana University*, 2021 WL 2213257 (S.D. Ind. May 4, 2021), and to the situation of a voluntary disclosure of the reason for an employment discharge in *Olivieri v. Rodriguez,* 122 F.3d 406 (7th Cir.1997). Defendants' ignoring the distinction between civilian and military life in this context amounts to willful blindness.

## I.    JOHN'S MOTION IS PROCEDURALLY PROPER.

### A.    The Reason For The Motion.

This motion was made because of the national importance of the due process rulings of then Judge (now Justice) Barrett in *Doe v. Purdue*, 928 F. 3d 652, 661-664, 667 (7th Cir. 2019), holding: (i) that John Doe had pleaded a liberty interest; (ii) that Purdue's disciplinary process was woefully deficient and did not provide due process, citing among other things not giving John Doe the investigation report and not holding a real hearing ("Purdue's process fell short of what even a high school must provide to a student facing a days-long suspension"); and (iii) that the District Court on remand was to consider the expungement of the disciplinary file ("we instruct the court to address the issue of expungement on remand"). When then Education Secretary DeVos announced on May 6, 2020, what would be the current due process Title IX regulations, she pointed to three cases that were particularly instructive, one of which was the Seventh Circuit's decision in *Doe v. Purdue*. Yet, this Court's Opinion and Order dated August 11, 2022, did not consider Purdue's due process violations and expungement of the disciplinary file, instead throwing out the due process claim on

[4]

the insufficient ground that the fact John was not in a position to refuse to give authorization to the Navy ROTC to have the university disciplinary files was not the same as having a legal requirement to disclose the university disciplinary files to the Navy ROTC. (DE 209, p.2.)

> **B.    The Texts of Rule 54(b) and Rule 60(b) of the Federal
> Rules of Civil Procedure and The Court's Wise Discretion.**

Defendants' first main argument in opposition to John's motion is an inapplicable technical one: that the motion is improper and cannot consider repackaged arguments. (Dfs. Mem. 3-12.) That argument is not based upon the text of Rule 54(b) of the Federal Rules of Civil Procedure, which provides in pertinent part that:

> . . . any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities*.

(Emphasis added.) Nor is Defendants' argument based upon the text of Rule 60(b) of the Federal Rules of Civil Procedure, which provides in pertinent part that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, *order*, or proceeding for the following reasons:
>
> (1) mistake . . . ;
>
> . . . or
>
> (6) any other reason that justifies relief.

(Emphasis added.) Rules 54(b) and 60(b) are the rules invoked for motions for reconsideration, and the texts of both Rules 54(b) and Rule 60(b) literally grant the Court discretion to reconsider an order such as the Court's August 11 Opinion and Order. Given the importance of the due process rulings of the Seventh Circuit in this case, the inter-District conflict created by the Court's August 11 decision and the interest in getting this issue decided correctly, this Court should reconsider and reinstate the due process claim.

[5]

C.     **Defendants' Technical Arguments Are Without Merit.**

To dispute that point, Defendants give what are three lines of misapprehended case law or inapplicable assertions for technical avoidance of the meritorious grounds for reconsideration.

1.   *Bank of Waunakee v. Rochester Cheese Sales, Inc.* **and Misapprehension.**

Defendants first discuss (at Dfs. Mem. 3-7) an unofficially reported District Court case, *Certain Underwriters at Lloyds v. CSX Transp., Inc.*, 2022 U.S. Dist. LEXIS 71001 (S.D. Ill. Apr. 1, 2022), that recites grounds for reconsideration recognized in *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Rather than focus on an unofficially reported District Court case, it is more useful to examine directly what the Seventh Circuit in *Bank of Waunakee* said. There, the Seventh Circuit recognized (906 F.2d at 1191):

> A motion for reconsideration performs a valuable function where:
>
>> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. . . .

The Seventh Circuit in *Bank of Waunakee* further noted that (906 F.2d at 1191-1192):

> Justice Cardozo also recognized the utility of the motion to reconsider to the misunderstood litigant:
>
>> Can it be that he is remediless? An appeal will not aid him, for that must be heard upon the papers on which the motion was decided.... A grievous wrong may be committed by some misapprehension or inadvertence by the judge for which there would be no redress, if this power did not exist.

These observations by the Seventh Circuit reflect a far more hospitable view of motions for reconsideration than what Defendants would have the Court believe.

