UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE,      Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 2:17-CV-33-JPK<br>) |
| PURDUE UNIVERSITY, *et al.*,      Defendants. | )<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on John Doe's Motion for Reconsideration [DE 208] of the Court's order granting summary judgment to Defendants on Doe's due process claim [DE 206].

Under Federal Rule of Civil Procedure 54(b), "any order or other decision . . . may be revised at any time before the entry of a judgment." *See Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quotations and citations omitted). Rather, reconsideration is appropriate when the Court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Neurology & Pain Mgmt. Assocs., P.C. v. Bunin*, No. 3:17-CV-35-JD, 2022 WL 4301797, at *2 (N.D. Ind. Sept. 16, 2022) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

John's motion and memorandum assert four arguments for reconsideration: (1) the Court wrongly found he had not shown an obligation to disclose his Purdue disciplinary record to the

Navy; (2) Purdue failed to raise any other triable issues of fact that would preclude summary judgment for John; (3) the Court wrongly found that evidence supporting an inference that Purdue's disciplinary findings were true would have precluded summary judgment for John; and (4) the Court failed to address his request to dismiss Defendants' counterclaim.[1]

### A.     JOHN'S AUTHORIZATION FOR PURDUE TO DISCLOSE RECORDS

John was suspended from Purdue, and removed from the Navy's ROTC program, after Purdue determined that he had violated its Anti-Harassment Policy by sexually assaulting a fellow student, Jane Doe.[2] The Court found that John could not sustain a due process claim based on deprivation of occupational liberty, because he had consented to Purdue disclosing his disciplinary records to the Navy and had not presented sufficient evidence of an obligation to do so. [DE 206 at 14-18]. Since all agree John provided an authorization for Purdue to disclose the records at issue, the question becomes whether John was obligated to provide that authorization. John argues that reconsideration is warranted based in part on new evidence he appends to this motion.

#### 1. John needed to show an obligated disclosure, and failed to do so

Since John's argument could be read to presume that something less than an obligated disclosure may satisfy the "stigma-plus" test for a claim based on deprivation of occupational liberty, the Court briefly addresses the law on this point. The stigma-plus test requires John to show that the state inflicted "reputational damage" on him, which in turn requires that he did not consent to the publication of the damaging material. The test has its origins in a case where a plaintiff sued under § 1983 in lieu of a state law defamation claim, *Paul v. Davis*, 424 U.S. 693 (1976), and one court has commented that the reputational damage element "has always been

---

[1] Any arguments introduced in John's reply brief are not considered. "Arguments may not be raised for the first time in a reply brief." *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008).

[2] The Court has ordered that John and Jane Doe will be referred to by pseudonym. [*See* DE 26].

grounded in common-law conceptions of defamation, ever since the test's origin in *Paul*." *Doe v. Trs. of Ind. Univ.*, 496 F. Supp. 3d 1210, 1216 (S.D. Ind. 2020) (discussing the history of the test).

However, the contours of the disclosure requirement have not been precisely defined. In this case, the Seventh Circuit relied on John's initial allegation that he had a legal obligation to disclose his disciplinary records, and therefore did not need to confront the issue of whether there *had* to be a legal obligation, rather than some less compelling obligation. *See Doe v. Purdue Univ.*, 928 F.3d 652, 662 (7th Cir. 2019). The Seventh Circuit compared *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), in which child care workers were required by state law to disclose to prospective employers that they were found to have committed child abuse, to *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997), in which an officer fired for sexual assault "insisted that . . . [he] would have to tell potential employers why he was fired." *Purdue*, 928 F.3d at 661-62. The Court noted that the plaintiff in *Olivieri*, where the disclosure was "voluntary and speculative," could not sustain a stigma-plus claim, while the plaintiffs in *Dupuy*, where the disclosure was "compelled and certain," could sustain a claim. So the obligation must be something more than "voluntary and speculative," although an obligation might be strong enough even if it was somehow less than "certain."

