IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) |
| **DANIELS, JR.,** in his official capacity as President of | ) |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK,** | ) No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |

**<u>DEFENDANT'S MOTION IN LIMINE</u>**

Defendant, The Trustees of Purdue University ("Purdue"), by counsel, moves the Court *in limine* for an order that, at the jury trial, the following subjects may not be offered into evidence or addressed to the jury by Plaintiff John Doe ("John"), his counsel, or any witness testifying called by John without prior leave of the Court:

**A. Evidence or argument directed to Purdue's disciplinary process.**

This Court has dismissed John's Due Process claim. Also, early in this case John abandoned his state law claim for breach of contract. As a result, no pending claim tasks the jury to find facts regarding Purdue's disciplinary procedure. There is no pending claim that equips John to argue or present evidence as to whether Purdue failed to comply with any procedural requirement when investigating and deciding Jane Doe's allegation.

By abandoning his state law claims, John has waived any claim or argument that Purdue allegedly failed to follow its own rules, as applicable under John's agreement to following

1

Purdue rules and procedures. The dismissal of John's Due Process claim bars any claim or argument that Purdue breached any Fourteenth Amendment procedural requirement.

Further, the private right of action under Title IX itself is limited to the determination whether intentional gender bias produced the disciplinary outcome. John has not alleged that a different process would have produced a non-discriminatory outcome. This conclusion is reinforced by the fact that John has never asked this Court for an injunction compelling Purdue to re-open and re-decide Jane Doe's allegation.

The procedures implemented by the Department of Education in 2020 (34 CFR § 106.45) are immaterial to the jury's task in evaluating whether there was gender discrimination in a disciplinary process that occurred in 2016.

For these reasons, it would confuse the jury and prejudice Purdue, and thus violate Rule of Evidence 403, to permit John to argue or attempt to adduce evidence that faults the Purdue process employed in 2016 for the investigation and decision of Jane Doe's allegation.

**B. Arguments or evidence regarding the content of disciplinary records or "expungement".**

This Court has confirmed that, to the extent any contentions about the content of disciplinary records or "expungement" still pend, those topics would concern injunctive relief that is outside of the jury's task to decide Plaintiff's Title IX claim for damages. Therefore, evidence or argument on those topics should be barred from the jury trial.

**C. Evidence not produced in discovery or disclosed to Purdue during discovery.**

It would prejudice Purdue and therefore violate Rule of Evidence 403 for Plaintiff to seek to admit any evidence not produced in discovery or not disclosed to Defendant during discovery. The rule in the Northern District of Indiana is:

> Undisclosed information and witnesses will not be permitted. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). The Court precludes any substantive evidence not previously disclosed, except for impeachment or rebuttal purposes.

*Doe v. Purdue Univ.*, No. 4-18-CV-89-JEM, 2022 U.S. Dist. LEXIS 128601, at *17 (N.D. Ind. July 20, 2022).

Discovery ended long ago. As summarized at DE 233, John has defied the requirement to supplement his discovery responses and disclosures. John has disclosed no evidence for his claim of a lost opportunity in Navy ROTC or a lost opportunity for a Navy career; no evidence to show his aggregate annual income or lack thereof; and no evidence to show any effort to enroll at Purdue University or any other educational institution since the end of 2017. He has disclosed no evidence to show that he has sought employment from any employer who is aware of John's disciplinary suspension from Purdue or has refused an employment opportunity to John on that basis. He has disclosed no evidence from any social media account to show any third-party awareness or perception of the disciplinary suspension.

Under *Doe v. Purdue*, *supra*, "[A]ny substantive evidence not previously disclosed" on these topics is inadmissible and cannot be offered for the first time on the eve of trial or at trial.

**D. Alleged emotional distress, psychological damages, or the alleged consequences of the same.**

On April 28, 2022, the Supreme Court of the United States held that plaintiffs could not seek emotional distress damages under Title IX claims. *Cummings v. Premier Rehab Keller*, P.L.L.C., 142 S. Ct. 1562 (April 28, 2022). In response to this decision, Purdue filed, and this Court granted, its *Motion for Judgment on the Pleadings as to Title IX Claim for Damages for Emotional Harm*, resulting in dismissal of claims barred by *Cummings*. *See* DE 206, at 23-24.

