## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.,** in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK,** | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, | ) | |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) | |
| at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT FINAL PRETRIAL ORDER

The attorneys for the parties to this action appeared before the United States District

Magistrate Judge in Hammond, Indiana, remotely via Zoom, at 1:00 p.m. (Central) on March 14,

2023, for a final pretrial conference under Rule 16(e) of the Federal Rules of Civil Procedure.

Plaintiff, John Doe, is represented by Philip A. Byler of the firm of Nesenoff &

Miltenberg LLP. Defendants are represented by William P. Kealey and Tyler L. Jones of the firm

of Stuart & Branigin LLP.

**A.    Jurisdictional statement**.   Federal question jurisdiction for Plaintiff's Title IX claim for

damages exists pursuant to 28 U.S.C. § 1331. The Honorable Joshua Kolar, Magistrate Judge for

the United States District Court for the Northern District of Indiana, conducts these proceedings

pursuant to consent given pursuant to 28 U.S.C. § 636(c). Defendants assert that the standing

requirements for Plaintiff's Title IX injunctive relief claims are not met and there is no subject-

matter jurisdiction for trial of those claims.  Plaintiff disagrees.

1

**B.**    **Plaintiff's brief description of the claim(s) to be tried.**    Issue having been joined by John's Second Amended Complaint (ECF 160) and Defendants' Answer to the Second Amended Complaint (ECF 161), the claim to be tried is John's claim for sex discrimination in violation of 20 U.S.C. § 1681 from Title IX of the Education Amendments of 1972 in the imposition of a disciplinary suspension for sexual misconduct he did not commit, resulting in the loss of a Navy ROTC scholarship.

**C.**    **Defendant's brief description of the claim(s) to be tried**. The case is at issue on Plaintiff John Doe's Second Amended Complaint and Defendants' Answer to the same. Plaintiff's lone, remaining claim is a Title IX allegation of gender discrimination. The only Defendant standing trial is The Trustees of Purdue University ("Purdue University").

**D.**    **Pending Motions**

There are no pending motions; however, this Court has yet to rule on the amount of attorney's fees to be awarded to Purdue as a result of its sanction of the Plaintiff.

John's position is that no attorney's fees should be granted or adverse inference given because the sanction decision was legally erroneous and should be vacated. Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case. *Smith v. United States,* 293 F.3d 984, 988 (7th Cir.2002); *Crabtree v. Nat'l Steel Corp.,* 261 F.3d 715, 721 (7th Cir.2001).  A speculation that "it was not inconceivable" the 11 deleted Snapchat personal posts might be potentially relevant to John's desired Navy career without giving an explanation how it was conceivable, much less actually relevant (which the evidence showed it wasn't), is legally insufficient. Adverse inference instructions require intentional destruction and relevance, *Crabtree v. Nat'l Steel Corp.,* 261 F.3d at 721; *Keller v. United States,* 58 F.3d 1194 (7th Cir.1995)

(collecting cases), not present here.  No use was made by Defendants in the summary judgment briefing.

**E.    The parties' contentions**.

**1.    John**

The requirements of a Title IX action are: (i) the exclusion from participation in or denied benefits or subject to discrimination in an educational program (ii) that receives federal assistance and (iii) the exclusion was on the basis of sex.  As the Court noted in his August 11, 2022 opinion (slip opinion at 18), it is undisputed in this case that John was suspended from Defendant University's undergraduate program and Defendant receives federal assistance and that Plaintiff John' claim depends upon whether Defendants discriminated against John on the basis of sex. John contends that he was excluded on the basis of sex by the imposition of a disciplinary suspension for sexual misconduct he did not commit, resulting in the loss of a Navy ROTC scholarship.

   a.   What the Court calls "background facts" support finding sex discrimination:

         (i) April 2011 Dear Colleague Letter provided a backdrop

         (ii) Social media posts at Purdue showed a culture of sex bias

   b.    The facts concerning the investigation support finding sex discrimination, including:

         (i) Investigators imbalance in assessing John and Jane – no assessment of Jane credibility; dubious ground for finding John less credible when accepted John on time of alleged events; preponderance of evidence assessment when John denies and Jane not have an independent recollection reflected "believe the woman" sex and confirmation biases.

