# EXHIBIT A

## ADMISSIONS IN DEFENDANTS' ANSWER

1. Plaintiff John Doe ("John Doe") is a natural person who during the 2015-2016 school year, was a student at Defendant Purdue University ("Purdue") and a Navy ROTC midshipman living in Purdue's on-campus residence halls. (Def. Answer ¶¶ 4, 82.)

2. Purdue is a land grant university established by the State of Indiana and is located on a main campus in West Lafayette, Indiana and on three regional campuses in Indiana. Purdue has 13 colleges and schools. Purdue is audited by State of Indiana auditors, the beneficiary of state authorized bonds and the recipient of state and federal grants. Purdue received hundreds of millions of dollars of federal funding in 2016. (Def. Answer ¶¶ 5, 118.)

3. Alysa Christmas Rollock ("Vice President Rollock") is the Vice President of Ethics and Compliance at Purdue directs the University's system-wide ethics and compliance programs applicable to Purdue's four campuses. (Def. Answer ¶ 9.)

4. Katherine L. Sermersheim ("Dean Sermersheim") made the disciplinary decision in John Doe's case and has served as the primary decision maker for discipline of student-on-student sexual misconduct matters. (Def. Answer ¶ 10.)

5. John Doe told a Purdue Resident Assistant that he thought Jane Doe had attempted to commit suicide. From November 2015 to March 2016, Jane Doe made no reports to the university or to the police about any alleged sexual assault by John Doe. (Def. Answer ¶ 23.)

6. In April 2016, Jane Doe reported that John Doe had sexually assaulted her. Sexual Assault Awareness Month is recognized nationally in April. Purdue's sexual assault center CARE hosted events in April related to bystander intervention. Admitted that CARE promoted some events on its Facebook page. Among the posts that CARE shared on its

[1]

Facebook page was an article dated June 21, 2016 from *The Washington Post,* "Alcohol isn't the cause of campus sexual assault. Men are." Monica Soto Bloom was the Director of CARE and Title IX Coordinator in Spring 2016. (Def. Answer ¶ 24,)

7. On April 11, 2016, Dean Sermersheim issued a letter notifying John Doe that Purdue has been made aware of allegations, including sexual allegations, regarding John Doe's conduct toward another undergraduate student referred to herein as "Jane Doe" that if substantiated, might constitute a violation or violations of Defendant Purdue's *Anti-Harassment Policy (III, Ch. 1)*. (Def. Answer ¶ 25.)

8. Dean Semersheim's April 11, 2016, letter stated further that Purdue had elected to investigate the allegations in absence of a formal complaint and that Ms. Erin Oliver, Associate Director of Purdue's Office of Institutional Equity, and Mr. Jacob Amberger, Investigator in Purdue's Office of Institutional Equity, were appointed to investigate the matter. Dean Semersheim's April 11, 2016, letter directed John Doe to give a written response within ten calendar days of the date of Dean Semersheim's April 11, 2016, letter to the allegations that John Doe's conduct had violated Purdue's *Anti-Harassment Policy* and to refrain from discussing this matter or having any contact with Jane Doe. (Def. Answer ¶ 26.)

9. Defendant Dean Semersheim's April 11, 2016, letter included a two-page document entitled "Information for Student Respondents." (Def. Answer ¶ 27.)

10. The "Information for Student Respondents" document stated that: (i) the Investigator would be neutral; (ii) a support person could be brought by Respondent to any meeting with the Investigator; (iii) a Respondent would be told enough information about the allegations to enable him to respond; (iv) the privacy of both parties would be respected; (v) the Investigator would first interview the complaining party and once the Investigator understands

