# EXHIBIT H

Page 1

```
 1               UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF INDIANA
 2                    HAMMOND DIVISION
 3
 4    JOHN DOE,                    )
                                   )
 5         Plaintiff,              ) CIVIL ACTION NUMBER
                                   ) 2:17-cv-33-JPK
 6         vs.                     )
                                   )
 7    PURDUE UNIVERSITY, PURDUE    )
      UNIVERSITY BOARD OF          )
 8    TRUSTEES, MITCHELL ELIAS     )
      DANIELS, JR., in his         )
 9    official capacity as         )
      President of Purdue          )
10    University, ALYSA            )
      CHRISTMAS ROLLOCK, in her    )
11    official capacity at         )
      Purdue University,           )
12    KATHERINE SERMERSHEIM, in    )
      her official capacity at     )
13    Purdue University,           )
                                   )
14         Defendants.             )
15
16
17       VIDEOCONFERENCE DEPOSITION OF RODNEY HUTTON
18
19       The deposition upon oral examination of
      RODNEY HUTTON, a witness produced and sworn before me,
20    Megan M. Bowman, Notary Public in and for the County of
      Marion, State of Indiana, taken on behalf of the
21    Defendants, at the offices of Stuart & Branigin LLP,
      300 Main Street, Lafayette, Tippecanoe County, Indiana,
22    on Wednesday, May 20, 2020, scheduled to commence at
      8:30 a.m., pursuant to the Federal Rules of Civil
23    Procedure with written notice as to time and place
      thereof.
24
25
```

```
                                                          Page 2
 1           A P P E A R A N C E S
 2  FOR THE PLAINTIFF:
 3       Philip A  Byler
         NESENOFF & MILTENBERG LLP
 4       363 Seventh Avenue
         Fifth Floor
 5       New York, NY 10001
         212 736 4500
 6       pbyler@nmllplaw com
 7
    FOR THE DEFENDANT(S):
 8
         Tyler L  Jones
 9       William P  Kealey
         STUART & BRANIGIN LLP
10       300 Main Street
         Suite 900
11       P O  Box 1010
         Lafayette, IN 47902-1010
12       765 423 1561
         tlj@stuartlaw com
13       wpk@stuartlaw com
14
    FOR THE U S  NAVY:
15
         John Matuszak
16       U S  NAVY - NAVAL SERVICE TRAINING COMMAND
         2601 A Paul Jones Street
17       Building 1
         Great Lakes, IL 60088-2845
18       847 707 5057
         john matuszak@navy mil
19
20
21
22
23
24
25
```

Page 14

1  A   In this case -- or in the described scenario that
2      you mentioned, based on my dual requirements as a
3      -- as under Purdue University Title IX
4      requirements, that investigation was referred to
5      Purdue University.
6  Q   Okay.  Thank you.  Are you familiar with someone by
7      the name of Craig Remaly -- or Remaly?
8  A   Yes.
9  Q   Who was he -- or who is he?
10 A   He was my executive officer.
11 Q   Thank you.  As executive officer, what were his
12     responsibilities during the time in question?
13 A   As executive officer, he was responsible to me for
14     oversight and training of staff and midshipmen.
15 Q   Are you familiar with someone by the name of Megan
16     Redlawsk or perhaps Megan Chester?
17 A   Yes.
18 Q   Who is she?
19 A   She was in a staff lieutenant position.
20 Q   With the Purdue NROTC?
21 A   Yes.
22 Q   Do you know what her responsibilities would have
23     been during the time in question?
24 A   During the time in question, she was a company
25     officer responsible to me for a training of a



Page 27

1  Q  Would that be with a lieutenant or with a higher
2     ranking midshipman?
3  A  Generally with a higher ranking midshipman or a
4     tutor provided by the NROTC program.
5  Q  Thank you, sir.  And if you know, does the GPA
6     requirement, is that solely for a student's major
7     or is it for all of their classes including Naval
8     science classes?
9  A  It applied to their full-semester GPA.
10 Q  Thank you, sir.  Do you know who ▓▓▓▓▓▓▓▓▓'s
11    company officer was at the time this letter was
12    issued?
13 A  I do not recall.
14 Q  What did you mean when you said -- or when the
15    letter says, "Meet all applicable program standards
16    by the end of the Spring of 2016 semester."
17       What does the phrase "all applicable program
18    standards" refer to?
19 A  That would be restoring his GPA for the semester
20    and cumulative above the program standards.
21 Q  It says in paragraph 3, for the record, "Failure to
22    make academic progress is cause for convening a
23    Performance Review Board with disenrollment a
24    possible outcome.  Meeting NROTC standards will
25    remove you from this status."

