# EXHIBIT X

```
                                                            Page 1

 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
 2                      HAMMOND DIVISION
 3                  CASE NO. 2:17-cv-33-JPK
 4    JOHN DOE,                            )
                                           )
 5         Plaintiff,                      )
                                           )
 6         -vs-                            )
                                           )
 7    PURDUE UNIVERSITY, PURDUE            )
      UNIVERSITY BOARD OF TRUSTEES,        )
 8    MITCHELL ELIAS DANIELS, JR.,         )
      in his official capacity as          )
 9    President of Purdue                  )
      University, ALYSA CHRISTMAS          )
10    ROLLOCK, in her official             )
      capacity at Purdue University,       )
11    KATHERINE SERMERSHEIM, in her        )
      official capacity at Purdue          )
12    University,                          )
                                           )
13         Defendants.
14
15              DEPOSITION OF JACOB AMBERGER
16
17       The ZOOM deposition upon oral examination of JACOB
      AMBERGER, a witness produced and sworn before me,
18    Clarice H. Howard, CCR-Ky, Notary Public in and for the
      County of Boone, State of Indiana, taken on behalf of
19    the Plaintiff, on Tuesday, August 25, 2020, scheduled
      to commence at 8:00 a.m., pursuant to the Federal Rules
20    of Civil Procedure with written notice as to time and
      place thereof.
21
22
23
24
25
```

```
                                    Page 2
 1            A P P E A R A N C E S
 2
 3     FOR THE PLAINTIFF:
 4         Philip A. Byler
           NESENOFF & MILTENBERG LLP
 5         363 Seventh Avenue
           Fifth Floor
 6         New York, New York 10001
           1.212.736.4500
 7         pbyler@nmllplaw.com
 8
       FOR THE DEFENDANTS:
 9
           Tyler L. Jones
10         STUART & BRANIGIN, LLP
           300 Main Street
11         Suite 900.
           Lafayette, Indiana 47902-1010
12         1.765.423.1561
           tlj@stuartlaw.com.
13
14
15
16
17
18
19
20
21
22
23
24
25
```





Page 25

```
 1  A   I do.  Actually it starts with a down arrow hill.
 2      I think it's downhill maybe since the suicide
 3      attempt in December is what that is.  My arrow is
 4      not very good.
 5  Q   Thank you for the clarification because I now see
 6      it is an arrow downhill.  Okay.  So the
 7      relationship went downhill after a suicide attempt
 8      in December is what your note means?
 9  A   Yes.
10  Q   And                    told you about the suicide
11      attempt in your interview of him on April 28?
12  A   Yes.
13  Q   Do you recall ever after you interviewed Mr.        ,
14      checking the University records for any formal
15      report of a suicide attempt?
16  A   I do not recall if I specifically did.  I do know
17      there was information or we found information that
18      kind of gave us a timeline or date when that was
19      reported.
20  Q   I'm sorry, I'm not quite sure I understand.  What
21      do you mean by timeline in your answer?
22  A   By timeline, he said sometime in January he
23      reported this.  So we just researched it to see
24      when that was -- specifically it would have been
25      reported.
```

7 (Pages 22 - 25)

Page 26

1  Q   Were you able to find any University report on a
2      University form by Mr. ▮?
3  A   There was a report through the University system on
4      a University form.  I do not remember if it was
5      directly from him or if it was from someone -- I
6      believe it was from someone that he had reported it
7      to.  And then that person reported it to the
8      University.
9          I do not recall if he directly reported it to
10     the Dean of Students office or wherever that report
11     would go.
12 Q   Okay.  Now, there's a line on that first page, is
13     there not, between the first two subjects and the
14     next subject on 67?
15 A   There is, yes.
16 Q   And you placed that line there?
17 A   Yes, I did.
18 Q   Was there any reason?
19 A   That's my way of separating kind of sections in my
20     notes.
21 Q   Now, the next line says touching several days after
22     suicide attempt; do you see that?
23 A   Yes, I did.
24 Q   Now, I want to just -- I'm going to read what's
25     here because it's important and ask you if you

8 (Pages 26 - 29)



Page 67

1  A  Yes, it is.
2  Q  Now, I'm going to look at the first sentence here.
3      ▬▬▬ reported that around December 13, 2015, she
4      made statements to him that led him to believe that
5      ▬▬▬▬▬▬▬▬ was considering suicide.
6         Now, stop there.  Now, that is what is written
7      here, correct?
8  A  Yes.
9  Q  Didn't ▬▬▬▬▬▬▬▬ tell you that, in fact,
10     ▬▬▬▬▬▬▬▬ attempted suicide by throwing
11     herself off the parking lot next to the ROTC
12     armory?
13 A  I do not recall if he specifically shared that or
14    not.
15 Q  Well, there's a difference between on one hand
16    saying a person is considering suicide and on the
17    other hand, a person attempting suicide.
18       MR. JONES:  Is that a question, Phil?
19       MR. BYLER:  Yeah.
20 BY MR. BYLER:
21 Q  There's a difference, is there not, between saying
22    a person is considering suicide and a person
23    attempting suicide?
24 A  Yes.
25 Q  Let me just look at the middle of that paragraph on

18 (Pages 66 - 69)

Page 88

1    information or statements that were given during
2    the interviews.  So it's kind of an aggregate of
3    everything we gathered, not just specifically that
4    one allegation.
5  Q  Well, she got wrong the timing of the alleged
6    incident of touching her, did she not?
7       MR. JONES:  Object to the form.  You can
8    answer, Jake.
9  A  When she thought the incident took place was late
10    November, which is different from what Mr. ▮▮▮▮
11    shared.
12 Q  In your credibility determination, did you take
13    into account the suicide attempt of Ms. ▮▮▮▮▮t?
14 A  No.
15 Q  Did you, in your credibility determination, take
16    into account the gap in time between what she said
17    was November of 2015 when the alleged incident
18    occurred and April of 2016 when she made a
19    complaint?
20 A  That's considered, I will say.  It's part of it,
21    but I don't know what weight it would have had on
22    this determination.
23 Q  Did you consider any aspect of the family
24    relationships that ▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮
25    ▮▮▮▮▮▮▮ had?