UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE,<br>        Plaintiff,<br><br>v.<br><br>PURDUE UNIVERSITY, *et al.*,<br>        Defendants. | )<br>)<br>)<br>)  CAUSE NO.: 2:17-CV-33-JPK<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff John Doe's "Motion to Recuse" the undersigned pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455. [DE 257]. The motion is fully briefed. For the reasons described below, the motion is denied.

## BACKGROUND

John filed this lawsuit alleging that his constitutional and federal statutory rights were violated when Purdue University suspended him after an investigation into a former girlfriend's accusation of sexual misconduct. The underlying facts are set forth in previous opinions and orders in the case.[1] For present purposes, the Court briefly sets forth relevant procedural history.

The previous magistrate judge assigned to the case dismissed John's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally sufficient claim for relief. In an opinion and order authored by then-Judge Amy Coney Barrett, the Seventh Circuit Court of Appeals reversed the dismissal order, finding that John had alleged facts sufficient to support claims under both the Fourteenth Amendment and Title IX. *See Doe v. Purdue Univ.*, 928 F.3d

---

[1] *See Doe v. Purdue Univ.,* No. 2:17-CV-33-JPK, 2022 WL 3279234 (N.D. Ind. Aug. 11, 2022)*, on reconsideration in part,* No. 2:17-CV-33-JPK, 2023 WL 1991698 (N.D. Ind. Feb. 14, 2023)*; Doe v. Purdue Univ.*, No. 2:17-cv-33-JPK, 2020 WL 2542674 (N.D. Ind. May 19, 2020); *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754 (N.D. Ind. 2017), *rev'd*, 928 F.3d 652 (7th Cir. 2019).

652 (7th Cir. 2019). Upon remand for further proceedings, the case was reassigned to the undersigned magistrate judge, with the consent of the parties. *See* 28 U.S.C. § 636(c); [DE 40, 41].

A protracted discovery period ensued, during which numerous motions were filed and ruled upon, including another motion to dismiss. This was followed by a motion for judgment on the pleadings and cross-motions for summary judgment. On August 11, 2022, the undersigned entered an opinion and order granting summary judgment in favor of Purdue[2] on John's Fourteenth Amendment due process claim, while allowing John's Title IX claim to move forward to trial. [DE 206]. John filed a motion for reconsideration and, in the alternative, to permit an interlocutory appeal. Oral argument was held. In an opinion and order entered on February 14, 2023, the undersigned denied reconsideration of John's due process claim, concluding that John had not identified a manifest error of fact or law, and that the case did not meet the applicable standard for certification of an interlocutory appeal. [DE 224]. John then filed a petition for writ of mandamus with the Seventh Circuit, seeking to challenge the due process ruling before trial on the Title IX claim. *In re: John Doe*, Case No. 23-1310 (7th Cir. Feb. 17, 2023). The Seventh Circuit denied John's petition on March 6, 2023. *Doe*, Case No. 23-1310 (Doc. 3).

The undersigned also held a settlement conference on February 13, 2023, which was unsuccessful. A trial on John's Title IX claim was set for April 24, 2023, and the pretrial conference was held on March 14, 2023. The trial date was vacated, however, when the parties filed a joint motion to refer the case to a different magistrate judge for another settlement conference. That second settlement conference was held on June 7, 2023, but no settlement was reached. On July 5, 2023, the Court granted a motion to withdraw the appearance of one of John's attorneys at a telephonic status conference. On July 9, 2023, John filed the instant recusal motion.

---

[2] References to Purdue University include the individual defendants as well.

