IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| PURDUE UNIVERSITY, PURDUE UNIVERSITY | ) | |
| BOARD OF TRUSTEES, MITCHELL ELIAS | ) | |
| DANIELS, JR., in his official capacity as President of | ) | |
| Purdue University, ALYSA CHRISTMAS ROLLOCK, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, KATHERINE | ) | |
| SERMERSHEIM, in her official capacity at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF JOHN DOE'S MEMORANDUM RE DISPUTED JURY INSTRUCTIONS

Plaintiff John Doe respectfully submits this Memorandum concerning disputed jury instructions in the Proposed Jury Instructions (DE 238), which was a matter the Court raised in the pre-trial conference held on November 8, 2023 (DE 282).

The disputes concerning jury instructions concern conflicting Proposed Jury Instructions No. 14 and four Proposed Jury Instructions by Defendants (Nos. 15-17, 19) with which Plaintiff does not agree and do not believe should be included.

### Conflicting Proposed Jury Instruction No. 14

Plaintiff stated in its Proposed Jury Instruction No. 14 the basis for the divide between Defendants' Proposed No. 14 and Plaintiff's Proposed No. 14 (DE 238, pp. 18-19, bold in the original):

> **Defendant cites for its Proposed Final Jury Instruction No. 14 the Seventh Circuit Pattern Jury Instructions 3.01 and 3.02, but Seventh Circuit Pattern Jury Instructions 3.01 and 3.02 are not informative for a Title IX action. Seventh Circuit Pattern Jury Instructions 3.01 provides general employment discrimination instructions. Seventh Circuit Pattern Jury Instructions 3.02**

[1]

provides retaliation instructions. The Seventh Circuit Pattern Jury Instructions do not have Title IX specific jury instructions. Seventh Circuit case law must thus be looked to for formulation of Title IX liability jury instruction. Defendant does cite but inadequately quotes from and does not conform its instruction to *Doe v. Purdue*, 928 F.3d 652, 667-668 (7th Cir. 2019) (Title IX plaintiff must show "sex was a motivating factor in a university's decision to discipline a student," which entails answering the question whether the facts show "that the university discriminated against John 'on the basis of sex'"?). Plaintiff's proposed instruction does conform to *Doe v. Purdue*. Defendant also quotes *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 792 (7th Cir. 2022), that "the educational institution in question discriminated against [the] plaintiff based on gender," citing to *Doe v. Columbia College Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). The quoted language from *Doe v. Univ. of S. Ind.* is a general requirement better captured in Plaintiff's proposed jury instruction.

Defendants' language in its Proposed Jury Instruction No. 14 contains language that incorrectly indicates gender must be the sole reason for the adverse action (DE 238, p.17, emphasis added):

> . . . This means gender was either *the sole reason* or a motivating factor for the disciplinary actions Purdue University took against him.
>
> Plaintiff must prove by a preponderance of the evidence that Purdue University suspended him *because of* his gender. You must decide whether Purdue University would have suspended Plaintiff had he not been male, but *everything else had been the same*.

Defendants' language in its Proposed Jury Instruction No. 14 also contains language that incorrectly indicates sex discrimination in university disciplinary cases can be harmless sex discrimination (DE 238, p. 17):

> Plaintiff must prove that gender discrimination by the Defendant caused effect that were real, negative, and substantial.

There is no harmless sex discrimination rule in Title IX. In this case, Commander Hutton testified the Navy would rely upon the Purdue investigation, and it was the Purdue suspension alone, not anything that the Navy determined, that caused the loss of Plaintiff's disenrollment from the Navy

[2]

ROTC: the disenrollment document showed the Purdue suspension was the only reason for the disenrollment. (Hutton tr. 20-24, 56, 66-67; NSTC 0001-0004.)

