IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.**, in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, **KATHERINE** | ) | |
| **SERMERSHEIM**, in her official capacity at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S TITLE IX INJUNCTIVE RELIEF**

Plaintiff John Doe ("John") respectfully submits this Memorandum of Law in opposition to Defendants' motion to dismiss John's Title IX injunctive relief requests, a motion that is essentially duplicative of Point 2 in Defendants' March 21, 2023 Motion in Limine for Exclusion of Inadmissible Facts, Contentions & Arguments (DE 235), which was opposed on April 4, 2023 by John (DE 242). Per the law and the Seventh Circuit's governing decision in this case, *Doe v. Purdue*, 938 F.3d 652 (7th Cir. 2019), John's Complaint seeks, for the alleged Title IX violations, damages and "an injunction vacating John Doe's disciplinary findings and decision, granting expungement of the disciplinary record from John Doe's school records at Defendant Purdue, ordering the ending of the suspension subject to any readmission requirements" (DE 160, pp. 63-64). John has never withdrawn or disavowed that demand for relief; the Pre-Trial Order had a section for fact contentions for liability, but not a section for relief sought; that Defendants try to make use of the Pre-Trial is bizarre when Defendants, without leave, sought last November to

[1]

insert a new exhibit list that contained unrecognizable documents (DE 287). In any event, the Seventh Circuit decided standing in John's favor – a point that discredits Defendants' whole motion.

1. **Defendant's Current Moton (DE 274) Is Essentially Point 2 Of Defendants' March 21, 2023 Motion To Exclude (DE 235) As To Which The Seventh Circuit Decision Governs and That Decision Directs That Expungement Be Addressed.**

Defendants' motion involves a repeat of Point 2 in Defendants' March 21, 2023 Motion in Limine for Exclusion of Inadmissible Facts, Contentions & Arguments (DE 235); and so, John's opposition here should begin with what was stated in his opposition to Point 2 in Defendants' March 21, 2023 Motion in Limine for Exclusion of Inadmissible Facts, Contentions & Arguments (DE 235):

> Purdue seeks to exclude argument concerning the content of disciplinary records or expungement. (Df. Mem. 2.) While during the course of trial, it will naturally come up that there is a disciplinary file and what it contained because of what was sent to the Navy ROTC, argument to the Court concerning expungement of disciplinary records will follow a jury verdict. What the Court should do is not allow Purdue to argue that John is out only for money damages, which is what Purdue counsel falsely asserted in oral argument to the Seventh Circuit. Injunctive relief is critically important in this case, Judge Barrett's opinion is clear in upholding injunctive relief for the Title IX claim, 928 F.3d at 670, and that injunctive relief includes expungement, 928 F.3d at 667. At oral argument, all the Seventh Circuit judges on the panel expressed belief that injunctive relief was available and John was appropriately seeking injunctive relief.

(DE 242, pp. 2-3.)

In fact, Judge (now Justice) Barrett's opinion for the Seventh Circuit states: "we instruct the court to address the issue of expungement on remand." 928 F.3d at 667. Yet, Defendants return to an argument that was rejected by the Seventh Circuit and seek to have the Title IX injunctive relief dismissed, which at bottom is a ploy to avoid Judge (now Justice) Barrett's directive that the District Court is to address the issue of expungement. Defendants' motion based on "standing" should be denied as utterly without merit, at odds with the Seventh Circuit decision

in this case. Accompanying this Memorandum of Law as Exhibit A is a copy of the Seventh Circuit opinion.

### 2. The Issue of Standing Was Litigated and Decided In John's Favor By The Seventh Circuit.

Defendants (i) assert John's case does not meet the case or controversy requirements (as if the Seventh Circuit had not rejected Defendants' argument); (ii) quote the Second Amended Complaint demanding injunctive relief as part of the remedy for the alleged Title IX violations; and (iii) quote the Defendants' statement in the Pre-Trial Order denying Plaintiff's standing for injunctive relief (as if the Seventh Circuit had not already instructed the District Court to address expungement, the most important injunctive relief sought in the case), (DE 274, pp. 2-3) Defendants then argue the issue at length as if standing had not been litigated before. But it had been.

