*No. 17-3565*

---

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

**▶▶◀◀**

JOHN DOE,

*Plaintiff-Appellant,*

*against*

PURDUE UNIVERSITY, *et al.*,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court*
*for the Northern District of Indiana, Hammond Division*
*No. 2:17-cv-00033-PRC*
*Paul R. Cherry, Magistrate Judge*

---

## BRIEF FOR PLAINTIFF-APPELLANT

NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500

*and*

LAW OFFICES OF DAMON M.
CHERONIS
140 S. Dearborn, Suite 411
Marquette Building
Chicago, Illinois 60603
312-386-7033

*Attorneys for Plaintiff-Appellant*

---

## ORAL ARGUMENT REQUESTED

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 17-3565

Short Caption: John Doe v. Purdue University

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]**    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellant-John Doe

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Nesenoff & Miltenberg, LLP

Law Office of Damon M. Cheronis

(3) If the party or amicus is a corporation:

   i) Identify all its parent corporations, if any; and

   N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

   N/A

Attorney's Signature: s/ Philip A. Byler          Date: April 9, 2018

Attorney's Printed Name: Philip A. Byler

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☒   No ____

Address: Nesenoff & Miltenberg, LLP

363 Seventh Avenue, 5th Floor, New York, New York 10001

Phone Number: 212-736-4500          Fax Number: 212-736-2260

E-Mail Address: pbyler@nmllplaw.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 17-3565

Short Caption: John Doe v. Purdue University

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellant-John Doe

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Nesenoff & Miltenberg, LLP

Law Office of Damon M. Cheronis

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

    N/A

Attorney's Signature: s/ Damon M. Cheronis    Date: April 9, 2018

Attorney's Printed Name: Damon M. Cheronis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes**  X   **No** _____

Address: Law Office of Damon M. Cheronis

140 S. Dearborn St., Suite 411, Chicago, Illinois 60603

Phone Number: 312-663-4644    Fax Number: 312-277-1920

E-Mail Address: damon@cheronislaw.com

## RULE 26.1 DISCLOSURE STATEMENT

Plaintiff-Appellant John Doe is an individual to whom Rule 26.1 of the

Federal Rules of Appellate Procedure does not apply.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

RULE 26.1 DISCLOSURE STATEMENT ............................................................. i

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES ................................................................vii

PRELIMINARY STATEMENT ................................................................ 1

JURISDICTIONAL STATEMENT ................................................................2

ISSUES PRESENTED FOR REVIEW ................................................................3

STATEMENT OF THE CASE ................................................................3

      A.     The Parties ……………………………………………………………3

      B.     April 2011 Dear Colleague Letter……………………….…………4

      C.     Fall Semester 2015 To January 2016:
             John-Jane Doe's Dating Relationship …………………………...…4

      D.     April 1-10, 2016: "Sexual Assault Awareness" Month……………...5

      E.     April 11, 2016: John Notified Of Jane Doe's Allegations
             and Suspended From Navy ROTC…………………….………...…5

      F.     April 20, 2016: John's Written Response…………………….…..6

      G.     April 28-May 26, 2016: "Investigation"; John
             On Leave of Absence From Navy ROTC…………………….……8

      H.     June 6, 2016: No Hearing, Meeting With the Advisory
             Committee Panel and Dean Sermersheim………………...………9

      I.     June 14, 2016: Dean Sermersheim's Determination and Sanctions …11

J.     June 22, 2016: John's First Appeal …………….…………….…12

K.     June 28, 2016: Vice President Rollock's First Appeal Decision ……13

L.     June 29, 2016: Dean Sermersheim's
Re-Issued Determination and Sanctions …………………………13

M.    July 10, 2016: John's Appeal Of The
Re-Issued Determination and Sanctions …………………………15

N.     July 22, 2016: Vice President Rollock's Second Appeal Decision …16

O.     John's Repeated Request for the Investigation Report ……..……...17

P.     This Action……………………………………….…………17

SUMMARY OF ARGUMENT .............................................................18

ARGUMENT ......................................................................................19

I.     THE STANDARD OF REVIEW ……………………………………19

II.    PROSPECTIVE INJUNCTIVE RELIEF IS AVAILABLE IN
THIS CASE FOR THE CONSTITUTIONAL DUE PROCESS
AND TITLE IX CLAIMS ……………………………………………19

A.    John Has Standing For Prospective Injunctive Relief ………………20

B.    John Seeks Prospective Injunctive Relief From
"Ongoing Harm"...............................................................21

C.    The Magistrate Judge Impermissibly Faulted
The Complaint……………………………………………..…………...22

D.    Prospective Injunctive Relief Is Available…………………………23

III.   THE COMPLAINT STATES A CONSTITUTIONAL
DUE PROCESS CLAIM ……………………….……..……………23

[iii]

A.    The 11th Amendment Immunity
       Exception of *Ex Parte Young* Applies……………………………..23

B.     Public Universities Do Not Have The Right To Deny Due
       Process In Campus Sexual Tribunals: John Has Protected
       Property and Liberty Interests Within The Meaning of
       the 14th Amendment …………………………..…………………..25

       1.     John Has A Property Interest …………………..………….26

              a.     The Magistrate Judge Relied On Inapposite
                     Case Law Involving Academic Performance
                     and Greek Hazing.........................................................27

              b.     This Court May Recognize A Legally Protected
                     Entitlement To A State University Education………….28

              c.     Indiana Law Of Student Implied Contract
                     And 14th Amendment Protection ………………..…..29

              d.     The Complaint Alleges A Legally Protected
                     Entitlement …………………………………………..…30

       2.     John Has A Liberty Interest …………………….……….31

       3.     John Has A Property/Liberty Interest ………………..……..31

C.     President Daniels Was Prematurely Dismissed ………….……..…32

IV.    THE COMPLAINT STATES A TITLE IX
       DISCRIMINATION CLAIM …………………………………………..33

A.     The Basic Law Of A Title IX Discrimination Claim ………..…….34

B.     The Complaint Sufficiently Alleges An "Erroneous
       Outcome" Case……………………………………………….…...34

1.      The Magistrate Judge Erred In Rationalizing
        Away Applicable Precedent…………….…………….………35

        a.      *Doe v. Columbia* …………………………..………...35

        b.      *Yusuf v. Vassar*…..………………………………...37

        c.      *Doe v. Washington and Lee*……………….…………38

        d.      *Prasad v. Cornell*………………………….…...…39

        e.      *Neal v. Colorado State* ……………….………...40

        f.      *Doe v. Miami*…………………..…………..………41

2.      The Magistrate Judge Erred In Rationalizing Away
        Pleaded Facts Alleging Gender Bias …………….………...42

        a.      Procedural Deficiencies, Victim Centered
                Process and Gender Bias………………………….42

                i.      Procedural Deficiencies …………………..…43

                ii.     Victim-Centered Process ………………44

        b.      Sanction and Gender Bias ………………….………46

        c.      Dean Sermersheim's Findings and Gender Bias ….....…47

        d.      Dean Sermersheim's Conflict of Interest
                and Gender Bias ……………….………………49

        e.      The Denial of Access to the Investigation
                Report and Gender Bias …………….………...50

        f.      Totality of the Circumstances Shows Gender Bias…… 51

        g.      Pressures for Gender-Biased Proceedings …......…52

[v]

h.   Gender-Biased Pattern of Decision-Making……………54

3.   The Magistrate Judge Erred In Relying Upon Reversed, Inapposite And Theoretically Misconceived Opinions To Frame Decision……………………………….…………...…55

a.   The Reversed *Doe v Columbia* District Court Opinion and Cases Relying On It …………...…55

b.   Judge Abrams's *Yu v. Vassar* and Judge Beckwith's *Doe v. University of Cincinnati* …………..57

c.   Cases Asserting Conclusory Allegations of Bias………...58

d.   Cases Asserting Victims Can Be Male and Female………………………………….…...…59

C.   The Complaint Sufficiently Alleges A "Selective Enforcement" Case …………….…………………………59

CONCLUSION ..................................................60

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Amaya v. Brater*, 981 N.E.2d 1235, 123-1240 (Ind.Ct.App.2013) ………………..29

*Austin v. Univ. of Oregon*, 205 F.Supp.3d 1214 (D. Ore. 2016) ………………53-54

*Barry v. Barchi*, 443 U.S. 55 (1979) …………………………………………………30

*Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599 (7th Cir. 2009) ……….…….27, 28

*Board of Regents v. Roth*, 408 U.S. 564 (1972) …………………………..…26, 29, 30

*Charleston v. Bd of Trustees,* 741 F.3d 769 (7th Cir. 2013) …………...………27, 28

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ……………………….…………..23

*Covell v. Menkis,* 595 F.3d 673 (7th Cir. 2010) …………………….…………….26

*Davis v. Alaska*, 415 U.S. 308 (1974)……………………………….………43-44

*D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681 (7th Cir. 2013). ……………………19

*Doe v. Alger, et al.*, No. 5:15-cv-00035, slip op. (D. W.Va. Dec. 23, 2016) ……..33

*Doe v. Baum*, 227 F.Supp.3d 784 (E.D. Mich. 2017) …………………………….58

*Doe v Colorado-Boulder*, 255 F.Supp.3d 1064 (D. Colo. 2017) …………………52

*Doe v. Columbia*, 101 F.Supp.3d 356 (S.D.N.Y. 2015), *rev'd*,
831 F.3d 46 (2d Cir. 2016)……………………………..……18, 33, 35-37,
38, 40, 41, 43, 48,
48, 53, 54, 55-57

*Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016) …………..........................24-25

[vii]

*Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018) …………………….…18, 25, 28, 31,
33, 41-42, 52,
54, 55, 57

*Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521(D. Mass. July 14, 2015) ……52

*Doe v. University of Cincinnati*, 173 F.Supp.3d 586 (S.D. Ohio 2016) ………57, 58

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)…………………25, 28, 44

*Doe v. University of St. Thomas*, 240 F.Supp.3d 984 (D. Minn. 2017)...50, 52, 56-57

*Doe v. Washington and Lee*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) .…38-39,
43, 51

*Doe v. W. New England Univ.*, 228 F.Supp.3d 154 (D. Mass. 2017) ……………58

*Doyle v. Camelot Care Centers,* 305 F.3d 603 (7th Cir. 2002) ……………………32

*Elliott v. Hinds*, 786 F.2d 298 (7th Cir. 1986) …………………………18, 21-22, 23

*Ex Parte Young*, 209 U.S. 123 (1908)………………………………………….…23, 24

*Flaim v. Medical Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)…………..………25, 28

*Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007) ……………………………….. 25

*Gagne v. Trustees of Indiana Univ.,* 692 N.E.2d 489 (Ind. Ct. App. 1998) ………30

*Gordon v. Purdue Univ.,* 862 N.E.2d 1244 (Ind.Ct.App.2007) …………………..29

*Goss v. Lopez*, 419 U.S. 565 (1975)………………………………………………..30

*Hess v. Board of Trustees of So. Ill. Univ.*, 149 F. Supp.3d 1027
(S.D. Ill. 2015), *aff'd*, 839 F.3d 668 (7th Cir. 2016), *cert. denied*,
137 S. Ct. 1435 (2017)…………………………………….………27-28,
49-50

[viii]

*Hinkle v. White*, 793 F.3d 764 (7th Cir. 2015) …………………………………………32

*Johnson v. Western State Colorado University*,
    71 F. Supp.3d 1217 (D. Colo. 2014)…………………………………………..25

*Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) …….....…19

*Ludlow v. Northwestern Univ.*, 79 F.Supp.3d 824 (N.D. Ill. 2015) ………………58

*Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013) …………………………………………..31

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)……………………………………43

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ………………………41

*McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873 (7th Cir. 2012) ………..……..19

*Morrissey v. Brewer*, 408 U.S. 471 (1972) …………………………………………..25

*Neal v. Colorado State*, 2017 WL 633045 (D. Colo. Feb. 16, 2017) …………40, 44

*Neel v. Indiana University Board of Trustees,* 435 N.E.2d 607
    (Ind. Ct. App. 1982) …………………………………………………………..29

*Paul v. Davis*, 424 U.S. 693 (1976) …………………………………………………31

*Prasad v. Cornell*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) …………39-40, 51

*Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972) ………………………………26

*Reilly v. Daly*, 666 N.E.2d 439 (Ind. Ct. App. 1996)…………………………18, 29

*Sahm v. Miami University*, 110 F.3d 774 (S.D. Ohio 2015) ………………………50

*Salau v. Denton*, 139 F.Supp.3d 989 (W.D. Mo. 2015) ……………….………56-57

*Schepers v. Commissioner, Ind. Dep't of Corr.*, 691 F.3d 909 (7th Cir. 2012) ……31

[ix]

*Scherer v. Marriott Int'l Inc.*, 703 F.3d 1069 (7th Cir. 2013)…………..….………22

*Shepard v. Irving*, 77 Fed. App'x 615 (4th Cir. 2003) ……………..…..………22, 25

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017)…………………..……20, 21

*Sonnleitner v. York*, 304 F.3d 704 (7th Cir. 2002) ……………………….……22, 24

*Thomson v. Harmony*, 65 F.3d 1314 (6th Cir. 1995) …………………….……….25

*Townsend v. Vallas,* 256 F.3d 661 (7th Cir 2001)………………………………...32

*Trentadue v. Redmon*, 619 F.3d 648 (7th Cir. 2010)………………………………33

*Will v. Mich. Dep't of State*, 491 U.S. 58 (1989) …………………………………24

*Williams v. Wendler*, 530 F.3d 584 (7th Cir. 2008) …………………..…26, 27, 28

*Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972) ………………………….…44

*Withrow v. Larkin*, 421 U.S. 35 (1975) …………………………………..…….50

*Wolfel v. Morris*, 972 F.2d 712 (6th Cir. 1992) ……………………………...22

*Yusef v. Vassar Corp.*, 35 F.3d 709 (2d Cir. 1994).......................................18, 34-35
37-38, 40
43, 54, 56

*Yu v. Vassar*, 97 F. Supp.3d 448 (S.D.N.Y. 2015) ………………….…52, 57-58

*Zentmyer v. Kendall Corp.*, 220 F.3d 805 (7th Cir. 2000) …………….………..33

*Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000)…………………….……..33

## Constitution, Statutes and Rules

Article III, U.S. Constitution …………………………….………………20

Eleventh Amendment, U.S. Constitution ……………………………...………23-25

Fourteenth Amendment, U.S. Constitution ………………………………....25-32

Rule 4(a), Federal Rules of Appellate Procedure .............................................2

Rule 12(b)(1), Federal Rules of Civil Procedure ..........................................19

Rule 12(b)(6), Federal Rules of Civil Procedure ..........................................19

20 U.S.C. § 1681(a) ................................................................33, 34, 46

28 U.S.C. § 636(c) ………………………………………………………1, 2

28 U.S.C. § 1291 ..............................................................................2

28 U.S.C. § 1331 ..............................................................................2

28 U.S.C. § 1343 ..............................................................................2

28 U.S.C. § 1367 ..............................................................................2

42 U.S.C. § 1983 ………………………………………….………2, 24, 32, 33

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688....2, 18, 21

**Other Authorities**

A.Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027 (2016) …………..…..47

A. Scalia, *Reading Law: The Interpretation of Legal Texts* (West Pub. 2012)…. 46

Department of Education Office for Civil Rights, Apr. 4, 2011,
    https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html ...45-46

Department of Education Office for Civil Rights, Sept. 22, 2017,
https://www.cmu.edu/title-ix/colleague-title-ix-201709.pdf ........................45

K. C. Johnson, "The Railroading Of Peter Yu," *Minding The Campus*,
http://mindingthecampus.org/2015/04/the-railroading-of-peter-yu/.............58

*Rape and Sexual Assault Victimization among College Age Females,*
*1995-2013* (Special Report), U.S. Department of Justice,
December 2014, http://www.bjs.gov.content/pub/pdf/ravcaf9513.pdf.........46

R.Katzman, *Judging Statutes* (Oxford Univ. Press 2014) …………….…………46

United Educators, "Confronting Campus Sexual Assault: An Examination
of Higher Education Claims," https://web.archive.org/web/2017012
8225139/https://www.ue.org.uploadedFiles/ Confronting%20Campus
%20Sexual%20Assault.pdf…………………………………………….…..45

## **PRELIMINARY STATEMENT**

Plaintiff-Appellant John Doe ("John") is a suspended student at Defendant Purdue University ("Purdue"); before this case, he was a Navy ROTC cadet with an unblemished disciplinary record.  (A 8-9, 68.)  John brings this appeal (A 189-190) to reverse the Opinion and Order of the Magistrate Judge exercising jurisdiction under 28 U.S.C. § 636(c) and associated Judgment (BA 1-47) granting the Purdue Defendants' motion to dismiss John's 68-page Complaint for failure to state a claim.

John brings this case because his hope and dream to serve his country as a Naval officer has been destroyed as the result of a disciplinary case based on false accusations of sexual misconduct made five months after the supposed occurrences with no contemporaneous documentation supporting them and contrary to the text messages shared by John and "Jane Doe."  (A 9, 19-50.)

This Court should read the Complaint (A 8-76) to see that John's Complaint has been mistreated by the Magistrate Judge and does allege grounds for: (i) prospective injunctive relief (which will be elimination of the transcript disciplinary mark and the readmission requirements and reinstatement of John's Navy ROTC scholarship); (ii) denial of constitutional due process (John has property and liberty interests); and (iii) Title IX discrimination (gender bias was a motivating factor for the erroneous outcome and severe penalty).

## STATEMENT OF JURISCTION

The District Court's subject matter jurisdiction arose under 28 U.S.C. §§ 1331, 1343 and 1367 because the claims brought under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983 arose under the laws of the United States and are civil rights claims and the state law claims are part of the same case or controversy.

A Notice of Reassignment of Case to Magistrate Judge was issued based on Consents of the parties to the U.S. Magistrate exercising jurisdiction to conduct all proceedings and enter a Final Judgment (A 6.)

On November 15, 2017, United States Magistrate Judge Paul R. Cherry, exercising jurisdiction pursuant to 28 U.S.C. § 636(c), issued an Opinion and Order granting Defendants' motion to dismiss on all claims (BA 1-45), and the Northern District of Indiana Clerk entered a Judgment dismissing the Complaint on all claims (BA 46-47).  While the Opinion and Order appeared to grant the motion to dismiss in part with prejudice and in part without prejudice, what was ruled effected a granting of the motion to dismiss the entire Complaint with prejudice with respect to the federal law claims.  (*See* Cir. Dckt. No. 8, 01/08/2018 Amended Docketing Statement.)  The appeal is thus one of right.  This Court's appellate jurisdiction is pursuant to 28 U.S.C. § 1291 and Rule 4(a) of the Federal Rules of Appellate Procedure.

## ISSUES PRESENTED FOR REVIEW

1.  Whether the Magistrate Judge erred in ruling that prospective injunctive relief was not available for the constitutional due process and Title IX claims brought by a suspended student experiencing the ongoing violations of suspension, loss of ROTC scholarship and reinstatement requirements?

2(a).  Whether the Magistrate Judge erred in ruling that a student with a legally protected claim of entitlement to a public university education lacks a property or liberty interest and does not have a constitutional right to due process in campus sexual misconduct tribunals?

2(b).  Whether the Magistrate Judge erred in granting the motion to dismiss Defendant Daniels prematurely?

3.  Whether the Magistrate Judge erred in granting the motion to dismiss "erroneous outcome" and selective enforcement Title IX claims?

## STATEMENT OF THE CASE

**A.    The Parties.**

John is a "now suspended student at Defendant Purdue University despite a previously unblemished disciplinary record and a now dismissed member of Navy ROTC." (A 8-9.)  Purdue is a land grant university established by the State of Indiana with a main campus in West Lafayette, Indiana and is audited by the State of Indiana, the beneficiary of state authorized bonds and recipient of state and federal

grants.  (A 10-11.)  Defendant Mitchell Daniels ("President Daniels") is Purdue's President; Defendant Alysa Christmas Rollock ("Vice President Rollock") is a Purdue Vice President; Defendant Katherine L. Sermersheim ("Dean Sermersheim") is Purdue's Dean of Students; Defendant Erin Oliver and Defendant Jacob Amberger were appointed by Dean Sermersheim to conduct the investigation. (A 11-12.)

**B.    April 2011 Dear Colleague Letter.**

This case arose during the Obama Administration when the Office for Civil Rights ("OCR"), with its threat to cut off federal funding for failure to comply with a now revoked April 2011 Dear Colleague Letter, mandated campus sexual misconduct tribunals, including at Purdue.  (A 13-19.)

**C.    Fall Semester 2015 To January 2016:
         John-Jane Doe's Dating Relationship.**

Starting in the 2015 Fall semester and continuing into January 2016, John and Jane Doe had a dating relationship that included their having, with mutual consent, sexual intercourse 15 to 20 times over a three-month period from October to December 2015.  On December 13, 2015, Jane Doe attempted suicide in front of John, after which all sexual activity ended.  In January 2016, John reported Jane Doe's suicide attempt to the university.  In late January 2016, Jane Doe and John stopped dating.  From November 2015 through March 2016, Jane Doe made no reports to the university or to the police about any alleged sexual misconduct by John.  (A. 19.)

[4]

**D.    April 1-10, 2016: "Sexual Assault Awareness" Month.**

April is Sexual Assault Awareness Month nationwide; and during April, 2016, Purdue hosted more than a dozen events to advocate reporting of sexual misconduct. The Center for Advocacy, Response and Education ("CARE") at Purdue sponsored many of these events.  CARE promoted events on their Facebook page, including an article dated June 21, 2016 from *The Washington Post,* "Alcohol isn't the cause of campus sexual assault. Men are." During the first ten days of April 2016, there were five reports of alleged sexual assault at Purdue, including Jane Doe's report against John. (A 19-20.)

