*No. 17-3565*

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

＞＞◄◄

JOHN DOE,

*Plaintiff-Appellant,*

*against*

PURDUE UNIVERSITY, *et al.*,

*Defendants-Appellees.*

―――――――

*On Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division
No. 2:17-cv-00033-PRC
Paul R. Cherry, Magistrate Judge*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500

*and*

LAW OFFICES OF DAMON M.
CHERONIS
140 S. Dearborn, Suite 411
Marquette Building
Chicago, Illinois 60603
312-386-7033

*Attorneys for Plaintiff-Appellant*

## ORAL ARGUMENT REQUESTED

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES ..................................................................................iii

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT ON REPLY........................................................................................1

   I.     DEFENDANTS' STATEMENT OF THE CASE, STATEMENT
        OF REVIEW STANDARD AND STATEMENT OF ISSUES
        PRESENT AN UNFOCUSED APPROACH TO THE APPEAL..........1

   II.    DEFENDANTS' THE SUMMARY OF ARGUMENT
        STATES UNTENABLE POSITIONS ……………...……………….. 4

   III.   DEFENDANTS ERRONEOUSLY DENY THE COMPLAINT
        STATES A CONSTITUTIONAL DUE PROCESS CLAIM………...…8

        A.    The Complaint Alleges A Denial Of Due Process
              and the Magistrate Judge Did Not Rule Otherwise ………..….…9

             1.  The Complaint Alleges A "Kafkaesque" Denial
                of Due Process…………………………………………..9

             2.  Due Process Was Not Afforded In Defendants'
                Disciplinary Process For Alleged Sexual Misconduct……….10

             3.  The Magistrate Judge and Defendants Falsely State
                That The Complaint Alleges Six Individuals Evaluated
                John's Credibility ……………………………………….12

        B.    Defendants Engage In A Red Herring Argument In
              Asserting The Complaint Does Not Allege A Contractual
              Entitlement To Unconditional Enrollment……………………….13

C.    Defendants Wrongly Assert The Complaint Does
Not Allege Deprivation Of A Protected Interest……………....…14

D.    Defendants Wrongly Argue The Due Process Remedy
For Alleged Deprivation Of Contractual Benefits Is A
State Contract Claim …………………………………………16

E.    Defendants Prematurely Argue Qualified Immunity……………16

F.    Defendants Wrongly Deny John's Standing
For Injunctive Relief……………………………....…..…17

G.    Defendants Seek The Dismissal of Defendant
Daniels Prematurely………………………………...………19

IV.    DEFENDANTSERRONEOUSLY DENY THE COMPLAINT
STATES A TITLE IX CLAIM …..……………………….…………20

A.    Defendants Misconceive The Role Of Due Process
In A Title IX Claim……………………………………………20

B.    Defendants Wrongly Argue That Gender Bias Is Not Alleged…..23

C.    Defendants Impermissibly Misread The Complaint In
Asserting The Complaint Shows John's Culpability……......……25

D.    Defendants Wrongly Deny The Connection Between
Gender Bias and Erroneous Outcome……………………………27

E.    Defendants Misconceive John's Selective Enforcement Claim;
Defendants Wrongly Deny Gender Bias In The Sanction ……….28

CONCLUSION ..................................................................29

CERTIFICATE OF COMPLIANCE

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

<u>Cases</u>

*Alexander v. Sandoval*, 532 U.S. 275 (2001)……………………………………21

*Amaya v. Brater*, 981 N.E.2d 1235, 123-1240 (Ind.Ct.App.2013) ……………...13

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ………………………………………..11

*Behrens v. Pelletier,* 516 U.S. 299 (1996) ……………………………………..…16-17

*Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599 (7th Cir. 2009) ………..……...….13

*Castro v. City of Chicago*, 1998 WL 801814 (N.D. Ill. Nov. 13, 1998)…………...16

*Charleston v. Bd of Trustees,* 741 F.3d 769 (7th Cir. 2013) …………..…………...13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ………………………..………...17

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) …………………….....11

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ………………….…..…22

*D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681 (7th Cir. 2013). …………………...…2

*Doe v. Alger, et al.*, No. 5:15-cv-00035, slip op. (D. W.Va. Dec. 23, 2016) …..…..20

*Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016)………………….………………3, 21, 25

*Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016) …………................................18

*Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018) ………………………….………...3, 10-11,
17, 24-25

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)…………………10-11, 14

*Doe v. Washington and Lee*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) …..…21

*Elliott v. Hinds*, 786 F.2d 298 (7th Cir. 1986) ……………………………..3, 18, 19

*Ex Parte Young*, 209 U.S. 123 (1908)…………………………………….…17, 18

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) ……………………22

*Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007) ………………………………….. 18

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60 (1992) ………………………..22

*Gebser v. Lago Vista Ind. Sch. Corp.*, 524 U.S. 274 (1998)………………………22

*Gordon v. Purdue Univ.,* 862 N.E.2d 1244 (Ind.Ct.App.2007) …………………..13

*Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 13 (1st Cir. 1988)……………...11

*Goss v. Lopez*, 419 U.S. 565 (1975)……………………………………………11

*Hess v. Board of Trustees of So. Ill. Univ.*, 149 F. Supp.3d 1027
  (S.D. Ill. 2015), *aff'd*, 839 F.3d 668 (7th Cir. 2016), *cert. denied*,
  137 S. Ct. 1435 (2017)……………………………………….…………24, 27

*Hudson v. Palmer*, 468 U.S. 517 (1984)……………………………...………16

*Ingraham v. Wright*, 430 U.S. 651 (1977) ………………………………………16

*Iqbal v. Ashcroft*, 556 U.S. 662 (2009)……………………………………….23-24

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ………………………22

*Johnson v. Western State Colorado University*,
  71 F. Supp.3d 1217 (D. Colo. 2014)………………………………………..18

*Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) ……..…..2

[iv]

*Lieberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344,
  590 N.Y.S.2d 857 (1992)………………………………………….……… 15

*Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013) …………………………………..15

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)……………………………………21

*Martinez v. Gonzales*, 983 F.Supp. 768 (N.D. Ill. 1997)…………………………16

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) …………………………………11

*McMath v. City of Gary, Ind.*, 976 F.2d 1026 (7th Cir. 1992)……………….....6, 16

*McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873 (7th Cir. 2012) ………..……1-2

*Neel v. Indiana University Board of Trustees,* 435 N.E.2d 607
  (Ind. Ct. App. 1982) ……………………………………………………..13

*Prasad v. Cornell*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) …………….....21

*Philly's v. Byrne*, 731 F.2d 87 (7th Cir. 1984)…………………………………….10

*Shepard v. Irving*, 77 Fed. App'x 615 (4th Cir. 2003) ………………..………...18

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017)………………..….……17-18

*Thomson v. Harmony*, 65 F.3d 1314 (6th Cir. 1995) …………………….………18

*Weinstein v. Univ. of Illinois*, 811 F.2d 1091 (7th Cir. 1987)………………………16

*Withrow v. Larkin*, 421 U.S. 35 (1975) ………………………………..……….24

*Wolfel v. Morris*, 972 F.2d 712 (6th Cir. 1992) …………………………………18

*Yusef v. Vassar Corp.*, 35 F.3d 709 (2d Cir. 1994)...........................................3, 7, 21, 28

[v]

## **Constitution, Statutes and Rules**

Eleventh Amendment, U.S. Constitution …………………………...………...…6

Fourteenth Amendment, U.S. Constitution …………………………….........8-20

Rule 12(b)(1), Federal Rules of Civil Procedure ......................................................2

Rule 12(b)(6), Federal Rules of Civil Procedure ......................................................2

20 U.S.C. § 1681(a) .......................................................................4,5, 7, 14,
20-29

42 U.S.C. § 1983 …………………………………………….….……5, 6, 8-20

## **Other Authorities**

A.Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027 (2016) …………..…...29

Department of Education Office for Civil Rights, Apr. 4, 2011,
https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html .20

H. Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267 (1975)……………….11

## PRELIMINARY STATEMENT

Plaintiff-Appellant John Doe ("John") submits this Reply Brief to address Defendants' Appellee Brief that relies upon legally misconceived treatment of issues, arguments not adopted by the Magistrate Judge, inapposite cases, misreading of the Complaint contrary to the review standard and misstatements and omissions.[1]

## ARGUMENT ON REPLY

## I.

## DEFENDANTS' STATEMENT OF THE CASE, STATEMENT OF REVIEW STANDARD AND STATEMENT OF ISSUES PRESENT AN UNFOCUSED APPROACH TO THE APPEAL

In contrast to John's 14-page statement of the case that reviews the factual allegations of the 68-page Complaint (Appellant Br. 3-17), Defendants' Appellee Brief has a Statement of the Case that is just over a page and does not review the factual allegations of the Complaint (Appellee Br. 4-5.)   This is telling.  A *de novo* review of a Rule 12(b)(6) and 12(b)(1) dismissal cannot properly be done in a vacuum of knowledge about the allegations of the Complaint.  As this Court stated in *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012), the

---

[1] Although Defendants try to make an issue of it, John filed an Amended Jurisdictional Statement that required only three additions: (i) the date of the Notice of Appeal; (ii) the date of Defendants' Consent to the U.S. Magistrate exercising jurisdiction to conduct all proceedings and enter a Final Judgment; and (iii) the date of John's Consent to the U.S. Magistrate exercising jurisdiction to conduct all proceedings and enter a Final Judgment.

applicable standard of review requires "review[ing] a Rule 12(b)(6) dismissal *de novo*, construing the complaint in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts, and drawing reasonable inferences in the plaintiffs' favor." *Accord*: *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 684 (7th Cir. 2013); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (same standard for Rule 12(b)(1) motion when attack on standing is based, as here, on face of Complaint).  (Appellant Br. 19.)  Defendants, in their statement of the review standard, omit recognition of the parts of the review standard about construing the Complaint in the light most favorable to the plaintiffs and drawing reasonable inferences in the plaintiff's favor (Appellee Br. 4-5); and Defendants, in their Appellee Brief, do not state the Complaint's factual allegations accepted as true. Defendants' disregard of the Complaint's factual allegations facilitates making unfocused arguments that, contrary to the review standard, misstate the Complaint, construe the Complaint against the Plaintiff John and draw inferences against John.

Defendants are also misfocused in their statement of issues.  In contrast to John's statements of issues keyed to the legal issues related to the rulings of the Magistrate Judge (Appellant Br. 3), Defendants have a Statement of Issues worded not in accordance with relevant legal principles.

Defendants first ask "[w]hether John Doe's Complaint fails to allege standing for prospective injunctive relief, in light of the failure to allege his intent to re-enroll

at Purdue University and his failure to allege a controversy with Purdue University regarding the application of student conduct regulations to him upon re-enrollment." (Appellee Br. 3.).  John brought his Complaint in January 2017 (A 3-4, 8-91) six months after being suspended when re-enrollment was not possible even subject to the conditional reinstatement terms of the sanction (A 35).  John's Appellant Brief still shows (pp. 19-23) that John faces a real and immediate threat of future injury from "ongoing harm" within the meaning of this Court's decision in *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986): John is a suspended student with a transcript disciplinary record of sexual misconduct, subject to requirements for readmission and suffering a loss of a Navy ROTC scholarship.  (A 8-9, 34-35, 49-50, 53-54, 59-60, 69.)

Defendants next ask "[w]hether John Doe's Complaint fails to allege facts plausibly showing that his disciplinary suspension from Purdue University during the 2016-2017 academic year deprived him of a protected property or liberty interest under his implied contract of enrollment, without required due process." (Appellee Br. 3.)  John's Appellant Brief shows (pp. 25-32) that proper application of this Circuit's precedent and Supreme Court law, John has a protected property interest (legally protected claim of entitlement) and a protected liberty interest ("stigma-plus") that may not be deprived by what the Complaint describes as a "Kafkaesque" denial of due process concerning accusations of sexual misconduct.

