IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE** | ) |
| **UNIVERSITY BOARD OF TRUSTEES,** | ) |
| **MITCHELL ELIAS DANIELS, JR.,** in his official | ) |
| capacity as President of Purdue University, | ) No. 2:17-cv-33-JPK |
| **ALYSA CHRISTMAS ROLLOCK**, in her official | ) |
| capacity at Purdue University, **KATHERINE** | ) |
| **SERMERSHEIM**, in her official capacity at | ) |
| Purdue University, | ) |
| | ) |
| Defendants. | |

**BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S TITLE IX INJUNCTIVE RELIEF CLAIM**

Defendants, The Trustees of Purdue University ("Purdue University"), Mitchell Elias Daniels, Jr., Alysa Christmas Rollock, and Katherine Sermersheim, by counsel, submit this brief in reply to Plaintiff John Doe's Memorandum of Law in Opposition (DE 316) to Defendants' Motion to Dismiss Plaintiff's Title IX Injunctive Relief Claim (DE 273).

**A. The Opposition punts John's obligation to show actual or imminent harm to an educational opportunity.**

**1. John's typical-harm argument does not meet the jurisdictional test for standing.**

The Opposition does not dispute that John must show standing now for injunctive relief under Title IX, in the form of exclusion from or denial of the benefits

1

of an "education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). John must show standing for a claim that expungement of Purdue University's records or other injunctive relief would remedy a currently blocked educational opportunity for him.

John's "suspension from Defendant Purdue commencing June 13, 2016 for one full academic year" (DE 160, ¶ 47) ended two years before the Seventh Circuit opinion in June 2019. That opinion found no standing for injunctive relief regarding return to Purdue because John "has not alleged that he intends to return to Purdue" and therefore John failed to allege a "real and immediate threat" of harm to his educational opportunity at Purdue. *Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019). That holding still applies today.

Now as then, the Opposition does not allege (i) that John intends to return to college at Purdue or anywhere else or (ii) that his intended college disqualifies applicants who served a one-year disciplinary suspension that ended in 2017. John offers nothing but a hypothetical that he might encounter "disclosure requirements" to "schools other than Purdue". (DE 316 pp. 6, 13). Thus, John fails to allege any real and immediate threat of harm to his educational opportunity anywhere.

The Opposition does not dispute the rule that there is no standing "in the absence of an injury." *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979 (7th Cir. 2023). But the Opposition quarrels with the requirement to show a loss of educational opportunity "that is concrete, particularized, and actual or imminent" and "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190,

2

2203 (2021). At page 11 of his Opposition, John contends that "having a sexual misconduct disciplinary record . . . is typically death to an application to another educational institution" and this Court would not be "living in the real world" if John is held to the standing requirements summarized in *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) and *Prosser v. Becerra*, 2 F.4th 708, 713-14 (7th Cir. 2021).

This defiant stance toward Article III extends even to compliance with the obligation to list contentions in the proposed Joint Final Pretrial Order (DE 239), which says nothing about actual or imminent harm. The Opposition does not seek leave to supplement the proposed Joint Final Pretrial Order.[1]

Standing is not shown by hypothesizing a "typical" injury. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 1259 (1998) (internal citations and quotations omitted). *See Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (applying rule).

A disciplined student's mere argument about hypothetical future education and employment scenarios is "too speculative" to state a claim of actionable harm from an allegedly wrongful university disciplinary decision. *Malhotra v. Univ. of Ill.*

---

[1] "[T]he [pretrial] order is treated as superseding the pleadings and establishes the issues to be considered at trial." *Marschand v. Norfolk & W. Ry.*, 81 F.3d 714, 716 (7th Cir. 1996) (quoting *Erff v. MarkHon Industries, Inc.*, 781 F.2d 613, 617 (7th Cir. 1986)). *See Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2020 U.S. Dist. LEXIS 14577, *3 (N.D. Ind. Jan. 29, 2020) ("'Stipulations regarding the nature of trial proceedings are . . . 'binding unless relief from the stipulation is necessary to prevent a 'manifest injustice' or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law.'").

