IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR.**, in his official capacity as President of Purdue University, **ALYSA CHRISTMAS ROLLOCK**, in her official capacity at Purdue University, **KATHERINE SERMERSHEIM**, in her official capacity at Purdue University, | ) ) ) ) ) ) ) ) | No. 2:17-cv-33-JPK |
| Defendants. | ) | |

**PLAINTIFF JOHN DOE'S APPLICATION TO FILE SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S TITLE IX INJUNCTIVE RELIEF. AND SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S TITLE IX INJUNCTIVE RELIEF**

Plaintiff John Doe ("John") respectfully submits this application for leave of Court to submit a short Sur-Reply Memorandum of Law in opposition to Defendants' motion to dismiss John's Title IX injunctive relief requests in order to bring a clarity and un-do contrived confusion as a result of Defendants' Reply that engages in misstatement and material omissions to state; and Plaintiff John Doe ("John") here respectfully submits the proposed Sur-Reply.

1.  Defendants do not squarely address the points in Plaintiff John Doe's opposition that eviscerate entirely Defendants' desperate effort to misstate and re-frame the issues so as to avoid the conclusion that per the law and the Seventh Circuit's governing decision in this case, *Doe v. Purdue*, 938 F.3d 652 (7th Cir. 2019), John's Complaint properly seeks, for the alleged Title IX violations, damages and "an injunction vacating John Doe's disciplinary findings and decision, granting expungement of the disciplinary record from John Doe's school records at Defendant

Purdue, ordering the ending of the suspension subject to any readmission requirements" (DE 160, pp. 63-64).

2. Defendants do not acknowledge that Plaintiff John has never withdrawn or disavowed the demand for injunctive relief and that the Pre-Trial Order had a section for fact contentions for liability, but not a section for relief sought.

3. Defendants do not address the point that that Defendants' attempt to make use of the Pre-Trial Order in order to cut off injunctive relief, a result that would be entirely at odds with not only Plaintiff John Doe's legal position but more importantly, the prevailing Seventh Circuit ddecision in this case (928 F.3d at 667-670), is entirely inconsistent with how Defendants have treated the Pre-Trial Order. Defendants have not treated the Pre-Trial Order with such sanctity as they demand. Defendants, without leave, sought last November nearing trial to insert a new exhibit list that contained unrecognizable documents (DE 287). In fairness, counsel for the parties were given an inadequate amount of time to do the Pre-Trial Order. The ECF record, DE 234–DE 242, shows one week was given to do the Pre-Trial Order in a period of time that counsel were required to prepare and submit pre- trial briefs and papers on various issues, including proposed jury instructions, DE 235-DE 241.

4. Defendants do not address the point that the issue of John's right to prospective injunctive relief was a prominent subject in appellate briefs of the parties to the Seventh Circuit (*see* Pl. Opp. MOL, pp. 3-5.), and the issue was decided in John's favor: Judge Barrett's opinion is clear in upholding injunctive relief for the Title IX claim, 928 F.3d at 670, and that injunctive relief includes expungement, 928 F.3d at 667.

5. Defendants do not squarely address the point that the Seventh Circuit decided standing and the appropriateness of expungement in John's favor – a point that discredits Defendants' whole motion:

[2]

> In his response to the defendants' motion to dismiss, and then again in his brief and at oral argument, **John argued that he is also entitled to an injunction ordering university officials to expunge the finding of guilt from his disciplinary record. For this relief, John has standing.** *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (**pursuing expungement of university records "serve[s] the purpose of preventing present and future harm"**); *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (seeking to "remove the negative notation from appellants' disciplinary records" is "nothing more than prospective remedial action"); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (an "F" grade and a plagiarism conviction "constitute[d] a continuing injury to the plaintiff" and an action to remove them was "prospective in nature"). And he claims that if the guilty finding is expunged, a career in the Navy may once again be open to him.

928 F.3d at 666; emphasis supplied. Judge (now Justice) Barrett's opinion for the Seventh Circuit states: "we instruct the court to address the issue of expungement on remand." 928 F.3d at 667. Defendants are improperly seeking this Court to reverse the Seventh Circuit by re-hashing old arguments already rejected by the Seventh Circuit under the guise that injunctive relief is tethered to the due process claim – a notion rejected by the Seventh Circuit, 952 F.3d at 670.

