IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE** | ) |
| **UNIVERSITY BOARD OF TRUSTEES,** | ) |
| **MITCHELL ELIAS DANIELS, JR.,** in his official | ) |
| capacity as President of Purdue University, | ) No. 2:17-cv-33-GSL |
| **ALYSA CHRISTMAS ROLLOCK**, in her official | ) |
| capacity at Purdue University, **KATHERINE** | ) |
| **SERMERSHEIM**, in her official capacity at | ) |
| Purdue University, | ) |
| | ) |
| Defendants. | |

**PURDUE UNIVERSITY'S MOTION IN LIMINE**

Defendant, The Trustees of Purdue University ("Purdue"), by counsel, moves the Court *in limine* for an order that, at the jury trial, the following subjects may not be offered into evidence or addressed to the jury by Plaintiff John Doe ("John"), his counsel, or any witness testifying called by John without prior leave of the Court:

**A. The opinions of R. Christopher Barden and Stan V. Smith.**

For the reasons set forth in Purdue University's Motion to Exclude Expert Opinions (filed on June 28, 2024), evidence of the opinions of R. Christopher Barden and Stan V. Smith must be excluded. Purdue incorporates by reference its arguments as set forth in that Motion.

**B. Alleged failure to comply with any procedural requirement.**

1

This Court has dismissed John's Due Process claim. DE 206 p. 24. That dismissal bars any claim or argument that Purdue breached any Fourteenth Amendment procedural requirement. As a result, no pending claim equips John to argue or present evidence as to whether Purdue failed to comply with any Due Process obligation when investigating and deciding Jane Doe's allegation. John's Title IX claim is confined to Title IX's statutory requirements. John has never alleged that Purdue violated any such statutory procedural requirement.

The procedures subsequently implemented by the Department of Education in 2020 (four years after Purdue disciplined John) (*see* 34 CFR § 106.45) are immaterial to the jury's task in evaluating whether there was gender discrimination in his disciplinary process.

For these reasons, it would confuse the jury and prejudice Purdue, and thus violate Rule of Evidence 403, to permit John to argue or attempt to adduce evidence that faults the Purdue process employed in 2016 for the investigation and decision of Jane Doe's allegation.

C. **John's remedy claims.**

   1. **If the Court orders bifurcation of liability and damages, evidence or argument regarding John's Navy ROTC evidence and argument for disenrollment and damage claims should be barred from the liability phase.**

Purdue has filed its Motion to Separate Liability and Damages Issues for Trial (DE 329). If the Court grants that relief, all evidence relating to damages should be excluded from the liability phase of the trial. In the parties' Joint Final Pretrial Order (DE 239), Plaintiff has generally described that evidence as:

"According to the Navy ROTC disenrollment documents, John's suspension was the only reason he was disenrolled from Navy ROTC, and the disenrollment meant the loss of the ROTC scholarship and the Navy career he intended to pursue. John's damages were: (i) Loss of Scholarship (ii) Loss of Income To Date (iii) Lifetime loss of wages and employee benefits (Dr. Smith) (iv) Loss of potential value of life at an upper range (Dr. Smith) (v) Alternative to Dr Smith, loss of lifetime earnings (vi) Loss of reputation". DE 239 p. 7. Because any such evidence has no bearing on liability, it would be confusing and a waste of time and therefore contrary to FRE 403 for the jury to hear it during the liability phase of a bifurcated trial.

## 2. Arguments or evidence regarding the content of disciplinary records or "expungement".

At a teleconference on October 27, 2023, the Court indicated that contentions about the content of disciplinary records or "expungement" relate to injunctive relief that the jury will not decide, and that injunctive relief and would be taken up only after the jury is discharged and only in the event of a liability verdict for Plaintiff. It would be confusing and a waste of time and therefore contrary to FRE 403 for the jury to hear evidence or argument on those topics.

## 3. Damage contentions and evidence not produced or disclosed to Purdue during discovery.

It would prejudice Purdue and therefore violate Rule of Evidence 403 for Plaintiff to seek to admit any evidence not produced in discovery or not disclosed to Defendant during discovery. The rule in the Northern District of Indiana is:

> Undisclosed information and witnesses will not be permitted. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a

3

> witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). The Court precludes any substantive evidence not previously disclosed, except for impeachment or rebuttal purposes.

