**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | **CIVIL ACTION** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** ) | |
| **DANIELS, JR.,** in his official capacity as President of ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK,** ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, ) | |
| **KATHERINE SERMERSHEIM**, in her official capacity ) | |
| at Purdue University, ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO MOTION TO PLACE IN
THE TRIAL RECORD DEFENDANTS' ADMISSIONS FROM
THEIR ANSWER TO THE SECOND AMENDED COMPLAINT**

Defendants, by counsel, respond in opposition to Plaintiff's "Motion to Place in the Trial Record Defendants' Admissions From Their Answer to the Second Amended Complaint." (DE 328) ("Motion").

This Court previously denied an earlier version of the same motion (DE 241) on March 19, 2024, without prejudice to refiling. DE 315. Because that motion was denied, arguments about whether that earlier version was timely filed and briefed are now pointless.

The refiled Motion is half-baked, non-complaint with this Court's recently issued "Scheduling, Pretrial Conference, and Trial Order" (DE 325), and should be denied. The Motion begs the question of how a purported "judicial admission" enters the "trial record". In a jury trial, there are only two paths into the "trial record": (i) admission of evidence and (ii) publication via a judicial instruction.

1

The Motion does not attempt to move the admission of Plaintiff's Complaint as documentary evidence for Plaintiff's case-in-chief at trial. If Plaintiff wants to try to move his own pleading into evidence at trial, he would need to do so during the trial, not via a pretrial motion. Plaintiff's Complaint is argument, nothing more. Plaintiff cannot move his own written argument into evidence in his own case-in-chief, so attempting to do so would be foolish.

Neither does the Motion attempt to move the admission of Defendants' Answer as documentary evidence for Plaintiff's case-in-chief at trial. Plaintiff insists that the Motion is not seeking the admission of any evidence. DE 328-1 p. 7 (argument that "judicial admission" does not entail "the admissibility of testimony and documents").

Therefore, the only plausible way to construe the Motion is as an argument for a jury instruction. However, the Motion does not tender any proposed instruction. The deadlines to do so, and for Purdue's objection thereto, are stated at page 2 of the Court's recently issued "Scheduling, Pretrial Conference, and Trial Order" (DE 325). Because the Motion fails to tender a proposed instruction—indeed, the Motion does not even acknowledge the need for a jury instruction as the mechanism to place a supposed judicial admission into the trial record--the Motion does not provide Purdue a fair opportunity to respond.

Nonetheless, Purdue restates here the following objections and arguments that were previously filed at DE 283.

### A.  Many of the "Statements" in Exhibit A to the Motion are not supported by the Answer to the Second Amended Complaint.

Only the text of the Answer is potentially within the category of a "judicial admission". *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). As shown in **Exhibit 1** hereto, many of Plaintiff's proposed "Statements", as set forth in Exhibit A to the Motion, modify the text of the Answer. Further, the Answer to Plaintiff's 155-paragraph Complaint only

2

unequivocally admitted to 14 paragraphs. The Answer either qualifiedly admitted or partly admitted another 29 paragraphs. *See* **Exhibit 1.**

As detailed in **Exhibit 1**, many of the Motion's proposed "Statements" do not include the Answer's actual response. For instance, many of John's claimed admissions relate to quotes of claims he made to Purdue personnel. For most of those allegations, the Answer admitted that John made the quoted "assertion" but otherwise denied the claim, *i.e.*, the veracity of the statement or its underlying truth. The partly admitted, partly denied allegations of the Complaint are inadmissible as "judicial admissions" in the form presented in the Motion.

### B. Judicial admissions are not evidence. The Rules of Evidence apply to an admission offered as evidence.

Judicial admissions "are formal concessions in the pleadings in the case or stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." J. Strong, McCormick on Evidence § 254, at 142 (4th ed. 1992); *see also* J. Wigmore, Wigmore on Evidence § 1064, at 536 (2d ed. 1923). Judicial admissions are " 'are not evidence at all but rather have the effect of withdrawing a fact from contention.'" *Keller*, 58 F.3d at n.8 (quoting Michael H. Graham, Federal Practice and Procedure: Evidence § 6726 (Interim Edition)). This rule has important consequences.

First: Granting the Motion's proposed relief would render much trial testimony (including Plaintiff's own testimony) cumulative, redundant, duplicative, and a waste of time, and therefore inadmissible. Fed. R. Evid. 403.

Second: "Admissibility depends on the Federal Rules of Evidence. So, the response to a request to admit needs to be relevant. See Fed. R. Civ. P. 401. And the response needs to pass muster under Rule 403, too. Normal rules (of evidence) apply." *Pryor v. Corrigan*, No. 17-cv-1968, 2023 U.S. Dist. LEXIS 15122, *55 (N.D. Ill. Jan. 30, 2023).

3

Many of the "Statements" in Exhibit A to the Motion describe the content of documents. Rule of Evidence 1002 does not permit the content of a document to be proved by the answer to a complaint: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." The jury cannot evaluate the probative value of the contents of a document without the document itself coming into evidence. If the document itself comes into evidence, then a supposedly uncontested paraphrase of the contents of the document is cumulative and confusing. R. Evid. 403.

Certain of the "Statements" in Exhibit A to the Motion are inadmissible hearsay. An admission that a hearsay statement occurred does not waive the right to object to the jury learning of the hearsay statement. One of the purposes of the hearsay rule is to limit the jury from hearing statements of speakers who are not available for examination about the statement. Telling the jury that a hearsay statement occurred would violate Rule of Evidence 802. An admission that a hearsay statement occurred is not an exception to Rule of Evidence 802. *See* Fed. R. Evid. 802-804.

For these reasons, Defendants respectfully submit that the Motion should be denied.

Respectfully submitted,

/s/ William P. Kealey
William P. Kealey
James F. Olds
Scotty N. Teal
Stuart & Branigin, LLP
300 Main St., Ste. 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
      tlj@stuartlaw.com
      jfo@stuartlaw.com
Telephone: 765-423-1561
*Attorneys for Defendants*

4

**Exhibit 1**

| Allegation Number | Text of Allegation in Second Amended Complaint | Response in Answer | Plaintiff's Proposed Statement (Ex. A to DE 241) |
|---|---|---|---|
| | **Contentions Admitted Without Exception** | | |
| 5 | Defendant Purdue is a land grant university established by the State of Indiana and is located on a main campus in West Lafayette, Indiana and on three regional campuses in Indiana. Defendant Purdue has 13 colleges and schools, including the College of Engineering, the College of Liberal Arts, the College of Sciences and the Krannert School of Management. Defendant Purdue is audited by State of Indiana auditors, the beneficiary of state authorized bonds and the recipient of state and federal grants. | Admitted | Purdue is a land grant university established by the State of Indiana and is located on a main campus in West Lafayette, Indiana and on three regional campuses in Indiana. Purdue has 13 colleges and schools. Purdue is audited by State of Indiana auditors, the beneficiary of state authorized bonds and the recipient of state and federal grants. Purdue received hundreds of millions of dollars of federal funding in 2016. (Def. Answer ¶¶ 5, 118.) |
| 27 | Defendant Dean Semersheim's April 11, 2016 letter included a two-page document entitled "Information for Student Respondents." | Admitted | Defendant Dean Semersheim's April 11, 2016, letter included a two-page document entitled "Information for Student Respondents." (Def. Answer ¶ 27). |
| 28 | The "Information for Student Respondents" document stated that: (i) the Investigator would be neutral; (ii) a support person could be brought by Respondent to any meeting with the Investigator; (iii) a Respondent would be told enough information about the allegations to enable him to respond; (iv) the privacy of both | Admitted | The "Information for Student Respondents" document stated that: (i) the Investigator would be neutral; (ii) a support person could be brought by Respondent to any meeting with the Investigator; (iii) a |

