# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.**, in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-JPK |
| in her official capacity at Purdue University, **KATHERINE** | ) | |
| **SERMERSHEIM**, in her official capacity at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF JOHN DOE'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF PLAINTIFF
## <u>JOHN DOE'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

**NESENOFF & MILTENBERG, LLP**
**Philip A. Byler, Esq.**
**Andrew T. Miltenberg, Esq.**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
<u>pbyler@nmllplaw.com</u>
<u>amiltenberg@nmllplaw.com</u>
*Attorneys for Plaintiff John Doe*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………………...iv

PRELIMINARY STATEMENT………………………………………………….……..1

FOR JOHN DOE'S DUE PROCESS CLAIM AND DISMISSAL OF DEFENDANTS'
COUNTERCLAIM, NO GENUINE ISSUE OF MATERIAL FACT EXISTS…..……………3

    A. Fourteenth Amendment Stigma-Plus Due Process Claim……………………………..3

        1.   Occupational Liberty ……………………………………………………....3

        2.   Notice and Opportunity To Be Heard……………………………………….5

    B. Defendants' Amended Counterclaim……………………………………...……..6

    C. What Defendants Erroneously Call Unsupported Assertions In John's Statement…… 7

    Paragraph 5 …………………………………………………………………….7

    Paragraph 19 …………………………………………………………………...…7

    Paragraph 20……………………………………………………………………8

    Paragraph 25……………………………………………………………………8

    Paragraph 27……………………………………………………………………..8

    Paragraphs 54 and 57……………………………………………………...……9

    Paragraph 56 …………………………………………………………….....……9

    Paragraph 60 ……………………………………………………………...……9

    Paragraph 65……………………………………………………………………9

    Paragraph 66 …………………………………………………………………...9

ARGUMENT IN REPLY ………………………………………………………………...10

    I.     SUMMARY JUDGMENT SHOULD BE GRANTED
           ON JOHN'S DUE PROCESS CLAIM…………………………………………..10

A.  The Requested Prospective Injunctive Relief Is Not Moot …………………………...10

B.  The Stigma-Plus Test Is Satisfied ……………………………………………………10

C.  Defendants' Argument Of No Deprivation Of Occupational Liberty
    Is Without Merit ………………………………………………………………....…11

    1.  Defendants' Contention That John Does Not Allege Any Current
        Effort To Obtain Navy Employment Or Navy Refusal To Employ
        Him Is Without Merit…………………………………………………………11

    2.  Defendants' Contention That John's Disenrollment Did Not Deprive
        Him of Occupational Liberty In The Navy Is Without Merit……………………12

    3.  Defendants' Contention That Purdue's Disciplinary File and
        Readmission Conditions Are Immaterial To John's Current
        Occupational Liberty Is Without Merit ………………………………………13

D.  Defendants' Argument That Defendants Afforded Due Process To
    John Is Contrary To The Law of the Case and The Undisputed Facts ………………13

II. DEFENDANTS' AMENDED COUNTERCLAIM SHOULD BE DISMISSED………..14

CONCLUSION………………………………………………………………………………...15

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

<u>Cases</u>

*Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016) …………………………………..…………....14

*Doe v. Purdue*, 928 F.3d 652 (7th Cir.. 2019) …………………………………………....*passim*

*Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007)……………………………………………10

*Ex Parte Young*, 209 U.S. 123 (1908) …………………………………………………………12

*Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017)………..……………………………...11

*Yu v. Vassar College*, 97 F.Supp.3d 448 (S.D.N.Y. 2015)………………………………....…14


<u>**Constitutional Provisions, Statutes and Court Rules**</u>

U.S. Constitution, Fourteenth Amendment………………………………………………………2

Rule 56, Federal Rules of Civil Procedure……………………………………………....…1, 15

## PRELIMINARY STATEMENT

Plaintiff John Doe ("John"), by counsel, submits this Reply Memorandum of Law in reply to Defendants' opposition and thus in further support of John's motion for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enter judgment on John's claim for denial of constitutional due process per *Doe v Purdue*, 928 F.3d 652 (7th Cir. 2019), and to dismiss Defendants' Amended counterclaim for declaratory relief. Defendants' response to John's motion only reinforces that there are no genuine issues of material fact and John is entitled to summary judgment as a matter of law on John's constitutional due process claim and for dismissal of Defendants' Amended Counterclaim.

