IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) |
| **DANIELS, JR.,** in his official capacity as President of | ) |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) No. 2:17-cv-33-GSL |
| in her official capacity at Purdue University, | ) |
| **KATHERINE SERMERSHEIM**, in her official capacity | ) |
| at Purdue University, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO EXCLUDE EXPERT TESTIMONY**

Defendants, by counsel, reply to Plaintiff John Doe's Memorandum of Law in Opposition [DE 341] to Defendants' Motion to Exclude Expert Testimony [DE 330] as follows:

**INTRODUCTION**

In the summer of 2016, John Doe was suspended from Purdue for one (1) year because the university determined he violated its anti-harassment policy. That determination was based on conclusions by Purdue's Dean of Students that John touched another Purdue student ("Jane Doe") sexually while she slept. The Dean's conclusions were based on findings from a two-month investigation and premised on two incidences of sexual touching. During the first incident, Jane Doe awoke to find John touching her in a sexual manner to which she had not consented. Jane learned of the second incident of unconsented sexual touching when John told her about it.

1

Jane and John disputed the facts of both incidents. John admitted to the investigators that Jane awoke as he touched Jane in her sleep but disputed where and how he touched her. He denied ever having told Jane that he had previously touched her in a sexual manner.

To resolve the dispute, the investigation relied principally on John's and Jane's recounting of the facts of these touches and subsequent conversations between the two, which occurred in person and through written text messages. Those text messages included John's ardent apology for what he had done. John wrote, "I violated you and never should have. What do you want me to do?" John first told investigators that this was a reference to academic dishonesty but later admitted that he was referring to touching Jane.

This case will be tried on Plaintiff's Title IX claim, which will require John to prove that Purdue's determination was motivated by sex discrimination. The jury will be instructed that, in order to find for Plaintiff, it must decide whether Purdue would have suspended John if he had not been male. If it finds that the determination (or the supporting conclusions and findings) would have been different if he was a woman accused of sexually touching another person while they slept, then the jury will be instructed that it may award damages based on evidence and not speculation. The jury will specifically be instructed that it is not permitted to award damages for any emotional or mental harm that Plaintiff asserts or damages stemming from alleged emotional or mental harm.

## GATEKEEPING STANDARD

To be admissible, this Court must determine that each of the Plaintiff's experts' proffered opinions are:

- grounded in scientific, technical or other specialized knowledge;
- based on sufficient facts or data;
- the product of reliable principles and methods;
- reliably applied to the facts **of this case.**

*See* Fed. R. Evid. 702 (emphasis added); *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993). The trial court must perform the critical gate-keeping function before admitting expert testimony under Rule 702. *Daubert*, 509 U.S. at 592-93; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

When an expert's factual basis, data, principles, methods, or his application is called into question, the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

In considering *Daubert* and *Kumho Tire*, the Seventh Circuit has endorsed a two-step analysis for the district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable," and second, the court must determine whether the expert's testimony is "relevant." *See United States v. Hall*, 165 F.3d 1095, 1101-1102 (7th Cir. 1999). For an expert opinion to satisfy the reliability requirement the expert must be qualified in the relevant field and the expert's opinion must be based on sound scientific or other relevant methodology. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). In making this determination, the Court may consider: (1) whether the expert's theories and techniques can be verified by the scientific method through testing; (2) whether the theories and techniques have been subject to peer review and publication; (3) whether the theories and techniques have been evaluated for their potential rate of error; and (4) whether the theories and techniques have been generally accepted by the relevant scientific community. *Daubert*, 509 U.S. 579, 593-594.

In deciding whether the expert's testimony is relevant, "a district court may admit expert testimony only if such testimony will assist the trier of fact to understand the evidence or to

determine a fact in issue." *Hall*, 165 F.3d 1095, 1102. An expert must substantiate his or her opinion, and not simply provide an ultimate conclusion without analysis. *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999).

This Court must find that the expert testimony "is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702, advisory committee's note. "[T]he whole point of Daubert is that experts can't speculate." *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). A court can exclude an expert opinion if it is a naked conclusion or represents unsupported speculation (*see McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998)) or if it is based on unwarranted assumptions or is "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great of a gap between the data and the opinion proffered." *Id.*

As described below and in Purdue's opening memorandum in support of excluding Plaintiff's experts' opinions, the opinions of Plaintiff's proffered experts, R. Christopher Barden ("Barden") and Stan V. Smith ("Smith"), must be excluded.

