IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **PURDUE UNIVERSITY, PURDUE** | ) |
| **UNIVERSITY BOARD OF TRUSTEES,** | ) |
| **MITCHELL ELIAS DANIELS, JR.,** in his official | ) |
| capacity as President of Purdue University, | ) No. 2:17-cv-33-JPK |
| **ALYSA CHRISTMAS ROLLOCK**, in her official | ) |
| capacity at Purdue University, **KATHERINE** | ) |
| **SERMERSHEIM**, in her official capacity at | ) |
| Purdue University, | ) |
| | ) |
| Defendants. | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO REINSTATE HIS DUE PROCESS CLAIM**

Defendants, by counsel, respond in opposition to Plaintiff John Doe's Motion to Reinstate His Due Process Claim (DE 345). The Motion should be denied.

**A.    The Motion is untimely.**

At the status conference in this case on June 13, 2024, the Court asked the parties to identify any forthcoming motions and set deadlines for filing all such motions. Plaintiff John Doe's counsel said nothing about a "Motion to Reinstate His Due Process Claim". The Motion does not seek leave under Federal Rule of Civil Procedure 16(b)(4) to re-open dispositive motion practice in this case. Therefore, this Court has the discretion to decline to entertain the untimely Motion.

1

**B.    The Motion regurgitates arguments from multiple failed attempts by John to revive his dismissed due process claim. The Motion does not disclose and address multiple decisions by this Court, the Seventh Circuit, and the United States Supreme Court rejecting those attempts.**

The Motion fails to disclose the extensive procedural history regarding dismissal of John's due process claim. Not until page 19 of the Motion does John acknowledge that his "reconsideration" arguments were briefed and argued in 2022 (and eventually ruled upon in February 2023). The Motion does not orient this Court to his two subsequent petitions to the Seventh Circuit, followed by his petition to the United States Supreme Court, and the three orders denying those petitions.

On February 14, 2023, this Court issued its Opinion and Order on John's due process claim. DE 224. The opening sentence of that ruling states: "This matter is before the Court on John Doe's Motion for Reconsideration [DE 208] of the Court's order granting summary judgment to Defendants on Doe's due process claim [DE 206]." The ruling concluded: "John has not identified a manifest error of fact or law that merits reconsideration." DE 224 p. 15. The ruling declined John's request to certify an interlocutory appeal. *Id*. pp. 18-19.

Three days later, on February 17, 2023, John filed a Petition for Writ of Mandamus in the Seventh Circuit. A copy of the Petition is **<u>Exhibit A</u>** hereto. The Petition was docketed as 23-1310, *John Doe v. Joshua P. Kolar*.

That Petition stated the issue presented as: "Is a writ of mandamus required to stop a Magistrate Judge from going outside the District Court's jurisdiction and

effectively overruling this Court's major due process ruling in *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019)?" *Id.* p. 3. The Petition's introduction states:

> Here, mandamus is required to stop a Magistrate Judge from going outside the District Court's jurisdiction and effectively overruling this Court's major due process ruling in *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019), by denying John's stigma-plus liberty interest, reviving the self-defamation ground that Judge Barrett rejected, sidestepping Judge Barrett's opinion to require an unrealistic narrow legal obligation, divorced from chain of command military realities, to authorize disclosure of the university disciplinary file for stigma-plus liberty interest. The Magistrate Judge's effort to distinguish the pleading and summary judgment stages is contrived and contrary to the record.

*Id.* pp. 1-2.

The Court of Appeals did not request any response from Defendants or convene oral argument on the Petition. On March 6, 2023, the Court of Appeals issued its Order on the Petition, as follows: "Upon consideration of the PETITION FOR A WRIT OF MANDAMUS, filed on February 17, 2023, by counsel for the petitioner, IT IS ORDERED that the petition for writ of mandamus is DENIED." The Order shows as issued by Diane S. Sykes, Chief Judge and Amy J. St. Eve, Circuit Judge and states: "Circuit Judge Barrett was part of the panel in Doe v. Purdue University, 928 F.3d 652 (7th Cir. 2019). This petition is resolved by a quorum of that panel pursuant to 28 U.S.C. § 46(d)."

On July 10, 2023, John filed his Motion to Recuse Magistrate Judge Kolar. DE 257. Accompanying the Motion is a 34-page Declaration by John's counsel of record, Philip Byler, in which Attorney Byler alleged that "Magistrate Judge Kolar has made common cause with Purdue counsel to frustrate Plaintiff John Doe's effort to vindicate his due process and Title IX rights and to undermine and eviscerate

3

Justice Barrett's opinion in this case, 928 F.3d 652 (7th Cir. 2019)". DE 257-1 p. 2. The following thirty pages of Attorney Byler's Declaration make substantially the same arguments that appear in John's present Motion.

