**Exhibit A**

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT



*In Re:*

JOHN DOE,

*Petitioner.*

―――――――

*On Petition from the United States District Court*
*for the Northern District of Indiana, Hammond Division*
*No. 2:17-cv-00033-JPK*
*Joshua P. Kolar, Magistrate Judge*

## PETITION FOR A WRIT OF MANDAMUS

NESENOFF & MILTENBERG, LLP
*Attorneys for Petitioner*
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500

**ORAL ARGUMENT REQUESTED**

## <u>RULE 26.1 DISCLOSURE STATEMENT</u>

Petitioner John Doe is an individual to whom Rule 26.1 of the Federal Rules of Appellate Procedure does not apply.

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

RULE 26.1 DISCLOSURE STATEMENT ..................................................................... i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES .................................................................................iv

PRELIMINARY STATEMENT ............................................................................ 1

ISSUES PRESENTED………………………………………………………………3

NECESSARY FACTS………………………………… ......................................3

      A.      Purdue's Second Motion To Dismiss…………………………………….4

      B.      Depositions…………………………………………………………….4

      C.      The Social Media Inquisition………………………………………….5

      D.      Summary Judgment Briefing ...........................................................7

      E.      Magistrate Judge's Propaganda Piece for Purdue …………………….7

      F.      Plaintiff's August 30, 2022 Motion For Reconsideration …………….8

      G.      December 19, 2022 Oral Argument ………………………………….8

      H.      Expungement Issue…………………………………………………….8

      I.      Reconsideration Decision………………………………………...…….9

WHY THE PETITION SHOULD BE GRANTED……………………….............9

  I.  THE LAW OF MANDAMUS…………………………………………………9

  II.  MANDAMUS IS REQUIRED BECAUSE THE MAGISTRATE
     JUDGE IS GOING OUTSIDE HIS JURISDICTION TO
     OVERRULE JUDGE BARRETT'S OPINION FOR THE
     COURT AND DENY PLAINTIFF'S STIGMA-PLUS INTEREST
     DIVORCED FROM MILITARY REALITIES……………………………...…….10

A.    The National Importance of Judge (Now Justice) Barrett's Due Process Opinion…………………………………..10

B.    Judge Barrett's Rejection of Self-Defamation for the Court…….......…12

C.    The Navy Knew About The Disciplinary Proceeding Before Authorization and Was Looking To Purdue's Investigation…………..13

D.    The Magistrate Judge's Narrow Legal Obligation Ruling Is At Odds With Judge Barrett's Opinion And Is Divorced From Military Realities…………………………………15

E.    John Was Legally Obligated To Authorize Disclosure To The Navy……………………………………………………19

   1.    Navy Regulation Compelling Giving Authorization……………19

   2.    Sanction Upon Refusing Authorization……………………………20

   3.    Required Disclosure Upon Re-Application…………………………21

   4.    The Magistrate Judge's Absurd Result …………………………22

F.    Abuse of Discretion In Not Reconsidering…………………………………23

G.    Discovery Strengthened The Denial of Due Process Case……………25

   1. John-Jane Doe Texts…………………………………………………………26

   2. The Investigation Report………………………………………………27

   3. The Letter Sent On Behalf Of Jane Doe To The Committee………27

H.    The Magistrate Judge's Proof of Falsity Requirement Was For Denying Summary Judgment To John On Due Process And The Expungement The Court Through Judge Barrett Ordered Considered…………………………………………………………… 28

CONCLUSION …………………………………………………………………………29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

[iii]

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

<u>**Cases**</u>

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990)....23

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367 (2004)...................................................9-10

*Crabtree v. Nat'l Steel Corp.,* 261 F.3d 715, 721 (7th Cir.2001)..........................5, 6

*Doe v. Trustees of Indiana University*, 2021 WL 2213257
    (S.D. Ind. May 4, 2021)...................................................................15, 28

*Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019)...............................................*passim*

*Doe v. Purdue*, 464 F. Supp.3d 989, 1001-1003 (N.D. Ind. 2020)..........................24

*Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005)...............................12, 15, 24

*In re Apple Inc.*, 979 F.3d 1332 (7th Cir. 2020)...........................................1, 9, 10

*In re Hall*, 988 F.3d 376 (7th Cir. 2021)..............................................................1

*In re Ryze Claims Solutions*, 968 F.3d 701 (7th Cir. 2020).......................................1

*In re Sandahl*, 980 F.2d 1118 (7th Cir. 1992).........................................................1

*Kerr v. United States Dist. Ct.*, 426 U.S. 394 (1976)...............................................9

*Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013)......................................................29

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)...................................................25

*Mary Doe and Nancy Roe v. Purdue*, 4:18-CV-89-JEM
    (N.D. Ind. Jan. 13, 2022)...........................................................1, 7, 18, 24

*Olivieri v. Rodriguez,* 122 F.3d 406 (7th Cir.1997)..................................12-13, 15

*Smith v. United States,* 293 F.3d 984, 988 (7th Cir.2002)......................................5

*Vishnevsky v. United States,* 581 F.2d 1249 (7th Cir. 1978).................................1

*Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354 (7th Cir. 2019)...................28

**Constitution, Statutes and Rules**

Fourteenth Amendment, U.S. Constitution ……………………………4, 7-8, 10-24, 28-29

42 U.S.C. § 1983 ……………………………………………………………………3, 28

Navy Regulations for Officer Development for 2015-2016………………………2, 19-23

Rule 21, Federal Rules of Appellate Procedure ………………………………………*passim*

Rule 54(b), Federal Rules of Civil Procedure……………………………………………23

Rule 60(b), Federal Rules of Civil Procedure ……………………………………………23

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688….4, 6, 11, 25

34 C.F.R. § 106.45……….……………………………………………………………11

**Other Authorities**

A. Scalia, *Reading Law: The Interpretation of Legal Texts* (West Pub. 2012)………..23

## **PRELIMINARY STATEMENT**

Petitioner John Doe ("John") submits this Petition for a Writ of Mandamus to be issued to the U.S. District Court for the Northern District of Indiana to remedy the conduct of the U.S. Magistrate Judge (Kolar, M.J.) acting outside the District Court's jurisdiction, kowtowing to the Purdue Defendants (collectively, "Purdue") and their implacable public rejection of this Court's nationally significant due process ruling in *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019)(Barrett, J.), issued nearly 4 years ago. The Department of Education relied upon *Doe v. Purdue* in formulating the current Title IX regulations containing due process protections.

