IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **PURDUE UNIVERSITY, PURDUE UNIVERSITY** | ) | |
| **BOARD OF TRUSTEES, MITCHELL ELIAS** | ) | |
| **DANIELS, JR.**, in his official capacity as President of | ) | |
| Purdue University, **ALYSA CHRISTMAS ROLLOCK**, | ) | No. 2:17-cv-33-GSL |
| in her official capacity at Purdue University, **KATHERINE** | ) | |
| **SERMERSHEIM**, in her official capacity at Purdue University, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JOHN DOE'S REPLY BRIEF**
**TO REINSTATE HIS DUE PROCESS CLAIM**

**Philip A. Byler, Esq.**
**LAW OFFICES OF PHILIP A. BYLER**
**11 Broadview Drive**
**Huntington, New York 11743**
**(631) 848-45175**
pbyler1976@gmail.com
*Attorneys for Plaintiff John Doe*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………………..…iii

INTRODUCTION………………………………………………………………………………...…1

ARGUMENT IN REPLY……………………………………………………………………....…2

I.     JOHN'S MOTION IS TIMELY………………………………………………………………2

II.    JOHN'S MANDAMUS PETITION AND CERT PETITION WITH RESPECT
       TO JOHN'S RECUSAL FOR BIAS MOTION SHOULD BE READ BY THE COURT….3

III.   PURDUE DEFENDANTS FAIL TO REBUT JOHN'S SHOWING OF
       THE ERROR OF DISMISSING JOHN'S DUE PROCESS CLAIM….………..…………6

IV.    JOHN'S LIBERTY STIGMA-PLUS INTEREST AND DUE PROCESS
       CLAIM ARE ESTABLISHED UNDER JUSTICE BARRETT'S OPINION
       AND THE RECORD………………………………………………………..………..……8

CONCLUSION………………………………………………………………………...………..9

.

**INTRODUCTION**

Plaintiff John Doe ("John") submits this Reply Brief in response to Purdue Defendants' ill-focused opposition and thus in further support of John's meritorious motion to reinstate for trial John's meritorious and important due process claim, which was upheld in Judge (now Justice) Barrett's opinion for the Seventh Circuit, *Doe v. Purdue*, 829 F.3d 652 (7th Cir. 2019), an opinion relied upon by U.S. Department of Education Secretary Betsy DeVos in formulating due process infused Title IX regulations that went into effect in August 2020.

John's due process claim, however, was arbitrarily dismissed by Magistrate Judge Kolar (DE 206, pp. 16-17) based on the same self-defamation theory rejected by Justice Barrett, 928 F.3d at 662-663. Magistrate Judge Kolar's August 11, 2022 opinion contained distortions of the record, legally erroneous assertions and a dismissal of the due process claim.  That dismissal was one ground for the mandamus petition (DE 346-2) which asserted that Magistrate Judge Kolar had exceeded his jurisdiction by, among other things, essentially overruling Justice Barrett -- and also was one ground for John's recusal for bias motion against Magistrate Judge Kolar (DE 257-1, pp. 12-21) which at the U.S. Supreme Court level discussed the extra-judicial bias in the Seventh Circuit nomination (DE 346-2).

John and John's counsel took those extraordinary measures, not because we were poor losers, as Purdue Defendants' counsel and Magistrate Judge Kolar cynically asserted, but because of a conviction that a miscarriage of justice was at work.  This Court should read the exhibits to Defendants' response – (i) John's mandamus petition (DE 346-1) which the Seventh Circuit denied without explanation and (ii) John's cert petition with respect to the recusal for bias motion (DE 346-2) which was filed after the Seventh Circuit refused appellate jurisdiction on an unpersuasive

1

procedural ground – and see, among other things, the egregious error of dismissing John's due process claim.

