Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| **ALEXANDER HORB,** ) | |
| ) | **CIVIL ACTION** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **PURDUE UNIVERSITY, PURDUE** ) | |
| **UNIVERSITY BOARD OF TRUSTEES,** ) | |
| **MITCHELL ELIAS DANIELS, JR.,** in his official ) | No. 2:17-cv-33-GSL |
| capacity as President of Purdue University, ) | |
| **ALYSA CHRISTMAS ROLLOCK**, in her official ) | |
| capacity at Purdue University, **KATHERINE** ) | |
| **SERMERSHEIM**, in her official capacity at ) | |
| Purdue University, ) | |
| ) | |
| Defendants. | |

### JOINT FINAL PRETRIAL ORDER

The attorneys for the parties to this action appeared before United States District Judge Gretchen S. Lund in Hammond, Indiana, on January 9, 2025, for a final pretrial conference under Rule 16(e) of the Federal Rules of Civil Procedure.

Plaintiff Alexander Horb is represented by Philip A. Byler. For the trial of this cause, Defendants are represented by William P. Kealey, Trenten D. Klingerman, and Scotty N. Teal of the firm of Stuart & Branigin LLP.

**A.** **Jurisdictional statement**. Federal question jurisdiction for Plaintiff's Title IX claim for damages exists pursuant to 28 U.S.C. § 1331. Notwithstanding this Court's Opinion and Order dated May 1, 2024 (DE 320), Defendants continue to assert that the standing requirements for Plaintiff's Title IX injunctive relief

claim are not met and there is no subject-matter jurisdiction for trial of that claim. Plaintiff disagrees.

**B.**    **Joint statement describing the case.** Plaintiff Alexander Horb alleges that sex bias motivated Defendant Purdue University to suspend him for two semesters for sexual misconduct. Purdue University contends that its disciplinary decision was based on the evidence gathered by its investigators. Plaintiff alleges that the two-semester suspension from Purdue caused him damages. Purdue University contends that Plaintiff was a poor student who has chosen for many years not to attend college anywhere.

**C.**    **Plaintiff's brief description of the claim(s) to be tried.** Issue having been joined by Plaintiff Horb's Second Amended Complaint (ECF 160) and Defendants' Answer to the Second Amended Complaint (ECF 161), the claim to be tried is Plaintiff Horb's claim for sex discrimination in violation of 20 U.S.C. § 1681 from Title IX of the Education Amendments of 1972 in the imposition of a disciplinary suspension for sexual misconduct he did not commit, resulting in the loss of a Navy ROTC scholarship.

**D**.    **Defendant's brief description of the claim(s) and defenses to be tried**. The case is at issue on Plaintiff Alexander Horb's Second Amended Complaint and Defendants' Answer to the same. Plaintiff's only pending claim is a Title IX allegation of sex discrimination. Plaintiff's Title IX claim pends only against The Trustees of Purdue University ("Purdue University") as the institution that accepts federal funding under the Constitution's Spending

Clause. Plaintiff's Title IX damage claim is to be decided by the jury. The remaining defendants are only official-capacity defendants for Plaintiff's Title IX injunctive relief claim, which does not go to the jury. Purdue University's affirmative defenses for trial, as previously pled at Docket Entry 161, are: (i) Plaintiff's claims against Purdue University are barred, in whole or in part, because Plaintiff's alleged damages, if any, were caused by Plaintiff's own actions or inactions and are not causally related to acts or omissions of Purdue University (see DE 354 Instruction No. 9); (ii) Plaintiff has failed to mitigate damages claimed in this action, and Plaintiff's damages, if any, must be diminished accordingly (see DE 354 Instruction No. 8); (iii) Plaintiff lacks standing for his requested injunctive relief (see DE 273 and supporting briefs); (iv) Plaintiff's injunctive relief demands regarding his Purdue University enrollment are unripe or moot (see DE 273 and supporting briefs); and (v) Plaintiff's unclean hands render him ineligible for injunctive relief. *Beermart, Inc. v. Stroh Brewery Co.*, 804 F.2d 409, 413 (7th Cir. 1986).

