UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ALEXANDER HORB, <br><br> Plaintiff, <br><br> v. <br><br> PURDUE UNIVERSITY, PURDUE UNIVERSITY BOARD OF TRUSTEES, MITCHELL ELIAS DANIELS, JR., ALYSA CHRISTMAS ROLLOCK, KATHERINE SERMERSHEIM, <br><br> Defendants. | Case No. 2:17-CV-33-GSL |

## ORDER

Before the Court are several ripe motions. Defendants filed a Motion to Exclude Expert Opinions, at [DE 330]. Plaintiff filed a Motion to Reinstate Due Process Claim and/or Motion for Reconsideration, at [DE 345]. Each of the matters was fully briefed, and the Court held a hearing on June 18, 2025. [DE 386]. Having reviewed the briefing on each of the Motions, and having considered the argument from the hearing, the Court is ready to rule.

## DISCUSSION

**I.    Motion to Reinstate Due Process Claim and/or for Reconsideration: [DE 345]**

Plaintiff filed his Motion to Reinstate his Due Process Claim at [DE 345]. Defendants responded at [DE 346], to which Plaintiff replied at [DE 347]. Plaintiff argues that incorrect rulings of the first judge may be corrected by the successor judge under Federal Rule of Civil Procedure 54(b), which permits the revision of interlocutory orders at any time before final judgment. [DE 345-1, Page 7]. Plaintiff further argues that "the correction to reinstate [the] due process claim is unquestionably called for, especially since [the] Title IX claim greatly overlaps

the proof for [the] due process claim." [*Id.*]. Defendants counter that Plaintiff is asking this Court to reconsider the February 14, 2023 Opinion and Order, [DE 224], which denied Plaintiff's previous motion for reconsideration, [DE 208], and is only doing so not because there has been a controlling or significant change in the facts, but instead because a new judge has been assigned to the case. [DE 346, Pages 5-6].

Plaintiff brings his request under Rule 54(b), which permits courts to revise non-final orders as justice requires before entry of final judgment. *Hill v. Autozone Stores LLC*, 2025 U.S. Dist. LEXIS 97729, at *4-5 (N.D. Ind. May 22, 2025). Under Rule 54(b), motions for reconsideration are disfavored but can serve limited functions to correct manifest errors of law or fact, consider newly discovered evidence, or address errors of apprehension. *Hill*, 2025 U.S. Dist. LEXIS 97729, at *4-5 (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)); *see also Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc*. 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted). Motions for reconsideration are not to be used to advance arguments that the Court has addressed and decided. *Hill*, 2025 U.S. Dist. LEXIS 97729, at *4-5; *see Caisse Nationale de Credit Agricole v. CBI Indus., Inc*., 90 F.3d 1264, 1270 (7th Cir. 1996). "Indeed, the court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Lock Realty Corp. IX v. U.S. Health, LP*, 2010 U.S. Dist. LEXIS 3122, at *3 (N.D. Ind. Jan. 13, 2010). "The opportunity to present a motion to reconsider should not be viewed as a second opportunity for the losing party to make its strongest case or to dress up arguments that previously failed." *Indiana v. Helman*, 2008 U.S. Dist. LEXIS 48318, at *1 (N.D. Ind. June 23, 2008) (internal quotation omitted).

Even if procedurally appropriate under Rule 54(b) for this Court to revisit and reconsider an interlocutory order by another judge, this Court declines to do so. First, the arguments

advanced here by Plaintiff have already been rejected. In Plaintiff's first Motion for Reconsideration, [DE 208], Plaintiff argues he was not in a position to refuse authorization for the Navy ROTC to have his university disciplinary files and that this compulsion was akin to a legal requirement mandating disclosure. [DE 208, Page 1]. This argument is repeated in his later Motion to Reinstate the Due Process Claim, where Plaintiff continues to argue he "was required and legally obligated to disclose the university disciplinary file to the Navy ROTC." [DE 345-1, Pages 12, 16-17]. The Court is not persuaded by the repetition; "[t]he opportunity to present a motion to reconsider should not be viewed as a second opportunity for the losing party to make its strongest case or to dress up arguments that previously failed." *Indiana*, 2008 U.S. Dist. LEXIS 48318, at *1.

