UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ALEXANDER HORB, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO.: 2:17-CV-33-GSL |
| | ) |
| PURDUE UNIVERSITY, *et al.,* | ) |
| | ) |
|     Defendant. | ) |

## MOTION FOR CLARIFICATION OF PRIOR ORDER, OR IN THE ALTERNATIVE, MOTION TO CERTIFY PRIOR ORDER FOR INTERLOCUTORY APPEAL

Plaintiff Alexander Horb hereby moves this Court for Clarification of its Order (Dkt. 388, "Order"), or in the alternative to certify the Order for interlocutory appeal. Specifically, Mr. Horb seeks clarification on whether his expert, Dr. Smith, will be permitted to testify – consistent with the Court's language – as to the financial harm "caused by" the "wrongful denial of access to educational opportunities at Purdue University for two semesters" so long as Mr. Horb shows a causal connection between his educational deprivation at Purdue and the lost earnings he suffered.[1] Order, at 9. Mr. Horb expects to show at trial that the loss of two semesters was accompanied by a suspension that resulted in the loss of a prospective career as an officer in the Navy.

---

[1] Among other things, Mr. Horb expects to testify that the intentional discrimination he suffered at Purdue caused the loss of a favorable record at the Department of Defense – which barred him from military service as an officer in the Navy; he further expects to testify that the harm inflicted on him by Purdue made it functionally impossible for him to continue his education at Purdue (the entity that victimized him) or elsewhere. The jury is entitled to believe Mr. Horb's testimony and then calculate the damage caused by that harm. *Young v. Jenkins*, No. 18-CV-5718, 2022 WL 425583, at *6 (N.D. Ill. Feb. 11, 2022).

1

He seeks clarification as to whether those damages are within the gambit of what the Court described as appropriate compensatory damages.

## BACKGROUND

On July 18, 2025, the Court granted Defendant's Motion to Exclude Expert Opinions and ordered the exclusion of the expert reports of Dr. Christopher Barden and Dr. Stan Smith. Dkt 388 ("Order"). Among other things, and as to Dr. Smith, the Court appears to hold that lost earnings are not available as compensatory damages under Title IX as a matter of law. Order, at 8-9.[2] The Court explicitly states that it did not reach the Fed. R. Evid. 702 issues raised by Defendant (*i.e.* Dr. Smith's credentials and methods). Order, at 10.

In reaching its legal conclusion on the damages available in Title IX claims, the Court reasons "[c]ompensatory damages seek to make the plaintiff whole" and therefore, here, "[c]ompensatory damages, … would compensate for the harms caused by a wrongful denial of access to educational opportunities at Purdue University for two semesters." Order, at 10. The Court then later concludes that lost earnings do not "appear" to fall into this category because, the Court believes, Mr. Horb "could have continued his studies either at Purdue University after those two semesters had passed, or at another university…" *Id.* This language is confusing because the category of "compensatory damages" the Court established seems to include lost earnings damages, provided Mr. Horb could show at trial that the lost earnings were

---

[2] Although Mr. Horb maintains his objections to the Court's conclusions on Dr. Barden and Dr. Smith's hedonic damages theory, he does not challenge those conclusions in this motion.

2

"caused by" Purdue; but then the Court excludes those very damages. Accordingly, Mr. Horb seeks clarification on this issue.

Alternatively, should the Court not permit Dr. Smith to testify to the financial "harms caused by a wrongful denial of access to educational opportunities at Purdue University for two semesters" (*id.*) which resulted in lost earnings related to his chosen career in the United States Navy, Mr. Horb respectfully requests the Court certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b) because the Order, so construed, meets the requirements set forth in the statute.