Contrary to Defendants, John has contended that the Court misapprehended the issue of stigma-plus liberty interest and the importance of the due process rulings; what John testified to in not being in a position to refuse authorization was sufficient for the stigma-plus liberty interest and

thus the requirements of due process and Defendants' due process violations were and are very much part of this case. That, in sum and substance, was Attorney Byler's point for John at the September 1 Court teleconference (DE 212, pp. 17-21) and was the point in John's Memorandum of Law for reconsideration or certification (DE 209, pp. 2-3, 4-6).

Further, contributing to that misapprehension was that Attorney Kealey, who has been counsel for the Purdue Defendants in this case and was counsel for the Purdue Defendants in *Mary Doe and Nancy Roe v. Purdue*, 4:18-CV-89-JEM (N.D. Ind. Jan. 13, 2022), did not advise the Court of Judge Martin's January 13, 2022 ruling (after the summary judgment briefing) upholding and sending to trial those plaintiffs' due process claim. (DE 72 in 4:18-CV-89-JEM.) Of interest to the Court would have been the passage in which Judge Martin wrote:

> Roe further argues that the more severe the discipline, the more procedural safeguards should be in place, and that procedural defects in Purdue's process taint the decision to suspend her. Roe asserts that she will be obligated to self-report this sanction to other institutions of higher education, including law schools, and by implication, bar admission authorities, meaning her stigma of a sanction will continue to be disseminated.
>
> As in *Doe v. Purdue Univ.*, supra, in which the plaintiff was required to authorize Purdue to release information about a sanction to his ROTC program and the Court of Appeals found that even with his permission to disclose, the disclosure satisfied the stigma-plus standard, the disclosure of Roe's sanction may impact her future education and employment opportunities. Roe may be the person who either has to self-report this sanction, or authorize its report by Purdue, but she has alleged that report it she must, and Defendants do not dispute that. Instead, they argue that because Roe had no protected right to a Purdue education, the suspension (rather than an expulsion) does not constitute a deprivation of any protected interest. A jury could find that Roe has sustained a loss of a liberty interest in a stigma-plus claim as a result of a flawed investigatory process. See, *e.g.*, *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2015) (noting that the plaintiffs legally obligated to allow state to disclose finding they were child abusers); *Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013) (holding that the state deprived plaintiffs of liberty interest when state adjudicated they violated child safety laws and could no longer operate day care center); *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603 (7th Cir. 2002) (concluding that the state deprived plaintiffs of an occupational interest when reported finding of child neglect to employers). Summary judgment on Roe's claims for deprivation of due process is not appropriate because a jury could find Purdue's flawed investigatory process resulted in a loss of a liberty interest to Roe in a

> stigma-plus context, even if Roe is the one who may be legally obligated to report the stigma. Roe has asserted that the decision by Purdue, which she asserts was based on a flawed process, has resulted in a loss of future educational and employment opportunities, and a factfinder could agree.

(DE 72 in 4:18-CV-89-JEM: Slip Op. at 20-21.) In that case, Roe felt an obligation to self-report, just as John here felt an obligation because he was in no position not to give authorization. *See also Doe v. Purdue*, 464 F. Supp.3d 989, 1001-1003 (N.D. Ind. June 1, 2020).

Defendants try to save their technical objection by erroneously invoking N.D. Ind. L.R. 56-1, which spells out requirements for summary judgment motions. John, however, adhered to those Local Rule requirements. John is now seeking reconsideration of the decision to dismiss the due process claim because the Court misapprehended the issue of stigma-plus liberty interest and the importance of the due process rulings. John is also now seeking reconsideration of the Court's failure to decide the part of the summary judgment motion to dismiss the Defendants' Amended Counterclaim. John's motion for reconsideration is not the first time moving against the Amended Counterclaim; it was fully briefed in the summary judgment papers: Plaintiff's SJ Mem. Law (DE 183 pp. 46-50); Dfs Opp MOL (DE 188: p. 6); Pl Reply SJ Mem. Law (DE 191: pp. 14-15). The Court simply did not decide that part of the motion, and one part of the motion for reconsideration asks the Court to decide that aspect of the summary judgment motion.

### 2. New Argument and Evidence.

Defendants next argue (at Dfs. Mem. 7-9, 11-12) that new argument and evidence should not be considered on a motion for reconsideration and that the evidence tendered in the motion for reconsideration could have been offered in the summary judgment papers. Defendants' assertion ignores that John was not making a new argument. Rather, as Attorney Byler explained at the September 1 teleconference, John was elaborating on the point that John was in no position not to provide the authorization and did so in order that the Court would understand that what the Court

had identified would justify the denial of summary judgment was present in this case (DE 212, p. 17). John's position that he was in no position to refuse authorization conforms to what the Navy ROD 2015-2016 specifically would require in compelling provision of the authorization, subjecting John to sanction upon refusing authorization, and requiring disclosure upon re-application due to a permanent federal record; this fully satisfies what this Court required for the denial of summary judgment. (DE 209, pp. 6-9.)