At the pleading stage, John alleged a "legal obligation" to disclose, which clearly satisfied the stigma-plus test. But that allegation was not supported in the summary judgment record. John never asked the Navy whether he was *required* to authorize Purdue's disclosure of his records, or whether an order or discipline would follow if he declined to authorize disclosure. During discovery in this case, including depositions of relevant Navy decisionmakers, John's counsel never asked those questions either. John wanted the Court to simply assume that an obligation existed, based on his own testimony that the Navy wanted to be kept "in the loop" about Purdue's

3

investigation, and based on what counsel refers to as "military realities" so obvious they did not have to be spelled out in the record. But speculation, particularly when the relevant facts were ascertainable, does not establish a genuine dispute for trial.[3] And a strategic failure to ascertain and present supporting facts does not justify reconsideration. *Caisse Nationale*, 90 F.3d at 1270 ("Whether a matter of strategy or inadvertence, [the] failure to submit these facts to the court during summary judgment foreclose[s] [a] motion for reconsideration.").

**2. This issue has already been litigated, and John is not entitled to reconsideration based on evidence he declined to include in the summary judgment record**

John did not present evidence supporting his initial allegation of a legal obligation. Defendants raised this issue in their brief in support of summary judgment:

> John's stigma-plus theory requires him to come forward with evidence that he was obligated to authorize Purdue to disclose its official determination of responsibility to NROTC . . . However, there is no evidence that John was obligated to authorize the Navy to access Purdue's official determination. John testified in deposition:
>
> *Q. You don't recall one way or the other anybody at the Navy telling you that the Navy wanted access to information from Purdue?*
>
> *A: No, I do not.*
>
> Lieutenant Redlawsk, the Navy official in charge of NROTC's investigation of Jane's allegation[,] corroborated that there was no compulsion.
>
> *Q: . . . Did you ever order [Plaintiff] to turn over information to the Navy about his Purdue investigation?*
>
> *A: I wouldn't say that I ordered him. I don't recall ever giving him an order to do so.*

---

[3] *See United States ex rel Davis v. Prince*, No. 1:08-CV-1244, 2011 WL 13092085, at *7 (E.D. Va. June 23, 2011) ("[N]o reasonable juror could infer [the required state of mind] from Prince's or Jackson's vague deposition testimony . . . This lack of evidence is especially glaring given that relators had an opportunity to depose Prince and Jackson, and they apparently chose not to ask specific questions."); *Hosea v. Langley*, No. CIV.A. 04-0605-WS-C, 2006 WL 314454, at *29 (S.D. Ala. Feb. 8, 2006) ("Because they did not ask the question, one can only guess as to whether the Hoseas were subjected to differential treatment . . . [o]f course, guesswork cannot defeat a motion for summary judgment."), aff'd, 226 F. App'x 863 (11th Cir. 2007).

[DE 178 at 40-41 (record citations omitted)]. John's response[4] to that argument was as follows:

> Defendants describe John's authorization for Purdue to release disciplinary case files to the Navy ROTC as "voluntary"; however, John did not so testify, but rather that the Navy wanted to be "in the loop," and Purdue NROTC Executive Officer Craig Remaly testified the authorization form was one that Purdue requested in John's case.

[DE 187 at 31]. Defendants raised the issue again in opposition to John's summary judgment motion, arguing explicitly that "John has not even tried to prove a legal obligation to disclose." [DE 188 at 11]. John reaffirmed his position in the reply brief:

> Defendants argue that John was not under a legal compulsion to authorize disclosure, but that ignores the record. As discussed in [John's opposition brief[5]], John testified that the Navy wanted to be "in the loop," and Purdue NROTC Executive Officer Craig Remaly testified the authorization form was one that Purdue requested in John's case; with Jane Doe having reported her accusations to the NROTC and the NROTC looking to Purdue for the investigation, John was in no position to refuse the authorization.

[DE 191 at 8 (citations omitted)].

The Court granted summary judgment to Defendants, citing the Seventh Circuit's decision in this matter, among other cases, indicating that obligated disclosure was necessary to sustain John's stigma-plus claim.[6] The Court expressed surprise that John had not even pointed to a Navy

---

[4] John argues that the Navy was aware of Jane's allegations even before he authorized Purdue to release his disciplinary records to the Navy, but that is not relevant. "It was [Purdue's] official determination of guilt, not the preceding charges or any accompanying rumors, that allegedly deprived John of occupational liberty." *Purdue*, 928 F.3d 652 at 662-63. Even if John had suffered a deprivation of occupational liberty from the Navy's mere awareness of the allegations against him, that stigma was not imposed by Purdue.