Because John's lone remaining claim is his Title IX cause of action, he has no cause of action that entitles him to damages for emotional distress or psychological damages. Accordingly, any references to John's alleged anxiety and stress stemming from Jane's allegations, Purdue's (or the Navy's) investigation, Purdue's discipline, and the impact of this alleged distress on his education and career path are not relevant to any issue for the jury. Fed. R. Evidence 401-402. Worse, introducing evidence or reference to these alleged harms in the presence of a jury risks clouding the issues, wasting time, and confusing the jury by permitting it to consider irrelevant evidence on the question of damages. Fed. R. Evid. 403.

Further, any self-diagnosis by John is inadmissible to prove the existence of an authentic clinical diagnosis. John has generally claimed to suffer from anxiety and stress following his suspension, and he has tried to leverage that self-diagnosis into a rationale for his decisions not to complete his education and enter the work force in any meaningful way. However, there is no evidence that John has never been formally diagnosed with any medical condition by a licensed diagnostician, related to the harm that he attributes to the events alleged in his Amended Complaint, nor has he designated any expert opinion or disclosed any treating physician on that topic. *See* **Ex. A**.

Purdue anticipates that John intends to sidestep his duty to mitigate his alleged lost earnings by averring that he did not seek (or keep) a job because of his mental state. Such a claim is simply an emotional and psychological distress claim clothed in the guise of an economic loss—in other words, John's alleged inability to work is a continuation of his claim that he was psychologically or emotionally injured by Purdue. Under *Cummings*, John cannot deploy such arguments to deflect his duty to mitigate and inflate his claimed earnings loss.

**E. John's designated expert on his damage claim (Smith) should be barred from testifying regarding "hedonic" damages or providing any general discussion of hedonic damages.**

John's designated expert on his claimed earnings loss, Dr. Stan V. Smith, has provided a report in which he opines on the "reduction in value of life," also known as "hedonic" damages[1] to the jury. A copy of that report, as recently supplemented by Dr. Smith, is submitted herewith as **Exhibit B**. Dr. Smith's proposed testimony on this topic has been repeatedly rejected by courts in the Seventh Circuit and around country as unreliable and inadmissible under Rule 702, *Daubert*, and Rule 403. *E.g., Stokes v. John Deere Seeding Grp.*, No. 4:12-cv-04054-SLD-JAG, 2014 U.S. Dist. LEXIS 21725, at *11, 17-19 (C.D. Ill. Feb. 21, 2014) (excluding Smith's hedonic damage opinions and a discussion on hedonic damages as "unreliable," not "generally accepted," and otherwise impermissible under Rule 403, while also noting that "the weight of mandatory and persuasive precedent counsels strongly against admitting Dr. Smith's testimony."); *Bolden v. Walsh Grp.*, No. 06 C 4104, 2012 U.S. Dist. LEXIS 44351, at *18-20 (N.D. Ill. Mar. 30, 2012) (excluding Smith's hedonic damages opinion where Smith acknowledged that it was not subject to scientific testing and there was a lack of any peer-review); *Mercado v. Ahmed*, 756 F. Supp. 1097, 1103 (N.D. Ill. 1991); *see also Moe v. Grinnell Coll.*, 547 F. Supp. 3d 841, 851-52 (S.D. Iowa 2021) (Smith's report and opinions on hedonic damages are "unreliable," "cannot be tested," and is not "generally accepted," among other issues); *Bailey v. Nyloncraft, Inc.*, No. 11-14199, 2012 U.S. Dist. LEXIS 122120, at *9 (E.D.

---

[1] Hedonic damages are "'those damages which flow from physical impairments which limit plaintiff's capacity to share in the amenities of life.'" *Eyoma v. Falco*, 247 N.J. Super. 435, 446, 589 A.2d 653 (App. Div. 1991) (quoting Comment, Loss of Enjoyment of Life as a Separate Element of Damages, 12 Pac. L. J. 871, 966-67 (1981)); *see also Montalvo v. Lapez*, 77 Haw. 282, 884 P.2d 345, 347 (Haw. 1994) (hedonic damages defined as "damages arising from loss of the enjoyment of life, as measured separately from the economic productive value that an injured person would have had") (quoting Black's Law Dictionary 391 (6th ed. 1990)); *Anderson v. Neb. Dep't of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732, 739 (Neb. 1995) (same).