(ii) CARE Director Bloom acts as advocate for Jane and is source of Jane statements in case. CARE Director Bloom emails Investigator Amberger to re-interview Jane about texts, Amberger does, but does not interview John a second time about texts, Investigator Oliver says had from Jane what was sufficient not to interview John second time. The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(iii) Jane deleted the texts while John supplied 133 page of texts; Investigators Amberger and Oliver selectively quoted passages on seven pages of 133 pages of texts to portray John as admitting to the sexual assault when Investigators Amberger and Oliver admit that there is no express statement in the texts in which John admitted engaging in any sexual misconduct or Jane Doe accused John of committing the sexual acts alleged in the Notice of Allegations; texts in entirety show close John-Jane relationship and Jane emotional issues. Dean Sermersheim and Vice President Rollock did not know about there being 133 pages of texts. The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(iv) John offered much evidence to the investigators who chose to ignore John's information, his background, and his account of the night Jane attempted to commit suicide. For example, the investigators did not obtain John's explanation of the texts and consider that information as an alternative hypothesis, which was unjustifiable give that the texts do not contain any express statement about what Jane alleged to be the sexual

4

misconduct. At the same time, Purdue investigators failed to investigate reports that Jane Doe had deleted evidence, attempted suicide, and discussed manipulating her mother to pay for her college then banning the mother from her graduation-wedding-children. The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(v) Investigators did not ask Jane about why John would feel her crotch area if roommate in room, did not ask Jane why not wake up of John supposedly fingering her, did not ask Jane why five-month gap between alleged events and filing Complaint, and did not explore alternative hypotheses in questioning Jane. Jane apparently had no memories of sexual assault until CARE sponsored sexual assault month. The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(vi) Investigators did not consider or simply ignored Jane's objection to John being in armory where right to be, the report of John's roommate that John was shocked by Jane allegations, Jane's emotional issues, the report of suicide attempt, the sexual relationship of John and Jane, and Jane's delay in filing Complaint allowing for memory taint. The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(vii) Investigators made methodological errors allowing for sex bias -- exhibited confirmation bias, did not explore alternative hypothesis, received training in trauma informed investigations, failure to record interviews, failure to document evidence, failure to provide investigation report to John

for comment. The foregoing conduct was consistent with the "believe the woman" sex and confirmation biases.

(viii) Training in trauma informed investigation resulted in sex biased investigation.

c.  The facts concerning the adjudication support finding sex discrimination, including:

(i) John appears at the June 6, 2016 meeting with Dean and Equity Committee members, but Jane does not attend, yet John subject to hostility at meeting and Jane is found more credible.  The foregoing conduct was consistent with the "believe the woman" sex bias.

(ii) To John, hostile panel members asked hostile questions and did not ask questions reflecting consideration of alternative hypotheses. The foregoing conduct was consistent with the "believe the woman" sex and confirmation biases.

(iii) The written statement for Jane was submitted by CARE Director Monica Bloom – Monica Bloom was involved throughout the process, including adjudication, and had control of access to Jane; the statement submitted by Monica Bloom ostensibly for Jane was accepted despite being unsworn and unsigned; the statement reflected animus.

(iv) Dean Sermersheim found Jane credible and John not credible despite not seeing Jane, reflected "believe the woman" sex bias.

6

(v) Dean Sermersheim's inadequate treatment of credibility and failure to consider alternative hypotheses reflected sex biased confirmation and "believe the woman" biases.

(vi) The failure to record meeting of Dean and Committee panel members allowed for biased decision-making.

d. According to the Navy ROTC disenrollment documents, John's suspension was the only reason he was disenrolled from Navy ROTC, and the disenrollment meant the loss of the ROTC scholarship and the Navy career he intended to pursue. John's damages were:

(i) Loss of Scholarship

(ii) Loss of Income To Date

(iii) Lifetime loss of wages and employee benefits (Dr. Smith)

(iv) Loss of potential value of life at an upper range (Dr. Smith)

(v) Alternative to Dr Smith, loss of lifetime earnings

(vi) Loss of reputation

e. Plaintiff disagrees with Defendant's contentions in E.2.