the allegations, the Respondent would be asked questions; (vi) the Interviewer would then interview other witnesses and review documentation deemed relevant; (vii) the Investigator would prepare a report that would be shared with the Dean of Students but not with the parties or the witnesses; (viii) the Investigator's report would make findings and recommend whether a violation of Defendant Purdue's *Anti-Harassment Policy* had occurred and what sanction was appropriate; (ix) the Dean of Students would chair a meeting of a three-person panel of the Advisory Committee on Equity; (x) each party would be given the opportunity separately to meet with the panel meeting in order to give the decision-maker (the Dean of Students) and the panel members the opportunity to meet with the parties and the Investigator after reviewing the Investigator's report; (xi) the panel members would make a recommendation to the Dean of Students but the determination would be left to the discretion of the Dean of Students; (xii) if the Dean of Students determines there has been a violation of Defendant Purdue's *Anti-Harassment Policy*, the Dean of Students would impose sanctions. (Def. Answer ¶ 28.)

11. Accompanying Defendant Dean Semersheim's April 11, 2016, letter was a one half-page document entitled "Notice of Allegations." (Def. Answer ¶ 29.)

12. The Notice of Allegations stated that: (i) Jane Doe and John Doe were in a dating relationship during the Fall 2015 semester and that in November 2015, Jane Doe stayed the night in John Doe's room in Tarkington Hall; (ii) Jane Doe woke up to John Doe's groping her while she was fully clothed and said to John Doe that this was not OK; (iii) John Doe then told Jane Doe that during another night in November 2015, while they were staying the night in Jane Doe's room, John Doe had penetrated her digitally while she was sleeping: (iv) Jane Doe was not aware of the incident in November 2015 while she was sleeping in her room, had not and did not consent to such sexual contact, and was upset when she was told about it; (v) John Doe expressed

[3]

feeling bad about the first time, but nevertheless had sexual contact with her the second time when she was asleep; (vi) Jane Doe became very upset and left John Doe's room; (vii) John Doe also went through Jane Doe's underwear without her permission and chased her down a hallway joking about tasering her; (viii) after Jane Doe broke up with John Doe, he would still go to Jane Doe's room unannounced and without an escort; and (ix) John Doe displayed little control over his temper in front of Jane Doe. (Def. Answer ¶ 30.)

13. The university's no contact directive did not allow John Doe in university buildings in which Jane Doe had classes and did not allow John Doe in the university dining hall most used by John Doe and Jane Doe. (Def. Answer ¶ 32.)

14. Within ten calendar days of Dean Semersheim's April 11, 2016, letter, John Doe submitted to Dean Sermersheim a written response to the allegations. (Def. Answer ¶ 33.)

15. As for Jane Doe's allegations, John Doe stated in his written response to Dean Sermersheim's April 11, 2016, letter that: (i) John Doe and Jane Doe were in a dating relationship from the Fall 2015 semester to the start of the Spring 2016 semester and were both in Navy ROTC; (x) (ii) Jane Doe's accusations against him were false and without merit; (iii) it was not true that, as claimed by Jane Doe, in November 2015 she had stayed in John Doe's room and woke up when John Doe was groping her; (iv) what happened was that in mid-December 2015, after Jane Doe had attempted to commit suicide, Jane Doe stayed the night in John Doe's room, slept on a futon with John Doe on the floor and John Doe's roommate on his bed above the futon, woke up when John Doe touched her knee, immediately became erratic and angry with John Doe and left the room; (v) it was not true that, as claimed by Jane Doe, in November 2015 John Doe digitally penetrated her while she was sleeping; (vi) it was not true that, as claimed by Jane Doe, Jane Doe became upset when John Doe told her about the alleged sexual contact; (vii) John

[4]

Doe never had sexual contact with Jane Doe while she was sleeping; (viii) instead, Jane Doe engaged in behavior inconsistent with having been sexually assaulted, texting John Doe over the Christmas holidays, including texting and talking with John Doe wishing him a Happy Christmas Eve, sending a package of homemade Christmas cookies to John Doe's family and inviting John Doe to her room at the start of the Spring 2016 semester; (ix) John Doe never went through Jane Doe's underwear without her permission but rather at times did laundry for Jane Doe, for which she was grateful; John Doe did not own a taser but did own a stun baton, yet never threatened Jane Doe with it; Jane Doe never formally broke up with John Doe, but the two saw each other less and less at the start of the Spring 2016 semester, as Jane Doe was distancing herself from John Doe, a choice he respected; and (xii) it was only after John Doe returned an item to Jane Doe's room in the Spring 2016 semester did Jane Doe say anything about John Doe not going to her room, after which he didn't. (Def. Answer ¶ 34.)