8 (Pages 26 - 29)

Page 49

1  I will introduce into the record as Exhibit -- I
2  believe we're on G.
3     (Defendant's Exhibit G was marked for
4  identification.)
5 Q  This should, for identification purposes, be Bates
6  number S -- NSTC-0011 through NSTC-0012.  I'll give
7  everyone a moment to get to that.  And, Mr. Hutton,
8  if you please review it.
9 A  I have.
10 Q  Thank you, sir.  Sir, are you familiar with this
11  document?
12 A  I am.
13 Q  Have you seen it before?
14 A  I have.
15 Q  Would you please identify it for the record?
16 A  This is the record from the senior member of the
17  Performance Review Board to me as the commanding
18  officer reporting on the execution of the
19  Performance Review Board and the information found.
20 Q  Understood.  And for the record, was the senior
21  member Commander Craig Remaly?
22 A  Yes.
23 Q  Thank you.  For identification purposes, can you
24  please identify the two other members of the PRB?
25 A  Major Mike McDowell was my marine option instructor

13 (Pages 46 - 49)

Page 50

1   and Lieutenant Leonard Taylor was a staff
2   instructor company officer.
3 Q  Thank you.  Were these all members of the Purdue
4   NROTC?
5 A  Yes.
6 Q  Typically, sir, what do you do after you receive
7   one of these reports in your office?
8 A  I review the findings, I review the facts, I review
9   the requirements.  I would typically review them
10  and depending on the case, may discuss them with
11  Naval Service Training Command.  And then I would
12  make a decision.
13 Q  Do you recall if that's what you did in this case?
14 A  Yes.
15 Q  Did you talk to Naval Service Training Command
16  about this case?
17 A  Yes.
18 Q  When did you talk to them, if you know?
19 A  I would have spoken to them on multiple occasions
20  to include the initial reports through the
21  determination of the -- the determination of my
22  decision, then forwarding it to Naval Service
23  Training Command for their approval and action.
24 Q  Thank you, sir.  Sir, I note that on the second
25  page it has some information about Mr. ▓▓▓▓'s

14 (Pages 50 - 53)

```
                                                    Page 54
 1      MR. MATUSZAK:  It does call for a legal
 2   conclusion, the last question.  I couldn't get my
 3   mute button off.  But so I'm objecting to the
 4   question as it calls for a legal conclusion as to
 5   who the final disenrollment party is.  But for the
 6   record, it's the secondary enrollment.
 7      MR. JONES:  Understood.  Thank you.
 8 BY MR. JONES:
 9 Q  Sir, I want you to turn to the second page if you
10   could?
11 A  Yes.
12 Q  You'll see it says at the very top a box that says,
13   "Evaluate Future Acceptability for Officer
14   Programs."
15      Do you see that?
16 A  Yes.
17 Q  And you'll see there are five boxes there and they
18   range from "highly recommend" to "definitely NOT"
19   -- "not" in all capital letters -- "recommend."
20   And then in parentheticals, "Must provide
21   justification."
22      Do you see that?
23 A  Yes.
24 Q  What does this box refer to?
25 A  That is my assessment of whether he should be later
```

```
                                                    Page 55
 1   brought into an officer program.
 2 Q  Understood.  If you know, why do you fill this out?
 3 A  I do not recall specifically.
 4 Q  Okay.  Do you know why you checked the box
 5   "definitely NOT recommended"?
 6 A  That is my assessment of the student.
 7 Q  How did you come to that assessment?
 8 A  Based on my observation of the student.
 9 Q  What observations led you to check that box?
10 A  Discussions and reviews of events and his
11   performance.
12 Q  Does that include a determination that he sexually
13   assaulted ▮▮▮▮▮▮▮▮?
14      MR. BYLER:  Objection.
15 Q  You can answer.
16 A  I do not recall.
17 Q  Thank you.  Do you know if you would have written
18   notes or had any paper notes about how you came to
19   that decision?
20 A  I do not recall.
21 Q  Thank you.  And just so I understand this record
22   better, when it says, "Must provide justification,"
23   what does it mean by that, if you know?
24 A  That I have to justify that recommendation.
25 Q  Okay.  Sir, if you could pull out what's marked as
```