**DISCUSSION**

John argues the undersigned should be recused because his "impartiality might reasonably be questioned" (28 U.S.C. § 455(a)), and he has a "personal bias or prejudice" (28 U.S.C. § 144) either against John or in favor of Purdue. [DE 257-1 at 2]. The asserted grounds for this contention include: (1) the undersigned's rulings on various motions filed in the case, especially the summary judgment ruling in favor of Purdue on John's due process claim; (2) the undersigned's handling of various discovery disputes, especially one involving the deletion of Snapchat data [DE 133]; (3) statements purportedly made by the undersigned during the February 13, 2023, settlement conference; and (4) John's mandamus petition[3] asking the Seventh Circuit to remand the case to an Article III District Judge for reconsideration of summary judgment on his due process claim and for trial.[4]

John's recusal motion is brought pursuant to two statutory provisions: 28 U.S.C. § 455, and 28 U.S.C. § 144. *See* [DE 257]. Section 455 provides in relevant part as follows:

> § 455. Disqualification of justice, judge, or magistrate judge
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he as a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ….

---

[3] John's Petition For A Writ of Mandamus is not part of the record, but since John relies on it in his recusal motion, the undersigned cites to it here. *See In re: John Doe*, Case No. 23-1310, Doc. 1-1 (7th Cir. Feb. 17, 2023).

[4] In addressing each matter, the undersigned will disregard inflammatory accusations in John's counsel's declaration made without factual content. *E.g.,* [DE 257-1 at 2 (asserting that the undersigned "has made common cause with Purdue counsel to frustrate Plaintiff John Doe's effort to vindicate his due process and Title IX rights and to undermine and eviscerate [current Supreme Court] Justice Barrett's opinion in this case"); *id.* at 4 (asserting that the history of the case shows the undersigned "kowtowing to Purdue and its implacable public rejection of Justice Barrett's nationally significant opinion"); *id.* at 7 (asserting that the undersigned's rulings are "propaganda pieces for Purdue")].

Section 144 is similar, and provides as follows:

> § 144. Bias or prejudice of judge
>
> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Before addressing the substance of the allegations, the Court first turns to a threshold matter for the § 144 challenge, timeliness. A § 144 affidavit is untimely unless filed "at the earliest moment after [the movant acquires] knowledge of the facts demonstrating the basis for [] disqualification." *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993). John's allegations of bias are premised on a series of events over the four years the undersigned has overseen this case, most recently the February 13, 2023, settlement conference, and John's February 17, 2023, petition for a writ of mandamus. Even granting John the benefit of the doubt, by counting from the most relevant recent event,[5] the motion is almost five months late. *See United States v. Betts-Gaston*, 860 F.3d 525, 538 (7th Cir. 2017) ("The two affidavits defense counsel filed address events . . . four months before the filing. Those allegations were not timely."); *Sykes*, 7 F.3d at 1339 (affidavit filed "[t]wo months after the allegedly prejudicial statement" was untimely); *United States v.*

---

[5] Counsel's affidavit also discusses the July 5, 2023 status conference, during which the undersigned mentioned a July 2, 2021, opinion imposing sanctions against John for violating discovery orders. *See* [DE 257-1, ¶ 20]. While John and counsel restate their disagreement with the sanctions, there were no new facts at the July 5 conference "demonstrating the [alleged] basis for . . . disqualification." *Sykes*, 7 F.3d at 1339; *see also* [DE 260 ¶ 6] (John's argument that the motion is timely because of "facts giving rise to the recusal motion" occurring, most recently, in February 2023).

4

*Barnes*, 909 F.2d 1059, 1072 (7th Cir. 1990). It appears that John's § 144 challenge comes too late.[6] However, the Court will address the substance of John's motion in the context of both § 455 and § 144.

The Supreme Court considered both § 455 and § 144 in *Liteky v. United States,* 510 U.S. 540 (1994). The Court held that the "impartiality" language in § 455(a) amounts to a "'catchall' recusal provision, covering both 'interest or relationship' and 'bias or prejudice' grounds" for recusal. *Id.* at 548. Specific "interest or relationship" grounds for recusal are set out in subsections (b)(2)-(b)(5) of the statute, but none of those have been raised as a basis for recusal here. Instead, John alleges bias or prejudice as the reason the undersigned should recuse from the trial of this case. "Bias or prejudice" as a ground for recusal is expressly mentioned in § 455(b)(1) and § 144. Because the phrase "bias or prejudice" in § 144 "mirrors the language of" § 455(b)(1), *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1025 (7th Cir. 2000), "judicial interpretations of 'personal bias or prejudice' under § 144 [are] equally applicable to § 455(b)(1)." *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985).