In contrast, Plaintiff's language in its Proposed Jury Instruction No. 14 (DE 238, p. 18) is clear and straight forward without the errors in Defendant's language. Plaintiff's Proposed Jury Instruction No. 14 (DE 238, p. 18) states:

> Plaintiff John Doe claims Defendant Purdue University intentionally discriminated against him based on his sex in violation of Title IX when it found Plaintiff responsible for sexual assault, in violation of the University's student conduct policy and sanctioned Plaintiff by suspending him from the University.
>
> In order for Plaintiff John Doe to establish his Title IX claim against Defendant Purdue University, Plaintiff John Doe has the burden of proving by a preponderance of the evidence that Plaintiff's sex was a motivating factor in Defendant Purdue University's finding that he was responsible for violating the University's student conduct policy. The question is do the factsthat you find show that the university discriminated against Plaintiff John Doe o the basis of sex?
>
> In establishing that Plaintiff John Doe's sex was a motivating factor in finding Plaintiff John Doe responsible to violating Defendant Purdue University's Student Conduct Policy, Plaintiff John Doe is not required to prove that his sex was the sole motivation or a primary motivation for Defendant Purdue University's decision. Plaintiff John Doe satisfies his burden by proving that his sex played a motivating part in Defendant's decision even though other factors may also have motivated Defendant Purdue University.
>
> Plaintiff John Doe is not required to produce direct evidence of intentional discrimination. Discrimination may be inferred from circumstantial evidence, or the existence of other facts from which discrimination can be inferred.

**Defendants' Proposed Jury Instruction No. 15; Plaintiff Opposition**

Defendants seek a jury instruction that asserts a university's disciplinary process is not held to the standards of a courtroom and deference is given to decisionmaker's credibility determinations in a misconduct allegation. There are two defects to the proposed instruction.

*First*, the cited cases do not support the proposed instruction. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 88, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978), is an academic dismissal

[3]

case, one involving deficient clinical progress by a medical student and not sexual misconduct; deference in the *Horowitz* case meant deference to academic judgments. *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 800 (7th Cir. 2022), was a case in which the school followed the DeVos due process reforms in the Title IX regulations effective August 14, 2020, and in which this case, *Doe v. Purdue*, was distinguished as one having a sham grievance process; the alleged procedural irregularities in the *Univ. of S. Ind.* case were not seen as supporting a case of gender bias. *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015), was not a Title IX case, but a criminal case alleging trafficking in counterfeit U.S. currency; the issue was whether at the suppression hearing, the knock and talk exception was correctly applied. *Doe v. Samford Univ.*, 29 F.4th 675, 691 (11th Cir. 2022), considered on a motion to dismiss, addressed the credibility determinations of conflicting male and female accounts ("he said/she said") of drinking and whether the sex was consensual; the deference was not to determinations regarding a misconduct allegation in general, as asserted in Defendants' proposed instruction.

*Second*, the proposed instruction is entirely inappropriate given the Seventh Circuit decision in this case. Based on the allegations of the Complaint, Judge Barrett wrote strongly about the denial of due process in this case: "Purdue's process fell short of what even a high school must provide to a student facing a days-long suspension." 928 F.3d 663-664. Discovery strengthened Plaintiff's case that he was denied due process. The depositions of Purdue employees with the documents that formed the basis of the allegations of the Complaint not only substantiated the allegations, but showed a process more flawed than what was alleged in the Complaint. Purdue never provided John Doe with the evidence and the investigation report during the disciplinary case, there was no real hearing, and there was pre-judgment based upon treatment of Jane Doe's accusations.

**Defendants' Proposed Jury Instruction No, 16; Plaintiff Opposition**

Defendants seek an instruction in their No. 16 that asserts Plaintiff cannot show Purdue engaged in gender discrimination by numbers of allegations by one gender (meaning females) against the other gender (meaning males) and numbers of disciplinary outcomes by gender. There are three problems with this proposed instruction.

*First*, Plaintiff's case has not been relying upon statistics, but rather the conduct of the university investigation and adjudication. The proposed instruction will therefore be unnecessarily confusing to the jury and have the Court take a position that is not established Seventh Circuit law and is illogical when put under the lens of reality.