The issue of John's right to prospective injunctive relief was a prominent subject in appellate briefs of the parties to the Seventh Circuit, and the issue was decided in John's favor.

John's main Appellant Brief stated as the first issue in the Summary of Argument:

> **I. Prospective Injunctive Relief.** The Magistrate Judge erred in ruling, contrary to this Court's precedent in *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986), that a suspended student who has lost a Navy ROTC scholarship, has a transcript disciplinary mark and is subject to reinstatement requirements is not experiencing continuing adverse effects to justify prospective injunctive relief for constitutional due process and Title IX claims.

(John's Appellant Brief, p. 18.)

John's main Appellant Brief explains:

> Prospective injunctive relief -- here, elimination of the transcript disciplinary mark and the readmission requirements and reinstatement of John's Navy ROTC scholarship -- is available in this case for the constitutional due process and Title IX claims pleaded in the Complaint. The Magistrate Judge erred in ruling otherwise.

[3]

> Prospective injunctive relief -- here, elimination of the transcript disciplinary mark and the readmission requirements and reinstatement of John's Navy ROTC scholarship -- is available in this case for the constitutional due process and Title IX claims pleaded in the Complaint. The Magistrate Judge erred in ruling otherwise.
>
> **A. John Has Standing For Prospective Injunctive Relief.**
>
> The Magistrate Judge invoked the "case or controversy" requirement of Article III of the Constitution: "'[t]o have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical.' *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017)." (BA 11.)
>
> John has standing for prospective injunctive relief. The Complaint states:
>
>> John Doe continues to suffer ongoing harm, including damages to his reputation and other non-economic and economic damages. In particular, suspension from Defendant Purdue denied him the benefits of education at his chosen school and also damaged John Doe's academic and professional reputation. John Doe's lifelong goal of becoming of a naval officer and serving his country has been shattered.
>
> (A 59.) To remedy this harm, John seeks, *inter alia*, injunctive relief for the due process and Title IX violations. (A 60, 69, 73-74.) John faces a real and immediate threat of future injury from "ongoing harm": he is a suspended student with a transcript disciplinary record of sexual misconduct, subject to requirements for readmission and suffering a loss of a Navy ROTC scholarship. (A 8-9, 34-35, 49-50, 53-54, 59-60, 69.) John is not faced with conjectural or hypothetical or past injury; life altering harms are visited upon wrongly disciplined males in these campus sexual misconduct tribunals. John has a sexual misconduct finding on record and is not able to pursue a career as a Navy officer; for other males, it is having a sexual misconduct finding on record and not being admitted to medical school or losing a job opportunity at an investment bank. In contrast, what *Simic* holds is that a claim of injury from possibly receiving a ticket in the future for texting while driving in violation of a city ordinance was conjectural.

(John's Appellant Brief, pp. 19-20.) Accompanying this Memorandum of Law as Exhibit B is a copy of Plaintiff John's Appellant Brief to the Seventh Circuit.

Defendants argued in its Appellee Brief that John lacked standing. (Dfs. Appellee Br. 29-32.) John responded in his Reply Brief:

[4]

> Defendants wrongly attack John's standing to obtain prospective injunctive relief. (Appellee Br. 29-32.) While Defendants confine its standing attack on John's ability get an injunction under *Ex Parte Young*, 209 U.S. 123 (1908), here, as discussed in John's Appellant Brief (pp. 19-25), prospective injunctive relief in the elimination of the transcript disciplinary mark, elimination of the readmission requirements and reinstatement of John's Navy ROTC scholarship is available to remedy the harms from both the constitutional due process and Title IX claims.
>
> That John has standing for prospective injunctive relief should not be in dispute. John faces a real and immediate threat of future injury from "ongoing harm" and rightly seeks relief from "continuing, present adverse effects," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983): John is a suspended student with a transcript disciplinary record of sexual misconduct, subject to requirements for readmission and suffering a loss of a Navy ROTC scholarship. (A 8-9, 34-35, 49-50, 53-54, 59-60, 69.) John is not faced with conjectural or hypothetical or past injury; life altering harms are visited upon wrongly disciplined males in these campus sexual misconduct tribunals.