**E.    April 11, 2016: John Notified Of Jane Doe's
        Allegations and Suspended From Navy ROTC.**

On April 11, 2016, John received a letter from Dean Sermersheim regarding allegations made by "Jane Doe" that if substantiated, might constitute a violation of Purdue's *Anti-Harassment Policy*.  The April 11, 2016 letter stated there would be an investigation of the allegations and directed John to give a written response and to refrain from any contact with Jane Doe.  (A. 20-21.)

The April 11, 2016 letter included a document outlining the disciplinary procedure and a document entitled "Notice of Allegations."   The Notice falsely stated that: in November 2015, when Jane Doe stayed the night in John's dorm room, she woke up to John's groping her while she was fully clothed and said it was not OK; John then told Jane Doe that during another night in November 2015, while

they were staying the night in Jane Doe's room, John had penetrated her digitally, which Jane Doe did not know about and was upset when told; Jane Doe became very upset and left John's room; John also went through Jane Doe's underwear drawer without her permission and chased her down a hallway joking about tasering her; after Jane Doe broke up with John, he would still go to Jane Doe's room unannounced; and John displayed little control over his temper in front of Jane Doe. The Notice made no mention of Jane Doe's and John's consensual sexual intercourse.  (A 21-24.)

Once Dean Semersheim's April 11, 2016 letter was issued, John was not allowed to participate in Navy ROTC, not allowed in the ROTC armory unless to attend a class or to meet with a Naval superior, not allowed in university buildings in which Jane Doe had classes, and not allowed in the university dining hall most used by John and Jane Doe.  (A 24.)

**F.     April 20, 2016: John's Written Response.**

On April 20, 2016, John timely submitted a written response to the allegations. John stated that: (i) he and Jane Doe were in a dating relationship from the Fall 2015 semester to the start of the Spring 2016 semester (January 2016) and were both in Navy ROTC; (ii) Jane Doe's accusations against him were false; (iii) it was not true that in November 2015 Jane Doe had stayed in John's room and woke up when John was groping her; (iv) what happened was that in mid-December, 2015, after Jane

[6]

Doe had attempted to commit suicide, Jane Doe stayed the night in John's room, slept on a futon with John on the floor and John's roommate on his bed above the futon, woke up when John touched her knee, immediately became angry with John and left the room; (v) it was not true that in November 2015 John digitally penetrated Jane Doe while she was sleeping; (vi) it was not true John had sexual contact with Jane Doe while she was sleeping; (viii) Jane Doe engaged in behavior inconsistent with having been sexually assaulted, including texting John over the Christmas holidays, wishing John a Happy Christmas Eve, sending a package of homemade cookies to John's family and inviting John to her room at the start of the Spring 2016 semester; (ix) John never went through Jane Doe's underwear drawer; (x) John does not own a taser and never threatened Jane Doe with his stun gun; (xi) Jane Doe never formally broke up with John, but the two saw each other less at the start of the Spring 2016 semester and John respected Jane Doe's choice of distancing herself; and (xii) only after John returned an item to Jane Doe did she say anything about John not going to her room, after which he didn't. (A 24-26.)

John further provided additional information to show he had been falsely accused: (i) John and Jane Doe had a sexual relationship from October to December 2015, but all sexual activity ceased after Jane Doe attempted suicide on December 13, 2015; (ii) Jane Doe told John that she had been raped in high school in Colorado and had attempted suicide twice while in high school; (iii) Jane Doe frequently

displayed a temper, which she tried to project onto John as his problem; (iv) Jane Doe told John that she contemplated running away from home and not returning to Purdue; (v) on the night in December 2015 of the suicide attempt, Jane Doe was extremely erratic, had destroyed her room, was crying and talking about how she hated life and felt hopeless, and was questioning whether she wanted to be in the Navy and at Purdue; (vi) the suicide attempt took place on the top of the parking garage by the armory; (vii) John reported Jane Doe's suicide attempt to the university; and (viii) in the month of January 2016, Jane Doe distanced herself from John and started dating a Navy ROTC upperclassman.  (A 26-27.)

## G.    April 28-May 26, 2016: "Investigation"; John On Leave of Absence From Navy ROTC.

On April 28, 2016, John met with investigators in the presence of an attorney who acted as John's supporter during the meeting.  John denied sexually assaulting Jane Doe and provided texts of his communications with Jane Doe that showed nothing to indicate that a sexual assault had taken place and were inconsistent with a sexual assault having occurred.  John explained a few texts to establish that no texts supported the claim of sexual assault and further provided the investigators with a list of over thirty names to substantiate the credibility of his character and integrity.  It was the only meeting that John had with the investigators; there were no further communications from them.  (A 28.)

[8]

In the following month, the investigators prepared a report and sent it to Dean Sermersheim.  In accordance with Purdue's disciplinary procedures then in effect, John was not given an opportunity to review the investigation report at any time during the process.  (A 28-29.)

On May 20, 2016, John Doe signed a formal acknowledgment of being placed on interim leave of absence from Navy ROTC.  On May 24, 2016, John signed an authorization to release information pertaining to the case to Purdue's Department of Naval Sciences.  (A 29.)

## H.    June 6, 2016: No Hearing, Meeting With the Advisory Committee Panel and Dean Sermersheim.

On May 31, 2016, Dean Sermersheim sent a letter to John advising him that he was to attend a meeting with a three-person panel of the Advisory Committee on Equity on Monday, June 6, 2016 from 2:00 PM to 2:30 PM.  The May 31, 2016 letter further advised that the panel members had reviewed the complaint, the written responses, and the investigation report and that the purpose of the meeting was not to conduct another investigation but to listen to the parties who could provide clarification of the written materials.  (A 36.)

At no time did Jane Doe appear in person before the Advisory Committee and Dean Sermersheim.  Instead, Monica Bloom, Director of CARE, talked with Jane Doe and wrote a statement dated June 5, 2016, which Monica Bloom submitted for Jane Doe.  The Advisory Committee panel and Dean Sermersheim never met Jane

Doe, never heard any live testimony from Jane Doe, and never had the opportunity to ask questions of Jane Doe.  In the June 5, 2016 written statement, Jane Doe requested only that John be removed from the NROTC program, a group which included Jane Doe and her new boyfriend.  Jane Doe did not request a suspension or an expulsion of John nor any restrictions on his presence on campus as a student. Jane Doe's written statement indicated she did not have safety concerns about John at Purdue.  (A 30-31.)

On June 6, 2016, prior to the meeting with the Advisory Committee panel and Dean Sermersheim, John met with a Navy ROTC representative, who briefly allowed John to see a redacted version of the investigation report that Purdue's Navy ROTC had received.  John had five minutes to review the redacted investigation report but saw that it falsely stated John confessed to Jane Doe's allegations.  (A 31.)

On June 6, 2016, John and his attorney supporter met with the Advisory Committee panel and Dean Sermersheim.  The meeting did not involve any sworn testimony, was not a hearing, and was not recorded.  There was never a hearing in the case of any kind, much less a hearing when, among other things, sworn testimony would be given, cross-examination questions could be posed to Jane Doe about her allegations, and documentation could be presented chronologically.  John's June 6, 2016 meeting with the Advisory Committee panel and Dean Sermersheim was a half-hour unrecorded discussion about the written materials.  (A 32.)

[10]

Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 187

Two of the three members of the panel admitted they had not read the investigation report beforehand and only read the report at the meeting while John waited for their questions.  The one panel member who appeared to have read the investigation report before the meeting was an older person who asked accusatory questions assuming John's guilt, and all the panel members manifested hostility toward John.  At the meeting, John reiterated what he had stated in his written response -- that the accusations made by Jane Doe against him in the Notice of Allegations were false and not substantiated by any documentation, and the texts that John had provided were inconsistent with any sexual assault having taken place. John could not address what was in the investigation report because he had not been provided a copy to review for the meeting.  (A 32-33.)

## I.    June 14, 2016: Dean Sermersheim's Determination and Sanctions.

On June 14, 2016, Dean Sermersheim sent a letter to John advising him that after considering the information provided by John, Jane Doe, the University investigators, and consulting with the three-member panel from the Advisory Committee on June 6, 2016, "**I [Dean Sermersheim] have made the determination that a preponderance of the evidence does support a finding that your [John's] conduct violated the *Anti-Harassment Policy*.**"  (Bold in the original.)  This determination was made without a hearing, sworn testimony, cross-

examination, or chronological presentation of documentation, but with a presumption the female's story was true. (A 34.)

Dean Sermersheim's June 14, 2016 letter ordered the following sanctions: (1) suspension from Purdue commencing June 13, 2016 for one full academic year; (2) no contact with Jane Doe until she completes her academic program; (3) as a condition of re-entry, John would be required to complete a 90-minute bystander intervention training or equivalent program offered by CARE; and (4) as a condition of re-entry, John would be required to meet with the Assistant Director of CARE during the first semester of return. (A 34-35.)

Dean Sermersheim's June 14, 2016 letter advised that John could appeal her determination to Vice President Rollock. (A 35-36.)

## J.   June 22, 2016: John's First Appeal.

On June 22, 2016, John timely submitted an appeal to Vice President Rollock, stating that Jane Doe's allegations of sexual assault were false, that he never penetrated Jane Doe while she was sleeping without her consent digitally or otherwise, that the determination he did so was contrary to the facts, and that he was being suspended for something John did not do. John's June 22, 2016 appeal stated that a suspension would cause significant harm, including the loss of his scholarship and participation in NROTC, and noted the emotional toll the process had taken on him knowing that Jane Doe's allegations were false. (A 36.) John's June 22, 2016

appeal further stated that his "rights to due process of law have been violated," citing among other things never being provided with the evidence supposedly supporting the false accusations. (A 37.)

**K.**     **June 28, 2016: Vice President Rollock's First Appeal Decision.**

On June 28, 2016, Vice President Rollock sent a letter to John, stating that upon review, because Dean Sermersheim had not included her reasoning in reaching her determination, Dean Sermersheim was directed to revise her June 14, 2016 letter to include the factual basis for her determination and sanctions imposed.  (A 37-38.)

**L.**     **June 29, 2016: Dean Sermersheim's**
      **Re-Issued Determination and Sanctions.**

The very next day after Vice President Rollock's first appeal decision remanding the matter, on June 29, 2016, Dean Sermersheim sent a letter to John repeating her June 14, 2016 letter, only adding that "a preponderance of the evidence" supports that:

1. [Jane Doe] had fallen asleep on a futon with you on the floor beside her.  She woke up and found that you inappropriately touched her over her clothing and without her consent by placing your hand above her knee, between her legs, and moved it up to her "crotch" areas; and

2. On another occasion, while she was sleeping and without her consent, you inappropriately touched [Jane Doe] by digitally penetrating her vagina.

Case: 17-3565 Document: 16 Filed: 04/06/2018 Pages: 137

(A 38-39.) Dean Sermersheim's June 29, 2016 letter added: "I find by a preponderance of the evidence that [John] is not a credible witness. I find by a preponderance of the evidence that [Jane Doe] is a credible witness." (A 38-39.)

Dean Sermersheim in fact failed to apply the burden of proof. Jane Doe, who did not appear before the Advisory Committee panel and Dean Sermersheim, had no supporting documentation for her allegations, which were made five months after the alleged incidents took place and with no contemporaneous reports to the university or the police. In contrast, John's written response to the "Notice of Allegations" and John's statements to the investigators and to the panel and Dean Sermersheim consistently denied Jane Doe's allegations, John submitted texts between John and Jane Doe indicating no sexual assault had occurred and John's roommate stated that he did not observe any sexual assaults occurring, corroborating John's account. (A 39-40.) There was no explanation and no objective evidence supporting the credibility assessments; and without a hearing, particularly one including sworn testimony and the cross-examination, there was no proper basis for making credibility judgments. Dean Sermersheim's findings rested instead upon a bias to find for the female complainant. (A 40.)

The sanctions ordered by Dean Sermersheim did not take into account that John Doe had a previously unblemished disciplinary record at Purdue and had presented a list of names that would support his character and integrity. (A 41.)

Dean Sermersheim's responsibilities held a conflict of interest per Title IX guidance. By putting decision-making as to violation and sanction in one person who is both Dean of Students and a Title IX Coordinator, it permits decision-making in specific cases be tailored to give the appearance of vigorous Title IX enforcement and meet perceived reporting needs to the OCR. (A 41- 42.)

## M.    July 10, 2016: John's Appeal Of The Re-Issued Determination and Sanctions.

On July 10, 2016, John timely submitted an appeal to Vice President Rollock from Dean Sermersheim's re-issued determination and sanctions, stating Dean Sermersheim still failed to provide adequately the factual basis for her determination, he never had the opportunity to review the investigation report, he thus could not address any allegations questioning his credibility, and he had not been permitted to respond to any "factual evidence." John's appeal noted he had provided a list of over thirty names to substantiate the credibility of his character and integrity. (A 42-43.) John's July 10, 2016 appeal requested the disciplinary file be provided to him. (A 45.)

John's July 10, 2016 appeal challenged the meeting with the Advisory Committee panel and Dean Sermersheim: two of the three panel members did not read the investigation report before the meeting and the attitude of the panel members reflected prejudgment of John's alleged guilt. (A 43-44.)

John's July 10, 2016 appeal noted that one of the issues discussed in Navy ROTC was the "zero tolerance" policy toward sexual harassment. John reiterated that Jane Doe's accusations of sexual assault were false and stated: "Why would I not only admit to something that didn't happen, but also knowingly admit to something that would jeopardize my ROTC scholarship and future serving my country?" (A 44.) John's July 10, 2016 appeal discussed Jane Doe's possible motives for making false accusations against him (punishing him for having reported her December 2015 suicide attempt) and Jane Doe's behavior inconsistent with the accusations of sexual assault as shown by their texts. (A 44-45.)

**N.    July 22, 2016: Vice President Rollock's Second Appeal Decision.**

On July 21, 2016, Vice President Rollock sent a letter to John, upholding Dean Sermersheim's determination and sanctions. The July 21, 2016 appeal decision did not address any of the substantive issues raised by John's appeal. (A 46-48.)

On July 25, 2016, Vice President Rollock sent an e-mail letter to John, referring John's request for his education records made in his July 10, 2016 appeal letter to a Purdue Associate Legal Counsel. No documents were provided in response to John's July 10, 2016 appeal letter. (A 48-49.)

On August 16, 2016, John involuntarily resigned from Navy ROTC, his dream of serving his country as a Naval officer destroyed. Meanwhile, in August 2016 at Purdue, a second OCR investigation was opened, the student newspaper reported a

new "Sexual Assault Center" was opened on campus, and procedures for adjudicating sexual misconduct cases were amended. John was a male sacrificed to give Purdue the appearance of being Title IX compliant. (A 49-50.)

**O.** **John's Repeated Request for the Investigation Report.**

On September 20, 2016, John again requested, this time to Purdue's Assistant Legal Counsel, the documents identified in his July 10, 2016 appeal. (A 50.) On October 11, 2016, the Assistant Legal Counsel replied, stating John and his parents could go to Purdue to review the documents. (A 50.) On October 20, 2016, John and his mother reviewed documents that were made available at Purdue. He and his mother could not make copies of the documents made available for review. While the documents made available included the investigation report, it was heavily redacted. (A 51.)

**P.** **This Action.**

John brought this case, the Purdue Defendants moved to dismiss, and the Magistrate Judge granted the motion in an Opinion and Order that will be discussed below. (A 1-188; BA 1-45.) This appeal followed. (A 189.)

Case: 3:3565   Document: 16   Filed: 04/08/2019   Pages: 127

## SUMMARY OF ARGUMENT

**I.    Prospective Injunctive Relief.**  The Magistrate Judge erred in ruling, contrary to this Court's precedent in *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986), that a suspended student who has lost a Navy ROTC scholarship, has a transcript disciplinary mark and is subject to reinstatement requirements is not experiencing continuing adverse effects to justify prospective injunctive relief for constitutional due process and Title IX claims.

**II.    Denial of Constitutional Due Process.**  The Magistrate Judge erred in ruling, contrary to proper application of this Circuit's precedent and Supreme Court law, that a student who pays money for schooling at a public university does not have a legally protected claim of entitlement under Indiana law, *Reilly v. Daly*, 666 N.E.2d 439, 444 (Ind. Ct. App. 1996), or a protected liberty interest and thus may be deprived of his educational investment and his Navy ROTC scholarship by a denial of due process with respect to accusations of sexual misconduct.

**III.    Title IX Discrimination.**  The Magistrate Judge erred in ruling, contrary to *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016), and *Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018), that the Complaint did not plead gender bias.  The pleaded facts showed that John "was innocent and wrongly found to have committed" sexual misconduct and that "gender [wa]s a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

# ARGUMENT

## I.

## THE STANDARD OF REVIEW

This Court in *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012), stated the applicable standard: "We review a Rule 12(b)(6) dismissal *de novo*, construing the complaint in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts, and drawing reasonable inferences in the plaintiffs' favor." *Accord*: *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 684 (7th Cir. 2013). That is also the standard for a Rule 12(b)(1) motion when, as here, the attack on standing is based on the face of the Complaint, *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016). The Magistrate Judge gave lip service to the motion to dismiss standard (BA 10) but repeatedly did not adhere to it -- and worse.

## II.

## PROSPECTIVE INJUNCTIVE RELIEF IS AVAILABLE IN THIS CASE FOR THE CONSTITUTIONAL DUE PROCESS AND TITLE IX CLAIMS

Prospective injunctive relief -- here, elimination of the transcript disciplinary mark and the readmission requirements and reinstatement of John's Navy ROTC scholarship -- is available in this case for the constitutional due process and Title IX claims pleaded in the Complaint. The Magistrate Judge erred in ruling otherwise. (BA 11-13.)

## A.  **John Has Standing For Prospective Injunctive Relief.**

The Magistrate Judge invoked the "case or controversy" requirement of Article III of the Constitution: "'[t]o have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical.' *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017)."  (BA 11.)

John has standing for prospective injunctive relief.  The Complaint states:

> John Doe continues to suffer ongoing harm, including damages to his reputation and other non-economic and economic damages. In particular, suspension from Defendant Purdue denied him the benefits of education at his chosen school and also damaged John Doe's academic and professional reputation.  John Doe's lifelong goal of becoming of a naval officer and serving his country has been shattered.

(A 59.)  To remedy this harm, John seeks, *inter alia*, injunctive relief for the due process and Title IX violations.  (A 60, 69, 73-74.)  John faces a real and immediate threat of future injury from "ongoing harm": he is a suspended student with a transcript disciplinary record of sexual misconduct, subject to requirements for readmission and suffering a loss of a Navy ROTC scholarship.  (A 8-9, 34-35, 49-50, 53-54, 59-60, 69.)  John is not faced with conjectural or hypothetical or past injury; life altering harms are visited upon wrongly disciplined males in these campus sexual misconduct tribunals.  John has a sexual misconduct finding on record and is not able to pursue a career as a Navy officer; for other males, it is having a sexual misconduct finding on record and not being admitted to medical

school or losing a job opportunity at an investment bank. In contrast, what *Simic* holds is that a claim of injury from possibly receiving a ticket in the future for texting while driving in violation of a city ordinance was conjectural.

**B.** **John Seeks Prospective Injunctive Relief From "Ongoing Harm".**

The Magistrate Judge asserts, incorrectly, that the Complaint does not seek prospective injunctive relief and asserts, incorrectly, that John has not alleged he is currently subject to the policy or that the policy will be applied to him in the future. (BA 12.) The Magistrate Judge misread the Complaint contrary to motion to dismiss rules (p. 19 above), Title IX practice and this Court's precedent.

As pleaded (A 8-9, 34-35, 49-50, 53-54) and stated in his opposition to dismissal (A 143-144), John is a suspended student who is subject to readmission requirements and thus he is suffering "ongoing harm" from the terms of the ongoing discipline that Purdue has imposed; and John seeks injunctive relief that remedies the violations of due process and Title IX in his case -- which relief necessarily includes and Title IX practice contemplates such prospective relief as elimination of the transcript disciplinary mark and readmission requirements and reinstatement of John's Navy ROTC scholarship so as to deal with continuing adverse effects (A 60, 69, 73-74). This Court in *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986), ruled that such prospective injunctive relief is proper:

> The injunctive relief requested here, reinstatement and expungement of
> personnel records, is clearly prospective in effect and thus falls outside

the prohibitions of the Eleventh Amendment. The goal of reinstatement and the removal of damaging information from the plaintiff's work record is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements.

Accord: *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (records of punished inmates cleared of any mention of discipline); *Shepard v. Irving*, 77 Fed. App'x 615, 620 (4th Cir. 2003) (failing grade and plagiarism record constituted ongoing injury and were expunged).

John's position is also supported by one of the two Seventh Circuit cases cited by the Magistrate Judge, *Scherer v. Marriott Int'l Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (BA 12), where a handicapped hotel guest was allowed to bring a case against one hotel for violations of the American Disabilities Act for prospective injunctive relief because the hotel did not have spring-hinged doors. The other case, *Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (loss of supervisory position due to the employee's failure to serve a State Commission decision), is inapposite.

## C. <u>The Magistrate Judge Impermissibly Faulted The Complaint.</u>

Contrary to motion to dismiss rules (p. 19 above) and the allegations of the Complaint (A 8-9, 34-35), the Magistrate Judge faulted the Complaint for not alleging John is a student at Purdue and will seek reinstatement. (BA 12.) The Magistrate Judge's noting the suspended student's taking of classes at another school (which many males do during a suspension) and seizing upon not alleging John

[22]

would seek readmission subject to the terms of sanction is construing the Complaint in the light most unfavorable to the plaintiff contrary to motion to dismiss rules (p. 19 above).