[3]

Defendants finally ask "[w]hether John Doe's Complaint fails to allege facts plausibly showing that he was suspended from Purdue University during the 2016-2017 academic year on account of his gender, and not on account of misconduct under Purdue University's student conduct regulations." (Appellee Br. 3.) John's Appellant Brief shows (pp. 33-60) the Complaint properly pleads "erroneous outcome" and "selective enforcement" Title IX claims per *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016), *Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018) and other cases. The pleaded facts show that John "was innocent and wrongly found to have committed" sexual misconduct and that "gender [wa]s a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

## II.

### DEFENDANTS' SUMMARY OF ARGUMENT STATES UNTENABLE POSITIONS

Defendants' Summary of Argument (Appellee Br. 5-9) begins by stating, incorrectly, that the Magistrate Judge's decision is grounded in controlling authorities and is soundly reasoned. (Appellee Br. 5.) But Defendants, without citing case precedent, then argue in ways not supported by applicable precedent, at odds with the Complaint and often not tracking the Magistrate Judge's decision.

1.    Defendants argue the alleged facts show John received ample notice and ample opportunity to be heard. (Appellee Br. 5.) This is false; not even the

[4]

Magistrate Judge took that position (BA 27).   Paragraph 2 of the Complaint

summarizes the denial of due process further discussed in the body of the Complaint:

> The false accusations of sexual assault were upheld by Defendant
> Purdue using a Kafkaesque process that denied due process of law in
> violation of constitutional due process and 42 U.S.C. § 1983: there was
> no hearing of any kind; there was no cross-examination; there was no
> sworn testimony; there was no access given for the respondent even to
> see the investigator's report, much less comment on it; there was no
> providing, to respondent, the evidence that supposedly supported the
> false allegations of complainant and thus no fair and adequate ability to
> prepare a defense to those allegations; there was no presumption of
> innocence but rather a presumption that the accusing female's story was
> true; there was no reasoned consideration of evidence as required by a
> burden of proof; there was a conflict of interest in decision-making on
> violation and sanction by one person who is both Dean of Students and
> Title IX Coordinator, who among other things can tailor decision-
> making in specific cases to give the appearance of vigorous Title IX
> enforcement and meet perceived reporting needs to the U.S.
> Department of Education Office of Civil Rights ("OCR"); there was no
> requirement for evidence to be stated in support of conclusions and thus
> an effective discretion to engage in discriminatory decision-making and
> a prejudiced ability for the respondent to prepare and submit an appeal.

(A 9-10, *see* A 20-60.)

2.     Defendants argue there is no allegation John intends to re-enroll.

(Appellee Br. 5.)  Defendants are attempting with a red herring to draw inferences

in their favor contrary to the standard of review.  John brought his Complaint in

January 2017 (A 3-4, 8-76) six months after being suspended when re-enrollment

was not possible even subject to the conditional reinstatement terms of the sanction

(A 35).  The proper inference from the Complaint is that given the due process and

Title IX violations, John should not be subject to any conditions to his reinstatement.

[5]

3.    Defendants argue John fails to plead an entitlement to enroll in Purdue whenever he chooses and that an implied enrollment contract has not been recognized as a section 1983 entitlement.  (Appellee Br. 5-6.)  This is misconceived. John's Appellant Brief shows (pp. 25-32) that under Supreme Court and this Court's precedents, John has protected property and liberty interests that may be asserted in a 42 U.S.C. § 1983 action.

4.    Defendants argue the Magistrate Judge determined that the due process remedy for breach of contract is to pursue the claim in state court.  (Appellee Br. 6.) That is incorrect.  The Magistrate Judge determined that the Eleventh Amendment barred a claim brought against Defendants under state contract law. (BA 45.)  The Magistrate Judge did not go so far as to exclude, from section 1983 actions, property and liberty claims that involve a contractual relationship.

5.    Defendants argue the individual Defendants have qualified immunity from section 1983 damage claims.  (Appellee Br. 6.)  The Magistrate Judge did not reach that question (BA 27), and the qualified immunity defense is more appropriately adjudicated on summary judgment or at trial, not on a motion to dismiss.  *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 2-1031 (7th Cir. 1992).

6.    Defendants argue John has not alleged standing for prospective injunctive relief.  (Appellee Br. 6-7.)  Defendants' red herring argument about re-

[6]

enrollment is an attempt to draw inferences in Defendants' favor contrary to the standard of review and to insist upon unlawful conditions to re-enrollment.

7.    John's Appellant Brief shows (pp. 19-23) that John has standing because of the "ongoing harm" from suspension, readmission requirements and loss of Navy ROTC scholarship.  Defendants argue John cannot state a Title IX claim based on Defendants' carrying out an obligation to address an accusation of sexual misconduct.  (Appellee Br. 7.)  But John can state a Title IX claim based on Defendants' discriminatory conduct.  John's Appellant Brief shows (pp. 33-60) that John states both "erroneous outcome" and "severity of penalty" claims under applicable Title IX precedent.

8.    Defendants argue there is no Title IX action to fault the procedural vigor of a disciplinary determination. (Appellee Br. 7.)  That assertion is contrary to the case law discussed in John's Appellant Brief (pp. 35-44).

9.    Defendants argue there is no Title IX action to fault the accuracy of a disciplinary determination.  (Appellee Br. 7-8.)  That assertion is contrary to the well-recognized category of "erroneous outcome" Title IX claims stated in *Yusef v. Vassar Corp.*, 35 F.3d at 715, and applied in the cases discussed in John's Appellant Brief (pp. 35-42).

10.    Defendants argue that Title IX claims are limited to intentional discrimination cases.  (Appellee Br. 8.)  That much is true.  Where Defendants go

[7]

astray is in not recognizing how the fact that accusers are female and males are accused is relevant to an intentional discrimination claim given Defendants' victim-centered system.  (Appellant Brief (pp. 44-46.)