*At Urbana-Champaign*, 77 F.4th 532, 538 (7th Cir. 2023) ("[Plaintiff] has not alleged that he applied to these schools or jobs yet none would take him. While we acknowledge that future schools and employers might not look favorably on a suspension for violating the University's rules, it is far from clear that they would reflexively turn [Plaintiff] away for this reason.").

Similarly here, John's speculation of "typical[] death to an application to another educational institution" does not show plausible injury facts for standing.

Because John has failed to plausibly allege or show a real and immediate threat of harm to his educational opportunity anywhere, he lacks standing to petition under Title IX for injunctive relief.

### 2. The Opposition is silent on *Trans Union*, which establishes that Purdue's possession of records is insufficient for standing.

Defendants' opening brief showed that *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) blocks standing for a claim based on the mere existence of Purdue's archival record of the investigation and decision on Jane Doe's allegation. Absent dissemination by Purdue, the "mere existence" of such archival information does not have "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." 141 S. Ct. at 2209, 2213. The Opposition is silent on this dispositive holding. The Opposition does not articulate any actual or imminent circumstance in which Purdue will disseminate that archival record. Accordingly, John has no standing to seek injunctive relief regarding Purdue's possession of that archival record.

### B. The Seventh Circuit opinion did not exempt the "issue of expungement" from Article III standing requirements.

John's Opposition cites the Seventh Circuit's conjunction of "expungement" and John's "career in the Navy." (DE 316 pp. 2, 11-12). Discussing John's Due Process "stigma plus" claim at the pleading stage, the Seventh Circuit opinion stated the linkage as: "[John] claims that if the guilty finding is expunged, a career in the Navy may once again be open to him. . . . [H]aving determined that John has pleaded a liberty interest, we instruct the court to address the issue of expungement on remand." 928 F.3d at 666-67.

The instruction to "address the issue of expungement on remand" [928 F.3d at 667] means nothing more than it says. Addressing any "issue" encompasses all applicable law and facts bearing on that issue. Obviously, the remand opinion could not and did not exempt the "issue of expungement" from the continual application of Article III subject matter jurisdiction requirements. As this Court has stated, "[a]t the pleading stage, the Seventh Circuit considered 'only the facts as [John] describes them, drawing every inference in his favor. In other words, the story . . . is one-sided because the posture of the case requires it to be.'" (DE 224 p. 11, quoting 928 F.3d at 656).

It does not matter what proof-promises John made to the Seventh Circuit at the pleading stage. John must show standing today. John does not dispute or distinguish the black-letter jurisdictional rule that standing becomes moot if it does not persist for the duration of the case. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

### C. The Seventh Circuit opinion's reference to "expungement" concerns John's Purdue academic transcript. There is no transcript notation of discipline.

John's Opposition describes expungement as "elimination of the transcript disciplinary mark" (also described in the Opposition as the "transcript disciplinary record of sexual misconduct"). (DE 316 pp. 3, 4, 5). The Seventh Circuit opinion employs the phrases "marred record" and "remov[ing] the negative notation". 928 F.3d at 666. John admits that the three authorities cited in that opinion for that description involve "injunctive relief to clear a student's *academic record*." (DE 361 p. 13) (emphasis added). Accordingly, "the issue of expungement" [928 F.3d at 667] concerns excision of a supposed disciplinary notation in John's Purdue academic transcript.

There is no such notation. John's Purdue academic transcript is in the summary judgment record. (DE 178-48, Ex. UU). John's Opposition does not contend that there is any disciplinary indication in that transcript. Indeed, there is none.

### D. Due to the dismissal of John's "stigma plus" claim, there is no pending injunctive relief claim to remedy deprivation of occupational liberty.