6. Defendants fail to acknowledge that the Seventh Circuit ruled John has standing and that standing was established as a matter of both due process and Title IX: **"John seeks both money damages and injunctive relief for his claim under Title IX. Our earlier discussion of his entitlement to injunctive relief for his due process claim applies equally here [to Title IX]."** 928 F.3d at 670. Defendants' effort to differentiate and deny injunctive relief under Title IX runs up against the Seventh Circuit's rejection of that differentiation and denial. Defendants' arguments then were as ill-considered as they are now.

7. Defendants fail to address squarely that Plaintiff John Doe is continuously damaged and is entitled to relief from the effects of the wrongful suspension, which includes having a "permanent federal record." Expungement is not a matter of dealing with "archival evidence." While expungement does not change the fact that John has served the suspension, it does free John from ongoing disclosure requirements to employers (including the federal government) and schools other than Purdue, provides the basis for eliminating what otherwise will be a permanent

federal record showing a suspension for sexual misconduct, and makes possible future opportunities that would otherwise be cut off by the disclosure of (an albeit erroneous) sexual misconduct sanction. Defendants are being "cute" in not recognizing the deleterious effects of a suspension for alleged sexual misconduct.

8. Defendants' complaint about the lack of a declaration concerning Plaintiff John Doe's innocence of Jane Doe's specious sexual abuse allegations simply ignores the lack of legal merit to Defendants' Amended Counterclaim. (Pl. Opp. MOL, pp. 8-11.) Plaintiff John Doe testified under oath numerous times denying Jane Doe's allegations. Jane Doe never testified ever, much less to her allegations. Plaintiff John Doe's due process and Title IX claims contain plenty of proof as to his innocence and how the lack of due process and sex bias led to erroneous results.

9. Defendants fail to defend their argument that there is a question about John's standing due to the passage of time. The fact that Defendants engaged in scorched earth litigation (e.g., Defendants deposed John's parents and John's mental health counselor and Defendants demanded and got all of John's post-suspension social media posts – which Defendants never used) and that the litigation has been as a result prolonged does not deprive John of standing or make his litigation with Defendants moot.

10. Defendants' argument about re-enrollment (Dfs. Mot. P.. 7 n.1 & Dfs. Reply p. 7) fails to address Plaintiff John Doe's point that the Second Amended Complaint (DE 160, ¶ 82) alleges that John intends to re-enroll, Plaintiff John Doe confirmed that intention in his deposition; the issue has been remedied. Otherwise, Defendants would have made an issue of it in their summary judgment motion (DE 183), which they didn't. John also needed the Navy ROTC scholarship and Presidential Scholarship to afford Purdue; Defendants' glib talk of John's ability to re-enroll cynically ignores John's limited financial resources as well as the conditions placed on

John's re admission that gave Defendants discretion whether to re-admit. Defendants do not defend the applicability of the cases they cite on mootness.

11.  Defendants do not deal squarely with the disclosure requirements for employers, the federal government, educational institutions require reference be made to the sexual misconduct record, and John has a "permanent federal record" that continues until an expungement order will obligate change in that record. Defendants fail to address that disciplinary disenrollment documents are part of his "permanent federal record" per the Navy Rules for Officer Development ("ROD") (DE 208-3) section 6-16 (pp. 6-26 – 6-27):

> c. Disciplinary disenrollments become a matter of permanent federal record and may prejudice the individual for future military or civil employment. Disciplinary disenrollments may be disqualifying for future federal security clearances that are often necessary for positions in private industry. Disciplinary disenrollments may be prejudicial to their interests should they ever apply for a commission in the Armed Forces. . . .

Should John re-apply to the Navy ROTC or to any commission in the U.S. Armed Forces or to any position in the federal government, he would be honor-bound to disclose the disciplinary disenrollment that is part of his permanent federal record and if he did not and it were inevitably discovered in a mandatory background check, termination would be expected. (DE208-1 ¶ 9.) pp. 8-9); the Navy did not conduct its own investigation but relied 100% on the university disciplinary suspension. (DE187-2, pp. 23-27 and record citations therein.) Accompanying the Opposition Memorandum of Law as Exhibit D are the Navy ROD.

12.  Defendants lapse into misstatement and incoherence when asserting that the Navy did not discipline Plaintiff John Doe and then turn around to purport to address (incorrectly) the Navy's disciplinary disenrollment of Plaintiff John Doe (Dfs. pp. 7-9), as if disenrollment from a university discipline is not disciplinary in nature.