*Doe v. Purdue Univ.*, No. 4-18-CV-89-JEM, 2022 U.S. Dist. LEXIS 128601, at *17 (N.D. Ind. July 20, 2022).

Discovery ended long ago. As summarized at DE 233, John has defied the requirement to supplement his discovery responses and disclosures. John has disclosed no evidence for his claim that he has sought to re-enroll in Navy ROTC or enlist in the Navy; no evidence to show his aggregate annual income or lack thereof; and no evidence to show any effort to enroll at Purdue University or any other educational institution in recent years. He has disclosed no evidence to show that he has sought employment from any employer who either is aware of John's disciplinary suspension from Purdue or has refused an employment opportunity to John on that basis. He has disclosed no evidence to show any third-party awareness or perception of the disciplinary suspension. John has also failed to disclose any trial contentions regarding his educational progress and career intentions.

Under *Doe v. Purdue*, *supra*, "[A]ny substantive evidence not previously disclosed" on these topics is inadmissible and cannot be offered for the first time on the eve of trial or at trial.

John should be precluded from presenting evidence of any damages that were not properly disclosed under Rule 26. Specifically, Rule 26(a)(1)(A)(iii) requires disclosure of "a computation of each category of damages claimed by the disclosing

party—who must also make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" "Rule 26 places the onus on a plaintiff to provide (1) a top-line computation of its claimed damages; and (2) specific categories of damages." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 605 (7th Cir. 2024). "The purpose of mandatory disclosures is to 'accelerate the exchange of basic information about the case[.]'" *Id.* (citation omitted).

It is not sufficient if damages information can be discerned from documents that were exchanged in discovery. *See Chicago Joe's*, 94 F.4th at 605 ("The rule requires all parties to disclose damages calculations early in the case. Sprinkling various financial documents among thousands of pages of discovery over several years is neither early in the case nor a calculation, nor does it serve to accelerate the exchange of basic information." (cleaned up)). Moreover, John cannot present evidence or argument related to any damages (regardless of type) for which he did not provide a calculation. "Rule 26 requires disclosure of any documents upon which damages computations are based, but doing so does not eliminate the requirement to provide the damages computations and categories the documents support." *Id.* at 606 (citing Fed. R. Civ. P. 26(a)(1)(A)(iii)).

"Under Federal Rule of Civil Procedure 37(c)(1), when a party fails to provide information as required by Rule 26(a) or (e), 'the party is not allowed to use that information' at trial, 'unless the failure was substantially justified or is harmless.'"

*Neurografix v. Brainlab, Inc.*, No. 12 C 6075, 2021 U.S. Dist. LEXIS 50710 at *18 (N.D. Ill. March 18, 2021) (quoting Fed. R. Civ. P. 37(c)(1)). "[T]he sanction for failure to disclose is automatic and mandatory unless the sanctioned party can show its violation was either justified or harmless." *Chicago Joe's*, 94 F.4th at 603 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

John should also be barred from presenting evidence or argument regarding any alleged out-of-pocket expenses or expenses related to any disruption in his education. He has disclosed no calculation of such damages, nor has he provided evidence that he herself incurred any such expenses.

### 4. Alleged emotional distress, psychological harm, or consequences of same.

On August 11, 2022, this Court ruled:

> Defendants move to dismiss John's claim for "emotional and psychological damages" on his Title IX claim, based on the Supreme Court's holding in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (April 28, 2022). The court held that emotional distress damages are not available under antidiscrimination statutes enacted under the Spending Clause of the Constitution, such as Title IX. 142 S. Ct. at 1569, 1572 (listing Title IX as one of the four Spending Clause statutes: "[W]e . . . cannot treat federal funding recipients as having consented to be subject to damages for emotional distress. It follows that such damages are not recoverable under the Spending Clause statutes we consider here."). In response, John notes that these damages are "a minor component" of his overall damage claims, and Defendants' request should be "considered in accordance with the motion's limitations." [DE 205]. Ultimately, he makes no argument against the requested relief. The Supreme Court's decision forecloses his claim for "emotional and psychological damages," so the motion will be granted.

DE 206 pp. 23-24. That dismissal requires the exclusion of all evidence regarding emotional and psychological harm.

6

Accordingly, any references to (i) John's alleged anxiety and stress stemming from Jane's allegations, Purdue's (or the Navy's) investigation, Purdue's discipline, or (ii) the impact of this alleged distress on his education and career path, are not relevant to any issue for the jury. Fed. R. Evidence 401-402. Introducing evidence or reference to these alleged harms in the presence of a jury risks clouding the issues, wasting time, and confusing the jury by permitting it to consider irrelevant evidence on the question of damages. Fed. R. Evid. 403.