5

| | | | |
|---|---|---|---|
| | parties would be respected; (v) the Investigator would first interview the complaining party and once the Investigator understands the allegations, the Respondent would be asked questions; (vi) the Interviewer would then interview other witnesses and review documentation deemed relevant; (vii) the Investigator would prepare a report that would be shared with the Dean of Students but not with the parties or the witnesses; (viii) the Investigator's report would make findings and recommend whether a violation of Defendant Purdue's *Anti-Harassment Policy* had occurred and what sanction was appropriate; (ix) the Dean of Students would chair a meeting of a three-person panel of the Advisory Committee on Equity; (x) each party would be given the opportunity separately to meet with the panel meeting in order to give the decision-maker (the Dean of Students) and the panel members the opportunity to meet with the parties and the Investigator after reviewing the Investigator's report; (xi) the panel members would make a recommendation to the Dean of Students but the determination would be left to the discretion of the Dean of Students; (xii) if the Dean of Students determines there has been a violation of Defendant Purdue's *Anti-Harassment Policy*, the Dean of Students would impose sanctions. | | Respondent would be told enough information about the allegations to enable him to respond; (iv) the privacy of both parties would be respected; (v) the Investigator would first interview the complaining party and once the Investigator understands the allegations, the Respondent would be asked questions; (vi) the Interviewer would then interview other witnesses and review documentation deemed relevant; (vii) the Investigator would prepare a report that would be shared with the Dean of Students but not with the parties or the witnesses; (viii) the Investigator's report would make findings and recommend whether a violation of Defendant Purdue's *Anti-Harassment Policy* had occurred and what sanction was appropriate; (ix) the Dean of Students would chair a meeting of a three-person panel of the Advisory Committee on Equity; (x) each party would be given the opportunity separately to meet with the panel meeting in order to give the decision-maker (the Dean of Students) and the panel members the |

| | | | opportunity to meet with the parties and the Investigator after reviewing the Investigator's report; (xi) the panel members would make a recommendation to the Dean of Students but the determination would be left to the discretion of the Dean of Students; (xii) if the Dean of Students determines there has been a violation of Defendant Purdue's *Anti-Harassment Policy*, the Dean of Students would impose sanctions. (Def. Answer ¶ 28.) |
|---|---|---|---|
| 29 | Accompanying Defendant Dean Semersheim's April 11, 2016 letter was a one half-page document entitled "Notice of Allegations." | Admitted | Accompanying Defendant Dean Semersheim's April 11, 2016, letter was a one half-page document entitled "Notice of Allegations." (Def. Answer ¶ 29.) |
| 30 | The Notice of Allegations stated that: (i) Jane Doe and John Doe were in a dating relationship during the Fall 2015 semester and that in November 2015, Jane Doe stayed the night in John Doe's room in Tarkington Hall; (ii) Jane Doe woke up to John Doe's groping her while she was fully clothed and said to John Doe that this was not OK; (iii) John Doe then told Jane Doe that during another night in November 2015, while they were staying the night in Jane Doe's room, John Doe had penetrated her digitally while she was sleeping: (iv) Jane Doe was not aware of the incident in November 2015 while she was | Admitted | The Notice of Allegations stated that: (i) Jane Doe and John Doe were in a dating relationship during the Fall 2015 semester and that in November 2015, Jane Doe stayed the night in John Doe's room in Tarkington Hall; (ii) Jane Doe woke up to John Doe's groping her while she was fully clothed and said to John Doe that this was not OK; (iii) John Doe then told Jane Doe that during another night |

| | | | |
|---|---|---|---|
| | sleeping in her room, had not and did not consent to such sexual contact, and was upset when she was told about it; (v) John Doe expressed feeling bad about the first time, but nevertheless had sexual contact with her the second time when she was asleep; (vi) Jane Doe became very upset and left John Doe's room; (vii) John Doe also went through Jane Doe's underwear without her permission and chased her down a hallway joking about tasering her; (viii) after Jane Doe broke up with John Doe, he would still go to Jane Doe's room unannounced and without an escort; and (ix) John Doe displayed little control over his temper in front of Jane Doe. | | in November 2015, while they were staying the night in Jane Doe's room, John Doe had penetrated her digitally while she was sleeping: (iv) Jane Doe was not aware of the incident in November 2015 while she was sleeping in her room, had not and did not consent to such sexual contact, and was upset when she was told about it; (v) John Doe expressed feeling bad about the first time, but nevertheless had sexual contact with her the second time when she was asleep; (vi) Jane Doe became very upset and left John Doe's room; (vii) John Doe also went through Jane Doe's underwear without her permission and chased her down a hallway joking about tasering her; (viii) after Jane Doe broke up with John Doe, he would still go to Jane Doe's room unannounced and without an escort; and (ix) John Doe displayed little control over his temper in front of Jane Doe. (Def. Answer ¶ 30.) |
| 33 | Within ten calendar days of Defendant Dean Semersheim's April 11, 2016 letter, John Doe submitted a written response to the allegations. | Admitted | Within ten calendar days of Dean Semersheim's April 11, 2016, letter, John Doe submitted to Dean Sermersheim a written response to the |

| | | | allegations. (Def. Answer ¶ 33.) |
|---|---|---|---|
| 48 | Dean Sermersheim's June 14, 2016, letter finally advised John Doe that he could appeal her determination to the Vice President for Ethics and Compliance, Defendant Alysa Christmas Rollock, that the appeal must be in writing and filed within ten days of the issuance of the notification of the determination with all supporting materials and that the appeal in this case must be received by Defendant Vice President Rollock by Friday, June 24, 2016 by e-mail or by hand delivery. | Admitted | Dean Sermersheim's June 14, 2016, letter finally advised John Doe that he could appeal her determination to the Vice President for Ethics and Compliance, Defendant Alysa Christmas Rollock, that the appeal must be in writing and filed within ten days of the issuance of the notification of the determination with all supporting materials and that the appeal must be received by Defendant Vice President Rollock by Friday, June 24, 2016, by e-mail or by hand delivery. (Def. Answer ¶ 48.) |
| 52 | On or about June 28, 2016, Defendant Vice President Rollock sent a letter of that date to John Doe stating that she had reviewed John Doe's appeal, Defendant Dean Sermersheim's letters to John Doe and Jane Doe's letter dated June 14, 2016. | Admitted | On or about June 28, 2016, Defendant Vice President Rollock sent a letter of that date to John Doe stating that she had reviewed John Doe's appeal, Defendant Dean Sermersheim's letters to John Doe and Jane Doe's letter dated June 14, 2016. (Def. Answer ¶ 52.) |
| 53 | According to Defendant Vice President Rollock's June 28, 2016, letter, because Defendant Dean Sermersheim had not included her reasoning in reaching her determination that found John Doe in violation of Defendant Purdue's *Anti-Harassment Policy*, Defendant Vice President Rollock was not able to issue a decision on John Doe's appeal | Admitted | According to Vice President Rollock's June 28, 2016, letter, because Dean Sermersheim had not included her reasoning in reaching her determination that found John Doe in violation of Defendant Purdue's *Anti-Harassment Policy*, Vice |

| | | | |
|---|---|---|---|
| | and was directing Defendant Dean Sermersheim, by June 30, 2016, to revise her June 14, 2016 letters to include the factual basis for her determination and the sanctions imposed. Defendant Vice President Rollock added that in light of what Defendant Dean Sermersheim issued in a revised determination, John Doe could supplement his appeal and Jane Doe could appeal by Sunday, July 10, 2016. | | President Rollock was not able to issue a decision on John Doe's appeal and was directing Dean Sermersheim, by June 30, 2016, letters to include the factual basis for her determination and the sanctions imposed. Vice President Rollock added that in light of what Dean Sermersheim issued in a revised determination, John Doe could supplement his appeal and John Doe could appeal by Sunday, July 10, 2016. (Def. Answer ¶ 53.) |
| 54 | The very next day after Defendant Vice President Rollock's first appeal decision remanding the matter back to Defendant Dean Sermersheim, on June 29, 2016, Defendant Dean Sermersheim sent a letter to John Doe basically repeating her June 14, 2016 letter, only adding the following: Specifically, a preponderance of the evidence supports that: 1. [Jane Doe] had fallen asleep on a futon with you on the floor beside her. She woke up and found that you inappropriately touched her over her clothing and without her consent by placing your | Admitted | The very next day after Defendant Vice President Rollock's first appeal decision remanding the matter back to Dean Sermersheim, on June 29, 2016, Dean Sermersheim sent a letter to John Doe basically repeating her June 14, 2016, letter, only adding the following: Specifically, a preponderance of the evidence supports that: 1. [Jane Doe] had fallen asleep on a futon with you on the floor beside her. She woke up and found that you inappropriately touched her over her clothing and without her consent by placing your hand |