Many of Defendants' arguments have been already addressed in John's opposition to Defendants' summary judgment motion (ECF 187). Defendants' arguments consist of efforts to give the appearance of genuine disputes where there are none and to deny John's constitutional due process claim and support Defendants' Amended Counterclaim based on misstatements and a misfocused failure to apply the dispositive points of law.

At bottom, Defendants' arguments are at war with Judge Barrett's opinion for the Seventh Circuit in this case. In *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019), the Seventh Circuit ruled that John pleaded a stigma-plus liberty interest and that Purdue's disciplinary process was horribly constitutionally deficient. As discussed in John's Memoranda of Law for summary judgment on due process (ECF 183), undisputed facts in the discovery record show a firmer foundation to the stigma-plus liberty interest and a deficient process worse than what was alleged in the Complaint: (i) the investigation report was not disclosed to John during the disciplinary case; (ii) there was no hearing, much less a real hearing; and (iii) Jane Doe was found credible despite never appearing in person and never even submitting a sworn statement, reflecting pre-judgment against John. Application of the law of the case in *Doe v. Purdue* means recognizing that John had a 14th

1

Amendment stigma-plus liberty interest, that Defendants deprived John of that liberty interest without due process when finding John guilty of sexual misconduct and suspending him from Purdue, that Purdue's suspension resulted in John's loss of his Navy ROTC position and scholarship, and that John seeks as proper prospective injunctive relief in what is anything but moot: (i) the removal of conditions on readmission and (ii) the expungement of the disciplinary finding and records (which the Seventh Circuit directed the District Court to consider).

Contrary to Defendants' arguments, John's due process case has remained pretty much the same from the start except that instead of involuntarily resigning, he was disenrolled from NROTC based solely upon Defendants' suspension, a difference that only strengthened the case for the stigma-plus deprivation. Defendants refer to the suspension as John lacking a Purdue enrollment for the 2015-2016 school years as if John had a choice, which he didn't given the university suspension. Defendants falsely assert that John never mounted a legal challenge to Purdue's finding of sexual misconduct as if John has not litigated this case for years. Defendants bizarrely assert John never sought rehearing at Purdue as if John had not exhausted his remedies at Purdue, which he did. Defendants try to shift blame on to the Navy which had relied solely upon the university suspension for the disenrollment. Defendants protest the dismissal of their Amended Counterclaim without dealing with the legal authority against it. Defendants cite the text messages as the primary evidence against John as if John had not produced the texts believing that they were evidence against any sexual misconduct on his part, as if John has not shown the misinterpretation of those texts, and as if John had not shown the failures of due process in not interviewing John a second time like they had Jane Doe about the texts and in not permitting John access during the disciplinary proceeding to the investigation report that relied upon the texts. Defendants say John hasn't disputed the accuracy of Purdue's finding of sexual misconduct as if John had not throughout the university proceeding and in this case under oath said he was falsely accused by Jane Doe.

2

<u>FOR JOHN DOE'S DUE PROCESS CLAIM AND DISMISSAL OF DEFENDANTS'</u>
<u>COUNTERCLAIM, NO GENUINE ISSUE OF MATERIAL FACT EXISTS</u>

### A. <u>Fourteenth Amendment Stigma-Plus Due Process Claim.</u>

Defendants argue that they do dispute John's evidence supporting summary judgment on his due process claim. But other than to refer generally to Defendants' statement of facts in its motion for summary judgment without dealing with John's correction in his Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 3-30), Defendants do not identify what evidence is in genuine dispute. As explained in John's Opposition Memorandum of Law (ECF 187), Defendants' statement of facts rests upon omission and misstatement.

### 1. <u>"Occupational Liberty."</u>

Defendants argue that Defendants did not deny John of occupational liberty and list seven supposed facts. (Dfs. Mem. 4-5.) None of these supposed facts constitute a genuine issue of material fact.

*First*, as shown in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 29, 34), Purdue's assertion about the loss of the ROTC scholarship lacks supporting testimony and misreads the documents; the documents show that John did not lose his ROTC scholarship due to academic performance, but due to the disenrollment solely based upon Purdue's suspension.

*Second*, as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 5-7, 24-28), that Jane Doe first reported to the NROTC does not change the facts that Jane Doe within a day reported to the university, which started an investigation, and that NROTC relied upon Purdue's investigation and suspension for the disenrollment decision.