A. **Barden's opinions are inadmissible and irrelevant.**

Purdue's opening memorandum discusses this Court's prior exclusion of Barden's opinions. [DE 300 at pp. 2-4]. Specifically, this Court has already determined that Barden's opinions, as articulated in his First Report, comprised conclusory general assertions that were neither admissible nor helpful to the jury. [DE 206 at p. 11].[1] Thus, the opinions offered by Barden in his First Report are barred as a matter of law by the law of the case doctrine. *Santamarina v.*

---

[1] Contrary to Plaintiff's recount of the March 14, 2023 status conference, this Court did not "order" Plaintiff to provide a revised report. The written docket entry of that conference was accurately quoted by Plaintiff in his response. [DE 341 at p. 5]

4

*Sears, Roebuck, & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006) ("The authority of a district judge to reconsider a previous ruling in the same litigation, whether a ruling made by him or by a district judge previously presiding in the case, including (because the case has been transferred) a judge of a different court, is governed by the doctrine of the **law of the case**, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous.").

To reconsider the prior exclusion, this court must conclude there are compelling reasons to do so; or, if the court finds the Second Report is authorized and timely submitted, that the opinions in the Second Report are materially different from the opinions already excluded by the Court. Plaintiff offers no compelling reasons why the previous exclusion should be reconsidered by the Court. As shown below, Barden has not cured the defects in his opinions. To the extent anyone can divine the opinions or the bases therefor from Barden's turbid report, they are utterly without foundation and not helpful to the jury.[2]

1.  **Memory and "recovered memory"**

Most of Barden's report critiques the research of a professor who is not a witness in the case. Barden disagrees with the professor's research on the impact of trauma on memory and, in general, believes theories of "recovered memory" are not based in science. These opinions were offered in the First Report and have been excluded by this Court.

There is no compelling reason to reconsider the exclusion of these opinions. Plaintiff offers no link between Barden's observations about memory science and this case. There is no fact pattern

---

[2] Plaintiff accuses Purdue of "engaging in a hit and run attack" by referencing Barden's opinions in support of Jerry Sandusky in a Pennsylvania case. While Plaintiff insists Barden's report is not a cut and paste job, he does not explain how Barden's "investigative hypotheses to assist future investigations of this case by PA State Legislative oversight committees, PA State Licensing Boards, and Federal investigative bodies having the power to subpoena records and question witnesses under oath to further explore the multiple kinds of misconduct, indications of corruption, and other controversies documented in this case" are relevant to the present case, involving a Purdue's investigation into a violation of its anti-harassment policy. (Barden's Second Report at p. 2)

in this case that either John or Jane "recovered" a memory of sexual assault. Rather, the evidence for the jury will comprise a dispute over two episodes of unwanted sexual touching. In the first episode, Jane awoke to find John touching her. Jane confronted John at that moment and did not rely on a later-recovered memory as the basis of her allegation. John admits to touching Jane at that time. The dispute centered on where John touched Jane. The second episode came to light when John told Jane he had touched her sexually while she slept on a prior occasion. John denies telling Jane about a prior sexual touching. Again, there is no issue of memory or "recovered" memory at issue in that episode. The investigators resolved these factual disputes based on John's and Jane's relative credibility. John's prior inconsistent explanations and his written apology for violating Jane were important factors in the investigators finding that John was not credible.

The only information in Barden's report that links the memory opinions to this case is that one of the two university investigators assigned to this investigation attended a training on the neurobiology of trauma. That training was based in part on the research with which Barden disagrees. The factual gap between Barden's generalized opinion of memory research and this case is simply too wide for Barden's opinions to provide any help to the jury in this case. *Joiner*, 522 U.S. at 146. The court should not reconsider its exclusion of this inadmissible and irrelevant opinion evidence.

### 2. Investigator bias

This Court has excluded Barden's opinions regarding the general standard of care for investigations, including theories that "all Purdue staff at all levels" ignored the phenomenon of "confirmation bias" and failed to generate and test "alternative hypotheses." The opinions were excluded because they were neither admissible nor helpful on the issue the jury will resolve in this case –whether Purdue intentionally discriminated against John based on his sex.

Barden's Second Report repackages the same opinions regarding how, in Barden's judgment, a proper investigation should be conducted. Those opinions do not help a fact finder resolve the question of intentional gender discrimination. Indeed, Plaintiff has offered no compelling reason for the Court to reconsider its exclusion of this evidence. Plaintiff cites to no judicial mandatory or persuasive authority that support the propriety of expert principles and methods for identification of gender bias in a sexual assault investigation. Barden's 112-page Second Report offers no foundation that his application of any scientific or technical principle or method to any fact or data in this case to support an opinion of intentional gender bias. As previously shown, the evidence in this case (DE 187-12 Purdue's 2015-2016 sexual assault investigation statistics) squarely contradicts Barden's opinion that the investigatory methods in this case evince gender discrimination.