On August 14, 2023, Magistrate Judge Kolar issued his Opinion and Order denying the Motion to Recuse. DE 261. In that ruling, Magistrate Judge Kolar stated:

> Most of the moving papers are dedicated to John and his counsel's disagreement with three opinions entered by the undersigned: the July 2, 2021, opinion sanctioning John for violating discovery orders [DE 168]; the August 11, 2022, opinion addressing the parties' summary judgment motions [DE 207]; and the February 14, 2023, opinion on John's motion to reconsider the summary judgment opinion [DE 224]. *See* [DE 257-1 ¶¶ 12, 16-50]. John has raised most of these arguments before . . . . John's disagreement with the undersigned's decisions – no matter how vehement or how colorfully described – does not demonstrate "personal bias or prejudice," nor does it constitute a reasonable basis to question the undersigned's impartiality.

*Id.* p. 8.

On September 7, 2023, John appealed the denial of the Motion to Recuse, and the appeal was docketed as Case No. 23-2764. On November 6, 2023, the Court of Appeals issued its Order dismissing that appeal for lack of jurisdiction. DE 280.

On February 5, 2024, John filed a Petition for a Writ of Certiorari in the United States Supreme Court, docketed as No. 23-851. That Petition is **Exhibit B** hereto. Pages 2 through 24 of that Petition repeat substantially the same arguments that appeared in the February 17, 2023 Petition for Writ of Mandamus.

4

On April 1, 2024, the United States Supreme Court issued its denial of the Petition for a Writ of Certiorari.[1]

**C.    John's present Motion fails to show cause to modify the law of the case. Controlling precedent "discourages" such a step, especially in light of the Seventh Circuit's pointed denial of John's Petition for Writ of Mandamus.**

John's present Motion fails to disclose the controlling standard. John is asking this Court to reconsider the February 14, 2023 Opinion and Order denying his previous motion for reconsideration. John's *sole* reason for seeking reconsideration of the February 14, 2023 Opinion and Order is that Judge Kolar is no longer assigned to this case.

The authorities governing John's present Motion are assembled and discussed in *Certain Underwriters at Lloyds v. CSX Transp., Inc.*, No. 20-cv-0795-SPM, 2022 U.S. Dist. LEXIS 71001, * 4-5 (S.D. Ill. Apr. 18, 2022), as follows:

> In addressing a motion to reconsider an interlocutory order, courts in this District have applied the standard established in *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). A motion for reconsideration brought pursuant to Rule 54(b) may be granted where the Court has obviously misunderstood a party, where the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties, where the Court has made an error, not of reasoning but of apprehension, where there has been a controlling or significant change in the law since the submission of the issue to the Court, or where there has been a controlling or significant change in the facts of the case. To the contrary, a motion for

---

[1] John's present Motion argues that there was not "proper consent" to assignment of the case to Magistrate Judge Kolar. DE 345-1 at pp. 11-12. John's failed Petition for a Writ of Certiorari (**Exhibit B** hereto), at page 82a-83a, raised the same baseless argument. John expressly stipulated to the contrary in the parties' proposed Joint Final Pretrial Order [DE 239] which states on p. 1: "The Honorable Joshua Kolar, Magistrate Judge for the United States District Court for the Northern District of Indiana, conducts these proceedings pursuant to consent given pursuant to 28 U.S.C. § 636(c)."
.

5

> reconsideration is not an appropriate vehicle for relitigating arguments that the Court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration. Indeed, it is well-settled that a motion to reconsider is not a proper vehicle to advance arguments or legal theories that could and should have been made before the Court entered its order or to present evidence that was available earlier.

*Certain Underwriters*, at *6-7 (internal citations omitted).[2]

John's present Motion does not try to show that Magistrate Judge Kolar's February 14, 2023 ruling was a misunderstanding. John has never contended that the February 14, 2023 ruling rests on grounds outside the adversarial issues presented to the Court by the parties, or that the ruling is based on an error of apprehension. John's present Motion does not contend that there has been a controlling or significant change in the law. John's present Motion does not contend that there has been a controlling or significant change in the facts of the case.