This Court has granted petitions for a writ of mandamus over the years: *In re Hall*, 988 F.3d 376 (7th Cir. 2021) (Wood, J.); *In re Ryze Claims Solutions*, 968 F.3d 701 (7th Cir. 2020) (Ripple, J.); *In re Apple Inc.*, 979 F.3d 1332 (7th Cir. 2020) (Prost, C.J.); *In re Sandahl*, 980 F.2d 1118 (7th Cir. 1992) (Posner, J.); *Vishnevsky v. United States,* 581 F.2d 1249 (7th Cir. 1978) (Pell, J.).

Here, mandamus is required to stop a Magistrate Judge from going outside the District Court's jurisdiction and effectively overruling this Court's major due process ruling in *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019), by denying John's stigma-plus liberty interest, reviving the self-defamation ground that Judge Barrett rejected, sidestepping Judge Barrett's opinion to require an unrealistic narrow legal obligation, divorced from chain of command military realities, to authorize disclosure of the university disciplinary file for stigma-plus liberty interest. The Magistrate Judge's effort to distinguish the pleading and summary judgment stages is contrived

and contrary to the record. Because the Navy knew about the university disciplinary proceeding and wanted "in the loop" to rely upon the Purdue investigation, John was in no position to deny authorization to his superior officers. The Magistrate Judge's ruling would absurdly require a Navy ROTC ("NROTC") midshipman or Army ROTC officer candidate, in order to have a stigma-plus liberty interest, to refuse their superiors; that requirement flies in the face of the Navy Regulations for Officer Development for the 2015-2016 school year ("Navy ROD") to which the Magistrate Judge gives the back of the hand. The Magistrate Judge's ruling creates a conflict of precedent with two on point Northern District of Indiana decisions involving Purdue recognizing the stigma-plus liberty interest.

Judge Barrett's opinion identified egregious denials of due process, and discovery has strengthened the denial of due process case. The Magistrate Judge, to rationalize doing away with due process here, adopts Purdue's gross misstatements of the record concerning what were texts supportive of John, the failure to supply John with the investigation report and the failure of Jane Doe to appear before the Committee. The Magistrate Judge, to avoid the grant of summary judgment for John's due process claim to which John was so clearly entitled and to ignore Judge Barrett's directive that expungement of the disciplinary file be considered by the District Court, requires that § 1983 plaintiffs prove falsity to establish a stigma plus liberty interest, which is contrary to Seventh Circuit law and makes no sense.

Here, mandamus is required because needed is an independent Article III judge who is not in obeisance to Purdue's opposition to *Doe v Purdue*'s due process ruling.

[2]

## ISSUES PRESENTED

Is a writ of mandamus required to stop a Magistrate Judge from going outside the District Court's jurisdiction and effectively overruling this Court's major due process ruling in *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019)?

## NECESSARY FACTS

On June 28, 2019, in *Doe v. Purdue*, in an opinion by Judge Barrett, this Court reversed the dismissal by the District Court (Magistrate Judge Cherry) of Plaintiff's due process and Title IX claims. 928 F.3d 652. The Court ruled John has a stigma plus liberty interest, rejecting Purdue's argument John had self-defamed himself by authorizing disclosure of university disciplinary files to the Navy, and that Purdue had egregiously denied due process. The Court also upheld John's Title IX claim.

Judge (now Justice) Barrett issued the opinion for the Court in *Doe v. Purdue* nearly 4 years ago. In that time, Purdue has aggressively litigated the case, and the Magistrate Judge facilitated that aggressiveness, showing an unjustified partiality for Purdue and uncaring that a large institution in Purdue was pursuing scorched-earth litigation against a young individual. The Docket Entries are 31 pages long and are at A1-31.

## A.    Purdue's Second Motion To Dismiss.

On September 17, 2019, less than three months after this Court's decision, Purdue moved to dismiss again, seeking dismissal of John's due process claim, notwithstanding that this Court had upheld that claim, and seeking reduction of the case to a Title IX damages claim. (DE58.) After nine months, on May 19, 2020, the

Magistrate Judge granted in part and denied in part the motion, trimming a few injunctive requests. (DE84.)

## B.      Depositions.

Purdue then engaged aggressively in extensive discovery. Among other things, nineteen depositions were taken, including John's parents and (by Court Order) John's post-suspension mental health counsellor as to whom the Magistrate Judge said HIPPA did not apply (DE143) but whose testimony helped Plaintiff (DE187-18). John took depositions of the principal Purdue personnel (Sermersheim, Rollock, investigators, CARE Director), focusing on establishing the allegations of the Complaint using the documents relied upon in the Complaint, and a 30(b)(6) deposition to identify the location of disciplinary files. The Magistrate Judge issued a protective order against deposing named Defendant President Daniels. (DE 73.)

## C.      The Social Media Inquisition.

John produced all of the documents he had about the events of the case (including 133 pages of text message between Jane Doe and him), gave cell phone information and ten separate medical authorizations, and answered three sets of interrogatories. In response to Purdue's demand for all of John's post-suspension social media posts, John produced all of his Instagram posts and produced 75 Snapchat videos and pictures he had. (DE152, DE156; DE175.) Purdue had the Instagram and Snapchat production at the time of taking John's deposition but never marked any as deposition exhibits and never asked John any questions about them.

[4]

Purdue moved for sanctions against John, making a plethora of inaccurate accusations about discovery and seeking (again) the due process claim be struck. (DE 148.) Plaintiff opposed, showing his compliance with discovery. (DE 152, DE 152-1, DE 152-2.) On February 22, 2021, the Court held a multi-hour evidentiary hearing on Purdue's motion. (DE 155.) John testified under oath how 11 Snapchat documents were accidentally deleted when John cleared memory from his cell phone without realizing deletion from his phone would affect his Snapchat account and that the deleted documents were more of the same of what was produced (DE156; Snapchat Memories received in evidence, A32-35; DE155). The Snapchat documents and indeed, all his social media were irrelevant, spanning years after the 2016 events at Purdue and relating only to personal matters (e.g., John's sister playing piano). Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case. *Smith v. United States,* 293 F.3d 984, 988 (7th Cir.2002); *Crabtree v. Nat'l Steel Corp.,* 261 F.3d 715, 721 (7th Cir.2001).