Defendants attempt to dispute John's presentation that this Court, consistent with the law of the case doctrine, should correct the error of dismissing John's due process claim (DE 345, pp. 6-12). But Defendants do so not by dealing with the indisputable points made by John, but by fabricating a false, rambling, convoluted argument about John changing his argument after the Seventh Circuit 2019 decision upholding John's Complaint -- when it was Purdue Defendants who changed their position because of what discovery showed (DE 246-2, pp. 11-13). Purdue Defendants' argument also makes no sense given that John has moved to admit in the trial record Defendants' admissions in their Answer (DE 328).

Defendants also attempt to argue, based on blatant misstatements and an outright lie, that John has no liberty stigma-plus interest. Defendants make misfocused assertions that do not relate rationally to Justice Barrett's discussion of the liberty stigma-plus interest and that do not rebut John's entitlement to summary judgment or a directed verdict on John's due process claim.

## ARGUMENT IN REPLY

### I. JOHN'S MOTION IS TIMELY

Defendants dispute the timeliness of John's motion (DE 346, p. 1), but Defendants do not contend and cannot contend that the Court ordered no motion be made other than those discussed during the June 13, 2024 Court conference. The Court didn't so order.

In fact, as John explained in his moving brief, John's motion to reinstate the due process claim evolved out of John's response to Purdue Defendants' motion *in limine* to exclude evidence or argument directed to procedural requirements, which was a motion reference at the June 13, 2024 Court conference; John's response to Purdue Defendants' motion *in limine* (DE 342, pp. 2-

2

5) was filed July 26, 2024, per Court order (DE 336). John's response to Purdue Defendants' motion *in limine* to exclude evidence or argument directed to procedural requirements (DE 342, pp. 1-5) very much reflected how the proof and the law supporting John's Title IX claim greatly overlaps the proof for his due process claim and how insensible it is to attempt, as Purdue Defendants do, to separate out the procedural deficiencies in Purdue Defendants' administration of Title IX in John's case. (DE 342, pp. 1-5.)

That Purdue Defendants have taken the position they have in seeking to restrict John's proof for his Title IX claim has opened the door for examining whether it makes far simpler and far better sense to reinstate John's due process claim. This motion is made now so that, proper for this case, a Pretrial Order and a Pretrial Brief can be submitted to the Court per the Court's Scheduling, Pretrial Conference, and Trial Order (DE 325). As evident from the discussion herein, John's due process claim belongs in this case and right now is the most proper time for its reinstatement, well before the pretrial order and pretrial briefs are due.

## II,    JOHN'S MANDAMUS PETITION AND CERT PETITION WITH RESPECT TO JOHN'S RECUSAL FOR BIAS MOTION SHOULD BE READ BY THE COURT

Purdue Defendants complain that John has not discussed more completely the procedural history (DE 346, pp. 2-5). John did spend the bulk of his supporting Brief on why the Court should correct the error of dismissing the due process claim (DE 345, pp. 6-24), but it is that explanation that is important for considering this motion to reinstate the due process claim in this case; and what Purdue Defendants provide as exhibits to their Response actually undercut Purdue Defendants' own Response and supports John's motion. The two exhibits are: (i) John's mandamus petition (DE 346-1); and (ii) John's cert petition with respect to John' recusal for bias motion (DE 346-2). The Court should read both documents; they show, among other things, John's due process claim should never have been dismissed and Magistrate Juge Kolar did display

3

bias in purportedly finding spoliation over 11 utterly irrelevant post-suspension Snapchat items, (relevance is required for spoliation), and in dismissing John's due process claim and refusing to consider the Navy ROD in connection with the liberty stigma-plus interest, Contrary to Purdue Defendants' misstatements, John complied with Purdue Defendants' scorched earth discovery – producing documents and medical authorizations, answering three sets of interrogatories, sitting for a full day of deposition, having his parents sit for depositions, producing social media for postings after the events at Purdue and with having nothing to do with the events at Purdue.

The dispositions of the mandamus petition and bias motion and cert petition do not help Purdue Defendants. The denial without explanation of the mandamus petition means only the appellate court did not want to intervene when theoretically, review of a final judgment may deal with the issues raised. The dismissal of the appeal of the recusal for bias motion was based on the supposed lack of appealability of an interlocutory order, which says nothing about the merits of the claimed bias. As litigation lawyers understand, the denial of cert does not carry any judgment about the merits of the cert petition.