E.    **Pending Motions**

The parties do not anticipate any amendments to the pleadings.

The pending motions are: (i) Plaintiff John Doe's Motion to Place in the Trial Record Defendants' Admissions From Defendants' Answer to the Second Amended Complaint (DE 328); (ii) Purdue University's Motion to Exclude Expert Opinions (DE 330); (iii) Purdue University's Motion in Limine (DE 331); and (iv) Plaintiff's Motion to Reinstate Due Process Claim (DE 345).

Also pending is this Court's ruling on the amount of attorney fees to be awarded to Purdue University's pursuant to this Court's Opinion and Order dated July 2, 2021 (DE 168) and the corresponding Fee Affidavit of William P. Kealey (DE 174).

Plaintiff Horb's position is that no attorney's fees should be granted or adverse inference given because the sanction decision was legally erroneous and should be vacated. Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case. *Smith v. United States,* 293 F.3d 984, 988 (7th Cir.2002); *Crabtree v. Nat'l Steel Corp.,* 261 F.3d 715, 721 (7th Cir.2001). A speculation that "it was not inconceivable" the 11 deleted Snapchat personal posts might be potentially relevant to Plaintiff Horb's desired Navy career without giving an explanation how it was conceivable, much less actually relevant (which the evidence showed it wasn't), is legally insufficient. Adverse inference instructions require intentional destruction and relevance, *Crabtree v. Nat'l Steel Corp.,* 261 F.3d at 721; *Keller v. United States,* 58 F.3d 1194 (7th Cir.1995) (collecting cases), not present here. No use was made by Defendants in the summary judgment briefing.

**F.    The parties' contentions**.

### 1.    Alexander Horb

The requirements of a Title IX action are: (i) the exclusion from participation in or denied benefits or subject to discrimination in an educational program (ii) that receives federal assistance and (iii) the exclusion was on the

basis of sex.  As the Court noted in his August 11, 2022 opinion (slip opinion at 18), it is undisputed in this case that Alexander Horb was suspended from Defendant University's undergraduate program and Defendant receives federal assistance and that Plaintiff Alexander Horb's claim depends upon whether Defendants discriminated against Alexander Horb on the basis of sex. Alexander Horb contends that he was excluded on the basis of sex by the imposition of a disciplinary suspension for sexual misconduct he did not commit, resulting in the loss of a Navy ROTC scholarship.

      a.  What the Court calls "background facts" support finding sex discrimination:

            (i) April 2011 Dear Colleague Letter provided a backdrop

            (ii) Social media posts at Purdue showed a culture of sex bias

      b.   The facts concerning the investigation support finding sex discrimination, including:

            (i) Investigators imbalance in assessing Alexander Horb and Jane – no assessment of Jane credibility; dubious ground for finding Alexander Horb less credible when accepted Alexander Horb on time of alleged events; preponderance of evidence assessment when Alexander Horb denies and Jane not have an independent recollection reflected "believe the woman" sex and confirmation biases.

(ii) CARE Director Bloom acts as advocate for Jane and is source of Jane statements in case.  CARE Director Bloom emails Investigator Amberger to re-interview Jane about texts, Amberger does, but does not interview Alexander Horb a second time about texts, Investigator Oliver says had from Jane what was sufficient not to interview Alexander Horb second time.  The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(iii) Jane deleted the texts while Alexander Horb supplied 133 page of texts; Investigators Amberger and Oliver selectively quoted passages on seven pages of 133 pages of texts to portray Alexander Horb as admitting to the sexual assault when Investigators Amberger and Oliver admit that there is no express statement in the texts in which Alexander Horb admitted engaging in any sexual misconduct or Jane Doe accused Alexander Horb of committing the sexual acts alleged in the Notice of Allegations; texts in entirety show close Alexander Horb-Jane relationship and Jane emotional issues. Dean Sermersheim and Vice President Rollock did not know about there being 133 pages of texts.  The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(iv) Alexander Horb offered much evidence to the investigators who chose to ignore Plaintiff Horb's information, his background, and his account of the night Jane attempted to commit suicide.  For example, the investigators did not obtain Plaintiff Horb's explanation of the texts and consider that information as an alternative hypothesis, which was unjustifiable give that the texts do not contain any express statement about what Jane alleged to be the sexual misconduct. At the same time, Purdue investigators failed to investigate reports that Jane Doe had deleted evidence, attempted suicide, and discussed manipulating her mother to pay for her college then banning the mother from her graduation-wedding-children.  The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(v) Investigators did not ask Jane about why Alexander Horb would feel her crotch area if roommate in room, did not ask Jane why not wake up of Alexander Horb supposedly fingering her, did not ask Jane why five-month gap between alleged events and filing Complaint, and did not explore alternative hypotheses in questioning Jane.  Jane apparently had no memories of sexual assault until CARE sponsored