Beyond this, Plaintiff points to the Seventh Circuit decision to reinstate his due process claim after its first dismissal as validation that his claim must proceed to trial; that is not so. Plaintiff appears to misunderstand the procedural posture of this case. The Seventh Circuit found only that "[Plaintiff] has *pleaded* facts sufficient to state a claim under both the Fourteenth Amendment and Title IX." *Doe v. Purdue Univ.*, 928 F.3d 652, 670 (7th Cir. 2019) (emphasis added); *see* [DE 206, Page 8]. In permitting Plaintiff's claim to go forward, the Seventh Circuit relied on the allegation that Plaintiff "had an obligation to authorize Purdue to disclose the proceedings to the Navy . . . Purdue, not [Plaintiff], revealed to the Navy that it had found him guilty of sexual violence, and [Plaintiff] had a legal obligation to authorize the disclosure." *Purdue*, 928 F.3d at 662; [DE 206, Page 16]. The court analogized these allegations to *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), in which childcare workers were obligated by state law to disclose to their current and prospective employers the state agency's finding that they had abused children. The Seventh Circuit made clear, however, that a plaintiff's "self-defamation" is

3

not a deprivation of a liberty interest. *Purdue*, 928 F.3d at 661-62. Put another way, a school does not violate a student's due process rights merely because the student told a current or prospective employer what the school said about him.

  Although the Seventh Circuit allowed Plaintiff's claim to proceed past the motion to dismiss stage, Plaintiff did not provide the necessary evidence to survive summary judgment. "As the put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) (citing *Grant v. Trustees of Indiana Univ.*, 870 F.3 562, 568 (7th Cir. 2017)). Here, Plaintiff failed to designate any evidence to rebut Defendants' arguments that Plaintiff signed a form specifically "authoriz[ing] the release of all information" from Defendants' investigation. Furthermore, Plaintiff did not once testify that he was legally obligated to authorize the release of that information, nor did he present any evidence to that effect. Plaintiff continues to repeat that he was "in no position to refuse the authorization." [DE 345-1, Page 16-17, 19]. Plaintiff provides no evidence in support of this, which the Court notes is much different than a legal requirement, like in *Dupuy*, to disclose his records. *See Dupuy*, 397 F.3d 493.

  Motions for reconsideration are not to be used to advance arguments that have already been addressed and decided, which is exactly what Plaintiff attempts here. *Hill*, 2025 U.S. Dist. LEXIS 97729, at *4-5; *see Caisse Nationale de Credit Agricole*, 90 F.3d at 1270. Plaintiff only repeats his previously rejected arguments to contend the due process claim must be reinstated, none of which are "newly discovered evidence." *Hill*, 2025 U.S. Dist. LEXIS 97729, at *4-5

(citing *Bank of Waunakee*, 906 F.2d at 1191). For these reasons, Plaintiff's Motion to Reinstate his Due Process Claim, [DE 345], is DENIED.

## II.    Motion to Exclude Expert Opinions: [DE 330]

Defendants filed their Motion to Exclude the Expert Opinions of Dr. Barden and Dr. Smith at [DE 330]. Plaintiff responded at [DE 341], to which Defendants replied at [DE 343]. After reviewing the briefing from both parties and the record, particularly, the Final Pretrial Conference from the March 14, 2023, discussed at [DE 234], the Court will address each in turn.

### a. Dr. Barden

Defendants argue that the admissibility of Dr. Barden's first report, found at [DE 187-23], has already been decided. Based on the Opinion and Order found at [DE 206], this Court agrees.

> The report itself will be stricken from the summary judgment record and may not be used at trial. This ruling is without prejudice to any other expert evidence [Plaintiff] may seek to introduce at trial. The Court is not barring any and all expert opinions Dr. Barden may offer. However, as discussed below, the report at issue is replete with conclusions and assertions that are neither admissible nor helpful.

[DE 206, Page 11]. Plaintiff disagreed with this outcome, and raised the issue of Dr. Barden's testimony at the Final Pretrial Conference on March 14, 2023. There, Plaintiff argued that while Dr. Barden's report was barred from summary judgment and trial, Dr. Barden himself was not barred and there were admissible aspects of his report that would be appropriate for him to testify to during trial. Judge Kohler, over Defendants' objection, gave Plaintiff until March 21, 2023, to disclose the portions of Dr. Barden's first report that Plaintiff believed to be admissible. This is reflected in the docket entry at [DE 234], which states: "Pltf to provide Dft with document re expert opinion addressed during conference by 3/21/2023; any related disputes to be presented to the Court by 3/28/2023." The second report of Dr. Barden is found at [DE 242-13].

Dr. Barden's first report is 107 pages. [DE 187-23]. Dr. Barden's second report, which again, was only to contain portions of the first report, is curiously longer, at 112 pages. [DE 242-13]. Plaintiff argues that "[a] reading of Dr. Barden's second report [] reveals correction of the first report and a further insightful analysis of Defendants' investigations." [DE 341, Page 10]. But Plaintiff was only granted leave to provide the portions of Dr. Barden's already submitted report which Plaintiff believed was admissible; Plaintiff was not granted to leave to file a new expert report with "further insightful analysis of Defendants' investigations."