## LEGAL STANDARD

"While there is no specific Federal Rule of Civil Procedure governing motions for clarification, such motions have been made and, when appropriate, granted." *N. Alaska Env't Ctr. v. Haaland*, No. 3:20-CV-00187-SLG, 2023 WL 3661998, at *3 (D. Alaska May 25, 2023). "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend. Motions for clarification are appropriate when parties are uncertain about the scope of a ruling or when the ruling is reasonably susceptible to differing interpretations." *N. Alaska Env't Ctr.,* 2023 WL 3661998, at *3; *Mathis v. Christian Heating & Air Conditioning, Inc.*, 91 F. Supp. 3d 651, 655-656 (E.D. Pa. 2015) (same). Courts in the Seventh Circuit have entertained motions for clarification in both civil and criminal cases. *United States v. Bronke*, No. 01-CR-532, 2022 WL 4119784, at *1 (N.D. Ill. Sept. 8, 2022) (entertaining the government's motion to clarify in a criminal case); *Shakman v.*

*Democratic Org. of Cook Cnty.*, No. 69 C 2145, 2017 WL 3184177, at *4 (N.D. Ill. July 26, 2017) (entertaining a litigant's motion to clarify in a civil case).

A motion to certify an order for interlocutory appeal, by contrast, is governed by statute. 28 U.S.C. § 1292(b).[3] Congress authorized interlocutory appeals from a district court's interlocutory order where the order (1) "involves a controlling question of law as to which there is substantial ground for difference of opinion" and that (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## ARGUMENT

The Order is unclear as to whether Mr. Horb will be permitted to present evidence to the jury that he suffered lost earnings "caused by" the deprivation of educational benefits at Purdue. Order, at 9. To the extent the Court will permit that evidence at trial, considering its conclusion that compensatory damages include the harm "caused by" the deprivation of educational opportunities at Purdue, it should so clarify. If, however, the Court intended to bar all lost earnings damages evidence as a matter of law, the Court should certify its Order for interlocutory appeal.

---

[3] Technically, 28 U.S.C. § 1292(b) governs when an order of the Court by itself qualifies for interlocutory appeal, but a litigant is free to move the Court to certify a prior Order for interlocutory appeal on the same standard. *Matter of Hamilton*, 122 F.3d 13, 14 (7th Cir. 1997) ("The district court did not certify its order for immediate appeal in the order itself, the procedure contemplated by the statute, but did so instead in a separate order, entered one month later (though issued only three weeks later), granting a motion for certification. We have, however, authorized this procedure").

I. **The Court should clarify its Order, stating Dr. Smith will be permitted to testify to financial harm "caused by" the loss of educational benefits at Purdue, including the lost earnings related to the loss of a career in the United States Navy.**

In its Order, the Court correctly recounted that compensatory damages "seek to make the plaintiff whole and to redress the wrongs committed against [him]." Order at 8-9, *citing Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019). The Court applied the definition of compensatory damages to this case: "[c]ompensatory damages [in this case] would compensate for the harms caused by a wrongful denial of access to educational opportunities at Purdue University for two semesters."[4] Order, at 9. The Court's definition correctly includes harms "caused by" the educational deprivation at Purdue; that is, the definition is not limited to the strict monetary loss of the two semesters themselves but also includes monetary damages "caused by" the loss of those two semesters. Applying this definition, it seems that the Court would permit Mr. Horb to put on evidence of lost earnings – calculated by Dr. Smith – which he could show were "caused by" the wrongful denial of educational opportunities at Purdue University.

The Court next seemed to depart from its earlier definition of compensatory damages, however, and decide that Mr. Horb "could have continued his studies either at Purdue University after those two semesters had passed, or at another

---

[4] It is worth noting here that the loss of two semesters at Purdue was caused by a disciplinary suspension for sexual misconduct, which obviously impacts Mr. Horb's educational record over and above a simple loss of two semesters as if, for example, he took medical leave or otherwise did not attend school for two semesters for a non-disciplinary reason. The Title IX statute broadly prohibits any exclusion or participation from an educational program, and there does not appear to be a statutory basis for excluding the effects of educational discipline when assessing damages. 20 U.S.C. § 1681(a).