Consequently, Defendants are relying upon inapposite case law. In *Green v. Whiteco Indus.*, 17 F.3d 199, 202 n. 5 (7th Cir. 1994), the plaintiff professional drummer sued the defendants for negligence for causing a sound blast that injured his ear, but produced no evidence of a sound blast; a motion for reconsideration was not deemed the vehicle for rectifying having produced no evidence relating to the central issue of a sound blast. In *Marion v. City of Corydon*, 559 F.3d 700 (7th Cir. 2009), the plaintiff failed to provide competent evidence in opposing the summary judgment motion of the defendant municipalities and police officers on the central issue of the use of reasonable force; a motion for reconsideration was not deemed the vehicle for rectifying having produced no competent evidence relating to the central issue of the use of reasonable force. In *Anton Realty v. Guardian Brokers Ltd.*, 2015 WL 4878249 (S.D. Ind. Aug. 14, 2015), the plaintiff made whole new arguments in seeking reconsideration, for which a motion for reconsideration was not deemed the appropriate vehicle for those whole new arguments. Here, in contrast to these three cases, the authorization was but one of a multitude of issues occupying hundreds of pages of briefs and statements of material facts, the reconsideration evidence was to provide an elaboration of what was originally submitted, and a whole new argument was not raised.

### 3. The Involuntary Authorization.

Defendants argue (at Dfs. Mem. 9-11) that Defendants were clear that they were asserting that John voluntarily executed an authorization. What Defendants do not acknowledge is that John

directly contradicted Defendants' position in the summary judgment briefing, denying that John voluntarily executed the authorization because he was not in a position to refuse authorization, with the Navy wanting "in the loop" as to a disciplinary proceeding the Navy knew existed: Plaintiff's SJ Opp Mem. Law (DE 187 pp. 25, 6-7).  Also, Defendants do not acknowledge that the Navy ROD 2015-2016 was not available at the time of the Navy depositions in May 2020.  The Navy ROD 2015-2016 clearly substantiates that John could not properly refuse authorization.

## II.     JOHN'S MOTION IS MERITORIOUS,

Defendants' second main argument in opposition to John's motion is to deny the merit of John's motion.  (Dfs. Mem. 12-19.)  Defendants begin by falsely accusing John of confusing Title IX analysis with due process; it is Defendants who seem to be confused. According to the Seventh Circuit, the key to stigma-plus liberty interest is status change: "Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a full-time student in good standing to one suspended for an academic year. . . . And it was this official determination of guilt . . .  that allegedly deprived John of occupational liberty." *Doe v. Purdue*, 928 F.3d at 662-663. Defendants also declare that whether Purdue's disciplinary process complied with Fourteenth Amendment due process is "immaterial" (Dfs, Mem. 12) -- which reflects how much at odds Defendants continue to be with Justice Barrett's opinion.

### A.     Defendants' Theory Of A "Legal Obligation" Is Misconceived.

Defendants' attack on the merits of John's motion is based upon the notion that a strictly legal obligation was required. (Dfs. Mem. 12-17.)  Defendants are mistaken. They posit an unrealistic basis that misreads the case law and insensibly wipes out due process rights in this case involving a Navy ROTC midshipman (who was on scholarship) acting with a sense of obligation that he had no choice but to execute the authorization to the Navy ROTC to have the university

disciplinary files with respect to a disciplinary case about which the Navy ROTC knew, a sense of obligation which was backed up by the Navy ROD 2015-2016.

### 1. Defendants' Disparagement of the Navy ROD 2015-2016 Is Without Merit.

Defendants dismiss the Navy ROD 2015-2016 as "a set of internal Navy rules, not law" and deny that the ROD 2015-2016 had the force of law to compel executing the authorization. (Dfs. Mem. 12.) Purdue cannot seriously maintain that a Navy ROTC midshipman who acts per the wishes of his Navy superiors and the obligations reflected in the Navy ROD 2015-2016 has no due process rights, even though the Navy ROD 2015-2016 compelled giving authorization, subjected the Navy ROTC midshipman to sanction upon refusing authorization, and required disclosure upon re-application due to a permanent federal record. That is an absurd result, at odds with both common sense and what Judge Martin ruled in *Mary Doe and Nancy Roe v. Purdue*. A Navy ROTC midshipman complying with a sense of obligation reflected in the ROD 2015-2016 and the perceived wishes of his or her Navy superiors is in no position to refuse authorization.