[5] John's previous brief repeated this argument: "Defendants describe John's authorization for Purdue to release disciplinary case files to the Navy ROTC as 'voluntary'; however, John did not so testify, but rather that the Navy wanted to be 'in the loop,' and Purdue NROTC Executive Officer Craig Remaly testified the authorization form was one that Purdue requested in John's case." (citations to record omitted).

[6] [*See* DE 206 at 16-18], citing *Purdue*, 928 F.3d at 662; *Indiana Univ.*, 2021 WL 2213257, at *4 ("[Plaintiff] would have needed to show that some extant legal obligation—like a statute or regulation—required him to consent to disclosure of his sexual misconduct finding."); *Doe v. Purdue Univ.*, 464 F. Supp. 3d 989, 1002 (N.D. Ind. 2020) (stigma-plus test satisfied because plaintiff "allege[d] that [his chosen] occupations trigger a legal obligation to disclose the disciplinary proceedings").

John argues that the Court's findings were "in conflict with" the decisions of Judge Martin in *Doe et al. v. Purdue et al.*, 4:18-cv-89-JEM (N.D. Ind., Jan 13, 2022). That case involved two female students who were disciplined after

regulation that would have compelled disclosure, or established that he would need to disclose if he had wanted to reapply to NROTC. The Court speculated: "*Perhaps* John's claims would survive summary judgment" under those circumstances, but ultimately, "[i]f there was such an argument to be made, John has opted not to do so." [DE 206 at 16-17 (emphasis added)].[7]

John now seeks reconsideration, appending further evidence to his motion. John's counsel explains: "[W]hen we did the original briefing, I guess we thought it was enough to say that he had no choice because that was, basically, the position that he had . . . So I present what I do, really, with a mind that this is an elaboration of what it meant, to say he had no real choice in the matter but to do the authorization." [DE 212, 17:2-14].

John was aware of Defendants' arguments for dismissal, including the argument that there was no obligated disclosure. He and his counsel decided "it was enough to say that [John] had no choice," because counsel believed John's mere assertion[8] of an obligation was legally sufficient, despite authority to the contrary. *See Olivieri*, 122 F.3d at 408-09 (affirming dismissal of a stigma-plus claim despite the plaintiff's argument that "no police department will hire him without asking why he was fired").

---

Purdue found that they made false accusations of sexual assault against male students. The parties did not contest the issue of whether there was, or needed to be, an obligated disclosure. [*See* 4:18-cv-89-JEM, DE 72 at 20 (the plaintiff "alleged that report [the disciplinary sanction] she must, and Defendants do not dispute that"), DE 73 at 20]. The Court therefore permitted due process claims to proceed to trial, finding that the claims could proceed "even if [the plaintiff] is the one who may be *legally obligated* to report the stigma." [*Id*., DE 72 at 21, DE 73 at 20-21 (emphasis added)]. The decision in this case does not conflict with Judge Martin's decisions, because John has not shown he was "obligated" to self-report.

[7] On at least five occasions, John misstates the Court's opinion on this point. John claims the Court found certain hypothetical evidence – such as Navy regulations, or requirements to disclose upon reapplication to NROTC – would lead to denial of summary judgment. [*See* DE 209 at 1, 6, 9; DE 214 at 3, 9]. The Court observed that *perhaps* these facts could defeat summary judgment, but John elected not to present any of that evidence. [DE 206 at 16-17].

[8] At oral argument, counsel explained: "When John Doe said: 'I was in no position to say no,' that decides it there, period." [DE 221, 13:20-24].

John, as the non-movant, could not defeat summary judgment merely by stating that he disagrees with the Defendants. He had to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment "is the 'put up or shut up' moment in a lawsuit, *when a party must show what evidence it has that would convince a trier of fact to accept its version of events*." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (emphasis added)). John had a chance to elaborate, or designate additional evidence, but chose not to do so. This was a deliberate decision, not an oversight or misapprehension. John has not directed the Court to a case in which reconsideration was granted to a party who declined to provide evidence or argument because he assumed he would win without it. That falls into the category of "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion," which is not appropriate for reconsideration. *Caisse Nationale*, 90 F.3d at 1270.