5

Mich. Aug. 28, 2012) (Smith's hedonic damages opinion is "unreliable," "irrelevant," and, thus, inadmissible); *Sullivan v. United States Gypsum Co.*, 862 F. Supp. 317, 321 (D. Kan. 1994) (Smith's hedonic damages opinion is excluded because it is not "scientifically valid" nor would it assist the trier of fact to understand or determine a fact or issue in dispute).

Purdue incorporates by reference the memorandum previously filed by the defendant (the movant seeking exclusion of Smith's opinions) in the *Stokes* decision. **Ex. C**. A comparison of Dr. Smith's report in that case and Dr. Smith's report on John shows that the sections regarding "hedonic" damages are nearly identical, save for the specific names and numbers. Because Dr. Smith has declined to change his approach in the face of all this judicial criticism, the exclusion rationale in *Stokes* (and the accompanying brief) remains squarely on point.

Further, the *Cummings* bar on emotional distress damages should be construed as a bar on a claim for hedonic damages under Title IX. The Seventh Circuit observed that hedonic damages are "'[d]amages that attempt to compensate for the loss of the pleasure of being alive.'" *Diperna v. Chi. Sch. of Prof'l Psychology*, 893 F.3d 1001, 1006 n.5 (7th Cir. 2018). Put differently, they measure the loss of plaintiff's enjoyment of life. This is another way of describing a claim for emotional harm damages that are forbidden under Title IX. *Cummings*, 142 S. Ct. at 1575-76. Any discussion of John's loss of enjoyment of life is another way of describing John's alleged depression. Such evidence is inadmissible, irrelevant, and risks confusing the jury and the issues at stake. *Id.*; *see also* Fed. R. Evid. 401-403.

- **F. This Court has excluded all opinions of Attorney Barden that were disclosed during the expert discovery phase. Plaintiff's counsel failed to timely seek leave to designate any other opinions, and any grant of leave on the eve of trial would prejudice Purdue. Attorney Barden should therefore be barred from testifying at trial.**

Purdue previously moved to exclude Attorney Christopher Barden from testifying at trial and from having his opinion considered for the purposes of summary judgment. *See* DE 206, at

6

11. This Court granted that motion, holding that Barden's opinions failed to demonstrate any "scientific, technical, or other specialized knowledge, [that would] help the trier of fact." *Id.* at 13 (quoting Fed. R. Evid. 702(a)) (internal quotations marks omitted) (some alterations in original). As this Court noted, "This report offers little to make that connection, other than his rumination about their motives. . . . Expert opinions premised on "subjective belief or unsupported speculation," like this one, must be excluded. *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996)." *Id.* at 13-14. The Court concluded "The opinion of Dr. Christopher Barden is excluded from the summary judgment record and may not be used at trial". *See id.* at 24.

John has never moved for other relief from that ruling. The time for disclosing experts and conducting expert discovery ended long ago. Any new report on the eve of trial is plainly untimely and prejudicial to Purdue.

At the Final Pretrial Conference, John's counsel stated that he would seek to re-offer portions of the disclosed-and-excluded Barden opinions.

John's counsel has never moved for leave to designate and disclose new opinions by Barden. The deadline for disclosure of expert opinions passed long ago. "'It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(c).'" *Stuhlmacher v. Home Depot USA, Inc.*, No. 2:10-cv-467, 2012 U.S. Dist. LEXIS 164722, 2012 WL 5866297, at *2 (N.D. Ind. Nov. 19, 2012) (citation omitted). "'An expert report that discloses new opinions is in no way a mere supplement to a prior report.'" *Id.*

Despite this square bar, on March 16, 2023, John's counsel "supplemented" Mr. Barden's previous 106-page report with a new 112-page report that merely repackages the previously excluded Barden opinions. **Ex. D.**

Because this Court has not modified its previous *Daubert* order, the status quo is that Barden's previously disclosed opinions remain barred. The Court has set a March 28, 2023 deadline for Purdue to renew its *Daubert* objection to this recycled report of already-excluded opinions, and Purdue will do so.