2.    **Defendant**.  Defendant Purdue University contends that:

a.    John cannot show Title IX gender-bias in its investigation of Jane Doe's allegations nor in the text or application of Purdue's *Anti-Harassment Policy (III.C.1)* because no facts raise the inference that Purdue acted at least partly on the basis of sex in John's case.

b.      As a matter of law Purdue had a legal obligation to investigate Jane's allegations and no gender bias can be assigned to Purdue's compliance with federal and state law.

d.      The evidence does not show that Purdue formed or acted upon any intent to discriminate against John on account of his gender.

e.      John received notice that a violation of the *Anti-Harassment Policy (III.C.1)* would subject him to discipline.

f.      The *Anti-Harassment Policy (III.C.1)* is gender-neutral on its face.

g.      Purdue's agents conducted themselves, Purdue's investigation, and Purdue's process consistent with the *Anti-Harassment Policy (III.C.1)*.

h.       John and Jane were afforded equal opportunity to speak to investigators and to present their accounts and evidence to a three-person panel of the Advisory Committee on Equity. Neither were compelled to cooperate with any part of Purdue's investigation or process.

i.      Purdue's evidence gathering followed the relevant information that investigators received and was not impacted by the gender of either John or Jane.

j.      Purdue had a reasonable, non-discriminatory basis to conclude that John violated its *Anti-Harassment Policy (III.C.1)* by, among other things, relying on evidence that he sexually assaulted—and otherwise engaged in non-consensual touching of—Jane.

k.      The proximate cause of John's alleged damages, if any, was his own conduct, both before and after his suspension.

l.      John lost his scholarship from the Navy on account of his poor grades, not because of Purdue's suspension. Regardless of Purdue's suspension decision, he was responsible for paying for his remaining tuition fees at Purdue.

m.      John's damage claim under Title IX for emotional harm is barred by law, and damages amplified by his alleged anxiety must be similarly barred.

n.      John has failed to mitigate his alleged damages by failing to re-enroll at Purdue following completion of his suspension.

o.      John's unclean hands render him ineligible for equitable relief.

p.      Purdue University's possession of records of John's disciplinary suspension is not an actionable harm and is required by applicable law.

q.      Destruction of Purdue University's records relating to John's disciplinary suspension would spoliate evidence relating to an open Navy misconduct investigation.

r.      John has waived and will waive any injunctive relief claim for destruction of Purdue University records offered and received into the Court's pre-trial and trial record in this case.

**F.      Plaintiff's Exhibits.** The following is a list of materials that Plaintiff may offer to be entered into evidence at a trial of this matter:

1.      Pl SJM 10: Sermersheim 33, 02/16/2016 Student of Concern Report (PU 32-33)

2.

3.      Pl SJM 11: Rollock/Bloom 2 (PU 726-728)

4.      Pl SJM 12: Rollock/Bloom 3 (PU 729-730)

5.      Pl SJM 13: Semersheim/Rollock 10, Sermersheim Letter (PU 568-572)

6.      Pl SJM 16: Sermersheim 11, John Doe Response to Allegations (PU 573-576)

7.

8.    Pl SJM 17: Amberger 27, Texts (PU 206-339)

9.    Pl SJM 18: Amberger/Oliver 25, Amberger Notes (PU 60-83)

10.   Pl SJM 19: Amberger/Oliver 24, Oliver Notes (PU 34-59)

11.   Pl SJM 20: Amberger 19, Amberger E-Mail to Bloom (PU 364)

12.   Pl SJM 21: Amberger 21, Bloom E-Mail to Amberger (PU 370)

13.   Pl SJM 22: Rollock/Sermersheim/Amberger/Oliver 14, Investigation
       Report with transmittal e-mail (PU 373-391)
14.
15.   Pl SJM 23: Sermersheim 34, Sermersheim Memo (PU 655)