16.     John Doe in his written response to Dean Sermersheim's April 11, 2016, letter also provided additional information to show he had been falsely accused by Jane Doe: (i) John Doe and Jane Doe had a sexual relationship from October to December 2015, but all sexual activity ceased after Jane Doe attempted suicide on December 13, 2015; (ii) Jane Doe told John Doe that she had been raped in high school in Colorado and had attempted suicide twice while in high school; (iii) Jane Doe had frequently displayed a temper, which she tried to project on to John Doe as his problem; (iv) Jane Doe told John Doe that she contemplated running away from home and not returning to Purdue; (v) on the night in December 2015 of the suicide attempt, Jane Doe was extremely erratic, had destroyed her room by throwing objects everywhere, was crying and talking about how much she hated life and felt hopeless and was questioning whether she wanted to be in the Navy and at Purdue at all; (vi) the suicide attempt took place on the top of the parking

garage by the armory, which John Doe described in detail involving a ledge from which if Jane Doe fell or jumped it would likely be fatal; (vii) John Doe reported Jane Doe's suicide attempt to two Purdue Resident Advisors and a Scholarship Advisor, who filed reports with the University; (viii) John Doe took a suicide prevention course on February 16, 2016; and (ix) John Doe and Jane Doe continued to date in the month of January 2016, which included frequent texting and calling over the Winter Break, but thereafter, Jane Doe distanced herself from John Doe and started dating a Navy ROTC upperclassman shortly thereafter. (Def. Answer ¶ 35.)

17. On April 28, 2016, Purdue investigators Erin Oliver and Jacob Amberger met with John Doe and his supporter. To the investigators, John Doe provided text messages between John Doe and Jane Doe. covering the period December 23, 2015 to March 15, 2016; John Doe also provided a list of character witnesses to the investigators Amberger and Oliver. (Def. Answer ¶ 36.)

18. Purdue investigators prepared an investigation report, and on May 20, 2016, sent it to Dean Sermersheim. In accordance with Purdue's procedures at the time, John Doe was not given an opportunity to review the investigation report. (Def. Answer ¶ 37.)

19. On May 20, 2016, John Doe signed a formal acknowledgment of being placed on interim leave of absence from Navy ROTC; and on May 24, 2016, John Doe signed an authorization to release of information pertaining to the case to the Department of Naval Sciences at Purdue. John Doe was restricted from communicating at all with his fellow midshipmen about the case, allowing him to say to them only "I am on interim leave of absence pending a University investigation." (SJM 3: Def. Answer ¶ 38; SJM 44: John Doe 2, Authorization (PU 704); SJM 5: John Doe Dep tr 21-23.)

20. On May 26, 2016, Dean Sermersheim sent the Investigator's Report to the panel members. Neither Jane Doe nor John Doe was permitted to review the investigation report prior to the panel meeting. Admitted that the investigation report did not refer to "testimony" by John Doe relating to Jane Doe's purported suicide attempt.: (Def. Answer ¶ 39.)

21. On May 31, 2016, Dean Sermersheim sent a letter to John Doe, copied to Amberger and Oliver, informing John Doe of the scheduled "Panel Meeting" on June 6, 2016, at which John Doe was scheduled to appear between 2:00 PM to 2:30 PM. (Def. Answer ¶ 40.)