15 (Pages 54 - 57)

Page 71

1  what number -- that letter you gave it, but it was
2  NSTC-0011 through -0014.
3      MR. JONES:  Phil, is this one of your exhibits?
4      MR. BYLER:  It was one of your exhibits.
5      MR. JONES:  Okay.
6      MR. BYLER:  I don't know whether it was H or I,
7  but the first page is -11.
8      MR. JONES:  -11.  Okay.
9      THE WITNESS:  I got it.
10     MR. JONES:  Got it.
11 BY MR. BYLER:
12 Q  Okay.  What's the date of this document?
13 A  It's dated 10 August.
14 Q  Okay.  And is this the memo that records the
15    Performance Review Board's decision?
16 A  Yes.
17 Q  Okay.  And on the second page, do you recognize --
18    what is it -- Commander Remaly's signature?
19 A  I do.
20 Q  Okay.  And do you recognize Major McDowell and
21    Lieutenant Taylor's signatures?
22 A  I do.
23 Q  Okay.  Now, is there listed the enclosures with the
24    Performance Review Board on the first page, 12
25    items?

Page 72

1 A  Yes.
2 Q  Okay.  And in those 12 items are the University
3    Investigator's Report, Final Determination from the
4    Dean of Students, Midshipman ▆▆▆'s Statement of
5    Appeal of Final Determination, and University
6    Response to Midshipman ▆▆▆'s Appeal.
7      That was before the Performance Board?
8 A  They are enclosures to the report so they would
9    have had to have been done.
10 Q  Now, go up to item 3 in that listing.  You see
11    "Email agreeing to a delay in Performance Review
12    Board proceedings"?
13 A  Yes.
14 Q  Does that refresh your recollection that there was
15    indeed a delay because of the appeal that ▆▆▆▆▆▆
16    ▆▆▆ made in the university disciplinary case?
17 A  Yes.  There was a delay for the purpose of ensuring
18    the university process was adequately completed.
19 Q  Okay.  Now, listed here is the University
20    Investigator Report; correct?  As what was before
21    the Performance Review Board?
22 A  I'm sorry.  Can you restate that, sir?
23 Q  Listed here as number 9 is the University
24    Investigator Report; correct?
25 A  That is correct.

Page 73

1 Q  Okay.  Is there listed here any other
2    investigator's report?
3 A  No indication of a second investigative report.
4 Q  Okay.  Let's go then to a document which was marked
5    to be shown to you, but I don't know if it was, the
6    Bates stamp is NSTC-0042.
7 A  I have that, sir.
8 Q  Do you have that page now?
9 A  I do.
10 Q  Okay.  And this document is an authorization of
11    release of information; correct?
12 A  Yes.  It states, "I, ▆▆▆▆▆▆▆▆, hereby
13    authorize the release of all information pertaining
14    to investigation and corresponding case concerning"
15    -- blank -- "and ▆▆▆▆▆▆▆ to the Department
16    of Naval Sciences, Purdue University."
17 Q  Okay.  And this is dated May 24th, 2016?
18 A  Correct.
19 Q  Okay.  And the second paragraph can you read?
20 A  Second paragraph, "This release serves to allow the
21    Department of Naval Sciences, Purdue University, to
22    remain fully informed about my academic career at
23    Purdue University, including, but not limited to
24    any disciplinary, scheduling, and housing matter."
25 Q  Okay.  And there's a signature there for ▆▆▆▆▆