John cites only subsection (a) of § 455 as a basis for his § 455 argument, and does not cite subsection (b)(1). As noted, the Supreme Court has interpreted the impartiality standard in § 455(a) as encompassing the concept of "bias or prejudice" expressly found in § 455(b)(1). *See Liteky,* 510 U.S. at 553 n.2 (explaining that "subsection (a) has a broader reach than subsection (b), but that

---

[6] Further, the statute requires the affidavit to be "accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144. There is commentary in counsel's affidavit about "not relish[ing]" making the motion and doing so based on counsel's "professional opinion." [DE 257-1 ¶ 8]; *see also* [*id.* ¶ 3 (stating that the motion "is being made upon serious reflection")]. But counsel did not file a good faith certificate. Because § 144 is "a powerful tool that could easily be abused," its procedural requirements are strictly enforced. *United States v. Barr*, 960 F.3d 906, 919 (7th Cir. 2020). As a result, the failure to file the required good faith certification may be alternative grounds for denying the motion. *See Betts-Gaston*, 860 F.3d at 537-38 ("There is no [ ] certificate [from counsel of record] here. Counsel filed h[is] own affidavit, which is not sufficient.").

5

the provisions obviously have some ground in common as well, and should not be applied inconsistently" (internal quotation marks and citation omitted)). In short, for the same reasons that recusal is or is not required under § 455(b)(1) and § 144, it is or is not required under § 455(a). Accordingly, the undersigned's discussion going forward applies to all three recusal provisions. *See id*. at 548 (explaining that subsections (a) and (b)(1) of § 455 "br[ing] into § 455 elements of general 'bias and prejudice' recusal that had previously been addressed only by § 144").

"Bias or prejudice" under all three recusal provisions is "to be evaluated on an *objective* basis." *Id.* (emphasis in original). In general, what matters "is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal [is] required whenever impartiality might reasonably be questioned." *Id*. at 548 (quoting *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847 (1988)). For a party "to successfully seek [a judge's] recusal, he must show an objective, disinterested observer fully informed of the reasons for seeking recusal would entertain a significant doubt that justice would be done in the case." *United States v. Barr*, 960 F.3d 906, 919 (7th Cir. 2020) (internal quotation marks and citations omitted). That analysis is properly performed by the judge whose disqualification is sought. *See United States v. Perez*, 956 F.3d 970, 974 (7th Cir. 2020) (noting that § 455 expressly refers to the judge "disqualify[ing] himself"); *Watford v. LaFond*, 725 F. App'x 412, 414 (7th Cir. 2018) (rejecting the argument that § 144 "required the district judge to refer the recusal motion to a different judge"); *Balistrieri*, 779 F.2d at 1199-1200, 1202-03; *Cohee v. McDade*, 472 F. Supp. 2d 1082, 1084 (S.D. Ill. 2006) (citing *Balistrieri*).

John's argument implicates the "extrajudicial source" doctrine. That doctrine, in its "classic formulation," required that, for the alleged bias and prejudice to be disqualifying, it had to "stem from an extrajudicial source." *Liteky*, 510 U.S. at 544 (quoting *United States v. Grinnell Corp.*,

6

384 U.S. 563, 583 (1966)). In *Liteky*, however, the Supreme Court clarified that "extrajudicial source" does not necessarily mean "extrinsically acquired bias," as opposed to "court-acquired" bias. *Id.* at 550. Thus, John's counsel is correct in quoting *Liteky* for the proposition that "[e]stablishing an extrajudicial source of bias 'is not a *necessary* condition for bias or prejudice recusal.'" [DE 257-1 ¶ 11 (quoting *Liteky*, 510 U.S. at 554 (emphasis in original; internal quotation marks omitted)]. But neither are all unfavorable dispositions, whether based on extrajudicial matters or in-court matters, biased or prejudicial. Instead, the words "bias or prejudice" refer to specific kinds of unfavorable dispositions. *Liteky,* 510 U.S. at 551. The difference between unfavorable dispositions that are biased and prejudicial, and those that are not, is that the former "connote a favorable or unfavorable disposition or opinion *that is somehow wrongful or inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess." *Id.* (emphasis added).[7]