*Second,* the case cited by Defendants supporting their proposed instruction, *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 798 n.8 (7th Cir. 2022), does not support the proposed instruction. The Seventh Circuit refused to resolve the question that was discussed in a footnote (43 F.4th at 798 n.8, emphasis added):

> Some federal courts have reasoned that evidence of a school's anti-respondent bias does not necessarily support an inference of anti-male bias since both men and women can be victims of sexual assault and can commit sexual assault, even though most complainants are women and most respondents are men. See, e.g., *Doe v. University of Denver*, 952 F.3d 1182, 1196 (10th Cir. 2020) (collecting cases; "Most courts to have addressed the issue have concluded that evidence of a school's anti-respondent bias does not create a reasonable inference of anti-male bias."); see also *Samford University*, 29 F.4th at 690. At least one court has permitted an inference of anti-male bias where statistical evidence cast some doubt on whether the university's "practices were uniformly pro-complainant and anti-respondent." *University of Denver[Denver II]*, 1 F.4th at 835. *We need not resolve this issue here.* This arguable error does not support an inference of sex bias even if general anti-respondent bias could support such a claim.

Suffice it to say that what the Tenth Circuit in *Doe v. University of Denver (Denver I)*, "reasoned" (dubiously) was undercur by *Doe v. Univ. of Denver*, 1 F.4th 822, 831-836 (10th Cir. 2021)("*Denver II*"), which ruled that the difference in treatment of complaints -- complaints by males not

[5]

investigated and rejected versus complaints by females investigated and sustained -- supports an inference of gender bias. Further, the proposition of *Doe v. University of Denver (Denver I)* is illogical when reality intrudes upon the theoretical premise that men and women can be both victims of sexual assault. If the system is victim-centered in the sense that complainant are "victims" who are treated more favorably, the system is not neutral and impartial; with females as the "victim" complainants and males the "accused" respondents, a victim-centered process advantages females contrary to the text of Title IX decreeing non-discrimination.

*Third*, the proposed instruction does not state the current law correctly. Title IX plaintiffs do not litigate their cases based upon statistics alone. Even a case that ruled statistics alone do not alone establish a Title IX case, *Doe v. Coastal Carolina*, 522 F. Supp.3d 173 (D.S.C. 2021), went on to state "[h]owever, they [the statistics] may provide context when combined with circumstantial evidence of bias in a particular case." 522 F.Supp.3d at 180. An example, as noted above, is *Doe v. Univ. of Denver*, 1 F.4th at 831-836 ("*Denver II*"), where the Tenth Circuit ruled that the statistical evidence plus procedural deficiencies, such as female complaints being acted upon and sustained while male complaints being not investigated and rejected, established gender bias.

**Defendants' Proposed Jury Instruction No. 17; Plaintiff Opposition**

Defendants seek an instruction in their No. 17 that may fairly be called a mitigation of damages instruction that is taken and modified from Seventh Circuit Pattern Civil Instruction 3.12, which is not directed to Title IX cases.

Even with Defendants' modification, the language of the proposed instruction that if the jury finds "Plaintiff might reasonably had found comparable employment if he had taken such action" reflects that Defendants are trying to graft employment law on to Title IX, which no court

has ever ruled or adopted for good reason -- the circumstances of a suspended or expelled university student are totally different from an employee in the workforce. A suspended or expelled university student faces obstacles to educational opportunities and in the long run career altering effects. An employee in the workforce can seek other employment.

Defendants cite only the general Seventh Circuit Pattern Civil Instruction 3.12 and nothing else because there is no authority, not even a Seventh Circuit Pattern Civil Instruction, that supports a mitigation of damages instruction in a Title IX case. This Court should not use this case to adopt a position without supporting legal authority and logic.

**Defendants' Proposed Jury Instruction No. 19; Plaintiff Opposition**

Defendants seek in their No. 19 to have an adverse instruction from the non-existent spoliation. Plaintiff stated in the Joint Pre-Trial Order opposition to any such instruction (DE 239, pp. 2-3):

> John's position is that no attorney's fees should be granted or adverse inference given because the sanction decision was legally erroneous and should be vacated. Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case. *Smith v. United States*, 293 F.3d 984, 988 (7th Cir.2002); *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir.2001). A speculation that "it was not inconceivable" the 11 deleted Snapchat personal posts might be potentially relevant to John's desired Navy career without giving an explanation how it was conceivable, much less actually relevant (which the evidence showed it wasn't), is legally insufficient. Adverse inference instructions require intentional destruction and relevance, *Crabtree v. Nat'l Steel Corp.*, 261 F.3d at 721; *Keller v. United States*, 58 F.3d 1194 (7th Cir.1995) (collecting cases), not present here. No use was made by Defendants in the summary judgment briefing.