(John's Reply Brief. p.17.) Accompanying this Memorandum of Law as Exhibit C is a copy of Plaintiff John's Reply Brief to the Seventh Circuit.

The first Magistrate on the case (Cherry, M.J.) adopted Defendants' arguments and dismissed the case. The Seventh Circuit reversed, ruled that injunctive relief is proper, 928 F.3d at 670, and directed the District Court to address expungement. 928 F.3d at 667, 670. Defendants are re-hashing old arguments already rejected by the Seventh Circuit under the guise that injunctive relief is tethered to the due process claim – a notion rejected by the Seventh Circuit, 952 F.3d at Defendants nevertheless persist with lengthy, elaborate arguments for denying standing, which should be considered an effort to avoid the merits of this case.

### 3. **Defendants' Mootness Arguments Are Without Merit.**

Defendants argue mootness, but the fact that John should not have been suspended remains highly relevant and is not moot. That John survived the suspension is to his credit, but it is not germane to his standing to sue to remedy the wrongful suspension. There is nothing moot about John's case; he is continuously damaged and is entitled to relief from the effects of the wrongful suspension, which includes having a permanent federal record. There is nothing moot about John's

[5]

injunctive relief requests; Defendants just have been committed to fighting Judge (now Justice) Barrett's opinion and its directive to address expungement. While expungement does not change the fact that John has served the suspension, it does free John from ongoing disclosure requirements to employers (including the federal government) and schools other than Purdue, provides the basis for eliminating what otherwise will be a permanent federal record showing a suspension for sexual misconduct, and makes possible future opportunities that would otherwise be cut off by the disclosure of (an albeit erroneous) sexual misconduct sanction. Defendants are being "cute" in not recognizing the deleterious effects of a suspension for alleged sexual misconduct.

Defendants' argument that there is a question about John's standing due to the passage of time is as cynical and as wrong as can be. The fact that Defendants engaged in scorched earth litigation (e.g., Defendants deposed John's parents and John's mental health counselor and Defendants demanded and got all of John's post-suspension social media posts – which Defendants never used) and that the litigation has been as a result prolonged does not deprive John of standing or make his litigation with Defendants moot.

Defendants' argument about re-enrollment (p. 7 n.1) ignores the point that the Second Amended Complaint (DE 160, ¶ 82) alleges that John intends to re-enroll and confirmed that intention in his deposition; the issue has been remedied.. Otherwise, Defendants would have made an issue of it in their summary judgment motion (DE 183), which they didn't. John also needed the Navy ROTC scholarship and Presidential Scholarship to afford Purdue; Defendants' glib talk of John's ability to re-enroll cynically ignores John's limited financial resources as well as the conditions placed on John's re admission that gave Defendants discretion whether to re-admit.-

The cases cited by Defendants are way, way off point. Defendants quote language totally out of context; the facts of those cases make plain those cases cannot be applied here.

[6]

*UMW Student Ass'n v. Lovell*, 888 F.3d 854 (7th Cir. 2018), a student association and current and former students at a state university brought putative class action in state court against university's board of regents, rival student association, university administration officials, and other students alleging that the administration violated federal constitutional and state law by unseating their legitimately elected officers and replacing them with supposedly "puppet" student government.  What the District Court ruled and the Seventh Circuit affirmed was moot was the students' claim that the administrators violated their right to organize under state law.  This case arose from a long-running feud between rival student governments at the University of Wisconsin-Milwaukee, commonly known as UWM. Plaintiffs alleged a wide-ranging conspiracy to interfere with student governance and were criticized for "clumsy" efforts to pursue an "unmanageable complaint with 44 plaintiffs suing 37 defendants for claims spanning several years of student politicking." 888 F.3d at 856.  Mootness stemmed from the requested injunctive and declaratory relief not providing redress for the alleged injuries. In regards to that case, there is no remote resemblance here.

In *United States v. Parole Commission v. Geraghty*, 445 U.S. 38ere8 (1980), the U.S. Supreme Court said that the requisite personal injury must exist at the commencement of the suit continue throughout its existence, but held in that case that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied; and (2) the named plaintiff, a former federal prisoner, could continue to appeal the District Court's ruling denying class certification even though he was released from prison while the appeal was pending.