**D.    Prospective Injunctive Relief Is Available.**

The Magistrate Judge asserted that no case has held prospective injunctive relief is available in the circumstances of this case.  (BA 13.)  That is incorrect: *Elliott v. Hinds*, 786 F.2d at 302; cases cited below, pp. 24-25.  Where a student has been erroneously disciplined in violation of constitutional due process and/or Title IX with continuing, present adverse effects, the federal courts have the power to order prospective injunctive relief to address the "continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

**III.**

**THE COMPLAINT STATES A
CONSTITUTIONAL DUE PROCESS CLAIM**

The Complaint states a constitutional due process claim.  (A 13-60.)  The Magistrate Judge erred in ruling to the contrary by rejecting the availability of prospective injunctive relief, finding no protected property or liberty interest and dismissing prematurely the Purdue President.

**A.    The 11th Amendment Immunity Exception of *Ex Parte Young* Applies.**

Because the suspension**,** readmission requirements and deprivation of ROTC scholarship represent ongoing violations, prospective injunctive relief for

constitutional due process violations is available and the 11th Amendment immunity exception of *Ex Parte Young* applies.

The Purdue Defendants interposed Eleventh Amendment immunity as against the 42 U.S.C. § 1983 due process claims.  This Court in *Sonnleitner v. York*, 304 F.3d at 717, recognized that Eleventh Amendment immunity may be abrogated by: (i) congressional abrogation; (ii) waiver; and (iii) prospective injunctive relief against state officials in their official capacities per *Ex Parte Young*, 209 U.S. 123 (1908).  Here, the congressional abrogation with respect to 42 U.S.C. § 1983 does not extend to the state and its officials in their official capacities, *Will v. Mich. Dep't of State*, 491 U.S. 58 (1989), and no waiver is involved.  That leaves *Ex Parte Young* prospective injunctive relief against the individual Purdue Defendants in their official capacities and monetary damages against the individual Purdue Defendants in their private capacities.

The Magistrate Judge wrongly rejected the *Ex Parte Young* exception because John supposedly does not allege ongoing violations of federal law.  (BA 16.)  As discussed above (pp. 20-23), John does allege ongoing violations of federal law and rightly seeks relief from their "continuing, present adverse effects" (suspension, readmission requirements, loss of Navy ROTC scholarship).  Application of *Ex Parte Young* has been widely recognized to authorize injunctive relief to clear a student's academic record: *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016);

[24]

*Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *Shepard v. Irving*, 77 F. App'x at 620; *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995); *Johnson v. Western State Colorado University*, 71 F. Supp.3d 1217, 1230 (D. Colo. 2014).

**B.     Public Universities Do Not Have The Right To Deny Due Process In Campus Sexual Tribunals: John Has Protected Property and Liberty Interests Within The Meaning of the 14th Amendment.**

Public universities do not have the right to deny due process in campus sexual misconduct tribunals: John has protected property and liberty interests within the meaning of the 14th Amendment.   The Sixth Circuit's recent decision in *Doe v. Miami*, 882 F.3d at 599-600, made this point in a Title IX/due process case:

> Procedural due process is "implicated by higher education disciplinary decisions." *Flaim [v. Medical Coll. of Ohio]*, 418 F.3d [629,] at 633 [(6th Cir. 2005)]; *see also Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017). "Suspension 'clearly implicates' a protected property interest, and allegations of sexual assault may 'impugn [a student's] reputation and integrity, thus implicating a protected liberty interest.'" *Univ. of Cincinnati*, 872 F.3d at 399 (quoting *Cummins*, 662 Fed.Appx. at 445).

> Because John's suspension implicates a constitutionally protected interest, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also Univ. of Cincinnati*, 872 F.3d at 399.

The Magistrate Judge reached the opposite conclusion denying any protected interest and did not address what process is due and whether qualified immunity applies. (BA 16-27.)  The Magistrate Judge did so by misreading Seventh Circuit case law

Case: 1:73565-v-00033-GSL-1 document: 16 filed: 04/06/2010 Pages: 127

involving academic performance and Greek hazing without due consideration of Indiana law, Supreme Court law and the Complaint's allegations.

## 1. John Has A Property Interest.

In an opinion cited by the Magistrate Judge, *Board of Regents v. Roth*, 408 U.S. 564, 576-577 (1972), the Supreme Court discussed the applicable law:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms. . . .
>
> . . It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*See Covell v. Menkis,* 595 F.3d 673, 675–676 (7th Cir.2010) ("A protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract. . ."); *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972) (property based on implied contract); *Williams v. Wendler,* 530 F.3d 584, 589 (7th Cir. 2008) (Supreme Court recognition of property in tenured teaching position, license subject to for cause revocation only and public high school education).

[26]

Case: 1:23565-0   Document: 10   Filed: 04/06/2019   Pages: 127

### a.    The Magistrate Judge Relied On Inapposite Case Law Involving Academic Performance and Greek Hazing.

The Magistrate Judge rejected John's having a property interest, citing a series of Seventh Circuit cases starting with *Charleston v. Bd of Trustees,* 741 F.3d 769 (7th Cir. 2013).  (BA 17-24.)  The Magistrate Judge misapplied those cases.

*Charleston* was a case of a medical student's academic failure: errors in written work, plagiarism in his patient histories and other reports, late completion of quizzes, lack of required physician signatures on case logs, non-passing performance. In that context, *Charleston*, 741 F.3d at 772, stated:

> [O]ur circuit has rejected the proposition that an individual has a stand-alone property interest in an education at a state university, including a graduate education. *See Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 601 (7th Cir. 2009); *Williams v. Wendler,* 530 F.3d 584, 589 (7th Cir. 2008).- It cannot be the case, we have reasoned, "that any student who is suspended from college has suffered a deprivation of constitutional property," in part because this "would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted." *Williams,* 530 F.3d at 589.

*Charleston* involved academic failure, as did *Bissessur* where an optometry student received sub-par grades and failed a clinical rotation. *Williams* involved sorority members hazing a pledge by physical beating. Another case cited by the Magistrate Judge, *Hess v. Board of Trustees of So. Ill. Univ.*, 149 F. Supp.3d 1027

(S.D. Ill. 2015), *aff'd*, 839 F.3d 668 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1435 (2017), involved a student expelled after being arrested for knifing another student.

As recognized by the Sixth Circuit in *Doe v. Miami*, 882 F.3d at 599-600 and in *Doe v. Univ. of Cincinnati*, 872 F.3d 393, sexual misconduct cases involve different interests and concerns. The Sixth Circuit in *Doe v. Univ. of Cincinnati*, 872 F.3d at 400, explained:

> Doe contends, and UC does not dispute, that the private interest at stake in this case is significant. A finding of responsibility for a sexual offense can have a "lasting impact" on a student's personal life, in addition to his "educational and employment opportunities," especially when the disciplinary action involves a long-term suspension. . . .

> The more serious the deprivation, the more demanding the process. And where the deprivation is based on disciplinary misconduct, rather than academic performance, "we conduct a more searching inquiry." *Flaim*, 418 F.3d at 634.

### b. This Court May Recognize A Legally Protected Entitlement To A State University Education.

Further, *Charleston* did not reject recognition of a property interest in a state university education. *Charleston*, 741 F.3d at 773, explained:

> Instead of accepting a stand-alone interest, we ask whether the student has shown that he has a *legally protected entitlement* to his continued education at the university. *Bissessur*, 581 F.3d at 601–02; *Williams,* 530 F.3d at 589–90. Charleston could establish that he has this legitimate entitlement by pleading the existence of an express or implied contract with the medical school. *See Bissessur,* 581 F.3d at 601.

(Emphasis in original.)

Case: 1:23565-v-00023-SL    Document: 16    document filed 04/06/2019    Pages 389

### c.    Indiana Law Of Student Implied Contract And 14th Amendment Protection.

To determine whether there is a legally protected entitlement in this case, Indiana law must be consulted consistent with Supreme Court law. *Board of Regents v. Roth*, 408 U.S. at 576-577.

Indiana law is that an implied contract exists between a student and school: *Amaya v. Brater*, 981 N.E.2d 1235, 123-1240 (Ind.Ct.App.2013)("In *Neel v. Indiana University Board of Trustees,* 435 N.E.2d 607, 610 (Ind.Ct.App.1982), we characterized the legal relationship between a student and a university as one of implied contract. We explained that, although courts have analyzed the relationship under many different legal doctrines, '[t]he most pervasive and enduring theory is that the relationship between a student and an educational institution is contractual in nature.'"); *Gordon v. Purdue Univ.,* 862 N.E.2d 1244, 1251 (Ind.Ct.App.2007) ("'[T]he relationship between a student and an educational institution is contractual in nature. . . .'").

Indiana law is that the 14th Amendment protection applies.  In a case involving a medical student, *Reilly v. Daly*, 666 N.E.2d 439, 444 (Ind. Ct. App. 1996), stated "It is without question that a student's interest in pursuing an education is included within the Fourteenth Amendment's protection of liberty and property and that a student facing expulsion or suspension from a public educational institution is therefore entitled to the protections of due process."  In a case involving a law

student, *Gagne v. Trustees of Indiana Univ.,* 692 N.E.2d 489, 493 (Ind.Ct.App. 1998), stated: "a student's interest in pursuing an education is included within the Fourteenth Amendment's protection of liberty and property, and a student facing expulsion from a public educational institution is entitled to the protections of due process."

### d.   The Complaint Alleges A Legally Protected Entitlement.

Contrary to the Magistrate Judge's treatment of the Complaint as not alleging a specific contractual promise warranting 14th Amendment protection (BA 19-25), the Complaint does so in paragraphs 82-85, 137-142.  (A 53, 69-71.)

The Magistrate Judge's disparagement of these allegations as being insufficient (BA 21-22) is incorrect, contrary to motion to dismiss rules (p. 19 above) and contrary to Supreme Court law (p. 26 above).  The student has a legally protected entitlement to attend the school, established by the admission and payment of tuition, secured by Indiana law, and provided procedural protections. It is more than equivalent to the tenured teaching and license for cause protections in property recognized as such by the Supreme Court in, respectively, *Board of Regents v. Roth*, 408 U.S. at 576-577, and *Barry v. Barchi*, 443 U.S. 55 (1979); and it is more than equivalent to the public education recognized as property in *Goss v. Lopez*, 419 U.S. 565 (1975).

[30]

## 2.    John Has A Liberty Interest.

In *Schepers v. Commissioner, Ind. Dep't of Corr.*, 691 F.3d 909, 914 (7th Cir.
2012), this Court recognized the "stigma-plus" test for when a liberty interest
associate with reputational interest invokes 14th Amendment procedural protection,
applying it to sexual offenders.  As explained by this Court in *Mann v. Vogel*, 707
F.3d 872, 878 (7th Cir. 2013), stigma-plus is reputational injury coupled with "the
alteration of legal status, such as governmental deprivation of a right previously held,
which, combined with the injury from the defamation, justifies the . . . procedural
safeguards."  Contrary to the Magistrate Judge (BA 26), John satisfies the stigma-
plus test because he has been stigmatized by the sexual misconduct finding and has
an altered legal status, having been suspended, subjected to readmission
requirements and deprived of his Navy ROTC scholarship (A 8-9, 34-35, 49-50, 53-
54, 59-60, 69).  *See Doe v. Miami*, 882 F.3d at 599.  The Magistrate Judge's focus
on *Paul v. Davis*, 424 U.S. 693 (1976) (BA 25), is misplaced; there was a concern
expressed in *Paul v. Davis* about § 1983 actions displacing defamation actions, but
there is no defamation action that John can bring.

## 3.    John Has A Property/Liberty Interest.

The Magistrate Judge noted that Complaint paragraph 81 alleges a property
interest in future educational and employment opportunities and occupational
liberty  (BA 26; A 53) and examined it through the lens of a passage appearing in

three Seventh Circuit employment cases: *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015), *Doyle v. Camelot Care Centers,* 305 F.3d 603, 617 (7th Cir. 2002) and *Townsend v. Vallas,* 256 F.3d 661, 670 (7th Cir 2001). While these cases identify a circumstance for satisfying the stigma-plus test in employment cases, it is not one invoked by John.

Paragraph 81 pointed to a feature of Title IX cases giving weight to the need for due process -- the adverse consequences of university sexual misconduct findings on male respondents in terms of their future employment prospects. John will not be able to pursue his choice of career as a Navy officer; for other males, a career as a lawyer or doctor is cut off. To say, as the Magistrate Judge does (BA 26), that Purdue is not publicizing the sexual misconduct finding ignores that the transcript with disciplinary mark goes to professional schools and prospective employers and the information does get communicated -- in John's case, to the Navy. To say, as the Magistrate Judge does (BA 26), that John is not pursuing this claim ignores the point pleaded in the Complaint. To cite *Hess*, as the Magistrate Judge does (BA 26), is to look to an inapposite case where on summary judgment no evidence was submitted on the issue.

## C.  **President Daniels Was Prematurely Dismissed.**

The due process claim against President Daniels for supervisory liability under 42 U.S.C. § 1983 was prematurely dismissed with prejudice. According to

the Magistrate Judge, § 1983 liability cannot be based on mere supervision, *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000), but rather requires that the supervisor "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Zentmyer v. Kendall Corp.*, 220 F.3d 805, 812 (7th Cir. 2000); *see also Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). The Magistrate Judge then dismissed President Daniels with prejudice by characterizing the Complaint as alleging only that President Daniels is the University President.   (BA 13-14.)  That is not accurate.  The Complaint, fairly read, alleges that Defendant Daniels was the responsible "The Buck Stops Here" official at Purdue (A 11) and at the very least turned a blind eye to the deprivation of due process rights (A 52-69).  No university president can justify what has happened in this case.  A deposition of President Daniels is appropriate before any dismissal.   Further, President Daniels is the appropriate official to be charged with implementing prospective relief.  *Doe v. Alger, et al.*, No. 5:15-cv-00035, slip op. 29-30 (D. W.Va. Dec. 23, 2016) (rejecting dismissal of university president).

**IV.**

**THE COMPLAINT STATES A
<u>TITLE IX DISCRIMINATION CLAIM</u>**

The Complaint states a Title IX discrimination claim (A 13-52, 60-69), just as the Complaints did in *Doe v. Columbia*, 831 F.3d 46, and *Doe v. Miami*, 882 F.3d 579.

[33]

## A.    The Basic Law Of A Title IX Discrimination Claim.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  Title IX may be violated by "the imposition of university discipline where gender is a motivating factor in the decision to discipline" and enforced by an implied private right of action.  *Yusuf v. Vassar*, 35 F.3d at 714, 715.

*Yusuf* classified challenges to university disciplinary proceedings for sex discrimination as falling in two categories: (1) "erroneous outcome" cases, in which "the claim is that plaintiff was innocent and wrongly found to have committed an offense"; and (2) what are called "selective enforcement" cases, in which "the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender." 35 F.3d at 715.

## B.    The Complaint Sufficiently Alleges An "Erroneous Outcome" Case.

According to *Yusuf*, for an "erroneous outcome" case, the plaintiff must allege "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and must "also allege particular circumstances suggesting gender bias was a motivating factor behind the erroneous

[34]

Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 127

findings," "that might include, *inter alia,*" statements by disciplinary tribunal members and university officials and patterns of decision-making. 35 F.3d at 715. As shown herein, the Complaint sufficiently alleges an "erroneous outcome" case in accordance with applicable precedent. The Magistrate Judge accepted that the Complaint alleges facts to cast doubt on the accuracy of the outcome of the proceeding but asserted, incorrectly, that John failed to plead facts plausibly alleging gender bias. (BA 28-43.) In so ruling, the Magistrate Judge made three basic mistakes.

### 1.   The Magistrate Judge Erred In Rationalizing Away Applicable Precedent.

The first basic mistake was to rationalize away applicable precedent supporting the pleading of gender bias.

### a.   *Doe v. Columbia*.

*Doe v. Columbia*, 101 F.Supp.3d 356 (S.D.N.Y. 2015), *rev'd*, 831 F.3d 46 (2d Cir. 2016), presented a Title IX claim by a male student suspended for allegedly having non-consensual sex despite the woman giving verbal consent and choosing the place of having sex, undressing herself and providing the condom; the investigator operated in enumerated ways that showed bias against the male respondent (including presuming the male student to be guilty and disregarding witnesses for the male student), there were political pressures to find males

responsible at Columbia and the process was inadequate.  831 F.3d at 49-53.  The

Second Circuit upheld the Complaint.  831 F.3d at 53-59.

The Magistrate Judge wrongly favored the reversed district court (BA 29) and

attempted to distinguish the Second Circuit's decision with three points (BA 40-41)

that are not points of distinction but of similarity.

*First*, the Magistrate Judge cited political pressures on Columbia's campus (A

40); however, in addition to the pleaded federal pressures (A 13-18, 57-58), Purdue

had its equivalent campus pressures that produced Jane Doe's allegations.  During

the April 2016 Sexual Assault Awareness Month, Purdue hosted more than a dozen

events to advocate the reporting of sexual assaults. During the first ten days of April

2016, there were five reports of alleged sexual assault at Purdue, including the report

by Jane Doe against John. (A 19-20.)

*Second*, the Magistrate Judge recognized that in *Doe v. Columbia*, the Second

Circuit stated (831 F.3d at 57): "[w]hen the evidence substantially favors one party's

version of a disputed matter but an evaluator forms a conclusion in favor of the other

side (without an apparent reason based in the evidence), it is plausible to infer . . .

that the evaluator has been influenced by bias."  The Magistrate Judge asserted there

was an absence of factual evidence in John's case.  (A 40-41.)  That is false.  The

evidence of the text messages between John and Jane Doe, John's submissions and

his report of complainant's suicide attempt (showing an ulterior motive to the

accusations) supported his case.  (A 24-28, 32-33.)  It was Jane Doe's version that had no supporting facts:  Jane Doe never made a formal complaint, did not write her own statement and did not make an appearance to be questioned by the Advisory Committee. (A 30-31.)

*Third*, the Magistrate Judge stated that in *Doe v. Columbia*, the combined facts could support a conclusion that the investigator and university decisionmakers were motivated by gender bias.  (A 41.)  The same is true here of the pleaded facts in the Complaint, which alleges "[t]he totality of the circumstances establish that Defendants acted out of gender bias in reaching the 'erroneous outcome'" and "[t]he totality of circumstances establishes that Defendant Purdue has demonstrated a pattern of inherent and systematic gender bias and discrimination against male students accused of misconduct." (A 65-66, 69.)

### b.    *Yusuf v. Vassar.*

*Yusuf* presented a Title IX claim by a male student disciplined for allegedly harassing his roommate's girlfriend; the disciplinary charges were only brought after the male respondent filed criminal charges against his roommate for assault.  *Yusuf* reversed the district court's dismissal of the case and reinstated the Title IX "erroneous outcome" claim.  35 F.3d 709, 714-716.  *Yusuf* gave guidance regarding how a Complaint alleging an "erroneous outcome" survives a motion to dismiss:

> [T]he pleading burden in this regard is not heavy.  For example, a
> complaint may allege particular evidentiary weaknesses behind the

finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof.

35 F.3d at 715. According to *Yusuf*, while allegations of a procedurally flawed proceeding must be accompanied by allegations of "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding," sufficient were allegations that males accused of sexual harassment at Vassar are "historically and systematically" and "invariably found guilty, regardless of the evidence, or lack thereof." 35 F.3d at 715-716.

The Magistrate Judge, in recognition that *Yusuf* supports John's Complaint, asserts *Yusuf* does not pass muster under a series of district court opinions (BA 41-42) that will be discussed as part of the Magistrate Judge's third basic error. The district court in *Doe v. Columbia*, 101 F.Supp.3d 356 also all but overruled *Yusuf* as if the district court were the Second Circuit; the real Second Circuit in *Doe v. Columbia* did not overrule *Yusuf* but rather fortified it.

     c.    ***Doe v. Washington and Lee***.

*Doe v. Washington and Lee*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015), presented a Title IX claim by a male student expelled for allegedly having non-consensual sex despite the woman being the sexual aggressor. The district court upheld the pleading of the Title IX "erroneous outcome" claim considering "the totality of the circumstances" that included the university's failure to consider the

facts of consensual sex and the procedural flaws reflecting a practice of railroading males.

The Magistrate Judge erroneously purported to distinguish *Doe v. Washington and Lee* because the totality of circumstances supported the Title IX claim, the university was under OCR investigation and a Title IX officer published an article treating consensual sex as rape. (BA 43.) As noted above, the totality of circumstances supported John's pleading of a Title IX claim, Purdue was also under OCR investigation (A 57) and while Dean Sermersheim did not publish an article that reflected gender bias, she held positions that as noted above, were in conflict of interest in violation of Title IX guidance (A 64-65).

### d. *Prasad v. Cornell.*

*Prasad v. Cornell*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016), presented a Title IX claim by the male student Prasad who was accused of sexual misconduct by a complainant who had invited him to stay with her the night after an evening of drinking. The district court upheld the pleading of the Title IX "erroneous outcome" claim because of the "totality of the circumstances" in investigator bias in favor of complainant, the disregarding of witnesses supporting Prasad and procedural flaws affecting the outcome. 2016 WL 3212079 at *16-17.

The Magistrate Judge purported summarily to distinguish *Prasad* because it involved "compromised evidence and the complicity of the university" (BA 43), but

those words cannot obscure the fact that key elements in *Prasad* were very much like *Doe v. Columbia* and this case.