11.    Defendants argue that John was required to plead a plausible basis that Defendants found him responsible because he was male and not because of the preponderance of the evidence.  (Appellee Br. 8-9.)  That does not contain a precise statement of what the law requires, but in any event, as shown in John's Appellant Brief (pp. 34-55), the Complaint more than sufficiently alleges, in accordance with applicable precedent, an "erroneous outcome" case in which gender was a motivating factor.  Where Defendants go off the rails is asserting, differently from the Magistrate Judge, the allegations of the Complaint are a sufficient basis to find John culpable.  That is a false statement which the Magistrate Judge did not make. The Magistrate Judge accepted that the Complaint alleges facts casting doubt on the accuracy of the outcome of the proceeding but asserted, incorrectly, that John failed to plead facts plausibly alleging gender bias (BA 28); it was the later conclusion that John's Appellant Brief showed to be in error (pp. 34-55).

## III.

## <u>DEFENDANTS ERRONEOUSLY DENY THE COMPLAINT STATES A CONSTITUTIONAL DUE PROCESS CLAIM</u>

Defendants, with seven misconceived contentions, erroneously deny the Complaint states a due process claim.  (Appellee Br. 10-32.)

[8]

## A.    The Complaint Alleges A Denial Of Due Process and the Magistrate Judge Did Not Rule Otherwise.

Defendants argue that neither the Complaint nor John's appeal alleges lack of required due process. (Appellee Br. 10-14.) This is false and disingenuous: as noted above (pp. 4-5), the Complaint alleges a "Kafkaesque" denial of due process (A 9-10, 20-60); the Magistrate Judge's decision did not address the issue whether due process was provided, but rather denied the existence of protected property and liberty interests (BA 27); and thus, John's appeal, in seeking reversal of the Magistrate Judge's decision, was focused on the issue of protected property and liberty interests. This Court should read the Complaint to see that Defendants are mistreating the Complaint.

### 1.    The Complaint Alleges A "Kafkaesque" Denial of Due Process.

In the Complaint's statement of the cause of action for denial of due process, Paragraph 92 states:

> In the course of such investigation and adjudication, Defendants flagrantly violated John Doe's clearly established rights under the Due Process Clause of the Fourteenth Amendment through its deprivation of the minimal requirements of procedural fairness by employing a Kafkaesque process in which there is no cross-examination, no sworn testimony, no hearing of any kind, no access for the respondent even to see the investigator's report, no provision to respondent of the evidence that supposedly supported the false allegations and thus no adequate ability to prepare a defense to them, no presumption of innocence but rather a presumption that the female's accusations are true, no reasoned consideration of evidence as required by a burden of proof, no requirement for evidence to be stated in support of conclusions and thus

[9]

an effective discretion to engage in discriminatory decision-making and a prejudiced ability for the respondent to prepare and submit an appeal.

(A 54-55.)  Paragraph 98 states:

> Defendants deprived John Doe of his liberty and property interests without affording him basic due process, including, but not limited to, his right to a fair adjudication free of bias, his right to be informed of the evidence against him, his right to be innocent until shown to be responsible and not to be subjected to the burden of proving innocence, his right to be heard by an impartial factfinder, to question his accuser, challenge the credibility of other adverse witnesses and present evidence and witnesses in support of his defense.

(A 58.)  Defendants cite *Philly's v. Byrne*, 731 F.2d 87 (7th Cir. 1984), for the proposition that without a denial of due process, the existence of protected property and liberty interests need not be decided; but with the Complaint pleading the denial of due process, *Philly's v. Byrne* is not pertinent.

### 2.   Due Process Was Not Afforded In Defendants' Disciplinary Process For Alleged Sexual Misconduct.

Defendants assert John was not in the courthouse but in a student disciplinary process.  (Appellee Br. 12-13.)  That fact, however, does not change that due process was required but was not afforded in Defendants' disciplinary process for sexual misconduct.  Further, missing from Defendants' argument is any recognition of the point recognized by the Sixth Circuit in *Doe v. Miami*, 882 F.3d 579, 599-600 (6th Cir. 2018), and in *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017), that sexual misconduct cases involve different interests and concerns and a "lasting

impact" on students that call for more demanding procedures.  *See* A 54: Complaint ¶ 92.

Due process requires the student to receive notice so that he can respond meaningfully to the charges when he has an opportunity to be heard.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  Sufficient notice was a problem here because John was given only a summary accusation notice and never provided with the investigation report to review so as to enable him to defend properly.  (A 21-24, 28-30, 33, 37, 43, 50.)  As for an opportunity to be heard, it is established law that the opportunity to be heard means "at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), *quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), which in turn means that "some form of hearing" is required before an individual is finally deprived of a property or liberty interest. *Mathews v. Eldridge*, 424 U.S. at 333; *Goss v. Lopez,* 419 U.S. 565, 579 (1975).  "In the administrative process, the words 'some kind of hearing' have acquired a meaning which implies all of those elements of fairness which go to the heart of the concept of due process in the particular case." *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 13 (1st Cir. 1988), citing Judge Friendly's classic article *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267 (1975). There was no kind of hearing here.

The Complaint's description of John's half-hour hostile unrecorded interview with the Advisory Committee and Dean Sermersheim was not a hearing, and because

John had not been given the investigation report to review, he could not address what was in it. Jane Doe did not even appear in person before the Advisory Committee and the Dean, and the statement submitted on her behalf was not written by her but by a Title IX Coordinator. There was no basis for credibility judgments to be made in this case against John, especially given that the text evidence indicated no sexual assault had occurred. (A 30-33, 37-40.)

### 3. The Magistrate Judge and Defendants Falsely State That The Complaint Alleges Six Individuals Evaluated John's Credibility.

Defendants repeat the error of the Magistrate Judge in falsely stating that the Complaint alleges six individuals evaluated John's credibility. (Appellee Br. 12.) The Complaint does not so allege. The Complaint alleges, far differently, that only a conflicted Dean Sermersheim made a credibility determination that she was not in a position to make. (A 34-35, 38-40.) The Complaint does not allege the two investigators made a credibility determination, but rather they withheld the report from John. (A 28-29.) The Complaint does not allege three Advisory Committee members made a credibility determination, but rather they listened at the half-hour meeting and two had not prepared for it. (A 32-33.) This misreading of the Complaint is contrary to the review standard: the Complaint is to be read in the light most favorable to Plaintiff and inferences are to be drawn in Plaintiff's favor (pp. 1-2 above).