There is no need to analyze standing for John's occupational liberty claim because this Court dismissed the Due Process "stigma plus" claim and subsequently denied John's motion for reconsideration. *See* Opinion and Order dated February 14, 2023 (DE 224). As a result, John has no claim for injunctive relief regarding any "career in the Navy." Because there is no pending occupational liberty claim, the

6

Opposition's citation to *Elliott v. Hinds*, 786 F.2d 298 (7th Cir. 1986), a case involving expungement as a remedy for a deprivation of occupational liberty, is inapposite.

### E. John's contentions about a "permanent federal record" are immaterial to the pending Rule 12(b)(1) motion.

The Opposition refers several times to a "permanent federal record" and asserts, "John has a permanent federal record that continues until an expungement order will obligate change in that record." (DE 316, pp. 5-6, 12). By this, John apparently means the Navy's file regarding his enrollment in Navy ROTC as a Purdue student. Such a Navy enrollment record is immaterial to John's standing for Title IX injunctive relief, for several reasons.

First, John has never contended that any supposed "permanent federal record" is in Purdue's possession. There is no prayer in the Second Amendment nor any contention in the Joint Final Pretrial Order regarding any "permanent federal record."

Second, John's Second Amended Complaint does not name the Navy or any other federal defendant. A judgment in this case cannot redress non-party Navy's possession of a Navy record.

Third, the only possible Title IX connection with the Navy for Title IX injunctive relief would involve ROTC re-enrollment. Because John does not show any imminent intent to enroll in any school (in particular, any ROTC program) there is no actual or imminent harm to ROTC re-enrollment.

Fourth, John does not contend that he is seeking to enlist in the military, whether as an ROTC student or otherwise. The Court has already determined:

7

"[John] was removed from the NROTC program on August 16, 2016. [Pl. Ex. 36]. Following his one-year suspension, John did not return to Purdue. He spent three semesters at Taylor University, which does not have NROTC. . . . He has not produced evidence of any further attempt to join the Navy, or an NROTC program." DE 206 p. 8. Further, the Joint Final Pretrial Order directly implies that the John does not intend to return to college or enlist in the military because his listed damage contention includes: "Lifetime loss of wages and employee benefits". (DE 239 p. 7).

Fifth, John has insisted that "what would happen if he tried the rejoin the Navy" is a "non-issue." (DE 224 p. 9).

### F. John's previous filings show that the Opposition's assertion of a "disciplinary disenrollment" by the Navy is a fabrication.

The Opposition represents that the Navy possesses "[d]isciplinary disenrollment documents". (DE 316 p. 12). This is a fabrication. The Second Amended Complaint and the summary judgment record show that the Navy did not discipline John.

According to John's Second Amended Complaint, John's Navy ROTC enrollment at Purdue ended because he "could not maintain the requirement of continuous university attendance for Navy ROTC" after Purdue suspended him. (DE 160, ¶ 76).

John told the Seventh Circuit he would prove that "expulsion from the Navy ROTC program . . . foreclosed the possibility of his re-enrollment in it." *Doe v. Purdue Univ.*, 928 F.3d at 663. John subsequently admitted that the Navy did nothing more than put John on an interim leave of absence:

8

> [I]n May 2016, the Navy knew about the disciplinary proceeding because Jane Roe had first gone to the Navy in April 2016 to complain (falsely) about sexual assault by me before going to the university with that complaint. . . . Soon after Jane Roe complained to the Navy, I was put on an interim leave of absence pending the university investigation.

(DE 208-1, p. 2, ¶ 5).[2]

John has never contended or shown that there is any Navy discipline. John has admitted that the only reason he was disenrolled from Navy ROTC at Purdue was "the Purdue suspension" (also described as "the university suspension"). (DE 160, ¶ 76; DE 187 p. 33). John has admitted that the Navy board that disenrolled John "did not care why John was suspended by Purdue." (DE 187 p. 33*)*. At summary judgment, John designated a Navy email to John that the Navy's disenrollment decision was "not about the circumstances surrounding your suspension, it is about the fact that you have been suspended. . . . The fact is that you are suspended, and the ROD requires disenrollment for any case where a student is suspended." (*Id*.) John designated the Purdue Navy ROTC unit commander's testimony "that he signed the document for disenrollment because John had been suspended and it was a requirement of the NROTC program that a student cadet be continuously enrolled in the university." (*Id*. p. 34).