13. Defendants, in their Reply, revise their reading of *TransUnion LLC v. Ramirez*, 594 U.S. 453, 141 S. Ct. 2190 (2021), to give the case a meaning it does not have. *TransUnion LLC v. Ramirez* was a case involving consumer credit reports and not educational opportunities, and it ruled that under Article III, only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court. Defendants nevertheless misread into *TransUnion LLC v. Ramirez* a standing requirement that the loss of educational opportunity be "concrete, particularized, and actual or imminent" and "would likely be redressed by judicial relief." (Dfs. Reply p.1.) Defendants take a further unjustified leap in their Reply, asserting Defendants showed *TransUnion LLC v. Ramirez* blocks standing for a claim based on the mere existence of Purdue's archival record of the investigation and decision on Jane Doe's allegation (Dfs. Mot. p. 1.) Defendants made no such showing; *TransUnion LLC v. Ramirez* does no such thing as blocking suing over employment and student records containing false, damaging information, much less block suits for expungement. Defendants cannot be allowed to avoid the Seventh Circuit rulings and the law discussed above (pp. 2-5) by misreading an inapposite consumer credit report case in *TransUnion LLC v. Ramirez*.

14. Defendants raise a false issue when they argue that Plaintiff John Doe's disciplinary record is not also stated on the academic transcript. (Dfs, Reply p. 6.) The deposition testimony of Plaintiff John Doe and his parents was that regardless of where located in the university records, the disciplinary file exists – in fact, a Purdue in-house counsel Trent Klingerman was deposed where those disciplinary records were and are held. The Seventh Circuit's intention was clearly to clear Plaintiff John Doe's record, which was not and is not dependent upon where specific files are located. Defendants' semantic argument here is just another example of Defendants' misdirection.

15. Defendants misstate the case when referring to the authorization of disclosure of the disciplinary records to the Navy as "discretionary." It was anything but discretionary because

as Defendants admit (Dfs. Reply p. 10), Jane Doe told the Navy about her allegations; that is why the Navy wanted "in the loop" (as Plaintiff John Doe put it in his sworn testimony) of Defendants' investigation. To the Seventh Circuit, Defendants' counsel argued the Navy only knew because of the authorization. Not true. The discovery record showed that as a matter of military realities, Plaintiff John Doe had no real choice but to sign the authorization requested by the Navy. In this connection, Defendants omit to acknowledge that Judge Barrett for the Seventh Circuit flatly rejected the self-defamation argument of Defendants, 928 F.3d at 661-663, and that when Defendants refer to "the Court" ruling for what it mislabels discretionary authorization, Defendants are referring to Judge Kolar essentially reversing Judge Barrett's upholding of the stigma-plus liberty interest. It may not be pleasant to consider, but one ground for the recusal for bias motion against Judge Kolar was his wholly unjustified handling of the stigma-plus liberty interest that was a purposeful effort to cut off Plaintiff John Doe's meritorious due process case. The discovery record showed a more egregious case pf denial of due process than what was alleged in the Complaint for which Defendants excoriated Defendants by Judge Barrett for the Seventh Circuit. 928 F.3d at 663-664.

16. Counsel for Plaintiff John Doe has attempted to address the more glaring deficiencies in Defendants' Reply. But if there are any questions or doubts about the lack of merit to Defendants' motion, counsel for Plaintiff John Doe would welcome the opportunity to address those questions and doubts in Court. In Defendants' Reply and generally, there is a disturbing level of misstatement and material omission to state. Given the multitude of facts and legal issues in this case, it is respectfully suggested that the Court avail himself of the offer of Plaintiff John Doe's counsel.

## CONCLUSION

For the reasons stated in Plaintiff John Doe's opposition to Defendants' motion to dismiss the Title IX injunctive relief requests and as stated above, the Court should deny Defendants' motion to dismiss the Title IX injunctive relief requests and should grant such other and further relief (*e.g*, sanctioning Defendants for not disclosing Seventh Circuit rulings contrary to Defendants' arguments) as the Court deems just and proper.

**Dated:  April 19, 2024**

**Respectfully submitted,**
**LAW OFFICES OF PHILIP A. BYLER**
**By: /s/** *Philip A. Byler*
**Philip A. Byler, Esq.**
**11 Broadview Drive**
**Huntington, New York 11743**
**(631) 848-5175**
pbyler1976@gmail.com
*Attorneys for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served by ECF upon the attorneys of record for each party to the above-entitled cause at the address shown below on April 19, 2024:

William P. Kealey, Esq.
James Olds, Esq.
Scotty Teal, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com

*Attorneys for Defendants*