Further, any self-diagnosis by John is inadmissible to prove the existence of an authentic clinical diagnosis. John has generally claimed to suffer from anxiety and stress following his suspension, and he has tried to leverage that self-diagnosis into a rationale for his decisions not to complete his education and enter the work force in any meaningful way. However, there is no evidence that John has never been formally diagnosed with any such condition by a licensed diagnostician, nor has he designated any expert opinion or disclosed any treating physician on that topic.

Purdue anticipates that John intends to sidestep his duty to mitigate his alleged lost earnings by averring that he did not seek (or keep) a job because of his mental state. Such a claim is simply an emotional and psychological distress claim—in other words, John's alleged inability to work is a continuation of his claim that he was psychologically or emotionally injured by Purdue. In the wake of this Court's dismissal of John's claim for emotional and psychological harm, John cannot

deploy such arguments to deflect his duty to mitigate and inflate his claimed earnings loss.

### 5. Alleged consequential damages.

John should be barred from presenting any evidence of speculative compensatory or consequential damages. Because Spending Clause statutes such as Title IX are analogized to contract, a funding recipient who breaches that "'contract' with the Federal Government . . . will be subject to the usual contract remedies in private suit." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 221 (2022). This rule limits John to contractual damages that meet the requirement of reasonable certainty. *See* 24 WILLISTON ON CONTRACTS § 64:12 (4th ed.); Restatement (Second) of Contracts § 352 ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.").

Further, consequential damages for lost earning capacity related to future employment are only recoverable in contract where a plaintiff "alleges and proves with specificity that the defendant's breach actually adversely influenced or affected job opportunities." *Doe v. Fairfax Cty. Sch. Bd.*, No. 1:18-cv-614, 2023 U.S. Dist. LEXIS 13886 at *16-17 (E.D. Virginia Jan. 25, 2023) (quoting 24 WILLISTON ON CONTRACTS § 66.4 (4th ed. 2022)). "General assertions of difficulty in obtaining employment following a breach of contract . . . are essentially claims of reputational harm and are not recoverable in contract law." *Id.* at *117 (citing 24 WILLISTON ON CONTRACTS § 66:4). "Absent allegations of a specific employment opportunity that

8

was foreclosed by Defendant's alleged violations, Plaintiff cannot recover for diminished earning capacity or lost future earnings." *Id.* at *18 (citations omitted). Losses that are too distant in time from the alleged breach are too attenuated to be recoverable in contract. *Id.* at *18-19.

John has contended that he is entitled to an award of consequential damages. In sum, he seeks damages for his failure to obtain a degree in the seven years since he was suspended from Purdue for one year in 2016, his failure to take any step whatsoever toward a Navy career in the seven years since he was suspended from Purdue in 2016, and his unwillingness to participate in the workforce for long stretches since 2016. What would have happened if John had returned to Purdue when his suspension was over? What would have happened if John had completed degree coursework at a different school? What would have happened if John had re-enrolled in ROTC at Purdue or elsewhere? What would have happened if John had enlisted in the Navy? Neither John nor any other fact witness on his witness list can say, because those events are speculative hypotheticals.

Similarly, alleged losses that purport to account for employment opportunities that the plaintiff never intended to pursue are speculative and unrecoverable. *See Doe v. Trs. of Dartmouth Coll.*, No. 22-cv-018, 2023 U.S. Dist. LEXIS 186793 at *13 (D.N.H. Oct. 18, 2023) (excluding testimony on plaintiff's lost earning capacity as a cardiologist where the plaintiff had testified that he intended to pursue a career as a primary care physician; "[H]e states he would have pursued a career as a primary care physician. Wages he might have earned had he chosen a

9

different specialization are not relevant.").

Because John has failed to disclose any relevant facts and contentions to show a nexus to future outcomes, any related damage claim is impermissible speculation about unavailable consequential damages. Where there is no demonstrable basis to conclude what would have happened in those hypothetical scenarios, hypothesizing that Purdue's one-year suspension doomed or barred John from success in any of those scenarios is inadmissible speculation. *Van Houten-Maynard v. Anr Pipeline Co.*, No. 89 C 0377, 1995 U.S. Dist. LEXIS 6751, at *21 (N.D. Ill. May 18, 1995) (granting motion in limine; "The speculative nature of this testimony is apparent from the fact that there is no demonstratable basis to suggest that plaintiff would not have secured other employment.").