| | | | |
|---|---|---|---|
| | hand above her knee, between her legs, and moved it up to her "crotch" areas; and<br>2. On another occasion, while she was sleeping and without her consent, you inappropriately touched [Jane Doe] by digitally penetrating her vagina.<br><br>The conduct described in the numbered paragraphs above constitutes "Sexual Violence" under the University's policy on Anti-Harassment. Additionally, I find by a preponderance of the evidence that [John Doe is] not a credible witness. I find by a preponderance of the evidence that [Jane Doe] is a credible witness. | | above her knee, between her legs, and moved it up to her "crotch" areas; and On another occasion, while she was sleeping and without her consent, you inappropriately touched [Jane Doe] by digitally penetrating her vagina. The conduct described in the numbered paragraphs above constitutes "Sexual Violence" under the University's policy on Anti-Harassment. Additionally, I find by a preponderance of the evidence that [John Doe is] not a credible witness. I find by a preponderance of the evidence that [Jane Doe] is a credible witness.<br>(Def. Answer ¶ 54.) |
| 70 | On July 21, 2016, Defendant Vice President Rollock sent a letter of that date to John Doe issuing her second appeal decision. Defendant Vice President Rollock's July 21, 2016 appeal decision stated that after reviewing (i) John Doe's appeal, (ii) Defendant Dean Sermersheim's April 11, 2016 letter notifying John Doe of the University's decision to | Admitted | On July 21, 2016, Vice President Rollock sent a one-page letter of that date to John Doe issuing her second appeal decision. Defendant Vice President R ollock's July 21, 2016, appeal decision stated that after reviewing (i) |

| | | | |
|---|---|---|---|
| | investigate allegations regarding his conduct toward Jane Doe, (iii) John Doe's written response to the Notice of Allegations, (iv) the Investigator's Report, (v) Jane Doe's e-mail message of June 5, 2016, and (vi) Defendant Dean Sermersheim's letters of June 14, 2016 and June 29, 2016, Defendant Vice President Rollock was upholding Defendant Dean Sermersheim's determination and sanctions. | | John Doe's appeal, (ii) Defendant Dean Sermersheim's April 11, 2016, letter notifying John Doe of the University's decision to investigate allegations regarding his conduct toward Jane Doe, (iii) John Doe's written response to the Notice of Allegations, (iv) the investigation report, (v) Jane Doe's e-mail message of June 5, 2016, and (vi) Dean Sermersheim's letters of June 14, 2016, and June 29, 2016, Vice President Rollock was upholding Dean Sermersheim's determination and sanctions. Vice President Rollock in her deposition testimony confirmed that John Doe had not seen the investigation report and had not been copied on Jane Doe's June 5, 2021 document. (Def. Answer ¶ 70.) |
| 71 | Defendant Vice President Rollock's July 21, 2016 appeal decision added that in reviewing the appropriateness of the sanctions imposed, she had considered the effects on Jane Doe's educational environment and the threat posed to the safety of Jane Doe and the university community. According to Defendant Vice President Rollock's July 21, 2016 appeal decision, the seriousness of John Doe's misconduct supported the sanctions ordered by Defendant Dean Sermersheim. | Admitted | Vice President Rollock's July 21, 2016, appeal decision added that in reviewing the appropriateness of the sanctions imposed, she had considered the effects on Jane Doe's educational environment and the threat posed to the safety of Jane Doe and the university community. According to Vice President |

| | | | Rollock's July 21, 2016, appeal decision, the seriousness of John Doe's misconduct supported the sanctions ordered by Dean Sermersheim. (Def. Answer ¶ 71.) |
|---|---|---|---|
| 74 | On July 25, 2016, Defendant Vice President Rollock sent an e-mail letter to John Doe, copied to Ms. Tandra Foster, Associate Legal Counsel at Defendant Purdue, concerning John Doe's request for his education records. Defendant Vice President Rollock's July 25, 2016 e-mail letter quoted John Doe's July 10, 2016 letter appeal requesting "all documents and materials relating to his official file at [Defendant] Purdue University, including but not limited to . . . all materials, independent investigator's reports, and all files, letters, and documentation relating to the investigation", "all handwritten notes that have been generated by all parties representing the University" and "a copy of Ms. Erin Oliver and Mr. Jacob Amberger's report." Defendant Vice President Rollock's July 25, 2016 e-mail letter then stated "[b]y a copy of this email to Tandra Foster, Associate Legal Counsel," Defendant Vice President Rollock was alerting Ms. Foster to John Doe's request for his education records and that Ms. Foster would process John Doe's request. The phone number and e-mail address for Ms. Foster was provided. | Admitted | On July 25, 2016, Vice President Rollock sent an e-mail letter to John Doe, copied to Ms. Tandra Foster, Associate Legal Counsel at Purdue, concerning John Doe's request for his education records. Vice President Rollock's July 25, 2016, e-mail letter quoted John Doe's July 10, 2016, letter appeal requesting "all documents and materials relating to his official file at [Defendant] Purdue University, including but not limited to . . . all materials, independent investigator's reports, and all files, letters, and documentation relating to the investigation", "all handwritten notes that have been generated by all parties representing the University" and "a copy of Ms. Erin Oliver and Mr. Jacob Amberger's report." Vice President Rollock's July 25, 2016, email letter then stated "[b]y a copy of this email to Tandra Foster, Associate Legal Counsel," Vice |

| | | | President Rollock was alerting Ms. Foster to John Doe's records request and that Ms. Foster would process John Doe's request. (Def. Answer ¶ 74.) |
|---|---|---|---|
| 79 | On October 11, 2016, 93 days after John Doe's first request was made for production of records, Tandra Foster replied, stating that John Doe and his parents could go to Purdue to review the documents during a scheduled time, of which only four options were made available by Purdue, on the mornings and afternoons of October 19 and October 20, more than a full week after Tandra Foster's response. | Admitted | On October 11, 2016, 93 days after John Doe's first request was made for production of records, Tandra Foster replied, stating that John Doe and his parents could go to Purdue to review the documents during a scheduled time, of which only four options were made available by Purdue, on the mornings and afternoons of October 19 and October 20, more than a full week after Tandra Foster's response. (Def. Answer ¶ 79.) |
| | **QUALIFIED ADMISSIONS** | | |
| | | | |
| 9 | Defendant Vice President Rollock as Defendant Purdue's Vice President of Ethics and Compliance is responsible in her official capacity for the overall operation of the disciplinary investigation and adjudication process at Defendant Purdue, as seen in her decision-making on appeals, and thus would be tasked to have Defendant Purdue comply with any federal court injunction concerning ongoing due process violations in a disciplinary case, including any expungement of a disciplinary record. | Admitted that Vice President Rollock directs the University's system-wide ethics and compliance programs applicable to the four campuses. Except as stated, denied. | Alysa Christmas Rollock ("Vice President Rollock") is the Vice President of Ethics and Compliance at Purdue directs the University's system-wide ethics and compliance programs applicable to Purdue's four campuses. (Def. Answer ¶ 9.) |

| 10 | Defendant Dean Sermersheim as Defendant Purdue's Dean of Students is responsible in her official capacity for the conduct of disciplinary investigations and meetings with the disciplinary respondents and is responsible in her official capacity for making the decision in a disciplinary case. Dean Sermersheim appointed Ms. Erin Oliver, Associate Director of Defendant Purdue's Office of Institutional Equity, and Mr. Jacob Amberger, an Investigator in Defendant Purdue's Office of Institutional Equity, to investigate what were false accusations against John Doe, and Dean Sermersheim, after holding a meeting with John Doe along with members of the Equity Committee that failed to constitute a real hearing, made the disciplinary decision in John Doe's case. | Admitted that Dean Sermersheim convened a panel meeting on Jane Doe's allegations, and that Dean Sermersheim made the disciplinary decision in John Doe's case. Admitted that Dean Sermersheim serves as the primary decision maker for discipline of student-on-student sexual misconduct matters. Except as stated, denied. | Katherine L. Sermersheim ("Dean Sermersheim") made the disciplinary decision in John Doe's case and has served as the primary decision maker for discipline of student-on-student sexual misconduct matters. (Def. Answer ¶ 10.) |
|---|---|---|---|
| 23 | Starting in the 2015 Fall semester and continuing into January 2016, John Doe and Jane Doe had a dating relationship that included their having, with mutual full consent, sexual intercourse 15 to 20 times over a three-month period from October to December 2015. On December 13, 2015, Jane Doe attempted suicide in front of John Doe, after which all sexual activity ended. In January 2016, John Doe reported Jane Doe's suicide attempt to two Purdue Resident Assistants and a Scholarship Advisor. In mid- to late January 2016, Jane Doe began to distance herself from John Doe and their dating relationship ended. From November 2015 to March 2016, Jane Doe made no reports to the university or to the | Admitted that John Doe told a Residential Assistant that he thought Jane Doe had attempted to commit suicide. Admitted that Jane Doe did not make a report against John Doe between November 2015 and March 2016. Defendants are without knowledge or information sufficient to form a belief as to the truth of the | John Doe told a Purdue Resident Assistant that he thought Jane Doe had attempted to commit suicide. From November 2015 to March 2016, Jane Doe made no reports to the university or to the police about any alleged sexual assault by John Doe. (Def. Answer ¶ 23.) |