*Third*, as discussed in John's Memorandum of Law for summary judgment on his due process claim (ECF 183: pp. 23-28) and in John's Opposition Memorandum of Law to Defendants'

motion (ECF 187: pp. 24-28), the sole reason for the disenrollment as stated in the disenrollment document was Purdue's suspension; John could not enroll for the 2016-2017 academic year.

*Fourth*, Defendants deny that their suspension denied John a career in the Navy, but the stigma-plus deprivation was that Purdue's suspension resulted in John's loss of his Navy ROTC position and scholarship, and further, as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 28), the evidence shows that the disenrollment documentation, based on the information in 2016, was not to allow John to re-enroll in NROTC.

*Fifth*, Defendants argue that John was not under a legal compulsion to authorize disclosure, but that ignores the record. As discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 25), John testified that the Navy wanted to be "in the loop," and Purdue NROTC Executive Officer Craig Remaly testified the authorization form was one that Purdue requested in John's case; with Jane Doe having reported her accusations to the NROTC and the NROTC looking to Purdue for the investigation, John was in no position to refuse the authorization.

*Sixth*, that expungement of Purdue's disciplinary file on John will not expunge the Navy's disciplinary file is immaterial to this case. The Navy can be separately asked to include in its file an expungement order and take appropriate action as to its files. As discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 25-27, 29), John did not have disqualifying grades, and the operational significance of Redlawsk's one-page memo was to recommend a Performance Review Board based on Purdue's disciplinary decision and Redlawsk had no role in the Performance Review Board.

*Seventh*, Defendants argue there is no record of what the Navy would do with John's grades or Jane Doe's report if John sought to re-enroll, but that is not accurate and is in any event immaterial in this case. As discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 29), John did not have disqualifying grades, and the Navy would no doubt

4

take account of what the Seventh Circuit ruled in this case already and perhaps note that Jane Doe never appeared in person or testified under oath.

### 2. **Notice and Hearing.**

Defendants argue that Defendants did not deny to John the due process of notice and opportunity to be heard and list seven supposed facts. (Dfs. Mem. 5-6.) Defendants make no effort to square their argument with the law of the case in the Seventh Circuit's opinion in *Doe v. Purdue*, 928 F.3d 652, 663-664, and in fact, Defendants' argument is essentially a rejection of Judge Barrett's opinion for the Seventh Circuit. As demonstrated in John's Memorandum of Law for summary judgment on his due process claim (ECF 183, pp. 35-41), then Judge Barrett's opinion for the Seventh Circuit made it abundantly clear that Defendants' procedures were woefully inadequate as a matter of due process requirements (saying what Purdue did fell short of what was required of a high school); and as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 14-23), the record showed that Defendants had indisputably committed basic due process violations. Indeed, Defendants do not deny (i) that the investigation report was not disclosed to John during the disciplinary case; (ii) that there was no hearing, much less a real hearing; and (iii) that Jane Doe was found credible despite never appearing in person and never even submitting a sworn statement, reflecting pre-judgment against John.

While John received notice of the allegations stated on one-half a page as discussed in John's Memorandum of Law for summary judgment on his due process claim (ECF 183: pp. 4-7), none of Defendants' six supposed facts constitute a genuine issue of material fact. *First*, that John and Jane Doe were questioned by Purdue investigators does not deny the due process violations found by the Seventh Circuit and identified above. *Second*, Defendants' assertion that John did not identify any witness with personal knowledge is not accurate and do not in any event deny the due process violations found by the Seventh Circuit and identified above. As discussed in John's

Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 12-13), John's roommate was in the room when Jane Doe stayed overnight, when Jane Doe left it was "normal" and there were no comments by Jane Doe. *Third*, Defendants argue that John did not request the opportunity to question Jane Doe, but as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 37), such questioning was not part of Purdue's procedures. *Fourth*, Defendants argue that the Fourteenth Amendment does not give the right of confrontation, but as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 36-37), just considering the lack of confrontation here only underscores that there was no real hearing, only an unrecorded half-hour meeting of the Dean and Advisory Committee with John and that Jane Doe never appeared in person before the Dean and the Advisory Committee and thus the Dean's credibility determination for Jane Doe did not have a proper basis. *Fifth*, Defendants argue there is no showing of the materiality of any hypothetical cross-examination, but as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 37), just considering what John would ask complainant on cross-examination had he been given the opportunity to cross-examine only underscores the failure to provide John a copy of the investigation report before the June 6, 2016 meeting with the Dean and Advisory Committee panel, the lack of a real hearing, and the lack of Jane Doe's personal appearance that Judge Barrett for the Seventh Circuit rightly said was necessary for due process. *Sixth*, Defendants do not identify any documents the investigators were not given, but that is immaterial to the due process violations and as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 44-47), the investigation suffered from confirmation bias when handling the texts and failing to ask obvious questions.