The court should not reconsider its exclusion of Barden's opinions. *Palmer v. Ind. Univ.*, No. 1:19-cv-04610-JMS-MJD, 2021 U.S. Dist. LEXIS 44863, at *60-61 (S.D. Ind. Mar. 10, 2021) (holding that the expert's testimony was unhelpful because the jury was capable of determining if a university treated one person more favorably than another); *Sommerfield v. City of Chi.*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) ("Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person.")

    **B.    Smith's opinions regarding "loss of earning capacity" and "hedonic" damages are inadmissible as a matter of law.**

    **1.  Loss of earning capacity**

Smith is proffered by Plaintiff as an economic expert who opines that, as a result of John's one-year suspension as a student at Purdue, he has suffered a lifetime of lost earnings. John maintains that those lost earnings are compensatory (and, therefore, not consequential) damages and cites employment law cases to support his argument. [DE 341 at pp. 20-21]. Those cases are

7

inapposite to the present case. He cites to no case in which the court held that future income losses alleged by a student at a university are anything other than consequential damages.

Under Indiana law, the essential nature of the student/university relationship is contractual. *Neel v. Ind. Bd. of Trustees*, 435 N.E.2d 607, 610 (Ind. 1982). In the context of contract law, consequential damages According to the Restatement (Second) of Contracts, consequential damages are "recoverable for loss that results other than in the ordinary course of events." Restatement (Second) of Contracts § 351 cmt. b (1981). "Consequential damages are those damages that do not flow directly and immediately from the breach, but only from some of the consequences or results of the breach." 24 Williston on Contracts § 64:16 (4th ed. 2021).

As set forth in Purdue's opening memorandum, the United State Supreme Court has held that the remedies available to a plaintiff under statutes enacted under the Spending Clause (like Title IX) are limited to "the usual forms of relief for breaching a legally enforceable commitment." *Cummings v. Premier Rehab Keller, P.L.L.C*, 142 S.Ct. 1562, 1573 (2022). The future earnings capacity of an undergraduate who is just beginning his college career is not within the reasonable contemplation of a student and university at the time the student enrolls. Smith himself cannot calculate those damages with a reasonable degree of certainty as evidenced by the million-dollar range between the low and high ends of his calculation. Even with the benefit of eight years of hindsight, John cannot describe his own consequential damages with any degree of reasonable certainty.

Because the lost future earning capacity is too speculative, the remedy is barred as a matter of law by U.S. Supreme Court precedent. Smith's opinions must be excluded as irrelevant to the jury's task of awarding damages based on evidence and not speculation.

8

## 2. Hedonic damages

Smith's opinions aimed at John's "reduction in the ability to lead a normal life" on account of impacts to his career, social, leisure and daily living activities and his "internal emotional state" are also inadmissible as a matter of law. The opinions are irrelevant because there is no available Title IX remedy for emotional and psychological damages and because the opinions and underlying methodology and results are unreliable and fail to comport with generally accepted economic principles.

The court has dismissed Plaintiff's claims for "emotional and psychological damages based on binding Supreme Court precedent articulated in *Cummings*. [DE 206 at pp. 23-24] (citing *Cummings*, 142 S.Ct. at 1572 and holding that "[t]he Supreme Court's decision forecloses [Plaintiff's] claim for 'emotional and psychological damages'"). Thus, Smith's opinions on hedonic damages are irrelevant and must be excluded.

Further, as set forth in detail in Purdue's opening memorandum, Smith's opinions on hedonic damages are inadmissible as unreliable under Rule 702. Purdue has cited multiple authorities holding that Smith's methodology and results are unreliable, fail to comport with general accepted principles and are otherwise excludable as irrelevant and unfairly prejudicial under Federal Rule of Evidence 403.

## CONCLUSION

For all the foregoing reasons, and for the reasons cited in Purdue's Motion to Exclude Expert Opinions [DE 330], the Barden and Smith opinions must be excluded.

Respectfully submitted,

/s/ William P. Kealey
William P. Kealey (18973-79)
James F. Olds (27989-53)
Scotty N. Teal (35713-53)
Stuart & Branigin LLP
300 Main St., Ste. 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
   jfo@stuartlaw.com
   snt@stuartlaw.com
Telephone: 765-423-1561
*Attorneys for Defendants*

3534913v2