---

[2] A motion for reconsideration of a summary judgment motion "cannot in any case be employed as a vehicle to introduce evidence that could have been adduced during the pendency of the summary judgment motion." *Green v. Whiteco Indus.*, 17 F.3d 199, 202 n.5 (7th Cir. 1994) (cleaned up). "Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time", nor for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion". *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). *E.g.*, *Holland v. City of Gary*, No. 2:10-CV-454-JD-PRC, 2013 U.S. Dist. LEXIS 29421, at *8-9 (N.D. Ind. Mar. 5, 2013). *See also Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001) ("Technically, a 'Motion for Reconsideration' does not exist under the Federal Rules of Civil Procedure."); *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985); *Anton Realty v. Guardian Brokers Ltd.*, No. 1:13-cv-01915-JMS-TAB, 2015 U.S. Dist. LEXIS 107115, at *2 (S.D. Ind. Aug. 14, 2015) (citing multiple decisions).

The February 14, 2023 Opinion and Order shows how John defaulted his obligation to designate evidence showing a material issue of fact at the summary judgment stage in this case:

> John had a chance to elaborate, or designate additional evidence, but chose not to do so. This was a deliberate decision, not an oversight or misapprehension. John has not directed the Court to a case in which reconsideration was granted to a party who declined to provide evidence or argument because he assumed he would win without it.

DE 224 p. 7. That ruling further concludes: "Based on the authorities presented, John has not identified a manifest error of fact or law that merits reconsideration." *Id.* p. 15.[3]

As John's present Motion admits, that ruling is the law of the case. As summarized in *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022):

> The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983). When a case is transferred between district judges midway through litigation, the doctrine discourages the new judge from reconsidering rulings made by the original judge. *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010).

---

[3] Pages 21-25 of the brief in support of John's present Motion argue procedural details from Purdue 2016 disciplinary process. Those contentions are immaterial to reconsideration of this Court's summary dismissal of John's stigma plus due process claim because deprivation is the threshold element of a "deprivation without due process" allegation. A discretionary disclosure by John is not a deprivation. As this Court has stated, "If there's no obligation . . . that's the end of the due process analysis." (DE 212 at 11:7-8). This reasoning derives directly from the Seventh Circuit opinion, which states: "Having determined that John has adequately alleged that Purdue deprived him of a liberty interest, we turn to whether he has adequately claimed that Purdue used fundamentally unfair procedures in determining his guilt." 928 F.3d at 663. Where there is no material issue of deprivation, there is no reason to turn to the allegation of unfair procedures.

39 F. 4th at 953. This discouragement should apply especially strongly here because Chief Judge Sykes and Judge St. Eve, sitting as the same panel that decided *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019), denied John's Petition for Writ of Mandamus.

John's present Motion argues that "judicial economy" is a ground for a motion for reconsideration of a Rule 56 dismissal. Nonsense. A Rule 56 dismissal is a determination on the merits. Judicial economy plays no role in a Rule 56 determination, including a motion to reconsider a Rule 56 dismissal.

Further, to state the obvious, John's dismissed Fourteenth Amendment Due Process "stigma plus" claim is a constitutional claim that has no discrimination component and is solely for equitable relief, while his Title IX claim is a statutory discrimination claim for which he seeks a jury trial on damages. The Seventh Circuit's opinion in this case conspicuously separates the discussion of John's "stigma plus" claim (section II.A of the opinion) from the discussion of his Title IX claim (section III of the opinion).

**D.    For his appeal from a Rule 12(b)(6) dismissal, John supplied the Seventh Circuit with a pleading narrative that is (in his counsel's words) "totally different" from the evidentiary record.**

   **1.    The Seventh Circuit's reliance on the narrative in John's Complaint and appeal brief.**

In 2017, this Court dismissed John's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), and John appealed. One of the dismissed claims was John's claim for Fourteenth Amendment Due Process injunctive relief, which contended that: (i) Purdue's disciplinary procedure was flawed, (ii) he was

8

compelled by law to disclose Purdue's disciplinary decision to Purdue's Navy ROTC unit, and (iii) that disclosure deprived him of a career in the Navy.

Here (as described in the Seventh Circuit's opinion) is the allegation that John impressed upon the Seventh Circuit:

> Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a <u>full-time student in good standing</u> to one suspended for an academic year. And it was this official determination of guilt, not the preceding charges or any accompanying rumors, that allegedly deprived John of occupational liberty.