On July 2, 2021, the Magistrate Judge ruled there was spoliation as to the stipulation for discovery, granting relief albeit different than requested because striking the due process claim was disproportionate. He strangely ignored all the discovery John complied with and focused on what little John did not have. The Magistrate Judge acknowledged "there is nothing in the record to indicate whether the files were in fact adverse to Plaintiff's case" (DE168, p. 29), but speculated "it was not inconceivable" the 11 Snapchat personal posts might be potentially relevant to John's desired Navy career without giving an explanation how it was conceivable,

[5]

much less actually relevant (DE168, p. 16), which a glance at the Snapchat listing showed it wasn't (*see* A33-35). The Magistrate Judge lambasted John (unjustly) for the deletion, ordered payment of Purdue's attorney fees, and outlined jury instructions regarding what were totally irrelevant documents. (DE168.) However, adverse inference instructions require intentional destruction and relevance. *Crabtree v. Nat'l Steel Corp.,* 261 F.3d at 721; *Keller v. United States,* 58 F.3d 1194 (7th Cir.1995) (collecting cases). John opposed Purdue's attorney fee application for immediate payment of $24,088, as it was a vindictive effort to impose a heavy cost for seeking to vindicate John's due process rights (DE175).  Nothing further happened; nothing should have in the first place.

### D.   <u>Summary Judgment Briefing.</u>

Starting September 1, 2021, the parties then briefed summary judgment. John moved for summary judgment on his due process claim, requesting an order of expungement per Judge Barrett's opinion, and to dismiss Purdue's state police power counterclaim. DE183, A31-90, is his memorandum of law and DE191, A148-167, is his reply memorandum of law.  John opposed Purdue's motion for summary judgment to dismiss John's due process and Title IX claims.   DE187, A91-147, is John's opposition memorandum of law.  Ironically, discovery only supported John's motion for summary judgment (DE183-1 is Plaintiff's material statement of facts in support of summary judgment on due process) and precluded Purdue's motion (DE187-2 is John's material facts in opposition to Purdue's motion).  Purdue never used any of John's social media production. (DE178, DE180.)

### E.    <u>Magistrate Judge's Propaganda Piece for Purdue.</u>

On August 11, 2022, the Magistrate Judge issued what was a propaganda piece for Purdue. John's motion for summary judgment was denied on the ground there were issues of fact as to falsity with respect to the stigma-plus liberty interest; the Seventh Circuit has for good reason never adopted a falsity element for a stigma-plus liberty interest and the record does not support there are such issues. Purdue's motion for summary judgment dismissing due process was granted, rejecting John's stigma-plus liberty interest, reviving the self-defamation ground that Judge Barrett rejected, and requiring a narrow legal obligation divorced from military realities to authorize disclosure of the university disciplinary file to the Navy. Struck was John's expert report from Dr. R. Chris Barden, who had critiqued and found wanting Purdue's biased investigation.  John's motion to dismiss Purdue's state police power counterclaim was ignored.  (DE206, A168-216.)  The August 11 Opinion gave Purdue what Purdue sought in their 2019 second motion to dismiss.

### F.  <u>Plaintiff's August 30, 2022 Motion For Reconsideration.</u>

On August 30, 2022, John moved for reconsideration. (DE209, A192-216, is his memorandum for reconsideration, and DE214, A217-232, is his reply memorandum for reconsideration, both of which eviscerate the August 11 "opinion".)  Purdue took the position that whether Purdue complied with the Fourteenth Amendment is immaterial. (DE213, p.14.)  Purdue also did not disclose the 2022 decision in *Mary Roe and Jane Doe v. Purdue* in which Judge Martin upheld the stigma-plus liberty

interest for the plaintiffs, even though Purdue had the same counsel in both cases. (DE214 & DE214-1.)

**G.    December 19, 2022 Oral Argument.**

On December 19, 2022, the Magistrate Judge held oral argument on John's reconsideration motion. (The transcript is DE221, A233-295.) At the oral argument, the Magistrate Judge and John's counsel had a number of exchanges in which the Magistrate Judge, ignoring military realities and a NROTC midshipman's obligations, tried justifying a requirement for a NROTC midshipman to dispute his superior officers before a stigma-plus liberty interest would attach. The transcript of the exchanges between John's counsel and the Magistrate Judge should be reviewed. (DE221, tr. 5-32, A237-264.) Below (pp. 16-19) are excerpts from the hearing. Purdue's argument was that a "legal" obligation was required to avoid self-defamation and the Navy was just another employer. (DE221, tr.34, A266.)

**H. Expungement Issue.**

Two days after the oral argument, the Magistrate Judge ordered the submission of confidential settlement memoranda to him (which was done), a settlement conference for February 13, 2023 (DE218) and a trial date of April 24, 2023 (DE 220). On February 9, 2023, Purdue demanded from John, *inter alia*, updated social media information, counseling services and health care records and issued trial subpoenas for John's mental health counsellors. (A296-305.) On February 13, 2023, the settlement conference before the Magistrate Judge floundered over expungement; the Magistrate Judge indicated flexibility to move back the trial date.

## I.  Reconsideration Decision.

On February 14, 2023, the Magistrate Judge issued his reconsideration decision, another propaganda piece for Purdue.  The Magistrate Judge adhered to dismissing the due process claim, ruling that John failed on summary judgment to show a legally obligated disclosure, that John's position he was in no position to refuse authorization was insufficient, that the Magistrate Judge is free to grant summary judgment dismissing the due process claim, and that truth is a defense to a stigma-plus liberty claim.  He rationalized not recognizing due process requirements identified by Judge Barrett based on what are Purdue's misstatements of the record.  He did dismiss Purdue's Amended Counterclaim but refused to certify for appeal the due process ruling.  (DE224, A306-324.)   This petition for mandamus is promptly brought.

## WHY THE PETITION SHOULD BE GRANTED

## I.

## THE LAW OF MANDAMUS

The writ of mandamus is an extraordinary remedy available to correct usurpations of judicial power or clear abuses of discretion.  *In re Apple Inc.*, 979 F.3d at 1336.  There are three conditions that must be established before a writ of mandamus may issue: (1) the petitioner must demonstrate that the right to issuance of the writ is clear and indisputable; (2) the party seeking issuance of the writ must have no other adequate means to attain the relief it desires, *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 403 (1976); and (3) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. *Cheney v. U.S.*

*Dist. Ct.*, 542 U.S. 367, 380-381 (2004); *In re Apple Inc.*, 979 F.3d at 1336. As discussed herein, these three conditions are satisfied. John demonstrates that his right to issuance of the writ is clear and indisputable, John has no other adequate means to the relief needed here, and the circumstances in this case make the writ appropriate.