What is significant about the cert petition is that it documents the extra-judicial bias of the Seventh Circuit nomination that explained the biased decisions of Magistrate Judge Kolar. (DE 346-2.) Purdue Defendants attempt to treat the mandamus petition and bias motion/cert petition as making just the same arguments, which is only partly true. While a number of the same arguments were made in the mandamus petition and thein in the recusal for bias motion (because they supported both the mandamus petition and the recusal for bias motion), by the time of the cert petition, what was the extra-judicial source of bias in the Seventh Circuit nomination of Magistrate Judge Kolar after four years as a Magistrate Judge, none as an Article III judge became known.

John and John's counsel took those extraordinary measures, not because we were poor losers, as Defendants' counsel and Magistrate Judge Kolar cynically asserted, but because of a conviction that a miscarriage of justice was at work. John's counsel is a litigation lawyer of nearly 50 years' experience, and how Magistrate Judge Kolar was acting and deciding key motions was not normal. This Court should read the exhibits to Defendants' response – (i) John's mandamus petition (DE 346-1) which the Seventh Circuit denied without explanation and (ii) John's cert petition with respect to the recusal for bias motion (DE 346-2) which was filed after the Seventh Circuit refused jurisdiction on a highly questionable procedural ground – and see, among other things, the egregious error of dismissing John's due process claim.

In this connection, Purdue Defendants' assertion John consented to Magistrate Judge's jurisdiction must be contradicted. The Docket Entries regarding consent do not establish that consent was properly obtained. The first Docket Entry regarding consent states Magistrate Judge Kolar is assigned to the case, but the Docket Entry has no number and says the assignment is pursuant to a General Order. The following Docket Entry 40, dated July 24, 2019, records an Order of Magistrate Judge Kolar that if the parties do not intend to object to the continued exercise of jurisdiction of Magistrate Judge Kolar, to notify Magistrate Judge Kolar. (DE 40.) Docket Entry 41, dated August 1, 2019, then records the assignment of the case to Magistrate Judge Kolar upon the consent of the parties. (DE 41.) The Docket Entries, however, do not record the filing of signed consents of the parties required by 28 U.S.C. § 636 for Magistrate Judge Kolar to be the judge for all purposes, including for trial. In fact, John and John's counsel signed no such consent form and did not contact Magistrate Judge Kolar about consenting or not consenting. There was no indication of bias then in July 2019 on the part of Magistrate Judge Kolar or what would follow in subsequent years that would form the basis of John's pervasive bias motion.

5

### III. PURDUE DEFENDANTS FAIL TO REBUT JOHN'S SHOWING OF THE ERROR OF DISMISSING JOHN'S DUE PROCESS CLAIM

Purdue Defendants fail to rebut John's presentation that the dismissal of John's due process claim was egregious error. Instead, Purdue Defendants fabricate a false, near deranged argument about John changing his argument after the Seventh Circuit 2019 decision upholding John's Complaint (DE 346, pp. 5-8) when it has been Defendants who have changed their position because of what discovery showed. The cert petition that Defendants attached to their Response explained:

> 27. Before the Seventh Circuit in 2019, Purdue had argued that John had engaged in self-defamation by authorizing the re lease of the university disciplinary files to the Navy. That argument then was premised on the NROTC only learning of John's disciplinary case because of John's authorization of disclosure to the Navy ROTC. Judge Barrett stated in her opinion Purdue's position: "The university maintains that it has not and will not divulge John's disciplinary record without his permission. The Navy knows about it only because John signed a form authorizing the disclo sure after the investigation began." 928 F.3d at 661. Purdue cited *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir.1997), where a voluntary disclosure was the reason for an employment discharge in a situation that the Seventh Circuit considered it specula tive whether the disclosure would ever be called for. Judge Barrett, however, rejected Purdue's argument (928 F.3d at 652): John's case is different. He does not claim simply that he might someday have to self-publish the guilty finding to future employers. Instead, John says that he had an obligation to au thorize Purdue to disclose the proceedings to the Navy. That makes John's case more like Dupuy v. Samuels, 397 F.3d 493 (7th Cir. 2005), than Olivieri. In Dupuy, we held that the publication requirement of the stigma-plus test was satisfied when the plaintiffs were obligated to authorize a state agency to disclose its finding that they were child abusers to the plaintiffs' current and prospective employers. 397 F.3d at 510. (928 F.3d at 662.)
>
> 28. The discovery record made Purdue's argument and Magistrate Judge Kolar's ruling about self-defamation wholly untenable. Indisputably: (i) the NROTC knew about the disciplinary proceeding well before the May 24, 2016 authorization be cause on April 4, 2016, Jane Doe first went to the NROTC to make her accusations; (ii) Purdue first learned of Jane Doe's accusations from the NROTC; and (iii) the NROTC was looking to the Purdue investigation from the start. The Navy's knowledge of Jane Doe's accusations and the Navy's intention to rely upon the Purdue investigation made Purdue's argument and Magistrate Judge Kolar's ruling about self-defamation wholly untenable. . . .

6

> The Navy's knowledge of Jane Doe's accusations and the Navy's intention to rely upon the Purdue investigation made Purdue's argument and Magistrate Judge Kolar's ruling about self-defamation wholly untenable (30a-32a):
>
> 29. On April 4, 2016, Jane Doe falsely told Navy Lieutenant Sheppard she had been subject to two instances of sexual misconduct by John Doe, and Lieutenant Sheppard informed his superior officers Commander Hutton and Executive Officer Remaly about Jane Doe's allegations. (DE183-34: Shepard tr 21-25, 28-30; DE183-43: Sheppard Ex 2; DE187: Shep pard tr 42-43.) Also on April 4, 2021, Commander Hutton reported Jane Doe's sexual misconduct allegations to Purdue's Office of the Dean of Students, reflecting the interrelationship of Purdue and the Purdue Navy ROTC. (DE 187-6: Dfs. SJ Ex. K.) When asked by Purdue counsel about the "investigation" of the sexual mis conduct allegations against John, NROTC Commander Hutton responded that "that investigation was referred to Purdue University." (DE 183-35: Hutton tr. 14.) .
>
> . . .
>
> 31. The authorization to the NROTC for access to the Purdue disciplinary files was dated May 24, 2016, well after the NROTC learned of the disciplinary proceeding. (DE183-5, John tr. 23; DE183-44.) John Doe testified at his deposition that the Navy wanted "in the loop" (DE183-5, tr 21 22), and when John Doe was deposed by Purdue about the authorization document, the questions were about whether he could have obtained the Purdue investigation re port from the NROTC, not self-defamation (which was never raised). (DE208-1, DE208-2, tr 22-26.) 32. The significance was explained by John Doe: "With Jane Roe having reported her accusation to the Navy ROTC and the Navy ROTC looking to Purdue for the in investigation, I really was in no position to refuse the authorization." (DE208-1 ¶ 7.) According to John: "Soon after Jane Roe complained to the Navy, I was put on inter on leave of absence pending the university investigation. If I had refused authorization, I would not only have looked bad, but I also would have been sanctioned in some way." (DE208-1 ¶¶ 3, 5.) John thus had no choice but to authorize the Navy to be "in the loop" in the university disciplinary proceeding; it was not voluntary. John's case is "more like *DuPuy v. Samuels*." 928 F.3d at 662. Purdue's authorization argument made no sense given the actual facts. The Magistrate Judge's narrow legal obligation theory conflicted with Judge Barrett's opinion and military realities

(DE 246-2, pp. 11-15.)  Further, Defendants' argument makes no sense given that John has moved to admit in the trial record Defendants' admissions in their Answer (DE 328).