sexual assault month. The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(vi) Investigators did not consider or simply ignored Jane's objection to Alexander Horb being in armory where right to be, the report of Plaintiff Horb's roommate that Alexander Horb was shocked by Jane allegations, Jane's emotional issues, the report of suicide attempt, the sexual relationship of Alexander Horb and Jane, and Jane's delay in filing Complaint allowing for memory taint. The foregoing conduct reflected the "believe the woman" sex and confirmation biases.

(vii) Investigators made methodological errors allowing for sex bias -- exhibited confirmation bias, did not explore alternative hypothesis, received training in trauma informed investigations, failure to record interviews, failure to document evidence, failure to provide investigation report to Alexander Horb for comment. The foregoing conduct was consistent with the "believe the woman" sex and confirmation biases.

(viii) Training in trauma informed investigation resulted in sex biased investigation.

c. The facts concerning the adjudication support finding sex discrimination, including:

8

(i) Alexander Horb appears at the June 6, 2016 meeting with Dean and Equity Committee members, but Jane does not attend, yet Alexander Horb subject to hostility at meeting and Jane is found more credible. The foregoing conduct was consistent with the "believe the woman" sex bias.

(ii) To Alexander Horb, hostile panel members asked hostile questions and did not ask questions reflecting consideration of alternative hypotheses. The foregoing conduct was consistent with the "believe the woman" sex and confirmation biases.

(iii) The written statement for Jane was submitted by CARE Director Monica Bloom – Monica Bloom was involved throughout the process, including adjudication, and had control of access to Jane; the statement submitted by Monica Bloom ostensibly for Jane was accepted despite being unsworn and unsigned; the statement reflected animus.

(iv) Dean Sermersheim found Jane credible and Alexander Horb not credible despite not seeing Jane, reflected "believe the woman" sex bias.

(v) Dean Sermersheim's inadequate treatment of credibility and failure to consider alternative hypotheses reflected sex biased confirmation and "believe the woman" biases.

(vi) The failure to record meeting of Dean and Committee panel members allowed for biased decision-making.

d.  According to the Navy ROTC disenrollment documents, Plaintiff Horb's suspension was the only reason he was disenrolled from Navy ROTC, and the disenrollment meant the loss of the ROTC scholarship and the Navy career he intended to pursue. Plaintiff Horb's damages were:

(i) Loss of Scholarship

(ii) Loss of Income To Date

(iii) Lifetime loss of wages and employee benefits (Dr. Smith)

(iv) Loss of potential value of life at an upper range (Dr. Smith)

(v) Alternative to Dr Smith, loss of lifetime earnings

(vi) Loss of reputation

e.  Plaintiff disagrees with Defendant's contentions in E.2.