Equally as problematic, although Judge Kohler identified a few of the inadmissible portions of Dr. Barden's first report in his Order, those same portions appear in the second report. As one example, in his first report, Dr. Barden concluded that Purdue ignored "disconfirming evidence" including "Jane's very close (almost like a married couple) relationship to [Plaintiff], her defective thinking style, her emotional instability, and her deeply deceitful-manipulative-pathological relationship with her mother." [DE 187-23, Page 41]. Judge Kohler found that Dr. Barden's opinions about the credibility of the parties and witnesses were neither specialized knowledge no appropriate for expert testimony. [DE 206, Page 12]. This same argument by Dr. Barden, however, reappears in the second report.

> EVIDENCE OF JANE DOE's STATEMENTS TO HER MOTHER (Text of Dec 26, 2015 4:42 PM … pg 0282) WAS IGNORED: Similarly, texting evidence documenting Jane Doe's clearly stated plan to "She's just ugh. I'm literally never talking to her once I graduate. She will not be at my graduation. She will not be at my wedding. She will not see my children."). Emphasis added. This essential disconfirming evidence was not properly documented, nor investigated by the Purdue Investigators and Adjudicators, another example of confirmation bias. On this record, Defendant personnel ignored Jane Doe's texts to John Doe regarding Jane Doe's plan to use her parents to pay tuition and fees until graduation then ban her mother from attending her graduation and wedding and also ban the mother from seeing Jane Doe's future children. See, e.g. the Text of Dec 26, 2015 4:42 PM … pg 0282 … From Jane Doe to John Doe:

6

> "She's just ugh. I'm literally never talking to her (Jane Doe's mother) once I graduate. She will not be at my graduation. She will not be at my wedding. She will not see my children." (Emphasis added). The manipulative, deceitful, and cruel nature of this documentary evidence should have been properly investigated . Did Purdue personnel deliberately ignore-bury-hide-cut/paste out this key evidence? On this record, it appears that the Equity Committee and Dean did NOT review all texts but only the "selected" evidence supporting a "Believe Women" hypothesis, another example of confirmation bias.

[DE 242-13, Page 76]. As Judge Kohler observed when analyzing this argument in the first report, "[t]o put it mildly, such statements cut against a finding that this report has 'the same level of intellectual rigor that characterizes the practice of an expert.'" [DE 206, Page 12, n.10] (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

As another example, in Dr. Barden's first report he repeatedly discusses how "radical feminist" ideology is the underpinning of the "Believe Women" Title IX pseudo-investigational system, which he argues was the investigation system employed by Purdue. [DE 187-23, Pages 41-42, 84-85]. Judge Kohler found that Dr. Barden's unsupported assumption that Purdue's administrators believed those ideologies would only matter if Purdue relied on them to intentionally discriminate against Plaintiff, and that the first report failed to make that connection. [DE 206, Pages 13-14]. "Expert opinions premised on 'subjective belief or unsupported speculation, like this one, must be excluded." [*Id.* at 14] (citing *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996)). Here too, these inadmissible arguments from the first report are repeated in the second report. [DE 242-13, Pages 78-79].

It is not for the Court to parse an already barred report for otherwise admissible testimony. Plaintiff was to provide portions of the first report which he believed to be admissible. Instead, Plaintiff appears to have submitted a second report containing identical deficiencies to the first report in addition to entirely new information. The Court will not reevaluate the

testimony already barred by Judge Kohler. Nor will the Court consider the "further insightful analysis of Defendants' investigations" which were not provided in the first report and which Plaintiff did not have leave to submit. For these reasons, Dr. Barden's second report is barred in its entirety from use in future proceedings in this matter, including trial.

b. Dr. Smith

Defendants argue that Dr. Smith's opinions on loss of earnings capacity and hedonic damages are inadmissible because they are consequential damages which are unavailable under Title IX as remedies. [DE 330, Pages 16-17; 21-23]. Defendants further argue that even if the testimony were admissible, it is unreliable. [*Id.* at 23]. Plaintiff responds that damages based on loss of earnings capacity and hedonic damages are compensatory damages, not consequential damages, and are permitted under Title IX.[1] [DE 341, Page 25-26].