university…" Order, at 9. This conclusion is concerning because, as the Court knows, it was not in a position to decide causation (a question of fact)[5] because questions of fact are resolved by juries. *Sparf v. United States*, 156 U.S. 51, 88 (1895); *see also Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986) ("A judge hearing a motion for summary judgment has no similar right to decide which evidentiary materials are the best ones for resolving a disputed question of fact; the judge may not resolve the dispute at all").[6]

The Court appeared to reason from its factual conclusion to the exclusion of evidence using the following logic: because Mr. Horb could have in fact continued his education, Purdue did not cause the lost earnings and therefore he cannot recover them. Order, at 9 ("Damages based on his lost wages and benefits do not appear to be appropriate compensatory damages, here"). Such a conclusion seems to assume that Mr. Horb cannot prove that Purdue caused lost earnings damages at trial, an assumption that the Court was not in a position to make on a motion in to exclude under Fed. R. Evid. 702. *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 886 F. Supp. 2d 873, 882 (N.D. Ill. 2012) ("The Court must be mindful … not to usurp the jury's role of determining the soundness of the factual underpinnings of the

---

[5] The Supreme Court has described causation in factual terms in closely related §1983 due process claims, which like Title IX claims, do not require damages as an element of the tort. *Carey v. Piphus*, 435 U.S. 247, 254-267 (1978) (discussing "proof" of an "actual injury"); *see also Isovolta Inc. v. ProTrans Int'l, Inc.*, No. 1:08-CV-1319-JMS-DML, 2011 WL 121727, at *6 (S.D. Ind. Jan. 13, 2011).

[6] This factual conclusion is also doubtful on its own merits because the purpose of seeking an education is to increase future earnings. Indeed, it is unclear what tangible benefit attaches to an education other than future career earnings.

expert's analysis"); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (same).

Dr. Smith, in contrast to the Court, may assume liability (and derivatively, causation of damages) for purposes of his report and testimony. In the Seventh Circuit "[i]t is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion. To hold otherwise would be illogical." *Sys. Dev. Integration, LLC*, 886 F. Supp. 2d at 882. An expert may, for example, "provide[] damages calculations in the event the jury determines, based on the evidence presented at trial, that [a defendant] would have extended the contract for an additional one, two, or three years" in a breach of contract case. *Id.*

So too, here, Dr. Smith may assume liability and assume that as a result, Mr. Horb "was not in a frame of mind to succeed in school." DE 387-003 (Dr. Smith's Report), at 5. And again, Mr. Horb will show at trial that Purdue's suspension of two semesters caused the loss of a favorable Department of Defense record, which deprived him of an "identifiable professional opportunit[y]." *B.R. v. F.C.S.B.*, 718 F. Supp. 3d 504, 516-517 (E.D. Va. 2024) (holding that lost earnings are available under Title IX but only where the plaintiff "alleges the loss of identifiable professional opportunities" and where a plaintiff "alleges and proves with specificity that the defendant's breach actually adversely influenced or affected job opportunities") (internal quotation omitted). Those factual underpinnings related to causation are matters for "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" and are not grounds for

7

exclusion. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). As explained clearly by the Seventh Circuit, "the court's gatekeeping function focuses on an examination of the expert's methodology. The soundness of the factual underpinnings of the expert's analysis … based on that analysis are factual matters to be determined by the trier of fact…" *Smith*, 215 F.3d at 718.[7] It necessarily follows that the Court would have erred if it intended to exclude any testimony or evidence from Dr. Smith on lost earnings simply because it found Dr. Smith's assumptions (namely, that the lost earnings were caused by Purdue) were unlikely to be borne out at trial by other evidence.[8]

Nevertheless, because the Court did not straightforwardly apply its compensatory damages definition to lost earnings, and instead seemed to decide causation, its conclusion is ambiguous and warrants clarification. As the Order stands now, Mr. Horb is unclear as to whether the Court will allow him to put on evidence at trial relating to the financial harm "caused by a wrongful denial of access to educational opportunities at Purdue University for two semesters"[9] or whether (even if the jury finds a causal connection between the financial harm and the deprivation of educational opportunities) lost earnings damages are categorically

---

[7] Mr. Horb notes that although the Seventh Circuit directs district courts to focus on the expert's "methodology," the Court here expressly excluded Dr. Smith's methodology from its consideration. Order, at 10. It focused only, it seems, on the "factual underpinnings" of his expert opinion.