### 2. Defendants' Case Law Discussion Does Not A Strictly Legal Obligation.

Defendants' invoking of three cases (Dfs. Mem. 13-14) does not support Defendants' argument that a strictly legal obligation is required.

In *Olivieri v. Rodriguez,* 122 F.3d 406 (7th Cir.1997), there was a voluntary disclosure of the reason for an employment discharge in a situation where the Seventh Circuit considered it speculative whether the disclosure would ever be called for. The Seventh Circuit saw in the circumstances of that case "self-defamation." And the earlier decision in this case made clear that "John's case is different" from *Olivieri,* because John alleged (and now, at the very least through this motion, has shown) that he had an obligation to keep the Navy in the loop. *Doe v. Purdue*, 928 F.3d 652, 662 (7th Cir. 2019).

[11]

In *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir, 2005), the Seventh Circuit ruled that the circumstances of child care workers effectively being barred from future employment in the child care field once an indicated finding of child abuse or neglect against them is disclosed to, and used by, licensing agencies and present or prospective employers "squarely implicate a protected liberty interest." The Seventh Circuit did not discuss the need for a statutory requirement of disclosure for there to be a stigma-plus liberty interest, only that in that case, "[b]ecause a prospective employee's status is disseminated to his potential employer, by operation of state law, during the hiring process, we believe that the plaintiffs have met the publication requirement." 397 F.3d at 510.

In *Doe v. Trustees of Indiana University*, 2021 WL 2213257 (S.D. Ind. May 4, 2021), there was a voluntary disclosure of a disciplinary record for a school transfer: in that case, "there is simply no indication that John's consent to publication was involuntary or otherwise illusory." 2021 WL 2213257, at *10. The District Court did observe that for the IU plaintiff to be like *Dupuy*, a case invoked by the IU plaintiff, the IU plaintiff would need to show a legal obligation. But that observation was not addressing the scope of what was required in terms of a compelled obligation to disclose, as the IU plaintiff had made a voluntary disclosure.

### 3. Defendants' Denial Of A Disclosure Obligation In the Navy ROD 2015-2016 Is Without Merit.

Defendants assert that the Navy ROD 2015-2016 provides normative standards but not disclosure obligations. (Dfs. Mem. 14-17.) That viewpoint ignores military realities and requirements discussed in John's moving Memorandum of Law showing that the Navy ROD 2015-2016 does compel giving authorization, would subject John to sanction upon refusing authorization, and require disclosure upon re-application due to a permanent federal record. (DE 209, pp. 6-9.)

Defendants fault John for not providing statements by Navy officials, but Defendants ignore that the Navy ROD 2015-2016 was not available at the time of the Navy depositions; and John's

own discussion of the realities of Navy ROTC and the likelihood of being sanctioned had he refused authorization (DE 208-1) was wholly consistent with the Navy ROD 2015-2016 compels the permission of authorization and that John would be subject to sanction upon refusing authorization (DE 209, pp. 7-8). The law about conclusory statements is simply way off point.

Defendants are wrong to analogize to the situation in *Indiana University* John's need to disclose the disciplinary decision were he to apply to any branch of the armed forces because of the permanent federal record. The point that the Navy ROD 2015-2016 would require disclosure upon reapplication because disciplinary disenrollment documents are part of a "permanent federal record" per Navy ROD section 6-16 (DE 208-3, pp. 6-26 – 6-27) is not remotely the same as what was presented in *Indiana University* where there was no federal record, just voluntary disclosure for a school transfer. It should be noted that if John obtains an expungement order against the university defendants, as Justice Barrett directed to be considered, such an expungement order will be taken to the federal government to seek removal or at least correction of the federal record.

B. **A Stigma-Plus Liberty Interest Is Not Contingent On Proof Of Falsity.**

John's moving Memorandum of Law explained (DE 209, pp. 11-14), contrary to the August 11 decision, a falsity requirement would make no sense because the due process plaintiff would have to prove first his innocence in order to get due process, which is not the point of a liberty interest for Fourteenth Amendment purposes. The Seventh Circuit's discussion of stigma-plus has never involved a falsity requirement, *see*, *e.g.*, *Mann v. Vogel,* 707 F.3d 872, 878 (7th Cir. 2013).