### 3. John's own evidence and argument undermine any finding that the disclosure was "obligated"

Even if John being "in no position to refuse" would have been sufficient to defeat summary judgment, reconsideration would still not be appropriate, because John's designated evidence did not support that inference. John asks the Court to assume that he had only two options: grant the requested authorization, or refuse it and be kicked out of NROTC. Although John repeatedly states that the Navy "wanted" to rely on Purdue's investigation, there was no evidence that this created an *obligation* for John to release his records:

> THE COURT: I don't see how any of what you cite would have prevented John Doe from simply stating to his ROTC leadership that he didn't trust the Purdue investigation and, therefore, he respectfully declined to provide any authorization because he wanted a Navy board to address the underlying facts . . . At the very least, if you're arguing he was under an obligation, shouldn't there have been some

7

discussion how such a request would have been treated when you were deposing the Navy officials?

[DE 212, 15:21-16:5]. John's counsel responded:

> I must say that at the time he gave the authorization he was not expecting to happen what did happen; so, you know, the notion that, "Well, gee, I'm not trusting what's over at Purdue, I want a Navy board," that wasn't part of his mentality . . . John Doe knew very well that the Navy wanted access to a disciplinary finding because that's what they wanted to rely on as opposed to a separate board. And it was at a time John Doe was thinking, well, Purdue will do an okay job. Well, they didn't.

[*Id.* 16:19-16:23, 19:20-24]. This undermines any argument that John had an "obligation," legal or otherwise, to release his records to the Navy. The Navy may have preferred for Purdue to handle the investigation. But the Navy received no request from John to consider anything else, and there was no evidence the Navy would have denied such a request. The record does not even show that *John* believed the Navy would deny it. He decided not to make that request, since he was "thinking, well, Purdue will do an okay job." John now says he was "in no position to refuse" – but that is his assessment of the situation, not the Navy's. In the Seventh Circuit's words, the purported obligation to disclose was "speculative," rather than "compelled and certain." *Purdue*, 928 F.3d at 662.

The new evidence in John's reconsideration motion would not compel a different result. John points primarily to Navy regulations that reference its Honor Code, which requires "honesty, at all times no matter the outcome" and forbids "a disregard or contempt for authority." [*See* DE 209 at 7-8]. But John has not explained how respectfully requesting that the Navy take an independent look at his case would demonstrate contempt or dishonesty. John believes that explanation would be unnecessary:

> THE COURT: Do you have anything to point to in the record saying that it would have been insubordinate to simply . . . say, "Sir," "ma'am," "if you order me, absolutely, but I'm not going to voluntarily authorize this?"

> [COUNSEL]: Because John Doe's testimony, what's in the record is: I was not in a position to say no. And that's all you need.[9] [DE 221, 8:24-9:6].

John's counsel suggested that "military realities" dictate that John could never have made such a request, and any contrary suggestion is so "ridiculous" that this point did not need to be established in the record. [*See id*. at 4:10-19, 28:20-29:2]. Material disputes need to be established by evidence, Fed. R. Civ. P. 56(c), and asserted "military realities" are no exception. Further, John's new evidence would not advance the ball in this regard. For example, the Navy's Regulations of Officer Development – which counsel sees as proof that John could not possibly object to the Navy's procedures – explicitly permit the student to do so. [*See* DE 208-3 at 197 (the Performance Review Board is "an informal administrative hearing" designed to "protect[] certain rights of midshipmen"), 202-203 ("The student or student's counsel may object to specific board actions or proceedings, but must provide a statement as to why he or she finds it objectionable. Any objections will be considered and ruled on by the senior member . . . but are subject to review by higher authority.")].

It is worth noting that in some cases plaintiffs claim they will be barred from joining their chosen career due to a future publication, or compelled self-publication. John did not argue that in response to the Defendants' summary judgment motion. John called the Defendants' claim that he could not hypothesize about what would happen if he tried the rejoin the Navy a "non-issue." [DE 187 at 39]. As discussed above and in the Court's August 11th Opinion and Order [DE 206], the Navy's disenrollment determination was at least partially based on the information that John

---

[9] Even if John *had* wanted to make this request, his speculation about how officers would react does not defeat summary judgment. "Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602 [both] require that testimony be based on personal knowledge. Personal knowledge can include reasonable inferences, but it does not include speculating as to [] state of mind, or other intuitions, hunches, or rumors." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014).

authorized Purdue to provide to the Navy. John might have attempted to avoid summary judgment by arguing instead that he provided authorization because he eventually would have faced an obligation, but that was not the argument presented to the Court on summary judgment. In any event, "[i]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).[10]