Because John has neither sought nor obtained leave to re-open the period for designation and disclosure new expert opinions, the status quo is that the March 16, 2023 disclosure is untimely. Under Federal Rule of Civil Procedure 16(b), any leave to designate a new Barden opinion would require a modification of the case management order's deadlines for expert disclosure and discovery, and any such modification would require a showing and finding "upon a showing of good cause".  No such cause has been asserted, let alone shown or found by this Court to exist. *Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("Rule 37(c)(1) states that expert testimony may not be presented at trial if the expert's report was not disclosed to the other side within the deadline unless the party was justified in missing the deadline or the untimeliness of the disclosure was harmless."); *see also e.g.*, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2023 U.S. Dist. LEXIS 20323, at *21-23 (N.D. Ill. Feb. 7, 2023) (excluding supplemental expert reports for a previously disclosed expert when those supplemental reports were served after the applicable deadline).

**G. John should not be allowed to make a "Golden Rule" appeal to the jury.**

John should be precluded from urging the jurors to put themselves in his position. "A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *U.S. v. Teslim*, 869 F.2d 316, 328 (7th Cir.1989) (quoting *Spray- Rite Serv. Corp. v. Monsanto Co.*, 684

F.2d 1226, 1246 (7th Cir.1982)); *see also U.S. v. Roman*, 492 F.3d 803, 805-06 (7th Cir. 2007) (finding "Golden Rule" appeal that the jury should place itself in the defendant's shoes improper); *U.S. v. Whitaker*, No. 95-3829, 1996 U.S. App. LEXIS 24197, at *8 (7th Cir. Sept. 11, 1996) (finding "Golden Rule" appeal improper); *see also Johnson v. State*, 453 N.E.2d 365, 369 (Ind. Ct. App. 1983) ("It is misconduct to phrase final argument in a manner calculated to inflame the passions or prejudices of the jury."). Such argument or inference is inadmissible under Rule 403, as unfairly prejudicial to Purdue and confusing to the jury.

### H. References to the Seventh Circuit Opinion—and any of this Case's Procedural History save the Court's Spoliation Order—should be prohibited.

John's counsel has repeatedly mis-cited the Seventh Circuit's opinion in *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) as a determination on the merits. This Court has recently taken John's counsel to task for this mischaracterization. DE 224, at 11 ("Courts are not 'bound and determined' to find for any particular party or allow any particular claim for relief to go forward. Courts are bound to follow the law, . . . . The Court's summary judgment opinion is perfectly consistent with the Seventh Circuit's opinion on a different factual record, and at a different stage of litigation that required a very different quantum of proof. At the pleading stage, the Seventh Circuit considered "only the facts as [John] describes them, drawing every inference in his favor. In other words, the story . . . is one-sided because the posture of the case requires it to be.").

The Seventh Circuit's opinion (including the involvement of a future Justice of the United States Supreme Court) is not evidence and would be confusing to jurors, who will not have any knowledge of the difference between evidence, on one hand, and the function of Rule 12 motions, Rule 56 motions, and the accompanying delineation of issues of fact for trial. Direct reference to pretrial opinions under Federal Rules of Civil Procedure 12 and 56 would have no

probative value for the jury's fact-finding task and would be confusing and should therefore be barred under Rule of Evidence 403. Fed. R. Evid. 401-403. Any mention of the Seventh Circuit's writings in this case would also open the door to this Court's decision dismissing the Due Process allegation addressed in the appellate opinion, as well as the Seventh Circuit's recent denial of John's petition for a writ of mandamus.

### I. Statements in the press or opinions from nonparties about this case are not admissible.

John has repeatedly suggested to this Court that the media and public figures are closely following his case. Statements in the media and statements from third-party advocates on public policy regarding sexual misconduct discipline are hearsay and not grounded in any personal knowledge regarding the events at issue in this case. Fed. R. Evid. 401-403, 701. The jury is the factfinder and must be guided solely by its review of admissible evidence and this Court's instruction of law. Third-party statements about this case and past decisions, alleged facts, or the "importance" of this case have no place in the jury trial.

### J. Plaintiff should not be allowed to argue that the jury should "Send a Message" to Purdue or any other non-party, and Plaintiff should be precluded from mentioning punitive damages.