16.   Pl SJM 24: Sermersheim 35, Sermersheim E-Mail (PU 596)

17.   Pl SJM 25: Amberger 29, Sharp E-Mail (PU 392)

18.   Pl SJM 26: Bloom 23, Bloom transmittal of June 5, 2016 statement
       (PU653-654)

19.   Pl SJM 27: Sermersheim 4, Sermersheim June 14, 2016 Letter (PU 579-
       599)

20.   Pl SJM 28:  Rollock 5, John Doe June 23 Appeal (PU 717-718)

18.   Pl SJM 29: Rollock 6, Rollock June 28 Letter (PU 600-601)

19.   Pl SJM 30:  Semersheim/Rollock 7, Sermersheim June 29, 2016 Letter
       (PU 603-607)

20.   Pl SJM 31:  Rollock 8, John Doe July 10, 2021 Appeal (PU 695-698)

21.   Pl SJM 32: Rollock 9, Rollock July 21, 2021 Appeal (PU 608-609)

22.   Pl SJM 33: Rollock 16, Rollock July 25, 2016 E-Mail (PU 702-73)

23.   Pl SJM 36: Hutton G/Remaly E/Willstetter D, August 10, 2020
       Performance Review Board document (NSTC 00011-0012)

24.   Pl SJM 37: Hutton H, August 2020 ROTC Appointment Termination and
       Disenrollment Authorization (NSTC 0001-0004)

25.   Pl SJM 40: Willstetter C/Remaly D, E-mail by Staff Lieutenant Willstatter
       (NSTC 0140-0142)

26.     Pl SJM 42: Daniels Interrogatory Answers

27.     Pl SJM 43: Sheppard 2, Sheppard E-Mail (NSTC 0179)

28.     Navy ROD 2015-2016

29.     Pl SJM 44: John Doe 2, Authorization (PU 704)

30.     Pl SJM 45: Hutton E, Fitness Report (NSTC 0166)

31.     Pl Opp DSJ 3: Hutton D (NSTC 0055 – 0060)

32.     Pl Opp. DSJ 6: PU 0731-0732 (Ex. K to Defendants' Motion)

33.     Pl Opp DSJ 7: NSTC 0154 (Ex. N to Defendants' Motion)

34.     Pl Opp DSJ 11: Purdue Data 2015-2016

35.     Pl Opp DSJ 15: NSTC 0153 (Ex. WW to Defendants' Motion)

36.     Pl Opp DSJ 16: John Doe Dep Ex 21

37.     Pl Opp DSJ 18: April 2011 Dear Colleague Letter

38.     Pl Opp DSJ 19: Assistant Secretary Lhamon Testimony

39.     Pl Opp DSJ 20: CARE Facebook postings PU 0756-0884

40.     Pl Opp DSJ 21: Plaintiff's Answers to Defendants' Third Set of
        Interrogatories

41.     Pl Opp DSJ 23: *Rape and Sexual Assault Victimization among College
        Age Females, 1995-2013* (Special Report), U.S. Department of Justice,
        December 2014, http://www.bjs.gov.content/pub/pdf/ravcaf9513.pdf).

42,     Pl Opp DSJ 26: Hutton Dep Ex I  (N 0005-0006)

43.     Pl Opp DSJ 27: Defendants' Responses To Plaintiff's Requests for

        Admission No. 2

44.     Rollock Deposition

45.     Bloom Deposition

46.     Sermersheim Deposition

11

47.    Amberger Deposition

48.    Oliver Deposition

49.    Noel Perry Deposition

50.    Noel Perry Deposition Exhibit 28

51.    Noel Perry Deposition Exhibit 33

52.    Captain Rodney Hutton Deposition

53.    Executive Officer Craig Remaly Deposition

54.    Lieutenant Taylor Deposition

55.    Lieutenant Kyle Wilstatter Deposition

56.    Lieutenant Adam Sheppard Deposition

57.    Megan Redlawsk/Chester Deposition

58.    Anna Early Deposition

59.    Plaintiff John Doe Mother Deposition

60.    Plaintiff John Doe Father Deposition

61.    Trent Klingerman Deposition

62.    Second Amended Complaint (ECF 160)

63.    Defendants' Answer to Second Amended Complaint (ECF 161)

64.    Summary: Facts Based on Defendants' Admissions in Answer to Second Amended Complaint

65.    Commissioned Officer Monthly Pay Tables 2019

66.    Commissioned Officer Monthly Pay Tables 2020

67.    Commissioned Officer Monthly Pay Tables 2021

68.    Commissioned Officer Monthly Pay Tables 2022

69.    Commissioned Officer Monthly Pay Tables 2023

**G.    Defendant's Exhibits.** The following is a list of materials that Defendant may offer to be entered into evidence at a trial of this matter:

A.  Contract between John Doe and Navy dated August 20, 2015

B.  Text Messages Between John Doe and Jane Doe of December 2015 and January 2016

C.  Department of the Navy Placement on Academic Warning dated January 15, 2016

D.  Jane's Sexual Violence Report dated April 4, 2016

E.  Email from Rodney Hutton to Jeffery Stefancic dated April 4, 2016

F.  Lt. Sheppard's Sexual Violence Report dated April 4, 2016

G.  Electronic notification email of incident report dated April 4, 2016

H.  Notice of Allegations dated April 5, 2016

I.  Notice of Interim Leave of Absence dated April 5, 2016

J.  Email from Monica Bloom dated April 5, 2016, advising of meeting with Jane

K.  Correspondence from Dr. Sermersheim to Jane Doe and John Doe dated April 11, 2016 (Including information sheet attachments for student complainants and respondents)

L.  University Investigator's Report, including all exhibits dated May 20, 2016

M.  Investigator's Notes

N.  Notice from Rodney Hutton and NROTC to John Doe dated May 20, 2016

O.  Email from Katherine Sermersheim to Panel of Advisory Committee on May 26, 2016

P.  Letter from Katherine Sermersheim to John Doe dated May 31, 2016

Q.  Email from Jane Doe to Monica Bloom dated June 5, 2016

R.  Email from Monica Bloom to Katherine Sermersheim dated June 5, 2016

S.  Determination Letter dated June 14, 2016

T.  Lt. Megan Redlawsk's Preliminary Inquiry Recommendations dated June 14, 2016

13

U.  Department of the Navy Initial Notification of Performance Review Board dated June 16, 2016

V.  Letter from Alysa Rollock to John Doe dated June 28, 2016

W.  Revised Final Determination dated June 29, 2016

X.  Final Determination dated July 21, 2016

Y.  Performance Review Board Summary and Recommendation dated August 10, 2016

Z.  Department of Navy Appointment Termination effective August 29, 2016

AA.  Taylor University Transcript

BB.  John's application to Indiana Beverage

CC.  Email dated 11/08/2019 to John from Indiana Beverage

DD.  Night warehouse job description

EE.  "Departing Employee Supervisor Feedback"

FF.  Email dated August 13, 2018, from Jane Petrone to John

GG.  All records from Noel Perry's office

HH.  Email from Adam Sheppard to John Doe dated April 26, 2016

II.   Email from Joanna Sharp to Investigators dated May 31, 2016

JJ.  Email from Kyle Willstatter to John Doe dated July 26, 2016

KK.  John Doe's Appeal of Revised Final Determination dated July 10, 2016

LL.  Investigator emails to John/Jane

MM.  Investigator's request for extension (PU0369)

NN.  Docs concerning John's request to see investigation file and Tandra's response (PU0699-702)

OO.  Email from Remaly re: Plaintiff's responsiveness dated July 29, 2016 (PU0703)

PP.        John's authorization to PU to disclose NROTC records

QQ.        Emails constructing the authorization (See "Docs Produced to PL 6-15-20)

RR.        Plaintiff's medical records produced in this case or obtained via Plaintiff's

authorization from provider

SS.        CARE FB Posts produced in discovery

TT.        Pictures and videos from Plaintiff's social media productions

UU.        Sexual Harassment policy statement from IN Beverage signed by the Plaintiff

VV.        All other materials produced by Defendant to Plaintiff, or vice versa, in discovery

WW.        All other materials received from non-parties pursuant to a third-party request for

production, subpoena duces tecum, FOIA request, or any other type of request

XX.        Defendant reserves the right to produce any exhibit(s) necessary for impeachment

and/or rebuttal.