22. On June 6, 2016, Jane Doe did not appear in person before the Advisory Committee on Equity and Dean Sermersheim, but rather CARE Director Monica Bloom submitted a written statement Jane Doe. The three-person panel of the Advisory Committee on Equity and Dean Sermersheim never met and never heard any direct testimony from Jane Doe, nor did the Advisory Committee and Dean Sermersheim have the opportunity to ask any questions of Jane Doe. In Jane Doe's written statement, she specifically requested that John Doe be removed from the Navy ROTC program. (Def. Answer ¶ 41.)

23. On June 6, 2016, John Doe and his supporter met with Dean Sermersheim and the three-person panel of the Advisory Committee. The meeting was not recorded or transcribed. (Def. Answer ¶¶ 43-44.)

26. At the June 6, 2016, meeting with Dean Sermersheim and the Advisory Committee, John Doe denied Jane Doe's allegations. (Def. Answer ¶ 44.)

27. On June 14, 2016, Dean Sermersheim, sent a letter of that date to John Doe advising him that, after considering the information provided by John Doe, Jane Doe, the University Investigators and consulting with the three-member panel from the Advisory Committee on June 6, 2016, "**I [Dean Sermersheim] have made the determination that a**

[7]

**preponderance of the evidence does support a finding that your [John Doe's] conduct violated the *Anti-Harassment Policy*.**" (Bold in the original.) Dean Sermersheim's June 14, 2016, letter did not state any explanations or reasons for her finding. Dean Sermersheim's determination was made without Jane Doe personally appearing before the Dean and the Advisory Committee and thus without examination or cross-examination of Jane Doe. (Def. Answer ¶ 46.)

28. Dean Sermersheim's June 14, 2016, letter went on to state that Purdue does not tolerate harassment of any person in the workplace or educational environment and ordered the following sanctions against John Doe: (1) a suspension from Purdue commencing June 13, 2016, for one full academic year; (2) John Doe was to continue to have no contact with Jane Doe until she completes her current academic program; (3) as a condition of re-entry, John Doe would be required to complete a 90-minute bystander intervention training or equivalent program offered by the Vice President for Ethics and Compliance or by CARE; and (4) as a condition of re-entry, John Doe would be required to meet with Chris Greggila, Assistant Director of CARE, during the first semester of return. Included with Dean Sermersheim's June 14, 2016, letter was a document entitled "Re-Entry for Purdue University Students Separated from the University" providing re-entry instructions. (Def. Answer ¶ 47.)

29. Dean Sermersheim's June 14, 2016, letter finally advised John Doe that he could appeal her determination to the Vice President for Ethics and Compliance, Defendant Alysa Christmas Rollock, that the appeal must be in writing and filed within ten days of the issuance of the notification of the determination with all supporting materials and that the appeal must be received by Defendant Vice President Rollock by Friday, June 24, 2016, by e-mail or by hand delivery. (Def. Answer ¶ 48.)

30. On June 23, 2016, John Doe timely submitted an appeal of that date to Defendant Vice President Rollock. John Doe stated in his June 23, 2016, appeal document that Jane Doe's allegations of sexual assault were false, that he never penetrated Jane Doe while she was sleeping without her consent, digitally or otherwise, that the determination he did so was incorrect and contrary to the facts and that he was being suspended for something John Doe did not do and did not occur. (Def. Answer ¶ 49.)

31. John Doe's June 23, 2016, appeal document also stated that a suspension would cause significant harm, including the loss of his scholarship and participation in NROTC. John Doe's June 23, 2016, appeal document noted the great emotional toll that the process had taken on him causing great depression and anxiety, the concerns about whether the process would be fair all the while knowing that Jane Doe's allegations were false and the disruptions of all the friendships, he had developed given that he could not talk to friends in Navy ROTC about what really had happened. (Def. Answer ¶ 50.)

32. John Doe's June 23, 2016, appeal document further stated that his "rights to due process of law have been violated." John Doe's June 23, 2016, appeal document cited the points that: he "was never provided with the evidence that was supposed to support this allegation which prevented [him] from adequately preparing a defense to the false accusation"; that he had "also not been provided the evidence relied upon in making the finding against [him] in order to prepare and submit a proper appeal"; that at the June 6, 2016, meeting with the three-person panel of the Advisory Committee on Equity, two panel members by their own admission were not prepared at the meeting; that he had responded to everything that was asked of him, including providing ample documentation of his relationship with Jane Doe; that he had received a summary notification providing no basis for the determination. (Def. Answer ¶ 51.)

[9]

33.     On or about June 28, 2016, Defendant Vice President Rollock sent a letter of that date to John Doe stating that she had reviewed John Doe's appeal, Defendant Dean Sermersheim's letters to John Doe and Jane Doe's letter dated June 14, 2016. (Def. Answer ¶ 52.)

34.     According to Vice President Rollock's June 28, 2016, letter, because Dean Sermersheim had not included her reasoning in reaching her determination that found John Doe in violation of Defendant Purdue's *Anti-Harassment Policy*, Vice President Rollock was not able to issue a decision on John Doe's appeal and was directing Dean Sermersheim, by June 30, 2016, to revise her June 14, 2016, letters to include the factual basis for her determination and the sanctions imposed.  Vice President Rollock added that in light of what Dean Sermersheim issued in a revised determination, John Doe could supplement his appeal and John Doe could appeal by Sunday, July 10, 2016. (Def. Answer ¶ 53.)

35.     The very next day after Defendant Vice President Rollock's first appeal decision remanding the matter back to Dean Sermersheim, on June 29, 2016, Dean Sermersheim sent a letter to John Doe basically repeating her June 14, 2016, letter, only adding the following:

> Specifically, a preponderance of the evidence supports that:
>
> 1.     [Jane Doe] had fallen asleep on a futon with you on the floor beside her. She woke up and found that you inappropriately touched her over her clothing and without her consent by placing your hand above her knee, between her legs, and moved it up to her "crotch" areas; and On another occasion, while she was sleeping and without her consent, you inappropriately touched [Jane Doe] by digitally penetrating her vagina.
>
> The conduct described in the numbered paragraphs above constitutes "Sexual Violence" under the University's policy on Anti-Harassment. Additionally, I find by a preponderance of the evidence that [John Doe is] not a credible witness. I find by a preponderance of the evidence that [Jane Doe] is a credible witness.

(Def. Answer ¶ 54.)

36.     Dean Sermersheim's June 29, 2016, letter imposed the same sanction as stated in

her June 14, 2016, letter: (1) a suspension from Defendant Purdue commencing June 13, 2016, for one full academic year; (2) John Doe was to continue to have no contact with Jane Doe until she completes her current academic program; (3) as a condition of re-entry, John Doe would be required to complete a 90-minute bystander intervention training or equivalent program offered by the Vice President for Ethics and Compliance or by CARE; and (4) as a condition of re-entry, John Doe would be required to meet with Chris Greggila, Assistant Director of CARE, during the first semester of return. (SJM 30: Semersheim/Rollock 7, Sermersheim June 29, 2016, Letter (PU 603-607).)

37.  Dean Sermersheim: (i) issued the Notice of Investigation determining the allegations against John Doe which contained a No Contact Directive to John Doe and appointed Oliver and Amberger as the investigators for the complaint against John Doe; (ii) served as chair of the three-person panel of the Advisory Committee on Equity; (iii) issued an initial determination letter stating that she had determined John Doe responsible; and (vi) issued a revised determination letter finding John Doe responsible. (Def. Answer ¶ 60.)

38.  John Doe timely submitted an appeal dated July 10, 2021, to Vice President Rollock from Dean Sermersheim's re-issued determination and sanctions. John Doe began by referencing Vice President Rollock's June 28, 2021 letter directing Dean Sermersheim to provide the factual basis for her determination and asserting that Dean Sermersheim had failed to provide that factual basis. (Def. Answer ¶ 62.)

39.  John Doe's July 10, 2016, appeal document stated that he never had the opportunity to review the investigation report and thus could not address the allegations supposedly questioning his credibility, nor had he been permitted to respond to any "factual evidence." John Doe's July 10, 2016, appeal document stated: "Dean Sermersheim's unsubstantiated conclusion

[11]

that I am not a credible witness still has not been corroborated with any facts." John Doe's July 10, 2016, appeal document stated that he had provided the investigators with a list of over 30 names to substantiate the credibility of his character and integrity, but he could not defend himself against Dean Sermersheim's statements about his credibility if there was no factual evidence presented. Vice President Rollock in her deposition testimony confirmed that John Doe was not permitted to review the investigation report under Purdue's policies then in effect. (Def. Answer ¶ 63.)

40. John Doe's July 10, 2016, appeal document then discussed the point that the June 6, 2016, meeting with Defendant Dean Sermersheim and the three-person panel of the Advisory Committee on Equity was flawed at best. John Doe's July 10, 2016, appeal document asserted that a reasonable person would question the fairness of a meeting where two of the three panel members did not read the investigation report before the meeting and that a reasonable person would question whether they took seriousness of the importance of a process that has punitive and irreversible consequences. John Doe's July 10, 2016, appeal document further asserted that the attitude of the panel members was "one of overt skepticism and hostility." John Doe's July 10, 2016, appeal document asked, "what could possibly explain their attitude other than that they had prejudged the outcome and my (alleged) guilt?" (Def. Answer ¶ 64.)

41. John Doe's July 10, 2016, appeal document stated that at the beginning of his Fall 2015 semester, he had started the year in Navy ROTC and one of the issues discussed was the "zero tolerance" policy toward sexual harassment and that Jane Doe's accusations of sexual assault were false. John Doe's July 10, 2016, appeal document stated that one of Jane Doe's accusations was based on what John Doe had allegedly told her about digitally penetrating her. John Doe asked: "Why would I not only admit to something that didn't happen, but also knowingly admit to

something that would jeopardize my ROTC scholarship and future serving my country?" (Def. Answer ¶ 65.)

42. John Doe's July 10, 2016, appeal document stated that Jane Doe was possibly motivated to make false accusations against John Doe: to punish John Doe for having reported to the university Jane Doe's suicide attempt in December 2015, an attempt that could have been reported to Navy ROTC as well. John Doe's July 10, 2016, appeal document also stated that Jane Doe had started up in the Spring 2016 semester a relationship with an upperclassman who was a member of Navy ROTC and who made it plain he did not like John Doe. (Def. Answer ¶ 66.)

43. John Doe's July 10, 2016, appeal document asserted that Jane Doe behaved inconsistent with the sexual assault accusations. John Doe's July 10, 2016, appeal document asserted that after the relationship ended, Jane Doe contacted John Doe, at times seeking advice, which Jane Doe would not do had there been any sexual assaults. John Doe's July 10, 2016, appeal document asserted that he had provided text evidence of these contacts. John Doe's July 10, 2016, appeal document asked: "If I had sexually violated [Jane Doe], why would she continue to initiate contact and even seeking my advice?" (Def. Answer ¶ 67.)

44. John Doe's July 10, 2016, appeal document demanded to know what was the particular evidence used to determine Dean Sermersheim's finding that the preponderance of the evidence supported John Doe not being a credible witness and Jane Doe being a credible witness. John Doe's July 10, 2016, appeal document stated that he had been denied review of the evidence that supposedly supported the factual basis for Dean Sermersheim's determination. John Doe's July 10, 2016, appeal document requested that the determination and sanctions be set aside and that Purdue provide to him "all documents and materials relating to his official file at Purdue University, including but not limited to . . . all materials, independent investigator's reports, and

all files, letters, and documentation relating to the investigation", "all handwritten notes that have been generated by all parties representing the University" and "a copy of Ms. Erin Oliver and Mr. Jacob Amberger's report." (Def. Answer ¶ 68.)

45. On July 21, 2016, Vice President Rollock sent a one-page letter of that date to John Doe issuing her second appeal decision. Defendant Vice President Rollock's July 21, 2016, appeal decision stated that after reviewing (i) John Doe's appeal, (ii) Defendant Dean Sermersheim's April 11, 2016, letter notifying John Doe of the University's decision to investigate allegations regarding his conduct toward Jane Doe, (iii) John Doe's written response to the Notice of Allegations, (iv) the investigation report, (v) Jane Doe's e-mail message of June 5, 2016, and (vi) Dean Sermersheim's letters of June 14, 2016, and June 29, 2016, Vice President Rollock was upholding Dean Sermersheim's determination and sanctions. Vice President Rollock in her deposition testimony confirmed that John Doe had not seen the investigation report and had not been copied on Jane Doe's June 5, 2021 document. (Def. Answer ¶ 70.)

46. Vice President Rollock's July 21, 2016, appeal decision added that in reviewing the appropriateness of the sanctions imposed, she had considered the effects on Jane Doe's educational environment and the threat posed to the safety of Jane Doe and the university community. According to Vice President Rollock's July 21, 2016, appeal decision, the seriousness of John Doe's misconduct supported the sanctions ordered by Dean Sermersheim. \ (Def. Answer ¶ 71.)

47. On July 25, 2016, Vice President Rollock sent an e-mail letter to John Doe, copied to Ms. Tandra Foster, Associate Legal Counsel at Purdue, concerning John Doe's request for his education records. Vice President Rollock's July 25, 2016, e-mail letter quoted John Doe's July 10, 2016, letter appeal requesting "all documents and materials relating to his official file at

[14]

[Defendant] Purdue University, including but not limited to . . . all materials, independent investigator's reports, and all files, letters, and documentation relating to the investigation", "all handwritten notes that have been generated by all parties representing the University" and "a copy of Ms. Erin Oliver and Mr. Jacob Amberger's report." Vice President Rollock's July 25, 2016, e-mail letter then stated "[b]y a copy of this email to Tandra Foster, Associate Legal Counsel," Vice President Rollock was alerting Ms. Foster to John Doe's records request and that Ms. Foster would process John Doe's request. (Def. Answer ¶ 74.)

48. The Navy ROTC called John Doe before a Performance Review Board that convened on August 10, 2016, and John Doe was disenrolled from the Navy ROTC at Purdue. (Def. Answer ¶ 76.)

49. In August 2016, the Office for Civil Rights ("OCR") in the U.S. Department of Education notified Purdue that OCR was beginning an investigation of a complaint that "in the 2015-2016 academic year, the University subjected a female undergraduate student . . . to discrimination based on sex" and the Purdue Exponent ran an article that Purdue was to have a "fully operational sexual assault center." Also, Purdue made amendments to its procedures for sexual misconduct investigations, including permitting respondents to review the investigation report. (Def. Answer ¶ 77.)

50. On October 11, 2016, 93 days after John Doe's first request was made for production of records, Tandra Foster replied, stating that John Doe and his parents could go to Purdue to review the documents during a scheduled time, of which only four options were made available by Purdue, on the mornings and afternoons of October 19 and October 20, more than a full week after Tandra Foster's response. (Def. Answer ¶ 79.)

51. On October 20, 2016, John Doe and his mother were permitted at Purdue to review

[15]

documents that were made available and to take handwritten notes. The investigation report provided to John Doe and his mother was redacted with respect to third-party students. The investigation report was not provided to John Doe prior to the June 6, 2016, panel meeting. (Def. Answer ¶ 80.)