    John does not argue that the disputed decisions rest on knowledge that the undersigned ought not to possess. Instead, John's arguments fall into the first category of bias or prejudice: that the "unfavorable" rulings and statements in question are "undeserved." But as John acknowledges [DE 257-1 ¶ 11], the alleged bias or prejudice must be "*so extreme as to display clear inability to render fair judgment*," also referred to in the pre-*Liteky* case law as the "'pervasive bias' exception to the 'extrajudicial source' doctrine." *Liteky*, 510 U.S. at 551 (emphasis added); *see also id.* at 550 (undeserved bias or prejudice must be "excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will

---

[7] *Liteky* held that this interpretation of the term "bias and prejudice" applies equally to § 455(a), even though that provision uses the term "impartiality" instead. As the Supreme Court explained, "there is an equivalent pejorative connotation, with equivalent consequences, to the term 'partiality.' … 'Partiality' does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate." *Liteky*, 510 U.S. at 552 (quoting AMERICAN HERITAGE DICTIONARY 1319 (3d ed. 1992) ("partiality" defined as "[f]avorable prejudice or bias")).

7

vote guilty regardless of the facts)"). And the Supreme Court and Seventh Circuit have stressed that predispositions of a judge based on the proceedings themselves will "rarely" fall into this "extreme" category. *Id.* at 555; *see Barr*, 960 F.3d at 920. Applying the above principles to the matters cited by John and his counsel, the undersigned concludes that none require the undersigned to recuse from this case.

### 1. Disagreement with previous opinions

Most of the moving papers are dedicated to John and his counsel's disagreement with three opinions entered by the undersigned: the July 2, 2021, opinion sanctioning John for violating discovery orders [DE 168]; the August 11, 2022, opinion addressing the parties' summary judgment motions [DE 207]; and the February 14, 2023, opinion on John's motion to reconsider the summary judgment opinion [DE 224]. *See* [DE 257-1 ¶¶ 12, 16-50]. John has raised most of these arguments before, and the matters need not be relitigated here. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. … [T]hey … can only *in the rarest circumstances* evidence the degree of favoritism or antagonism required …. Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555 (emphasis added); *see also Montgomery v. Vill. of Posen*, 711 F. App'x 343, 345 (7th Cir. 2018) ("[J]udges' adverse rulings or expressions of doubts about the strength of a case do not establish bias or partiality."); *In re City of Milwaukee*, 788 F.3d 717, 722 (7th Cir. 2015) ("[F]ederal judges sometimes make mistakes or see factual or legal issues differently."). John's disagreement with the undersigned's decisions – no matter how vehement or how colorfully described – does not demonstrate "personal bias or prejudice," nor does it constitute a reasonable basis to question the undersigned's impartiality.

John asserts that he is not relying upon the mere fact of adverse rulings but upon the manifestations of "judicial predispositions that go beyond what is normal and acceptable," and show a case of "pervasive bias." [DE 257-1, ¶ 12]. In particular, he asserts that the undersigned "mishandl[ed] the law" and "misstat[ed] the factual record," "in a way an impartial judge would not do." [*Id.*]. But if the undersigned did those things, John will be vindicated when he appeals a final judgment in this case to the Seventh Circuit. The concept of "impartiality" cannot be stretched to encompass an argument that the undersigned simply got it wrong (as in a mistaken interpretation of the law or facts, not as in based on "wrong*ful*" considerations). Perhaps in theory the concept exists of getting it so wrong that the wrongness becomes wrong*ful*, and thus, biased and prejudiced; but if it does, John's arguments do not demonstrate its application here.[8]

More generally, John's counsel complains that the undersigned has "adopted Purdue's arguments" in all but one of the eight opinions issued in this case since the Seventh Circuit's remand. [DE 257-1 ¶ 14]. That overlooks several issues where the undersigned ruled in John's favor, including most significantly, denying Purdue's motion for summary judgment on John's Title IX claim. *See* [DE 206 at 18-23]. John repeatedly argues that the undersigned's decisions violated his "Title IX rights" as well as U.S. Department of Education regulations under Title IX,

---

[8] The crux of John's argument that the undersigned got it wrong is that the summary judgment ruling is supposedly contrary to the Seventh's Circuit's ruling on the allegations of the complaint. The issue turns on the following language in the opinion: "John's case is different. He does not claim simply that he might someday have to self-publish the guilty finding to future employers. Instead, John says that he had an obligation to authorize Purdue to disclose the proceedings to the Navy." 928 F.3d at 662. The passage, however, clearly begins with a statement of what John did "not claim" and "[i]nstead … sa[id]" (i.e., *alleged*). The court was required to accept as true what John alleged at the motion to dismiss stage. At the summary judgment stage, however, to avoid the entry of judgment on his deprivation of liberty claim, John was required to not just *allege* that he had an obligation to authorize Purdue to disclose the proceedings to the Navy; he needed to provide evidence of that allegation sufficient for a reasonable jury to rule in his favor on it. That the undersigned found against John based on the evidence in the record at the summary judgment stage does not mean that the undersigned contradicted a higher court's ruling in the context of a motion to dismiss and thereby engaged in "insubordinate pettifoggery." [DE 257-1 ¶ 26]. Indeed, John argues at length about evidence that he believes supports his view that he was compelled to disclose the investigation to the Navy, *see, e.g.*, [*id.* at ¶¶ 27-35], which shows that the issue ultimately turns on *evidentiary facts*, not allegations or issues of law resolved by the Seventh Circuit.

*see* [DE 257-1 ¶¶ 2, 24], but the summary judgment order *denied* Purdue relief from that claim, allowing it to proceed to trial.

Regardless, an alleged pattern of rulings against one party does not itself demonstrate bias. "Bias . . . must be grounded in some form of personal animus that the judge harbors against the litigant." *Barr*, 960 F.3d at 920. It "cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it 'in' for the party for reasons unrelated to the officer's view of the law[.]" *McLaughlin v. Union Oil Co. of Cal.*, 869 F.2d 1039, 1047 (7th Cir. 1989); *see, e g., Epstein v. Epstein*, No. 14 C 8431, 2017 WL 3168975, at *2-3 (N.D. Ill. July 26, 2017) ("The plaintiff prefaces this chronology with his conclusion that 'both judges have consistently ruled against me and blocked my progress at every turn.' . . . A more complete review of the docket reveals a number of additional rulings benefitting the plaintiff. Moreover, bias is not simply a matter of counting rulings against you and rulings in your favor.").

Beyond his disagreement with various opinions, counsel infers bias from "reasonable case-management decisions" (*United States v. Clinton*, No. 22-1130, 2023 WL 4446689, at *2 (7th Cir. July 11, 2023)), and misunderstandings of the applicable rules. For example, counsel infers bias from a proposed order that Purdue's counsel e-mailed to chambers. At a status conference, the undersigned explained that proposed orders are permitted under applicable rules, and the Court routinely accepts them. John objected to the length of the proposed order; in response, the undersigned allowed the parties to make additional filings on the pending motion. *See* [DE 67]. Nonetheless, counsel concludes without any factual support that "Purdue's action seems to shed light on [the undersigned's] later opinions." [DE 257-1 ¶ 15].

Counsel also accuses the undersigned of a "partisan slip" in the summary judgment opinion, since the opinion "repeated the allegations of [complainant Jane Doe] when in fact she

10

never testified. Proof is needed. Jane's allegations were not and are not proof." [*Id*. ¶ 39]. The undesigned analyzed John's summary judgment motion by the applicable standard, which includes considering the evidence in the light most favorable to the non-movant, regardless of whether the underlying facts are "proven." *See* [DE 206 at 14-16]. The summary judgment ruling never assumed that Jane "testified," but described witness testimony and written records indicating that Jane reported to Purdue that John had sexually assaulted her, including John's own response to those allegations. *See* [*Id*. at 2-6]. The undersigned considered this along with other evidence, and ultimately concluded: "Without assessing the truth of these facts, this evidence creates a genuine issue of fact precluding summary judgment for John." [*Id*. at 15-16]. That decision does not resolve whether Purdue's investigation was adequate under all applicable laws, or whether Purdue was correct to suspend John. Whether Purdue's investigation violated John's rights remains an issue in the case through John's Title IX claim.

Essentially, John and counsel allege that almost every substantive decision that went against them over the past four years was the result of bias. Such arguments demonstrate why "[a]n objective standard is essential [to § 455(a)] . . . Because some people see goblins behind every tree, a subjective approach would approximate automatic disqualification." *Matter of Mason*, 916 F.2d 384, 386 (7th Cir. 1990); *see In re Sherwin-Williams Co.*, 607 F.3d 474, 477-78 (7th Cir. 2010) ("That [a person] focusing only on one aspect of the story[] might perceive a risk of bias is irrelevant."). And the argument ignores that the alleged bias or prejudice must be based on consideration of some *wrongful* or *inappropriate* matter. John disagrees with the decisions, but he does not show a wrongful or inappropriate basis for those decisions, and thus has not shown bias or prejudice within the meaning of either § 455 or § 144.

11

### 2. Discovery disputes

John alludes to a number of discovery disputes, including Purdue's motion seeking sanctions for spoliation of evidence. If anything, John's recitation of the facts behind the spoliation motion shows that the issue was litigated and resolved based on factual and legal considerations that were properly before the Court and not based on any wrongful or inappropriate matter. *See* [DE 257-1 ¶¶ 18-20]. To the extent John points to any perceived criticism of his own actions, in the context of spoliation or any other discovery issue, that also is not a basis for recusal. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.

The Supreme Court identified one "rare" example of a "deep-seated favoritism or antagonism" meriting recusal; a judge in a World War I espionage case against German-American defendants said, "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Liteky*, 510 U.S. at 558 (quoting *Berger v. United States*, 255 U.S. 22, 28 (1921)). Nothing John points to comes anywhere close to that level. Any comments the undersigned might have made in ruling on the parties' discovery disputes were "within the bounds of what imperfect men and women. . . sometimes display." *Id.* at 555-56. "We do not reward defendants 'for success in baiting the judge,' and we 'allow reasonable latitude for normal human sensitivity' in responding to such provocation." *Betts-Gaston*, 860 F.3d at 534.

### 3. Settlement conference

John and counsel also object to remarks the undersigned allegedly made at the February 13, 2023, settlement conference. Specifically, counsel claims the undersigned "was insistent in telling [John] and his counsel that things were not likely to go our way at trial . . . and strongly urged [John] to take Purdue's offer that was unacceptable to [John]." [DE 257-1 ¶ 13]. John claims the undersigned "told me settling was in my best interest and tried to pressure me into taking a wholly inadequate offer." [DE 257-2 ¶ 14]. Considering the confidential nature of a settlement conference, the undersigned does not corroborate or deny any allegations of specific remarks or discuss anything else from the *ex parte* portions of the conference.

John and counsel do not explain exactly how the undersigned allegedly tried to "pressure" him. The undersigned infers that John disagreed with the undersigned about the chance of success at trial, was unsatisfied with Purdue's offer of settlement, and thus views the alleged suggestion that "settling was in [his] best interest" as improper pressure.[9] But "it is the nature of a settlement conference that in attempting to facilitate a resolution of the case, the judge informs both parties of [his] assessment of the strengths and weaknesses of their respective positions," and may "challenge the plaintiff's opinion" of his own case. *Epstein*, 2017 WL 3168975, at *5. And contrary to counsel's suggestion, the fact that the undersigned "already oversaw a settlement conference" [DE 257-1, ¶ 52] is not itself a reasonable basis to question his impartiality for a jury trial.[10] *See Montgomery v. Vill. of Posen*, No. 14 C 3864, 2017 WL 345547, at *1 (N.D. Ill. Jan.

---

[9] Counsel concludes that the undersigned "seemed determined in seeing John take any sort of deal regardless of fairness." [DE 257-1 ¶ 51]. The settlement discussions will remain confidential, but the record sharply contradicts counsel's suggestion that the undersigned was "determined" for the case to settle in a particular way. In fact, the undersigned explained before the conference that the "default" would be for another judge to conduct it, unless the parties agreed otherwise. [DE 212, 1:13-8:2 (September 1, 2022 status hearing)].

[10] John demanded a jury trial [DE 160 at 1], and the undersigned clarified that if he did oversee the settlement conference, "we certainly will not do a bench trial." [DE 212, 3:7-11].

24, 2017), *aff'd*, 711 F. App'x 343 (7th Cir. 2018) ("Conducting a settlement conference—with the attendant *ex parte* communications with both sides—does not demonstrate a judge holds a bias toward either party . . . Similarly, any discussion of the merits of the parties' respective cases during those discussions does not show partiality."); *see also Bhatti v. Cnty. of Sacramento*, No. CIV. S-05-0754WBSEFB, 2009 WL 1451709, at *2-3 (E.D. Cal. May 22, 2009); *Bilello v. Abbott Lab'ys*, 825 F. Supp. 475, 478-480 (E.D.N.Y. 1993).

4. **Mandamus petition**

Finally, counsel argues that John's February 17, 2023, mandamus petition, which the Seventh Circuit has already denied, requires the undersigned's recusal. [DE 257-1 ¶ 52 ("Given the presence of our mandamus petition alone, he should have already recused himself from the trial.")]. But a party cannot compel recusal merely through the act of complaining about the judge. That would effectively allow litigants to switch judges at any time for any reason. *See In re Mann*, 229 F.3d 657, 658 (7th Cir. 2000) (mandamus petition and misconduct complaints did not require recusal: "Indeed, if that were the rule, litigants displeased with Judge A's adverse rulings could easily manipulate the system by filing a misconduct complaint, thereby disqualifying Judge A from hearing the case, in the hopes that the case would then be assigned to Judge B who might be more sympathetic to their cause."); *N.Y. City Dev. Corp. v. Hart*, 796 F.2d 976, 980 (7th Cir. 1986) ("Section 455(a) [would] become[] a form of peremptory challenge against the judge. The statute does not create such a challenge, however. That is the point of limiting disqualification to a case where the judge's "impartiality might reasonably be questioned.").

John states that the undersigned "strangely has yet to even address" the mandamus petition. [DE 257-2, ¶ 15]. That petition was not before this Court, and the Seventh Circuit denied it without seeking an answer from the undersigned. *See* Fed. R. App. P. 21(b)(1). It is not clear how or why

14

the undersigned would have "addressed" the petition, or how *not* addressing it suggests bias or prejudice. Given John's mistaken belief that the mere filing of the petition required the undersigned's recusal, it does not appear that it would have been productive to do so.

One final note: The undersigned has considered whether this motion should be assigned to another judge. The better course here is to bring this matter to a close and proceed to trial. *See Watford*, 725 F. App'x at 414 (rejecting the argument that § 144 "required the district judge to refer the recusal motion to a different judge"). It is certainly conceivable that mistakes were made in this litigation, and perhaps at some time in the future a higher court will rule that one or more of those mistakes came from the front of the courtroom. Every litigant is entitled to a fair and impartial judge, but no judge is infallible. At the same time, the judge has a duty to resolve disputes and bring the litigation to an end. This matter will be set for trial. After judgment, all parties retain their right to an appeal.

## CONCLUSION

As shown above, the grounds cited by John for the undersigned's recusal are inadequate under the principles applicable to the two recusal statutes as set forth by the Supreme Court. John's grounds "consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel . . . All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky*, 510 U.S. at 556. Accordingly, John's Motion to Recuse [DE 257] is **DENIED**.

So ORDERED this 14th day of August, 2023.

                                                    s/ Joshua P. Kolar
                                                  MAGISTRATE JUDGE JOSHUA P. KOLAR
                                                  UNITED STATES DISTRICT COURT