The hearing did not support the proposed instruction describing the deletion as intentional. Defendants' cited legal support for the adverse instruction is the Court's July 2, 2021 Opinion and a reference to the Advisory Committee Note to FRE 37 which presumes, erroneously, there was spoliation. Upon reflection, this Court should the proposition that there was spoliation cannot be sustained and should not be part of the trial.

[7]

In response to Purdue's demands, Plaintiff John Doe personally produced all of the documents he had about the events of the case (including 133 pages of text message between Jane Doe and him), gave cell phone information and ten separate medical authorizations, answered three sets of interrogatories and gave a day-long deposition. In response to Purdue's demand for all of John's post-suspension social media posts, John produced all of his Instagram posts and produced the 75 Snapchat videos and pictures he had. (DE152, DE156; DE175.) Purdue had the Instagram and Snapchat production at the time of taking John's deposition but never marked any as deposition exhibits and never asked John any questions about them.

In the backdrop of Plaintiff factually building his due process and Title IX case, Purdue moved for sanctions against Plaintiff John Doe, making a plethora of inaccurate accusations about discovery and seeking (again) the due process claim be struck. (DE 148.) John Doe opposed, showing his compliance with discovery. (DE 152, DE 152-1, DE 152-2.) On February 22, 2021, the Court held a multi-hour evidentiary hearing on Purdue's motion. (DE 155.) John Doe testified under oath how 11 Snapchat documents were accidentally deleted when John Doe cleared memory from his cell phone without realizing deletion from his cell phone would affect his Snapchat account; John Doe also testified under oath that the deleted documents were more of the same of what was produced (DE156; Snapchat Memories received in evidence. (A32-35; DE155). The Snapchat documents and indeed, all his social media were irrelevant, spanning years after the 2016 events at Purdue and relating only to personal matters (e.g., one of John's sisters playing piano). Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case. *Smith v. United States,* 293 F.3d 984, 988 (7th Cir.2002); *Crabtree v. Nat'l Steel Corp.,* 261 F.3d 715, 721 (7th Cir.2001).

On July 2, 2021, the Court ruled there was spoliation, granting relief albeit different than requested because striking the due process claim was said to be disproportionate (but which Purdue sought because the record had established the due process claim). The Magistrate Judge unfairly ignored all the discovery Plaintiff John Doe complied with and focused on what little Plaintiff John Doe did not have. This Court acknowledged "there is nothing in the record to indicate whether the files were in fact adverse to Plaintiff's case" (DE168, p. 29), but speculated "it was not inconceivable" the 11 Snapchat personal posts might be potentially relevant to John Doe's desired Navy career without giving an explanation how it was conceivable, much less actually relevant (DE168, p. 16), which a glance at the Snapchat listing showed it wasn't (*see* A33-35 in Mandamus Appendix). This Court ordered payment of Purdue's attorney fees (which were claimed to be $30,000 and which would wrongly burden John Doe's effort to vindicate his due process and Title IX rights), and outlined jury instructions regarding what were totally irrelevant documents. (DE168.) However, adverse inference instructions require intentional destruction and relevance. *Crabtree v. Nat'l Steel Corp.*, 261 F.3d at 721; *Keller v. United States,* 58 F.3d 1194 (7th Cir.1995) (collecting cases). Such adverse jury instructions, although erroneously given, would wrongly impact John Doe at trial.

## CONCLUSION

For the reasons stated above, the Court should adopt Plaintiff's Proposed Jury Instruction No. 14, reject Defendants' Proposed Jury Instructions Nos. 15-17 and 19, and order such further

and other relief as the Court deems just and proper.

Dated: **November 13, 2023**

                                                   Respectfully submitted,
**LAW OFFICES OF PHILIP A. BYLER**
By: /s/ *Philip A. Byler*
**Philip A. Byler, Esq.**
**11 Broadview Drive**
**Huntington, New York 11743**
**(631) 848-5175**
pbyler1976@gmail.com
*Attorneys for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

      The undersigned certifies that this document was served upon the attorneys of record for each party to the above-entitled cause at the address shown below on November 13. 2023:

William P. Kealey, Esq.
James Olds, Esq.
Scotty Teal, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com

*Attorneys for Defendants*

BY: ECF