*Hero v. Lake Cty. Election Bd.*, 561 F.Supp.3d 786 (N.D. Ind. 2021), a prospective political candidate brought an action under 42 U.S.C. § 1983 against a county election board, alleging deprivation of his First and Fourteenth Amendment rights concerning his being barred in the past

[7]

from seeking office, and seeking a declaratory judgment and injunctive relief allowing his future candidacy. The suit was dismissed for lack of present injury, the Court noting that the plaintiff was not seeking damages for past denials of being a candidate. In the context that the Court referred to the need for present injury. Similarly, the two Supreme Court cases cited in *Hero v. Lake Cty. Election Bd.*, were ones in which the Supreme Court, in fact situations far afield from this case, found no immediate threat of injury. In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Court stated that the plaintiff might have been illegally choked by police, but that did not establish real and immediate threat that he would again be stopped for traffic violation or for any other offense by officer or officers who would illegally choke him to justify injunctive relief governing future police conduct toward plaintiff. In *O'Shea v. Littleton*, 414 U.S. 488 (1974), plaintiffs sought injunctive relief against an alleged pattern and practice of conduct consisting of illegal bond setting, sentencing, and jury fee practices in criminal cases.

**4. The Dismissal of Defendants' Legally Defective Counterclaim Is No Basis for Claiming (Quite Erroneously)There Is No Pending Claim To Exonerate John.**

Defendants argue there is no pending claim for exoneration. Not accurate. Establishing that a suspension was based on sexual discrimination, which will be supported by, among other things, proof of John's innocence of the ill-founded charges of sexual misconduct, would be exoneration.

Defendants base their argument on the dismissal of Defendants' Amended Counterclaim (DE 224). That Amended Counterclaim was, however, totally defective as a matter of law, as explained in John's motion to dismiss it:

> Defendants' Amended Counterclaim (ECF 161) purports to be an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Title IX of the Education Amendments of 1972, but it contains no allegations supporting federal court subject matter jurisdiction. There are at least three fatal defects as a matter of law requiring dismissal of Defendants' Amended Counterclaim.

**A. Defendants Are Seeking Declarations Impermissibly Based on State Law or Are Contrary to the Law of the Case.** The first fatal defect is that the Amended Counterclaim mostly seeks to invoke what are state law police powers; three of the four requested declarations involve state law police powers; and the one requested declaration that is not state law based is at odds with the law of the case in *Doe v. Purdue*, 928 F.3d 652. The Amended Counterclaim seeks: (i) to "[d]eclare John Doe's conduct violated Purdue University's conduct regulations"; (ii) to "[d]eclare that Purdue University, in the exercise of its discretionary authority as an instrumentality of the State of Indiana to police the safety of its campus, has at all relevant times possessed good and adequate cause to suspend John Doe from enrollment at Purdue University"; (iii) to "[d]eclare that Purdue University, in the exercise of its discretionary authority to protect its educational environment from interference with its educational mission, has at all relevant times possessed good and adequate cause to exclude John Doe from Purdue University's educational environment"; and (iv) to "[d]eclare that there is no Purdue-imposed stigma on John Doe's occupational liberty for Navy ROTC enrollment or a career in the United States Navy." (SJM 3: ECF 161, Defendants' Answer to Plaintiff's Second Amended Complaint and Amended Counterclaim, pp. 64, 64.) The first three requested declarations are state law based and do not involve application of Title IX. It is not the federal court's role to determine independently and declare that conduct violated the university's student code and that the university had the basis to suspend a student from campus; the federal court's role is to determine whether the university took actions that were in violation of federal due process and constituted federally prohibited discrimination. The fourth declaration seeks a ruling denying John Doe has a stigma-plus liberty interest that Judge Barrett's opinion in *Doe v. Purdue*, 928 F.3d at 661-663, specifically ruled John Doe had.

**B. Denial of Due Process Precludes Defendants' Amended Counterclaim** The second fatal defect is that the denial of due process precludes Defendants' Amended Counterclaim. Indisputably, Defendants during the disciplinary case did not give access to John Doe to the evidence used against him, did not give John Doe access to the investigation report, did not give a real hearing and engaged in pre-judgment based on accusation -- which have already been ruled in the law of the case to be denials of due process. *Doe v. Purdue*, 928 F.3d at 663 664. The denial of due process here invalidates any effort to rely upon the university process for the purported declaratory relief. See *Marshall v. Jerrico, Inc.*, 446 U.S. at 242.

**C. The Case Law in The Seventh Circuit Establishes That Defendants' Amended Counterclaim Should Be Dismissed as a Misuse of the Declaratory Judgment Act.** The third fatal defect to Defendants' Amended Counterclaim is that under the case law in the Seventh Circuit, Defendants' declaratory judgment-based Amended Counterclaim is legally defective and should be dismissed because it "is repetitious and unnecessary . . . [and] merely restates an issue already before this

[9]

Court." *U.S. v. Zanfei*, 353 F.Supp.2d 962, 965 (N.D. Ill. 2005) (quoting *Rayman v. Peoples Savings Corp.*, 735 F.Supp. 842, 851–52 (N.D.Ill.1990); accord, the decision of Judge William J. Bauer, subsequently of the Seventh Circuit, in *Green Bay Packaging, Inc. v. Hoganson & Assoc., Inc.*, 362 F.Supp. 78 (N.D.Ill. 1973) (a defendant's declaratory judgment counterclaim dismissed because it sought rulings on claims a plaintiff "asserted in his complaint but with the opposite effect"). Preserved in John Doe's First Affirmative Defense to Defendants' Amended Counterclaim was the failure of the Counterclaim to state a claim upon which relief may be granted. (SJM 4: ECF 162, Plaintiff's Answer to Counterclaim, p. 6.) Defendants' Amended Counterclaim is similar to the dismissed counterclaims in *Zanfei* and *Green Bay Packaging* because it mirrors John Doe's claims except that Defendants seek the opposite effect. John Doe seeks rulings finding Defendants violated his due process and Title IX rights in Defendants' application of Purdue's student conduct policies. Defendants' Amended Counterclaim seeks the opposite: Defendants want this Court to "[d]eclare" John Doe violated Purdue's conduct regulations and find Defendants had good and adequate cause to exclude John Doe from campus. *Sarks Café, Inc. v. Sarks In the Park LLC*, 55 F.Supp.3d 1034, 1037-38 (N.D.Ill. 2014), *Saporito v. Carr*, 684 F.Supp.2d 1043, 1063 (N.D.Ill. 2010), and *Ortho-Tain Inc., v. Rocky Mountain Orthodontics, Inc.*, 2006 WL 3782916, at *3 (N.D.Ill. Dec. 20, 2006), and *Manago v. Auto-Owners Ins. Co.*, 2018 WL 620381 (N.D. Ind. Jan. 30, 2018), provide four additional examples of why Defendants' declaratory judgment-based counterclaim should be dismissed as a matter of law. The counterclaim in *Sarkis Café* was dismissed because it was "duplicative" of the plaintiff's claims and "serve[d] no useful purpose" since any "uncertainty" regarding the controversy between the parties was "alleviated" and "ripened" by the plaintiff's lawsuit. 55 F.Supp.3d at 1038. Likewise, *Saporito*, 684 F.Supp.2d at 1063, ruled that 28 U.S.C. § 2201 prohibited a defendant from using a counterclaim to obtain "rul[ings] on what are in effect [defendant's] defenses" to the plaintiff's claims. *Saporito* stated (684 F.Supp.2d at 1063): The Declaratory Judgment Act allows a party to bring a lawsuit based on a reasonable apprehension that it will be sued. *DeBartolo v. Healthsouth* Corp., 569 F.3d 736, 741 (7th Cir.2009). It is not, however, a vehicle for bringing counterclaims to a suit that has already been filed when those counterclaims mirror defenses already raised. "'It is well settled that such repetitious and unnecessary pleadings should be stricken.'" United States v. Zanfei, 353 F.Supp.2d 962, 965 (N.D.Ill.2005) (quoting *Rayman v. Peoples Savings Corp.*, 735 F.Supp. 842, 851 52 (N.D.Ill.1990)); see also *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir.1985). *Ortho-Tain*, 2006 WL 3782916, at *3, dismissed a 28 U.S.C. §2201 based counterclaim in part because it was duplicative of some of the defendant's "affirmative defenses." In *Manago v. Auto Owners Ins. Co.*, 2018 WL 620381 (N.D. Ind. Jan. 30, 2018), the Court dismissed a counterclaim under FRCP 12(f) without addressing the plaintiff's 12(b)(6) arguments. Id. It did so because FRCP 12(f) gave the Court the authority to "strike from a pleading ... any redundant, immaterial, 46 USDC IN/ND case 2:17-cv-00033-JVB-APR document 183 filed

[10]

09/01/21 page 54 of 55 impertinent, or scandalous matter. . . ." *Id*., *2, discussing *Cincinnati Specialty, Underwriters Ins. Co. v. DMH Holdings, LLC*, 2013 WL 683493 (N.D. Ind. Feb. 22, 2013); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (7th Cir. 1989); and *Lincoln Nat'l Corp. v. Steadfast Ins. Co.*, 2006 WL 1660591 (N.D. Ind. June 9, 2006). In explaining its decision, the Court noted, inter alia, defendant's declaratory judgment request served "no useful purpose" because "the controversy ha[d] 'ripened' and the uncertainty and anticipation of litigation [were] alleviated" by the plaintiff's lawsuit. Id., at *3, quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

(DE 183, pp. 43-50.)

### 5. Allegations of Loss of Educational Opportunity Have Been and Are Ripe.

Defendants argue that the allegation of loss of educational opportunity is not "ripe" because John must have Title IX standing. As made clear above, however, Defendants fail to acknowledge that the Seventh Circuit ruled John has standing and that standing was established as a matter of both due process and Title IX: **"John seeks both money damages and injunctive relief for his claim under Title IX. Our earlier discussion of his entitlement to injunctive relief for his due process claim applies equally here [to Title IX]."** 928 F.3d at 670. Defendants' effort to differentiate and deny injunctive relief under Title IX runs up against the Seventh Circuit's rejection of that differentiation and denial.

Despite the Seven Circuit decision in this case to the contrary, Defendants go to elaborate lengths to deny that John has standing for loss of educational opportunity, invoking *Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017), and *Prosser v. Becerra,* 2 F.4th 708 (7th Cir. 2021), on prospective injunctive relief that real and imminent injury is required. But Defendants are simply not living in the real world when denying that John has not suffered a real, current and continuing loss of educational opportunity by his having a sexual misconduct disciplinary record, which is typically death to an application to another educational institution absent nepotism. It is not a matter of hypothesizing a future effect on his educational opportunity; the Seventh Circuit's

approach recognizes that the sexual misconduct disciplinary record would result in current and future harm. 928 F.3d at 666.

Defendants' effort to refer to its holding of disciplinary file as "archival" is disingenuous and misleading. Disclosure requirements for employers, the federal government, educational institutions require reference be made to the sexual misconduct record, and John has a permanent federal record that continues until an expungement order will obligate change in that record.

Disciplinary disenrollment documents are part of his "permanent federal record" per the Navy Rules for Officer Development ("ROD") (DE 208-3) section 6-16 (pp. 6-26 – 6-27):

> c. Disciplinary disenrollments become a matter of permanent federal record and may prejudice the individual for future military or civil employment. Disciplinary disenrollments may be disqualifying for future federal security clearances that are often necessary for positions in private industry. Disciplinary disenrollments may be prejudicial to their interests should they ever apply for a commission in the Armed Forces. . . .

Should John re-apply to the Navy ROTC or to any commission in the U.S. Armed Forces or to any position in the federal government, he would be honor-bound to disclose the disciplinary disenrollment that is part of his permanent federal record and if he did not and it were inevitably discovered in a mandatory background check, termination would be expected. (DE208-1 ¶ 9.) The permanent federal record exists only as a result of the university disciplinary case (DE209, pp. 8-9); the Navy did not conduct its own investigation but relied 100% on the university disciplinary suspension. (DE187-2, pp. 23-27 and record citations therein.) Accompanying this Memorandum of Law as Exhibit D are the Navy ROD.

### 6. Expungement Would Redress Harm To John.

Defendants continue its war with Judge Barrett's Seventh Circuit opinion in this case by arguing that expungement would not redress harm to John. Yet again. Defendants do not disclose to this Court what the Seventh Circuit said about this subject:

[12]

> In his response to the defendants' motion to dismiss, and then again in his brief and at oral argument, **John argued that he is also entitled to an injunction ordering university officials to expunge the finding of guilt from his disciplinary record. For this relief, John has standing.** *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (**pursuing expungement of university records "serve[s] the purpose of preventing present and future harm"**); *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (seeking to ''remove the negative notation from appellants' disciplinary records'' is ''nothing more than prospective remedial action''); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (an ''F'' grade and a plagiarism conviction ''constitute[d] a continuing injury to the plaintiff'' and an action to remove them was ''prospective in nature''). And he claims that if the guilty finding is expunged, a career in the Navy may once again be open to him.

928 F.3d at 666; emphasis supplied. And as noted above, Judge (now Justice) Barrett's opinion for the Seventh Circuit states: "we instruct the court to address the issue of expungement on remand." 928 F.3d at 667. Defendants' various arguments that a federal court cannot order expungement are flatly contrary to the precedent of the Seventh Circuit, *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986), and other courts, Application of *Ex Parte Young* has been widely recognized to authorize injunctive relief to clear a student's academic record: *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *Shepard v. Irving*, 77 F. App'x at 620; *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995); *Johnson v. Western State Colorado University*, 71 F. Supp.3d 1217, 1230 (D. Colo. 2014).

As noted above, while expungement does not change the fact that John has served the suspension, it does free John from disclosure requirements to employers (including the federal government) or schools other than Purdue, provide the basis for eliminating what otherwise will be a permanent federal record showing a suspension for sexual misconduct, and make possible future opportunities that would be cut off by the disclosure of (an albeit erroneous) sexual misconduct sanction.

Defendants' argument about current DOE required procedures, 34 CFR 106.45 (p. 7 n. 2) must be understood as an attempt to deflect attention away from the grave defects of Purdue's disciplinary procedures in John's case which resulted in Judge Barrett's scolding about how bad

[13]

the procedure were: "Purdue's process fell short of what even a high school must provide to a student facing a days-long suspension." 928 F.3d at 663. The summary judgment briefing showed Purdue procedures to be even worse than alleged. (DE 183.) Alo contrary to Defendants' unfounded argument about the meris, the summary judgment briefing (DE 187) showed it is John who has the winning hand. Defendants' notion that they can transfer the defective result in the Purdue defective process over to federal court makes no sense. Defendants' inventive misreading of 34 CFR 106.45 is off base.

While a trial record will have the disciplinary file documents, a trial decision in John's favor will deprive anyone from reasonably arguing against John's innocence of what were specious the sexual misconduct allegations and will be testimony to Defendants' sham process.

Finally, one more failure to disclose by Defendants: the notion that John had a meaningful howed that John option to seek a preliminary injunction against the suspension was orally argued by Defendants to the Seventh Circuit and Defendants got nowhere with that argument.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' motion to dismiss the Title IX injunctive relief requests and should grant such other and further relief (e.g, sanctioning Defendants for not disclosing Seventh Circuit rulings contrary to Defendants' arguments) as the Court deems just and proper.

**Dated: April 8, 2024**

                                **Respectfully submitted,**
                                **LAW OFFICES OF PHILIP A. BYLER**
                                **By: /s/** *Philip A. Byler*
                                **Philip A. Byler, Esq.**
                                **11 Broadview Drive**
                                **Huntington, New York 11743**
                                **(631) 848-5175**
                                pbyler1976@gmail.com
                                *Attorneys for Plaintiff John Doe*

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served by ECF upon the attorneys of record for each party to the above-entitled cause at the address shown below on April 8, 2024:

William P. Kealey, Esq.
James Olds, Esq.
Scotty Teal, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com

*Attorneys for Defendants*