### e.    *Neal v. Colorado State.*

*Neal v. Colorado State*, 2017 WL 633045 (D. Colo. Feb. 16, 2017), included a Title IX claim by student/football player Neal who was found responsible for non-consensual sex even though the woman involved did not file a complaint and said the sex was consensual.  The court upheld the Title IX claim by likening Neal's allegations to *Yusuf*, following *Doe v. Columbia*, rejecting the approach of a number of district courts discussed below (pp.55-59) and noting the investigator's anti-male comments critical of the football team.

According to the Magistrate Judge, a number of Neal's allegations were insufficient, reflecting the Magistrate Judge's agreement with the approach of district courts rejected in *Neal v. Colorado State*.  The Magistrate Judge also said John's case was distinguishable here because the investigator in *Neal v. Colorado State* made a number of gender biased statements.  But the distinction does not hold: *Neal v. Colorado State* follows *Yusuf* and *Doe v. Columbia*, and in John's case, the investigation report falsely stated he admitted to the misconduct and Purdue never gave John access to the investigation report during the disciplinary case which served a gender biased result (A 28-29, 31, 45, 50, 63).

Case: 1:23-cv-0005 Document: 16 filed 04/06/2019 Pages: 197

### f. *Doe v. Miami*

The Magistrate Judge did not consider the Sixth Circuit's decision in *Doe v. Miami* because it was issued five months after the decision here. It is nonetheless an important case because the Sixth Circuit upheld an "erroneous outcome" Title IX claim without using the relaxed Title VII pleading standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as the Second Circuit had in *Doe v. Columbia*. 882 F.3d at 589.

The *Doe v. Miami* district court had ruled that while the disciplined male student's Title IX claim had shown doubts about the accuracy of the outcome of the university disciplinary proceeding that male had engaged in non-consensual sex, the male student failed to plead gender bias. 882 F.3d at 592. The Sixth Circuit reversed, citing "factual allegations relating to Miami University's pattern of activity respecting sexual assault matters and the asserted pressures placed on the University" and commenting that "[a]t the pleading stage, John's allegations need only create the plausible inference of intentional gender discrimination; although alternative non-discriminatory explanations for the defendants' behavior may exist, that possibility does not bar John's access to discovery." 882 F.3d at 594.

Just as the male in *Doe v. Miami* attacked the non-reasoned decision-making as allowing for gender-based decisions, 882 F.3d 593, so has John here (A 36-37, 39-40, 42-43, 66-67). Just as the male in *Doe v. Miami* alleged that only males were

[41]

investigated and that in the Fall 2013-Spring 2014 semester, every male accused was found responsible, 882 F.3d at 593-594, so John has here alleged that "all students that have been suspended or expelled from Defendant Purdue for sexual misconduct have been male" and that "Male respondents, and particularly male athletes and male ROTC members, in sexual misconduct cases at Defendant Purdue are discriminated against solely on the basis of sex.  They are invariably found guilty, regardless of the evidence, or lack thereof."  (A 68-69.)  Just as the male in *Doe v. Miami* cited the federal pressures on the university to prosecute sexual assault vigorously on pain of losing federal finding which results in male respondents being found responsible, 882 F.3d 594, John here has alleged those same federal pressures (A 13-19, 68).  *Doe v. Miami* is clear precedent for upholding John's Complaint.

### 2.   The Magistrate Judge Erred In Rationalizing Away Pleaded Facts Alleging Gender Bias.

The Magistrate Judge's second basic mistake was to rationalize away facts pleading gender bias.

### a.   Procedural Deficiencies, Victim Centered Process and Gender Bias.

The Magistrate Judge erroneously rejected the Complaint's allegations regarding procedural deficiencies and victim-centered process.  (BA 31-32.)

[42]

Case: 17-3565 Document: 16 Filed: 04/06/2018 Pages: 109

## i. **Procedural Deficiencies.**

The procedural deficiencies here are rightly called Kafkaesque: no hearing; no sworn testimony; no cross-examination; no access to the investigation report; misrepresentation in the investigation report that John confessed guilt; no reliable and impartial investigation; no provision of evidence supporting the allegations; the female's story presumed true; the male presumed guilty. (BA 31-32; A 34, 62-63, 67.) Such procedural deficiencies are relevant and are part of gender biased proceedings. *Yusuf*, 35 F.3d at 715; *Doe v. Columbia*, 831 F.3d at 57; *Prasad v. Cornell*, 2016 WL 3212079 at *16; *Doe v. Washington and Lee*, 2015 WL 4647996 at *10.

The practical reason why due process matters is so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The procedural defects in this case resulted in an "erroneous outcome" based on an erroneous and distorted conception of the facts.

Of particular concern are the false investigation report and Dean Sermersheim's credibility assessment for Jane Doe and against John when there was no hearing and no cross-examination and Jane Doe did not appear before the Advisory Committee and Dean Sermersheim. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are

Case: 17-3565 Document: 16 Filed: 04/06/2019 Pages: 139

tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Given the stakes in campus Title IX proceedings, students facing sexual misconduct accusations should be afforded an opportunity to cross-examine their accusers. *Doe v. Univ. of Cincinnati*, 872 F.3d at 403 ("Cross-examination, 'the principal means by which the believability of a witness and the truth of his testimony are tested,' can reduce the likelihood of a mistaken exclusion and help defendants better identify those who pose a risk of harm to their fellow students."); *Winnick v. Manning*, 460 F.2d 545, 549–50 (2d Cir. 1972) ("if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing"); *Neal v. Colorado State*, 2017 WL 633045, at *25 (where disciplinary proceeding turned on credibility, "cross-examination of witnesses might have been essential to a fair hearing").

## ii. <u>Victim-Centered Process.</u>

Complaint paragraph 121 "alleges that this is a victim-centered process in which the male student is presumed guilty and the burden of proof is placed on the male respondent." (BA 32; A 63.) The notion of a victim-centered process not showing gender bias is a false and legally indefensible rationalization for lack of due process and excuse for gender bias, no matter how many district courts have repeated it (BA 32, 39); and its application on a motion to dismiss is contrary to motion to dismiss rules (p. 19 above).

Case: 17-3565   Document: 16   Filed: 04/06/2019   Pages: 127

When any court says the process is "victim centered, but not gender biased," that is: (i) trumping reality with a theoretical but non-existent possibility of females being both victims and accused and males being both victims and accused; and (ii) ignoring what these sexual misconduct tribunals have been about.

If the system is victim centered, it is not neutral and impartial; and the reality is that males are the "accused" respondents and females are the "victim" complainants. There is no denying that almost all complainants are females and almost all respondents are males. An United Educators study shows 99% of the accused are male. "Confronting Campus Sexual Assault: An Examination of Higher Education Claims," https://web.archive.org/web/2017012225139/https://www.ue. org.uploadedFiles/Confronting%20Campus%20Sexual%20Assault.pdf. John's Complaint includes allegations that males are the sanctioned respondent subjects of these campus sex tribunals (A 68-69), which is what was alleged in *Doe v. Miami*, 882 F.3d at 594. The September 2017 Dear Colleague Letter, https://www.cmu.edu/title-ix/colleague-title-ix-201709.pdf, criticized the April 2011 Dear Colleague Letter for directing that schools use sexual misconduct procedures with reduced protections for the accused, which has meant that male respondents such as John are sanctioned. *Doe v. Miami*, 882 F.3d at 594.

What's more, the conception of these campus sexual misconduct tribunals was to protect women. The April 2011 Dear Colleague Letter premised the need for

[45]

colleges to discipline sexual misconduct, using a preponderance of the evidence standard, with the false statistic that 1 in 5 *women* on campus were victims of sexual assault.  https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.[1] To deny the female protectionist nature of campus sex tribunals is politics, not law.

Title IX by text and legislative history is a non-discrimination statute, for requiring fairness for men and women, and does not justify procedurally defective and biased tribunals favoring female complainants and discriminating against male respondents.  For the importance of text in statutory interpretation, *see* A. Scalia, *Reading Law: The Interpretation of Legal Texts* (West Pub. 2012); and for the argument for examining legislative history, *see* R. Katzman, *Judging Statutes* (Oxford Univ. Press 2014).

**b.    Sanction and Gender Bias.**

The Magistrate Judge referred to the Complaint's paragraph 43 describing the sanctions and observed that the order of sanctions was neutral on its face.  (BA 32-33.)  That ignores sanctions don't need to be worded in reference to gender if (as pleaded) invariably males are being sanctioned and the severity of sanction reflects

---

[1] A Bureau of Justice Statistics (DOJ) study, 1995-2013, published in December 2014 found that college-age female students on campus less likely to be victims of sexual assault than non-students and the real number of college women assault victims is .03 in 5. *Rape and Sexual Assault Victimization among College Age Females, 1995-2013* (Special Report), U.S. Department of Justice, December 2014, http://www.bjs.gov/content/pub/pdf/rsavcaf 9513.pdf.

a gender biased belief that males need to be sanctioned severely for sexual misconduct.  Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027 (2016).

### c.   Dean Sermersheim's Findings and Gender Bias.

The Magistrate Judge ruled that the Complaint's allegations concerning Dean Sermersheim's findings do not show gender bias on the basis of five false assertions contrary to motion to dismiss rules (p. 19 above).

1.   The Magistrate Judge asserted that John "alleges no facts to show that Dean Sermersheim was biased when weighing Jane Doe's and Plaintiff's statements" and that "[t]o plead facts sufficient to show an erroneous outcome attributable to intentional sex discrimination, Plaintiff must allege more than disagreement with how accurately Dean Sermersheim weighed the evidence."  (BA 34.) John, however, does far more than allege disagreement with Dean Sermersheim and weigh the evidence differently.  What is alleged is "a failure in fact to apply a burden of proof," "the absence of a preponderance of evidence supporting the finding of a violation by John," "no explanation supporting Dean Sermersheim's stated credibility judgments for the female Jane Doe and against the male John," "no objective evidence supporting Defendant Dean Sermersheim's stated credibility judgments" and "no proper basis for making such credibility judgments" such that "[o]nly an anti-male bias to find for the female complainant and against the male

respondent can explain Dean Sermersheim's purported findings concerning the preponderance of the evidence."  (A 66.)

2.    The Magistrate Judge asserted that John's "allegation that he was presumed to be guilty is nothing more than a bare-bones allegation with no factual support." (BA 34.)  That is false: John bases that statement on the numerous specifics in his submissions that are detailed in the Complaint. (A 24-25, 36-37, 39-48.)

3.    The Magistrate Judge asserted "these facts may be victim-biased, but there is nothing that is specifically gender-biased." (BA 34.)  As discussed above (pp. 44-46), that proposition is untenable.

4.    The Magistrate Judge asserted John "does not specify any facts from either his own testimony, his written statements, or Jane Doe's statement to support his argument that the facts were not properly weighed or to suggest that the evidence 'substantially favors' his version of the events."  (BA 34.)  That statement assumes no one will not actually read the Complaint to see how false the Magistrate Judge's statement is.   (A 24-25, 36-37, 39-48.)   The facts pleaded in the Complaint demonstrate a point made in *Doe v. Columbia*: "When the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer . . . that the evaluator has been influenced by bias."  831 F.3d at 57.

[48]

5.     The Magistrate Judge asserted there was no deviation from procedure from the now revoked April 2011 Dear Colleague Letter and no requirement in the April 2011 Dear Colleague Letter for detailed findings of fact (BA 34); however, that misses the Complaint's point that Dean Sermersheim's conclusory statements facilitated findings grounded in gender bias and not evidence.

### d.     Dean Sermersheim's Conflict of Interest and Gender Bias.

The Magistrate Judge did not state fully the Complaint's allegation that Dean Sermersheim, Dean of Students and a Title IX Coordinator, acted with a conflict of interest in violation of Title IX guidance that permitted "decision-making in specific cases be tailored to give the appearance of vigorous Title IX enforcement and meet perceived reporting needs to U.S. Department of Education Office of Civil Rights." (A 64-65.)   The Magistrate Judge omitted reference to the consequences of the conflict of interest, obscuring the gender biased effects of the conflict; the Magistrate Judge's assertion that the Complaint's conflict of interest does not show gender bias (BA 35) fails to deal with the reason the Complaint alleges gender bias.

The Magistrate Judge, based on two non-Title IX cases, invoked a presumption of administrative honesty that does not justify conflicts of interest and has no place in the Title IX context.  *Hess v. Board of Trustees of So. Ill. Univ.*, 839 F.3d 669, involved the suspension of a student for knifing another student in a bar fight.  The objection in *Hess* was to the presiding officer at the interim suspension

hearing also acting as presiding officer at the post-suspension hearing; *Hess* acknowledged that "biased decision-making does violate due process" but denied such bias was present in that case "because we presume that administrators are honest and impartial." 839 F.3d at 675. *Withrow v. Larkin*, 421 U.S. 35 (1975), involved the suspension of a doctor by the Wisconsin Medical Examining Board. What *Hess* and *Withrow v. Larkin* addressed was very different than a conflict of interest contrary to Title IX guidance.

The Magistrate Judge also cited two inapposite cases of "multiple roles." In *Doe v. University of St. Thomas*, 240 F.Supp.3d 984 (D. Minn. 2017), a member of a sexual assault task force was additionally a part time police officer. In *Sahm v. Miami University*, 110 F.3d 774 (S.D. Ohio 2015), the Title IX investigator held multiple roles as part-time police officer, a member of a task force on sexual assault and Title IX investigator. These "multiple role" cases do not pose conflicts of interest contrary to Title IX guidance carrying the risk of biased decision-making.

### e. The Denial of Access to the Investigation Report and Gender Bias.

The Magistrate Judge erroneously dismissed the denial of access to the investigation report as involving gender neutral behavior and the denial of access to the investigation report as another procedural deficiency not showing gender bias. (BA 36.) As discussed above (pp. 43-46), the "victim centered, but not gender biased" notion is false, and procedural deficiencies are relevant to gender bias.

Further, here, the investigation report falsely stated John had confessed to the alleged sexual misconduct and was not provided by the university to John. These procedural deficiencies are extremely prejudicial and cannot be rationalized away as a product of informality, but rather support the pleading, similar to *Prasad v. Cornell*, 2016 WL 3212079 *16 and *Doe v. Washington and Lee*, 2015 WL 4647996 at *10, that "John Doe was a male sacrificed to give Defendant Purdue the appearance of being Title IX compliant." (A 50.)

### f. <u>Totality of the Circumstances Shows Gender Bias.</u>

The Magistrate Judge recognized that Complaint paragraph 126 pleads that "[t]he totality of the circumstances establish that Defendants acted out of gender bias in reaching the 'erroneous outcome.'" (BA 36; A 65-66; BA 36.) The Complaint's reference to "totality of the circumstances" incorporates all that is pleaded in the Complaint. (A 13-69.) The Complaint thus follows *Prasad v. Cornell*, 2016 WL 3212079 *17 and *Doe v. Washington and Lee*, 2015 WL 4647996 at *10, in pleading "totality of the circumstances" supporting finding gender bias.

The Magistrate Judge, however, asserted that Purdue considered all the evidence and John's pleading just meant that John was dissatisfied with the result. (BA 36.) That is not what the Complaint pleads, and that is not a permissible reading according to motion to dismiss rules (p. 19 above).

The Magistrate Judge was incorrect to say that the Complaint concedes that six individuals determined credibility (BA 36); the Complaint does no such thing, but rather identifies only the Dean deciding the case as stating a credibility determination but without a hearing, without support in the evidence and with a conflict of interest permitting gender biased decisions (A 31-34, 37-40, 64-67).

The Magistrate Judge wrongly invoked the presumption of honesty of administrators that as discussed above (pp. 49-50), has no place in Title IX and would wrongly serve to insulate schools from liability for gender-based disciplinary decisions.

### g.  **Pressures for Gender-Biased Proceedings.**

The Magistrate Judge denied the sufficiency of the Complaint's pleading that the prior Administration's Department of Education pressured Purdue to follow the April 2011 Dear Colleague Letter investigatory and adjudicatory procedures regardless of due process considerations.  (BA 37.)

The Magistrate Judge cited district court cases such as *Doe v Colorado-Boulder*, 255 F.Supp. 3d 1064 (D. Colo. 2017), *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521(D. Mass. July 14, 2015), *Yu v. Vassar*, 97 F. Supp.3d 448 (S.D.N.Y. 2015) and *Doe v. University of St. Thomas*, 240 F.Supp.3d 984.  (BA. 37.)  Reliance on these cases was part of the Magistrate Judge's third basic error.   The Sixth

Case: 1:23-5565 Document: 16 Filed: 04/06/2019 Pages: 137

Circuit's decision in *Doe v. Miami* is precedent for treating such allegations as supportive of gender bias. 882 F.3d at 594.

The Magistrate Judge erred in denying the Complaint pleaded facts showing Purdue was pressured. (BA 37.) The Complaint pleads that there were a whole series of federal actions involving: (i) OCR investigations -- two were conducted as to Purdue; and (ii) threatened cut-off of federal funds -- $14,796,00 in Purdue's case. These actions caused schools such as Purdue to fear federal funding cut-off, created a significant amount of pressure on colleges and universities to treat all those accused of sexual misconduct with a presumption of guilt and led to schools such as Purdue limiting procedural protections afforded to male students in sexual misconduct cases. (A 13-19, 57, 60, 68.)

The Magistrate Judge erroneously distinguished the Second Circuit decision in *Doe v. Columbia* on the ground of the campus pressures to protect female students from male sexual assaults (BA 37-38). As noted above (p. 36), *Doe v. Columbia* cannot be so distinguished. The Magistrate Judge wrongly ignored the analogous effects of the Sexual Assault Awareness Month at Purdue triggering the filing of sexual misconduct reports including Jane Doe's (A 19-20).

The Magistrate Judge's citation to *Austin v. Univ. of Oregon*, 205 F.Supp.3d 1214 (D. Ore. 2016), was to a case that disagreed with the Second Circuit's *Doe v. Columbia* decision. *Austin*'s rejection of the federal pressure resulting in overly

Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 189

"aggressive" efforts of universities to hold males responsible for sexual misconduct flies in the face of reality and motion to dismiss rules (p. 19 above).

### h.    Gender-Biased Pattern of Decision-Making.

The Magistrate Judge recognized that John pleads at Complaint paragraphs 131-133 "a pattern of systematic gender bias and discrimination against male students accused of misconduct," that "[a]ll students that have been suspended or expelled from Defendant Purdue for sexual misconduct have been male" and that "[m]ale respondents, and particularly male athletes and male ROTC members, in sexual misconduct cases are invariably found guilty, regardless of the evidence." (BA 38-39.)  This pleading is consistent with *Yusuf*, *Doe v. Columbia* and *Doe v. Miami*, but the Magistrate Judge gave four unpersuasive excuses for denying the pleading's sufficiency.

First excuse: statistical evidence was not pleaded.  (BA 39.)  This was cheeky: requiring the accused student to plead information that typically can only be obtained through discovery (the gender of past accused students in a confidential system), but then dismissing the case before discovery can occur.

Second excuse: even if the allegations were true, the allegations mean only there is a commitment to enforcing the rules.  (BA 39.)  That, however, is not what the Complaint pleads and is not a permissible reading under motion to dismiss rules.

[54]

Third excuse: no inference can be drawn from the fact that the accusers are female and the respondents are male because universities only receive complaints of male-on-female sexual assault and females are the ones who report sexual assaults. (BA 39.)  False.  This actually shows the gender biased nature of the campus sexual misconduct tribunals.

Fourth excuse: one litigant dissatisfied with a sexual misconduct finding does not make for a pattern of decision-making.  (BA 39-40.)  That excuse avoids dealing with the pleaded allegations of a gender biased pattern of decision-making, which is that males are the subjects of the discipline. John is not a litigant who is just dissatisfied with a sexual misconduct finding; he is a person whose hopes and dreams have been dashed by a gender biased erroneous outcome regarding what he did not do.

### 3.    The Magistrate Judge Erred In Relying Upon Reversed, Inapposite And Theoretically Misconceived Opinions To Frame Decision.

The Magistrate Judge's third basic mistake was to rely upon reversed, inapposite and theoretically misconceived opinions to frame decision.  (BA  28-30.)

#### a.    The Reversed *Doe v. Columbia* District Court Opinion And Cases Relying On It.

The Magistrate Judge embraced the reversed district court decision in *Doe v. Columbia*, 101 F.Supp.3d 356, stating he "finds more persuasive the district court's analysis in *Doe v. Columbia University* as well as the analyses of the cases relying

[55]

upon the district court decision in *Doe v. Columbia University*." (BA 29.) Wrong. The Second Circuit opinion's author, Circuit Judge Leval, is a distinguished jurist who has been on the Second Circuit for 25 years and whose opinion in *Doe v. Columbia* reflected his experience. District Judge Furman was a relatively new appointee who: (i) violated motion to dismiss rules by ignoring pleaded facts making discriminatory intent plausible and construing facts more favorably to the moving party; (ii) mischaracterized the 67-page Complaint as conclusory; (iii) denied *Yusuf* was good precedent; and (iv) rationalized away or ignored investigator's bias, female's consent to sex, political pressures on campus affecting the process and deficiencies in procedures. 831 F.3d at 48-53, 56-59.

The Magistrate Judge did attempt to resuscitate the reversed *Doe v. Columbia* district court opinion, noting with approval *Salau v. Denton*, 139 F.Supp.3d 989 (W.D. Mo. 2015), that relied upon the *Doe v. Columbia* district court opinion and *Doe v. University of St. Thomas*, 240 F.Supp.3d 984, that relied upon *Salau* including its reliance upon the *Doe v. Columbia* district court opinion. (BA 29.)

*Salau* is not good law because it relied upon the *Doe v. Columbia* district court opinion both generally and specifically to reject the pleading that males are invariably found responsible (contrary to *Yusuf*), 35 F.3d at 716, and to fault the lack of particularized pleading as to patterns of decision-making and rejecting consideration of the procedures (contrary to *Yusuf*), 35 F.3d at 715. *University of St.*

Case: 1:23565 v-0   Document: 16   document filed 04/06/2019   Pages: 127

*Thomas* purported to distinguish the *Doe v. Columbia* Second Circuit opinion on the slender ground there were specific political pressures on the Columbia campus whereas the St. Thomas plaintiff only alleged general federal pressure, 240 F.Supp. 3d at 992-99 -- which does not justify reliance upon *Salau*'s use of the *Doe v. Columbia* district court opinion.  Also, both *Salau* and *University of St. Thomas* cited the assertion victims theoretically can be both male and female -- which as discussed above, is contrary to reality and not a basis for decision.

    **b.**    **Judge Abrams's *Yu v. Vassar* and Judge
               Beckwith's *Doe v. University of Cincinnati*.**

The Magistrate Judge relied upon Judge Abrams's *Yu v. Vassar*, 97 F. Supp.3d 448, and Judge Beckwith's *Doe v. University of Cincinnati*, 173 F.Supp.3d 586 (S.D. Ohio 2016) (BA 29), which are inconsistent with subsequent decisions in their respective Circuits, *Doe v. Columbia* and *Doe v. Miami*.

*Yu v. Vassar* was wrongly decided on summary judgment.  In the *Yu* case: the male freshman, a Chinese national, engaged in sex for the first time with a sexually experienced female sophomore after both had been voluntarily drinking; the female afterward engaged in social media texting with Peter Yu saying what a good time she had; the female never filed a complaint with the police and waited for a year before bringing a complaint with the university; the female's father was a professor at Vassar and the hearing panel consisted of fellow professors; there were three weeks between the charge of sexual misconduct and the expulsion order; the *Yu*

district court did not find any problem in the investigator, without personal knowledge of the facts, testifying at the *Yu* hearing why the female should not be considered to have consented to sex and the male should be held responsible; the *Yu* district court decision upholding the Star Chamber proceedings resulting in the expulsion of Peter Yu was condemned by K. C. Johnson, "The Railroading Of Peter Yu," *Minding The Campus*, http://mindingthecampus.org/2015/04/the-railroading-of-peter-yu/.

Judge Beckwith's *Doe v. University of Cincinnati* relied upon *Yu v. Vassar* to deny that the plaintiff male had pleaded gender bias, rationalizing away statistical evidence showing discriminatory treatment of males. Contrary to the Second Circuit in *Yusuf*, 35 F.3d at 716, Judge Beckwith stated it was insufficient to plead that males were invariably found responsible.

### c.    Cases Asserting Conclusory Allegations of Bias.

The Magistrate Judge cited three cases, *Doe v. W. New England Univ.*, 228 F.Supp.3d 154 (D. Mass. 2017), *Ludlow v. Northwestern Univ.*, 79 F.Supp.3d 824 (N.D. Ill. 2015) and *Doe v. Baum*, 227 F.Supp.3d 784 (E.D. Mich. 2017), for the point that conclusory allegations of gender bias are insufficient. (BA 30-31.) These cases are inapposite; the 68-page Complaint here alleges specific facts supporting an inference of gender bias.

### d.    Cases Asserting Victims Can Be Male and Female.

The Magistrate Judge cited a string of cases for the proposition that pro-complainant and pro-victim bias is not the "equivalent" of gender bias.  As discussed above (pp. 44-46), the proposition is a false and legally indefensible rationalization for lack of due process and excuse for gender bias.

### C.    The Complaint Alleges A "Selective Enforcement" Case.

The Magistrate Judge's rejection of the Title IX "selective enforcement" claim involved misreading the Complaint.  (BA 43-44.)  Paragraph 129 states:

> Defendant Dean Sermersheim's decision to order sanctions that were "unduly severe" was affected by John Doe's male gender.  The false accusations were treated as posing a serious threat to the university when in fact there was no such threat, just an anti-male bias treating John Doe as a "rapist" on the loose.  Defendant Dean Sermersheim's decision to order sanctions that were unduly severe did not take into account that John Doe had a previously unblemished disciplinary record at Defendant Purdue and had presented a list of names that would support his character and integrity.

(A 67-68; A 41.)  The Magistrate Judge also ignored pleaded facts that Jane Doe never made a formal complaint and that her specific request was only to have John be removed from the ROTC program, as she did not have any safety concerns, and did not request John be suspended or expelled.  (A 30-31.)

The Magistrate Judge's rejection of the claim primarily rested on faulting the Complaint for not alleging similarly situated females were treated more favorably.  (BA 44.)   Males, however, are not bringing sexual assault complaints against

females on university campuses such that there is a basis for males to allege that female respondents are treated more favorably.

## **CONCLUSION**

For the reasons stated above, this Court should: (i) reverse the grant of Defendants' motion to dismiss the action, (ii) remand the case to the District Court for discovery and trial and (iii) grant such other and further relief as this Court deems just and proper.

**Dated:**       **April 6, 2018**

/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
(212) 736-2260 Fax
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com

-and-

/s/ Damon M. Cheronis
Damon M. Cheronis, Esq.
**LAW OFFICES OF DAMON
       M. CHERONIS**
140 S. Dearborn, Suite 411
Marquette Building
Chicago, Illinois 60603
(312) 386-7033
(312) 277-1920
damon@cheronislaw.com

*Attorneys for Plaintiff-Appellant*

[60]

# <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 14,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

**Dated:**     **April 6, 2018**

/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
(212) 736-2260 Fax
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com
    -and-

/s/ Damon M. Cheronis
Damon M. Cheronis, Esq.
**LAW OFFICES OF DAMON**
       **M. CHERONIS**
140 S. Dearborn, Suite 411
Marquette Building
Chicago, Illinois 60603
(312) 386-7033
(312) 277-1920
damon@cheronislaw.com
*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

   I hereby certify that on April 6, 2018, I electronically filed the foregoing Brief for Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished via the CM/ECF system upon the following parties:

   Stuart & Branigin LLP
   300 Main Street, Suite 900
   P.O. Box 1010
   Lafayette, Indiana 47902
   765-423-1561

   *Attorneys for Defendants-Appellees*


                              /s/ Philip A. Byler
                              Philip A. Byler, Esq. (Counsel of Record)
                              Andrew T. Miltenberg, Esq.
                              NESENOFF & MILTENBERG, LLP
                              363 Seventh Avenue, 5th Floor
                              New York, New York 10001
                              212 736-4500
                              pbyler@nmllplaw.com
                              amiltenberg@nmllplaw.com

                              *Attorneys for Plaintiff-Appellant*

# CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rules 30(a) and (b) are included in the appendix.

/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff-Appellant*

**BRIEF APPENDIX**

# **Table of Contents**

**Page**

Opinion and Order of the Honorable Paul R. Cherry,

    dated November 15, 2017 .................................................................   BA1

Judgment in a Civil Action, dated November 15, 2017 ........................   BA46

USDC IN/ND case 2:17-cv-00033-GSL document 316-2 filed 04/08/24 page 81 of 127
Case 1:23565 Document: 1c871ba97117d8fb Filed: 04/06/2019 Pages: 129
USDC IN/ND case 2:17-cv-00033-PRC document 31 filed 11/15/17 page 1 of 45

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | )    CAUSE NO.: 2:17-CV-33-PRC |
| | ) |
| PURDUE UNIVERSITY, PURDUE | ) |
| UNIVERSITY BOARD OF TRUSTEES, | ) |
| MITCHELL ELIAS DANIELS, JR., ALYSA | ) |
| CHRISTMAS ROLLOCK, KATHERINE | ) |
| SERMERSHEIM, ERIN OLIVER, and | ) |
| JACOB AMBERGER, | ) |
|       Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint [DE 18], filed by Defendants Purdue University, Purdue University Board of Trustees, Mitchell Elias Daniels, Jr., Alysa Christmas Rollock, Katherine Sermersheim, Erin Oliver, and Jacob Amberger on March 31, 2017. Plaintiff John Doe filed a Memorandum of Law in Opposition on June 9, 2017, and Defendants filed a Reply on June 23, 2017. On September 15, 2017, Plaintiff filed a Notice of Supplemental Authority.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

On January 24, 2017, Plaintiff John Doe filed his Complaint against Purdue University; Purdue University Board of Trustees; Mitchell Elias Daniels, Jr., individually and as agent for Purdue University; Alysa Christmas Rollock, individually and as agent for Purdue University; Katherine Sermersheim, individually and as agent for Purdue University; Erin Oliver, individually

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 82 of 127
Case: 17-3565   Document: 16   RA-2   Filed: 04/06/2018   Pages: 139

USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 2 of 45

and as agent for Purdue University; and Jacob Amberger, individually and as agent for Purdue University. Plaintiff alleges the following facts in his Complaint.

During the 2015 Fall semester and into January 2016, Plaintiff and Jane Doe, both undergraduate students at Defendant Purdue University, had a dating relationship that included having consensual sexual intercourse from October to December 2015. On December 13, 2015, Jane Doe attempted suicide in front of Plaintiff, after which all sexual activity ended. In January 2016, Plaintiff reported Jane Doe's suicide attempt to Purdue. In mid-to late January 2016, Jane Doe began to distance herself from Plaintiff, and their dating relationship ended. From November 2015 to March 2016, Jane Doe made no reports to the university or to the police of any alleged sexual assault by Plaintiff. (Cmplt. ¶ 19).

In early April 2016, when Purdue was hosting more than a dozen events to advocate the reporting of sexual assaults, Jane Doe brought a complaint at Purdue against Plaintiff for sexual misconduct. On April 11, 2016, Plaintiff received a letter dated that same date from Defendant Katherine L. Sermersheim, Purdue's Dean of Students, notifying Plaintiff that Purdue had been made aware of sexual allegations regarding Plaintiff's conduct toward another student (Jane Doe) that, if substantiated, might constitute a violation of Purdue's anti-harassment policy; that Purdue had elected to investigate the allegations; and that Defendant Erin Oliver and Defendant Jacob Amberger were appointed as investigators. Consequently, Plaintiff was not allowed to participate in Navy ROTC. *Id.* at ¶¶ 20-24, 28, 34.

Accompanying Dean Sermersheim's April 11, 2016 letter was a half-page "Notice of Allegations," which included the allegations: (i) Jane Doe and Plaintiff were in a dating relationship during the 2015 Fall semester; (ii) in November 2015, when Jane Doe stayed the night in Plaintiff's

room, Plaintiff groped her and she said to him it was not OK; and (iii) Plaintiff told Jane Doe that during another night in November 2015, while they were staying the night in Jane Doe's room, Plaintiff had penetrated her digitally while she was sleeping. Plaintiff promptly submitted a written response to the allegations, stating, in part, that: (i) Jane Doe's accusations were false; (ii) in November 2015 when Jane Doe had stayed in Plaintiff's room, she did not wake up to find Plaintiff groping her; and (iii) in November 2015 Plaintiff had not digitally penetrated her while she was sleeping. Plaintiff also provided details of Jane Doe's suicide attempt. *Id*. at ¶¶ 25-27, 29-31.

On April 28, 2016, Plaintiff met with Investigators Oliver and Amberger. Plaintiff denied sexually assaulting Jane Doe and provided texts of his communications with Jane Doe that showed nothing to indicate that a sexual assault had taken place. Plaintiff provided the Investigators with a list of over thirty names to substantiate the credibility of his character and integrity, which had been attacked by Jane Doe. Thereafter, Plaintiff had no further communication with the Investigators. *Id*. at ¶ 32.

In the month following the April 28, 2016 meeting with Plaintiff, the Investigators prepared a Report and sent it to Dean Sermersheim. Without giving Plaintiff an opportunity to review it, Dean Sermersheim sent, on May 26, 2016, the Investigator's Report to the panel members of the three-person panel of the Advisory Committee on Equity; and on May 31, 2016, Dean Sermersheim sent a letter to Plaintiff advising him that he was to attend a meeting with the three-person panel on Monday, June 6, 2016, from 2:00 p.m. to 2:30 p.m. Dean Sermersheim's May 31, 2016 letter further advised that the panel members had reviewed the complaint, the written responses, and the Investigator's Report and that the purpose of the meeting was to listen to the parties who could provide clarification. *Id*. at ¶¶ 35-36.

On June 6, 2016, Jane Doe did not appear in person before the three-person panel and Dean Sermersheim. Instead, a statement dated June 5, 2016, written for Jane Doe by Monica Soto Bloom, a Title IX Coordinator and Director of the Center for Advocacy, Response, and Education ("CARE"), was submitted to the Advisory Committee. Jane Doe did not appear in person on any other date before the Advisory Committee and/or Dean Sermersheim. *Id.* at ¶ 37.

On June 6, 2016, before the meeting with the three-person panel, Plaintiff met with a representative of Navy ROTC, who briefly allowed Plaintiff to see a redacted version of the Investigator's Report. Plaintiff saw that it falsely stated Plaintiff had confessed to the allegations in Jane Doe's complaint. Plaintiff then met with the three-person panel and Dean Sermersheim. The unrecorded meeting lasted for no more than half an hour and did not involve any sworn testimony, did not provide for cross-examination questions, and did not allow for the presentation of documents. The one panel member who had read the Investigator's Report before the meeting asked accusatory questions assuming Plaintiff's guilt, and all the panel members acted with hostility toward Plaintiff. Plaintiff reiterated that the accusations made by Jane Doe against him were false and not substantiated by documentation and that the texts Plaintiff had provided were inconsistent with a sexual assault having taken place. *Id.* at ¶¶ 38-41.

On June 14, 2016, Dean Sermersheim sent a letter to Plaintiff advising him that, after considering the information provided by Plaintiff, Jane Doe, and the Investigators and after consulting with the three-member panel of the Advisory Committee on June 6, 2016, "I [Dean Sermersheim] have made the determination that a preponderance of the evidence does support a finding that your [Plaintiff's] conduct violated the Anti-Harassment Policy." (Cmplt. ¶ 42). Dean Sermersheim's June 14, 2016 letter ordered Plaintiff: (1) to be suspended from Purdue commencing

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 85 of 127
Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 139
USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 5 of 45

June 13, 2016, for one full academic year; (2) to continue to have no contact with Jane Doe until she completes her academic program; (3) as a condition of re-entry, to complete a 90-minute intervention training or equivalent program offered by the Vice President for Ethics and Compliance or by CARE; and (4) as a condition of re-entry, to meet the Assistant Director of CARE. The letter advised Plaintiff that he could appeal the determination to the Purdue Vice President for Ethics and Compliance, Defendant Alysa Christmas Rollock. *Id*. at ¶¶ 42-44.

On June 22, 2016, Plaintiff timely appealed to Vice President Rollock, stating that Jane Doe's allegations of sexual assault were false, that he never digitally or otherwise penetrated Jane Doe while she was sleeping, that the determination he had done so was incorrect, and that his "rights to due process of law have been violated." *Id*. at ¶¶ 45-47.

On or about June 28, 2016, Vice President Rollock sent a letter of that date to Plaintiff stating that she had reviewed Plaintiff's appeal, Dean Sermersheim's letters to Plaintiff, and Jane Doe's letter dated June 14, 2016, and that, because Dean Sermersheim had not included her reasoning in reaching her determination, Dean Sermersheim was being directed to revise her June 14, 2016 letter by June 30, 2016, to include the factual basis for her determination and for the sanctions imposed. *Id*. at ¶¶ 48-49. The next day, on June 29, 2016, Dean Sermersheim sent a letter to Plaintiff repeating her June 14, 2016 letter, adding only that a preponderance of the evidence supported finding that (1) Jane Doe had fallen asleep on a futon with Plaintiff on the floor beside her and that she woke up to find Plaintiff inappropriately touching her over her clothing and without her consent by placing his hand between her legs and moving it up to her "crotch" area; and (2) on another occasion, while Jane Doe was sleeping, Plaintiff inappropriately touched Jane Doe by digitally penetrating her vagina

5

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 86 of 127
Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 128
USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 6 of 45

without her consent. Dean Sermersheim also added that Plaintiff was not a credible witness and that Jane Doe was a credible witness. *Id.* at ¶ 50.

Plaintiff alleges that there there was a failure to apply a burden of proof because Jane Doe had no supporting documentation for her allegations, which were made five months after the alleged incidents took place with no contemporaneous reports to the university or the police and which were made after Plaintiff's suicide attempt. In contrast, Plaintiff's statements to the "Notice of Allegations," to the Investigators, and to the panel of the Advisory Committee on Equity and Dean Sermersheim consistently denied Jane Doe's allegations, and Plaintiff submitted texts exchanged between Plaintiff and Jane Doe that indicated no sexual assault occurred. Plaintiff alleges that there was no explanation and no evidence supporting Dean Sermersheim's statements about credibility and that, without a hearing that included sworn testimony and cross-examination, there was no basis for making credibility judgments. Plaintiff alleges that only an anti-male bias to find for the female complainant and against the male respondent can explain Dean Sermersheim's purported findings; Plaintiff alleges that he was presumed to be guilty. *Id.* at ¶¶ 51-54.

Plaintiff further alleges that the sanctions ordered by Dean Sermersheim did not take into account that Plaintiff had a previously unblemished disciplinary record and that he had presented a list of names that would support his character. Also, by placing decision making as to both the violation and the sanction in one person who is both Dean of Students and Title IX Coordinator, the decision making was allowed to be tailored to give the appearance of vigorous Title IX enforcement to satisfy the United States Department of Education Office of Civil Rights ("OCR"). *Id.* at ¶¶ 55-57.

On July 10, 2016, Plaintiff timely submitted an appeal of Dean Sermersheim's re-issued determination and sanctions to Vice President Rollock, asserting: (i) Dean Sermersheim failed to

provide the factual basis for her determination as directed and that she merely restated her conclusions at greater length; (ii) Purdue never provided Plaintiff an opportunity to review the Investigator's Report; (iii) "Dean Sermersheim's unsubstantiated conclusion that I am not a credible witness still has not been corroborated with any facts"; (iv) at the June 6, 2016 meeting, two of the three panel members had not read the report and all three were hostile; (v) the accusations of sexual assault were false; (vi) Plaintiff would not act to jeopardize his Navy ROTC scholarship; and (vii) Plaintiff demanded to know the particular evidence used to support Dean Sermersheim's determination and to see the Investigator's Report. *Id.* at ¶¶ 58-65.

On July 21, 2016, Vice President Rollock sent a letter to Plaintiff upholding Dean Sermersheim's determination and sanctions without addressing the substantive issues raised by Plaintiff's appeal. On August 16, 2016, Plaintiff involuntarily resigned from Navy ROTC, his dream of serving his country as a Naval officer destroyed. *Id.* at ¶¶ 66-69, 72.

On October 11, 2016, three months after Plaintiff's first request for production of records, Purdue Associate Legal Counsel Tandra Foster advised that Plaintiff and his parents could go to Purdue to review the documents. On October 20, 2016, Plaintiff and his mother did so, but they were not permitted to make copies. *Id.* at ¶¶ 70-71, 73-75.

Count I of Plaintiff's Complaint in this litigation alleges a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution for a denial of Plaintiff's protected liberty interest in "his good name, reputation, honor, and integrity" without due process, *id.* at ¶ 80, and in his protected property interest in pursuing his education as well as in "future educational and employment opportunities and occupational liberty" without due process, *id.* at ¶ 81. Plaintiff alleges a constitutionally protected property interest in his continued enrollment at Purdue University and

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 88 of 127
Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 129
USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 8 of 45

to be free from arbitrary suspension and dismissal arising from the policies, courses of conduct, practices, and understandings established by Purdue. Plaintiff alleges that this constitutionally protected property interest arises from the express and implied contractual relationship between Plaintiff and Purdue. This claim is brought against all Defendants. In the Prayer for Relief, Plaintiff asks for a judgment on Count I against Defendant Purdue and seeks an award of damages for damage to his physical well being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects. Plaintiff also seeks an injunction enjoining violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints.

Count II alleges a violation of Title IX of the Education Amendments of 1972 on the basis that an "erroneous outcome" occurred in this case because Plaintiff was innocent and wrongly found to have committed sexual assault and because gender bias was a motivating factor in those findings. Plaintiff alleges that "Defendant Purdue failed to conduct an adequate, reliable, and impartial investigation when it investigated Jane Doe's allegations and subsequent adjudication in a manner that was biased against [Plaintiff]." *Id.* at ¶ 118. Plaintiff alleges that Purdue has created a victim-centered process that prosecutes an accused male student under a presumption of guilt and improperly places the burden of proof on the male student, which Plaintiff experienced. *Id.* at ¶ 121. Plaintiff alleges that Defendant Sermersheim's responsibilities as both Dean of Students and Title IX Coordinator created a conflict of interest and allowed decision making in particular cases to be tailored to give the appearance of vigorous Title IX enforcement and meet perceived reporting needs to the U.S. Department of Education Office of Civil Rights. *Id.* at ¶ 125.

USDC IN/ND case 2:17-cv-00033-GSL    document 316-2    filed 04/08/24    page 89 of 127
Case: 17-3565    Document: 16    Filed: 04/06/2018    Pages: 128
USDC IN/ND case 2:17-cv-00033-PRC    document 31    filed 11/15/17    page 9 of 45

Based upon information and belief, Plaintiff alleges that Defendants were pressured by the Obama Administration's Department of Education into following the Title IX investigative and adjudicatory process mandated by the 2011 Dear Colleague Letter regardless of due process considerations and that Purdue's mishandling of Plaintiff's case was wrongfully affected by federal pressure. *Id.* at ¶ 129. Plaintiff further alleges that the totality of circumstances establishes that Defendant Purdue has demonstrated a pattern of inherent and systematic gender bias and discrimination against male students accused of misconduct. *Id.* at ¶ 131. Upon information and belief, Plaintiff alleges that all students who have been suspended or expelled from Defendant Purdue for sexual misconduct have been male, *id.* at ¶132, and that male respondents, and particularly male athletes and male ROTC members, in sexual misconduct cases at Purdue are discriminated against solely on the basis of sex, *id.* at ¶ 133. In the Prayer for Relief, Plaintiff asks for a judgment against Defendant Purdue for money damages for damage to his physical well being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects. Plaintiff also seeks an injunction enjoining violations of Title IX in the process of investigating and adjudicating sexual misconduct complaints.

Counts III and IV allege Indiana state law claims of breach of contract and of estoppel and reliance, respectively, against Defendant Purdue.

## STANDARDS OF REVIEW

A challenge to standing is properly brought under Rule 12(b)(1) for a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). The party invoking federal jurisdiction bears the burden of establishing that

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 90 of 127
Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 138   **BA10**

USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 10 of 45

jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the motion to dismiss stage, unless standing is challenged as a factual matter, the court "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082.

## ANALYSIS

Defendants seek dismissal of all of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In response, Plaintiff pursues only his claims for injunctive relief, his § 1983

USDC IN/ND case 2:17-cv-00033-GSL   **BA11**ment: 316-2   filed 04/08/24   page 91 of 127
Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 128

USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 11 of 45

claims against the individual defendants, and his Title IX claim against Defendant Purdue University. The Court considers each claim in the Complaint in turn.

### A. Prospective Injunctive Relief–Counts I and II

Defendants seek dismissal of Plaintiff's claims for prospective injunctive relief in Counts I and II against all Defendants on the basis that Plaintiff lacks standing. To "invoke the jurisdiction of the federal courts," a plaintiff "must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). A plaintiff "must demonstrate a 'personal stake in the outcome'" and an "[a]bstract injury is not enough." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 101-02 (citing cases). "[A] plaintiff must demonstrate standing for each form of relief sought. A plaintiff may have standing to pursue damages but not injunctive relief, for example, depending on the circumstances." *Kenseth v. Dean Health Plan*, 722 F.3d 869, 890 (7th Cir. 2013). Thus, "[t]o have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (internal quotation marks omitted).

Plaintiff's Complaint asks for injunctive relief related to the claims brought under § 1983 in Count I and under Title IX in Count II:

> - against Defendant Purdue "an injunction enjoining violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints," (Cmplt., Prayer for Relief, ¶ (i), p. 66);

- against Defendant Purdue "an injunction enjoining violations of . . . Title IX in the process of investigating and adjudicating sexual misconduct complaints," (Cmplt., Prayer for Relief, ¶ (ii), p. 66).

Although Plaintiff alleges damages as a result of the *past* enforcement of Purdue's anti-harassment policy against him, neither the prayers for relief nor the remainder of the Complaint seek injunctive relief with respect to any *prospective* interaction between Plaintiff himself and any Defendant, and Plaintiff does not argue so in his response brief. This is fatal to Plaintiff's claims for injunctive relief under both § 1983 and Title IX because he has not alleged that he is currently subject to the policy or that the policy will be applied to him in the future. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *Lyons*, 461 U.S. at 102); *see also Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (finding that the *Ex Parte Young* exception to Eleventh Amendment immunity did not apply to the § 1983 claims because, although the plaintiff alleged a past violation of federal law, he did show an "ongoing" violation of the federal law as to himself); *Ceria M. Travis Acad., Inc. v. Evers*, No. 16-CV-593, 2016 WL 4098587, at *5 (E.D. Wis. July 28, 2016) (citing *Sonnleitner*, 304 F.3d at 718).

In their motion, Defendants argue that Plaintiff does not allege that he is or will be a student at Purdue University. (ECF 19, p. 4). In Paragraph 1 of the Complaint, Plaintiff alleges that he is "a now suspended student at Defendant Purdue University." (Cmplt. ¶ 1). However, Plaintiff alleges in Paragraph 4 that he "*was* a student at Purdue University" and that he "presently lives in Upland, Indiana, to attend Taylor University." (ECF 1, ¶ 4). Thus, Defendant is correct that Plaintiff does not allege that he is currently attending Purdue University or that he intends to do so in the future. Although Plaintiff alleges that he has been given conditions for reinstatement, he does not allege or argue that he intends to seek reinstatement. Standing based on Plaintiff's damages claim stemming

12

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 93 of 127
Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 128

USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 13 of 45

from the alleged past constitutional violation of the policy is insufficient to confer standing for prospective injunctive relief related to that policy. Plaintiff cites no case in support of his position that he has standing to bring a claim of injunctive relief under these circumstances.

The Court grants the Motion to Dismiss Plaintiff's claims for injunctive relief in Counts I and II and dismisses the claims for injunctive relief without prejudice. *See Ramsay v. Mayer*, 420 F. App'x 586, 588 (7th Cir. 2011) (recognizing that dismissal is without prejudice when based on lack of standing (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998))).

### B. Claims Against Defendant Daniels in His Individual Capacity

Defendants seek dismissal of all claims against Defendant Mitchell Elias Daniels, Jr. in his individual capacity on the basis that Plaintiff does not allege any individual or personal participation by Daniels. Plaintiff responds that he has alleged sufficient facts to state a claim of supervisory liability against Daniels.

Only one paragraph of the 68-page Complaint names Daniels: "Defendant Mitchell Elias Daniels, Jr. ("Defendant Daniels") is the President of Defendant Purdue ('The Buck Stops Here' with him), and he may be contacted at a Defendant Purdue e-mail listed on Defendant Purdue's web site." (ECF 1, ¶ 7). Section 1983 "does not allow actions against individuals merely for their supervisory role of others." *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). "For liability, a supervisor 'must know about the conduct *and* facilitate it, approve it, condone it, or turn a blind eye.'" *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000) (emphasis added) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)); *see also Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) (citing *Gentry*, 65 F.3d at 561). Plaintiff's sole allegation that Daniels is the university president is insufficient to state a claim against Daniels in his individual capacity

13

Case: 17-3565   Document: 16-2   Filed: 04/06/2018   Pages: 129

under § 1983. As acknowledged by Plaintiff, there is no individual liability under Title IX. And, Plaintiff has not alleged any contract liability against Daniels in his individual capacity. Therefore, the Court grants the Motion to Dismiss as to Daniels in his individual capacity and dismisses the claims against Daniels in his individual capacity with prejudice.

### C. Count I–42 U.S.C. § 1983 Claims

In Count I, Plaintiff alleges that Defendants denied him his procedural due process rights under the Fourteenth Amendment to the United States Constitution in the course of the investigation and adjudication of Jane Doe's complaint. (Cmplt. ¶¶ 78,92). More specifically, Plaintiff alleges that he was deprived of the minimal requirements of procedural fairness because the investigation and adjudication did not include cross-examination, sworn testimony, a hearing, access for Plaintiff to see the investigator's report, production to Plaintiff of the evidence that supported Jane Doe's allegations, a presumption of innocence, reasoned consideration of evidence as required by a burden of proof, or a requirement that evidence be stated in support of conclusions. *Id*. at ¶ 92.

The Fourteenth Amendment Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Under 42 U.S.C. § 1983, an individual may bring a claim against a person acting under the color of state law for a violation of this constitutional right. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017). Defendants seek dismissal of the § 1983 claims against the Purdue Defendants and the individual defendants in their official capacities based on Eleventh Amendment immunity and against the individual Defendants Oliver, Amberger, Rollock, and Sermersheim for failure to state a claim. The Court considers each argument in turn.

14

1.      *Purdue Defendants and Official Capacity Claims*

Defendants move to dismiss the § 1983 claims against Purdue University, Purdue University Board of Trustees, and its officials in their official capacities because they are not "persons" within the meaning of the statute. The United States Supreme Court has held that neither a State nor its officials acting in their official capacities are a "person" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Defendant Purdue University is a state university. *See* Ind. Code § 21-23-2, et seq. Defendant Purdue University Board of Trustees is a body corporate created by the Indiana legislature to operate Purdue University, and the individual trustees are considered to be acting in their official capacities as members of the board. *See* Ind. Code §§ 21-23-2-2, 21-27-7-4, 21-27-7-5; *Wasserman v. Purdue Univ.*, 431 F. Supp. 2d 911, 915-16 (N.D. Ind. 2006). The Eleventh Amendment bars § 1983 claims for money damages and injunctive relief against Purdue University and § 1983 claims for money damages against state officials in their official capacities because the State is the real party in interest. *See Will*, 491 U.S. at 71; *Council 31 of the Am. Fed'n of State, Cty. and Mun. Emps., AFL-CIO v. Quinn,* 680 F.3d 875, 881-82 (7th Cir. 2012); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695-96 (7th Cir. 2007) (finding the Board of Trustees of Indiana University shielded by the Eleventh Amendment); *Kashani v. Purdue Univ.*, 813 F.2d 843, 846-47 (7th Cir. 1987) (finding Purdue University shielded by the Eleventh Amendment); *Wasserman*, 431 F. Supp. 2d at 916 (finding the Purdue University Board of Trustees shielded by the Eleventh Amendment).

Plaintiff does not disagree in his response brief and, thus, abandons these claims. Accordingly, the Court grants the Motion to Dismiss the § 1983 claims for both money damages and

Case: 17-3565   Document: 16   Filed: 04/06/2018   Pages: 127

**BA16**

injunctive relief against Purdue University and the Purdue University Board of Trustees and the

§1983 claims for money damages against the individual defendants in their official capacities.

Plaintiff is correct that an exception to Eleventh Amendment immunity allows for

prospective injunctive relief claims against individual officials in their official capacities for ongoing

constitutional violations under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). *See Council 31 of the*

*Am. Fed. of State, Cnty. and Mun. Emps, AFL-CIO*, 680 F.3d at 882; *see also Sonnleitner*, 304 F.3d

at 717 (quoting *Marie O. v. Edgar*, 131 F.3d 610, 614-15 (7th Cir. 1997)). However, as set forth in

Part A above, Plaintiff cannot satisfy the *Ex Parte Young* exception in this case because, although

he alleges a past violation of federal law, he has not alleged an "ongoing" violation of federal law

against him.

2.    *Defendants Amberger, Oliver, Rollock, and Sermersheim in Their Individual Capacities*

The unavailability of a cause of action against Purdue University, the Purdue University

Board of Trustees, and the individual defendants in their official capacities does not by itself

preclude a claim under § 1983 against the individual defendants in their individual capacities for

money damages. *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012).[1] A claim for a violation

of procedural due process under the Fourteenth Amendment requires a two-step analysis: "First, the

court must identify the protected property or liberty interest at stake. Second, it must determine what

process is due under the circumstances." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d

769, 772 (7th Cir. 2013) (citing *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)). In other

words, Plaintiff "must establish that there is (1) a cognizable property [or liberty] interest; (2) a

---

[1] Defendants note that the prayer for relief in Plaintiff's Complaint does not seek money damages against the individual defendants in their individual capacities, as it asks only for "a judgment against Defendant Purdue awarding John Doe damages." *See* (Cmplt., Prayer for Relief, ¶ (i), p. 66). However, throughout the Complaint, Plaintiff alleges that certain conduct of the individual defendants violates his due process rights; therefore, the Court considers the claims.

BA17
USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 97 of 127
Case 2:17-3565   Document: 16   RESTRICTED   filed 04/08/2019   Pages: 128
USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 17 of 45

deprivation of that interest; and (3) a denial of due process." *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)).

Property rights are not created by the Fourteenth Amendment but "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Price*, 755 F.3d at 607 (internal quotation marks omitted) (quoting *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972))). In the Motion to Dismiss, Defendants argue for dismissal of Plaintiff's due process claims on the basis that Plaintiff has not alleged an actionable liberty or property interest. The Court agrees. Plaintiff makes the following allegations regarding his protected liberty and property interests in Count I:

> 80.     A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process.

> 81.     A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

> 82.     John Doe's constitutionally protected property interest in his continued enrollment at Defendant Purdue and to be free from arbitrary suspension and dismissal arises from the policies, courses of conduct, practices and understandings established by Defendant Purdue.

> 83.     John Doe's constitutionally protected property interest further arises from the express and implied contractual relationship between Defendant Purdue and John Doe.

> 84.     It is well established that Fourteenth Amendment due process protections are required in the higher education disciplinary proceedings.

> 85.     A person who has been admitted to a university, and who has paid tuition to that university, has a protected property interest in continuing his education at that university until he has completed his course of study. The state cannot deprive a person of this interest without due process.

(Cmplt. ¶¶ 80-85).

Unlike several other courts cited by Plaintiff in his response brief and alluded to in Paragraph 84 of the Complaint, the Seventh Circuit Court of Appeals has held that an individual does not have a stand-alone property interest in an education at a state university. *Charleston*, 741 F.3d at 772 (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009); *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008)); *see also Preston v. Bd. of Trs. of Chi. State Univ.*, No. 14 C 3423, 2015 WL 327369, at *7 (N.D. Ill. Jan. 26, 2015) (citing *Charleston*, 741 F.3d at 772-73). The Seventh Circuit Court of Appeals reasoned that it cannot be the case "'that any student who is suspended from college has suffered a deprivation of constitutional property.'" *Charleston*, 741 F.3d at 772 (quoting *Williams*, 530 F.3d at 589). This is, in part, because to find otherwise "'would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted.'" *Id.* (same). Notably, the court in *Charleston* acknowledged that the First Circuit Court of Appeals has recognized a "general 'interest in pursuing an education,' including university education," 741 F.3d at 773 (quoting *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988)), and that the Sixth Circuit Court of Appeals has held that "the Due Process Clause is 'implicated' by university disciplinary decisions," *id.* (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005)).

The Seventh Circuit Court of Appeals requires that the court "ask whether the student has shown that he has a *legally protected entitlement* to his continued education at the university." *Id.* (emphasis in original) (citing *Bissessur*, 581 F.3d at 601-02). To survive a motion to dismiss, a plaintiff must specifically allege the existence of an express or implied contract with the university

by being "specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id*. (citing *Bissessur*, 581 F.3d at 601, 603-04); *see also Marmarchi v. Bd. of Trs. of the Univ. of Ill.*, No. 17-1939, 2017 WL 5152156, at *3 (7th Cir. Nov. 7, 2017) (finding that the due process claim could not go forward because the plaintiff had not alleged any contract terms that the university had violated (citing *Charleston*, 741 F.3d at 773; *Bissessur*, 581 F.3d at 603)); *Preston*, 2015 WL 327369, at *7 ("General references to a college's policies are insufficient to identify a property interest." (citing *DiPerna v. The Chi. Sch. of Prof. Psychology*, No. 14-CV-57, 2014 WL 4167491, at *3 (N.D. Ill. Aug. 21, 2014))).

In *Charleston*, the plaintiff alleged a protected property interest based on the university's polices as set out in the Student Disciplinary Policy and the University Statutes, such as "'Defendant failed to comply with its own policies and due process protections set forth in its Student Disciplinary Policy'" "'by forwarding a complaint of academic dishonesty, i.e., plagiarism to the [Student Progress Committee] without intermediate review of a Student Discipline Subcommittee'" and "'by failing to allow Plaintiff a hearing, to be present and defend himself from the allegations against him, to confront the witnesses against him or to address any of the evidence presented against him.'" *Charleston*, 741 F.3d at 773 (quoting (Cmplt. ¶¶ 33, 34)). The Seventh Circuit Court of Appeals held that these allegations were insufficient to state a claim for a violation of the plaintiff's federally protected due process rights: "We have rejected similar claims of an 'interest in contractually-guaranteed university process' many times." *Id*. (citing *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012)).[2] In *Charleston*, the court held: "[W]e will be clear

---

[2] In *Park v. Indiana University School of Dentistry*, the court noted that the plaintiff did not allege a property interest in continuing his graduate education, citing *Hlavacek v. Boyle*, 665 F.3d 823 (7th Cir. 2011). *See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). However, the court in *Hlavacek* assumed, without deciding, that the plaintiff had a protectable interest in continuing his graduate education in order to consider the separate issue

once more: a plaintiff does not have a federal constitutional right to state-mandated process." *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) ("Process is not an end in itself . . . . The State may choose to require procedures . . . but in making that choice the State does not create an independent substantive right."); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law (for purposes of this case the student judicial code may be treated as a state law) is not a denial of due process, even if the state law confers a procedural right.")); *see also Miller v. Cooper*, 116 F. Supp. 3d 919, 928 (W.D. Wis. 2015) ("Stripped to its essence, Miller's challenge in this case is that he did not receive the process afforded to UWP's students before he was dismissed from the orchestra. This is exactly the type of due process claim that the Seventh Circuit has precluded." (citing *Charleston*, 741 F.3d at 769; *Park*, 692 F.3d at 832)).

In *Williams*, which concerned college undergraduate students, the court recognized the United States Supreme Court holding that a public high school education is a protected property interest under the due process clause of the Fourteenth Amendment, 530 F.3d at 589 (citing *Goss v. Lopez*, 419 U.S. 565 (1975)), but rejected the plaintiff's claim that any student suspended from college suffers a deprivation of constitutional property, *id*. The court explained that to be an actionable deprivation, there must be proof of an entitlement and that the alleged entitlement in *Williams* was the "entitlement not to be suspended without good cause," which the court held was a matter of contract, either express or implied. *Id*. The court noted that the difference between a high school student and a college student is that the "high school student's rights will usually be defined by statute." *Id*. The court held that the plaintiff did not allege a contract establishing an entitlement.

---

of whether the plaintiff had been afforded sufficient process in connection with his dismissal from the dental program, which the court found he had. *Hlavacek*, 665 F.3d at 825-26.

*Id.* at 589-90. Thus, the due process "claim fail[ed] regardless of the adequacy of the procedures." *Id.* at 589. Similarly, in *Bissessur*, which concerned a college graduate student, the Seventh Circuit Court of Appeals found that the plaintiff "failed to point to any specific promise that the University made which established that [the plaintiff] might have had an entitlement to a continuing education, or any other such entitlement." 581 F.3d at 602.

In *Hess v. Board of Trustees of Southern Illinois University*, the plaintiff alleged that he had a protected property interest in continuing his education created under Illinois common law and by a contract between himself and the university. 149 F. Supp. 3d 1027, 1031 (S.D. Ill. 2015). The court concluded, based on *Charleston*, that the plaintiff had not demonstrated a "legally protected entitlement to his continued education" at the university. *Hess*, 149 F. Supp. 3d at 1039. The court rejected the plaintiff's reliance on an implied contract and "vague references" to the Code of Conduct, requiring instead that the student specifically identify the source of the implied contract, the exact promises made by the university, and the promises he made in return. *Id.* (quoting *Charleston*, 741 F.3d at 773).[3]

In this case, the allegations within Count I itself are insufficient as Paragraphs 81-83 and 85, quoted above, contain only general allegations about promises made by Purdue University. Defendants note that in other places in the Complaint Plaintiff alludes to "various policies" that

---

[3] The court in *Hess v. Board of Trustees of Southern Illinois University* then held that, even if the plaintiff had demonstrated either a property interest through an implied contract or a protectable liberty interest, the university had provided him with all the process he was due. 149 F. Supp. 3d 1027, 1040 (S.D. Ill. 2015). On appeal, the Seventh Circuit Court of Appeals did not address whether the plaintiff had a protected property or liberty interest but rather assumed so in order to consider whether the university's procedures deprived him of the assumed rights, finding that they did not. *See Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016). Similarly, in *Medlock v. Trustees of Indiana University*, in which the student was seeking only expungement of his record and not damages, the Seventh Circuit Court of Appeals did not address the question of whether the student had a protected property interest but rather directly addressed the question of whether the student was denied due process, answering the question emphatically in the negative. 738 F.3d 867, 871 (7th Cir. 2013).

"constitute representations and promises," *see* (Cmplt. ¶ 146), specifically Paragraphs 147 and 82. However, neither paragraph alleges a contractual promise with the requisite specificity. Paragraph 147, contained with the state law claim for estoppel and reliance in Count IV, alleges that Plaintiff relied on "express and implied promises that Purdue would not tolerate, and John Doe would not suffer, harassment by fellow students and would not deny John Doe his procedural rights should he be accused of a violation of Purdue Policies." *Id.* at ¶ 147. In Paragraph 82, Plaintiff alleges generally that his "constitutionally protected property interest in his continued enrollment at Defendant Purdue and to be free from arbitrary suspension and dismissal arises from the policies, courses of conduct, practices and understandings established by Defendant Purdue." *Id.* at ¶ 82. Neither paragraph identifies a specific contractual promise other than those relating to Purdue's internal procedures, which cannot form the basis of a protected property interest. *See Charleston*, 741 F.3d at 773. Likewise, Paragraph 85 alleges an interest in completing Plaintiff's course of study, but this is nothing more than a state-law breach of contract claim, which cannot form the basis of his constitutional claim.

In his response brief, Plaintiff does not cite any controlling case law establishing a protected property or liberty interest in this case. Rather, Plaintiff cites *Goss v. Lopez*, 419 U.S. 565, 572-76 (1975), which establishes the property interest that secondary public school students have in their education. *See Williams*, 530 F.3d at 589 (distinguishing *Goss* on the basis that it addressed "public high school education"). Plaintiff then cites cases from outside the Seventh Circuit Court of Appeals that find that a student's interest in pursuing a public education falls within the liberty and property protections of the Fourteenth Amendment. (ECF 28, p. 15 (citing *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988); *Doe v. Cummins*, 662 F. App'x 437, 445 (6th Cir. 2016); *W. v. Derby Unified*

*Sch. Dist. No. 260*, 206 F.3d 1358, 1364 (10th Cir. 2000); *Davis v. Regis Coll., Inc.*, 830 P.2d 1098,

1100 (Colo. App. 1991))). Similarly, Plaintiff cites cases from other circuits in which the court finds

that a public university may not suspend or expel a student for alleged sexual misconduct without

due process. (ECF 28, p. 15 (citing *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 15 (D. Me.

2005; *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 600 (S.D. Ohio 2016))).

In attempting to distinguish *Charleston*, Plaintiff correctly notes that alleged sexual

misconduct was not at issue in that case; however, Plaintiff incorrectly describes *Charleston* as

involving a "student who flunked out." (ECF 28, p. 17). Both *Charleston* and *Williams* addressed

student disciplinary actions. In *Charleston*, the plaintiff was a medical student who was dismissed

from the medical school for unprofessional conduct, specifically based on an allegation that he "had

acted 'unprofessionally' while serving as a teaching assistant." 741 F.3d at 770-71, 771. And, in

*Williams*, cited by *Charleston*, the plaintiffs were suspended for hazing another student pledging the

plaintiffs' sorority. 530 F.3d at 585-86.

In his response brief, Plaintiff acknowledges the holding in *Charleston* that a plaintiff can

plead a legally protected entitlement by pleading the existence of an express or implied contract,

(ECF 28, p. 17), yet, Plaintiff fails to acknowledge the further requirement that the entitlement be

specifically pled. *Id*. And, Plaintiff does not identify any specific contract provision creating such

rights; instead, Plaintiff generally references his breach of contract claim in Count III. *Id*. A careful

reading of Count III demonstrates that it alleges only that Purdue did not follow its own procedures:

> 139.   Defendant Purdue['s] Policies provide[] that students are to have a
> fair and impartial disciplinary process in which it is the responsibility of the
> University to show that a violation has occurred before any sanctions are imposed.
> Defendant Purdue breached its contract with John Doe when it failed to conduct a
> fair and impartial process, including not holding a hearing. At no time was John Doe
> afforded the procedural guarantees that generally accompany a hearing, such as the

right to present witnesses and evidence, confront one's accuser and cross-examine and challenge any witnesses against him, all before an impartial and objective factfinder. Thus, Defendants violated the contract with John Doe when they failed to afford him a proper hearing on Jane Doe's accusations against him.

140.    Defendant Purdue['s] Policies provide[] that the investigation will be neutral. In this case, however, the investigation was not neutral. Defendant Purdue failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of Jane Doe's allegations and subsequent adjudication in a manner that was biased against John Doe. Further, John Doe was severely prejudiced in being able to defend himself because he was denied access to the Investigator's Report. The quick review of the Investigator's Report that a Navy ROTC officer allowed John Doe indicated that it misrepresented John Doe of confessing guilt.

141.    The U.S. Department of Education Office for Civil Rights requires that the excessively low preponderance of the evidence burden of proof be used to evaluate allegations of sexual misconduct. Though an inadequate standard to protect the procedural rights of accused students, Defendant Purdue utilizes this standard of review, as recognized in its Policies. Defendant Purdue violated this provision when they improperly placed the burden of proof on John Doe to prove that Jane Doe's accusations were not true and when it failed to utilize the preponderance of the evidence standard in fact in reaching its Determination. Defendant Purdue therefore breached its contract with John Doe when it failed to utilize the requisite preponderance of the evidence standard.

142.    Based on the aforementioned facts and circumstances, Defendant Purdue breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with John Doe. Defendant Purdue failed its duty of good faith and fair dealing when it meted out a disproportionate sanction notwithstanding the flawed process and lack of evidence in support of Jane Doe's allegations of sexual misconduct.

143.    John Doe is entitled to recover damages for Defendant CSUP's[sic] breach of the express and/or implied contractual obligations described above. As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational, athletic[4] and career opportunities, economic injuries and other direct and consequential damages.

(Cmplt. ¶¶ 139-144).

---

[4] Other than an almost identical allegation of causation in Paragraph 150 in Count IV, there are no other references in the Complaint to athletic opportunities.

In Paragraph 80 of the Complaint, Plaintiff alleges: "A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process." (Cmplt. ¶ 80). In *Paul v. Davis*, the United States Supreme Court recognized that an "interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." 424 U.S. 693, 712 (1976). And, the Court found in that case that, "any harm or injury to that interest, even where . . . inflicted by an officer of the States, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." *Id.* Now, "[i]t is well-established that an individual does not have any cognizable liberty interest in his reputation, and therefore mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *O'Gorman v. City of Chicago*, 777 F.3d 885, 891 (7th Cir. 2015) (internal quotation marks omitted) (quoting *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005)); citing *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002); *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991)).

"Rather, it is only the alteration of legal status, such as governmental deprivation of a right previously held, which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards." *Mann*, 707 F.3d at 878 (internal quotation marks omitted) (quoting *Paul*, 424 U.S. at 708-09); *see also Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015). Thus, the relevant inquiry is whether there is "an injury to reputation *along* with a change in legal status." *Hinkle*, 793 F.3d at 768 (emphasis in original) (quoting *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1015 (7th Cir. 1990)). This is known as the "stigma-plus" test. *Mann*, 707 F.3d at 878 (citing *Schepers v. Comm'r, Ind. Dep't of Corr.*, 691 F.3d 909, 914 (7th Cir. 2012)). Here,

without citation to any supporting case law, Plaintiff asserts that a student who has been expelled or suspended for sexual misconduct has suffered stigma plus. (ECF 28, p. 16). But, he fails to allege that his suspension altered a previously recognized legal status or right, which is fatal to this claim.

Finally, in Paragraph 81, Plaintiff alleges a property interest in "employment opportunities and occupational liberty." Indeed, "[w]hen a state actor casts doubt on an individual's good name, reputation, honor or integrity in such a manner that it becomes virtually impossible for the [individual] to find new employment in his chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of his choice." *Hinkle*, 793 F.3d at 768 (internal quotation marks omitted) (quoting *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (quoting *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001))).[5] However, as argued by Defendants in the Motion to Dismiss, Plaintiff has not alleged any effort by Purdue to publicize the disciplinary determination and one-year suspension, to limit Plaintiff from application for re-admission to Purdue or any other university, or to limit him from any employment or occupation. Plaintiff does not pursue this claim in his response brief. Plaintiff has not stated a claim for a protected interest in his occupational liberty. *See Hess*, 149 F. Supp. 3d at 1040 (finding, on summary judgment, that the plaintiff could not pursue his claim for an alleged liberty interest when he was expelled from the university for disciplinary reasons with a notation on his transcript because he did not present evidence that he was denied an employment opportunity because of any statement made in public by the university); *see also Despard v. Bd. of Trs. of Ind. Univ.*, 1:14-CV-1987, 2015

---

[5] "We have explained that, when an employee claims that a government employer has infringed his liberty to pursue the occupation of his choice, the employee must show that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001) (citing *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801 (7th Cir. 2000); *Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998); *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991)).

WL 4946112, at *3 (S.D. Ind. Aug. 18, 2015) (finding that the plaintiff failed to allege a liberty interest with respect to her good name, reputation, honor, or integrity because the plaintiff did not allege that her ability to secure employment had been impaired nor had she alleged any change in legal status).

Based on the foregoing, Plaintiff has failed to plead a claim based on the denial of due process based on an actionable property or liberty interest. As a result, the Court need not address whether the process given was sufficient or whether the individual defendants were entitled to qualified immunity. The Court grants the Motion to Dismiss the § 1983 claims against the individual defendants in their individual capacity and dismisses those claims with prejudice.

### D. Count II–Title IX

The parties agree that a Title IX claim can only be brought against Defendant Purdue University and not the individual defendants. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998) (recognizing that Congress abrogated the "States' Eleventh Amendment immunity under Title IX" as to entities receiving federal funds (citing 42 U.S.C. § 2000d-7)). Defendants seek dismissal of the Title IX claim against Purdue University, arguing that Plaintiff has failed to plead plausible facts showing that Plaintiff was erroneously disciplined because he is male.

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a)(1). In this case, Plaintiff alleges a violation of Title IX on the theory of erroneous outcome, which asserts that "the plaintiff was innocent and wrongly found to have committed an offense." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *see also Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016); *Doe v. Columbia*

*Coll. Chi.*, No. 17-CV-748, 2017 WL 4804982, at *8 (N.D. Ill. Oct. 25, 2017); *Doe v. Univ. of St.*
*Thomas*, 240 F. Supp. 3d 984, 990 n.1 (D. Minn. 2017).

A plaintiff alleging an "erroneous outcome" claim under Title IX must first "allege particular
facts sufficient to cast some articulable doubt on the accuracy of the outcome of the proceedings"
and then also "allege particular circumstances suggesting that gender bias was a motivating factor
behind the erroneous finding." *Yusuf*, 35 F.3d at 715; *see also Doe v. Cummins*, 662 F. App'x at 452
(citing *Yusuf*, 35 F.3d at 715); *Doe v. Columbia Coll. Chi.*, 2017 WL 4804982, at *8 (same); *Doe*
*v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 606 (S.D. Ohio 2016) (citing *Mallory v. Ohio Univ.*, 76
F. App'x 634, 638-39 (6th Cir. 2003) (citing *Yusuf*, 35 F.3d 709)). As for the particular
circumstances suggesting gender bias,

> [s]uch allegations might include, inter alia, statements by members of the
> disciplinary tribunal, statements by pertinent university officials, or patterns of
> decision-making that also tend to show the influence of gender. Of course, some
> allegations, such as statements reflecting bias by members of the tribunal, may
> suffice both to cast doubt on the accuracy of the disciplinary adjudication and to
> relate the error to gender bias.

*Yusuf*, 35 F.3d at 715; *see also Doe v. Cummins*, 662 F. App'x at 452 (citing *Yusuf*, 35 F.3d at 715);
*Doe v. Columbia Coll. Chi.*, 2017 WL 4804982, at *8 (same); *Blank v. Knox Coll.*, No. 14-CV-1386,
2015 WL 328602, at *4 (C.D. Ill. Jan. 26, 2015) (same).

In this case, even though Plaintiff has alleged facts, taken as true, to cast doubt on the
accuracy of the outcome of his disciplinary proceeding, he has failed to allege facts to create a
plausible inference that gender bias caused the alleged erroneous outcome. *See, e.g.*, *Doe v. Univ.*
*of Mass.-Amherst*, No. 14-30143, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015) (finding that
the plaintiff had alleged facts sufficient to raise at least some questions about the outcome of his

disciplinary proceeding but that the facts were "insufficient to suggest 'that the disparate treatment was because of Plaintiff's sex'").

Although Plaintiff attacks the procedural protections afforded him during the disciplinary process and generally alleges that those procedures demonstrate bias, Plaintiff has not alleged any specific statements, conduct, or a pattern of decision making suggestive of gender bias at Purdue as opposed to bias in favor of the victim of sexual assault. *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 991 (finding that, as to the alleged unbalanced questioning of the complainant-victim and of the plaintiff respondent-perpetrator, "'the mere fact that [p]laintiff is male and [the alleged victim] is female does not suggest that the disparate treatment was because of [p]laintiff's sex'" (quoting *Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. Mo. 2015)));[6] *see also Cummins*, 662 F. App'x at 453 (finding that the plaintiff failed to show how the alleged deficiencies in the disciplinary process are connected to gender bias rather than bias in favor of alleged victims, who can be both male and female (citing *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015)); *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1075 (D. Colo. May 26, 2017) (cautioning reliance on the "pro-victim not anti-male" justification but nevertheless finding at the pleading stage that

---

[6] The court in *Salau v. Denton*, 139 F. Supp. 3d 989 (W.D. Mo. 2015), quotes *Doe v. Columbia University*, 101 F. Supp. 371, 371 (S.D.N.Y. Apr. 21, 2015), which was reversed on appeal by the Second Circuit Court of Appeals in *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), after the opinion in *Salau v. Denton* was issued.

Nevertheless, the court in *Doe v. University of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017), relied on the decision in *Salau v. Denton*, including its reliance on the district court decision in *Doe v. Columbia University*, even though the appellate decision in *Doe v. Columbia University* reversing the district court decision had been issued prior to the decision in *Doe v. University of St. Thomas*. The court in *Doe v. University of St. Thomas* then distinguished its case on the facts from the Second Circuit Court of Appeal's decision on appeal in *Doe v. Columbia University*.

Likewise, for the reasons set forth in more detail below in this Opinion, this Court finds more persuasive the district court's analysis in *Doe v. Columbia University* as well as the analyses of the cases relying on the district court decision in *Doe v. Columbia University* and finds the instant facts distinguishable from those of *Doe v. Columbia University* as analyzed on appeal in that case. For the same reason, *Doe v. University of Cincinnati*, 173 F. Supp. 3d 586 (S.D. Ohio 2016), remains persuasive authority, even though it relies on *Yu v. Vassar College*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015), which was issued by a district court within the Second Circuit Court of Appeals prior to the appellate decision in *Doe v. Columbia University*.

**BA 30**

"one inference necessarily overwhelms another" and that conclusory allegations and allegations based on "information and belief" were insufficient under *Iqbal*); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 885 (N.D. Ohio 2017) (finding the allegations insufficient to support an inference of gender bias); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 187 (D. Mass. 2017) (finding that, although the plaintiff alleged that the principal Title IX officer and an investigator were biased against males, the plaintiff had failed to allege particularized facts that would permit a fact finder to draw a reasonable inference of gender discrimination as a motivating factor behind the disciplinary decision); *Doe v. Baum*, 227 F. Supp. 3d 784, 817 (E.D. Mich. 2017) (finding that the "plaintiff has offered nothing more than an administrative decision by school officials with which he disagreed, and unelaborated allegations that the decision must have been due to 'gender bias,' essentially because he is male, the complainant is female, and the decision was adverse to him" (quoting *Cummins*, 662 F. App'x at 452-53)); *Doe v. Regents of the Univ. of Cal.*, No. 2:15-CV-2478, 2016 WL 5515711, *5 (C.D. Cal. July 25, 2016) (finding that a court "cannot plausibly infer . . . that a higher rate of sexual assaults committed by men against women, or filed by women against men, indicates discriminatory treatment of males accused of sexual assault in the consequent proceedings"); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 606-07 (reasoning that "at worst, UC's actions were biased in favor of alleged victims of sexual assault and against students accused of sexual assault"); *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *8.

In his response brief, Plaintiff asserts that his Complaint pleads "'specific facts sufficient to support a plausible inference that the defendant is liable for intentional sex discrimination,'" citing Paragraphs 42, 43, 51-57, 72, and 115-133 of his Complaint in support. (ECF 28, p. 20) (quoting

*Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 835-36 (N.D. Ill. 2015)).[7] Plaintiff alleges that these paragraphs of the Complaint contain allegations that "the conduct of the case and its outcome were due to John Doe's gender" as well as "facts to show that Purdue University would have investigated or decided the case differently or sanctioned Plaintiff differently if Plaintiff were a different gender." (ECF 28, p. 22). The Court considers each of the identified allegations in turn.

First, Plaintiff argues that procedural deficiencies in the disciplinary process demonstrate bias, referencing Paragraph 42, which alleges:

> 42. On June 14, 2016, Defendant Dean of Students Sermersheim sent a letter of that date to John Doe advising him that, after considering the information provided by John Doe, Jane Doe, the University Investigators and consulting with the three-member panel from the Advisory Committee on June 6, 2016, **"I [Dean Sermersheim] have made the determination that a preponderance of the evidence does support a finding that your [John Doe's] conduct violated the Anti-Harassment Policy."** (Bold in the original.) This determination was made without a hearing on the accusations, much less a hearing where sworn testimony was taken, cross-examination afforded and documentation considered chronologically. Only an anti-male discriminatory bias presuming the female's story to be true can explain Dean Sermersheim's June 14, 2016 letter.

(Cmplt. ¶ 42). Paragraphs 115-122 within Count II similarly allege procedural deficiencies: failure to conduct an adequate, reliable, and impartial investigation; denying Plaintiff access to the Investigator's Report and the case file as a whole; misrepresentations by the investigators in their Report that Plaintiff confessed his guilt; the redaction of all names in the case file, which prevented Plaintiff from knowing who said what; and the failure to provide Plaintiff with the evidence

---

[7] Notably, the district court in *Ludlow* twice found that the plaintiff had failed to allege facts sufficient to state a claim of gender bias. *See Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 835-36 (N.D. Ill. 2015) (Feb. 5, 2015) (interpreting the allegations of the complaint as a Title IX claim, although not specifically pleaded as such, finding the plaintiff had not "alleged anything approaching 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding,'" and giving the plaintiff an opportunity to file an amended complaint to make the necessary allegations (quoting *Yusuf*, 35 F.3d at 715)); *see also Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 791-93 (N.D. Ill. 2015) (Aug. 28, 2015) (holding that the plaintiff failed to state a claim of sex discrimination based on a Title IX erroneous outcome theory).

supporting Jane Doe's allegations, which affected his ability to prepare his defense. Plaintiff alleges that this is a victim-centered process in which the male student is presumed guilty and the burden of proof is placed on the male respondent. Plaintiff questions how the determination could have been based on a credibility assessment without an adversarial hearing with cross-examination. *Id*. at ¶¶ 115-122. In Paragraph 128, Plaintiff alleges failures with the July 21, 2016 appeal decision when Rollock did not address the substantive issues raised by Plaintiff in his appeal. *Id*. at ¶ 128.

Although these facts raise some question about the outcome of the disciplinary proceeding and a certain informality in the information-gathering process, these facts do not suggest that Plaintiff was treated differently because of his gender. In fact, in Paragraph 121, Plaintiff alleges that Purdue has a victim-centered process. *Id*. at ¶ 121. And, the quotation in Paragraph 42 from Dean Sermersheim's letter is simply a statement of her credibility finding. Without more, the alleged procedural deficiencies and Plaintiff's disagreement with the credibility determination cannot be a basis to impute gender bias. *See Doe v. Cummins*, 662 F. App'x at 452 (citing *Sahm*, 110 F. Supp. 3d at 778); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 991 ("And '[d]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.'" (quoting *Sahm*, 110 F. Supp. 3d at778)); *see also Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 607 (citing *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 460-81 (S.D.N.Y. 2015)).

Next, Paragraph 43 alleges that "Dean Sermersheim's June 14, 2016 letter went on to state that Defendant Purdue does not tolerate harassment *of any person* in the workplace or educational environment" and then lists the sanctions against Plaintiff. (Cmplt. ¶ 43) (emphasis added). The wording of this allegation is gender neutral on its face. And, nothing in the four sanctions levied

against Plaintiff mentions gender or suggests gender bias. The Court addresses below Plaintiff's allegations of "selective enforcement" related to the sanctions imposed by Dean Sermersheim.

Third, Paragraphs 51-55 allege the following deficiencies in Dean Sermersheim's numbered findings: a failure to apply a burden of proof, the absence of a preponderance of the evidence supporting the finding of a violation by Plaintiff, evidence that should have been considered, the timing of Jane Doe's allegations, the lack of documentary support for Jane Doe's allegations, Plaintiff's consistent denial of the allegations, Plaintiff's written responses and in-person statements that contradicted Dean Sermersheim's findings, the texts between Plaintiff and Jane Doe indicating that no sexual assault had occurred, Plaintiff's roommate's corroboration that he did not observe any sexual assaults, Dean Sermersheim's failure to mention Plaintiff and Jane Doe's dating relationship for three months in Fall 2015 that included consensual sexual intercourse fifteen to twenty times, the lack of explanation for Dean Sermersheim's credibility finding, the absence of objective evidence supporting the credibility finding, and the lack of a hearing with sworn testimony. Plaintiff further alleges that the sanctions did not take into account his unblemished disciplinary record at Purdue or his character witnesses. *Id*. at ¶¶ 51-55. Similarly, in Paragraph 127 within Count II, Plaintiff criticizes Purdue for allowing Dean Sermersheim to "provide no explanation supporting her stated credibility judgments for the female Jane Doe and against the male John Doe." *Id*. at ¶ 127. Plaintiff concludes that "[o]nly an anti-male bias to find for the female complainant and against the male respondent can explain Defendant Dean Sermersheim's purported findings concerning the preponderance of the evidence." *Id*. at ¶¶ 54, 127. In Paragraph 54, Plaintiff further alleges that he "was presumed guilty." *Id*. at ¶ 54.

Again, Plaintiff alleges no facts to show that Dean Sermersheim was biased when weighing Jane Doe's and Plaintiff's statements, which included Plaintiff's written statement as well as his in-person statements to the panel. *See id.* at ¶¶ 30, 31. To plead facts sufficient to show an erroneous outcome attributable to intentional sex discrimination, Plaintiff must allege more than disagreement with how accurately Dean Sermersheim weighed the evidence. Unbiased persons can weigh the same evidence differently. Plaintiff's allegation that he was presumed to be guilty is nothing more than a bare-bones allegation with no factual support. Again, these facts may be victim-biased, but there is nothing that is specifically gender-biased. Notably, Plaintiff does not specify any facts from either his own testimony, his written statements, or Jane Doe's statement to support his argument that the facts were not properly weighed or to suggest that the evidence "substantially favors" his version of the events. *See Doe v. Columbia Univ.*, 831 F.3d at 67. Nowhere does Plaintiff allege that Defendants failed to follow the established procedure or deviated from the Dear Colleague Letter or the regulations set out by the Department of Education in issuing the written decision. *See, e.g.*, *Yu*, 97 F. Supp. 3d at 471 (noting that neither the Dear Colleague Letter or the Clery Act require a detailed factual finding in the disciplinary decision and finding that, even if detailed factual findings were required, the plaintiff pointed to "no evidence suggesting that failure to present such a writing to [Plaintiff] was motivated by gender bias").

Fourth, Plaintiff alleges in Paragraph 56 that Defendant Sermersheim had a conflict of interest because she made both the finding of responsibility as the Title IX Coordinator and imposed the sanction as Dean of Students. Plaintiff alleges that these roles constitute a conflict of interest under the Title IX guidance in the Dear Colleague Letter, which provides: "Title IX coordinators should not have other responsibilities that may create a conflict of interest. For example, serving as

34

the Title IX coordinator and a disciplinary hearing board member or general counsel may create a conflict of interest." (Cmplt. ¶ 57); *see also* Dear Colleague Letter, Archived Information, United States Department of Education, Office of Civil Rights, at p. 7, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (last visited Nov. 15, 2017). Plaintiff makes identical allegations in Paragraphs 124 and 125 within Count II.

Again, these allegations by themselves do not demonstrate that Dean Sermersheim acted with gender bias. The Seventh Circuit Court of Appeals has recognized in the university disciplinary context that "the combination of investigative and adjudicative functions into a single administrator does not, in itself demonstrate . . . bias . . . because we presume that administrators are honest and impartial and, therefore 'capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 55 (1975)). Thus, without more, the mere fact that Dean Sermersheim played multiple roles does not demonstrate gender bias. *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 991 (citing *Sahm*, 110 F. Supp. at 778 (finding that the facts that the Title IX investigator was also a part-time police officer and a member of the Task Force on the Prevention of Sexual Assault "do not suggest a gender bias against males so much as against students accused of sexual assault")). As discussed below, there are no allegations of any statements by Dean Sermersheim or other evidence that Dean Sermersheim held a gender bias against men.

Fifth, in Paragraph 72, Plaintiff alleges:

On August 16, 2016, John Doe involuntarily resigned from Navy ROTC, his dream of serving his country as a Naval officer destroyed. Meanwhile, in August 2016 at Defendant Purdue, a second OCR investigation was opened, the student newspaper reported that a new "Sexual Assault Center" was opened on campus and procedures for adjudicating sexual misconduct cases were amended to permit respondents and

USDC IN/ND case 2:17-cv-00033-GSL **BA36** ment 31642 filed 04/08/24 page 116 of
Case: 19-3565    Document: 16    Filed: 04/06/2018    Pages: 129
127
USDC IN/ND case 2:17-cv-00033-PRC    document 31    filed 11/15/17    page 36 of 45

> complainants to have access to the investigative report and to submit comments and
> additional information to Purdue's investigator in writing.

(Cmplt. ¶ 72). First, it is unclear what Plaintiff means by a "second OCR investigation" as there is

no allegation of a "first OCR investigation." Throughout the Complaint, "OCR" is short for the

United States Department of Education Office of Civil Rights, and Plaintiff uses the term

"investigation" to refer to both the campus investigation of Jane Doe's allegations as well as in

discussing the OCR's national policies. Second, and more importantly, the allegations in Paragraph

72 are gender and victim neutral. To the extent Plaintiff is attempting to reference the prior policy

of not allowing him to see the investigative report in his case prior to his hearing, the allegation is

no different than the other criticisms of the disciplinary procedures, which by themselves do not

show gender bias.

Sixth, in Paragraph 126, Plaintiff alleges that the "totality of the circumstances" establishes

that Defendants acted based on gender bias in reaching the "erroneous outcome" by crediting false

accusations five months after the occurrences with no supporting documentation, by discrediting

Plaintiff–a male, and by disregarding evidence tending to exculpate Plaintiff, including text

messages. *Id*. at ¶ 126. In essence, Plaintiff alleges that Purdue considered all the evidence submitted;

he is dissatisfied with the outcome. Thus, Plaintiff recognizes that the text messages he submitted,

his statements, Jane Doe's statement, and the interview were all considered. Plaintiff does not allege

the existence of any evidence other than the evidence that Plaintiff himself provided and Jane Doe's

witness statement. The Complaint alleges that six individuals—Oliver, Amberger, Sermersheim, and

three unnamed panelists—evaluated Plaintiff's personal credibility based on his own explanations

of his conduct. *Id*. at ¶¶ 32-40. At a minimum, these alleged facts are consistent with a policy of

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 117 of
127
USDC IN/ND case 2:17-cv-00033-PRC   document 31   filed 11/15/17   page 37 of 45

evidence-based decision making and do not, in and of themselves without more, suggest gender bias
given the presumption of honesty and impartiality accorded the decision makers.

Seventh, Plaintiff alleges on information and belief that Defendants were pressured by the
Obama Administration's Department of Education into following the Title IX investigative and
adjudicatory process in the 2011 Dear Colleague Letter, regardless of due process considerations.
(Cmplt. ¶ 130). And, Plaintiff alleges on information and belief that Purdue's "mishandling" of
Plaintiff's case was "wrongfully affected by federal pressure" from the federal government. *Id*.
These "general allegations about public pressure to resolve sexual assault complaints are insufficient
to show that gender bias was the motivating factor in the erroneous result." *Doe v. Columbia Coll.
Chi.*, 2017 WL 4804982, at *8-9 (citing *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *8;
*Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 606; *Doe v. Cummins*, 662 F. App'x at 452; *Yu*, 97
F. Supp. 3d at 474-75; *Doe v. Univ. of Colo.*, No. 16-CV-1789, 2017 WL 2311209, at *11); *see also
Cummins*, 662 F. App'x at 453; *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1078; *Doe v.
Univ. of St. Thomas*, 240 F. Supp. 3d at 990-91. Like in *Cummins*, Plaintiff alleges no specific facts
showing that Purdue or any decision makers in his disciplinary proceedings were pressured by the
federal government or faced public criticism for their handling of Title IX investigations prior to
Plaintiff's proceedings. *See* 662 F. App'x at 453.

Plaintiff contends that *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), provides
support for these allegations of federal pressure. But the plaintiff in *Columbia University* alleged
specific facts to support his claim that federal government pressure led to gender bias in the
enforcement proceedings. Specifically, in the weeks prior to the plaintiff's hearing, Columbia
University had been criticized by the student body and the public media for its handling of sexual

assault investigations and for turning a "blind eye to female students' charges of sexual assaults by male students." *Id*. at 56, 57-58. As a result of the public criticism, the university president held a campus-wide town hall meeting for students to discuss the issue with the dean. *Id*. In addition, the plaintiff alleged that the Title IX investigator herself had been subject to public criticism in the weeks prior to the plaintiff's hearing. *Id.* at 58-59. Applying what appears to be a lower pleading standard, the Second Circuit Court of Appeals found these facts sufficient to infer gender bias based on pressure by the federal government to avoid Title IX liability, reversing the district court decision. *Id*. at 56, 57-59.[8] Plaintiff in this case alleges no such additional facts. *See, e.g.*, *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1226 (D. Ore. 2016) (declining "to extend the Second Circuit Court of Appeals reasoning because Plaintiffs make no similar allegations of an atmosphere of scrutiny, and even had they done so, there remains no plausible inference that a university's aggressive response to allegations of sexual misconduct is evidence of gender discrimination" (citing *Doe v. Regents of the Univ. of Cal.*, 2016 WL 5515711, at \*7)).

Eighth, Plaintiff attempts to demonstrate a pattern of gender bias by alleging that the totality of the circumstances establishes that Purdue has "demonstrated a patter of inherent and systematic gender bias and discrimination against male students accused of misconduct." *Id*. at ¶ 131. Plaintiff alleges that, "on information and belief," "all students that have been suspended or expelled from Defendant Purdue for sexual misconduct have been male." *Id*. at  ¶ 132. And, "[m]ale respondents, and particularly male athletes and male ROTC members, in sexual misconduct cases at Defendant

---

[8] The court in *Doe v. University of St. Thomas*, also noted that in *Doe v. Columbia University*, 831 F.3d 46 (2nd Cir. 2016), the Second Circuit Court of Appeals appeared to apply a more lenient standard of review, which the Sixth Circuit Court of Appeals declined to apply in *Doe v. Cummins*, 662 F. App'x 443, 451-54 (6th Cir. 2016). *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 992 n. 4. Likewise, the court in *Doe v. University of Colorado, Boulder*, describes the Second Circuit Court of Appeals as applying a "relatively low pleading standard" in *Doe v. Columbia University*. *See Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1075.

Purdue are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof." *Id.* at ¶ 133. None of these allegations offer statistics or facts to support a pattern of gender discrimination; again, even if all the respondents were male and all were punished, without more, this only alleges victim bias, and not gender bias.

Even taking as true Plaintiff's allegation that Purdue personnel took steps to ensure that harassment allegations were forwarded and not suppressed, that allegation only speaks to the institution's commitment to enforce its rules and does not equate to bias against male students, even if the accused students are generally male. *See Cummins*, 662 F. App'x at 453 (noting the plaintiff's failure "to eliminate the most obvious reasons for the disparity between male and female respondents in UC sexual-misconduct cases: '(1) [the university] has only received complaints of male-on-female sexual assault, and (2) males are less likely than females to report sexual assaults'" (quoting *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 607-08); *King v. DePauw Univ.*, No. 15-CV-70, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014))). There is no inference to draw in Plaintiff's favor when "'the majority of accusers of sexual assault are female and the majority of the accused are male.'" *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1075 (quoting *Austin*, 205 F. Supp. 3d at 1225). Likewise, Purdue "'is not responsible for the gender makeup of those who are accused by *other students* of sexual misconduct.'" *Id.* at 1078 (quoting *King*, 2014 WL 4197507, at *10). Plaintiff has not offered evidence of biased decision making or patterns of decision making that tend to show the influence of gender. *See Baum*, 227 F. Supp. 3d at 819-20; *see also Doe v. W. New England Univ.*, 228 F. Supp. 3d at 189. The Sixth Circuit Court of Appeals has noted that "'one case by an individual who was subjectively dissatisfied with the result [of a disciplinary proceeding] does not constitute a pattern of decisionmaking.'" *Sahm*, 110 F. Supp. 3d at 779 (quoting *Mallory*,

76 F. App'x at 640). Thus, none of the allegations in the Complaint identified by Plaintiff support his claim of gender bias.

In contrast with the instant case, cases in which the court finds that the plaintiff has stated a claim for erroneous outcome under Title IX are those in which the plaintiff identifies specific facts or comments by university officials that are indicative of gender bias. *See Doe v. Columbia Coll. Chi.*, 2017 WL 4804982, at *9 (gathering cases *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 189 (D.R.I. 2016) (finding that the plaintiff made "specific allegations related to gender bias as opposed to bias against students accused of sexual assault"); *Doe v. Washington & Lee Univ.*, No. 6:14-CV-52, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015); *Doe v. Univ. of Chi.*, No. 16 C 08298, 2017 WL 4163960, at *5 (N.D. Ill. Sept. 20, 2017); *Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 WL 3212079, at *17 (N.D.N.Y. Feb. 24, 2016)); *see also Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016); *Doe v. Lynn Univ.*, 235 F. Supp. 3d 1336, 1339 (S.D. Fla. 2017); *Doe v. The Trs. of the Univ. of Penn.*, No. 16-5088, 2017 WL 4049033, at *15-16, — F. Supp. 3d — , — (E.D. Penn. Sept. 13, 2017); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 766, 768 (D. Md. 2015); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751 (S.D. Ohio 2014).

Contrary to Plaintiff's assertion, Plaintiff does not allege any facts similar to those found sufficient in five cases that he string cites without analysis: *Doe v. Columbia University*, *Yusuf v. Vassar College*, *Doe v. Washington and Lee University*, *Prasad v. Cornell University*, and *Neal v. Colorado State University-Pueblo*. The Court considers each case in turn. First, as discussed above, in *Doe v. Columbia University*, the plaintiff made specific factual allegations showing public pressure on the decision-makers. 831 F.3d at 56. In addition, the court reasoned that, "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a

**BA 41**

conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias." *Id*. at 57. The court found that, although the evidence of "bias" by itself did not "necessarily relate to bias with respect to sex," when those facts were combined with the public criticism of the university and the decision maker, "it is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." *Id*. Although Plaintiff alleges his version of the events, he has not identified factual evidence that "substantially favors" his version of the events. And, Plaintiff does not allege any instances of public criticism. Thus, *Columbia University* is not persuasive in this instance.

Second, in *Yusuf*, the plaintiff alleged "that males accused of sexual harassment at Vassar are 'historically and systematically' and 'invariable found guilty, regardless of the evidence, or lack thereof'" with no factual support for this assertion. 35 F.3d at 716. What were essentially conclusory allegations were sufficient in *Yusuf* because the decision was issued in 1994, long before the modern pleading standard under *Iqbal* and *Twombly*. Although the standard for an erroneous outcome claim set forth in *Yusuf* is widely cited, a "majority of cases . . . have held that *Yusuf*-like pleading of the gender bias component no longer passes muster, and that the various plaintiffs' allegations largely tend to show, if anything, pro-victim bias, which does not equate to anti-male bias." *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1074 (citing *Doe v. Baum*, 227 F. Supp. 3d at 817-20; *Austin*, 205 F. Supp. 3d at 1222-27; *Doe v. Regents of the Univ. of Cal.*, 2016 WL 5515711, at *4-6; *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 606-08; *Marshall v. Ohio Univ.*, 2:15-CV-775, 2015 WL

BA 42

7254213, at *5-8 (S.D. Ohio Nov. 17, 2015); *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 791-93 (N.D. Ill. 2015); *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *6-9; *Sahm*, 110 F. Supp. 3d at 777-80; *Yu*, 97 F. Supp. 3d at 461-81).

Third, in *Doe v. Washington and Lee University*, No. 6:14-CV-52, 2015 WL 4647996, at *10 (W.D. Va. 2015), the court first found that the plaintiff pleaded sufficient facts to cast doubt on the accuracy of the outcome reached. Recognizing that the alleged flaws in the disciplinary proceedings in and of themselves are not evidence of gender bias, the court nevertheless found that, given the "totality of the circumstances," the plaintiff plausibly established a causal link between his expulsion and gender bias. *Id*. The circumstances included a presentation by an influential Title IX officer who introduced and endorsed an article titled, "Is it Possible that There is Something in Between Consensual Sex and Rape... and That It Happens to Almost Every Girl Out There?" *Id*. The article proposed that "sexual assault occurs whenever a women has consensual sex with a man and regrets it because she had internal reservations that she did not outwardly express." *Id*. The circumstances of the article were factually similar to those of the harassment complaint in that case. In addition, the plaintiff alleged that the university president's letter announcing the appointment of the Title IX officer "prominently mentioned the fact that many universities were currently under investigation for violating Title IX." *Id*. at *8. This is factually distinguishable from the instant lawsuit given that Plaintiff offers no statements, conduct, or activity by Dean Sermersheim or anyone else involved in the disciplinary process that suggests gender bias or any such communication or statement from Purdue (through its president or otherwise).

Fourth, in *Prasad v. Cornell University*, 5:15-CV-322, 2016 WL 3212079, at *16-17 (N.D.N.Y. Feb. 24, 2016), the plaintiff alleged facts demonstrating compromised evidence and the complicity of the university. In contrast, in the instant case, there are no such allegations.

Fifth, in *Neal v. Colorado State University-Pueblo*, the plaintiff alleged additional facts to show that bias was because of gender. 16-CV-873, 2017 WL 633045, at *9 (D. Colo. Feb. 16, 2017). The court found that a disproportionate effect on males is not enough but declined to resolve whether general allegations that male respondents are always found guilty or that the respondent was used by his university to placate the DOE because, in *Neal*, the plaintiff had alleged "statements by the CSU-Pueblo investigator that amply support that gender bias infected the proceeding." *Id.* at *13 (listing cases finding that those general allegations were insufficient). The plaintiff alleged various statements of the investigator demonstrating prejudice against male athletes. *Id.* Plaintiff in this case makes no such allegations.

Finally, in his response brief, Plaintiff asserts that, under Title IX, he is alleging both an "erroneous outcome" claim as well as a "severity of penalty/selective initiation" claim, citing Paragraphs 115, 116, and 129 of his Complaint, and that he "expressly relies upon both categories." (ECF 28, p. 24). In Paragraph 115, Plaintiff makes the legal statement that challenges to university disciplinary proceedings for sex discrimination fall into two categories—"erroneous outcome" cases and "severity of penalty/selective initiation" cases. (Cmplt. ¶115). In the following paragraph, Plaintiff alleges that "[a]n 'erroneous outcome' occurred in this case because John Doe was innocent and wrongly found to have committed sexual assault and gender bias was a motivating factor." (Cmplt.¶ 116). There is no similar paragraph alleging that this is a "severity of penalty/selective initiation" case, which is referred to in the case law as a "selective enforcement" claim. *See Yusuf*,

35 F.3d at 715. Rather, the allegations in Paragraph 129 regarding the severity of Plaintiff's punishment appear to support the allegations of gender bias in support of the erroneous outcome claim.

Nevertheless, even if Plaintiff is alleging a "selective enforcement" claim, he has not alleged facts to support such a claim and offers no such facts in support thereof in his response brief. A "selective enforcement" claim is based on the premise that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.*; *see also Prasad*, 2016 WL 3212079, at *18. In this case, the proceeding was initiated by Jane Doe; thus, there can be no selective enforcement based on the initiation of the proceeding. As for the severity of the penalty, "[c]ourts have interpreted that standard to require a plaintiff to 'allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency.'" *Prasad*, 2016 WL 3212079, at *18 (quoting *Doe v. Columbia*, 101 F. Supp. at 374, *rev'd on other grounds*, 831 F.3d 46 (2016)). In other words, to prevail on a "selective enforcement" claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender. *See Cummins*, 662 F. App'x 452 (citing *Mallory*, 76 F. App'x at 641; *Marshall*, 2015 WL 7254213, at *6); *Yusuf*, 35 F.3d at 715; *see also Doe v. Columbia*, 101 F. Supp. at 374 (collecting cases). Plaintiff has not alleged that a similarly-situated female was treated more favorably because of her gender.

Accordingly, because Plaintiff has failed to show any causal connection between the adverse outcome of his disciplinary proceedings and gender bias, the Court grants the Motion to Dismiss Plaintiff's Title IX claim and dismisses the claim with prejudice.

### E. State Law Claims

Defendants move to dismiss Plaintiff's state law claims against Defendant Purdue University in Counts III and IV on the basis that they are barred by the Eleventh Amendment. In his response brief, Plaintiff concedes that his state law claims are barred if the Eleventh Amendment immunity is not waived, which it is not. *See Vance v. Ball State Univ.*, 1:09-CV-1501, 2012 WL 29148, at *2 (S.D. Ind. Jan. 5, 2012) (citing *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002)). Accordingly, the Court grants the Motion to Dismiss Counts III and IV of the Complaint and dismisses these claims without prejudice for lack of subject matter jurisdiction.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint [DE 18] as to all counts. The Court (1) dismisses without prejudice the claims for injunctive relief in Counts I and II; (2) dismisses without prejudice the state law contract claims in Counts III and IV; (3) dismisses without prejudice all § 1983 claims against Defendants Purdue University, the Purdue University Board of Trustees, and the individual defendants in their *official* capacities; (4) dismisses with prejudice all claims against Defendant Daniels in his individual capacity; (5) dismisses with prejudice the § 1983 damages claims against the individual defendants in their *individual* capacities for failure to state a claim; and (6) dismisses with prejudice the Title IX claims in Count II for failure to state a claim.

SO ORDERED this 15th day of November, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

45

AO 450 (Rev. 01/09)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

## Northern District of Indiana

JOHN DOE

      Plaintiff(s)

          v.                                **Civil Action No. 2:17-cv-33**

PURDUE UNIVERSITY
PURDUE UNIVERISTY BOARD OF TRUSTEES
MITCHELL ELIAS DANIELS, JR., *individually and as agent for Purdue University*
ALYSA CHRISTMAS ROLLOCK, *individually and as agent for Purdue University*
KATHERINE SERMERSHEIM, *individually and as agent for Purdue University*
ERIN OLIVER, *individually and as agent for Purdue University*
JACOB AMBERGER, *individually and as agent for Purdue University*

      Defendant(s)

## JUDGMENT IN A CIVIL ACTION

The court has ordered that (*check one*):

☐ the Plaintiff(s),_____recover from the
Defendant(s)_____ damages in the
amount of _____, plus post-judgment interest at the rate of \_\_\_\_ %

☐ the plaintiff recover nothing, the action is dismissed on the merits, and the defendant _____
recover costs from the plaintiff _____.

**X** Other: This case is DISMISSED as to all counts.   The Court dismisses without prejudice the
claims for injunctive relief in Counts I and II; dismisses without prejudice the state law contract
claims in Counts III and IV; dismisses without prejudice all § 1983 claims against Defendants
Purdue University, the Purdue University Board of Trustees, and the individual defendants in their
*official* capacities; dismisses with prejudice all claims against Defendant Daniels in his individual
capacity; dismisses with prejudice the § 1983 damages claims against the individual defendants in
their *individual* capacities for failure to state a claim; and dismisses with prejudice the Title IX
claims in Count II for failure to state a claim.

This action was (*check one*):

☐ tried to a jury with Judge _____
presiding, and the jury has rendered a verdict.

USDC IN/ND case 2:17-cv-00033-GSL   document 316-2   filed 04/08/24   page 127 of 127
Case: 17-3585   Document: 16   Filed: 04/06/2018   Pages: 129
USDC IN/ND case 2:17-cv-00033-PRC   document 32   filed 11/15/17   page 2 of 2

☐ tried by Judge _____

without a jury and the above decision was reached.

**X** decided by Magistrate Judge <u>Paul R. Cherry</u>   on a <u>Motion to Dismiss</u>   _____

DATE:_____<u>November 15, 2017</u>_____   ROBERT TRGOVICH, CLERK OF COURT
                                            by_____/s/Jason Schrader_____

                                                *Signature of Clerk or Deputy Clerk*