[12]

**B.    Defendants Engage In A Red Herring Argument In
Asserting The Complaint Does Not Allege A Contractual
Entitlement To Unconditional Enrollment.**

Defendants make a red herring argument that the Complaint does not allege a

contractual entitlement to unconstitutional enrollment at Purdue and has not sought

re-enrollment.  (Appellee Br. 14-20.)  Defendants are attempting to evade the point

that conditions on re-enrollment should not exist.

Defendants' reliance on *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 601

(7th Cir. 2009), and *Charleston v. Bd of Trustees,* 741 F.3d 769 (7th Cir. 2013),

(Appellee Br. 16-18) is misplaced.   John's Appellant Brief shows (p. 27) that

*Bissessur* and *Charleston* are distinguishable because they involved academic

failure, not sexual misconduct.  Further, *Charleston* did not reject recognition of a

property interest in a state university education, but rather stated that the issue was

"whether the student has shown that he has a *legally protected entitlement* to his

continued education at the university." 741 F.3d at 773 (emphasis in original.)

It was in that connection that John cited Indiana case law in *Amaya v. Brater*,

981 N.E.2d 1235, 123-1240 (Ind.Ct.App.2013), *Neel v. Indiana University Board of*

*Trustees,* 435 N.E.2d 607, 610 (Ind.Ct.App.1982) and *Gordon v. Purdue Univ.,* 862

N.E.2d 1244, 1251 (Ind.Ct.App.2007), establishing a contractual relationship

between student and university.  Defendants misportray John's argument as these

cases establishing a right to unconditional enrollment (Appellee Br. 15-16), but

[13]

nowhere does the Appellant Brief so assert. Rather, the Indiana case law helps establish under U.S. Supreme Court and Seventh Circuit case law that the student has a property interest protected by the Fourteenth Amendment and thus the school cannot deny or condition re-enrollment by a disciplinary decision in violation of due process (Appellant Br. 26-30).

Defendants wrongly calls John's property interest "circular" because it relies upon a promise not to discipline without showing a violation, citing a passage in the Complaint's statement of the breach of contract claim. (Appellee Br. 18, citing ¶ 139 at A 70.) But Defendants do not consider that they cannot discipline in violation of due process and Title IX. (Appellant Br. 26, 30.)

## C. Defendants Wrongly Assert The Complaint Does Not Allege Deprivation Of A Protected Interest.

Defendants argue, differently from the Magistrate Judge, the Complaint does not allege deprivation of a protected interest, asserting that a suspension is not an expulsion and John's loss of his Navy ROTC scholarship is immaterial. (Appellee Br. 20-21.) Defendants refer to employment suspensions, which are much shorter and do not carry the consequences that a suspension for sexual misconduct does. Defendants do not refer to the Sixth Circuit decisions in *Doe v. Miami*, 882 F.3d at 599-600, and in *Doe v. Univ. of Cincinnati*, 872 F.3d at 400, recognizing that sexual misconduct cases involve different interests and concerns and a "lasting impact" on students that call for more demanding procedures.

[14]

Defendants' denial of responsibility for John's loss of his Navy ROTC scholarship is irresponsible. The harm was life-altering -- not merely the suspension and accompanying transcript mark and re-enrollment conditions, but the loss of a career in the Navy.  The Navy's action was wholly dependent on Purdue; yet, Defendants seem absurdly to suggest that John should have sued the Navy for not conducting its own hearing.  But for Defendants' wrongful action, John's ROTC enrollment would have continued apace.

Defendants also argue, erroneously, that John does not satisfy the "stigma-plus" test for a liberty interest.  (Appellee Br. 21-24.)  John satisfies the stigma-plus test of *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013), because he has been stigmatized by the sexual misconduct finding and has an altered legal status, having been suspended, subjected to readmission requirements and deprived of his Navy ROTC scholarship (A 8-9, 34-35, 49-50, 53-54, 59-60, 69).  Defendants argue there was no alteration of legal status, as if the sanction did not inflict an alteration of legal status -- which it did.  Defendants argue there was no defamation, as if being accused of sexual misconduct did not trigger one of the *per se* libel categories at common law -- which it did.  *Lieberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992).

[15]

**D.    Defendants Wrongly Argue The Due Process Remedy For Alleged Deprivation Of Contractual Benefits Is A State Contract Claim.__**

Defendants wrongly argue the due process remedy for alleged deprivation of contractual benefits is a state contract claim, citing inapposite case law involving corporal punishment in junior high school not requiring notice and opportunity to be heard, *Ingraham v. Wright*, 430 U.S. 651 (1977), and involving a state law post-deprivation remedy, *Hudson v. Palmer*, 468 U.S. 517 (1984).  (Appellee Br. 24-25.) Defendants also cite *Weinstein v. Univ. of Illinois*, 811 F.2d 1091 (7th Cir. 1987), but that case held that the discharged professor had no property interest in his position and thus there was no due process remedy.

**E.    Defendants Prematurely Argue Qualified Immunity.**

Defendants argue the individual Defendants have qualified immunity from section 1983 damage claims.  (Appellee Br. 25-29.)  The Magistrate Judge did not reach that question (BA 27), and the qualified immunity defense is more appropriately adjudicated on summary judgment or at trial, not on a motion to dismiss. *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1031 (7th Cir. 1992); *Martinez v. Gonzales*, 983 F.Supp. 768 (N.D. Ill. 1997) ("premature" on a motion to dismiss to determine qualified immunity); *Castro v. City of Chicago*, 1998 WL 801814 (N.D. Ill. Nov. 13, 1998) (qualified immunity defense failed on motion to dismiss as "premature").  On a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v.*

[16]

*Pelletier,* 516 U.S. 299, 309 (1996) (emphasis in original).  Here, the alleged deprivations (pp. 4-5, 9-10 above) concern basic constitutional rights that were denied by a "Kafkaesque" process.

**F.    Defendants Wrongly Deny John's Standing For Injunctive Relief.**

Defendants wrongly attack John's standing to obtain prospective injunctive relief.  (Appellee Br. 29-32.)  While Defendants confine its standing attack on John's ability get an injunction under *Ex Parte Young*, 209 U.S. 123 (1908), here, as discussed in John's Appellant Brief (pp. 19-25), prospective injunctive relief in the elimination of the transcript disciplinary mark, elimination of the readmission requirements and reinstatement of John's Navy ROTC scholarship is available to remedy the harms from both the constitutional due process and Title IX claims.

That John has standing for prospective injunctive relief should not be in dispute.  John faces a real and immediate threat of future injury from "ongoing harm" and rightly seeks relief from "continuing, present adverse effects," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983): John is a suspended student with a transcript disciplinary record of sexual misconduct, subject to requirements for readmission and suffering a loss of a Navy ROTC scholarship.  (A 8-9, 34-35, 49-50, 53-54, 59-60, 69.)  John is not faced with conjectural or hypothetical or past injury; life altering harms are visited upon wrongly disciplined males in these campus sexual misconduct tribunals.  That is different from *Simic v. City of Chicago*,

851 F.3d 734 (7th Cir. 2017), where the claim of injury from possibly receiving a ticket in the future for texting while driving was conjectural.

Accordingly, application of *Ex Parte Young* has been widely recognized to authorize injunctive relief to clear a student's academic record: *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995); *Johnson v. Western State Colorado University*, 71 F. Supp.3d 1217, 1230 (D. Colo. 2014).

Further, this Court in *Elliott v. Hinds*, 786 F.2d at 302, ruled that prospective injunctive relief is proper in proper in circumstances such as presented here:

> The injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment. The goal of reinstatement and the removal of damaging information from the plaintiff's work record is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements.

*Accord*: *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (records of punished inmates cleared of any mention of discipline); *Shepard v. Irving*, 77 Fed. App'x at 620 (failing grade and plagiarism record constituted ongoing injury and were expunged).

[18]

Yet, Defendants purport to distinguish this Court's precedent in *Elliott v. Hinds*, 786 F.2d 298, and deny standing because John has not sought re-enrollment at Purdue and re-enlistment in the Navy. (Appellee Br. 29-30.) Wrong.

As noted above, John brought his Complaint in January 2017 (A 3-4, 8-91) six months after being suspended when re-enrollment was not possible even subject to the conditional reinstatement terms of the sanction (A 35). Defendants are attempting to read the Complaint contrary to the review standard requiring the Complaint to be construed in the light most favorable to Plaintiff (here, John) and reasonable inferences to be drawn in Plaintiff's favor. The proper inference from the Complaint is that given the due process and Title IX violations, John should not be subject to any conditions to his re-enrollment at Purdue and needs his record cleared to be able to recapture his dream of serving his country as a Navy officer.

Defendants promote re-enrollment at Purdue as if it were simply a matter of applying; it is not -- the disciplinary sanction puts conditions on John's re-enrollment (A 35) that should not exist. As for re-enlisting in the Navy, Defendants are oblivious to reality if they are contending that a male can become a Navy officer with a sexual misconduct finding on his record.

## G.    Defendants Seek The Dismissal of Defendant Daniels Prematurely.

Defendants seek the dismissal of Defendant Daniels without dealing with the pleaded basis for liability. (Appellee Br. 32-33.) The Complaint, fairly read, alleges

[19]

Defendant Daniels was the responsible "The Buck Stops Here" official at Purdue (A 11) and at the very least turned a "blind eye" to the deprivation of due process rights (A 52-69).  No university president can justify what happened here.  A deposition of President Daniels is appropriate.   Further, President Daniels is the appropriate official to be charged with implementing prospective relief.  *Doe v. Alger, et al.*, No. 5:15-cv-00035, slip op. 29-30 (D. W.Va. Dec. 23, 2016) (rejecting dismissal of university president).

**IV.**

**DEFENDANTS ERRONEOUSLY DENY
THE COMPLAINT STATES A TITLE IX CLAIM**

Defendants, with five misconceived contentions, erroneously deny the Complaint states a Title IX discrimination claim.  (Appellee Br. 33-47.)

**A.**    **Defendants Misconceive The Role Of Due Process In A Title IX Claim.**

Defendants object to the sections in John's Appellant Brief (pp. 43-46) concerning "procedural deficiencies" and "victim-centered process."  (Appellee Br. 33-35.)

1.    Defendants argue that there is no text and legislative history on the topic of procedurally deficient tribunals.  The problem is that there is no text and no legislative history supporting the campus sexual misconduct tribunals.  Title IX was enacted in 1972, and it was not until 39 years later that the OCR's April 4, 2011 Dear Colleague Letter asserted that sexual harassment is a form of sexual discrimination

that required university disciplinary procedures for sexual misconduct, citing the statistics on sexual violence called "deeply troubling" and "a call to action." https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.        If colleges and universities conduct sexual misconduct tribunals, they cannot do so in discriminatory fashion for females and against males because Title IX's text and legislative history mandates non-discrimination.

2.    Defendants deny due process matters in Title IX cases, but miss the practical reason why due process matters -- so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).  The procedural defects in this case resulted in an "erroneous outcome" based on an erroneous and distorted conception of the facts.  Established case law in Title IX actions is that procedural deficiencies are relevant and are part of gender biased proceedings.  *Yusuf*, 35 F.3d at 715; *Doe v. Columbia*, 831 F.3d at 57; *Prasad v. Cornell*, 2016 WL 3212079 at *16 (N.D.N.Y. Feb. 24, 2016); *Doe v. Washington and Lee*, 2015 WL 4647996 at *10 (W.D. Va. Aug. 5, 2015).

3.    Defendants assert there is no due process element in the foundational jurisprudence of the Title IX private right of action, but none of the cases cited by Defendants support the proposition.  *Alexander v. Sandoval*, 532 U.S. 275 (2001), ruled a Title VI private right of action did not extend to disparate impact claims.

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60 (1992), recognized monetary damages may be recovered in a Title IX private action. *Gebser v. Lago Vista Ind. Sch. Corp.*, 524 U.S. 274 (1998), and *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), recognized a Title IX private right of action can establish the recipient's liability by a showing of "deliberate indifference." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005), recognized a private action may claim retaliation as a form of sex discrimination. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009), recognized a Title IX private action does not preclude an action under 42 U.S.C. § 1983.

4.    Defendants deny the connection of gender bias and procedural deficiencies, but Defendants ignore the discussion in John's Appellant Brief of this issue (pp. 47-49) and further ignore the pleading in the Complaint alleging the connection. Paragraph 42, for example, states:

> This [June 14, 2016] determination [of Dean Sermersheim] was made without a hearing on the accusations, much less a hearing where sworn testimony was taken, cross-examination afforded and documentation considered chronologically. Only an anti-male discriminatory bias presuming the female's story to be true can explain Dean Sermersheim's June 14, 2016 letter.

(A 34.) Paragraph 127, for another example, states:

> Defendant Purdue required no reasoned consideration of evidence as required by a burden of proof. Defendant Dean Sermersheim's additional statement in her June 29, 2016 letter reflected a failure in fact to apply a burden of proof, which requires a reasoned consideration of the evidence to reach a conclusion, and actually

> revealed the absence of a preponderance of evidence supporting the finding of a violation by John Doe.  Defendant Dean Sermersheim's additional statement in her June 29, 2016 letter provided no explanation supporting her stated credibility judgments for the female Jane Doe and against the male John Doe, there was no objective evidence supporting Defendant Dean Sermersheim's stated credibility judgments and without a hearing that included the questioning of witnesses, there was no proper basis for making such credibility judgments.  Only an anti-male bias to find for the female complainant and against the male respondent can explain Defendant Dean Sermersheim's purported findings concerning the preponderance of the evidence.

(A 66.)

## B.    Defendants Wrongly Argue That Gender Bias Is Not Alleged.

Defendants wrongly argue the Complaint does not allege facts plausibly showing the case was decided based on gender bias and not the merits.  (Appellee Br. 36-40.)  John's Appellant Brief discussed this point at length. (Appellant Br. 42-55.)  Defendants' contrary argument consists of a series of unpersuasive assertions.

1.    Defendants invoke *Iqbal v. Ashcroft*, 556 U.S. 662 (2009), but that case does not help Defendants.  In *Iqbal*, a Muslim Pakistani brought a *Bivens* action against numerous federal officials, including the U.S. Attorney General and the FBI Director, alleging unconstitutional discrimination in post-September 2011 detention.  The Supreme Court ruled (5-4) that the *Iqbal* Complaint failed to state a *Bivens* claim for intentional discrimination because Iqbal failed to plead facts showing that Attorney General Ashcroft and FBI Director Mueller adopted and implemented the subject detention policies not for neutral investigative reasons, but to discriminate

[23]

based on race, religion and national origin. The Supreme Court majority observed that the September 11 attacks were committed by Arab Muslims and that a legitimate policy directing law enforcement to detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims. 556 U.S. at 666-669, 675-683.

2.    Defendants invoke two non-Title IX cases for a presumption of administrative honesty (never mind Dean Sermersheim's conflict of interest, A 41-42, 65), but those cases do not justify conflicts of interest and have no place in the Title IX context. *Hess v. Board of Trustees of So. Ill. Univ.*, 839 F.3d 669 (7th Cir. 2016), involved the suspension of a student for knifing another student in a bar fight. The objection in *Hess* was to the presiding officer at the interim suspension hearing also acting as presiding officer at the post-suspension hearing; "in itself," this was not deemed to create bias. *Withrow v. Larkin*, 421 U.S. 35 (1975), involved the suspension of a doctor by the Wisconsin Medical Examining Board. The situations addressed in *Hess* and *Withrow v. Larkin* were different; they did not address a conflict of interest contrary to Title IX guidance where there was political pressure.

3.    Defendants call the Complaint's allegations about Obama Administration political pressure "implausible." But there is nothing implausible about those allegations, which in *Doe v. Miami*, 882 F.3d at 594, the Sixth Circuit found contributed to the holding that gender bias was sufficiently alleged. While

[24]

Defendants say *Doe v. Miami* is distinguishable, John's Appellant Brief identifies numerous points of similarity. (Appellant Br. 41-42.) Also, as to the data Doe had in *Doe v. Miami*, that is information more typically obtained in discovery.

4.    Defendants contend *Doe v. Columbia*, 831 F.3d 46, is distinguishable, but again, John's Appellant Brief identifies numerous points of similarity. (Appellant Br. 36-37.) Defendants do not attempt to distinguish other cases discussed in John's Appellant Brief denying motions to dismiss (pp. 37-40).

5.    Defendants contend the gender profiles of accusers and accused shed no light on gender bias, but that is untenable given the victim-oriented process in which males are the "accused" respondents and females are the "victim" complainants. Moreover, the conception of these campus sexual misconduct tribunals has been to protect women. The April 2011 Dear Colleague Letter premised the need for colleges to discipline sexual misconduct with the false statistic that 1 in 5 *women* on campus were victims of sexual assault. (Appellant Br. 45-46.)

## C.    Defendants Impermissibly Misread The Complaint In Asserting The Complaint Shows John's Culpability.

Defendants impermissibly misread the Complaint contrary to the standard of review in asserting that the Complaint shows John's culpability and contrary to motion to dismiss law. (Appellee Br. 40-44.)

Defendants note the Complaint alleges that John presented facts inconsistent with a sexual assault having occurred (*e.g.*, contrary texts, no documentation

[25]

supporting the accusation, reporting delay, suicide attempt).  But Defendants but then assert the Complaint concedes that but for the impeachment, Jane Doe's account is sufficient to find him culpable.  Wrong.  Defendants are again, contrary to the standard of review (p. 3), construing the Complaint in the light most favorable to Defendants and drawing reasonable inferences in Defendants' favor.

Defendants wrongly call "circular" the Complaint's allegations that Dean Sermersheim failed to apply the burden of proof and only an anti-male bias can explain her credibility finding.  Defendants ignore the Complaint's allegations that show Dean Sermersheim had no basis upon which to make a credibility decision in Jane Doe's favor -- *inter alia*, there was no hearing; unlike John, Jane Doe never appeared before the Advisory Committee panel and the Dean; there was no documentation supporting Jane Doe's account (A 30-33, 39-40, 43).

Defendants' assertions and speculations on this subject are misconceived because Defendants argue based on a distorted mistreatment of the Complaint:

(i)     Defendants cannot assert the Complaint fails to plead that investigators failed to collect credibility evidence when the problem pleaded is that John was never given the opportunity to review the investigation report (A 28-30, 33, 37, 43).

(ii)     Defendants cannot assert the Complaint did not allege Dean Sermersheim based her credibility conclusion on evidence other than what was submitted when the problems pleaded are, *inter alia*, there was no hearing, no

[26]

appearance of Jane Doe before the Advisory Committee panel and the Dean, no explanation supporting the Dean's stated credibility judgments and no objective evidence supporting Defendant Dean Sermersheim's stated credibility judgments. (A 34, 66.)

(iii)    Defendants cannot deny Dean Sermersheim's bias without dealing with the actual factual particulars pleaded in the Complaint concerning her conduct and not just recite Complaint paragraph numbers.

(iv)    Defendants cannot say that the Complaint admits this is a "he said/she said" case when the Complaint pleads instead that this is a "he said and provided texts and appeared before the Advisory Committee and Dean/she said but provided no supporting documentation and never appeared in person before the Advisory Committee ad Dean."

**D.    Defendants Wrongly Deny The Causal Connection Between Gender Bias and The Erroneous Outcome.**

Defendants wrongly deny the casual connection between the gender bias and the erroneous outcome, citing again the inapposite case of *Hess v. Board of Trustees of So. Ill. Univ.*, 839 F.3d 669.  (Appellee Br. 44-46.)  This argument is the same point as the one discussed above (pp. 23-25) wherein Defendants wrongly argue that the Complaint does not allege facts plausibly showing the case was decided based on gender bias and not the merits (Appellee Br. 36-40).

**E.    Defendants Misconceive John's Selective Enforcement Claim;
       <u>Defendants Wrongly Deny Gender Bias In The Sanction.</u>**

Defendants misapprehend Plaintiff's Title IX selective enforcement claim. (Appellee Br. 35.)   According to *Yusuf*, "the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender." 35 F.3d at 715.  John's selective enforcement claim is one based on severity of penalty, not the decision to initiate the proceeding.

As to that claim, Defendants deny that there is a gender basis alleged for the sanction alleged in the Complaint.  (Appellant Br. 46-47.)  That is false, as can been seen by quoting the Complaint:

> Defendant Dean Sermersheim's decision to order sanctions that were "unduly severe" was affected by John Doe's male gender.  The false accusations were treated as posing a serious threat to the university when in fact there was no such threat, just an anti-male bias treating John Doe as a "rapist" on the loose.  Defendant Dean Sermersheim's decision to order sanctions that were unduly severe did not take into account that John Doe had a previously unblemished disciplinary record at Defendant Purdue and had presented a list of names that would support his character and integrity.

(A 67-68; A 41.)  Additionally, the Complaint states that Jane Doe never made a formal complaint; her specific request was only to have John be removed from the ROTC program, as she did not have any safety concerns and did not request John be suspended or expelled.  (A 30-31.)  While Defendants cite the gender-neutral language of the sanctions order, sanctions don't need to be worded in reference to

gender if (as pleaded) invariably males are being sanctioned and the severity of sanction reflects a gender biased belief that males need to be sanctioned severely for sexual misconduct.  Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027 (2016).

## <u>CONCLUSION</u>

For the reasons stated above and in John's Appellant Brief, this Court should: (i) reverse the grant of Defendants' motion to dismiss the action, (ii) remand the case to the District Court for discovery and trial and (iii) grant such other and further relief as this Court deems just and proper.

**Dated:        May 21, 2018**

/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
(212) 736-2260 Fax
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com
        -and-
/s/ Damon M. Cheronis
Damon M. Cheronis, Esq.
**LAW OFFICES OF DAMON
    M. CHERONIS**
140 S. Dearborn, Suite 411
Marquette Building
Chicago, Illinois 60603
(312) 386-7033
(312) 277-1920
damon@cheronislaw.com

*Attorneys for Plaintiff-Appellant*

[29]

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This reply brief complies with the type-volume limitation of Seventh Circuit Rule 32(c) because this brief contains 6,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This reply brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

**Dated:  May 21, 2018**

       /s/ Philip A. Byler
       Philip A. Byler, Esq. (Counsel of Record)
       Andrew T. Miltenberg, Esq.
       **NESENOFF & MILTENBERG, LLP**
       363 Seventh Avenue, 5th Floor
       New York, New York 10001
       (212) 736-4500
       (212) 736-2260 Fax
       pbyler@nmllplaw.com
       amiltenberg@nmllplaw.com
        -and-

       /s/ Damon M. Cheronis
       Damon M. Cheronis, Esq.
       **LAW OFFICES OF DAMON**
         **M. CHERONIS**
       140 S. Dearborn, Suite 411
       Marquette Building
       Chicago, Illinois 60603
       (312) 386-7033
       (312) 277-1920
       damon@cheronislaw.com
       *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2018, I electronically filed the foregoing Reply Brief for Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished via the CM/ECF system upon the following parties:

Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, Indiana 47902
765-423-1561

*Attorneys for Defendants-Appellees*


/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
212 736-4500
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff-Appellant*