John has thus expressly admitted that his Navy discipline was nothing more than an interim suspension pending Purdue's investigation, and that he was

---

[2] Given John's admission that "Jane Roe had first gone to the Navy in April 2016 to complain . . . about sexual assault by me before going to the university", triggering the interim suspension by the Navy, and given the Navy's "zero tolerance" policy, the "federal record" is Jane's pending allegation *to the Navy* that John violated Navy conduct regulations. John's Title IX claim does not fault the Navy's handling of the allegation that Jane submitted to the Navy.

9

disenrolled from Navy ROTC's Purdue unit for the sole reason that he would not be enrolled at Purdue during his one-year Purdue suspension. On the record before this Court, John's decision not to re-enroll at Purdue following the one-year suspension is the only obstacle to re-enrollment in Navy ROTC at Purdue.

### G. Because evidence of John's culpability is already in this Court's record, erasure of that evidence is impossible, and the redress requirement for standing to demand such erasure cannot be met.

The Court has concluded that the summary judgment record shows John made a discretionary decision to disclose Purdue's investigation and decision to the Navy. By proceeding to trial, John is repeating that discretionary disclosure. The Opposition does not dispute that the trial will create a *public* federal record of Purdue's investigation and decision. Further, the Joint Final Pretrial Order stipulates that John will proceed at trial by his given name. (DE 239 p. 18) ("The parties stipulate that Plaintiff John Doe will proceed at trial using his real name and not using pseudonyms in the courtroom.").

According to this Court's description of the summary judgment record, Purdue's decision-makers had "a package of evidence from which 'a reasonable juror could infer that John sexually assaulted Jane.'" (DE 224 p. 13) (quoting DE 206 pp. 15-16). That docketed judicial observation, and the evidence on which it is based, will not be erased from the federal court record. The trial will attach John's name to that judicial observation. Accordingly, John's injunctive relief claim to erase that archival evidence fails the redress requirement for standing.

**H. There is no pending declaratory judgment claim for exoneration.**

There is no need to evaluate standing for a declaration of exoneration because the Second Amended Complaint does not pray for that relief.

The Opposition concedes that John moved to dismiss Purdue's declaratory judgment counterclaim regarding his sexual misconduct culpability under state law. The Opposition quotes John's argument (at DE 183) that the Counterclaim sought declarations that "are state law based and do not involve application of Title IX" and: "It is not the federal court's role to determine independently and declare that conduct violated the university's student code and that the university had the basis to suspend a student from campus; the federal court's role is to determine whether the university took actions that were in violation of federal due process and constituted federally prohibited discrimination." (DE 316 p. 9).

Agreeing with John, this Court dismissed the Counterclaim, on the ground that the Title IX determination of the question whether "Purdue did or did not exhibit gender bias in its treatment of John" would resolve the case "regardless of whether he sexually assaulted Jane." (DE 224 p. 17).

For these reasons, standing for John's Title IX injunctive relief claim cannot be based on any rationale that exoneration on the merits of Jane Doe's allegation would redress actual or imminent harm.

## Conclusion

For the above-stated reasons, Defendants respectfully request that the Court dismiss Plaintiff's Title IX private right of action for injunctive relief.

Respectfully submitted,

/s/ William P. Kealey  
William P. Kealey (18973-79)  
James F. Olds (27989-53)  
Scotty N. Teal (35713-53)  
Stuart & Branigin LLP  
300 Main St., Ste. 900  
P.O. Box 1010  
Lafayette, IN 47902-1010  
Email: wpk@stuartlaw.com  
　　　jfo@stuartlaw.com  
Telephone: 765-423-1561  
*Attorneys for Defendants*

3506467v2