**D. The Seventh Circuit Opinion in this case.**

John's counsel has repeatedly mis-cited the Seventh Circuit's opinion in *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) as a determination on the merits. This Court has taken John's counsel to task for this mischaracterization. DE 224, at 11 ("Courts are not 'bound and determined' to find for any particular party or allow any particular claim for relief to go forward. . . . The Court's summary judgment opinion is perfectly consistent with the Seventh Circuit's opinion on a different factual record, and at a different stage of litigation that required a very different quantum of proof. At the pleading stage, the Seventh Circuit considered "only the facts as [John] describes them, drawing every inference in his favor. In other words, the story . . . is one-sided because the posture of the case requires it to be.").

The Seventh Circuit's opinion (including the involvement of a future Justice of the United States Supreme Court) is not evidence and would be confusing to jurors, who will not have any knowledge of the difference between proof and pleading practice. Also, any mention by John of the Seventh Circuit's writings in this case would also open the door to this Court's decision dismissing the Due Process allegation that was previously addressed in the appellate opinion, as well as opening the door to the denials of John's petitions to the Seventh Circuit and the United States Supreme Court in 2023 and 2024 (Case Nos. 23-1310 and 23-2764).

### E. Statements in the press or opinions from nonparties about this case.

John has repeatedly suggested to this Court that the media and public figures are closely following his case. Statements in the media and statements from third-party advocates on public policy regarding sexual misconduct discipline are hearsay and not grounded in any personal knowledge regarding the events at issue in this case. Fed. R. Evid. 401-403, 701. The jury is the factfinder and must be guided solely by its review of admissible evidence and this Court's instruction of law. Third-party statements about this case and past decisions, alleged facts, or the "importance" of this case have no place in the jury trial.

### F. Jane Doe's sexual history.

Throughout this case, John has tried to disparage Jane Doe for her supposed sexual history predating John's relationship with her. That topic is inadmissible and should be excluded by the Court *in limine*.

First, John's statements are hearsay because, by definition, John has no percipient-witness knowledge regarding Jane's sexual history prior to her relationship with John.

Second, Jane is not a party and any statements imputed to her about her sexual history are not party-admissions and therefore are inadmissible hearsay.

Third, evidence regarding Jane's sexual history is inadmissible. *See* Fed. R. Evid. 412(a) ("The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition.").

Fourth, Jane's supposed sexual history—as told by the person who sexually assaulted her—has nothing to do with the only issue for the jury, which is whether Purdue intentionally discriminated against John on account of his sex. Allowing John or his witnesses to address Jane's sexual history confuses the issues, wastes time, and would be prejudicial to Purdue. Fed. R. Evid. 403.

### G. Jane Doe's mental health.

John has repeatedly speculated on Jane Doe's mental state and motives for reporting sexual assault. John has no credential for psychological evaluation and therefore cannot offer opinions about Jane's mental health. Any alleged out-of-court statements by Jane regarding her mental health would be inadmissible hearsay.

John's contention that he reported a suicide attempt by Jane lacks is dubious because there is no evidence to corroborate that John made such a report or to show

that Jane was aware of any such report. Any speculation by John that Jane was aware of such a report by John is outside of John's personal knowledge and therefore inadmissible.

Injecting Jane's mental health into this case would mislead the jury about its task. The jury is tasked with deciding whether Purdue possessed discriminatory intent, not evaluating Jane's mental health.

Further, impugning the mental health of a non-party witness has no logical relationship to the witness's credibility. There is no basis in science or law to argue that a depressed person cannot be trusted to tell the truth. Further, an argument by John about Jane's mental health would open the door to the inference that John's own conduct harmed her mental health, and that Jane's allegedly deteriorated mental health corroborates that John sexually assaulted Jane.

**H. John's claimed religiosity.**

John and some of his family members have invoked his 'Christian upbringing' and his family's religious or moral values. Those self-descriptions have no bearing on any issue for the jury and inappropriately challenge the jury to discount witnesses who do not cloak their testimony in rhetoric of religiosity. Whether John was guided by religiosity has no probative value in determining whether Purdue's decision-makers were gender-biased. Fed. R. Evid. 403.

Further, religion is a highly sensitive topic. The admission of evidence on religiosity opens the door to inquiry into topics that may confuse the jury and invite biased inferences about various forms of religiosity (or lack thereof). There is no

presumption in law that people who profess religious creeds are more or less likely to offend a rule on impermissible sexual conduct. For these reasons, the topic is confusing and prejudicial and has no relevance to the jury's task in reconstructing Purdue's decision-making and should therefore be barred.

### I. Alleged impact on John's family and friends.

John has identified his parents and roommate as witnesses. Those witnesses should be prohibited from testifying regarding any alleged impact on them from Purdue's one-year suspension of John. The only plaintiff is John, not his parents or friends. Such testimony by non-party family and friends would not be probative of gender bias, or John's damage claim. Such testimony would also be contrary to this Court's *Cummings*-based dismissal of John's claim for emotional and psychological harm damages, by inviting speculation on that topic, and may confuse the jury or amount to an improper attempt to inflame its passions. Fed. R. Evid. 403.

### J. Objections to Discovery.

Purdue has objected to some of John's discovery requests in this case. Purdue's discovery objections are irrelevant to the trial in this action, in that it does not "make the existence of any fact that is of consequence to the determination" of John's Title IX claim "more probable or less probable than it would be without the evidence," and Plaintiff should not be allowed to reference these objections to the jury. Evid. R. 401, 402. Alternatively, even if Purdue's discovery objections could be deemed relevant evidence, the objections would still be inadmissible because of their unfairly prejudicial nature. Evid. R. 403. Reference to Purdue's discovery

objections is unfairly prejudicial, in that it may appear to the jury, which is unfamiliar with the rules of discovery, that Purdue has "something to hide" or is choosing to be "less than upfront" with the jury. Accordingly, Plaintiff should be precluded from mentioning Purdue's discovery objections to the jury. *See also McQuiston v. Helms*, No. 1:06-cv-1668-LJM-DML, 2009 U.S. Dist. LEXIS 19141, at *33 (S.D. Ind. Mar. 4, 2009) (granting motion *in limine* to exclude references to objections to discovery requests).

### K. Purdue University's liability insurance coverage.

Evidence that insurance coverage is available to pay a judgment in this matter is irrelevant, prejudicial, and inadmissible. Under Rule of Evidence 411, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." In this case, there is no other purpose for admission of such evidence. Purdue requests that the Court instruct John and his counsel and witnesses that they are not to offer any evidence or testimony which might in any way refer to the existence of Purdue's insurance. It is well-established that evidence concerning the availability of insurance coverage for a defendant injects prejudicial elements into the case. John's attorney should further be instructed not to ask jurors questions about insurance or insurance companies during voir dire.

### L. The parties' settlement negotiations and any Rule 68 Offer of Judgment.

The parties have engaged in settlement negotiations, including an unsuccessful mediation. Plaintiff and his counsel should be barred from telling the

jury about settlement offers, statements made during settlement negotiations or any offer of judgment. Evidence R. 408; Fed. R. Civ. Proc. 68.

### M. No "Golden Rule" appeal to the jury.

John should be precluded from urging the jurors to put themselves in his position. "A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *U.S. v. Teslim*, 869 F.2d 316, 328 (7th Cir.1989) (quoting *Spray- Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir.1982)); *see also U.S. v. Roman*, 492 F.3d 803, 805-06 (7th Cir. 2007) (finding "Golden Rule" appeal that the jury should place itself in the defendant's shoes improper); *U.S. v. Whitaker*, No. 95-3829, 1996 U.S. App. LEXIS 24197, at *8 (7th Cir. Sept. 11, 1996) (finding "Golden Rule" appeal improper); *see also Johnson v. State*, 453 N.E.2d 365, 369 (Ind. Ct. App. 1983) ("It is misconduct to phrase final argument in a manner calculated to inflame the passions or prejudices of the jury."). Such argument or inference is inadmissible under Rule 403, as unfairly prejudicial to Purdue and confusing to the jury.

### N. Argument that the jury should "Send a Message" to Purdue or any anyone else; any mention of punitive damages or punishment.

John should not be allowed to argue to the jury that it should "send a message" to Purdue or any other non-party in this case, such as other public universities or federal leaders. Any such argument would be nothing more than a disguised attempt to argue for punitive damages which, as a matter of law, are

unavailable on John's title IX claim. *See Barnes v. Gorman*, 536 U.S. 181 (2002); *Bergholz v. John Marshall Law Sch.*, No. 18 C 3, 2018 U.S. Dist. LEXIS 185147, at *13-14 (N.D. Ill. Oct. 30, 2018); *see also Mercer v. Duke Univ.*, 50 Fed. Appx. 643, 644 (4th Cir. Nov. 15, 2002); *Frechel-Rodriguez v. P.R. Dep't of Educ.*, 478 F. Supp. 2d 191, 198-99 (D.P.R. 2007); *Bullard v. Dekalb Cty. Sch. Dist.*, 2006 U.S. Dist. LEXIS 103144, at *11, 2006 WL 8432670, at *4 (N.D. Ga. Feb. 9, 2006); *Hart v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2002 U.S. Dist. LEXIS 25720, at *56-57 (S.D. Ohio Nov. 15, 2002).

Because punitive damages are unavailable in Plaintiff's lone remaining cause of action, any reference to punishing or sending a message to Purdue would be prejudicial to Purdue and confuse the jury regarding the assigned and permitted task to consider only compensatory damages. *See, e.g.*, *Lauderdale v. Russell*, No. 1:16-cv-02684-TWP-TAB, 2020 U.S. Dist. LEXIS 2670, *9 (S.D. Ind. Jan. 8, 2020) (finding phrases "send defendants a message" or "teach them a lesson" irrelevant and prejudicial); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 U.S. Dist. LEXIS 211723, *2 (N.D. Ind. Dec. 5, 2019) (finding "a request to send a message beyond making Plaintiff whole . . . inappropriate in a case for only compensatory damages"); *Scott v. Menard, Inc.*, No. 2:10-cv-442, 2015 U.S. Dist. LEXIS 99247, *8 (N.D. Ind. July 30, 2015) (finding any "send a message" argument "would be unfairly prejudicial"); *Pearson v. Ill. Cent. R.R.*, No. 06-cv-0822-DRH, 2008 U.S. Dist. LEXIS 24855, *2 (S.D. Ill. Mar. 27, 2008) (excluding any "argument, comment or suggestion that the jurors act as safety advocates in this lawsuit or that they

17

send a message to the corporate defendant with their verdict," as "improper and inflammatory").

Any implication that a damages award is sought for any purpose other than compensation of eligible, compensatory, proximately caused losses is inappropriate and should be barred under Evidence Rule 403.

O. **Any non-party's Title IX allegations against Purdue University, any event or evidence underlying or in the course of any non-party's Title IX lawsuit against Purdue University, and any related disciplinary outcome or sanction.**

Purdue has been named a defendant in other Title IX suits. Those cases have no factual connection to John's case. Any discipline ordered by Purdue University regarding any non-party student is a collateral matter with no probative value, a waste of time, and a risk of confusion. The determination of a conduct offense by a non-party is unique to the facts and circumstances of that non-party's conduct and has no probative value to show that anti-male bias motivated the disciplinary outcome of Jane Doe's allegation regarding John Doe. It would confuse the jury and prejudice Purdue, and thus violate FRE 403, for Plaintiff to offer argument or evidence regarding the existence of those cases, the allegations and evidence in those cases, any rulings of those cases, or any consensual resolution of those cases.

P. **The "History," "Purpose," or "Intent" of Title IX.**

There is no jury task involving the history, purpose, or intent of Title IX. Those topics are freighted with political considerations that have no probative value and would prejudice Purdue if introduced at trial. As courts have found in other circumstances, it is sufficient that the jury is instructed only on the "applicable law"

18

and any attempt to frame the Court's explanation of the law with arguments about an act's purpose, history, or intent serves no permissible purpose. *E.g.*, *Stillman v. Norfolk & Western Railway Company*, 811 F.2d 834, 838 (4th Cir. 1987); *Taylor v. Union Pac. R.R. Co.*, No. 09-123-GPM, 2010 U.S. Dist. LEXIS 134667 at *5 (S.D. Ill. Dec. 21, 2010).

WHEREFORE, Purdue respectfully requests that the Court grant this Motion *in Limine*.

Dated: June 28, 2024

Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (No. 18973-79)
James F. Olds (No. 27989-53)
Scotty N. Teal (No. 35713-53)
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
      tlj@stuartlaw.com
      jfo@stuartlaw.com
Telephone: 765.423.1561
***Attorneys for Defendants***

1549163v2