| | | | |
|---|---|---|---|
| | police about any alleged sexual assault by John Doe. | remaining allegations. | |
| 24 | During the first ten days of April 2016, there were five reports of alleged sexual assault at Purdue, including the complaint that was made at that time by Jane Doe against John Doe. Nationally, April is Sexual Assault Awareness Month; and during April 2016, Defendant Purdue hosted more than a dozen events to advocate the reporting of sexual assaults. Many of these events were sponsored by the Center for Advocacy, Response and Education ("CARE") at Purdue. CARE promoted many of these events on their Facebook page. Among the posts that CARE has shared on its Facebook page was an article dated June 21, 2016 from *The Washington Post,* "Alcohol isn't the cause of campus sexual assault. Men are." Monica Soto Bloom was the Title IX Coordinator and Director of CARE. | Admitted that Jane Doe reported that John Doe had sexually assaulted her, among other things, in April 2016. Admitted that Sexual Assault Awareness Month is recognized nationally in April. Admitted that CARE hosted events in April related to bystander intervention. Admitted that CARE promoted some events on its Facebook page and that the article identified above was shared on the Facebook page on June 21, 2016. Admitted that Monica Soto Bloom was the Director of CARE and Title IX Coordinator in Spring 2016. Except as admitted, denied. | In April 2016, Jane Doe reported that John Doe had sexually assaulted her. Sexual Assault Awareness Month is recognized nationally in April. Purdue's sexual assault center CARE hosted events in April related to bystander intervention. Admitted that CARE promoted some events on its Facebook page. Among the posts that CARE shared on its Facebook page was an article dated June 21, 2016 from The Washington Post, "Alcohol isn't the cause of campus sexual assault. Men are." Monica Soto Bloom was the Director of CARE and Title IX Coordinator in Spring 2016. (Def. Answer ¶ 24.) |
| 25 | On April 11, 2016, John Doe received a letter dated that day from Defendant Katherine L. Sermersheim, Dean of Students at Defendant Purdue, notifying John Doe that Defendant Purdue has been made aware of | Admitted that Purdue issued the alleged letter. Defendants are without knowledge or | On April 11, 2016, Dean Sermersheim issued a letter notifying John Doe that Purdue has been made aware of allegations, including |

| | | | |
|---|---|---|---|
| | allegations, including sexual allegations, regarding John Doe's conduct toward another undergraduate student -- referred to herein as "Jane Doe" -- that if substantiated, might constitute a violation or violations of Defendant Purdue's *Anti-Harassment Policy (III, Ch. 1)*. Defendant Dean Semersheim's April 11, 2016 letter also stated that the allegations included John Doe's digital penetration of Jane Doe while she was sleeping without her consent and that a more detailed description of the allegations accompanied the letter. John Doe learned of Dean Sermersheim's April 11, 2016 letter to him at the Purdue ROTC Armory, and the Navy ROTC was aware at the same time of the sexual misconduct proceeding against John Doe. | information sufficient to form a belief as to the truth of the remaining allegations, including when or where John Doe received the letter or the allegations regarding Navy ROTC. | sexual allegations, regarding John Doe's conduct toward another undergraduate student referred to herein as "Jane Doe" that if substantiated, might constitute a violation or violations of Defendant Purdue's *Anti-Harassment Policy (III, Ch. 1)*. (Def. Answer ¶ 25.) |
| 34 | As for Jane Doe's allegations, John Doe stated that: (i) he and Jane Doe were in a dating relationship from the Fall 2015 semester to the start of the Spring 2016 semester and were both in Navy ROTC; (ii) Jane Doe's accusations against him were false and without merit; (iii) it was not true that, as claimed by Jane Doe, in November 2015 she had stayed in John Doe's room and woke up when John Doe was groping her; (iv) what happened was that in mid-December 2015, after Jane Doe had attempted to commit suicide, Jane Doe stayed the night in John Doe's room, slept on a futon with John Doe on the floor and John Doe's roommate on his bed above the futon, woke up when John Doe touched her knee, immediately became erratic and angry with John Doe and left the room; (v) it was not true that, as claimed by Jane Doe, in | Admitted that this paragraph accurately paraphrases John Doe's response to Jane Doe's report. Except as admitted, denied. | As for Jane Doe's allegations, John Doe stated in his written response to Dean Sermersheim's April 11, 2016, letter that: (i) John Doe and Jane Doe were in a dating relationship from the Fall 2015 semester to the start of the Spring 2016 semester and were both in Navy ROTC; (x) (ii) Jane Doe's accusations against him were false and without merit; (iii) it was not true that, as claimed by Jane Doe, in November 2015 she had stayed in John Doe's room and woke up when John Doe was groping her; (iv) what happened |

November 2015 John Doe digitally penetrated her while she was sleeping; (vi) it was not true that, as claimed by Jane Doe, Jane Doe became upset when John Doe told her about the alleged sexual contact; (vii) John Doe never had sexual contact with Jane Doe while she was sleeping; (viii) instead, Jane Doe engaged in behavior inconsistent with having been sexually assaulted, texting John Doe over the Christmas holidays, including texting and talking with John Doe wishing him a Happy Christmas Eve, sending a package of homemade Christmas cookies to John Doe's family and inviting John Doe to her room at the start of the Spring 2016 semester; (ix) John Doe never went through Jane Doe's underwear without her permission but rather at times did laundry for Jane Doe, for which she was grateful; (x) John Doe does not own a taser but does own a stun baton, yet never threatened Jane Doe with it; (xi) Jane Doe never formally broke up with John Doe, but the two saw each other less and less at the start of the Spring 2016 semester, as Jane Doe was distancing herself from John Doe, a choice he respected; and (xii) it was only after John Doe returned an item to Jane Doe in the Spring 2016 semester did Jane Doe say anything about John Doe not going to her room, after which he didn't.

was that in mid-December 2015, after Jane Doe had attempted to commit suicide, Jane Doe stayed the night in John Doe's room, slept on a futon with John Doe on the floor and John Doe's roommate on his bed above the futon, woke up when John Doe touched her knee, immediately became erratic and angry with John Doe and left the room; (v) it was not true that, as claimed by Jane Doe, in November 2015 John Doe digitally penetrated her while she was sleeping; (vi) it was not true that, as claimed by Jane Doe, Jane Doe became upset when John Doe told her about the alleged sexual contact; (vii) John Doe never had sexual contact with Jane Doe while she was sleeping; (viii) instead, Jane Doe engaged in behavior inconsistent with having been sexually assaulted, texting John Doe over the Christmas holidays, including texting and talking with John Doe wishing him a Happy Christmas Eve, sending a package of homemade Christmas cookies to John Doe's family and inviting John Doe to her room at the start of the Spring 2016 semester;

18

| | | | |
|---|---|---|---|
| | | | (ix) John Doe never went through Jane Doe's underwear without her permission but rather at times did laundry for Jane Doe, for which she was grateful; John Doe did not own a taser but did own a stun baton, yet never threatened Jane Doe with it; Jane Doe never formally broke up with John Doe, but the two saw each other less and less at the start of the Spring 2016 semester, as Jane Doe was distancing herself from John Doe, a choice he respected; and (xii) it was only after John Doe returned an item to Jane Doe's room in the Spring 2016 semester did Jane Doe say anything about John Doe not going to her room, after which he didn't. (Def. Answer ¶ 34.) |
| 35 | John Doe also provided additional information to show he had been falsely accused by Jane Doe: (i) John Doe and Jane Doe had a sexual relationship from October to December 2015, but all sexual activity ceased after Jane Doe attempted suicide on December 13, 2015; (ii) Jane Doe told John Doe that she had been raped in high school in Colorado and had attempted suicide twice while in high school; (iii) Jane Doe had frequently displayed a temper, which she tried to project on to John Doe as his problem; (iv) Jane Doe told John Doe that she contemplated running away from | Admitted that this paragraph accurately paraphrases John Doe's response to Jane Doe's report. Except as admitted, denied. | John Doe in his written response to Dean Sermersheim's April 11, 2016, letter also provided additional information to show he had been falsely accused by Jane Doe: (i) John Doe and Jane Doe had a sexual relationship from October to December 2015, but all sexual activity ceased after Jane Doe attempted suicide on December 13, 2015; (ii) Jane Doe told John Doe that she had been raped in high school |

| | | | |
|---|---|---|---|
| | home and not returning to Purdue; (v) on the night in December 2015 of the suicide attempt, Jane Doe was extremely erratic, had destroyed her room by throwing objects everywhere, was crying and talking about how much she hated life and felt hopeless and was questioning whether she wanted to be in the Navy and at Purdue at all; (vi) the suicide attempt took place on the top of the parking garage by the armory, which John Doe described in detail involving a ledge from which if Jane Doe fell or jumped it would likely be fatal; (vii) John Doe reported Jane Doe's suicide attempt to two Purdue Resident Advisors and a Scholarship Advisor, who filed reports with the University; (viii) John Doe took a suicide prevention course on February 16, 2016; and (ix) John Doe and Jane Doe continued to date in the month of January 2016, which included frequent texting and calling over the Winter Break, but thereafter, Jane Doe distanced herself from John Doe and started dating a Navy ROTC upperclassman shortly thereafter. | | in Colorado and had attempted suicide twice while in high school; (iii) Jane Doe had frequently displayed a temper, which she tried to project on to John Doe as his problem; (iv) Jane Doe told John Doe that she contemplated running away from home and not returning to Purdue; (v) on the night in December 2015 of the suicide attempt, Jane Doe was extremely erratic, had destroyed her room by throwing objects everywhere, was crying and talking about how much she hated life and felt hopeless and was questioning whether she wanted to be in the Navy and at Purdue at all; (vi) the suicide attempt took place on the top of the parking garage by the armory, which John Doe described in detail involving a ledge from which if Jane Doe fell or jumped it would likely be fatal; (vii) John Doe reported Jane Doe's suicide attempt to two Purdue Resident Advisors and a Scholarship Advisor, who filed reports with the University; (viii) John Doe took a suicide prevention course on February 16, 2016; and (ix) John Doe and Jane Doe continued to date in |

| | | | the month of January 2016, which included frequent texting and calling over the Winter Break, but thereafter, Jane Doe distanced herself from John Doe and started dating a Navy ROTC upperclassman shortly thereafter. (Def. Answer ¶ 35.) |
|---|---|---|---|
| 36 | On April 28, 2016, John Doe met with the Defendant Investigators Erin Oliver and Jacob Amberger in the presence of Steven Knecht, an attorney who acted as John Doe's supporter during the meeting. To the Investigators, John Doe steadfastly denied sexually assaulting Jane Doe in any way and provided texts of his communications with Jane Doe that showed nothing to indicate that a sexual assault had taken place, as the texts were basically inconsistent with a sexual assault having occurred. John Doe explained a few texts to establish that no texts supported the claim of sexual assault and further provided the Investigators with a list of over 30 names to substantiate the credibility of his character and integrity, which was important because Jane Doe attacked John Doe's character and integrity in her statements to Defendant Purdue. The meeting with the Investigators appeared to John Doe and Steven Knecht to go very well, but it was the one and only meeting that John Doe had with the Investigators Defendant Oliver and Defendant Amberger and there were no further communications that John Doe had with the Investigators Defendant Oliver and Defendant Amberger. | Admitted that John Doe and Steven Knecht met with Purdue Investigators and that John Doe provided text messages between himself and Jane Doe. Admitted that the Investigators interviewed him and that he provided a list of character witnesses. Except as admitted, denied. | On April 28, 2016, Purdue investigators Erin Oliver and Jacob Amberger met with John Doe and his supporter. To the investigators, John Doe provided text messages between John Doe and Jane Doe covering the period December 23, 2015 to March 15, 2016; John Doe also provided a list of character witnesses to the investigators Amberger and Oliver. (Def. Answer ¶ 36.) |

| 37 | In the month following the April 28, 2016 meeting with John Doe, the Defendant Investigators prepared a Report and sent it to Defendant Dean of Students Sermersheim. In accordance with Defendant Purdue's Disciplinary Process Procedures in effect at the time, John Doe was not given an opportunity by the Defendant Investigators or the three-person panel of the Advisory Committee on Equity to review the Investigator's Report then or any time during the process; and while Defendant Purdue's procedures in effect at the time were followed, John Doe's ability to defend himself was severely and unfairly prejudiced. | Admitted that on or about May 20, 2016, the Investigators prepared an Investigation Report that was forwarded to Dean Sermersheim. Admitted that neither Jane Doe nor John Doe were permitted to review the report by Purdue. Admitted that Purdue's procedures in effect at the time were followed. Except as admitted, denied. | Purdue investigators prepared an investigation report, and on May 20, 2016, sent it to Dean Sermersheim. In accordance with Purdue's procedures at the time, John Doe was not given an opportunity to review the investigation report. (Def. Answer ¶ 37.) |
|---|---|---|---|
| 38 | On May 20, 2016, John Doe signed a formal acknowledgment of being placed on interim leave of absence from Navy ROTC; and on May 24, 2016, John Doe signed an authorization to release of information pertaining to the case to the Department of Naval Sciences at Defendant Purdue. Since Jane Doe was also in Navy ROTC and with the commencement of the investigation, John Doe was to have no communication with Jane Doe, Captain Hutton (the captain in charge of the battalion) restricted John Doe from communicating at all with his fellow midshipmen about the case, allowing him to say to them only "I am on interim leave of absence pending a University investigation." Since the vast majority of John Doe's friends were within the battalion, John | Admitted that John Doe signed an acknowledgement of being placed on interim leave of absence from the Navy ROTC and that he signed an authorization as described above. Admitted that Commander Hutton instructed John Doe as described above. Except as stated, denied. | On May 20, 2016, John Doe signed a formal acknowledgment of being placed on interim leave of absence from Navy ROTC; and on May 24, 2016, John Doe signed an authorization to release of information pertaining to the case to the Department of Naval Sciences at Purdue. John Doe was restricted from communicating at all with his fellow midshipmen about the case, allowing him to say to them only "I am on interim leave of absence pending a University investigation." (Def. Answer ¶ 38.) |

| | | | |
|---|---|---|---|
| | Doe's communications with them were made unpleasantly uneasy. John Doe would have been obligated to inform the Navy ROTC; however, the Navy ROTC had been of about the university sexual misconduct proceeding at about the same time that John Doe first learned of it. John Doe was legally obligated to authorize disclosure of information about and documents from the university sexual misconduct proceeding by Purdue to the Navy ROTC. | | |
| 39 | On May 26, 2016, Defendant Dean of Students Sermersheim sent the Investigator's Report to the panel members of the three-person panel of the Advisory Committee on Equity. The investigators had not allowed John Doe to verify that the summary by the investigators of his witness interview was accurate, and John Doe was never provided with the investigation report to state whether information had been excluded. Among other things, although Defendant Purdue had a documented report of Jane Doe's suicide attempt, the investigation report that would be relied upon by the Advisory Committee on Equity Hearing panel and that informed Defendant Dean Sermersheim's ultimate determination failed to include John Doe's testimony witnessing Jane Doe's suicide attempt. | Admitted that on May 26, 2016, Dean Sermersheim sent the Investigator's Report to the panel members. Admitted that neither Jane Doe nor John Doe was permitted to review the investigation report prior to the panel meeting. Admitted that the investigation report did not refer to "testimony" by John Doe relating to Jane Doe's purported suicide attempt. Except as admitted, denied. | On May 26, 2016, Dean Sermersheim sent the Investigator's Report to the panel members. Neither Jane Doe nor John Doe was permitted to review the investigation report prior to the panel meeting. Admitted that the investigation report did not refer to "testimony" by John Doe relating to Jane Doe's purported suicide attempt.: (Def. Answer ¶ 39.) |
| 40 | On May 31, 2016, Defendant Dean Sermersheim sent a letter of that date to John Doe advising him that he was to attend a meeting with the three-person panel of the Advisory | Admitted that John Doe received written notice to attend the panel meeting | On May 31, 2016, Dean Sermersheim sent a letter to John Doe, copied to Amberger and Oliver, informing John Doe of |

| | | | |
|---|---|---|---|
| | Committee on Equity on Monday, June 6, 2016, from 2:00 PM to 2:30 PM. Defendant Dean Sermersheim's May 31, 2016 letter further advised John Doe that the panel members had reviewed the complaint, the written responses and the Investigator's Report and that the purpose of the meeting was not to conduct another investigation but to listen to the parties who could provide clarification of the written materials. | as stated. Except as admitted, denied. | the scheduled "Panel Meeting" on June 6, 2016, at which John Doe was scheduled to appear between 2:00 PM to 2:30 PM. (Def. Answer ¶ 40.) |
| 41 | On June 6, 2016, Jane Doe would not appear in person before the Advisory Committee on Equity and Defendant Dean Sermersheim; in fact, at no time did Jane Doe did appear in person before the Advisory Committee on Equity and Defendant Dean Sermersheim. Instead, Jane Doe submitted a written statement dated June 5, 2016. Notably, Jane Doe's June 5, 2016 written statement was not written by Jane Doe; rather, it was a letter written by Monica Soto Bloom, Title IX Coordinator and Director of CARE. Ms. Bloom wrote the letter after talking with Jane Doe. It was Monica Soto Bloom on behalf of Jane Doe who submitted the response to the panel. Thus, the three-person panel of the Advisory Committee on Equity and Defendant Dean Sermersheim never met or heard any direct testimony from Jane Doe, nor did the three-person panel and Defendant Dean Sermersheim have the opportunity to ask any questions of Jane Doe. In Jane Doe's June 5, 2016 written statement, she specifically requested only that John Doe be removed from the NROTC program. Jane Doe did not request a suspension or an expulsion of John Doe, nor any type of separation from | Admitted that Jane Doe did not attend the June 6, 2016 panel meeting hearing and that she submitted a written statement. Admitted that Jane Doe's written statement requested that John Doe be removed from the Navy ROTC program. Admitted that the Advisory Committee on Equity and Dean Sermersheim did not meet with Jane Doe and did not interrogate her. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Jane | On June 6, 2016, Jane Doe did not appear in person before the Advisory Committee on Equity and Dean Sermersheim, but rather CARE Director Monica Bloom submitted a written statement Jane Doe. The three-person panel of the Advisory Committee on Equity and Dean Sermersheim never met and never heard any direct testimony from Jane Doe, nor did the Advisory Committee and Dean Sermersheim have the opportunity to ask any questions of Jane Doe. In Jane Doe's written statement, she specifically requested that John Doe be removed from the Navy ROTC program. (Def. Answer ¶ 41.) |

| | | | |
|---|---|---|---|
| | the university or restrictions to his presence on campus as a student. Jane Doe's written statement indicated that she did not have safety concerns about John Doe's status as a student on the campus at Purdue; she only wanted John Doe removed from the group of students who belonged to the NROTC program, a group which included Jane Doe and her new boyfriend. | Doe's relationship status as of June 5, 2016. Except as stated, denied. | |
| 43 | On June 6, 2016, John Doe along with his supporter Steven Knecht met with the three-person panel of the Advisory Committee on Equity and Defendant Dean Sermersheim. The meeting did not involve any sworn testimony, was not a hearing and was not recorded. There never was a hearing in the case of any kind, much less a hearing when, among other things, sworn testimony would be given, cross-examination questions could be posed to Jane Doe about her allegations and documentation could be presented chronologically. | Admitted that John Doe and his supporter attended the June 6, 2016 hearing. Admitted that the hearing was not recorded and that there was no sworn testimony or cross-examination of witnesses by Jane Doe or John Doe. Except as admitted, denied. | On June 6, 2016, John Doe and his supporter met with Dean Sermersheim and the three-person panel of the Advisory Committee. The meeting was not recorded or transcribed. (Def. Answer ¶¶ 43-44.) |
| 44 | John Doe's June 6, 2016 meeting with the three-person panel of the Advisory Committee on Equity and Defendant Dean Sermersheim involved just unrecorded discussion about the written materials which lasted for no more than a half-hour. From that discussion, two of the three members of the panel stated that they had not read the Investigator's Report beforehand and only read the report at the meeting while John Doe waited for them to come up with questions. The one panel member who appeared to have read the Investigator's Report before the meeting, who was an older person, asked accusatory questions assuming John Doe's guilt, and all the | Admitted that the hearing was unrecorded, that members of the hearing panel asked John Doe questions, and that John Doe took the position that he had not sexually assaulted Jane Doe. Defendants are without knowledge or information sufficient to form a belief as to the | On June 6, 2016, John Doe and his supporter met with Dean Sermersheim and the three-person panel of the Advisory Committee. The meeting was not recorded or transcribed. (Def. Answer ¶¶ 43-44.) |

| | | | |
|---|---|---|---|
| | panel members acted with hostility toward John Doe. John Doe reiterated at the meeting what he had stated in his written response -- that the accusations made by Jane Doe against him in the Notice of Allegations were false and were not substantiated by any documentation and the texts that John Doe had provided were basically inconsistent with any sexual assault having taken place. During the meeting, John Doe explained a few texts to establish that no texts supported the claim of sexual assault, but could not address what was in the Investigator's Report because he had not been provided a copy to review for the meeting (or ever) and was not able otherwise to address any evidence that Defendant Purdue had to support the allegations against John Doe. From Steven Knecht's perspective, John Doe did as well as he could under the circumstances of a stressful encounter in which John Doe was attempting to provide substantive answers to accusatory questions. After the meeting, both John Doe and Steven Knecht felt uneasy because the one older panel member who posed accusatory questions in a hostile manner did so without apparent reason and did not appear to be listening to John Doe's answers and because the other two panel members were unprepared. | truth of the allegations relating to how John Doe or his supporter felt after the hearing. Except as stated, denied. | |
| 46 | On June 14, 2016, Defendant Dean of Students Sermersheim sent a letter of that date to John Doe advising him that, after considering the information provided by John Doe, Jane Doe, the University Investigators and consulting with the three-member panel from the Advisory Committee on June 6, 2016, "**I [Dean** | Admitted that Dean Sermersheim issued a letter to John Doe on June 14, 2016, and that the quote above is accurate. Admitted that | On June 14, 2016, Dean Sermersheim, sent a letter of that date to John Doe advising him that, after considering the information provided by John Doe, Jane Doe, the University Investigators and consulting with the |

| | | | |
|---|---|---|---|
| | Sermersheim] **have made the determination that a preponderance of the evidence does support a finding that your [John Doe's] conduct violated the *Anti-Harassment Policy*.**" (Bold in the original.) This determination was made without a hearing on the accusations, much less a hearing where sworn testimony was taken, cross-examination afforded and documentation considered chronologically. Only an anti-male discriminatory bias presuming the female's story to be true can explain Dean Sermersheim's June 14, 2016 letter. | neither Jane Doe nor John Doe were sworn as witnesses or afforded cross-examination of each other. Except as admitted, denied. | three-member panel from the Advisory Committee on June 6, 2016, "**I [Dean Sermersheim] have made the determination that a preponderance of the evidence does support a finding that your [John Doe's] conduct violated the *Anti-Harassment Policy*.**" (Bold in the original.) Dean Sermersheim's June 14, 2016, letter did not state any explanations or reasons for her finding. Dean Sermersheim's determination was made without Jane Doe personally appearing before the Dean and the Advisory Committee and thus without examination or cross-examination of Jane Doe. (Def. Answer ¶ 46.) |
| 49 | On June 23, 2016, John Doe timely submitted an appeal of that date to Defendant Vice President Rollock. John Doe stated in his June 23, 2016 appeal that Jane Doe's allegations of sexual assault were false, that he never penetrated Jane Doe while she was sleeping without her consent, digitally or otherwise, that determination that he did so was incorrect and false and contrary to the facts and that he was being suspended for something that John Doe did not do and that did not occur. | Admitted that John Doe appealed the determination on June 23, 2016 to Vice President Rollock and that his appeal made the contentions stated above. Except as admitted, denied. | On June 23, 2016, John Doe timely submitted an appeal of that date to Defendant Vice President Rollock. John Doe stated in his June 23, 2016, appeal document that Jane Doe's allegations of sexual assault were false, that he never penetrated Jane Doe while she was sleeping without her consent, digitally or otherwise, that the determination he did so |

| | | | was incorrect and contrary to the facts and that he was being suspended for something John Doe did not do and did not occur. (Def. Answer ¶ 49.) |
|---|---|---|---|
| 50 | John Doe's June 23, 2016 appeal also stated that a suspension would cause significant harm, including the loss of his scholarship and participation in NROTC. John Doe's June 23, 2016 appeal noted the great emotional toll that the process had taken on him causing great depression and anxiety, the concerns about whether the process would be fair all the while knowing that Jane Doe's allegations were false and the disruptions of all the friendships he had developed given that he could not talk to friends in Navy ROTC about what really had happened. | Admitted that John Doe appealed the determination on June 23, 2016 to Vice President Rollock and that his appeal made the contentions stated above. Except as admitted, denied. | John Doe's June 23, 2016, appeal document also stated that a suspension would cause significant harm, including the loss of his scholarship and participation in ROTC. John Doe's June 23, 2016, appeal document noted the great emotional toll that the process had taken on him causing great depression and anxiety, the concerns about whether the process would be fair all the while knowing that Jane Doe's allegations were false and the disruptions of all the friendships, he had developed given that he could not talk to friends in Navy ROTC about what really had happened. (Def. Answer ¶ 50.) |
| 51 | John Doe's June 23, 2016 appeal further stated that his "rights to due process of law have been violated." In support of this position, John Doe cited the points that: he "was never provided with the evidence that was supposed to support this allegation which prevented [him] from adequately preparing a defense to the false accusation"; that he had "also not been provided the evidence relied | Admitted that John Doe appealed the determination on June 23, 2016 to Vice President Rollock and that his appeal made the contentions stated above. | John Doe's June 23, 2016, appeal document further stated that his "rights to due process of law have been violated." John Doe's June 23, 2016, appeal document cited the points that: he "was never provided with the evidence that |

| | | | |
|---|---|---|---|
| | upon in making the finding against [him] in order to prepare and submit a proper appeal"; that at the June 6, 2016 meeting with the three-person panel of the Advisory Committee on Equity, two panel members by their own admission were not prepared at the meeting; that he had responded to everything that was asked of him, including providing ample documentation of his relationship with Jane Doe; that he had received a summary notification providing no basis for the determination. | Except as admitted, denied. | was supposed to support this allegation which prevented [him] from adequately preparing a defense to the false accusation"; that he had "also not been provided the evidence relied upon in making the finding against [him] in order to prepare and submit a proper appeal"; that at the June 6, 2016, meeting with the three-person panel of the Advisory Committee on Equity, two panel members by their own admission were not prepared at the meeting; that he had responded to everything that was asked of him, including providing ample documentation of his relationship with Jane Doe; that he had received a summary notification providing no basis for the determination. (Def. Answer ¶ 51.) |
| 60 | The Determination and Sanction were made by one person: Defendant Dean Sermersheim, Dean of Students and also Title IX Coordinator. Defendant Dean Sermersheim: (i) wrote the Notice of Investigation determining the allegations against John Doe; (ii) issued the No Contact Directive to John Doe; (iii) appointed subordinates Defendant Erin Oliver and Defendant Jacob Amberger as the Investigators for the complaint against John Doe; (iv) served as chair of the three-person Hearing panel of the Advisory | Admitted that Dean Sermersheim issued the notice of investigation, issued a no-contact directive, requested an investigation, served as the chair for the Advisory Panel meeting, and issued an initial and revised | Dean Sermersheim: (i) issued the Notice of Investigation determining the allegations against John Doe which contained a No Contact Directive to John Doe and appointed Oliver and Amberger as the investigators for the complaint against John Doe; (ii) served as chair of the three-person panel of the Advisory |

| | | | |
|---|---|---|---|
| | Committee on Equity in deciding John Doe's case; (v) wrote a cursory and perfunctory decision letter stating that she had determined John Doe responsible; (vi) issued a decision letter that was rejected by the Defendant Purdue Vice President of Ethics and Compliance for lacking a stated rationale for the decision; and (vii) ultimately re-issued the decision letter to add one sentence of unsubstantiated postulation to suggest that the preponderance of the evidence standard had been met and that John Doe was responsible for "Sexual Violence." | determination letter. Except as admitted, denied. | Committee on Equity; (iii) issued an initial determination letter stating that she had determined John Doe responsible; and (vi) issued a revised determination letter finding John Doe responsible. (Def. Answer ¶ 60.) |
| 62 | On July 10, 2016, John Doe timely submitted an appeal of that date to Defendant Vice President Rollock from Defendant Dean Sermersheim's re-issued determination and sanctions. John Doe began by stating that Defendant Vice President Rollock had directed Defendant Dean Sermersheim to provide the factual basis for her determination, but that Defendant Dean Sermersheim had failed to provide that factual basis, that she merely restated her conclusions at greater length. | Admitted that John Doe appealed the revised determination, that he referenced Vice President Rollock's previous letter, and that he asserted that Dean Sermersheim had not provided a factual basis for her determination. Except as admitted, denied. | John Doe timely submitted an appeal dated July 10, 2021, to Vice President Rollock from Dean Sermersheim's re-issued determination and sanctions. John Doe began by referencing Vice President Rollock's June 28, 2021 letter directing Dean Sermersheim to provide the factual basis for her determination and asserting that Dean Sermersheim had failed to provide that factual basis. (Def. Answer ¶ 62.) |
| 63 | John Doe's July 10, 2016 appeal first noted that he never had the opportunity to review the Investigator's Report and thus could not address the allegations supposedly questioning his credibility, nor had he been permitted to respond to any "factual evidence." John Doe's July 10, 2016 appeal stated: "[Defendant] Dean Sermersheim's unsubstantiated | Admitted that John Doe's appeal made the assertions listed above. Except as admitted, denied. | John Doe's July 10, 2016, appeal document stated that he never had the opportunity to review the investigation report and thus could not address the allegations supposedly questioning his credibility, nor had he |

| | | | |
|---|---|---|---|
| | conclusion that I am not a credible witness still has not been corroborated with any facts." John Doe's July 10, 2016 appeal reported that he had provided the Investigators with a list of over 30 names to substantiate the credibility of his character and integrity, but he could not defend himself against Defendant Dean Sermersheim's attack on his credibility if there is no factual evidence presented. | | been permitted to respond to any "factual evidence." John Doe's July 10, 2016, appeal document stated: "Dean Sermersheim's unsubstantiated conclusion that I am not a credible witness still has not been corroborated with any facts." John Doe's July 10, 2016, appeal document stated that he had provided the investigators with a list of over 30 names to substantiate the credibility of his character and integrity, but he could not defend himself against Dean Sermersheim's statements about his credibility if there was no factual evidence presented. Vice President Rollock in her deposition testimony confirmed that John Doe was not permitted to review the investigation report under Purdue's policies then in effect. (Def. Answer ¶ 63.) |
| 64 | John Doe's July 10, 2016 appeal then discussed the point that the June 6, 2016 meeting with Defendant Dean Sermersheim and the three-person panel of the Advisory Committee on Equity was flawed at best. John Doe's July 10, 2016 appeal asserted that a reasonable person would question the fairness of a meeting where two of the three panel members | Admitted that John Doe's appeal made the assertions listed above. Except as admitted, denied. | John Doe's July 10, 2016, appeal document then discussed the point that the June 6, 2016, meeting with Defendant Dean Sermersheim and the three-person panel of the Advisory Committee on Equity was flawed at best. John |

| | | | |
|---|---|---|---|
| | did not read the Investigator's Report before the meeting and that a reasonable person would question whether they took seriousness of the importance of a process that has punitive and irreversible consequences. John Doe's July 10, 2016 appeal further asserted that the attitude of the panel members was "one of overt skepticism and hostility." John Doe asked "what could possibly explain their attitude other than that they had prejudged the outcome and my (alleged) guilt?" | | Doe's July 10, 2016, appeal document asserted that a reasonable person would question the fairness of a meeting where two of the three panel members did not read the investigation report before the meeting and that a reasonable person would question whether they took seriousness of the importance of a process that has punitive and irreversible consequences. John Doe's July 10, 2016, appeal document further asserted that the attitude of the panel members was "one of overt skepticism and hostility." John Doe's July 10, 2016, appeal document asked, "what could possibly explain their attitude other than that they had prejudged the outcome and my (alleged) guilt?" (Def. Answer ¶ 64.) |
| 65 | John Doe's July 10, 2016 appeal pointed out that at the beginning of his Fall 2015 semester, he had started the year in Navy ROTC, and one of the issues discussed was the "zero tolerance" policy toward sexual harassment. John Doe reiterated that Jane Doe's accusations of sexual assault were false and noted that one of Jane Doe's accusations was based on what John Doe had allegedly told her about digitally penetrating her. John Doe asked: "Why would I not only admit to something that didn't | Admitted that John Doe's appeal made the assertions listed above. Except as admitted, denied. | John Doe's July 10, 2016, appeal document stated that at the beginning of his Fall 2015 semester, he had started the year in Navy ROTC and one of the issues discussed was the "zero tolerance" policy toward sexual harassment and that Jane Doe's accusations of sexual assault were false. John Doe's July 10, |

| | | | |
|---|---|---|---|
| | happen, but also knowingly admit to something that would jeopardize my ROTC scholarship and future serving my country?" | | 2016, appeal document stated that one of Jane Doe's accusations was based on what John Doe had allegedly told her about digitally penetrating her. John Doe asked: "Why would I not only admit to something that didn't happen, but also knowingly admit to something that would jeopardize my ROTC scholarship and future serving my country?" (Def. Answer ¶ 65.) |
| 66 | John Doe's July 10, 2016 appeal discussed Jane Doe's possible motives for making false accusations against John Doe: to punish John Doe for having reported to the university Jane Doe's suicide attempt in December 2015, an attempt that could have been reported to Navy ROTC as well. Also in this connection, Jane Doe had started up in the Spring 2016 semester a relationship with an upperclassman who was a member of Navy ROTC and who made it plain he did not like John Doe. | Admitted that John Doe's appeal made the assertions listed above. Except as admitted, denied. | John Doe's July 10, 2016, appeal document stated that Jane Doe was possibly motivated to make false accusations against John Doe: to punish John Doe for having reported to the university Jane Doe's suicide attempt in December 2015, an attempt that could have been reported to Navy ROTC as well. John Doe's July 10, 2016, appeal document also stated that Jane Doe had started up in the Spring 2016 semester a relationship with an upperclassman who was a member of Navy ROTC and who made it plain he did not like John Doe. (Def. Answer ¶ 66.) |
| 67 | John Doe's July 10, 2016 appeal noted behavior on the part of Jane Doe inconsistent with the accusations of sexual assault. After the relationship | Admitted that John Doe's appeal made the assertions listed | John Doe's July 10, 2016, appeal document asserted that Jane Doe behaved inconsistent |

| | | | |
|---|---|---|---|
| | ended, Jane Doe contacted John Doe on a number of occasions, at times seeking advice, which Jane Doe would not do had there been any sexual assaults, John Doe had provided text evidence of these contacts. John Doe asked: "If I had sexually violated [Jane Doe], why would she continue to initiate contact and even seeking my advice?" | above. Except as admitted, denied. | with the sexual assault accusations. John Doe's July 10, 2016, appeal document asserted that after the relationship ended, Jane Doe contacted John Doe, at times seeking advice, which Jane Doe would not do had there been any sexual assaults. John Doe's July 10, 2016, appeal document asserted that he had provided text evidence of these contacts. John Doe's July 10, 2016, appeal document asked: "If I had sexually violated [Jane Doe], why would she continue to initiate contact and even seeking my advice?" (Def. Answer ¶ 67.) |
| 68 | John Doe's July 10, 2016 appeal insisted on knowing what was the particular evidence used to determine Defendant Dean Sermersheim's finding that the preponderance of the evidence supported John Doe not being a credible witness and Jane Doe being a credible witness. John Doe's July 10, 2016 appeal repeated that he had been denied the evidence that supposedly supports the factual basis for Defendant Dean Sermersheim's determination and denied the Investigator's Report. John Doe's July 10, 2016 appeal requested that the determination and sanctions be set aside and that the Investigator's Report be provided to him as well as "all documents and materials relating to his official file at [Defendant] Purdue University, including but not | Admitted that John Doe's appeal made the assertions listed above. Except as admitted, denied. | John Doe's July 10, 2016, appeal document demanded to know what was the particular evidence used to determine Dean Sermersheim's finding that the preponderance of the evidence supported John Doe not being a credible witness and Jane Doe being a credible witness. John Doe's July 10, 2016, appeal document stated that he had been denied review of the evidence that supposedly supported the factual basis for Dean Sermersheim's |

| | | | | |
|---|---|---|---|---|
| | limited to . . . all materials, independent investigator's reports, and all files, letters, and documentation relating to the investigation", "all handwritten notes that have been generated by all parties representing the University" and "a copy of Ms. Erin Oliver and Mr. Jacob Amberger's report." | | | determination. John Doe's July 10, 2016, appeal document requested that the determination and sanctions be set aside and that Purdue provide to him "all documents and materials relating to his official file at Purdue University, including but not limited to . . . all materials, independent investigator's reports, and all files, letters, and documentation relating to the investigation", "all handwritten notes that have been generated by all parties representing the University" and "a copy of Ms. Erin Oliver and Mr. Jacob Amberger's report." (Def. Answer ¶ 68.) |
| 76 | Because of the disciplinary decision of Defendant Purdue to suspend John Doe that had been upheld by Defendant Vice President Rollock against John Doe's appeal, the Navy called John Doe before a Performance Review Board that convened on August 10, 2016, and based solely on the consequences of the disciplinary decision of Defendant Purdue (suspension), John Doe was disenrolled from the Navy ROTC at Defendant Purdue, his dream of serving his country as a Naval officer destroyed. The Navy ROTC had collected documents from the Purdue disciplinary case file, but awaited the final university determination after John Doe's exhaustion of university appeals. The disenrollment document identified only the Purdue suspension | Admitted that the Navy ROTC convened a Performance Review Board. Admitted that John Doe was disenrolled from the Navy ROTC. Admitted that the Navy ROTC had a copy of Purdue's Investigation Report, which it had acquired during the course of Navy ROTC's own investigation. Admitted that | | The Navy ROTC called John Doe before a Performance Review Board that convened on August 10, 2016, and John Doe was disenrolled from the Navy ROTC at Purdue. (Def. Answer ¶ 76.) |

|  |  |  |  |
|---|---|---|---|
|  | as the only reason for the disenrollment. It was shortly before the Performance Review Board on August 10, 2016, that John Doe for the first time was shown, by the Navy ROTC, the university Investigator's Report; at no time during the university disciplinary proceeding was John Doe given access to the Investigator's Report by the University or anyone else. John Doe did not want to resign and submitted a statement to the Navy ROTC that he was not guilty of the alleged sexual misconduct, but John Doe could not maintain the requirement of continuous university attendance for Navy ROTC as a student suspended for sexual misconduct. | John submitted a "letter of resignation" to the Navy ROTC. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation concerning what John was shown before the PRB. Except as stated, denied. |  |
| 77 | Meanwhile, in August 2016 at Defendant Purdue, an OCR investigation was opened, the student newspaper reported that a new "Sexual Assault Center" was opened on campus and procedures for adjudicating sexual misconduct cases were amended to permit respondents and complainants to have access to the investigative report and to submit comments and additional information to Defendant Purdue's Investigator in writing. John Doe was a male sacrificed to give Defendant Purdue the appearance of being Title IX compliant. | Admitted that in August 2016: OCR notified Purdue that it was beginning an investigation of a complaint that "in the 2015-2016 academic year, the University subjected a female undergraduate student . . . to discrimination based on sex" and The *Purdue Exponent* ran an article providing that Purdue was to have a "fully operational sexual assault center". Admitted that in Summer 2016 Purdue made | In August 2016, the Office for Civil Rights ("OCR") in the U.S. Department of Education notified Purdue that OCR was beginning an investigation of a complaint that "in the 2015-2016 academic year, the University subjected a female undergraduate student . . . to discrimination based on sex" and the Purdue Exponent ran an article that Purdue was to have a "fully operational sexual assault center." Also, Purdue made amendments to its procedures for sexual misconduct investigations, including permitting respondents to review the investigation |

| | | amendments to its procedures for sexual misconduct investigations, including permitting respondents to review the investigation report. Except as admitted, denied. | report. (Def. Answer ¶ 77.) |
|---|---|---|---|
| 80 | On October 20, 2016, John Doe and his mother at Defendant Purdue reviewed documents that were made available. John Doe and his mother could not, however, make copies of any of the documents made available for review; John Doe and his mother were also not permitted to take photographs or record audio of any of the documents; the only medium of copying that Defendant Purdue allowed was to write everything by hand. Also, while the documents made available did include the Investigator's Report, it was heavily redacted such that witnesses and other apparently important information were not identifiable Despite the Investigator's Report forming a critical part of the basis for the determination against John Doe, that Investigator's Report was never provided to John Doe during the disciplinary case by Defendant Purdue and even after the disciplinary case was over, the Investigator's Report was never provided to John Doe without heavy redactions. | Admitted that John Doe and his mother were permitted to review the documents and take handwritten notes. Admitted that the Investigator's Report was redacted for de-identification of personally identifiable information regarding third-party students. Admitted the Purdue did not provide Jane Doe or John Doe with the Investigator's Report prior to the Advisory Panel meeting. Except as admitted, denied. | On October 20, 2016, John Doe and his mother were permitted at Purdue to review documents that were made available and to take handwritten notes. The investigation report provided to John Doe and his mother was redacted with respect to third-party students. The investigation report was not provided to John Doe prior to the June 6, 2016, panel meeting. (Def. Answer ¶ 80.) |