### B. **Defendants' Amended Counterclaim.**

Defendants illogically argue, without any factual references to the record, that the preponderance of the evidence was that John was in violation of Defendants' regulation of sexual

6

misconduct, saying that John's Amended Complaint does not ask the Court to determine his innocence and the Title IX claim cannot be decided on summary judgment. (Dfs. Mem. 6). John has brought due process and Title IX claims, and as noted in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 2), "[w]hile John's innocence is technically not required by due process and Title IX law, the discovery record does support that John was falsely accused by Jane Doe" and "[i]t took a gender biased process lacking in due process to find John responsible." The preponderance of the evidence most certainly does not support John's guilt but rather his innocence. Further, the foregoing does not address the point that will be discussed below, that the legal authorities are totally against such a Amended Counterclaim.

### C. <u>What Defendants Erroneously Call Unsupported Assertions In John's Statement.</u>

As noted in John's Memorandum of Law for summary judgment on his due process claim (ECF 183, p. 4), "[m]ost all of the Plaintiff John Doe's Statement of Material Undisputed Facts is based on Defendants' admissions in their Answer to the Second Amended Complaint, Defendants' deposition testimony, Defendants' documents and the Navy depositions and documents." Of 66 numbered statements of facts (ECF 183, pp.1-30), Defendants purport to argue only eleven of them (Dfs. Mem. 6-9), but fail to identify a genuine issue of material fact as to any of them.

<u>Paragraph 5</u> was a background statement of John's relationship with Jane Doe based on John's sworn testimony supplemented by Sermersheim's testimony and the Purdue suicide report. Defendants' Answer pleaded the lack of knowledge as to Amended Complaint Paragraph 23.

<u>Paragraph 19</u> states the general facts about the investigation conducted by Amberger and Oliver, but Defendants only argue as to one line about the referenced texts, saying that the texts refer to John's non-consensual touching of Jane Doe. What Paragraph 19 states, however, is "there is no express statement in the texts in which John Doe admitted or Jane Doe accused John Doe of committing the sexual acts alleged in the Notice of Allegations." What Paragraph 19 states is

correct according to Defendants' own witnesses. As discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 14), "[i]n deposition, Purdue Dean Sermersheim, Purdue investigator Amberger and Purdue investigator Oliver each admitted that there is no express statement in the texts in which John admitted or Jane Doe accused John of committing the sexual acts alleged in the Notice of Allegations." Defendants here are arguing what is their misinterpretation, not the objective fact. The misinterpretation is discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 14-15.)

Paragraph 20 states that in the period May 9-12, 2016, Purdue investigator Amberger had e-mail correspondence with Monica Bloom, Director of CARE, about a follow up conversation with Jane Doe, and on May 12, 2016, Purdue investigator Amberger had a follow up conversation with Jane Doe about the texts, but Purdue investigators did not follow up with John about interpretation of the texts after talking with Jane Doe. Defendants argue John was aware of how the investigators interpreted the texts (not true), but Defendants' argument does not contradict what is correctly stated in Paragraph 20 and does not change the fact that the investigators did not interview John twice, as they had Jane Doe, and did not ask him about Jane Doe's reading of the texts.

Paragraph 25 states the facts as to the non-appearance of Jane Doe before Dean Sermersheim and the Advisory Committee. Defendants take issue with referring to the e-mail said to come from Jane Doe as "said" to come from Jane Doe. Use of the word "said" is correct because, as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 16), Jane Doe did not have access to a computer and Bloom testified she did not recall how Jane Doe e-mailed the statement to Bloom.

Paragraph 27 states John's recollection and Dean Sermersheim's lack of recollection of the June 6, 2016 meeting with Dean Sermersheim and the Advisory Committee. Defendants only argue whether John's testimony supported the fact the Advisory Committee acted with hostility, saying

that the cited deposition testimony does not support that the Advisory Committee acted with hostility.  Wrong: John does testify on transcript page 188 that "they acted with hostility."

Paragraphs 54 and 57 identify the August 2020 ROTC Appointment Termination and Disenrollment Authorization and August 10, 2020 Performance Review Board documents that show John's GPA at 3.17.  Defendants argue that John had poor academic performance at Purdue in the 2015-2016 school year, but that does not change the objective fact that is shown on these documents as to John's cumulative GPA.

Paragraph 56 states Commander Hutton's testimony concerning positive qualities to John's ROTC performance.  Defendants don't dispute anything what is stated in Paragraph 56, just adds that the testimony also recognized John's problems with responsiveness and timeliness.

Paragraph 60 states Lieutenant Willstatter's testimony about the August 10, 2020 Performance Review Board document that he wrote as the Reporter for the Performance Review Board.  Defendants don't dispute anything what is stated, just argues that a Performance Review Board was planned as to John as to academics; however, the documents cited by Defendants, one dated in April 2016 (Ex. N) and one dated in May 2016 (Ex. WW), do not support Defendants' argument, but rather only that a Performance Review Board on academics was possible.

Paragraph 65 states where John's university disciplinary case files are located, citing the testimony of Purdue's Custodian Klingerman.  Defendants don't dispute what is stated, but just adds that the Navy has its own file.  What is stated is correct as to the university files.

Paragraph 66 states the facts as to John's return to Purdue and the requirements of the disciplinary sanction.  Defendants argue only that the cited material does not support John would not be readmitted.  The cited material does support that John would be subject to readmission requirements and that Oliver, who was the 2015-2016 Associate Director of Purdue's Office of Institutional Equity, didn't know if he would be readmitted if he did not admit guilt.

## ARGUMENT IN REPLY

### I. SUMMARY JUDGMENT SHOULD BE GRANTED ON JOHN'S DUE PROCESS CLAIM.

As discussed in John's Memorandum of Law for summary judgment on his due process claim (ECF 183, pp. 31-43) and in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 31-37), John was deprived of a stigma-plus interest, denied due process and is entitled to prospective injunctive relief. Defendants' four arguments to the contrary (Dfs. Mem. 9-20) are at war with *Doe v. Purdue*, 928 F.3d 652.

#### A. The Requested Prospective Injunctive Relief Is Not Moot.

Defendants' first argument is that the suspension is moot. (Dfs. Mem. 9.) But what are not moot are (i) the removal of conditions on readmission and (ii) the expungement of the disciplinary finding and records (which the Seventh Circuit directed the District Court to consider).

#### B. The Stigma-Plus Test Is Satisfied.

Defendants' second argument is that John did not establish elements of stigma-plus. (Dfs. Mem. 9-11.) But as discussed in John's Memorandum of Law for summary judgment on his due process claim (ECF 183, pp. 31-37), John satisfied the stigma-plus test based on the law of the case in *Doe v. Purdue*, 928 F.3d at 659, 661-663, and the evidentiary record indisputably established that the Purdue suspension was the sole reason that NROTC disenrolled John. Defendants' contention on this point are without merit. Defendants say that John did not show the defamation in stigma-plus (Dfs. Mem. 9-10), as if being accused of and being found by the university responsible for sexual assault isn't defamation per se, which it is under Indiana law and universally. *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). Defendants say John Doe has not even tried to establish falsity (Dfs. Mem. 10-11), which is just wrong, as false as false can be. As the Statement of Material Facts show (ECF 183, pp.1-30), John has strenuously argued the falsity of Jane Doe's

10

accusation throughout the university proceeding, to the Navy and in this case. Defendants wrongly argue consent (Dfs. Mem. 11); as discussed above (p. 4) and in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 25), John's authorization was not voluntary.

### C. Defendants' Argument Of No Deprivation Of Occupational Liberty Is Without Merit.

Defendants' third argument is that the disenrollment from Purdue's NROTC is immaterial to John's occupational liberty. (Dfs. Mem. 12.) The contentions made by Defendants in this connection are misconceived, contrary to what has been ruled in this case and other case law and apparently intended for the purpose of avoiding the ordering of prospective injunctive relief.

### 1. Defendants' Contention That John Does Not Allege Any Current Effort To Obtain Navy Employment Or Navy Refusal To Employ Him Is Without Merit.

Defendants contends that John does not allege any current effort to obtain Navy employment or Navy refusal to employ him and thus does not satisfy injury, redress and ripeness requirements. (Dfs. Mem. 12-13.) But as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 31-33), the issues of injury, redress and ripeness, raised by such cases as *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017), have already been litigated in John's case in the Seventh Circuit appeal, *Doe v. Purdue,* 928 F.3d at 666-667, and in this Court's own decision (ECF 10, Mar. 31, 2020 Opinion and Order). At no point was it ever ruled that John needed to allege and prove any current effort to obtain Navy employment or Navy refusal to employ him. Defendants' statements as if John has had that requirement are simply misconceived. While Defendants try to say that John can't hypothesize what would happen if he did try to re-enlist in the ROTC or in the Navy, Defendants are attempting to interject a non-issue to deflect attention from Purdue's defective disciplinary process and decision.

Defendants' misfocused misdirection in faulting John's case for not alleging any current effort to obtain Navy employment or Navy refusal to employ him appears to be an attempt to avoid:

(i) the case law applying *Ex Parte Young,* 209 U.S. 123 (1908), to clear a student's academic record; (ii) this Court's own decision upholding the pleading of expungement and removing conditions on re-admission to Purdue (ECF 70: Mar. 31, 2020 Opinion and Order); and (iii) the Seventh Circuit's ruling in this case which included the statement "having determined that John has pleaded a liberty interest, we instruct the court to address the issue of expungement on remand." *Doe v. Purdue*, 928 F.3d at 667.

### 2. Defendants' Contention That John's Disenrollment Did Not Deprive Him of Occupational Liberty In The Navy Is Without Merit.

Defendants assert that the university suspension did not deprive John of occupational liberty. Defendants make that assertion by twisting the NROTC's complete reliance upon Purdue's suspension for the disenrollment decision without any separate Navy determination of guilt on John's part into that John is free to seek Navy employment. (Dfs. Mem. 13-15.) But as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 32-33), Defendants are ignoring the record evidence that based on the 2016 information of Purdue's disciplinary suspension based on purported sexual misconduct, John would not be recommended for acceptance in the NROTC, and Defendants are further disregarding the reality that a university disciplinary suspension for sexual misconduct is a serious problem for future career opportunities. That Commander Hutton did not make a determination that John engaged in sexual misconduct simply means that the Navy completely relied upon Purdue's disciplinary decision.

Defendants' discussion that John knew he was disenrolled and not expelled (Dfs. Mem. 14-15) makes no sense. John never alleged that he was expelled, and knowledge of disenrollment did not open up career opportunities. As discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: pp. 29-30), Perry's testimony shows the destructive effects of the suspension and the disenrollment.

12

### 3. Defendants' Contention That Purdue's Disciplinary File and Readmission Conditions Are Immaterial To John's Current Occupational Liberty Is Without Merit.

Defendants assert that Purdue's disciplinary file and readmission conditions are immaterial to John's current occupational liberty (Dfs. Mem. 15-17) is another attempt by Defendants to avoid the proper entry of prospective injunctive relief in this case. Defendants rationalize that expungement of Purdue's disciplinary files and striking readmission requirements won't affect John's occupational prospects and that the 14th Amendment is concerned with liberty, not reputation. (Dfs. Mem. 16.) But such rationalization disregards that John has been deprived of a stigma-plus liberty interest and denied due process.

### D. Defendants' Argument That Defendants Afforded Due Process To John Is Contrary To The Law of the Case and The Undisputed Facts.

Defendants' fourth argument is that Defendants afforded John due process. (Dfs. Mem. 17-20.) But as discussed in John's Memorandum of Law for summary judgment on his due process claim (ECF 183, pp. 37-42), based on the law of the case in *Doe v. Purdue*, 928 F.3d at 663-664, and the undisputed facts in the summary judgment record, John was denied due process: (i) Defendants never provided John with the evidence against him and the investigation report during the disciplinary case; (ii) there was no real hearing, only an untranscribed, unrecorded half-hour meeting of the Dean and Advisory Committee with John; and (iii) there was pre-judgment based on the accusations of Jane Doe who never appeared in person before the Dean and the Advisory Committee and thus the Dean's credibility determination for Jane Doe did not have a proper basis.

Defendants make no effort to square their contrary argument with the law of the case in the Seventh Circuit's opinion in *Doe v. Purdue*, 928 F.3d 652, 663-664, and in fact, Defendants' argument is essentially a rejection of Judge Barrett's opinion for the Seventh Circuit. Defendants argue John got notice and a hearing, but as discussed above (pp. 5-6) and in John's Opposition

13

Memorandum of Law to Defendants' motion (ECF 187: pp. 12-13, 36-37, 44-47), Defendants make arguments that are beside the point of the due process violations identified by then Judge Barrett in *Doe v. Purdue*, 928 F.3d at 663-664, and identified above.

Defendants' assertions about giving John an opportunity to tell his side of the story and to file appeals do not change the due process deficits in the case identified by Judge Barrett and shown in the record. Defendants' faulting John for not asking for an evidentiary hearing that **was not part of Purdue's procedures** is another attempt by Defendants to deflect attention from their own shortcomings. In this connection, as discussed in John's Opposition Memorandum of Law to Defendants' motion (ECF 187: p. 42), Defendants' reliance on what is an outlier case in *Yu v. Vassar College*, 97 F.Supp.3d 448 (S.D.N.Y. 2015), is not well considered, as the *Yu* case arguably did not survive *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016), and is certainly at odds with *Doe v. Purdue*, 928 F.3d 652. Defendants' mocking of what John would ask complainant on cross-examination had he been given the opportunity to cross-examine only underscores the failure to provide John a copy of the investigation report before the June 6, 2016 meeting with the Dean and Advisory Committee panel, the lack of a real hearing, and the lack of Jane Doe's personal appearance that Judge Barrett for the Seventh Circuit rightly said was necessary for due process.

## II. DEFENDANTS' AMENDED COUNTERCLAIM SHOULD BE DISMISSED.

As shown in John's Memorandum of Law for summary judgment on his due process claim (ECF 183: pp. 43-47), Defendants' Amended Counterclaim should be dismissed for three legal reasons: (i) the Amended Counterclaim mostly seeks to invoke what are state law police powers -- three of the four requested declarations involve state law police powers, and the one requested declaration that is not state law based is at odds with the law of the case in *Doe v. Purdue*, 928 F.3d 652; (ii) the denial of due process here invalidates any effort to rely upon the university process for the purported declaratory relief; and (iii) under the case law in the Seventh Circuit, Defendants'

14

declaratory judgment-based Amended Counterclaim is legally defective and should be dismissed because it is repetitious, unnecessary and merely restates an issue already before this Court. Defendants do not address any of these legal reasons for dismissal.

Instead, without citing to a single case supporting Defendants' Amended Counterclaim, Defendants engage in a lengthy rhetorical argument (i) that Jane Doe's allegation has not been disproven, ignoring among other things that no sworn testimony by Jane Doe was ever given in the university proceeding or in in this case and ignoring John's sworn testimony, and (ii) that the suspension of John was justified -- Defendants go so far as to say it would prove at trial the proper use of campus police powers. The summary judgment record indicates that Defendants could prove no such thing. But what is legally dispositive is that Defendants have no answer at all to the three legal defects to Defendants' Amended Counterclaim identified above.

## CONCLUSION

For the reasons stated above and in John's main brief, John's motion for partial summary judgment should be granted and judgment should be entered for John on his claim for denial of constitutional due process per *Doe v Purdue*, 928 F.3d 652 (7th Cir. 2019), with the requested injunctive relief, and to dismiss Defendants' legally defective Amended Counterclaim for declaratory relief, and the Court should grant such further and other relief as deemed just and proper.

Dated: November 4, 2021

Respectfully submitted,
NESENOFF & MILTENBERG, LLP
By: /s/ *Philip A. Byler*
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com
*Attorneys for Plaintiff John Doe*

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served upon the attorneys of record for

each party to the above-entitled cause at the address shown below on November 4, 2021.

William P. Kealey, Esq.
Tyler L. Jones, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
      tlj@stuartlaw.com
*Attorneys for Defendants*

BY:   ☐  U.S. Mail     ☐   Federal Express

        ☐  Hand-Delivery   x   <u>Other: ECF</u>

               _____*Philip A. Byler, Esq.*_____
               Philip A. Byler, Esq.