928 F.3d at 662-63 (emphasis added) (cleaned up). The opinion added: "if what John says is true", then "Purdue, not John, revealed to the Navy that it had found him guilty of sexual violence, and John had a legal obligation to authorize the disclosure." *Id*. At 662.

Because the appellate opinion was addressing a Rule 12(b)(6) dismissal, the Seventh Circuit opinion emphasized that the Court was merely endorsing the sufficiency of the alleged facts for the claim to proceed past the pleading stage. The opinion states: "To be sure, John may face problems of proof, and the factfinder might not buy the inferences that he's selling. But his claim should have made it past the pleading stage, so we reverse the magistrate judge's premature dismissal of it." *Doe v. Purdue Univ.*, 928 F.3d 652, 670 (7th Cir. 2019).

"John and Jane were both students in Purdue's Navy ROTC program." *Doe v. Purdue Univ.*, 928 F.3d at 656. In the Seventh Circuit's recap, John had alleged:

> John learned about Jane's accusations in a letter from Katherine Sermersheim, Purdue's Dean of Students and a Title IX coordinator. Sermersheim informed John that the university had elected to pursue Jane's allegations even though Jane had not filed a formal complaint. She outlined the school's disciplinary procedures and explained that two employees who reported to her, Erin Oliver and Jacob Amberger, would investigate the case. She also instructed John not to have any contact with Jane. After he received the letter, John was suspended from the Navy ROTC . . ."

*Id.* at 657.

The Court of Appeals obtained that narrative from John's appellate brief, which stated:

> Once Dean Semersheim's April 11, 2016 letter was issued, John was not allowed to participate in Navy ROTC, not allowed in the ROTC armory unless to attend a class or to meet with a Naval superior, not allowed in university buildings in which Jane Doe had classes, and not allowed in the university dining hall most used by John and Jane Doe.

Case No. 17-3565, DE 13 p. 6.

For these characterizations of John's allegations, the Court of Appeals was exclusively dependent on John's representations. Therefore, the Court of Appeals' discussion could not and did not speak to the very different facts that subsequently emerged after the Court of Appeals ruling and during the course of summary judgment motions (including John's motion for reconsideration and this Court's February 14, 2023 ruling on that reconsideration).

The Court of Appeals opinion states: "John says that he had an obligation to authorize Purdue to disclose the proceedings to the Navy." 928 F.3d at 662. In fact, the Navy knew about Jane's allegation before Purdue did, because she reported John's offense to the Navy as a Navy sexual misconduct violation. The Navy knew

10

exactly what offense was at issue between Jane and John. As John well knew, the Navy imposed a leave of absence on John before Purdue did anything whatsoever.

### 2. After his case returned to this Court, John pivoted to a materially different narrative than he told the Seventh Circuit.

In 2022—more than two years after the 2019 appeal opinion, and after subpoenas to the Navy and depositions of Navy personnel—John shifted to a materially different narrative. He stated:

> Jane Roe had first gone to the Navy in April 2016 to complain (falsely) about sexual assault by me before going to the university with that complaint. . . . Soon after Jane Roe complained to the Navy, I was put on an interim leave of absence pending the university investigation.

(DE 208-1, p. 2, ¶ 5). John's counsel admitted: "on April 4, 2016, Jane Doe first went to the Navy ROTC to make her accusations [and] Purdue first learned of Jane Doe's accusations from the Navy ROTC". (DE 209 at 4-5). John's present Motion admits that on April 5, 2016—one day after Jane made her allegation to the Navy, and six days before John received any notice from Dean Sermersheim—the Navy put John on an interim leave of absence and "reported Jane Doe's sexual misconduct allegations to" Purdue. DE 345-1 pp. 16-17.

Thus, John was not "a full-time student in good standing" (as described by the Seventh Circuit) when the Navy made its report to Purdue. As of April 5, 2016, the Navy had already put him on a leave of absence due to Jane's allegation to the Navy.

None of this appeared in the Complaint that the Seventh Circuit addressed in its 2019 opinion. Instead, paragraph 28 of John's Complaint (DE 1), and John's brief

11

to the Seventh Circuit, falsely blamed Dean Sermersheim's April 11 letter for John's April 5 suspension by Navy ROTC.

The Seventh Circuit opinion states, "a plaintiff who publicizes negative information about himself cannot establish that the *defendant* deprived him of a liberty interest. 928 F.3d at 661 (emphasis original). Here, neither John nor Purdue publicized Jane's allegation to the Navy. Jane publicized the negative information to the Navy on April 4, 2016, which publicized it to John (by immediately putting him on a leave of absence) and to Purdue. This sequence was a disclosure to Purdue, not a disclosure by Purdue.

John now admits that Jane's direct report to the Navy on April 4, 2016 was the problem. John defines the problem as "Jane having reported her accusation the Navy ROTC and the Navy ROTC looking to Purdue for the investigation". DE 345-1 at p. 17. John contends that Navy ROTC's "interim leave of absence would have been made an indefinite leave of absence unless I came forward with an exoneration by the university of the allegations of sexual misconduct and absent that exoneration by the university, at some point I would have been disenrolled" from Navy ROTC at Purdue. (DE 208-1 at 2). John's present Motion underscores John's tactical calculation: his leave of absence "would not be lifted unless John showed that he was exonerated by Purdue". DE 345-1 p. 14.

As the February 14, 2023 Opinion and Order discusses at length, John has never designated any evidence that the Navy ordered him to disclose a sexual misconduct allegation that the Navy would not otherwise have known. John's leave

12

of absence starting on April 5, 2016 was the status quo; it preceded everything that followed at Purdue.

John made the practical calculation that, to terminate the Navy's imposition of a leave of absence, he needed to persuade the Navy that Jane's pending allegation of a Navy conduct violation was untrue. For that reason, John *wanted* to provide Purdue's decision to the Navy. This calculation by John does not describe compulsory disclosure. John calculated that he would benefit from Purdue's investigation. John cannot fault Purdue for complying with his decision to bet on a possible Purdue exoneration. Not a single sentence of the Seventh Circuit's opinion endorses a claim for John's decision to leverage Purdue's investigation to persuade the Navy to rescind his Navy suspension for a Navy conduct violation that was first reported to and pending at the Navy.

In sum, John misinformed the Seventh Circuit by concealing that Jane made her report to the Navy, whereupon the Navy suspended John. John further misinformed the Seventh Circuit by representing that an April 11 letter from Purdue caused the Navy to suspend him. During his appeal, John concealed the fact that he was trying to persuade the Navy to rescind a suspension that the Navy had imposed the day after the Navy received the report from Navy ROTC student Jane Doe of a Navy sexual misconduct violation.

In the statement of undisputed facts in Defendants' Motion for Summary Judgment, Defendants stated: "On May 24, 2016, John Doe voluntarily executed an authorization for the release of his Purdue information to the NROTC. No one with

13

the NROTC ordered John to execute the authorization." (DE 178 at 25) (internal citations to record omitted). There is no contrary evidence from any Navy personnel or any Navy communication to John.

At the Court's telephonic conference on September 1, 2022, Attorney Byler admitted that John's voluntary authorization was "a totally different setting than what the Seventh Circuit was dealing with." (DE 212 at 18). This Court spotlighted that admission: "I mean, you just said it's different. To me, it's very different from the Seventh Circuit." (*Id*. at 18:25-19:1). By 2022, the record made it impossible for this Court to (in the Seventh Circuit's phrase) "buy the inferences that [John was] selling" during the earlier Rule 12(b)(6) appeal.

### 3. The Seventh Circuit relied on allegations by John regarding his Navy status during and after his suspension from Purdue during the 2016-17 academic year.

In the Seventh Circuit's recap of John's narrative to that Court, "John involuntarily resigned from the Navy ROTC" and "John was expelled from the Navy ROTC program". 928 F.3d at 656, 658. The narrative that John supplied to the Seventh Circuit for these propositions was untrue.

As John knew before he ever filed this suit, there was no Navy misconduct finding about John. John has admitted that the Navy board that disenrolled John "did not care why John was suspended by Purdue." DE 187 p. 33. At summary judgment, John designated a Navy email to John that the Navy's disenrollment decision was "not about the circumstances surrounding your suspension, it is about the fact that you have been suspended. . . . The fact is that you are suspended, and

the ROD requires disenrollment for any case where a student is suspended." (*Id*.) John designated the Purdue Navy ROTC unit commander's testimony "that he signed the document for disenrollment because John had been suspended and it was a requirement of the NROTC program that a student cadet be continuously enrolled in the university." (*Id*. p. 34). This record undisputedly shows that the Navy merely disenrolled John from Navy ROTC *at Purdue* while John was ineligible to enroll in Purdue classes (including Navy ROTC classes) during his Purdue suspension.

John's present Motion correctly describes his Purdue Navy ROTC disenrollment as "due to his inability to complete consecutive years at the university." DE 345-1 p. 15. That is nothing more than a description of the obvious fact that a Purdue Navy ROTC student must, by definition, be enrolled as a Purdue student.

In the very next sentence, the Motion veers off into a hypothetical with no foundation in the record. The Motion talks about what would constitute a "disciplinary disenrollment" for a "major offense" such as the Navy's regulation of "Sexual Harassment/Assault". However, the Motion does not cite any such Navy disciplinary document about John, because there is none in this Court's record.

The Motion resorts to the theatrical flourish that, if there were such a "disciplinary disenrollment that is part of permanent federal record", John would be "honor-bound" to disclose it. If such a document existed, one would expect to see it in the summary judgment record. It is not there. If the Navy had adjudicated Jane's allegation under Navy conduct regulations, John would surely have disclosed that

15

in his Complaint and in the summary judgment record. There is no such document. If such a document existed, then the U.S. Military would already have it. (John has not summoned the U.S. Military into this case and has never sought to expunge military records.)

John's present Motion declares John's eagerness to return to the Seventh Circuit for relief from the dismissal of his due process claim. When he does, he will have some explaining to do. The Navy managed John's Navy ROTC status at Purdue from the day that the Navy received Jane Doe's April 4, 2016 report of a Navy behavioral violation until the day that the Navy reached the common-sense conclusion that it was impossible for John to enroll in Purdue Navy ROTC courses while suspended from Purdue.

**4. John's present Motion does not cite any "stigma-plus" ruling from any court that finds a viable claim on the "totally different" facts that have emerged in this case since 2019.**

It is telling that, once John's present Motion turns to the evidence, starting at page 10, the next 15 pages of the argument do not cite the Seventh Circuit's opinion in this case. The reason is plain to see. That opinion was about the supposed facts that John was "selling". Because the evidence is (in Attorney Byler's phrase) "totally different", John's current arguments do not map up to that opinion. It is now indisputable that John's real grievance is merely that Purdue's weighing of the evidence did not exonerate him. In his counsel's words, "at the time he gave the authorization he was not expecting to happen what did happen." (DE 212 at 16:19-21).

**E.     John's supposed loss of liberty to serve in the Navy is a fabrication.**

The Court of Appeals permitted John to return to this Court and try to show that Purdue "deprived John of occupational liberty". 928 F.3d at 662-63. The Seventh Circuit opinion gave John the opportunity to prove to this Court that Purdue's disciplinary decision "foreclosed the possibility of his re-enrollment in" Navy ROTC. 928 F.3d at 663.

Years have passed, and there is nothing in the record to show that John has ever sought to re-enroll in Navy ROTC. There is no evidence of any communication between John and anyone in Navy ROTC about resuming Navy ROTC studies. John has designated no evidence from which a reasonable factfinder could conclude that John's possibility of re-enrollment in Navy ROTC is foreclosed. There is not a scrap of evidence in the record that John was foreclosed from Navy ROTC enrollment at any other institution during the year of his Purdue suspension; nor that John ever tried to re-enroll in Navy ROTC at Purdue after his one-year Purdue suspension ended; nor that he has taken any step whatsoever to pursue a Navy career in the past eight years. If such evidence existed, John surely would have cited to it during summary judgment briefing; during his two motions for reconsideration (in 2022 and 2024); during his two petitions to the Seventh Circuit in 2023; and, during his petition for certiorari to the United States Supreme Court. But he has not.

There is no evidence to show any real obstacle to John's liberty to pursue a career in the Navy today. Following his one-year suspension, John did not return to Purdue. As this Court has noted, "He has not produced

evidence of any further attempt to join the Navy, or an NROTC program." DE 206 p. 8. Further, John has insisted that "what would happen if he tried the rejoin the Navy" is a "non-issue." (DE 224 p. 9).

As the Seventh Circuit aptly forecast as a possibility, John is still "selling" allegations without evidence. His allegation of a loss of occupational liberty is a fabrication.

## CONCLUSION

For these reasons, Defendants respectfully submit that Plaintiff's Motion should be denied.

Dated: September 12, 2024

Respectfully submitted,

*/s/William P. Kealey*
William P. Kealey (18973-79)
James F. Olds (27989-53)
Scotty N. Teal (No. 35713-53)
Stuart & Branigin, LLP
300 Main St., Ste. 900
P.O. Box 1010
Lafayette, IN 47902-1010
Telephone: 765-423-1561
Email: wpk@stuartlaw.com
         jfo@stuartlaw.com
         snt@stuartlaw.com
**Attorneys for Defendants**