## II.

### MANDAMUS IS REQUIRED BECAUSE THE MAGISTRATE JUDGE IS GOING OUTSIDE HIS JURISDICTION TO OVERRULE JUDGE BARRETT'S OPINION FOR THE COURT AND DENY PLAINTIFF'S STIGMA-PLUS INTEREST DIVORCED FROM MILITARY REALITIES

Mandamus is required to stop a Magistrate Judge from going outside the District Court's jurisdiction to overrule effectively this Court's major due process ruling in *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019), by denying John's stigma-plus liberty interest, reviving the self-defamation ground that Judge Barrett rejected. The record did not justify that conclusion; it took marginalizing the military realities of chain of command.

### A.     The National Importance of Judge (Now Justice) Barrett's Due Process Opinion.

The national importance of the due process rulings of then Judge (now Justice) Barrett in *Doe v. Purdue*, 928 F.3d 652, 661-664, 667 (7th Cir. 2019), cannot be understated, holding: (i) that John had pleaded a stigma-plus liberty interest; (ii) that Purdue's disciplinary process was woefully deficient and did not provide due process, citing among other things not giving John the investigation report and not holding a real hearing ("Purdue's process fell short of what even a high school must provide to

a student facing a days-long suspension"); and (iii) that the District Court on remand was to consider the expungement of the disciplinary file ("we instruct the court to address the issue of expungement on remand").

When then Education Secretary DeVos announced on May 6, 2020, what would be the current due process Title IX regulations, she pointed to three cases that were particularly instructive, one of which was the Seventh Circuit's decision in *Doe v. Purdue.* "*Secretary    DeVos    Announces    New    Title    IX    Regulation,*" *https://www.youtube.com/watch?v=hTb3yfMNGuA;* U.S. Department of Education Press Release, "Secretary DeVos Takes Historic Action to Strengthen Title IX Protections for All Students," May 6, 2020; 34 C.F.R. 106.45.   Secretary DeVos noted that it was a three-woman panel with then Circuit Judge Amy Coney Barrett as the author of the opinion. "*Secretary DeVos Announces New Title IX Regulation*" https://www.youtube.com/*watch*?v=*hTb*3yfMNGuA.

When Judge Barrett was nominated for the U.S. Supreme Court, her *Doe v. Purdue* opinion was a subject of attention.  Defending Judge Barrett's opinion in the Wall Street Journal was K.C. Johnson, "Sex, Due Process and Amy Coney Barrett," Wall Street Journal, Oct. 1, 2020.   Purdue responded with its defiant defense, "Purdue Responds on Judge Amy Coney Barrett's Title IX Opinion," Wall Street Journal, Oct. 12, 2020.  Judge Barrett's opinion has been a thorn in Purdue's side, and Purdue does not want to live in accordance with it.

The Magistrate Judge misstates John's argument as meaning the national importance of the *Doe v. Purdue* due process ruling by itself compels denial of

summary judgment. (DE224, p. 10.) That is not Plaintiff's argument. It is that the Magistrate Judge's August 11 Opinion did not consider Purdue's due process violations and expungement of the disciplinary file as contemplated in Judge Barrett's opinion, but rather with specious, insubordinate pettifoggery dismissed the due process claim (DE206, pp.16-18, DE224, pp. 2-4), adopting Purdue's self-defamation argument expressly rejected by Judge Barrett, marginalizing chain of command military realities and effecting an absurd result wholly inconsistent with Judge Barrett's opinion.

## B.    Judge Barrett's Rejection of Self-Defamation for the Court.

Before this Court in 2019, Purdue argued that John had engaged in self-defamation by authorizing the release of the university disciplinary files to the Navy. That argument then was premised on the NROTC only learning of John's disciplinary case because of John's authorization of disclosure to the Navy ROTC. According to Judge Barrett: "The university maintains that it has not and will not divulge John's disciplinary record without his permission. The Navy knows about it only because John signed a form authorizing the disclosure after the investigation began." 928 F.3d at 661. Purdue cited *Olivieri v. Rodriguez,* 122 F.3d 406 (7th Cir.1997), where a voluntary disclosure was the reason for an employment discharge in a situation that the Seventh Circuit considered it speculative whether the disclosure would ever be called for. Judge Barrett, however, rejected Purdue's argument (928 F.3d at 652):

> John's case is different. He does not claim simply that he might someday have to self-publish the guilty finding to future employers. Instead, John says that he had an obligation to authorize Purdue to disclose the proceedings to the Navy. That makes John's case more like *Dupuy v.*

> *Samuels*, 397 F.3d 493 (7th Cir. 2005), than *Olivieri*. In *Dupuy*, we held
> that the publication requirement of the stigma-plus test was satisfied
> when the plaintiffs were obligated to authorize a state agency to disclose
> its finding that they were child abusers to the plaintiffs' current and
> prospective employers. 397 F.3d at 510.

(928 F.3d at 662.)

## C.    The Navy Knew About The Disciplinary Proceeding Before Authorization and Was Looking To Purdue's Investigation.

The discovery record made Purdue's argument and the Magistrate Judge's ruling about self-defamation untenable.   Indisputably: (i) the NROTC knew about the disciplinary proceeding well before the May 24, 2016 authorization because on April 4, 2016, Jane Doe first went to the NROTC to make her accusations; (ii) Purdue first learned of Jane Doe's accusations from the NROTC; and (iii) the NROTC was looking to the Purdue investigation from the start.

On April 4, 2016, Jane Doe (falsely) told Navy Lieutenant Sheppard she had been subject to two instances of sexual misconduct by John, and Lieutenant Sheppard informed his superior officers Commander Hutton and Executive Officer Remaly about Jane Doe's allegations.    (DE183-34: Shepard tr 21-25, 28-30; DE183-43: Sheppard Ex 2; DE187: Sheppard tr 42-43.)   Also on April 4, 2021, Commander Hutton reported Jane Doe's sexual misconduct allegations to Purdue's Office of the Dean of Students, reflecting the interrelationship of Purdue and the Purdue Navy ROTC.   (DE 187-6: Dfs. SJ Ex. K.)   When asked by Purdue counsel about the "investigation" of the sexual misconduct allegations against John, Hutton responded that "that investigation was referred to Purdue University."   (DE 183-35: Hutton tr.

[13]

14.)  On April 4, 2021, Purdue's Dean of Students Sermersheim advised Purdue's CARE Director Bloom of Jane Doe's allegations.  (DE 187-6: Dfs. SJ Ex. K).)

 On April 5, 2021, Commander Hutton sent a letter to John informing him that John was being placed on "an Interim Leave of Absence (ILOA) *due to your pending university investigation*" and that "[f]urther administrative action, potentially to include Performance Review Board (PRB), will be taken *on completion of the university investigation*."  (DE 187-7; italics added.)  The April 5, 2016 letter further stated that John was prohibited from participating in ROTC activities, but would remain enrolled in NROTC.  (DE 187-7.)

The authorization to the NROTC for access to the Purdue disciplinary files was dated May 24, 2016, well after the NROTC learned of the disciplinary proceeding. (DE183-5, John tr. 23; DE183-44.)  John testified at his deposition that the Navy wanted "in the loop" (DE183-5, tr 21-22), and when John was deposed by Purdue about the authorization document, the questions were about whether he could have obtained the Purdue investigation report from the NROTC, not self-defamation (which was never raised).  (DE208-1, DE208-2, tr 22-26.)

The significance was explained by John: "With Jane Roe having reported her accusation to the Navy ROTC and the Navy ROTC looking to Purdue for the investigation, I really was in no position to refuse the authorization." (DE208-1 ¶ 7.) According to John: "Soon after Jane Roe complained to the Navy, I was put on interim leave of absence pending the university investigation.  If I had refused authorization, I would not only have looked bad, but I also would have been sanctioned in some way."

[14]

(DE208-1 ¶¶ 3, 5.) John thus had no choice but to authorize the Navy to be "in the loop" in the university disciplinary proceeding; it was not voluntary. John's case is "more like *DuPuy v. Samuels*." 928 F.3d at 662.

The Magistrate Judge essentially ignores the foregoing and instead asserts, incredibly, that John's evidence undercut that John was in no position to refuse access because that the Navy wanted in the loop did not create a legal obligation to give access. (DE224, pp. 7-8.) That assertion is legally and factually erroneous, divorced from military chain of command realities.

### D.   The Magistrate Judge's Narrow Legal Obligation Ruling Is At Odds With Judge Barrett's Opinion And Is Divorced From Military Realities.

John's situation as a NROTC midshipman who was not in a position to refuse the authorization to the Navy is totally inapposite to the situation of a voluntary disclosure of a disciplinary record for a school transfer, as in *Doe v. Trustees of Indiana University*, 2021 WL 2213257 (S.D. Ind. May 4, 2021), and to the situation of a voluntary disclosure of the reason for an employment discharge in *Olivieri v. Rodriguez,* 122 F.3d 406 (7th Cir.1997). Here, the obligation to disclose was not, as wrongly asserted by the Magistrate Judge, speculative. Rationalizing away the distinction between civilian and military life in this context amounts to willful blindness. But that blindness resulted in the Magistrate Judge incorrectly treating John's authorization as voluntary and John testimony the Navy "wanted in the loop" as not a legal obligation to authorize. (DE221, p. 16; DE224, pp. 2-4.)

Dismissing military realities as speculation, as the Magistrate Judge does, is contrived.  The Magistrate Judge quoted a September 1, 2022 status conference (DE212, pp. 7-8), but the December 19 hearing exchanges lay bare the absurdity of the Magistrate Judge's opinion:

> [**MR. BYLER**]: . . . The authorization was requested because the Navy – and this is the testimony – "wanted in the loop."  And that meant they wanted in the loop of the investigation. And they were put into the loop.
>
> And John Doe was not in a position to say no.  As ROTC midshipmen, respecting his Navy superiors, wanting a career in the Navy, you have a request; knowing that the Navy wants to be in the loop.  You don't say no.
>
> The suggestion that maybe he says no is just ridiculous.  I have combat officer sons, who, when asked this, of course you give the authorization. . . .
>
> **THE COURT**: But I see nothing.  I don't see your client saying, "I was given order."
>
> I don't see any deposition . . . .
>
> [**MR. BYLER**]: Well, excuse me. At his deposition, all he was asked about the authorization was to identify it.  The deposition then went off, "Well, could you have gotten the investigation report from the Navy." . . .
>
> [Plaintiff] was on scholarship.  He had to honor his commitments and obligations. . .  And that meant, when he gets a request for this kind of authorization, that kind of access, when the Navy knows and it's going to be relying on the investigation, yes, he has to give it.  He was in no position not to give it. . . .
>
> The decision that Commander Hutton testified to was: We're going to rely on the Purdue investigation. . . .
>
> And it was in that context in which John Doe knows that they're wanting to be in the loop because the investigation that's ongoing, he's requested by a superior officer for that access.

[16]

Now, I'm sorry. If you want a career in the Navy, you don't just go say, "No, I'm not going to give it to you." That doesn't happen, and I am a little surprised that there would be a suggestion to that effect. . . .

To say, "well, you know, we're not going to have liberty stigma-plus interests here because well, you should have pushed it and gotten a formal order," uh-uh. That's not how the military works.

And it's expected of, you know, a midshipman in this case or somebody who was in Army ROTC or Marine ROTC, you comply with the request of your superior officer. And there is no sense whatsoever in saying somehow that you don't have the liberty stigma—plus interest. Because what? You were insubordinate. . . .

John Doe's testimony, what's in the record is: I was not in a position to say no.

And that's all you need. Remaly didn't need to issue an order because you would expect your midshipman under these circumstances to provide the authorization, and that was done.

Was John Doe, at his deposition, asked, "well, why didn't you say no? Why didn't you force this?" He wasn't asked that.

It would have been, I thought – I would have thought at the time it would be ridiculous to do so. . . .

The realities of the military are such that, when a superior officer requests access to an investigation file which they know exists, they know exists, and can exact punishment on the midshipmen if he says no, they can be – as it would turn the interim leave of absence into a disciplinary leave of absence, you don't say no. . . .

. . . .

And the notion that a midshipman can say, "Well no, I don't" – No, you don't do that. You want a career with the Navy, and you cooperate, and you show respect for your Navy superior officers. . . .

. . . .

[17]

To suggest that he presses the issue, I think, is totally unrealistic, and the idea that he jeopardized the stigma-plus liberty interest over this, I find very strange. Not justified whatsoever. It's just not. When John Doe said: I was in no position to say no, that decides it there, period. . . .

. . . .

This is a very easy issue, actually. Given military realities, you don't ask a midshipman or an Army ROTC guy to say, "Well, I don't want to do it this way. I want to do it some way else." Your superior officers are saying, "We want this." You have a duty of, you know, respecting your superiors. You have a duty of honesty. You have a duty of a sense of responsibility. All of that says you do it; and if you don't, you're going to end up with a sanction, which would be a disciplinary leave of absence. And right now, he's got the problem of a permanent federal record, which is a real problem for a young man. And that's stigma-plus liberty.

I'll tell you this, This case is as strong a case – If there ever was a liberty stigma-plus interest, it's this.. . .

[**THE COURT**]: I don't understand where in the record it has been shown that, if he had respectfully responded to his superior officer, "Sir," "ma'am," "Is this something I need to sign, or am I allowed to have the Navy determine whether I did anything wrong in their PRB,"

**MR. BYLER**: No. You don't put a burden on a midshipman or an Army ROTC guy to press the point in order to have a situation which there is a liberty stigma-plus interest. That's wholly – I'm sorry – misconceived.

If you're in the position where you have obligations of Navy midshipman – okay? You're a scholarship student. You have to honor your obligations. You've been asked, "Give us access." You know they want in the loop. And you're going to say no?

And what I'm saying is, the suggestion that, well, he should have said no and maybe he could respectfully, I think is nonsense. . . .

. . . You're going to be in conflict with Judge Martin's decision if you go down that road, and I don't think that makes sense. You're not making sense in terms of military reality. When there's a request from a superior officer in these circumstances, you comply.

[18]

> And certainly there's no question, if he had said not, he would
> have been subject to lawful order. But it doesn't have to be pushed to
> that; it shouldn't have to be pushed to that.

(DE 221, tr.5-22, A237-254.)

Given these exchanges, it is strange that the Magistrate Judge faults John's counsel for not asking at John's deposition about authorization (DE224, p. 3, A308) when the point was that Purdue's counsel didn't in a deposition taken by Purdue. The Magistrate Judge's reference to a PRB as somehow enabling disputing a superior officer's request for access (DE224, p. 9, A314) disregards that a PRB is for determining sanctioning for improper conduct and that Commander Hutton made it clear the Navy was relying upon the Purdue investigation. What John might have preferred was immaterial.

## E.    John Was Obligated To Authorize Disclosure To The Navy.

The Navy ROD (which was not available at the time of the Navy depositions) clearly substantiates that John could not properly refuse authorization. (DE208-3.) The Magistrate Judge does not deal with John's full presentation of the Navy ROD.

### 1.    Navy Regulation Compelling Giving Authorization.

Authorization to disclose the Purdue disciplinary files was expected under the governing Navy regulations at the time as a matter of "Honor" stated in the Navy ROD. Honesty and respect to his superior officers called upon John to provide the authorization. The Honor Code in the Navy ROD (DE208-3) at section 1-3 (pp. 1-3) provides that "Military systems, which often operate under extreme duress, are built on a foundation of absolute trust and fidelity", that NROTC must instill honor upon

[19]

future officers during accession training and ensure that honor is carried into fleet service", that "[t]hroughout its history, the Naval Service has successfully operated through reliance on certain values held by its personnel", that "Honor is a keen sense of ethical conduct, honesty, integrity, and responsibility", that "Honor includes honesty, at all times no matter the outcome", and that "[i]t is respect to both juniors and seniors." The Magistrate Judge's belittling of the significance of the Honor Code is bizarre.

Authorization to disclose the Purdue disciplinary files was expected under the governing Navy regulations at the time as a matter of not showing a "disregard or contempt for authority" and not showing a "lack of a sense of responsibility" that would constitute a "major offense" per the Navy ROD (DE208-3), at section 3-19.2.a.(11) (pp. 3-40). The NROTC knew there was a Purdue investigation of Jane Doe's accusations of sexual assault and wanted "in the loop" (DE183: SJM 5, tr 22). It was John's responsibility that the NROTC be included in the loop. The Magistrate Judge's failure to address this point is unjustifiable.

## 2.    <u>Sanction Upon Refusing Authorization.</u>

Had John refused to provide the authorization, there would have been an order to provide the authorization. Also, when a midshipmen student is put on interim leave of absence, which John was by Commander Hutton's order of April 5, 2016, the Navy ROD (DE208-3 at section 6-7.3, pp. 6-11 − 6-12) requires a Performance Review Board ("PRB") "as soon as possible." Because John provided the authorization, a PRB was not held, and when one was held after completion of the university disciplinary case,

the PRB concerned the university suspension. Had John shown a "disregard or contempt for authority," a "lack of a sense of responsibility," and a lack of "honor" by refusing authorization, an additional PRB would have been ordered. The interim leave of absence would have been converted into a disciplinary leave of absence per the Navy ROD at section 6-7.3, pp. 6-12. The Magistrate Judge's failure to address this point is unjustifiable.

### 3.    <u>Required Disclosure Upon Re-Application.</u>

If John were to re-apply to the NROTC, he would have to disclose the disciplinary finding. Commanding Officer Hutton identified the ROTC Appointment Termination and Disenrollment Authorization and testified the only reason for the ROTC disenrollment was the university suspension. (DE183-35: Hutton Dep tr 56, 66-67; DE 183-36: Hutton H, ROTC Appointment Termination and Disenrollment Authorization.) The August 10, 2016 PRB document showed the Board's finding was that John was suspended by Purdue and the recommendation was disenrollment of John. (DE183-36: Aug. 10, 2016 Performance Review Board, p. 2.)

The PRB document is made part of the student's file per the Navy ROD (DE208-3, section 6-13.5, pp. 6-20) and because it involved disenrollment is sent to Naval Operations per the Navy ROD section 6-13.6, p. 6-20. Disciplinary disenrollment documents are part of his "permanent federal record" per Navy ROD (DE 208-3) section 6-16 (pp. 6-26 – 6-27):

> c. Disciplinary disenrollments become a matter of permanent federal record and may prejudice the individual for future military or civil employment. Disciplinary disenrollments may be disqualifying for future federal security clearances that are often necessary for positions

in private industry. Disciplinary disenrollments may be prejudicial to their interests should they ever apply for a commission in the Armed Forces. . . .

Should John re-apply to the NROTC or to any commission in the U.S. Armed Forces, he would be honor-bound to disclose the disciplinary disenrollment that is part of permanent federal record and if he did not and it were inevitably discovered in a mandatory background check, termination would be expected. (DE208-1 ¶ 9.) The permanent federal record exists as a result of the university disciplinary case (DE209, pp. 8-9); the Navy did not conduct its own investigation but relied 100% on the university disciplinary suspension. (DE187-2, pp. 23-27 and record citations therein.) The Magistrate Judge's failure to address this point is strange.

### 4. **The Magistrate Judge's Absurd Result.**

The Navy ROD compelled giving authorization, would make John subject to sanction upon refusing authorization, and required disclosure upon re-application due to a permanent federal record – which even the Magistrate Judge's August 11 opinion indicated would make summary judgment inappropriate (DE206, pp. 16-17) but which the Magistrate Judge avoids on reconsideration. Instead, the Magistrate Judge has essentially adopted Purdue's dismissal of the Navy ROD as "a set of internal Navy rules, not law" and Purdue's denial that the Navy ROD had the force of law to compel executing the authorization (DE221, p. 12). That, however, leads to the absurd result that a Navy ROTC midshipman who acts per the requests of his Navy superiors and the obligations reflected in the Navy ROD has no due process rights. Purdue's position that whether Purdue's disciplinary process complied with

Fourteenth Amendment due process is "immaterial" (DE213, p. 12) and the Magistrate Judge's adoption of that position reflects how much at odds Purdue and the Magistrate Judge are with Justice Barrett's opinion.

## F.    <u>Abuse of Discretion In Not Reconsidering.</u>

It was a terrible abuse of discretion for the Magistrate Judge not to reconsider. Reconsideration here is based upon the texts of Rule 54(b) and 60(b) of the Federal Rules of Civil Procedure, *see* A. Scalia, *Reading Law: The Interpretation of Legal Texts* p. 56 (West Pub. 2012), and *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191-1192 (7th Cir. 1990), where it is stated:

> A motion for reconsideration performs a valuable function where:
>
>> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. . . .
>
> Justice Cardozo also recognized the utility of the motion to reconsider to the misunderstood litigant:
>
>> . . . A grievous wrong may be committed by some misapprehension or inadvertence by the judge for which there would be no redress, if this power did not exist.

The Magistrate Judge's mistreatment of the stigma-plus liberty interest is particularly untenable given the Navy ROD.  The Magistrate Judge, in order to rely inapposite case law more restrictive of reconsideration, treats authorization as a central issue in the summary judgment briefing.  (DE224, 4-5.) It was not. The authorization was drowned in hundreds of pages of briefs on other issues and statements of material facts, the reconsideration evidence was to provide an

elaboration of what was originally submitted, and a whole new argument was not raised.

Curiously, the Magistrate Judge omitted the point for reconsideration that two Northern District of Indiana precedents are contrary to his ruling and that, in particular, Attorney Kealey, who has been counsel for the Purdue in this case and in *Mary Doe and Nancy Roe v. Purdue*, 4:18-CV-89-JEM (N.D. Ind. Jan. 13, 2022), did not advise the Magistrate Judge of Judge Martin's January 13, 2022 ruling (after the summary judgment briefing) upholding and sending to trial those plaintiffs' due process claim.  (DE214-1, DE72 in 4:18-CV-89-JEM.)  Judge Martin wrote:

> Roe asserts that she will be obligated to self-report this sanction to other institutions of higher education, including law schools, and by implication, bar admission authorities, meaning her stigma of a sanction will continue to be disseminated.
>
> As in *Doe v. Purdue Univ.*, supra, in which the plaintiff was required to authorize Purdue to release information about a sanction to his ROTC program and the Court of Appeals found that even with his permission to disclose, the disclosure satisfied the stigma-plus standard, the disclosure of Roe's sanction may impact her future education and employment opportunities. . . . Roe has asserted that the decision by Purdue, which she asserts was based on a flawed process, has resulted in a loss of future educational and employment opportunities, and a factfinder could agree.

(DE241-1, DE72 in 4:18-CV-89-JEM: Slip Op. at 20-21.)  In that case, Roe felt an obligation to self-report; this case is even stronger, as John had an obligation because he was in no position to not give authorization. A second Northern District of Indiana case also found stigma-plus liberty interest. *Doe v. Purdue*, 464 F. Supp.3d 989, 1001-1003 (N.D. Ind. 2020) (Springmann, J.).

[24]

**G.**    **Discovery Strengthened The Denial of Due Process Case.**

Based on the allegations of the Complaint, Judge Barrett wrote strongly about the denial of due process in this case: "Purdue's process fell short of what even a high school must provide to a student facing a days-long suspension." 928 F.3d 663-664. Discovery strengthened John's case that he was denied due process.  The depositions of Purdue people with the documents that formed the basis of the allegations of the Complaint not only substantiated the allegations, but showed a process more flawed than what was alleged in the Complaint.  Purdue never provided John with the evidence and the investigation report during the disciplinary case, there was no real hearing, and there was pre-judgment based upon treatment of Jane Doe's accusations.  Expungement of the disciplinary file was and is the proper remedy. (DE183-1 through 183-41; DE 183, pp. 6-33, 39-46.) The District Court on remand was to consider the expungement of the disciplinary file ("we instruct the court to address the issue of expungement on remand"), but the Magistrate Judge refuses to do so.

Due process matters so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The Magistrate Judge, however, rationalizes the jarring result of adopting Purdue's position that whether Purdue complied with due process is immaterial by also adopting what are Purdue's gross misstatements of the record.  It reflects how off the rails the Magistrate Judge has gone.

1. **John-Jane Doe Texts.**

The Court quotes passages of John Doe-Jane Doe texts as if they were admissions of guilt. They weren't; there is no evidence on summary judgment to treat them as evidence of guilt.  In deposition, Purdue Dean Sermersheim, Purdue investigator Amberger and Purdue investigator Oliver each admitted that there is no express statement in the texts in which John admitted or Jane Doe accused John of committing the sexual acts alleged in the Notice of Allegations. (DE183-7: Semersheim tr 34; DE183-14: Amberger tr 70-72; DE187-9: Oliver tr. 50-57).)  Notably, before the alleged incidents, John and Jane Doe had a three-month relationship in which John and Jane Doe had a sexual relationship initiated by Jane, the first such relationship in John's life after being brought up in an Evangelical Christian home where he was taught sex was for marriage.  (DE183-8: John 02/18/2021 Affidavit ¶¶ 4-5; DE 208-1: Ex. A, John tr 92-93.)  John has put himself under oath as to the correct understanding of the texts; Jane Doe never did. (DE208-1: John 08/2022 Declaration ¶ 11.)

To the investigators, John provided 133 pages of text messages between John and Jane Doe covering the period December 23, 2015 to March 15, 2016; he testified he did so because he believed the texts showed there had not been a sexual assault; the texts included that Jane Doe sent John and his family Christmas cookies.  Jane Doe provided no texts to the investigators, telling them she had deleted the texts.  (DE183-3: Df. Answer ¶ 36; DE183-14: Amberger Dep tr 17-18, 33-34, 36-37,

43-44, 47-48, 56, 68-72, 103; DE183-11: Amberger 27, Texts (PU 206-339)); DE183-7: Semersheim tr. 34; DE 183-5: John Dep. tr. 111-114.)

## 2. **The Investigation Report.**

The critical facts for due process are that John was not provided an opportunity to review the investigation report during the disciplinary case, that the investigation report included only short portions of 7 pages of the 133 pages of texts (the selected portions did not include texts showing an ongoing relationship after Jane Doe's claims), and that Vice President Rollock and Dean Sermersheim did not know that there were 133 pages of texts submitted by John to the investigators. (DE183-3: Df. Answer ¶¶ 2, 37, 39; DE183-14: Amberger Dep tr 49-50, 61-62); DE183-6: Rollock Dep tr 30, 46-47; DE183-7: Sermersheim Dep tr 21-23, 35; DE183-41: Custodian Klingerman Dep tr 27-28.) The investigation report twisted the texts and contained many other inaccuracies. (DE183-8: John 02/18/2021 Affidavit ¶ 15; DE187, pp. 44-47.)

## 3. **The Letter Sent On Behalf Of Jane Doe To The Committee.**

On June 6, 2016, Jane Doe would not appear in person before the Advisory Committee on Equity and Dean Sermersheim, but rather on June 5, 2016, Monica Bloom, Director of CARE and a lawyer, submitted a written statement said to come from Jane Doe, which was in the form of an e-mail. Bloom was asked in her deposition how, if Jane Doe did not have access to a computer, she e-mailed the statement to Bloom. Bloom said she (Bloom) did not recall (DE183-9, Bloom Dep tr 29-30; 183-26: Bloom 23, Bloom transmittal of June 5, 2016 statement (PU653-654)). The

Magistrate Judge does not deal with this testimony, but rather falsely states it was undisputed the e-mail came from Jane Doe, and the Magistrate Judge also does not address the fact that the three-person panel of the Advisory Committee on Equity and Dean Sermersheim, never met and never heard any direct testimony from Jane Doe and did not have the opportunity to ask any questions of Jane Doe.  (DE183-3: Df. Answer ¶ 41; DE183-9: Bloom tr 28-32; DE183-26: Bloom 23, Bloom transmittal of June 5, 2016 statement.)

## H.    The Magistrate Judge's Proof of Falsity Requirement Was For Denying Summary Judgment To John On Due Process And The Expungement The Court Through Judge Barrett Ordered Considered.

The Seventh Circuit has never adopted a proof of falsity requirement to establish a stigma plus liberty interest, but the Magistrate Judge did here to avoid the grant of summary judgment on John's due process claim to which John was so clearly entitled and to continue refusing to consider the expungement of the disciplinary file as directed by Judge Barrett. The Magistrate Judge relies upon language in *Doe v. Trustees of Indiana University*, 2021 WL 2213257; however, that case was decided on the fact the disclosure for a school transfer was voluntary, not there was no falsity proven as to the disclosure. *Doe v. Trustees of Indiana University* cites *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354 (7th Cir. 2019), but that case was a pure defamation case not involving a § 1983 case with a stigma-plus interest.

A falsity requirement makes no sense because the due process plaintiff would have to prove first his innocence in order to get due process, which is not the point of a liberty interest for Fourteenth Amendment purposes. The Seventh Circuit's

[28]

discussion of stigma-plus has never involved a falsity requirement, *see*, *e.g.*, *Mann v. Vogel,* 707 F.3d 872, 878 (7th Cir. 2013). According to the Seventh Circuit, the key to stigma-plus liberty interest is status change: "Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a full-time student in good standing to one suspended for an academic year. . . . And it was this official determination of guilt . . . that allegedly deprived John of occupational liberty." *Doe v. Purdue*, 928 F.3d at 662-663.

## <u>CONCLUSION</u>

What is discussed in this Petition needs to be addressed now.  For the reasons stated above, this Court should grant mandamus and reverse the grant of Defendants' motion for summary judgment dismissing the due process claim, remand the case to an Article III District Judge for reconsideration of summary judgment for John on the due process claim and for trial on the Title IX claim and, if need be, the due process claim, and issue such other and further relief as just and proper.

Dated:   February 17, 2023

<div style="margin-left:40%">

/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
(212) 736-2260 Fax
pbyler@nmllplaw.com
*Attorneys for Plaintiff-Appellant*

</div>

[29]

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.    This Appellant Brief complies with the type-volume limitation of the Seventh Circuit Local Rule 21(d)(1) because this Appellant Brief contains 7,800 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of the Seventh Circuit Local Rule 32 and the type style requirements of the Seventh Circuit Local Rule 32 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook Times 12-point font per the Seventh Circuit Handbook.

Dated:   February 17, 2023

/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
(212) 736-2260 Fax
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 17, 2023, the foregoing Mandamus Petition with Appendix was served by e-mail upon counsel of record to Purdue Defendants and by e-mail to the Magistrate Judge.    The record citations in the Appellant Brief are to the District Court record ("DE") and at times also to the Appendix.

Dated:   February 17, 2023

/s/ Philip A. Byler
Philip A. Byler, Esq. (Counsel of Record)
Andrew T. Miltenberg, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
(212) 736-2260 Fax
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff-Appellant*