Purdue Defendants' effort to distinguish Justice Barrett's opinion on the ground that it was dealing with a Rule 12(b)(6) motion to dismiss does not work.  Discovery strengthened John's due

7

process claim, and based on the discovery record, John moved for summary judgment on the due process claim. (DE 181-DE 183.) Magistrate Judge Kolar's opinion steers clear of the due process violations lambasted by Justice Barrett (DE 206), but rather wrongly rationalizes away John's liberty stigma-plus interest and distorts very badly the record as discussed in John's moving brief (DE 345, pp. 20-24).

## IV.  JOHN's LIBERTY STIGMA-PLUS INTEREST AND DUE PROCESS CLAIM ARE ESTABLISHED UNDER JUSTICE BARRETT'S OPINION AND THE RECORD

John's motion is solidly based on Seventh Circuit precedent concerning the law of the case doctrine. and allows for the incorrect ruling of the first judge on the case to be corrected by the successor judge, particularly with respect to an interlocutory order as involved here (a dismissal of one claim but not all claims) that is subject to Federal Rule of Civil Procedure 54(b), which provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Galvan v. Norberg*, 678 F.3d 581, 586-587 (7th Cir. 2012) (Flaum, J.); *Brengetttcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005) (Wood, J.); *Gilbert v. Illinois State Bd. of Education*, 591 F..3d 896, 902 (7th Cir. 2010) (Wood, J.); *HK Systems v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) (Posner, J.). What case law cited by Purdue Defendants does not trump the controlling Seventh Circuit case law cited and relied upon by John. The correction to reinstate John's due process claim is unquestionably called for, especially since John's Title IX claim greatly overlaps the proof for his due process claim. (DE 345, pp. 2-3.)

John's moving brief demonstrated his liberty stigma-plus interest (DE 345, pp. 10-19), but Purdue Defendants do not deal with that presentation, but rather engages in a rambling diatribe as if Justice Barrett's discussion of the liberty stigma-plus liberty interest and how it applied to John

8

did not exist. In a feeble attempt to deal with that presentation, Purdue Defendants erroneously resort to technicalities to ignore the Navy ROD. Purdue Defendants even resort to lying, saying falsely that John's counsel admitted that John voluntarily provided the authorization. John's counsel is severely, severely misquoted in DE 212, pp. 17-18, which does not support Purdue Defendants. John's testimony and his counsel's argument has been that John had no choice but to provide the authorization requested by his Navy superior officers so that the Navy could be "in the loop" of Purdue's investigation, as the Navy was relying upon the Purdue investigation. That record is summarized in John's moving brief, DE 345, pp. 10-15.

With the liberty stigma-plus interest established, John's due process claim calls for summary judgment or a directed verdict. That explanation was laid out in John's moving brief, DE 345, pp. 20-24, and the mandamus petition, DE 346-1.

## CONCLUSION

For the reasons stated in John's original Brief motion to reinstate the due process claim and stated above, John's motion to reinstate the due process claim should be granted, and the Court should grant such further and other relief as deemed just and proper.

**Dated: September 19, 2024**

                        **Respectfully submitted,**
                        **LAW OFFICES OF PHILIP A. BYLER**
                        **By:** /s/ *Philip A. Byler*
                        **Philip A. Byler, Esq.**
                        **11 Broadview Drive**
                        **Huntington, New York 11743**
                        **(631) 848-45175**
                        pbyler1976@gmail.com
                        *Attorneys for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

   The undersigned certifies that this document was served upon the attorneys of record for each party to the above-entitled cause at the address shown below September 19, 2024:

William P. Kealey, Esq.
James F. Olds, Esq.
Scotty Teal, Esq.
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Email: wpk@stuartlaw.com
   jfo@stuartlaw.com
*Attorneys for Defendants*

   BY: ☐ U.S. Mail ☐ Federal Express

      ☐ Hand-Delivery x Other: ECF

          _____*Philip A. Byler, Esq.*_____
           Philip A. Byler, Esq.

10