**2.**    **Defendant**.  Defendant Purdue University contends that:

a.    Alexander Horb cannot show Title IX sex-bias in its investigation of Jane Doe's allegations nor in the text or application of Purdue's *Anti-Harassment Policy (III.C.1)* because no facts raise the inference that Purdue acted on the basis of sex in Plaintiff Horb's case.

b.    As a matter of law Purdue had a legal obligation to investigate Jane's allegations and no sex bias can be assigned to Purdue's compliance with federal and state law.

d. The evidence does not show that Purdue formed or acted upon any intent to discriminate against Alexander Horb on account of his sex.

e. Alexander Horb received notice that a violation of the *Anti-Harassment Policy (III.C.1)* would subject him to discipline.

f. The *Anti-Harassment Policy (III.C.1)* is gender-neutral on its face.

g. Purdue's agents conducted themselves, Purdue's investigation, and Purdue's process consistent with the *Anti-Harassment Policy (III.C.1)*.

h. Alexander Horb and Jane were afforded equal opportunity to speak to investigators and to present their accounts and evidence to a three-person panel of the Advisory Committee on Equity. Neither were compelled to cooperate with any part of Purdue's investigation or process.

i. Purdue's evidence gathering followed the relevant information that investigators received and was not impacted by the sex of either Alexander Horb or Jane.

j. Purdue had a reasonable, non-discriminatory basis to conclude that Alexander Horb violated its *Anti-Harassment Policy (III.C.1)* by, among other things, relying on evidence that he sexually assaulted—and otherwise engaged in non-consensual touching of—Jane.

k. Evidence that an individual or institution favors complainants or victims in investigating allegations of sexual misconduct

11

or has a "pro-complainant" or "pro-victim" bias does not support an inference of anti-male bias. That is because both men and women can be victims of sexual misconduct or complainants in sexual misconduct cases.

l.     Sex discrimination cannot be inferred merely because there were procedural errors in Purdue's investigation. Similarly, you cannot infer sex discrimination from the fact that you disagree with Purdue's determination of what occurred between the Plaintiff and Jane Doe.

m.     The mere fact that there is, or has been, public or political pressure that has shaped prior or current Title IX regulations does not support an inference that Purdue University engaged in intentional discrimination.

n.     Alexander Horb lost his scholarship from the Navy on account of his poor grades, not because of Purdue's suspension. Regardless of Purdue's suspension decision, he was responsible for paying for his remaining tuition fees at Purdue.

o.     Plaintiff Horb's damage claim under Title IX for emotional harm is barred by law, and damages amplified by his alleged anxiety must be similarly barred.

p.     Alexander Horb has failed to mitigate his alleged damages by failing to re-enroll at Purdue following completion of his suspension.

q.    Purdue University's possession of records of Plaintiff Horb's disciplinary suspension is not an actionable harm and is required by applicable law.

r.    Destruction of Purdue University's records relating to Plaintiff Horb's disciplinary suspension would spoliate evidence relating to an open Navy misconduct investigation.

s.    Alexander Horb has waived and will waive any injunctive relief claim for destruction of Purdue University records offered and received into the Court's pre-trial and trial record in this case.

**G.    List of the damages sought, the legal basis, and statement identifying which damages are to be submitted to the jury for determination**.

*[to come from plaintiff]*

**H.    Stipulations.**

*[to come]*

**I.    Plaintiff's Exhibits.** The following is a list of materials that Plaintiff may offer to be entered into evidence at a trial of this matter:

1. Pl SJM 10: Sermersheim 33, 02/16/2016 Student of Concern Report (PU 32-33)
2.
3. Pl SJM 11: Rollock/Bloom 2 (PU 726-728)
4. Pl SJM 12: Rollock/Bloom 3 (PU 729-730)
5. Pl SJM 13: Semersheim/Rollock 10, Sermersheim Letter (PU 568-572)

6.  Pl SJM 16: Sermersheim 11, Doe Response to Allegations (PU 573-576)

7.

8.  Pl SJM 17: Amberger 27, Texts (PU 206-339)

9.  Pl SJM 18: Amberger/Oliver 25, Amberger Notes (PU 60-83)

10. Pl SJM 19: Amberger/Oliver 24, Oliver Notes (PU 34-59)

11. Pl SJM 20: Amberger 19, Amberger E-Mail to Bloom (PU 364)

12. Pl SJM 21: Amberger 21, Bloom E-Mail to Amberger (PU 370)

13. Pl SJM 22: Rollock/Sermersheim/Amberger/Oliver 14, Investigation Report with transmittal e-mail (PU 373-391)

14.

15. Pl SJM 23: Sermersheim 34, Sermersheim Memo (PU 655)

16. Pl SJM 24: Sermersheim 35, Sermersheim E-Mail (PU 596)

17. Pl SJM 25: Amberger 29, Sharp E-Mail (PU 392)

18. Pl SJM 26: Bloom 23, Bloom transmittal of June 5, 2016 statement (PU653-654)

19. Pl SJM 27: Sermersheim 4, Sermersheim June 14, 2016 Letter (PU 579-599)

20. Pl SJM 28:  Rollock 5, Doe June 23 Appeal (PU 717-718)

18. Pl SJM 29: Rollock 6, Rollock June 28 Letter (PU 600-601)

19. Pl SJM 30:  Semersheim/Rollock 7, Sermersheim June 29, 2016 Letter (PU 603-607)

20. Pl SJM 31:  Rollock 8, Doe July 10, 2021 Appeal (PU 695-698)

21. Pl SJM 32: Rollock 9, Rollock July 21, 2021 Appeal (PU 608-609)

22. Pl SJM 33: Rollock 16, Rollock July 25, 2016 E-Mail (PU 702-73)

23. Pl  SJM  36:  Hutton  G/Remaly  E/Willstetter  D,  August  10,  2020 Performance Review Board document (NSTC 00011-0012)

14

24.    Pl SJM 37: Hutton H, August 2020 ROTC Appointment Termination and Disenrollment Authorization (NSTC 0001-0004)

25.    Pl SJM 40: Willstetter C/Remaly D, E-mail by Staff Lieutenant Willstatter (NSTC 0140-0142)

26.    Pl SJM 42: Daniels Interrogatory Answers

27.    Pl SJM 43: Sheppard 2, Sheppard E-Mail (NSTC 0179)

28.    Navy ROD 2015-2016

29.    Pl SJM 44: Doe 2, Authorization (PU 704)

30.    Pl SJM 45: Hutton E, Fitness Report (NSTC 0166)

31.    Pl Opp DSJ 3: Hutton D (NSTC 0055 – 0060)

32.    Pl Opp. DSJ 6: PU 0731-0732 (Ex. K to Defendants' Motion)

33.    Pl Opp DSJ 7: NSTC 0154 (Ex. N to Defendants' Motion)

34.    Pl Opp DSJ 11: Purdue Data 2015-2016

35.    Pl Opp DSJ 15: NSTC 0153 (Ex. WW to Defendants' Motion)

36.    Pl Opp DSJ 16: Doe Dep Ex 21

37.    Pl Opp DSJ 18: April 2011 Dear Colleague Letter

38.    Pl Opp DSJ 19: Assistant Secretary Lhamon Testimony

39.    Pl Opp DSJ 20: CARE Facebook postings PU 0756-0884

40.    Pl Opp DSJ 21: Plaintiff's Answers to Defendants' Third Set of Interrogatories

41.    Pl Opp DSJ 23: *Rape and Sexual Assault Victimization among College Age Females, 1995-2013* (Special Report), U.S. Department of Justice, December 2014, http://www.bjs.gov.content/pub/pdf/ravcaf9513.pdf).

42,    Pl Opp DSJ 26: Hutton Dep Ex I  (N 0005-0006)

43. Pl Opp DSJ 27: Defendants' Responses To Plaintiff's Requests for Admission No. 2

44. Rollock Deposition

45. Bloom Deposition

46. Sermersheim Deposition

47. Amberger Deposition

48. Oliver Deposition

49. Noel Perry Deposition

50. Noel Perry Deposition Exhibit 28

51. Noel Perry Deposition Exhibit 33

52. Captain Rodney Hutton Deposition

53. Executive Officer Craig Remaly Deposition

54. Lieutenant Taylor Deposition

55. Lieutenant Kyle Wilstatter Deposition

56. Lieutenant Adam Sheppard Deposition

57. Megan Redlawsk/Chester Deposition

58. Anna Early Deposition

59. Plaintiff Doe Mother Deposition

60. Plaintiff Doe Father Deposition

61. Trent Klingerman Deposition

62. Second Amended Complaint (ECF 160)

63. Defendants' Answer to Second Amended Complaint (ECF 161)

64.    Summary: Facts Based on Defendants' Admissions in Answer to Second Amended Complaint

65.    Commissioned Officer Monthly Pay Tables 2019

66.    Commissioned Officer Monthly Pay Tables 2020

67.    Commissioned Officer Monthly Pay Tables 2021

68.    Commissioned Officer Monthly Pay Tables 2022

69.    Commissioned Officer Monthly Pay Tables 2023

**J.**    **Defendant's Exhibits.** The following is a list of exhibits that Defendant may offer to be entered into evidence at a trial of this matter:

A.  Contract between Doe and Navy dated August 20, 2015

B.  Text Messages Between Doe and Jane Doe of December 2015 and January 2016

C.  Department of the Navy Placement on Academic Warning dated January 15, 2016

D.  Jane's Sexual Violence Report dated April 4, 2016

E.  Email from Rodney Hutton to Jeffery Stefancic dated April 4, 2016

F.  Lt. Sheppard's Sexual Violence Report dated April 4, 2016

G.  Electronic notification email of incident report dated April 4, 2016

H.  Notice of Allegations dated April 5, 2016

I.  Notice of Interim Leave of Absence dated April 5, 2016

J.  Email from Monica Bloom dated April 5, 2016, advising of meeting with Jane

K. Correspondence from Dr. Sermersheim to Doe dated April 11, 2016 (Including information sheet attachments for student complainants and respondents)

L. Correspondence from Dr. Sermersheim to Jane Doe dated April 11, 2016 (Including information sheet attachments for student complainants and respondents)

M. Investigator emails to Alexander Horb/Jane

N. Plaintiff Horb's response to Notice of Allegations

O. Erin Oliver Investigator's Notes

P. Jake Amberger Investigator Notes

Q. Email from Adam Sheppard to Doe dated April 26, 2016

R. Investigator's request for extension (PU0369)

S. University Investigator's Report, including all exhibits dated May 20, 2016

T. Notice from Rodney Hutton and NROTC to Doe dated May 20, 2016

U. Plaintiff Horb's authorization to PU to disclose NROTC records dated May 24, 2016

V. Email from Katherine Sermersheim to Panel of Advisory Committee on May 26, 2016

W. Letter from Katherine Sermersheim to Doe dated May 31, 2016

X. Email from Joanna Sharp to Investigators dated May 31, 2016

Y. Email from Jane Doe to Monica Bloom dated June 5, 2016

Z.  Email from Monica Bloom to Katherine Sermersheim dated June 5, 2016

AA.  Emails ref. authorization (See "Docs Produced to PL 6-15-20")

BB.  Determination Letter dated June 14, 2016

CC.  Lt. Megan Redlawsk's Preliminary Inquiry Recommendations dated June 14, 2016

DD.  Department of the Navy Initial Notification of Performance Review Board dated June 16, 2016

EE.  Letter from Alysa Rollock to Doe dated June 28, 2016

FF.  Final Determination dated June 29, 2016

GG.  Alexander Horb Doe's Appeal of Revised Final Determination dated July 10, 2016.

HH.  Final Determination dated July 21, 2016

II.  Email from Kyle Willstatter to Doe dated July 26, 2016

JJ.  Email from Remaly re: Plaintiff's responsiveness dated July 29, 2016

KK.  Performance Review Board Summary and Recommendation dated August 10, 2016

LL.  Department of Navy Appointment Termination effective August 29, 2016

MM.  Taylor University Student Records

NN.  Taylor University Transcript

OO.  Plaintiff Horb's application to Indiana Beverage dated June 14, 2018

PP.  Indiana Beverage night warehouse job description

QQ.    Email dated August 13, 2018 from Jane Petrone to Alexander Horb

RR.    Departing Employee Supervisor Feedback from Indiana Beverage dated August 15, 2108

SS.    Email dated November 8, 2019 to Alexander Horb from Indiana Beverage

TT.    All records from Noel Perry's office

UU.    Deposition of Anna Earley.

Defendant reserves the right to produce any exhibit(s) necessary for impeachment and/or rebuttal.

**K.    Plaintiff's Witnesses.** The following is a list of individuals that Plaintiff may offer to provide testimony at a trial of this matter:

1. Plaintiff Alexander Horb Doe

2. Dr. R. Chris Barden

3. Dr. Stan V. Smith

4. Noel Perry

5. Alyssa C. Rollock

6. Katherine L. Sermersheim

7. Ms. Erin Oliver

8. Mr. Jacob Amberger

9. Monica Soto Bloom

10, Elvin Uthupan

11. Captain Rodney Hutton

12. Executive Officer Craig Remaly

13. Lieutenant Taylor

14. Lieutenant Kyle Wilstatter

15. Lieutenant Adam Sheppard

16. Plaintiff Alexander Horb's father

17. Plaintiff Alexander Horb's mother

**L.**    **Defendant's Witnesses.**  The following is a list of individuals that

Defendant may offer to provide testimony at a trial of this matter:

1.    Plaintiff Alexander Horb Doe

2.    Alyssa Rollock

3.    Katherine Sermersheim

4.    Jacob Amberger

5.    Erin Oliver

6.    Monica Soto Bloom

7.    Melissa May / Redlawsk / Chester

8.    "Midshipman A"

9.    Noel Perry

10.    Rodney Hutton

11.    Craig Remaly

12.    Adam Sheppard

13.    Kyle Willstatter

14.    Representatives from Taylor University, including Scott Gaier

15.    Tyler Witzig

16.     Matthew Conaway

17.     Ralph Webb

18.     Paula Courtney

19.     Representatives from Plaintiff's Horb's post-suspension employers.

20.     Lance Vanderberg

21.     Kevin Diller

22.     Steve Morley

23.     Bob Davis

24.     Darci Nurkkala

25.     Jesse Brown

26.     Jeff Wallace

27.     Scott Barrett

28.     Alexander Horb's Doe's medical providers

29.     Elvin Uthuppan

30.     Plaintiff's father

31.     Plaintiff's mother

32.     Paige Cunningham

33.     Jane Doe

34.     Elvin Uthuppan

35.     Any witness necessary for impeachment or rebuttal

**M.**     **<u>Binding Order.</u>**

This joint final pretrial order has been formulated after the parties conferred. Reasonable opportunity has been afforded to counsel for corrections and additions prior to signing by the Court. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court or by Order of the Court to prevent manifest injustice. The pleadings will be deemed merged herein.

**N.**     **Amendments.**

**O.**     **Settlement.**

The parties have discussed settlement but have been unable to reach agreement. They will continue to negotiate and will advise the Court immediately if settlement is reached.

**P.**     **Trial Date.**

The case is set down for a trial beginning at 9:00 a.m. on February 3, 2025. Defendant anticipates that the probable length of trial is 5 days. Plaintiff advises that given the number of witnesses and documents, he believes the probable length of trial is at least 8 days.

APPROVED:

| | |
|---|---|
| /s/ DRAFT | /s/ DRAFT |
| Philip A. Byler | William P. Kealey (18973-79) |
| Law Offices of Philip A. Byler | Trenten D. Klingerman (23033-53) |
| 11 Broadview Drive | Scotty N. Teal (35713-53) |
| Huntington, New York 11743 | Stuart & Branigin, LLP |
| Email: pbyler1976@gmail.com | 300 Main St., Ste. 900 |
| Telephone: 631-848-5175 | P.O. Box 1010 |
| ***Attorney for Plaintiff*** | Lafayette, IN 47902-1010 |

| | Email:wpk@stuartlaw.com<br>tdk@stuartlaw.com<br>snt@stuartlaw.com<br>Telephone: 765-423-1561<br>***Attorneys for Defendants*** |
|---|---|

_____ _____
DISTRICT JUDGE GRETCHEN S. LUND
UNITED STATES DISTRICT COURT

3556142v1

DRAFT