The Court will begin with the question of what types of damages are available as remedies in Title IX cases. *Barnes* holds that punitive damages are unavailable in private litigation under laws based on the Spending Clause; Title IX is such a law. *Doe v. Loyola Univ. Chi.*, 100 F.4th 910, 912 (7th Cir. 2024) (citing *Barnes v. Gorman*, 536 U.S. 181 (2002)). *Cummings* adds that damages for emotional distress also are unavailable under laws based on the Spending Clause. *Loyola Univ.*, 100 F.4th at 912 (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022)). This leaves standard compensatory damages. *Loyola Univ. Chi.*, 100 F.4th at 912; *see Hayden v. Greensburg Community School Corp.*, 743 F.3d 569, 583 (7th Cir. 2014). Compensatory damages seek to make the plaintiff whole and to redress the wrongs

---

[1] Plaintiff provided the Court with two charts purportedly listing cases where Dr. Smith's hedonic damages testimony was accepted "over objection and motion to exclude." [DE 341, Page 27]. The first chart lists more than 850 cases; the second, more than 300. [DE 341-3; DE 341-4]. A quick review of both charts indicates first that there are many duplicates, and second, that the vast majority of the cases cited are state court proceedings.

committed against him. *Saccameno v. United States Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

The sole claim proceeding to trial arises under Title IX and alleges that Purdue University, as an educational institution, discriminated against Plaintiff on the basis of his sex, particularly because he was a man, by denying him access to educational opportunities at the University for a period of two semesters. Compensatory damages, then, would compensate for the harms caused by a wrongful denial of access to educational opportunities at Purdue University for two semesters.

The Court will address both types of damages in turn. First, Plaintiff seeks damages based on his "lost wages and benefits," which he argues are compensatory damages "sufficient in amount to indemnify the injured person for loss suffered." [DE 341, Page 25]. Plaintiff further argues that these differ from consequential damages, "generally defined as damages which arise from special circumstances that make them probable, although they would be unusual apart from such circumstances," which he does not seek. *Id.*

As an initial matter, Plaintiff has not provided the Court with a Title IX case in this Circuit where damages based on his lost wages and benefits were permitted. That's not to say no such case or circumstance exists, but under this set of facts and without an analogous case, the Court is not convinced. Plaintiff was not barred from returning to Purdue University in totality, and could have continued his studies either at Purdue University after those two semesters had passed, or at another university, like he ultimately chose. Damages based on his lost wages and benefits do not appear to be appropriate compensatory damages, here.

Moving now to hedonic damages, Plaintiff says that these are damages based on his "loss of value in life." [DE 341, Page 26]. This aligns with the Seventh Circuit's definition of hedonic

9

damages: "[d]amages that attempt to compensate for the loss of the pleasure of being alive." *Diperna v. Chi. Sch. of Prof'l Psychology*, 893 F.3d 1001, 1006 n.5 (7th Cir. 2018) (citing Hedonic damages, Black's Law Dictionary (10th ed. 2014)). Both definitions, however, appear to include emotional distress, which damages are unavailable for under Title IX. And, in another case, the Seventh Circuit affirmed the exclusion of Dr. Smith's testimony on hedonic damages, which went to the plaintiff's "enjoyment of life," as it was found to be a ploy to recover emotional distress damages. *Diperna*, 893 F.3d at 1006. Plaintiff tries to confront this argument by distinguishing emotional distress damages, "concern[ing] the emotions from what was taken away," from hedonic damages, "based on an economic measure of the loss of what existed in terms of a normal life."[2] [DE 341, Page 26]. The Court struggles to see the distinction. And, again, Plaintiff has not identified a case within this Circuit where hedonic damages were available in a Title IX case. Hedonic damages do not appear to be appropriate compensatory damages, here.

The Court need not reach the issue of Dr. Smith's credentials and methods because the types of damages which he based his report on and which he would testify to at trial do not appear to be available to Plaintiff. For these reasons, Defendants' Motion to Exclude Dr. Smith's report is GRANTED.

### III.    Motion in Limine: [DE 331]

Pending before the Court is Defendants' Motion in Limine, [DE 331], filed June 28, 2024, which the Court has not yet heard argument on, but was fully briefed by Plaintiff's previous counsel. Defendants' Motion in Limine presents arguments that are no longer relevant

---

[2] Plaintiff also argues that "a dead person" would not have emotional distress damages, whereas "a dead person may be awarded" hedonic damages. [DE 341, Page 26]. The Court fails to understand and is unpersuaded by this.

10

in light of this Court's decisions regarding the Motion to Reinstate the Due Process Claim and the Motion to Exclude Expert Opinions. For this reason, the Court deems as moot Defendants' Motion in Limine, [DE 331]. Defendants are granted leave to file a new Motion in Limine, following the same briefing schedule laid out in the Joint Stipulation at [DE 383] for Plaintiff's Motion in Limine. Defendants may file their new Motion in Limine on or before September 12, 2025. Plaintiff may respond to Defendants' Motion in Limine on or before September 19, 2025. Defendants may reply to Plaintiff's Motion in Limine on or before September 26, 2025.

     SO ORDERED.

     ENTERED: July 18, 2025

                                            /s/ GRETCHEN S. LUND
                                            Judge
                                            United States District Court