[8] As explained during oral argument on June 18, 2025, the fact that Dr. Smith presents alternate models for damages is not grounds for exclusion either. *Smith*, 215 F.3d at 718 ("[e]xperts are allowed to posit alternate models to explain their conclusion").

[9] See ECF No. 387-003, at 4-6 (Dr. Smith discussing the earnings of a commissioned Navy officer and assuming that Mr. Horb was barred from a Navy officer career because of Purdue).

unavailable under Title IX as a matter of law. If the Court is not holding that lost earnings are categorically unavailable as a matter of law, the Court should clarify and allow Mr. Horb to present evidence of financial harm that is "caused by" the discrimination at Purdue, including the calculations generated by Dr. Smith. Whether the harm is, in fact, "caused by" Purdue is just that: a factual question for the jury. *Smith*, 215 F.3d at 718. The Court should therefore grant the motion for clarification.

    II.    **Alternatively, the Court should certify the Order for interlocutory appeal.**

Assuming the Court excludes lost earnings damages under Title IX as a matter of law, it should certify the Order for interlocutory appeal because the order (1) "involves a controlling question of law as to which there is substantial ground for difference of opinion" and that (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Seventh Circuit has previously granted an interlocutory appeal on a statutory damages question, which signals it may similarly do so here on the Title IX damages question. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536-539 (7th Cir. 2012).

First, whether Title IX permits lost earnings compensatory damages is a "controlling question of law" for which there is "substantial ground for difference of opinion." *Id.* Because this issue turns on a federal common law doctrine established in *Cummings* (what damages are available in private actions to enforce Spending

9

Clause statutes like Title IX) it is a pure and controlling "question of law." *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676-677 (7th Cir. 2000).

There is also "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). The Seventh Circuit has not expressly decided whether lost earnings are available compensatory damages in a Title IX case – the closest case to answering that question was the case cited by the Court in its discussion of compensatory damages: *Doe v. Loyola Univ. Chicago*, 100 F.4th 910 (7th Cir. 2024). Order, at 8, citing *Loyola*, 100 F.4th at 912.[10] In *Loyola*, the Seventh Circuit held only "standard compensatory damages" are available under Title IX after *Cummings*. *Id.* But the Seventh Circuit expressly chose not to define "standard compensatory damages"; instead, it left that decision to the district court because that decision "may depend on the resolution of factual disputes about what happened to Doe following his expulsion, disputes best resolved by a district judge." *Id.* The district court then expressly permitted lost earnings as available compensatory damages. *Doe v. Loyola University Chicago*, No.: 1:18−cv−07335, DE 215 (N.D. Ill. Aug. 8, 2024) (Seeger, J.) ("The Court also concludes that the request for compensatory damages is a live issue, including both the application fee for the new school *as well as lost wages*") (emphasis added).

Other courts have similarly permitted lost earnings damages after *Cummings*. *See, e.g., J.C. v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:20-CV-4445-JPB, 2023 WL 4938054, at *3-4 (N.D. Ga. Aug. 1, 2023); *Doe v. Trs. of Dartmouth Coll.*, 699 F.

---

[10] The Court also cited *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 583 (7th Cir. 2014) for the proposition that only "standard compensatory damages" are available under Title IX, (Order, at 8), but that case does not discuss what damages are available under Title IX.

10

Supp. 3d 171, 176-179 (D.N.H. 2023); *Doe v. Univ. of Virginia*, No. 3:23-CV-18, 2024 WL 1346913, at *5-6 (W.D. Va. Mar. 29, 2024); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 118CV00614MSNIDD, 2023 WL 424265 (E.D. Va. Jan. 25, 2023) ("compensatory damages that are not based upon specific monetary harm but stem directly from lost opportunities suffered as a result of discrimination can nonetheless serve as a basis for damages"), *citing Nancy Roe v. Purdue Univ.*, No. 4:18-cv-89-JEM (N.D. Ind. Sept. 23, 2022), ECF No. 140 (Instr. No. 24) (instructing jury to "determine the amount of money that will fairly compensate [plaintiff] for any injury that you find she sustained as a direct result of being denied equal access to educational opportunities"); Some courts disagree. *B.R. v. F.C.S.B.*, 718 F. Supp. 3d 504 (E.D. Va. 2024); *Doe v. Trs. of Dartmouth Coll.*, 699 F. Supp. 3d 171 (D.N.H. 2023). As evidenced by the split among district courts on this question, there is "substantial ground for difference of opinion. 28 U.S.C. § 1292(b).

The second statutory element in the interlocutory appeal statute is satisfied if "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* Considering that any interlocutory appeal is likely to cause the district court proceeding to "grind[] to a halt," the Seventh Circuit looks to whether a resolution to a legal question will "speed up" the eventual termination of the litigation. *Ahrenholz*, 219 F.3d at 675. The statute similarly contemplates the "ultimate termination" of the litigation, looking at the case holistically and not simply whether trial will be delayed – indeed, all interlocutory appeals slow the district court case in some way and therefore Congress could not have intended for courts to look

11

so narrowly at "advance[ing] the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Ultimately, "it is sufficient that an interlocutory appeal would remove uncertainty about the status of a claim that might delay settlement or resolution." *Flynn v. Exelon Corp.*, No. 19 C 8209, 2022 WL 267915, at *4 (N.D. Ill. Jan. 28, 2022); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 537 (7th Cir. 2012) (same).

Here, an immediate appeal would "advance the ultimate termination of the litigation" because it would avoid a retrial on damages, which may occur if an appeal can only be taken after a final judgment. The Parties and the Court are better served by holding a single trial rather than one trial before, and one trial after, the Seventh Circuit gives direction on whether lost earnings are available in Title IX cases like the instant case. Even considering that this case presently approaches trial, party and judicial resources are still served by avoiding a doubling of those efforts and expenses with a second trial. "One trial usually is more expeditious than two." *Est. of Rice v. Books*, No. 3:06-CV-697 RLM, 2014 WL 4906139, at *4 (N.D. Ind. Sept. 30, 2014). Avoiding a second trial after the Seventh Circuit articulates a clear view on whether lost earnings damages are available, serves to "head off protracted, costly litigation." *Ahrenholz*, 219 F.3d at 677. For these reasons, an immediate appeal serves to ultimately speed up the litigation, even though it will likely delay the single trial in the short term.

For the above reasons, the statutory criteria are met, and the Court should certify its July 18, 2025 Order for interlocutory appeal.

## CONCLUSION

The Court should clarify whether it will permit Mr. Horb to present evidence of financial harm "caused by" the discriminatory discipline at Purdue, because it may not decide preemptively whether Purdue caused his inability to go back to school, or relatedly, whether the loss of the specific career path was caused by Purdue. Alternatively, if the Court holds as a matter of law that lost earnings damages are unavailable as compensatory damages under Title IX, the Court should certify its Order for interlocutory appeal.

Dated: August 14, 2025,  Respectfully submitted,

/s/ Benjamin North
Benjamin North
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: ben@binnall.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2025, a true and correct copy of the foregoing was served by the Court's Electronic Filing System on all counsel of record.

/s/ Benjamin North
Benjamin North

*Attorney for Plaintiff*