The foregoing point is erroneously and irresponsibly twisted by Defendants as John saying that if in fact he had assaulted Jane Doe, "Purdue should be liable for disclosing the rape to the Navy." (Dfs. Mem. 17.) There was no allegation of rape in this case -- that's Defendants being cynically inflammatory, presumably because they know they cannot defend the university's procedures in this case. Taken to its logical extreme, the Defendant's argument appears to be that

[13]

as long as some accused students might be guilty, the stigma-plus liberty test cannot apply to a due process claim calling them to account for their unfair procedures. Nothing in the Seventh Circuit's earlier opinion in this case would be consistent with that view.

John's moving Memorandum of Law then presented an analysis to show how in any event there was no falsity argument to be made. (DE 209, pp. 14-22.) A real knowledge of the record here would not allow writing what appears in the August 11 decision on falsity purporting to create issues. Respectfully, what the Court should do is step back from an erroneous decision.

### C. Defendants' Other Arguments Are Without Merit.

Defendants throw in a series of bogus other arguments (Dfs. Mem. 18-19). There is no standing issue; John has alleged and has testified he intends to re-apply. (DE 183-1, ¶ 66 and record citations therein.) Defendants' disparagement of John's current efforts with respect to the Navy ignores the permanent federal record in existence as a result of the university disciplinary case. (DE 209, pp. 8-9.) It is undisputed the Navy did not conduct its own investigation but relied 100% on the university disciplinary suspension. (DE 187-2, pp. 23-27 and record citations therein.)

### III. CERTIFICATION TO THE SEVENTH CIRCUIT WOULD BE PROPER.

Defendants' third main argument in opposition to John's motion is to deny the appropriateness of certification to the Seventh Circuit. (Dfs. Mem. 19-21.) Defendants do recite the four requirements for certification, *Arenholtz v. Bd. of Trs. Of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000), but John clearly meets those requirements. The issues presented here, particularly the stigma-plus liberty test: (1) are *questions of law*, (2) are *controlling* of what claims gets submitted to a jury, (3) are *contestable*, and (4) will *speed up* the litigation. The dismissal of the due process claim will not stand. Either the due process and Title IX claims should be tried together, or judgment for John should be entered on the due process claim.

## IV. DEFENDANTS' AMENDED COUNTERCLAIM SHOULD BE DISMISSED.

As noted above, the Court's August 11 decision did not deal with the portion of Plaintiff's motion for partial summary judgment seeking dismissal of Defendants' Amended Counterclaim (ECF 161). Defendants, other than making an erroneous technical argument about the Local Rule discussed above, do not respond to the portion of John's reconsideration motion seeking the Court to decide the fully briefed summary judgment motion to dismiss Defendants' Amended Counterclaim. For the reasons stated in Plaintiff's Memorandum of Law for partial summary judgment (DE 183, pp 46-50) and in Plaintiff's Reply Memorandum of Law (DE 191, pp 14-15), the Court should order dismissal of Defendants' Amended Counterclaim.

## CONCLUSION

For the reasons stated above and in the moving Memorandum of Law, the motion for re-argument, reconsideration and amendment of this Court's Opinion and Order dated August 11, 2022, should be granted, and the Court should rule in accordance with the Motion's request, and for any ruling not reconsidered and not amended on this motion, certifying for appeal to the U.S. Court of Appeals for the Second Circuit any such ruling, and the Court should grant such other and further relief as the Court deems just and proper.

**Dated: September 26, 2022**  

**Respectfully submitted,**  
**NESENOFF & MILTENBERG, LLP**  
**By:** /s/ *Philip A. Byler*  
**Philip A. Byler, Esq.**  
**Andrew T. Miltenberg, Esq.**  
**363 Seventh Avenue, Fifth Floor**  
**New York, New York 10001**  
**(212) 736-4500**  
pbyler@nmllplaw.com  
amiltenberg@nmllplaw.com  
*Attorneys for Plaintiff John Doe*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served upon the attorneys of record for each party to the above-entitled cause at the address shown below by ECF on September 26, 2022.

William P. Kealey, Esq.
Tyler L. Jones, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
         tlj@stuartlaw.com
*Attorneys for Defendants*

BY:  ☐ U.S. Mail    ☐ Federal Express

     ☐ Hand-Delivery  x  Other: ECF

_____*Philip A. Byler, Esq.*_____
         Philip A. Byler, Esq.