### B. DUE PROCESS

John argues that the "national importance" for due process of the Seventh Circuit's holding in *Doe v. Purdue* requires that Purdue be denied summary judgment. [DE 209 at 2-3]. Counsel expounded:

> [W]hat part of the motion for reconsideration does is it points out the public importance of the due process rulings of Judge, now Justice Barrett in *Doe v. Purdue*. And because they are important, I don't think they should be undercut by what you can say is a lack of elaboration . . .
>
> [T]he answer, I think, having argued the case in front of the Seventh Circuit, is they were bound and determined to find that there was denial of due process in this case. And what Judge Barrett wrote was one of the main inspirations for the then-Secretary of Education to set up the due process regulations that are now in effect under Title IX. You know, *Doe v. Purdue* is a much cited opinion on so many different issues; and so as far as discretion goes, I think it would be -- let me put it -- wisely exercised to entertain what is presented here . . .

[DE 212, 17:16-20, 18:6-15].

Courts are not "bound and determined" to find for any particular party or allow any particular claim for relief to go forward. Courts are bound to follow the law, and determined to review the record and arguments presented. The existing law at issue here, specifically the

---

[10] Additionally, John presented no evidence that he had in fact tried to rejoin ROTC or the Navy. John testified that he could re-apply to NROTC, and he "might be" accepted again, but "I don't know because I have not tried." [DE 178-27, 169:3-14].

10

requirement for a *compelled* disclosure, remains undisputed.[11] Purdue argued and presented evidence that John faced no compelled disclosure and instead voluntarily authorized Purdue to disclose information to the Navy. John's attempts to rebut that fall far short of creating a genuine issue of material fact.

The Court has not "undercut" or contradicted the Seventh Circuit. The Court's summary judgment opinion is perfectly consistent with the Seventh Circuit's opinion on a different factual record, and at a different stage of litigation that required a very different quantum of proof. At the pleading stage, the Seventh Circuit considered "only the facts as [John] describes them, drawing every inference in his favor. In other words, the story . . . is one-sided because the posture of the case requires it to be." 928 F.3d at 656 (citing *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 682 (7th Cir. 2013)).

Given John's insistence that the Seventh Circuit's opinion at the pleading stage entitles him to a trial on his claims, the Court reviews a sampling of the facts in the summary judgment record that were not presented to the Seventh Circuit. In doing so, the Court notes we are now at a stage where the record is examined for genuine issues of material fact. Discovery was completed. Defendants and John both have had ample opportunity to develop facts and argue their case. The story is no longer "one sided,"[12] because we are past the pleading stage:

- In text messages, John admitted to Jane that he "violated" her:

    **Received from [Jane Doe] on Mon Dec 28, 2015 10:22 PM:** *"Or when I wake up to you touching me or I'm trying to do something and you just touch me I literally can't trust you if you don't respect my boundaries"*

---

[11] The Court repeatedly asked John's counsel whether he contested the legal conclusion that a compelled disclosure was required for a stigma-plus claim. Counsel responded to the question by claiming that the "notion that there wasn't any obligation was non-existent," [DE 212, 10:23-12:19], that compelled disclosure was "an if that didn't exist here," [*id*. 12:20-13:8], and that the "hypothetical does not apply here remotely." [*id*. 14:2-11]. In other words, counsel did not dispute that a compelled disclosure is necessary in John's case.

[12] *Purdue*, 928 F.3d at 656.

>    **Sent to [Jane Doe] on Mon Dec 28, 2015 10:37 PM:** *"We already went over this several times. I cant even apologize anymore because you get angry at me for it."*
>    **Sent to [Jane Doe] on Mon Dec 28, 2015 10:38 PM:** "No I get angry because you continue to do it and just say sorry you don't actually change anything."
>    **Sent to [Jane Doe] on Mon Dec 28, 2015 10:56 PM:** "Im not going in circles any more [Jane]. What more do you want me to say? Do you want this to be over? We have literally talked about this for a week and I already told you I cant change what i did, only what i will do from here on out. Do you want me to feel shitty for the rest of my life because of what I did? Im feeling like i will. Im sorry. *I cant change what i did, as much as i want to. I violated you and never should have. What do you want me to do?* [DE 183-17 at 58 (emphasis added)]

- John told the Seventh Circuit that the investigators "falsely claimed that [John] had confessed to Jane's allegations." 928 F.3d at 657. And at the pleading stage he was free to do just that. But as the summary judgment record shows, the investigators acknowledged John's contention that the messages cited above referred to him placing his hand "on Jane's thigh, above her knee, but below her crotch." [DE 180-4 at 8]. John does not dispute that he said that to the investigators. The investigators concluded that *despite* John's contention, a preponderance of evidence suggested that he had violated Purdue's Anti-Harassment Policy. [*Id*. at 10].

- The Seventh Circuit relied on John's allegation that Jane did not submit a statement to the disciplinary committee, and "[i]nstead," CARE Director Monica Soto Bloom "wrote [the committee] a letter summarizing Jane's accusations." 928 F.3d at 657-58, 664. But the summary judgment record indicated that the letter was written by Jane and *forwarded* to the committee by Bloom. [*See* Def. Ex. CC]. It not only "summarized" Jane's allegations but expounded on them. ("I've had to be pulled from various aspects of my training . . . My nightmares are still getting worse."). Although John complains that Jane never

12

submitted a sworn or signed statement, he presented no evidence that Jane did not draft the letter.

The Seventh Circuit indicated that based on Jane's alleged lack of input to the committee, it was "unclear, to say the least, how [Dean of Students Katherine] Sermersheim and the committee could have evaluated Jane's credibility." 928 F.3d at 663-64. But with this additional evidence, the committee's reasoning becomes clearer. The panel did receive a statement from Jane, and the text messages – particularly John's admission that he "violated" Jane, after she complained about "wak[ing] up to you touching me" – seemed to corroborate her allegations.

John believes everyone is misinterpreting his texts; the Court acknowledged his argument and did not (as John complains) assume that the texts proved his guilt. Rather, the Court explained that the messages were part of a package of evidence from which "a reasonable juror could infer that John sexually assaulted Jane." [DE 206 at 15-16]. John continues to argue the point based on *his* interpretation of these facts [DE 209 at 14-22], but the Court properly found that a reasonable juror could disagree with him.

To be sure, there were problems with Purdue's approach – or at least, disputed facts supporting a reasonable inference of gender bias. The Court acknowledged those in permitting John's Title IX claim to proceed to trial. Overall, though, the summary judgment record did not reflect the inexplicable "sham" suspension that John portrayed in his complaint.

### C.  TRUTH AS DEFENSE TO STIGMA-PLUS CLAIM

John argues the Court erred when it found that John's liberty interest was contingent on a finding that Purdue disseminated false information about him. The Court relied on *Doe v. Trustees of Indiana University*, 2021 WL 2213257, among other cases, explaining that for a stigma-plus claim, the state must inflict "reputational damage" by publishing false information without the

13

plaintiff's consent. [DE 206 at 14-15]. John argues falsity is not required to maintain a stigma-plus claim, that the *Indiana University* court "did not so rule," and that in fact, "[t]here is no case law so holding." [DE 209 at 11].

John ignores large portions of the *Indiana University* opinion, which explicitly found that truth is a defense to a stigma-plus claim:

> **To establish a liberty interest under the "stigma-plus test," John must show (1) that the state disclosed false information** that damaged his reputation, (2) that the reputational harm made it "virtually impossible" for him to find employment in his chosen profession, and (3) that his legal status was altered, depriving him of a previously held right . . .
>
> This notation [on his transcript], John says, constituted publication by IU to Purdue for purposes of his stigma-plus claim. **Setting aside his consent to that publication, John is incorrect because a true statement cannot create liability for defamation.** See RESTATEMENT (SECOND) OF TORTS § 558 (1977); *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 206 (7th Cir. 2013) ("Any statement actionable for defamation must not only be defamatory in nature, but false.") . . .

2021 WL 2213257, at *2, 4 (citing *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354 (7th Cir. 2019) (emphasis added)). The defamatory statement must be false because "[t]he 'stigma' part of the stigma-plus test has always been grounded in common-law conceptions of defamation." *Id.* at *2. This is consistent with the holdings of numerous other courts addressing this question in the student discipline context.[13]

It should be emphasized that falsity was not the basis for dismissing John's due process claim – it was *one* reason why John could not have been granted summary judgment on the claim.

---

[13] *See, e.g., Babinski v. Queen*, No. CV 20-426-SDD-EWD, 2022 WL 3453513, at *7 (M.D. La. Aug. 17, 2022) ("A constitutionally protected liberty interest is implicated only if a student is [disciplined] in a manner that creates a false and defamatory impression about him.") (brackets omitted); *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 722-23 (E.D. Va. 2015) ("A plaintiff must allege (i) a stigmatizing statement (ii) made public by the public university, (iii) in conjunction with his [discipline] from the university, and (iv) that the charge was false."); *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d 418, 441 (M.D. Pa. 2014) ("In order to satisfy the 'stigma' prong, a [student] must show . . . that the [public] statement was substantially and materially false.") (reversed on other grounds, 870 F.3d 154 (3d Cir. 2017)) (quoting *Kocher v. Larksville Borough*, 548 Fed. Appx. 813, 820 (3d Cir. 2013)).

As discussed previously, the claim was dismissed because John did not show that his self-publication of his disciplinary record was obligated. John's argument that falsity is not required certainly has some pull; we don't reserve due process only for the innocent. Perhaps future cases will require a more detailed analysis of whether the falsity element of defamation should really carry forward in this context. But this case does not call for a resolution of that question. As explained above, the Court ultimately granted summary judgment on the due process claim based on John's voluntary authorization for Purdue to release his disciplinary records. So any dispute about whether John could have maintained a stigma-plus claim based on reputational damage from true statements by Purdue is moot.

John complains that a falsity requirement undermines the plaintiff's ability to challenge the state's allegedly flawed procedures, but he has exhaustively scrutinized Purdue's investigation and disciplinary process over five years of litigation in federal court. He cannot credibly argue that he was unable to challenge Purdue's procedures. More importantly, John has not identified any case in which a plaintiff satisfied the stigma-plus test by demonstrating "reputational damage" from a true statement.[14] The Seventh Circuit has not squarely addressed this question, but the Court's research revealed cases, including *Indiana University*, in which such claims were explicitly rejected. Based on the authorities presented, John has not identified a manifest error of fact or law that merits reconsideration.

---

[14] John points to *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013), which described stigma-plus as "when a state actor casts doubt on an individual's 'good name, reputation, honor or integrity' in such a manner that it becomes 'virtually impossible for the [individual] to find new employment in his chosen field.'" That general description does not preclude a falsity requirement. *See, e.g., Ersek v. Twp. of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996) ("For government action to infringe the 'reputation, honor, or integrity' of an individual, that government action first must involve a publication that is substantially and materially false."); *see also Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998) (a cause of action based on a liberty interest in government employment "requires the employee to show that a public official made defamatory statements about him. These statements must be false assertions of fact.").

## D. AMENDED COUNTERCLAIM

The Court did not address the parties' arguments regarding Defendants' Amended Counterclaim [DE 161]. Whether or not the counterclaim would proceed depended in part on whether John's due process claim proceeded. The parties have now fully briefed the issue, with the benefit of the Court's summary judgment ruling. With the narrowing of the claims at issue, the Court will now turn to the counterclaim. Defendants seek the following declaratory relief:

A. Declare that John Doe's above-alleged misconduct violated Purdue University's conduct regulations.

B. Declare that Purdue University, in the exercise of its discretionary authority as an instrumentality of the State of Indiana to police the safety of its campus, has at all relevant times possessed good and adequate cause to suspend John Doe from enrollment at Purdue University.

C. Declare that Purdue University, in the exercise of its discretionary authority to protect its educational environment from interference with its educational mission, has at all relevant times possessed good and adequate cause to exclude John Doe from Purdue University's educational environment.

D. Declare that there is no Purdue-imposed stigma on John Doe's occupational liberty for Navy ROTC enrollment or a career in the United States Navy.

John first argued that the first three requests should be dismissed because they "involve state law police powers." [DE 183 at 50-51]. The specifics of this argument are unclear, and he cites no legal authority to support it. To the extent intended purely as a jurisdictional argument, it is without merit. On one hand, John argued that "[i]t is not the federal court's role to determine independently and declare that conduct violated the university's student code and that the university had the basis to suspend a student from campus." *Id*. On the other hand, John's complaint itself requests expungement of this incident from his Purdue disciplinary record. John does not explain why the Court would have jurisdiction over his claim, but not Defendants' counterclaim. The counterclaim will not be dismissed for lack of jurisdiction. *See* 28 U.S.C. § 1367

(the court retains supplemental jurisdiction over "all other claims that are so related to claims [within] original jurisdiction that they form part of the same case or controversy").

Next, John argues that the declaratory relief should be denied as "repetitious and unnecessary." *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005). Under the Declaratory Judgment Act, the Court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (emphasis added), but this act "confers a discretion upon the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Further, if the Court "determines . . . that a declaratory judgment will serve no useful purpose," it can deny the requested relief as a matter of "practicality and wise judicial administration." *Id*. at 288.

In the context of a declaratory judgment, a "useful purpose" is one that clarifies the legal relationship between the parties by resolving an imminent dispute. *See Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010) ("The goal of the Declaratory Judgment Act is to allow for the efficient resolution of disputes by an early adjudication of the rights of parties."); *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (a declaratory judgment is proper when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality"); *Eli's Chi. Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 908 (N.D. Ill. 1998) ("Where, as here, the accused party has not been unfairly deprived of an opportunity to adjudicate his rights, a declaratory judgment is unnecessary.").

Because only John's Title IX claim remains from his amended complaint, this case might be resolved by factual findings that Purdue did or did not exhibit gender bias in its treatment of John, regardless of whether he sexually assaulted Jane. At oral argument, Defendants' counsel

noted that they sought declaratory relief in part to clarify whether, as a public safety matter, Purdue had the right to discipline a student found to have committed sexual assault, regardless of any gender bias. [DE 223, 46:23-48:3]. However, the Court does not believe that findings specific to John would resolve that question, nor is it clear that resolution of that question would affect the legal relationship between John and Purdue. *Cf. Dugan v. City of W. Chicago*, No. 08 C 2223, 2008 WL 5423565, at *1 (N.D. Ill. Dec. 29, 2008) (permitting a declaratory claim outside the scope of the complaint, seeking "a definitive finding of [the defendant's] obligations" under a contract that would "head off any future litigation" from a counter-defendant).

As a matter of "practicality and wise judicial administration," the Court exercises its discretion to dismiss Requests A, B, and C. *Wilton*, 515 U.S. at 288. Further, Request D is redundant with the Court's own finding that John raised no genuine issue of material fact supporting the existence of Purdue-imposed stigma on John's occupational liberty. Therefore, the motion to reconsider is granted as to Defendants' counterclaim, which is dismissed in full.

### E.  INTERLOCUTORY APPEAL

John argues that on any issue for which reconsideration is denied, this Court should certify the relevant question to the Seventh Circuit. He provides only conclusory argument to support this request, stating that "[k]ey meritorious parts of this case should not be broken off," and "[t]he Seventh Circuit should be the Court that determines now the issues on this motion." [*See* DE 209 at 23, DE 215 at 14]. To the extent intended as a request to permit an interlocutory appeal, the request is denied.

When a district court's order "involves a controlling question of law as to which there is substantial ground for difference of opinion and [] an immediate appeal from the order may materially advance the ultimate termination of the litigation, [the judge] shall so state in writing."

28 U.S.C. § 1292(b). To allow an interlocutory appeal, "[t]here must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). John has made no effort to explain how this appeal would "promise to speed up" the litigation. It would more likely have the opposite effect. Even if John was successful in reviving his due process claim, the case would return to the summary judgment stage, for the Court to consider Defendants' other arguments for dismissal of that claim.

"The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz*, 219 F.3d at 677. John's arguments for reconsideration are primarily factual in nature: rearguing the interpretation of John's text messages, the relationship between Purdue and the Navy, whether John was obligated to authorize disclosure, and so on. John insists that the Seventh Circuit would agree with him on all of these issues, but his own confidence in his arguments is not a basis for interlocutory appeal.

### F. CONCLUSION

For the reasons described above, the Court **GRANTS in part** John Doe's Motion for Reconsideration [DE 208], and **DISMISSES** Defendants' Amended Counterclaim [DE 161]. The Court **DENIES** all other relief requested in the motion.

So ORDERED this 14th day of February, 2023.

                                                s/ Joshua P. Kolar
                                                MAGISTRATE JUDGE JOSHUA P. KOLAR
                                                UNITED STATES DISTRICT COURT