John should not be allowed to argue to the jury that it should "send a message" to Purdue or any other non-party in this case, such as other public universities or the Biden Administration. Any such argument would be nothing more than a disguised attempt to argue for punitive damages which, as a matter of law, are unavailable on John's title IX claim. *See Barnes v. Gorman*, 536 U.S. 181 (2002); *Bergholz v. John Marshall Law Sch.*, No. 18 C 3, 2018 U.S. Dist. LEXIS 185147, at *13-14 (N.D. Ill. Oct. 30, 2018); *see also Mercer v. Duke Univ.*, 50 Fed. Appx. 643, 644 (4th Cir. Nov. 15, 2002); *Frechel-Rodriguez v. P.R. Dep't of Educ.*, 478 F. Supp. 2d 191, 198-99 (D.P.R. 2007); *Bullard v. Dekalb Cty. Sch. Dist.*, 2006 U.S. Dist. LEXIS 103144,

at *11, 2006 WL 8432670, at *4 (N.D. Ga. Feb. 9, 2006); *Hart v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2002 U.S. Dist. LEXIS 25720, at *56-57 (S.D. Ohio Nov. 15, 2002).

Because punitive damages are unavailable in Plaintiff's lone remaining cause of action, any reference to punishing or sending a message to Purdue would be prejudicial to Purdue and confuse the jury regarding the assigned and permitted task to consider only compensatory damages. *See, e.g.*, *Lauderdale v. Russell*, No. 1:16-cv-02684-TWP-TAB, 2020 U.S. Dist. LEXIS 2670, *9 (S.D. Ind. Jan. 8, 2020) (finding phrases "send defendants a message" or "teach them a lesson" irrelevant and prejudicial); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 U.S. Dist. LEXIS 211723, *2 (N.D. Ind. Dec. 5, 2019) (finding "a request to send a message beyond making Plaintiff whole . . . inappropriate in a case for only compensatory damages"); *Scott v. Menard, Inc.*, No. 2:10-cv-442, 2015 U.S. Dist. LEXIS 99247, *8 (N.D. Ind. July 30, 2015) (finding any "send a message" argument "would be unfairly prejudicial"); *Pearson v. Ill. Cent. R.R.*, No. 06-cv-0822-DRH, 2008 U.S. Dist. LEXIS 24855, *2 (S.D. Ill. Mar. 27, 2008) (excluding any "argument, comment or suggestion that the jurors act as safety advocates in this lawsuit or that they send a message to the corporate defendant with their verdict," as "improper and inflammatory").

Any implication that a damages award is sought for any purpose other than compensation of eligible, compensatory, proximately caused losses is inappropriate and should be barred under Evidence Rule 403.

**K. Alleged impact on John's family and friends.**

John has identified his parents and roommate as witnesses. Those witnesses should be prohibited from testifying regarding any alleged impact on them from Purdue's one-year suspension of John. The only plaintiff is John, not his parents or friends. Such testimony by non-

party family and friends would not be probative of gender bias, or John's damage claim. Such testimony would also be contrary to *Cummings* by inviting speculation as to John's alleged emotional injuries, and may confuse the jury or amount to an improper attempt to inflame its passions. Fed. R. Evid. 403.

 L. **Evidence or argument regarding educational and career hypotheticals.**

John has contended that he is entitled to an award of consequential damages for his failure to obtain a degree in the seven years since he was suspended from Purdue for one year in 2016, his failure to take any step whatsoever toward a Navy career in the seven years since he was suspended from Purdue in 2016, and his unwillingness to participate in the workforce for long stretches since 2016. John has failed to comply with pretrial requirements to establish any damage claim based on these facts.

*First*, for consequential damages, John has not complied with Rule 26(a)(1)(A)(iii), which requires "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." "Under Federal Rule of Civil Procedure 37(c)(1), when a party fails to provide information as required by Rule 26(a) or (e), 'the party is not allowed to use that information' at trial, 'unless the failure was substantially justified or is harmless.' Fed. R. Civ. P. 37(c)(1)." *Neurografix v. Brainlab, Inc.*, No. 12 C 6075, 2021 U.S. Dist. LEXIS 50710, *18 (N.D. Ill. Mar. 17, 2021).

*Second*, speculative evidence is inadmissible. A lay witness's speculation about a hypothetical alternate career or education scenario is not admissible because it is not "rationally based on the witness's perception." Fed. R. Evid. 701. By definition, neither John nor anyone

else has any percipient-witness knowledge about hypothetical events, such as: What would have happened if John had returned to Purdue when his suspension was over? What would have happened if John had completed degree coursework at a different school? What would have happened if John had re-enrolled in ROTC at Purdue or elsewhere? What would have happened if John had enlisted in the Navy? Neither John nor any other fact witness on his witness list can say, because those events are speculative hypotheticals.

In turn, John has not designated any testimony from an expert who is equipped to opine as to what John would have accomplished if he had returned to school at Purdue, or if he had stayed enrolled at a different school, or if he had sought to enroll in Navy ROTC anywhere during or after his one-year Purdue suspension, or if he had sought to enlist in the Navy. There is no admissible expert evidence on those topics for the simple reason that John never took those steps. Where there is no demonstrable basis to conclude what would have happened in those hypothetical scenarios, hypothesizing that Purdue's one-year suspension doomed or barred John from success in any of those scenarios is inadmissible speculation. *Van Houten-Maynard v. Anr Pipeline Co.*, No. 89 C 0377, 1995 U.S. Dist. LEXIS 6751, at *21 (N.D. Ill. May 18, 1995) (granting motion in limine; "The speculative nature of this testimony is apparent from the fact that there is no demonstratable basis to suggest that plaintiff would not have secured other employment. As such, this speculative testimonial evidence is inadmissible."). John has not disclosed any expert opinion to establish, as a matter of expertise that is admissible under *Daubert*, what an alternate history of John's life after mid-2016 would look like.

**M. Evidence or argument as to a non-party's Title IX allegations against Purdue University, any event or evidence underlying or in the course of any non-party's Title IX lawsuit against Purdue University, and any related disciplinary outcome or sanction.**

Purdue has been named a defendant in other Title IX suits. Those cases have no factual connection to John's case. Any discipline ordered by Purdue University regarding any non-party student is a collateral matter with no probative value, a waste of time, and a risk of confusion. It would confuse the jury and prejudice Purdue, and thus violate Evidence Rule 403, for Plaintiff to offer argument or evidence regarding the existence of those cases, the allegations and evidence in those cases, any rulings of those cases, or any consensual resolution of those cases.

The determination of a conduct offense by a non-party is unique to the facts and circumstances of that non-party's conduct and has no probative value to show that anti-male bias motivated the disciplinary outcome of Jane Doe's allegation regarding John Doe.

**N. Any mention that Defendant has liability insurance coverage.**

Evidence that insurance coverage is available to pay a judgment in this matter is irrelevant, prejudicial, and inadmissible. Under Rule of Evidence 411, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." In this case, there is no other purpose for admission of such evidence. Purdue requests that the Court instruct John and his counsel and witnesses that they are not to offer any evidence or testimony which might in any way refer to the existence of Purdue's insurance. It is well-established that evidence concerning the availability of insurance coverage for a defendant injects prejudicial elements into the case. John's attorney should further be instructed not to ask jurors questions about insurance or insurance companies during voir dire.

O. **Prohibition on evidence and contentions about the "History," "Purpose," or "Intent" of Title IX.**

There is no jury factfinding task involving the history, purpose, or intent of Title IX. Those topics are freighted with political considerations that have no probative value and would prejudice Purdue if introduced at trial. As courts have found in other circumstances, it is sufficient that the jury is instructed only on the "applicable law" and any attempt to contour the Court's explanation of the law with arguments about an act's purpose, history, or intent serves no purpose or, worse, is an attempt to confuse to issues or infer improper prejudice to the Defendant. *E.g.*, *Stillman v. Norfolk & Western Railway Company*, 811 F.2d 834, 838 (4th Cir. 1987); *Taylor v. Union Pac. R.R. Co.*, No. 09-123-GPM, 2010 U.S. Dist. LEXIS 134667 at *5 (S.D. Ill. Dec. 21, 2010).

P. **Objections to Discovery.**

Purdue has objected to some of John's discovery requests in this case. Purdue's discovery objections are irrelevant to the trial in this action, in that it does not "make the existence of any fact that is of consequence to the determination" of John's Title IX claim "more probable or less probable than it would be without the evidence," and Plaintiff should not be allowed to reference these objections to the jury. Evid. R. 401, 402. Alternatively, even if Purdue's discovery objections could be deemed relevant evidence, the objections would still be inadmissible because of their unfairly prejudicial nature. Evid. R. 403. Reference to Purdue's discovery objections is unfairly prejudicial, in that it may appear to the jury, which is unfamiliar with the rules of discovery, that Purdue has "something to hide" or is choosing to be "less than upfront" with the jury. Accordingly, Plaintiff should be precluded from mentioning Purdue's discovery objections to the jury. *See also McQuiston v. Helms*, No. 1:06-cv-1668-LJM-DML, 2009 U.S. Dist. LEXIS

19141, at *33 (S.D. Ind. Mar. 4, 2009) (granting motion *in limine* to exclude references to objections to discovery requests).

### Q. Jane's sexual history.

Throughout this case, John has tried to disparage Jane Doe for her supposed sexual history predating John's relationship with her. That topic is inadmissible and should be excluded by the Court *in limine*.

First, John's statements are hearsay because, by definition, John has no percipient-witness knowledge regarding Jane's sexual history prior to her relationship with John.

Second, Jane is not a party and any statements imputed to her about her sexual history are not party-admissions and therefore are inadmissible hearsay.

Third, evidence regarding Jane's sexual history is inadmissible. *See* Fed. R. Evid. 412(a) ("The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition.").

Fourth, Jane's supposed sexual history—as told by the person who sexually assaulted her—has nothing to do with the only issue for the jury, which is whether Purdue intentionally discriminated against John on account of his sex. Allowing John or his witnesses to inject the inflammatory topic of Jane's sexual history confuses the issues, wastes time, and would be prejudicial to Purdue. Fed. R. Evid. 403.

### R. Jane's mental health.

John has repeatedly speculated on Jane Doe's mental state and motives for reporting sexual assault. John has no credential for psychological evaluation and therefore cannot offer

16

opinions about Jane's mental health. Any alleged out-of-court statements by Jane regarding her mental health would be inadmissible hearsay.

John's contention that he witnessed and reported a suicide attempt by Jane is inadmissible because there is no admissible evidence to corroborate that John made such a report or to show that Jane was aware of any such report. Any speculation by John that Jane was aware of such a report by John is outside of John's personal knowledge and therefore inadmissible.

Injecting Jane's mental health into this case would mislead the jury about its task. The jury is tasked with deciding whether Purdue possessed discriminatory intent, not whether Jane was suicidal.

Further, impugning the mental health of a non-party witness has no logical relationship to the witness's credibility. There is no basis in science or law to argue that a depressed person cannot be trusted to tell the truth. Further, an argument by John about Jane's mental health would open the door to the inference that John's own conduct harmed her mental health, and that Jane's allegedly deteriorated mental health corroborates that John sexually assaulted Jane.

S.  **John's claimed religiosity.**

John and some of his family members have invoked his 'Christian upbringing' and his family's religious or moral values. Those self-descriptions have no bearing on any issue for the jury and inappropriately challenge the jury to discount witnesses who do not cloak their testimony in rhetoric of religiosity. Fed. R. Evid. 403.

Further, the jury is not tasked with deciding how John's religious lens relates to his sexual decision-making. The jury will be solely tasked with evaluating how Purdue weighed the evidence on Jane's sexual assault allegation, specifically whether that weighing was free of anti-

male bias. Whether John was guided by claimed religiosity has no probative value in determining whether Purdue's decision-makers were gender-biased.

Further, religion is a highly sensitive topic. The admission of evidence on religiosity opens the door to inquiry into topics that may confuse the jury and invite biased inferences about various forms of religiosity (or lack thereof). There is no presumption in law that people who profess religious creeds are more or less likely to offend a rule on impermissible sexual conduct. For these reasons, the topic is confusing and prejudicial and has no relevance to the jury's task in reconstructing Purdue's decision-making and should therefore be barred.

**T. Plaintiff should be barred from referencing the parties' settlement negotiations or any Rule 68 Offer of Judgment.**

The parties have engaged in settlement negotiations, including an unsuccessful mediation. Plaintiff and his counsel should be barred from telling the jury about settlement offers, statements made during settlement negotiations or any offer of judgment. Evidence R. 408; Fed. R. Civ. Proc. 68.

WHEREFORE, The Trustees of Purdue University requests that the Court grant this Motion *in Limine* and order the Plaintiff, his counsel, and all witnesses testifying on his behalf be instructed not to mention the above listed subjects without prior leave of the Court.

Dated: March 21, 2023                    Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (No. 18973-79)
Tyler L. Jones (No. 34656-29)
James F. Olds (No. 27989-53)
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
       tlj@stuartlaw.com
       jfo@stuartlaw.com
Telephone: 765.423.1561
***Attorneys for Defendants***

1554169