**H.**        **Plaintiff's Witnesses.** The following is a list of individuals that Plaintiff may offer to

provide testimony at a trial of this matter:

1. Plaintiff John Doe

2. Dr. R. Chris Barden

3. Dr. Stan V. Smith

4. Noel Perry

5. Alyssa C. Rollock

6. Katherine L. Sermersheim

7. Ms. Erin Oliver

8. Mr. Jacob Amberger

9. Monica Soto Bloom

10, Elvin Uthupan

11. Captain Rodney Hutton

12. Executive Officer Craig Remaly

13. Lieutenant Taylor

14. Lieutenant Kyle Wilstatter

15. Lieutenant Adam Sheppard

16. Plaintiff John Doe's father

17. Plaintiff John Doe's mother

I.    **Defendant's Witnesses.**  The following is a list of individuals that Defendant may offer

to provide testimony at a trial of this matter:

1.    Plaintiff John Doe

2.    Alyssa Rollock

3.    Katherine Sermersheim

4.    Jacob Amberger

5.    Erin Oliver

6.    Monica Soto Bloom

7.    Melissa May / Redlawsk / Chester

8.    "Midshipman A"

9.    Noel Perry

10.    Rodney Hutton

11.    Craig Remaly

12.    Adam Sheppard

13.    Kyle Willstatter

14.     Representatives from Taylor University, including Scott Gaier

15.     Tyler Witzig

16.     Matthew Conaway

17.     Ralph Webb

18.     Paula Courtney

19.     A Representative from John's employers, following his suspension

20.     Lance Vanderberg

21.     Kevin Diller

22.     Steve Morley

23.     Bob Davis

24.     Darci Nurkkala

25.     Jesse Brown

26.     Jeff Wallace

27.     Scott Barrett

28.     John Doe's medical providers

29.     Elvin Uthuppan

30.     Plaintiff's father

31.     Plaintiff's mother

32.     Paige Cunningham

33.     Jane Doe

34.     Elvin Uthuppan

35.     Any witness necessary for impeachment or rebuttal

**J.**     **<u>Stipulation Regarding Pseudonym Status</u>.**

The parties stipulate that Plaintiff John Doe will proceed at trial using his real name and not using pseudonyms in the courtroom. The parties further stipulate that at trial the parties, counsel, and witnesses may refer to Plaintiff John Doe by his real name in the courtroom. Notwithstanding the forgoing, the Court's previous pseudonym order shall remain in full force and effect with regard to matters entered on the public docket. The parties shall confer on the use of other students' names, including Jane Doe.

**K.    <u>Binding Order.</u>**

This joint final pretrial order has been formulated after the parties conferred.  Reasonable opportunity has been afforded to counsel for corrections and additions prior to signing by the Court. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court or by Order of the Court to prevent manifest injustice. The pleadings will be deemed merged herein.

**L.    <u>Continued Cooperation.</u>**

The parties will continue to cooperate on other topics that may facilitate the upcoming trial. The parties are conferring on proposed stipulations regarding authenticity and facts.

**M.    <u>Amendments</u>.**

The parties do not anticipate any amendments to the pleadings.

**N.    <u>Settlement.</u>**

The parties have discussed settlement but have been unable to reach agreement. They will continue to negotiate and will advise the Court immediately if settlement is reached.

**O.    <u>Trial Date.</u>**

The case is set down for a trial beginning at 10:00 a.m. on April 24, 2023.  This Court originally reserved 5 days for trial. Defendant anticipates that the probable length of trial is 5

days. Plaintiff advises that given the number of witnesses and documents, he believes the probable length of trial is at least 8 days.

APPROVED:

| /s/ Philip A. Byler | /s/ William P. Kealey |
|---|---|
| Philip A. Byler (pro hac vice) | William P. Kealey (18973-79) |
| Nesenoff & Miltenberg LLP | Tyler L. Jones (34656-29) |
| 363 7th Ave 5th floor, | Stuart & Branigin, LLP |
| New York, NY 10001 | 300 Main St., Ste. 900 P.O. Box 1010 |
| Email: pbyler@nmllplaw.com | Lafayette, IN 47902-1010 |
| amiltenberg@nmllplaw.com | Email: wpk@stuartlaw.com |
| Telephone: 212-736-4500 | tlj@stuartlaw.com |
| Attorneys for Plaintiff | Telephone: 765-423-1561 |
|  | Attorneys for Defendant |

1554295.1

_____

MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT